**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| | Chapter 11 |
| | Jointly Administered |
| Debtors. | |
| | Objection Date: May 10, 2016@ 4:00 p.m. (ET) |
| | Hearing Date:  May 24, 2016 @ 10:00 am. (ET) |
| | |
| | Re: Docket No. 9866 |

**MOTION AND INCORPORATED MEMORANDUM OF LAW OF CLASS COUNSEL**
**FOR THE *ROTHSTEIN* PLANTIFFS (CLAIM NOS. 4074 AND 3966) IN SUPPORT**
**OF AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF**
**LITIGATION EXPENSES, AND FOR INCENTIVE AWARDS**
**FOR THE NAMED PLAINTIFFS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF THE FACTS ............................................................................... 4

ARGUMENT ....................................................................................................... 4

I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES
      AND REIMBURSEMENT OF EXPENSES .................................................... 5

      A.    Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees From The
            Common Fund ................................................................................... 5

            1.    The Requested Fee Award Is Reasonable Under The Percentage Method  7

            2.    The Requested Fee is Reasonable Under the Lodestar Cross-Check ......... 9

      B.    The *Goldberger* Factors Support The Requested Award Of Attorneys' Fees ...... 12

            1.    The Time and Labor Expended by Class Counsel Support the Requested
                  Fee ........................................................................................ 12

            2.    The Magnitude and Complexity of the Litigation Weigh in Favor of
                  Approval of the Fee Request ......................................................... 14

            3.    The Risks of the Litigation Warrant Approval ........................................ 15

            4.    The Quality Of The Representation Favors Approval Of Class Counsel's
                  Fees ....................................................................................... 18

            5.    The Requested Fee In Relation To The Settlement Is Reasonable ........... 20

            6.    Public Policy Considerations Fully Support The Fee Requested ............. 21

            7.    No Class Members Have Objected to the Settlement or Fee Request ...... 22

      C.    Class Counsel Should be Reimbursed for their Reasonably Incurred Litigation
            Expenses ........................................................................................ 23

      D.    The Request for Incentive Awards for the Named Plaintiffs is Reasonable and
            Should be Awarded ........................................................................... 24

CONCLUSION ................................................................................................... 25

i

# TABLE OF AUTHORITIES

## Cases

## Cases

*Adair* v. *Bristol Tech. Sys., Inc.*,
No. 97 Civ. 5874, 1999 WL 1037878 (S.D.N.Y. Nov. 16, 1999) ............................................. 10

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................. 5, 6, 7

*In re Ampicillin Antitrust Litig.*,
526 F. Supp. 494 (D.D.C. 1981) ........................................................................................... 11

*Anwar v. Fairfield Greenwich Ltd.*,
No. 11 Civ. 813, 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ................................................ 29

*In re Ashanti Goldfields Sec. Litig.*,
No. Civ. 00 Civ. 717, 2005 WL 3050284 (E.D.N.Y. Nov. 15, 2005) ...................................... 26

*In re Avon Prods., Inc. Sec. Litig.*,
No. 89 Civ. 6216, 1992 WL 349768 (S.D.N.Y. Nov. 5, 1992) .................................................. 9

*Barfuss v. DGSE Cos., Inc.*,
No. 12 Civ. 3664, slip op. at 6 (N.D. Tex. Oct. 21, 2013) ...................................................... 11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) .............................................................................................................. 27

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 [ct & date missing] ......................................................................................... 8

*Berrios v. Sprint Corp.*,
No. 97 Civ. 81, 1998 WL 1749828 (S.D.N.Y. 1998) .............................................................. 30

*In re BGI, Inc., [Secs.?]*
465 B.R. 365 (S.D.N.Y. 2012) ................................................................................................. 8

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*,
504 F.3d 229 (2d Cir. 2007) ..................................................................................................... 8

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................................................... 21

*Chavarria v. N.Y. Airport Serv., LLC*,
    875 F. Supp. 2d 164 (E.D.N.Y. 2012) ...................................................................... 9

*City of Detroit v. Grinnell Corp.*,
    495 F.2d  448 (2d Cir. 1974) ................................................................................... 19

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 7132, 2014 WL 1883494 [ct & date missing] .................................. 8, 15

*Clark v. Cameron-Brown Co.*,
    No. C-75-65-G, 1981 WL 1637 (M.D.N.C. Apr. 6, 1981) ...................................... 11

*Cohen v. Am. Sec. Ins. Co.*,
    735 F.3d 601 (7th Cir. 2013) ............................................................................. 22, 23

*Cohen v. Apache Corp.*,
    No. 89 Civ. 76, 1993 WL 126560 (S.D.N.Y. Apr. 21, 1993) .................................... 9

*Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*,
    785 F. Supp. 411 (S.D.N.Y. 1992) ......................................................................... 22

*In re Crayfish Co. Sec. Litig.*,
    No. 00 Civ. 6766 , slip op. at 7 (S.D.N.Y. July 28, 2004) ....................................... 9

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) .......................................................................... 27

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) .............................................................................. 26

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................. 30

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    No. 98 Civ. 4318, 2001 WL 709262 (S.D.N.Y. June 22, 2001) ............................. 19

*In re E.W. Blanch Holdings, Inc. Sec. Litig.*,
    No. 01 Civ. 258, 2003 WL 23335319 (D. Minn. June 16, 2003) ............................ 11

*In re Eng'g Animation Sec. Litig.*,
    203 F.R.D. 417 (S.D. Iowa 2001) ........................................................................... 10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................. 13

*Faircloth* v. *Certified Fin. Inc.*,
    No. 99 Civ. 3097, 2001 WL 527489 (E.D. La. May 16, 2001) ............................... 10

*Farinella v. Paypal, Inc.*,
    611 F. Supp. 2d 250 (E.D.N.Y. 2009) .................................................................... 18

*Feaz v. Wells Fargo Bank, N.A.*,
    745 F.3d 1098 (11th Cir. 2014) ............................................................................ 22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02 Civ. 3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).......................... 9, 19

*Fogarazzo v. Lehman Bros. Inc.*,
    No. 03 Civ. 5194, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)................................. 8

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................................. 9

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) .................................................................................. 12

*Gaskill* v. *Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996), *aff'd* 160 F.3d 361 (7th Cir. 1998) ...................... 11

*In re General Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001)....................................................................... 10

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2001)............................................................................... 8

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. at 468 [ct & date missing]...................................................................... 28

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ............................................................................ passim

*Gooden v. Suntrust Mortg., Inc.*,
    No. 11 Civ. 2595, 2013 WL 6499250 (E.D. Cal. Dec. 11, 2013) ........................... 21

*Gordon v. Chase Home Fin., LLC*,
    No. 11 Civ. 2001, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013) ............................... 21

*Gustafson v. BAC Home Loans Servicing, LP*,
    294 F.R.D. 529 (C.D. Cal. 2013)............................................................................. 21

*In re Heritage Bond Litig.*,
    No. 02 ML 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)............................. 11

*In re Hibbard Brown & Co.*, Inc.,
    217 B.R. 41 (Bankr. S.D.N.Y. 1998) ...................................................................... 19

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................ 9, 26

*In re Hi-Crush Partners L.P. Sec. Litig.*,
12 Civ. 8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .............................................. 8, 15

*In re High-Tech Emp. Antitrust Litig.*,
No. 11 Civ. 2509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ............................................ 15

*In re Corel Corp. Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003).......................................................................... 10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003) ........................................................................ 28

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ..................................................................... 8, 24

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012) ............................................................................... 18

*Jones v. Amalgamated Warbasse Houses, Inc.*,
721 F.2d 881 (2d Cir. 1983) ............................................................................... 14

*Khait v. Whirlpool Corp.*,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ............................................. 8

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ............................................................................... 12

*Klein ex rel. Ira* v. *PDG Remediation, Inc.*,
No. 95 Civ. 4954, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ................................................. 7

*Kogan* v. *AIMCO Fox Chase, L.P.*,
193 F.R.D. 496 (E.D. Mich. 2000)........................................................................... 11

*Kolbe v. BAC Home Loans Servicing, LP*,
738 F.3d 432 (1st Cir. 2013)................................................................................ 23

*Kunzelmann v. Wells Fargo Bank, N.A.*,
No. 11 Civ. 81373, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) ............................................. 21

*Lane v. Wells Fargo Bank, N.A.*,
No. 12 Civ. 04026, 2013 WL 3187410 (N.D. Cal. June 21, 2013)........................................... 21

*Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997) ............................................................................... 14

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 24

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................ 9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................ 13, 24, 28

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) .................................. 15

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) .......................................................................... 21

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375; *accord Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980) .............. 26

*Mo v. Jenkins*,
  491 U.S. 274 (1989) ....................................................................................... 25

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
  No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ............................... 8

*Muehler* v. *Land O'Lakes, Inc.*,
  617 F. Supp. 1370 (D. Minn. 1985) .................................................................... 11

*In re Neoware Sys., Inc. Sec. Litig.*,
  No. 98 Civ. 2582, 2000 WL 1100871 (E.D. Pa. July 27, 2000) ................................. 11

*Neuberger* v. *Shapiro*,
  110 F. Supp. 2d 373 (E.D. Pa. 2000) .................................................................. 11

*In re Nissan Radiator/Transmission Cooler Litig.*,
  No. 10 CV 7493 VB, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ............................ 30

*In re Nortel Networks Corp. Sec. Litig.*,
  539 F.3d 129 (2d Cir. 2008) ............................................................................. 14

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .............................................................................. 11

*In re Plug Power, Inc. Sec. Litig.*,
  No. 00 Civ. 5553, slip op. at 7 (E.D.N.Y. Apr. 29, 2005) ....................................... 9

*In re Prudential Sec. Inc. Ltd. P 'ships Litig.*,
  912 F. Supp. 97 (S.D.N.Y. 1996) ....................................................................... 28

*In re Ravisent Techs., Inc. Sec. Litig.*,
  No. 00 Civ. 1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ................................................ 10

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
  818 F.2d 278 (2d Cir. 1987) ................................................................................................. 29

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992) ......................................................................................... 28

*Reyes v. Altamarea Grp., LLC*,
  No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ............................................ 9

*Reyes v. Buddha–Bar NYC*,
  No. 08 Civ. 2494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ............................................. 9

*RMED Int'l, Inc.* v. *Sloan's Supermarkets, Inc.*, \
  No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ......................................... 10

*Roberts v. Texaco*,
  979 F. Supp. 185 (S.D.N.Y. 1997) ........................................................................................ 30

*In re Sadia S.A. Sec. Litig.*,
  No. 08 Civ. 9528, 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ............................................ 8

*In re Safety Components Int'l, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001) ......................................................................................... 11

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999) ................................................................................................... 7

*Schnall* v. *Annuity & Life Re (Holdings), Ltd.*,
  No. 02 Civ. 2133, slip op. at 8 (D. Conn. Jan. 21, 2005) ...................................................... 10

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 7961, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................... 13

*Strougo ex rel. Brazilian Equity Fund, Inc.* v. *Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................................... 12

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................................. 7, 14

*Taft v. Ackermans*,
  No. 02 Civ. 7951, 2007 WL 414493 [ct & date missing] ........................................................ 9

*Trs. v. Greenough*,
  105 U.S. 527 (1882) ............................................................................................................... 5

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) .................................................................. 7

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) .................................................................. 13

*In re Unisys Corp. Sec. Litig.*,
  No. 99 Civ 5333, 2001 WL 1563721 (E.D. Pa. Dec. 6, 2001) ................................ 11

*United States v. Rodolitz*,
  786 F.2d 77 (2d Cir. 1986) .......................................................................... 22

*United States, ex rel. Fox Rx, Inc. v. Omnicare, Inc.*,
  No. 12 Civ. 275, 2015 WL 1726474 (S.D.N.Y. Apr. 15, 2015) .............................. 15

*Van Dongen v. CNInsure Inc.*,
  No. 11 Civ. 7320, slip op. at 3 (S.D.N.Y. Aug. 15, 2014) ...................................... 14

*Velez v. Majik Cleaning Serv., Inc.*,
  03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ................................... 9

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
  623 F.3d 82 (2d Cir. 2010) ............................................................................ 5

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d at 525, *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96
  (2d Cir. 2005) ........................................................................................... 29

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ............................................................. 26

*Wal-mart Stores Inc. v. Visa USA Inc.*,
  396 F. 3d 96 (2d Cir. 2005) ........................................................................... 14

*In re Warnaco Grp., Inc. Sec. Litig.*,
  No. 00 Civ. 6266, 2004 WL 1574690 (S.D.N.Y. July 13, 2004) ............................. 9

*Williams v. Wells Fargo Bank, N.A.*,
  280 F.R.D. 665 (S.D. Fla. 2012) ..................................................................... 21

*Willix v. Healthfirst, Inc.*,
  No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .............................. 9

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................... 15, 27

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ................................................. 8

*Zinman v. Avemco Corp.*,
    No. 75 Civ. 1254, 1978 WL 5686 (E.D. Pa. 1978) .................................................................. 11

*In re Zyprexa Prods. Liab. Litig.*,
    594 F.3d 113 (2d Cir. 2010) ...................................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiffs' Counsel and Plaintiffs' Special Bankruptcy Counsel (collectively, "Class Counsel") [1] for the *Rothstein* Plaintiffs respectfully submit this motion and incorporated memorandum of law in support of their request for an award of attorneys' fees and reimbursement of Litigation Expenses incurred in prosecuting and resolving Plaintiffs' Bankruptcy Proofs of Claim[2] and in prosecuting Plaintiffs' claims against GMACM and Ally in *Rothstein, v. GMAC Mortgage, LLC,* No. 12 Civ. 3412 (S.D.N.Y.) (the "*Rothstein* Action). In addition, Class Counsel requests incentive awards for the four Named Plaintiffs.

Plaintiffs are residential mortgagors whose loans were serviced by GMACM and who were charged by GMACM for Lender-Placed Insurance ("LPI"). Plaintiffs alleged that GMACM — together with certain other defendants named in the *Rothstein* Action, *i.e.*, the Balboa Defendants — perpetrated a scheme to overcharge Plaintiffs for LPI in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), and applicable state law. *See* Decl. ¶ 3.[3]

The Settlement resolves Plaintiffs' Bankruptcy Proofs of Claim in exchange for an allowed unsecured claim not subject to subordination in the amount of $13 million against GMACM. *See* Decl. ¶ 4; Doc. 4941, at ¶¶ 2, 6, 21, 56. The face value of the Allowed Claim is equal to 16% of the approximately $80 million in aggregate out-of-pocket losses that Plaintiffs'

---

[1] Plaintiffs' Counsel is the law firm of Kirby McInerney LLP, and Plaintiffs' Special Bankruptcy Counsel is the law firm of Hogan McDaniel. *See* Doc. 9491-3, Strauss Decl. Ex. 1 at 6.

[2] Plaintiffs' Bankruptcy Proofs of Claim are Claim No. 4074 against GMAC Mortgage, LLC ("GMACM") and Claim No. 3966 against Residential Capital, LLC.

[3] "Decl. ¶_" or the "Supporting Declaration" refers to the Declaration of Mark A. Strauss in Support of Final Approval of Proposed Rothstein Class Action Settlement (Claim Nos. 4074 and 3966), Plan of Allocation, Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards for Named Plaintiffs, which has been filed concurrently herewith.

Counsel, assisted by Plaintiffs' Forensic Accounting Expert, estimate were suffered by the Class as a result of the alleged scheme. *See* Decl. ¶ 5. As an "Allowed Borrower Claim" in Class GS-5, the Allowed Claim is estimated to yield a \$0.30 per \$1.00 recovery from the Borrower Claims Trust. Accordingly, the Allowed Claim is expected to yield a distribution by the Borrower Claims Trust to Plaintiffs and the Class of \$3.90 million. *See id.* ¶¶ 6, 94, 99, 111.

The Settlement represents an outstanding result for the Class. It establishes a non-reversionary common fund which will be distributed to qualified Class Members. Accordingly, the Class will receive cash, and not coupons or *cy pres* relief as in many consumer class action settlements. *See id.* ¶¶ 7, 90.

Furthermore, Class Members will not be required to file claims. Rather, Plaintiffs' Counsel, with the assistance of Plaintiffs' Forensic Accounting Expert, has already identified each Class Member and determined their respective Recognized Losses. *See id.* ¶¶ 8, 90. This was accomplished through computerized, algorithmic analysis of loan payment data and LPI records of GMACM (the "Class Data") that were supplied by the Liquidating Trust. Under the Plan of Allocation, Class Members whose allocation of the Net Settlement Fund is \$10 or more, as calculated from the Class Data, will receive a distribution without having to do anything. *See id.* ¶¶ 8, 93. By this procedure, it is anticipated that the Settlement Administrator will issue approximately 61,788 distribution checks to qualified Class Members. *See id.* ¶¶ 8, 94. Hence, there is no question that the Class will receive a significant recovery, and that Class Members will be able to participate to the fullest extent possible.

The Settlement stands in marked contrast to recent settlements in other LPI class actions, which almost uniformly have been "claims made," did not involve a common fund, and which have not involved the automatic distribution of settlement proceeds to class members. *See* Decl.

¶ 10.  The Settlement also contrasts starkly with the outcomes of the three other LPI-related class actions filed against GMACM — in each of those cases the putative classes recovered nothing from GMACM.  *See id.* ¶ 86.

There was also a concrete possibility that the claims simply would have failed.  In *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 258 (2d Cir. 2015), the Second Circuit, reversing the District Court, held that the filed-rate doctrine barred Plaintiffs' claims against the Balboa Defendants.  Those claims were essentially identical to those asserted by Plaintiffs against GMACM.  Accordingly, had there been no Settlement, it is highly likely that the Court would have determined that this binding authority mandated dismissal of the Bankruptcy Proofs of Claim.  Had this occurred, Class Members would have received nothing.  *See* Decl. ¶ 74.

Class Counsel undertook the prosecution of Plaintiffs' claims on a wholly contingent basis.  As compensation for their efforts on behalf of Plaintiffs and the Class, Class Counsel respectfully request that the Court award attorneys' fees in the amount of 35% of the Settlement Fund.  Assuming that, as estimated by the Disclosure Statement, Class GS-5 claims yield a $0.30 per $1.00 recovery, the requested fee would equal $1,365,000.  *See* Decl. ¶ 111.

As set forth below, the requested fee is on a percentage basis well within the range of fees awarded by Courts in this District and elsewhere.

The requested fee would also yield a "negative" lodestar multiplier of only 0.93.  *See* Decl. ¶¶ 99, 111.  Accordingly, the requested fee clearly is reasonable because it results in a lodestar multiplier much smaller than the large positive multipliers that have been repeatedly awarded in class actions by courts in this Circuit.

Utilizing the guidelines endorsed by the Second Circuit, the requested fee merits approval. It is wholly warranted in light of, among other things, the excellent result achieved for claims that otherwise likely would have been dismissed.

The reaction of the Class also strongly endorses Class Counsel's fee request. The court-appointed Settlement Administrator has disseminated notice to the Class in compliance with the Court's Order Preliminarily Approving the Proposed Settlement with the *Rothstein* Plaintiffs (the "Notice Order"). *See* Decl. ¶ 15; Doc. 9609. The Notice described the Settlement and notified Class Members of Class Counsel's intention to apply for attorneys' fees of up to 35% of the Settlement Fund. To date, no Class Member has objected to the Settlement or to the maximum of 35% of the Settlement Fund for attorneys' fee specified therein. Decl. ¶ 89. In other words, the Class overwhelmingly approves of the Settlement and the fee request.

Class Counsel also seeks reimbursement of Litigation Expenses reasonably incurred on behalf of Plaintiffs and the Class from the Settlement Fund in the amount of $226,938.29, and $2,500 incentive awards for the four Named Plaintiffs. *See* Decl. ¶¶ 96, 113, 124, 133.

For the reasons set forth below and in the Supporting Declaration, Class Counsel respectfully submit that the requested attorneys' fees and Litigation Expenses sought are fair and reasonable under the applicable legal standards, in light of the contingency risk undertaken, the recoverability obstacles overcome, and the results achieved. The application should be approved.

## STATEMENT OF THE FACTS

The Supporting Declaration details the significant efforts undertaken by Class Counsel on behalf of Plaintiffs and the Class. For sake of brevity, those facts are incorporated by reference herein.

## ARGUMENT

4

I.    **PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

    A.    **Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund**

Pursuant to the "'equitable' or 'common fund' doctrine established more than a century ago" in *Trs. v. Greenough*, 105 U.S. 527, 532-33 (1882), "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Am. Bank Note Holographics, Inc. Sec. Litig*., 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001). It is well established that the common fund doctrine permits attorneys whose work created a common fund for the benefit of a group of plaintiffs to receive reasonable attorneys' fees from the fund.[4]

Class action lawsuits are the prototypical example of instances where the common fund doctrine applies. *Goldberger*, 209 F.3d at 47. Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *Id.* (the common fund doctrine "prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost"); *Am. Bank Note*, 127 F. Supp. 2d at 430 ("[T]he costs of litigation should be spread among the fund's beneficiaries.").[5]

In *Goldberger*, the Second Circuit emphasized the need for fee awards to be fair and reasonable, and described two forms of fee calculation methodologies. The first is the "lodestar" method, where "the district court scrutinizes the fee petition to ascertain the number of hours

---

[4] *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *15 (S.D.N.Y. July 27, 2007); *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 86 (2d Cir. 2010) (*citing In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128-29 (2d Cir. 2010) (per curiam); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).

[5] Courts have also recognized that awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47. Once the lodestar is calculated, the court "may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *ld.* (citation omitted).

The second method, which is preferred, is the "percentage of recovery" approach. *ld.* As the *Goldberger* court noted, because the percentage of recovery approach does not require courts to "exhaustively scrutinize[]" attorneys' time records, that methodology is "simpler" than the lodestar approach. *Id.* at 50; *see also id.* at 48-49 (the "primary source of dissatisfaction" with the lodestar methodology "was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits").

The advantages of the percentage of recovery methodology led the *Goldberger* court to reaffirm the Second Circuit's view that it is an accepted means for calculating attorneys' fees in class actions. *Id.* at 49 ("the percentage-of-the-fund method is a viable alternative") (*quoting Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)). The court held that as long as utilizing the percentage of recovery methodology does not produce an "unwarranted windfall[]" to counsel, there is "no need to compel district courts to undertake the 'cumbersome, enervating, and often surrealistic process' of lodestar computation." *Goldberger*, 209 F.3d at 49-50 (*quoting Savoie*, 166 F.3d at 461 n.4). The court also decided to "encourage" the analysis of counsel's lodestar "as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209

F.3d at 50 (citation omitted).  Accordingly, most district courts in this Circuit and elsewhere have

adopted the percentage of recovery methodology.[6]

### 1.    The Requested Fee Award Is Reasonable Under The Percentage Method

On a percentage basis, the request for a 35% fee is well within the range of fees approved

by courts in this Circuit, especially in cases involving settlements of comparable size.  *See, e.g.,*

*In re Hi-Crush Partners L.P. Sec. Litig.*, 12 Civ. 8557, 2014 WL 7323417, at *12 (S.D.N.Y. Dec.

19, 2014) (awarding 33.3% of $3.8 million settlement); *City of Providence v. Aeropostale, Inc.,*

No. 11 Civ. 7132, 2014 WL 1883494, at *20 (awarding 33% of $15 million settlement);

*Fogarazzo v. Lehman Bros. Inc.,* No. 03 Civ. 5194, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23,

2011) (awarding 33.3% of $6.75 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.,*

279 F.R.D. 151, 165 (S.D.N.Y. 2001) (awarding 33% of $13 million settlement).[7]

---

[6] *See, e.g., Am. Bank Note,* 127 F. Supp. 2d at 431 ("[T]he trend of the district courts in this Circuit is to use the percentage of the fund approach to calculate attorneys' fees"); *In re Twinlab Corp. Sec. Litig.,* 187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002) ("The trend in the Second Circuit is to use the percentage method") (citing *Am. Bank Note,* 127 F. Supp. 2d at 431); *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ("Support for the lodestar/multiplier approach in common fund cases has eroded, and there has been a 'ground swell of support for mandating a percentage-of-the-fund approach' in the common fund cases.") (citation omitted); *Klein ex rel. Ira* v. *PDG Remediation, Inc.,* No. 95 Civ. 4954, 1999 WL 38179, at *3 (S.D.N.Y. Jan. 28, 1999) ("The lodestar approach has been criticized, and courts now favor awarding counsel in common fund cases . . . a percentage of the settlement fund."); *see also Maley,* 186 F. Supp. 2d at 370 ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").

[7] *See, e.g., Maley,* 186 F.Supp.2d at 367–68 (awarding 33 1/3% of $11.5 million settlement and citing two cases which awarded 33 1/3% of the settlement amount); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *In re BGI, Inc.,* 465 B.R.365, 383 (S.D.N.Y. 2012) (approving an attorneys' fee award of 33.3% of the settlement amount recovered on behalf of the class); *Yuzary v. HSBC Bank USA, N.A.,* No. 12 Civ. 3693, 2013 WL 5492998, at *9 (S.D.N.Y. Oct. 2, 2013) (31.7% attorneys' fee); *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 477-78 (33 1/3% attorneys' fee); *In re Initial Pub. Offering Sec. Litig.,* 671 F. Supp. 2d 467, 480 (S.D.N.Y. 2009) (awarding 33 1/3% fee on recovery of $586 million); *In re Sadia S.A. Sec. Litig.,* No. 08 Civ. 9528, 2011 WL 6825235, at *3-4 (S.D.N.Y. Dec. 28, 2011) (approved plaintiffs' counsel fees of thirty percent, or $8.1 million, after assessing the Goldberger factors); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 504 F.3d 229, 239 (2d Cir. 2007) (awarding fees in the amount of 30 percent of the total settlement); *Chavarria v. N.Y. Airport Serv., LLC,* 875 F. Supp. 2d 164, 178 (E.D.N.Y. 2012). **[footnote continued on next page]**

It is also in line with awards in class actions throughout the country. *See, e.g., Faircloth* v. *Certified Fin. Inc.,* No. 99 Civ. 3097, 2001 WL 527489, at *12 (E.D. La. May 16, 2001) (awarding attorneys' fees of 35% of settlement plus interest and reimbursement of expenses); *In re Ravisent Techs., Inc. Sec. Litig.,* No. 00 Civ. 1014, 2005 WL 906361, at *15 (E.D. Pa. Apr. 18,2005) (awarding attorneys' fees of one-third of $7 million settlement); *In re Corel Corp. Inc. Sec. Litig.,* 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003) ("[T]he 33 1/3% fee request in this complex case is within the reasonable range."); *In re Gen. Instrument Sec. Litig.,* 209 F. Supp. 2d 423,439 (E.D. Pa. 2001) (awarding attorneys' fees of one-third of settlement as "fair and reasonable," plus reimbursement of expenses); *In re Eng'g Animation Sec. Litig.,* 203 F.R.D. 417,

_____

(awarding fees in the amount of one-third of the total settlement); *Reyes v. Buddha–Bar NYC,* No. 08 Civ. 2494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (awarding fees in the amount of 33% of the total settlement); *In re Marsh ERISA Litig.,* 265 F.R.D. 128, 149 (S.D.N.Y. 2010) (one-third fee of $35 million settlement was reasonable); *Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (awarding 33 1/3% fee on $7,675,000 settlement; "Class Counsel's request for 33 1/3% of the [$7,675,000 Settlement] Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* No. 02 Civ. 3400, 2010 WL 4537550, at *24 (S.D.N.Y. Nov. 8, 2010) (fee award of 30% of net settlement fund was reasonable); *Reyes v. Altamarea Grp., LLC,* No. 10 Civ. 6451, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Velez v. Majik Cleaning Serv., Inc.,* 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (31% fee award); *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (attorneys' fee award of 40% of the fund); *Hicks v. Morgan Stanley,* No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (citation omitted) (awarding 30% fee from a $10 million fund); *In re Warnaco Grp., Inc. Sec. Litig.,* No. 00 Civ. 6266, 2004 WL 1574690, at *2 (S.D.N.Y. July 13, 2004) (awarding 30% fee on a $12.85 million settlement); *Taft v. Ackermans,* No. 02 Civ. 7951, 2007 WL 414493, at *10 (holding "a fee of thirty percent of the settlement fund is consistent with fees awarded in similar class action settlements resulting in settlements of comparable value. Thirty percent of a larger settlement fund could constitute a windfall; however a settlement fund of this size [$15.175M] does not create such an issue.") (collecting cases holding same); *Cohen v. Apache Corp.,* No. 89 Civ. 76, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund); *In re Avon Prods., Inc. Sec. Litig.,* No. 89 Civ. 6216, 1992 WL 349768, at *3 (S.D.N.Y. Nov. 5, 1992) (awarding 30% of $6.4 million settlement fund). *In re Crayfish Co. Sec. Litig.,* No. 00 Civ. 6766 , slip op. at 7 (S.D.N.Y. July 28, 2004) (awarding 30% of $9 million settlement, plus expenses); *In re Plug Power, Inc. Sec. Litig.,* No. 00 Civ. 5553, slip op. at 7 (E.D.N.Y. Apr. 29, 2005) (ECF No. 73) (awarding 30% of $5 million settlement, plus expenses); *Schnall* v. *Annuity & Life Re (Holdings), Ltd.,* No. 02 Civ. 2133, slip op. at 8 (D. Conn. Jan. 21, 2005) (ECF No. 192) (awarding 33 1/3% of $16.5 million settlement, plus expenses); *RMED Int'l, Inc.* v. *Sloan's Supermarkets, Inc.,* No. 94 Civ. 5587, 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (awarding 33 1/3% of $975,000 settlement plus reimbursement of expenses); *Adair* v. *Bristol Tech. Sys., Inc.,* No. 97 Civ. 5874, 1999 WL 1037878, at *3 (S.D.N.Y. Nov. 16, 1999) (awarding requested counsel fee of 33% of the $975,000 settlement fund, and finding that "Courts in this District have previously awarded fees at or exceeding this level on numerous occasions").

423-24 (S.D. Iowa 2001) (awarding attorneys' fees of $2.5 million, or one third of common fund, plus expenses).[8]

Indeed, nationally, courts recognize that the "market rate" value for contingent legal services is generally between 33% and 40% of the recovery.[9]

In the *Kessler* class action settlement, this Court awarded attorneys' fees of 35%, resulting in a high positive lodestar multiplier of 2.93. *See* Doc. 5598. In light of that award, the request for the same percentage here, yielding a "negative" lodestar multiplier of only 0.93, clearly is reasonable.

### 2.    The Requested Fee is Reasonable Under the Lodestar Cross-Check

As noted above, the Second Circuit has "encourage[d]" analysis of counsel's lodestar "as a 'cross check' on the reasonableness of the requested percentage." *Goldberger,* 209 F.3d at 50 (citation omitted); *accord, e.g., Strougo ex rel. Brazilian Equity Fund, Inc.* v. *Bassini,* 258 F.

---

[8] *See also In re Neoware Sys., Inc. Sec. Litig.,* No. 98 Civ. 2582, 2000 WL 1100871, at *3-4 (E.D. Pa. July 27, 2000) (awarding counsel fees of approximately one-third of each of two settlement funds, plus a proportionate share of interest accrued and reimbursement of expenses); *In re Unisys Corp. Sec. Litig.,* No. 99 Civ. 5333, 2001 WL 1563721, at *3-4 (E.D. Pa. Dec. 6, 2001) (approving one-third fee sought by plaintiffs' counsel as fair and reasonable); *In re Safety Components Int'l, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 101-02 (D.N.J. 2001) (approving fee request of one-third of $4.5 million settlement); *Neuberger* v. *Shapiro,* 110 F. Supp. 2d 373, 386 (E.D. Pa. 2000) (approving 30% of $4.5 million settlement fund); *Gaskill* v. *Gordon,* 942 F. Supp. 382, 387-88 (N.D. Ill. 1996) (awarding 38% of the settlement fund), *aff'd,* 160 F.3d 361 (7th Cir. 1998); *Muehler* v. *Land O'Lakes, Inc.,* 617 F. Supp. 1370, 1380-81 (D. Minn. 1985) (awarding attorneys' fees of 35% of settlement recovery); *In re Ampicillin Antitrust Litig.,* 526 F. Supp. 494, 500 (D.D.C. 1981) (awarding attorneys' fees of 45% of settlement recovery); *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (awarding attorneys' fees of 33% of total recovery); *Kogan* v. *AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D. Mich. 2000) (awarding attorneys' fees of one-third of common fund). *Barfuss* v. *DGSE Cos., Inc.,* No. 12 Civ. 3664, slip op. at 6 (N.D. Tex. Oct. 21, 2013) (ECF No. 59) (awarding 33% of $1.7 million settlement); *In re Heritage Bond Litig, No.* 02 ML 1475, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding 33 1/3% of $27.278 million settlement); *In re Corel Corp. Inc. Sec. Litig.,* 293 F. Supp. 2d at 497-98 (awarding 1/3% of $7 million settlement); *In re E.W. Blanch Holdings, Inc. Sec. Litig.,* No. 01 Civ. 258, 2003 WL 23335319, at *3 (D. Minn. June 16, 2003) (awarding 33 1/3% of $20 million settlement); *Clark* v. *Cameron-Brown Co.,* No. C-75-65-G, 1981 WL 1637, at *4 (M.D.N.C. Apr. 6, 1981) (awarding fees in the amount of 35% of $2.85 million settlement); *Zinman* v. *Avemco Corp.,* No. 75 Civ. 1254, 1978 WL 5686, at *2 (E.D. Pa. 1978) (50% of $260,000 settlement).

[9] *See Gaskill* v. *Gordon,* 160 F.3d 361, 362-63 (7th Cir. 1998) ("[t]he typical contingent fee is between 33 and 40 percent," affirming fee award of 38% of common fund); *Kirchoff* v. *Flynn,* 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation.").

Supp. 2d 254, 263 (S.D.N.Y. 2003) (same).  The *Goldberger* court emphasized that where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger,* 209 F.3d at 50.

Class Counsel expended more than 2,487.00 hours of professional time (excluding time spent on the instant fee and expense application).  *See* Decl. at ¶¶ 99, 111, Exs. C and D.  Class Counsel's aggregate lodestar, derived by multiplying these hours by each firm's current hourly rates[10] for its attorneys, paralegals, and other professional staff, comes to $1,464,942.00.  *Id.*

Courts recognize that "[u]nder the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  *In re Marsh & McLennan Cos., Inc. Sec. Litig*., No. 04 Civ. 8144, 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009).

Here, however, assuming that, as estimated by the Disclosure Statement, Class GS-5 claims yield a $0.30 per $1.00 recovery, the requested fee would be only $1,365,000 — *i.e.*, less than Class Counsel's aggregate lodestar of $1,464,942.00.  In particular, the requested fee would yield a "negative" lodestar multiplier of only 0.93.  *See* Decl. ¶¶ 111-12.

The "negative" multiplier indicated by the cross-check in this case strongly indicates that the requested fee is reasonable.  Indeed, Courts in the S.D.N.Y routinely award percentage-based fee awards where lodestar cross-checks yield high positive multipliers.  Multipliers of nearly five have been "deemed 'common.'"  *See, e.g., In re EVCI Career Colls. Holding Corp. Sec. Litig*.,

---

[10] The Supreme Court has approved use of current rather than historical rates in the lodestar calculation. *See Mo v. Jenkins*, 491 U.S. 274, 283-84 (1989).  Using current rates helps "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest."  *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (citation omitted).

No. 05 Civ. 10240, 2007 WL 2230177, at *17 n.7 (S.D.N.Y. July 27, 2007) (cited by *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014)).[11] Accordingly, application of the lodestar method confirms the reasonableness of the fee request.

In calculating Class Counsel's lodestar, the hourly rates "should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997) (internal quotations omitted). Awards in comparable cases are an appropriate measure of the market value of counsel's time. *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 885 (2d Cir. 1983).

Class Counsel's billing rates, ranging from $125 to $900 per hour for Plaintiffs' Counsel, and from $350 to $435 per hour for Plaintiffs' Special Bankruptcy Counsel (*see* Decl. Exs. C and D), are comparable to, if not lower than, those of peer plaintiff and defense-side law firms litigating matters of similar magnitude (*see* Decl. Ex. E). Comparable billing rates have been approved by judges in this District and elsewhere in the last 2-5 years, and market rates have risen since then.[12]

---

[11] *See also Wal-mart Stores Inc. v. Visa USA Inc.*, 396 F. 3d 96, 123 (2d Cir. 2005) (upholding a multiplier of 3.5 as reasonable on appeal); *Van Dongen v. CNnsure Inc.*, No. 11 Civ. 7320, slip op. at 3 (S.D.N.Y. Aug. 15, 2014) (ECF No. 57) (3.11 lodestar multiplier in a case settling for $6.6 million); *Sumitomo*, 74 F. Supp. 2d at 399-400 (multiplier of 2.5 in RICO action); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir. 2008) (noting that 2.04 multiplier was "toward the lower end of reasonable fee awards"); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier as "well within the range awarded by courts in this Circuit and courts throughout the country").

[12] *See, e.g.*, *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (finding rates ranging from $425 to $825 per hour to be comparable in S.D.N.Y.); *City of Providence*, 2014 WL 1883494, at *13 (approving partner rates of $640 to $875 and non-partner attorney rates of $335 to $725); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (hourly rates of $650-$850 for partners and $515 for senior associates were "not inordinate for top-caliber New York law firms"); *United States, ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12 Civ. 275, 2015 WL 1726474, at *2 (S.D.N.Y. Apr. 15, 2015) (approving rates ranging from $541 for associates to $836 for partners and citing "a
**[footnote continued on next page]**

**B.      The *Goldberger* Factors Support The Requested Award Of Attorneys' Fees**

Regardless of whether a court applies the lodestar method or the percentage method, its

ultimate task is to ensure that the fees awarded are "reasonable" under the circumstances.

*Goldberger*, 209 F.3d at 47.    The determination of "reasonableness" is within the Court's

discretion.  *Id.*; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005).  In

the exercise of such discretion:

> [D]istrict courts should continue to be guided by the traditional criteria in
> determining a reasonable common fund fee, including: "(1) the time and labor
> expended by counsel; (2) the magnitude and complexities of the litigation; (3) the
> risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in
> relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (citation omitted).

Although none of the *Goldberger* factors is controlling, each weighs strongly in favor of

approving Class Counsel's fee request.

**1.      The Time and Labor Expended by Class Counsel Support the Requested Fee**

As set forth above and in the Supporting Declaration, Class Counsel devoted an

aggregate of 2,487.00 hours to prosecuting and resolving Plaintiffs' claims and effectuating the

Settlement (excluding time devoted to preparing this submission), yielding a total "lodestar" of

$1,464,942.00.  *See* Decl. ¶¶ 99, 111; *id*. Exs. C and D.  The many hours expended by Class

Counsel are reasonable in view of the work performed and the risks faced, as described in depth

in the Supporting Declaration.  *See* Decl. ¶ 121.  Class Counsel's work included:

---

recent report from Pricewaterhouse Coopers indicating that the average billing rate for non-IP New York City
partners . . . is $942 per hour, well above the rate requested here."); *see also In re High-Tech Emp. Antitrust Litig.*,
No. 11 Civ. 2509, 2015 WL 5158730, at \*9 (N.D. Cal. Sept. 2, 2015) (finding that rates for partners ranging from
$490-$975 "are reasonable in light of prevailing market rates in this district").

a.    Researching, preparing and filing Plaintiffs' 44-page initial complaint, 91-page First Amended Class Action Complaint, and 108-page Second Amended Class Action Complaint in the *Rothstein* Action,[13] *see* Decl. ¶¶ 27, 34, 68;

b.    Researching, preparing and filing Plaintiffs' 35-page brief in opposition to the Balboa Defendants' motion to dismiss in the *Rothstein* Action, *see* Decl. ¶¶ 36, 69;

c.    Researching, preparing and filing Plaintiffs' Bankruptcy Proofs of Claim, *see* Decl. ¶ 42;

d.    Researching, preparing and filing Plaintiffs' 22-page opposition to the motion filed by Ally seeking to stay the claims against Ally in the *Rothstein* Action, and in support of Plaintiffs' cross-motion for relief from any applicable stay, *see* Decl. ¶ 45;

e.    Researching, preparing and filings Plaintiffs' Objection and Reservation of Rights to the Disclosure Statement, *see* Decl. ¶ 49;

f.    Conducting an extensive investigation of the facts and legal principles relating to Plaintiffs' claims, including (i) reviewing and analyzing hundreds of pages of transcripts from public hearings on LPI held by regulators; (ii) filing requests under New York's Freedom of Information Law and reviewing and analyzing thousands of pages of documents obtained pursuant thereto; (iii) gathering, reviewing and analyzing numerous relevant documents from available public sources; and, (iv) conferring with a confidential witness, *see* Decl. ¶¶ 65-67;

g.    Conducting extensive negotiations and discussions with counsel for the Debtors and the Committee, including a nearly day-long, arm's-length, face-to-face negotiation session on September 9, 2013, *see* Decl. ¶ 51;

h.    Negotiating and drafting the Stipulation and Order of Confidentiality to protect the Personal Identifiable Information of Class Members in connection with the Settlement, *see* Decl. ¶ 60;

i.    Conducting extensive and highly technical discussions and negotiations with the Debtors and GMACM's successor regarding the production of the Class Data, *see* Decl. ¶ 59;

j.    Conferring extensively with Plaintiffs' Forensic Accounting Expert regarding the production and analysis of the Class Data, including the development of an

---

[13] As described in the Supporting Declaration, Plaintiffs' initial complaint in the *Rothstein* Action pled claims against GMACM. *See* Decl. ¶ 27. After GMACM filed for Chapter 11, Plaintiffs' subsequent pleadings pled claims against Ally Bank and Ally Financial based on theories of veil-piercing, alter-ego liability, and agency law. *See id.* ¶¶ 30-32.

algorithm to iterate through borrower payment histories, identify Class Members, and determine Class Members' Recognized Losses, *see* Decl. ¶¶ 59, 62;

k.      Conducting extensive negotiations with the Settling Defendants regarding the terms of the Stipulation and associated documentation, and taking the laboring oar in drafting those documents, *see* Decl. ¶ 55; and,

l.      Researching, preparing and filing Plaintiffs' motion in support of preliminary approval of the Settlement, *see* Decl. ¶¶ 15, 55-57.

Moreover, at all times, Plaintiffs' Counsel conferred extensively with Plaintiffs' Special Bankruptcy Counsel to develop an understanding of the legal issues relating to the bankruptcy and to develop and execute strategies for maximizing the Class's recovery against GMACM. *See* Decl. ¶ 70.

The significant time and effort that Class Counsel devoted in this case support approval of the requested fee.[14]

## 2.      The Magnitude and Complexity of the Litigation Weigh in Favor of Approval of the Fee Request

As described fully in the Supporting Declaration, Plaintiffs' claims involved highly complex legal and factual issues, including whether (i) the filed-rate doctrine applied, (ii) Plaintiffs could prove their veil-piercing, alter-ego or agency claims against Ally, (iii) the claims against Ally were stayed by Section 362 of the Bankruptcy Code, and (iv) Plaintiffs could prove their RICO claims.[15]  Decl. ¶ 12.  Reflecting the complexity of the matter, Plaintiffs' pleadings

---

[14] Notably, Class Counsel's efforts do not end with Final Approval.  Once the Borrower Claims Trust Distributes the Settlement Amount, Class Counsel will supervise the process of allocating and distributing the Net Settlement Fund and prepare and file a motion for distribution of the Net Settlement Fund and payment of any unreimbursed Notice and Administration costs.

[15] Courts acknowledge that class actions brought under RICO are notoriously complex.  *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (noting complexity and approving fee request in case involving RICO and conspiracy violations against multiple defendants); *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 265-66 (E.D.N.Y. 2009) ("challenges of establishing liability and damages" in RICO class action "suggest that continued litigation is likely to be complex, expensive and long, weighing in favor of approval.").

14

were extensive.  *See* Decl., ¶¶ 30, 34, 68.  Indeed, Plaintiffs' 108-page Second Amended Class

Action Complaint in the *Rothstein* Action set forth more than 100 paragraphs of allegations

relating to Ally's alleged control and domination of GMACM.  *Id.* at ¶¶ 30-34, 68.   Plaintiffs'

RICO claims against GMACM were based on three different types of alleged predicate

violations (mail and wire fraud and extortion).  *See Rothstein* ECF No. 39 at ¶¶ 107-114.

Moreover, Plaintiffs' 35-page brief in opposition to the Balboa Defendants' motion to

dismiss in the *Rothstein* Action, as well as Plaintiffs' 22-page brief in opposition to Ally's

motion for a stay under Section 362 of the Bankruptcy Code, reflected extensive legal research.

*See* Decl. ¶¶ 36, 45, 69-70; *see Rothstein*, ECF No. 50; Doc. 3343.

This was also a case where Plaintiffs litigated simultaneously in two courts, as Class

Counsel navigated the complexities raised by the Chapter 11 filing.  *See* Decl. ¶¶ 29, 42-57.

Class Counsel also successfully obtained and analyzed the Class Data.  This represented

an extremely complex undertaking.  *See* Decl. ¶¶ 58-64.  The Class Data amounted to more than

8.5 gigabytes of information regarding more than 143,000 Class Members.  Plaintiffs' Counsel

had to confer extensively with Plaintiffs' Forensic Accounting Expert and the Debtors in

connection with this process.  *Id.* 59, 61.

### 3.    The Risks of the Litigation Warrant Approval

"Contingency risk is the principal, though not exclusive, factor courts should consider in

their determination of attorneys fees."  *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No.

98 Civ. 4318, 2001 WL 709262, at *6, (S.D.N.Y. June 22, 2001).[16]

---

[16] *See also Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *City of Detroit v. Grinnell Corp.*, 495 F.2d  448, 470 (2d Cir. 1974) ("No one expects a lawyer whose **[footnote continued on next page]**

Here, as described below and in the Supporting Declaration, Class Counsel faced a number of significant risks, which further strongly supports the reasonableness of the fee request.

There was a risk, which materialized, that GMACM would file Chapter 11, impairing Plaintiffs' ability to collect any settlement or recovery. *See* Decl. ¶¶ 29-31; *In re Hibbard Brown & Co.*, Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (noting that even successful claimants in bankruptcy are at risk of non-collection).

The filed-rate doctrine defense also posed an enormous risk to Plaintiffs. As indicated above, in *Rothstein v. Balboa Ins. Co.*, the Second Circuit held that the filed-rate doctrine barred Plaintiffs' claims against the Balboa Defendants. Those claims were essentially identical to those asserted by Plaintiffs against GMACM. Had there been no Settlement, it is highly likely that the Court would have determined that this binding authority mandated dismissal of Plaintiffs' Bankruptcy Proofs of Claim. In this event, the Class would have received nothing. *See* Decl. ¶¶ 35, 37, 41, 74.

The uncertain outcome of the Balboa Defendants' motion to dismiss in the *Rothstein* Action also loomed as a large risk. *See* Decl. ¶ 75. That motion — which involved numerous issues potentially dispositive of Plaintiffs' claims against GMACM, such as the applicability of the filed-rate doctrine and the sufficiency of Plaintiffs' RICO claims, which alleged a conspiracy by GMACM and the Balboa Defendants — was fully briefed and pending at the time that the Settling Parties were negotiating the Settlement. Class Counsel was keenly aware that, were the District Court to grant the motion, it very likely would have torpedoed Plaintiffs' chances of getting a settlement from the Debtors, and rendered the Bankruptcy Proofs of Claim of little or

---

compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").

no value.  *Id.*  Class Counsel therefore sought to mitigate this risk by attaining the Settlement prior to the District Court's issuing its decision.  As indicated above, the Settling Parties reached their agreement in principle to resolve Plaintiffs Bankruptcy Proofs of Claim just *three weeks* before the District Court's decision came out.  *Id.*

Class Counsel also faced a significant risk that the Court would refuse to certify the proposed nationwide Class.  Numerous courts have declined class certification in LPI cases or limited the proposed class to a single state.[17]

Class Counsel also faced risks in proving damages.  "In class actions, the 'complexities of calculating damages increase geometrically.'"  *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (citation omitted); *see In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (observing that proving damages often becomes a "battle of experts . . . with no guarantee of the outcome").  Here, establishing damages would have required expert analysis of literally millions of transactions.  While Plaintiffs conducted such an expert analysis in connection with the Settlement, it is highly doubtful that this difficult task could have been achieved without the willing cooperation of the Debtors.  Decl. ¶¶ 59-61.

Class Counsel additionally faced serious obstacles in proving Plaintiffs' RICO claims. Plaintiffs would have had to show that GMACM "participated in a scheme to defraud" and evinced a "specific intent to defraud."  *Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411, 424 (S.D.N.Y. 1992) (*citing United States v.*

---

[17] *See Gooden v. Suntrust Mortg., Inc.*, No. 11 Civ. 2595, 2013 WL 6499250, at *9 (E.D. Cal. Dec. 11, 2013) (denying certification); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 550 (C.D. Cal. 2013) (same); *Gordon v. Chase Home Fin., LLC*, No. 11 Civ. 2001, 2013 WL 436445, at *12 (M.D. Fla. Feb. 5, 2013) (same); *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11 Civ. 81373, 2013 WL 139913, at *13 (S.D. Fla. Jan. 10, 2013) (same); *Lane v. Wells Fargo Bank, N.A.*, No. 12 Civ. 04026, 2013 WL 3187410, at *16 (N.D. Cal. June 21, 2013) (certifying only single-state class); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 675 (S.D. Fla. 2012) (same).

*Rodolitz*, 786 F.2d 77, 80 (2d Cir. 1986)).  Notably, GMACM sought to blame any wrongdoing

on the Balboa Defendants.  *See* Decl. ¶¶ 81-83; *Rothstein*, ECF No. 39 at ¶ 73.

Indeed, Courts across the country have rendered opinions illustrating the numerous risks

associated with LPI claims brought by mortgagors.  In *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d

1098 (11th Cir. 2014), the Eleventh Circuit dismissed lender-placed flood insurance claims

brought under Alabama law.  The court held that commissions paid by the insurer to the bank did

not constitute "kickbacks" because the servicer did not owe a fiduciary duty to the borrowers.  *Id.*

at 1110.  In *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013), the Seventh Circuit

affirmed a decision dismissing LPI claims holding that there was nothing "'unfair'" or

"'deceptive'" about the defendants' allegedly improper LPI practices.[18]  *Id.* at 608-09.

Notwithstanding these risks, Class Counsel committed significant resources to the

vigorous prosecution of Plaintiffs' claims, and have yet to receive any compensation.  Thus, the

risk of non-payment to Class Counsel and the risks involved in proving the Class's claims were

great and cannot be underestimated.  This factor weighs in favor of the requested fee.

### 4.    The Quality Of The Representation Favors Approval Of Class Counsel's Fees

Class Counsel also submits that the quality of their representation supports the

reasonableness of the requested fee.  Plaintiffs' Counsel has many years of experience in the

complex litigation of consumer and other class actions.  *See* Decl., Ex. C.  Plaintiffs' Special

---

[18] *See also Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 454-55 (1st Cir. 2013) (*en banc*) (affirming dismissal of LPI claims because, *inter alia*, plaintiff "unquestionably received value for the additional cost" paid, bank gave adequate disclosures and warnings, and bank was protecting its "reasonable and legitimate economic interests," and concluding that the plaintiffs' argument that "the only reason Defendants demanded additional flood insurance was an improper effort to self-deal . . . collecting for itself or its affiliates insurance brokerage commissions and excessive premiums" did not pass *Iqbal*'s plausibility standard).

Bankruptcy Counsel is experienced in bankruptcy litigation and well trained in all aspects of bankruptcy law.  *See id*. Ex. D.

Notably, Class Counsel demonstrably outperformed other plaintiffs' attorneys proceeding against GMACM on similar theories.  Three other LPI-related class actions were filed against GMACM – *Ulbrich v. GMAC Mortgage, LLC*, No. 11 Civ. 62424 (S.D. Fla.), *Cronk v. GMAC Mortgage, LLC*, No. 11 Civ. 5161 (E.D. Pa.), and *Throm v. GMAC Mortgage, LLC*, No. 11 Civ. 6813 (E.D. Pa.).  The claims against GMACM in each were stayed pursuant to Section 362. Decl. ¶ 86.  Unlike Class Counsel, however, the plaintiffs' counsel in those cases failed to pursue the matter further – they did not amend their pleadings to name any non-debtor affiliates of GMACM as new defendants, or develop or plead arguably direct, personal and non-derivative theories of recovery against them, or take additional steps to position themselves for maximizing their recoveries in the bankruptcy proceeding, *e.g.*, by declaring their objection to the planned Third Party Releases.  *See id*.  Only Class Counsel devoted the time, effort, and expertise necessary to pursue and execute such far more sophisticated strategies, which paid off in the form of the Settlement.  In comparison, the putative classes in *Ulbrich*, *Cronk* and *Throm* recovered nothing from GMACM.  *See id*.; Doc. 6131.

Another consideration for assessing the quality of services rendered by Class Counsel Counsel is the quality of the opposing counsel.  *See Maley*, 186 F. Supp. 2d at 373.  Here, the Settling Defendants were represented by skilled and highly regarded counsel from Morrison & Foerster LLP, one of the most prominent national and bankruptcy defense firms with well-

19

deserved reputations for vigorous advocacy. *See* Decl. ¶ 99.[19]  Courts recognize that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in this case it supports approval of the requested fee.[20]  That Class Counsel succeeded in negotiating the excellent recovery in the face of such formidable opposition is a telling testament to Class Counsel's skill and dedication.

The positive reaction of the Class to the Settlement and the requested fee further demonstrates that Class Counsel have generated an excellent result.  As described in the Supporting Declaration, the Court-appointed Settlement Administrator, KCC, issued notice to the Class in accordance with the Notice Order. *See* Decl. ¶¶ 16, 20-26.  This included mailing more than 143,973 copies of the Summary Direct U.S. Mail Postcard Notice to Class Members. *Id*. ¶ 20.  To date, one Class Member has opted out of the Settlement, and no Class Member has objected to the Settlement or the fee request. *See* Decl. ¶¶ 11, 89, 120; Ex. B at ¶ 21, KCC Decl. Ex. F.

### 5.    The Requested Fee In Relation To The Settlement Is Reasonable

A fee award must be reasonable under the circumstances of the particular case. *See Goldberger*, 209 F.3d at 47.  The Supreme Court has held that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Mo. v. Jenkins*, 491 U.S. at 285.

---

[19] Similarly, Ally and the Balboa Defendants were represented in the *Rothstein* Action by top-tier defense firms — Otterbourg, Steindler, Houston & Rosen, LLP, and Buckley Sandler, LLP, respectively. *See* Decl. at 28 n.18.

[20] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, No. 11 Civ. 813, 2012 WL 1981505, at *2 (S.D.N.Y. June 1, 2012) (considering "the quality and vigor of opposing counsel"); *IPO*, 671 F. Supp. 2d at 510 (finding plaintiffs' counsel's prosecution against "such formidable opponents . . . an impressive feat"); *Marsh & McLennan*, 2009 WL 5178546, at *19 (reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations").

Here, the requested fee of 35% of the Settlement Fund is justified by the excellent recovery achieved. As set forth above, on a percentage basis, the fee is well within the range of fees approved by courts in this Circuit and elsewhere. *See* Point I.A.1, *supra*. Moreover, assuming that, as estimated by the Disclosure Statement, Class GS-5 claims yield a $0.30 per $1.00 recovery, the requested fee is also smaller than Class Counsel's aggregate lodestar, representing a "negative" lodestar multiplier of only 0.93. *See* Point I.A.2, *supra*. Given the significant risks at stake, 35% of the Settlement Fund is reasonable.

### 6.    Public Policy Considerations Fully Support The Fee Requested

The next factor that should be considered in determining the fee awarded to plaintiffs' counsel in class actions is "public policy considerations." *Goldberger*, 209 F.3d at 50. A strong public policy exists for rewarding firms for bringing successful class action litigation.[21] Common fund fee awards serve the important purpose of encouraging individuals to seek legal assistance to recover for injuries similarly suffered by large groups of people. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396; *accord Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980) (noting that the financial inducements offered by the class action procedure play a role "in vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.").

---

[21] *See, e.g., Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citation omitted); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) ("There is ... commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest") (citing Goldberger, 209 F.3d at 51); *In re Ashanti Goldfields Sec. Litig.*, No. Civ. 00 Civ. 717, 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005).

Adequate compensation is necessary to encourage attorneys to assume the risk of litigation in the public interest. *See Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968) ("Every successful suit duly rewarded encourages other suits to redress misconduct and by the same token discourages misconduct which would occasion suit."). Adequately compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of state and federal law. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).

Thus, public policy favors the granting of attorneys' fees sufficient to reward counsel for bringing class actions and to encourage them to bring additional such actions. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

### 7.    No Class Members Have Objected to the Settlement or Fee Request

As described more fully in the Supporting Declaration, the court-appointed Settlement Administrator, KCC issued notice to the Class in accordance with the Notice Order. *See* Decl. ¶¶ 16, 20-26. This included mailing more than 143,973 copies of the Summary Direct U.S. Mail Postcard Notice to Class Members. *Id.* ¶ 20. The Notice informs Class Members of the intention of Class Counsel to apply for an award of attorneys' fees in an amount that will not exceed 35% of the Settlement Fund. *See id.* ¶¶ 18, 96, 109, 133. To date, no Class Member has come forward to object to the Settlement or the requested fee. *See* Decl. ¶¶ 89, 120, Ex B, at

¶ 22. That no objections have been received is powerful evidence that the requested fee is fair and reasonable.[22]

### C.    Class Counsel Should be Reimbursed for their Reasonably Incurred Litigation Expenses

In addition to the requested fee of 35% of the Settlement Fund, Class Counsel respectfully request $226,938.29 in reimbursement of litigation expenses reasonably and necessarily incurred on behalf of Plaintiffs and the Class in prosecuting and resolving Plaintiffs' claims. Decl. at ¶¶ 96, 113, 133. The Notice informed Class Members that Class Counsel would seek, and for reimbursement of Litigation Expenses in the approximate amount of $250,000. Class Counsel have submitted declarations attesting to the accuracy of their expenses, and it is well established that expenses are properly recovered by counsel. *See, e.g., Marsh & McLennan*, 2009 WL 5178546, at *20; *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citations omitted).[23]

The fact that Class Counsel were willing to expend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary. "Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."

---

[22] *See, e.g., In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993) (lack of objections to requested fee supported its reasonableness); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (lack of objections is "strong evidence of the propriety and acceptability" of fee request); *In re Prudential Sec. Inc. Ltd. P 'ships Litig.*, 912 F. Supp. 97,103 (S.D.N.Y. 1996) (court determined that an "isolated expression of opinion" should be considered "in the context of thousands of class members who have not expressed themselves similarly").

[23] The various categories of expenses incurred by Class Counsel are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as fees paid to experts, notice costs, computerized research, copying and travel in connection with Plaintiffs' claims. *See Anwar*, 2012 WL 1981505, at *3 (reimbursing expenses such as "mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type 'the paying, arm's length market' reimburses attorneys") (*quoting In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 468).

23

*Anwar*, 2012 WL 1981505, at *3 (*citing Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).[24]

Notably, the lion's share of the expenses consists of reimbursement of amounts paid or payable to Plaintiffs' Forensic Accounting Expert and Plaintiffs' Database Hosting Provider.[25] Plaintiffs' Forensic Accounting Expert assisted Plaintiffs' Counsel in negotiating to obtain and analyzing the Class Data, as described in the Supporting Declaration. *See* Decl. ¶ 59. Plaintiffs' Database Hosting Provider hosted the Class Data on its computer system and programmed the algorithm that computed Class Members' Recognized Losses. *See id.* ¶ 115.[26] As described in the Supporting Declaration, those efforts are critical to the effectuation of the Settlement, having enabled the Class Members to be identified and their respective Recognized Losses to be determined for purposes of allocating and distributing the Net Settlement Fund. *See id.* ¶¶ 115-16.

### D.    The Request for Incentive Awards for the Named Plaintiffs is Reasonable and Should be Awarded

Class Counsel seeks incentive awards in the amount of $2,500 for each of the following named plaintiffs: Landon Rothstein, Jennifer Davidson, Robert Davidson, and Ihor Kobryn. Vargas. "'An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of

---

[24] *See, e.g., In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d at 525, *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96 (2d Cir. 2005) (noting that it is common practice to grant expense request and awarding $18.7 million in expenses where the "lion's share of these expenses reflects the cost of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses").

[25] Plaintiffs seek reimbursement of $157,285.04 with respect to Plaintiffs' Forensic Accounting Expert and $20,573.00 with respect to Plaintiffs' Database Hosting Provider. *See* Decl. ¶ 115.

[26] The instant request for reimbursement does not include any costs or expenses which will be incurred in the future in connection with the allocation and distribution of the Net Settlement Fund once the Settlement is finally approved and the Borrower Claims Trust Distributes the Settlement Amount. Class Counsel will apply for reimbursement or payment of any such expenses in connection with the motion for approval of the Distribution Order.

the lawsuit.'" *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124-25 (S.D.N.Y. 2001) (quoting *Berrios v. Sprint Corp.*, No. 97 Civ. 81, 1998 WL 1749828, *3 (S.D.N.Y. 1998)); *see also Roberts v. Texaco*, 979 F. Supp. 185, 187-88 (S.D.N.Y. 1997) (approving incentive awards for a class plaintiff who "provided valuable assistance to counsel in prosecuting the litigation"); *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 VB, 2013 WL 4080946, at *15 (S.D.N.Y. May 30, 2013) (approving incentive awards of $5,000 to named plaintiffs who participated in lengthy interviews with plaintiffs' counsel, submitted documents, and conferred with counsel).

Over the course of the litigation, these four Named Plaintiffs have been in frequent contact with Plaintiffs' Counsel through written correspondence and telephone calls in order to remain informed of the status of the proceedings and to discuss substantive issues relating to the claims and the Settlement. Further, in support of their claims, the Named Plaintiffs each spent considerable time reviewing records in their possession for relevant documents which they diligently provided to Plaintiffs' Counsel. Decl. ¶¶ 124-126.

The incentive awards sought are reasonable and are specified in the Stipulation.[27]

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court award the requested fee in the amount of 35% of the Settlement Fund, plus Litigation Expenses in the amount of $226,938.29, and incentive awards in the amount of $2,500 to each of the Named Plaintiffs.

---

[27] *See generally* Sherrie R. Savett, *et al.*, "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs," 936 PLI/Corp. 321 at 340 (1996) (citing fifty-two cases involving incentive awards payments and noting that the normal range of such awards is $1,000 to $5,000).

Dated: April 26, 2016

Respectfully Submitted,

**KIRBY McINERNEY LLP**


By: /s/ Mark A. Strauss
     Mark A. Strauss
Thomas W. Elrod
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 371-6600
Fax: (212) 751-2540

*Plaintiffs' Counsel*

/s/Garvan F. McDaniel
Garvan F. McDaniel
**HOGAN McDANIEL**
1311 Delaware Avenue
Wilmington, DE 19806
Tel: (302) 656-7540
Fax: (302) 656-7599

*Plaintiffs' Special Bankruptcy Counsel*