**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC,<br><br>Debtors. | Case No. 12-12020 (MG)<br><br>(Jointly Administered) |
| PNC BANK, N.A., *et al.*,<br><br>Movant-Defendants,<br><br>v.<br><br>MBIA INSURANCE CORP.,<br><br>Respondent. | 16-mc-00063<br><br>[Related case No. 13-cv-3451 (SRN/JJK/HB) pending in the U.S. District Court for the District of Minnesota] |

**ORDER GRANTING IN PART MOTION TO COMPEL**
**MBIA INSURANCE CORPORATION TO PRODUCE DOCUMENTS,**
**AND TRANFERRING ADDITONAL ISSUES TO THE**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

Some defendants in the mortgage purchase litigation pending in the U.S. District Court for the District of Minnesota (the "Minnesota District Court") served a subpoena duces tecum issued by that court on MBIA Insurance Corporation ("MBIA"), a non-party located in New York. After lengthy meet and confer sessions, the parties were unable to resolve all of the objections concerning compliance with the subpoena, although they substantially narrowed the dispute. The parties that propounded the subpoena then filed a motion to compel compliance with the subpoena in the U.S. District Court for the Southern District of New York ("Southern District of New York"), which (upon the stipulation of the parties) referred the matter to this Court because of the relationship to the Residential Capital, LLC ("ResCap") bankruptcy cases.[1]

---

[1] Other defendants in the mortgage purchase litigation in Minnesota District Court also served a subpoena duces tecum issued by the Minnesota District Court on another non-party, Ally Financial, Inc. ("AFI"), the former

The subpoena to MBIA sought production of (i) documents that MBIA provided to the examiner appointed in the ResCap bankruptcy cases, and (ii) emails broadly relating to MBIA's claims against ResCap. The motion to compel raises several issues, only one of which is resolved in this Order. Specifically, this Order resolves the portion of the motion relating to the request for and production of two submissions that MBIA provided the Examiner (as defined below). The issues concerning production of the two submissions concern the effect of the Uniform Protective Order (as defined below), approved by the Court in the ResCap bankruptcy cases, and a separate confidentiality agreement between the Examiner and other parties relating specifically to submission papers.

The remaining issues on the motion to compel enforcement of the subpoena relate to the search for and production of emails by MBIA, and the requirement that a privilege log be prepared for any emails withheld from production based on privilege. (MBIA's counsel estimates that it will cost hundreds of thousands of dollars to prepare a privilege log.) MBIA argues that the request for emails is substantially overbroad. It also argues that a large number of the emails arguably responsive to the requests are protected from disclosure by attorney-client privilege, and by the mediation privilege that this Court recognized and enforced in an earlier decision in the *ResCap Liquidating Trust Mortgage Purchase Litigation*. *See In re ResCap Liquidating Tr. Mortg. Purchase Litig.*, 536 B.R. 132 (Bankr. S.D.N.Y. 2015). The defendants that seek to compel production do *not* contest that the mediation privilege may apply to some of the emails; they argue, however, that without a privilege log, they are unable to determine which emails are covered by the privilege. After conferring with District Judge Susan Nelson, before

---

parent company of ResCap. After meet and confer sessions, AFI refused to produce *any* documents responsive to the subpoena even though the defendants substantially narrowed their document requests. Defendants filed a motion to compel compliance with the AFI subpoena in the Southern District of New York, and that motion too was referred to this Court. The motion to compel compliance by AFI will be addressed in a separate order.

whom the Minnesota actions are pending, and with the consent of MBIA, the Court has concluded that the motion to compel production of emails should be transferred to the Minnesota District Court for decision. Fed. R. Civ. P. 45(f) provides the necessary authority to transfer the motion.

The remainder of this Order addresses the production of the MBIA Submission Papers (as defined below). On June 28, 2012, I ordered the appointment of an examiner in the Residential Capital chapter 11 cases. (ECF Doc. # 536.) Arthur J. Gonzalez, Esq. was appointed as the examiner ("Examiner") on July 27, 2012. (ECF Doc. # 925.) During the Examiner's extensive investigation, with the assistance of counsel and a financial adviser, the Examiner collected over 9 million pages of documents from numerous parties, including MBIA. The Examiner ultimately prepared a very lengthy report (over 2,000 pages). (*See* ECF Doc. # 3698, 4099.) The matters investigated by the Examiner and covered in the Examiner's report go well beyond the issues involved in the pending mortgage purchase litigation in Minnesota and in a smaller number of similar cases pending before me.

In resolving the pending motion to compel production of the MBIA Submission Papers, it is important to keep in mind the current context. The Court entered an order discharging the Examiner on September 24, 2013 after completion of his work. (ECF Doc. # 5187.) The Debtors' chapter 11 Plan was confirmed on December 11, 2013, and became effective on December 17, 2013. The motion to compel does not raise any issue whether the Examiner or his professionals may properly be subject to discovery; only discovery from MBIA of its Submission Papers to the Examiner is disputed. Additionally, no issue is raised whether discovery of documents or submissions obtained by an examiner may be ordered while an examiner continues to perform his or her responsibilities. Here, the Examiner's work concluded

a long time ago.  The issues concerning protection from discovery of Submission Papers, or indeed any production of documents or information to the Examiner, would be very different if the Examiner's work was still ongoing, or if a chapter 11 plan had not yet been confirmed and become effective.  Nothing in this Order bears on such issues.

In a letter dated September 21, 2012, "the Examiner requested that various parties in interest submit a paper setting forth any arguments, analysis, and supporting documents that such parties believe may bear on the Third-Party Claims and requested that Ally and the Debtors submit responses (collectively 'Submission Papers')."  (*See Confidentiality Agreement Regarding Examiner Submission Paper* (the "Submission Confidentiality Agreement," ECF Doc. # 9786, Ex. 7 at 1).)  It turns out that MBIA prepared two Submission Papers, each supported by numerous documents.  Copies of the MBIA Submission Papers were provided to the Examiner and other parties, subject to the terms of the Submission Confidentiality Agreement.  MBIA has already produced, *without objection*, the documents that supported its Submission Papers.  The subpoena seeks production of a copy of MBIA's Submission Papers.

MBIA does *not* object to producing its two Submission Papers in response to the subpoena.  The *only* objection comes from Residential Funding Company, LLC ("RFC") and ResCap Liquidating Trust (the "Trust") (together with RFC, the "Plaintiffs"), the Plaintiffs in the Minnesota cases.  Plaintiffs' counsel asserts that the MBIA Submission Papers are protected from discovery by the Uniform Protective Order and the Submission Confidentiality Agreement.

As required by the Submission Confidentiality Agreement, MBIA gave notice of the subpoena to the Plaintiffs and Ally.[2]  The Plaintiffs' counsel filed an opposition to the motion to compel production of the Submission Papers and the Plaintiffs' counsel appeared and argued at the hearing.  MBIA refused to produce its Submission Papers because of the Plaintiffs' objection.

---

2    "Ally" means, collectively, AFI, Ally Bank and Ally Securities, LLC.

4

I initially thought that MBIA's counsel had prepared one Submission Paper, but during the proceeding for enforcement of the subpoena, after the Court ordered production to the Court for *in camera* review, it turned out that MBIA actually prepared two Submission Papers in response to the Examiner's request. These documents are entitled: (1) "Memorandum Regarding MBIA's Claims Against Ally Financial Inc. (f/k/a GMAC, LLC), Ally Bank Corp. (f/k/a GMAC Bank), and Ally Securities, LLC (f/k/a/ Residential Funding Securities, LLC)" (the "Initial Submission Paper"), and (2) "Reply Memorandum Regarding MBIA's Claims Against Ally Financial Inc. (f/k/a GMAC, LLC), Ally Bank Corp. (f/k/a GMAC Bank), and Ally Securities, LLC (f/k/a/ Residential Funding Securities, LLC)" (the "Reply Submission Paper," together with the Initial Submission Paper, the "MBIA Submission Papers"). Each of the MBIA Submission Papers bears the following legend on the cover page: "CONFIDENTIAL MATERIALS ENCLOSED—SUBJECT TO COURT ORDERS AND TERMS OF CONFIDENTIALITY AGREEMENTS." These two documents, prepared by MBIA's legal counsel, are quintessential attorney work product, setting forth the lawyers' analysis of the claims that MBIA asserted against several of the Debtors and AFI in prepetition litigation. The filing of the chapter 11 cases stayed the litigation and MBIA then asserted its claims against the Debtors in the bankruptcy cases. The Initial Submission Paper (44 pages long) has a detailed legal and factual analysis of claims, based on prepetition discovery in the pending actions and the reports of MBIA's expert witnesses in the prepetition litigation.

The Reply Submission Paper (75 pages long) explains that it sets forth MBIA's response to Submission Papers from the Debtors and AFI. Plaintiffs' counsel argued during the hearings to compel enforcement of the subpoena that the Reply Submission Paper, in particular, should not be produced because it specifically refers to and responds to arguments in the confidential

5

Submission Papers of the Debtors and AFI.  In other words, if an objection is made and sustained to the production of those Submission Papers, the Plaintiffs' counsel argues, the MBIA Reply Submission Paper that includes a discussion of the protected documents should not be produced. I will address that argument in a separate order dealing with enforcement of the subpoena to AFI. For now, I will defer ruling on whether to require production of the MBIA Reply Submission Paper.  With respect to the MBIA Initial Submission Paper, as explained below, I overrule the Plaintiffs' objection and order production of the Initial Submission Paper.

On August 20, 2012, at the Examiner's request, the Court entered an Order granting the Examiner authority to issue subpoenas, approving establishment of a document depository, and approving a Uniform Protective Order for Examiner Discovery (the "Uniform Protective Order").  (ECF Doc. # 1223-1.)  The Uniform Protective Order permitted parties to produce documents to the Examiner subject to tight confidentiality restrictions.  It is important to recognize—and the parties do not dispute—that a protective order or confidentiality agreement cannot shield from discovery in other lawsuits documents that would otherwise be discoverable. Documents covered by attorney-client privilege and attorney work product do gain added protection when produced under a court-approved protective order that expressly preserves such protection.

The legal rules applicable in federal court to protecting attorney-client privilege and attorney work product provide an important safeguard.  Federal Rule of Evidence 502(d) provides that "[a] federal court may order that the [attorney-client] privilege or [attorney work product] protection is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not a waiver in any other federal or state proceeding."  Federal Rule of Evidence 502(e) provides that "[a]n agreement on the effect of

6

disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order." The Uniform Protective Order, which was approved by an order of the Court, provides that for documents properly labeled "Highly Confidential," the documents could be produced to the Examiner without waiving attorney-client privilege or work product protection. The effect is that for documents labeled "Highly Confidential," if they contain material that would be entitled to protection for attorney-client privilege or attorney work product, such documents remain protected from discovery in any other state or federal court so long as the protection was not otherwise waived.

The Submission Confidentiality Agreement was not approved by an order of the Court and does not contain a non-waiver provision. Therefore, the Submission Confidentiality Agreement, standing alone, does not provide protection from discovery of documents that would otherwise be protected by attorney-client privilege and attorney work product. The Plaintiffs' counsel argues that *both* the Uniform Protective Order and the Submission Confidentiality Agreement cover the Submission Papers. It is not clear whether that is so, but even accepting that argument, to obtain the benefit of Federal Rule of Evidence 502(d) and continued protection of attorney-client privilege and attorney work product, the Submission Papers produced to the Examiner would have to be designated "Highly Confidential." The short answer is the MBIA Submission Papers were not so-designated—either on the Submission Papers themselves, or in the Submission Confidentiality Agreement which says that submissions are Confidential. Under the Uniform Protective Order, a designation of "Confidential" provides a lower level of protection and no specific protection for attorney-client privilege or attorney work product.

The Plaintiffs' counsel argues that because all of the Submission Papers were provided to the Examiner pursuant to the Submission Confidentiality Agreement, with the parties'

7

expectation that they could not be used for any other purpose, discovery should not be permitted. Permitting discovery in such circumstances, they say, may compromise the willingness of parties to state their views and opinions freely. The Submission Confidentiality Agreement provides that submissions shall not be used "for any purpose" beyond the Examiner's investigation and report. This may restrict other parties to the Submission Confidentiality Agreement from using the submissions, but it cannot bind anyone who was not a party to the agreement. FED. R. EVID. 502(e). The issue would be different if the MBIA Submission Papers—they clearly contain attorney work product—were designated as Highly Confidential under the Uniform Protective Order. MBIA's Submission Papers were not designated as Highly Confidential.

Plaintiffs' counsel cite two cases in support of the argument that discovery of the Submission Papers should not be ordered. *Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In re Baldwin United Corp.*, 46 B.R. 314, 316-17 (Bank. S.D. Ohio 1985). In *Ionosphere*, Judge Sweet affirmed the decision of Bankruptcy Judge Lifland, who approved a settlement in the Eastern Airlines bankruptcy case, and also refused to vacate certain protective orders shielding from discovery "confidential and commercial information" produced to the examiner in the bankruptcy case. Judge Sweet recognized the important role an examiner plays in a bankruptcy case, and the strong privacy interests that parties may have in information they turn over to an examiner during an examiner investigation. *Ionosphere*, 156 B.R. at 431–32. In affirming Judge Lifland's refusal to vacate the protective order, Judge Sweet quoted from the earlier *Baldwin United* decision:

> The prospect of an Examiner being required to indiscriminately produce investigative materials obtained through promises of confidentiality and reliance upon this Court's order raises grave concerns touching both the integrity of the Bankruptcy Court's

> processes, as well as the integrity of the statutory position of the Examiner . . . . [H]is findings do not have the binding effect on the Court or parties of those of a special master, arbitrator or magistrate . . . .

*Baldwin United*, 46 B.R. at 316.

The issues in *Ionosphere* and *Baldwin United* were different, however, from the issue raised here. Both courts refused to vacate protective orders entered by the courts in those cases that shielded the examiners from having to produce documents and information turned over to the examiners during the course of their investigations. Both decisions would be relevant if discovery was sought of all of the Examiner's files developed in the ResCap cases. Neither of those decisions dealt with whether parties producing information to an examiner can shield from production documents they turned over to the examiners. But documents produced pursuant to a protective order or confidentiality agreement cannot gain protection from discovery simply because they were turned over to another party (including an examiner) under a protective order. If the parties here wanted to protect their attorney work product—the Submission Papers—they had the means to keep that protection (assuming it was not otherwise waived) by designating their Submission Papers as Highly Confidential and subject to the Uniform Protective Order. MBIA did not do so, and it has not objected to producing the Submission Papers.

Plaintiffs' counsel also argues that production of the Submission Papers should not be compelled because they are not relevant to the issues in the mortgage purchase litigation. They argue that, as this Court previously held in an opinion regarding mediation privilege, under New York and Minnesota law, the reasonableness of the settlement reached in the ResCap bankruptcy cases regarding the allowed claim of the RMBS trustees (an issue in the Minnesota and New York mortgage purchase cases) is determined by an objective rather than subjective test. Therefore, the Plaintiffs' counsel argue, the subjective views expressed in the submissions are

9

not relevant to the issues in the pending cases. Whether the MBIA Submission Papers are admissible at trial is not the issue for this Court in determining whether the Submission Papers should be produced in discovery. Having reviewed the Submission Papers *in camera*, I conclude that the Initial Submission Paper should be produced (and decision about the Reply Submission Paper is reserved).

**NOW THEREFORE**,

1. MBIA shall produce its Initial Submission Paper to the Movants' counsel, subject to the protective order that is in place in the mortgage purchase litigation in the Minnesota District Court.

2. The Movants' motion to compel production of emails is transferred to the Minnesota District Court pursuant to Fed. R. Civ. P. 45(f).

3. Decision on whether MBIA shall be required to produce its Reply Submission Paper is reserved.

4. The Court retains jurisdiction with respect to any continuing disputes regarding the motion to compel compliance with the subpoena, *except* for those issues transferred to the Minnesota District Court.

**IT IS SO ORDERED.**

Dated:   April 28, 2016
         New York, New York

                                        ___*Martin Glenn*_____
                                            MARTIN GLENN
                                        United States Bankruptcy Judge