1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              April 26, 2016

19              11:12 AM

20

21   B E F O R E:

22   HON. MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25

1

2    Doc # 9620 Case Management Conference Concerning Cognizable

3    Damages Related to Claim Number 3759 (Frank Reed).

4    Marked Up Documents: 9523, 9598, 9620, 9639, 9851, 9856, 9858,

5    9859

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Michael Drake

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

3

1

2   A P P E A R A N C E S :

3   MORRISON & FORESTER LLP

4          Attorneys for the ResCap Borrower Claims Trust

5          250 West 55th Street

6          New York, NY 10019

7

8   BY:   JORDAN A. WISHNEW, ESQ.

9

10

11  REED SMITH LLP

12         Attorneys for the Borrower Claims Trust

13         Three Logan Square

14         1717 Arch Street

15         Suite 3100

16         Philadelphia, PA 19103

17

18  BY:   BARBARA K. HAGER, ESQ.

19

20

21  ALSO APPEARING:

22         FRANK REED, Pro Se Creditor

23

24

25

1                        P R O C E E D I N G S

2              THE COURT:  Let me get the appearances, please.  Mr.

3    Reed first.

4              MR. REED:  Frank Reed, creditor person.

5              THE COURT:  Thank you, Mr. Reed.

6              MS. HAGER:  Good morning, Your Honor.  Barbara Hager

7    with Reed Smith for the Borrower Claims Trust.

8              THE COURT:  Thank you very much.

9              MR. WISHNEW:  Good morning, Your Honor.  Jordan

10   Wishnew, Morrison & Forrester for the ResCap Borrow Claims

11   Trust.

12             THE COURT:  All right.  Thank you very much.

13             Ms. Hager, why don't you tell me where things stand?

14             MS. HAGER:  Yes, Your Honor.  We received a witness

15   list from Mr. Reed which contains the name of twenty-two

16   witnesses, in addition to himself, so I guess twenty-three in

17   total, who would either be fact and/or expert witnesses.  They

18   weren't specifically designated either way.  And also a list of

19   seventeen other witnesses who are designated as authentication

20   witnesses, which I'm not sure exactly what that means or who

21   they -- what exactly they relate to.

22             With respect to the twenty-two witnesses that I

23   mentioned first --

24             THE COURT:  The twenty-three.

25             MS. HAGER:  Well, twenty-three, there are declarations

1    that were supplied for each of those, one, of course, being

2    Mr. Reed's.  But with respect to the other twenty-two, there

3    were a couple of issues that I wanted to highlight.

4            It seems to me from reading through the declarations

5    that some of the witnesses and some of the proposed testimony

6    relates to the property that was foreclosed on and the issues

7    that were already tried relating to --

8            THE COURT:  That wasn't foreclosed.  He lives there.

9            MS. HAGER:  But there was a foreclosure --

10           THE COURT:  Okay.

11           MS. HAGER:  -- on that property.

12           It's my understanding that what we're here for now is

13    the issue of the evidence that was precluded by Your Honor's

14    ruling in 2014, which excluded from the trial evidence relating

15    to other properties and other business ventures.

16           THE COURT:  Well, I think I got a problem with respect

17    to his -- the house that was foreclosed.

18           MS. HAGER:  So since we were here already and had a

19    trial already and had witnesses who testified and who had -- we

20    we had a witness list and potential evidence that Mr. Reed was

21    trying to get in, he's trying to, it seems to me, put some of

22    that evidence back in.

23           And I'll give Your Honor an example of what I'm

24    talking about.  One of the witnesses at trial was Christy

25    Donati.  She's a New Jersey attorney.

1          THE COURT:  I remember her.

2          MS. HAGER:  She provided a declaration most recently

3     which lists out her -- basically her fee for her services for

4     Mr. Reed.  So it would seem to me that with respect to whatever

5     her fees were, if Mr. Reed sought to recover that, that that

6     would have been something that he could have put on in the

7     trial in the first instance.  The door is not open at this

8     point to retrying issues that could have been tried previously

9     or letting in evidence that could have come in previously.

10          There are others.  Dr. Jay Sussman was precluded from

11     testifying because he was not on the witness list previously.

12     Your Honor granted our motion in limine in that regard.  He now

13     has supplied a declaration, which simply affirms an earlier

14     letter that he had written regarding Mr. Reed's physical

15     condition.  But it would seem to me that if he was precluded in

16     the first trial, that he would be precluded now.

17          The appellate order didn't address Mr. Sussman or any

18     of these other witnesses or evidence.  What the appellate order

19     addressed were the other properties and other --

20          THE COURT:  Right.

21          MS. HAGER:  -- business ventures.

22          THE COURT:  How many of the witnesses listed involve

23     other properties and ventures?

24          MS. HAGER:  That would be seventeen.  Five of them

25     appear to be witnesses who were either on the witness list

1  previously or somehow connected to evidence that he tried to
2  get in previously, specifically Dr. Sussman, Robert Curley who
3  was the vice president of TD Bank.  He gave a declaration most
4  recently to authenticate some earlier letters.  And you might
5  recall that those letters were precluded because they were not
6  properly authenticated.  Mr. Reed is now trying to authenticate
7  them and backdoor them to get them in for this trial when they
8  related to the refinance on the Matlack property.

9          Jeff Walters is a New Jersey lawyer who represented
10 Mr. Reed in connection with his litigation against GMAC.
11 Previously, Mr. Reed had tried to get his invoices in at the
12 trial.  They were not specific enough.  They didn't provide
13 enough detail and were not authenticated at trial.

14         Christy Donati I mentioned.

15         Evan Hendricks was an expert that Mr. Reed proposed on
16 credit issues.  And his testimony was precluded on the basis
17 that Mr. Reed had not supplied any credit reports.

18         So those five specifically, we have questions about
19 it, issues with because all of those people or the evidence
20 that he's seeking to get in through those folks could have
21 been -- or was attempted to get in at our trial.  And it seems
22 to now fall outside the rubric that we're operating under at
23 this point.

24         That leaves us with seventeen.

25         THE COURT:  Does the seventeen include him?

1          MS. HAGER:  Plus Mr. Reed.

2          THE COURT:  Okay.

3          MS. HAGER:  Of those seventeen, frankly, none are

4   specifically designated as expert, but some appear to me that

5   maybe they are.  But I guess I'll leave that to Mr. Reed to

6   clarify.

7          Some of these are -- I'd say more than half are

8   located in Virginia, or it appears they are located in

9   Virginia.  Let me just clarify that.  I was not supplied with

10  addresses for the majority of these people.  But most of them

11  appear to presently be in Virginia or at least were in Virginia

12  at the time of the issues with Mr. Reed's Virginia property.

13         So one issue is I'm going to need addresses in order

14  to subpoena everyone because of their location.  Obviously,

15  we'll need to travel down there to take the depositions, which

16  we're willing to do.

17         That does raise one issue, potentially, with

18  scheduling.  We are able to get it done in the time frame that

19  Your Honor has ordered what was required to be done by June

20  3rd.  I'm not sure whether Mr. Reed is aware of the travel

21  requirement, whether he can do that.  But basically, I just

22  wanted to make sure that it was put out there that we're not

23  really going to be -- have a lot of liberty or cushion to

24  reschedule things.  Once we send the subpoenas out, the dates

25  pretty much are going to be what they are.  And so not for lack

1  of wanting to be cooperative, but we're not going to have much

2  wiggle room there.

3          As Your Honor is aware, Mr. Reed's documents are due

4  to us this Friday, so we haven't yet seen the documents that a

5  lot of this testimony or probably more specifically Mr. Reed's

6  testimony is based on.  The declarations themselves, with the

7  exception of one or two, didn't include other documentation.

8  So we're still waiting on those documents.

9          THE COURT:  Am I correct that Mr. Reed did not provide

10  you with any expert reports on or before April 12th?

11          MS. HAGER:  That's correct.  And that's why I made the

12  point that it's not clear to me whether some of these people

13  are or are not experts.

14          THE COURT:  If he didn't provide you with experts'

15  reports on or before April 12th, they're not experts.

16          MS. HAGER:  Well, I think what he's going to say is

17  that some of the reports were previously provided.  So

18  specifically --

19          THE COURT:  Well, he's still -- my order of -- the

20  order I entered on February 16, 2016, required that on or

21  before April 12th, Mr. Reed shall provide to the ResCap

22  Borrower Claims Trust:  one, all experts' reports that he

23  intends to rely upon at trial in this contested matter; two, a

24  list of all fact witnesses whom he intends to produce, and it

25  goes on from there.  So if he didn't give you any expert

RESIDENTIAL CAPITAL, LLC, et al.                    10

1   reports on or before April 12th, there are no experts on his

2   side.

3           MS. HAGER:  Okay.  Fair enough.

4           THE COURT:  That was the deadline I set.  It was clear

5   on the face of the order.  I'm not going to permit lay

6   witnesses to give expert testimony.  The order was clear.

7           MS. HAGER:  Okay.  Your Honor, that being the case, I

8   don't have anything else to add.

9           THE COURT:  Do you intend to -- let me ask you this.

10  I know the deadline hasn't come yet.  But paragraph three of

11  that case management order gave you until May 27th to provide

12  Mr. Reed any expert rebuttal reports.  I guess it's not

13  rebuttal if he didn't put in any expert -- given you any expert

14  reports.  Do you intend to call an expert -- experts?

15          MS. HAGER:  Your Honor, at this point, it's difficult

16  to say because we haven't yet reviewed --

17          THE COURT:  Okay.

18          MS. HAGER:  -- documents or taken depositions.

19          THE COURT:  All right.  Okay.  Anything else you want

20  to add?

21          MS. HAGER:  No, Your Honor.  Thank you.

22          THE COURT:  Okay.  Mr. Reed?

23          MR. REED:  Your Honor, I understand that the reports

24  that I supplied are the reports from the experts.

25          THE COURT:  Mr. Reed --

1          MR. REED:  Having had --

2          THE COURT:  Mr. Reed -- Mr. Reed?  We had a trial.  I

3  made a decision.  I got reversed in part.  We're back to try

4  issues relating your -- two other properties or ventures, not

5  to retry issues concerning your home that was foreclosed.

6  Those issues are all decided and resolved, affirmed on appeal.

7  You don't get a do-over.  You're not going to call any

8  witnesses to testify about anything that relates to the home

9  that was foreclosed that you still live in.

10         You were required to provide expert reports to the

11  trust by April 12th.  If you didn't do so and designate them as

12  expert reports, you're not calling anybody as experts.  It's as

13  simple as that.

14         MR. REED:  I -- I provided the reports.

15         THE COURT:  When?

16         MR. REED:  April 12th.  I provided an evaluation

17  report on our house in Virginia from a certified realtor for

18  that purpose.  I --

19         THE COURT:  Well --

20         MR. REED:  It was an opinion.  It was given as an

21  opinion.

22         THE COURT:  When did you provide it?

23         MR. REED:  It's attached to the declarations.  I

24  provided --

25         THE COURT:  The declarations you just recently

1    provided?

2            MR. REED:  Yes, absolutely.  I provided --

3            THE COURT:  Okay.

4            MR. REED:  I provided the appraisal from the

5    appraisers.

6            THE COURT:  Who's the witness?  Who's the witness?

7            MR. REED:  Stevie Watson.  She's a well-known

8    reputable realtor in that market.  The --

9            THE COURT:  Ms. Hager, did Mr. Reed attach a copy of

10   the appraiser's report to the declaration?

11           MS. HAGER:  For Stevie Watson, no.  She supplied a

12   declaration that affirmed the 2011 letter that she wrote, and

13   that's it.  She talked about an appraisal in the letter, but

14   that wasn't --

15           MR. REED:  The appraisal has been attached.  It's

16   within it.  It's within the declaration itself, within the

17   body.

18           THE COURT:  Could I see it?

19           MS. HAGER:  And for clarification, the --

20           THE COURT:  Could I see it?  Do you have it with you?

21           MS. HAGER:  I believe that the appraisal that he's

22   referring to was actually done by someone else.  Okay.  So

23   Stevie Watson is an appraiser who wrote a letter talking about

24   someone else's appraisal.

25           THE COURT:  Well, that's no good.

1          MS. HAGER:  So I think he's talking about --

2          MR. REED:  No, no.

3          MS. HAGER:  -- Alex Uminski's appraisal.

4          THE COURT:  Do you have -- do you have the appraisal

5    with you?

6          MS. HAGER:  I didn't bring that, Your Honor.

7          THE COURT:  Do you want to look for it, Mr. Reed?

8          MR. REED:  Can I clarify?

9          THE COURT:  No.  Do you have it with you?  Could you

10   answer that question?

11         MR. REED:  I do not have the appraisal with me, but

12   the appraiser provided a separate declaration certifying to the

13   truthfulness of the appraisal that Stevie Watson is relying on

14   as an expert witness.  So I have both the declaration from the

15   expert giving the opinion.  Within that -- within that

16   declaration is the appraisal and other facts that she's stating

17   she's relying on, giving in documents as well.  Then in

18   addition to that, I have the appraiser himself doing a

19   declaration.  Within that declaration is the very appraisal

20   that we're talking about.  So -- and they're not laypeople.

21   It's not represented as laypeople.  They're professionals,

22   they're opinions, and they're certifying to them.

23         MS. HAGER:  Your Honor, I can check in my BlackBerry

24   to see whether Mr. Uminski has attached to his declaration his

25   2011 -- or it might be 2008 -- excuse me, 2008 appraisal.  I

1    think we're kind of talking about two different things here.

2    Stevie Watson did not supply an appraisal.  I think Mr. Reed

3    might be referring to a different appraisal, and I will double

4    check to make sure.  I --

5              THE COURT:  Let's stop.  Here's what we're going to

6    do.  Okay.  If you want to make a motion in limine to exclude

7    expert testimony because you haven't been provided with expert

8    reports, go ahead and do so.  I think if what Mr. Reed is

9    saying is that he provided you with a recent declaration of a

10   witness who affirms the truth of an appraisal they did however

11   many years ago and he's offering it as an expert -- his expert

12   opinion, I'll rule on it when the time of the trial comes.  But

13   if he's put you on notice -- I think from this Court's

14   standpoint is, if he's put you on notice currently of witnesses

15   that he intends to call as an expert and if they give you a

16   current declaration that affirms or that they did some years

17   ago, okay.  Well, if you think it should be excluded, you'll

18   tell me why, not right now.  You'll file -- put it in writing

19   in a motion.

20             I don't know of any rule that says that an expert

21   who's appearing before me can't refer to and incorporate a

22   prior opinion he or she gave.  Now, whether a witness can

23   simply incorporate somebody else's report is a different story,

24   and I'm not going to rule on that for now.

25             But if Mr. Reed provided you -- what he's telling me

1   is that he's giving you declarations, current declarations of

2   the witnesses he intends to call, at least some of them have

3   incorporated -- referred to and specifically incorporated

4   opinions they've given previously.  Now, whether those qualify

5   as expert reports or not is a different issue, but I'm not

6   going to exclude them as experts because he didn't attach the

7   copy of the report.  Again, if you have the report and a

8   current declaration that says everything in that report was

9   true and correct, then that's what I'm relying on.  I'll deal

10   with that at the time of trial.

11          MS. HAGER:  Understood.

12          THE COURT:  And you can depose them as experts.  Does

13   that address -- does that accurately address your concerns,

14   Mr. Reed?

15          MR. REED:  Yeah.  Yeah, Your Honor, because I went

16   through a lot of effort to let them know that these -- that

17   expert reports that were done before that had been provided

18   before, that I thought were expert reports, that people

19   preparing them told me they were expert reports -- I retained

20   them.  Then I present them attached -- not just attached to the

21   declarations.  I even made sure that I put them --

22          THE COURT:  Okay.

23          MR. REED:  -- within the declarations.

24          THE COURT:  Let me make clear, though.  I'm not at

25   this time ruling what qualifies as an expert report or not.

1    But you've represented that you've got current declarations

2    from these people that would further the -- what they did

3    previously.  I'll -- no one has given me copies of these

4    things, but -- and I'd ask that that be done today.  But I'm

5    not excluding the expert testimony because somebody presented

6    current declarations, says that basically everything I said

7    before in that report is true and correct.  Okay.  We'll deal

8    with that accordingly.

9         But let me -- Mr. Reed, I did want to address the

10   issue because Ms. Hager raised it.  At least some of the

11   witnesses -- at least she's suggested that some of the

12   witnesses you've listed on your witness list and your

13   declarations relate to facts concerning the home you've lived

14   in.  And that's done.  What the district court has said is I

15   should have considered -- not necessarily admitted, but I

16   should have at least considered giving you an opportunity to

17   offer evidence with respect to other properties and other

18   business ventures.  And that's what I'm going to do.  But we're

19   not redoing anything that relates to what I've already decided

20   that was -- if you incurred attorneys' fees in defending

21   foreclosure actions or whatever.  That's all over and done

22   with.  This relates exclusively to other properties, other

23   business ventures.  And I'm short-handing what Judge Woods said

24   in his opinion, so that's what my guiding principles are for

25   this trial.

1          Mr. Reed, is -- you need to provide Ms. Hager with

2    current addresses and --

3          MR. REED:  I thought I did, Your Honor.  That's an

4    oversight.

5          THE COURT:  Stop.  Stop -- just I want you to provide

6    her with current addresses and telephone numbers for all of the

7    witnesses who you've identified on your witness list.  It's

8    then going to be incumbent.  If they want to take the

9    depositions of all those people, it's going to be incumbent on

10   them to go ahead and depose them if they want to depose them.

11   And I extended your time about a week to produce documents, so

12   I extended their time by a week to conclude the depositions

13   since they don't have your documents yet or all of your

14   documents.  So the period for getting the depositions done is

15   fairly short.  And I expect the parties to live with those

16   dates.

17         For any witnesses -- and I think this should be clear,

18   Mr. Reed.  For any witnesses that you've listed, provided

19   declarations for, they have to appear in court.  Witnesses have

20   to appear in court and available for cross-examination in

21   court.  You understand that?

22         MR. REED:  I've informed them of that.

23         THE COURT:  Okay.  All right.  I just want to -- I

24   just want to be clear they had to -- I'm not faulting you for

25   it.  I think it was with respect to Mr. Curley.  You had the

1   issue of whether he would appear for trial or not, and then he

2   didn't.  It was Curley, right?

3           MR. REED:  It was.  It was.

4           THE COURT:  Yeah.  Okay.  So I just -- it can be a

5   problem getting people out of state to appear for a trial in

6   New York, but --

7           MR. REED:  Are they not allowed to testify by phone

8   like other participants?

9           THE COURT:  No.  The one thing I've always been clear

10  about is no witnesses testify in my courtroom by telephone.

11          MR. REED:  I mean, I've seen the telephone -- the

12  reason I question that is because we -- the telephone, like,

13  appearances for people out of state and stuff like that.

14          THE COURT:  I do.  I try to accommodate people from

15  out of state to appear by telephone, but I don't have trials by

16  telephone because I want to see and hear witnesses.

17          How many witnesses, other than yourself, do you expect

18  to call to testify at trial about properties other than your

19  home?  Ms. Hager said it was seventeen plus you, but I don't

20  know -- I don't have the list.  I don't know whether that's

21  right.  That's why I'm asking you.

22          MR. REED:  Your Honor, I thought that twenty-three

23  were related to it.  And Ms. Hager is bringing up points that I

24  don't necessarily -- I think are arguable, particularly

25  Mr. Walters.  He was -- the reason, she's glazing over things

RESIDENTIAL CAPITAL, LLC, et al.                    19

1   just like she was trying to glaze over the expert, whether or

2   not reports were filed.  Currently, she was willing to mislead

3   you.

4            THE COURT:  Mr. Reed, I'm not trying to put you on the

5   spot about this.  I really --

6            MR. REED:  Your Honor --

7            THE COURT:  All I'm asking here is can you tell me --

8            MR. REED:  It's going to be at least the seventeen or

9   more.  And they --

10           THE COURT:  Well, it can't be -- look.  Look.  What

11  you need to do is you need to go back at your list.  And you

12  should exclude witnesses who you are intending to call to

13  testify -- I'm just going to shorten it by talking about your

14  home.  You're still in the house, right?

15           MR. REED:  Yes.

16           THE COURT:  Okay.  All right.  The issues about the

17  house are done.

18           MR. REED:  Okay.  So here's a question I had for you,

19  Your Honor.

20           THE COURT:  Okay.

21           MR. REED:  For example, Dr. Sussman --

22           THE COURT:  Yes.

23           MR. REED:  -- was not about my home.

24           THE COURT:  Okay.

25           MR. REED:  I listed him in evidence because I was --

RESIDENTIAL CAPITAL, LLC, et al.                20

1    it was his letter in evidence, but I didn't pursue it -- it

2    wasn't pursued actively at trial because Dr. Sussman was about

3    me physically, me personally, my conditions at -- and we were

4    talking strictly about the home and the damages.

5            THE COURT:  Uh-huh.

6            MR. REED:  So now pursuant to the order, I bring forth

7    Dr. Sussman.  But Ms. Hager is right.  She suppressed the

8    letter at that time, but it wasn't about the house.

9            THE COURT:  Okay.  Well, let me just say that the

10   exclusion of the letter at trial does not -- I'm not ruling one

11   way or the other as to whether what you want Dr. Sussman to

12   testify about is or is not admissible.  The letter wasn't

13   admissible at the trial.  If you believe Dr. Sussman is going

14   to testify about what are compensable damages with respect to

15   other properties or ventures, I'm not ruling on it today.

16           Let me -- just give me a second.

17      (Pause)

18           THE COURT:  So what my -- the February 16, 2016 order

19   I entered is -- the caption is Order Scheduling Discovery

20   Concerning Cognizable Damages Related to Claim Number 3759

21   filed by Frank Reed.

22           And in the second paragraph, it says on January 20,

23   2016, the Court entered an order, ECF docket number 9523,

24   requiring Mr. Reed to set forth, and an internal quote, "With

25   specificity, the cognizable damages that Reed contends he

1    suffered as a direct result of the foreclosure action beyond

2    the damages related to the property."  End the quote there.

3            So I'm not ruling now whether Dr. Sussman's testimony

4    is or is not admissible.  His letter didn't come in in the

5    prior trial.  He didn't testify in the prior trial.  I'm not

6    ruling in the abstract on the issue of whether he's going to be

7    permitted to testify or not.

8            Ms. Reed, if you -- I'm sorry.  Ms. Hager, if you

9    think he shouldn't be, make a motion in limine to exclude him.

10   I can't -- I'm not ruling on -- and, Mr. Reed, you'll have a

11   chance to respond to the written motion.  I'm not going to

12   rule.

13           The only thing I am going to allow, I'm not going to

14   hear any evidence relating to damages that relate to the

15   property, it means your home.

16           MR. REED:  I understand, Your Honor.  And to that end,

17   for example, a very testy and contested witness who now says

18   they will appear is Mr. Curley to discuss our overall business

19   relationship, the contemplation of loans on the property in

20   Virginia, and to testify to those matters.  And this was

21   obtained through dealing with their chief counsel this time

22   instead of --

23           THE COURT:  Mr. Reed, I'm not telling you what I'm

24   going to exclude.  The issue with Curley was a letter that --

25   at the first trial that wasn't authenticated.  I gave you an

1    extra chance to try and get him here, and you couldn't.  There

2    wasn't -- the letter didn't come in.  I'm not saying you can't

3    call him as a witness in the next trial.  As long as it relates

4    to properties other than the home, I'm not saying that you

5    can't call him as a witness.

6            MR. REED:  And, Your Honor, to that point, Evan

7    Hendricks and Christy Donati's, if I recall correctly, reports

8    that were previously given were partially strucken (sic) in

9    limine as they discussed other damages, other business and

10   general impact on my credit and things of that nature.  And so

11   I have to go back through the transcript, but I list them now

12   because I thought there were parts that were excluded --

13           THE COURT:  Okay.  Well, if they're -- look, if

14   they're going to -- I'm not telling you you can't call them as

15   witnesses, okay?

16           MR. REED:  Okay.

17           THE COURT:  All I'm saying with certainty is I'm not

18   going to have any more evidence relating to your home, okay?

19   That's done.  We're on to other properties and ventures.  If

20   you believe they have relevant material, evidence to offer

21   regarding those matters, you'll call them.  And if Ms. Hager

22   wants to depose them, she will.  And if they testify from the

23   witness stand, they'll be cross-examined in court.  So I'm not

24   precluding you from offering evidence.  That doesn't mean

25   everything comes in, but I'm not precluding you from offering

1    evidence that relates to other properties and ventures.  Okay.

2    That's what I'm going to hear.  Okay?  So provide Ms. Hager

3    with the contact information, addresses, telephone numbers.

4    Hopefully, these depositions can be scheduled with the least

5    inconvenience to everybody recognizing I'm not extending the

6    time again.  So you'll have to tell people.  They can't say

7    that I'm not free for a deposition until two months' from now.

8    If Ms. Hager gets a subpoena, they'll either testify or we'll

9    see what happens.  Okay?  It's as simple as that.  It's going

10   to get -- we're going to move this forward and get it resolved.

11           Any other issues you want to raise, Mr. Reed?

12           MR. REED:  In doing some research I have to finish,

13   hopefully, by this -- end of this weekend, I think we're going

14   to seek a document subpoena for some specific documents from

15   the trust in regard to GMAC.

16           THE COURT:  You're entitled to serve trial subpoenas

17   for production of documents.  The sooner -- here's what I would

18   suggest.  I'm not telling you --

19           MR. REED:  I just wanted to make sure --

20           THE COURT:  Okay.

21           MR. REED:  -- I'm asking for the right thing.

22           THE COURT:  Well, that's -- here's what I would

23   suggest, okay?  Before you go through the exercise of getting

24   subpoenas issued, why don't you talk to Ms. Hager and

25   Mr. Wishnew and tell them what you want and see whether they'll

1    produce them?  Okay?  If they will, it may make life simpler

2    for you, okay, because you may describe documents in the

3    subpoena in such a way as that they'll have a good defense

4    because the documents aren't clearly defined, or I don't

5    know -- whatever.

6         What I'm urging -- I can't force them.  I can't force

7    you.  You can go through the whole routine of the subpoena and

8    if they want to move to quash it, they'll move to quash it.

9    But what I would suggest is, is that you sit down and tell them

10   what it is you want.

11        MR. REED:  They're not very cooperative.

12        THE COURT:  Well, they will be, okay, because I want

13   them to be cooperative about it.  I'm assuming that you're not

14   asking for nine million pages of documents, Mr. Reed.

15        MR. REED:  Yeah.

16        THE COURT:  Because --

17        MR. REED:  I can't read that many.

18        THE COURT:  Okay.  Subpoenas need to be particular and

19   specific as to what you're asking for.  Okay?  So have the

20   dialogue.  If you don't find -- you're not feeling you're

21   getting satisfied, serve them subpoenas.  And that may result

22   in motions to quash and steps that are unnecessary to go

23   through.  Okay.

24        I plan to try this case on the merits and give you an

25   opportunity to prove your case and give them an opportunity to

1   rebut.  Okay?  It's not -- the schedule is going to happen

2   quickly, needs to get resolved, and it's going to be.  Okay.

3           So the sooner you have the discussion with Ms. Hager

4   about what documents you want for trial, then you'll know -- I

5   have it on here, on the verge no -- I'm not giving you a trial

6   date today because there's just too much that still has to be

7   done because we can get a trial date very quickly when I find

8   out that discovery is done.

9           Ms. Hager, certainly Mr. Wishnew knows that I require

10  a joint pre-trial conference order.  And there's a template.

11  The Court will decide under my chamber's rules with the -- for

12  the pre-trial conference order.  I recognize that Mr. Reed is

13  the claimant, but I am -- because he is pro se, I'm going to

14  require you to take the lead in preparing it.

15          And Mr. Reed, you need to cooperate in doing that.

16  There are sections in that order for stipulations of fact.

17  There may be things that you all can stipulate to.  There's

18  sections in it for your contentions and their contentions.

19          I am raising it now because looking -- this pre-trial

20  order relates to the trial we're going to have, so the

21  contentions need to relate to the issues for which there's

22  going to be a trial, not a hole that may have --

23          MR. REED:  Well, it'll give -- I understand what

24  you're saying.  It will give a framework both in fact and law

25  to what we're going to address.

1           THE COURT:  That's what it's supposed to be.

2           MR. REED:  Okay.

3           THE COURT:  Okay.  So the -- Mr. Wishnew and

4    Ms. Hager, you can provide a copy of the template to Mr. Reed

5    so he understands now what's going to have to go on there.  It

6    takes time to prepare, I'll tell you.

7           MR. REED:  All of this does for me.

8           THE COURT:  It has to specifically identify the issues

9    that are going to be tried, okay?  And it needs to be focused

10   on what those issues are.  Those issues are defined by Judge

11   Woods' decision.  And I've said multiple times today, it

12   doesn't deal with the issues I've already tried and resolved

13   that were affirmed.  And that's where we're going to go from

14   here.

15          Ms. Hager, get a date from my courtroom deputy, Deanna

16   Anderson, for a case management and scheduling conference in

17   June after the depositions are completed.

18          Mr. Reed, have you taken -- you wanted to take a

19   deposition of a witness of the trust.  Have you done that?

20          MR. REED:  No, because it relates to the documents

21   that I was -- in other words, I want to make sure I knew what

22   documents.  That way, I knew who to -- what to ask them to --

23   because I'll be asking them about the documents.

24          THE COURT:  Okay.  So May 27th remains the date,

25   Ms. Hager, for you to provide Mr. Reed any rebuttal expert

1  reports and the names of fact witnesses together with written

2  direct testimony in the form of declaration for each such

3  witness.  And I said the deadline for Mr. Reed to depose the

4  Borrower Trust witnesses shall be set by separate court order,

5  and it will.  But he needs to get your declarations and expert

6  reports to do that.  I still want to go forward.  Even if that

7  part is not complete, fully done, I do want to have another

8  case management conference in June.

9          Ms. Hager, do you want to say something?

10         MS. HAGER:  No, Your Honor.

11         THE COURT:  Once you get any expert reports they

12 intend to offer and their witness list, if you're going to

13 depose people, you've got to get it done.  Okay?  I'm not

14 entering an order today about it.  I'm not saying you've got to

15 do everybody in one day or -- I don't know how many witnesses

16 they're going to have.  You've got a lot of witnesses on your

17 list.  And we'll deal with that.

18         Okay.  Anything else you want to raise, Mr. Reed?

19         MR. REED:  No.

20         THE COURT:  Ms. Hager?

21         MS. HAGER:  Yes, Your Honor.  Your Honor, could we set

22 a date today by which Mr. Reed should supply the addresses of

23 his --

24         THE COURT:  I said by the end of the day today.

25         MS. HAGER:  Oh, I'm sorry.

1           THE COURT:  Do you have the addresses in front of you?

2           MR. REED:  Not with me, Your Honor.  I have to drive

3    back home.  I mean --

4           THE COURT:  How about the end of the day tomorrow?

5           MR. REED:  Yeah, that --

6           THE COURT:  5 p.m. tomorrow?  Can you do that?

7           MR. REED:  Yeah.  Yeah, I think so.

8           THE COURT:  Well, that's what I'm ordering.  I'm

9    ordering on the record --

10          MR. REED:  Yeah.

11          THE COURT:  -- I can enter a written order.  I'm

12   ordering that by 5 p.m. tomorrow, you provide Ms. Hager with

13   the addresses and telephone numbers for the people whose --

14   you've listed as witnesses, okay, so she can start serving them

15   with subpoenas for deposition.  Okay?

16          MR. REED:  Okay.

17          THE COURT:  All right.

18          MS. HAGER:  Your Honor, with respect to pre-trial

19   motions, will you set the due date for those at the next case

20   management conference?

21          THE COURT:  I will.  Please tell me then what pre-

22   trial motions you anticipate going.  That goes for both sides.

23   But please let me know what motions you want to bring.

24          MS. HAGER:  Sure.

25          THE COURT:  I generally -- motions in limine, I

1  generally want before the trial.  I usually try sometimes more,

2  but at least a week before the trial, I usually try and -- if

3  it's a dating issue -- for the issue of trial, try to let

4  counsel know before the trial.  Okay.  But we'll deal with that

5  at the next case management conference.

6          MS. HAGER:  Sure.  And I'd like some clarification, if

7  I may, with respect to Mr. Reed's twenty-three witnesses and

8  their respective declarations.  And taking, for example,

9  Christy Donati, I think Your Honor is giving an example.  You

10 know, perhaps she might get up and talk about something other

11 than the Matlack property.

12         THE COURT:  Yeah.  She did talk about something other,

13 but I'm not going to let her talk about the Matlack property.

14         MS. HAGER:  Well, the declaration though that was

15 provided is very specific and narrow and only speaks to her

16 fees that were incurred with respect to her prior testimony.

17         THE COURT:  It's not coming in.

18         MS. HAGER:  So --

19         THE COURT:  It's not going to go into evidence.  You'd

20 move to strike it.

21         MS. HAGER:  I guess from having had the experience in

22 this case with Mr. Reed, the clarification, I think, would be

23 helpful.  Is it the case that the twenty-three witnesses listed

24 are going to be limited in their testimony to that which they

25 listed in their declarations?

RESIDENTIAL CAPITAL, LLC, et al.                           30

1          THE COURT:  Let me ask.

2          Mr. Reed, don't think you're going to rely on the

3    Donati declaration that -- to the extent it focuses on the

4    Matlack property, it's not coming in.  If you didn't offer a

5    declaration from Donati that provides her direct testimony

6    relating to other properties and ventures, I'm going to exclude

7    the testimony.  That was the point of requiring you to provide

8    the witness declarations by a deadline.  That deadline has come

9    and gone.

10         MR. REED:  Okay.  So in regard to -- for that

11   clarification, the Donati report was provided before.  It's on

12   the record.  She cannot now opine about the sections of that

13   report that do not relate to the prior property.

14         THE COURT:  Look.  I don't remember whether she had a

15   written report or not at this point.  Okay.  I just don't --

16         MR. REED:  Well, someone who did, for example.

17         THE COURT:  Well, let me just stop.  Stop.  So I

18   remember Ms. Donati.  She testified about New Jersey

19   foreclosure practice.  I permitted her to testify over

20   objection about New Jersey foreclosure practice.  I took it

21   into account in ruling on your plan with respect to your home.

22   Okay.  But you had an April 12th deadline to provide expert

23   reports and written direct testimony that you can rely on at

24   the trial of this contested matter.  And if -- so you should

25   have -- if you're going to have Donati testify about your other

1    properties and ventures, you should have given that information

2    to Ms. Hager.  Maybe you did; maybe you didn't.  Okay.

3            What I'm not going to let her do is get testimony that

4    you have -- because you are calling her as a witness in your

5    direct case.  She will be permitted to testify on the subject

6    matter of the trial, provided that she had been provided an

7    expert report or a declaration specifically focused on -- I'm

8    not letting her testify -- her first time, she's going to be

9    testifying about things that she hasn't given a declaration

10   about or didn't address in her report.  If she addressed it in

11   her report, fine.

12           MR. REED:  Okay.

13           THE COURT:  Okay?

14           MR. REED:  Okay.

15           THE COURT:  But I'm not -- we're not going to allow --

16           MR. REED:  That's fine.

17           THE COURT:  Okay.

18           MR. REED:  I think that's -- I think what Ms. Hager is

19   trying to do is narrow the particular declaration and create

20   that as the new jumping off plea and excluding the prior

21   written reports.  And I understand portions of them are going

22   to link to the previous property, or my home will not be

23   testified about.

24           THE COURT:  Correct.

25           MR. REED:  But if there were ones that were

1    actually -- portions that were actually excluded pre-trial in
2    limine because they did address other business ventures and
3    things --
4             THE COURT:  Mr. Reed --
5             MR. REED:  -- I get -- that's what we would come
6    about.
7             THE COURT:  If she gave a report that addresses the
8    other properties and ventures, I'm not going to exclude it
9    without -- I mean, there may be a reason to exclude it, but it
10   isn't because --
11            MR. REED:  I didn't revisit --
12            THE COURT:  Yeah.
13            MR. REED:  -- this April 12th.
14            THE COURT:  I understand.  I'm not -- I'm not telling
15   you today that what she did comes in in another trial for other
16   issues.
17            MR. REED:  For everything, right.  I --
18            THE COURT:  That was -- if she gave an expert report
19   that dealt with other properties and other ventures, that's
20   what this trial is going to be about, and you can offer it,
21   okay?  But I can't rule in the abstract on --
22            MR. REED:  I understand.
23            THE COURT:  -- whether it satisfies other evidentiary
24   rules.  But I'm not excluding her testimony.  Well, the point
25   is that each side, you and the trust, needs to lay your cards

1   on the table.  And --

2              MR. REED:  I'm trying.

3              THE COURT:  Stop.  Stop.  Stop.  About what --

4              MR. REED:  And they just want to push them off.

5              THE COURT:  -- evidence you -- that each side is going

6   to offer on the issues that are going to be tried.  If you did

7   it, you did it.  If her -- if you referred to her prior report

8   and it did it, fine.  Okay.

9              I can't -- I'm not ruling in the abstract about

10  whether particular reports do or don't come in, but I'm -- Ms.

11  Hager, don't think you're going to exclude her testimony

12  because she didn't do a separate new expert report.  The only

13  portions that are going to come into evidence, if it comes into

14  evidence, are those that relate to other properties.

15             MS. HAGER:  That's not at all what I'm saying.

16             THE COURT:  Okay.

17             MS. HAGER:  I'm sorry if I caused any confusion.  Her

18  declaration says basically one thing, here's how much Mr. Reed

19  owes me.  And he did say that he would rely on -- could

20  possibly rely on her report.  But I honestly wasn't clear --

21             THE COURT:  Okay.

22             MS. HAGER:  -- on what he meant by that.

23             THE COURT:  Well, I think you know now.

24             MS. HAGER:  So I understand now --

25             THE COURT:  Okay.

RESIDENTIAL CAPITAL, LLC, et al.                    34

1              MS. HAGER:  -- what he means.

2              THE COURT:  All right.  So what she says she spent in

3    that prior trial isn't coming in.  Okay.  What we'll do with

4    her, if you've got a report that provides evidence, it'll

5    either come in or it won't come in.  I'll certainly consider

6    it.  If it's relevant and material and otherwise admissible to

7    the issues that are going to be tried, it's going to come in.

8              MS. HAGER:  Understood.  Thank you.

9              THE COURT:  Okay.  Mr. Reed, anything else you want to

10   address?

11             MR. REED:  No, Your Honor.

12             THE COURT:  Okay.  We've got to make -- so just to be

13   clear, by tomorrow at 5 to get Ms. Hager the --

14             MR. REED:  It could be tonight at midnight, I'll get

15   them.

16             THE COURT:  Well, okay.  All right.  You've been in

17   touch with these people.  You have contact.  I assume you have

18   contact --

19             MR. REED:  I do.

20             THE COURT:  -- information on all of them?  I didn't

21   expect you to have necessarily so you could pull it out of your

22   pocket and hand it over, okay?

23             All right.  Anything else, Ms. Hager?

24             MS. HAGER:  No.  Thank you, Your Honor.

25             THE COURT:  Okay.  We're adjourned.

1          So get a date from Deanna for -- make sure it'll work

2    for Mr. Reed, okay?

3          (Whereupon these proceedings were concluded at 12:01 PM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

1

2                          C E R T I F I C A T I O N

3

4    I, Michael Drake, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   MICHAEL DRAKE

11   AAERT CERTIFIED ELECTRONIC TRANSCRIBER (CET**D-513)

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  April 27, 2016

18

19

20

21

22

23

24

25

**A**

**able (1)**
8:18
**absolutely (1)**
12:2
**abstract (3)**
21:6;32:21;33:9
**accommodate (1)**
18:14
**accordingly (1)**
16:8
**account (1)**
30:21
**accurately (1)**
15:13
**action (1)**
21:1
**actions (1)**
16:21
**actively (1)**
20:2
**actually (3)**
12:22;32:1,1
**add (2)**
10:8,20
**addition (2)**
4:16;13:18
**address (8)**
6:17;15:13,13;
16:9;25:25;31:10;
32:2;34:10
**addressed (2)**
6:19;31:10
**addresses (9)**
8:10,13;17:2,6;
23:3;27:22;28:1,13;
32:7
**adjourned (1)**
34:25
**admissible (4)**
20:12,13;21:4;
34:6
**admitted (1)**
16:15
**affirmed (3)**
11:6;12:12;26:13
**affirms (3)**
6:13;14:10,16
**Again (2)**
15:7;23:6
**against (1)**
7:10
**ago (2)**
14:11,17
**ahead (2)**
14:8;17:10
**Alex (1)**
13:3
**allow (2)**
21:13;31:15
**allowed (1)**

**18:7**
**always (1)**
18:9
**and/or (1)**
4:17
**Anderson (1)**
26:16
**anticipate (1)**
28:22
**appeal (1)**
11:6
**appear (9)**
6:25;8:4,11;17:19,
20;18:1,5,15;21:18
**appearances (2)**
4:2;18:13
**appearing (1)**
14:21
**appears (1)**
8:8
**appellate (2)**
6:17,18
**appraisal (15)**
12:4,13,15,21,24;
13:3,4,11,13,16,19,
25;14:2,3,10
**appraiser (3)**
12:23;13:12,18
**appraisers (1)**
12:5
**appraiser's (1)**
12:10
**April (8)**
9:10,15,21;10:1;
11:11,16;30:22;
32:13
**arguable (1)**
18:24
**assume (1)**
34:17
**assuming (1)**
24:13
**attach (2)**
12:9;15:6
**attached (5)**
11:23;12:15;
13:24;15:20,20
**attempted (1)**
7:21
**attorney (1)**
5:25
**attorneys' (1)**
16:20
**authenticate (2)**
7:4,6
**authenticated (3)**
7:6,13;21:25
**authentication (1)**
4:19
**available (1)**
17:20
**aware (2)**
8:20;9:3

**B**

**back (5)**
5:22;11:3;19:11;
22:11;28:3
**backdoor (1)**
7:7
**Bank (1)**
7:3
**Barbara (1)**
4:6
**based (1)**
9:6
**basically (4)**
6:3;8:21;16:6;
33:18
**basis (1)**
7:16
**beyond (1)**
21:1
**BlackBerry (1)**
13:23
**body (1)**
12:17
**Borrow (1)**
4:10
**Borrower (3)**
4:7;9:22;27:4
**both (3)**
13:14;25:24;28:22
**bring (3)**
13:6;20:6;28:23
**bringing (1)**
18:23
**business (7)**
5:15;6:21;16:18,
23;21:18;22:9;32:2

**C**

**call (10)**
10:14;11:7;14:15;
15:2;18:18;19:12;
22:3,5,14,21
**calling (2)**
11:12;31:4
**can (17)**
8:21;13:8,23;
14:22;15:12;18:4;
19:7;23:4;24:7;25:7,
17;26:4;28:6,11,14;
30:23;32:20
**caption (1)**
20:19
**cards (1)**
32:25
**case (11)**
10:7,11;24:24,25;
26:16;27:8;28:19;
29:5,22,23;31:5
**caused (1)**
33:17

**certainly (2)**
25:9;34:5
**certainty (1)**
22:17
**certified (1)**
11:17
**certifying (2)**
13:12,22
**chamber's (1)**
25:11
**chance (2)**
21:11;22:1
**check (2)**
13:23;14:4
**chief (1)**
21:21
**Christy (4)**
5:24;7:14;22:7;
29:9
**Claim (1)**
20:20
**claimant (1)**
25:13
**Claims (3)**
4:7,10;9:22
**clarification (4)**
12:19;29:6,22;
30:11
**clarify (3)**
8:6,9;13:8
**clear (9)**
9:12;10:4,6;15:24;
17:17,24;18:9;
33:20;34:13
**clearly (1)**
24:4
**Cognizable (2)**
20:20,25
**coming (3)**
29:17;30:4;34:3
**compensable (1)**
20:14
**complete (1)**
27:7
**completed (1)**
26:17
**concerning (3)**
11:5;16:13;20:20
**concerns (1)**
15:13
**conclude (1)**
17:12
**concluded (1)**
35:3
**condition (1)**
6:15
**conditions (1)**
20:3
**conference (6)**
25:10,12;26:16;
27:8;28:20;29:5
**confusion (1)**
33:17

**connected (1)**
7:1
**connection (1)**
7:10
**consider (1)**
34:5
**considered (2)**
16:15,16
**contact (3)**
23:3;34:17,18
**contains (1)**
4:15
**contemplation (1)**
21:19
**contends (1)**
20:25
**contentions (3)**
25:18,18,21
**contested (3)**
9:23;21:17;30:24
**cooperate (1)**
25:15
**cooperative (3)**
9:1;24:11,13
**copies (1)**
16:3
**copy (3)**
12:9;15:7;26:4
**correctly (1)**
22:7
**counsel (2)**
21:21;29:4
**couple (1)**
5:3
**course (1)**
5:1
**COURT (115)**
4:2,5,8,12,24;5:8,
10,16;6:1,20,22;
7:25;8:2;9:9,14,19;
10:4,9,17,19,22,25;
11:2,15,19,22,25;
12:3,6,9,18,20,25;
13:4,7,9;14:5,15;15:12,
22,24;16:14;17:5,19,
20,21,23;18:4,9,14;
19:4,7,10,16,20,22,
24;20:5,9,18,23;
21:23;22:13,17,23;
23:16,20,22;24:12,
16,18;25:11;26:1,3,
8,24;27:4,11,20,24;
28:1,4,6,8,11,17,21,
25;29:12,17,19;30:1,
14,17;31:13,15,17,
24;32:4,7,12,14,18,
23,33:3,5,16,21,23,
25;34:2,9,12,16,20,
25
**courtroom (2)**
18:10;26:15
**Court's (1)**
14:13

Min-U-Script®    eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(1) able - Court's

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

April 26, 2016

**create (1)**
31:19
**credit (3)**
7:16,17;22:10
**creditor (1)**
4:4
**cross-examination (1)**
17:20
**cross-examined (1)**
22:23
**Curley (5)**
7:2;17:25;18:2;
21:18,24
**current (7)**
14:16;15:1,8;16:1,
6;17:2,6
**currently (2)**
14:14;19:2
**cushion (1)**
8:23

**D**

**damages (7)**
20:4,14,20,25;
21:2,14;22:9
**date (7)**
25:6,7;26:15,24;
27:22;28:19;35:1
**dates (2)**
8:24;17:16
**dating (1)**
29:3
**day (3)**
27:15,24;28:4
**deadline (6)**
10:4,10;27:3;30:8,
8,22
**deal (5)**
15:9;16:7;26:12;
27:17;29:4
**dealing (1)**
21:21
**dealt (1)**
32:19
**Deanna (2)**
26:15;35:1
**decide (1)**
25:11
**decided (2)**
11:6;16:19
**decision (2)**
11:3;26:11
**declaration (23)**
6:2,13;7:3;12:10,
12,16;13:12,14,16,
19,19,24;14:9,16;
15:8;27:2;29:14;
30:3,5;31:7,9,19;
33:18
**declarations (17)**
4:25;5:4;9:6;
11:23,25;15:1,1,21,

23;16:1,6,13;17:19;
27:5;29:8,25;30:8
**defending (1)**
16:20
**defense (1)**
24:3
**defined (2)**
24:4;26:10
**depose (6)**
15:12;17:10,10;
22:22;27:3,13
**deposition (3)**
23:7;26:19;28:15
**depositions (7)**
8:15;10:18;17:9,
12,14;23:4;26:17
**deputy (1)**
26:15
**describe (1)**
24:2
**designate (1)**
11:11
**designated (3)**
4:18,19;8:4
**detail (1)**
7:13
**dialogue (1)**
24:20
**different (4)**
14:1,3,23;15:5
**difficult (1)**
10:15
**direct (5)**
21:1;27:2;30:5,23;
31:5
**Discovery (2)**
20:19;25:8
**discuss (1)**
21:18
**discussed (1)**
22:9
**discussion (1)**
25:3
**district (1)**
16:14
**docket (1)**
20:23
**document (1)**
23:14
**documentation (1)**
9:7
**documents (17)**
9:3,4,8;10:18;
13:17;17:11,13,14;
23:14,17;24:2,4,14;
25:4;26:20,22,23
**Donati (8)**
5:25;7:14;29:9;
30:3,5,11,18,25
**Donati's (1)**
22:7
**done (15)**
8:18,19;12:22;

15:17;16:4,14,21;
17:14;19:17;22:19;
25:7,8;26:19;27:7,13
**door (1)**
6:7
**do-over (1)**
11:7
**double (1)**
14:3
**down (2)**
8:15;24:9
**Dr (8)**
6:10;7:2;19:21;
20:2,7,11,13;21:3
**drive (1)**
28:2
**due (2)**
9:3;28:19

**E**

**earlier (2)**
6:13;7:4
**ECF (1)**
20:23
**effort (1)**
15:16
**either (5)**
4:17,18;6:25;23:8;
34:5
**else (6)**
10:8,19;12:22;
27:18;34:9,23
**else's (2)**
12:24;14:23
**End (5)**
21:2,16;23:13;
27:24;28:4
**enough (3)**
7:12,13;10:3
**enter (1)**
28:11
**entered (3)**
9:20;20:19,23
**entering (1)**
27:14
**entitled (1)**
23:16
**evaluation (1)**
11:16
**Evan (2)**
7:15;22:6
**even (2)**
15:21;27:6
**everybody (2)**
23:5;27:15
**everyone (1)**
8:14
**evidence (21)**
5:13,14,20,22;6:9,
18;7:1,19;16:17;
19:25;20:1;21:14;
22:18,20,24;23:1;

29:19;33:5,13,14;
34:4
**evidentiary (1)**
32:23
**exactly (2)**
4:20,21
**example (6)**
5:23;19:21;21:17;
29:8,9;30:16
**exception (1)**
9:7
**exclude (9)**
14:6;15:6;19:12;
21:9,24;30:6;32:8,9;
33:11
**excluded (4)**
5:14;14:17;22:12;
32:1
**excluding (3)**
16:5;31:20;32:24
**exclusion (1)**
20:10
**exclusively (1)**
16:22
**excuse (1)**
13:25
**exercise (1)**
23:23
**expect (3)**
17:15;18:17;34:21
**experience (1)**
29:21
**expert (34)**
4:17;7:15;8:4;
9:10,25;10:6,12,13,
13,14;11:10,12;
13:14,15;14:7,7,11,
11,15,20;15:5,17,18,
19,25;16:5;19:1;
26:25;27:5,11;
30:22;31:7;32:18;
33:12
**experts (8)**
9:13,15;10:1,14,
24;11:12;15:6,12
**experts' (2)**
9:14,22
**extended (2)**
17:11,12
**extending (1)**
23:5
**extent (1)**
30:3
**extra (1)**
22:1

**F**

**face (1)**
10:5
**fact (5)**
4:17;9:24;25:16,
24;27:1

**facts (2)**
13:16;16:13
**Fair (1)**
10:3
**fairly (1)**
17:15
**fall (1)**
7:22
**faulting (1)**
17:24
**February (2)**
9:20;20:18
**fee (1)**
6:3
**feeling (1)**
24:20
**fees (3)**
6:5;16:20;29:16
**file (1)**
14:18
**filed (2)**
19:2;20:21
**find (2)**
24:20;25:7
**fine (3)**
31:11,16;33:8
**finish (1)**
23:12
**first (6)**
4:3,23;6:7,16;
21:25;31:8
**Five (2)**
6:24;7:18
**focused (2)**
26:9;31:7
**focuses (1)**
30:3
**folks (1)**
7:20
**force (2)**
24:6,6
**foreclosed (5)**
5:6,8,17;11:5,9
**foreclosure (5)**
5:9;16:21;21:1;
30:19,20
**form (1)**
27:2
**Forrester (1)**
4:10
**forth (2)**
20:6,24
**forward (2)**
23:10;27:6
**frame (1)**
8:18
**framework (1)**
25:24
**Frank (2)**
4:4;20:21
**frankly (1)**
8:3
**free (1)**

23:7
**Friday (1)**
9:4
**front (1)**
28:1
**fully (1)**
27:7
**further (1)**
16:2

### G

**gave (6)**
7:3;10:11;14:22;
21:25;32:7,18
**general (1)**
22:10
**generally (2)**
28:25;29:1
**gets (1)**
23:8
**given (7)**
10:13;11:20;15:4;
16:3;22:8;31:1,9
**giving (6)**
13:15,17;15:1;
16:16;25:5;29:9
**glaze (1)**
19:1
**glazing (1)**
18:25
**GMAC (2)**
7:10;23:15
**goes (2)**
9:25;28:22
**Good (4)**
4:6,9;12:25;24:3
**granted (1)**
6:12
**guess (4)**
4:16;8:5;10:12;
29:21
**guiding (1)**
16:24

### H

**Hager (68)**
4:6,6,13,14,25;5:9,
11,18;6:2,21,24;8:1,
3;9:11,16;10:3,7,15,
18,21;12:9,11,19,21;
13:1,3,6,23;15:11;
16:10;17:1;18:19,
23;20:7;21:8;22:21;
23:2,8,24;25:3,9;
26:4,15,25;27:9,10,
20,21,25;28:12,18,
24;29:6,14,18,21;
31:2,18;33:11,15,17,
22,24;34:1,8,13,23,
24
**half (1)**

8:7
**hand (1)**
34:22
**happen (1)**
25:1
**happens (1)**
23:9
**hear (3)**
18:16;21:14;23:2
**helpful (1)**
29:23
**Hendricks (2)**
7:15;22:7
**Here's (1)**
14:5;19:18;23:17,
22;33:18
**highlight (1)**
5:3
**himself (2)**
4:16;13:18
**hole (1)**
25:22
**home (13)**
11:5,8;16:13;
18:19;19:14,23;
20:4;21:15;22:4,18;
28:3;30:21;31:22
**honestly (1)**
33:20
**Honor (28)**
4:6,9,14;5:23;
6:12;8:19;9:3;10:7,
15,21,23;13:6,23;
15:15;17:3;18:22;
19:6,19;21:16;22:6;
27:10,21,21;28:2,18;
29:9;34:11,24
**Honor's (1)**
5:13
**Hopefully (2)**
23:4,13
**house (5)**
5:17;11:17;19:14,
17;20:8

### I

**identified (1)**
17:7
**identify (1)**
26:8
**impact (1)**
22:10
**include (2)**
7:25;9:7
**inconvenience (1)**
23:5
**incorporate (2)**
14:21,23
**incorporated (2)**
15:3,3
**incumbent (2)**
17:8,9

**incurred (2)**
16:20;29:16
**information (3)**
23:3;31:1;34:20
**informed (1)**
17:22
**instance (1)**
6:7
**instead (1)**
21:22
**intend (3)**
10:9,14;27:12
**intending (1)**
19:12
**intends (4)**
9:23,24;14:15;
15:2
**internal (1)**
20:24
**into (4)**
29:19;30:21;
33:13,13
**invoices (1)**
7:11
**involve (1)**
6:22
**issue (10)**
5:13;8:13,17;15:5;
16:10;18:1;21:6,24;
29:3,3
**issued (1)**
23:24
**issues (19)**
5:3,6,6;8:7;16,19;
8:12;11:4,5,6;19:16;
23:11;25:21;26:8,10,
10,12;32:16;33:6;
34:7

### J

**January (1)**
20:22
**Jay (1)**
6:10
**Jeff (1)**
7:9
**Jersey (4)**
5:25;7:9;30:18,20
**joint (1)**
25:10
**Jordan (1)**
4:9
**Judge (2)**
16:23;26:10
**jumping (1)**
31:20
**June (3)**
8:19;26:17;27:8

### K

**kind (1)**

14:1
**knew (2)**
26:21,22
**knows (1)**
25:9

### L

**lack (1)**
8:25
**law (1)**
25:24
**lawyer (1)**
7:9
**lay (2)**
10:5;32:25
**laypeople (2)**
13:20,21
**lead (1)**
25:14
**least (8)**
8:11;15:2;16:10,
11,16;19:8;23:4;
29:2
**leave (1)**
8:5
**leaves (1)**
7:24
**letter (11)**
6:14;12:12,13,23;
20:1,8,10,12;21:4,
24;22:2
**letters (2)**
7:4,5
**letting (2)**
6:9;31:8
**liberty (1)**
8:23
**life (1)**
24:1
**limine (6)**
6:12;14:6;21:9;
22:9;28:25;32:2
**limited (1)**
29:24
**link (1)**
31:22
**list (13)**
4:15,18;5:20;6:11,
25;9:24;16:12;17:7;
18:20;19:11;22:11;
27:12,17
**listed (7)**
6:22;16:12;17:18;
19:25;28:14;29:23,
25
**lists (1)**
6:3
**litigation (1)**
7:10
**live (2)**
11:9;17:15
**lived (1)**

16:13
**lives (1)**
5:8
**loans (1)**
21:19
**located (2)**
8:8,8
**location (1)**
8:14
**long (1)**
22:3
**look (5)**
13:7;19:10,10;
22:13;30:14
**looking (1)**
25:19
**lot (4)**
8:23;9:5;15:16;
27:16

### M

**majority (1)**
8:10
**management (5)**
10:11;26:16;27:8;
28:20;29:5
**many (5)**
6:22;14:11;18:17;
24:17;27:15
**market (1)**
12:8
**material (2)**
22:20;34:6
**Matlack (4)**
7:8;29:11,13;30:4
**matter (3)**
9:23;30:24;31:6
**matters (2)**
21:20;22:21
**May (9)**
10:11;24:1,2,21;
25:17,22;26:24;
29:7;32:9
**maybe (3)**
8:5;31:2,2
**mean (4)**
18:11;22:24;28:3;
32:9
**means (3)**
4:20;21:15;34:1
**meant (1)**
33:22
**mentioned (2)**
4:23;7:14
**merits (1)**
24:24
**midnight (1)**
34:14
**might (4)**
7:4;13:25;14:3;
29:10
**million (1)**

24:14
**mislead (1)**
   19:2
**months' (1)**
   23:7
**more (5)**
   8:7;9:5;19:9;
   22:18;29:1
**morning (2)**
   4:6,9
**Morrison (1)**
   4:10
**most (3)**
   6:2;7:3;8:10
**motion (5)**
   6:12;14:6,19;21:9,
   11
**motions (5)**
   24:22;28:19,22,23,
   25
**move (3)**
   23:10;24:8,8;
   29:20
**much (6)**
   4:8,12;8:25;9:1;
   25:6;33:18
**multiple (1)**
   26:11

**N**

**name (1)**
   4:15
**names (1)**
   27:1
**narrow (2)**
   29:15;31:19
**nature (1)**
   22:10
**necessarily (3)**
   16:15;18:24;34:21
**need (8)**
   8:13,15;17:1;
   19:11,11;24:18;
   25:15,21
**needs (4)**
   25:2;26:9;27:5;
   32:25
**New (7)**
   5:25;7:9;18:6;
   30:18,20;31:20;
   33:12
**next (3)**
   22:3;28:19;29:5
**nine (1)**
   24:14
**none (1)**
   8:3
**notice (2)**
   14:13,14
**Number (2)**
   20:20,23
**numbers (3)**

17:6;23:3;28:13

**O**

**objection (1)**
   30:20
**obtained (1)**
   21:21
**Obviously (1)**
   8:14
**off (2)**
   31:20;33:4
**offer (6)**
   16:17;22:20;
   27:12;30:4;32:20;
   33:6
**offering (3)**
   14:11;22:24,25
**Once (2)**
   8:24;27:11
**one (11)**
   5:1,24;8:13,17;
   9:7,22;16:3;18:9;
   20:10;27:15;33:18
**ones (1)**
   31:25
**only (3)**
   21:13;29:15;33:12
**open (1)**
   6:7
**operating (1)**
   7:22
**opine (1)**
   30:12
**opinion (6)**
   11:20,21;13:15;
   14:12,22;16:24
**opinions (2)**
   13:22;15:4
**opportunity (3)**
   16:16;24:25,25
**order (19)**
   6:17,18;8:13;9:19,
   20;10:5,6,11;20:6,
   18,19,23;25:10,12,
   16,20;27:4,14;28:11
**ordered (1)**
   8:19
**ordering (3)**
   28:8,9,12
**others (1)**
   6:10
**otherwise (1)**
   34:6
**out (8)**
   6:3;8:22,24;18:5,
   13,15;25:8;34:21
**outside (1)**
   7:22
**over (5)**
   16:21;18:25;19:1;
   30:19;34:22
**overall (1)**

21:18
**oversight (1)**
   17:4
**owes (1)**
   33:19

**P**

**pages (1)**
   24:14
**paragraph (2)**
   10:10;20:22
**part (2)**
   11:3;27:7
**partially (1)**
   22:8
**participants (1)**
   18:8
**particular (3)**
   24:18;31:19;33:10
**particularly (1)**
   18:24
**parties (1)**
   17:15
**parts (1)**
   22:12
**Pause (1)**
   20:17
**people (13)**
   7:19;8:10;9:12;
   15:18;16:2;17:9;
   18:5,13,14;23:6;
   27:13;28:13;34:17
**perhaps (1)**
   29:10
**period (1)**
   17:14
**permit (1)**
   10:5
**permitted (3)**
   21:7;30:19;31:5
**person (1)**
   4:4
**personally (1)**
   20:3
**phone (1)**
   18:7
**physical (1)**
   6:14
**physically (1)**
   20:3
**plan (2)**
   24:24;30:21
**plea (1)**
   31:20
**please (3)**
   4:2;28:21,23
**Plus (2)**
   8:1;18:19
**pm (3)**
   28:6,12;35:3
**pocket (1)**
   34:22

**point (8)**
   6:8;7:23;9:12;
   10:15;22:6;30:7,15;
   32:24
**points (1)**
   18:23
**portions (3)**
   31:21;32:1;33:13
**possibly (1)**
   33:20
**potential (1)**
   5:20
**potentially (1)**
   8:17
**practice (2)**
   30:19,20
**pre- (1)**
   28:21
**precluded (6)**
   5:13;6:10,15,16;
   7:5,16
**precluding (2)**
   22:24,25
**prepare (1)**
   26:6
**preparing (2)**
   15:19;25:14
**present (1)**
   15:20
**presented (1)**
   16:5
**presently (1)**
   8:11
**president (1)**
   7:3
**pre-trial (5)**
   25:10,12,19;
   28:18;32:1
**pretty (1)**
   8:25
**previous (1)**
   31:22
**previously (10)**
   6:8,9,11;7:1,2,11;
   9:17;15:4;16:3;22:8
**principles (1)**
   16:24
**prior (8)**
   14:22;21:5,5;
   29:16;30:13;31:20;
   33:7;34:3
**pro (1)**
   25:13
**probably (1)**
   9:5
**problem (2)**
   5:16;18:5
**proceedings (1)**
   35:3
**produce (3)**
   9:24;17:11;24:1
**production (1)**
   23:17

**professionals (1)**
   13:21
**properly (1)**
   7:6
**properties (16)**
   5:15;6:19,23;11:4;
   16:17,22;18:18;
   20:15;22:4,19;23:1;
   30:6;31:1;32:8,19;
   33:14
**property (8)**
   5:6,11;7:8;8:12;
   21:2,15,19;29:11,13;
   30:4,13;31:22
**proposed (2)**
   5:5;7:15
**prove (1)**
   24:25
**provide (15)**
   7:12;9:9,14,21;
   10:11;11:10,22;17:1,
   5;23:2;26:4,25;
   28:12;30:7,22
**provided (18)**
   6:2;9:17;11:14,16,
   24;12:1,2,4;13:12;
   14:7,9,25;15:17;
   17:18;29:15;30:11;
   31:6,6
**provides (2)**
   30:5;34:4
**pull (1)**
   34:21
**purpose (1)**
   11:18
**pursuant (1)**
   20:6
**pursue (1)**
   20:1
**pursued (1)**
   20:2
**push (1)**
   33:4
**put (9)**
   5:21;6:6;8:22;
   10:13;14:13,14,18;
   15:21;19:4

**Q**

**qualifies (1)**
   15:25
**qualify (1)**
   15:4
**quash (3)**
   24:8,8,22
**quickly (2)**
   25:2,7
**quote (2)**
   20:24;21:2

**R**

April 26, 2016

**raise (3)**
8:17;23:11;27:18
**raised (1)**
16:10
**raising (1)**
25:19
**read (1)**
24:17
**reading (1)**
5:4
**really (2)**
8:23;19:5
**realtor (2)**
11:17;12:8
**reason (3)**
18:12,25;32:9
**rebut (1)**
25:1
**rebuttal (3)**
10:12,13;26:25
**recall (2)**
7:5;22:7
**received (1)**
4:14
**recent (1)**
14:9
**recently (3)**
6:2;7:4;11:25
**recognize (1)**
25:12
**recognizing (1)**
23:5
**record (2)**
28:9;30:12
**recover (1)**
6:5
**redoing (1)**
16:19
**Reed (121)**
4:3,4,4,5,7,15;
5:20;6:4,5;7:6,10,11,
15,17;8:1,5,20;9:9,
21;10:12,22,23,25;
11:1,2,2,14,16,20,23;
12:2,4,7,9,15;13:2,7,
8,11;14:2,8,25;
15:14,15,23;16:9;
17:1,3,18,22;18:3,7,
11,22;19:4,6,8,15,18,
21,23,25;20:6,21,24,
25;21:8,10,16,23;
22:6,16;23:11,12,19,
21;24:11,14,15,17;
25:12,15,23;26:2,4,
7,18,20,25;27:3,18,
19,22;28:2,5,7,10,
16;29:22;30:2,10,16;
31:12,14,16,18,25;
32:4,5,11,13,17,22;
33:2,4,18;34:9,11,
14,19;35:2
**Reed's (6)**
5:2;6:14;8:12;9:3,

5;29:7
**refer (1)**
14:21
**referred (2)**
15:3;33:7
**referring (2)**
12:22;14:3
**refinance (1)**
7:8
**regard (3)**
6:12;23:15;30:10
**regarding (2)**
6:14;22:21
**relate (6)**
4:21;16:13;21:14;
25:21;30:13;33:14
**related (4)**
7:8;18:23;20:20;
21:2
**relates (8)**
5:6;11:8;16:19,22;
22:3;23:1;25:20;
26:20
**relating (6)**
5:7,14;11:4;21:14;
22:18;30:6
**relationship (1)**
21:19
**relevant (2)**
22:20;34:6
**rely (5)**
9:23;30:2,23;
33:19,20
**relying (3)**
13:13,17;15:9
**remains (1)**
26:24
**remember (3)**
6:1;30:14,18
**report (20)**
11:17;12:10;
14:23;15:7,7,8,25;
16:7;30:11,13,15;
31:7,10,11;32:7,18;
33:7,12,20;34:4
**reports (26)**
7:17;9:10,15,17,
22;10:1,12,14,23,24;
11:10,12,14;14:8;
15:5,17,18,19;19:2;
22:7;27:1,6,11;
30:23;31:21;33:10
**represented (3)**
7:9;13:21;16:1
**reputable (1)**
12:8
**require (2)**
25:9,14
**required (3)**
8:19;9:20;11:10
**requirement (1)**
8:21
**requiring (2)**

20:24;30:7
**ResCap (2)**
4:10;9:21
**reschedule (1)**
8:24
**research (1)**
23:12
**resolved (4)**
11:6;23:10;25:2;
26:12
**respect (11)**
4:22;5:2,16;6:4;
16:17;17:25;20:14;
28:18;29:7,16;30:21
**respective (1)**
29:8
**respond (1)**
21:11
**result (2)**
21:1;24:21
**retained (1)**
15:19
**retry (1)**
11:5
**retrying (1)**
6:8
**reversed (1)**
11:3
**reviewed (1)**
10:16
**revisit (1)**
32:11
**right (16)**
4:12;6:20;10:19;
14:18;17:23;18:2,
21;19:14,16;20:7;
23:21;28:17;32:17;
34:2,16,23
**Robert (1)**
7:2
**room (1)**
9:2
**routine (1)**
24:7
**rubric (1)**
7:22
**rule (5)**
14:12,20,24;
21:12;32:21
**rules (2)**
25:11;32:24
**ruling (9)**
5:14;15:25;20:10,
15;21:3,6,10;30:21;
33:9

**S**

**satisfied (1)**
24:21
**satisfies (1)**
32:23
**saying (7)**

14:9;22:2,4,17;
25:24;27:14;33:15
**schedule (1)**
25:1
**scheduled (1)**
23:4
**scheduling (3)**
8:18;20:19;26:16
**se (1)**
25:13
**second (2)**
20:16,22
**sections (3)**
25:16,18;30:12
**seek (1)**
23:14
**seeking (1)**
7:20
**seem (2)**
6:4,15
**seems (3)**
5:4,21;7:21
**send (1)**
8:24
**separate (3)**
13:12;27:4;33:12
**serve (2)**
23:16;24:21
**services (1)**
6:3
**serving (1)**
28:14
**set (5)**
10:4;20:24;27:4,
21;28:19
**seventeen (7)**
4:19;6:24;7:24,25;
8:3;18:19;19:8
**shall (2)**
9:21;27:4
**short (1)**
17:15
**shorten (1)**
19:13
**short-handing (1)**
16:23
**sic (1)**
22:8
**side (3)**
10:2;32:25;33:5
**sides (1)**
28:22
**simple (2)**
11:13;23:9
**simpler (1)**
24:1
**simply (2)**
6:13;14:23
**sit (1)**
24:9
**Smith (1)**
4:7
**somebody (2)**

14:23;16:5
**somehow (1)**
7:1
**someone (3)**
12:22,24;30:16
**sometimes (1)**
29:1
**sooner (2)**
23:17;25:3
**sorry (3)**
21:8;27:25;33:17
**sought (1)**
6:5
**speaks (1)**
29:15
**specific (4)**
7:12;23:14;24:19;
29:15
**specifically (9)**
4:18;7:2,18;8:4;
9:5,18;15:3;26:8;
31:7
**specificity (1)**
20:25
**spent (1)**
34:2
**spot (1)**
19:5
**stand (2)**
4:13;22:23
**standpoint (1)**
14:14
**start (1)**
28:14
**state (3)**
18:5,13,15
**stating (1)**
13:16
**steps (1)**
24:22
**Stevie (5)**
12:7,11,23;13:13;
14:2
**still (6)**
9:8,19;11:9;19:14;
25:6;27:6
**stipulate (1)**
25:17
**stipulations (1)**
25:16
**stop (8)**
14:5;17:5,5;30:17,
17;33:3,3,3
**story (1)**
14:23
**strictly (1)**
20:4
**strike (1)**
29:20
**strucken (1)**
22:8
**stuff (1)**
18:13

**subject (1)**
31:5
**subpoena (5)**
8:14;23:8,14;24:3,
7
**subpoenas (6)**
8:24;23:16,24;
24:18,21;28:15
**suffered (1)**
21:1
**suggest (3)**
23:18,23;24:9
**suggested (1)**
16:11
**supplied (6)**
5:1;6:13;7:17;8:9;
10:24;12:11
**supply (2)**
14:2;27:22
**supposed (1)**
26:1
**suppressed (1)**
20:7
**sure (10)**
4:20;8:20,22;14:4;
15:21;23:19;26:21;
28:24;29:6;35:1
**Sussman (8)**
6:10,17;7:2;19:21;
20:2,7,11,13
**Sussman's (1)**
21:3

**T**

**table (1)**
33:1
**talk (4)**
23:24;29:10,12,13
**talked (1)**
12:13
**talking (7)**
5:24;12:23;13:1,
20;14:1;19:13;20:4
**TD (1)**
7:3
**telephone (8)**
17:6;18:10,11,12,
15,16;23:3;28:13
**telling (5)**
14:25;21:23;
22:14;23:18;32:14
**template (2)**
25:10;26:4
**testified (3)**
5:19;30:18;31:23
**testify (16)**
11:8;18:7,10,18;
19:13;20:12,14;21:5,
7,20;22:22;23:8;
30:19,25;31:5,8
**testifying (2)**
6:11;31:9

**testimony (17)**
5:5;7:16;9:5,6;
10:6;14:7;16:5;21:3;
27:2;29:16,24;30:5,
7,23;31:3;32:24;
33:11
**testy (1)**
21:17
**though (2)**
15:24;29:14
**thought (4)**
15:18;17:3;18:22;
22:12
**three (1)**
10:10
**times (1)**
26:11
**today (8)**
16:4;20:15;25:6;
26:11;27:14,22,24;
32:15
**together (1)**
27:1
**told (1)**
15:19
**tomorrow (4)**
28:4,6,12;34:13
**tonight (1)**
34:14
**took (1)**
30:20
**total (1)**
4:17
**touch (1)**
34:17
**transcript (1)**
22:11
**travel (2)**
8:15,20
**trial (40)**
5:14,19,24;6:7,16;
7:7,12,13,21;9:23;
11:2;14:12;15:10;
16:25;18:1,5,18;
20:2,10,13;21:5,5,
25;22:3;23:16;25:4,
5,7,20,22;28:22;
29:1,2,3,4;30:24;
31:6;32:15,20;34:3
**trials (1)**
18:15
**tried (8)**
5:7;6:8;7:1,11;
26:9,12;33:6;34:7
**true (2)**
15:9;16:7
**Trust (8)**
4:7,11;9:22;11:11;
23:15;26:19;27:4;
32:25
**truth (1)**
14:10
**truthfulness (1)**

13:13
**try (7)**
11:3;18:14;22:1;
24:24;29:1,2,3
**trying (7)**
5:21,21;7:6;19:1,
4;31:19;33:2
**twenty-three (6)**
4:16,24,25;18:22;
29:7,23
**twenty-two (3)**
4:15,22;5:2
**two (5)**
9:7,23;11:4;14:1;
23:7

**U**

**Uminski (1)**
13:24
**Uminski's (1)**
13:3
**under (2)**
7:22;25:11
**understands (1)**
26:5
**Understood (2)**
15:11;34:8
**unnecessary (1)**
24:22
**up (2)**
18:23;29:10
**upon (1)**
9:23
**urging (1)**
24:6
**usually (2)**
29:1,2

**V**

**ventures (14)**
5:15;6:21,23;11:4;
16:18,23;20:15;
22:19;23:1;30:6;
31:1;32:2,8,19
**verge (1)**
25:5
**vice (1)**
7:3
**Virginia (7)**
8:8;9,11,11,12;
11:17;21:20

**W**

**waiting (1)**
9:8
**Walters (2)**
7:9;18:25
**wants (1)**
22:22
**Watson (5)**

12:7,11,23;13:13;
14:2
**way (4)**
4:18;20:11;24:3;
26:22
**week (3)**
17:11,12;29:2
**weekend (1)**
23:13
**well-known (1)**
12:7
**weren't (1)**
4:18
**what's (1)**
26:5
**Whereupon (1)**
35:3
**whole (1)**
24:7
**Who's (3)**
12:6,6;14:21
**whose (1)**
28:13
**wiggle (1)**
9:2
**willing (2)**
8:16;19:2
**WISHNEW (5)**
4:9,10;23:25;25:9;
26:3
**within (7)**
12:16,16,16;13:15,
15,19;15:23
**without (1)**
32:9
**witness (20)**
4:14;5:20;6:11,25;
12:6,6;13:14;14:10,
22;16:12;17:7;
21:17;22:3,5,23;
26:19;27:3,12;30:8;
31:4
**witnesses (34)**
4:16,17,19,20,22;
5:5,19,24;6:18,22,
25;9:24;10:6;11:8;
14:14;15:2;16:11,
12;17:7,17,18,19;
18:10,16,17;19:12;
22:15;27:1,4,15,16;
28:14;29:7,23
**Woods (1)**
16:23
**Woods' (1)**
26:11
**words (1)**
26:21
**work (1)**
35:1
**writing (1)**
14:18
**written (7)**
6:14;21:11;27:1;

28:11;30:15,23;
31:21
**wrote (2)**
12:12,23

**Y**

**years (2)**
14:11,16
**York (1)**
18:6

**1**

**12:01 (1)**
35:3
**12th (8)**
9:10,15,21;10:1;
11:11,16;30:22;
32:13
**16 (2)**
9:20;20:18

**2**

**20 (1)**
20:22
**2008 (2)**
13:25,25
**2011 (2)**
12:12;13:25
**2014 (1)**
5:14
**2016 (3)**
9:20;20:18,23
**27th (2)**
10:11;26:24

**3**

**3759 (1)**
20:20
**3rd (1)**
8:20

**5**

**5 (3)**
28:6,12;34:13

**9**

**9523 (1)**
20:23