**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

------------------------------------------------------------------

**DECLARATION AND PROPOSED TESTIMONY OF KATHY PRIORE IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NOS. 416 AND 417 FILED BY ERLINDA ABIBAS ANIEL, FERMIN SOLIS ANIEL, AND MARC <u>JASON ANIEL</u>**

I, Kathy Priore, hereby declare as follows:

1.     I serve as Associate Counsel for the ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>").  I joined ResCap on May 1, 2008 as in-house litigation counsel.  Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.     In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation.  In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court.  In my current position as Associate Counsel to the

1

EXHIBIT A

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the
Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation
process.[1]

3.      Except as otherwise indicated, all facts set forth in this Declaration are
based either upon my personal knowledge of the Debtors' operations, information learned from
my review of relevant documents, or information I have received through my discussions with
other former members of the Debtors' management or other former employees of the Debtors,
the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called
upon to testify, I could and would testify competently to the facts set forth in the Objection on
that basis.

4.      In my current and former capacities as Associate Counsel to the
Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation
process.  Except as otherwise indicated, all statements in this Declaration are based upon my
familiarity with the Debtors' Books and Records (the "Books and Records") kept in the ordinary
course of the Debtors' business, as well as the Debtors' schedules of assets and liabilities and
statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my
review and reconciliation of claims, and/or my review of relevant documents.

5.      Certain of the Books and Records, including the loan file for the Aniel
Loan, were transferred to Ocwen Loan Servicing, LLC ("Ocwen") as part of the sale of the
Debtors' servicing platform.  Pursuant to the Statement of Work, which is part of the Transition
Services Agreement between ResCap and Ocwen, Ocwen is required to assist the Liquidating

---

[1]     The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation
Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the
books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in
performing its obligations.

2

Trust with the claims reconciliation process by providing the Liquidating Trust, upon its request, with documents from the Books and Records maintained by Ocwen.  As a result of the Bankruptcy Court's decision sustaining in part and overruling in part the Objection to the Aniels' claims, I sent a request to an employee of Ocwen asking them to locate in their books and records the relevant power of attorney for the Aniel Loan (defined below).  In response, an Ocwen employee provided me with a limited power of attorney that HSBC Bank USA, National Association, as Trustee ("HSBC") granted to GMAC Mortgage, LLC ("GMACM") (the "HSBC Power of Attorney").

6.      On June 4, 2007, Erlinda Aniel refinanced an existing loan from Mortgage IT in the amount of $2,000,000.00 (the "Aniel Loan"), evidenced by a note (the "Aniel Note"). The Aniel Loan was secured by a deed of trust (the "Aniel Deed of Trust"), executed by all of the Claimants, on property located at 75 Tobin Clark Drive, Hillsborough, California (the "Aniel Property").  The Aniel Deed of Trust named Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for the lender and the lender's successors and assigns and the beneficiary of the instrument.

7.      GMACM subserviced the Aniel Loan from its origination until servicing was transferred to Ocwen on February 16, 2013.

8.      On or around July 1, 2007, the Aniel Loan was transferred to HSBC.  The assignment of the Aniel Deed of Trust (the "Aniel Assignment") was recorded on August 24, 2009.

9.      On September 29, 2008, ETS recorded a substitution of trustee (the "Aniel 2008 Substitution of Trustee") in the San Mateo County Recorder's Office, noting MERS as the beneficiary of the Aniel Deed of Trust.

3

10.    On February 1, 2011, HSBC assigned the Aniel Deed of Trust (the "Assignment") to GMACM.    The Assignment was signed by Mira Smoot, as an authorized officer of HSBC.    Mira Smoot was an employee of GMACM who was an authorized officer of GMACM, a fact that I confirmed by reviewing Ms. Smoot's company profile listing her titles as of the date of the assignment.

11.    At the time of the Assignment, GMACM had authority to execute assignments on behalf of HSBC pursuant to the HSBC Power of Attorney.    The HSBC Power of Attorney grants GMACM the power to execute, acknowledge, seal and deliver assignments of deed of trust/mortgages, among other things.    Attached to the HSBC Power of Attorney is a list of securitizations for which GMACM acted as the servicer at the time the HSBC Power of Attorney was executed.    Among the securitizations listed is Deutsche Alt – A Securities Mortgage Loan Trust, Series 2007-OA5, the securitization trust into which the Aniel Loan was transferred.

12.    Thus, the HSBC Power of Attorney demonstrates that Mira Smoot, as an employee of GMACM was authorized to execute assignments in HSBC's name, had authority to execute the Assignment, and as a result the Assignment is valid.

13.    On April 27, 2012, ETS recorded another substitution of trustee in the San Mateo County Recorder's Office.

14.    On April 27, 2012, ETS recorded a notice of default in the San Mateo County Recorder's Office.

15.    On August 1, 2012, ETS recorded a notice of trustee's sale in the San Mateo County Recorder's Office, scheduling the sale of the Property for August 27, 2012.

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.


Dated:  March 9, 2016


 /s/ Kathy Priore
Kathy Priore
Associate Counsel for ResCap Liquidating
Trust

ny-1224446

NOTE

Fax 7142476123 _ May 12 2009 09:55am P003/008

Date: JUNE 4, 2007

Loan # ███ 137
Min #: ████ 8632

## FLEX PAY FIXED/ADJUSTABLE RATE NOTE
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO
AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY
ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE I MUST PAY.

JUNE 4, 2007          HILLSBOROUGH MN20 0002A          CALIFORNIA
[Date]                      [City]                              [State]

75 TOBIN CLARK DRIVE, HILLSBOROUGH 060320 0002A, CALIFORNIA 94010
[Property Address]



**1.    BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 2,000,000.00    (this amount is called
"Principal"), plus interest, to the order of Lender. Lender is
MORTGAGEIT, INC.

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at
a yearly rate of    7.250    %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and
after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**
    **(A) Time and Place of Payments**
    I will pay principal and interest by making a payment every month.
    I will make my monthly payments on the first day of each month beginning on AUGUST 1, 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on JULY 1, 2037          , I still owe amounts under this Note, I will pay
those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at
GMAC MORTGAGE, LLC., P.O. BOX 780
WATERLOO, IA 50704-0780
or at a different place if required by the Note Holder.
    **(B) Amount of My Initial Monthly Payments**
    Each of my initial monthly payments will be in the amount of U.S. $    7,503.94    . This amount is a
FORTY FIVE AND NO /100          percent (    45.000    %) reduction of the payment amount that will
be sufficient to repay the unpaid principal in full on the Maturity Date in substantially equal installments at the
interest rate set forth in Section 2. This amount may change.

JedyMac Bank FlexPay 1 Yr. LIBOR Fixed Adjustable Rate Note - Multistate
8480990 (0607)
FAND# 8480990 Rev. 10-23-06          Page 1 of 6          Initials: ___          Form 5608 07/06

EXHIBIT B

t137

(C)  Payment Changes
My monthly payment will remain the same until AUGUST 1, 2012 , the month after the first Change Date, and will not change again until after I have made my 120th scheduled monthly payment unless it is required to change in accordance with Section 4(F) below.
If I have made less than 120 scheduled monthly payments, my new monthly payment will be in an amount equal to FORTY FIVE AND NO /100   percent ( 45.000   %) reduction of the "Full Payment." This limitation will not apply under the circumstances described in Section 4(F). The Full Payment is the amount of the monthly payment that would be sufficient to repay the unpaid balance that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.
If I have made 120 or more scheduled monthly payments, my new monthly payment will be in an amount equal to the Full Payment.

4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)  Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of JULY, 2012 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."
(B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in The Wall Street Journal. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
(C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 75 /100   percentage points ( 2.750   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
(D)  Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 12.250 % or less than 2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.250 %.
(E)  Additions to My Unpaid Balance
If I have made less than 120 scheduled monthly payments, on any monthly payment date the amount of my monthly payment could be less than the interest portion of the Full Payment. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid balance. The Note Holder will also accrue interest on the amount of this difference to my unpaid balance each month. The interest rate on the interest added to the balance will be the rate required by Section 4(C) above.
(F)  Limit on My Unpaid Balance; Increased Monthly Payment
My unpaid balance can never exceed a maximum amount equal to one hundred FIFTEEN   percent ( 115   %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments until I have made 120 scheduled monthly payments, the addition of unpaid interest to my unpaid balance under Section 4(E) above could cause my unpaid balance to exceed that maximum. In that event, on the date that the payment of my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment equal to the interest only portion of the Full Payment if I have made less than 120 scheduled monthly payments.

8480990 (0607)
FAND# 8480990-2 Rev. 10-25-06                    Page 2 of 6

Initials:

Form 5608 07/06

Fax 7142476123                    May 12 2009 09:55am  P005/008

137

**(G) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(H) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15    calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 5.000  % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

8480998 (0607)
FAND# 8480990-J Rev. 10-23-06                    Page 3 of 8                    Initials: _____                    Form 5600 07/06

Fax 7142476123          May 12 2009 09:55am P006/008

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

8480990 (0607)
FANDI 8480990-4 Rev. 10-25-06                Page 4 of 6                Initials: _____        Form 5600 07/06

Fax 7142476123          May 12 2009 09:55am  P007/008

 137

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Fax 7142476123          May 12 2009 09:56am  P008/008

137

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ERLINDA ANIEL                                                - Borrower

[Sign Original Only]

Pay to the order of:

Without Recourse
MortgageIT, Inc.

By: _____
Name: Ken Lauer
Its: Assistant Secretary

8480990 (0607)
FAND# 8480990-6 Rev. 04-10-07          Page 6 of 6          Form 5658 07/06

**RECORD AND RETURN TO:**
MORTGAGEIT, INC.
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562

Recording Requested By:
**MORTGAGEIT, INC.**
**1855 GATEWAY BLVD. SUITE 650**
**CONCORD, CALIFORNIA 94520**

This Document Was Prepared By:
**DERRICK BAUTISTA**
**MORTGAGEIT**
**1855 GATEWAY BLVD., #650**
**CONCORD, CA 94520**

**2007-088561**
01:24pm 06/08/07 DT  Fee: 67.00
Count of pages 21
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2 0 0 7 0 0 8 8 5 6 1 A R *

_____   [Space Above This Line for Recording Data]   _____

MIN:   [redacted]137

MIN:   [redacted]8632

# DEED OF TRUST

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"**  means this document, which is dated  **JUNE 4, 2007**
together with all Riders to this document.
**(B) "Borrower"** is
**FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON
ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
**MORTGAGEIT, INC.**

Lender is a  **CORPORATION**
organized and existing under the laws of  **NEW YORK**
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
CA71 : 07/01                           (Page 1)                    Form 3005 1/01

EXHIBIT C

137

Lender's address is
**33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NEW YORK 10038**

**(D) "Trustee"** is
**FIDELITY NATIONAL TITLE**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.   **MERS is the beneficiary under this Security Instrument.**   MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated   **JUNE 4, 2007**
The Note states that Borrower owes Lender
**TWO MILLION AND NO / 100**

Dollars (U.S. $           **2,000,000.00**           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **JULY 01, 2037**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

   [X] Adjustable Rate Rider   [ ] Condominium Rider        [ ] Second Home Rider
   [ ] Balloon Rider          [ ] Planned Unit Development Rider   [ ] Biweekly Payment Rider
   [ ] 1-4 Family Rider
   [ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. s2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As

CA72 : 07/01            (Page 2)

137

used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**

[Type of Recording Jurisdiction]

of **SAN MATEO**                                                    :

[Name of Recording Jurisdiction]

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. 038-352-040**

which currently has the address of **75 TOBIN CLARK DRIVE**

[Street]

**HILLSBOROUGH** ~~060326 0002~~        , California        **94010**        ("Property Address"):

[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA73 : 07/01                        (Page 3)

1137

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

CA74 . 07/01                          (Page 4)

1137

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

CA75 : 07/01                    (Page 5)

1137

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall

137

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6.   Occupancy.**   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   **7.   Preservation, Maintenance and Protection of the Property; Inspections.**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   **8.   Borrower's Loan Application.**   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   **9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

137

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

CA78 : 07/01                              (Page 8)

137

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third

1137

party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

**137**

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

137

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.    Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.**  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not

CA82 : 07/01                    (Page 12)

1137

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes

137

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.**    Lender, at it's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.**    Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and convenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**BORROWERS:**

_____    (Seal)
ERLINDA ANIEL                                 - Borrower

_____    (Seal)
FERMIN ANIEL                                  - Borrower

_____    (Seal)
MARC JASON ANIEL                              - Borrower

_____    (Seal)
                                              - Borrower

_____    (Seal)
                                              - Borrower

_____    (Seal)
                                              - Borrower

CA84 : 02/07                     (Page 14)

1137

_____   |Space Below This Line for Acknowledgment]   _____

**STATE OF  CALIFORNIA**                    **COUNTY OF**  San Mateo

   On   June 4, 2007          before me,    Carolyn Chan, Notary Public          ,
personally appeared
**ERLINDA ANIEL AND FERMIN ANIEL  AND MARC JASON ANIEL**

p̶e̶r̶s̶o̶n̶a̶l̶l̶y̶ ̶k̶n̶o̶w̶n̶ ̶t̶o̶ ̶m̶e̶ ̶o̶r̶  proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

   WITNESS my hand and official seal.



_____ (Seal)
Carolyn Chan

CA85 : 02/03                    (Page 15)

Date: **JUNE 4, 2007**

Loan # █████1137
Min #: █████████8632

# FLEX PAY FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **4TH** day of **JUNE, 2007** ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
**MORTGAGEIT, INC.**

("Lender") of the
same date and covering the property described in the Security Instrument and located at:

**75 TOBIN CLARK DRIVE, HILLSBOROUGH ~~060320 000214~~, CALIFORNIA 94010**
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE.    THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.**    In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.    ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of   **7.250**   %. The Note also provides for a
change in the initial fixed rate to an adjustable interest rate, as follows:
**3.    PAYMENTS**
    **(B) Amount of My Initial Monthly Payments**
    Each of my initial monthly payments will be in the amount of U.S. **$ 7,503.94**        . This amount
is a **FORTY FIVE AND NO / 100**        percent (   **45.000**    %) reduction of the payment amount
that will be sufficient to repay the unpaid principal in full on the Maturity Date in substantially equal
installments at the interest rate set forth in Section 2. This amount may change.
    **(C) Payment Changes**
    My monthly payment will remain the same until **AUGUST, 2012**        , the month after the first
Change Date, and will not change again until after I have made my 120th scheduled monthly payment unless
it is required to change in accordance with Section 4(F) below.

**Indymac Bank Flex Pay 1 Yr LIBOR Fixed/Adjustable Rate Rider - Multistate**
**8480998** (0606)                                                                        Form 5609
FAND# 8480998 Rev. 10-09-06              Page 1 of 5                                       06/06

137

If I have made less than 120 scheduled monthly payments, my new monthly payment will be in an amount equal to a **FORTY FIVE AND NO / 100** percent (   **45.000**   %) reduction of the "Full Payment." This limitation will not apply under the circumstances described in Section 4(F). The Full Payment is the amount of the monthly payment that would be sufficient to repay the unpaid balance that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.

If I have made 120 or more scheduled monthly payments, my new monthly payment will be in an amount equal to the Full Payment.

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **JULY, 2012**                , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in The Wall Street Journal. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 75 / 100**               percentage points (   **2.750**   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than **12.250**      % or less than   **2.750**      %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   **12.250**   %.

### (E) Additions to My Unpaid Balance
If I have made less than 120 scheduled monthly payments, on any monthly payment date the amount of my monthly payment could be less than the interest portion of the Full Payment. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid balance. The Note Holder will also accrue interest on the amount of this difference to my unpaid balance each month. The interest rate on the interest added to the balance will be the rate required by Section 4(C) above.

### (F) Limit on My Unpaid Balance:  Increased Monthly Payment
My unpaid balance can never exceed a maximum amount equal to one hundred **FIFTEEN**  percent (   **115**  %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments until I have made 120 scheduled monthly payments, the addition of unpaid interest to my unpaid balance under Section 4(E) above could cause my unpaid balance to exceed that maximum. In that event, on the date that the payment of my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment equal to the interest only portion of the Full Payment if I have made less than 120 scheduled monthly payments.

137

**(G) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(H) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.    Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**    As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.    When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**    As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee

137

to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
**ERLINDA ANIEL**                                                              -Borrower

_____ (Seal)
**FERMIN ANIEL**                                                              -Borrower

_____ (Seal)
**MARC JASON ANIEL**                                                    -Borrower

_____ (Seal)
                                                                                      -Borrower

1137

_____ (Seal)
-Borrower


_____ (Seal)
-Borrower

Title No. 07-**9565875**-A-BD
Locate No. CAFNT0941-0938-0007-0009565875

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF HILLSBOROUGH, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 15, AS DESIGNATED ON THAT CERTAIN MAP ENTITLED, "TOBIN CLARK ESTATES UNIT NO. TWO, SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER ON JUNE 25, 1976, IN BOOK 91 OF MAPS AT PAGES 17 AND 19.

JPN: 091-017-000-0015

APN: 038-352-040

CLTA Preliminary Report Form (11/17/04)

LIMITED POWER OF ATTORNEY

**HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE** (hereinafter called "Trustee") hereby appoints GMAC Mortgage, LLC (hereinafter called "GMAC Mortgage"), as its true and lawful attorney-in-fact to act in the name, place and stead of Trustee for the purposes set forth below. GMAC Mortgage is the Servicer for many securitizations (the "Agreements" see Exhibit A attached for a listing) now in existence and that will be formed from time to time.

The said attorneys-in-fact, and each of them, are hereby authorized, and empowered, as follows:

1.      To execute, acknowledge, seal and deliver deed of trust/mortgage note endorsements, lost note affidavits, assignments of deed of trust/mortgage and other recorded documents, satisfactions/releases/reconveyances of deed of trust/mortgage, subordinations and modifications, tax authority notifications and declarations, deeds, bills of sale, and other instruments of sale, conveyance, and transfer, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits, and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation or filing.

2.      To execute and deliver insurance filings and claims, affidavits of debt, substitutions of trustee, substitutions of counsel, non-military affidavits, notices of recission, foreclosure deeds, transfer tax affidavits, affidavits of merit, verifications of complaints, notices to quit, bankruptcy declarations for the purpose of filing motions to lift stays, and other documents or notice filings on behalf of Trustee in connection with insurance, foreclosure, bankruptcy and eviction actions.

3.      To endorse any checks or other instruments received by GMAC Mortgage and made payable to Trustee.

4.      To pursue any deficiency, debt or other obligation, secured or unsecured, including but not limited to those arising from foreclosure or other sale, promissory note or other check. This power also authorizes GMAC Mortgage to collect, negotiate or otherwise settle any deficiency claim, including interest and attorney's fees.

5.      To do any other act or complete any other document that arises in the normal course of servicing

Dated: August 28, 2008

**HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE**

Witness:

Name: _____
Title: _____

Name: Nancy Luong

Name: Doris Wong

Name:    Susie Moy
Title:    Vice President

State of ___New York_____), County of _New York_____)

BEFORE ME, __Nina Nassar__, a Notary Public in and for the jurisdiction aforesaid, on this 28th day of August__, 2008, personally appeared ___Susie Moy__ who is personally known to me (or sufficiently proven) to be a _Vice President_____ of HSBC Bank USA, as Trustee and the person who executed the foregoing instrument by virtue of the authority vested in him/her and he/she did acknowledge the signing of the foregoing instrument to be his/her free and voluntary act and deed as a _____Vice President_____ for the uses, purposes and consideration therein set forth.

Witness my hand and official seal this _28th_ day of __August__, 2008.

_____
My Commission Expires:

NOTARY STAMP

NINA NASSAR
No. 01NA6166279
Notary Public, State of New York
Qualified in New York County
My Commission Expires 06/25/2011

BT000001

EXHIBIT D

## Exhibit "A"

HSBC Bank USA, National Association, as Trustee for Deutsche ALT-A Securities, Inc. Mortgage Loan Trust, Series 2003-2XS

HSBC Bank USA, National Association, as Trustee for Deutsche Mortgage Securities Inc. Mortgage Loan Trust, Series 2004-1

HSBC Bank USA, National Association, as Trustee for Deutsche Mortgage Securities Inc. Mortgage Loan Trust, Series 2004-5

HSBC Bank USA, National Association, as Trustee for Deutsche Mortgage Securities Inc. Mortgage Loan Trust, Series 2005-4

HSBC Bank USA, National Association, as Trustee for Deutsche ALT-A Securities, Inc. Mortgage Pass-Through Certificates, Series 2005-AR2

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-B Securities Mortgage Loan Trust, Series 2006-AB1 or as Trustee for DBALT 2006-AB1

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-B Securities Mortgage Loan Trust, Series 2006-AB2

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-B Securities Mortgage Loan Trust, Series 2006-AR2

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2004-OA3

HSBC Bank USA, National Association, as Trustee for Deutsche Alt – A Securities Mortgage Loan Trust, Series 2006-OA1

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-1

HSBC Bank USA, National Association, as Trustee for Nomura Asset Acceptance Corporation, Mortgage Pass-Through Certificates, Series 2007-2  or as Trustee for  NAAC 2007-2

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-3

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-4

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-B Securities Mortgage Loan Trust, Series 2007-AB1

HSBC Bank USA, National Association, as Trustee for  Deutsche Alt – A Securities Mortgage Loan Trust, Series 2007-OA3

HSBC Bank USA, National Association, as Trustee for  Deutsche Alt – A Securities Mortgage Loan Trust, Series 2007-OA4

HSBC Bank USA, National Association, as Trustee for  Deutsche Alt – A Securities Mortgage Loan Trust, Series 2007-OA5

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2004-3

**Exhibit "A" Continued**

Updated as of October 5, 2006

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2004-4

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2004-6

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2004-7

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2004-8

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2004-9

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2004-10

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2005-1

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2007-2

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2007-3

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust, Series 2007-4

HSBC Bank USA, National Association, as Trustee for Merrill Lynch Alternative Note Asset Trust, Series 2007-OAR3

BT000003

**RECORDING REQUESTED BY:**

**2008-108476**

09:04am 09/29/08 ST  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

**FIRST AMERICAN TITLE INSURANCE**

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

**\* 2 0 0 8 0 1 0 8 4 7 6 A R \***

TS NO : GM-164602-C

LOAN NO : █████8492

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

**WHEREAS, FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS** was the original Trustor, **FIDELITY NATIONAL TITLE** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.** was the original Beneficiary under that certain Deed of Trust dated **6/4/2007** and recorded on **6/8/2007** as Instrument No. **2007-088561**, in Book , Page  of Official Records of **San Mateo** County, California; and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
**Dated : 9/25/2008**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

**Rosalie Solano,  ASSISTANT SECRETARY**

State of California} ss.
County of Los Angeles }

On **9/25/2008** before me, **Christine Gomez-Schwab** Notary Public, personally appeared **Rosalie Solano** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
**Christine Gomez-Schwab**

CHRISTINE E. GOMEZ SCHWAB
Commission # 1651121
Notary Public · California
Los Angeles County
My Comm. Expires Mar 12, 2010

When embossed, this is certified to be a true copy of the
records of the San Mateo Assessor-County Clerk-Recorder.

MAR 2  2016
Mark Church, Assessor-County Clerk-Recorder

By _____

**EXHIBIT E**



RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.,
solely as nominee for Mortgageit, Inc.

RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

4263507

APN: 038-352-040

I-026976

**2009-125757**

09:34am 09/21/09 AT  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

\* 2 0 0 9 0 1 2 5 7 5 7 A R \*

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC Bank
USA, National Association as Trustee for DALT2007-OA5 all beneficial interest under that certain
Deed of Trust dated June 4, 2007, executed by Fermin Aniel, and Erlinda Aniel, Husband and Wife
and Marc Jason Aniel, A Single man, all as joint tenants, to Fidelity National Title as trustee, for
Mortgage Electronic Registration Systems, Inc., solely as nominee for Mortgageit, Inc., as
beneficiary, and recorded as Instrument No. 2007008561, on June 8, 2007, in the State of California,
San Mateo County Recorder's Office. Together with the Note or Notes therein described or referred
to, the money due and to become due thereon with interest, and all rights accrued or to accrue under
said Deed of Trust.

Dated: 8-24-09

**Mortgage Electronic Registration Systems, Inc., solely
as nominee for Mortgageit, Inc.**
By: _Jennine Yamoah_
Its: _Jannoe Yamoah Assistant Secretary_

State of PA )
County of Montgomery ) ss.
On 8 24 09 before me, _Zahirah Y Sweet_ - Notary Public, personally appeared
_Jennine Yamoah_ who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

_Zahirah Y Sweet_
Notary Public

(This Area for Official Notary Seal)

NOTARIAL SEAL
ZAHIRAH Y SWEET
Notary Public
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Mar 7, 2013

When embossed, this is certified to be a true copy of the
records of the San Mateo County Assessor-County Clerk-Recorder.
MAR 2 2011
Mark Church, Assessor-County Clerk-Recorder
By _Brenda Barraza_

**EXHIBIT F**

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

Requested and Prepared by:
ETS Services, LLC

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

**2011-016800**
11:18 am 02/09/11 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

*R 0 0 0 1 1 3 5 6 8 7 *

3879875

Loan No.:  ████8492
TS NO:  GM-164602-C

### ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION**

all beneficial interest under that certain Deed of Trust dated: 6/4/2007 executed by FERMIN
ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN,
ALL AS JOINT TENANTS, as Trustor(s), to FIDELITY NATIONAL TITLE, as Trustee, and recorded
as Instrument No. 2007-088561, on 6/8/2007, in Book XX, Page XX of Official Records, in the
office of the County Recorder of San Mateo County, California together with the Promissory Note
secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE:  _February 1, 2011_

HSBC Bank USA, National Association as Trustee
for DALT2007-OA5

_Mira Smoot_
Authorized Officer

State of  _Pennsylvania_          } SS.
County of  _Montgomery_         }

On  _FEB 1 2011_ before me,  _Mary Lynch_  Notary Public, personally
appeared  _Mira Smoot_  who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of  _Pennsylvania_  that the foregoing
paragraph is true and correct.

**WITNESS** my hand and official seal.

Signature  _Mary Lynch_  (Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 3, 2014
Member Pennsylvania Association of Notaries

When embossed, this is certified to be a true copy of the
records of the San Mateo Assessor-County Clerk-Recorder.
Mark Church, Assessor-County Clerk-Recorder
By

**EXHIBIT G**

# Mira Smoot

### Individual Profile

---

## Individual Details

|  |  |
|---|---|
| Name: | Mira Smoot |
| QuickRef: | SMOOT-M |
| Title: | |
| Honours: | |
| Salutation: | |
| Occupation: | |
| Nationality: | |
| Date of Birth: | |
| Previous Name: | |
| Social Security No: | |
| Resident In: | United States |

## Primary Addresses

Work:    1100 Virginia Drive, Fort Washington PA 19034-3200, United States

## Management Details

|  |  |
|---|---|
| User Grouping: | |
| File Reference: | |
| Managed By: | |
| Division/Partner: | ██████████████ |
| Email: | |
| Department ID: | |
| Dual Officer: | |
| Business Name: | |
| Division: | ██████████ |
| Comments: | |
| Section 16 Inside: | |
| Date of Last CR Approval: | |
| Date of Last Certification: | |
| Deactivation Date: | |
| Date Employment Last Confirmed with HR: | |
| Date Officership Last Confirmed: | |
| Original Certificate Date in CRMS: | |
| Active MERS Signer: | |
| Phone Number: | |
| Nature of Authorized Representative: | ██████████ |

## Past Appointments Held

| Name | QuickRef | Position | Appointed | Resigned |
|---|---|---|---|---|
| ███████████ | ██████ | ██████ | ████ | ████ |
|  |  | ██████ | ████ | ████ |
| ███████████ | ██████ | ██████ | ████ | ████ |
|  |  | ██████ | ████ | ████ |
| ████████ | ██████ | ██████ | ████ | ████ |
|  |  | ██████ | ████ | ████ |
| GMAC Mortgage, LLC | GMACM | Category 3 Authorized Officer | 08/09/2010 | 02/15/2013 |
|  |  | Category 4 Authorized Officer | 08/09/2010 | 02/15/2013 |
| ██████████ | | ██████ | ████ | ████ |
|  |  | ██████ | ████ | ████ |

---

BT000294

# EXHIBIT H

# Mira Smoot

### Individual Profile

| Name | QuickRef | Position | Appointed | Resigned |
|------|----------|----------|-----------|----------|
| ██████████████ | ████ | ████ | ████ | ████ |
| | | ████ | ████ | ████ |
| ████████ | ████ | ████ | ████ | ████ |
| | | ████ | ████ | ████ |
| ████████ | ████ | ████ | ████ | ████ |
| | | ████ | ████ | ████ |
| ████████ | ████ | ████ | ████ | ████ |
| | | ████ | ████ | ████ |
| ██████████ | ████ | ████ | ████ | ████ |
| | | ████ | ████ | ████ |
| ██████████ | ████ | ████ | ████ | ████ |
| | | ████ | ████ | ████ |
| ████████ | ██ | ████ | ████ | ████ |
| | | ████ | ████ | ████ |

BT000295

**RECORDING REQUESTED BY:**



**2012-058860**

10:33 am 04/27/12 ST Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 3 9 8 0 4 9 \*

**FIRST AMERICAN Title**

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

TS NO : CA1200053786                          SPACE ABOVE THIS LINE FOR RECORDER'S USE
LOAN NO : ███████3492

# SUBSTITUTION OF TRUSTEE

WHEREAS, FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS was the original Trustor, FIDELITY NATIONAL TITLE was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC. was the original Beneficiary under that certain Deed of Trust dated **06/04/2007** and recorded on **06/08/2007** as Instrument No. **2007-088561**, in Book **XX** , Page  **XX**  of Official Records of **San Mateo** County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 4-5-12

GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation )

*Marcell G. Pace*

Marcell G. Pace
Authorized Officer

State of **Pennsylvania**   } ss.
County of **Montgomery**   }

On April 5, 2012 before me, Christine Morales                     Notary Public, personally appeared
Marcell G. Pace          who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of **Pennsylvania**          that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature *Christine Morales*  (Seal)
Christine Morales

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015



## 2012-058861

10:33 am 04/27/12 ND Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

**RECORDING REQUESTED BY:**
FIRST AMERICAN Title

**WHEN RECORDED MAIL TO:**
**Executive Trustee Services, LLC**
**dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**APN: 038-352-040-0**

\* R 0 0 0 1 3 9 8 0 5 0 \*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. : CA1200053786     Loan No.: ███8492

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until **approximately 90 days** from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $516,041.70 as of **Apr 21, 2012**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation ).**
**C/O Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**800.665.3932 phone**

EXHIBIT J

TS NO.: CA1200053786                    LOAN NO.: ████8492

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **06/04/2007**, executed by **FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC.,**  as beneficiary, recorded **06/08/2007**, as Instrument No. **2007-088561**, in Book **XX** , Page  **XX**,  of Official Records in the Office of the Recorder of **San Mateo** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$2,000,000.00**; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 7/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

        That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5**

Dated:  Apr 21, 2012

                                 ETS Services, LLC as Agent for Beneficiary

                                 BY:_____

                                 **Dee Ortega**
                                 **TRUSTEE SALE OFFICER**

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY
RECORDING REQUESTED BY
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

T.S. No. **CA1200053786**
Loan No. ▮▮▮▮**8492**
Insurer No. ▮▮▮**4254**
*0510666*

**2012-108599**

11:05 am 08/01/12 NT Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 4 6 0 2 7 6 \*

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 06/04/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**
Recorded **06/08/2007** as Instrument No. **2007-088561** in Book **XX** , page **XX** of Official Records in the office of the Recorder of **San Mateo** County, California
Date of Sale: **08/27/2012** at **01:00 P.M.**
Place of Sale: **At the Marshall Street entrance to the Hall of Justice and Records, 400 County Center, Redwood City, CA 94061**
Property Address is purported to be: **75 TOBIN CLARK DRIVE HILLSBOROUGH, CA 94010**

APN #: **038-352-040-0**

The total amount secured by said instrument as of the time of initial publication of this notice is **$2,856,811.25**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

EXHIBIT K

T.S. No. **CA1200053786**
Loan No. ████████3492
Insurer No. ████4254

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this Internet Web site address www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case file number CA1200053786. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: **07/27/2012**

**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**Sale Line: 714-730-2727**

**Ileanna Petersen, TRUSTEE SALE OFFICER**