1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              May 24, 2016

19              10:06 AM

20

21   B E F O R E:

22   HON. MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25

1

2  (CC: Doc# 9491, 9493) Final Hearing RE: Motion Pursuant to Fed.

3  R. Bankr. P.7023 and 9019 for an Order: (I) Preliminarily

4  Approving the Class Action Settlement with Respect to

5  Plaintiffs Bankruptcy Proofs of Claim, (II) Certifying the

6  Settlement Class and Appointing Class Representatives and Class

7  Counsel for Purposes of the Settlement, (III) Approving the

8  Form and Manner of Notice to the Class,(IV) Scheduling a

9  Fairness Hearing, and (V) Appointing a Settlement

10  Administration.

11

12  (CC: Doc# 9867, 9866) Motion to Approve, and Incorporated

13  Memorandum of Law, of the Rothstein Plaintiffs (Claim Nos. 4074

14  and 3966) In Support of Motion for Final Approval of Proposed

15  Class Action Settlement and Plan of Allocation. (related

16  document(s)9866)

17

18  (CC: Doc# 9868, 9866) Motion to Allow, and Incorporated

19  Memorandum of Law of Class Counsel for the Rothstein Plaintiffs

20  (Claim Nos. 474 and 3966), In Support of Award of Attorneys'

21  Fees and Reimbursement of Litigation Expenses, and for

22  Incentive Awards for the Named Plaintiffs.

23

24

25

20    Transcribed by:  Penina Wolicki

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

```
 1
 2   A P P E A R A N C E S :
 3   MORRISON & FOERSTER LLP
 4        Attorneys for ResCap Borrower Claims Trust
 5        250 West 55th Street
 6        New York, NY 10019
 7
 8   BY:   NORMAN S. ROSENBAUM, ESQ.
 9
10
11   KIRBY MCINERNEY LLP
12        Attorneys for Rothstein Plaintiffs
13        825 Third Avenue
14        New York, NY 10022
15
16   BY:   MARK A. STRAUSS, ESQ.
17        THOMAS W. ELROD, ESQ.
18
19
20   HOGAN MCDANIEL
21        Attorneys for Rothstein Plaintiffs
22        1311 Delaware Avenue
23        Wilmington, DE 19806
24
25   BY:   GARVAN F. MCDANIEL, ESQ. (TELEPHONICALLY)
```

1                     P R O C E E D I N G S

2              THE COURT:  All right, please be seated.  We're here

3      in Residential Capital, number 12-12020.  I'll get the

4      appearances, please.

5              MR. STRAUSS:  Mark Strauss, Kirby McInerney, on behalf

6      of Landon Rothstein, et al., the claimants-plaintiffs  in this

7      proposed class action settlement.  We're on for final approval

8      this morning.

9              THE COURT:  All right.  Let me get the rest of the

10     appearances.

11             MR. STRAUSS:  I'm sorry?

12             MR. ROSENBAUM:  Norm Rosenbaum, Morrison & Foerster

13     for the ResCap Borrower Claims Trust.

14             THE COURT:  All right.  Thank you very much.

15             Go ahead, Mr. Strauss.

16             MR. STRAUSS:  Good morning, Your Honor.  We have a

17     proposed class action settlement and fee application.  We're on

18     final approval.  We've sent out 143,000 post-card notices to

19     class members at their addresses.  So far we have not received

20     any objections.  We thought it wise to go through with the

21     hearing rather than file a CNO, because there's always the

22     possibility that --

23             THE COURT:  I wouldn't go forward on something of this

24     magnitude with a CNO anyway.  So that --

25             MR. STRAUSS:  Okay.

RESIDENTIAL CAPITAL, LLC, ET AL.                                    6

1          THE COURT:  -- we're here.

2          MR. STRAUSS:  I don't think there's anybody -- any

3     class members who showed up to object.  So we have no

4     objections, either to the settlement or to the fee application.

5     And we have 8 opt-outs out of the 143,000 members of the class.

6          The settlement and fee request are clearly fair and

7     reasonable and merit approval.  As I mentioned, there are no

8     objections and only eight opt-outs.  We think it's an excellent

9     result.  We've got an allowed claim of thirteen million.  Under

10    the anticipated claims rate for Class GS-5 claims, that's going

11    to translate to 3.9 million for the class of cash.  And that's

12    a -- the face amount of the claim, the thirteen million, is

13    equal to approximately twenty-five percent of the out-of-pocket

14    loss that we estimate the class suffered.

15         This is an excellent result particularly in light of

16    the fact that the Second Circuit dismissed the claims that we

17    pled against GMAC's co-defendants in the district court.

18         THE COURT:  I was surprised -- a little surprised that

19    you acknowledged so forthrightly in your declaration that the

20    Second Circuit's Rothstein decision -- you didn't quite say it

21    this strongly -- but likely would have led to dismissal of your

22    claim.

23         MR. STRAUSS:  Well, that highlights the extreme risks

24    that we had in this case.  And in fact, while we were

25    negotiating the settlement, the motion to dismiss in the

1    district court was pending.  And it was likely that -- it was a

2    possibility --

3              THE COURT:  Right.

4              MR. STRAUSS:  -- that the district court would have

5    ruled against us the same way that the Second Circuit

6    ultimately did.  And that would have basically put an end to

7    our proof of claim.  So we were sort of racing against the

8    clock and trying to get a good settlement before a decision

9    came out.

10             As so happened, we got a favorable decision three

11   weeks after we reached our settlement-in-principle.  And then

12   ultimately it was reversed by the Second Circuit.  The Second

13   Circuit decision was a shock to us.  We were pretty confident

14   going into there that we were going to win.  The --

15             THE COURT:  I'm just curious.  Do you have other

16   similar cases pending, or did you --

17             MR. STRAUSS:  We have another similar case right now,

18   yes.

19             THE COURT:  In this circuit or --

20             MR. STRAUSS:  No, it's in the Eleventh Circuit.  And I

21   think the facts there are even more egregious than they were in

22   the GMAC case.  So I think that we have a tolerable -- a better

23   chance, I think, down there.  That case involves actual cash

24   kickbacks as opposed --

25             THE COURT:  As opposed to the free services?

1          MR. STRAUSS:  Correct.  Correct.  Cash and securities.

2          We do want to note that there were three other LPI-

3   related -- LPI being lender-placed-insurance, for the record --

4   class actions that were filed with respect to GMAC:  the

5   Ulbrich, Cronk, and Throm cases; and those cases, there was no

6   recovery for the class in the bankruptcy.  I think two of the

7   named plaintiffs got some nominal amount of money to resolve

8   their individual claim, but they recovered nothing.

9          They didn't pursue the kinds of strategies that we

10  pursued by filing claims in the district court against the Ally

11  defendants, Ally Financial and Ally Bank, based upon alter ego

12  and veil piercing theories, in order to put us in a better

13  strategic position to get a settlement in the bankruptcy.

14         Notably, class members don't have to do anything.

15  We've done all the work ahead of time.  We got the data from

16  GMAC, and we identified all class members and determined their

17  recognized losses.  We expect to send out 61,000 --

18  approximately 61,000 checks.

19         The reason why only 61,000 and there's 143,000 in the

20  class, is because we're not going to send checks to anybody who

21  would get less than ten dollars, because those checks don't get

22  cashed.  So we're going to gross-up those amounts under ten

23  dollars to the other folks, and they will get -- they will get

24  paid.

25         As for the fee application, we worked on a

1   contingency.  We haven't been paid anything yet.  We started

2   this case, as I mentioned, in the district court and litigated

3   in parallel in the district court and this court for some time.

4   We're asking for a thirty-five percent fee, which we submit is

5   in line with similar settlements.  And we've cited a number of

6   cases at pages 6 to 7 of our brief in support of that.  And we

7   also think that it satisfies the Goldberg factors.

8           As I mentioned, there were no objections.

9           THE COURT:  I guess -- this was ninety-three percent

10  of the lodestar?

11          MR. STRAUSS:  Yes.  And it's a -- what they say a

12  negative multiplier, only ninety-three percent of the lodestar.

13  Correct, Your Honor.  Usually in class actions, counsel gets a

14  multiplier -- a high positive multiplier.  For example, in the

15  Kessler settlement in this court -- in this bankruptcy, the

16  Court gave a thirty-five percent fee, and that yielded them a

17  multiplier of 2.93.  So we submit that in light of that, the

18  percentage that we're requesting is eminently reasonable.

19          We're asking for expenses in the amount of 226,938

20  dollars.  Again, no objections have been received to that.  The

21  bulk of that --

22          THE COURT:  Was your expert?

23          MR. STRAUSS:  It was our expert, yes.  And we want to

24  point out, Judge, that we -- we incurred that expenses up front

25  here in order to make sure that we could assure the greatest

RESIDENTIAL CAPITAL, LLC, ET AL.                    10

1    possible participation in the settlement.  It's very common in

2    a regular settlement, where there are -- where there's a claims

3    process, that the settlement administrator incurs at least that

4    amount of money or more processing claims.  So we spent that

5    money up front.

6          And then we have 20,000 dollars for our data-hosting

7    provider.  We had eight gigabytes -- over eight gigabytes of

8    information.  We had to host that on a professional's computer

9    system, because we couldn't put it on our own.  And then 36,000

10   in Westlaw expenses.  So we think that the expenses are

11   proportionate and reasonable and well-documented as we've

12   submitted.

13         We've also asked for incentive awards of 2,500 dollars

14   each for --

15         THE COURT:  For each of the three, right.

16         MR. STRAUSS:  Four actually.

17         THE COURT:  Four, okay, sorry.

18         MR. STRAUSS:  Four plaintiffs.

19         THE COURT:  Yes, I saw that.

20         MR. STRAUSS:  That's all right.  So subject to any

21   questions that the Court may have, we wanted to thank the

22   liquidating trustee for their help as well in getting this

23   settlement effectuated.

24         THE COURT:  Okay.  All right, Mr. Rosenbaum, do you

25   want to be heard?

1          MR. ROSENBAUM:  I have nothing to add, Your Honor.  We

2   support the application and obviously support the settlement.

3          I would add that this was an agreement-in-principle

4   reached prior to confirmation, so we were committed to it and

5   we saw it through.

6          THE COURT:  Thank you very much.  Okay.

7          I am going to approve the settlement and the fee

8   application.  A few comments about it.

9          On February 9th, 2016, the Court entered an order

10  granting preliminary approval of the settlement, certifying the

11  settlement class -- as I said, granting preliminary approval.

12  That preliminary approval order is at ECF 9609.

13         What is a little unusual here is the Second Circuit

14  decision in Rothstein v. Balboa Insurance Company, which is at

15  794 F.3d 256 (2d Cir. 2015) -- it's a July 22, 2015 opinion --

16  as Mr. Strauss indicated, the agreement-in-principle to settle

17  this class action was reached before the District Court Judge

18  Nathan initially denied the motion to dismiss that Balboa had

19  filed.  She certified it for direct review to the Circuit, and

20  the Circuit took the appeal and as I indicated, in July 2015

21  rendered its decision.

22         The Court in particular has reviewed carefully the

23  declaration of Mark A. Strauss in support of final approval of

24  proposed Rothstein settlement, et cetera.  It's at ECF docket

25  9866.

1           And it really sets out in quite a comprehensive

2    fashion, the history of the litigation, the proceeding as to

3    Bal -- well, originally, against GMAC, but then once the

4    bankruptcy was filed, GMAC was dropped from the amended

5    complaint, and the proof of claim was filed in the bankruptcy,

6    and that's what's been settled here.

7           As I indicated, Judge Nathan had initially --

8    recognizing that there was a split in authority -- had denied

9    the motion to dismiss, certified it for direct appeal.  Judge

10   Jacobs wrote the opinion for the Circuit.  And at 794 F.3d 261,

11   Judge Jacobs' opinion indicates:  "When GMAC filed for Chapter

12   11 bankruptcy a month later, plaintiffs withdrew their suit as

13   to GMAC and filed claims in bankruptcy.  Plaintiffs and GMAC

14   later reached a settlement in principle resolving claims

15   against GMAC (and certain affiliates) in exchange for a

16   thirteen-million-dollar unsecured claim in favor of plaintiffs

17   and the putative class in the bankruptcy.  Only the claims

18   against Balboa and Newport" -- Newport was an affiliate of

19   Balboa -- "are at issue in this appeal."

20          And so while the Second Circuit's opinion would have

21   created a very, very high hurdle if the claim against the

22   debtors had proceeded, it's not entirely clear to me that the

23   Second Circuit's decision would have been dispositive here.

24   And litigating the contested claim here would have been --

25   clearly would have been quite expensive.  I mean, one of the --

1  what's clear from the Second Circuit opinion is certainly as to

2  the insurer Balboa, the filed rate doctrine precluded any

3  challenge to the rates that it charged and the alleged -- it

4  was alleged as a kickback.  I think Judge Jacobs rejects the

5  use of that term "kickbacks", but he refers to the free

6  services.

7          I suppose one question is, in my mind -- I don't think

8  it's dispositive of the approval -- if GMAC had performed the

9  services itself rather than have Balboa or its affiliate do it,

10 could GMAC have obtained reimbursement from the borrowers or

11 the trusts for the cost of those services that actually were

12 performed without fee from the Balboa affiliate.

13         Whether there was some theory on which whether it was

14 a precise theory pleaded in the claim -- and I guess what --

15 there were two amended complaints, Mr. Strauss, in the --

16         MR. STRAUSS:  Correct.

17         THE COURT:  Whether it was the theory that was set

18 forth in either of the amended complaints as to the non-

19 insurer, whether there's a theory on which the plaintiffs could

20 have sought damages from GMAC for the value of the services it

21 received, really is, I guess, left for another court for

22 another day.

23         In any event, when I granted preliminary approval of

24 the settlement, February 2016, I was certainly well aware of

25 the Second Circuit's Rothstein decision at that time.  And I

1 | had no hesitancy or qualms about giving preliminary approval to
2 | the settlement at that time.  It had been negotiated in good
3 | faith before the district court decision denying the motion to
4 | dismiss, certainly before the Second Circuit reversed and
5 | ordered the claims against Balboa to be dismissed.

6 |         As Mr. Strauss indicated, there've been no objections
7 | filed to granting final approval or to the request for fees and
8 | expenses.

9 |         As I commented earlier, the papers -- Mr. Strauss'
10 | declaration -- forthrightly acknowledges the difficulties that
11 | the Second Circuit's decision would have presented, but one
12 | shouldn't go back and second-guess a settlement reached in good
13 | faith, as it was here.  The Second Circuit was certainly aware,
14 | as I quoted earlier from Judge Jacobs' opinion, that a
15 | settlement had been reached in principle here.

16 |         The Court has considered each of the factors
17 | appropriate for consideration in determining whether to give
18 | final approval of the settlement, both for certification of the
19 | class and for the usual 9019 settlement standards.  Since no
20 | objections have been filed I will not go through each of the
21 | factors, other than to say I've considered each to the extent
22 | applicable in the circumstances.

23 |         As Mr. Strauss commented, there have been no
24 | objections, only 8 opt-outs out of a class of approximately
25 | 143,000.  The result under these circumstances is an excellent

1  result, in my view, and I think it's both in the best interests

2  of the plaintiff class but also a resolution when it was

3  reached, I think, was important to the debtors in being able to

4  propose, consummate, and get approval for its plan.

5         With respect to the fee application, the supporting

6  papers include detailed time records for time spent by

7  plaintiffs' counsel in prosecuting the class action.  The

8  plaintiffs, as is typical and is required, and I guess they

9  indicate that 2,487 hours were spent in connection with the

10  investigation, prosecution, and resolution of the bankruptcy

11  proofs of claim, any investigation or prosecution of the claims

12  against GMAC and Ally in the Rothstein action.

13         Applying the lodestar, that would have resulted in an

14  indicated fee of 1,464,942 dollars.  Assuming that the class

15  GS-5 claim yields a thirty-cent-per-dollar recovery, as

16  estimated by the plan, the requested fee is thirty-five percent

17  of the settlement funds that's being set up and significantly

18  less than plaintiffs' counsel's lodestar.

19         The amount of the fees being sought here are a fee

20  award of 1,365,000, which is approximately ninety-three percent

21  of the lodestar figure.

22         In addition, counsel seeks reimbursement of a total of

23  $226,938.29 in expenses that were actually incurred on behalf

24  of the plaintiffs in the class.  Of that amount, $157,285.04 is

25  the amount for plaintiffs' forensic accounting expert, and

1   20,573 dollars with respect to plaintiffs' database hosting

2   provider.  And included in the expense reimbursement request is

3   $36,808.77 for reimbursement of cost of online computerized

4   research.

5           The notice to the class members apprised the class

6   that counsel, class counsel, would be seeking reimbursement of

7   litigation expenses in the approximate amount of 250,000

8   dollars, and has already indicated there were no objections

9   either to approval of the settlement or the application for

10  fees.  In addition, as Mr. Strauss has indicated, the

11  plaintiffs' counsel seeks what's described as service awards in

12  the amount of 2,500 dollars for each of the four named

13  plaintiffs:  Landon Rothstein, Jennifer Davidson, Robert

14  Davidson, and Ihor Kobryn, K-O-B-R-Y-N.

15          Having reviewed the detailed time records, the fee

16  application is fair, reasonable, and appropriate in the

17  circumstances.  So is the request for expense reimbursement,

18  and, likewise, for the 2,500 dollars for each of the four named

19  plaintiffs.

20          So the settlement is approved, and the fees are

21  approved.

22          I'll need a disc with the orders to do that.

23          MR. STRAUSS:  Right.  We'll --

24          THE COURT:  Okay.  Anything else?

25          UNIDENTIFIED SPEAKER:  We don't have them.

RESIDENTIAL CAPITAL, LLC, ET AL.                    17

1          MR. STRAUSS:  Thank you very much, Your Honor.  We'll

2     provide a disc or an e-mail with the proposed order with all

3     the information filled in for you later on today.

4          THE COURT:  Okay.  Thanks very much.

5          MR. STRAUSS:  Okay.  Thank you very much.

6          MR. ROSENBAUM:  Thank you, Your Honor.  There's

7     nothing else on the agenda for this morning.

8          THE COURT:  Thanks very much, Mr. Rosenbaum.

9       (Whereupon these proceedings were concluded at 10:27 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          **I N D E X**

3

4                          RULINGS

5                                              PAGE      LINE

6    Settlement and fee application are           11         7

7    approved.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8    *Penina Wolicki*

9

10   _____

11   PENINA WOLICKI

12   AAERT Certified Electronic Transcriber CET**D-569

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  May 25, 2016

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

May 24, 2016

**#**

**#607 (1)**
3:22

**$**

**$157,285.04 (1)**
15:24
**$226,938.29 (1)**
15:23
**$36,808.77 (1)**
16:3

**A**

**able (1)**
15:3
**accounting (1)**
15:25
**acknowledged (1)**
6:19
**acknowledges (1)**
14:10
**Action (7)**
2:4,15;5:7,17;
11:17;15:7,12
**actions (2)**
8:4;9:13
**actual (1)**
7:23
**actually (3)**
10:16;13:11;15:23
**add (2)**
11:1,3
**addition (2)**
15:22;16:10
**addresses (1)**
5:19
**Administration (1)**
2:10
**administrator (1)**
10:3
**affiliate (3)**
12:18;13:9,12
**affiliates (1)**
12:15
**Again (1)**
9:20
**against (10)**
6:17;7:5,7;8:10;
12:3,15,18,21;14:5;
15:12
**agenda (1)**
17:7
**agreement-in-principle (2)**
11:3,16
**ahead (2)**
5:15;8:15
**al (1)**
5:6
**alleged (2)**

**13:3,4**
**Allocation (1)**
2:15
**Allow (1)**
2:18
**allowed (1)**
6:9
**Ally (4)**
8:10,11,11;15:12
**alter (1)**
8:11
**always (1)**
5:21
**amended (3)**
12:4;13:15,18
**amount (9)**
6:12;8:7;9:19;
10:4;15:19,24,25;
16:7,12
**amounts (1)**
8:22
**anticipated (1)**
6:10
**appeal (3)**
11:20;12:9,19
**appearances (2)**
5:4,10
**applicable (1)**
14:22
**application (8)**
5:17;6:4;8:25;
11:2,8;15:5;16:9,16
**Applying (1)**
15:13
**Appointing (2)**
2:6,9
**apprised (1)**
16:5
**appropriate (2)**
14:17;16:16
**Approval (15)**
2:14;5:7,18;6:7;
11:10,11,12,23;13:8,
23;14:1,7,18;15:4;
16:9
**Approve (2)**
2:12;11:7
**approved (2)**
16:20,21
**Approving (2)**
2:4,7
**approximate (1)**
16:7
**approximately (4)**
6:13;8:18;14:24;
15:20
**Assuming (1)**
15:14
**assure (1)**
9:25
**Attorneys' (1)**
2:20
**authority (1)**

**12:8**
**Award (2)**
2:20;15:20
**Awards (3)**
2:22;10:13;16:11
**aware (2)**
13:24;14:13

**B**

**back (1)**
14:12
**Bal (1)**
12:3
**Balboa (8)**
11:14,18;12:18,
19;13:2,9,12;14:5
**Bank (1)**
8:11
**Bankr (1)**
2:3
**Bankruptcy (10)**
2:5;8:6,13;9:15;
12:4,5,12,13,17;
15:10
**based (1)**
8:11
**basically (1)**
7:6
**behalf (2)**
5:5;15:23
**best (1)**
15:1
**better (2)**
7:22;8:12
**Borrower (1)**
5:13
**borrowers (1)**
13:10
**both (2)**
14:18;15:1
**brief (1)**
9:6
**bulk (1)**
9:21

**C**

**came (1)**
7:9
**Capital (1)**
5:3
**carefully (1)**
11:22
**case (5)**
6:24;7:17,22,23;
9:2
**cases (4)**
7:16;8:5,5;9:6
**cash (3)**
6:11;7:23;8:1
**cashed (1)**
8:22

**CC (3)**
2:2,12,18
**certain (1)**
12:15
**certainly (4)**
13:1,24;14:4,13
**certification (1)**
14:18
**certified (2)**
11:19;12:9
**Certifying (2)**
2:5;11:10
**cetera (1)**
11:24
**challenge (1)**
13:3
**chance (1)**
7:23
**Chapter (1)**
12:11
**charged (1)**
13:3
**checks (3)**
8:18,20,21
**Cir (1)**
11:15
**Circuit (13)**
6:16;7:5,12,13,19,
20;11:13,19,20;
12:10;13:1;14:4,13
**Circuit's (5)**
6:20;12:20,23;
13:25;14:11
**circumstances (3)**
14:22,25;16:17
**cited (1)**
9:5
**Claim (15)**
2:5,13,20;6:9,12,
22;7:7,8;8:12;5,16,
21,24;13:14;15:11,
15
**claimants-plaintiffs (1)**
5:6
**Claims (12)**
5:13;6:10,10,16;
8:10;10:2,4;12:13,
14,17;14:5;15:11
**Class (32)**
2:4,6,6,6,15,19;
5:7,17,19;6:3,5,10,
11,14;8:4,6,14,16,
20;9:13;11:11,17;
12:17;14:19,24;15:2,
7,14,24;16:5,5,6
**ClassIV (1)**
2:8
**clear (2)**
12:22;13:1
**clearly (2)**
6:6;12:25
**clock (1)**
7:8

**CNO (1)**
5:21,24
**co-defendants (1)**
6:17
**commented (2)**
14:9,23
**comments (1)**
11:8
**committed (1)**
11:4
**common (1)**
10:1
**Company (1)**
11:14
**complaint (1)**
12:5
**complaints (2)**
13:15,18
**comprehensive (1)**
12:1
**computer (1)**
10:8
**computerized (1)**
16:3
**concluded (1)**
17:9
**confident (1)**
7:13
**confirmation (1)**
11:4
**connection (1)**
15:9
**consideration (1)**
14:17
**considered (2)**
14:16,21
**consummate (1)**
15:4
**contested (1)**
12:24
**contingency (1)**
9:1
**cost (2)**
13:11;16:3
**Counsel (8)**
2:7,19;9:13;15:7,
22;16:6,6,11
**counsel's (1)**
15:18
**COURT (37)**
5:2,9,14,23;6:1,17,
18;7:1,3,4,15,19,25;
8:10;9:2,3,3,9,15,16,
22;10:15,17,19,21,
24;11:6,9,17,22;
13:17,21;14:3,16;
16:24;17:4,8
**created (1)**
12:21
**Cronk (1)**
8:5
**curious (1)**
7:15

12-12020-mg    Doc 9914    Filed 05/25/16    Entered 05/31/16 13:06:22    Main Document
Pg 21 of 24

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

May 24, 2016

## D

**damages (1)**
13:20
**data (1)**
8:15
**database (1)**
16:1
**data-hosting (1)**
10:6
**Davidson (2)**
16:13,14
**day (1)**
13:22
**debtors (2)**
12:22;15:3
**decision (10)**
6:20;7:8,10,13;
11:14,21;12:23;
13:25;14:3,11
**declaration (3)**
6:19;11:23;14:10
**defendants (1)**
8:11
**denied (2)**
11:18;12:8
**denying (1)**
14:3
**described (1)**
16:11
**detailed (2)**
15:6;16:15
**determined (1)**
8:16
**determining (1)**
14:17
**difficulties (1)**
14:10
**direct (2)**
11:19;12:9
**disc (2)**
16:22;17:2
**dismiss (4)**
6:25;11:18;12:9;
14:4
**dismissal (1)**
6:21
**dismissed (2)**
6:16;14:5
**dispositive (2)**
12:23;13:8
**district (8)**
6:17;7:1,4;8:10;
9:2,3;11:17;14:3
**Doc# (3)**
2:2,12,18
**docket (1)**
11:24
**doctrine (1)**
13:2
**documents9866 (1)**
2:16

**dollars (10)**
8:21,23;9:20;10:6,
13;15:14;16:1,8,12,
18
**done (1)**
8:15
**down (1)**
7:23
**dropped (1)**
12:4

## E

**earlier (2)**
14:9,14
**ECF (2)**
11:12,24
**effectuated (1)**
10:23
**ego (1)**
8:11
**egregious (1)**
7:21
**eight (3)**
6:8;10:7,7
**either (3)**
6:4;13:18;16:9
**Eleventh (1)**
7:20
**else (2)**
16:24;17:7
**e-mail (1)**
17:2
**eminently (1)**
9:18
**end (1)**
7:6
**entered (1)**
11:9
**entirely (1)**
12:22
**equal (1)**
6:13
**eScribers (1)**
3:21
**estimate (1)**
6:14
**estimated (1)**
15:16
**et (2)**
5:6;11:24
**even (1)**
7:21
**event (1)**
13:23
**example (1)**
9:14
**excellent (3)**
6:8,15;14:25
**exchange (1)**
12:15
**expect (1)**
8:17

**expense (2)**
16:2,17
**Expenses (8)**
2:21;9:19,24;
10:10,10;14:8;
15:23;16:7
**expensive (1)**
12:25
**expert (3)**
9:22,23;15:25
**extent (1)**
14:21
**extreme (1)**
6:23

## F

**F3d (2)**
11:15;12:10
**face (1)**
6:12
**fact (2)**
6:16,24
**factors (3)**
9:7;14:16,21
**facts (1)**
7:21
**fair (2)**
6:6;16:16
**Fairness (1)**
2:9
**faith (2)**
14:3,13
**far (1)**
5:19
**fashion (1)**
12:2
**favor (1)**
12:16
**favorable (1)**
7:10
**February (2)**
11:9;13:24
**Fed (1)**
2:2
**fee (13)**
5:17;6:4,6;8:25;
9:4,16;11:7;13:12;
15:5,14,16,19;16:15
**Fees (5)**
2:21;14:7;15:19;
16:10,20
**few (1)**
11:8
**figure (1)**
15:21
**file (1)**
5:21
**filed (9)**
8:4;11:19;12:4,5,
11,13;13:2;14:7,20
**filing (1)**
8:10

**filled (1)**
17:3
**Final (7)**
2:2,14;5:7,18;
11:23;14:7,18
**Financial (1)**
8:11
**Foerster (1)**
5:12
**folks (1)**
8:23
**forensic (1)**
15:25
**Form (1)**
2:8
**forth (1)**
13:18
**forthrightly (2)**
6:19;14:10
**forward (1)**
5:23
**Four (5)**
10:16,17,18;16:12,
18
**free (2)**
7:25;13:5
**front (2)**
9:24;10:5
**funds (1)**
15:17

## G

**gave (1)**
9:16
**gets (1)**
9:13
**gigabytes (2)**
10:7,7
**giving (1)**
14:1
**GMAC (13)**
7:22;8:4,16;12:3,
4,11,13,13,15;13:8,
10,20;15:12
**GMAC's (1)**
6:17
**Goldberg (1)**
9:7
**Good (4)**
5:16;7:8;14:2,12
**granted (1)**
13:23
**granting (3)**
11:10,11;14:7
**greatest (1)**
9:25
**gross-up (1)**
8:22
**GS-5 (2)**
6:10;15:15
**guess (4)**
9:9;13:14,21;15:8

## H

**happened (1)**
7:10
**heard (1)**
10:25
**Hearing (3)**
2:2,9;5:21
**help (1)**
10:22
**hesitancy (1)**
14:1
**high (2)**
9:14;12:21
**highlights (1)**
6:23
**history (1)**
12:2
**Honor (5)**
5:16;9:13;11:1;
17:1,6
**host (1)**
10:8
**hosting (1)**
16:1
**hours (1)**
15:9
**hurdle (1)**
12:21

## I

**identified (1)**
8:16
**Ihor (1)**
16:14
**II (1)**
2:5
**III (1)**
2:7
**important (1)**
15:3
**Incentive (2)**
2:22;10:13
**include (1)**
15:6
**included (1)**
16:2
**Incorporated (2)**
2:12,18
**incurred (2)**
9:24;15:23
**incurs (1)**
10:3
**indicate (1)**
15:9
**indicated (7)**
11:16,20;12:7;
14:6;15:14;16:8,10
**indicates (1)**
12:11
**individual (1)**

8:8
**information (2)**
10:8;17:3
**initially (2)**
11:18;12:7
**Insurance (1)**
11:14
**insurer (2)**
13:2,19
**interests (1)**
15:1
**into (1)**
7:14
**investigation (2)**
15:10,11
**involves (1)**
7:23
**issue (1)**
12:19

**J**

**Jacobs (2)**
12:10;13:4
**Jacobs' (2)**
12:11;14:14
**Jennifer (1)**
16:13
**Judge (7)**
9:24;11:17;12:7,9,
11;13:4;14:14
**July (2)**
11:15,20

**K**

**Kessler (1)**
9:15
**kickback (1)**
13:4
**kickbacks (2)**
7:24;13:5
**kinds (1)**
8:9
**Kirby (1)**
5:5
**Kobryn (1)**
16:14
**K-O-B-R-Y-N (1)**
16:14

**L**

**Landon (2)**
5:6;16:13
**later (3)**
12:12,14;17:3
**Law (2)**
2:13,19
**least (1)**
10:3
**led (1)**
6:21

**left (1)**
13:21
**lender-placed-insurance (1)**
8:3
**less (2)**
8:21;15:18
**light (2)**
6:15;9:17
**likely (2)**
6:21;7:1
**likewise (1)**
16:18
**line (1)**
9:5
**liquidating (1)**
10:22
**litigated (1)**
9:2
**litigating (1)**
12:24
**Litigation (3)**
2:21;12:2;16:7
**little (2)**
6:18;11:13
**LLC (1)**
3:21
**lodestar (5)**
9:10,12;15:13,18,
21
**loss (1)**
6:14
**losses (1)**
8:17
**LPI (1)**
8:3
**LPI- (1)**
8:2

**M**

**magnitude (1)**
5:24
**Manner (1)**
2:8
**Mark (2)**
5:5;11:23
**may (1)**
10:21
**McInerney (1)**
5:5
**mean (1)**
12:25
**members (6)**
5:19;6:3,5;8:14,
16;16:5
**Memorandum (2)**
2:13,19
**mentioned (3)**
6:7;9:2,8
**merit (1)**
6:7
**million (3)**
6:9,11,12

**mind (1)**
13:7
**money (3)**
8:7;10:4,5
**month (1)**
12:12
**more (2)**
7:21;10:4
**morning (3)**
5:8,16;17:7
**Morrison (1)**
5:12
**Motion (8)**
2:2,12,14,18;6:25;
11:18;12:9;14:3
**much (6)**
5:14;11:6;17:1,4,
5,8
**multiplier (4)**
9:12,14,14,17

**N**

**Named (4)**
2:22;8:7;16:12,18
**Nathan (2)**
11:18;12:7
**need (1)**
16:22
**negative (1)**
9:12
**negotiated (1)**
14:2
**negotiating (1)**
6:25
**New (1)**
3:23
**Newport (2)**
12:18,18
**ninety-three (3)**
9:9,12;15:20
**nominal (1)**
8:7
**non- (1)**
13:18
**Norm (1)**
5:12
**Nos (2)**
2:13,20
**Notably (1)**
8:14
**note (1)**
8:2
**Notice (2)**
2:8;16:5
**notices (1)**
5:18
**number (2)**
5:3;9:5
**NY (1)**
3:23

**O**

**object (1)**
6:3
**objections (9)**
5:20;6:4,8;9:8,20;
14:6,20,24;16:8
**obtained (1)**
13:10
**obviously (1)**
11:2
**once (1)**
12:3
**one (3)**
12:25;13:7;14:11
**online (1)**
16:3
**only (5)**
6:8;8:19;9:12;
12:17;14:24
**operations@escribersnet (1)**
3:25
**opinion (6)**
11:15;12:10,11,
20;13:1;14:14
**opposed (2)**
7:24,25
**opt-outs (3)**
6:5,8;14:24
**Order (6)**
2:3;8:12;9:25;
11:9,12;17:2
**ordered (1)**
14:5
**orders (1)**
16:22
**originally (1)**
12:3
**out (7)**
5:18;6:5;7:9;8:17;
9:24;12:1;14:24
**out-of-pocket (1)**
6:13
**over (1)**
10:7
**own (1)**
10:9

**P**

**P7023 (1)**
2:3
**pages (1)**
9:6
**paid (2)**
8:24;9:1
**papers (2)**
14:9;15:6
**parallel (1)**
9:3
**participation (1)**
10:1

**particular (1)**
11:22
**particularly (1)**
6:15
**pending (2)**
7:1,16
**Penina (1)**
3:20
**percent (7)**
6:13;9:4,9,12,16;
15:16,20
**percentage (1)**
9:18
**performed (2)**
13:8,12
**piercing (1)**
8:12
**plaintiff (1)**
15:2
**Plaintiffs (14)**
2:5,13,19,22;8:7;
10:18;12:12,13,16;
13:19;15:8,24;16:13,
19
**plaintiffs' (5)**
15:7,18,25;16:1,11
**Plan (3)**
2:15;15:4,16
**pleaded (1)**
13:14
**please (2)**
5:2,4
**pled (1)**
6:17
**point (1)**
9:24
**position (1)**
8:13
**positive (1)**
9:14
**possibility (2)**
5:22;7:2
**possible (1)**
10:1
**post-card (1)**
5:18
**precise (1)**
13:14
**precluded (1)**
13:2
**Preliminarily (1)**
2:3
**preliminary (5)**
11:10,11,12;
13:23;14:1
**presented (1)**
14:11
**pretty (1)**
7:13
**principle (2)**
12:14;14:15
**prior (1)**
11:4

**proceeded (1)**
12:22
**proceeding (1)**
12:2
**proceedings (1)**
17:9
**process (1)**
10:3
**processing (1)**
10:4
**professional's (1)**
10:8
**proof (2)**
7:7;12:5
**Proofs (2)**
2:5;15:11
**proportionate (1)**
10:11
**propose (1)**
15:4
**Proposed (5)**
2:14;5:7,17;11:24;
17:2
**prosecuting (1)**
15:7
**prosecution (2)**
15:10,11
**provide (1)**
17:2
**provider (2)**
10:7;16:2
**Purposes (1)**
2:7
**Pursuant (1)**
2:2
**pursue (1)**
8:9
**pursued (1)**
8:10
**put (3)**
7:6;8:12;10:9
**putative (1)**
12:17

### Q

**qualms (1)**
14:1
**quite (3)**
6:20;12:1,25
**quoted (1)**
14:14

### R

**racing (1)**
7:7
**rate (2)**
6:10;13:2
**rates (1)**
13:3
**rather (2)**
5:21;13:9

**RE (1)**
2:2
**reached (7)**
7:11;11:4,17;
12:14;14:12,15;15:3
**really (2)**
12:1;13:21
**reason (1)**
8:19
**reasonable (4)**
6:7;9:18;10:11;
16:16
**received (3)**
5:19;9:20;13:21
**recognized (1)**
8:17
**recognizing (1)**
12:8
**record (1)**
8:3
**records (2)**
15:6;16:15
**recovered (1)**
8:8
**recovery (2)**
8:6;15:15
**refers (1)**
13:5
**regular (1)**
10:2
**Reimbursement (7)**
2:21;13:10;15:22;
16:2,3,6,17
**rejects (1)**
13:4
**related (2)**
2:15;8:3
**rendered (1)**
11:21
**Representatives (1)**
2:6
**request (4)**
6:6;14:7;16:2,17
**requested (1)**
15:16
**requesting (1)**
9:18
**required (1)**
15:8
**ResCap (1)**
5:13
**research (1)**
16:4
**Residential (1)**
5:3
**resolution (2)**
15:2,10
**resolve (1)**
8:7
**resolving (1)**
12:14
**Respect (4)**
2:4;8:4;15:5;16:1

**rest (1)**
5:9
**result (4)**
6:9,15;14:25;15:1
**resulted (1)**
15:13
**reversed (2)**
7:12;14:4
**review (1)**
11:19
**reviewed (2)**
11:22;16:15
**right (9)**
5:2,9,14;7:3,17;
10:15,20,24;16:23
**risks (1)**
6:23
**Robert (1)**
16:13
**ROSENBAUM (6)**
5:12,12;10:24;
11:1;17:6,8
**Rothstein (9)**
2:13,19;5:6;6:20;
11:14,24;13:25;
15:12;16:13
**ruled (1)**
7:5

### S

**same (1)**
7:5
**satisfies (1)**
9:7
**saw (2)**
10:19;11:5
**Scheduling (1)**
2:8
**seated (1)**
5:2
**Second (13)**
6:16,20;7:5,12,12;
11:13;12:20,23;13:1,
25;14:4,11,13
**second-guess (1)**
14:12
**securities (1)**
8:1
**seeking (1)**
16:6
**seeks (2)**
15:22;16:11
**send (2)**
8:17,20
**sent (1)**
5:18
**service (1)**
16:11
**services (5)**
7:25;13:6,9,11,20
**set (2)**
13:17;15:17

**sets (1)**
12:1
**settle (1)**
11:16
**settled (1)**
12:6
**Settlement (32)**
2:4,6,7,9,15;5:7,
17;6:4,6,25;7:8;
8:13;9:15;10:1,2,3,
23;11:2,7,10,11,24;
12:14;13:24;14:2,12,
15,18,19;15:17;16:9,
20
**settlement-in-principle (1)**
7:11
**settlements (1)**
9:5
**shock (1)**
7:13
**showed (1)**
6:3
**significantly (1)**
15:17
**similar (3)**
7:16,17;9:5
**sorry (2)**
5:11;10:17
**sort (1)**
7:7
**sought (2)**
13:20;15:19
**SPEAKER (1)**
16:25
**spent (3)**
10:4;15:6,9
**split (1)**
12:8
**standards (1)**
14:19
**started (1)**
9:1
**strategic (1)**
8:13
**strategies (1)**
8:9
**STRAUSS (27)**
5:5,5,11,15,16,25;
6:2,23;7:4,17,20;8:1;
9:11,23;10:16,18,20;
11:16,23;13:15,16;
14:6,23;16:10,23;
17:1,5
**Strauss' (1)**
14:9
**Street (1)**
3:22
**strongly (1)**
6:21
**subject (1)**
10:20
**submit (2)**
9:4,17

**submitted (1)**
10:12
**suffered (1)**
6:14
**suit (1)**
12:12
**Suite (1)**
3:22
**Support (6)**
2:14,20;9:6;11:2,
2,23
**supporting (1)**
15:5
**suppose (1)**
13:7
**sure (1)**
9:25
**surprised (2)**
6:18,18
**system (1)**
10:9

### T

**ten (2)**
8:21,22
**term (1)**
13:5
**Thanks (2)**
17:4,8
**theories (1)**
8:12
**theory (4)**
13:13,14,17,19
**there've (1)**
14:6
**thirteen (2)**
6:9,12
**thirteen-million-dollar (1)**
12:16
**thirty-cent-per-dollar (1)**
15:15
**thirty-five (3)**
9:4,16;15:16
**thought (1)**
5:20
**three (3)**
7:10;8:2;10:15
**Throm (1)**
8:5
**today (1)**
17:3
**tolerable (1)**
7:22
**took (1)**
11:20
**total (1)**
15:22
**Transcribed (1)**
3:20
**translate (1)**
6:11
**Trust (1)**

5:13
**trustee (1)**
10:22
**trusts (1)**
13:11
**trying (1)**
7:8
**twenty-five (1)**
6:13
**two (2)**
8:6;13:15
**typical (1)**
15:8

## U

**Ulbrich (1)**
8:5
**ultimately (2)**
7:6,12
**Under (3)**
6:9;8:22;14:25
**UNIDENTIFIED (1)**
16:25
**unsecured (1)**
12:16
**unusual (1)**
11:13
**up (4)**
6:3;9:24;10:5;
15:17
**upon (1)**
8:11
**use (1)**
13:5
**usual (1)**
14:19
**Usually (1)**
9:13

## V

**value (1)**
13:20
**veil (1)**
8:12
**view (1)**
15:1

## W

**way (1)**
7:5
**weeks (1)**
7:11
**well-documented (1)**
10:11
**West (1)**
3:22
**Westlaw (1)**
10:10
**what's (3)**
12:6;13:1;16:11

**Whereupon (1)**
17:9
**win (1)**
7:14
**wise (1)**
5:20
**withdrew (1)**
12:12
**without (1)**
13:12
**Wolicki (1)**
3:20
**work (1)**
8:15
**worked (1)**
8:25
**wrote (1)**
12:10

## Y

**yielded (1)**
9:16
**yields (1)**
15:15
**York (1)**
3:23

## 1

**1,365,000 (1)**
15:20
**1,464,942 (1)**
15:14
**10:27 (1)**
17:9
**10040 (1)**
3:23
**11 (1)**
12:12
**12-12020 (1)**
5:3
**143,000 (4)**
5:18;6:5;8:19;
14:25
**192nd (1)**
3:22

## 2

**2,487 (1)**
15:9
**2,500 (3)**
10:13;16:12,18
**2.93 (1)**
9:17
**20,000 (1)**
10:6
**20,573 (1)**
16:1
**2015 (3)**
11:15,15,20
**2016 (2)**

11:9;13:24
**22 (1)**
11:15
**226,938 (1)**
9:19
**250,000 (1)**
16:7
**256 (1)**
11:15
**261 (1)**
12:10
**2d (1)**
11:15

## 3

**3.9 (1)**
6:11
**36,000 (1)**
10:9
**3966 (2)**
2:14,20

## 4

**4074 (1)**
2:13
**474 (1)**
2:20

## 6

**6 (1)**
9:6
**61,000 (3)**
8:17,18,19

## 7

**7 (1)**
9:6
**700 (1)**
3:22
**794 (2)**
11:15;12:10

## 8

**8 (2)**
6:5;14:24

## 9

**9019 (2)**
2:3;14:19
**9491 (1)**
2:2
**9493 (1)**
2:2
**9609 (1)**
11:12
**973406-2250 (1)**
3:24

**9866 (3)**
2:12,18;11:25
**9867 (1)**
2:12
**9868 (1)**
2:18
**9th (1)**
11:9