**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | NOT FOR PUBLICATION |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
|  | Chapter 11 |
| Debtors. | Jointly Administered |

**MEMORANDUM OPINION AND ORDER AFTER TRIAL OF THE CONTESTED MATTER OF THE RESCAP LIQUIDATING TRUST AND THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIMS 3889, 4129, 4134, AND 4139 FILED BY TIA SMITH**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:   Jordan A. Wishnew, Esq.
       Jessica J. Arett, Esq.

ACCESS LEGAL SERVICES
*Attorneys for Tia Smith*
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
By:   Wendy Alison Nora, Esq., *pro hac vice*

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the ResCap Borrower Claims Trust's (the "Trust") objection (the "Objection," ECF Doc. # 7188) to claims 3889, 4129, 4134, and 4139 filed by Tia Smith (the "Claims").[1] On October 1, 2014, the Court issued the *Memorandum Opinion and Order Sustaining in Part and Overruling in Part Objection to Claims 3889, 4129, 4134, and 4139 Filed*

---
[1]   The Objection is supported by the Declaration of Deanna Horst (the "Horst Declaration," ECF Doc. # 7188-2), the Declaration of P. Joseph Morrow IV (ECF Doc. # 7188-3), and the Declaration of Norman S. Rosenbaum (ECF Doc. # 7188-4).

*by Tia Smith* (the "Prior Opinion," ECF Doc. # 7598). The Prior Opinion sustained in part and overruled in part the Objection. Familiarity with the Prior Opinion is assumed. Smith filed a motion for reconsideration (ECF Doc. # 7691) which the Court denied (ECF Doc. # 7795).

On January 24, 2016, Smith filed the *Second Amended Objection to the Initiation and Prosecution of Contested Claim Proceedings by Counsel for the ResCap Debtors Through the ResCap Liquidating Trust in the Name of the ResCap Borrower Claims Trust (Claim Nos. 3889, 4129, 4134 and 4139)* (ECF Doc. # 9544). On January 26, 2016, the Trust filed a pretrial memorandum of law in support of the Objection (the "Trust Pretrial Memorandum," ECF Doc. # 9553). On January 27, 2016, Smith filed a pretrial memorandum of law (the "Smith Pretrial Memorandum," ECF Doc. # 9557). On February 1, 2016, the Court entered the joint pretrial order (the "Joint Pretrial Order," ECF Doc. # 9574).

The Prior Opinion sustained the Objection to all of the Claims except Smith's claim under the California Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL"). In support of her UCL claim, Smith asserts that in November 2007, before she defaulted on her loan, she spoke with an employee of Homecomings (as defined below) who informed her that if she skipped loan payments, she could qualify for a loan modification. Purportedly relying on this advice, Smith claims that she skipped three loan payments, prompting the foreclosure action. Smith alleges that the advice from Homecomings constituted fraud, misrepresentation, and deceptive conduct. The Trust maintains that Smith never received the advice from a Homecomings employee. The Prior Opinion identified a disputed issue of fact—whether Smith was instructed that she had to default on her loan to qualify for a loan modification—that required an evidentiary hearing.

2

The Court conducted a trial of this contested matter on February 9, 2016. This Opinion contains the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 7052. For the reasons discussed below, the Court finds that Smith failed to establish that a representative of Homecomings and/or GMACM (as defined below) informed her that she needed to skip three monthly payments to qualify for a loan modification and, thus, she failed to prove a violation of the UCL. And even if Smith was so advised, she failed to establish that she would be entitled to recover any damages or other relief.

Accordingly, the Claims are **DISALLOWED** and **EXPUNGED**.

## I.  BACKGROUND

### A.  Issues to be Tried

The Joint Pretrial Order enumerated the following two issues to be tried:

(1) Whether Smith was instructed by a representative of Homecomings Financial, LLC ("Homecomings") and/or GMAC Mortgage, LLC ("GMACM") that she had to skip three monthly payments in order to qualify for a loan modification, whether the instructions to skip three months of payments was fraudulently made in order to create the appearance of default, and whether such purported instruction constitutes a violation of the California Business & Professions Code Section 17200, *et seq*; and

(2) The extent of restitution for losses and disgorgement of profits to which Smith is entitled as the result of the alleged misrepresentation that she would have to miss three months of payments in order to qualify for a loan modification to be allowed under the California Business & Professions Code Section 17200, *et seq*.

(Joint Pretrial Order at 12.)

### B.  Relevant Factual Background

On or around November 9, 2012, Smith filed the Claims against GMACM (Claim No. 3889); Homecomings (Claim No. 4129); Residential Funding Company, LLC ("RFC") (Claim No. 4134); and Residential Accredit Loans, Inc. ("RALI") (Claim No. 4139). (Trust Pretrial

3

Mem. ¶ 5.) Each Claim asserts $3 million in liability based on "predatory lending, wrongful foreclosure." (*Id.*)

On or around December 2, 2006, American Mortgage Network, Inc. ("AMN") originated a loan to Smith (the "Mortgage Loan") in the amount of $556,000, secured by a deed of trust on 4011 Hubert Avenue, Los Angeles, California 90008 (the "Property"). (Mortgage Note, Ex. BT-C; Mortgage Deed, Ex. BT-D.) RFC purchased the Mortgage Loan from AMN, and the Mortgage Loan was subsequently securitized with Deutsche Bank Trust Company Americas ("Deutsche") appointed trustee on or around January 30, 2007 (the "Securitization Trust"). (Trust Pretrial Mem. ¶ 6.) Homecomings serviced the Mortgage Loan from December 29, 2006 until servicing was transferred to Aurora Loan Servicing ("Aurora") on April 1, 2008. (*Id.* ¶ 7.)

Smith missed her payments on the Mortgage Loan on January 1, 2008 and February 1, 2008.[2] (*Id.* ¶ 8.) The parties' contentions with respect to the alleged communications between Smith and Homecomings are as follows:

- February 1, 2008: Homecomings representative speaks with Smith, at which time Smith advises that she was not able to make any payments that day because her business is slow. (*See* Servicing Notes, Ex. BT-B, at 5.) Smith denies having this conversation. (Joint Pretrial Order at 9.)

- February 8, 2008: Homecomings representative speaks with Smith, at which time Smith states that her business is really slow and she would not be able to make a payment until March 13, 2008. (*See* Servicing Notes at 5.) Smith denies having this conversation. (Joint Pretrial Order at 9.)

- February 11, 2008: Homecomings sends a letter to Smith detailing the options available to her to avoid foreclosure. (Trust Pretrial Mem. ¶ 9.) Smith denies receiving this letter. (Joint Pretrial Order at 9.)

- February 11, 2008: Homecomings representative speaks with Smith, at which time Smith states that she could not make a payment at that time because she did not have sufficient funds. (*See* Servicing Notes at 5.) Smith denies having this conversation. (Joint Pretrial Order at 9.)

---

[2] Smith contends that she did not make a payment on March 17, 2008 (Joint Pretrial Order at 10), while the Trust contends that on March 17, 2008, Smith made a payment for the February 1, 2008 obligation. (*Id.* at 12.)

4

- February 13, 2008: Homecomings representative speaks with Smith, at which time Smith states that she had been having problems with her business and she was not able to make a payment on that date. (*Id.*) Smith denies having this conversation. (Joint Pretrial Order at 9.)

- February 22, 2008: Homecomings representative speaks with Smith, at which time Smith states that she did not have sufficient funds to make a payment because her mother, who had been assisting her with the payments, had moved out. (*Id.* at 4.) Smith denies having this conversation. (Joint Pretrial Order at 9.)

- March 3, 2008: Homecomings sends a letter to Smith informing her that by failing to make her payments, she is in breach of the Mortgage Loan. (Trust Pretrial Mem. ¶ 12.) Smith denies receiving this letter. (Joint Pretrial Order at 9.)

- March 10, 2008: Homecomings representative speaks with Smith, at which time Smith states that she had made some bad investments in the stock market and her mother, who had been living with her and helping her with her payments, had moved out in October 2007, and, as a result, she was not able to make a payment at that time. During this call, Homecomings set up a repayment plan for Smith. Smith provided her bank information to make a payment over the telephone.[3] (*See* Servicing Notes at 3.) Smith denies having this conversation. (Joint Pretrial Order at 9.)

- March 14, 2008: Homecomings sends a letter to Smith informing her that, effective April 1, 2008, servicing of the Mortgage Loan would transfer to Aurora.[4] Smith denies receiving this letter. (Joint Pretrial Order at 10.)

C.  **Parties' Contentions and Arguments**

  1.  *Smith's Contentions and Arguments*

Smith argues that, sometime in November 2007, a Homecomings representative named "Miriam" told her that her account needed to be 90 days past due in order to qualify for a loan modification (the "Alleged November 2007 Conversation").[5] (Joint Pretrial Order at 8.) Smith

---

[3]    However, the Trust contends that on or around March 17, 2008, Smith remitted the payment made over the telephone, making the account due again for the February 1, 2008 payment. (Trust Pretrial Mem. ¶ 15.) Smith denies making this payment. (Joint Pretrial Order at 9.)

[4]    The Trust contends that at the time the servicing of the Mortgage Loan was transferred to Aurora on April 1, 2008, the Mortgage Loan was in default. (*Id.* ¶ 16 (citing to Servicing Notes at 1).)

[5]    In Smith's declaration as direct testimony (the "Smith Declaration," ECF Doc. # 9556), Smith contends that "[o]n September 13, or 15, 2007" that she spoke to "Amerivan" of Homecomings about a possible loan

5

contends that, in reliance on Miriam's statement, Smith did not make the January 1, 2008 and February 1, 2008 payments. (*Id.* at 9.) Additionally, Smith failed to make a payment on March 17, 2008. (*Id.* at 10.)

Smith argues that she lost money, tangible and intangible property, and title to her home. (Smith Pretrial Mem. at 2–3.) She contends that she was "engineered into a default position" due to the misrepresentation that she would not be able to apply for a loan modification unless her account was 90 days past due on her mortgage payments. (*Id.*) Additionally, Smith contends that she made payments to a mortgage servicer that was no longer authorized to service mortgages. (*Id.*)

### 2. *Trust's Contentions and Arguments*

The Trust argues that the servicing notes (the "Servicing Notes") do not contain any record of any conversations with Smith in October, November, or December 2007. (Trust Pretrial Mem. at 5–6 (citing to Servicing Notes at 6–8).) Thus, there is no evidence that the Alleged November 2007 Conversation took place.

Additionally, the Trust argues that Smith defaulted on her Mortgage Loan because she was unable to make the payments due to financial difficulties. In support, the Trust points to six telephone conversations with Smith that occurred in February 2008 and March 2008. (Trust Pretrial Mem. at 6.) The Trust contends that the Servicing Notes show that, during these calls, representatives of Homecomings attempted to get Smith to make payments on the Mortgage Loan, and that Smith stated that she could not afford to make payments at those times. (*Id.*) Moreover, the Trust contends that a review of Smith's financial records, including her bank statements and credit card statements from that time, show that she did not have sufficient funds

---

modification and was told that she would have to miss three monthly payments to be eligible for a modification. (Smith Decl. ¶ 23.) By a contemporaneous note, Smith contends that the date was September 13 or 15, 2007. (*Id.* ¶ 21.)

6

in her checking account to make payments on the Mortgage Loan, and that she also had relatively high balances on her credit cards.

The Trust also contends that its position is supported by the fact that Smith made a payment on March 17, 2008, before she would have been three months delinquent. Accordingly, she did not rely on any Alleged November 2007 Conversation.

## II.    FINDINGS OF FACT

In support of her contention that she was instructed to default on her loan in order to qualify for a loan modification, Smith testified that in November 2007, "Miriam" from Homecomings told her that in order to get a loan modification, she needed to be three months behind on her payments. (*See* Hr'g Tr. at 14:19–21.) She further testified that in September 2007, she spoke to "Amerivan" who told her the same thing. (*Id.* at 19:17–20:1.) Smith testified that as a result of these conversations, she skipped the payments due in January 2008, February 2008, and March 2008. (*Id.* at 21:22–23:11.)

In opposition, the Trust called Sara Lathrop, senior claims analyst for the Trust, as a witness and introduced the Servicing Notes, which the Court expressly finds admissible under the business records exception to the hearsay rule. *See* FED. R. CIV. P. 803(6). The Servicing Notes contradict Smith's contention of the Alleged November 2007 Conversation, as they do not contain any record of a conversation between Smith and employees of Homecomings and/or GMACM in October 2007, November 2007, and December 2007, except for a conversation on December 31, 2007 in which Smith called to advise that she had made a payment through the Internet. (*See* Servicing Notes; *see also* Hr'g Tr. at 123:22–124:2 (Lathrop testimony).) Moreover, the Servicing Notes do not reflect any conversation between Smith and an employee of Homecomings and/or GMACM in September 2007. (*See* Servicing Notes; *see also* Hr'g Tr.

7

at 124:8–9 (Lathrop testimony)).) The Court finds this absence of a record of regularly conducted activity to be admissible under Federal Rule of Evidence 803(7). *See* FED. R. EVID. 803(7). The Court credits the testimony of Lathrop to the reliability of the Servicing Notes. Specifically, Lathrop credibly testified to the work of the quality assurance team—which she was a part of in 2008—whose job it was to make sure that the Homecomings and GMACM employees were accurately and completely recording conversations with borrowers and that there was no falsifying of information. (Hr'g Tr. at 147:3–10.) Lathrop further testified that she was unaware of any instance of Servicing Notes reflecting calls that never took place. (Hr'g Tr. at 152:10.) In addition to finding the absence of notes of conversations between Smith and employees of Homecomings and GMACM to be admissible, the Court finds such absence to be credible in contradicting Smith's contention of the Alleged November 2007 Conversation (and the alleged September 2007 conversation).

As noted above, Smith testified that as a result of being told she needed to be three months behind in payments to be eligible for a loan modification, she skipped her monthly payments in January 2008, February 2008, and March 2008. (Hr'g Tr. at 21:22–23:11.) However, this contention is contradicted by the Servicing Notes, which reflect that she made a payment on March 17, 2008. (*See* Servicing Notes at 1.) In addition, the Servicing Notes credibly reflect two instances of Smith advising employees of Homecomings and/or GMACM that she could not make a payment until mid-March 2008. (*See* Servicing Notes at 5 (February 5, 2008 conversation in which Smith gives the reason for her February default was that her business was slow and that she would be unable to make a payment until March 13, 2008), at 4 (February 23, 2008 conversation in which Smith said that she would have funds available on March 15, 2008 to make a payment).) Finding the Servicing Notes credible, the Court concludes

8

that Smith did indeed make her required monthly payment in March 2008. Smith's making of the March 2008 payment undercuts her central contention—that she relied on the advice of an employee of Homecomings and/or GMACM to be three months behind on her payments in order to qualify for a loan modification. Accordingly, the Court finds that Smith failed to establish that such a conversation occurred between herself and an employee of Homecomings and/or GMACM.

### III.    CONCLUSIONS OF LAW

#### A. Debtors' Alleged UCL Violation

The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice . . . ." CAL. BUS. & PROF. CODE § 17200. A claim based on a violation of the UCL may be brought under any of the above prongs. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("Each prong of the UCL is a separate and distinct theory of liability." (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009))). A claim brought under the UCL may also be based on the violation of another law. *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 714 (9th Cir. 2005) ("Under the statute, '[u]nfair competition encompasses anything that can properly be called a business practice which at the same time is forbidden by law.'" (quoting *Wilkinson v. Times Mirror Corp.*, 264 Cal. Rptr. 194, 206 (Ct. App. 1989))). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999)).

Smith bases her UCL cause of action on allegations of fraudulent practices as well as the alleged violations of law underlying her other causes of action. (*See* Opp'n ¶¶ 110–12.) "A

9

business practice is 'fraudulent' within the meaning of Section 17200 if 'members of the public are likely to be deceived.'" *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 934 (N.D. Cal. 2013) (quoting *Comm. on Children's Television v. Gen. Foods Corp.*, 673 P.2d 660, 668 (Cal. 1983), *superseded by statute on other grounds*). "The fraudulent practice 'may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive . . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.'" *Id.* (quoting *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1380 (Ct. App. 2012)).

Here, as the Court found earlier, Smith failed to establish that the Alleged November 2007 Conversation occurred in which an employee of Homecomings and/or GMACM told her that she had to skip three monthly payments in order to qualify for a loan modification. Accordingly, there is no violation of the UCL.

**B.     UCL Damages**

"While the scope of conduct covered by the UCL is broad, its remedies are limited. A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) (internal quotation marks and citations omitted). Prevailing plaintiffs under the UCL are generally limited to injunctive relief and restitution. *Id.*

The Court notes that Smith has failed to establish a valid UCL claim and, as such, the Court need not reach damages. As explained below, even if Smith were to establish a UCL violation on the evidence introduced at the hearing, she would be unable make a recovery.

1.     *Injunctive Relief*

Section 502(b) of the Bankruptcy Code provides that in connection with allowing or disallowing proofs of claim, the Court "shall determine the amount of such claim in lawful

10

currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount . . . ." 11 U.S.C. § 502(b). Except for the estimation of a right to payment arising from a right to an equitable remedy for breach of performance, section 502(b) of the Bankruptcy Code contains no provision for the granting of equitable relief. *See id.* Instead, the Bankruptcy Rules direct that requests for injunctions be sought through adversary proceedings. *See* Fed. R. Bankr. P. 7001(7).

Since Smith does have a basis for injunctive relief and she is not seeking the estimation of a right to payment arising from a right to an equitable remedy for breach of performance, injunctive relief would need to be sought through an adversary proceeding.

### 2. *Restitution*

"The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co.*, 63 P.3d at 947. Restitution is limited to restoring money or property to direct victims of an unfair practice. *Id.* at 949; *see Day v. AT&T Corp.*, 74 Cal. Rptr. 2d 55, 64 (Cal. Ct. App. 1998) (noting that for restitution to be available, "[t]he offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep." (emphasis in original)).

From the evidence introduced, Smith is unable to obtain restitution from Homecomings because Homecomings never acquired any property from Smith that Smith was entitled to keep. Smith pleads for actual damages as the result of the Debtors' alleged UCL violation, contending that she lost "money and property" and that she was "engineered into a default" by the alleged misrepresentation by the Debtors. (*See* Smith Pretrial Mem. at 2–3.) However, such damages are not recoverable under the UCL as restitution. From the evidence introduced at trial, the only thing that the Debtors obtained from Smith were the payments she made to the servicers of her

11

loan. The Debtors were entitled to those payments, as they were the payments that Smith was legally obligated to make pursuant to the terms of the note and deed of trust. As such, Smith was not deprived of any property that she was entitled to keep, and, thus, not entitled to restitution under the UCL.[6]

## IV. CONCLUSION

The Prior Opinion identified one limited factual issue: whether Smith was instructed that she had to default on her loan to qualify for a loan modification. Smith failed to prove that a representative of Homecomings and/or GMACM informed her in November 2007 that she needed to skip three monthly payments to qualify for a loan modification and, thus, she failed to prove a violation of the UCL. Even if the alleged representations were made, Smith failed to prove that she is entitled to recover damages or any other relief.

Accordingly, the Claims are **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:    June 3, 2016
         New York, New York

　　　　　　　　　　　　　　　　　　　*Martin Glenn*　　　　　　　
　　　　　　　　　　　　　　　　　　　MARTIN GLENN
　　　　　　　　　　　　　　　　United States Bankruptcy Judge

---

[6] To the extent that Smith contends that she made payments to a mortgage servicer who was no longer authorized to service her mortgage, she has alleged a claim for restitution; however, this claim was not the result of the Debtors' alleged misrepresentation which was the subject of the hearing. As such, Smith makes no claim where she would be entitled to restitution.