**Exhibit 6**

```
1   Diem T. Nguyen-In Pro Se
2   16478 Beach Boulevard, #331
3   Westminster, CA 92683
4   Telephone: (714) 742-5371
5   email: diem.home@gmail.com
6
7   In Pro Se
8
9           SUPERIOR COURT OF THE STATE OF CALIFORNIA
10       IN AND FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER
11
12  DIEM T. NGUYEN,                        CASE NO.
13                                              30-2010-00387297
14                                         THIRD AMENDMENT TO COMPLAINT:
15          Plaintiff,
16                                         1. BREACH OF WRITTEN CONTRACT -
17  v.                                        THE ORIGINAL DEED OF TRUST
18                                         2. BREACH OF ANTICIPATORY CONTRACT
19                                         3. BREACH OF ORAL CONTRACT
20  NATIONSTAR MORTGAGE, LLC;              4. BREACH OF HAMP CONTRACT
21  FEDERAL NATIONAL MORTGAGE              5. BREACH OF THE THIRD – PARTY
22  ASSOCIATION ("FANNIE                      BENEFICIARY CONTRACT
23  MAE"); MORTGAGE ELECTRONIC             6. WRONGFUL FORECLOSURE
24  REGISTRATION SYSTEMS, INC              7. QUIET TITLE
25  ("MERS");                              8. SLANDER OF TITLE
26  QUALITY LOAN SERVICE                   9. CANCELLATION OF INSTRUMENTS – NOD,
27  CORPORATION;                              SOT, ASSIGNMENTS OF DOTS, NOTS,
28  GMAC MORTGAGE                             PUBLICATIONS OF NOTS, TDUS
29  CORPORATION DBA DITECH.COM;  10. PROMISSORY ESTOPPEL
30  SUMMERGREEN HOMEOWNERS         11. NEGLIGENCE
31  ASSOCIATION;                   12. NEGLIGENT MISREPRESENTATION
32  HUNTINGTON WEST PROPERTIES,    13. BREACH OF THE COVENANT OF GOOD
33  INC.;                             FAITH AND FAIR DEALING
34                                 14. FRAUD
35  ALL PERSONS UNKNOWN,           15. VIOLATION OF THE ROSENTHAL FAIR
36  CLAIMING ANY LEGAL OR              DEBT COLLECTION PRACTICES ACT
37  EQUITABLE RIGHT, TITLE         16. UNFAIR PRACTICES UNDER CALIFORNIA
38  ESTATE, LIEN, OR INTEREST,         BUSINESS & PROFESSIONS CODE
39  IN THE PROPERTY DESCRIBED          SECTION 17200, ET SEQ.
40  IN THE COMPLAINT ADVERSED      17. DECLARATORY RELIEF
41  TO PLAINTIFF'S TITLE OR ANY    18. CONSPIRACY TO OBSTRUCT JUSTICE
42  CLOUD ON PLAINTIFF'S TITLE
43  THERETO , AND DOES 1
44  THROUGH 10,
45          Defendants,
46  _____
47                                 1
```

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification
of Diem T Nguyen

1 | Diem T. Nguyen-In Pro Se
2 | 16478 Beach Boulevard, #331
3 | Westminster, CA 92683
4 | Telephone: (714) 742-5371
5 | email: diem.home@gmail.com
6 |
7 | In Pro Se
8 |
9 | SUPERIOR COURT OF THE STATE OF CALIFORNIA
10 | IN AND FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER
11 |
12 | DIEM T. NGUYEN,
13 |
14 |
15 | Plaintiff,
16 |
17 | v.
18 |
19 |
20 | NATIONSTAR MORTGAGE, LLC;
21 | FEDERAL NATIONAL MORTGAGE
22 | ASSOCIATION ("FANNIE MAE");
23 | MORTGAGE ELECTRONIC
24 | REGISTRATION SYSTEMS, INC
25 | ("MERS");
26 | QUALITY LOAN SERVICE
27 | CORPORATION;
28 | GMAC MORTGAGE
29 | CORPORATION DBA DITECH.COM;
30 | SUMMERGREEN HOMEOWNERS
31 | ASSOCIATION;
32 | HUNTINGTON WEST PROPERTIES,
33 | INC.;
34 |
35 | ALL PERSONS UNKNOWN,
36 | CLAIMING ANY LEGAL OR
37 | EQUITABLE RIGHT, TITLE
38 | ESTATE, LIEN, OR INTEREST,
39 | IN THE PROPERTY DESCRIBED
40 | IN THE COMPLAINT ADVERSED
41 | TO PLAINTIFF'S TITLE OR ANY
42 | CLOUD ON PLAINTIFF'S TITLE
43 | THERETO , AND DOES 1
44 | THROUGH 10,
45 | Defendants,
46 |
47 |

CASE NO.
30-2010-00387297
THIRD AMENDMENT TO COMPLAINT:

DECLARATION OF DIEM T. NGUYEN;
DEMAND FOR JURY TRIAL;
VERIFICATION OF DIEM T. NGUYEN;
REQUEST FOR JUDICIAL NOTICE OF
EXHIBITS IN SUPPORT OF PLAINTIFF'S
COMPLAINT

DATE:_____
TIME:_____
**ROOM: C16**
**HONORABLE WILLIAM M. MONROE**

---

2

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial; verification of Diem T Nguyen

Plaintiff, DIEM T. NGUYEN, is informed and believes and thereon alleges:

## PARTIES:

1. Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 10 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiff is informed and believed and based on such information and belief aver that each of the DOE Defendants is contractually, strictly,negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

2. "All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiffs' Title Thereto" are sued herein pursuant to California Code of Civil Procedure Section 762.020(a).

3. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated as DOES are responsible in some manner for the events and happenings herein alleged and caused injury and damages proximately thereby to Plaintiff, as herein alleged.

4. At all times herein mentioned, each of the Defendants herein were the agents, employees, and alter egos of each of the remaining Defendants, and was at all times acting within the course and scope of said agency and employment.

5. The obligations sued upon were incurred and were to be performed, or are payable, or the defendants reside in the within judicial district of the State of California in the county of Orange.

6. At all times herein mentioned, Plaintiff is an individual residing in a condominium unit, ("Subject property"), located at 4004 W. 5th Street, #201, Santa Ana, CA 92703 within the condominium Project, in the City of Santa Ana, County of Orange, California. The condominium unit includes an exclusive usage of a detached garage number 26. The condominium unit is located inside the Summergreen Homeowners Association.

7. Huntington West Properties Inc ("Huntington West") is the current management company managing Summergreen Homeowners Association ("Summergreen HOA and /or Association").

///

---

3

8. Federal National Mortgage Association ("FANNIE MAE") is the government housing guarantor for Plaintiff's loan that was obtained by GMAC Mortgage Corporation DBA Ditech.com ("Ditech.")

9. FANNIE MAE is believed to be a foreign corporation that is the beneficiary of the loan that foreclosed on the Property and the current holder of title.

10. Nationstar Mortgage, LLC ("Nationstar") was later acquired the servicing rights to the Subject Property loan. The Nationstar reference number is 0596506486 in reference to the Subject Property. Nationstar was the loan servicer of Subject Property.

11. Jamal represented himself to Plaintiff and her then loan modification law firm, Empire Law Center, as an employee of Nationstar Mortgage LLC. Jamal represented himself to Plaintiff and her then loan modification law firm, Empire Law Center, as being an authorized main contact employee working for Nationstar who is authorized to speak on behalf of Nationstar regarding Plaintiff's loan modification status under the HAMP program. Jamal represented himself to Plaintiff and her then loan modification law firm, Empire Law Center, as being authorized to speak on behalf of the loan modification department in Nationstar regarding Plaintiff's loan modification status and outcome in that he was able to gain full access of the status, decisions, and outcomes of Plaintiff loan from the loan modification department in Nationstar's computer systems and records. Jamal represented himself to Plaintiff and her then loan modification law firm, Empire Law Center, as being authorized to speak on behalf of Nationstar's loan modification department and Nationstar in that he informed Plaintiff of the status, decisions, and outcomes of Plaintiff's loan modification from gaining the full access of the Nationstar's computer systems and records. Jamal represented himself to Plaintiff and her then loan modification law firm, Empire Law Center, as being authorized to speak on behalf of Nationstar in regards to the HAMP program and the loan modification programs in general.

12. Quality Loan Service Corporation ("Quality") claimed to be the duly appointed substituted Trustee under said Deed of Trust on July 22, 2010.

13. Quality Loan Service Corporation ("Quality") claimed to be the authorized agent of Nationstar Mortgage , LLC

14. First Amercian Title Insurance Company ("First American Title") is a California corporation with its principal place of business in California. First American Title is in the business of conducting non-judicial foreclosures in California and/or assisting foreclosure trustees.

///

---

4

15. Mortgage Electronic Registration Systems, Inc ("MERS") is a privately held company that operates an electronic registry designed to track servicing rights and ownership of mortgage loans in the United States. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, Tel. (888) 679-MERS.

16. MERS serves as mortgagee of record on the mortgage solely as a nominee for Lender and Lender's successors and assigns and does not have any interest in the mortgage loan.

17. Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

18. The use of the term "Defendants" in any of the allegations in this Complaint, unless specifically otherwise set forth, is intended to include and charge both jointly and severely, not only named Defendants, but all Defendants designated as well.

19. Plaintiff is informed and believe and thereon alleges that, at all times mentioned herein, Defendants were agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/ or co-conspirators of each of their co-defendants and in doing the things herein after mentioned, or acting within the course and scope of their authority of such agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/ or coconspirators with the permission and consent of their co-defendants and, consequently, each Defendant named herein, and those Defendants named herein as DOES 1 through 10, inclusive, are jointly and severally liable to Plaintiff for the damages and harm sustained as a result of their wrongful conduct.

20. Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

21. Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise, and

5

common course of conduct complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiff by engaging in fraudulent activities. Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution  to and furtherance thereof. Defendants' wrongful acts include, inter alia, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct of complained of herein.

22. Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiff could not have discovered, did not discover, and was prevented from discovering, the wrongdoing complained of herein.

23. In the alternative, Defendants should be estopped from relying on any statutes of limitations. Defendants have been under a continuing duty to disclose the true character, nature, and quality of their financial services and debt collection practices. Defendants owed Plaintiff an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

6

<u>GENERAL ALLEGATIONS:</u>

**The original contract.**

24. On July 17, 2006, Plaintiff entered into a consumer loan transaction with Defendant GMAC Mortgage Corporoation DBA Ditech.com ("Ditech") to re-finance a condominium property located at 4004 W. 5th Street, #201, Santa Ana, CA 92703 ("Subject Property.") Plaintiff executed a Promissory Note ("Note") as part of the Loan transaction. Based upon the information and belief, in connection with the Loan transaction, Ditech took a security interest in the Subject Property in the form of a Deed of Trust ("DOT") recorded with the Orange County Recorder's Office in Santa Ana, CA on July 26, 2006. A copy of this DOT is in the Request for Judicial Notice of Exhibits in Support of Plaintiff's Complaint ("RFJN") as Exhibit B

25. Ditech originates and acquires mortgage loans that generally fall into several specified categories. Plaintiff is informed and believes and therefore alleges that Plaintiff's loan was under the following category:
Prime Non-Conforming Mortgage Loans — These are prime credit quality first-lien mortgage loans secured by single-family residences that either (1) do not conform to the underwriting standards established by Fannie Mae or Freddie Mac, because they have original principal amounts exceeding Fannie Mae and Freddie Mac limits, which are commonly referred to as jumbo mortgage loans, or (2) have alternative documentation requirements and property or credit-related features (e.g., higher loan-to-value or debt-to-income ratios) but are otherwise considered prime credit quality due to other compensating factors.

26. In Exhibit B of RFJN, there are total of 19 pages of the Deed of Trust ("DOT") executed on 07/17/2006. There are 15 pages to the DOT. There are 4 pages to the Condominium Rider.

27. The following are the extractions of exerpts from the DOT, Exhibit B:
   a.    on page 1 of 15, it stated:
        (A) "Security Instrument" means this document, which is dated 07/17/2006 together with all Riders to this document.
        (B) "Borrower" is Diem Trang Nguyen, a single woman.
        (C.) "Lender" is GMAC Mortgage Corporation DBA Ditech.com.
   b.    on page 2 of 15, it stated:
        (D) "Trustee" is Executive Trustee Services, Inc.
        (E) "MERS" Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.

---

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial; verification of Diem T Nguyen

(F) "Note" means the promissory note signed by Borrower and dated
07/17/2006
The Note states that Borrower owes Lender
Two Hundred Ninety Six Thousand dollars (USD $296, 000.00) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay
the debt in full not later than August 1, 2036.
(H) "Loan" means the debt evidenced by the Note, plus interest, any
prepayment charges and late charges due under  the Note, and all sums
due under this Security Instrument, plus interest.

c.   on page 3 of 15, it stated:
TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and
all renewals, extensions, and modifications of the Note; and (ii) the
performance of Borrower's covenants and agreements under this Security
Instrument and the Note.
Exhibit A
TOGETHER WITH...Borrower understands and agrees that MERS holds only
legal title ...but if necessary...MERS ( as nominee for Lender and Lender's
successors and assigns) has the right...to foreclose and sell the
property...required of Lender...

d.   on page 4 of 15, it stated:
UNIFORM COVENANTS. Borrower and Lender covenant and agree as
follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late
Charges.  Borrower shall pay when due the principal of, and interest on, the
debt evidenced by the Note and any prepayment charges and late charges
due under the Note.
2. Application of Payment or Proceeds. Except as otherwise described in this
   Section 2, all payments accepted and applied by Lender shall be applied in
   the following order of priority: (a) interest due under the note; (b) principal
   due under the note; (c.) amounts due under Section 3.
3. Funds for Escrow Items.  Borrower shall pay to Lender on the day Periodic
   Payments are due under the Note, until the Note is paid in full....

e.   on page 10 of 15, it stated:
15.     Notices.  All notices given by Borrower or Lender in connection with
        this Security Instrument must be in writing.  Any notice to Borrower in
        connection with this Security Intrument shall be deemed to have given
        to Borrower when mailed by first class mail or when actually delivered
        to Borrower's notice address if sent by other means...The notice address
        shall be the Property Address unless Borrower has designated a
        substitute notice address by notice to Lender...If any notice required by
        this Security Instrument is also required under Applicable Law, the

---

8

Applicable Law requirement will satisfy the corresponding under this Security Instrument.

f.   on page 13 of 15, it stated as followed:

24.   Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located.   The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.   This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

28. This DOT, Exhibit B of RFJN, clearly declared that Lender is GMAC Mortgage Corporation DBA Ditech.com.   The Trustee was declared as Executive Trustee Services, Inc.   The "Beneficiary" was MERS who only holds legal title as nominee for Lender and Lender's successors and assigns.   MERS can only exercise the power of sale if requested by Ditech and Ditech's successors and assigns.   This DOT gave specific instructions and guidelines as to how and the priority of the payments from Plaintiff are to be applied against the DOT and the Note.   The DOT was to secure to lender all renewals, extensions, and modification of the Note.   It defined that the loan means the debt evidenced by the Note and borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.   Borrower shall pay to Lender payments due under the Note until the Note is paid in full.   It declared that all notices in connection with this DOT must be in writing.   It clearly declared that only Ditech can execute and acknowledge the substitution of trustee ("SOT") and must record such execution and acknowledgement in the Orange County Recorder Office in Santa Ana,CA.   It further affirmed the procedure for the SOT by declaring that the procedure clearly specified in the DOT, Exhibit B in RFJN shall govern to the exclusion of all other provisions for substitution.

29. Plaintiff is alleging that the conducts and practices of Ditech, Nationstar, Quality , MERS, and FANNIE MAE were contrary to this original contract , Exhibit B of RFJN of which will be discussed throughout this Complaint.   Thus, Plaintiff alleges that the foreclosure of Subject Property was vicious, malicious,  wrongful , and fraudulent.

### The Anticipatory contract.

30. Exhibit K of RFJN is the APPLICATION FOR ORDER OF EXEMPTION UNDER SECTION 2923.53 OF THE CALIFORNIA FORECLOSURE PREVENTION ACTON (CIVIL CODE SECTION 2923.52 ET SEQ.).

9

This application was received by the Department of Corporations on June 12, 2009.  It stated that the comprehensive loan modification program was implemented on May 28, 2009.  It stated that it has an attached Exhibit (2) which is the "NOTICE OF SALE form in compliance with Civil Code Section 2923.54, or a copy of the declaration, or forms of declarations, in compliance with Civil Code Section 2923.54 that the applicant will instruct its trustee to include in its Notice of Sale."

Plaintiff was not given the Exhibit (2) of this application by the Department of Corporations on March 03, 2011.  However, Plaintiff does have a copy of the Notice of Trustee's Sale ("NOTS"), Exhibit G in RFJN.

In Exhibit K of RFJN, there are five pages: page 1, page 2, page 6, page 7, and last page entitled "Revision to Exhibit (2)."  On the last page of Exhibit K in RFJN, it has the heading of "Revision to Exhibit (2)" in which the languages under the DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 2923.54 is similar to the languages at the bottom of the front page of Plaintiff's Exhibit G in RFJN.

It declared as follows:
[1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;
[2] The timeframe for giving notice of sale specificied in subdivision (a) of Section 2923.52 does not apply pursuant to section 2923.52.

Civil Code Section 2923.52(a) requires an additional ninety (90) days period beyond the period already provided before a Notice of Sale can be given in order to allow all parties time to pursue a loan modification to prevent foreclosure.

The purpose of this application, Exhibit K of RFJN, was to allow Nationstar to proceed with expediting the sale of Subject Property as opposed to forcing Nationstar to wait an additional 90 days to assess options  preventing foreclosures against Subject Property according to the California Foreclosures Prevention Act signed on February 20, 2009, Exhibit N in RFJN, by Governor Schwarzenegger.  On June 15, 2009, The Department of Corporations issued the TEMPORARY ORDER EXEMPTING MORTGAGE LOAN SERVICER FROM CIVIL CODE SECTION 2923.52 in favor of Nationstar, Exhibit L in RFJN.  On July1, 2009, the Department of Corporations issued the FINAL ORDER EXEMPTING MORTGAGE LOAN SERVICER FROM CIVIL CODE SECTION 2923.52 in favor of Nationstar, Exhibit M in RFJN.  Nationstar received the final approval from the Department of Corporations to proceed with the

**10**

sale of Subject Property as opposed to waiting an additional 90 to assess options preventing foreclosures of Subject Property.

Nationstar was preparing this application, Exhibit K in RFJN, in order to obtain an approval from the Department of Corporations to proceed with the selling of Subject Property as opposed to waiting an additional 90 days as required pursuant to the California Foreclosure Prevention Act, Exhibit N of RFJN. Nationstar's actions only meant that they anticipated on repudiating the loan modification contract under the HAMP program ("HAMP contract") in favor of Subject Property when their performance is due in the HAMP contract. Nationstar's actions only meant that they anticipated on rejecting, refusing, and denying Plaintiff the opportunity to perform her duties when performance is due in the HAMP contract in favor of Subject Property.

This is exactly what Nationstar did as they declared by proceeding with these applications while Plaintiff's loan was purportedly being reviewed by the loan modification department in Nationstar and by FANNIE MAE. Nationstar made it impossible for Plaintiff to perform her duty in the HAMP contract.

31. In Exhibit X of RFJN is a USB. In the USB is the consented recorded conversatons between Plaintiff and Jamal from Nationstar, Exhibit A of RFJN. In Exhibit A of RFJN, Jamal confirmed that according to Nationstar's computer systems and records, there was indeed a HAMP contract created and executed in favor of Subject Property on July 22, 2009. Plaintiff is alleging that Plaintiff applied for the exemption pursuant to Section 2923.53 on June 12, 2009 at the Department of Corporations in anticipating of breaching the HAMP contract in favor of Subject Property to be created and executed by all parties to the contract on July 22, 2009 at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA for subject property located at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA.

32. In Exhibit K of RFJN, the application was received by the Department of Corporations on **June 12, 2009**. It stated that the comprehensive loan modification program was implemented on **May 28, 2009.** In Exhibit L of RFJN is the Temporary Order Exempting Mortgage Loan Servicer from Civil Code Section 2923.52 was issued on **June 15, 2009** allowing Nationstar to move forward with foreclosing Subject Property as opposed to waiting an additional 90 days. In Exhibit M of RFJN is the Final Order Exempting Mortgage Loan Service From Civil Code Section 2923.52 was issued on **July 1, 2009**. In Exhbit A of RFJN, Jamal from Nationstar claimed that the loan modification package under the HAMP program in favor of Subject Property was sent to Plaintiff on **July 14, 2009.** The HAMP contract was created and executed on **July 22, 2009** at 4004 W. 5th Street, #201 Santa Ana,CA 92703 USA for Subject Property

11

located at 4004 W. 5th Street, #201 Santa Ana,CA 92703 USA by all parties to the contract. Clearly this is the declaration made by Nationstar through these applications, Exhibit K of RFJN, that Nationstar will NOT perform when their performance is due in the HAMP contract in favor of Subject Property. Nationstar clearly declared that they will make it impossible for Plaintiff to perform her duties when her performance is due in the HAMP contract.

33. Plaintiff is alleging that Nationstar and FANNIE MAE were well prepared in anticipation of breaching the HAMP contract in favor of Subject Property once Nationstar received the final order from the Department of Corporations.

**The Oral Contract**

34. Plaintiff is alleging that Nationstar and FANNIE MAE repudiated the HAMP contract in favor of Subject Property on their own accord.

35. Plaintiff retained the services of the loan modification law firm, Empire Law Center in September 2009. From July 2009 until March 2010, Plaintiff was never informed by any parties including Empire Law Center that there was indeed a HAMP contract set in favor of Subject Property.

36. Under California law contracts, "An implied contract is one, the existence and terms of which are manifested by conduct." Cal.Civ.Code § 1621.       Plaintiff is alleging there existed a HAMP contract in favor of Subject Property.   It was manifested by the conducts and practices of Nationstar and confirmed orally by Jamal from Nationstar on March 15, 2010, Exhibit A of RFJN.  The implied contract survives in Plaintiff's case in that Jamal confirmed that Nationstar accepted and applied Plaintiff's payment meant for the original contract in favor of Subject Property under the HAMP contract.

37. Section 1698 of the California Civil Code provides, in part, as follows: (b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. Cal. Civ.Code § 1698.

Plaintiff is alleging that Nationstar on its own accord executed the contract on Plaintiff's behalf by prorating portion of Plaintiff's last monthly mortgage payment meant for the original contract , Exhibit B of RFJN, and applying that prorated portion to the first of the three months trial period under the HAMP contract on July 22, 2009.  Plaintiff is alleging that it was also executed by Nationstar in that Nationstar accepted the prorated portion of the mortgage payment and applied that mortgage payment to the first of the three months trial period under the HAMP contract on July 22, 2009.

---

12

Jamal from Nationstar confirmed orally that the HAMP contract was executed by all parties to the contract, Nationstar, FANNIE MAE, and Plaintiff on July 22, 2009 at 4004 W. 5th Street #201, Santa Ana,CA 92703 USA for subject property located at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA.

Plaintiff is alleging that FANNIE MAE is a party to this contract in that the existence of the HAMP contract in favor of Subject Property can only be approved by FANNIE MAE.  In Exhibit A of RFJN, Jamal from Nationstar claimed that the HAMP package in favor of Subject Property was sent to Plaintiff on July 14, 2009.  Thus, the oral contract meant as the HAMP contract was created and executed by all parties to the contract, Nationstar, FANNIE MAE, and Plaintiff on July 22, 2009 at  4004 W. 5th Street,#201 Santa Ana,CA 92703 USA for subject property located at 4004 W. 5th Street, #201,  Santa Ana,CA 92703 USA

38. Jamal from Nationstar confirmed in Exhibit A of RFJN that it is the normal practice in which Nationstar does it **ALL THE TIME** to prorate portion of the monthly mortgage payment meant for the original contract, apply such prorated portion towards the first of the three months trial period under the HAMP program, and borrower to complete the remaining two months trial period.

39. The problem with the above commonly known acceptable normal practice within Nationstar is that it is not commonly known acceptable normal practice outside of Nationstar.  Nationstar performs such practices ALL THE TIME and continues to this date.   This type of practices are deceptive and unfair to the public and borrowers such as Plaintiff.  Plaintiff was not aware of such practice.  Plaintiff was not inform of such practice by Ditech, MERS, Nationstar, Quality,  FANNIE  MAE, and/or any agents who have legal interests in Subject Property  via any form of communication either verbally and/or written.

**The Loan Modification Contract  under the HAMP program ("HAMP contract.")**

40. Plaintiff is alleging that there existed a loan modification contract under the HAMP program ("HAMP contract") in favor of Subject Property which was created and executed by all parties to the contract , Nationstar, FANNIE MAE, and Plaintiff , on July 22, 2009 at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA for Subject Property located at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA.

41. Plaintiff is alleging that Jamal from Nationstar confirmed the existence of this contract on March 15, 2010 in Exhibit A of RFJN.

42. Plaintiff is alleging that Nationstar and FANNIE MAE created and executed the HAMP contract for all parties to the contract on their own accord.

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

**Nationstar lack standing, jurisdictions, and/or authorities**

43. On 05/06/2010 , Nationstar represented and listed themselves as the loan servicer and the Beneficiary of Subject Property causing the Notice of Default ("NOD") to be issued and recorded, Exhibit C in RFJN. However, An assignment of Deed of Trust did not name Nationstar to be "Beneficiary" until May 13, 2010. Exhibit D of RFJN, an Assignment of Deed of Trust purportedly executed on May 13, 2010, Nationstar was not a "Beneficiary" of Subject Property until May 13, 2010. Nationstar claimed to be the Beneficiary on the NOD is false.

44. Exhibit D of RFJN, the assignment to Nationstar is invalid pursuant to the holding of Pribus v. Bush, (1981) 119 Cal. App. 3D 1003,173 Cal.Rptr.747. Although there is enough room to execute the Assignment of Deed of Trust on the front page, Nationstar had chosen to complete the execution on a separate page. This separate paper of the execution did not indicate the purpose of the execution that would required the notarization by David Hansen and signed by Michael Woods from Nationstar.

Furthermore, the execution did not specify the role of Michael Woods from Nationstar and his authority to sign on behalf of MERS and/or Ditech. The power of attorney was not recorded along with this assignment. It did not state on the execution that Michael Woods signed on behalf of MERS and/or Ditech under the power of attorney and/or power of sales.

The Assignment of Deed of Trust , Exhibit D of RFJN is invalid and void.

45. Exhibit D of RFJN , The assignment of DOT to Nationstar where Michael Woods from Nationstar assigned Nationstar Mortgage, LLC to the Assignment of Deed of Trust. Nationstar assigned themselves as Beneficiary to the Deed of Trust.

Plaintiff is alleging that Nationstar assigned themseves to the assignment, acknowledged their own assignment, and recorded their own assignment to the Deed of Trust. The assignment did not name the true Principal and/or Beneficary assigning and acknowledging Nationstar to the DOT. MERS was named as the "Beneficiary" to the original DOT, Exhibit B of RFJN. However, MERS only held a legal title as a nominee for Ditech and Ditech's successors and assigns. Plaintiff never received any notices from MERS and/or Ditech regarding Ditech's sucessors and assigns. There is no power of attorney recorded along with this assignment in which Nationstar can sign on behalf of MERS and/or Ditech. Exhibit D of RFJN, it did not indicate that MERS transferred the assignment to Nationstar nor give Nationstar the power of attorney to assign themselves to the Deed of Trust.

Thus, the assignment is invalid and void ab initio.

14

46. In California, California Civil Code §2932.5 governs the Power of sale under an assigned mortgage, and provides that the power of sale can only vest in a person entitled to money payments: "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, *the power is part of the security* and vests in any person who *by assignment becomes entitled to payment* of the money secured by the instrument. The power of sale may be exercised by the assignee *if* the assignment is duly *acknowledged and recorded*." (bold and italic added)

According to California Real Estate 3d §10:182, "when the beneficiary assigns the note after the notice of default has been recorded, the information identifying the beneficiary is no longer accurate. **A party who takes an assignment of a security interest after a notice of default is recorded is required to record and mail an amended notice of default.** The recorded amended notice does not start a new period,but it must be recorded within a reasonable time *prior to sale*." (bold and italic added)

Plaintiff is alleging that the power of sale may not be exercised by Nationstar since there was NO **"amended"** Notice of Default filed and recorded at the local Orange County Clerk Office located in Santa Ana,CA. Plaintiff never received any amended notice of default from Nationstar and/or its agent. Since Nationstar did not comply with California Civil Code §2932.5 and California Real Estate 3d §10:182, the Notice of Default, provisions of California Civil Code §2924 and Notice of Trustee's sale were likewise never complied with.

Nationstar never complied with the Notice of Default provisions of California Civil Code §2924. (Please see Exhibit C of RFJN)

Thus, Quality Loan Services Corp. never complied with the Notice of Trustee's Sale provisions of California Civil Code §2924. (Please see Exhibit G of RFJN)

47.
Under California civil Code Section 2924f
(c) (1) *This subdivision applies only to deeds of trust or mortgages **which contain a power of sale** and which are secured by real property containing a single-family, owner- occupied residence, where the obligation secured by the deed of trust or mortgage is contained in a contract for goods or services subject to the provisions of the Unruh Act (Chapter 1 (commencing with Section 1801) of Title 2 of Part 4 of Division 3) **(bold and italics added)**

Plaintiff is alleging that since the assignment to Nationstar is invalid and void,

15

Nationstar lack the standing, jurisdiction, authority, and the power of sale to proceed with the non-judicial foreclosure of Subject Property.

48. California Civil Code Section 2934 reads as followed :

(a) (1) The trustee under a trust deed upon real property or an estate for years therein given  to secure an obligation to pay money and conferring no other duties upon the trustee than those which are incidental to the exercise of the power of sale therein conferred, may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by: (A) all of the beneficiaries under the trust deed, or their successors in interest, and the substitution shall be effective notwithstanding any contrary provision in any trust deed executed on or after January 1, 1968; or (B) the holders of more than 50 percent of the record beneficial interest of a series of notes secured by the same real property or of undivided interests in a note secured by real property equivalent to a series transaction, exclusive of any notes  or interests of a licensed real estate broker that is the issuer or servicer of the notes or interests or of any affiliate of that licensed real estate broker.  (2) A substitution executed pursuant to subparagraph (B) of paragraph (1) is not effective unless all the parties signing the substitution sign, under penalty of perjury, a separate written document stating the following: (A) The substitution has been signed pursuant to subparagraph (B)  of paragraph (1).  (B) None of the undersigned is a  licensed real estate broker or an affiliate of the broker that is the issuer or servicer of the  obligation secured by the deed of trust. (C) The undersigned  together hold more than 50 percent of the record beneficial interest of a series of notes secured by the same real property or of undivided interests in a note secured by real property equivalent to a series transaction.

The NOD, Exhibit C of RFJN, was created  and recorded on 05/06/2010 by Quality. The Assignment of Deed of Trust, Exhibit D of RFJN, assigned Nationstar to the Deed of Trust as Beneficiary of Subject Property on May 13, 2010.  The Substitution of Trustee substituted Quality to be the Trustee signed on July 22, 2010 by Tim Bargenquast from Quality  under the power of attorney executed by Nationstar. Plaintiff is alleging that Nationstar only held a servicer position  of the purportedly loan of Subject Property  when Nationstar caused the NOD to be created and recorded by Quality.  Nationstar had no standing, jurisdictions, and/or authorities to execute the power of attorney to Quality  causing the NOD to be executed and recorded against Subject Property.

The NOD is invalid and void.  Thus, the NOTS , Exhibit G  of RFJN, and the publication of the NOTS in the Orange County Reporter, Exhibit H of RFJN are also invalid and void ab initio.

///

16

**Quality Loan Service Corporation ("Quality") lack standing, jurisdictions, and/or authorities**

49. Quality claimed to be the duly appointed trustee in the DOT for Subject Property when they executed and recorded the NOD on 05/06/2010. Plaintiff is alleging that Quality is an unknown stranger to the DOT.

50. Executive Trustee Services, Inc. was named as the "Trustee" in the original DOT, Exhibit B of RFJN. However, Quality claimed itself to be the duly appointed Trustee on 05/06/2010. But, the substitution of Trustee in which Quality named themselves as trustee was executed on 07/22/2010, Exhibit F of RFJN. The NOD, Exhibit C of RFJN, was executed and recorded on 05/06/2010 by Quality. Quality declared that they are the duly appointed substituted trustee on the NOD is false. The NOD, Exhibit C of RFJN , is invalid and void ab initio.

51. Furthermore, Plaintiff is alleging that all of the beneficiaries under the trust deed , or their successors or the holders of more than 50 percent of the record beneficial interest of a series of notes secured by the same real property in interest did not give Quality the power of attorney and/or the power of sales against Subject Property pursuant to California Civil Code Section 2934. Plaintiff is alleging that Quality was improperly assigned as the substituted trustee against Subject Property. Thus, any and all documents created and recorded by Quality against Subject Property are invalid and void ab initio. As a result, the sale of Subject Property was wrongful and fraudulent.

52. Plaintiff is also alleging that neither Ditech nor MERS gave Quality the power of attorney and /or the power of sales to execute the NOD. Plaintiff is alleging that Nationstar only held a loan servicer position for Subject Property when they executed the power of attorney to Quality. Nationstar did not have standing, jurisdictions, and/or authorities to substitute Quality as the Trustee for the DOT.

53. Quality had no standing, authorities, and/or jurisdictions to issue the NOD. The NOD, Exhibit C of RFJN is invalid and void ab initio.

54. Most importantly and above all, in the original DOT , Exhibit B of RFJN, on page 13 of 15, it stated as followed (Italics added):
   *24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is successor trustee shall succeed to all the*

///

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial; verification of Diem T Nguyen

*title, powers and duties conferred upon the Trustee herein and by Applicable Law. This
procedure for substitution of trustee shall govern to the exclusion of all other
provisions for substitution.*

The DOT clearly declared how and in which manner is considered as an acceptable
form of substituting a new trustee in the DOT. Ditech was named as lender in the
DOT, Exhibit B of RFJN. In Exhibit F of RFJN is the substitution of trustee sent to
Plaintiff from Quality. The substitution of trustee, Exhibit F of RFJN was not
recorded at the Orange County Recorder Office in Santa Ana,CA . The Orange
County Recorder Office in Santa Ana,CA does not have a recorded substitution of
trustee from Ditech to Quality. In fact, the Orange County Recorder Office in Santa
Ana,CA does not have any recorded substitution of trustee against Subject Property
since the execution and recorded DOT, Exhibit B of RFJN.

Plaintiff alleges that Ditech did not execute and acknowledge the substitution of
trustee, Exhibit F of RFJN. Plaintiff alleges that Nationstar had no standing,
jurisdictions, and/or authorities to execute the substitution of trustee as Nationstar was
not named as the Lender of Subject Property loan. Ditech was named as the Lender,
Exhibit B of RFJN. Thus, only Ditech can substitute the new trustee in the DOT
against Subject Property. Plaintiff alleges that the substitution of trustee, Exhibit F of
RFJN is invalid and void. Thus, all documents executed and recorded against Subject
Property by Quality are invalid and void. Foreclosure of Subject Property was
wrongful and fraudulent.

55. Plaintiff is alleging that an unknown stranger named Quality to the DOT foreclosed
Subject Property without the authorities to do so. Thus, the following documents and
assignments are invalid and void ab initio : The NOD, Exhibit C of RFJN; The
Notice of Trustee's Sale (NOTS), Exhbit G of RFJN; and The publication of the Notice
of Trustee's Sale in the Orange County Reporter , Exhibit H of RFJN. The foreclosure
of subject property was wrongful and fraudulent as it could not have proceed without
these documents and assignments.

**Invalid Note, Assignments of DOTs, NOD, NOTS, publications of NOTS in the Orange
County Reporter**

56. Plaintiff is informed and believes and therefore alleges that her loan after it was
originated and funded was sold on multiple occasions, bundled into a group of Trust
Deeds and subsequently sold to investors as a Derivative, "Mortgage Backed Security."
Plaintiff alleges that the Note has been modified after it was securitized. Plaintiff
alleges that none of the named Defendants ever sent Plaintiff the modification of the

///

**18**

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification
of Diem T Nguyen

57. Note evidencing the debts.   Plaintiff is alleging  that the debts evidenced by the
    original Note is invalid and unenforceable.   Plaintiff is alleging that the Note has been
    paid in full.

58. The NOD, Exhibit C of RFJN, signed by two different actors, Cindy Engel and Tim
    Eads from Quality, is invalid and void because Quality lack the standing, jurisdictions,
    and/or authorities to act as Trustee in the DOT against Subject Property.

59. The NOD, Exhibit C of RFJN,  the Notice of Trustee's Sale (NOTS), Exhbit G of
    RFJN, and the publications of  the Notice of Trustee's Sale in the Orange County
    Reporter , Exhibit H of RFJN are invalid and void ab initio because Quality lack the
    standing, jurisdictions, and/or authorities to act as Trustee in the DOT against Subject
    Property.

60. Furthermore,  pursuant to California Code of Civil Procedure §2015.5, declaration and
    verification made in writing must be signed under penalty of perjury.  Plaintiff is
    alleging that Quality  made declarations and verifiications in the NOD, Exhibit C of
    RFJN, of the following documents and information justifying the foreclosures of
    Subject Property which included but not  limited to the DOT, the Note, the
    Assignments, the Beneficiary, the Note's holders, and failed to sign it under  penalty of
    perjury.  Thus, the NOD is invalid and void ab initio.

61. The NOD, Exhibit C of RFJN, was executed by Tim Eads from  Quality on behalf of
    Nationstar, declared under penalty of perjury pursuant to the statue that they have
    completed the requirements of Section 2923.5 of the California Civil Code.

    California Civil Code Section 2923.5 stated as followed (Italics added):
    *(g) A notice of default may be filed pursuant to Section 2924 when a mortgagee,
    beneficiary, or authorized agent has not contacted a borrower as required by
    paragraph (2) of subdivision (a) provided that the failure to contact the borrower
    occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent.
    For  purposes of  this section, "due diligence"  shall require and mean all of the
    following:*

        *(2) (A) After the letter has been sent, the mortgagee,  beneficiary, or authorized
            agent shall attempt to contact the borrower by telephone at least three times at
            different hours and on different days. Telephone calls shall be made to the
            primary telephone number on file.
            (B) A mortgagee, beneficiary, or authorized agent may attempt to contact a
            borrower using an automated system to dial borrowers, provided that, if the
            telephone call is answered, the call is  connected to a live representative of the*

///

*19*

> *mortgagee, beneficiary, or authorized agent.*
> *(C) A mortgagee, beneficiary, or authorized agent satisfies the telephone*
> *contact requirements of this paragraph if it determines, after attempting contact*
> *pursuant to this paragraph, that the borrower's primary telephone number and*
> *secondary telephone number or numbers on file, if any, have been*
> *disconnected.*
>   *(3) If the borrower does not respond within two weeks after the telephone call*
>   *requirements of paragraph (2) have been satisfied, the mortgagee, beneficiary,*
>   *or authorized agent shall then send a certified letter, with return receipt*
>   *requested.*

Nationstar claimed that this letter required by Civil Code § 2923.5 (g)(3) was mailed on November 20, 2009, Exhibit C. This declaration signed under penalty of perjury pursuant to the statue by Tim Eads on 02/03/2010 from Nationstar.

This declaration is false and fraudulent in that Nationstar made declaration meant to convey that there was no loan modification program set in place for Subject Property due to the reasoning that Nationstar was not able to contact Plaintiff to assess options to avoid foreclosures. Nationstar further claimed that they tried with due dilligence and even sent out a certified letter attempting to contact Plaintiff via written communication. However, as confirmed in Exhibit A of RFJN, Jamal from Nationstar admitted that there was indeed a HAMP contract which was created and executed on July 22, 2009 at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA in favor of Subject Property located at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA by all parties to the contract. Furthermore, between July of 2009 and March of 2010, there were constant communications among Plaintiff, Nationstar, and her then loan modification law firm, Empire Law Center.

The declaration is false and fraudulent. Thus, NOD, Exhibit C of RFJN is invalid and void ab initio.

### Securitizations of the subject Note and loan

62. In Exhibit B of RFJN, the original Deed of Trust , on page 3 of 15, it stated (bold and italics added):
*TRANSFER OF RIGHTS IN THE PROPERTY*
*This Security Instrument secures to Lender: (i) the repayment of the Loan, and **all*** *** renewals, extensions, and modifications of the Note;** and (ii) the performance of* *Borrower's covenants and agreements under this Security Instrument and the Note.*

63. Plaintiff is informed and believes and therefore alleges that her loan after it was

---

*20*

originated and funded was sold on multiple occasions, bundled into a group of Trust
Deeds and subsequently sold to investors as a Derivative, "Mortgage Backed
Security",and that therefore none of the foreclosing defendants, and each of them,
possess and/or owned this loan, or Note and cannot be and are not the Beneficiary, or
lawfully appointed trustee, and have no right to declare a default, to cause notices of
default to issue or to be recorded, or to foreclose on Plaintiffs interest in the subject
property, Defendants, and each of them, were not the note Holder or the Note holder in
due course or any Beneficiary at any time in regards to this loan.

64. There is no copy of the modification of the Note recorded at the Orange County
    Recorder Office in Santa Ana,CA . Plaintiff never received any modification of the
    Note.

    The only Note recorded at the Orange County Recorder Office in Santa Ana,CA is the
    copy of Exhibit B in RFJN.

65. Furthermore, Plaintiff is informed and believes and therefore alleges that The Note
    against subject property has been securitized. According to the Federal Register,
    Securities and Exchange Commission, Friday, January 7, 2005, under Final Rule, the
    Note (a financial / negotiable Instrument) is "converted" into a securitized instrument,
    the note is paid in full. Plaintiff is alleging that the Note against Subject Property was
    paid in full.

66. Plaintiff is alleging that that none of the named Defendants, MERS, Ditech, Nationstar,
    FANNIE MAE, and/or Quality ever presented to Plaintiff the modification of the Note
    evidencing the debts.

67. Plaintiff is alleging that Quality claimed in the NOD, Exhibit C of RFJN that "...this
    letter is intended to exercise the note holder's rights against the real property..." is false.
    Plaintiff is alleging that none of the named Defendants, MERS, Ditech, Nationstar,
    FANNIE MAE , and/or Quality owns the Note. Plaintiff is alleging that Quality never
    receive the Note from the Note holder claiming the note's holder rights. Plaintiff is
    alleging that Quality did not know the true holder of the Note when Quality made this
    declaration and verification.

68. The DOT, Exhibit B, on page 4 of 15, it stated (bold added):
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late
    Charges.  Borrower shall pay when due the principal of, and interest on, **the debt
    evidenced by the Note and any prepayment charges and late charges due under**

*21*

the Note.

2. Application of Payment or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the note; (b) principal due under the note; (c.) **amounts due under Section 3**.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic **Payments are due under the Note, until the Note is paid in full....**

Plaintiff is alleging that the Note against Subject Property has been paid in full after it was securitized according to the Federal Register, Securities and Exchange Commission, Friday, January 7, 2005, under Final Rule, the Note (a financial / negotiable Instrument) is "converted" into a securitized instrument, the note is paid in full.

The Note against Subject Property is paid in full.

**The Superior Court case number 05CC08432 consolidated with 07CC00188**

69. Plaintiff currently has a pending case number 05CC08432 consolidated with 07CC00188 at the Superior Court Of The State Of California In The County Of Orange, Central Justice Center against Summergreen HOA and past Board of Directors.

70. In Exhibit N is "Title 10. CALIFORNIA DEPARTMENT OF FINANCIAL INSTITUTIONS FINDING OF EMERGENCY."  On page 3 under leter e. Other Requirements, it stated "That a servicer use reasonable efforts to remove any prohibitions and obtain waivers or approvals from all necessary parties, including, but not limited to , junior lien holders and investors; ..."

71. Plaintiff is alleging that Nationstar did indeed contact Summergreen HOA  through Huntington West  to assess the condition, value, financial  situation, and any prohibitions against Subject Property and association.

72. Plaintiff is alleging that Summergreen HOA through  Huntington West failed to inform Nationstar of the current pending case against Summergreen HOA and their past Board of Directors.  Thus, Plaintiff alleges that  Summergeen HOA and Huntington West breached their duty of care and skill to Plaintiff.

73. Plaintiff is alleging that Summergreen HOA and Huntington West failed to place prohibition and restriction against Subject Property and the Summergreen HOA.

///

---

22

74. According to the Declaration Of Covenants, Conditions And Restrictions And
Reservation Of Easements ("CC& R") for Summergreen HOA recorded as instrument
number 83-312433 at the Orange County Recorder Office in Santa Ana,CA on July 20,
1983, under Article II (bold added):

**Section 2.02. Duties and Powers.** The duties and powers of the Association are those
set forth in the Declaration, the Articles and Bylaws together with its general and
implied powers of a nonprofit mutual benefit corporation, generally to do any and all
things that a coporation organized under the laws of the State of California may
lawfully do which are necessary or proper, in operating for the peace, health, comfort,
safety and general welfare of its Members, ...

**Section 2.03. Membership.** Every owner, upon becoming the Owner of a
Condominium, shall automatically become a Member of the Association,...

Plaintiff alleges that Plaintiff was a Member of the Summergreen HOA. Plaintiff
alleges that Summergreen HOA and Huntington West had a duty to exercise reasonable
care and skill to protect the operation for the peace and general welfare of the
Association and Plaintiff.

75. In Plaintiff's case, although Plaintiff is suing the Summergreen HOA, Plaintiff was still
entitled to the protection from Summergreen HOA and Huntington West regarding the
interests and general welfare against Subject Property and the Association . Plaintiff is
alleging that Plaintiff was a paid member of the Association. Thus, Plaintiff had
standing, jurisdictions, and/or authorities to collect against Subject Property and/or
Summergreen HOA in the event of the breach and /or losses.

76. Plaintiff is alleging that Summergreen HOA and Huntington West failed to inform
Nationstar of the pending case against the Association in order to interfere and
interrupt the pending case number 05CC08432 consolidated with 07CC00188.

77. Plaintiff is alleging that Summergreen HOA and Huntington West failed to place
prohibition and restriction against Subject Property, and inform Nationstar of such
prohibition and restriction in order to prevent Plaintiff from any possibility of persuing
and collecting against Subject Property and/or Association.

78. Plaintiff is alleging that Summergreen HOA and Huntington West failed to take
reasonable care and skills to protect the interests and operations of the Association and
Members of the Association. Plaintiff was a paid Member of the Summergreen HOA.

///
///
///

---

*23*

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial; verification
of Diem T Nguyen

**FIRST CAUSE OF ACTION**
**(Breach Of Written Contract – The Original Deed Of Trust)**
**(Against Nationstar Mortgage, LLC("Nationstar"), Federal National Mortgage**
**Association ("FANNIE MAE"), Mortgage Electronic Registration Systems, Inc**
**("MERS"), Quality Loan Service Corporation ("Quality"), GMAC Mortgage**
**Corporation DBA Ditech.com ("Ditech"), DOES 1 THROUGH 10)**

79. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though
fully set forth herein.

80. According to the Deed of Trust ("DOT"), Exhibit B of RFJN, it clearly stated how and
the priority of the payments from Plaintiff are to be applied against the DOT and the
Note.

Plaintiff is alleging that Nationstar breached this contract when Jamal from Nationstar
confirmed to Plaintiff in a recorded conversation, Exhibit A of RFJN, that Nationstar
prorated portion of Plaintiff's mortgage payment meant for the DOT, Exhibit B of
RFJN, to a new monthly payment towards the HAMP contract on their own accord.
Plaintiff is alleging that the DOT did not authorize such application of the payment to
the HAMP contract without proper notices and approvals to and by all to the contract.

81. Plaintiff is alleging that FANNIE MAE breached this contract, Exhibit B in RFJN in
that the HAMP contract can only existed, created, and executed with the approval from
FANNIE MAE.

82. In the DOT, Exhibit B of RFJN, it clearly stated that all notices in connection with this
DOT must be in writing.  This also mean that all modification of how the payments
are to be applied against the DOT and the Note are to be made in writing.

Plaintiff is alleging that Nationstar and FANNIE MAE breached the contract when they
did not send Plaintiff any form of notices in writing regarding their intention of
applying Plaintiff's mortgage payment meant for the original contract, Exhibit B of
RFJN, to a different form of mortgage payment under the HAMP contract.

Plaintiff is alleging that Nationstar and FANNIE MAE breached the contract when they
did not send Plaintiff any form of notices in writing informing Plaintiff that they intend
and will replace the HAMP contract against the original contract, Exhibit B of RFJN.

Plaintiff is alleging that Nationstar and FANNIE MAE breached the contract when they
did not send Plaintiff any form of notices in writing the terms and conditions of the
new contract which will replace the terms and conditions of the original contract,
Exhibit B of RFJN.

*24*

Plaintiff is alleging that Nationstar and FANNIE MAE breached the contract when they did not send Plaintiff in writing the new contract stating the terms and conditions that will replace the terms and conditions of the original contract, Exhibit B of RFJN.

Plaintiff is alleging that Nationstar and FANNIE MAE breached the original contract when they created and executed the HAMP contract in favor of Subject Property on their own accord for and on behalf of all parties to the contract without sending Plaintiff any notices. Plaintiff was one of the parties in the contract.

83. Plaintiff alleges that MERS was named Beneficiary solely as the nominee for Lender and Lender's successors and assigns in the DOT, Exhibit B in RFJN. Ditech was named as Lender in the DOT. Plaintiff has no records in writing from MERS and/or Ditech of Lender's successors and assigns in connection with the DOT. Thus, the only valid "Beneficiary" to the DOT is MERS. MERS can only exercise the power of sale upon the request and approval of Ditech. However, Nationstar assigned themselves as beneficiary to the DOT and foreclosed Subject Property. Thus, MERS breached the contract when they did not send Plaintiff in writing of Lender's successors and assigns who have standing, jurisdicitons, and/or authorities to foreclose Subject Property in the event of the breach. MERS breached the contract when they did not send Plaintiff notices in writing that they allowed Nationstar who is an unknown stranger to the DOT to assign and proclaim themselves as Beneficiary to the DOT and foreclosed Subject Property.

84. Ditech breached the contract when they did not send Plaintiff notices in writing that they allowed Nationstar who is an unknown stranger to the DOT to assign and proclaim themselves as Beneficiary to the DOT and foreclosed Subject Property. Plaintiff alleges that only Ditech can request and approve the power of sale to be exercised by Beneficiary against Subject Property.

85. In Exhibit B of RFJN, it clearly stated that this DOT secures to lender all renewals, extensions, and modification of the Note. It clearly stated that the loan means the debt evidenced by the Note. It clearly stated that borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

Plaintiff is alleging that the Note in Exhibit B of RFJN has been modified and is no longer the Note as evidenced in the original contract. Plaintiff is alleging that none of the named Defendants, Ditech, MERS, Nationstar, FANNIE MAE , and/or Quality ever presented to Plaintiff the modification of the Note evidencing the debts.

Plaintiff is alleging that each of the named Defendants Ditech, MERS, Nationstar,

///

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

FANNIE MAE, and Quality breached the contract when they foreclosed Subject Property and/or allowed the Subject Property to be foreclosed based on the orginal DOT and the Note, Exhibit B of RFJN. Plaintiff is alleging that the original contract cannot be enforced as it was modified once it was securitized. Plaintiff never received the modification of the Note evidencing the debts.

86. In Exhibit B of RFJN, It clearly stated that borrower shall pay to Lender payments due under the Note until the Note is paid in full.

Plaintiff further alleges that the debt evidenced by the original Note has been paid in full after it was securitized according to the Federal Register, Securities and Exchange Commission, Friday, January 7, 2005, under Final Rule, the Note (a financial / negotiable Instrument) is "converted" into a securitized instrument, the note is paid in full.

Plaintiff is alleging that the Note has been paid in full. Each of the named Defendants breached the contract when they foreclosed Subject Property based on the original DOT as it is no longer secured the debts evidenced by the Note.

87. In Exhbit B of RFJN, it clearly stated that Lender and only Lender can execute and acknowledge the substitution of trustee and record such execution and acknowledgement in the Orange County Recorder Office in Santa Ana,CA .

Plaintiff alleges that only GMAC Mortgage Corporation DBA Ditech.com named as "Lender" in the DOT, Exhibit B of RFJN, can execute and acknowledge the substitution substitution of trustee and record it in the Orange County Recorder Office in Santa Ana,CA .

88. In Exhibit F of RFJN, the substitution of Trustee was executed and acknowledged by Tim Bargenquast from Quality signing on behalf of Nationstar under the power of attorney. Nationstar was not named as "Lender" in the original DOT, Exhibit B of RFJN. Nationstar was never named as the "Lender" in any documents and/or assignments in connection to the Subject Property loan and Note.

Nationstar breached the contract when they took upon themselves on their own accord to substitute Quality as the new Trustee to the DOT against Subject Property. Nationstar had no standing, jurisdictions, and/or authorities to do so

89. Plaintiff alleges that Ditech breached the contract when they allowed the Subject Property to be foreclosed by Quality who is an unknown stranger to the DOT.

90. Plaintiff alleges that Ditech and MERS breached the contract when they allowed the

*26*

Subject Property foreclosed based on the invalid documents executed and recorded by Quality who is an unknown stranger to the DOT: The NOD, Exhibit C of RFJN; The Notice of Trustee's Sale (NOTS), Exhbit G of RFJN; and The publication of the Notice of Trustee's Sale in the Orange County Reporter , Exhibit H of RFJN.

91. Quality breached the contract in that they are an unknown stranger to the DOT. Quality had no standing, jurisdictions, and/or authorities to act as Trustee in the DOT for Subject Property. Quality lack the standing, jurisdictions, and/or authorities to create, execute, and record documents causing wrongful foreclosure against Subject Property.

92. MERS was named as the "Beneficiary" in the DOT, Exhibit B of RFJN. Plaintiff alleges that MERS breached the contract in that MERS accepted and recorded an invalid and incomplete assignment of Deed of Trust, Exhibit D of RFJN. By the acceptance and the recording of this invalid and incomplete assignment, MERS allowed Nationstar to execute the power of attorney in the capacity as "Beneficiary" to Quality causing the wrongful fraudulent foreclosure of Subject Property.

93. Quality was not properly substituted as Trustee against Subject Property. Quality did not have the standing, jurisdictions, and/or authorities to foreclose Subject Property as Trustee and/or as agent for Beneficiary, Nationstar. Thus, Quality breached the contract in that they are unknown actor to the DOT, Exhibit B of RFJN, and cannot enforce the terms and conditions of the contract.

94. FANNIE MAE accepted the assignment of Deed of Trust from Nationstar to FANNIE MAE, Exhibit I of RFJN and bought Subject Property, Exhibit O of RFJN.  The assignment to Nationstar is invalid and thus making the assignment from Nationstar to FANNIE MAE also invalid.  Thus, FANNIE MAE lack the standing, jurisdiction, and/or authorities to sell Subject Property and bought Subject Property.  FANNIE MAE  breached the contract in that FANNIE MAE sold and bought Subject Property under false and invalid recorded assignments and documents which violated the terms and conditions of the original DOT, Exhibit B of RFJN, and California laws.

95. Nationstar and FANNIE MAE breached the contract in that Nationstar and FANNIE MAE replaced the DOT with the HAMP contract on their own accord.

96. Nationstar and FANNIE MAE breached the contract when they exercised the terms and conditions of the contract that is no longer valid once they replaced it with the HAMP contract on their own accord.

97. As a proximate result of each of the named Defendant breaches, Plaintiff has suffered,

///

and will continue to suffer, consequential damages in an amount according to proof at trial, but not less than USD1,000,000.00.

### SECOND CAUSE OF ACTION
### (Breach Of Anticipatory Contract)
### (Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), DOES 1 THROUGH 10)

98. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

99. Plaintiff is alleging that Nationstar and FANNIE MAE declared both verbally and via written that they will not perform when their performance is due under the HAMP contract in favor of Subject Property by applying for the exemption under Section 2923.53 of the California Foreclosure Prevention Act (Civil Code Section 2923.52 Et Seq.) on June 12, 2009, Exhibit K of RFJN, prior to the creation and execution of the HAMP contract on July 22, 2009 in favor of Subject Property.

100.      Plaintiff sent Nationstar a letter inquiring the status of her loan modification on July 26, 2009, Exhibit E of RFJN. Plaintiff was under the understanding that her loan modification request was incomplete and needed more additional information by the loan modification department in Nationstar and by FANNIE MAE. However, on the other hand, Nationstar was preparing for documents and things in preparation for the expedition of foreclosing Subject Property.

101.      In Exhibit K of RFJN, the application was received by the Department of Corporations on **June 12, 2009.** It stated that the comprehensive loan modification program was implemented on **May 28, 2009.** In Exhibit L of RFJN is the Temporary Order Exempting Mortgage Loan Servicer from Civil Code Section 2923.52 was isued on **June 15, 2009.** In Exhibit M of RFJN is the Final Order Exempting Mortgage Loan Service From Civil Code Section 2923.52 was issued on **July 1, 2009.** In Exhbit A of RFJN, Jamal from Nationstar stated that the loan modification package under the HAMP program in favor of Subject Property was sent to Plaintiff on **July 14, 2009.** In Exhibit A of RFJN, Jamal from Nationstar confirmed that the HAMP contract was created and executed on **July 22, 2009** at 4004 W. 5th Street, #201 for Subject Property located at 4004 W.5th Street, #201, Santa Ana,CA 92703 USA.

102.      Plaintiff is alleging that Nationstar breached the anticipatory contract when they seek for the exemption under section 2923.53 of the California Foreclosure Prevention Action (Civil Code Section 2923.52 et seq.) on June 12, 2009 in anticipating of breaching the HAMP contract to be created and executed on July 22, 2009 in favor of Subject Property.

*28*

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

103.    Plaintiff alleges that Nationstar was the loan servicer for Subject Property whose loan was guaranteed by FANNIE MAE.  Plaintiff alleges that FANNIE MAE breached the anticipatory contract in that the creation, execution, and repudiation of the HAMP contract cannot be accomplished without the approval of FANNIE MAE.

104.    As a proximate result of each of the named Defendant breaches, Plaintiff has suffered, and will continue to suffer, consequential damages in an amount according to proof at trial, but not less than USD1,000,000.00.

### THIRD  CAUSE OF ACTION
### (Breach Of Oral Contract)
### (Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), DOES 1 THROUGH 10)

105.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106.    Under California law contracts,  "An implied contract is one, the existence and terms of which are manifested by conduct." Cal.Civ.Code § 1621.

Plaintiff is alleging that there existed a HAMP contract in favor of Subject Property which was manifested by the conducts and practices from the loan modification department in Nationstar and from Nationstar.  Plaintiff is alleging that the HAMP contract in favor of Subject Property was created and executed on July 22, 2009 at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA for subject property located at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA.

107.    Section 1698 of the California Civil Code provides, in part, as follows: (b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties.

Plaintiff is alleging that Nationstar executed the contract on behalf of all parties to the contract.  Plaintiff was one of the party to the contract.  Jamal from Nationstar confirmed orally that the HAMP contract in favor of Subject Property was executed by all parties to the contract, Nationstar, FANNIE MAE, and Plaintiff, on July 22, 2009 at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA for Subject Property located at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA, Exhibit A of RFJN.

108.    Plaintiff is alleging that Nationstar and FANNIE MAE on their own accord breached the oral contract.  Plaintiff alleges that Nationstar and FANNIE MAE breached the contract when they  failed to allow Plaintiff the opportunity to perform

*29*

the contract. Plaintiff alleges that Nationstar and FANNIE MAE made it impossible for Plaintiff to perform the contract and thus they breached the contract.

109.     As a proximate result of each of the named Defendant breaches, Plaintiff has suffered, and will continue to suffer, consequential damages in an amount according to proof at trial, but not less than USD1,000,000.00.

## FOURTH CAUSE OF ACTION
### (Breach Of HAMP Contract)
### (Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), DOES 1 THROUGH 10)

110.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

111.     Plaintiff is informed and believes and therefore alleges that Nationstar entered into a Servicer Participation Agreement ("SPA") with FANNIE MAE (acting as an agent of the Federal Government holding the title as HAMP Administrator). Pursuant to the SPA, Nationstar and FANNIE MAE agreed to allow Plaintiff the opportunity to perform her duties in the HAMP contract as Plaintiff is the third party beneficiary to this SPA.

112.     Plaintiff alleges that Nationstar and FANNE MAE created and executed the HAMP contract on behalf of all parties to the contract and then repudiated the contract on their own accord. Plaintiff is the third party beneficiary to this contract. Plaintiff was not given the opportunity to perform the duties in the contract.

113.     Plaintiff alleges that Nationstar and FANNIE MAE breached the SPA and HAMP in which Plaintiff was the third party beneficiary by making it impossible for Plaintiff to perform the HAMP contract.

114.     As a proximate result of each of the named Defendant breaches, Plaintiff has suffered, and will continue to suffer, consequential damages in an amount according to proof at trial, but not less than USD1,000,000.00.

## FIFTH CAUSE OF ACTION
### (Breach Of The Third-Party Beneficiary Contract)
### (Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), DOES 1 THROUGH 10)

115.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

*30*

116.     Plaintiff is informed and believes and therefore alleges that according to the Servicer Participation Agreement ("SPA") (Italics added):

*Servicer shall perform the Services for all mortgage loans it services, whether it services such mortgage loans for its own account or for the account of another party, including any holders of mortgage-backed securities (each such other party, an "Investor").   Servicer shall use reasonable efforts to remove all prohibitions or impediments to its authority, and use reasonable efforts to obtain all third party consensus and waivers that are required, by contract or law, in order to effectuate any modification of a mortgage loan under the Program.*

117.     Plaintiff is alleging that Nationstar and FANNIE MAE breached the SPA and HAMP in which Plaintiff was the third party beneficiary to this agreement.

118.     Plaintiff is alleging that Nationstar and FANNIE MAE did not obtain any consensus and/or waivers from Plaintiff prior to create, execute, and then repuditate the HAMP contract in favor of Subject Property on their own accord.

119.     Plaintiff is alleging that Nationstar and FANNIE MAE had gone to great lengths and strengths to make it impossible for Plaintiff to perform her duties in the HAMP contract which was created and executed on July 22, 2009 at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA for Subject Property located at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA.

120.     Plaintiff is alleging that Nationstar and FANNIE MAE did not obtain any consensus and/or waivers from Plaintiff to sell Subject Property.

121.     As a proximate result of each of the named Defendant breaches, Plaintiff has suffered, and will continue to suffer, consequential damages in an amount according to proof at trial, but not less than USD1,000,000.00.

### SIXTH CAUSE OF ACTION
### (Wrongful Foreclosure)
**(Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation("Quality"), GMAC Mortgage Corporation DBA Ditech.com ("Ditech"), DOES 1 THROUGH 10)**

122.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

123.     Plaintiff alleges that there was a meeting of the minds among each of the named

*31*

Defendants who took active participation either jointly and/or severally in breaching the original contract causing the vicious malicious wrongful fraudulent foreclosure of Subject Property.

124.    Plaintiff alleges that each of the named Defendants breached the original contract. None of the named Defendants had standing, jurisdiction, and/or authorities to foreclose Subject Property. Thus, the Subject Property was wrongful fraudulently foreclosed.

125.    Plaintiff alleges that each of the named Defendants collectively, cohesively, and co-operatively either jointly and/or severally breached the following specific terms and conditions clearly stated in the orginal contract, Exhibit B in RFJN. Thus, Plaintiff alleges that none of the named Defendants had standing, jurisdictions, and/or authorities to foreclose Subject Property as their conducts and practices were contrary to the terms and conditions of the original contract, Exhibit B of RFJN. Plaintiff alleges that each of the named Defendants was prohibited from invoking the power of sale provision of the original DOT, Exhibit B of RFJN. Plaintiff alleges that the foreclosure of subject property was wrongful and fraudulent.

a.    The DOT , Exhibit B of RFJN, clearly specified how and the priority of the payments from Plaintiff are to be applied against the the DOT and the Note.

b.    The DOT, Exhibit B of RFJN, clearly specified that the DOT secures to lender all renewals, extensions, and modification of the Note.

c.    The DOT, Exhibit B of RFJN, clearly specified that the loan means the debt evidenced by the Note. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note. Borrower shall pay to Lender payments due under the Note until the Note is paid in full.

d.    The DOT, Exhibit B of RFJN, clearly specified that all notices in connection with this DOT must be in writting.

e.    The DOT, Exhibit B of RFJN, clearly specified that Lender and only Lender can execute and acknowledge the substitution of trustee and such execution and acknowledgement must be recorded in the Orange County Recorder Office in Santa Ana,CA.

f.    The DOT, Exhibit B of RFJN, MERS was named as "Beneficiary" who only holds legal title as nominee for Lender and Lender's successors and assigns. Ditech was named as Lender. MERS can only exercise the power of sale if requested and approved by Ditech and Ditech's successors and assigns.

126.    Plaintiff is informed and believes and thereon alleges that after the orgination and funding of her loan, it was sold or transferred to investors or other entities and that

///

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

none of the named Defendants own the loans or the corresponding Notes at the time of the foreclosure sale. The orginal DOT , Exhibit B of RFJN, clearly specified that the loan means the debt evidenced by the Note. Plaintiff is alleging that each of the named Defendants lack standing, jurisdictions, and/or authorities to foreclose Subject Property as none of the name Defendants owns the loans or the corresponding Notes at the time of the foreclosure. The foreclosure was wrong and fraudulent.

127.    Plaintiff further alleges that each of the named Defendants lack the  standing to enforce the terms and conditions of the original contract without presenting the modification of the Note.   At the same time, Plaintiff alleges that the Note has already paid in full.   Thus, the foreclosure of Subject Property was wrongful and fraudulent.

128.    Plaintiff alleges that each of the named Defendants was prohibited from invoking the power of sale provision of the original DOT, Exhibit B of RFJN as the Subject Property no longer secured the debt allegedly owed to each of the named Defendants.

129.    Plaintiff alleges that MERS caused the wrongful fraudulent foreclosure of Subject Property in that they accepted and recorded an invalid and incomplete Assignment Deed of Trust to Nationstar.

130.    Plaintiff alleges that the Assignment Deed of Trust to Nationstar is invalid and void ab initio.  Plaintiff alleges that Nationstar had no standing , jurisdictions, and/or authorities to act as Beneficiary and invoke the power of sale against Subject Property. Thus, Plaintiff alleges that Nationstar wrongfully fraudulently foreclosed Subject Property.

131.    Plaintiff alleges that the declaration of the NOD and the declaration in the NOD pursuant to Section 2923.5, Exhibit C of RFJN by Quality are invalid, false, and fraudulent. Thus, Plaintiff alleges that Quality  wrongfully fraudulently foreclosed Subject Property.

132.    Plaintiff alleges that Quality  had no standing, jurisdictions, and/or authorities to foreclose Subject Property as they are unknown stranger to the DOT, Exhibit B of RFJN. Quality was not lawfully substituted as Trustee. Thus, Plaintiff alleges that the following documents created and executed by Quality are invalid and void ab initio: The NOD, Exhibit C of RFJN;  The Notice of Trustee's Sale (NOTS), Exhbit G of RFJN; and The publication of the Notice of Trustee's Sale in the Orange County Reporter , Exhibit H of RFJN. Thus, Plaintiff alleges that Quality  wrongfully fraudulently foreclosed Subject Property.

133.    ,  Plaintiff alleges that MERS allowed Nationstar and Quality who were unknown

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

strangers to the DOT, Exhibit B of RFJN to foreclose Subject Property.  Thus, Plaintiff alleges that MERS  wrongfully fraudulently foreclosed Subject Property.

134.    Plaintiff alleges that Ditech allowed Quality who is an unknown stranger to the DOT, Exhibit B of RFJN to foreclose Subject Property.  Thus, Plaintiff alleges that Ditech wrongfully fraudulently foreclosed Subject Property.

135.    Plaintiff alleges that Nationstar and FANNIE MAE breached the SPA and HAMP in which Plaintiff was the third party beneficiary.   Thus, Plaintiff alleges that Nationstar and FANNIE MAE wrongfully fraudulently foreclosed Subject Property.

136.    Plaintiff alleges that the terms and conditions in the HAMP contract  in favor of Subject Property  would not allowed Nationstar and FANNIE MAE to invoke the power of sales  upon repudiating the contract on their own accord.  Thus, Plaintiff alleges that Nationstar and FANNIE MAE wrongfully fraudulently foreclosed Subject Property.

137.    Plaintiff alleges that the foreclosure of Subject Property was wrongful and fraudulent in that the foreclosure of Subject Property was based invalid assignments, power of sales, power of attorneys, and recorded documents.

138.    Plaintiff alleges  that the vicious malicious wrongful fraudulent foreclosure of Subject Property from each of the named Defendants either jointly and/or severally has prevented Plaintiff from any possibility of persuing and collecting from the  named Defendants in the case number 05CC08432 consolidated with 07CC00188 at the Superior Court Of The State Of California In The County Of Orange, Central Justice Center.

139.    As a proximate result of each of the named Defendant breaches, Plaintiff has suffered, and will continue to suffer, consequential damages in an amount according to proof at trial, but not less than USD1,000,000.00.

### SEVENTH CAUSE OF ACTION
### (Quiet Title)
**(Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation ("Quality"), GMAC Mortgage Corporation DBA Ditech.com ("Ditech"), All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiff's Title Or Any Cloud On Plaintiff's Title Thereto and DOES 1 THROUGH 10)**

34

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

140.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

141.     Plaintiff is the legal owner of the Subject Property with the assessor's parcel number as 938-69-041 and the physical location located at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA.

142.     Plaintiff seeks to quiet title against each of the named Defendants and anyone else claiming interest in the property.

143.     FANNIE MAE and any successors or assignees have no right to title or interest in the property and no right to entertain any rights of ownership including rights of possessions.

144.     Plaintiff seeks to quiet title as of 08/30/2010.  Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that Defendants and each of them be declared to have no interests estate, right, title or interst in the Subject  Property and that Defendants, their agents  and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property.

145.     As each of the named Defendants did not have legal ownership or interest in the Subject Property on the date of foreclosure, allegedly obtained the Subject Property through fraud and wrongful conducts, and failed to adhere to the strict statutory, HAMP guidelines, and SPA as Plaintiff was the  third party Beneficiary to effectuate the foreclosure sale of the Subject Property, the foreclosure sale was void and invalid. Therefore, the Subject Property is still Plaintiff's property.

146.     Accordingly, the Court should  rule that the Subject Property remains Plaintiff's name and award consequential damages as proven at trial, but not less than USD1,000,000.00

### EIGHTH  CAUSE OF ACTION
#### (Slander Of Title)
**(Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation ("Quality"), GMAC Mortgage Corporation DBA Ditech.com ("Ditech"), and DOES 1 THROUGH 10)**

147.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

///

35

148.     Quality falsely claimed and acted as the duly appointed Trustee and/or the agent of the Beneficiary of the Deed of Trust, wrongfully and without privlege, caused the NOD, NOTS , and the publications of NOTS in the Orange County Reporter to be recorded against the Subject Property.

149.     None of the named Defendants , whether jointly and/or severally, is a trustee, beneficiary or assignee of any beneficiary of any Deed of Trust recorded against the Subject Property. Accordingly, they wrongfully caused the recording of the Notice of Default, Assignment of Deed of Trusts, Notices of Trustee's Sales, the publications of the Notices of Trustee's Sales, and Trustee's Deed Upon Sale against the Subject Property.

150.     None of the named Defendants had standings, jurisdictions, and/or authorities to invoke the power of sale in the DOT against Subject Property.

151.     None of the named Defendants can present the unbroken chain of properly executed, acknowledged, and recorded assignments, power of sales , power of attorneys, and documents causing the foreclosure of Subject Property.

152.     By performing the acts described above, Defendants slandered Plaintiff's title to the Subject Property.

153.     In that the conduct and acts of Defendants violated, among others, California Civil Code seciton 2924 (a)(1), such conduct and acts were not privileged.

154.     The wrongful conducts and practices of each of the named Defendants caused Plaintiff to suffer damages in an amount to be proven at trial, but not less than USD1,000,000.00.

## NINTH CAUSE OF ACTION
**(Cancellation Of Instruments – NOD, SOT, Assignments Of DOTs, NOTS, Publications of NOTS, and TDUS)**
**(Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation ("Quality"), GMAC Mortgage Corporation DBA Ditech.com ("Ditech"), DOES 1 THROUGH 10)**

155.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

156.     If the wrongfully recorded NOD, Assignments of DOTs, NOTS, publications of

36

the NOTS, and TDUS instruments are left outstanding, Plaintiff will continue to suffer loss and damages.

157.   Plaintiff therefore seeks cancellation of the following instruments:
    a.   The Notice of Default ("NOD")
    b.   The Substitution of Trustee ("SOT")
    c.   The Assignments of Deed of Trust to Nationstar Mortgage, LLC
    d.   The Assignments of Deed of Trust to FANNIE MAE
    e.   The Notice of Trustee Sale ("NOTS")
    f.   The publications of the Notice of Trustee Sales in the Orange County Reporter
    g.   The Trustee Deed Upon Sale ("TDUS")
    h.   and any and all instructions that are Unknown to Plaintiff, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiff's Title Or Any Cloud On Plaintiff's Title Thereto and DOES 1 THROUGH 10

158.   Plaintiff is informed and believes and therefore alleges that each of the named Defendants acted willfully and with a conscious disregard for Plaintiff's rights and with a specific intent to defraud and injure Plaintiff, by causing the NOD, the SOT, the Assignments of DOTs, the NOTS, the publications of the NOTS, and the TDUS instruments to be prepared and recorded without a factual or legal basis for doing so.

159.   Upon information and belief, these acts by each of the named Defendants constitute fraud, oppression and malice under Cal. Civil Code §3294. Defendants acted with a conscious disregard for the requirements to conduct a non-judicial foreclosure sale under civil code 2924 et sec knowing that they had taken a calculated risk that Plaintiff would not contest.

160.   By virtue of Defendants' willful and wrongful conducts and practices as herein alleged above, Plaintiff is entitled to general and special damages according to proof at trial, but not less than USD1,000,000.00 , as well as punitive and exemplary damages but not less than USD1,000,000.00.

### TENTH  CAUSE OF ACTION
#### (Promissory Estoppel)
**(Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation ("Quality"), GMAC Mortgage Corporation DBA Ditech.com ("Ditech"), DOES 1 THROUGH 10)**

161.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

162.     Plaintiff alleges that she was under the understanding that her loan modification request was incomplete and needed additional information by Nationstar and by FANNIE MAE. Plaintiff even sent a letter to Nationstar inquiring the status on July 26, 2009, Exhibit E of RFJN.

163.     However , on the other, Plaintiff alleges that Nationstar was preparing for documents and things in anticipating of repudiating the HAMP contract in favor of Subject Property before the performance was due by all parties to the contract, Nationstar, FANNIE MAE, and Plaintiff. Specifically, Plaintiff alleges that the first step needed by Nationstar and FANNIE MAE in order to repudiate the HAMP contract was to secure the approval order from the Department of Corporations for the exemption pursuant Civil Code Section 2923.54. Plaintiff alleges that Nationstar and FANNIE MAE secured this final order approval on July 01, 2009.

164.     Plaintiff alleges that she was justifiably relied on the understandings from FANNIE MAE through Nationstar and from Nationstar. Plaintiff alleges that Nationstar and FANNIE MAE were estopped from taking any actions that were contrary to the oral communications and understandings made to Plaintiff.

165.     Pursuant to the SPA and HAMP, Nationstar and FANNIE MAE agreed to allow Plaintiff to perform her duties in the HAMP contract. Plaintiff alleges that Nationstar and FANNIE MAE, created and executed the HAMP contract on behalf of all parties to the contract, and then repudiated the contract on July 22, 2009 at 4004 W. 5th Street, #201, Santa Ana,CA 92703 USA for Subject Property located at  4004 W. 5th Street, #201, Santa Ana,CA 92703 USA on their own accord for all parties to the contract. Plaintiff was the third party Beneficiary to the contract.

166.     Plaintiff alleges that Nationstar and FANNIE MAE breached the SPA and the HAMP  of which Plaintiff is the third party beneficiary. Accordingly, Nationstar and FANNIE MAE should be estopped from claiming any benefits from the foreclosure due to its violation of the SPA and HAMP.

167.     As a result of the Defendants' false conducts, practices ,and misrepresentations, Plaintiff suffered special and general damages in an amount according to proof at trial, but not less than USD1,000,000.00.

///
///
///
///

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

## ELEVENTH CAUSE OF ACTION
### (Negligence)
### (Against GMAC Mortgage Corporation DBA Ditech.com ("Ditech"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation ("Quality") ,Summergreen Homeowners Association ("Summergreen HOA"), Huntington West Properties, Inc. ("Huntington West"), DOES 1 THROUGH 10)

168.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

169.    Plaintiff alleges that Ditech was named as Lender in the DOT, Exhibit B of RFJN.  Plaintiff alleges that Ditech had a duty to exercise reasonable care and skill to send Plaintiff notices in writing in regards to the status, actions, and all relevant information in connection with the DOT.  Plaintiff alleges that Ditech had failed to do so.

170.    Plaintiff alleges that Ditech had a duty to exercise reasonable care and skill to ensure and refrain from taking any actions and/or allow any actions taken against Plaintiff that is contrary to the DOT, Exhibit B in RFJN.  Plaintiff alleges that Ditech allowed unknown strangers to the DOT, Nationstar and Quality, to foreclose Subject Property.  Thus, Plaintiff alleges that Ditech breached their duty of care and skill to Plaintiff.

171.    Plaintiff alleges that MERS had a duty to exercise reasonable care and skill to ensure and refrain from taking any actions and/or allow any actions taken against Plaintiff that is contrary to the DOT, Exhibit B in RFJN.

172.    Plaintiff alleges that MERS was named as Beneficiary solely as nominee for Lender and Lender's successors and assigns.  Ditech was named as Lender. MERS can only act upon the request and approval of Ditech and Ditech's successors and assigns. Plaintiff alleges that MERS never sent Plaintiff any notices as to Ditech's successors and assigns. Plaintiff alleges that MERS allowed Nationstar and Quality who were an unknown strangers to the DOT to foreclosure of Subject Property. Thus, Plaintiff alleges that MERS breached their duty of care and skill to Plaintiff.

173.    Plaintiff alleges that MERS had a duty to exercise reasonable care and skill to send Plaintiff notices in writing in regards to the status, actions, and all relevant information in connection with the DOT.    Plaintiff alleges that MERS had failed to do so. Thus, Plaintiff alleges that MERS breached their duty of care and skill to Plaintiff.

174.    Plaintiff alleges that Quality claimed to be the duly appointed trustee in the

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

DOT against Subject Property, but without the legal authority to do so, had a duty to exercise reasonable care and skill to act as an impartial third party in this transaction and overstepped its boundaries as a trustee and "attorney in fact."

175.    Plaintiff alleges that Quality had a duty to exercise reasonable care and skill to follow California law with regard to foreclosures, avoid any conflicts of interest in exercising their duties, and refrain from taking any action against Plaintiff that it did not have the legal authority to do so.

176.    Plaintiff alleges that Quality breached their duty of care and skill to Plaintiff by executing and recording the following foreclosure documents and caused the wrongful fraudulent foreclosure of Subject Property without the legal authorhity to do so: The NOD, the SOT, the NOTS, the publications of NOTS, and TDUS.

177.    Plaintiff alleges Summergreen HOA and Huntington West had a duty of reasonable care and skill to protect the operations of peace and welfare of the Summergreen HOA and Members of the Summergreen HOA pursuant to the CC & R for the Summergreen HOA.  Plaintiff was a paid Member of the Summergreen HOA.

178.    Plaintiff alleges that Summergreen HOA and Huntington West breached their duty of care and skill to Plaintiff in that they failed to inform Nationstar of the pending case number 05CC08432 consolidated with 07CC00188 at the Superior Court Of The State Of California In The County Of Orange, Central Justice Center.

179.    Plaintiff alleges that Summergreen HOA and Huntington West breached their duty of care and skill to Plaintiff in that they failed to place prohibition and restriction against Subject Property and Summergreen HOA.  Summergreen HOA and Huntington West failed to inform Nationstar of such prohibition and restriction against Subject Property and Summergreen HOA in order to interfere and interrupt any possibility of Plaintiff from ever persuing and collecting against the Subject Property and/or the Summergreen HOA.

180.    As a direct and proximate result of the negligence and carelessness of Defendants as set forth above, Plaintiff suffered, and continues to suffer, and general and special damages in an amount to be determined at trial, but not less than USD1,000,000.00.

### TWELTHTH CAUSE OF ACTION
#### (Negligent Misrepresentation)
**(Against GMAC Mortgage Corporation DBA Ditech.com ("Ditech"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation ("Quality"), Summergreen Homeowners Association ("Summergreen HOA"),**

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

**Huntington West Properties, Inc. ("Huntington West"), DOES 1 THROUGH 10)**

181.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

182.     Plaintiff alleges that Ditech represented to Plaintiff that Ditech was the Lender of Subject Property.  Ditech represented to Plaintiff that only Ditech can substitute trustee in the DOT for Subject Property.  Ditech represented to Plaintiff that only Ditech and Ditech's successors and assigns can request and approve MERS to exercise the power of Plaintiff in the DOT.

183.     Plaintiff alleges that Ditech never sent  Plaintiff any notices regarding Quality as the new trustee for Subject Property.  Plaintiff further alleges that the Orange County Recorder Office in Santa Ana,CA does not have any records from Ditech substituting Quality as the new trustee in the DOT  for Subject Property.

184.     However, Plaintiff alleges Ditech allowed two unknown strangers to the DOT, Nationstar and Quality, to foreclose Subject Property.

185.     Plaintiff alleges that MERS represented to Plaintiff that MERS holds only legal title acting solely  as nominee for Ditech and Ditech's successors and assigns, and can only act upon the request and approval of Ditech and Ditech's successors and assigns.

186.     However, Plaintiff alleges that MERS allowed two unknown strangers to the DOT,  Nationstar and Quality , to foreclose Subject Property.

187.     Quality represented to Plaintiff that they are the duly appointed trustee in the DOT against Subject Property.   Plaintiff alleges that there are no records at the Orange County Recorder Office in Santa Ana,CA confirming this claim.

188.     Plaintiff alleges that Summergreen HOA and Huntington West represented to Plaintiff that they had a duty of reasonable care and skill to protect the operation of peace and general welfare of the Summergreen HOA and Members of Summergreen HOA pursuant to the CC& R for Summergreen HOA.  Plaintiff was the paid Member of the Summergreen HOA.

189.     However, Plaintiff alleges that Summergreen HOA and Huntington West breached their duties of care and skill to Plaintiff by failing to inform Nationstar of the pending case against Summergreen HOA, failing to place prohibition and restriction against Subject Property and the Association, and failing to inform Nationstar of such prohibition and restriction  in order to interfere and interrupt any possibility of Plaintiff from ever persuing and collecting against Subject Property and Summergreen HOA. . .

41

190.    Plaintiff alleges that each of the named Defendants' representations to Plainitff were false.  Plaintiff alleges that when each of the named Defendants' representations to Plaintiff, they knew that they made false representations to Plaintiff.  Plaintiff relied on these representations.  Plaintiff reasonably and justifiably relied on the representations to her detriment.

191.    As a proximate result of each of the named Defendants' negligent conduct, Plaintiff has suffered, and will continue to suffer, general and special damages in an amount according to proof at trial, but not less than USD1,000,000.000.

## THIRTEENTH CAUSE OF ACTION
### (Breach Of The Covenant Of Good Faith and Fair Dealing)
### (Against GMAC Mortgage Corporation DBA Ditech.com ("Ditech"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation ("Quality"), Summergreen Homeowners Association ("Summergreen HOA"), Huntington West Properties, Inc. ("Huntington West"), DOES 1 THROUGH 10)

192.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

193.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and it enforcement.  The implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing , destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

194.    Plaintiff alleges that  Ditech had secured a strong position in the DOT, Exhibit B of RFJN.  Plainitiff alleges that only Ditech can substitute the trustee in the DOT.  Plaintiff alleges that only Ditech and Ditech's successors and assigns can request and approve MERS to exercise the terms and conditions in the contract against Subject Property.

195.    Plaintiff alleges that Ditech breached the Covenant Of Good Faith and Fair Dealing when they failed to send Plaintiff notices in writting in regards to the status, actions, and all relevant information in connection with the DOT.  At the same time, Plaintiff also alleges that Ditech failed to refrain from taking actions and/or allow actions taken against Plaintiff that is contrary to the DOT.  Thus, Plaintiff alleges that Ditech breached the Covenant Of Good Faith and Fair Dealing when they allowed unknown strangers to the DOT to foreclose Subject Property.

196.     Plaintiff alleges that MERS only hold a legal title solely as a nominee for Lender and Lender's successors and assigns. Plaintiff alleges that MERS had no interest in Subject Property and cannot act contrary to the specific terms and conditions of the contract. Thus, Plaintiff alleges that MERS breached the Covenant Of Good Faith and Fair Dealing when they allowed unknown strangers to the DOT to foreclose Subject Property.

197.     Plaintiff alleges that Quality is an unknown stranger to the DOT. Plaintiff alleges that the Orange County Recorder Office in Santa Ana,CA does not have records that Quality is the trustee in the DOT against Subject Property. Plaintiff alleges that Quality breached the Covenant Of Good Faith and Fair Dealing when they exercised the terms and conditions in the DOT in which they have no legal authorities to do so.

198.     Plaintiff alleges that Summergreen HOA and Huntington West breached the Covenant Of Good Faith and Fair Dealing when they failed to protect the operation of peace and general welfare of the Summergreen HOA and its Members pursuant to the CC & R for Summergreen HOA in which Plaintiff was a paid Member. In particular, Plaintiff alleges that Summergeen HOA and Huntington West failed to inform Nationstar of the pending case against Summergreen HOA, failed to place prohibition and restriction against Subject Property and Summergreen HOA, and failed to inform Nationstar of such prohibition and restrictions in order to interfere and interrupt the pending case against Summergreen HOA.

199.     As a proximate result of each of the named Defendant breaches, Plaintiff has suffered, and will continue to suffer, consequential damages in an amount according to proof at trial, but not less than USD1,000,000.00.

### FOURTEENTH CAUSE OF ACTION
### (Fraud)
### (Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation ("Quality"), GMAC Mortgage Corporation DBA Ditech.com ("Ditech"), DOES 1 THROUGH 10)

200.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

201.     Plaintiff alleges that Nationstar and FANNIE MAE fraudulently represented to Plaintiff that her loan modification request was incomplete and needed further information. In particular, Nationstar informed Plaintiff that they will need to dispatch a local representative to assess the condition and value of Subject Property. This

43

particular local representative will also need to confirm that Plaintiff does indeed lives at the Subject Property. Plaintiff was waiting to hear from their local representative. Plaintiff sent the letter inquiring the status on July 26, 2009. Plaintiff followed up on the letter and was given more "run around."

202.    However, at the similar time frame, Nationstar received the final approval to proceed with the sale of Subject Property on July 01, 2009 from the Department of Corporations. Plaintiff alleges that upon receipt of this final approval on July 1, 2009, Nationstar and FANNIE MAE created, executed, and then repudiated the HAMP contract in favor of Subject Property on their own accord on July 22, 2009 without obtaining any consensus and/or waivers from Plaintiff.

203.    Plaintiff alleges that Nationstar and FANNIE MAE failed to disclose to Plaintiff that they intend to foreclose Subject Property regardless and at all costs.

204.    According to Exhibit A of RFJN, Plaintiff alleges that their patterns of conducts and practices are common and acceptable within Nationstar and continue to this date. Jamal from Nationstar said that they do it ALL THE TIME and there is nothing wrong with it. Plaintiff alleges that their conducts and practices commonly accepted within Nationstar are deceptive, fraudulent, and unfair to borrowers such Plaintiff.

205.    As a proximate result of Nationstar and FANNIE MAE 's fraudulent misrepresentations , Plaintiff lost her home and suffered great emotional distress.

206.    Plaintiff alleges that Ditech represented to Plaintiff the only Ditech can substitute trustee in the DOT. Ditech represented to Plaintiff that the power of sales can only be exercise by MERS at the their request and approval. However, Plaintiff alleges that Ditech allowed the Subject Property to be fraudulently foreclosed by unknown strangers to the DOT. Plaintiff alleges that as a result of Ditech's fraudulent misrepresentations, Plaintiff lost her home and suffered great emotional distress.

207.    Plaintiff alleges that MERS only holds legal title solely as a nominee for Lender and Lender's successors and assigns. Plaintiff alleges that MERS had no interest in Subject Property and cannot act contrary to the specific terms and conditions to the contract. Plaintiff alleges that MERS cannot exercise the power of sale against Subject Property without the request and approval of Ditech and Ditech's successors and assigns. Plaintiff alleges that MERS never sent Plaintiff any form of notices regarding Ditech's successors and assigns. Plaintiff is alleging that MERS allowed the Subject Property to be fraudulently foreclosed by unknown strangers to the DOT. Plaintiff alleges that as a result of MERS's fraudulent misrepresentations, Plaintiff lost her home and suffered great emotional distress.

208.    Quality represented to Plaintiff that they are the duly appointed trustee in the DOT for Subject Property. However, Plaintiff alleges that neither Ditech nor MERS sent Plaintiff notices confirming this fact. Furthermore, the Orange County Reporter Office in Santa Ana,CA does not have record confirming this fact. Plaintiff is alleging that Quality wrongfully and fraudulently foreclosed Subject Property without the authorities to do so. Plaintiff alleges that as a result of Quality's fraudulent misrepresentations, Plaintiff lost her home and suffered great emotional distress.

209.    Furthermore, Plaintiff alleges that each of the named Defendants wrongfully and fraudulently foreclosed the Subject Property based on invalid Note, assignments of Deed of Trusts, substitution of trustee,and recorded documents : NOD, NOTS, and publications of NOTS.

210.    Accordingly, as a result of each of the named Defendants' fraudulent conducts and practices, Plaintiff has suffered, and will continue to suffer, compensatory, general and special damages in an amount to proof, but not less than USD1,000,000.00. Additionally, each of the named Defendants acted with malice, fraud and/or oppression and, thus, Plaintiff is entitled to an award of exemplary and punitives damages but not less than USD1,000,000.00.

## FIFTEENTH CAUSE OF ACTION
### (Violation Of The Rosenthal Fair Debt Collection Practices Act)
### (Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"),Quality Loan Service Corporation ("Quality"),DOES 1 THROUGH 10)

211.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

212.    Plaintiff is a consumer and the obligation between the parties a debt owed pursuant to the subject notes and trust deed and is a consumer debt pursuant to the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act")

213.    Nationstar is the servicing company that is in the business of collecting and processing mortgage payments.

214.    Quality claimed to be the duly appointed trustee in the DOT against Subject Property.

215.    Nationstar and Quality made false misrepresentations in connection with the debt secured by the DOT, Exhibit B of RFJN against Subject Property.   Plaintiff is

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

alleging that the debts secured by the DOT, Exhibit B of RFJN was modified when it securitized. Plaintiff also alleges that the Note was paid in full when it was securitized. Plaintiff alleges that Nationstar and Quality attempted to collect the debts from Plaintiff secured by the original DOT, Exhibit B of RFJN that already paid in full.

216.    At the same, Plaintiff also alleges that the loan that was purportedly secured the debts evidenced by the Note in the DOT, Exhibit B of RFJN was extinguished by the foreclosure of the Subject Property. This loan amount plus other foreclosure fees, etc was paid by the third party, the United States Treasury Department.

217.    Plaintiff alleges that FANNIE MAE is attempting to collect the loan amount secured by the purported debts evidenced by the Note in the DOT, Exhibit B of RFJN plus other additional foreclosure fees, etc. from Plaintiff after it was already paid by the United States Treasury Department.

218.    As a proximate result of Nationstar, Quality Loan Service Corp. and FANNIE MAE 's violations of the Rosenthal Act, Plaintiff is entitled to actual and statutory damages, and such other relief as the court determines is due but not less than USD1,000,000.00.

## SIXTEENTH CAUSE OF ACTION
**(Unfair Practices Under California Business & Professions Code Section 17200, et seq.)**
**(Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation ("Quality"), GMAC Mortgage Corporation DBA Ditech.com ("Ditech"),DOES 1 THROUGH 10)**

219.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

220.    California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice..." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

221.    As more fully described above, Defendants' acts and practices are likely to deceive , constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

222.    Specifically , as fully set forth above, each of the Defendants engage in deceptive business conducts and practices with respect to mortgage loan servicing,

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

assignments of notes and deeds of trust, creating and recording invalid false documents, foreclosure of residential properties and related matters by, among other things,

a. Breaching the written contract;
b. Applying for the exemption pursuant to the Section 2923.53 of the California Foreclosure Prevention Action ( Civil Code Seciton 2923.52 et seq.) in order to expedite the sell of Subject Property in anticipating of repudiating the HAMP contract prior the creation , execution, and performance due in the contract by all parties to the contract;
c. Failing to send notices in writting in connection to the DOT;
d. Failing to send notices of their intent of modifying the original DOT;
e. Creating, executing, and repudiating the HAMP contract ;
f. Breaching the third- party Beneficiary contract;
g. executing and recording false and misleading assignments and documents;
h. executing and recording documents without the legal authority to do so;
i. Failing to record Powers of Attorney in connection with recorded  assignments and documents in violation of California Civil Code Section 2933;
g. Demanding and accepting payments of debts that were non-existent;
h. Acting as Beneficiaries and trustees without the legal authority to do so;
i. Failing to comply with California Civil Code Section 2923.5;
j. Failing to comply with the HAMP guidelines;
k. Failing to comply with the SPA and HAMP of which Plaintiff was the third party Beneficiary;
l. Other deceptive business practices

223.    Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein,  each of the Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of California Business and Professions Code Section 17200, et seq.

224.    Plaintiff alleges that Defendants' misconduct, as alleged herein, gave, and have given, Defendants an unfair competitive advantage over their competitors.  The scheme implemented by Defendants is designed to defraud California consumers such as Plaintiff and enrich the Defendants.

225.    The foregoing acts and practice have caused substantial harm to California consumers.

226.    Plaintiff alleges that as direct and proximate result of the aforementioned acts, Defendants have prospered and benfitted from Plaintiff by collecting mortgage payments and fees for foreclosure related services, and have been unjustly enriched

47

from their act of foreclosing on Plaintiff's home.

227.    By reason of the foregoing, Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff.  As a result of the aforementioned acts and conduct, Plaintiff lost money, jobs, businesses, property and suffered injury in fact, to Defendants' schemes.

228.    The harm to Plaintiff outweights the utility of Defendants' policy and practices. Consequently , their policy and practices constitute an unlawful business act or practice within the meaning of Business and Professions Code § 17200.

229.    Plaintiff is therefore entitled to injunctive relief and legal fees as available under the California Business and Professions Code Section 17200, et seq and related sections.

## SEVENTEENTH  CAUSE OF ACTION
### (Declaratory Relief)
**(Against Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("FANNIE MAE"), Mortgage Electronic Registration Systems, Inc ("MERS"), Quality Loan Service Corporation, GMAC Mortgage Corporation DBA Ditech.com ("Ditech"),DOES 1 THROUGH 10)**

230.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

231.    Each of the named Defendants has taken actions in violation of their statutory, legal and contractual duties.  Said actions have resulted in the wrongful and fraudulent foreclosure of the Subject Property.

232.    An actual dispute exists between Plaintiff and FANNIE MAE and DOES 1 through 10 as to the ownership of the Subject Property, and the validity, if any, and amount, if any, of the liens that were on the Subject Property prior to foreclosure.

233.    Due to the dispute as to the rights and interests of the parties to the Subject Property, Plaintiff requests that the Court declare the rights of the parties in this matter. Plaintiff requests that the Court enforce these rights with the issuance of injunctions or restraining orders as may be necessary to place the parties in their proper position with respect to their interests, if any, in the Subject Property.

///
///

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

### EIGHTEENTH  CAUSE OF ACTION
#### (Conspiracy To Obstruct Justice)
#### (Against Nationstar Mortgage ("Nationstar") , LLC, DOES 1 THROUGH 10)

234.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein

235.     In and around March 2011, Plaintiff was preparing to respond to Defendant Nationstar 's demurrur to Plaintiff's complaint.  Plaintiff discovered that Nationstar filed for the exemption pursuant to Section 2923.53 in order to expedite the sale of Subject Property at the Department of Corporations.

236.     Plaintiff contacted the Department of Corporations, visited the office, and inquired about obtaining the entire and complete files of the Department of Corporations files numbers 603H864, 603I243, and license number 9880602 and any documents and things relating to the Department of Corporations file numbers 603H864, 603I243, and license number 9880602.   These files pertain to Nationstar and Subject Property.  Plaintiff was informed that Rose Cala would be the main contact who can assist Plaintiff.  However, Rose Cala was on vacation  when Plaintiff was at the Department of Corporations in Los Angeles,CA. Plaintiff made arrangements and appointment with Rose Cala once she return to duty to obtain the entire and complete files.

237.     On March 03, 2011, Plaintiff had an appointment with Rose Cala to pick the copies of the files as requested.  However, upon appearing at the Department of Corporations, Plaintiff encountered problems of obtaining the entire and complete files. Plaintiff was asked to wait while Rose and her associates get the files.   Plaintiff waited for almost two hours and received incomplete files.

238.     Plaintiff served the first CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS AT TRIAL OR HEARING AND DECLARATION ("first subpoena")  to the Department of Corporations located at  320 W 4TH ST STE 750, LOS ANGELES CA  on APR 11 2011 3:11PM.

239.     In Exhibit P, the letter from the Department of Corporations to Plaintiff responding to the first subpoena.  The Department of Corporations objected to releasing the confidential records due to the fact that Nationstar objected to releasing the confidential records, Exhibit Qand R.

///
///

---

**49**

240.    However, at the same, the Department of Corporations further claimed that the subpoena was incomplete in that Plaintiff did not also subpoena the Department of Corporations the NOTICE TO CONSUMER OR EMPLOYEE AND OBJECTION. Upon this further claim, Plaintiff believed that if she had also subpoena the Department of Corporations the NOTICE TO CONSUMER OR EMPLOYEE AND OBJECTION, the Department of Corporations would release the confidential records.

241.    On May 18, 2009, Plaintiff subpoena the Department of Corporation located 1515 K Street, Ste 200, Sacramento, CA 95814 the NOTICE TO CONSUMER OR EMPLOYEE AND OBJECTION along with the revised CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS AT TRIAL OR HEARING AND DECLARATION ("second subpoena"), Exhibit S of RFJN.

242.    However, the Department of Corporations further objected to Plaintiff's second subpoena based on the exact same reasons as the first subpoena in that Nationstar objected to the release of the confidential records, Exhibit T.

243.    Plaintiff is informed and believes and therefore alleges that the confidential records are among the crucial documents and things in which would substantially prove to the Court of Plaintiff's claims that each of the named Defendants collectively cohesively and co-operatively jointly and/or severally with the meetings of the minds to viciously maliciously wrongfully fraudulently foreclose the Subject Property.

244.    Plaintiff alleges that Nationstar conspired to interfere and interrupt Plaintiff's investigations by objecting to the release of these confidential records pertaining to Plaintiff and Subject Property.

245.    Nationstar was made aware that the subpoenas seeking documents to support Plaintiff's litigation, Defendant Nationstar took actions to object to release these confidential documents clearly indicated that Defendants' vicious malicious conducts and practices were meant to frustrate, interfere, and obstruct Plaintiff's investigations. Clearly, this is the conspiracy to commit obstruction of justice by NATIONSTAR specifically in violation of 18 USC Section 1512 (b).

246.    As a proximate result of Nationstar conspiracy to obstruct justice, Plaintiff has suffered, and will continue to suffer, consequential damages in an amount according to proof at trial, but not less than USD1,000,000.00.

///
///
///

**50**

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

WHEREFORE, Plaintiff prays as follows:

AS TO ALL OF THE ABOVE CAUSES OF ACTIONS:

1. For a declaraton of the rights and duties of the parties, specifically that the foreclosure of the Subject Property was wrongful and fraudulent.
2. For a declaration that Plaintiff is the true and rightful owner of the Subject Property.
3. For the issuance of an Order cancelling the instruments: NOD, SOT, Assignment of DOTs, NOTS, publications of the NOTS, and the TDUS.
4. To vacate the TDUS.
5. To vacate and set aside the foreclosure sale.
6. To quiet title in favor of Plaintiff and against Defendants.
7. For compensatory, special and general damages in an amount according to proof at trial, but not less than USD1,000,000.00 against each of the named Defendants.
8. For compensatory, special , and general damages in an amount of USD1,000,000.00 against each named Defendants for viciously maliciously wrongful fraudulently foreclosed Subject Property in order to interfere and interrupt Plaintiff from any possibility of persuing and collecting from named Defendants in the case number 05CC08432 consolidated with 07CC00188 at the Superior Court Of The State Of California In The County Of Orange, Central Justice Center
9. For compensatory, special, and general damages in an amount of USD1,000,000.00 for damages that Plaintiff could have, would have, and/or should have collected from the named Defendants in the case number 05CC08432 consolidated with 07CC00188 at the Superior Court Of The State Of California In The County Of Orange, Central Justice Center against each of the named Defendants.
10. For damages in an amount according to proof at jury trial against all Defendants;
11. For punitive damages in an amount according to proof at jury trial against all Defendants;
12. For treble damages in an amount according to proof at jury trial against all Defendants;
13. For exemplary damages in an amount according to proof at jury trial against all Defendants;
14. For civil penalties pursuant to statutes, restitution, injunctive relief;
15. For interest on said sum at the legal rate according to proof at jury trial;
16. For reasonable attorney 's fees according to proof at jury trial;
17. For legal fees according to proof at jury trial;
18. For cost of suit herein incurred; and
19. For such other and further relief as the court may deem just and proper.

Executed on June _13_ 2011 in Santa Ana,CA .
///
///

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial;verification of Diem T Nguyen

## JURY DEMAND

Plaintiff demands a jury trial for all causes of action set forth herein.

June _13_ 2011                          DIEM T. NGUYEN, IN PRO SE

x _____
~~DIEM T. NGUYEN~~

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**53**

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial; verification of Diem T Nguyen

### DECLARATION OF DIEM T. NGUYEN

Plaintiff, DIEM T. NGUEN, hereby declares:

1. Exhibit X in RFJN is the USB.   In the USB is Exhibit A of RFJN, it is the consented recorded conversations between Jamal from Nationstar Mortgage, LLC and Plaintiff on March 15, 2010.

2. However, it was recorded in an old outdated almost dinosaur mp3 player in which it does not have the capability of self stamping date and time.

3. The recorded conversations in Exhibit A of RFJN is true to its original version and not edited as Plaintiff does not know nor have any capability to do so

4. EXHIBIT K-M in RFJN were given to Plaintiff by Rose Cala from the Department of Corporations located **320 W 4th St # 750 Los Angeles, CA 90013-2349 (213) 576-7500** on Wednesday, March 03, 2011.

5. Upon receipts of the EXHIBITS K-M in RFJN,  Plaintiff asked Rose what became of the missing pages and exhibits within this application.  Plaintiff did not receive Exhibits 1-5 within the application.  Plaintiff did not receive pages 3-5 within this application. Rose told Plaintiff that they are privileged information and are not made available to the public.  Plaintiff waited at  the Department of Corporations for almost two hours to be told that Plaintiff did not have the  right for the copies of the complete file.  Plaintiff did not all of a sudden show up by surprise and demand the documents. Plaintiff made appointments with Rose in advance and informed Rose of the reason for Plaintiff's request and needs of these documents.  Plaintiff waited for Rose to complete her research and contact Plaintiff to set up appointment to pick up the requested documents.  When Plaintiff appeared, she had to wait for almost two hours to receive incomplete documents and exhibits.  Plaintiff alleges that the Department of Corporations may have realized their errors of approving the applications when Plaintiff informed them of the reasonings of her needs and request for the copies of the entire and complete files.

6. Plaintiff properly subpoena the Department of Corporation, Exhibits S and T in RFJN . However, Plaintiff has been and continue to run into obstacles and hurdles of getting the entire and complete files pertaining to Subject Property and Nationstar from the Department of Corporations.

7. Plaintiff has visited the Orange County Recorder Office in Santa Ana,CA on several occasions.  Plaintiff had checked , double checked, and triple checked the assignments

---

**54**

and documents recorded in the Orange County Recorder Office in Santa Ana,CA in regards to the foreclosure of Subject Property.

8. Plaintiff can confirm that the Orange County Recorder Office in Santa Ana,CA does have a recorded copy of the Deed of Trust ("DOT"), Exhibit B of RFJN executed between Plaintiff and Ditech on 07/17/2006 which was recorded on 07/26/2006. In this DOT, it clearly stated the Ditech was named as Lender. It clearly stated that Executive Trustee Services , Inc was named as Trustee.

9. Plaintiff was unable to locate any execution, acknowledgement, and recordation of the substitution of trustee from Ditech to any other parties as trustee against Subject Property since the recordation of DOT on 07/26/2006, Exhibit B of RFJN at the Orange County Recorder Office in Santa Ana,CA.

10. In fact, Plaintiff can confirm that she was unable to locate any execution, acknowledgement, and recordation of substitution of trustee naming any other parties by any parties against Subject Property since the recordation of DOT on 07/26/2006, Exhibit B in RFJN at the Orange County Recorder Office in Santa Ana,CA against Subject Property.

Plaintiff, DIEM T. NGUYEN, declares under penalty of perjury that the above is true and correct.

June  13  2011                                    DIEM T. NGUYEN , IN PRO SE

                                                 x ___ DIEM T. NGUYEN

///
///
///
///
///
///
///
///
///
///

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial; verification of Diem T Nguyen

1
2
3
4
5                         VERIFICATION:
6
7    Plaintiff, DIEM T. NGUYEN, hereby verified as followed:
8
9    I have read the third amendment of the complaint and verified that I understand its contents.
10   I am informed and believe and on that ground allege that matters stated herein are true.
11
12   Plaintiff, DIEM T. NGUYEN, under penalty of perjury that under the laws of the State of
13   California that the foregoing is true and correct.
14
15   June 13 ,2011                              DIEM T. NGUYEN, IN PRO SE
16
17
18
19
20                                             x DIEM T. NGUYEN
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///
29   ///
30   ///
31   ///
32   ///
33   ///
34   ///
35   ///
36   ///
37   ///
38   ///
39   ///
40   ///
41   ///
42   ///
43   ///
44   ///
45   ///
46
47                              **56**

third amendment to complaints; declaration of Diem T. Nguyen; request for judicial notice; demand for jury trial; verification
of Diem T Nguyen