**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| | : | |
| RESIDENTIAL CAPITAL, LLC, *et. al.* | : | Chapter 11 |
| | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors, | : | |
| | | |

--------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| THE RESCAP BORROWER CLAIMS, | : | |
|     TRUST, | : | |
| | : | |
| Objector, | : | |
| | : | |
| - against - | : | |
| | : | |
| Richard D. Rode, | : | PRETRIAL ORDER |
| | : | (PROPOSED) |
| Claimant. | : | |
| | : | |

--------------------------------------------------------------x

The Trust and Claimant having conferred, and having conferred with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

## I.    NATURE OF THE CASE

### A.    Trust's Description of Nature of the Case

Richard D. Rode ("Claimant") obtained a loan from Southtrust Mortgage Corporation ("Southtrust") pursuant to the terms of a note dated March 18, 2003 in the principal amount of $265,175.00 (the "Note"). The Note was secured by a deed of trust (the "Deed of Trust" and, together with the Note, the "Mortgage Loan") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Southtrust and its successors and assigns. Residential Funding Corporation ("RFC"), one of the debtors in the above captioned chapter 11 cases (collectively, the "Debtors"), purchased the Mortgage Loan from Southtrust, and transferred its interest on or about June 1, 2003 to Deutsche Bank Trust Company Americas ("Deutsche Bank") as trustee in connection with the securitization of the Mortgage Loan. Debtor Homecomings Financial, LLC ("Homecomings"), began servicing the Mortgage Loan on or around April 18, 2003 until July 1, 2009. Debtor GMAC Mortgage, LLC ("GMACM") serviced the Mortgage Loan for Deutsche Bank from July 1, 2009 through February 16, 2013.

GMACM approved Claimant for a permanent loan modification on August 24, 2009. At the time Claimant's August 2009 modification was approved, the escrow account for the Mortgage Loan—which reflected amounts that had already been advanced by GMACM in its capacity as servicer to protect the Note holder's interest in the Property—had a negative balance of $9,650.15.

Permanent loan modification documents reflecting the status of the escrow account were sent to Claimant on August 26, 2009 (the "August 2009 Modification Agreement"), due back October 1, 2009.  Among other things, the August 2009 Modification Agreement contemplated debt forgiveness of $10,000.  Claimant returned the signed August 2009 Modification Agreement to GMACM on October 5, 2009.

On October 7, 2009, GMACM countersigned the August 2009 Modification Agreement.  On that same date, GMACM processed an insurance refund with respect to an insurance policy on the Property in the amount of $4,686.00, which was also credited against the escrow account balance.  As a result of the refund and the debt forgiveness contemplated under the August 2009 Modification Agreement, the escrow account would have been left with an impermissibly large balance, entitling Claimant to a refund.  Accordingly, consummating the loan modification on the terms set forth in the August 2009 Modification Agreement would have resulted in Claimant receiving a double recovery with respect to the escrow account surplus— once as an account credit due to the debt forgiveness, and once in cash from GMACM's own pocket due to the refund of the escrow account cash balance.  The ResCap Borrower Claims Trust (the "Trust") contends that such a double recovery would have been contrary to GMACM's intent in entering into the August 2009 Modification Agreement.

Upon processing the final modification documentation, GMACM also determined that Claimant had not submitted new paystubs for the proof of income as directed, which also required backing off the modification.  GMACM therefore voided the August 2009 Modification Agreement, although this decision was not communicated to Claimant until at least several months later.

Pursuant to letters dated October 27, 2009 and October 30, 2009 from Claimant's counsel to the Debtors, Claimant informed GMACM that he did not intend to perform under the terms of the August 2009 Modification Agreement unless and until he received a countersigned agreement from GMACM.  The Trust asserts that the return of the August 2009 Modification Agreement to Claimant was not a condition to its effectiveness.  GMACM did not return a copy of the fully executed agreement to Claimant, and Claimant did not make monthly mortgage payments beginning on November 1, 2009 as required under the August 2009 Modification Agreement.  The Trust contends that Claimant's failure to perform under the August 2009 Modification Agreement was independent from GMACM's decision to void the modification, and constituted a separate breach of the agreement by Claimant.

2

Claimant asserts that he was damaged by GMACM's failure to honor the terms of the August 2009 Modification Agreement.

### B.  Claimant's Description of Nature of the Case

[_].

## II.    BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

Jurisdiction arises under 28 U.S.C. sec. 1334.  This Court has jurisdiction to hear and decide this matter under 28 U.S.C. sec. 157(a), 157(b)(1) and 157(b)(2)(B).  The Trust submits that this is a core matter with respect to which the Court may enter final orders.

## III.    STIPULATED FACTS

1.    On March 18, 2003, Southtrust originated the Mortgage Loan in the amount of $265,175.00, plus interest to the Claimant.

2.    The Mortgage Loan is evidenced by a Note to Southtrust executed by Claimant on March 18, 2003.

3.    The Mortgage Loan is secured by a deed of trust on real property located at 2301 West Lawther Lane, Deer Park Texas, 77536 (the "Property").

4.    The Note and Deed of Trust identified Southtrust as the "Lender."

5.    The Deed of Trust granted a security interest in the Property to the Lender, by naming Mortgage Electronic Registration Systems, Inc. as "nominee" for the Lender and Lender's successors and assigns.

6.    The Deed of Trust also named Mortgage Electronic Registration Systems, Inc. as the beneficiary of the Deed of Trust.

7.    Claimant has always lived at 2301 West Lawther Lane, Deer Park Texas, 77536 since he executed the Note and Deed of Trust in March 2003.

8.    Claimant remains in possession of the Property.

9.    Homecomings serviced the Mortgage Loan from April 18, 2003 until July 1, 2009.

10.    On July 1, 2009, GMACM began servicing the Mortgage Loan for Deutsche Bank.

ny-1231997

11.    Claimant applied for a loan modification in August 2008 and was approved for a trial modification in September 2008.

12.    On October 14, 2008, GMACM approved Claimant for a permanent modification.

## IV.    PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### A.    Claimant's Contentions

13.    [__].

### B.    Trust's Contentions

14.    Debtor RFC purchased the Mortgage Loan from Southtrust and transferred its interest in the Mortgage Loan when the Mortgage Loan was securitized on or around June 1, 2003, when Deutsche Bank was appointed as trustee.

15.    GMACM transferred servicing of the Mortgage Loan to Ocwen Loan Servicing, LLC on February 16, 2013 in connection with the Debtors' sale of their servicing platform.

16.    Due to a number of delays in finalizing the permanent loan modification documents following GMACM's approval of Claimant for a permanent modification in October 2008, the modification was required to be reset several times and ultimately expired.

17.    GMACM reopened Claimant's loan modification review on August 20, 2009 using the original information received in Claimant's March 2009 workout package.

18.    GMACM approved Claimant for a loan modification on August 24, 2009, with a payment due date of October 1, 2009.

19.    New permanent loan modification documents including the August 2009 Modification Agreement were sent to Claimant on August 26, 2009, with a return date of October 1, 2009.

20.    The purpose of the modification from GMACM's perspective was to try to preserve Claimant's ownership in the Property and avoid a potentially more costly foreclosure by modifying the Mortgage Loan's payment terms to allow Claimant to meet his obligations in a sustained manner over the long term, consistent with GMACM's servicing guidelines.

ny-1231997

21.     At the time the modification was approved, the Mortgage Loan's escrow
        account—which reflected amounts that had already been advanced by GMACM
        in its capacity as servicer—had a negative balance of $9,650.15.

22.     The negative balance in the Mortgage Loan's escrow account as of August 24,
        2009 was primarily the product of two factors:  (1) lender-placed insurance
        premiums for periods as to which Claimant had not provided evidence of
        coverage, and (b) real estate taxes due on the Property, which had substantially
        increased from prior years.

23.     The modifications embodied in the in the August 2009 Modification Agreement
        contemplated the following: (a) the annual interest rate on the Note was to be
        reduced from 5.375% to 5.00%; (b) $5,189.97 in overdrawn escrow amounts
        was to be capitalized and added to the principal balance of the Note then
        outstanding, bringing the amount payable under the Note to $192,480.84;
        (c) $10,000 in debt forgiveness was to be posted to Claimant's account; (d) the
        monthly payment of principal and interest (excluding any escrow amounts) was
        to be increased from $2,149.16 to $2,320.25, but the total monthly payment due
        would be reduced from approximately $3,968.46 to $3,013.70, as a result of the
        debt forgiveness, and capitalization of escrow surplus amounts.

24.     Claimant returned the signed August 2009 Modification Agreement to GMACM
        on October 5, 2009.

25.     On October 7, 2009, GMACM countersigned the August 2009 Modification
        Agreement.

26.     Pursuant to letters dated October 27, 2009 and October 30, 2009 from
        Claimant's counsel to the Debtors, Claimant indicated to GMACM that he did
        not intend to perform under the terms of the August 2009 Modification
        Agreement unless and until he received a countersigned agreement from
        GMACM.

27.     Upon processing the final modification documentation, GMACM also
        determined that Claimant had not submitted new paystubs for the proof of
        income as directed, which also required backing off the modification.

28.     Because the consummation of the August 2009 Modification Agreement would
        have been contrary to the intent of GMACM in entering into the agreement,
        GMACM voided the August 2009 Modification Agreement and did not return a
        copy of the fully executed agreement to Claimant.

29.     After the August 2009 Modification Agreement was voided, GMACM restarted
        the loan modification review process, and ultimately approved Claimant for a
        loan modification on revised terms in August 2010, subject to receiving
        appropriate documentation from Claimant.

30.    The August 2010 modification was never completed because Claimant did not submit the requisite documents.

31.    Claimant's last payment under the Mortgage Loan was for October 2008.

32.    At the time Claimant returned the August 2009 Modification Agreement to GMACM, the Mortgage Loan account was owing for twelve payments, from November 2008 through October 2009.

## V.    ISSUES TO BE TRIED

1.    Whether GMACM breached the August 2009 Modification Agreement.

2.    To the extent GMACM breached the August 2009 Modification Agreement, whether GMACM's breach was excused under the doctrines of unilateral mistake or frustration of purpose.

3.    Whether Claimant simultaneously and independently breached the August 2009 Modification Agreement.

4.    The extent of Claimant's actual compensatory damages arising out of a breach by GMACM of the August 2009 Modification Agreement.

5.    Whether Claimant is entitled to punitive damages arising out of a breach by GMACM of the August 2009 Modification Agreement.

## VI.    EXHIBITS

### A.    Claimant's Exhibits

1.    [__]

### B.    Trust's Exhibits

1.    Note, dated March 18, 2003

2.    Deed of Trust, dated March 18, 2003

3.    Assignment of Deed of Trust dated April 16, 2010

4.    Loan History (i.e., Servicing Notes) for the Mortgage Loan account from May 3, 2007 through March 12, 2010

5.    Payment History for the Mortgage Loan account from May 17, 2007 through March 4, 2013

6.    Modification Approval Letter, dated August 26, 2009

7.    Fixed Rate Loan Modification Agreement, dated as of October 1, 2009

6

8.    GMAC RFC Servicer Guide effective November 1, 2007

9.    Letter from Claimant's counsel, dated October 27, 2009

10.   Letter from Claimant's counsel, dated October 30, 2009

11.   Claimant's Responses to Trust's Request for Admissions, dated December 29, 2015

12.   Claimant's Responses to the Trust's Request for Interrogatories, dated January 12, 2016

No exhibit not listed by Claimant or the Trust may be used at trial except (a) for cross-examination purposes, (b) for rebuttal, or (c) if good cause for its exclusion from the pretrial order is shown.

## VII.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

### A.    Stipulations

The Parties stipulate to the authenticity of the following Exhibits:

1.    [_]

The Parties stipulate to the admissibility of the following Exhibits:

1.    [_]

### B.    Claimant's Objections

1.    [_]

### C.    Trust's Objections

1. The Trust has not yet been provided with a list of Claimant's proposed Exhibits but reserves the right to raise and all objections upon receiving such list.

Any objections not set forth herein will be considered waived absent good cause shown. The parties shall set forth any stipulations with respect to the authenticity and admissibility of exhibits and indicate all objections to exhibits and the grounds therefor.

## VIII.  WITNESSES

### A.    Claimant's Witness List

1. [__]

7

### B.    Trust's Witness List

1. Sara Lathrop

The witnesses listed may be called at trial.  No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.  Each party shall list the witnesses it intends to call on its case in chief and, if a witness's testimony will be offered by deposition, shall designate by page and line numbers the portions of the deposition transcript it intends to offer.  Each party shall set forth any objections it has to deposition testimony designated by the other and the basis therefor.

## IX.    RELIEF SOUGHT

### A.    Relief Sought By Claimant

[_]

### B.    Relief Sought by Trust

The Trust is seeking to have Claimant's Proofs of Claim disallowed and expunged.

## X.    DEADLINES AND HEARING DATE

The parties propose the following pretrial deadlines:

- The parties shall participate in a telephonic pretrial conference at **10 a.m. prevailing Eastern Time on June 22, 2016**.  The Trust's counsel will arrange for a dial-in number.

- Written direct testimony for each witness that the parties intend to call at trial shall be exchanged **not later than July 18, 2016**.  Two courtesy copies of each witness's written direct testimony shall be provided to chambers concurrently with the parties' exchange.  Neither party shall be permitted to call any witness to testify at trial (except rebuttal witnesses, if any) unless such witness's direct testimony has been provided to the opposing party by July 18, 2016.

- Pretrial memoranda of law, which shall include a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to establish each element, and addressing any evidentiary issues anticipated to arise during evidentiary hearing on this matter (the "Trial"), shall be filed **not later than July 18, 2016**.

- **Not later than 5:00 p.m. prevailing Eastern Time on July 28, 2016**, each party shall file any motions in limine or any objections to written testimony; provided, however, that objections must specifically identify the portion(s) of the written testimony at issue.

- **Not later than 5:00 p.m. prevailing Eastern Time on August 8, 2016**, each party shall file any responses to any motions in limine or any objections to written testimony.

8

- **Not later than 5:00 p.m. prevailing Eastern Time on August 8, 2016**, each party shall provide to the Court with (but not file) two copies of (i) the respective party's final witness and exhibit lists and (ii) pre-marked exhibits (Claimant to identify his exhibits with numbers, e.g., 1, 2, 3, etc.; the Trust to identify its exhibits with letters, e.g., A, B, C, etc.), assembled sequentially in notebooks and tabbed, or, if too voluminous, with each exhibit placed in a separate manila folder with number or letter visible on the lip, and the folder placed in a suitable container or box for ready reference. Each exhibit list shall include a description of each exhibit. One copy of the witness and exhibit lists and one set of exhibits should be provided to opposing counsel. No witnesses or exhibits that are not listed in the witness and exhibit lists may be used at the Trial.

The Trial shall take place on **August 15, 2016 through August 18, 2016 beginning at 9:00 a.m. prevailing Eastern Time each day**.

## XI.    EVIDENTIARY HEARING PROCEDURES

### A.    Use of Exhibits During Trial

Counsel is responsible for marking his or her own exhibits. Counsel must identify for the Court and opposing counsel, and give a copy to the witness, each exhibit before using it at the Trial. All exhibits that will be shown to a witness should, if possible, be placed before the witness at the start of counsel's witness examination. Questions and arguments should be delivered from the lectern, but counsel may approach the witness without asking leave whenever it is necessary. And, if counsel is standing near the witness for the purpose of pointing something out on an exhibit, opposing counsel may also be present to observe first-hand what is being pointed out.

### B.    "Timed" Trial

The Trial will be a "timed trial," with a maximum of [6]-trial hours during the course of each day. Each side will be allocated a maximum of [12]-trial hours to use for opening statement, all direct, cross-examination and redirect witness examinations, and summation. Counsel is responsible for having her or his witnesses present and ready to testify without any delays or gaps in testimony.

### C.    Status Report

**Not later than 5:00 p.m. prevailing Eastern Time on August [8], 2016**, counsel shall submit a written status report to the Court, identifying any issues that must be resolved before the Trial starts, and also whether counsel believe the case may be resolved by settlement before the Trial begins.

Dated:  June 17, 2016

/s/ Jordan A. Wishnew
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

Dated:  _____, 2016

_____
Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Ave. South
Suite 5010
Minneapolis, Minnesota 55415

*Counsel for Richard D. Rode*

**IT IS SO ORDERED:**

_____
**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**