1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  Adv. Proc. No. 16-01029-mg

6  - - - - - - - - - - - - - - - - - - - -x

7  In the Matter of:

8  RESIDENTIAL CAPITAL, LLC, et al.,

9             Debtors.

10  - - - - - - - - - - - - - - - - - - - -x

11  INVEST VEGAS, LLC, et al.,

12             Plaintiffs,

13        v.

14  21ST MORTGAGE CORPORATION, et al.,

15             Defendants.

16  - - - - - - - - - - - - - - - - - - - -x

17             United States Bankruptcy Court

18             One Bowling Green

19             New York, New York

20

21             June 15, 2016

22             9:58 AM

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

1

2    (CC: Doc # 9796) Motion for Objection to Claim(s) Number: 1296.

3

4    (CC: Doc # 9486) ResCap Borrower Claims Trust Ninety-Second

5    Omnibus Objection to Claims ((I) No Liability Borrower Claims

6    and (II) Allowed in Full Borrower Claim).  Hearing Going

7    Forward Solely as it Relates to the Claim Filed by Diem Trang

8    Nguyen.

9

10   (CC: Doc # 9779) ResCap Borrower Claims Trusts Ninety-Third

11   Omnibus Objection to Claims ((I) Redesignate and Allow Borrower

12   Claims, (II) Reclassify and Allow Borrower Claims, (III)

13   Redesignate, Reclassify and Allow Borrower Claims and (IV)

14   Allow in Full Borrower Claims).

15

16   Adversary Proceeding: 16-01029-mg Invest Vegas, LLC, et al v.

17   21st Mortgage Corporation, et al.

18   (CC: Doc # 60) Motion for Summary Judgment.

19

20   Transcribed by:  Esther Accardi

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2 A P P E A R A N C E S :

3 MORRISON & FOERSTER LLP

4          Attorneys for ResCap Borrower's Claims Trust

5          250 West 55th Street

6          New York, NY 10019

7

8 BY:   NORMAN S. ROSENBAUM, ESQ.

9          JESSICA J. ARETT, ESQ.

10

11

12 HELFAND & HELFAND

13          Attorneys for 21st Mortgage Corporation

14          350 Fifth Avenue, Suite 5330

15          New York, NY 10118

16

17 BY:   ANDREW B. HELFAND, ESQ.

18          DIANE BRADSHAW, ESQ.

19

20

21

22

23

24

25

1

2  MCBREEN & KOPKO

3         Attorneys for Invest Vegas, LLC

4         500 North Broadway

5         Suite 129

6         Jericho, NY 11753

7

8  BY:   KENNETH REYNOLDS, ESQ.

9

10

11  LAW OFFICES OF CHRISTOPHER E. GREEN

12         Attorneys for Mary Perkins White

13         601 Union Street

14         Suite 4285

15         Seattle, WA 98101

16

17  BY:   CHRISTOPHER E. GREEN, ESQ. (TELEPHONICALLY)

18

19

20  ALSO APPEARING TELEPHONICALLY:

21         SARA LATHROP, Residential Capital, LLC

22         CRYSTAL L. ELLER, Invest Vegas, LLC

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.                    5

1                    P R O C E E D I N G S

2          MR. ROSENBAUM:  Good morning, Your Honor.  This is

3    Norm Rosenbaum, Morrison & Foerster.  With me is Jessica Arett.

4          THE COURT:  All right.  Why don't you begin, Mr.

5    Rosenbaum?

6          MR. ROSENBAUM:  I'm sorry, Your Honor?

7          THE COURT:  Why don't you begin?

8          MR. ROSENBAUM:  Thank you, Your Honor.

9          Your Honor, the first matter on the agenda is at page

10   5, Roman numeral IV.  This is the ResCap Borrower Claims Trust

11   objection to proof of claim number 1296, filed by Mary Perkins

12   White.  It's at docket number 97 and 96.

13         THE COURT:  Is Christopher Green on the telephone for

14   Ms. White?

15         MR. GREEN:  Yes, Your Honor, I am.

16         THE COURT:  All right, I see.

17         All right, Mr. Rosenbaum, go ahead.

18         MR. ROSENBAUM:  Thank you, Your Honor.

19         Your Honor, also on the phone is Sara Lathrop, a

20   senior claims analyst for the ResCap Borrowers Trust.  Ms.

21   Lathrop submitted both a initial declaration and supplemental

22   declaration in support of the objection.

23         Your Honor, this is the ResCap Borrower Claims Trust

24   objection to proof of claim number 1296 filed by Mary Perkins

25   White.  It's at, again, ECF 9796.

RESIDENTIAL CAPITAL, LLC, et al.                    6

1          Your Honor, with respect to the underlying allegations

2    regarding the Fair Credit Reporting Act violations which are

3    asserted in the proof of claim, and have been briefed in the

4    papers, the Borrower Trust does not believe there are

5    significant factual disputes.  I have a short summary I'll

6    provide.  But other than two legal gating issues that I'll

7    address, I think what this comes down to is the claimant's

8    capacity to prove actual damages, and I'll address that as we

9    proceed.

10         Your Honor, on October 13, 2006 the claimant obtained

11   a line of credit, a HELOC, with United Pacific Mortgage, GMAC

12   began servicing the loan in December of 2007.

13         On July 14, 2009 claimant and GMAC agreed to a

14   modification agreement, that agreement has been produced in

15   exhibits to both parties' pleadings.

16         On or about July 23rd, 2009 GMAC received the

17   necessary paperwork and the funds to execute the modification

18   agreement, which was executed by the claimant.  What became

19   clear is that the modification was not executed by GMAC.

20   Unfortunately, we don't have a reason as to why, but apparently

21   it should have been.

22         THE COURT:  Let me ask you this, Mr. Rosenbaum.  Was

23   the modification agreement effective upon signing by the

24   claimant in the payment of the required fees?  You agree that

25   she signed and submitted the required payments, am I correct?

1              MR. ROSENBAUM:  That's correct, Your Honor.

2              THE COURT:  You agree that the modification was

3  effective upon the debtors' receipt of the signed modification

4  agreement with payments, it did require a countersignature by

5  someone on behalf of the debtor to become effective?

6              MR. ROSENBAUM:  Your Honor, I believe it did require a

7  countersignature, but we have not taken a position in this

8  objection that the modification was not effective.  What we

9  have done is we've acknowledged that it probably should have

10  been executed.  Again, there's not a reason why -- we don't

11  have a reason why it wasn't executed, and we have probed that.

12  But we do acknowledge that the failure to not execute and then

13  the information that was furnished to the credit bureaus was in

14  error.

15             THE COURT:  The issue was that the debtors continued

16  to report to the credit bureaus as if no modification had been

17  entered into.  So when Ms. White made payments consistent with

18  the modification agreement, the debtors nevertheless reported

19  payment defaults, is that correct?

20             MR. ROSENBAUM:  That's correct, Your Honor.  May I

21  proceed?

22             THE COURT:  One question I have, Mr. Rosenbaum, is

23  whether -- how many alleged violations of FCRA occurred?  It

24  seems to me that there's a factual dispute whether GMAC

25  continued to report incorrect information to the credit

1  reporting agencies after February 2011.  But what's your

2  position on that?  This, in part, had to do with whether

3  GMAC -- because I think it continued to report that this was a

4  HELOC loan with a high balance of 200,000 dollars, which was no

5  longer true after the modification.  So I guess it did seem to

6  me that there was potentially a factual dispute as to whether

7  there were a continuing series of misreporting after February

8  2011.  Could you address that?

9          MR. ROSENBAUM:  Your Honor, what our -- yes, Your

10  Honor.

11          What our records -- what GMAC's records reflect is

12  that on February 25th, 2011 GMAC did submit a correction to the

13  credit bureaus, and amended the credit report to reflect that

14  there had been timely payments for August, September and

15  October of 2009.  And that's basically what GMAC had been

16  incorrectly reporting prior to that time.  And I think based on

17  our analysis in review of the servicing records, we think there

18  were probably seven instances prior to February 25th, 2011 in

19  which that was incorrectly reported.

20          THE COURT:  Okay.

21          MR. ROSENBAUM:  We don't -- claimant did raise in

22  their response a credit report from February 8th, 2012, that

23  despite the fact that a correction was submitted by GMAC in the

24  prior -- in February 2011, that again reflects that the account

25  is 90 to 119 days past due.  And the claimant did introduce as

1    an exhibit to I think the claimant's declaration a cover letter

2    from the credit bureau that indicates that this improper

3    information, or alleged improper information, was verified by

4    GMAC.

5            We -- GMAC has not been able to verify -- the trust

6    has not been able to verify that that report that's reflected

7    in the credit report from February 8th, 2012 reflects reporting

8    by GMAC, we've got no record of that.  So we would dispute that

9    issue, Your Honor.

10           THE COURT:  So it's a disputed issue of fact then.

11   Whether the plaintiff can prove -- put in proof that there was

12   inaccurate reporting at that date, at least they come forward

13   with evidence that puts -- if admissible, could support the

14   contention there continued to be inaccurate reporting.  Do you

15   agree with that?

16           MR. ROSENBAUM:  Yes, Your Honor.

17           THE COURT:  Go ahead with your presentation.

18           MR. ROSENBAUM:  Thank you.

19           Your Honor, claimant seeks damages for violation of

20   the Fair Credit Reporting Act, which I'll refer to as FCRA,

21   and common law causes of action for defamation and negligence.

22   The claimant did commence a lawsuit that was stayed following

23   the filing of the bankruptcy.  The lawsuit proceeded against

24   the reporting agent -- the credit bureaus.  And our

25   understanding from the papers that the claimant submitted, was

RESIDENTIAL CAPITAL, LLC, et al.                    10

1   that the matter was settled with the credit bureaus.

2          Your Honor, we see two legal issues here.  Whether the

3   common law causes of action for defamation and negligence are

4   preempted by FCRA, and whether the claimant is entitled to

5   punitive damages.  My understanding from claimant's response is

6   that the alleged amount of proof of claim of 320,000 does not

7   include a measure of punitive damages.

8          As we have set forth in our pleadings, the plaintiff's

9   common law causes of action are preempted by FCRA.  We rely

10  primarily on Dvorak v. AMC Mortgage and other authorities,

11  district court opinions in the Ninth Circuit.  The Ninth

12  Circuit itself does not address this issue.  Claimant does site

13  to Gorman v. Wolpoff & Abramson, and that's a 584 F.3d 1147,

14  which that case highlights the issues and discusses it, but

15  does not decide it.  We believe that this issue should be

16  decided by the weight of authority in the Ninth Circuit, and,

17  again, rely on the analysis in Dvorak.

18         THE COURT:  Answer this, Mr. Rosenbaum.  Here the

19  trust basically admits a FCRA violation.  The issue that you

20  really raise, and there may be an issue as to whether there was

21  a continuing series of misreporting, but that's a factual

22  dispute.  But the trust doesn't dispute that there was an error

23  by GMAC.  And the issue then becomes what, if any, damages

24  White is entitled to recover.

25         While it's an interesting, from my standpoint, legal

1   issue, other defamation causes of action preempt it.  It seemed

2   and I'm reading the papers, that the parties appear to agree

3   that the measure of damages were both defamation and for FCRA

4   would be the same.  So it's not clear to me that I would need

5   to resolve issue whether FCRA preempts a defamation claim.

6           And I think that one of the -- I just make an

7   observation without deciding issue at the -- let me make sure I

8   get the right case, bear with me a second.  Yeah, in Loomis v.

9   U.S. Bank Mortgage, which is a reported district court decision

10  in Arizona from 2012, that -- which held that FCRA didn't

11  preempt defamation negligence claims.  But the court held that

12  the claims for defamation negligence escape preemption only

13  when the plaintiff alleges malice or willful intent to injure,

14  which I don't necessarily read these pleadings as alleging.

15  But while it may be a "nice legal issue" I'm not sure that it's

16  dispositive here, because the real issue is okay, you've

17  acknowledged, Mr. Rosenbaum, a FCRA violation, the question is

18  is the plaintiff able to prove actual damages.  What's your

19  view as to whether, assuming that there is no preemption,

20  whether the measure of damages would be the same on the

21  defamation claim from the FCRA claim?

22          MR. ROSENBAUM:  Your Honor, I've viewed that

23  assessment and I think that would be the same.  I don't think

24  the measure of damages would be any different, the actual

25  damages.

1          THE COURT:  Is there anything else you want to add

2    before I hear from Mr. Green?

3          MR. ROSENBAUM:  The only other thing -- just two quick

4    points, Your Honor.

5          One is the claimant's -- under the statute, if a

6    willful or malicious violation can be proved, then the Court

7    within its discretion can assess punitive damages.  Your Honor

8    has been clear and consistent in this case that punitive

9    damages are not appropriate here, and would not serve any

10   remedial purpose, and parties have agreed to that issue.

11         Your Honor, as I said, the claimant seeks 320,000 in

12   actual damages.  And we have had some discussions, and they've

13   been somewhat generous in sharing information.  I think we're

14   prepared to continue to have those discussions.  But I think

15   the problem here is for us is connecting the dots.  There are

16   alleged sort of acts or consequences that claimant contends

17   occurred as a result of the reporting and the reduction in the

18   credit score.  But the issue is sort of connecting the dots

19   to -- to what the actual damages are.

20         Thank you, Your Honor.

21         THE COURT:  Thank you very much.

22         All right, Mr. Green, go ahead.

23         MR. GREEN:  All right.  Yes, Your Honor.

24         Let's see, just first of all, I don't think there are

25   a lot of disputes on the facts, but thought I'd just point out

1    in Exhibit A to my client's declaration is the letter she got

2    from GMAC Mortgage, which basically says, let's see, "Your home

3    equity line of credit is being closed as a result of this

4    modification, and is being modified to a closed end mortgage.

5    You'll be notified of your new account under a separate cover."

6    And there's other information in there on what she should do.

7    And her contention all along, and there's nothing inconsistent

8    with it, is that she made full payments -- full timely

9    payments.

10         The other factual matter deals with the February 2012

11   credit reporting, which I believe is under Exhibit N of her

12   declaration, of Mary White's declaration.

13         Looking at the GMAC Mortgage reporting there, it

14   appears to show on there items as of date recorded, and the

15   date is January 2012, which I believe is a field that shows

16   when the reporting last went to the credit reporting bureau.

17   I'm not aware of any procedure where the credit reporting

18   bureau would go out and get the information proactively from

19   furnishers such as GMAC.

20         Then, let's see, looking at the common law causes of

21   action, I believe the case Dvorak pointed to by opposing

22   counsel, it references Gorman, but it is the -- that case I

23   believe was decided while -- right after the trial court had

24   dismissed the claim.  It was before it was heard by the Ninth

25   Circuit.  And I don't think we have a lot of disagreements on

1    the common law -- the state of the law in the Ninth Circuit.

2    But I believe the reported cases out of Arizona are the

3    clearest on that issue --

4              THE COURT:  Can't --

5              MR. GREEN:  -- in light of -- yes, Your Honor.

6              THE COURT:  Because in Gorman, the Ninth Circuit, I'm

7    going to shorten what I'm going to read to you, but it refers

8    to one of the sec -- one of the long sections.  It appears to

9    preempt all state law claims based on a creditor's

10   responsibilities under another section.  Section 6081(h)(E)

11   suggests that defamation claims can proceed against creditors

12   as long as the plaintiff alleges falsity and malice.

13             You certainly allege falsity, but what's -- do you

14   have any nonconclusory allegations of malice?

15             MR. GREEN:  Well, Your Honor, I be -- in the complaint

16   that the trust attached, I provided the complaint to the trust

17   and they attached it as an exhibit to their objection.  Let's

18   see, I think it is the first exhibit if I'm not mistaken.  I do

19   have allegations in there of willful behavior.

20             Under the Fair Credit Reporting Act, it's been held in

21   the Ninth Circuit, and I believe all the circuits as far as I

22   know that willfulness and malice are reckless behavior using

23   the standard under New York Times v. Sullivan.  So I -- we

24   never had -- we handled this case for quite a while and we

25   never had anyone claim that we had not -- when GMAC was

1  actively involved in this, never said that we had not alleged

2  that the reckless -- or at least the recklessness standard

3  under the -- under the existing case law in the Ninth Circuit.

4  Although, that was never -- we never got to summary judgment

5  stage with GMAC, they filed months before that stage actually.

6         THE COURT:  Sure.  From my perspective, and I think

7  it's encompassed by either of you, I'm going to overrule the

8  objection.  You're going to move forward -- either you're going

9  to settle this or going to move forward to trial.  So it isn't

10  necessarily going to be what a pleading standard is.  I don't

11  know what proof of recklessness or malice, what your evidence

12  is going to be that supports the required standard.  But I

13  think -- let me address very briefly, Mr. Green, because you

14  haven't lived with the ResCap case, and obviously I have for

15  quite some time.  I have --

16         MR. ROSENBAUM:  Yes, Your Honor.

17         THE COURT:  As Mr. Rosenbaum has indicated, I've been

18  quite consistent in not permitting claims for punitive damages

19  to go forward.  This is -- because this has been a liquidation

20  case, and proceeds -- the net proceeds are being distributed to

21  creditors in accordance with a confirmed plan, every additional

22  dollar that comes out is a dollar less available for creditor

23  distributions.  And I've been quite consistent in -- I believe

24  there's case support for this, that it doesn't serve the usual

25  purposes for punitive damages.  There's no punish -- the only

1  ones being punished are other creditors, other innocent

2  creditors.  So I've not permitted damage claims for punitive

3  damages to go forward, and I've been pretty consistent

4  throughout ResCap with respect to that.

5          So you may disagree, you may ultimately appeal it, but

6  that's been my consistent ruling throughout.

7          So the issue here is going to be what actual damages

8  you're able to prove.  I understand attorney's fees, and things

9  like that, I'm not talking about that.  So what you're going to

10 be able to prove, for present purposes, reject the trust's

11 argument that they're entitled to have this claim expunged

12 because you haven't satisfactorily established damages.  And

13 I've been pretty consistent with respect to claim objections

14 throughout, if the issue was the amount of damages that's what

15 we're going to have a trial about.

16         It does seem to me that both sides here ought to quite

17 seriously pursue settlement, and I don't get in -- I don't

18 involve myself in settlements since I ultimately have to be the

19 trier of fact.  I certainly encourage the parties where

20 appropriate to get a mediator, a mutual mediator, see whether

21 that will help in resolving things.  But I won't personally get

22 involved in settlement negotiations.

23         As I said earlier in talking with Mr. Rosenbaum, I

24 don't think I need to decide at this stage, in any event, a

25 preemption issue.  There's a split, arguably a split in

1    authority in district courts in the Ninth Circuit.  I don't

2    know of any controlling authority on it in Second Circuit.  If

3    the measure of damages is going to be the same under both FCRA

4    and defamation, and the trust essentially is not disputing that

5    there were FCRA violations, there may be a question whether

6    there's February 2012 violations as well, that that's a

7    disputed issue of fact.  But the trust doesn't dispute that

8    there were FCRA violations here, so the issue's going to be

9    what damages you're able to prove.

10            I guess my questions, and since I've got you speaking

11   now, Mr. Green, what, if any, discovery do you wish to take?

12            MR. GREEN:  Well, Your Honor, I guess I would have to

13   confer with opposing counsel.  I understand some of the -- from

14   the previous case, that some of the information going back and

15   forth might have involved outsourcing to India, if I'm not

16   mistaking it with another party.  But, yeah, I think

17   communications between the credit reporting bureaus and them,

18   and then any communication with the client, including if there

19   were any tape recordings of communications.  And that's off the

20   top of my head, Your Honor, and that's most of what we'd be

21   looking for on it I think.

22            And I do have -- GMAC did provide some discovery

23   before -- before they filed bankruptcy, I think it was just a

24   few weeks before, so I did not had a chance to go over that.

25   But I can discuss with opposing counsel, and if it's okay with

RESIDENTIAL CAPITAL, LLC, et al.                    18

1    you, we could see if we can come to agreement on the scope of

2    discovery and bring any -- and I've got to admit, I'm not

3    totally conversant with local rules, but if we can bring it in

4    an informal fashion to you if we do have any disputes, I would

5    be open to that if opposing counsel is.

6            THE COURT:  All right.  Mr. Rosenbaum, on what

7    discovery, if any, did the trust want to take?

8            MR. ROSENBAUM:  I mean, Your Honor, obviously that

9    the -- part of it depends on what claimant is alleging in terms

10   of the effects of and consequences of the reporting and the

11   client credit score.  There were allegations that an inability

12   to refinance, that credit lines and various credit cards were

13   reduced.  The claimant has also at least attached an expert

14   report I think from the litigation, or from prior litigation.

15   So part of it would depend on these external sources, but

16   clearly, you know, we have an expert issue here, we have need

17   to depose the claimant.  Also, we don't know to what extent

18   claimant is relying on any medical testimony for emotional

19   distress damages which she's also alleging as part of -- as

20   part of the violations, as part of the damages.

21           THE COURT:  Yeah, I know -- I know that's in the case,

22   and I didn't look, is there any law on whether emotional

23   distress damages are recoverable on a FCRA violation?

24           MR. ROSENBAUM:  I believe in the Ninth Circuit --

25           MR. GREEN:  Yes, Your Honor -- oh --

1          THE COURT:  I'm not -- yeah, Mr. Green.

2          MR. GREEN:  I apologize.

3          THE COURT:  Go ahead, Mr. Rosenbaum.

4          MR. ROSENBAUM:  I'm sorry, Your Honor, it's Norm

5    Rosenbaum, are you addressing the question to myself?

6          THE COURT:  Yeah, to you first.  What do you

7    understand the law to be on whether emotional distress damages

8    are recoverable in a FCRA violation?

9          MR. ROSENBAUM:  In the Ninth Circuit, our

10   understanding is that they are recoverable for FCRA violations.

11         THE COURT:  Mr. Green, do you want to address the

12   issues?

13         MR. GREEN:  Yes, Your Honor.  Emotional distress

14   damages are recoverable.  The local case is Lambert (ph.) case

15   that I happened to brief, but the larger case that preceded

16   that was the Ninth Circuit case, Guimond v. Trans Union.  And

17   it essentially allows for establishing emotional distress

18   damages without using medical testimony.  It's very distinct

19   from state causes of action that require, in some cases,

20   information from a doctor established by the plaintiffs.  And

21   we are not seeking to prove with the doctor.

22         I'd have to look at the file, see if she ever did talk

23   to a doctor, and mentioned it in passing, but we would not be

24   seeking to prove with medical testimony.  But I can certainly

25   provide opposing counsel if she did mention -- see a doctor,

1    and mention it, it sometimes comes up in these cases.  But we

2    would not be looking to prove with any such statement.

3            THE COURT:  Mr. Green, I'm not holding you to it at

4    this point, but can you tell me briefly what you believe your

5    compensable actual damages are here?

6            MR. GREEN:  Well, Your Honor, the main part is

7    emotional distress, although there were lost opportunities for

8    credit.  She had her credit reduced during this time.  She had

9    to sell things because her credit line had been reduced.  But

10   the emotional distress aspect I think is the main part of it.

11   I don't want to overemphasize the -- any exact dollar loss.

12   And in a lot of these cases, it's very difficult with multiple

13   defendants to point to what exactly happened with who.

14           But her being threatened with foreclosure by a

15   representative of GMAC is a big part of it.  And she's a single

16   woman during a recession trying to keep her head above water.

17   And she was not -- and she has otherwise excellent credit.  And

18   this went on for twenty-nine months if we go with the credit

19   reporting from February 2012.  And that was well into the case

20   after she had hired attorneys, and experts -- an expert, and

21   then that I think was what we will show is the worst part of it

22   for her was --

23           THE COURT:  Well, let me --

24           MR. GREEN:  -- there.

25           THE COURT:  -- see if I can call this to an end.

1          What I'd like Mr. Green and Mr. Rosenbaum to do is

2    confer promptly in trying to agree on the terms of a cash

3    management and scheduling order.

4          Mr. Green, I have a standard form template for case

5    management scheduling orders that I apply in both contested

6    matters and in adversary proceedings.  The form itself is on

7    the Court's Web site under my chamber's rules.  Mr. Rosenbaum

8    can certainly share it with you.

9          My sort of default rule is 120 days for fact

10   discovery, and expert reports typically forty-five days

11   thereafter.  But what I would like you to do is for the two of

12   you to confer certainly by next week and see if you can agree

13   on a proposed case management scheduling order consistent with

14   the template that I use.

15         And so you're both going to need to think about what

16   discovery you're going to need to take.  Here it does seem to

17   me that many of the facts that you can stipulate to are facts

18   regarding each alleged inaccurate report to the credit

19   agencies.  To the extent that there's a dispute about the

20   February 2012, I'll see whether you can satisfactory resolved

21   the dispute about that, or again, if I had an issue, figure out

22   what if any depositions you want to take, et cetera.

23   Those don't necessarily get listed in the case management

24   order, but I am going to want a case management scheduling

25   order by the end of next week.  And if it's inconsistent with

1    the -- my normal timing and if it's not, and if it's not,

2    you're going to need to explain in a cover letter about why

3    more time than the normal is required.

4            Mr. Green, with respect to -- you raised an issue.

5    If -- and Mr. Rosenbaum certainly knows this and the form of

6    the case management order certainly reflects that -- if there

7    are any discovery disputes, I generally don't take discovery

8    motions, if -- the parties are first to meet and confer to try

9    and resolve the issue.  Any party believing it needs the

10   assistance of the Court will arrange a telephone call with the

11   Court.  Those calls are usually at 4 or 5 in the afternoon.

12           I don't even want anything in writing ahead of time.

13   I'm usually able to resolve those discovery issues in one call,

14   without anybody having to file briefs.  If I believe that -- if

15   there's a privilege issue that I think I need brief, I usually

16   require letter briefs on a very short time schedule.  So I try

17   to expedite involving any discovery, and what I find, Mr.

18   Green, is these conferences typically get scheduled within a

19   day or two of a request.  And so when parties --

20           MR. GREEN:  Okay, Your Honor.

21           THE COURT:  -- that the Court is going to resolve it

22   quickly, somehow they manage to resolve it themselves.  I

23   rarely have to deal with these issues.  But that's just -- Mr.

24   Rosenbaum knows all of that from other matters, so it isn't

25   just in ResCap, that's all my -- all the matters before me.

1    So why don't you confer and see whether you can agree

2    on a schedule.  Mr. Rosenbaum can also provide some more

3    general background.  When -- this does not strike me as a case

4    that's going to appropriate for summary judgment.  There's

5    going to be factual issues, primarily of the damages, and I

6    set -- I try to get these things resolved pretty quickly.  I

7    set trials pretty quickly.

8        I frequently do them as so-called timed trials.  I

9    allocate a number of hours to each of you.  Use it as you wish.

10   I generally require direct testimony in declaration format, so

11   any declarant has to be in court and available for cross-

12   examination.  Obviously, if they're third party witnesses and

13   you can't subpoena them to court, you're going to have to take

14   their deposition to do that.  So -- but that's just -- let's

15   proceed from here.

16       I think the two of you really ought to discuss whether

17   you can settle it on your own, or whether a mediator could

18   help.  It gets expensive when you start having to get ready for

19   trial here, and I don't do trials by telephone.  Everybody has

20   to be in the courtroom.  Okay, Mr. Green?

21       MR. GREEN:  Yes, Your Honor.  And just very quickly,

22   everything sounds good, but on scheduling, could we have the

23   order or the proposed scheduling order in two weeks?  I'm

24   actually calling from Spain right now, and I get back early

25   next week.  I think I'll be able to get -- to confer with

1   opposing counsel next week, but I'll probably have to see

2   what -- it might be a little jumbled up next week I guess is

3   what I'm saying, Your Honor.

4           THE COURT:  That's an eminently reasonable request.

5   That's fine with me.  Where in Spain are you?

6           MR. GREEN:  I'm in Madrid, Your Honor.

7           THE COURT:  Very good.  Okay, do it within two weeks,

8   okay, Mr. Rosenbaum?

9           MR. ROSENBAUM:  That's fine, Your Honor.

10          THE COURT:  Okay, enjoy the rest of your trip to

11  Spain.

12          MR. GREEN:  Okay, thank you, Your Honor.

13          THE COURT:  All right.

14          So I guess the next matter on the agenda, what is it,

15  Mr. Rosenbaum, it's --

16          MR. ROSENBAUM:  It's page 6, number 6.  It's the

17  ResCap Borrower Claims Trust ninety-second omnibus objection to

18  claims.

19          THE COURT:  Okay.

20          MR. ROSENBAUM:  And I will cede the podium to Ms.

21  Arett.

22          THE COURT:  Thank you.

23          MS. ARETT:  Good morning, Your Honor.  Jessica Arett

24  of Morrison & Foerster on behalf of the ResCap Borrower Claims

25  Trust.  As Mr. Rosenbaum said, the next claims objection matter

 1   on the agenda is number 6, the Borrower Trust's ninety-second

 2   omnibus objection to claims, which we filed at docket number

 3   9486 on January 7th, 2016.

 4          Your Honor, through the ninety-second omnibus claims

 5   objection, the Borrower Trust seeks to expunge proofs of claim

 6   that do not represent valid pre-petition claims against the

 7   debtors, because they do not prove by a preponderance of the

 8   evidence any specific wrongdoing by the debtors.  The Borrower

 9   Trust thoroughly examined the debtors' books and records in an

10   effort to validate the accuracy of the allegations made in the

11   response and the claim at issue, and determined that the books

12   and records do not show any liability to and owing the

13   respondent.

14          The Borrower Trust adjourned the ninety-second omnibus

15   objection as to Ms. Nguyen's claim.  It's claim number 3725.

16   And Ms. Nguyen filed a response on May 13th, 2016.  I'm not

17   sure if she's on the phone.

18          THE COURT:  All right.  Is Ms. Nguyen or anyone on her

19   behalf?  She's not showing on the check-in list.

20          Is Ms. Nguyen, are you on the phone?

21          All right.  Go ahead, Ms. Arett.

22          MS. ARETT:  So the Borrower Trust filed its reply on

23   June 9th, 2016, at docket number 9929.  And in support of the

24   objection and the reply, the Borrower Trust submitted a

25   supplemental declaration by Sara Lathrop, senior claims analyst

1    for the Borrower Trust as Exhibit 1 to the reply.  Ms. Lathrop

2    is on the phone today, as Mr. Rosenbaum mentioned and is

3    available to answer any questions that the Court may have for

4    her.

5          Your Honor, Ms. Nguyen's unliquidated claim is

6    premised on two lawsuits, one filed in federal court and one

7    filed in state court, and both lawsuits have been dismissed

8    with prejudice and are currently pending on appeal.  Pursuant

9    to the rules of res judicata that apply when a federal case is

10   based on federal question jurisdiction as is the case here, the

11   federal courts dismiss all -- retains all its res judicata

12   effect pending the appeal of that decision.  And as of a

13   result, a portion of the claim that is based on the federal

14   litigation is barred by the doctrine of res judicata.

15         THE COURT:  And that's true as to the state law claims

16   that are premised on supplemental jurisdiction?

17         MS. ARETT:  Yes, Your Honor.

18         THE COURT:  Here's -- Ms. Arett, here's my question

19   for you.  I agree with your reading of the law on res judicata.

20   And so the district court opinion that dismissed Ms. Nguyen's

21   claim should be given preclusive effect for purposes here.  But

22   Ms. Nguyen did timely appeal, but the appeal is stayed because

23   of the Chapter 11 bankruptcy filings.  And isn't she

24   entitled -- I don't know; is it a he or a she?  I wasn't sure.

25         MS. ARETT:  I think -- it's a she I believe.

1          THE COURT:  Is she entitled to her day in court on --

2    if I sustain your objection and find that as to this prong that

3    the federal res judicata rule applies, in that the district

4    court decision should be given preclusive effect, should I also

5    lift the stay to permit Ms. Nguyen to prosecute her Ninth

6    Circuit appeal if that's what she chooses to do?

7          MS. ARETT:  I believe that would be appropriate, Your

8    Honor.

9          THE COURT:  Do you know what the status of that --

10   what -- it was unclear to me what the status of the appeal was?

11         MS. ARETT:  I believe it's -- I'm sorry, do you

12   mean --

13         THE COURT:  I mean, was it -- is it fully briefed?

14   What's the status in the Ninth Circuit?

15         MS. ARETT:  I believe it was fully briefed.  I mean, I

16   think we have the docket, and it's one of my -- let me find it.

17   One moment.

18         THE COURT:  I know the appeal was filed on October

19   11th, 2011.

20         MS. ARETT:  Correct.  I actually don't have the appeal

21   docket.  I just have the district court docket, so I would have

22   to double-check and find out if the appeal has been briefed.

23         THE COURT:  And with respect to the state court, your

24   position is that the unlawful detainer action, which Fanny Mae

25   prevailed in, and that was appealed -- being appealed to the

RESIDENTIAL CAPITAL, LLC, et al.                    28

1   state appellate court, and on April 27th, 2012, the unlawful

2   detainer judgment was affirmed on appeal.

3          MS. ARETT:  Correct.

4          THE COURT:  So your view is that -- that's final, and

5   that would be entitled to a preclusive effect here.

6          MS. ARETT:  That's correct, Your Honor.

7          THE COURT:  So my question is to you, what claims that

8   are being asserted here are barred by the preclusive effect of

9   the unlawful detainer judgment?

10          MS. ARETT:  So any claim that has as its basis

11  anything that would challenge the foreclosure.  I believe at

12  least portions of the breach of contract claim, the wrongful

13  foreclosure claim, the quiet title claim, the slander of title

14  claim, the cancellation of instruments claim, portions of the

15  fraud claim and the intentional negligent misrepresentation

16  claim, and kind of by default, portions of the business --

17  California Business UCL claim.  I'm wondering if I missed any.

18  But I believe that would have been the ones that were -- are

19  barred by the unlawful detainer action.

20          And then the remainder, such as the fraud claim and

21  the breach of contract claim, are barred for other reasons that

22  we briefed, and I can get into it, if you want.

23          THE COURT:  Okay.  Just address that briefly, okay.

24  So, that's what I was really focusing on.  What is the unlawful

25  detainer judgment giving preclusive effect?  What does it wipe

1    out?  What's left after that and on what basis do you seek to

2    expunge the remainder of the claims?

3              MS. ARETT:  So the negligent misrepresentation and

4    negligence claims would be barred on the basis that she has not

5    sufficiently demonstrated that GMAC Mortgage owed a duty.  I

6    believe the law in California is that banks, and as a result,

7    servicers, do not owe a duty to borrowers, in the case of --

8    just typical mortgage transactions.  The promissory estoppel

9    claim is barred because if you look at the complaint, she

10   doesn't actually make any allegations against GMAC Mortgage.

11             The breach of contract claim is barred -- sorry, Your

12   Honor; I'm kind of flipping through things.

13             THE COURT:  That's okay.

14             MS. ARETT:  I think -- I believe the basis for her

15   breach of contract claim, other than the wrongful foreclosure

16   is an allegation that GMAC Mortgage did not alert her to the

17   transfer of her deed of trust to Nationstar.

18             THE COURT:  It's probably around a provision that

19   didn't require you to give notice on.

20             MS. ARETT:  Exactly, and in fact, if she's alleging

21   that we did not give her notice of transfer of servicing, we

22   did, in fact, by evidence of the goodbye letter that we

23   attached as Exhibit D to the reply.

24             THE COURT:  Okay, all right.  All right, anything else

25   you want to add?

1        MS. ARETT:  I believe that's it, Your Honor.

2        THE COURT:  I'm going to take it under submission and

3   we'll enter a written opinion or order.  Thank you very much,

4   Ms. Arett.

5        MS. ARETT:  Thank you, Your Honor.

6        And then the final -- well, the final matter at least

7   for the Borrower Trust on the objection -- on the agenda is

8   agenda matter number 7, the ResCap's Borrower Claims Trust's

9   ninety-third omnibus objection to claims, which we filed at

10  docket number 9779 on March 23rd, 2016.

11       And Your Honor, through that objection, the Borrower

12  Trust seeks to modify proofs of claim that were filed against

13  the incorrect debtor and/or improperly assert a secured

14  priority claim.  The Borrower Trust also seeks to allow these

15  claims as modified, as well as other claims identified in the

16  ninety-third omnibus objection, because these claims are all

17  asserted in amounts below the applicable bar convenience class

18  amounts, and other than the defects to the asserted debtor or

19  the classification, there does not appear to be a substantive

20  basis on which to object to such claims.

21       THE COURT:  I mean, as I understand, the only person

22  who filed an opposition on the objection is Beverly Blake?

23       MS. ARETT:  Correct, and I'm not sure if she's on the

24  phone.

25       THE COURT:  Ms. Blake, or anyone on behalf of Ms.

RESIDENTIAL CAPITAL, LLC, et al.                        31

1    Blake, are you appearing today?

2            No one's appearing on behalf of Blake.

3            But I've read the Blake opposition, which is at ECF

4    docket 9849, and the Trust did follow a reply, which is 9887.

5    I try to have a -- just address the Blake issues.

6            MS. ARETT:  Okay, and then before addressing the

7    details of Ms. Blake, I would also just like to point out that

8    we would respectfully request that the Court grant the ninety-

9    third omnibus claims objection as to the uncontested claims.

10            THE COURT:  All right.  Let me deal with that right

11    now.  So the ninety-third omnibus objection is sustained as to

12    everyone other than Blake --

13            MS. ARETT:  Thank you, Your Honor.

14            So on her proof of claim form, Ms. Blake identified

15    her claim as a priority claim under Section 507(a)(7) of the

16    Bankruptcy Code.  Ms. Blake asserts that her claim is based on

17    the improper origination of her loan.  And Section 507(a)(7) of

18    the Bankruptcy Code provides that claims that arise from the

19    deposit before the commencement of a case of money in

20    connection with the purchase, lease or rental of property or

21    the purchase of services for the personal, family or household

22    use of such individuals, where the property or services were

23    not delivered or provided.

24            Here, Ms. Blake has not identified any deposits that

25    she made with Homecomings, but rather asserts her claim is

1   based on higher interest rates and fees that she has been

2   required to make.  And additionally, her claim far exceeds the

3   cap of 2,600 dollars on 507(a)(7) priority claims.  And so the

4   Borrower Trust has not identified any other basis for granting

5   the claim priority status, and thus it is our position that the

6   claim should be reclassified as a general unsecured claim and

7   allowed in the asserted amount.

8           THE COURT:  Am I correct that the Trust doesn't --

9   you're seeking to have the claim reclassified, but agree that

10  she be allowed against Homecomings in the amount of 26,000

11  dollars?

12          MS. ARETT:  Correct, Your Honor.

13          THE COURT:  All right.  The Court has reviewed the

14  ninety-third omnibus objection and has specifically reviewed

15  the Blake opposition and the reply that was filed.  The issue

16  here is under Section 507(a)(7), whether the Blake claim is

17  entitled to receive a priority.  As Ms. Arett has read -- I

18  won't further read the section, Ms. Arett has done that

19  already.  507(a)(7) does not apply in the circumstances.

20  Consequently the objection is sustained.  The Blake claim is

21  reclassified and allowed as a general unsecured claim against

22  Homecomings in the amount of 26,000 dollars.

23          And I'll just reflect that ruling in the proposed

24  order that you submit, Ms. Arett, okay?

25          MS. ARETT:  Will do, Your Honor.  Thank you very much.

1          And with that, I think there's one more matter.  An

2   adversary proceeding --

3          THE COURT:  Yeah.

4          MS. ARETT:  -- on the agenda, so I will cede the

5   podium.

6          THE COURT:  Counsel --

7          MS. ARETT:  I --

8          THE COURT:  -- this is Invest Vegas, LLC v. 21st

9   Mortgage Corporation.  It's adversary proceeding 16-01029.

10          MS. ARETT:  I --

11          THE COURT:  Who's appearing for each of the parties in

12   that?

13          MS. ARETT:  Oh, and just one -- this is Jessica Arett

14   again, Your Honor.  If -- may me and Mr. Rosenbaum be excused?

15          THE COURT:  Absolutely.

16          MS. ARETT:  Thank you very much.

17          THE COURT:  Thank you very much.

18          THE COURT:  All right.  Could counsel in Invest Vegas

19   please make your appearances?

20          MS. BRADSHAW:  This is counsel for defendant, 21st

21   Mortgage in the adversary proceeding, 16-01029-mg.  Diane

22   Bradshaw of the firm of Helfand & Helfand, representing 21st

23   Mortgage Corporation.

24          THE COURT:  Okay.

25          MS. BRADSHAW:  Proceed, Your --

1          THE COURT:  All right.  Who's appearing for Invest

2    Vegas?  Is anybody appearing?

3          THE CLERK:  Your Honor, counsel apply.

4          THE COURT:  Okay, go ahead.

5          MS. ELLER:  Good morning, Your Honor.  Sorry about

6    that.  I am Crystal Eller.  I'm appearing from Las Vegas,

7    Nevada, bar number 4978 for Invest Vegas, LLC.  Also Mr.

8    Kenneth Reynolds, local counsel, is supposed to be there this

9    morning, but my understanding is he missed his train due to a

10   traffic accident and is supposed to arrive any moment.

11         THE COURT:  All right.  He did call -- my courtroom

12   deputy advised me earlier that because of a traffic accident,

13   he was running late.  He thought he would be here by now.  But

14   Ms. Eller, are you prepared to argue?

15         MS. ELLER:  Yes, I can argue, if we need to move

16   forward, Your Honor.

17         THE COURT:  Yeah, I did want to move forward, okay.

18         MS. ELLER:  Okay.

19         THE COURT:  So, Mr. Bradshaw, do you want to -- this

20   is your motion.

21         MS. BRADSHAW:   Should I proceed, Your -- it's Ms.

22   Bradshaw, Your Honor.

23         THE COURT:  I'm sorry.  I apologize.

24         MS. BRADSHAW:  That's okay.  You -- I may proceed?

25         THE COURT:  Yes, you can.

RESIDENTIAL CAPITAL, LLC, et al.                    35

1              MS. BRADSHAW:  Okay, thank you.

2              21st Mortgage is the current holder of a promissory

3    note that originated in the amount of 636,600 dollars and also

4    the holder of the deed of trust that, but for Nevada HOA Lien

5    Law, would be in first position.  All of these documents have

6    been annexed to the moving papers.  This is all secured by a

7    real property comprising a condominium unit located at 230 East

8    Flamingo Road, number 301, in Las Vegas, Nevada.  At all times

9    relevant in this case, Meridian Private Residences Homeowners

10   Association was the homeowners association, which is hereto

11   referred to as the HOA, that oversaw and managed the subject

12   property.

13             On or about June 25th, 2009, the HOA reported a lien

14   for delinquent assessments against the subject property and

15   then nearly two years later sought to reinforce the lien --

16   sorry, to enforce the lien when it recorded notice of default

17   on or about June 16th, 2011, and an election to sell pursuant

18   to the lien for delinquent assessments.

19             On or about October 19th, 2012, the HOA recorded a

20   notice of foreclosure sale and set a foreclosure sale date for

21   November 14th, 2012.  The HOA then took back the subject

22   property out of the HOA lien sale that purportedly took place

23   on November 20 -- sorry, November 14th, 2012, and this -- the

24   deed -- the subsequent deed was recorded on December 19th,

25   2012.

1        The related bankruptcy case herein, In re: Residential

2    Capital, was commenced on May 14th, 2012, thus placing the

3    subject property or any of the assets that would be affected by

4    such property under an automatic stay pursuant to 11 U.S.C.

5    362, the automatic stay.

6        21st Mortgage acquired all rights to enforce the note

7    and deed of trust by virtue of a transfer from debtor subject

8    to the terms of the bankruptcy sale order, signed by this

9    Court, that issued -- or was entered, actually, on November

10   21st, 2012, and we here fore refer to this order as the 365

11   sale order.

12       Under the terms of the 365 sale order, dated November

13   21st, 2012, Berkshire Hathaway was purchaser of the note and

14   deed of trust that would -- but for applicable Nevada law -- be

15   first position.  Berkshire subsequently deposited the note and

16   deed of trust into a Delaware statutory trust, which is

17   referred to as the Knoxville 2012 Trust, and subsequently

18   authorized 21st Mortgage Corporation to have the servicing

19   rights in connection with the note and deed of trust, and also

20   21st Mortgage acquired through a master servicing agreement

21   such servicing rights.

22       At the time of the acquisition by Berkshire of the

23   note and deed of trust, they were -- these -- this collateral

24   were assets in the bankruptcy court case, and this is evidenced

25   by us scheduled 2.2 -- this is referred to as schedule 2.13,

1    which was attached to the asset purchase agreement, which was
2    made part of the 365 sale order.  All of these papers are
3    exhibits in our moving papers.  Then also, furthermore, the
4    assignment to 21st Mortgage was memorialized by a recording of
5    the assignment of the deed of trust to 21st Mortgage, and that
6    was dated August 19th, 2014.

7            Under the terms of the 365 sale order, the -- this
8    Court retained jurisdiction over the interpretation and
9    enforcement of the 365 sale order and was authorized to protect
10   the purchaser against any claims against the purchased assets.
11   And this language was reiterated numerous times throughout the
12   365 sale order and he had brought it to the Court's attention
13   numerous times in our moving papers.

14           Most relevant, under the terms of the 365 sale order,
15   Berkshire took possession of the purchased assets free and
16   clear of all interests of any kind or nature whatsoever
17   including all rights or claims based upon any successor or
18   transferee liability.  And this is set forth at paragraphs O
19   and P and then numerous times throughout the 365 sale order.

20           Subsequently plaintiff Invest commenced an action in
21   Nevada district court seeking to quiet title pursuant to the
22   deed for the subject property out of its lien sale, and it
23   sought against all and any parties including 21st Mortgage who
24   might claim an interest in the subject property, and of course,
25   the interest of 21st Mortgage in the subject property arises

1  out of its ownership of the note and the deed of trust, which

2  follows the note.

3        Plaintiff -- sorry, 21st Mortgage filed an amended

4  petition of removal based on the federal question jurisdiction,

5  namely the 362 automatic stay, but plaintiff --

6        THE COURT:  Let me just interrupt you if I could.  I

7  mean, I understand how the case gets here.  To me, the issue is

8  whether the interest in the note and deed of trust were

9  property of the estate, and it seems to me -- and this is what

10  I'd like you to address is, the Supreme Court's White & Pools

11  decision, where it said, in part, "The legislative history

12  indicates that Congress intended to exclude from the estate

13  property of others, in which the debtor had some minor interest

14  such as a lien or bearer of legal title.  Similar statements to

15  the effect that 541(a)(1) does not expand the rights of the

16  debtor in the hands of the estate were made in the context of

17  describing the principle that the estate succeeds to no more or

18  greater causes of action against third parties than those held

19  by the debtor."

20        So why -- how do you deal with the language in White &

21  Pools.  There's also the district court decision in Virginia --

22  in Eastern Virginia -- in In re:  March, that held that the

23  debtor's junior lien interest not convert the underlying

24  secured property owned by a nondebtor into property of the

25  bankruptcy estate, subject to the provisions of the automatic

1    stay, and that district court decision was affirmed on appeal

2    by the Fourth Circuit.

3           So that's really where I would like you to focus.

4           MS. BRADSHAW:  Well, Your Honor, we would argue simply

5    that the automatic should be applied, because pursuant to

6    362(a)(4) or (5) or (6), any act to create, perfect or enforce

7    any lien against a property of the estate.  And the point is

8    that, yes, the real property was not the property of the

9    estate; the note and deed of trust were.  But the transfer of

10   the property and the inability to foreclose on the real

11   property vitiates the value of the purchased asset, and by this

12   Court's own language, the purchased assets should be free and

13   clear of such threat of being rendered valueless in essence.

14          So the relief --

15          THE COURT:  But it hinges on it being property of the

16   estate.  That's the issue.  And --

17          MS. BRADSHAW:  Exactly, and --

18          THE COURT:  -- and there are problems.  If it was

19   property of the estate, the automatic stay applied, and I won't

20   deal with the free and clear provisions for now.  But it seems

21   to me that the crucial issue is, whether this was property of

22   the estate.

23          MS. BRADSHAW:  Well, the district court did find in

24   the underlying case, in 2:15 C.B. 644, the court agrees that

25   the subject property was not part of the estate, meaning the

1    real property.  21st Mortgage and it predecessors in interest

2    to the note and deed of trust were never owners of the subject

3    property.  That is not, however, what is at issue, as you --

4    Your Honor points out.

5         21st Mortgage does not contend that the subject

6    property was part of a Residential Capital case, and this is

7    the pertinent language.  It contends that a "promissory note

8    secured by a deed of trust creating a security interest in the

9    subject property was part of the bankruptcy estate."  And the

10   court found that the note and deed of trust were part of the

11   estate.

12        Thus based upon that ruling and interpretation of

13   362(a)(4), (5) and (6), we would maintain that the note and

14   promissory -- excuse me, the promissory note and the deed of

15   trust were indeed properties of the estate, and thus should be

16   protected by the 365 sale order.

17        THE COURT:  Okay, anything else you want to add, Ms.

18   Bradshaw?

19        MS. BRADSHAW:  Just, Your Honor, that we would, if the

20   Court were to find in our favor, we would like to amend our

21   prayer for relief.  We -- rather than -- of course, we do want

22   to find a motion for summary judgment in our favor, and we

23   would like to see the HOA lien sale declared null and void and

24   set aside ab initio.  But do not wish to dismiss the case,

25   because the relief -- eventual relief we seek -- is to be able

RESIDENTIAL CAPITAL, LLC, et al.                    41

1     to go forward with our own foreclosure and sale, and to resolve

2     the issue of the super lien or the Nevada applicable law under

3     that context.

4                THE COURT:  Okay.

5                All right, Ms. Eller, do you want to argue, please?

6                MS. ELLER:  Thank you, Your Honor.  And may I say I

7     appreciate you focusing the issues here.  There really is one

8     issue and that is whether or not the actual real property,

9     which is the condominium located in Las Vegas, Nevada, was part

10    of the --

11               MR. REYNOLDS:  Excuse me, Your Honor.  I'm sorry.

12    Kenneth Reynolds, McBreen & Kopko.  I'm local counsel to Nevada

13    counsel that's on the phone.  I was delayed by traffic, and

14    just made it to the courtroom.  So it would be my intent to

15    argue on behalf of Invest Vegas.

16               THE COURT:  Ms. Eller, who do wish to have speak?

17               MS. ELLER:  Oh, Mr. Reynolds, may speak.

18               Thank you for arriving, Ken.

19               THE COURT:  Okay.  And I said earlier, Mr. Reynolds,

20    that I was advised by my courtroom deputy that you had called

21    and explained that you were going to be late because of a

22    traffic accident, with difficulty commuting into Long Island.

23    So that's fine.  Go ahead, Mr. Reynolds.

24               MR. REYNOLDS:  Again, my apologies to the Court,

25    Judge.

1        THE COURT:  Go ahead.

2        MR. REYNOLDS:  From my perspective, Your Honor, the

3   movant for summary judgment has missed the point.  They have

4   not cited one single case that addresses the issue of a junior

5   lienholder who has a collateral security interest against

6   property owned by a nondebtor which property is not part of the

7   debtors' estate.  They go on and on with respect to cases cited

8   in their memorandum of law that deals with applicability of the

9   stay.  Each one of those cases is clearly distinguishable from

10  the present situation before the Court now.

11       I could go through each case cited by the movant if

12  Your Honor would be interested in me doing so to establish that

13  the facts present in each of those cases are readily

14  distinguishable from the facts present in our case.

15       THE COURT:  You don't need to go through each case,

16  but I think you ought to address what you view as the salient

17  principals what those cases stand for and why this is

18  different.

19       MR. REYNOLDS:  Judge, I think what it boils down to

20  is -- well, first we could start with the authority that we did

21  cite which they were unable to distinguish from the present

22  situation.  And one of those cases, Judge, is the United States

23  Supreme Court in Whiting Pools.

24       In a footnote, in Whiting Pools, the court noted

25  that -- and I'll quote directly; this is from page 522,

RESIDENTIAL CAPITAL, LLC, et al.                    43

1    footnote 8 -- "Section 541(a)(1) speaks in terms of the

2    debtors' interests in property rather than property in which

3    the debtor has an interest, but this choice of language was not

4    meant to limit the expansive scope of the section.

5            "The legislative history in the case that Congress

6    intended to exclude from the estate property of others in which

7    the debtor had some minor interest such as a lien or bare legal

8    title."  And the court cites to 124 Cong. Rec. 32399, pinpoint

9    32417.

10           Subsequent to Whiting Pools, the one case cited by

11   either party, that being cited in the opposition brief to

12   plaintiff's motion for summary judgment is In re Lloyd March

13   which was decided by the United States District Court for the

14   Eastern District of Virginia, and that case was decided in 1992

15   (sic).

16           That case dealt specifically with the scope of the

17   541(a)(1) interests in property of the estate, and attached

18   thereto would be the scope and impact of the automatic stay.

19           So in the March decision, the court concluded that

20   property owned by a nondebtor would not be impacted by a

21   debtors' filing who held a junior lien interest, and the court

22   concluded that the junior lien interest, being nothing more

23   than an interest in property, not a property interest, was not

24   subject to the automatic stay.

25           The court went through a well-reasoned decision in

1  reaching that conclusion, and I'd like to quote some of the

2  language for the record.  And at page -- I'm sorry; give me a

3  minute, Judge.  At page 4, headnote 5 -- well, actually, it's

4  page 5, the court states, "Although the Bankruptcy Code does

5  not specifically address this situation" -- that being the

6  junior lienholder situation -- "the language of the relevant

7  provisions, and the authorities interpreting the Code, and

8  addressing the issue persuade this Court that a debtors' junior

9  lien interest does not convert the underlying secured property

10 owned by another into property of the bankruptcy estate,

11 subject to the provisions of the automatic stay.

12         First, nothing in the provisions of the automatic stay

13 itself protect the debtors' junior lien interest.  Other courts

14 considering the issue, have concluded that the automatic stay

15 imposed by 11 U.S.C. Section 362 (a) does not prevent

16 nonjudicial foreclosure of a senior real estate property

17 security interest when the holder of a junior security interest

18 in the same real property files for bankruptcy relief."

19         That's the exact situation present before us here

20 today, Judge.

21         They cite to Thomas J. Holthus, a debtor as a creditor

22 in the automatic stay, found at 62 Am. Bnkr. L.J. 377 (1988).

23 And then it goes on to say that "discussing the few cases that

24 have addressed this issue, and pervasively distinguishing those

25 cases that enforce the automatic stay" and that would be, for

1  instance, the case that we cited in our brief, Bibo which was a

2  Las Vegas decision which held directly that a junior lien

3  interest in property of a nondebtor, the lower court held that

4  it was property of the estate subject to the automatic stay,

5  and that decision was reversed on appeal by the Ninth Circuit.

6        So there's no case law in support of movants'

7  position, and we've established case law that has not been

8  refuted that states junior interests in property owned by

9  another are not property of the estate and are not, therefore,

10 subject to the automatic stay.

11       Judge, in many of these cases where this type of issue

12 presents itself, the debtors seek an order of the Court to

13 establish the applicability of the automatic stay and seek to

14 obtain an order to stop the process which is going on in a

15 nonjudicial form as it was here with the judicial sale --

16 nonjudicial sale, by the homeowners' association of its super

17 priority lien.

18       It was a public record; everyone was aware.  They had

19 every opportunity to try to make the stay, or try to establish

20 that the stay was applicable, and they didn't.  So all they do

21 is they continue to refer to the 363 sale order and all the

22 standard provisions that are in a 363 sale order concerning

23 others that maintain an interest in the debtors' property, or

24 interests that are superior to the debtors' property, that

25 being the junior lien, but that order was signed subsequent to

RESIDENTIAL CAPITAL, LLC, et al.                    46

1    the foreclosure sale.

2            So from my perspective, there's no basis by which you

3    can argue that any of those provisions in the sale order would

4    have avoided, or created some sort of an estoppel for the HOA

5    sale because the HOA sale already occurred.  So I think we're

6    left with the very, very basic simple issue is that junior lien

7    of 21st Mortgage property of the bankruptcy estate and if so,

8    the applicability of the stay?  I say no.  The case law I

9    cited, including the Supreme Court, says no.  It sort of turns

10   the bankruptcy on its head.

11           Bankruptcy was meant to protect a debtor from

12   creditors where 21st Mortgage is a creditor.  They weren't

13   forced into the bankruptcy by the property owner.

14           Property owner's an innocent nondebtor party to this,

15   and the debtor is a creditor of that homeowner, and they're

16   making the argument that as a creditor they're seeking stay

17   relief to protect their interest to go against the debtor?

18   That is not, in my view--

19           THE COURT:  Mr. Reynolds, a question.

20           MR. REYNOLDS:  -- and in my reading of Congressional

21   intent --

22           THE COURT:  Mr. Reynolds, I want to stop --

23           MR. REYNOLDS:  -- concerning the stay applicable or

24   readily usable by the 21st Mortgage in this case.

25           THE COURT:  All right.  Take a breath, Mr. Reynolds.

1   One of the -- it does seem to me that this case raises a fairly

2   legal issue that I think is going to be dispositive for one

3   side or the other.  What I have is one side's (indiscernible)

4   for summary judgment.  I don't have a cross motion for summary

5   judgment.

6          56(f), the Court, after giving notice and a reasonable

7   time to respond, the Court may make some judgment for a

8   nonmovant to grant the motion on grounds not raised by a party

9   here -- I think everybody raised an issue -- to reconsider

10  summary judgment on its own after identifying the parties --

11  the party material facts that may not be genuinely in dispute.

12         This does seem to me to be an issue where the facts on

13  the central issue are not in dispute, but I only have a motion

14  from one side.  I would ordinarily not be inclined to simply

15  address the issue on my own sua sponte, however, Rule 56(f)

16  clearly permits me to do that.

17         Let me first give Ms. Bradshaw a chance to respond and

18  then we'll come back however you want to proceed.

19         Ms. Bradshaw, go ahead; you want to reply?

20         MS. BRADSHAW:  Thank you, Your Honor.

21         Our response is simply, Your Honor, that this Court's

22  language is crystal clear and yes, we concede that the

23  bankruptcy law itself did not perhaps contemplate this

24  complexity of eventual events coming out of the original

25  filing.  However, what we have here is a societal sea change

1  and the sale order is -- a 365 sale order is really the

2  powerful and governing document in --

3              THE COURT:  The 365 sale order deals with a sale of

4  property of the estate.

5              MS. BRADSHAW:  Exactly.

6              THE COURT:  The issue that's been raised for me is a

7  legal issue whether the junior lien interest is property of the

8  estate --

9              MS. BRADSHAW:  Well, with a point out, Your Honor,

10  that it didn't become --

11             THE COURT:  Stop.  Stop.

12             MS. BRADSHAW:  Sorry.

13             THE COURT:  Don't interrupt me.

14             MS. BRADSHAW:  I'm sorry; go ahead.

15             THE COURT:  Do not interrupt me.

16             That seems to me to be a gaiting issue here.  Parties

17  dispute that legal issue but it is a legal issue.

18             Go ahead, Ms. Bradshaw.

19             MS. BRADSHAW:  I'm sorry.  I did not mean to interrupt

20  you.  It's just that on that point, the timing is what we are

21  emphasizing it -- mainly that it wouldn't have evolved into a

22  junior lien had the action, the HOA's foreclosure action, not

23  been filed and if that foreclosure action was filed after the

24  bankruptcy was commenced.

25             So my point is that the assets were already protected

1   by the automatic stay at the point when the HOA purportedly

2   turned this lien into a junior lien.

3          The practicality of it is that were we permitted to

4   proceed and foreclose on these assets, we would address, as we

5   do in other jurisdictions, the lien of the HOA in that context,

6   and the HOA would presumably have been made whole.  We were

7   deprived of that opportunity because the HOA filed its suit

8   while the asset should have been under the protection of the

9   bankruptcy commencement.

10          MS. ELLER:  Your Honor, this is Crystal Eller in Las

11   Vegas.

12          THE COURT:  Go ahead, Ms. Eller.  I already -- only --

13   ordinarily only allow one lawyer from each side to argue.  But

14   go ahead; I'll hear you briefly.

15          MS. ELLER:  I understand that and I appreciate it very

16   much.  Just very, very briefly.

17          With regard to the allegation just made by Ms.

18   Bradshaw, she stated that her lien would not -- 21st Mortgage's

19   lien would not be junior; it would not have evolved to a junior

20   lien status if it had not been for the HOA sale.  That is not

21   correct.

22          Under Nevada law by the Supreme Court of Nevada, the

23   HOA has a super priority lien from the instance that the HOA

24   CC&R and other governing documents such as the bylaws, are

25   recorded with the county when the neighborhood is created by

RESIDENTIAL CAPITAL, LLC, et al.                    50

1    the builder.

2          So her lien -- 21st Century Mortgage -- 21st Mortgage

3    lien has always been junior.  It didn't become junior upon the

4    sale.  And I think that could be of significance and that's why

5    I spoke up.  Thank you, Your Honor.

6          THE COURT:  All right.  Okay.  Ms. Eller or Mr.

7    Reynolds, do you wish to make a cross motion for summary

8    judgment?

9          MR. REYNOLDS:  Your Honor, if you deem it necessary, I

10   would --

11         THE COURT:  Well, I'd like -- if I agree with Ms.

12   Bradshaw, her motion for summary judgment would get granted,

13   but if I don't, the motion gets denied, then I'm left with a

14   case that's sitting here when it does seem to me to be a pure

15   legal issue.

16         While I think Rule 56(f) would give me the authority

17   to go -- to add sua sponte, it would be my preference to add,

18   if you wish -- you don't want to do it, fine; don't do it --

19   get your own cross motions filed.  I will give Ms. Bradshaw a

20   short time to respond.  I'll decide whether any further

21   argument is needed and I'll go ahead and rule.

22         MR. REYNOLDS:  That's fine, Your Honor.  I was just

23   trying to conserve resources of the client, but I would point

24   out that our opposition that was filed one week before the

25   hearing stated in our request for relief that be awarded, such

1   a relief as this Court deems just, equitable, and proper

2   including, but not limited to, summary judgment in favor of it

3   in Invest Vegas.

4          Several days prior to this hearing, a reply was filed

5   to these papers, and the reply did not address any issue

6   concerning an award of summary judgment.  So I would say

7   that -- and I believe 56(f) may be applicable, but if Your

8   Honor's preference is for a separate motion, we will file a

9   separate motion.

10          THE COURT:  My preference would be a separate motion

11   so that there's no procedural quagmire, or if and when I go

12   ahead and rule on the motions, it's quite clear what I have

13   before me.

14          So how much time, Ms. Eller or Mr. Reynolds, do you

15   want to file a motion?

16          MR. REYNOLDS:  Judge, I would request two weeks to

17   file a motion.

18          THE COURT:  All right.  And then, Ms. Bradshaw, how

19   much time do you want to respond to that?  And I don't think

20   your arguments are any different than what I've been hearing

21   already, but --

22          MS. BRADSHAW:  Sorry, Your Honor.  Logistics.

23          Two weeks, Your Honor.

24          THE COURT:  Okay.  All right.  I'm going to enter an

25   order that takes the pending motion under submission, gives the

RESIDENTIAL CAPITAL, LLC, et al.                    52

1   plaintiff two weeks to file its -- a cross motion for summary

2   judgment, the defendant two weeks to respond to it, no reply

3   necessary or needed here.  After receiving, at briefing, I'll

4   decide whether I want to hear argument and I'll just go ahead

5   and cite it on the papers, okay?

6            So we'll enter a brief --

7            MS. BRADSHAW:  Yes, Your Honor.

8            THE COURT:  -- to the effect I've just described.

9            MS. BRADSHAW:  Yes, Your Honor.  Thank you.

10           THE COURT:  Okay.  Thank you very much.

11           MS. ELLER:  Thank you.

12           THE COURT:  All right.  I think that concludes our

13  agenda.  Is there anything else one of my clerks can point out

14  to?

15           MS. ELLER:  No, Judge, that's everything.

16           THE COURT:  All right.  We're adjourned.  Thank you

17  very much everybody.

18           MS. ELLER:  Thank you, Judge.

19           MR. REYNOLDS:  Thanks, Judge.

20      (Whereupon these proceedings were concluded at 11:16 AM)

21

22

23

24

25

1

2                                  **I N D E X**

3

4                                  RULINGS

5                                                    Page      Line

6   Court sustains Borrower trust's               31         11

7   ninety-third omnibus objection as to all,

8   other than Blake

9   Court sustains objection as to Blake          32         20

10  and claim is reclassified

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                 C E R T I F I C A T I O N

3

4    I, Esther Accardi, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   ESTHER ACCARDI

12   AAERT Certified Electronic Transcriber CET**D 485

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  June 16, 2016

19

20

21

22

23

24

25

12-12020-mg Doc 9948 Filed 06/16/16 Entered 06/20/16 14:45:42 Main Document
Pg 55 of 66

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg                                                    June 15, 2016

## #

**#607 (1)**
2:22

## A

**ab (1)**
40:24
**able (9)**
9:5,6;11:18;16:8,
10;17:9;22:13;
23:25;40:25
**above (1)**
20:16
**Abramson (1)**
10:13
**Absolutely (1)**
33:15
**Accardi (1)**
2:20
**accident (3)**
34:10,12;41:22
**accordance (1)**
15:21
**account (2)**
8:24;13:5
**accuracy (1)**
25:10
**acknowledge (1)**
7:12
**acknowledged (2)**
7:9;11:17
**acquired (2)**
36:6,20
**acquisition (1)**
36:22
**Act (4)**
6:2;9:20;14:20;
39:6
**action (13)**
9:21;10:3,9;11:1;
13:21;19:19;27:24;
28:19;37:20;38:18;
48:22,22,23
**actively (1)**
15:1
**acts (1)**
12:16
**actual (8)**
6:8;11:18,24;
12:12,19;16:7;20:5;
41:8
**actually (6)**
15:5;23:24;27:20;
29:10;36:9;44:3
**add (5)**
12:1;29:25;40:17;
50:17,17
**additional (1)**
15:21
**additionally (1)**

**32:2**
**address (14)**
6:7,8;8:8;10:12;
15:13;19:11;28:23;
31:5;38:10;42:16;
44:5;47:15;49:4;
51:5
**addressed (1)**
44:24
**addresses (1)**
42:4
**addressing (3)**
19:5;31:6;44:8
**adjourned (2)**
25:14;52:16
**admissible (1)**
9:13
**admit (1)**
18:2
**admits (1)**
10:19
**Adversary (5)**
2:16;21:6;33:2,9,
21
**advised (2)**
34:12;41:20
**affected (1)**
36:3
**affirmed (2)**
28:2;39:1
**afternoon (1)**
22:11
**again (7)**
5:25;7:10;8:24;
10:17;21:21;33:14;
41:24
**against (15)**
9:23;14:11;25:6;
29:10;30:12;33:10,
21;35:14;37:10,10,
23;38:18;39:7;42:5;
46:17
**agencies (2)**
8:1;21:19
**agenda (7)**
5:9;24:14;25:1;
30:7,8;33:4;52:13
**agent (1)**
9:24
**agree (10)**
6:24;7:2;9:15;
11:2;21:2,12;23:1;
26:19;32:9;50:11
**agreed (2)**
6:13;12:10
**agreement (9)**
6:14,14,18,23;7:4,
18;18:1;36:20;37:1
**agrees (1)**
39:24
**ahead (17)**
5:17;9:17;12:22;
19:3;22:12;25:21;

**34:4;41:23;42:1;**
**47:19;48:14,18;**
**49:12,14;50:21;**
**51:12;52:4**
**al (2)**
2:16,17
**alert (1)**
29:16
**allegation (2)**
29:16;49:17
**allegations (6)**
6:1;14:14,19;
18:11;25:10;29:10
**allege (1)**
14:13
**alleged (6)**
7:23;9:3;10:6;
12:16;15:1;21:18
**alleges (2)**
11:13;14:12
**alleging (4)**
11:14;18:9,19;
29:20
**allocate (1)**
23:9
**Allow (6)**
2:11,12,13,14;
30:14;49:13
**Allowed (4)**
2:6;32:7,10,21
**allows (1)**
19:17
**along (1)**
13:7
**Although (3)**
15:4;20:7;44:4
**always (1)**
50:3
**AMC (1)**
10:10
**amend (1)**
40:20
**amended (2)**
8:13;38:3
**amount (6)**
10:6;16:14;32:7,
10,22;35:3
**amounts (2)**
30:17,18
**analysis (2)**
8:17;10:17
**analyst (2)**
5:20;25:25
**and/or (1)**
30:13
**annexed (1)**
35:6
**apologies (1)**
41:24
**apologize (2)**
19:2;34:23
**apparently (1)**
6:20

**appeal (13)**
16:5;26:8,12,22,
22;27:6,10,18,20,22;
28:2;39:1;45:5
**appealed (2)**
27:25,25
**appear (2)**
11:2;30:19
**appearances (1)**
33:19
**APPEARING (7)**
4:20;31:1,2;33:11;
34:1,2,6
**appears (2)**
13:14;14:8
**appellate (1)**
28:1
**applicability (3)**
42:8;45:13;46:8
**applicable (6)**
30:17;36:14;41:2;
45:20;46:23;51:7
**applied (2)**
39:5,19
**applies (1)**
27:3
**apply (4)**
21:5;26:9;32:19;
34:3
**appreciate (2)**
41:7;49:15
**appropriate (4)**
12:9;16:20;23:4;
27:7
**April (1)**
28:1
**Arett (36)**
5:3;24:21,23,23;
25:21,22;26:17,18,
25;27:7,11,15,20;
28:3,6,10;29:3,14,
20;30:1,4,5,23;31:6,
13;32:12,17,18,24,
25;33:4,7,10,13,13,
16
**arguably (1)**
16:25
**argue (7)**
34:14,15;39:4;
41:5,15;46:3;49:13
**argument (4)**
16:11;46:16;
50:21;52:4
**arguments (1)**
51:20
**arise (1)**
31:18
**arises (1)**
37:25
**Arizona (2)**
11:10;14:2
**around (1)**
29:18

**arrange (1)**
22:10
**arrive (1)**
34:10
**arriving (1)**
41:18
**aside (1)**
40:24
**aspect (1)**
20:10
**assert (1)**
30:13
**asserted (5)**
6:3;28:8;30:17,18;
32:7
**asserts (2)**
31:16,25
**assess (1)**
12:7
**assessment (1)**
11:23
**assessments (2)**
35:14,18
**asset (3)**
37:1;39:11;49:8
**assets (7)**
36:3,24;37:10,15;
39:12;48:25;49:4
**assignment (2)**
37:4,5
**assistance (1)**
22:10
**Association (3)**
35:10,10;45:16
**assuming (1)**
11:19
**attached (6)**
14:16,17;18:13;
29:23;37:1;43:17
**attention (1)**
37:12
**Attorneys (3)**
4:3,12;20:20
**attorney's (1)**
16:8
**August (2)**
8:14;37:6
**authorities (2)**
10:10;44:7
**authority (5)**
10:16;17:1,2;
42:20;50:16
**authorized (2)**
36:18;37:9
**automatic (17)**
36:4,5;38:5,25;
39:5,19;43:18,24;
44:11,12,14,22,25;
45:4,10,13;49:1
**available (3)**
15:22;23:11;26:3
**avoided (1)**
46:4

**award (1)**
  51:6
**awarded (1)**
  50:25
**aware (2)**
  13:17;45:18

**B**

**back (4)**
  17:14;23:24;
  35:21;47:18
**background (1)**
  23:3
**balance (1)**
  8:4
**Bank (1)**
  11:9
**bankruptcy (20)**
  9:23;17:23;26:23;
  31:16,18;36:1,8,24;
  38:25;40:9;44:4,10,
  18;46:7,10,11,13;
  47:23;48:24;49:9
**banks (1)**
  29:6
**bar (2)**
  30:17;34:7
**bare (1)**
  43:7
**barred (7)**
  26:14;28:8,19,21;
  29:4,9,11
**based (9)**
  8:16;14:9;26:10,
  13;31:16;32:1;
  37:17;38:4;40:12
**basic (1)**
  46:6
**basically (3)**
  8:15;10:19;13:2
**basis (7)**
  28:10;29:1,4,14;
  30:20;32:4;46:2
**bear (1)**
  11:8
**bearer (1)**
  38:14
**became (1)**
  6:18
**become (3)**
  7:5;48:10;50:3
**becomes (1)**
  10:23
**began (1)**
  6:12
**begin (2)**
  5:4,7
**behalf (6)**
  7:5;24:24;25:19;
  30:25;31:2;41:15
**behavior (2)**
  14:19,22

**believing (1)**
  22:9
**below (1)**
  30:17
**Berkshire (4)**
  36:13,15,22;37:15
**Beverly (1)**
  30:22
**Bibo (1)**
  45:1
**big (1)**
  20:15
**Blake (14)**
  30:22,25;31:1,2,3,
  5,7,12,14,16,24;
  32:15,16,20
**Bnkr (1)**
  44:22
**boils (1)**
  42:19
**books (2)**
  25:9,11
**Borrower (25)**
  2:4,5,6,10,11,12,
  13,14;5:10,23;6:4;
  24:17,24;25:1,5,8,
  14,22,24;26:1;30:7,
  8,11,14;32:4
**Borrowers (2)**
  5:20;29:7
**both (8)**
  5:21;6:15;11:3;
  16:16;17:3;21:5,15;
  26:7
**BRADSHAW (29)**
  33:20,22,25;34:19,
  21,22,24;35:1;39:4,
  17,23;40:18,19;
  47:17,19,20;48:5,9,
  12,14,18,19;49:18;
  50:12,19;51:18,22;
  52:7,9
**breach (4)**
  28:12,21;29:11,15
**breath (1)**
  46:25
**brief (5)**
  19:15;22:15;
  43:11;45:1;52:6
**briefed (5)**
  6:3;27:13,15,22;
  28:22
**briefing (1)**
  52:3
**briefly (5)**
  15:13;20:4;28:23;
  49:14,16
**briefs (2)**
  22:14,16
**bring (2)**
  18:2,3
**Broadway (1)**
  4:4

**brought (1)**
  37:12
**builder (1)**
  50:1
**bureau (3)**
  9:2;13:16,18
**bureaus (6)**
  7:13,16;8:13;9:24;
  10:1;17:17
**business (2)**
  28:16,17
**bylaws (1)**
  49:24

**C**

**California (2)**
  28:17;29:6
**call (4)**
  20:25;22:10,13;
  34:11
**called (1)**
  41:20
**calling (1)**
  23:24
**calls (1)**
  22:11
**can (22)**
  9:11;12:6,7;14:11;
  17:25;18:1,3;19:24;
  20:4,25;21:8,12,17,
  20;23:1,2,17;28:22;
  34:15,25;46:3;52:13
**cancellation (1)**
  28:14
**cap (1)**
  32:3
**capacity (1)**
  6:8
**Capital (3)**
  4:21;36:2;40:6
**cards (1)**
  18:12
**case (49)**
  10:14;11:8;12:8;
  13:21,22;14:24;15:3,
  14,20,24;17:14;
  18:21;19:14,14,15,
  16;20:19;21:4,13,23,
  24;22:6;23:3;26:9,
  10;29:7;31:19;35:9;
  36:1,24;38:7;39:24;
  40:6,24;42:4,11,14,
  15;43:5,10,14,16;
  45:1,6,7;46:8,24;
  47:1;50:14
**cases (12)**
  14:2;19:19;20:1,
  12;42:7,9,13,17,22;
  44:23,25;45:11
**cash (1)**
  21:2
**causes (7)**

  9:21;10:3,9;11:1;
  13:20;19:19;38:18
**CB (1)**
  39:24
**CC (4)**
  2:2,4,10,18
**CC&R (1)**
  49:24
**cede (2)**
  24:20;33:4
**central (1)**
  47:13
**Century (1)**
  50:2
**certainly (7)**
  14:13;16:19;
  19:24;21:8,12;22:5,6
**cetera (1)**
  21:22
**challenge (1)**
  28:11
**chamber's (1)**
  21:7
**chance (2)**
  17:24;47:17
**change (1)**
  47:25
**Chapter (1)**
  26:23
**check-in (1)**
  25:19
**choice (1)**
  43:3
**chooses (1)**
  27:6
**CHRISTOPHER (3)**
  4:11,17;5:13
**Circuit (17)**
  10:11,12,16;
  13:25;14:1,6,21;
  15:3;17:1,2;18:24;
  19:9,16;27:6,14;
  39:2;45:5
**circuits (1)**
  14:21
**circumstances (1)**
  32:19
**cite (3)**
  42:21;44:21;52:5
**cited (7)**
  42:4,7,11;43:10,
  11;45:1;46:9
**cites (1)**
  43:8
**Claim (50)**
  2:6,7;5:11,24;6:3;
  10:6;11:5,21,21;
  13:24;14:25;16:11,
  13;25:5,11,15,15;
  26:5,13,21;28:10,12,
  13,13,14,14,15,16,
  17,20,21;29:9,11,15;
  30:12,14;31:14,15,

  15,16,25;32:2,5,6,6,
  9,16,20,21;37:24
**claimant (17)**
  6:10,13,18,24;
  8:21,25;9:19,22,25;
  10:4,12;12:11,16;
  18:9,13,17,18
**claimant's (4)**
  6:7;9:1;10:5;12:5
**Claims (43)**
  2:2,4,5,5,10,11,12,
  12,13,14;5:10,20,23;
  11:11,12;14:9,11;
  15:18;16:2;24:17,18,
  24,25;25:2,4,6,25;
  26:15;28:7;29:2,4;
  30:8,9,15,15,16,20;
  31:9,9,18;32:3;
  37:10,17
**class (1)**
  30:17
**classification (1)**
  30:19
**clear (8)**
  6:19;11:4;12:8;
  37:16;39:13,20;
  47:22;51:12
**clearest (1)**
  14:3
**clearly (3)**
  18:16;42:9;47:16
**CLERK (1)**
  34:3
**clerks (1)**
  52:13
**client (3)**
  17:18;18:11;50:23
**client's (1)**
  13:1
**closed (2)**
  13:3,4
**Code (4)**
  31:16,18;44:4,7
**collateral (2)**
  36:23;42:5
**coming (1)**
  47:24
**commence (1)**
  9:22
**commenced (3)**
  36:2;37:20;48:24
**commencement (1)**
  31:19;49:9
**common (5)**
  9:21;10:3,9;13:20;
  14:1
**communication (1)**
  17:18
**communications (2)**
  17:17,19
**commuting (1)**
  41:22
**compensable (1)**

20:5
**complaint (3)**
14:15,16;29:9
**complexity (1)**
47:24
**comprising (1)**
35:7
**concede (1)**
47:22
**concerning (3)**
45:22;46:23;51:6
**concluded (4)**
43:19,22;44:14;
52:20
**concludes (1)**
52:12
**conclusion (1)**
44:1
**condominium (2)**
35:7;41:9
**confer (6)**
17:13;21:2,12;
22:8;23:1,25
**conferences (1)**
22:18
**confirmed (1)**
15:21
**Cong (1)**
43:8
**Congress (2)**
38:12;43:5
**Congressional (1)**
46:20
**connecting (2)**
12:15,18
**connection (2)**
31:20;36:19
**consequences (2)**
12:16;18:10
**Consequently (1)**
32:20
**conserve (1)**
50:23
**considering (1)**
44:14
**consistent (8)**
7:17;12:8;15:18,
23;16:3,6,13;21:13
**contemplate (1)**
47:23
**contend (1)**
40:5
**contends (2)**
12:16;40:7
**contention (2)**
9:14;13:7
**contested (1)**
21:5
**context (3)**
38:16;41:3;49:5
**continue (2)**
12:14;45:21
**continued (4)**

7:15,25;8:3;9:14
**continuing (2)**
8:7;10:21
**contract (4)**
28:12,21;29:11,15
**controlling (1)**
17:2
**convenience (1)**
30:17
**conversant (1)**
18:3
**convert (2)**
38:23;44:9
**Corporation (4)**
2:17;33:9,23;
36:18
**correction (2)**
8:12,23
**counsel (13)**
13:22;17:13,25;
18:5;19:25;24:1;
33:6,18,20;34:3,8;
41:12,13
**countersignature (2)**
7:4,7
**county (1)**
49:25
**course (2)**
37:24;40:21
**COURT (145)**
5:4,7,13,16;6:22;
7:2,15,22;8:20;9:10,
17;10:11,18;11:9,11;
12:1,6,21;13:23;
14:4,6;15:6,17;18:6,
21;19:1,3,6,11;20:3,
23,25;22:10,11,21,
21;23:11,13;24:4,7,
10,13,19,22;25:18;
26:3,6,7,15,18,20;
27:1,1,4,9,13,18,21,
23,23;28:1,4,7,23;
29:13,18,24;30:2,21,
25;31:8,10;32:8,13,
13;33:3,6,8,11,15,17,
18,24;34:1,4,11,17,
19,23,25;36:9,24;
37:8,21;38:6,21;
39:1,15,18,23,24;
40:10,17,20;41:4,16,
19,24;42:1,10,15,23,
24;43:8,13,19,21,25;
44:4,8;45:3,12;46:9,
19,22,25;47:6,7;
48:3,6,11,13,15;
49:12,22;50:6,11;
51:1,10,18,24;52:8,
10,12,16
**courtroom (4)**
23:20;34:11;
41:14,20
**courts (3)**
17:1;26:11;44:13

**Court's (5)**
21:7;37:12;38:10;
39:12;47:21
**cover (3)**
9:1;13:5;22:2
**create (1)**
39:6
**created (2)**
46:4;49:25
**creating (1)**
40:8
**Credit (29)**
6:2,11;7:13,16,25;
8:13,13,22;9:2,7,20,
24;10:1;12:18;13:3,
11,16,17;14:20;
17:17;18:11,12,12;
20:8,8,9,17,18;21:18
**creditor (5)**
15:22;44:21;
46:12,15,16
**creditors (5)**
14:11;15:21;16:1,
2;46:12
**creditor's (1)**
14:9
**cross (4)**
47:4;50:7,19;52:1
**cross- (1)**
23:11
**crucial (1)**
39:21
**CRYSTAL (4)**
4:22;34:6;47:22;
49:10
**current (1)**
35:2
**currently (1)**
26:8

## D

**damage (1)**
16:2
**damages (30)**
6:8;9:19;10:5,7,
23;11:3,18,20,24,25;
12:7,9,12,19;15:18,
25;16:3,7,12,14;
17:3,9;18:19,20,23;
19:7,14,18;20:5;23:5
**date (4)**
9:12;13:14,15;
35:20
**dated (2)**
36:12;37:6
**day (2)**
22:19;27:1
**days (4)**
8:25;21:9,10;51:4
**deal (4)**
22:23;31:10;
38:20;39:20

**deals (3)**
13:10;42:8;48:3
**dealt (1)**
43:16
**debtor (13)**
7:5;30:13,18;36:7;
38:13,16,19;43:3,7;
44:21;46:11,15,17
**debtors (5)**
7:15,18;25:7,8;
45:12
**debtors' (9)**
7:3;25:9;42:7;
43:2,21;44:8,13;
45:23,24
**debtor's (1)**
38:23
**December (2)**
6:12;35:24
**decide (4)**
10:15;16:24;
50:20;52:4
**decided (4)**
10:16;13:23;
43:13,14
**deciding (1)**
11:7
**decision (10)**
11:9;26:12;27:4;
38:11,21;39:1;43:19,
25;45:2,5
**declarant (1)**
23:11
**declaration (8)**
5:21,22;9:1;13:1,
12,12;23:10;25:25
**declared (1)**
40:23
**deed (18)**
29:17;35:4,24,24;
36:7,14,16,19,23;
37:5,22;38:1,8;39:9;
40:2,8,10,14
**deem (1)**
50:9
**deems (1)**
51:1
**defamation (10)**
9:21;10:3;11:1,3,
5,11,12,21;14:11;
17:4
**default (3)**
21:9;28:16;35:16
**defaults (1)**
7:19
**defects (1)**
30:18
**defendant (2)**
33:20;52:2
**defendants (1)**
20:13
**Delaware (1)**
36:16

**delayed (1)**
41:13
**delinquent (2)**
35:14,18
**delivered (1)**
31:23
**demonstrated (1)**
29:5
**denied (1)**
50:13
**depend (1)**
18:15
**depends (1)**
18:9
**depose (1)**
18:17
**deposit (1)**
31:19
**deposited (1)**
36:15
**deposition (1)**
23:14
**depositions (1)**
21:22
**deposits (1)**
31:24
**deprived (1)**
49:7
**deputy (2)**
34:12;41:20
**described (1)**
52:8
**describing (1)**
38:17
**despite (1)**
8:23
**details (1)**
31:7
**detainer (5)**
27:24;28:2,9,19,25
**determined (1)**
25:11
**Diane (1)**
33:21
**Diem (1)**
2:7
**different (3)**
11:24;42:18;51:20
**difficult (1)**
20:12
**difficulty (1)**
41:22
**direct (1)**
23:10
**directly (2)**
42:25;45:2
**disagree (1)**
16:5
**disagreements (1)**
13:25
**discovery (10)**
17:11,22;18:2,7;
21:10,16;22:7,7,13,

17
**discretion (1)**
  12:7
**discuss (2)**
  17:25;23:16
**discusses (1)**
  10:14
**discussing (1)**
  44:23
**discussions (2)**
  12:12,14
**dismiss (2)**
  26:11;40:24
**dismissed (3)**
  13:24;26:7,20
**dispositive (2)**
  11:16;47:2
**dispute (11)**
  7:24;8:6;9:8;
  10:22,22;17:7;21:19,
  21;47:11,13;48:17
**disputed (2)**
  9:10;17:7
**disputes (4)**
  6:5;12:25;18:4;
  22:7
**disputing (1)**
  17:4
**distinct (1)**
  19:18
**distinguish (1)**
  42:21
**distinguishable (2)**
  42:9,14
**distinguishing (1)**
  44:24
**distress (7)**
  18:19,23;19:7,13,
  17;20:7,10
**distributed (1)**
  15:20
**distributions (1)**
  15:23
**district (12)**
  10:11;11:9;17:1;
  26:20;27:3,21;
  37:21;38:21;39:1,
  23;43:13,14
**Doc (4)**
  2:2,4,10,18
**docket (8)**
  5:12;25:2,23;
  27:16,21,21;30:10;
  31:4
**doctor (4)**
  19:20,21,23,25
**doctrine (1)**
  26:14
**document (1)**
  48:2
**documents (2)**
  35:5;49:24
**dollar (3)**

15:22,22;20:11
**dollars (5)**
  8:4;32:3,11,22;
  35:3
**done (2)**
  7:9;32:18
**dots (2)**
  12:15,18
**double-check (1)**
  27:22
**down (2)**
  6:7;42:19
**due (2)**
  8:25;34:9
**during (2)**
  20:8,16
**duty (2)**
  29:5,7
**Dvorak (3)**
  10:10,17;13:21

**E**

**earlier (3)**
  16:23;34:12;41:19
**early (1)**
  23:24
**East (1)**
  35:7
**Eastern (2)**
  38:22;43:14
**ECF (2)**
  5:25;31:3
**effect (8)**
  26:12,21;27:4;
  28:5,8,25;38:15;52:8
**effective (4)**
  6:23;7:3,5,8
**effects (1)**
  18:10
**effort (1)**
  25:10
**either (3)**
  15:7,8;43:11
**election (1)**
  35:17
**ELLER (19)**
  4:22;34:5,6,14,15,
  18;41:5,6,16,17;
  49:10,10,12,15;50:6;
  51:14;52:11,15,18
**else (4)**
  12:1;29:24;40:17;
  52:13
**eminently (1)**
  24:4
**emotional (7)**
  18:18,22;19:7,13,
  17;20:7,10
**emphasizing (1)**
  48:21
**encompassed (1)**
  15:7

**encourage (1)**
  16:19
**end (3)**
  13:4;20:25;21:25
**enforce (4)**
  35:16;36:6;39:6;
  44:25
**enforcement (1)**
  37:9
**enjoy (1)**
  24:10
**enter (3)**
  30:3;51:24;52:6
**entered (2)**
  7:17;36:9
**entitled (7)**
  10:4,24;16:11;
  26:24;27:1;28:5;
  32:17
**equitable (1)**
  51:1
**equity (1)**
  13:3
**error (2)**
  7:14;10:22
**escape (1)**
  11:12
**eScribers (1)**
  2:21
**ESQ (2)**
  4:8,17
**essence (1)**
  39:13
**essentially (2)**
  17:4;19:17
**establish (3)**
  42:12;45:13,19
**established (3)**
  16:12;19:20;45:7
**establishing (1)**
  19:17
**estate (24)**
  38:9,12,16,17,25;
  39:7,9,16,19,22,25;
  40:9,11,15;42:7;
  43:6,17;44:10,16;
  45:4,9;46:7;48:4,8
**Esther (1)**
  2:20
**estoppel (2)**
  29:8;46:4
**et (3)**
  2:16,17;21:22
**even (1)**
  22:12
**event (1)**
  16:24
**events (1)**
  47:24
**eventual (2)**
  40:25;47:24
**Everybody (3)**
  23:19;47:9;52:17

**everyone (2)**
  31:12;45:18
**evidence (4)**
  9:13;15:11;25:8;
  29:22
**evidenced (1)**
  36:24
**evolved (2)**
  48:21;49:19
**exact (2)**
  20:11;44:19
**exactly (4)**
  20:13;29:20;
  39:17;48:5
**examination (1)**
  23:12
**examined (1)**
  25:9
**exceeds (1)**
  32:2
**excellent (1)**
  20:17
**exclude (2)**
  38:12;43:6
**excuse (2)**
  40:14;41:11
**excused (1)**
  33:14
**execute (2)**
  6:17;7:12
**executed (4)**
  6:18,19;7:10,11
**exhibit (7)**
  9:1;13:1,11;14:17,
  18;26:1;29:23
**exhibits (2)**
  6:15;37:3
**existing (1)**
  15:3
**expand (1)**
  38:15
**expansive (1)**
  43:4
**expedite (1)**
  22:17
**expensive (1)**
  23:18
**expert (4)**
  18:13,16;20:20;
  21:10
**experts (1)**
  20:20
**explain (1)**
  22:2
**explained (1)**
  41:21
**expunge (2)**
  25:5;29:2
**expunged (1)**
  16:11
**extent (2)**
  18:17;21:19
**external (1)**

18:15

**F**

**F3d (1)**
  10:13
**fact (7)**
  8:23;9:10;16:19;
  17:7;21:9;29:20,22
**facts (7)**
  12:25;21:17,17;
  42:13,14;47:11,12
**factual (4)**
  6:5;7:24;8:6;
  10:21;13:10;23:5
**failure (1)**
  7:12
**Fair (3)**
  6:2;9:20;14:20
**fairly (1)**
  47:1
**falsity (2)**
  14:12,13
**family (1)**
  31:21
**Fanny (1)**
  27:24
**far (2)**
  14:21;32:2
**fashion (1)**
  18:4
**favor (3)**
  40:20,22;51:2
**FCRA (16)**
  7:23;9:20;10:4,9,
  19;11:3,5,10,17,21;
  17:3,5,8;18:23;19:8,
  10
**February (11)**
  8:1,7,12,18,22,24;
  9:7;13:10;17:6;
  20:19;21:20
**federal (7)**
  26:6,9,10,11,13;
  27:3;38:4
**fees (3)**
  6:24;16:8;32:1
**few (2)**
  17:24;44:23
**field (1)**
  13:15
**figure (1)**
  21:21
**file (6)**
  19:22;22:14;51:8,
  15,17;52:1
**Filed (22)**
  2:7;5:11,24;15:5;
  17:23;25:2,16,22;
  26:6,7;27:18;30:9,
  12,22;32:15;38:3;
  48:23,23;49:7;50:19,
  24;51:4

RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020-mg

June 15, 2016

files (1)
44:18
filing (3)
9:23;43:21;47:25
filings (1)
26:23
final (3)
28:4;30:6,6
find (7)
22:17;27:2,16,22;
39:23;40:20,22
fine (5)
24:5,9;41:23;
50:18,22
firm (1)
33:22
first (10)
5:9;12:24;14:18;
19:6;22:8;35:5;
36:15;42:20;44:12;
47:17
Flamingo (1)
35:8
flipping (1)
29:12
focus (1)
39:3
focusing (2)
28:24;41:7
Foerster (2)
5:3;24:24
follow (1)
31:4
following (1)
9:22
follows (1)
38:2
footnote (2)
42:24;43:1
forced (1)
46:13
fore (1)
36:10
foreclose (2)
39:10;49:4
foreclosure (11)
20:14;28:11,13;
29:15;35:20,20;
41:1;44:16;46:1;
48:22,23
form (5)
21:4,6;22:5;31:14;
45:15
format (1)
23:10
forth (3)
10:8;17:15;37:18
forty-five (1)
21:10
Forward (9)
2:7;9:12;15:8,9,
19;16:3;34:16,17;
41:1

found (2)
40:10;44:22
Fourth (1)
39:2
fraud (2)
28:15,20
free (3)
37:15;39:12,20
frequently (1)
23:8
Full (4)
2:6,14;13:8,8
fully (2)
27:13,15
funds (1)
6:17
furnished (1)
7:13
furnishers (1)
13:19
further (2)
32:18;50:20
furthermore (1)
37:3

G

gaiting (1)
48:16
gating (1)
6:6
general (3)
23:3;32:6,21
generally (2)
22:7;23:10
generous (1)
12:13
genuinely (1)
47:11
gets (3)
23:18;38:7;50:13
given (2)
26:21;27:4
gives (1)
51:25
giving (2)
28:25;47:6
GMAC (23)
6:11,13,16,19;
7:24;8:3,12,15,23;
9:4,5,8;10:23;13:2,
13,19;14:25;15:5;
17:22;20:15;29:5,10,
16
GMAC's (1)
8:11
goes (1)
44:23
Good (5)
5:2;23:22;24:7,23;
34:5
goodbye (1)
29:22

Gorman (3)
10:13;13:22;14:6
governing (2)
48:2;49:24
grant (2)
31:8;47:8
granted (1)
50:12
granting (1)
32:4
greater (1)
38:18
GREEN (29)
4:11,17;5:13,15;
12:2,22,23;14:5,15;
15:13;17:11,12;
18:25;19:1,2,11,13;
20:3,6,24;21:1,4;
22:4,18,20;23:20,21;
24:6,12
grounds (1)
47:8
guess (5)
8:5;17:10,12;24:2,
14
Guimond (1)
19:16

H

handled (1)
14:24
hands (1)
38:16
happened (2)
19:15;20:13
Hathaway (1)
36:13
head (3)
17:20;20:16;46:10
headnote (1)
44:3
hear (3)
12:2;49:14;52:4
heard (1)
13:24
Hearing (4)
2:6;50:25;51:4,20
held (8)
11:10,11;14:20;
38:18,22;43:21;45:2,
3
Helfand (2)
33:22,22
HELOC (2)
6:11;8:4
help (2)
16:21;23:18
herein (1)
36:1
Here's (2)
26:18,18
hereto (1)

35:10
high (1)
8:4
higher (1)
32:1
highlights (1)
10:14
hinges (1)
39:15
hired (1)
20:20
history (2)
38:11;43:5
HOA (16)
35:4,11,13,19,21,
22;40:23;46:4,5;
49:1,5,6,7,20,23,23
HOA's (1)
48:22
holder (3)
35:2,4;44:17
holding (1)
20:3
Holthus (1)
44:21
home (1)
13:2
Homecomings (3)
31:25;32:10,22
homeowner (1)
46:15
Homeowners (2)
35:9,10
homeowners' (1)
45:16
Honor (77)
5:2,6,8,9,15,18,19,
23;6:1,10;7:1,6,20;
8:9,10;9:9,16,19;
10:2;11:22;12:4,7,
11,20,23;14:5,15;
15:16;17:12,20;18:8,
25;19:4,13;20:6;
22:20;23:21;24:3,6,
9,12,23;25:4;26:5,
17;27:8;28:6;29:12;
30:1,5,11;31:13;
32:12,25;33:14;34:3,
5,16,22;39:4;40:4,
19;41:6,11;42:2,12;
47:20,21;48:9;
49:10;50:5,9,22;
51:22,23;52:7,9
Honor's (1)
51:8
hours (1)
23:9
household (1)
31:21

I

identified (4)

30:15;31:14,24;
32:4
identifying (1)
47:10
II (2)
2:6,12
III (1)
2:12
impact (1)
43:18
impacted (1)
43:20
imposed (1)
44:15
improper (3)
9:2,3;31:17
improperly (1)
30:13
inability (2)
18:11;39:10
inaccurate (3)
9:12,14;21:18
inclined (1)
47:14
include (1)
10:7
including (5)
17:18;37:17,23;
46:9;51:2
inconsistent (2)
13:7;21:25
incorrect (2)
7:25;30:13
incorrectly (2)
8:16,19
indeed (1)
40:15
India (1)
17:15
indicated (1)
15:17
indicates (2)
9:2;38:12
indiscernible (1)
47:3
individuals (1)
31:22
informal (1)
18:4
information (9)
7:13,25;9:3,3,
12:13;13:6,18;
17:14;19:20
initial (1)
5:21
initio (1)
40:24
injure (1)
11:13
innocent (2)
16:1;46:14
instance (2)
45:1;49:23

**instances (1)**
8:18
**instruments (1)**
28:14
**intended (2)**
38:12;43:6
**intent (3)**
11:13;41:14;46:21
**intentional (1)**
28:15
**interest (23)**
32:1;37:24,25;
38:8,13,23;40:1,8;
42:5;43:3,7,21,22,
23,23;44:9,13,17,17;
45:3,23;46:17;48:7
**interested (1)**
42:12
**interesting (1)**
10:25
**interests (5)**
37:16;43:2,17;
45:8,24
**interpretation (2)**
37:8;40:12
**interpreting (1)**
44:7
**interrupt (4)**
38:6;48:13,15,19
**into (10)**
7:17;20:19;28:22;
36:16;38:24;41:22;
44:10;46:13;48:21;
49:2
**introduce (1)**
8:25
**Invest (10)**
2:16;4:3,22;33:8,
18;34:1,7;37:20;
41:15;51:3
**involve (1)**
16:18
**involved (3)**
15:1;16:22;17:15
**involving (1)**
22:17
**Island (1)**
41:22
**issue (51)**
7:15;9:9,10;10:12,
15,19,20,23;11:1,5,7,
15,16;12:10,18;14:3;
16:7,14,25;17:7;
18:16;21:21;22:4,9,
15;25:11;32:15;
38:7;39:16,21;40:3;
41:2,8;42:4;44:8,14,
24;45:11;46:6;47:2,
9,12,13,15;48:6,7,16,
17,17;50:15;51:5
**issued (1)**
36:9
**issues (9)**

6:6;10:2,14;19:12;
22:13,23;23:5;31:5;
41:7
**issue's (1)**
17:8
**items (1)**
13:14
**IV (2)**
2:13;5:10

**J**

**January (2)**
13:15;25:3
**Jericho (1)**
4:6
**Jessica (3)**
5:3;24:23;33:13
**Judge (10)**
41:25;42:19,22;
44:3,20;45:11;
51:16;52:15,18,19
**Judgment (18)**
2:18;15:4;23:4;
28:2,9,25;40:22;
42:3;43:12;47:4,5,7,
10;50:8,12;51:2,6;
52:2
**judicata (5)**
26:9,11,14,19;27:3
**judicial (1)**
45:15
**July (2)**
6:13,16
**jumbled (1)**
24:2
**June (3)**
25:23;35:13,17
**junior (19)**
38:23;42:4;43:21,
22;44:6,8,13,17;
45:2,8,25;46:6;48:7,
22;49:2,19,19;50:3,3
**jurisdiction (4)**
26:10,16;37:8;
38:4
**jurisdictions (1)**
49:5

**K**

**keep (1)**
20:16
**Ken (1)**
41:18
**KENNETH (3)**
4:8;34:8;41:12
**kind (3)**
28:16;29:12;37:16
**knows (2)**
22:5,24
**Knoxville (1)**
36:17

**KOPKO (2)**
4:2;41:12

**L**

**Lambert (1)**
19:14
**language (8)**
37:11;38:20;
39:12;40:7;43:3;
44:2,6;47:22
**larger (1)**
19:15
**Las (5)**
34:6;35:8;41:9;
45:2;49:10
**last (1)**
13:16
**late (2)**
34:13;41:21
**later (1)**
35:15
**LATHROP (5)**
4:21;5:19,21;
25:25;26:1
**LAW (23)**
4:11;9:21;10:3,9;
13:20;14:1,1,9;15:3;
18:22;19:7;26:15,
19,29:6;35:5;36:14;
41:2;42:8;45:6,7;
46:8;47:23;49:22
**lawsuit (2)**
9:22,23
**lawsuits (2)**
26:6,7
**lawyer (1)**
49:13
**lease (1)**
31:20
**least (5)**
9:12;15:2;18:13;
28:12;30:6
**left (3)**
29:1;46:6;50:13
**legal (11)**
6:6;10:2,25;11:15;
38:14;43:7;47:2;
48:7,17,17;50:15
**legislative (2)**
38:11;43:5
**less (1)**
15:22
**letter (5)**
9:1;13:1;22:2,16;
29:22
**Liability (3)**
2:5;25:12;37:18
**Lien (32)**
35:4,13,15,16,18,
22;37:22;38:14,23;
39:7;40:23;41:2;
43:7,21,22;44:9,13;

45:2,17,25;46:6;
48:7,22;49:2,2,5,18,
19,20,23;50:2,3
**lienholder (2)**
42:5;44:6
**lift (1)**
27:5
**light (1)**
14:5
**limit (1)**
43:4
**limited (1)**
51:2
**line (3)**
6:11;13:3;20:9
**lines (1)**
18:12
**liquidation (1)**
15:19
**list (1)**
25:19
**listed (1)**
21:23
**litigation (3)**
18:14,14;26:14
**little (1)**
24:2
**lived (1)**
15:14
**LJ (1)**
44:22
**LLC (7)**
2:16,21;4:3,21,22;
33:8;34:7
**Lloyd (1)**
43:12
**loan (3)**
6:12;8:4;31:17
**local (4)**
18:3;19:14;34:8;
41:12
**located (2)**
35:7;41:9
**Logistics (1)**
51:22
**long (3)**
14:8,12;41:22
**longer (1)**
8:5
**look (3)**
18:22;19:22;29:9
**Looking (4)**
13:13,20;17:21;
20:2
**Loomis (1)**
11:8
**loss (1)**
20:11
**lost (1)**
20:7
**lot (3)**
12:25;13:25;20:12
**lower (1)**

45:2,17,25;46:6;
48:7,22;49:2,2,5,18,
19,20,23;50:2,3

**M**

**Madrid (1)**
24:6
**Mae (1)**
27:24
**main (2)**
20:6,10
**mainly (1)**
48:21
**maintain (2)**
40:13;45:23
**making (1)**
46:16
**malice (5)**
11:13;14:12,14,
22;15:11
**malicious (1)**
12:6
**manage (1)**
22:22
**managed (1)**
35:11
**management (6)**
21:3,5,13,23,24;
22:6
**many (3)**
7:23;21:17;45:11
**March (3)**
30:10;38:22;
43:12,19
**Mary (3)**
4:12;5:11,24;
13:12
**master (1)**
36:20
**material (1)**
47:11
**matter (8)**
5:9;10:1;13:10;
24:14,25;30:6,8;33:1
**matters (3)**
21:6;22:24,25
**May (16)**
7:20;10:20;11:15;
16:5,5;17:5;25:16;
26:3;33:14;34:24;
36:2;41:6,17;47:7,
11;51:7
**MCBREEN (2)**
4:2;41:12
**mean (3)**
18:8;27:12,13,15;
30:21;38:7;48:19
**meaning (1)**
39:25
**meant (2)**
43:4;46:11
**measure (5)**
10:7;11:3,20,24;
17:3

mediator (3)
16:20,20;23:17
medical (3)
18:18;19:18,24
meet (1)
22:8
memorandum (1)
42:8
memorialized (1)
37:4
mention (2)
19:25;20:1
mentioned (2)
19:23;26:2
Meridian (1)
35:9
might (3)
17:15;24:2;37:24
minor (2)
38:13;43:7
minute (1)
44:3
misreporting (2)
8:7;10:21
misrepresentation (2)
28:15;29:3
missed (3)
28:17;34:9;42:3
mistaken (1)
14:18
mistaking (1)
17:16
modification (7)
6:14,17,19,23;7:2,
3,8,16,18;8:5;13:4
modified (2)
13:4;30:15
modify (1)
30:12
moment (2)
27:17;34:10
money (1)
31:19
months (2)
15:5;20:18
more (5)
22:3;23:2;33:1;
38:17;43:22
morning (4)
5:2;24:23;34:5,9
Morrison (2)
5:3;24:24
Mortgage (30)
2:17;6:11;10:10;
11:9;13:2,4,13;29:5,
8,10,16;33:9,21,23;
35:2;36:6,18,20;
37:4,5,23,25;38:3;
40:1,5;46:7,12,24;
50:2,2
Mortgage's (1)
49:18
most (2)

17:20;37:14
Motion (18)
2:2,18;34:20;
40:22;43:12;47:4,8,
13;50:7,12,13;51:8,
9,10,15,17,25;52:1
motions (3)
22:8;50:19;51:12
movant (2)
42:3,11
movants' (1)
45:6
move (1)
15:8,9;34:15,17
moving (3)
35:6;37:3,13
much (10)
12:21;30:3;32:25;
33:16,17;49:16;
51:14,19;52:10,17
multiple (1)
20:12
mutual (1)
16:20
myself (2)
16:18;19:5

## N

namely (1)
38:5
Nationstar (1)
29:17
nature (1)
37:16
nearly (1)
35:15
necessarily (3)
11:14;15:10;21:23
necessary (3)
6:17;50:9;52:3
need (9)
11:4;16:24;18:16;
21:15,16;22:2,15;
34:15;42:15
needed (2)
50:21;52:3
needs (1)
22:9
negligence (5)
9:21;10:3;11:11,
12;29:4
negligent (2)
28:15;29:3
negotiations (1)
16:22
neighborhood (1)
49:25
net (1)
15:20
Nevada (10)
34:7;35:4,8;36:14;
37:21;41:2,9,12;

49:22,22
nevertheless (1)
7:18
New (3)
2:23;13:5;14:23
next (7)
21:12,25;23:25;
24:1,2,14,25
Nguyen (6)
2:8;25:16,18,20;
26:22;27:5
Nguyen's (3)
25:15;26:5,20
nice (1)
11:15
ninety- (1)
31:8
Ninety-Second (5)
2:4;24:17;25:1,4,
14
Ninety-Third (5)
2:10;30:9,16;
31:11;32:14
Ninth (15)
10:11,11,16;
13:24;14:1,6,21;
15:3;17:1;18:24;
19:9,16;27:5,14;45:5
nonconclusory (1)
14:14
nondebtor (5)
38:24;42:6;43:20;
45:3;46:14
nonjudicial (3)
44:16;45:15,16
nonmovant (1)
47:8
Norm (2)
5:3;19:4
normal (2)
22:1,3
North (1)
4:4
note (15)
35:3;36:6,13,15,
19,23;38:1,2,8;39:9;
40:2,7,10,13,14
noted (1)
42:24
notice (5)
29:19,21;35:16,
20;47:6
notified (1)
13:5
November (5)
35:21,23,23;36:9,
12
null (1)
40:23
Number (14)
2:2;5:11,12,24;
23:9;24:16;25:1,2,
15,23;30:8,10;34:7;

35:8
numeral (1)
5:10
numerous (3)
37:11,13,19
NY (2)
2:23;4:6

## O

object (1)
30:20
Objection (25)
2:2,5,11;5:11,22,
24;7:8;14:17;15:8;
24:17,25;25:2,5,15,
24;27:2;30:7,9,11,
16,22;31:9,11;32:14,
20
objections (1)
16:13
observation (1)
11:7
obtain (1)
45:14
obtained (1)
6:10
obviously (3)
15:14;18:8;23:12
occurred (3)
7:23;12:17;46:5
October (4)
6:10;8:15;27:18;
35:19
off (1)
17:19
OFFICES (1)
4:11
Omnibus (11)
2:5,11;24:17;25:2,
4,14;30:9,16;31:9,
11;32:14
One (24)
7:22;11:6;12:5;
14:8,8;22:13;26:6,6;
27:16,17;33:1,13;
41:7;42:4,9,22;
43:10;47:1,2,3,14;
49:13;50:24;52:13
ones (2)
16:1;28:18
one's (1)
31:2
only (7)
11:12;12:3;15:25;
30:21;47:13;49:12,
13
open (1)
18:5
operations@escribersnet (1)
2:25
opinion (2)
26:20;30:3

opinions (1)
10:11
opportunities (1)
20:7
opportunity (2)
45:19;49:7
opposing (6)
13:21;17:13,25;
18:5;19:25;24:1
opposition (5)
30:22;31:3;32:15;
43:11;50:24
order (30)
21:3,13,24,25;
22:6;23:23,23;30:3;
32:24;36:8,10,11,12;
37:2,7,9,12,14,19;
40:16;45:12,14,21,
22,25;46:3;48:1,1,3;
51:25
orders (1)
21:5
ordinarily (2)
47:14;49:13
original (1)
47:24
originated (1)
35:3
origination (1)
31:17
others (3)
38:13;43:6;45:23
otherwise (1)
20:17
ought (3)
16:16;23:16;42:16
out (16)
12:25;13:18;14:2;
15:22;21:21;27:22;
29:1;31:7;35:22;
37:22;38:1;40:4;
47:24;48:9;50:24;
52:13
outsourcing (1)
17:15
over (2)
17:24;37:8
overemphasize (1)
20:11
overrule (1)
15:7
oversaw (1)
35:11
owe (1)
29:7
owed (1)
29:5
owing (1)
25:12
own (6)
23:17;39:12;41:1;
47:10,15;50:19
owned (5)

38:24;42:6;43:20;
44:10;45:8
**owner (1)**
46:13
**owners (1)**
40:2
**owner's (1)**
46:14
**ownership (1)**
38:1

**P**

**Pacific (1)**
6:11
**page (6)**
5:9;24:16;42:25;
44:2,3,4
**papers (9)**
6:4;9:25;11:2;
35:6;37:2,3,13;51:5;
52:5
**paperwork (1)**
6:17
**paragraphs (1)**
37:18
**part (18)**
8:2;18:9,15,19,20,
20;20:6,10,15,21;
37:2;38:11;39:25;
40:6,9,10;41:9;42:6
**parties (10)**
11:2;12:10;16:19;
22:8,19;33:11;
37:23;38:18;47:10;
48:16
**parties' (1)**
6:15
**party (7)**
17:16;22:9;23:12;
43:11;46:14;47:8,11
**passing (1)**
19:23
**past (1)**
8:25
**payment (2)**
6:24;7:19
**payments (6)**
6:25;7:4,17;8:14;
13:8,9
**pending (3)**
26:8,12;51:25
**perfect (1)**
39:6
**perhaps (1)**
47:23
**Perkins (3)**
4:12;5:11,24
**permit (1)**
27:5
**permits (1)**
47:16
**permitted (2)**

16:2;49:3
**permitting (1)**
15:18
**person (1)**
30:21
**personal (1)**
31:21
**personally (1)**
16:21
**perspective (3)**
15:6;42:2;46:2
**persuade (1)**
44:8
**pertinent (1)**
40:7
**pervasively (1)**
44:24
**petition (1)**
38:4
**ph (1)**
19:14
**phone (6)**
5:19;25:17,20;
26:2;30:24;41:13
**pinpoint (1)**
43:8
**place (1)**
35:22
**placing (1)**
36:2
**plaintiff (8)**
9:11;11:13,18;
14:12;37:20;38:3,5;
52:1
**plaintiffs (1)**
19:20
**plaintiff's (2)**
10:8;43:12
**plan (1)**
15:21
**pleading (1)**
15:10
**pleadings (3)**
6:15;10:8;11:14
**please (2)**
33:19;41:5
**podium (2)**
24:20;33:5
**point (12)**
12:25;20:4,13;
31:7;39:7;42:3;48:9,
20,25;49:1;50:23;
52:13
**pointed (1)**
13:21
**points (2)**
12:4;40:4
**Pools (5)**
38:10,21;42:23,
24;43:10
**portion (1)**
26:13
**portions (3)**

28:12,14,16
**position (7)**
7:7;8:2;27:24;
32:5;35:5;36:15;
45:7
**possession (1)**
37:15
**potentially (1)**
8:6
**powerful (1)**
48:2
**practicality (1)**
49:3
**prayer (1)**
40:21
**preceded (1)**
19:15
**preclusive (5)**
26:21;27:4;28:5,8,
25
**predecessors (1)**
40:1
**preempt (3)**
11:1,11;14:9
**preempted (2)**
10:4,9
**preemption (3)**
11:12,19;16:25
**preempts (1)**
11:5
**preference (3)**
50:17;51:8,10
**prejudice (1)**
26:8
**premised (2)**
26:6,16
**prepared (2)**
12:14;34:14
**pre-petition (1)**
25:6
**preponderance (1)**
25:7
**present (6)**
16:10;42:10,13,14,
21;44:19
**presentation (1)**
9:17
**presents (1)**
45:12
**presumably (1)**
49:6
**pretty (4)**
16:3,13;23:6,7
**prevailed (1)**
27:25
**prevent (1)**
44:15
**previous (1)**
17:14
**primarily (2)**
10:10;23:5
**principals (1)**
42:17

**principle (1)**
38:17
**prior (5)**
8:16,18,24;18:14;
51:4
**priority (7)**
30:14;31:15;32:3,
5,17;45:17;49:23
**Private (1)**
35:9
**privilege (1)**
22:15
**proactively (1)**
13:18
**probably (4)**
7:9;8:18;24:1;
29:18
**probed (1)**
7:11
**problem (1)**
12:15
**problems (1)**
39:18
**procedural (1)**
51:11
**procedure (1)**
13:17
**proceed (9)**
6:9;7:21;14:11;
23:15;33:25;34:21,
24;47:18;49:4
**proceeded (1)**
9:23
**Proceeding (4)**
2:16;33:2,9,21
**proceedings (2)**
21:6;52:20
**proceeds (2)**
15:20,20
**process (1)**
45:14
**produced (1)**
6:14
**promissory (5)**
29:8;35:2;40:7,14,
14
**promptly (1)**
21:2
**prong (1)**
27:2
**proof (7)**
5:11,24;6:3;9:11;
10:6;15:11;31:14
**proofs (2)**
25:5;30:12
**proper (1)**
51:1
**properties (1)**
40:15
**property (53)**
31:20,22;35:7,12,
14,22;36:3,4;37:22,
24,25;38:9,13,24,24;

39:7,8,8,10,11,15,19,
21,25;40:1,3,6,9;
41:8;42:6,6,6;43:2,2,6,
17,20,23,23;44:9,10,
16,18;45:3,4,8,9,23,
24;46:7,13,14;48:4,7
**proposed (3)**
21:13;23:23;32:23
**prosecute (1)**
27:5
**protect (4)**
37:9;44:13;46:11,
17
**protected (2)**
40:16;48:25
**protection (1)**
49:8
**prove (10)**
6:8;9:11;11:18;
16:8,10;17:9;19:21,
24;20:2;25:7
**proved (1)**
12:6
**provide (4)**
6:6;17:22;19:25;
23:2
**provided (2)**
14:16;31:23
**provides (1)**
31:18
**provision (1)**
29:18
**provisions (7)**
38:25;39:20;44:7,
11,12;45:22;46:3
**public (1)**
45:18
**punish (1)**
15:25
**punished (1)**
16:1
**punitive (7)**
10:5,7;12:7,8;
15:18,25;16:2
**purchase (3)**
31:20,21;37:1
**purchased (4)**
37:10,15;39:11,12
**purchaser (2)**
36:13;37:10
**pure (1)**
50:14
**purportedly (2)**
35:22;49:1
**purpose (1)**
12:10
**purposes (3)**
15:25;16:10;26:21
**Pursuant (5)**
26:8;35:17;36:4;
37:21;39:5
**pursue (1)**
16:17

**put (1)**
9:11
**puts (1)**
9:13

## Q

**quagmire (1)**
51:11
**quick (1)**
12:3
**quickly (4)**
22:22;23:6,7,21
**quiet (2)**
28:13;37:21
**quite (6)**
14:24;15:15,18,
23;16:16;51:12
**quote (2)**
42:25;44:1

## R

**raise (2)**
8:21;10:20
**raised (4)**
22:4;47:8,9;48:6
**raises (1)**
47:1
**rarely (1)**
22:23
**rates (1)**
32:1
**rather (3)**
31:25;40:21;43:2
**re (3)**
36:1;38:22;43:12
**reaching (1)**
44:1
**read (5)**
11:14;14:7;31:3;
32:17,18
**readily (2)**
42:13;46:24
**reading (3)**
11:2;26:19;46:20
**ready (1)**
23:18
**real (8)**
11:16;35:7;39:8,
10;40:1;41:8;44:16,
18
**really (6)**
10:20;23:16;
28:24;39:3;41:7;
48:1
**reason (3)**
6:20;7:10,11
**reasonable (2)**
24:4;47:6
**reasons (1)**
28:21
**Rec (1)**

43:8
**receipt (1)**
7:3
**receive (1)**
32:17
**received (1)**
6:16
**receiving (1)**
52:3
**recession (1)**
20:16
**reckless (2)**
14:22;15:2
**recklessness (2)**
15:2,11
**reclassified (3)**
32:6,9,21
**Reclassify (2)**
2:12,13
**reconsider (1)**
47:9
**record (3)**
9:8;44:2;45:18
**recorded (5)**
13:14;35:16,19,
24;49:25
**recording (1)**
37:4
**recordings (1)**
17:19
**records (5)**
8:11,11,17;25:9,12
**recover (1)**
10:24
**recoverable (4)**
18:23;19:8,10,14
**Redesignate (2)**
2:11,13
**reduced (3)**
18:13;20:8,9
**reduction (1)**
12:17
**refer (3)**
9:20;36:10;45:21
**references (1)**
13:22
**referred (3)**
35:11;36:17,25
**refers (1)**
14:7
**refinance (1)**
18:12
**reflect (3)**
8:11,13;32:23
**reflected (1)**
9:6
**reflects (3)**
8:24;9:7;22:6
**refuted (1)**
45:8
**regard (1)**
49:17
**regarding (2)**

6:2;21:18
**reinforce (1)**
35:15
**reiterated (1)**
37:11
**reject (1)**
16:10
**related (1)**
36:1
**Relates (1)**
2:7
**relevant (3)**
35:9;37:14;44:6
**relief (8)**
39:14;40:21,25,
25;44:18;46:17;
50:25;51:1
**rely (2)**
10:9,17
**relying (1)**
18:18
**remainder (2)**
28:20;29:2
**remedial (1)**
12:10
**removal (1)**
38:4
**rendered (1)**
39:13
**rental (1)**
31:20
**reply (10)**
25:22,24;26:1;
29:23;31:4;32:15;
47:19;51:4,5;52:2
**report (9)**
7:16,25;8:3,13,22;
9:6,7;18:14;21:18
**reported (5)**
7:18;8:19;11:9;
14:2;35:13
**Reporting (18)**
6:2;8:1,16;9:7,12,
14,20,24;12:17;
13:11,13,16,16,17;
14:20;17:17;18:10;
20:19
**reports (1)**
21:10
**represent (1)**
25:6
**representative (1)**
20:15
**representing (1)**
33:22
**request (5)**
22:19;24:4;31:8;
50:25;51:16
**require (6)**
7:4,6;19:19;22:16;
23:10;29:19
**required (5)**
6:24,25;15:12;

22:3;32:2
**res (5)**
26:9,11,14,19;27:3
**ResCap (10)**
2:4,10;5:10,20,23;
15:14;16:4;22:25;
24:17,24
**ResCap's (1)**
30:8
**Residences (1)**
35:9
**Residential (3)**
4:21;36:1;40:6
**resolve (1)**
11:5;22:9,13,21,
22;41:1
**resolved (2)**
21:20;23:6
**resolving (1)**
16:21
**resources (1)**
50:23
**respect (6)**
6:1;16:4,13;22:4;
27:23;42:7
**respectfully (1)**
31:8
**respond (5)**
47:7,17;50:20;
51:19;52:2
**respondent (1)**
25:13
**response (5)**
8:22;10:5;25:11,
16;47:21
**responsibilities (1)**
14:10
**rest (1)**
24:10
**result (4)**
12:17;13:3;26:13;
29:6
**retained (1)**
37:8
**retains (1)**
26:11
**reversed (1)**
45:5
**review (1)**
8:17
**reviewed (2)**
32:13,14
**REYNOLDS (21)**
4:8;34:8;41:11,12,
17,19,23,24;42:2,19;
46:19,20,22,23,25;
50:7,9,22;51:14,16;
52:19
**right (27)**
5:4,16,17;11:8;
12:22,23;13:23;
18:6;23:24;24:13;
25:18,21;29:24,24;

31:10,10;32:13;
33:18;34:1,11;41:5;
46:25;50:6;51:18,
24;52:12,16
**rights (5)**
36:6,19,21;37:17;
38:15
**Road (1)**
35:8
**Roman (1)**
5:10
**ROSENBAUM (43)**
5:2,3,5,6,8,17,18;
6:22;7:1,6,20,22;8:9,
21;9:16,18;10:18;
11:17,22;12:3;15:16,
17;16:23;18:6,8,24;
19:3,4,5,9;21:1,7;
22:5,24;23:2;24:8,9,
15,16,20,25;26:2;
33:14
**rule (6)**
21:9;27:3;47:15;
50:16,21;51:12
**rules (3)**
18:3;21:7;26:9
**ruling (1)**
16:6;32:23;40:12
**running (1)**
34:13

## S

**sale (30)**
35:20,20,22;36:8,
11,12;37:2,7,9,12,14,
19,22;40:16,23;41:1;
45:15,16,21,22;46:1,
3,5,5;48:1,1,3,3;
49:20;50:4
**salient (1)**
42:16
**same (5)**
11:4,20,23;17:3;
44:18
**SARA (3)**
4:21;5:19;25:25
**satisfactorily (1)**
16:12
**satisfactory (1)**
21:20
**saying (1)**
24:3
**schedule (3)**
22:16;23:2;36:25
**scheduled (2)**
22:18;36:25
**scheduling (6)**
21:3,5,13,24;
23:22,23
**scope (1)**
18:1;43:4,16,18
**score (2)**

12-12020-mg    Doc 9948    Filed 06/16/16    Entered 06/20/16 14:45:42    Main Document

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

Pg 64 of 66

June 15, 2016

12:18;18:11

sea (1)
47:25
Seattle (1)
4:15
sec (1)
14:8
second (2)
11:8;17:2
section (9)
14:10,10;31:15,
17;32:16,18;43:1,4;
44:15
sections (1)
14:8
secured (5)
30:13;35:6;38:24;
40:8;44:9
security (4)
40:8;42:5;44:17,
17
seek (4)
29:1;40:25;45:12,
13
seeking (5)
19:21,24;32:9;
37:21;46:16
seeks (5)
9:19;12:11;25:5;
30:12,14
seem (6)
8:5;16:16;21:16;
47:1,12;50:14
seemed (1)
11:1
seems (4)
7:24;38:9;39:20;
48:16
sell (2)
20:9;35:17
senior (3)
5:20;25:25;44:16
separate (4)
13:5;51:8,9,10
September (1)
8:14
series (2)
8:7;10:21
seriously (1)
16:17
serve (2)
12:9;15:24
servicers (1)
29:7
services (2)
31:21,22
servicing (6)
6:12;8:17;29:21;
36:18,20,21
set (6)
10:8;23:6,7;35:20;
37:18;40:24
settle (2)

15:9;23:17

settled (1)
10:1
settlement (2)
16:17,22
settlements (1)
16:18
seven (1)
8:18
Several (1)
51:4
share (1)
21:8
sharing (1)
12:13
short (5)
6:5;22:16;50:20
shorten (1)
14:7
show (3)
13:14;20:21;25:12
showing (1)
25:19
shows (1)
13:15
sic (1)
43:15
side (3)
47:3,14;49:13
sides (1)
16:16
side's (1)
47:3
signed (4)
6:25;7:3;36:8;
45:25
significance (1)
50:4
significant (1)
6:5
signing (1)
6:23
Similar (1)
38:14
simple (1)
46:6
simply (3)
39:4;47:14,21
single (2)
20:15;42:4
site (2)
10:12;21:7
sitting (1)
50:14
situation (5)
42:10,22;44:5,6,19
slander (1)
28:13
so-called (1)
23:8
societal (1)
47:25
Solely (1)

2:7

somehow (1)
22:22
someone (1)
7:5
sometimes (1)
20:1
somewhat (1)
12:13
sorry (15)
5:6;19:4;27:11;
29:11;34:5,23;35:16,
23;38:3;41:11;44:2;
48:12,14,19;51:22
sort (5)
12:16,18;21:9;
46:4,9
sought (2)
35:15;37:23
sounds (1)
23:22
sources (1)
18:15
Spain (3)
23:24;24:5,11
speak (2)
41:16,17
speaking (1)
17:10
speaks (1)
43:1
specific (1)
25:8
specifically (3)
32:14;43:16;44:5
split (2)
16:25,25
spoke (1)
50:5
sponte (2)
47:15;50:17
stage (3)
15:5,5;16:24
stand (1)
42:17
standard (6)
14:23;15:2,10,12;
21:4;45:22
standpoint (1)
10:25
start (2)
23:18;42:20
state (7)
14:1,9;19:19;26:7,
15;27:23;28:1
stated (2)
49:18;50:25
statement (1)
20:2
statements (1)
38:14
States (4)
42:22;43:13;44:4;

45:8

status (5)
27:9,10,14;32:5;
49:20
statute (1)
12:5
statutory (1)
36:16
stay (23)
27:5;36:4,5;38:5;
39:1,19;42:9;43:18,
24;44:11,12,14,22,
25;45:4,10,13,19,20;
46:8,16,23;49:1
stayed (2)
9:22;26:22
stipulate (1)
21:17
stop (4)
45:14;46:22;
48:11,11
Street (1)
2:22;4:13
strike (1)
23:3
sua (2)
47:15;50:17
subject (17)
35:11,14,21;36:3,
7;37:22,24,25;38:25;
39:25;40:2,5,9;
43:24;44:11;45:4,10
submission (2)
30:2;51:25
submit (2)
8:12;32:24
submitted (5)
5:21;6:25;8:23;
9:25;25:24
subpoena (1)
23:13
subsequent (3)
35:24;43:10;45:25
subsequently (3)
36:15,17;37:20
substantive (1)
30:19
succeeds (1)
38:17
successor (1)
37:17
sufficiently (1)
29:5
suggests (1)
14:11
suit (1)
49:7
Suite (3)
2:22;4:5,14
Sullivan (1)
14:23
Summary (15)
2:18;6:5;15:4;

23:4;40:22;42:3;
43:12;47:4,4,10;
50:7,12;51:2,6;52:1
super (1)
41:2;45:16;49:23
superior (1)
45:24
supplemental (3)
5:21;25:25;26:16
support (5)
5:22;9:13;15:24;
25:23;45:6
supports (1)
15:12
supposed (2)
34:8,10
Supreme (4)
38:10;42:23;46:9;
49:22
sure (6)
11:7,15;15:6;
25:17;26:24;30:23
sustain (1)
27:2
sustained (2)
31:11;32:20

## T

talk (1)
19:22
talking (2)
16:9,23
tape (1)
17:19
telephone (3)
5:13;22:10;23:19
TELEPHONICALLY (2)
4:17,20
template (2)
21:4,14
terms (7)
18:9;21:2;36:8,12;
37:7,14;43:1
testimony (4)
18:18;19:18,24;
23:10
Thanks (1)
52:19
thereafter (1)
21:11
therefore (1)
45:9
thereto (1)
43:18
third (3)
23:12;31:9;38:18
Thomas (1)
44:21
thoroughly (1)
25:9
thought (2)
12:25;34:13

RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020-mg

June 15, 2016

**threat (1)**
39:13
**threatened (1)**
20:14
**throughout (5)**
16:4,6,14;37:11,19
**thus (4)**
32:5;36:2;40:12,
15
**timed (1)**
23:8
**timely (3)**
8:14;13:8;26:22
**Times (5)**
14:23;35:8;37:11,
13,19
**timing (2)**
22:1;48:20
**title (5)**
28:13,13;37:21;
38:14;43:8
**today (3)**
26:2;31:1;44:20
**took (3)**
35:21,22;37:15
**top (1)**
17:20
**totally (1)**
18:3
**traffic (4)**
34:10,12;41:13,22
**train (1)**
34:9
**Trang (1)**
2:7
**Trans (1)**
19:16
**transactions (1)**
29:8
**Transcribed (1)**
2:20
**transfer (4)**
29:17,21;36:7;
39:9
**transferee (1)**
37:18
**trial (4)**
13:23;15:9;16:15;
23:19
**trials (3)**
23:7,8,19
**trier (1)**
16:19
**trip (1)**
24:10
**true (2)**
8:5;26:15
**Trust (44)**
2:4;5:10,20,23;
6:4;9:5;10:19,22;
14:16,16;17:4,7;
18:7;24:17,25;25:5,
9,14,22,24;26:1;

29:17;30:7,12,14;
31:4;32:4,8;35:4;
36:7,14,16,16,17,19,
23;37:5;38:1,8;39:9;
40:2,8,10,15
**Trusts (1)**
2:10
**trust's (3)**
16:10;25:1;30:8
**try (6)**
22:8,16;23:6;31:5;
45:19,19
**trying (3)**
20:16;21:2;50:23
**turned (1)**
49:2
**turns (1)**
46:9
**twenty-nine (1)**
20:18
**two (14)**
6:6;10:2;12:3;
21:11;22:19;23:16,
23;24:7;26:6;35:15;
51:16,23;52:1,2
**type (1)**
45:11
**typical (1)**
29:8
**typically (2)**
21:10;22:18

**U**

**UCL (1)**
28:17
**ultimately (2)**
16:5,18
**unable (1)**
42:21
**unclear (1)**
27:10
**uncontested (1)**
31:9
**under (21)**
12:5;13:5,11;
14:10,20,23;15:3,3;
17:3;21:7;30:2;
31:15;32:16;36:4,
12;37:7,14;41:2;
49:8,22;51:25
**underlying (4)**
6:1;38:23;39:24;
44:9
**Unfortunately (1)**
6:20
**Union (2)**
4:13;19:16
**unit (1)**
35:7
**United (3)**
6:11;42:22;43:13
**unlawful (5)**

27:24;28:1,9,19,24
**unliquidated (1)**
26:5
**unsecured (2)**
32:6,21
**up (3)**
20:1;24:2;50:5
**upon (5)**
6:23;7:3;37:17;
40:12;50:3
**usable (1)**
46:24
**USC (2)**
36:4;44:15
**use (3)**
21:14;23:9;31:22
**using (2)**
14:22;19:18
**usual (1)**
15:24
**usually (3)**
22:11,13,15

**V**

**valid (1)**
25:6
**validate (1)**
25:10
**value (1)**
39:11
**valueless (1)**
39:13
**various (1)**
18:12
**Vegas (14)**
2:16;4:3,22;33:8,
18;34:2,6,7;35:8;
41:9,15;45:2;49:11;
51:3
**verified (1)**
9:3
**verify (2)**
9:5,6
**view (3)**
11:19;28:4;42:16
**view- (1)**
46:18
**viewed (1)**
11:22
**violation (6)**
9:19;10:19;11:17;
12:6;18:23;19:8
**violations (7)**
6:2;7:23;17:5,6,8;
18:20;19:10
**Virginia (3)**
38:21,22;43:14
**virtue (1)**
36:7
**vitiates (1)**
39:11
**void (1)**

40:23

**W**

**WA (1)**
4:15
**water (1)**
20:16
**Web (1)**
21:7
**week (6)**
21:12,25;23:25;
24:1,2;50:24
**weeks (7)**
17:24;23:23;24:7;
51:16,23;52:1,2
**weight (1)**
10:16
**well-reasoned (1)**
43:25
**weren't (1)**
46:12
**West (1)**
2:22
**what's (5)**
8:1;11:18;14:13;
27:14;29:1
**whatsoever (1)**
37:16
**Whereupon (1)**
52:20
**White (8)**
4:12;5:12,14,25;
7:17;10:24;38:10,20
**White's (1)**
13:12
**Whiting (3)**
42:23,24;43:10
**whole (1)**
49:6
**Who's (2)**
33:11;34:1
**willful (3)**
11:13;12:6;14:19
**willfulness (1)**
14:22
**wipe (1)**
28:25
**wish (6)**
17:11;23:9;40:24;
41:16;50:7,18
**within (3)**
12:7;22:18;24:7
**without (3)**
11:7;19:18;22:14
**witnesses (1)**
23:12
**Wolpoff (1)**
10:13
**woman (1)**
20:16
**wondering (1)**
28:17

**worst (1)**
20:21
**writing (1)**
22:12
**written (1)**
30:3
**wrongdoing (1)**
25:8
**wrongful (2)**
28:12;29:15

**Y**

**years (1)**
35:15
**York (2)**
2:23;14:23

**1**

**1 (1)**
26:1
**10040 (1)**
2:23
**11 (3)**
26:23;36:4;44:15
**11:16 (1)**
52:20
**1147 (1)**
10:13
**11753 (1)**
4:6
**119 (1)**
8:25
**11th (1)**
27:19
**120 (1)**
21:9
**124 (1)**
43:8
**129 (1)**
4:5
**1296 (3)**
2:2;5:11,24
**13 (1)**
6:10
**13th (1)**
25:16
**14 (1)**
6:13
**14th (3)**
35:21,23;36:2
**16-01029 (1)**
33:9
**16-01029-mg (2)**
2:16;33:21
**16th (1)**
35:17
**192nd (1)**
2:22
**1988 (1)**
44:22
**1992 (1)**

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

June 15, 2016

43:14
**19th (3)**
35:19,24;37:6

## 2

**2,600 (1)**
32:3
**2.13 (1)**
36:25
**2.2 (1)**
36:25
**2:15 (1)**
39:24
**20 (1)**
35:23
**200,000 (1)**
8:4
**2006 (1)**
6:10
**2007 (1)**
6:12
**2009 (4)**
6:13,16;8:15;
35:13
**2011 (7)**
8:1,8,12,18,24;
27:19;35:17
**2012 (17)**
8:22;9:7;11:10;
13:10,15;17:6;
20:19;21:20;28:1;
35:19,21,23,25;36:2,
10,13,17
**2014 (1)**
37:6
**2016 (4)**
25:3,16,23;30:10
**21st (23)**
2:17;33:8,20,22;
35:2;36:6,10,13,18,
20;37:4,5,23,25;
38:3;40:1,5;46:7,12,
24;49:18;50:2,2
**230 (1)**
35:7
**23rd (2)**
6:16;30:10
**25th (3)**
8:12,18;35:13
**26,000 (2)**
32:10,22
**27th (1)**
28:1

## 3

**301 (1)**
35:8
**320,000 (2)**
10:6;12:11
**32399 (1)**
43:8

**32417 (1)**
43:9
**362 (3)**
36:5;38:5;44:15
**362a4 (2)**
39:6;40:13
**363 (2)**
45:21,22
**365 (11)**
36:10,12;37:2,7,9,
12,14,19;40:16;48:1,
3
**3725 (1)**
25:15
**377 (1)**
44:22

## 4

**4 (2)**
22:11;44:3
**4285 (1)**
4:14
**4978 (1)**
34:7

## 5

**5 (6)**
5:10;22:11;39:6;
40:13;44:3,4
**500 (1)**
4:4
**507a7 (5)**
31:15,17;32:3,16,
19
**522 (1)**
42:25
**541a1 (3)**
38:15;43:1,17
**56f (4)**
47:6,15;50:16;
51:7
**584 (1)**
10:13

## 6

**6 (5)**
24:16,16;25:1;
39:6;40:13
**60 (1)**
2:18
**601 (1)**
4:13
**6081hE (1)**
14:10
**62 (1)**
44:22
**636,600 (1)**
35:3
**644 (1)**
39:24

## 7

**7 (1)**
30:8
**700 (1)**
2:22
**7th (1)**
25:3

## 8

**8 (1)**
43:1
**8th (2)**
8:22;9:7

## 9

**90 (1)**
8:25
**9486 (2)**
2:4;25:3
**96 (1)**
5:12
**97 (1)**
5:12
**973406-2250 (1)**
2:24
**9779 (2)**
2:10;30:10
**9796 (2)**
2:2;5:25
**98101 (1)**
4:15
**9849 (1)**
31:4
**9887 (1)**
31:4
**9929 (1)**
25:23
**9th (1)**
25:23