1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              June 24, 2016

19              11:02 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   Status Conference Regarding Reed Claims Objection

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2    A P P E A R A N C E S :

3    REED SMITH LLP

4          Attorneys for ResCap Borrower Claims Trust

5          1717 Arch Street

6          Suite 3100

7          Philadelphia, PA 19103

8

9    BY:   BARBARA K. HAGER, ESQ.

10

11

12

13   FRANK J. REED, IV

14          Claimant - Pro Se

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  All right, please be seated.  We're here

3    in Residential Capital, number 12-12020.  It's a conference

4    with respect to the Trust's objection to the claim of Frank

5    Reed.  Let me get the appearances.

6              Ms. Hager?

7              MS. HAGER:  Good morning.  Barbara Hager with Reed

8    Smith for the Residential Capital Borrower Claims Trust.

9              THE COURT:  Mr. Reed?

10             MR. REED:  Frank Reed --

11             THE COURT:  You can stay seated.  You don't have to

12   get up.

13             MR. REED:  -- creditor pro se.

14             THE COURT:  Okay.  All right.  Ms. Hager, where are

15   we?

16             So let me just say, I reviewed the transcript from

17   April 26th, 2016.  I reviewed various orders that have been

18   entered.  Where are we?

19             MS. HAGER:  I'd like to start by saying thank you for

20   adjourning us to 11 o'clock.  I had some transportation issues,

21   this morning.  So I appreciate it.

22             THE COURT:  Okay.

23             MS. HAGER:  Your Honor, we've had an opportunity to

24   depose the witnesses that Mr. Reed -- some of the witnesses

25   that Mr. Reed had on his witness list.  Specifically we took

RESIDENTIAL CAPITAL, LLC, ET AL.                              5

1    nine depositions.  Mr. Reed responded to our request for

2    documents; so we have those.  So from our side, we're done with

3    discovery.  We don't need any more depositions or any documents

4    from Mr. Reed.

5            We provided Mr. Reed with the name of our witness.  We

6    have one.  It's just our expert on credit, Oscar Marquis; so

7    Mr. Reed is aware of that.

8            I was speaking with Mr. Reed --

9            THE COURT:  What's his name?

10           MS. HAGER:  Oscar Marquis, M-A-R-Q-U-I-S.  In speaking

11   with Mr. Reed a little earlier, I think he has some discovery

12   that he wants to take from us.  But from our side, we're done.

13           THE COURT:  Okay.  Mr. Reed, what discovery do you

14   still have to do?  Let me ask you this first.  When we were

15   here on April 26th, there was a long discussion -- I won't go

16   through the back-and-forth -- you were going to serve a

17   subpoena for documents on the Trust.  I urged you to sit down

18   and talk to them.  I made clear I wasn't preventing you from

19   doing that.  I just urged you to talk to Ms. Hager and see if

20   you could tell her what it is you wanted and see whether you

21   could get it.  Did you ever get the documents you want?

22           MR. REED:  I'm sorry?

23           THE COURT:  Have you been able to get the documents

24   you wanted?

25           MR. REED:  No, Your Honor, because I was researching

1   what types of documents I should ask for, and we're about ready

2   to give that list to Ms. Hager, and hopefully she could produce

3   it.  If not to subp -- I don't know if it's subpoena or just

4   interrogatories.

5         THE COURT:  Well, it's not interrogatories, at this

6   stage, Mr. Reed.  I'm distressed to hear that here we are

7   almost at the end of June, and you still haven't given your

8   list of what it is you want to Ms. Hager.  But go ahead, Mr.

9   Reed.  When are you going to give her the list?

10        MR. REED:  My intention -- my intention was by the end

11  of business next week.

12        THE COURT:  That's too far away.  Why -- I don't

13  understand.  Look, this case has been around for a long time.

14  The issues that remain in the case -- I won't go through the

15  whole thing now.  Obviously Judge Woods wrote an opinion.  This

16  relates to your other properties.  There may be issues with

17  respect to health issues or things like that.  But I don't

18  expect the Trust is going to have the documents relating to

19  your health.

20        So what is it that you need to get from the Trust?

21        MR. REED:  The -- and I'll bring up something else,

22  Your Honor, that I may have made a mistake on.  So I'll seek

23  your comment on this, and that is:  the documents that I --

24  that we're trying to find, number one, relate to the contract

25  damages and the foreseeability of them.  So in researching how

1   I'm supposed to ask for these things, it says "with

2   specificity".  So trying to find out, you know, exactly the

3   documents that I should be asking for or types of documents,

4   and the foreseeability of the -- that would relate to the

5   foreseeability of the damages that a foreclosure can cause.  So

6   in other words, is there -- what things in their records would

7   show that they understand filing a foreclosure is financially

8   damaging.

9           THE COURT:  But you have to prove your damages

10  relating to your business ventures.

11          MR. REED:  Yes.

12          THE COURT:  The foreclosure of your house, that's over

13  and done with.  We've been through that.  Okay?  And I'm a

14  little bit at a loss -- give me an example of what you think --

15  when you talk about contract damages and foreseeability of

16  them, this is your damages.  You either had contracts for other

17  properties or you didn't.  What is it that you believe you're

18  going to try and prove at trial?

19          MR. REED:  And maybe it's something I don't have to

20  prove.  I'm just -- I feel like --

21          THE COURT:  You're going to have to prove your

22  damages, if you think you have any --

23          MR. REED:  Yes.  And I underst -- I --

24          THE COURT:  Give me -- look, you previously

25  identified -- I'm not holding you just to this, but you -- I

1    don't remember it now.  You had talked about a couple of other

2    ventures that you were proceeding -- I don't know if it was in

3    Virginia.  Okay.  Can you give me a specific example?

4         MR. REED:  Yes.  So is GMAC Mortgage Financial Lending

5    Institution -- would they be aware --

6         THE COURT:  Mr. Reed, let me -- I want to take a baby

7    step back.

8         MR. REED:  Okay.

9         THE COURT:  Was it in Virginia where you were trying

10   to do a deal?

11        MR. REED:  There was Virginia, and we had properties

12   in New Jersey.

13        THE COURT:  Okay.  Take -- let's talk about Virginia,

14   okay, just as an example.  What was the venture you were trying

15   to do in Virginia?

16        MR. REED:  We owned a property.

17        THE COURT:  Okay.

18        MR. REED:  And we were expanding the property.

19        THE COURT:  All right.

20        MR. REED:  So the question is -- and we were

21   financed -- you know, we had banking relationships and private

22   lending relationships.  So the question is, under a breach of

23   contract theory, I under --

24        THE COURT:  Which contract was breached?  To assert a

25   breach of contract claim, you've got to show that there was a

1  contract, what it covered, and how it was breached.  What

2  contract do you believe was breached?

3         MR. REED:  Well, the mortgage contract was breached

4  under your opinion.  And the damages --

5         THE COURT:  The mortgage contract on your house.

6         MR. REED:  Yeah.  And the damages that would flow from

7  a wrongful filing of a foreclosure.

8         THE COURT:  Okay.  So the contract, you're saying, was

9  with respect to your house.  And you're saying the damages that

10  flowed from that include damages you claim you suffered on the

11  Virginia project that you were going to undertake, right?

12         MR. REED:  Right.  The filing --

13         THE COURT:  What is it that you think that you're

14  going to find in the Trust's documents relating to your

15  Virginia project?

16         MR. REED:  The -- and again, it may be my mis -- I may

17  be misunderstanding -- misapprehending the law under contracts

18  is that the -- is it foreseeable that the def -- is it

19  foreseeable for the defendant that their actions could cause X

20  harm?  And so the question --

21         THE COURT:  Stop.  You're saying that because they --

22  I don't want to put words in your mouth.  But what I'm

23  understanding you to say is that their foreclosure efforts on

24  your house caused your -- were the cause or proximate cause of

25  your proposed business venture in Virginia to fail.  Because of

1  the foreclosure, you weren't able to conclude the financing for

2  Virginia.  Am I -- is that the gist of it?

3         MR. REED:  Yes.  So my understanding is that maybe

4  there's a defense that I have to face at trial, which is is

5  that within the realm of a foreseeable damage under contract

6  law.

7         THE COURT:  So what do you think you're going to find

8  in the Trust's -- what is it -- you can't -- what specifically

9  are you looking for in the Trust's documents?  Did they have

10  anything to do with your Virginia project?

11        MR. REED:  They -- they had -- the actions interfered

12  with my financing --

13        THE COURT:  No, no, no.  But was GMAC involved in

14  financing or developing or having any role in connection with

15  your proposed Virginia venture?

16        MR. REED:  I did not apply for a loan with GMAC.

17        THE COURT:  Did you give them -- did you, in

18  connection with refinancing or forbearance or anything on the

19  mortgage on your home, did you provide them with information

20  about your Virginia property and what you were going to do with

21  it, et cetera?

22        MR. REED:  I believe so.

23        THE COURT:  Okay.  Do you have copies of what you gave

24  them?

25        I mean, look, if what you're telling me is that -- and

1  I'm not trying to put ideas in your head, I'm trying to

2  understand what it is you're claiming.  I understand that you

3  believe you suffered damages relating to other business

4  opportunities that you were pursuing as a result of wrongful

5  foreclosure efforts on your home.  Okay?  And if,

6  hypothetically, in trying to work out a modification or a

7  forbearance on foreclosure, you gave them financial information

8  about other properties you owned and what your development

9  plans were for them, at least I understand what you're trying

10 to connect up the dots on.

11          You say, look, I gave them this information.  I told

12 them what I was going to be pursuing, and that if they

13 proceeded with foreclosure, I wouldn't be able to do it.  And

14 therefore, Judge, I believe I'm damaged -- I suffered damages

15 as a proximate -- in connection to the Virginia venture, as a

16 proximate result of their foreclosure efforts.  I understand

17 that.  Okay?  I don't know if that's what happened.  But I

18 understand that.

19          So if what you're saying is I gave them information,

20 written information -- e-mails, whatever -- about the property

21 I have in Virginia, or the other property I owned in New

22 Jersey, and what my plans or what the value of that was, and

23 how I was going to proceed with it, and your argument -- if

24 your argument then is it was foreseeable that if they went

25 ahead with a wrongful foreclosure on my house that my

1   opportunities in Virginia or these other New Jersey properties

2   would be lost and I would be damaged as a result.  I don't know

3   if that's what you're telling me.  Okay?

4            MR. REED:  But --

5            THE COURT:  But if what you're seeking is, you say I

6   gave them information, I want copies -- I want to show that

7   they have in their records copies related to Virginia

8   properties and other New Jersey property, then you're required

9   to identify with specificity -- if you identify a Virginia

10  property and you tell them I believe that you received

11  information from me or others about it, and I want copies of

12  whatever you have in your records relating to the Virginia

13  property or this other New Jersey property.  That's identifying

14  it for them specifically, because you believe you can show that

15  your losses in Virginia were proximately caused by wrongful

16  foreclosure on your home.

17           I don't know whether that's -- you've got to be more

18  specific.  It's getting late in the day here, Mr. Reed, for you

19  to be -- you still haven't formulated what you're even asking

20  for.  I mean, I couldn't have been clearer in the transcript

21  from April 26th -- here we are at the end of June -- I couldn't

22  have been any clearer about sit down with Ms. Hager right away

23  and let's get on with it.  Okay?

24           That's what -- I'm not mad at you, Mr. Reed, but I'm

25  just telling you that we're going to go to trial, okay, and

RESIDENTIAL CAPITAL, LLC, ET AL.                    13

1   before it goes to trial you've got to produce -- discovery

2   should have been done already.  Ms. Hager is telling me that

3   hers is done.

4            In addition to Virginia, are there other properties

5   that you believe that you've been damaged in connection with?

6            MR. REED:  Yes, the rental properties.

7            THE COURT:  And have you given Ms. Hager the

8   specific --

9            MR. REED:  Yes, we have.  We deposed -- they've

10  deposed the financing company involved with those properties.

11  They've deposed the tenants from those properties and --

12           THE COURT:  So is Mr. Curley going to come in and

13  testify this time?

14           MR. REED:  Yes, he did.

15           THE COURT:  Was he deposed?

16           MR. REED:  Yes, he was, with counsel.

17           THE COURT:  Okay.

18           MR. REED:  And he confirmed --

19           THE COURT:  Okay.

20           MR. REED:  -- things in those depositions.

21           THE COURT:  Okay.

22           MR. REED:  And in writing.

23           THE COURT:  Okay.

24           MR. REED:  And his counsel assures us that he will

25  appear.

1          THE COURT:  Okay.  All right, what else do you want to

2    tell me, Mr. Reed?  How many -- the last time we were here, and

3    I asked you how many witnesses, you had some -- you had a very

4    large number of witnesses.

5          MR. REED:  Yes.

6          THE COURT:  Have you refined how many people you

7    expect to call as witnesses?

8          MR. REED:  It's -- it's going to be close to twenty.

9    And a great many of them have to do with authentication of

10   bills and work done on different properties.

11         THE COURT:  Let me ask you this.  If --

12         MR. REED:  I mean, they're fifteen-minute testimonies,

13   basically.

14         THE COURT:  Yeah, but -- stop.  If what you want to do

15   is call somebody to authenticate a bill, have you tried to meet

16   with Ms. Hager to go over and say I want to introduce these

17   bills, do I need to call a witness to do it, or can we

18   stipulate --

19         MR. REED:  Yes, I have.

20         THE COURT:  All right.  And you haven't been able to

21   resolve stipulations about --

22         MR. REED:  That's correct.

23         THE COURT:  Okay.  Is that right, Ms. Hager?

24         MS. HAGER:  That just came up this morning, Your

25   Honor, as we were sitting here waiting.  It was in context with

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1   a lot of other things that we were talking about.  Sometimes I

2   hesitate to say too much.

3            THE COURT:  Okay.

4            MS. HAGER:  So if the issue is will we stipulate to

5   authenticating one of the invoices from one of those

6   contractors that are on your list, that is fine.  There were

7   other things that were discussed, so I don't want to come off

8   like I --

9            THE COURT:  There is -- okay.

10            MS. HAGER:  -- was taking --

11            THE COURT:  Okay.

12            MR. REED:  But Your Honor, I hesitate to have

13   documents agreed to as to their authenticity.  And in light of

14   what I've experienced -- and it's a universe of one experience

15   at the evidentiary trial regarding letters from TD Bank -- to

16   then have documents challenged on another grounds as to the

17   contents --

18            THE COURT:  No, time out.  Time out.  Okay?

19            You had no stipulations as to the documents last time.

20   What didn't come in, didn't come in, because you couldn't

21   authenticate it.  That's what the purpose --

22            MR. REED:  They --

23            THE COURT:  Stop.  Okay?  You are required, both of

24   you, you need to specifically identify every exhibit you want

25   to introduce at trial.  And you need -- and so does Ms. Hager.

1    And the two of you need to see whether you can resolve which of

2    those exhibits are going to be challenged on authenticity

3    grounds and why.  I'm going to be -- both of you are going to

4    have one very upset judge if Mr. Reed has to bring in ten

5    witnesses for fifteen minutes each to authenticate a bunch of

6    documents, okay, where there's no substantial grounds for

7    challenging.

8          Whether they're admissible because of relevance or

9    something like that, is a different issue, Mr. Reed.  But it's

10   very -- it's very rare that I have a trial where issues about

11   authenticity haven't been resolved beforehand.  Okay?

12         Yes, sometimes it's just -- that's fine if that's what

13   it is.  But so the first thing --

14         MR. REED:  Your Honor, the concern is I have is a

15   document can come in as authentic, like the TD letters were

16   under your order, and then are challenged as to the truth of

17   the matter contained within the documents.  If they're useless

18   to me, I thought that the purpose of accepting them as

19   authentic was hand-in-hand, allowed them to be presented for

20   the truth of the matter which they contained.

21         THE COURT:  Well, it doesn't resolve issues about

22   hearsay.

23         MR. REED:  So then the witnesses have to come.

24         THE COURT:  Fine, then call your witnesses.  But I

25   don't want -- Ms. Hager can stipulate to authenticity but

1  preserve all her objections as to admissibility.  You're saying

2  relevance --

3          MR. REED:  But that doesn't resolve that stuff.

4          THE COURT:  Okay, I know you're not a lawyer.

5  Authenticity has a very specific meaning.  Okay?  It's maybe

6  the first hurdle.  It doesn't get you over hearsay or double

7  hearsay or whatever.  Okay.  We're going to take it one step at

8  a time.

9          Mr. Reed, on or before -- write yourself some notes

10  here.  On or before 12 noon, June 30th, 2016 -- on or before 12

11  noon, June 30th, 2016, you will give Ms. Hager a complete list,

12  with specificity, of documents that you want the Trust to

13  produce.  Do it sooner than then, but that's the absolutely

14  deadline.  Okay?  If you don't include it in the information

15  you give to her by June 30th, you're cut off.  Okay?

16          It's got to be specific.  It's not going to be just

17  generalities.  It's got to relate to --

18          MR. REED:  Yeah, that's what I was researching.

19          THE COURT:  -- it's not -- wait.  It's got to relate

20  to your business opportunities and ventures, not to some other

21  that had nothing -- something else that has nothing to do with

22  you.  You, as I understand, want to be able to prove that you

23  were damaged relating to other business opportunities -- I'm

24  not foreclosing health issues; okay, you raised that last

25  time -- but focusing on business opportunities, ventures.  And

1    if you think the Trust has information in its records relating

2    to those other opportunities or anything, fine, ask for it.

3            It's like the hypothetical I gave you.  If you, in

4    trying to get forbearance or whatever said, look, I've got

5    these three other properties; they're valuable; I have these

6    business opportunities.  If you foreclose on my house, I have

7    the risk that the financing is going to be cut off; I'm not

8    going to be able to get financing, et cetera, okay, if you

9    think you've got some of those particulars, fine, ask for it.

10   They may not have anything in response, but you can ask for it.

11   Okay?

12           Are there other kinds of things, Mr. Reed that you

13   think you're -- I'm trying to -- we've got to move forward.

14   And I'm really surprised that here we are, on June 24th, after

15   a long discussion about this on April 26th, and you still

16   haven't done it.  Okay?  This should have all been resolved.

17   And I told you, sit down, try and get this worked out, and ask

18   for the documents voluntarily.  Because if you serve a

19   subpoena, you would get an objection to it, it's going to go

20   round and round.  And here we are, June 25th, and you haven't

21   done anything.

22           Are there other things that you believe you're

23   entitled to receive from the Trust?

24           MR. REED:  I may have mistakenly understood some legal

25   terminology, because I was trying to locate several employees

1    of -- former employees of GMAC Mortgage and the foreclosure

2    firm that was the agent of GMAC Mortgage.

3              THE COURT:  They're out of business, aren't they, I

4    think?

5              MR. REED:  Yes.

6              THE COURT:  I can't remember the name of it.  I

7    think --

8              MR. REED:  Zucker Goldberg.

9              THE COURT:  Yeah, I think they're in bankruptcy or

10   something.

11             MR. REED:  They are.  They are.

12             THE COURT:  Yeah.

13             MR. REED:  But I -- that's why I've employed someone

14   to help me to try and find the names of certain people or their

15   locations.  And --

16             THE COURT:  People from Zucker Goldberg signed

17   pleadings in your -- I mean, there were names on pleadings.

18             MR. REED:  Yeah, I have those -- I have those names.

19   I was --

20             THE COURT:  Good luck finding them.  You know.

21             MR. REED:  And I wanted to subpoena them and depose

22   them.  And --

23             THE COURT:  When are you going to do -- Mr. Reed.

24             MR. REED:  I thought that my -- I thought that my

25   phase started now, like in the order that it started -- that my

RESIDENTIAL CAPITAL, LLC, ET AL.                    20

1   discovery would be scheduled --

2           THE COURT:  I said there would be a separate order

3   with respect to your deadline for your discovery.  I didn't

4   think we were going to be here at June 24th finding out you

5   haven't done any of it.  But you also wanted to take a 30(b)(6)

6   deposition, I think, of the Trust.

7           Ms. Hager, am I right about that?

8           MS. HAGER:  I don't recall whether he said he wanted

9   to do that or not, Your Honor.  But Your Honor --

10          THE COURT:  Okay.

11          MS. HAGER:  -- with respect to these potential other

12  people that he wants to talk to that were employees of GMAC or

13  were employees of Zucker Goldberg, it would seem to me that

14  those were folks that should have been on his witness list.

15          THE COURT:  Oh, yeah.

16          MR. REED:  And that's where I -- that's something I --

17          THE COURT:  I'm not opening up the -- you provided --

18  I did require an exchange of witness lists.  The Trust gave you

19  one.  I gather you also had Sara Lathrop, or something, I

20  think, didn't you?

21          MS. HAGER:  No, I --

22          THE COURT:  Didn't you have somebody from the Trust?

23          MS. HAGER:  At the trial we did have somebody from the

24  Trust.

25          THE COURT:  Yes.

1          MS. HAGER:  Now, this time around, no.

2          THE COURT:  Okay.

3          MS. HAGER:  Not on damages.

4          THE COURT:  All right.  Okay.  I'm not expanding --

5    you don't get a do-over.

6          MR. REED:  I didn't understand --

7          THE COURT:  Come on.

8          MR. REED:  I'll say for the record that I didn't

9    understand that an employee of my adversary would be under the

10   legal term -- definition "my witness".  So I would ask you to

11   allow me to do that over the obvious objection of Ms. Hager.

12         THE COURT:  Who is it that you want, who was a former

13   employee of GMAC, that you wish to depose?

14         MR. REED:  The individual that I met with at the time

15   of the foreclosure.

16         THE COURT:  And what is his or her name?

17         MR. REED:  I didn't have that with me.  It's in my

18   phone, and they didn't allow me to bring my phone with me.  And

19   the Zucker Goldberg, it was -- we were seeking the office

20   manager and the paralegal besides who signed the documents.

21   But I don't have their names yet.

22         THE COURT:  Can I ask you why it is that you want to

23   depose a lawyer from Zucker Goldberg?

24         MR. REED:  Again, Your Honor, there's -- under the

25   contract, causation, if they have knowledge that their acts

1   caused financial harm then they have -- there's foreknowledge

2   that it can cause financial -- you know -- harm to an

3   individual who has a foreclosure filed against them.  And if

4   they -- you know, if they're aware of that, then the specifics

5   of that harm are -- go to depend on whoever the -- you know,

6   the person harmed is, the plaintiff.  It's not -- they --

7   it's -- the foreknowledge is of the harming effect, not of the

8   actually specific damages.  It's like going through a stop

9   sign, you have foreknowledge that you can cause an accident.

10          THE COURT:  All right.

11          MR. REED:  You don't have to have foreknowledge it's

12  going to break a leg, it's going to --

13          THE COURT:  Let me stop you --

14          MR. REED:  -- crack a flame.

15          THE COURT:  Let me stop you there.  On February 16,

16  2016, I entered an order scheduling discovery concerning

17  cognizable damages related to claim number 3759 filed by Frank

18  Reed.  It's ECF docket number 9620.  And it says, among other

19  things:  "This order shall govern future proceedings in

20  connection with this contested matter:  1) Mr. Reed shall not

21  be entitled to further amend claim number 3759.

22          "2) On or before April 12, 2016, Mr. Reed shall

23  provide to the ResCap Borrower Claims Trust -- defined as the

24  Borrower Trust -- (i) all expert reports he intends to rely

25  upon at trial on this contested matter; (ii) a list of all fact

1    witnesses whom he intends to introduce at trial; and (iii)

2    written direct testimony in the form of a declaration for each

3    such witness.

4              "Mr. Reed will not have an opportunity to supplement

5    his expert and fact witness lists after April 12, 2016."

6              That was written in -- close quote -- was written in

7    as plain English as it possibly could be.  You provided the

8    Trust's counsel with a very, very long list of witnesses.  And

9    Ms. Hagler had a limited period of time to go ahead and depose

10   anybody she wanted to who was -- you had identified as a fact

11   or expert witness.

12             The Court will adhere to and enforce the February 16,

13   2016 order, ECF docket number 9620, and specifically in

14   paragraph 2, the last sentence:  "Mr. Reed will not have an

15   opportunity to supplement his expert and fact witness lists

16   after April 12, 2016."

17             If they're not on the list, you're not calling them as

18   witnesses.

19             MR. REED:  Okay.

20             THE COURT:  Okay?

21             MR. REED:  My misunderstanding is --

22             THE COURT:  Wait, but there can't be a

23   misunderstanding about -- this didn't come in a vacuum.  We had

24   a hearing in April.  We went through all this.  Ms. Hager has a

25   limited amount of time to depose people, et cetera.  If they're

1    not on your list that you provided, they're not testifying.

2              MR. REED:  Your Honor, I'm not blaming you for my

3    misunderstanding --

4              THE COURT:  I don't want to know -- it's not a

5    question of blame.  I have made clear at multiple hearings

6    that -- how we were going to proceed.  The language of the

7    order was crystal clear.  Okay?

8              MR. REED:  And besides the written requests, the --

9    the -- there were two witnesses, their expert, and the

10   deposition of a corporate designee, I thought we did discuss.

11             THE COURT:  Okay.  And I -- in paragraph 4 of the same

12   order -- the same order being ECF 9620 -- paragraph 4:  "The

13   deadline for Mr. Reed to depose the Borrower Trust's witnesses

14   shall be set by a separate court order."

15             I haven't done that.  I'm going to give you the

16   chance -- I'm going to set a deadline now.  What Ms. Hager has

17   told me is that the Trust intends to call only one witness,

18   Oscar Marquis.  Is that correct, Ms. Hager?

19             MS. HAGER:  Yes, Your Honor.

20             THE COURT:  When would you like to depose Mr. Marquis?

21             All right, here's what I'm going to do.  Where's Mr.

22   Marquis located, Ms. Hager?

23             MS. HAGER:  I believe he's in Maryland, Your Honor.

24             THE COURT:  Okay.  Will you bring him someplace for

25   his deposition so that Mr. Reed doesn't have to go to Maryland

1  for it?

2           MS. HAGER:  We could discuss that.  I might --

3           THE COURT:  I'm going to order it.  I'm not --

4           MS. HAGER:  -- if he's amenable -- well --

5           THE COURT:  I'm not going to order Mr. Reed to go to

6  Maryland to take the deposition.  The witness has been retained

7  to testify in my courtroom.  So you'll bring him to New York

8  for the deposition.

9           MS. HAGER:  Sure.  I was just going to suggest that if

10 it's agreeable with Mr. Reed, perhaps we could do it by video

11 conference.  But if he wants it in person, that's fine too.

12 Whatever's most convenient.

13          THE COURT:  Okay.  If he wants it in person -- look,

14 the problem with a video conference is he can't put a piece of

15 paper across the table and --

16          MS. HAGER:  I understand, Your Honor.

17          THE COURT:  And so unless the two of you agree on

18 something else, the Court is directing that the deposition of

19 Marquis take place in New York City.

20          MS. HAGER:  Fair enough, Your Honor.  May I make one

21 additional point, then?

22          THE COURT:  Sure.

23          MS. HAGER:  Under the Rules, the deposition of an

24 expert witness is to be paid for by the person noticing the

25 deposition.

1    THE COURT:  I believe I have the discretion to deal

2  with that.  So I am ordering that you provide -- you produce

3  Mr. Marquis for deposition at the Trust's expense.  I'll

4  reserve the right after the trial to decide whether there

5  should be cost shifting or not.  But I'm not requiring Mr. Reed

6  to pay for the deposition.

7    Have you given a report already?

8    MS. HAGER:  Yes, Your Honor.  It's the same report

9  that we gave Mr. Reed in connection with the trial from

10  September of 2014.

11    THE COURT:  Okay.

12    MS. HAGER:  Which we gave, again, to Mr. Reed.

13    THE COURT:  Okay.

14    MS. HAGER:  And Your Honor, just so I'm clear on cost,

15  that my client would pay to bring him here, but also for his

16  time during the deposition?

17    THE COURT:  Yes.

18    MS. HAGER:  Okay.

19    THE COURT:  If you're paying for his time, you will.

20    MS. HAGER:  Fair enough.  Thank you.

21    THE COURT:  I'm not requiring Mr. Reed, who's

22  proceeding pro se, at this stage -- you can apply at the end of

23  the case -- but at this stage, I'm not.  Okay?

24    MS. HAGER:  Okay.  Thank you, Your Honor.

25    THE COURT:  You're calling him as a witness.  I know

RESIDENTIAL CAPITAL, LLC, ET AL.                    27

1    what the Rules are.  You're going to produce him for a

2    deposition.  Unless the parties agree otherwise, he'll be

3    produced in New York.  If you work out some other -- agree on

4    some other location, that's fine with me.  And the deadline for

5    the deposition is Friday July 22nd.  I'm basically giving you a

6    month, four weeks, to get this done.

7              And the deposition -- how long is his report, Ms.

8    Hager?

9              MS. HAGER:  I'm estimating it's maybe twenty pages.

10             THE COURT:  Okay.

11             MS. HAGER:  It's a rebuttal report to Mr. Reed's

12   expert, Mr. Hendricks.

13             THE COURT:  Sure.  And have you taken Mr. Hendricks'

14   deposition?

15             MS. HAGER:  Yes, I have, Your Honor.

16             THE COURT:  How many hours did it take to do the

17   deposition?

18             MS. HAGER:  Two-and-a-half, perhaps.

19             MR. REED:  I think --

20             THE COURT:  Okay.  I'm going to limit the length of

21   the Marquis deposition to five hours.

22             MR. REED:  Your Honor, if --

23             THE COURT:  Just a second.

24             MR. REED:  Um-hum.

25             THE COURT:  Go ahead, Mr. Reed.

1          MR. REED:  Is it permissible or required that the

2     Trust give me a copy of the transcripts from the depositions

3     they took, or do I have to pay for them myself?

4          THE COURT:  Do you have transcripts ready, Ms. Hager?

5          MS. HAGER:  With me, no, Your Honor.

6          THE COURT:  No, not with you.

7          MS. HAGER:  Sorry.

8          THE COURT:  You ordered transcripts?

9          MS. HAGER:  We did, yes, Your Honor.

10         THE COURT:  Are you willing to give Mr. Reed copies of

11    the transcripts?

12         MS. HAGER:  Yes, we are, Your Honor.

13         THE COURT:  That answers you question, Mr. Reed.  I

14    didn't have to order anything.  Ms. Hager just volunteered to

15    give you copies of the transcript.  Okay?

16         MR. REED:  Well, that's most appreciated.

17         THE COURT:  Okay.  The less I have to decide the

18    better, okay?  All right, so Ms. Hager said she'd give you

19    copies of the transcripts.  Nine depositions, you took?

20         MS. HAGER:  Yes, Your Honor.  It was nine, including

21    Mr. Reed's.

22         THE COURT:  Okay.  All right.  So the deposition of

23    Mr. Marquis shall be occur and be completed on or before Friday

24    July 22nd, 2016.  The length of the deposition is not to exceed

25    five hours.  That's excluding any recesses; five hours of

1  testimony.  Okay?

2          What else, Mr. Reed?

3          MR. REED:  The -- did I not talk about the corporate

4  witness or no?

5          THE COURT:  Who do you want to depose?

6          MR. REED:  I thought it was -- that was up to them to

7  dictate who a corporate designee would be.

8          THE COURT:  Well, if you're -- Federal Rule of Civil

9  Procedure 30(b)(6) -- and I don't expect you to know the

10  specific rules.

11          MR. REED:  I'm trying.

12          THE COURT:  You're doing pretty well with the rules.

13          Rule 30(b)(6), "Notice of Subpoena Directed to an

14  Organization.  In its notice" -- you don't have to do a

15  subpoena -- "a party may name as the deponent" -- I'm leaving

16  some words out, "a private corporation," et cetera, "and must

17  describe with reasonable particularity the matters for

18  examination.  The named organization must then designate one or

19  more officers, directors, or managing agents, or designate

20  other persons who consent to testify on its behalf; and it may

21  set out the matters on which each person designated will

22  testify.  A subpoena must advise" -- you're a party, so I'll

23  drop the next sentence.  "The person designated must testify

24  about information known or reasonably available to the

25  organization."

1          So if you don't know a specific person who you want to

2    depose, would you please sit down and talk to Ms. Hager about

3    this and tell her the topics on which you depose somebody?

4    You'd have to describe with reasonable particularity the

5    matters for examination.  The Trust can then pick who it wants

6    to testify on its behalf.

7          I'm sure you're aware, the Trust is pretty skeletal

8    staff at this stage, but -- okay.  Do you know on what subjects

9    you want to depose the Trust?

10         MR. REED:  Those are in the -- it's in my -- I don't

11   have it with me, Your Honor.

12         THE COURT:  Okay.

13         MR. REED:  I have something that I had put together

14   weeks and weeks ago on that.

15         THE COURT:  So I gave you the deadline of June 30th at

16   noon to provide Ms. Hager with the list of documents you want

17   the Trust to produce.  That same deadline is going to apply

18   to -- and when I go off -- when we finish this matter, talk to

19   Ms. Hager and work out how you're going to do this.  You can

20   talk by phone sooner.  You need to provide Ms. Hager with a

21   notice describing with reasonable particularity the matters on

22   which you want to examine the Trust.

23         Ms. Hager, if you can't work it out with Mr. Reed,

24   because you think topics on which -- he's not entitled to

25   depose or whatever, the two of you arrange a conference call

RESIDENTIAL CAPITAL, LLC, ET AL.                          31

1    with me for next week.  I want to get this -- and the same

2    thing with respect to the documents that he's asking you for.

3    If you can't work it out, you need to raise it with me very

4    soon.  You can do it by telephone.  You don't have to both come

5    to court here to do it.  We'll do it on the record.  Generally,

6    I have those calls sort of late in the day, like at 4 or

7    something like that.  And --

8          (Pause)

9          THE COURT:  All right.  I'm going to set the matter

10   for a telephone hearing for Wednesday July 13 at 4 p.m.  Ms.

11   Hager, does your office have a conference call system?

12         MS. HAGER:  Yes, Your Honor.

13         THE COURT:  Okay.  I'm happy to use that rather than

14   CourtCall.  Give Mr. Reed the number.  Hopefully what you're

15   both going to tell me on July 13th is you've negotiated what

16   documents the Trust is going to get for you.  If they don't

17   have them, Mr. Reed you can't -- they can only give you what

18   they have.  And if they have objections -- I don't want more

19   filings -- you'll tell me in the phone call.

20         And it's the same as to who the 30(b)(6) -- whether

21   you've agreed on the topics the 30(b)(6) deposition is going to

22   cover.  And --

23         (Pause)

24         THE COURT:  I'm going to set a deadline for completing

25   the deposition -- your deposition, Mr. Reed, of any 30(b)(6)

1   witnesses.  The deadline is 5 p.m., Friday July 24th.  That's a

2   week after the deadline I gave for completing the expert's

3   deposition.

4           MR. REED:  What day is that?

5           THE COURT:  I'm sorry, I gave you the wrong date, I

6   think.  Hang on.

7           Yeah, July 29.  I'm sorry.  July 29 -- Friday July 29.

8           MR. REED:  And the 22nd was Oscar Marquis?  Right.

9           THE COURT:  Yeah.

10          MR. REED:  Is that right?

11          THE COURT:  Yeah, that's the deadline.  That's not --

12  don't wait until the deadline.

13          MR. REED:  No, I don't want to.

14          THE COURT:  I'm putting a dead -- you need to work

15  out -- I'm giving absolute deadlines for finishing stuff.  I

16  said in that last order that I'd set deadlines for you.  I'm

17  setting the deadlines now.  And so far the deadlines I've given

18  you are 12 noon, June 30th, a list of documents you're

19  requesting from the Trust; deadline for the Marquis deposition,

20  July 22nd, not to exceed five hours; deadline for the 30(b)(6)

21  depositions, Friday July 29 at 5 p.m., I'm going to say not to

22  exceed seven hours.

23          The Federal Rules of Civil Procedure have a

24  presumptive limit on the length of depositions of seven hours.

25  It doesn't mean you have to take seven hours, Mr. Reed; but

1    that's the presumpt -- that's in the rule itself.  Okay?

2              I set a telephone hearing for Wednesday July 13th at 4

3    o'clock.  We're going to deal with, then, any disputes that

4    exist about either the documents that Mr. Reed is requesting or

5    the topics on which he's going to be permitted to take the

6    30(b)(6) depositions.

7              At the last -- at the hearing in April, Ms. Hager,

8    there was an extended colloquy about pre-trial motions, motions

9    in limine.  Do you know yet what some of the motions you're

10   going -- you intend to make?

11             MS. HAGER:  Your Honor, I think we're still working

12   through some of that, but I do have an idea of some.

13             THE COURT:  Okay.

14       (Pause)

15             THE COURT:  I'm also setting a deadline of Friday

16   August 19 at 5 p.m. for submitting the proposed joint pre-trial

17   conference order.  Mr. Reed, Ms. Hager will provide you -- on

18   the court's Web site, public Web site, under my chambers rules,

19   there is a template, a form -- there's a template or a form for

20   the joint pre-trial conference order that I require.  I don't

21   remember whether we had one for the first trial or not, but I'm

22   going to require it here.

23             Ms. Hager, get a copy to Mr. Reed, soon, okay?  It

24   requires a lot of work to do.  And the fact that I've given you

25   the deadline, what I'm -- Ms. Hager, I'm going to put the

RESIDENTIAL CAPITAL, LLC, ET AL.                              34

1   burden on you to draft a proposed order, submit it to Mr. Reed

2   well in advance of that August 19 date.  It includes proposed

3   stipulations of fact and issues about authenticity of

4   documents.  You've got to have a complete exhibit list, Mr.

5   Reed, not any documents that the Trust provided me.  You've got

6   to list each document.

7         MR. REED:  Like we did in trial.

8         THE COURT:  Yes.

9         MR. REED:  Last time.

10        THE COURT:  Okay.  And you use numbers, and the Trust

11  uses letters.  Same like last time.

12        MR. REED:  Okay.

13        THE COURT:  Okay?  And so I'm setting the deadline for

14  the joint pre-trial conference order of August 19.

15        MS. HAGER:  And Your Honor, just to clarify.

16        THE COURT:  Yes.

17        MS. HAGER:  If I may?  I believe at the last hearing

18  Your Honor had requested that we supply a form joint pre-trial

19  order to Mr. Reed, which we did --

20        THE COURT:  Okay.  All right.

21        MS. HAGER:  -- following -- and my recollection is

22  that we did one jointly for the trial, September of 2014, so --

23        THE COURT:  Great.

24     (Pause)

25        THE COURT:  Okay.  I'm setting the date for the final

RESIDENTIAL CAPITAL, LLC, ET AL.                     35

1   pre-trial conference -- wait, let me stop for a second.

2            I set the deadline for the filing of the joint pre-

3   trial conference order for Friday August 19th at 5.  That's

4   also the deadline for filing any motions in limine.

5            MR. REED:  August?

6            THE COURT:  August.  Friday, August 19 by 5 o'clock is

7   the deadline for filing a joint pre-trial conference order and

8   to file any motions in limine.  Those are motions which I would

9   hear before the trial.

10            The Trust may want to exclude evidence that you've

11   proffered, exhibits or testimony.  Ms. Hager?

12            MS. HAGER:  Your Honor, I'm on vacation the last two

13   weeks of August.

14            THE COURT:  That's fine, we'll --

15            MS. HAGER:  Could we actually move the date forward so

16   that I'm not going back and forth with Mr. Reed --

17            THE COURT:  Yes.

18            MS. HAGER:  -- on the joint pre-trial?

19            THE COURT:  When would you like to move it to?

20            MS. HAGER:  The Friday prior to August 19th, so I

21   guess the 12th?

22            MR. REED:  Isn't that the 16th?

23            THE COURT:  No, Friday is the 12th -- is August 12th.

24   All right.

25            MS. HAGER:  Thank you.

1          THE COURT:  So Mr. Reed, you and Ms. Hager are going

2     to talk about it.  The deadline for submitting the joint pre-

3     trial conference order is Friday August 12th at 5 o'clock.

4     It's also the deadline for filing motions in limine.

5          When do you come back from vacation, Ms. Hager?

6          MS. HAGER:  Somewhere around the 25th, I believe.

7          THE COURT:  Okay.  All right.

8          MR. REED:  I'll be away until the 1st.

9          THE COURT:  1st of September?

10         MR. REED:  Yeah.

11         THE COURT:  Okay.

12         MR. REED:  How about summary judgment motions, Judge?

13         THE COURT:  Yeah, we're not hear -- what Judge Woods

14     said was that I had to hear evidence about your damages from

15     other -- this is clearly a factual issue.  No summary judgment

16     motions.  We're going to trial.  You're not filing a summary

17     judgment motion, they're not filing a summary judgment motion.

18     When we go to trial, you get your witnesses here.  We're doing

19     trial.  Okay.  The --

20         MR. REED:  They have no opposing facts.

21         THE COURT:  Mr. Reed, I don't think I can be any

22     clearer than what I just said.

23         MR. REED:  I understand.

24         THE COURT:  You be prepared to go to trial.  You

25     believe you can prove your damages; you put on your evidence.

1    They can oppose it.

2          (Pause)

3              THE COURT:  The final pre-trial conference will be

4    held on Thursday September 8th at 10 a.m.  That has to be in

5    court, Mr. Reed.  I can't do that by phone.

6              MR. REED:  I'm sorry, say the date again, Your Honor.

7              THE COURT:  Thursday September 8th at 10 a.m.

8              When are you going to be on vacation, Mr. Reed?

9              MR. REED:  I think we're coming back the 1st.

10             THE COURT:  When are you leaving?

11             MR. REED:  I thought it was the 15th.

12             THE COURT:  15th of August?

13             MR. REED:  Um-hum.

14             THE COURT:  And you're coming back, tell me again,

15   September 1st?

16             MR. REED:  Yes, that's my understanding.  1st or 2nd.

17             THE COURT:  Okay.

18         (Pause)

19             THE COURT:  All right, I'm going to change something I

20   gave you already.  I'm going to set the final pre-trial

21   conference for Thursday September 15 at 10 a.m., a week later.

22   And I'm going to require Mr. Reed's opposition to motions in

23   limine by Thursday September 8th; any reply from the Trust by

24   Tuesday September 13.  And at the final pre-trial conference --

25   ordinarily I don't hear argument on motions in limine,

1    ordinarily I decide it on the papers -- if I have any

2    questions, I will ask them at the pre-trial conference on

3    September 15..

4            I'm setting the trial for beginning Monday September

5    26th at 9 a.m. and continuing day-to-day, Tuesday the 27th,

6    Wednesday the 28th, Thursday the 29th, Friday the 30th.  I hope

7    it's not going to take that long; but Mr. Reed has a very long

8    list of possible witnesses.

9            At the final pre-trial conference, Mr. Reed, I may

10   well set time limits.  I think when we did your last trial, it

11   was a timed trial.  I'm blocking out those five days for trial.

12   I'm certainly hopeful that won't be required, particularly

13   because I get the direct testimony in writing, and then -- you

14   know how it works; we did this before.  Okay.

15           We'll enter a written order either today or Monday

16   that reflects the dates that I've talked about.

17           Ms. Hager, do those dates work for trial, for you?

18           MS. HAGER:  I believe so, Your Honor.

19           THE COURT:  Okay, Mr. Reed, do they work for trial for

20   you?

21           MR. REED:  I believe so.

22           THE COURT:  Okay.  I've tried to accommodate both of

23   your vacation schedules in terms of the filing deadlines that I

24   set.  Either of you have any questions?

25           MS. HAGER:  No, Your Honor, thank you.

RESIDENTIAL CAPITAL, LLC, ET AL.                    39

1          THE COURT:  Mr. Reed?

2          MR. REED:  No.  Just for the record, I'm disturbed

3     about summary judgment, that's all.

4          THE COURT:  Well, be as disturbed as you want.  Your

5     damages are fact questions.  You can't prove your damages as a

6     matter of law as to -- you've got to prove a dollar amount of

7     your damages.  Anyway, I'm not going to get into an argument

8     with you about it.  No summary judgment, motions.

9          I always ask this.  Is there any hope of settling this

10    matter, Ms. Hager?

11         MS. HAGER:  I think that's probably doubtful.  We had

12    some discussions three or four months ago that really didn't go

13    anywhere because we're incredibly far apart, Your Honor.

14         THE COURT:  Okay.  I will speak to you all on

15    Wednesday July 13th at 4 o'clock for a telephone hearing.

16    We're adjourned.

17         MS. HAGER:  Thank you, Your Honor.

18      (Whereupon these proceedings were concluded at 12:06 PM)

19

20

21

22

23

24

25

40

```
 1
 2                              I N D E X
 3
 4                              RULINGS
 5                                          PAGE      LINE
 6   Deposition of Mr. Reed will take place in    26        9
 7   New York City
 8   The Court will enter a written order          38        16
 9   detailing scheduled dates.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2                        C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    *Penina Wolicki*

10

11   _____

     PENINA WOLICKI
12
     AAERT Certified Electronic Transcriber CET**D-569
13

14
     eScribers
15
     700 West 192nd Street, Suite #607
16
     New York, NY 10040
17

18
     Date:  June 27, 2016
19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

June 24, 2016

**A**

able (6)
  5:23;10:1;11:13;
  14:20;17:22;18:8
absolute (1)
  32:15
absolutely (1)
  17:13
accepting (1)
  16:18
accident (1)
  22:9
accommodate (1)
  38:22
across (1)
  25:15
actions (2)
  9:19;10:11
acts (1)
  21:25
actually (2)
  22:8;35:15
addition (1)
  13:4
additional (1)
  25:21
adhere (1)
  23:12
adjourned (1)
  39:16
adjourning (1)
  4:20
admissibility (1)
  17:1
admissible (1)
  16:8
advance (1)
  34:2
adversary (1)
  21:9
advise (1)
  29:22
again (5)
  9:16;21:24;26:12;
  37:6,14
against (1)
  22:3
agent (1)
  19:2
agents (1)
  29:19
ago (2)
  30:14;39:12
agree (3)
  25:17;27:2,3
agreeable (1)
  25:10
agreed (2)
  15:13;31:21
ahead (4)
  6:8;11:25;23:9;

27:25
allow (2)
  21:11,18
allowed (1)
  16:19
almost (1)
  6:7
always (1)
  39:9
amenable (1)
  25:4
amend (1)
  22:21
among (1)
  22:18
amount (2)
  23:25;39:6
apart (1)
  39:13
appear (1)
  13:25
appearances (1)
  4:5
apply (3)
  10:16;26:22;30:17
appreciate (1)
  4:21
appreciated (1)
  28:16
April (9)
  4:17;5:15;12:21;
  18:15;22:22;23:5,16,
  24;33:7
argument (4)
  11:23,24;37:25;
  39:7
around (3)
  6:13;21:1;36:6
arrange (1)
  30:25
assert (1)
  8:24
assures (1)
  13:24
August (12)
  33:16;34:2,14;
  35:3,5,6,6,13,20,23;
  36:3;37:12
authentic (2)
  16:15,19
authenticate (3)
  14:15;15:21;16:5
authenticating (1)
  15:5
authentication (1)
  14:9
authenticity (6)
  15:13;16:2,11,25;
  17:5;34:3
available (1)
  29:24
aware (4)
  5:7;8:5;22:4;30:7

away (3)
  6:12;12:22;36:8

**B**

baby (1)
  8:6
back (5)
  8:7;35:16;36:5;
  37:9,14
back-and-forth (1)
  5:16
Bank (1)
  15:15
banking (1)
  8:21
bankruptcy (1)
  19:9
Barbara (1)
  4:7
basically (2)
  14:13;27:5
beforehand (1)
  16:11
beginning (1)
  38:4
behalf (2)
  29:20;30:6
besides (2)
  21:20;24:8
better (1)
  28:18
bill (1)
  14:15
bills (2)
  14:10,17
bit (1)
  7:14
blame (1)
  24:5
blaming (1)
  24:2
blocking (1)
  38:11
Borrower (4)
  4:8;22:23,24;
  24:13
both (5)
  15:23;16:3;31:4,
  15;38:22
breach (2)
  8:22,25
breached (4)
  8:24;9:1,2,3
break (1)
  22:12
bring (6)
  6:21;16:4;21:18;
  24:24;25:7;26:15
bunch (1)
  16:5
burden (1)
  34:1

business (9)
  6:11;7:10;9:25;
  11:3;17:20,23,25;
  18:6;19:3

**C**

call (8)
  14:7,15,17;16:24;
  24:17;30:25;31:11,
  19
calling (2)
  23:17;26:25
calls (1)
  31:6
came (1)
  14:24
can (20)
  4:11;7:5;8:3;
  12:14;14:17;16:1,15,
  25;18:10;21:22;
  22:2,9;26:22;30:5,
  19;31:4,17;36:21,25;
  37:1
Capital (2)
  4:3,8
case (3)
  6:13,14;26:23
causation (1)
  21:25
cause (6)
  7:5;9:19,24,24;
  22:2,9
caused (3)
  9:24;12:15;22:1
certain (1)
  19:14
certainly (1)
  38:12
cetera (4)
  10:21;18:8;23:25;
  29:16
challenged (3)
  15:16;16:2,16
challenging (1)
  16:7
chambers (1)
  33:18
chance (1)
  24:16
change (1)
  37:19
City (1)
  25:19
Civil (2)
  29:8;32:23
claim (5)
  4:4;8:25;9:10;
  22:17,21
claiming (1)
  11:2
Claims (2)
  4:8;22:23

clarify (1)
  34:15
clear (4)
  5:18;24:5,7;26:14
clearer (3)
  12:20,22;36:22
clearly (1)
  36:15
client (1)
  26:15
close (2)
  14:8;23:6
cognizable (1)
  22:17
colloquy (1)
  33:8
coming (2)
  37:9,14
comment (1)
  6:23
company (1)
  13:10
complete (2)
  17:11;34:4
completed (1)
  28:23
completing (2)
  31:24;32:2
concern (1)
  16:14
concerning (1)
  22:16
conclude (1)
  10:1
concluded (1)
  39:18
conference (17)
  4:3;25:11,14;
  30:25;31:11;33:17,
  20;34:14;35:1,3,7;
  36:3;37:3,21,24;
  38:2,9
confirmed (1)
  13:18
connect (1)
  11:10
connection (6)
  10:14,18;11:15;
  13:5;22:20;26:9
consent (1)
  29:20
contained (2)
  16:17,20
contents (1)
  15:17
contested (2)
  22:20,25
context (1)
  14:25
continuing (1)
  38:5
contract (12)
  6:24;7:15;8:23,24,

25;9:1,2,3,5,8;10:5;
21:25
**contractors (1)**
15:6
**contracts (2)**
7:16;9:17
**convenient (1)**
25:12
**copies (7)**
10:23;12:6,7,11;
28:10,15,19
**copy (2)**
28:2;33:23
**corporate (3)**
24:10;29:3,7
**corporation (1)**
29:16
**cost (2)**
26:5,14
**counsel (3)**
13:16,24;23:8
**couple (1)**
8:1
**COURT (154)**
4:2,9,11,14,22;5:9,
13,23;6:5,12;7:9,12,
21,24;8:6,9,13,17,19,
24;9:5,8,13,21;10:7,
13,17,23;12:5;13:7,
12,15,17,19,21,23;
14:1,6,11,14,20,23;
15:3,9,11,18,23;
16:21,24;17:4,19;
19:3,6,9,12,16,20,23;
20:2,10,15,17,22,25;
21:2,4,7,12,16,22;
22:10,13,15;23:12,
20,22;24:4,11,14,20,
24;25:3,5,13,17,18,
22;26:1,11,13,17,19,
21,25;27:10,13,16,
20,23,25;28:4,6,8,10,
13,17,22;29:5,8,12;
30:12,15;31:5,9,13,
24;32:5,9,11,14;
33:13,15;34:8,10,13,
16,20,23,25;35:6,14,
17,19,23;36:1,7,9,11,
13,21,24;37:3,5,7,10,
12,14,17,19;38:19,
22;39:1,4,14
**CourtCall (1)**
31:14
**courtroom (1)**
25:7
**court's (1)**
33:18
**cover (1)**
31:22
**covered (1)**
9:1
**crack (1)**
22:14

**credit (1)**
5:6
**creditor (1)**
4:13
**crystal (1)**
24:7
**Curley (1)**
13:12
**cut (2)**
17:15;18:7

# D

**damage (1)**
10:5
**damaged (4)**
11:14;12:2;13:5;
17:23
**damages (20)**
6:25;7:5,9,15,16,
22;9:4,6,9,10;11:3,
14;21:3;22:8,17;
36:14,25;39:5,5,7
**damaging (1)**
7:8
**date (5)**
32:5;34:2,25;
35:15;37:6
**dates (2)**
38:16,17
**day (3)**
12:18;31:6;32:4
**days (1)**
38:11
**day-to-day (1)**
38:5
**dead (1)**
32:14
**deadline (22)**
17:14;20:3;24:13,
16;27:4;30:15,17;
31:24;32:1,2,11,12,
19,20;33:15,25;
34:13;35:2,4,7;36:2,
4
**deadlines (5)**
32:15,16,17,17;
38:23
**deal (3)**
8:10;26:1;33:3
**decide (3)**
26:4;28:17;38:1
**declaration (1)**
23:2
**def (1)**
9:18
**defendant (1)**
9:19
**defense (1)**
10:4
**defined (1)**
22:23
**definition (1)**

21:10
**depend (1)**
22:5
**deponent (1)**
29:15
**depose (13)**
4:24;19:21;21:13,
23;23:9,25;24:13,20;
29:5;30:2,3,9,25
**deposed (4)**
13:9,10,11,15
**deposition (24)**
20:6;24:10,25;
25:6,8,18,23,25;
26:3,6,16;27:2,5,7,
14,17,21;28:22,24;
31:21,25,25;32:3,19
**depositions (8)**
5:1,3;13:20;28:2,
19;32:21,24;33:6
**describe (2)**
29:17;30:4
**describing (1)**
30:21
**designate (2)**
29:18,19
**designated (2)**
29:21,23
**designee (2)**
24:10;29:7
**developing (1)**
10:14
**development (1)**
11:8
**dictate (1)**
29:7
**different (2)**
14:10;16:9
**direct (2)**
23:2;38:13
**Directed (1)**
29:13
**directing (1)**
25:18
**directors (1)**
29:19
**discovery (7)**
5:3,11,13;13:1;
20:1,3;22:16
**discretion (1)**
26:1
**discuss (2)**
24:10;25:2
**discussed (1)**
15:7
**discussion (2)**
5:15;18:15
**discussions (1)**
39:12
**disputes (1)**
33:3
**distressed (1)**
6:6

**disturbed (2)**
39:2,4
**docket (2)**
22:18;23:13
**document (2)**
16:15;34:6
**documents (27)**
5:2,3,17,21,23;6:1,
18,23;7:3,3,9:14;
10:9;15:13,16,19;
16:6,17;17:12;
18:18;21:20;30:16;
31:2,16;32:18;33:4;
34:4,5
**dollar (1)**
39:6
**done (11)**
5:2,12;7:13;13:2,
3;14:10;18:16,21;
20:5;24:15;27:6
**do-over (1)**
21:5
**dots (1)**
11:10
**double (1)**
17:6
**doubtful (1)**
39:11
**down (4)**
5:17;12:22;18:17;
30:2
**draft (1)**
34:1
**drop (1)**
29:23
**during (1)**
26:16

# E

**earlier (1)**
5:11
**ECF (3)**
22:18;23:13;24:12
**effect (1)**
22:7
**efforts (3)**
9:23;11:5,16
**either (3)**
7:16;33:4;38:15,
24
**else (5)**
6:21;14:1;17:21;
25:18;29:2
**e-mails (1)**
11:20
**employed (1)**
19:13
**employee (2)**
21:9,13
**employees (4)**
18:25;19:1;20:12,
13

**end (4)**
6:7,10;12:21;
26:22
**enforce (1)**
23:12
**English (1)**
23:7
**enough (2)**
25:20;26:20
**enter (1)**
38:15
**entered (2)**
4:18;22:16
**entitled (3)**
18:23;22:21;30:24
**estimating (1)**
27:9
**et (4)**
10:21;18:8;23:25;
29:16
**even (1)**
12:19
**evidence (3)**
35:10;36:14,25
**evidentiary (1)**
15:15
**exactly (1)**
7:2
**examination (2)**
29:18;30:5
**examine (1)**
30:22
**example (3)**
7:14;8:3,14
**exceed (3)**
28:24;32:20,22
**exchange (1)**
20:18
**exclude (1)**
35:10
**excluding (1)**
28:25
**exhibit (2)**
15:24;34:4
**exhibits (2)**
16:2;35:11
**exist (1)**
33:4
**expanding (2)**
8:18;21:4
**expect (3)**
6:18;14:7;29:9
**expense (1)**
26:3
**experience (1)**
15:14
**experienced (1)**
15:14
**expert (8)**
5:6;22:24;23:5,11,
15;24:9;25:24;27:12
**expert's (1)**
32:2

**extended (1)**
33:8

## F

**face (1)**
10:4
**fact (7)**
22:25;23:5,10,15;
33:24;34:3;39:5
**facts (1)**
36:20
**factual (1)**
36:15
**fail (1)**
9:25
**Fair (2)**
25:20;26:20
**far (3)**
6:12;32:17;39:13
**February (2)**
22:15;23:12
**Federal (2)**
29:8;32:23
**feel (1)**
7:20
**fifteen (1)**
16:5
**fifteen-minute (1)**
14:12
**file (1)**
35:8
**filed (2)**
22:3,17
**filing (10)**
7:7;9:7,12;35:2,4,
7;36:4,16,17;38:23
**filings (1)**
31:19
**final (5)**
34:25;37:3,20,24;
38:9
**financed (1)**
8:21
**Financial (4)**
8:4;11:7;22:1,2
**financially (1)**
7:7
**financing (6)**
10:1,12,14;13:10;
18:7,8
**find (5)**
6:24;7:2;9:14;
10:7;19:14
**finding (2)**
19:20;20:4
**fine (8)**
15:6;16:12,24;
18:2,9;25:11;27:4;
35:14
**finish (1)**
30:18
**finishing (1)**

32:15
**firm (1)**
19:2
**first (4)**
5:14;16:13;17:6;
33:21
**five (5)**
27:21;28:25,25;
32:20;38:11
**flame (1)**
22:14
**flow (1)**
9:6
**flowed (1)**
9:10
**focusing (1)**
17:25
**folks (1)**
20:14
**following (1)**
34:21
**forbearance (3)**
10:18;11:7;18:4
**foreclose (1)**
18:6
**foreclosing (1)**
17:24
**foreclosure (15)**
7:5,7,12;9:7,23;
10:1;11:5,7,13,16,
25;12:16;19:1;
21:15;22:3
**foreknowledge (4)**
22:1,7,9,11
**foreseeability (4)**
6:25;7:4,5,15
**foreseeable (4)**
9:18,19;10:5;
11:24
**form (4)**
23:2;33:19,19;
34:18
**former (2)**
19:1;21:12
**formulated (1)**
12:19
**forth (1)**
35:16
**forward (2)**
18:13;35:15
**four (2)**
27:6;39:12
**Frank (3)**
4:4,10;22:17
**Friday (12)**
27:5;28:23;32:1,7,
21;33:15;35:3,6,20,
23;36:3;38:6
**further (1)**
22:21
**future (1)**
22:19

## G

**gather (1)**
20:19
**gave (13)**
10:23;11:7,11,19;
12:6;18:3;20:18;
26:9,12;30:15;32:2,
5;37:20
**generalities (1)**
17:17
**Generally (1)**
31:5
**gist (1)**
10:2
**given (5)**
6:7;13:7;26:7;
32:17;33:24
**giving (2)**
27:5;32:15
**GMAC (7)**
8:4;10:13,16;19:1,
2;20:12;21:13
**goes (1)**
13:1
**Goldberg (5)**
19:8,16;20:13;
21:19,23
**Good (2)**
4:7;19:20
**govern (1)**
22:19
**great (2)**
14:9;34:23
**grounds (3)**
15:16;16:3,6
**guess (1)**
35:21

## H

**Hager (90)**
4:6,7,7,14,19,23;
5:10,19;6:2,8;12:22;
13:2,7;14:16,23,24;
15:4,10,25;16:25;
17:11;20:7,8,11,21,
23;21:1,3,11;23:24;
24:16,18,19,22,23;
25:2,4,9,16,20,23;
26:8,12,14,18,20,24;
27:8,9,11,15,18;
28:4,5,7,9,12,14,18,
20;30:2,16,19,20,23;
31:11,12;33:7,11,17,
23,25;34:15,17,21;
35:11,12,15,18,20,
25;36:1,5,6;38:17,
18,25;39:10,11,17
**Hagler (1)**
23:9
**hand-in-hand (1)**

16:19
**Hang (1)**
32:6
**happened (1)**
11:17
**happy (1)**
31:13
**harm (4)**
9:20;22:1,2,5
**harmed (1)**
22:6
**harming (1)**
22:7
**head (1)**
11:1
**health (3)**
6:17,19;17:24
**hear (5)**
6:6;35:9;36:13,14;
37:25
**hearing (6)**
23:24;31:10;33:2,
7;34:17;39:15
**hearings (1)**
24:5
**hearsay (3)**
16:22;17:6,7
**held (1)**
37:4
**help (1)**
19:14
**Hendricks (1)**
27:12
**Hendricks' (1)**
27:13
**here's (1)**
24:21
**hesitate (2)**
15:2,12
**holding (1)**
7:25
**home (3)**
10:19;11:5;12:16
**Honor (34)**
4:23;5:25;6:22;
14:25;15:12;16:14;
20:9,9;21:24;24:2,
19,23;25:16,20;26:8,
14,24;27:15,22;28:5,
9,12,20;30:11;31:12;
33:11;34:15,18;
35:12;37:6;38:18,
25;39:13,17
**hope (2)**
38:6;39:9
**hopeful (1)**
38:12
**hopefully (2)**
6:2;31:14
**hours (8)**
27:16,21;28:25,
25;32:20,22,24,25
**house (6)**

7:12;9:5,9,24;
11:25;18:6
**hurdle (1)**
17:6
**hypothetical (1)**
18:3
**hypothetically (1)**
11:6

## I

**idea (1)**
33:12
**ideas (1)**
11:1
**identified (2)**
7:25;23:10
**identify (5)**
12:9,9;15:24
**identifying (1)**
12:13
**ii (1)**
22:25
**iii (1)**
23:1
**include (2)**
9:10;17:14
**includes (1)**
34:2
**including (1)**
28:20
**incredibly (1)**
39:13
**individual (2)**
21:14;22:3
**information (10)**
10:19;11:7,11,19,
20;12:6,11;17:14;
18:1;29:24
**Institution (1)**
8:5
**intend (1)**
33:10
**intends (3)**
22:24;23:1;24:17
**intention (2)**
6:10,10
**interfered (1)**
10:11
**interrogatories (2)**
6:4,5
**into (1)**
39:7
**introduce (3)**
14:16;15:25;23:1
**invoices (1)**
15:5
**involved (2)**
10:13;13:10
**issue (3)**
15:4;16:9;36:15
**issues (8)**
4:20;6:14,16,17;

16:10,21;17:24;34:3

## J

**Jersey (5)**
8:12;11:22;12:1,8,
13
**joint (8)**
33:16,20;34:14,
18;35:2,7,18;36:2
**jointly (1)**
34:22
**Judge (5)**
6:15;11:14;16:4;
36:12,13
**judgment (6)**
36:12,15,17,17;
39:3,8
**July (12)**
27:5;28:24;31:10,
15;32:1,7,7,7,20,21;
33:2;39:15
**June (10)**
6:7;12:21;17:10,
11,15;18:14,20;20:4;
30:15;32:18

## K

**kinds (1)**
18:12
**knowledge (1)**
21:25
**known (1)**
29:24

## L

**language (1)**
24:6
**large (1)**
14:4
**last (11)**
14:2;15:19;17:24;
23:14;32:16;33:7;
34:9,11,17;35:12;
38:10
**late (2)**
12:18;31:6
**later (1)**
37:21
**Lathrop (1)**
20:19
**law (3)**
9:17;10:6;39:6
**lawyer (2)**
17:4;21:23
**least (1)**
11:9
**leaving (2)**
29:15;37:10
**leg (1)**
22:12

**legal (2)**
18:24;21:10
**Lending (2)**
8:4,22
**length (3)**
27:20;28:24;32:24
**less (1)**
28:17
**letters (3)**
15:15;16:15;34:11
**light (1)**
15:13
**limine (6)**
33:9;35:4,8;36:4;
37:23,25
**limit (2)**
27:20;32:24
**limited (2)**
23:9,25
**limits (1)**
38:10
**list (16)**
4:25;6:2,8,9;15:6;
17:11;20:14;22:25;
23:8,17;24:1;30:16;
32:18;34:4,6;38:8
**lists (3)**
20:18;23:5,15
**little (2)**
5:11;7:14
**loan (1)**
10:16
**locate (1)**
18:25
**located (1)**
24:22
**location (1)**
27:4
**locations (1)**
19:15
**long (7)**
5:15;6:13;18:15;
23:8;27:7;38:7,7
**Look (6)**
6:13;7:24;10:25;
11:11;18:4;25:13
**looking (1)**
10:9
**loss (1)**
7:14
**losses (1)**
12:15
**lost (1)**
12:2
**lot (2)**
15:1;33:24
**luck (1)**
19:20

## M

**mad (1)**
12:24

**manager (1)**
21:20
**managing (1)**
29:19
**many (5)**
14:2,3,6,9;27:16
**Marquis (11)**
5:6,10;24:18,20,
22;25:19;26:3;
27:21;28:23;32:8,19
**M-A-R-Q-U-I-S (1)**
5:10
**Maryland (3)**
24:23,25;25:6
**matter (8)**
16:17,20;22:20,
25;30:18;31:9;39:6,
10
**matters (4)**
29:17,21;30:5,21
**may (12)**
6:16,22;9:16,16;
18:10,24;25:20;
29:15,20;34:17;
35:10;38:9
**maybe (4)**
7:19;10:3;17:5;
27:9
**mean (5)**
10:25;12:20;
14:12;19:17;32:25
**meaning (1)**
17:5
**meet (1)**
14:15
**met (1)**
21:14
**might (1)**
25:2
**minutes (1)**
16:5
**mis (1)**
9:16
**misapprehending (1)**
9:17
**mistake (1)**
6:22
**mistakenly (1)**
18:24
**misunderstanding (4)**
9:17;23:21,23;
24:3
**modification (1)**
11:6
**Monday (2)**
38:4,15
**month (1)**
27:6
**months (1)**
39:12
**more (4)**
5:3;12:17;29:19;
31:18

**morning (3)**
4:7,21;14:24
**Mortgage (6)**
8:4;9:3,5;10:19;
19:1,2
**most (2)**
25:12;28:16
**motion (2)**
36:17,17
**motions (12)**
33:8,8,9;35:4,8,8;
36:4,12,16;37:22,25;
39:8
**mouth (1)**
9:22
**move (3)**
18:13;35:15,19
**much (1)**
15:2
**multiple (1)**
24:5
**must (4)**
29:16,18,22,23
**myself (1)**
28:3

## N

**name (5)**
5:5,9;19:6;21:16;
29:15
**named (1)**
29:18
**names (4)**
19:14,17,18;21:21
**need (9)**
5:3;6:20;14:17;
15:24,25;16:1;
30:20;31:3;32:14
**negotiated (1)**
31:15
**New (8)**
8:12;11:21;12:1,8,
13;25:7,19;27:3
**next (3)**
6:11;29:23;31:1
**nine (3)**
5:1;28:19,20
**noon (4)**
17:10,11;30:16;
32:18
**notes (1)**
17:9
**Notice (3)**
29:13,14;30:21
**noticing (1)**
25:24
**number (8)**
4:3;6:24;14:4;
22:17,18,21;23:13;
31:14
**numbers (1)**
34:10

## O

**objection (3)**
4:4;18:19;21:11
**objections (2)**
17:1;31:18
**obvious (1)**
21:11
**Obviously (1)**
6:15
**occur (1)**
28:23
**o'clock (5)**
4:20;33:3;35:6;
36:3;39:15
**off (4)**
15:7;17:15;18:7;
30:18
**office (2)**
21:19;31:11
**officers (1)**
29:19
**one (9)**
5:6;6:24;15:5,5,
14;16:4;17:7;20:19;
24:17;25:20;29:18;
33:21;34:22
**only (2)**
24:17;31:17
**opening (1)**
20:17
**opinion (2)**
6:15;9:4
**opportunities (7)**
11:4;12:1;17:20,
23,25;18:2,6
**opportunity (3)**
4:23;23:4,15
**oppose (1)**
37:1
**opposing (1)**
36:20
**opposition (1)**
37:22
**order (23)**
16:16;19:25;20:2;
22:16,19;23:13;24:7,
12,12,14;25:3,5;
28:14;32:16;33:17,
20;34:1,14,19;35:3,
7;36:3;38:15
**ordered (1)**
28:8
**ordering (1)**
26:2
**orders (1)**
4:17
**ordinarily (2)**
37:25;38:1
**Organization (3)**
29:14,18,25
**Oscar (4)**

5:6,10;24:18;32:8
others (1)
    12:11
otherwise (1)
    27:2
out (15)
    7:2;11:6;15:18,18;
    18:17;19:3;20:4;
    27:3;29:16,21;30:19,
    23;31:1,3;32:15;38:11
over (4)
    7:12;14:16;17:6;
    21:11
owned (3)
    8:16;11:8,21

                    P

pages (1)
    27:9
paid (1)
    25:24
paper (1)
    25:15
papers (1)
    38:1
paragraph (3)
    23:14;24:11,12
paralegal (1)
    21:20
particularity (3)
    29:17;30:4,21
particularly (1)
    38:12
particulars (1)
    18:9
parties (1)
    27:2
party (2)
    29:15,22
Pause (6)
    31:8,23;33:14;
    34:24;37:2,18
pay (3)
    26:6,15;28:3
paying (1)
    26:19
people (5)
    14:6;19:14,16;
    20:12;23:25
perhaps (2)
    25:10;27:18
period (1)
    23:9
permissible (1)
    28:1
permitted (1)
    33:5
person (7)
    22:6;25:11,13,24;
    29:21,23;30:1
persons (1)
    29:20

phase (1)
    19:25
phone (5)
    21:18,18;30:20;
    31:19;37:5
pick (1)
    30:5
piece (1)
    25:14
place (1)
    25:19
plain (1)
    23:7
plaintiff (1)
    22:6
plans (2)
    11:9,22
pleadings (2)
    19:17,17
please (2)
    4:2;30:2
pm (5)
    31:10;32:1,21;
    33:16;39:18
point (1)
    25:21
possible (1)
    38:8
possibly (1)
    23:7
potential (1)
    20:11
pre- (2)
    35:2;36:2
prepared (1)
    36:24
presented (1)
    16:19
preserve (1)
    17:1
presumpt (1)
    33:1
presumptive (1)
    32:24
pre-trial (13)
    33:8,16,20;34:14,
    18;35:1,7,18;37:3,
    20,24;38:2,9
pretty (2)
    29:12;30:7
preventing (1)
    5:18
previously (1)
    7:24
prior (1)
    35:20
private (2)
    8:21;29:16
pro (2)
    4:13;26:22
probably (1)
    39:11
problem (1)

25:14
Procedure (2)
    29:9;32:23
proceed (2)
    11:23;24:6
proceeded (1)
    11:13
proceeding (2)
    8:2;26:22
proceedings (2)
    22:19;39:18
produce (6)
    6:2;13:1;17:13;
    26:2;27:1;30:17
produced (1)
    27:3
proffered (1)
    35:11
project (3)
    9:11,15;10:10
properties (12)
    6:16;7:17;8:11;
    11:8;12:1,8;13:4,6,
    10,11;14:10;18:5
property (9)
    8:16,18;10:20;
    11:20,21;12:8,10,13,
    13
proposed (5)
    9:25;10:15;33:16;
    34:1,2
prove (8)
    7:9,18,20,21;
    17:22;36:25;39:5,6
provide (6)
    10:19;22:23;26:2;
    30:16,20;33:17
provided (5)
    5:5;20:17;23:7;
    24:1;34:5
proximate (3)
    9:24;11:15,16
proximately (1)
    12:15
public (1)
    33:18
purpose (2)
    15:21;16:18
pursuing (2)
    11:4,12
put (6)
    9:22;11:1;25:14;
    30:13;33:25;36:25
putting (1)
    32:14

                    Q

quote (1)
    23:6

                    R

raise (1)
    31:3
raised (1)
    17:24
rare (1)
    16:10
rather (1)
    31:13
ready (1)
    6:1;28:4
really (2)
    18:14;39:12
realm (1)
    10:5
reasonable (3)
    29:17;30:4,21
reasonably (1)
    29:24
rebuttal (1)
    27:11
recall (1)
    20:8
receive (1)
    18:23
received (1)
    12:10
recesses (1)
    28:25
recollection (1)
    34:21
record (3)
    21:8;31:5;39:2
records (4)
    7:6;12:7,12;18:1
Reed (155)
    4:5,7,9,10,10,13,
    24,25;5:1,4,5,7,8,11,
    13,22,25;6:6,9,10,
    21;7:11,19,23;8:4,6,
    8,11,16,18,20;9:3,6,
    12,16;10:3,11,16,22;
    12:4,18,24;13:6,9,
    14,16,18,20,22,24;
    14:2,5,8,12,19,22;
    15:12,22;16:4,9,14,
    23;17:3,9,18;18:12,
    24;19:5,8,11,13,18,
    21,23,24;20:16;21:6,
    8,14,17,24;22:1,14,
    18,20,22;23:4,14,19,
    21;24:2,8,13,25;
    25:5,10;26:5,9,12,
    21;27:19,22,24,25;
    28:1,10,13,16;29:2,
    3,6,11;30:10,13,23;
    31:14,17,25;32:4,8,
    10,13,25;33:4,17,23;
    34:1,5,7,9,12,19;
    35:5,16,22;36:1,8,
    10,12,20,21,23;37:5,
    6,8,9,11,13,16;38:7,
    9,19,21;39:1,2
Reed's (3)

27:11;28:21;37:22
refinancing (1)
    10:18
refined (1)
    14:6
reflects (1)
    38:16
regarding (1)
    15:15
relate (4)
    6:24;7:4;17:17,19
related (2)
    12:7;22:17
relates (1)
    6:16
relating (7)
    6:18;7:10;9:14;
    11:3;12:12;17:23;
    18:1
relationships (2)
    8:21,22
relevance (2)
    16:8;17:2
rely (1)
    22:24
remain (1)
    6:14
remember (3)
    8:1;19:6;33:21
rental (1)
    13:6
reply (1)
    37:23
report (4)
    26:7,8;27:7,11
reports (1)
    22:24
request (1)
    5:1
requested (1)
    34:18
requesting (2)
    32:19;33:4
requests (1)
    24:8
require (4)
    20:18;33:20,22;
    37:22
required (4)
    12:8;15:23;28:1;
    38:12
requires (1)
    33:24
requiring (2)
    26:5,21
ResCap (1)
    22:23
researching (3)
    5:25;6:25;17:18
reserve (1)
    26:4
Residential (2)
    4:3,8

**resolve (4)**
14:21;16:1,21;
17:3
**resolved (2)**
16:11;18:16
**respect (6)**
4:4;6:17;9:9;20:3,
11;31:2
**responded (1)**
5:1
**response (1)**
18:10
**result (3)**
11:4,16;12:2
**retained (1)**
25:6
**reviewed (2)**
4:16,17
**right (23)**
4:2,14;8:19;9:11,
12;12:22;14:1,20,23;
20:7;21:4;22:10;
24:21;26:4;28:18,
22;31:9;32:8,10;
34:20;35:24;36:7;
37:19
**risk (1)**
18:7
**role (1)**
10:14
**round (2)**
18:20,20
**Rule (3)**
29:8,13;33:1
**Rules (6)**
25:23;27:1;29:10,
12;32:23;33:18

**S**

**same (7)**
24:11,12;26:8;
30:17;31:1,20;34:11
**Sara (1)**
20:19
**saying (6)**
4:19;9:8,9,21;
11:19;17:1
**scheduled (1)**
20:1
**schedules (1)**
38:23
**scheduling (1)**
22:16
**se (2)**
4:13;26:22
**seated (2)**
4:2,11
**second (2)**
27:23;35:1
**seek (1)**
6:22
**seeking (2)**

12:5;21:19
**seem (1)**
20:13
**sentence (2)**
23:14;29:23
**separate (2)**
20:2;24:14
**September (11)**
26:10;34:22;36:9;
37:4,7,15,21,23,24;
38:3,4
**serve (2)**
5:16;18:18
**set (11)**
24:14,16;29:21;
31:9,24;32:16;33:2;
35:2;37:20;38:10,24
**setting (5)**
32:17;33:15;
34:13,25;38:4
**settling (1)**
39:9
**seven (3)**
32:22,24,25
**several (1)**
18:25
**shall (5)**
22:19,20,22;
24:14;28:23
**shifting (1)**
26:5
**show (4)**
7:7;8:25;12:6,14
**side (2)**
5:2,12
**sign (1)**
22:9
**signed (2)**
19:16;21:20
**sit (4)**
5:17;12:22;18:17;
30:2
**site (2)**
33:18,18
**sitting (1)**
14:25
**skeletal (1)**
30:7
**Smith (1)**
4:8
**somebody (4)**
14:15;20:22,23;
30:3
**someone (1)**
19:13
**someplace (1)**
24:24
**Sometimes (2)**
15:1;16:12
**Somewhere (1)**
36:6
**soon (2)**
31:4;33:23

**sooner (2)**
17:13;30:20
**sorry (5)**
5:22;28:7;32:5,7;
37:6
**sort (1)**
31:6
**speak (1)**
39:14
**speaking (2)**
5:8,10
**specific (8)**
8:3;12:18;13:8;
17:5,16;22:8;29:10;
30:1
**Specifically (5)**
4:25;10:8;12:14;
15:24;23:13
**specificity (3)**
7:2;12:9;17:12
**specifics (1)**
22:4
**staff (1)**
30:8
**stage (4)**
6:6;26:22,23;30:8
**start (1)**
4:19
**started (2)**
19:25,25
**stay (1)**
4:11
**step (2)**
8:7;17:7
**still (5)**
5:14;6:7;12:19;
18:15;33:11
**stipulate (3)**
14:18;15:4;16:25
**stipulations (3)**
14:21;15:19;34:3
**Stop (7)**
9:21;14:14;15:23;
22:8,13,15;35:1
**stuff (2)**
17:3;32:15
**subjects (1)**
30:8
**submit (1)**
34:1
**submitting (2)**
33:16;36:2
**subp (1)**
6:3
**subpoena (7)**
5:17;6:3;18:19;
19:21;29:13,15,22
**substantial (1)**
16:6
**suffered (3)**
9:10;11:3,14
**suggest (1)**
25:9

**summary (6)**
36:12,15,16,17;
39:3,8
**supplement (2)**
23:4,15
**supply (1)**
34:18
**supposed (1)**
7:1
**Sure (4)**
25:9,22;27:13;
30:7
**surprised (1)**
18:14
**system (1)**
31:11

**T**

**table (1)**
25:15
**talk (10)**
5:18,19;7:15;8:13;
20:12;29:3;30:2,18,
20;36:2
**talked (2)**
8:1;38:16
**talking (1)**
15:1
**TD (2)**
15:15;16:15
**telephone (4)**
31:4,10;33:2;
39:15
**telling (4)**
10:25;12:3,25;
13:2
**template (2)**
33:19,19
**ten (1)**
16:4
**tenants (1)**
13:11
**term (1)**
21:10
**terminology (1)**
18:25
**terms (1)**
38:23
**testify (6)**
13:13;25:7;29:20,
22,23;30:6
**testifying (1)**
24:1
**testimonies (1)**
14:12
**testimony (4)**
23:2;29:1;35:11;
38:13
**theory (1)**
8:23
**therefore (1)**
11:14

**thought (6)**
16:18;19:24,24;
24:10;29:6;37:11
**three (2)**
18:5;39:12
**Thursday (3)**
37:4,7,21,23;38:6
**timed (1)**
38:11
**today (1)**
38:15
**together (1)**
30:13
**told (3)**
11:11;18:17;24:17
**took (3)**
4:25;28:3,19
**topics (4)**
30:3,24;31:21;
33:5
**transcript (3)**
4:16;12:20;28:15
**transcripts (5)**
28:2,4,8,11,19
**transportation (1)**
4:20
**trial (28)**
7:18;10:4;12:25;
13:1;15:15,25;
16:10;20:23;22:25;
23:1;26:4,9;33:21;
34:7,22;35:3,9;36:3,
16,18,19,24;38:4,10,
11,11,17,19
**tried (2)**
14:15;38:22
**Trust (26)**
4:8;5:17;6:18,20;
17:12;18:1,23;20:6,
18,22,24;22:23,24;
24:17;28:2;30:5,7,9,
17,22;31:16;32:19;
34:5,10;35:10;37:23
**Trust's (7)**
4:4;9:14;10:8,9;
23:8;24:13;26:3
**truth (2)**
16:16,20
**try (3)**
7:18;18:17;19:14
**trying (12)**
6:24;7:2;8:9,14;
11:1,1,6,9;18:4,13,
25;29:11
**Tuesday (2)**
37:24;38:5
**twenty (2)**
14:8;27:9
**two (5)**
16:1;24:9;25:17;
30:25;35:12
**Two-and-a-half (1)**
27:18

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

June 24, 2016

types (2)
6:1;7:3

**U**

Um-hum (2)
27:24;37:13
under (10)
8:22,23;9:4,17;
10:5;16:16;21:9,24;
25:23;33:18
underst (1)
7:23
understood (1)
18:24
undertake (1)
9:11
universe (1)
15:14
unless (2)
25:17;27:2
up (6)
4:12;6:21;11:10;
14:24;20:17;29:6
upon (1)
22:25
upset (1)
16:4
urged (2)
5:17,19
use (2)
31:13;34:10
useless (1)
16:17
uses (1)
34:11

**V**

vacation (4)
35:12;36:5;37:8;
38:23
vacuum (1)
23:23
valuable (1)
18:5
value (1)
11:22
various (1)
4:17
venture (4)
8:14;9:25;10:15;
11:15
ventures (4)
7:10;8:2;17:20,25
video (2)
25:10,14
Virginia (20)
8:3,9,11,13,15;
9:11,15,25;10:2,10,
15,20;11:15,21;12:1,
7,9,12,15;13:4
voluntarily (1)

18:18
volunteered (1)
28:14

**W**

wait (4)
17:19;23:22;
32:12;35:1
waiting (1)
14:25
wants (5)
5:12;20:12;25:11,
13;30:5
Web (2)
33:18,18
Wednesday (4)
31:10;33:2;38:6;
39:15
week (4)
6:11;31:1;32:2;
37:21
weeks (4)
27:6;30:14,14;
35:13
weren't (1)
10:1
Whatever's (1)
25:12
What's (1)
5:9
Where's (1)
24:21
Whereupon (1)
39:18
whole (1)
6:15
who's (1)
26:21
willing (1)
28:10
wish (1)
21:13
within (2)
10:5;16:17
witness (15)
4:25;5:5;14:17;
20:14,18;21:10;23:3,
5,11,15;24:17;25:6,
24;26:25;29:4
witnesses (16)
4:24,24;14:3,4,7;
16:5,23,24;23:1,8,
18;24:9,13;32:1;
36:18;38:8
Woods (2)
6:15;36:13
words (3)
7:6;9:22;29:16
work (10)
11:6;14:10;27:3;
30:19,23;31:3;
32:14;33:24;38:17,

19
worked (1)
18:17
working (1)
33:11
works (1)
38:14
write (1)
17:9
writing (2)
13:22;38:13
written (6)
11:20;23:2,6,6;
24:8;38:15
wrong (1)
32:5
wrongful (4)
9:7;11:4,25;12:15
wrote (1)
6:15

**Y**

York (3)
25:7,19;27:3

**Z**

Zucker (5)
19:8,16;20:13;
21:19,23

**1**

1 (1)
22:20
10 (3)
37:4,7,21
11 (1)
4:20
12 (6)
17:10,10;22:22;
23:5,16;32:18
12:06 (1)
39:18
12-12020 (1)
4:3
12th (4)
35:21,23,23;36:3
13 (2)
31:10;37:24
13th (3)
31:15;33:2;39:15
15 (2)
37:21;38:3
15th (2)
37:11,12
16 (2)
22:15;23:12
16th (1)
35:22
19 (4)
33:16;34:2,14;

35:6
19th (2)
35:3,20
1st (5)
36:8,9;37:9,15,16

**2**

2 (2)
22:22;23:14
2014 (2)
26:10;34:22
2016 (9)
4:17;17:10,11;
22:16,22;23:5,13,16;
28:24
22nd (4)
27:5;28:24;32:8,
20
24th (3)
18:14;20:4;32:1
25th (2)
18:20;36:6
26th (5)
4:17;5:15;12:21;
18:15;38:5
27th (1)
38:5
28th (1)
38:6
29 (4)
32:7,7,7,21
29th (1)
38:6
2nd (1)
37:16

**3**

30b6 (8)
20:5;29:9,13;
31:20,21,25;32:20;
33:6
30th (6)
17:10,11,15;
30:15;32:18;38:6
3759 (2)
22:17,21

**4**

4 (6)
24:11,12;31:6,10;
33:2;39:15

**5**

5 (6)
32:1,21;33:16;
35:3,6;36:3

**8**

8th (3)
37:4,7,23

**9**

9 (1)
38:5
9620 (3)
22:18;23:13;24:12