## Exhibit F

# DATASEARCH

PEOPLE.PARTNERS.PIONEERS

797 Cromwell Park Drive
Suite A-F
Glen Burnie, MD 21061

Voice: 800.638.7000
Fax: 800.626.7530
customer.service@data-search.com

**Order Type: INSURED TITLE SEARCH**

**REPORT# 1482442V**
Creation Date: 10/02/08
Current  Thru: 09/30/08

```
Client    : Top Notch Title, LLC              Client: 11115
Ref.      : 48186-08
Ordered As: Curry, Lyndol A
Address   : 20 Fairfax Drive                  Report Fee: $ 205.00
          :
          : Huntington WV 25705               ReIssue: N
County..  : CABELL COUNTY
```

**Deed Information:**          ** ALL OWNERS MUST SIGN LOAN DOCUMENTS **
Dated: 08/27/07   Recorded: 08/30/07   Book: 1176      Page: 135

**Owner: Lyndol A. Curry, Unmarried Melinda L. Hopkins and Harry Hopkins, Wife
     And Husband, As Joint Tenants With Right Of Survivorship And Not As
     Tenants In Common**

Previous Owner: Lyndol A. Curry
Legal: ** See Deed       Consideration:       10.00   Fee Simple: Yes
Land: 23340.00   Improvements: 76740.00   Total: 100080.00
Notes: Gideon District# 05

**Taxes:**                                              Tax Sale: N
2008 - County      Payable: Bi-Annual   Acct: 00028727 TaxID: 63/0406
1st Half      Amount:   842.00 Status: Paid      Due: 09/01/08 Paid: 08/25/08
2nd Half      Amount:   842.00 Status: Open      Due: 03/01/09

**Encumbrances:**
Document: Deed of Trust
Securing: G M A C Mortgage, L.L.C.              Amount:      186000.00
Dated: 07/20/07 Recorded: 07/24/07 Book: 2170    Page: 115        Open End:N
Notes: Tr: N/A  Signed: Lyndol A. Curry

---

**Liens/Judgments:**
YES - See Attached Judgment Page. - Patriot Act Run.

This report was compiled exclusively from public records and is not an
opinion of title, title guarantee, or title commitment.
LIMITATION OF LIABILITY: Liability for loss or damage due to errors or
omissions is limited to a maximum of Twenty-Five Thousand dollars
($25,000.00) and to "Client" identified above. Use of this report for
any purpose constitutes acceptance of this limitation.
This report is good for 60 days.

# DATASEARCH
PEOPLE.PARTNERS.PIONEERS

797 Cromwell Park Drive
Suite A-F
Glen Burnie, MD 21061

Voice: 800.638.7000
Fax: 800.626.7530
customer.service@data-search.com

Order Type: INSURED TITLE SEARCH

REPORT#  1482442V
Reported Thru Date
09/30/08

Ordered As: Curry, Lyndol A
            20 Fairfax Drive
            Huntington          WV   25705

**Liens / Judgments:**

Against  : Harry Hopkins, Jr.
Plaintiff: Webco Dba Mack & Dave's
Dated    : 09/03/03  Docket: 84        Page: 283        Amount: 1115.69+
Case     : 03C-1537
Note:

---

Against  : Harry Hopkins
Plaintiff: Pancake Property Services, L.L.C.
Dated    : 08/09/05  Docket: 94        Page: 188        Amount: 926.97
Case     : 05C-653
Note:

---

Against  : Melinda Hopkins
Plaintiff: Pancake Property Services, L.L.C.
Dated    : 08/09/05  Docket: 94        Page: 189        Amount: 926.97
Case     : 06C-653
Note:

---

Against  :
Plaintiff:
Dated    :                             Amount:
Case     :
Note:

---

Against  :
Plaintiff:
Dated    :                             Amount:
Case     :
Note:

---

Against  :
Plaintiff:
Dated    :                             Amount:
Case     :
Note:

---

This report was compiled exclusively from public records and is not an
opinion of title, title guarantee, or title commitment.
LIMITATION OF LIABILITY: Liability for loss or damage due to errors or
omissions is limited to a maximum of Twenty-Five Thousand dollars
($25,000.00) and to "Client" identified above. Use of this report for
any purpose constitutes acceptance of this limitation.
This report is good for 60 days.

# DATASEARCH
**PEOPLE.PARTNERS.PIONEERS**

7257 Parkway Drive
Suite A-F
Glen Burnie, Maryland 21061

Voice: 800.638.7000
Fax:    800.626.7530
customer.service@data-search.com

## DOCUMENT RECORDING PICKUP / NOTIFICATION REQUEST

**Client Information:**
Top Notch Title, LLC
5040 Corporate Woods Drive
Suite 130
Virginia Beach VA 23462

Client Number:    11115    Report Number:    1482442V

**Customer Information:**
Curry, Lyndol A
20 Fairfax Drive

Huntington WV 25705                              County:  CABELL COUNTY

Your EXACT loan amount: $_____    Open-End: _____

Your Position (circle one).:  First  /  Second          Rescission Date: _____

Branch Hours: _____ (circle one)    EST   CST   MST   PST

_____    We have closed this loan and the documents are ready for pickup. Please send a Fed-Ex Label via your automated label generator to the fax/email below.

_____    We have closed our loan and the documents have been given to **our carrier** for delivery. Please follow up your recording and send a confirmation when recorded.

Carrier Name:_____

Confirmation Number: _____

Email/Fax : _____

Additional Requests:

**\*\*Please Note that this form can be completed online via Empower or vmcSelect**

**\*If your document is NOT coming back to Data Search for review, please fax a copy of the First Page, Signature Page, Legal Description, HUD and payoff checks to our fax number below. This will expedite the issuance of your final title policy, if applicable.**

**\*If Title Insurance has been ordered, please send a copy of your Mortgage/Deed of Trust, Legal that is attached and your HUD, to expedite the Final Title Policy.**

We need the following Endorsements: (If a Title Policy is to be issued)

Rev. Credit ___   ALTA 8.1 ___   ALTA 5 ___   ALTA 9 ___   116 ___   ALTA 4 ___

Other: _____

Data Search Guarantee - We will fax/email you the label within 30 minutes of receipt of this fax. If you do not receive it, contact us immediately.

We appreciate your business and thank you for your continued support.
**FAX THIS TO 800-626-7530 ASAP**
*This form is an "optional" attachment to your title report. If you DO NOT want to receive it in the future please let us know and we can discontinue it immediately.*

# DATASEARCH

PEOPLE.PARTNERS.PIONEERS

797 Cromwell Park Drive
Suite A-F
Glen Burnie, MD 21061

Voice: 800.638.7000
Fax: 800.626.7530
customer.service@data-search.com

Report Number:  1482442

---

CURRENT DEED
Grantor: Lyndol A. Curry
Owner  : Lyndol A. Curry, Unmarried Melinda L. Hopkins and Harry Hopkins, Wife
          And Husband, As Joint Tenants With Right Of Survivorship And Not As
          Tenants In Common

Date of Deed : 08/27/2007 BOOK: 1176
Deed Recorded: 08/30/2007 PAGE: 135

---

CHAIN OF TITLE
Grantor: Scott Hoppe & Jackie Hoppe

Owner  : Lyndol A. Curry

Date of Deed : 07/20/07   BOOK: 1174
Deed Recorded: 07/24/07   PAGE: 324

---

Grantor: Mack Pinson & Mary Edith Pinson

Owner  : Jackie Hoppe & Scott Hoppe

Date of Deed : 01/30/98   BOOK: 1038
Deed Recorded: 03/23/98   PAGE: 181

---

Grantor: Administrator, Small Business Administration

Owner  : Mack Pinson & Mary Edith Pinson

Date of Deed : 08/06/84   BOOK: 855
Deed Recorded: 09/04/84   PAGE: 704

---

Printed: 10/02/2008 - 11:14:32 By: jes266

Report Number: 1482442

## Exhibit A

All those certain lots, pieces or parcels of real estate situate in the City of Huntington, Cabell County, West Virginia, shown on the revised map of RICKETT'S PLACE AND FAIRFAX COURT, made by R. W. Breece, Engineer, and filed in the Cabell County Commission Clerk's Office, West Virginia, in Map Book No. 2, as Map 242, as LOTS NUMBERS TWO HUNDRED SEVENTY-TWO (272) and TWO HUNDRED SEVENTY-THREE (273), fronting on Fairfax Court.

Subject to easements, restrictions, and covenants of record, if any.



SEP 1 0 2007
Title First Age
6007 US Rte 60 E., #121
Barboursville, WV 25504
135 4350

# DEED

THIS DEED, made and entered into this 27th day of August, 2007, by and between **Lyndol A. Curry**, party of the first part, and **Lyndol A. Curry, unmarried, Melinda L. Hopkins and Harry Hopkins, wife and husband**, parties of the second part.

**WITNESSETH:** That for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of all of which is hereby acknowledged by party of the first part, the said party of the first part does hereby GRANT and CONVEY unto the said parties of the second part as joint tenants with right of survivorship and not as tenants in common, with **covenants of general warranty**, all of that certain lot, tract or parcel of land, together with the improvements thereon and the appurtenances thereunto belonging, as follows:

Situated in the State of West Virginia, County of Cabell and in the District of Gideon.

ALL those certain lots, pieces or parcels of real estate situate in the City of Huntington, Cabell County, West Virginia, shown on the revised map of RICKETTS PLACE AND FAIRFAX COURT, made by R. W. Breece, Engineer, and filed in the Cabell County Commission Clerk's Office, West Virginia, in Map Book No. 2, as Map 242, as LOTS NUMBERS TWO HUNDRED SEVENTY-TWO (272) and TWO HUNDRED SEVENTY-THREE (273), fronting on Fairfax Court.

Known as:    **20 Fairfax Drive, Huntington WV 25705**

This conveyance is made subject to any and all exceptions, agreements, restrictions, covenants, easements and rights of way set forth in prior deeds of records.

Prior conveyance by deed bearing the date July 20, 2007 and of record in the Office of the Clerk of the County Commission of Cabell County, WV, in Deed Book 1174, Page 324.

## DECLARATION OF CONSIDERATION

Under the penalties of fine and imprisonment as provided by law, the undersigned hereby declares that this is a transfer from parent to child without actual consideration.

Witness the following signature and seal:

Lyndol A.  Curry

State of West Virginia,                                    AUG 3 0 2007
Cabell County, SS:

I, Robin Pelfrey, Notary Public of and for the county and state aforesaid, do hereby certify that Lyndol A. Curry, whose name is signed to the foregoing writing bearing date the 27th day of August, 2007, have this day acknowledged the same before me in my said county and state.

Given under my hand this 27th day of August, 2007.

This instrument prepared at the direction of the parties herein and without benefit of title examination by
Lisa Balderson, Esq..

6007 U.S. Route 60 East
Barboursville, WV  25504

# Cabell County Sheriff's Tax Office

## Cabell County Real Property



Tax Year: 2008
Ticket #: 0000022777

Account Number: ▮▮▮3727
Taxpayer I.D.:

District: 05 - GIDEON

| Property Owner | Property Description |
|---|---|
| CURRY LYNDOL A<br>MELINDA L & HARRY HOPKINS<br>20 FAIRFAX DR<br>HUNTINGTON, WV 257051330<br>Lending Institution: | LT 272-273 RICK PL<br>20 FAIRFAX DR<br><br>Map/Parcel: 63 / 0406 0000 0000<br>Lot Size:          Acreage:<br>Book: 1030        Page: 181 |

Tax Class: 2
Homestead Exemption: None
Back Tax: None
Exoneration: None
Prior Delinquents: None
Special Disposition:

### ASSESSMENT:

| Assessment | GROSS | NET | TAX (1/2 Year) |
|---|---|---|---|
| Land | 23340 | 23340 | |
| Building | 76740 | 76740 | |
| Total | 100080 | 100080 | 863.59 |

**AMOUNTS DUE:**  First Half: none due    Second Half: 842.00 If paid by: 03/01/2009    Total Due: 842.00 If paid by: 03/01/2009

### PAYMENTS RECEIVED:

| | First Half | Second Half |
|---|---|---|
| Net | 863.59 | .00 |
| Discount | 21.59 | .00 |
| Interest | .00 | .00 |
| Total | 842.00 | .00 |
| Date | 08/25/2008 | none paid |

Please Remit Payment (if any) to: Cabell County Sheriff's Tax Office
PO Box 2114
Huntington, WV 25721
Or call (304) 526-8672 with questions.

http://69.43.50.138:8003/cgi-bin/TAXINQ?SEARCH=3&TPTYR=2008&TPTICK=22777...  9/30/2008

☑ 003/034                                    LESLIE_ROWE          10/02/2008 10:00 FAX 3049081009 ☑ 008/080

CABELL COUNTY CLERK
Date/Time: 07/24/2007 12:34
Inst #: 268124
Book/Page:  1174~  /   324~
Recd/Tax:    990.20      979.20

AUG 0 2 2007

## DEED

THIS DEED, made and entered into this 20th day of July, 2007, by and between **Scott Hoppe and Jackie Hoppe, Husband and Wife,** parties of the first part, and **Lyndol A. Curry** party of the second part.

**WITNESSETH:**  That for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of all of which is hereby acknowledged by parties of the first part, the said parties of the first part do hereby GRANT and CONVEY unto the said party of the second part with **covenants of general warranty,** all of that certain lot, tract or parcel of land, together with the improvements thereon and the appurtenances thereunto belonging, as follows:

Situated in the State of West Virginia, County of Cabell and in the District of Gideon.

ALL those certain lots, pieces or parcels of real estate situate in the City of Huntington, Cabell County, West Virginia, shown on the revised map of RICKETTS PLACE AND FAIRFAX COURT, made by R. W. Breece, Engineer, and filed in the Cabell County Commission Clerk's Office, West Virginia, in Map Book No. 2, as Map 242, as LOTS NUMBERS TWO HUNDRED SEVENTY-TWO (272) and TWO HUNDRED SEVENTY-THREE (273), fronting on Fairfax Court.

Known as:     **20 Fairfax Drive, Huntington, WV 25705**

This conveyance is made subject to any and all exceptions, agreements, restrictions, covenants, easements and rights of way set forth in prior deeds of records.

Prior conveyance by deed bearing date the 30th day of January, 1998 and of record in the Office of the Clerk of the County Commission of Cabell County, WV, in Deed Book 1030, Page 181.

### DECLARATION OF CONSIDERATION

Under the penalties of fine and imprisonment as provided by law, the undersigned hereby declare(s) that the total consideration paid for the property transferred by this instrument is $218,000.00.

Witness the following signature and seal:

_____
Scott Hoppe

_____
Jackie Hoppe

State of West Virginia,
Cabell County, SS:

I, ___Angela K. Wheeler___, Notary Public of and for the county and state aforesaid, do hereby certify that Scott Hoppe and Jackie Hoppe, Husband and Wife, whose names are signed to the foregoing writing bearing date the 20th day of July, 2007, have this day acknowledged the same before me in my said county and state.

Given under my hand this 20th day of July, 2007.


Notary Public

This instrument prepared by:
Lisa L. Balderson, Esq.
6007 US Rt. 60 E., Ste 121
Barboursville, WV 25504

OFFICIAL SEAL
NOTARY PUBLIC, STATE OF WEST VIRGINIA
ANGELA K. WHEELER
TITLE FIRST
6007 US. ROUTE 60 E. #121
BARBOURSVILLE, WV 25504
My Commission Expires  FEB. 28, 2011

WEST VIRGINIA, CABELL COUNTY CLERK'S OFFICE THIS
INSTRUMENT WAS THIS DAY PRESENTED IN MY OFFICE AND
THEREUPON TOGETHER WITH THE CERTIFICATE THERETO
ANNEXED, IS ADMITTED TO RECORD JUL 2 4 2007
TESTE ____ CLERK, CABELL COUNTY COURT

THIS DEED, made this 30th day of January, 1998, by and between MACK PINSON

and MARY EDITH PINSON, husband and wife, parties of the first part, Grantors and JACKIE

HOPPE and SCOTT HOPPE, her husband, parties of the second part, Grantees.

WITNESSETH: That for and in consideration of the sum of Ten ($10.00) Dollars

cash in hand paid, and other good and valuable considerations, the receipt and sufficiency of all of

which are hereby acknowledged, the parties of the first part do hereby GRANT AND CONVEY unto

the parties of the second part as joint tenants with right of survivorship and not as tenants in common

the following described real property, to-wit:

> All those certain lots, pieces or parcels of real estate
> situate in the City of Huntington, Cabell County,
> West Virginia, shown on the revised map of
> RICKETTS PLACE AND FAIRFAX COURT, made
> by R. W. Breece, Engineer, and filed in the Cabell
> County Commission Clerk's Office, West Virginia, in
> Map Book No. 2, as Map 242, as LOTS NUMBERS
> TWO HUNDRED SEVENTY-TWO (272) and TWO
> HUNDRED SEVENTY-THREE (273), fronting on
> Fairfax Court.

Being the same property conveyed to Mack Pinson and Mary Edith Pinson,

the grantors herein, by deed dated August 6, 1984 and of record in the Office of the Clerk of the

County Commission of Cabell County, West Virginia, in Deed Book 855, at Page 704.

The parties of the first part covenant and agree with the parties of the second

part that they will WARRANT GENERALLY the title to the property herein conveyed, except

for covenants, restrictions and easements which may appear of record and to which this

conveyance is made expressly subject; however, it is not intended to create or reimpose any

restrictions on the basis of race, creed or color.

Under penalties of fine and imprisonment as provided by law, the Grantors herein

declare that the total consideration received for the real property conveyed hereby is $ 90,000.00

WITNESS the following signatures and seals:

_____ (SEAL)
MACK PINSON

_____ (SEAL)
MARY EDITH PINSON

STATE OF WEST VIRGINIA,

COUNTY OF CABELL, TO-WIT:

I, _Leon K. Oxley_ , a Notary Public in and for the County and State

aforesaid, do hereby certify that Mack Pinson and Mary Edith Pinson, husband and wife, whose

names are signed  to the writing above bearing date of 30th day of January, 1998, have this day

acknowledged the same before me in my said County.

Given under my hand this 3o day of _January_, 1998.

My commission expires _October 9, 2005_

Notary Public

This instrument was prepared
without examination of title by:

FRAZIER & OXLEY, L. C.
P.O. Box 2808
Huntington, West Virginia 25727



CABELL COUNTY CLERK
DEED                Clerk 04
Date/Time: 03/23/1998  15:03
Inst #:          201122
Book/Page:  1030- /    182-
Recd/Tax:   399.00      396.00

THIS DEED, made and entered into this 6th day of August,
1984, by and between the ADMINISTRATOR, SMALL BUSINESS ADMINI-
STRATION, an Agency of the United States Government, party of
the first part, and MACK PINSON and MARY EDITH PINSON, husband
and wife, as joint tenants with the right of survivorship and
not as tenants in common, parties of the second part;

WITNESSETH: That for and in consideration of the premises
and Ninety-Three Thousand Dollars ($93,000.00), paid by the parties
of the second part to the party of the first part, the party of
the first part, hereby grants, sells and conveys, with covenants
of special warranty, unto Mack Pinson and Mary Edith Pinson,
husband and wife, as joint tenants with the right of survivor-
ship and not as tenants in common, parties of the second part,
the following described property:

All those certain lots, pieces or parcels
of real estate situate in the City of
Huntington, Cabell County, West Virginia,
shown on the revised map of RICKETTS PLACE
AND FAIRFAX COURT, made by R. W. Breece,
Engineer, and filed in the Cabell County
Commission Clerk's Office, West Virginia,
in Map Book No. 2, as Map 242, as LOTS
NUMBERS TWO HUNDRED SEVENTY-TWO (272) and
TWO HUNDRED SEVENTY-THREE (273), fronting
on Fairfax Court.

And being the same property conveyed to the party of the
first part by James O. Porter, Trustee, by deed bearing date the
24th day of March, 1983, recorded in the aforesaid Clerk's Office
in Deed Book No. 839, at Page 666.

Together with and including all buildings, all fixtures,
including but not limited to all plumbing, heating, lighting,
ventilating, refrigerating, incinerating, air conditioning
apparatus and elevators (the Grantor hereby declaring that it
is intended that the items herein enumerated shall be deemed
to have been permanently installed as part of the realty), and
all improvements now or hereafter existing thereon; the
hereditaments and appurtenances and all other rights thereunto
belonging, or in anywise appertaining, and the reversion and
reversions, remainder and remainders, and the rents, issues,
and profits of the above-described property.

SEP 6 1984

CABELL COUNTY CLERK

Frazier & Oxley

P. O. Box 2809

Huntington, W. V. 25727

This conveyance is a transfer from an Agency of the United
States Government and is not subject to the West Virginia Excise
Tax on the privilege of transferring real property.

IN WITNESS WHEREOF, the Small Business Administration, an
Agency of the United States Government, has caused these presents
to be signed on this 6th day of August, 1984, by its proper
officer pursuant to Delegation of Authority published in The
Federal Register, Vol. 47, No. 10, on the 15th day of January,
1982.

SMALL BUSINESS ADMINISTRATION

By: _____

     Assistant District Director
     for Finance and Investment

STATE OF WEST VIRGINIA,

COUNTY OF HARRISON, TO-WIT:

     I, _____, a Notary Public in and
for the said County and State, do certify that _____
_____, who signed the writing above bearing date
the 6th day of August, 1984, for the Small Business Administration,
has this day acknowledged the said writing to be the act and deed
of said Administration.

     Given under my hand this _____ day of _____, 1984.

                 _____
                     Notary Public

My Commission Expires:

_____

WEST VIRGINIA, CABELL COUNTY CLERK'S OFFICE    SEP 4    1984
This instrument was this day presented in my office, and thereupon,
together with the certificate thereto annexed, is admitted to record.

     TESTE: _____ CLERK, CABELL COUNTY COURT.

This instrument was prepared by:

James O. Porter, Attorney at Law
Post Office Box 2185
Huntington, West Virginia  25722

BOOK 855 PAGE 705

-2-

CABELL COUNTY CLE...
...Clerk 1B
...07/31/2007 12:46
Inst #:        268126
Book/Page:    2170- / 115-
Rect/Tax:      29.00      .00

6007 US Rte 60 E.,
Barbourville, WV 25504
13S53YLU

AUG 0 2 2007

After Recording Return To:

GMAC Mortgage, LLC
100 Witmer Road
Horsham, PA 19044-0963
ATTN: Records Management

—————————— [Space Above This Line For Recording Data] ——————————

Loan No.         9408
MIN            █████████ 9408-9

# DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated July 20,
2007    , together with all Riders to this document.
(B)    "Borrower" is
Lyndol A. Curry and Melinda Hopkins

Borrower's mailing address is 20 Fairfax Dr.
                              Huntington, WV 25705
                              . Borrower is the trustor under this Security Instrument.
(C)    "Lender" is
GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation

Lender is a  limited liability company           organized and existing under the
laws of Delaware                               . Lender's address is
100 Witmer Road, P.O. Box 963, Horsham, PA  19044

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3049  1/01
(Page 1 of 20) 388047907    Initials           346
GMACM - CMS.0040.WV (0001)

(D)    "Trustee" is

. The Trustee resides at

County , West Virginia.

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)    "Note" means the promissory note signed by Borrower and dated July 20, 2007    . The Note states that Borrower owes Lender
One Hundred Eighty Six Thousand and 00/100

Dollars (U.S. $    186,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
August 1, 2037

(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Biweekly Payment Rider    ☐ 1-4 Family Rider
☐ Other(s) [specify]    ☐ Planned Unit Development Rider

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "Escrow Items" means those items that are described in Section 3.

(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3041  1/01
GMACM - CMS.0040.WV (0001) (Page 2 of 20)    Initials:

(O)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower hereby irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the    County

[Type of Recording Jurisdiction]

of  Cabell                                                                                                    :

See Attached Legal        [Name of Recording Jurisdiction]

which currently has the address of
20 Fairfax Dr,
                                   [Street]

Huntington              , West Virginia    25705        ("Property Address"):
          [City]                                [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

WEST VIRGINIA — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049 1/01
GMACM - CMS.0040.WV (0001) (Page 3 of 20)                    Initials: _____



CABELL COUNTY CLERK  Clerk ID
TRUST DEED
Date/Time: 07/24/2007 12:45
Inst #:                  260126
Book/Page:  2170- / 117-
Recd/Rec:        29.00
                         .00

IN TRUST FOREVER to secure the payment of the Note which is payable to the order of Lender, the beneficial owner of said Note, at its principal office at the top of this Security Instrument, the residence of said beneficial owner, and to secure also any and all extensions, modifications and renewals of said Note, or any part thereof, however changed in form, manner or amount, and all other indebtedness of Borrower to Lender or Trustee hereunder.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other

LOAN NO:     ▇▇▇▇▇█408

WEST VIRGINIA — Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049 1/01
GMACM - CMS.0040.WV (0001) *(Page 4 of 20)*                    Initials: _____

amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of

LOAN NO: [redacted]408
**WEST VIRGINIA** -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049
GMACM - CMS.0040.WV (0001) *(Page 5 of 20)*                    Initials:

Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and

WEST VIRGINIA — Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049   1/01
GMACM - CMS.0040.WV (0001) *(Page 6 of 20)*                                 Initials: _____

CABELL COUNTY CLERK
TRUST DEED          Clerk JB
Date/Time: 07/24/2007 12:45
Inst #:            268126
Book/Page: 2170- / 120-
Recd/Tax:      29.00        .00

floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest within thirty days after the date of the Notice of Placement of Insurance sent by Lender pursuant to W. Va Code § 46A-3-109-a(c).

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters,

LOAN NO : ████████9408
WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3041
GMACM - CMS.0040.WV (0001) (Page 7 of 20)                Initials: _____

or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

WEST VIRGINIA -- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3051
GMACM - CMS.0040.WV (0001) (Page 8 of 20)                    Initials: _____

connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

LOAN NO: [redacted]408
WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3041 1/01
GMACM - CMS.0040.WV (0001) *(Page 9 of 20)*    Initials: [signature]

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049 1/01
GMACM - CMS.0040.WV (0001) *(Page 10 of 20)*                    Initials: _____

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

LOAN NO:     9408
WEST VIRGINIA -- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049
GMACM - CMS.0040.WV (0001) *(Page 11 of 20)*            Initials:

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049 1/01
GMACM - CMS.0040.WV (0001) (Page 12 of 20)     Initials: _____

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All Notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a

LOAN NO:       9408
WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049
GMACM - CMS.0040.WV (0001) *(Page 13 of 20)*    Initials:



prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049 1/01
GMACM - CMS.0040.WV (0001) *(Page 14 of 20)*     Initials: 

CABELL COUNTY CLERK    Clerk 18
Date/Time: 07/24/2007 12:45
Inst #:              268126
Book/Page:          2129- /
Recd/Tax:    29.00    120-
                              .00

reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that

LOAN NO:           9408
WEST VIRGINIA — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049  1/01
GMACM - CMS.0040.WV (0001) (Page 13 of 20)         Initials: _____

adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give Borrower, in the manner provided in Section 15, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Borrower hereby waives personal service of notice of any sale made hereunder, upon Borrower, its devisees, agents, successors or assigns, and also waives the posting of notice of sale at the courthouse. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049   1/01
GMACM - CMS.0040.WV (0001) *(Page 16 of 20)*                Initials: _____

under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's fees as permitted by Applicable Law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

In the event that foreclosure proceedings are instituted hereunder but are not completed, Trustee shall be reimbursed for all costs and expenses incurred by it in commencing such proceedings; and all costs and expenses so incurred by Trustee, together with interest thereon until paid at the Note default rate shall be and become a part of the obligations secured hereby and shall be collectible as such.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Beneficiary's Address.** The beneficial owner and holder of the Note at the time of execution and delivery hereof is Lender, whose residence address is stated on the first page of this Security Instrument.

**25. Attorneys' Fees.** The provisions in this Security Instrument for Borrower to pay "attorneys' fees" shall be void.

**26. Notice of Trustee's Sale.** Any notice of other liens which may be given to Lender pursuant to W. Va. Code § 38-1-4, shall be effective upon the receipt of such notice, in writing, through the regular United States mail, postage prepaid, addressed to Lender at its address set forth on the face of this Security Instrument.

A copy of any notice of Trustee's sale under this Security Instrument shall be served on Borrower by certified mail, return receipt requested, directed to Borrower at the address stated above or such other address given to Lender in writing by Borrower, subsequent to the execution and delivery of this Security Instrument.

**27. Trustees and Substitution of Trustees.** It is hereby expressly covenanted and agreed to all parties hereto that Lender may, at any time and from time to time hereafter, without notice, appoint and substitute another Trustee or Trustees, corporations or person, in place of the Trustee herein named to execute the trust herein created. Upon such appointment, either with or without a conveyance to said substituted Trustee or Trustees by the Trustees herein named, or by any substituted Trustee in case the said right of appointment is exercised more than once, the new and substituted Trustee or Trustees in each instance shall be vested with all the rights, titles, interests, powers, duties and trusts in the premises which are vested in and conferred upon the Trustees herein named; and such new and substituted Trustee or Trustees shall be considered the successors and assigns of the Trustees who are named herein within the meaning of this Security Instrument, and substituted in their place and stead. Each such appointment and substitution shall be evidenced by an instrument in writing which shall

LOAN NO:          9408
WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049
GMACM - CMS.0040.WV (0001) *(Page 17 of 20)*          Initials: _____

CABELL COUNTY CLERK
Clerk 18
INST REED
Date/Time: 07/26/2007 12:45
Inst #:          260126
Book/Page: 2170- / 131-
Read/Tax: 25.00
.00

recite the parties to, and the book and page of record of, this Security Instrument, and the description of the real property herein described, which instrument, executed and acknowledged by Lender and recorded in the office of the Clerk of the County Commission of the County wherein the Property is situate, shall be conclusive proof of the proper substitution and appointment of such successor Trustee or Trustees, and notice of such proper substitution and appointment to all parties in interest.

The Trustees, or either of them or the survivor thereof, may act in the execution of this trust and in the event either of the Trustees shall act alone, the authority and power of the Trustee so acting shall be as full and complete as if the powers and authority granted to the Trustees herein jointly had been granted to such Trustee alone. Either or both of the Trustees are hereby authorized to act by agent or attorney in the execution of this trust, and it shall not be necessary for any Trustee to be present in person at any foreclosure sale.

28.  **Waiver of Homestead Exemption.**  Borrower hereby waives all right of homestead exemption in the Property.

29.  **Lender's Purchase of Property Insurance.**  Unless Borrower provides Lender with evidence of the insurance coverage required and described above, Lender may purchase insurance at Borrower's expense to protect its interest in Borrower's Property. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the Property. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by this Security Instrument. If Lender purchases insurance for the Property, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

THIS SPACE LEFT INTENTIONALLY BLANK

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3041 01
GMACM - CMS.0040.WV (0001) (Page 18 of 20)                    Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Lyndol A Curry                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

Witnesses:

_____      _____

_____      _____

LOAN NO:  ████████ 408
WEST VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049  1/91
GMACM - CMS.0040.WV (0001) *(Page 19 of 20)*

CABELL COUNTY CLERK
TONEY DEED
Date/Time: 07/24/2007 12:45
Inst #:  268326
Book/Page:  2170- /
Recd/Desc:  29.00        LE-
                          .00
Clerk 18

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF WEST VIRGINIA,                    Cabell    County ss:

The foregoing instrument was acknowledged before me this
July 20, 2007
(date)

by
Lyndol A. Curry and Melinda Hopkins

(person acknowledging)

My Commission Expires: Feb. 28, 2011    

Notary Public

(Seal)

OFFICIAL SEAL
NOTARY PUBLIC STATE OF WEST VIRGINIA
ANGELA K. WHEELER
TITLE FIRST
6007 US ROUTE 60 E. #121
BARBOURSVILLE, WV 25504
My Commission Expires FEB. 28, 2011

This instrument was prepared by Kendra Wood
2600 Troy Center Drive, Suite 100
Troy, MI 48084-1565
for: GMAC Mortgage, LLC

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049 1/01
GMACM - CMS.0046.WV (0001) (Page 20 of 20)    Initials: _L C C_

### Exhibit "A" – Legal Description
For File: 1350396

Situated in the State of West Virginia. County of Cabell and in the District of Gideon.

ALL those certain lots, pieces or parcels of real estate situate in the City of Huntington. Cabell County, West Virginia, shown on the revised map of RICKETTS PLACE AND FAIRFAX COURT, made by R. W. Breece. Engineer, and filed in the Cabell County Commission Clerk's Office. West Virginia, in Map Book No. 2, as Map 242, as LOTS NUMBERS TWO HUNDRED SEVENTY-TWO (272) and TWO HUNDRED SEVENTY-THREE (273). fronting on Fairfax Court.

Commonly known as: 20 Fairfax Drive. Huntington, WV   25705



WEST VIRGINIA. CABELL COUNTY CLERK'S OFFICE THIS
INSTRUMENT WAS THIS DAY PRESENTED IN MY OFFICE AND
THEREUPON, TOGETHER WITH THE CERTIFICATE
ANNEXED, IS ADMITTED TO RECORD   JUL 2 4 2007
TESTE [signature] A. Out CLERK, CABELL COUNTY COURT

**IN THE MAGISTRATE COURT OF** CABELL    **COUNTY, WEST VIRGINIA**    **CASE NUMBER** 03C-0001537

**CIVIL**
**CASE HISTORY**

| | |
|---|---|
| Filing date: | 07/29/2003 |
| Release date: | |
| Prejudgment attachment: | |
| Counterclaim claim: | |
| Financial affidavit: | |
| Statutory bond?: | |
| Notes: | DJ FILED 8/28/03 |

Plaintiff, Address, Tel.
WEBCO DBA MACK & DAVE'S
1010 3RD AVE
HUNTINGTON    WV 25701
697-4211

**Nature of action:**

| | |
|---|---|
| Method: | PL |
| Service date: | 07/29/2003 |
| Answer due date: | |
| Answer date: | |
| Notes: | |

Defendant, Address, Tel.
HARRY HOPKINS, JR
1017 22ND ST
HUNTINGTON    WV 25701

| | |
|---|---|
| Assigned Mag.: | CHAPMAN |
| Transf. to: | |
| Transf. to: | |
| Trial mag.: | CHAPMAN |

✓ SEP 0 9 2003

**WEST VIRGINIA, CABELL COUNTY CLERK'S OFFICE**
This instrument was this day presented in my
office, and thereupon, together with the certificate
thereto annexed, is admitted to record.    SEP 0 3 2003
TESTE: _____ CLERK, CABELL COUNTY COURT

---

**FISCAL DATA**

| | |
|---|---|
| Mag. Court Fund | 10.00 |
| RJA fee | 20.00 |
| Process fee, sheriff | |
| Cert. of reg. mail | |
| 1st-class mail | |
| 1st-class mail & envel. | |
| Process fee, Sec. of St. | |
| Other: CIF | 5.00 |
| Other: CSF | 5.00 |
| Total due: | |

| Date | Mag. | Rec.# | |
|---|---|---|---|
| 07/29/2003 | PCM | 03-06799 | 40.00 |

**PRETRIAL ACTIVITY**

| | |
|---|---|
| Pl. P-T motions filed: | |
| Def. P-T motions filed: | |
| Jury request date: | |
| Affidavit of prejudice date: | |
| Affidavit of prejudice date: | |
| Removal to circuit court: | |
| Pl.'s attorney: | |
| Def.'s attorney: | |

By:
CABELL COUNTY CLERK
JUDGMENT    Clerk 21
Date/Time: 09/03/2003  13:25
Inst #:    171392
Book/Page:    84-  /  285-
Recd/Tax:    6.00    .00

**Hearing Dates**

| | Time: |
|---|---|
| On P-T motions: | |
| P-T conf.: | |
| Original trial: | |
| Other: | |

**Continuances**

| By: | To: | Time: |
|---|---|---|
| By: | To: | Time: |
| By: | To: | Time: |
| By: | To: | Time: |

---

**DISPOSITION ACTIVITY AND JUDGMENT ORDER**

☐ Dismissal: ☐ Complaint withdrawn  ☐ Other _____    ☐ W/o prejudice  ☐ W/prejudice  Date: _____
☒ Default judgment affidavit    ☐ Confession    Judgment amount: 1,115.63    Favor of: PL
☐ Trial: ☐ Bench  ☐ Jury  ☐ Mistrial    man    Judgment date: 08/25/2003    Possession of property?:

After considering evidence and authorities, the court _____ jury finds, and the court enters a judgment as follows:
E-EQ-A6JTG AGAINST JR. HARRY HOPKINS, JR .. IN AMT, $1115.63 & $60.00 COURT COSTS

for $ 1,115.63  plus $ 60.00  court costs plus interest on total at  10  % per year from date of judgment.

_Brenda Chapman_    Magistrate

---

**POST-JUDGMENT ACTIVITIES**

| | |
|---|---|
| Post-judgment motion date(s): ☐ Set-aside _____ | ☐ Stay _____    ☐ Quash _____    ☐ Other _____ |
| Post-judgment hearing date(s): _____ | Status: ☐ Granted  ☐ Set for new trial  ☐ Denied |
| Appeal filed date: _____    Appeal bond amount: _____ | Type: _____    Bond posted date: _____ |
| Appeal forwarded to Circuit Court date: _____ | |
| Write: Possession: _____    Execution: _____ | Suggestion: _____    Sugg. execution: _____ |
| Judgment satisfied date: _____ | |

**CERTIFICATION BY CLERK**

I, _Mona E. Romine_ _____, hereby certify that the above is a full and complete record of all proceedings in the above
civil action, filed in my office.

GIVEN UNDER MY HAND THIS  29  _____ DAY OF  August  _____ 2003

_Mona E. Romine_    Clerk

SCA-M4056/2-90

# IN THE MAGISTRATE COURT OF  CABELL    COUNTY, WEST VIRGINIA    CASE NUMBER 05C-0000453

## CASE HISTORY

| | |
|---|---|
| Filing date: | 03/07/2005 |
| Release date: | |
| Prejudgment attachment: | |
| Counterclross claim: | |
| Financial affidavit: | |
| Statutory bond?: | |
| Notes: | |

AUG 1 6 2005

COMPASS PROPERTY SERVICES, LLC
515 5TH AVE
HUNTINGTON    WV 25701
522-8365
Nature of action: WRONGFUL OCCUPATION

v.

HARRY HOPKINS
1647 GLENARY LANE
HUNTINGTON    WV 25701
522-3257

| | |
|---|---|
| Method: | PL |
| Service date: | 03/14/2005 |
| Answer due date: | |
| Answer date: | |

| | |
|---|---|
| Assigned Mag.: | |
| Transf. to: | |
| Transf. to: | |
| Trial mag.: | SPENCE |

Notes: _____

## FISCAL DATA

| | |
|---|---|
| Mag. Court Fund | $ 10.00 |
| RJA fee | 20.00 |
| Process fee, sheriff | |
| Cert. or reg. mail | |
| 1st-class mail | |
| 1st-class mail & envel. | |
| Process fee, Sec. of St. | 40.00 |
| Other: CSF | 5.00 |
| Other: CEF | 5.00 |
| Total due: | $ 80.00 |

| Date | Mag. | Rec.# | |
|---|---|---|---|
| 03/08/2005 | RDM | 05-02372 | $ 80.00 |

## PRETRIAL ACTIVITY

| | |
|---|---|
| Pl. P-T motions filed: | |
| Def. P-T motions filed: | By: |
| Jury request date: | By: |
| Affidavit of prejudice date: | |
| Affidavit of prejudice date: | WEST VIRGINIA, CABELL COUNTY CLERK'S OFFICE AND |
| Removal to circuit court: | THIS INSTRUMENT WAS THIS DAY PRESENTED IN MY OFFICE AND THEREUPON, TOGETHER WITH THE CERTIFICATE THERETO ANNEXED, IS ADMITTED TO RECORD.    AUG 0 9 2005 |
| Pl.'s attorney: | TESTE: (WITH SIGNATURE) CLERK, CABELL COUNTY COURT |
| Def.'s attorney: | |

### Hearing Dates

| | | Time: | |
|---|---|---|---|
| On P-T motions: | | Time: | |
| P-T conf.: | | Time: | |
| Original trial: | 03/15/2005 | Time: 3:15 P | |
| Other: | | | |

### Continuances

| | To: | Time: |
|---|---|---|
| By: | To: | |
| By: | To: | |
| By: | To: | |

## DISPOSITION ACTIVITY AND JUDGMENT ORDER

Dismissed: ☐ Complaint w/drawn   ☐ Other _____   ☐ W/o prejudice  ☐ W/prejudice  Date: _____
☐ Default judgment affidavit   ☐ Confession   Judgment amount: 926.97   Favor of: PLT  B
Trial: ☐ Bench  ☐ Jury  ☐ Mistrial   Judgment date: 03/15/2005   Possession of property?: YES

After considering evidence and authorities, the _____ court _____ jury finds, and the court enters a judgment as follows:
TRIAL-FOUND FOR PETITIONER FOR $926.97 & $80.00 CC. TO VACATE BY MARCH 31, 2005  AT 5 PM.
SAME JUDGMENT AS AGAINST CO-DEFENDANT(S): MELINDA HOPKINS

for $ 926.97 plus $ 80.00 court costs plus interest on total at _____ % per year from date of judgment.

_____ Magistral

## POST-JUDGMENT ACTIVITIES

Post-judgment motion date(s): ☐ Set-aside _____  ☐ Stay _____  ☐ Quash _____  ☐ Other _____
Post-judgment hearing date(s): _____  Status: ☐ Granted ☐ Set for new trial ☐ Denied
Appeal filed date: _____  Appeal bond amount: _____  Type: _____  Bond posted date: _____
Appeal forwarded to Circuit Court date: _____
Writs: Possession: _____  Execution: _____  Suggestion: _____  Sugg. execution: _____  Other: _____
Judgment satisfied date: _____

## CERTIFICATION BY CLERK

I, _____, hereby certify that the above is a true and complete record of all proceedings in the above
civil action, filed in my office.
GIVEN UNDER MY HAND THIS _____ DAY OF _____

SCA-M405B/2-90

IN THE    RATE COURT OF    CABELL    JNTY, WEST VIRGINIA    CASE NUMB

**CASE HISTORY**

Filing date:    03/07/2005

315 9th AVE    MELINDA HOPKINS
HUNTINGTON    WV 25701    1647 BLENARY LANE
522-9265    HUNTINGTON    WV 25701
Release date:    522-3257

Prejudgment attachment:    Nature of action:    WRONGFUL OCCUPATION
Counterclaim claim:
Financial affidavit:    Method:    SD    Assigned Mag.:
Statutory bond?:    Service date:    03/14/2005    Transf. to:
Notes:    Answer due date:    Transf. to:
Answer date:    Trial mag.:    SPENCE

AUG 16 2005

Notes:

---

**FISCAL DATA**    **PRETRIAL ACTIVITY**

Mag. Court Fund    $ 10.00    Pl. P-T motions filed:    By:
PJA fee    $ 20.00    Def. P-T motions filed:    By:
Process fee, sheriff    Jury request date:    By:
Cert. of reg. mail    Affidavit of prejudice date:    By:
1st-class mail    Affidavit of prejudice d    WEST VIRGINIA, CABELL COUNTY CLERKS OFFICE THIS
1st-class mail & envel.    $ 40.00    Removal to circuit court    INSTRUMENT WAS THIS DAY PRESENTED IN MY OFFICE AND    AUG 0 9 2005
Process fee, Sec. of St.    $ 5.00    THEREUPON, TOGETHER WITH THE CERTIFICATE THERETO
Other: ___ CSF    $ 5.00    Pl's attorney:    ANNEXED, IS ADMITTED TO RECORD.
Other: ___ CTF    Def.'s attorney:    TESTE (WITH SIGNATURE) CLERK, CABELL COUNTY COURT
Total due:    $ 80.00

| Date | Mag. | Rec.# | | |
|------|------|-------|---|---|
| 03/08/2005 | RDM | 05-00372 | | 80.00 |
| 8-9-05 | | 05-0722 | | 20.92 |

**Hearing Dates**    **Continuances**

On P-T motions:    Time:    By:    To:    Time:
P-T conf:    Time:    By:    To:
Original trial:    03/15/2005    Time:    3:15 P    By:    To:
Other:    By:    To:    Time:

---

**DISPOSITION ACTIVITY AND JUDGMENT ORDER**

☐ Dismissal ☐ Complaint w/drawn ☐ Other    ☐ W/o prejudice   Date:
☐ Default judgment affidavit    ☐ Confession    Judgment amount:    926.97    Favor of: PLT   B
☐ Trial: ☐ Bench ☐ Jury ☐ Mistrial    Judgment date:    03/15/2005    Possession of property?: YES
After considering evidence and authorities, the ____ court ____ jury finds, and the court enters a judgment as follows:

SAME JUDGMENT AS AGAINST CO-DEFENDANT: HARRY HOPKINS

for $    926.97    plus $    80.00    court costs plus interest on total at ____ % per year from date of judgment.

_____    Magistrate

---

**POST-JUDGMENT ACTIVITIES**

Post-judgment motion date(s): ☐ Set aside    ☐ Stay    ☐ Quash    ☐ Other:
Post-judgment hearing date(s):    Status: ☐ Granted ☐ Set for new trial ☐ Denied
Appeal filed date:    Appeal bond amount:    Type:    Bond posted date:
Appeal forwarded to Circuit Court date:
Writs: Possession:    Execution:    Suggestion:    Sugg. execution:    Other:
Judgment satisfied date:

---

**CERTIFICATION BY CLERK**

____ , hereby certify that the above is a true and complete record of all proceedings in the above
civil action, filed in my office.

GIVEN UNDER MY HAND THIS ____    DAY OF ____ 19 ____    Cler:

SCA-M405B/2-90