# **Exhibit 3**

# **Proof of Claim**

12-12020-mg    Doc 9970-14    Filed 07/08/16    Entered 07/08/16 16:34:58    Exhibit 3 -
Proof of Claim    Pg 1 of 15

The Debtor has listed your claim as Contingent, Unliquidated, and Disputed on Schedule E as a General Unsecured claim in the amount of $0.00. You MUST timely file a Proof of Claim or you will be forever barred from recovery.

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor: GMAC Mortgage, LLC    Case Number: 12-12032

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):

Melinda Hopkins individually and executrix of the estate of Lyndol a Curry and Harry Hopkins vs GMAC MortgageLLC Title et al

**Name and address where notices should be sent:**    NameID: 10993585

Melinda Hopkins individually and executrix of the estate of Lyndol a Curry and Harry Hopkins vs GMAC MortgageLLC Title et al
Mountain State Justice Inc
1031 Quarrier St Ste 200
Charleston, WV 25301
Telephone number: (304) 344-3144    email: bren@msjlaw.org

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**Name and address where payment should be sent (if different from above):**

Telephone number:    email:

**1. Amount of Claim as of Date Case Filed:** $ 186,000 approximately (see deed of trust)

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** ongoing litigation against GMAC for Fraud, Unconscionable contract, breach of contract and action to quiet title
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** ___ ___ ___ ___

**3a. Debtor may have scheduled account as:** _____ (See instruction #3a)

**3b. Uniform Claim Identifier (optional):** _____ (See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate ☐Motor Vehicle ☑Other
**Describe:**
**Value of Property:** $_____    **Annual Interest Rate** _____ % ☐Fixed ☐Variable
(when case was filed)
**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**
if any: $_____    **Basis for perfection:** _____

**Amount of Secured Claim:** $_____    **Amount Unsecured:** $_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
☐ I am the creditor.    ☑ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or    ☐ I am a guarantor, surety,
(Attach copy of power of attorney, if any.)    their authorized agent.    indorser, or other codebtor.
(See Bankruptcy Rule 3004.)    (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Bren J. Pomponio
Title: Attorney
Company: Mountain State Justice, Inc.
(Signature) Bren J. Pomponio    (Date) 11/13/12
Address and telephone number (if different from notice address above):

Telephone number: (304) 344-3144    Email: bren@msjlaw.org

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

\* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**

**NOV 14 2012**

KURTZMAN CARSON CONSULTANTS



- 1031 Quarrier Street, Suite 200
Charleston, WV 25301
Telephone: (304) 344-3144
Facsimile: (304) 344-3145

321 W. Main Street, Suite 620
Clarksburg, WV 26301
Telephone: (304) 326-0188
Facsimile: (304) 326-0189

**Miranda Johnson, Paralegal**
miranda@msjlaw.org

November 13, 2012

*Via Federal Express*
ResCap Claims Processing Center c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

      **RE:    GMAC Mortgage, LLC, Case No. 12-12032**

To Whom It May Concern:

    Please find the enclosed Proof of Claim for Melinda and Harry Hopkins along with a copy of their Complaint and Deed of Trust.

    Thank you for your attention to this matter. Please do not hesitate to contact me with any questions.

Sincerely,

Miranda Johnson
Paralegal

/mj
Enclosures as stated



## IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

**MELINDA HOPKINS**, individually and
executrix of the estate of Lyndol A.
Curry, and **HARRY HOPKINS**,

    Plaintiffs,

v.                                        Civil Action No. 11-C-192

**GMAC MORTGAGE, LLC,**
**TITLE FIRST AGENCY W. VA.**, a Limited
Liability Company,

    Defendants.

Filed APR 2 6 2011
ADELL CHANDLER, CIRCUIT CLERK
By_____Deputy

### AMENDED COMPLAINT

1. This case arises out of the practice known as predatory lending. The Defendant, GMAC Mortgage, LLC, misrepresented Lyndol Curry's income in the origination of a home loan. After Ms. Curry's death, the Defendant unilaterally filed a Deed of Trust, which struck Melinda Hopkins from the instrument, despite the fact that she was a then current owner of the property. The Defendant has since sought to foreclose on the property and refused to act on Plaintiffs' application for loss mitigation. The Plaintiffs bring this action to save their home and other appropriate relief.

### PARTIES

2. (a) Melinda Hopkins is a married women living at 20 Fairfax Drive, Huntington, Cabell County, West Virginia. She is the executrix of the estate of her deceased mother, Lyndol Curry. She brings this action individually and on behalf of her mother's estate. She is also co-owner of the property securing the loan that is at issue in this case.

(b) Harry Hopkins is the husband of Melinda Hopkins. He is also co-owner of the property securing the loan at issue in this case.

-1-

3. The Defendant, GMAC Mortgage, LLC ("GMAC"), is a corporation doing business in West Virginia with its principal place of business at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034. The Defendant is the originator and on information and belief the current holder of the mortgage loan at issue in this case.

4. The Defendant Title First Agency, W.Va., a Limited Liability Company ("Title First"), is a West Virginia corporation with its principal place of business at 515 Market Street, Third Floor, Parkersburg, West Virginia 26101. It was the closing agent for the subject loan.

## STATEMENT OF FACTS

5. In or around the Summer of 2007, the Plaintiffs and Lyndol Curry agreed to purchase a home at 20 Fairfax Drive, Huntington, West Virginia.

6. The Plaintiffs and Ms. Curry were referred to the Defendant, GMAC for financing.

7. GMAC's loan officer prepared the purchase and loan in the name of Lyndol Curry only, despite the fact that the home was to be purchased and lived in by Ms. Curry and the Plaintiffs.

8. GMAC's loan officer wildly inflated Ms. Curry's income in connection with the origination of the loan. Ms. Curry and the Plaintiffs were unaware that Ms. Curry's income had been inflated.

9. The loan closing was conducted by the Defendant, Title First, on July 20, 2007.

10. The Deed of Trust was prepared with Ms. Curry and Melinda Hopkins as borrowers.

11. The loan closing was rushed and there was insufficient explanation of the documents.

12. Thereafter the Plaintiffs and Ms. Curry lived in the home and made payments on the loan.

13. Shortly after the closing, the Plaintiffs realized that they were not included on the

-2-

deed to the home as intended.

14. Title First then prepared a deed in which Ms. Curry deeded the home to herself and the Plaintiffs as joint owners.

15. On November 4, 2009, Lyndol Curry died.

16. After Ms. Curry's death, the Plaintiffs contacted GMAC to make arrangements to bring the loan current.

17. GMAC thereafter rejected Plaintiffs payment, made in November, 2009.

18. GMAC directed Plaintiffs to submit documentation to process a loan modification, which Plaintiffs did.

19. Thereafter, Plaintiffs followed up with GMAC on several occasions, but GMAC refused to inform Plaintiffs of a decision on their application for assistance.

20. On or around February, 2010, Title First filed a new Deed of Trust in which it struck through the name of Melinda Hopkins.

21. To date, GMAC has not acted on Plaintiffs' request for a loan modification and instead has pursued foreclosure.

### COUNT I – FRAUD

22. The plaintiffs incorporate the preceding paragraphs by reference.

23. The Defendant, GMAC, intentionally suppressed the terms and process of origination of the loan from the Plaintiffs and misrepresented Lyndol Curry's income in the loan application, among other places.

24. Plaintiffs were not aware of Defendant's misrepresentations until Spring 2010.

25. The Defendant's misrepresentation and suppression of the terms and the origination

process was material.

26. The Plaintiffs reasonably relied on the Defendant's misrepresentations.

27. The Plaintiffs were damaged by the Defendant's acts of fraud.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

    (a)    Appropriate equitable relief;

    (b)    Actual and punitive damages;

    (c)    Reasonable attorney's fees and the cost of this litigation; and

    (d)    Such other relief the Court deems equitable and just.

## COUNT II – UNCONSCIONABLE CONTRACT

28. The plaintiffs incorporate the preceding paragraphs by reference.

29. The Defendant, GMAC, engaged in a pattern of predatory lending practices to make illegal loans in order to transfer the home equity from homeowners to the Defendant.

30. The Plaintiffs are unsophisticated consumers and did not understand the details of the transaction.

31. (a) The loan that is the subject of this action was closed in a hurried manner, without adequate explanation to the Plaintiffs of what they were signing.

    (b) The Defendant misrepresented Lyndol Curry's income in originating the loan.

32. The loan contains several substantively unfair terms, including but not limited to the fact that the monthly payment is higher than what was represented.

33. The loan issued was unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct, and therefore was unenforceable.

**WHEREFORE**, the Plaintiffs respectfully request the following relief:

(a) A declaration that loan was induced by unconscionable conduct and/or contained unconscionable terms;

(b) Actual damages equivalent to the amount paid plus amount claimed due under the loan;

(c) Actual damages for incidental and consequential damages;

(d) Appropriate civil penalties pursuant to *W. Va. Code* §46A-5-101(1) & 106;

(e) Appropriate equitable relief;

(f) Reasonable attorney fees and the cost of this litigation; and

(g) Such other relief as the Court may deem equitable and just.

## COUNT III - BREACH OF CONTRACT

34. Plaintiffs incorporate the preceding paragraphs by reference.

35. The law of contracts implies a duty of good faith and fair dealing into a party's exercise of its discretion under a contract.

36. Plaintiffs' contract with Defendant GMAC (the deed of trust) provides Defendants with the discretion to enter into loss mitigation, such as a loan modification, with Plaintiffs prior to pursuing foreclosure. (See Deed of Trust ¶¶ 12, 13, 22.)

37. In April 2009 and thereafter, it has been industry practice to engage in loss mitigation prior to pursuing foreclosure.

38. Defendant did not exercise their discretion under the contract in good faith, thereby breaching the contract, by promising Plaintiffs that they would evaluation Plaintiffs for a loan modification and, instead, scheduling a foreclosure sale of Plaintiffs' home.

39. Defendant GMAC has a pattern of breaching borrower contracts in this manner.

40.  Plaintiffs were damaged by Defendant's breach of the contract.

**WHEREFORE**, the Plaintiffs respectfully request the following relief:

(a)  A declaration that the Defendant breached the contract as alleged;

(b)  Actual damages; and

(c)  Such other relief as the Court deems equitable and just.

### COUNT IV – ACTION TO QUIET TITLE

41.  Plaintiffs incorporate the preceding paragraphs by reference.

42.  The Defendants filed a Deed of Trust unilaterally in February, 2010, in which Defendants struck through Melinda Hopkins as borrower.

43.  The Deed of Trust filed in February 2010 was filed unilaterally, after it was signed by Lyndol Curry in 2007.

44.  The Deed of Trust in file is not an enforceable legal instrument.

**WHEREFORE**, the Plaintiffs respectfully request that the Court declare that the Deed of Trust, filed with the County Clerk of Cabell County, West Virginia, Book 2317, Page 459 is void.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

MELINDA HOPKINS and
HARRY HOPKINS,
By counsel.

_____
Bren J. Pomponio (WV Bar ID No. 7774)
Daniel F. Hedges (WV Bar ID No. 1660)
Mountain State Justice, Inc.
1031 Quarrier St., Suite 200
Charleston, WV 25301
(304) 344-3144
(304) 344-3145 (fax)
*COUNSEL FOR PLAINTIFFS*

After Recording Return To:

GMAC Mortgage, LLC
100 Witmer Road
Horsham, PA 19044-0963
ATTN: Records Management

———————— [Space Above This Line For Recording Data] ————————



Loan No. ▇▇▇▇▇▇9408
MIN ▇▇▇▇▇▇▇▇9408-9

# DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated July 20, 2007, together with all Riders to this document.
(B)  "Borrower" is
Lyndol A. Curry and Melinda Hopkins

Borrower's mailing address is 20 Fairfax Dr,
Huntington, WV 25705
. Borrower is the trustor under this Security Instrument.
(C)  "Lender" is
GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation

Lender is a limited liability company        organized and existing under the
laws of Delaware                              . Lender's address is
100 Witmer Road, P.O. Box 963, Horsham, PA  19044

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3049  1/01
(Page 1 of 20) 388047907    Initials: _____    346
GMACM - CMS.0040.WV (0001)

**GMAC Mortgage**

## ACKNOWLEDGMENT OF CALIFORNIA ESCROW PROCEDURES

DATE: July 20, 2007

LOAN NUMBER: ▮9408

BORROWER(S): Lyndol A Curry

PROPERTY: 20 Fairfax Dr
Huntington, WV 25705

In connection with the servicing of your loan, please be advised that an escrow/impound account is not required as a condition of loan approval. Please indicate the method you have selected for the payment of taxes, assessments, leasehold payments, ground rents and hazard or property insurance premiums (including, if applicable, flood insurance premiums) (collectively referred to as the "Escrow Items") pertaining to the above-reference Property (the "Property").

(Check only one (1) box)

1. [x] I authorize and request GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation ( "GMAC Mortgage, LLC" ) to establish and maintain an escrow/impound account for the payment of the Escrow Items. I understand that interest will be credited to my escrow/impound account at the rate of 2 percent per year.

    I also understand that the escrow funds collected by GMAC Mortgage, LLC are subject to all of the provisions of the note and deed of trust securing my loan and that my failure to pay the monthly escrow payments in a timely manner will constitute a default under my loan documents. The amount of the monthly escrow payments will be determined by the loan servicer and is subject to adjustment from time to time.

    If I subsequently decide to terminate this arrangement, and provided the continuation of the escrow/impound account is not otherwise permitted under California law, I agree to provide the Noteholder, or its designated servicer, with not less than thirty (30) days advance written notice of my decision to terminate the escrow/impound account. I agree to send such notice by certified mail. In the event notice is sent to GMAC Mortgage, LLC, it should be directed to the following location:

    GMAC Mortgage, LLC
    3451 Hammond Avenue
    P.O. Box 780
    Waterloo, Iowa 50704-0780

    Attention: Escrow Department

2. [ ] I do not want GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation ( GMAC Mortgage, LLC ) to establish and maintain an escrow/impound account for the payment of the Escrow Items.

    I understand that I will be personally responsible for (i) the timely payment of the Escrow Items; and (ii) the maintenance of hazard/property insurance coverage (including flood insurance, if applicable) in accordance with the requirements of my GMAC Mortgage, LLC loan documents. I also understand that my failure to comply with these requirements will result in my being in default under the loan documents.

    I further understand that GMAC Mortgage, LLC reserves the right to establish an escrow account for the payment of the Escrow Items, in accordance with the terms of my loan documents, if at any time during the term of the mortgage loan:

    1. An escrow account is required by a state or federal regulatory authority

    2. I fail to pay two consecutive tax installments on the Property prior to the delinquency date for such payments.

GMACM-ACS.0479.CA (0607)    Page 1 of 2    Initials: _____
388047916

MSJ000003

# NOTE

July 20, 2007                Barboursville                          WV
[Date]                        [City]                              [State]

20 Fairfax Dr, Huntington, WV 25705
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 186,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
                    GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.625       %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First    day of each month beginning on September 1 2007     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on August 1, 2037
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P.O. Box 780, Waterloo, IA 50702-0780, ATTN:
Payment Processing                          or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,190.98

4. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000     % of that portion of the installment of principal and interest that is overdue, but not more than U.S. $ 15.00
I will pay this late charge promptly, but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

LOAN NO: ███████408
WEST VIRGINIA FIXED RATE NOTE -- Single Family -- Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT   Form 3249 1/01 Rev. 7/03
(Page 1 of 2) 388047904    Initials: _____
GMACM - CNS.0047.WVFIX (0110)

MSJ000004

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049  1/01
GMACM - CMS.0040.WV (0001) *(Page 12 of 20)*                Initials: _____

MSJ000005

under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's fees as permitted by Applicable Law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

In the event that foreclosure proceedings are instituted hereunder but are not completed, Trustee shall be reimbursed for all costs and expenses incurred by it in commencing such proceedings; and all costs and expenses so incurred by Trustee, together with interest thereon until paid at the Note default rate shall be and become a part of the obligations secured hereby and shall be collectible as such.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. **Beneficiary's Address.** The beneficial owner and holder of the Note at the time of execution and delivery hereof is Lender, whose residence address is stated on the first page of this Security Instrument.

25. **Attorneys' Fees.** The provisions in this Security Instrument for Borrower to pay "attorneys' fees" shall be void.

26. **Notice of Trustee's Sale.** Any notice of other liens which may be given to Lender pursuant to W. Va. Code § 38-1-4, shall be effective upon the receipt of such notice, in writing, through the regular United States mail, postage prepaid, addressed to Lender at its address set forth on the face of this Security Instrument.

A copy of any notice of Trustee's sale under this Security Instrument shall be served on Borrower by certified mail, return receipt requested, directed to Borrower at the address stated above or such other address given to Lender in writing by Borrower, subsequent to the execution and delivery of this Security Instrument.

27. **Trustees and Substitution of Trustees.** It is hereby expressly covenanted and agreed to all parties hereto that Lender may, at any time and from time to time hereafter, without notice, appoint and substitute another Trustee or Trustees, corporations or person, in place of the Trustee herein named to execute the trust herein created. Upon such appointment, either with or without a conveyance to said substituted Trustee or Trustees by the Trustees herein named, or by any substituted Trustee in case the said right of appointment is exercised more than once, the new and substituted Trustee or Trustees in each instance shall be vested with all the rights, titles, interests, powers, duties and trusts in the premises which are vested in and conferred upon the Trustees herein named; and such new and substituted Trustee or Trustees shall be considered the successors and assigns of the Trustees who are named herein within the meaning of this Security Instrument, and substituted in their place and stead. Each such appointment and substitution shall be evidenced by an instrument in writing which shall

LOAN NO: ▮▮▮▮9408
WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3049 1/01
GMACM - CMS.0040.WV (0001)  *(Page 17 of 20)*    Initials: _____

MSJ000006

**Exhibit "A" – Legal Description**
For File: 1350396

Situated in the State of West Virginia, County of Cabell and in the District of Gideon.

ALL those certain lots, pieces or parcels of real estate situate in the City of Huntington, Cabell County, West Virginia, shown on the revised map of RICKETTS PLACE AND FAIRFAX COURT, made by R. W. Breece, Engineer, and filed in the Cabell County Commission Clerk's Office, West Virginia, in Map Book No. 2, as Map 242, as LOTS NUMBERS TWO HUNDRED SEVENTY-TWO (272) and TWO HUNDRED SEVENTY-THREE (273), fronting on Fairfax Court.

Commonly known as: 20 Fairfax Drive, Huntington, WV   25705

MSJ000007