## Exhibit 2

## Lathrop Declaration

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
)
In re:                                          )          Case No. 12-12020 (MG)
)
RESIDENTIAL CAPITAL, LLC, et al.,    )          Chapter 11
)
                              Debtors.    )          Jointly Administered
---------------------------------------------------------------------
)

### DECLARATION OF SARA LATHROP IN SUPPORT OF
### RESCAP BORROWER CLAIMS TRUST'S NINETY-FOURTH OMNIBUS OBJECTION
### TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, (II) REDESIGNATE,
### RECLASSIFY, REDUCE AND ALLOW BORROWER CLAIM, (III) RECLASSIFY,
### REDUCE AND ALLOW BORROWER CLAIM AND (IV) REDESIGNATE AND
### ALLOW BORROWER CLAIM)

I, Sara Lathrop, hereby declare as follows:

1.    I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust

(the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter*

*11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured*

*Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the

Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in

the loan servicing department of Residential Capital, LLC ("ResCap"), a limited liability

company organized under the laws of the state of Delaware and the parent of the other debtors in

the above-captioned Chapter 11 Cases (collectively, the "Debtors").  I began my association with

ResCap in June 2006 working as an associate in the Default Division of the loan servicing

operation of GMAC Mortgage, LLC ("GMACM").  In 2008, I became a Default Quality Control

Specialist, a position that I held until I became a Supervisor in the Default Division in 2009.  In

2011, I became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing

operation, and in February 2012, I became a Manager in that division.  In this role, I oversaw

GMACM associates in their efforts to provide borrowers with loss mitigation options and assisted in the development of GMACM's loss mitigation policies.  In January of 2013, I became the Regulatory Compliance Manager for ResCap.  I became Senior Claims Analyst for ResCap in July 2013 and continued in this role when the ResCap Liquidating Trust (the "Liquidating Trust") was established in December 2013.  In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1]  I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Ninetieth Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Redesignate, Reclassify, Reduce and Allow Borrower Claim, (III) Reclassify, Reduce and Allow Borrower Claim, and (IV) Redesignate and Allow Borrower Claim)* (the "Objection").[2]

2.        Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3.        In my capacity as Senior Claims Analyst, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases with regard to Borrower Claims.  Except

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Objection.

2

as otherwise indicated, all statements in this Declaration are based upon my familiarity with the

Debtors' books and records that were prepared and kept in the course of their regularly

conducted business activities (the "Books and Records"), the Debtors' schedules of assets and

liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the

"Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.

I or my designee at my direction have reviewed and analyzed the proof of claim forms and

supporting documentation, if any, filed by the claimants listed on Exhibit A, Exhibit B, Exhibit

C, and Exhibit D annexed to the Proposed Order.  Since the Plan became effective and the

Borrower Trust was established, I, along with members of the Liquidating Trust's management

or employees of the Liquidating Trust have consulted with the Borrower Trust to continue the

claims reconciliation process, analyze claims, and determine the appropriate treatment of the

same.  In connection with such review and analysis, where applicable, I or Liquidating Trust

personnel, and the Liquidating Trust's and the Borrower Trust's professional advisors have

reviewed (i) information supplied or verified by former personnel in departments within the

Debtors' various business units, (ii) the Debtors' books and records, (iii) the Schedules, (iv)

other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11

Cases.

## The No-Liability Borrower Claims

4.    The Liquidating Trust, in support of the Borrower Trust, diligently

evaluated any information provided by the claimants who filed the No Liability Borrower

Claims, listed on Exhibit A to the Proposed Order.  In accordance with the Borrower Claim

Procedures, the Debtors previously contacted those Borrowers who filed the No Liability

Borrower Claims if the claims were filed with insufficient or no supporting documentation, and

the Borrowers were asked to provide additional information so that the Debtors could reconcile

the claimants' filed claims with the Debtors' books and records.  Beginning in May of 2013, the

Debtors sent Request Letters, substantially in the form as those attached at <u>Exhibit 4</u> to the

Objection, to all of the Borrowers that filed the No Liability Borrower Claims requesting

additional documentation in support of their respective claim.  The Borrowers who received the

Request Letters either failed to respond to the Debtors' requests or failed to provide sufficient

information to establish a basis for liability.

5.      At my direction and with my oversight, the Liquidating Trust, in support

of the Borrower Trust, and I thoroughly reviewed the No Liability Borrower Claims listed on

<u>Exhibit A</u> to the Proposed Order, together with information contained within the Debtors' books

and records.

6.      These efforts led to the conclusion that there is no present liability due and

owing to such claimants and the specific objections to the allowance of such claims are set forth

on <u>Exhibit A</u> to the Proposed Order in the column titled *"No Liability Summaries."*  The

explanations for the requested disallowance of each claim set forth under the heading titled *"No

Liability Summaries"* are incorporated by reference into this Declaration as if fully set forth

herein.

7.      In general, the Borrower Trust's objection to each No Liability Borrower

Claim falls under one or more of the following four categories:

(i)      ***General No Liability.***  This category includes a claim:

- fails to sufficiently allege the necessary elements for the stated cause of action; and/or
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "General No Liability Claim").

4

To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "Loan Payment History"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "Internal Servicing Notes"), and (c) other records as applicable.

(ii)    ***General Servicing Issues***.  This category includes a claim based on general servicing issues, including assertions that a Debtor misapplied mortgage payments made pursuant to a settlement agreement with the holder of the claim (the "General Servicing Issues Claims").  To assess the validity of this claim, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents.

Based on its review, the Borrower Trust has determined that the General Servicing Issues Claim is not a valid obligation of the Debtors because (a) the Debtor acted properly in servicing the loan, in accordance with the Debtors standard policies and procedures and the terms of the executed note and deed of trust; and (b) the allegations relate to actions taken by a non-Debtor entity.

(iii)    ***Origination Issues***.  This category includes a claim based on loan origination issues, which relates to disputes regarding the loan application and closing process, disclosures, or loan terms.  To assess the validity of this claim (the "Origination Issues Claim"), the Borrower Trust reviewed the Debtors' books and records, including the claimant's executed mortgage notes, to determine whether any Debtor was involved in the origination of the applicable loans, and if so, if the claim would be barred by the applicable statute of limitations.

Based on its review of the Debtors' books and records and its review of applicable state and federal law, the Borrower Trust determined that the Debtors are not liable for the Origination Issues Claim because no Debtor entity was involved in the origination of the applicable loan and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loan.[3]

(iv)    ***Escrow Issues***.  This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims").  To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records, including the

---

[3] To the extent the claimant asserts statutory claims related to origination of the loan, the Borrower Trust reviewed the applicable federal and state statutes and determined that such claims against servicers or loan assignees carry no successor liability.  To the extent claimant asserts common-law claims, the Borrower Trust found no case precedent establishing assignee liability when a party is not involved with the origination of the loan, and the claimant did not provide any specific legal authority to substantiate its allegation.

sf-3663276

Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers and
any Internal Servicing Notes and written communication between the Debtors and the
applicable Borrower(s).

Based on its review, the Borrower Trust determined that the Debtors are not liable for the
Escrow Issues Claims.  In cases where a claimant asserted that they were owed a refund,
the Borrower Trust determined that the payments to the Debtors received were all
correctly applied.  In cases where a claimant asserted that the escrow collected was
insufficient to cover the property taxes and insurance, the Borrower Trust reviewed the
escrow statements issued to the claimant, which outlined the amounts paid that year
compared to what was estimated, as well as Internal Servicing Notes to the extent that
there was an escrow account added to the loan, and determined that they have no liability
as long as all amounts received from the Borrower were accurately recorded because the
Borrowers are liable for the taxes and insurance on their real property.  In cases where a
claimant asserted that it was owed a refund, the Borrower Trust looked at (1) the escrow
statement issued to the claimant to determine if there was a refund due, (2) the history of
the loan to determine if a check was issued for the refund and (3) the internal account
notes to determine if there were discussions with the claimant regarding an escrow refund
not being received, and found that any refunds due were previously paid.  Moreover, to
the extent that the Debtors' books and records indicated that the issues asserted by a
claimant occurred after the Debtors ceased servicing the underlying loan, the Borrower
Trust concluded that the Debtors had no liability for the claim.  See id.

8.      If the No Liability Borrower Claims are not disallowed and expunged, the
parties asserting such claims may potentially receive an improper distribution on account of the
asserted liabilities to the detriment of other Borrower claimants.

9.      Before filing this Objection, to the best of my knowledge, the Borrower
Trust fully complied with all applicable provisions of the Borrower Claim Procedures set forth in
the Procedures Order.

10.      Accordingly, based upon this review, and for the reasons set forth in the
Objection and Exhibit A to the Proposed Order, I have determined that each No Liability
Borrower Claim that is the subject of the Objection should be afforded the proposed treatment
described in the Objection.

sf-3663276

## **The Redesignate, Reclassify, Reduce and Allow Borrower Claim**

11.    At my direction and with my oversight, the Liquidating Trust, in support of the Borrower Trust, and I reviewed the Redesignate, Reclassify, Reduce and Allow Borrower Claim listed on Exhibit B to the Proposed Order, together with information contained within the Debtors' books and records.

12.    These efforts led to the conclusion that the Redesignate, Reclassify, Reduce and Allow Borrower Claim identified on Exhibit B attached to the Proposed Order improperly asserts a secured claim, where such proof of claim does not contain any valid basis for treatment as a secured claim.

13.    The Borrower Trust also determined, based on its review of the claimant's supporting documentation and the Debtors' books and records, that the Redesignate, Reclassify, Reduce and Allow Claim identified on Exhibit B attached to the Proposed Order was filed against the incorrect Debtor.  In his proof of claim, the holder of the Redesignate, Reclassify, Reduce and Allow Claim has asserted a claim amount related to his mortgage loan against ResCap.  The Borrower Trust determined that ResCap was neither the originator nor servicer of the mortgage loan that formed the basis for the Redesignate, Reclassify and Allow Borrower Claim (nor could it have been). Rather, GMACM was the servicer of the underlying mortgage loan and therefore is potentially liable for such claim.

14.    The Borrower Trust also concluded that the Redesignate, Reclassify, Reduce and Allow Borrower Claim does not reflect the correct amount of liability owed by the Debtors to the claimant.  The Borrower Trust confirmed that all but a portion of the allegations in the proofs of claim had no basis in the Debtors' books and records.  An explanation of the

sf-3663276

correct amounts owed, as determined by the Borrower Trust to be appropriate, is set forth on

Exhibit B under the column heading "*Reason for Modification.*"[4]

15.     The amount listed on Exhibit B under the column heading "*Modified
Claim Amount/Classification*" represents the claim amount the Borrower Trust determined to be
the appropriate amount due to the Claimant.

## **The Reclassify, Reduce and Allow Borrower Claim**

16.     At my direction and with my oversight, the Liquidating Trust, in support
of the Borrower Trust, and I reviewed the Reclassify, Reduce and Allow Borrower Claim listed
on Exhibit C to the Proposed Order, together with information contained within the Debtors'
books and records.

17.     These efforts led to a determination that the Reclassify, Reduce and Allow
Claim identified on Exhibit C attached to the Proposed Order improperly asserts a secured claim,
where such proof of claim does not contain any valid basis for treatment as a secured claim.

18.     Based upon its review of the proof of claim filed on the Claims Register,
the Borrower Trust determined that the Reclassify, Reduce and Allow Borrower Claim does not
reflect the correct amount of liability owed by the Debtors to the claimant, as the Borrower Trust
was able to confirm that all but a portion of the allegations in the proof of claim had no basis in
the Debtors' books and records.   An explanation of the correct amount owed is set forth on
Exhibit C under the column heading "*Reason for Modification.*"

---

[4] The modified amount for the Redesignate, Reclassify, Reduce and Allow Borrower Claim comes from the
claimant, Felix Abu's ("Mr. Abu"), bankruptcy schedules.  The Borrower Trust does not admit that Mr. Abu has
sufficiently demonstrated that the Debtors have liability for his claims, but in an effort to expeditiously resolve the
claims, the Borrower Trust is willing to allow the claims at the reduced amount.  Should the Court not grant the
relief requested with regard to the Redesignate, Reclassify, Reduce and Allow Borrower Claims, the Borrower Trust
reserves its rights to object to this claim on any additional basis.

sf-3663276

19.    The amount listed on Exhibit C under the column heading "*Modified Claim Amount*" represents the claim amount the Borrower Trust determined to be the appropriate amount due to the Claimant.

### The Resdesignate and Allow Borrower Claim

20.    The Redesignate and Allow Borrower Claim was filed by Paul Homer and Melinda Carpenter ("Mr. Homer and Ms. Carpenter") and is currently listed on the Claims Register as a general unsecured claim against Debtor Residential Capital, LLC.  The asserted basis for the Redesignate and Allow Borrower Claim is a settlement that Mr. Homer and Ms. Carpenter entered into with GMACM.  As a result, the Borrower Trust determined that the Redesignate and Allow Claim should be redesignated as a claim against GMACM and allowed as a general unsecured claim against GMACM in the filed claim amount of $10,500, as described on Exhibit D.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 11, 2016

 /s/ Sara Lathrop                                             
Sara Lathrop
Senior Claims Analyst for ResCap
Borrower Claims Trust

9

sf-3663276