**Hearing Date: August 19, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: August 4, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------- ) | | |
| In re: ) | Case No. 12-12020 (MG) | |
| ) | | |
| RESIDENTIAL CAPITAL, LLC, et al., ) | Chapter 11 | |
| ) | | |
| Debtors. ) | Jointly Administered | |
| ------------------------------------------------------- ) | | |

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 684 FILED**
**BY BERNARD WARD AND COLLEEN HALLORAN**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ...................................................3

BACKGROUND .........................................................................................................................3

RELIEF REQUESTED .................................................................................................................5

OBJECTION .................................................................................................................................5

BACKGROUND FACTS ..............................................................................................................6

ARGUMENT ..............................................................................................................................11

    1.    Breach of Contract...............................................................................11

    2.    Negligence ..........................................................................................17

    3.    Wrongful Foreclosure/Set Aside the Foreclosure Sale ....................18

    4.    Intentional Misrepresentation and Negligent Misrepresentation......19

    5.    Fraud..................................................................................................23

    6.    Unfair Business Practices ..................................................................24

    7.    Declaratory Relief, Injunctive Relief, and Specific Performance .....26

CONCLUSION ...........................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Am. Emp. Grp., Inc. v. Emp't Dev. Dep't.,
    65 Cal. Rptr. 3d 233 (Cal. Ct. App. 2007)............................................................................12

Anderson v. Deloitte & Touche LLP,
    66 Cal. Rptr. 2d 512 (Cal. Ct. App. 1997)............................................................................20

Cal. Lettuce Growers v. Union Sugar Co.,
    289 P.2d 785 (Cal. Ct. App. 1955) .......................................................................................16

CDF Firefighters v. Maldonado,
    70 Cal. Rptr. 3d 667 (Cal. Ct. App. 2008)............................................................................11

Chabner v. United of Omaha Life Ins. Co.,
    225 F.3d 1042 (9th Cir. 2000) ..............................................................................................24

Cheung Yiu v. Wells Fargo Bank, N.A.,
    987 F. Supp. 2d 972 (N.D. Cal. 2013) .................................................................................18

Comm. on Children's Television, Inc. v. Gen. Foods Corp.,
    673 P.2d 660 (Cal. 1983) ......................................................................................................20

Conrad v. Bank of Am.,
    53 Cal. Rptr. 2d 336 (Cal. Ct. App. 1996)............................................................................20

Day v. AT&T Corp.,
    74 Cal. Rptr. 2d 55 (Cal. Ct. App. 1998)..............................................................................25

Erse Grae Corp. v. Fluor Corp.,
    2 Cal. Rptr. 2d 288 (Cal. Ct. App. 1991)..............................................................................16

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ...................................................................................5

Glenn K. Jackson Inc. v. Roe,
    273 F.3d 1192 (9th Cir. 2001) ..............................................................................................24

Griffin v. Green Tree Servicing, LLC,
    No. 14-cv-09408 (MMM), 2015 WL 10059081 (C.D. Cal. Oct. 1, 2015).......................17, 18

Horsemen's Benevolent & Protective Ass'n v. Valley Racing Ass'n,
    6 Cal. Rptr. 2d 698 (Cal. Ct. App. 1992)..............................................................................12

Kaldenbach v. Mut. of Omaha Life Ins. Co.,
    100 Cal. Rptr. 3d 637 (Cal. Ct. App. 2009)........................................................23

Kerr Glass Mfg. Corp. v. Elizabeth Arden Sales Corp.
    141 P.2d 938 (Cal. Ct. App. 1943) ......................................................................14

Korea Supply Co. v. Lockheed Martin Corp.,
    63 P.3d 937 (Cal. 2003).......................................................................................25

Krantz v. BT Visual Images, L.L.C.,
    107 Cal. Rptr. 2d 209 (Cal. Ct. App. 2001).........................................................24

Kruse v. Bank of Am.,
    248 Cal. Rptr. 217 (Cal Ct. App. 1988)...............................................................14

Ladas v. Cal. State Auto. Ass'n,
    23 Cal. Rptr. 2d 810 (Cal. Ct. App. 1993)...........................................................16

Lazar v. Super. Ct. of L.A. Cnty.,
    909 P.2d 981 (Cal. 1996)................................................................................20, 21

Mason v. Woodland Sav. and Loan Ass'n,
    61 Cal. Rptr. 740 (Cal. Ct. App. 1967)................................................................14

Medici v. JPMorgan Chase Bank, N.A.,
    No. 11-cv-00959-HA, 2012 WL 929785 (D. Or. Mar. 16, 2012) .........................19

Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-2,
    84 Cal. Rptr. 3d 275 (Cal. Ct. App. 2008)...........................................................15

Sutcliffe v. Wells Fargo Bank, N.A.,
    283 F.R.D. 533 (N.D. Cal. 2012) .........................................................................19

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................21

Wilhelm v. Pray, Price, Williams & Russell,
    231 Cal. Rptr. 355 (Cal. Ct. App. 1986)..............................................................20

**STATUTES**

11 U.S.C. § 502(a) ....................................................................................................5

11 U.S.C. § 502(b)...................................................................................................25

11 U.S.C. § 502(b)(1)................................................................................................5

Cal. Civ. Code § 1095 ....................................................................................................15

Cal. Civ. Code § 1550 ....................................................................................................12

Cal. Civ. Code § 1580 ....................................................................................................12

Cal. Civ. Code § 1624(a)(3) ...........................................................................................15

Cal. Civ. Code § 2922 ....................................................................................................15

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7001(7)...............................................................................................25

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (as defined below), hereby submits this objection (the "Objection") seeking to disallow and expunge, without leave to amend, proof of claim no. 684 (the "Claim") filed by Bernard Ward and Colleen Halloran (the "Claimants") against Debtor GMAC Mortgage, LLC ("GMACM") for $1,000,000.00 pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the Claim fails to state a basis for liability against the Debtors.[1]  The Borrower Trust seeks entry of an order substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the requested relief.  In support of the Objection, the Borrower Trust submits the declaration of Sara Lathrop, Senior Claims Analyst for the Borrower Trust, attached hereto as Exhibit 2 ("Lathrop Decl.") and the declaration of Gregory Huber, attorney at Severson & Werson, attached hereto as Exhibit 3 (the "Huber Declaration").

## PRELIMINARY STATEMENT

1.    The Borrower Trust examined the Claim and the statements and exhibits submitted in support thereof.  A copy of the Claim is attached hereto as Exhibit 4. The asserted basis for the Debtors' liability is "Breach of Contract, Fraud."  Attached to the Claim is a Complaint filed by Bernard Ward and Colleen Halloran against GMACM.  The Complaint asserts causes of action for breach of contract, negligence, wrongful foreclosure,

---

[1] The Borrower Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and the Borrower Trust reserves all of its rights to amend this Objection should any further bases come to light.

set aside wrongful sale, intentional misrepresentation, negligent misrepresentation, fraud, unfair business practices, declaratory relief, injunctive relief, and specific performance. All of the causes of action purportedly arise out of loan modification negotiations and a rescinded foreclosure sale in April and May 2011.

2.      The Claimants' breach of contract cause of action fails as a matter of law. That claim is premised on a contract the Claimants allege was created between GMACM and the Claimants' attorney based on an oral conversation between GMACM and the attorney and two letters that were exchanged after the conversation. The Claimants assert that these interactions created a binding contract to modify their loan at a fixed interest rate, rather than the step/fixed interest rate that was approved by the investor and subsequently offered by GMACM to the Claimants. However, as described in greater detail herein, the alleged conversation and letters between GMACM and the Claimants cannot form a contract as a matter of law. California law requires the modification of a loan secured by a deed of trust to be in writing and signed by each party to the contract. Here, neither the conversation nor the letters meet these criteria, thus making any alleged agreement impermissible under the statute of frauds. Furthermore, no contract has been formed between the parties, because the letters exchanged by the parties contain insufficient and contradictory terms, and fail to demonstrate a meeting of the minds and are too uncertain to form a binding contract.

3.      The Claimants' remaining causes of action also fail. The Claimants' wrongful foreclosure claim fails because the rescission of the sale made such claim moot. Similarly, the Claimants cannot sustain causes of action for negligence or misrepresentation because the Claimants cannot demonstrate how the rescinded foreclosure sale caused them

2

to incur damages.    Additionally, the Claimants' fraud and misrepresentation claims fail because they either do not assert any misrepresentation, do not meet the pleading standards required under for a fraud claim, or they do not demonstrate GMACM's intent to deceive. The Claimants' remaining causes of action fail because they are premised on the same allegations as the other causes of action and the relief requested cannot be provided in this proceeding and therefore are not properly before this Court. Therefore, as more fully described below, the Claim should be disallowed and expunged in its entirety from the Claims Register (defined below).

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

4.    This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

5.    The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

6.    On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.    On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

8.    On September 24, 2012, the Claimant filed the Claim.  See Claim.

3

9.      On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for Borrowers[2] and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

10.     The Debtors sent Request Letters to certain Borrowers, including the Claimant, requesting additional documentation in support of their claims.  See Lathrop Decl. ¶ 4.  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  A Request Letter was sent to the Claimant and a response was received on July 3, 2013. See Diligence Response, attached to the Lathrop Decl. as Exhibit A.

11.     On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

---

[2]     As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

ny-1237844

12.     The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court. See Plan, Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims." See id.

## RELIEF REQUESTED

13.     The Borrower Trust files this Objection, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the form annexed hereto as Exhibit 1, disallowing and expunging the Claim with prejudice from the Claims Register.

## OBJECTION

14.     A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). Furthermore, the burden of persuasion once an objection refutes an essential allegation of the claim is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

5

## BACKGROUND FACTS

15.    On October 25, 2006, GMACM originated a loan (the "Loan") in the amount of $905,000.00 to Bernard Ward, evidenced by a note (the "Note") and secured by a deed of trust (the "Deed of Trust") executed by the Claimants on property located at 3300 Kirkham Street, San Francisco, CA 94122 (the "Property"). Copies of the Note and the Deed of Trust are attached to the Lathrop Decl. as Exhibit B and Exhibit C, respectively. The Loan was transferred to Wells Fargo Bank, N.A. ("Wells Fargo").  See Lathrop Decl. at ¶ 5.

16.    GMACM serviced the Loan from origination until servicing was transferred to Ocwen Loan Servicing, LLC on February 16, 2013. See Lathrop Decl. ¶ 6.

17.    As a result of Bernard Ward's incarceration beginning in 2008, the Claimants experienced financial difficulties in making timely loan payments.  See Financial Analysis Form, attached to the Huber Decl. as Exhibit D.  On May 26, 2010, a Notice of Default was recorded in the San Francisco County Assessor's Office.  See Notice of Default, attached to the Lathrop Declaration as Exhibit D.  At that time, the account was owing for the January 1, 2010 payment.  See id.

18.    In August 2010, Colleen Halloran engaged the help of her brother and attorney, Timothy Halloran, to negotiate a loan modification on behalf of her and Bernard Ward.  See Letter from Timothy Halloran, attached as Exhibit E to the Huber Decl.  Mr. Halloran had experience in negotiating loan modifications as part of his legal practice.  See Timothy Halloran Deposition, attached to the Huber Decl. as Exhibit F, at 9-11. From August 2010 through June 8, 2011, only Mr. Halloran communicated with GMACM concerning the Deed of Trust.  See Timothy Halloran Deposition at 153-154; see also Deposition of Colleen Halloran, attached to the Huber Decl. as Exhibit G, at 92.

6

ny-1237844

19.     On January 12, 2011, after months of working with Mr. Halloran to get sufficient documents to review Mr. Ward for a loan modification, GMACM approved Mr. Ward for a traditional trial plan.  See Servicing Notes, attached to the Lathrop Declaration as Exhibit E, at 71 of 126.  On January 14, 2011, GMACM sent Mr. Ward a trial plan agreement (the "Trial Modification").  See Trial Modification, attached to the Lathrop Decl. as Exhibit F. The Trial Modification laid out the terms of the trial plan, the amount of each trial payment ($3,260.26), the date each payment was due, the amount of the escrow payment, and each party's rights under the agreement.  See id.  The Trial Modification is also signed by Ms. Halloran, in her capacity as power of attorney for Bernard Ward.  See id.

20.     The Claimants made the required payments under the Trial Modification, and as a result, the Loan was reviewed for a permanent modification.  See Servicing Notes at 69.  On April 7, 2011, Wells Fargo approved a permanent modification of the Loan (the "First Loan Modification").  See April 7, 2011 Email from Wells Fargo to GMACM, attached to the Lathrop Decl. as Exhibit G.     Wells Fargo approved the modification under the following terms: modified principal of $1,129,853,88, a modified interest rate that would start at 2.875% and increase at fixed intervals to 3.875% and 4.86%, a maturity date of April 1, 2047, and a first payment due date of May 1, 2011.  See id.  The monthly principal and interest payment would start at $2,706.95 and increase when the interest rate increased.  See id.

21.     On April 22, 2011, Mr. Halloran sent GMACM a letter that memorialized an alleged conversation between a representative of GMACM and Mr. Halloran whereby GMACM informed Mr. Halloran that the Loan had been approved for a modification (the "April 22 Letter").  See April 22 Letter, attached as Exhibit 3 to the Proof

of Claim.  In the letter, Mr. Halloran stated his understanding that Mr. Ward was approved

for a traditional loan modification with an interest rate of 2.88%, as well as 432 modified

payments of principal, interest, and PMI of $3,253.24 per month.  See id.  The April 22

Letter also indicated that the paperwork to execute the Loan Modification was forthcoming.

22.    On April 28, 2011, GMACM's customer care division sent a letter in

response to the April 22 Letter (the "April 28 Letter").  See April 28 Letter, attached to the

Lathrop Declaration as Exhibit H. In the April 28 Letter, GMACM confirmed that a

traditional permanent modification was approved on April 21, 2011, and that the

modification would include terms such as the modified monthly payment and interest rate.

See id.  The April 28 Letter did not include an actual agreement to modify the Loan.

23.    In May 2011, Claimants were denied a permanent loan modification

due to an internal accounting error at GMACM.  See July 28, 2011 GMACM Email,

attached to the Huber Declaration as Exhibit C.  As a result, the Property was foreclosed

upon on May 20, 2011. See Servicing Notes at 60 of 126.  A representative of GMACM

attempted to call the Claimants on May 13, 2011 to inform them of the foreclosure sale, and

when no one answered, the representative left a voicemail.  See id. at 64 of 126.

24.    On June 6, 2011, GMACM received a letter from the Claimants

disputing the foreclosure sale. See Servicing Notes at 53 of 126.

25.    On June 8, 2011, the Claimants filed a complaint against GMACM

(the "Complaint") in the Superior Court of California, San Francisco County (the "State

Court").  A copy of the Complaint is attached to the Huber Declaration as Exhibit A.  The

Complaint asserts causes of action for: (1) Breach of Contract; (2) Negligence; (3) Wrongful

Foreclosure; (4)To Set Aside the Foreclosure Sale; (5) Intentional Misrepresentation; (6)

ny-1237844

Negligent Misrepresentation; (7) Fraud; (8) Unfair Business Practices; (9) Declaratory

Relief; (10) Injunctive Relief; and (11) Specific Performance.  See id.

       26.     On June 9, 2011, three days after receiving the letter contesting the

foreclosure sale GMACM commenced the process of rescinding the foreclosure sale.  See

Servicing Notes at 43 of 126.  The foreclosure sale was rescinded on June 13, 2011.  See id.

at 50 of 126. On June 21, 2011, GMACM corrected the Claimants' credit report so that it

would not reflect the foreclosure sale.  See id. at 43 at 126.

       27.     On June 23, 2011, GMACM again began reviewing the Loan for a

modification.  See Servicing Notes at 41 of 126.  On July 7, 2011, GMACM received

approval from the investor for a new loan modification (the "Second Loan Modification")

under the following terms: a down payment of $3,253.24, capitalizing the payments owed

for May 2010 through August 2011 (for a first payment date of September 1, 2011), a new

unpaid principal balance of $1,143,326.94, a maturity date of November 1, 2046, an initial

monthly principal and interest payment of $2,620.15, and a step-rate interest rate that would

start at 2.75% (for a monthly PITI payment of $3,230) for the first five years, increase to

3.75% (for an estimated monthly PITI payment of $4,182.90) for the sixth year, and then

increase to 4.50% (for an estimated monthly PITI payment of $4,897.48) for the remaining

period of the Loan.  See Second Loan Modification Agreement, attached to the Huber Decl.

as Exhibit B.  Thus, despite including an additional four months of capped unpaid monthly

payments, the Second Loan Modification provided the Claimants with a lower interest rate,

a lower monthly payment, and an earlier maturity date than the First Loan Modification.

       28.     GMACM mailed the permanent modification documents to the

Claimants on July 22, 2011.  See Servicing Notes at 36 of 126.  However, the modification

was denied on September 28, 2011 because the Claimants did not return the signed

modification documents.  <u>See</u> Servicing Notes at 35 of 126.

29.    On March 12, 2012, GMACM approved the Claimants for a third

modification (the "<u>Third Loan Modification</u>").  The terms included capitalizing the

payments owed for May 2010 through March 2012 (for an initial payment of April 1, 2012),

a new unpaid principal balance of $1,171,779.69, a maturity date of November 1, 2046, an

initial monthly principal and interest payment of $2,441.00, and a step-rate interest rate that

would start at 2.5% (for a monthly PITI payment of $3,066.77) for the first five years,

increase to 3.5% (for a monthly PITI payment of $3,417.69) for the sixth year, and then

increase to 3.75% (for a monthly PITI payment of $3,661.81) for the remaining period of

the Loan.  <u>See</u> Servicing Notes at 31 of 126.  Thus, despite including an additional eleven

months of capped unpaid monthly payments, the Third Loan Modification provided the

Claimants with a lower interest rate, a lower monthly payment, and an earlier maturity date

than the First Loan Modification.

30.    GMACM mailed the permanent modification documents to the

Claimants on March 12, 2012.  <u>See</u> Servicing Notes at 30 of 126.  However, the

modification was denied on August 13, 2012 because the Claimants did not return the

signed modification documents.  <u>See</u> <u>id</u>. at 28 of 126.

31.    Discovery was exchanged and depositions were taken in the State

Court lawsuit.  On February 17, 2012, GMACM filed a Motion for Summary Judgment.

Before GMACM's Motion for Summary Judgment was heard, the litigation was stayed on

May 29, 2012 as a result of the Debtors' bankruptcy case.  The stay remains in effect.  <u>See</u>

State Court Docket, attached to the Huber Declaration as <u>Exhibit H</u>.

32.     On information and belief, the Claimants remain in the Property.

## ARGUMENT

33.     The Claimants assert causes of action based on the rescinded foreclosure sale and the failure to execute a loan modification.  For the following reasons, those causes of action fail as a matter of law.

### 1. Breach of Contract

34.     The Claimants assert that either the April 22 Letter or the April 28 Letter amounted to a loan modification and that GMACM breached this alleged contract when it did not modify the Loan under only the limited terms stated in those letters.  See Complaint, ¶¶ 39-47.  In California, "A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  CDF Firefighters v. Maldonado, 70 Cal. Rptr. 3d 667, 679 (Cal. Ct. App. 2008) (citation omitted).  Here, since there was no enforceable loan modification, there was no contract upon which to form the basis of this cause of action.

*There is No Enforceable Contract Because There Was No Meeting of the Minds*

35.     In the Complaint, the Claimants assert that they entered into a written loan modification agreement with GMACM when they sent the April 22 Letter and received the April 28 Letter.  See Complaint, ¶ 28.  In support of this claim, the Claimants assert (1) GMACM orally modified the Loan and told Mr. Halloran that the loan modification paperwork would be sent shortly, (2) on April 22, 2011, Mr. Halloran confirmed the approved terms for modification and that the oral modification would be reduced to writing at a later date, and (3) the oral modification was reduced to writing on April 28, 2011, via an unsigned letter from an unverifiable GMACM employee.  See Complaint ¶¶ 25-28.  The

11

Claimants are seeking a loan modification with a fixed interest rate of 2.875%, rather than the step/fixed rate that was approved by Wells Fargo (and offered to the Claimants with the same or better terms in the Second and Third Loan Modifications).  However, none of these allegations demonstrate that there was a meeting of the minds as to all of the material terms of a loan modification.  Therefore, while it appears that there was an agreement to enter into a loan modification in the future, the April 22 and April 28 Letters do not constitute a valid modification.

36.    In California, "there is no contract until there has been a meeting of the minds on all material points." Am. Emp. Grp., Inc. v. Emp't Dev. Dep't., 65 Cal. Rptr. 3d 233, 241 (Cal. Ct. App. 2007) (emphasis omitted) (citation omitted).  "[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract." Id. (citation omitted). Further, an essential element of a contract is the parties consent. Cal. Civ. Code § 1550.  "Consent is not mutual, unless the parties all agree [to the] same thing in the same sense." Cal. Civ. Code § 1580.  Furthermore, where a contract does not agree on an essential element and provides no determination thereof, the contract is unenforceable until future agreement is reached. See Horsemen's Benevolent & Protective Ass'n v. Valley Racing Ass'n, 6 Cal. Rptr. 2d 698, 709 (Cal. Ct. App. 1992).

37.    Here, the April 22 Letter and the April 28 Letter do not demonstrate a meeting of the minds as to a number of points that are material to a loan modification.  For example, neither letter includes terms for: (i) the amount of the modified principal balance of the Loan, (ii) the number of payments under the modified loan, (iii) the maturity date, (iv) the date the payments are due, (v) the obligations of the parties, (vi) the actions

12

resulting from or the parties rights upon a breach of the agreement (including ability to assess late fees or initiate foreclosure), or (vii) the total amount paid over the life of the Loan. Additionally, the April 22 Letter and the April 28 Letter contradict each other with respect to a very material point, the interest rate to be charged under a purported modification (with the former listing a rate of 2.88% and the latter listing a rate of 2.875%). A summary of the information included (and lacking) in each letter is provided below:

| Material Term | April 22 Letter | April 28 Letter |
|---|---|---|
| Interest Rate | 2.88% | 2.875% |
| Modified Principal Balance | N/A | N/A |
| Monthly Principal and Interest Payment | $2,678.12 | $2,678.12 |
| Principal, Interest, and PMI Payment | $3,253.24 | $3,253.24 |
| Number of Payments Under the Modified Loan | 432 | N/A |
| Loan Maturity Date | N/A | N/A |
| Due Date for Monthly Payments | N/A | N/A |
| Initial Payment Date | May 1 | N/A |
| Principal, Interest, and PMI Payment | $3,253.24 | $3,253.24 |
| Obligations of the Parties | N/A | N/A |
| What Constitutes a Breach of the Agreement | N/A | N/A |
| Rights of the Parties Upon Breach | N/A | N/A |

38.    In fact, even Colleen Halloran and Timothy Halloran disagree as to which set of terms make up the alleged contract, with Colleen Halloran stating she believes it to be the April 28 Letter and Timothy Halloran stating he believed it to be the April 22

13

Letter.  See Timothy Halloran Deposition, at. 74-75; Colleen Halloran Deposition, at. 83-84.

Thus, because the April 22 Letter and the April 28 Letter are either silent or ambiguous as

to a number of material elements of a loan modification agreement, there is no meeting of

the minds and therefore, no valid contract.

39.    Moreover, neither the April 22 Letter nor the April 28 Letter

demonstrate a meeting of the minds that the letters were meant to be a modification of the

Loan, as it was clear that a formal loan modification agreement was to follow both letters.

"A manifestation of willingness to enter into a bargain is not an offer if the person to whom

it is addressed knows or has reason to know that the person making it does not intend to

conclude a bargain until he has made a further manifestation of assent."  Kruse v. Bank of

Am., 248 Cal. Rptr. 217, 229 (Cal Ct. App. 1988).  An agreement to formalize a contract in

the future amounts to nothing and cannot be the basis for a cause of action.  Kerr Glass Mfg.

Corp. v. Elizabeth Arden Sales Corp. 141 P.2d 938, 939 (Cal. Ct. App. 1943); see also

Mason v. Woodland Sav. and Loan Ass'n, 61 Cal. Rptr. 740, 742 (Cal. Ct. App. 1967).

40.    The Claimants and Mr. Halloran were aware that a loan modification

would require a more formal document than the two letters because they had signed the

Trial Modification, which required their signature and contained the types of material terms

that were lacking in either of the letters.  In his deposition, Timothy Halloran stated that he

had extensive experience negotiating loan modifications, and he admitted that GMACM

indicated it would send paperwork to be executed but that no paperwork was ever sent.  See

Timothy Halloran Deposition, at 149.

41.    Here, it is clear that a formal contract to modify the Loan, including all

material terms and places for signatures to memorialize assent, were to follow the April 22

ny-1237844

Letter and the April 28 Letter and that the Claimants are trying to take advantage of confusion in the letters to receive a loan modification under terms that were not agreed to. This motivation is evidenced by the fact that the Claimants refused to accept the terms of either the Second or Third Loan Modification. As a result, neither letter can be considered a contract.

### *The Letters Do Not Meet the Requirements of the Statute of Frauds*

42.    In addition to failing to demonstrate a meeting of the minds, neither the April 22 Letter nor the April 28 Letter are executed.  In accordance with the statute of frauds, an agreement for the sale of real property or an interest in real property must be in writing and **subscribed by the party to be charged or by the party's agent**.  See Cal. Civ. Code § 1624(a)(3) (stating the statute of frauds); see also Cal. Civ. Code § 2922 (a "mortgage can be created, renewed, or extended, only by writing executed with the formalities required in the case of a grant of real property."). "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds…." Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-2, 84 Cal. Rptr. 3d 275, 282 (Cal. Ct. App. 2008).  Thus, "an agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." Id. at 277.

43.    Neither the April 22 Letter nor the April 28 Letter was signed by either the Claimants or GMACM.  The April 22 Letter was signed by Mr. Halloran, not the Claimants.  California law is clear that "[w]hen an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." See Cal. Civ. Code § 1095.  There is no indication that

15

Mr. Halloran is signing on behalf of the Claimants, and therefore does not constitute a signature necessary to create a valid contract under the statute of frauds. Additionally, the April 28 Letter contains no signature whatsoever from anyone purporting to represent GMACM, and therefore also cannot satisfy the statute of frauds.

44.    Finally, Claimants' allegations that there was an oral agreement between the representative of GMACM and Timothy Halloran to modify the Loan also fail under the statute of frauds. As discussed above, any modification of the Loan is covered by the statute of frauds. As a result, the alleged oral contract is not enforceable.

***There is No Enforceable Contract Because the Purported Terms Were Impermissibly Uncertain***

45.    In addition to the reasons stated above, the letters do not create a contract because the material terms are too uncertain. Under California law, a determination of whether a contract is sufficiently certain and enforceable is a question of law for the court. See Erse Grae Corp. v. Fluor Corp., 2 Cal. Rptr. 2d 288, 294 (Cal. Ct. App. 1991). "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." Ladas v. Cal. State Auto. Ass'n, 23 Cal. Rptr. 2d 810, 814 (Cal. Ct. App. 1993). "Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." Cal. Lettuce Growers v. Union Sugar Co., 289 P.2d 785, 790 (Cal. Ct. App. 1955).

46.    As noted above, the two letters that the Claimants assert form the basis of the contract are either silent or contradictory as to a number of material terms, including:

ny-1237844

the interest rate, the modified principal, the number of payments under the modified loan, the modified maturity date, the payment due dates, the obligations of the parties, actions resulting in breach, effects of a breach, available damages, the underlying Deed of Trust to be modified, and the total amount to be paid over the life of the loan.  Without a common understanding as to these material provisions, it is impossible to determine how a contract was purportedly breached and what the party's rights are in the event of a breach.  As a result, even if the April 22 or the April 28 letters constituted a contract, the vagueness of these material terms renders the contract void and unenforceable as a matter of law. Therefore, the Claimants' breach of contract claim fails.

### 2.  Negligence

47.     Claimants second cause of action, for negligence, premised on two allegations: (1) GMACM failed to properly credit payments under the alleged loan modification, and (2) GMACM negligently foreclosed on the Property.

48.     "To state a [claim for negligence] under California law, a plaintiff must plead: '(1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages.'"  <u>Griffin v. Green Tree Servicing, LLC</u>, No. 14-cv-09408 (MMM), 2015 WL 10059081, at *11 (C.D. Cal. Oct. 1, 2015) (quoting <u>Palm v. United States</u>, 835 F. Supp. 512, 520 (N.D. Cal. 1993)).  Here, with

49.     With regard to the first allegation, Claimants' negligence claim fails for two reasons.  As discussed above, there was no permanent loan modification, so GMACM cannot have been negligent in failing to abide by any alleged terms.

50.     Second, Claimants cannot demonstrate that GMACM owed them a duty of care with regard to servicing their Loan. "Generally, 'a financial institution owes no

17

duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender.'" <u>Griffin</u>, 2015 WL 10059801, at *11 (quoting <u>Velazquez v. Chase Home Fin., LLC</u>, No. C 10-01641 SI, 2010 WL 3211905, at *5 (N.D. Cal. Aug. 12, 2010). "The principle that a financial institution owes no duty to a borrower has been extended to loan servicers as well." <u>Id.</u> (citation omitted); <u>see also</u> <u>Cheung Yiu v. Wells Fargo Bank, N.A.</u>, 987 F. Supp. 2d 972, 980 (N.D. Cal. 2013) (holding that there was no negligence claim for negligent acceptance of payments because a loan service does not owe a borrower a duty of care). The allegations that GMACM failed to property credit the Claimants' account after the First Loan Modification relates solely to GMACM's role as loan servicer, and therefore cannot form the basis of a negligence claim because the Claimants have not sufficiently alleged a duty that GMACM breached.

51.    The Claimants cannot demonstrate that they were harmed by the foreclosure. As noted in ¶ 26 *supra*, the foreclosure sale was rescinded less than twenty-five days after it took place, GMACM corrected the Claimants' credit report to remove the sale, and the Claimants were not evicted from the Property. Additionally, less than two months after the foreclosure sale, GMACM offered the Claimants a permanent modification that provided them with the same (or better) terms than they were originally offered in April 2011. <u>See</u> ¶ 27 *supra*. Therefore the negligence claim must fail because the Claimants cannot demonstrate any damages were incurred as a result of the foreclosure sale.

### 3.  Wrongful Foreclosure/Set Aside the Foreclosure Sale

52.    The Claimants third and fourth causes of action assert claims for wrongful foreclosure and to set aside the foreclosure sale (the "<u>Wrongful Foreclosure</u>

Causes of Action"). <u>See</u> Complaint, ¶¶ 52-64.  However, both of these causes of action are

moot because the foreclosure sale was rescinded.

53.    Courts have noted that where a foreclosure sale has been rescinded,

any claim for wrongful foreclosure is moot.  <u>See</u> <u>Sutcliffe v. Wells Fargo Bank, N.A.</u>, 283

F.R.D. 533, 547 (N.D. Cal. 2012) ("In the context of foreclosure, for example, claims for

wrongful foreclosure are likely moot where the foreclosure is cancelled and a loan

modification is offered instead.") (<u>citing</u> <u>Wooten v. Countrywide Home Loans Inc.</u>, No. 11-

cv-1791 MCE, 2012 WL 346460, at *4 (E.D. Cal. Feb. 1, 2012); <u>Medici v. JPMorgan Chase</u>

<u>Bank, N.A.</u>, No. 11-cv-00959-HA, 2012 WL 929785, at *3-4 (D. Or. Mar. 16, 2012)

(holding that where a foreclosure was rescinded, claims challenging the foreclosure sale

were moot, though tort claims for damages could go forward).  Thus, Claimants cause of

action for wrongful foreclosure, as well as the request for the equitable relief of having the

Court set aside the foreclosure sale, is moot based on the rescission of the foreclosure sale.

54.    Additionally, as stated above, even if the rescission did not moot the

Claimants' Wrongful Foreclosure Causes of Action, the Claimants cannot show that they

were damaged by the foreclosure sale.  The sale was rescinded within 20 days of its

occurrence, and the Claimants' credit report was corrected to no longer reflect the

foreclosure sale.  As a result, the wrongful foreclosure causes of action fails as a matter of

law.

### 4.  Intentional Misrepresentation and Negligent Misrepresentation

55.    The Claimants' fifth and sixth causes of action assert claims for

intentional and negligent misrepresentation.  <u>See</u> Complaint ¶¶ 65-81.  These causes of

action are premised on five alleged misrepresentations by GMACM: (1) GMACM was

working with the Claimants to secure a loan modification and cure the default on the

Property; (2) Claimants were approved for a permanent loan modification as of April 21,

2011; (3) GMACM was the Lender under the promissory note; (4) GMACM had authority

to enter into a contract regarding the Loan; and (5) following the foreclosure sale on May

20, 2011, GMACM stated that the status quo on the Property would remain the same. See

Complaint ¶¶ 66, 74. None of these purported misrepresentations can form the basis of a

cause of action for GMACM.

56.    "The elements of intentional misrepresentation, or actual fraud, are:

(1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge

of falsity (scienter); (3)  intent to defraud (i.e., to induce reliance); (4)  justifiable reliance;

and (5) resulting damage." Anderson v. Deloitte & Touche LLP, 66 Cal. Rptr. 2d 512, 515

(Cal. Ct. App. 1997) (citation omitted).  "Fraud is a charge that is easily made but less often

substantiated." Conrad v. Bank of Am., 53 Cal. Rptr. 2d 336, 351 (Cal. Ct. App. 1996).

57.    Fraud claims are not subject to the general liberal construction policy

for pleading. Wilhelm v. Pray, Price, Williams & Russell, 231 Cal. Rptr. 355, 358 (Cal. Ct.

App. 1986) ("allegations in a fraud action need not be liberally construed . . . [i]t is bad for

courts to allow and lawyers to use vague but artful pleading of fraud simply to get a foot in

the courtroom door.") (citation omitted).  This is because fraud allegations "involve a

serious attack on character, and fairness to the defendant demands that he should receive the

fullest possible details of the charge in order to prepare his defense." Comm. on Children's

Television, Inc. v. Gen. Foods Corp., 673 P.2d 660, 672 (Cal. 1983).  It is well-settled that

fraud must be pled with specificity. Lazar v. Super. Ct. of L.A. Cnty., 909 P.2d 981, 989

(Cal. 1996).  Under both California state law and the Federal Rules of Civil Procedure,

fraud allegations must describe the misrepresentations in detail, and allege "facts [that]

20

show how, when, where, to whom, and by what means the representations were tendered."

Id.  (citation omitted) (emphasis omitted); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d

1097, 1106 (9th Cir. 2003) ("[Fed. R. Civ. P.] 9(b) demands that, when averments of fraud

are made, the circumstances constituting the alleged fraud be specific enough to give

defendants notice of the particular fraud.") (quotation omitted).

58.    With regard to the first alleged misrepresentation, that GMACM was

"working with them to secure a loan modification," it is unclear what is false about this

statement.  The Claimants plead that modification negotiations began as early as August

2010 and that they resulted in Claimants being approved for and entering into the Trial

Modification.  See Complaint ¶¶ 17-23.  GMACM then continued to work with the

Claimants toward a loan modification.  See Complaint ¶ 25.  As described in ¶¶ 18-19

supra, these allegations are true.  In fact, GMACM worked with the Claimants to secure a

loan modification even after the foreclosure sale was rescinded.  Thus, because the alleged

misrepresentation is true, it cannot form the basis of a cause of action against GMACM.

59.    The same applies to the second alleged misrepresentation, that the

Claimants were approved for a loan modification.  As stated in ¶ 20 supra, the Claimants

were approved for a loan modification on April 7, 2011, and therefore at the time of the

conversation on April 21, 2011, the GMACM representative was accurately conveying that

approval.  Thus, because the first and second alleged misrepresentations were accurate

factual statements, it is not possible for such allegations to form the basis of a

"misrepresentation" cause of action.

60.    The third alleged misrepresentation, that "GMACM was the lender

under the promissory note," also cannot form the basis of a misrepresentation claim.  As an

21

initial matter, the Claimants did not assert who allegedly made this representation, how it was made, where it was made or the speaker's authority to bind GMACM.  As a result, the alleged misrepresentation does not meet the pleading standards under Rule 9 of the Federal Rules of Civil Procedure.  Furthermore, the Trial Modification contradicts this misrepresentation, as it defines GMACM as "Lender" under the agreement and states, "[b]orrower acknowledges that 'Lender' is the legal holder and the owner, or agent/servicer for the legal holder and owner, of the Note. . ."  See Trial Modification at 1.  It is true that GMACM is the agent/servicer for the legal holder and owner of the Note, and therefore a statement that GMACM acted as the Lender is not false.

61.    Like the third alleged misrepresentation, the Claimants' fourth alleged misrepresentation, that "GMACM had authority to enter into contract," is not pled with the particularity required by Fed. Rule Civ. P. 9 because it neither asserts who made the alleged misrepresentation nor when, how, where, or by what means the statement was made.  As a result, it cannot form the basis of a fraud or misrepresentation claim.

62.    Finally, the Claimants' final alleged misrepresentation, that following the foreclosure sale the Property would remain in status quo, also fails because, as stated above, the Claimants cannot demonstrate any damages stemming from this alleged misrepresentation.  While the Claimants assert that a notice was posted on their door commencing eviction, this process clearly ended as soon as the foreclosure sale was rescinded within twenty days and the Claimants' credit report was amended.  Additionally, the Claimants were offered a loan modification in July 2011 that included terms substantially similar (and, in some ways, better) than the terms originally offered.  As a

22

result, the Claimants cannot meet the final element of a fraud claim with regard to this alleged misrepresentation, and any claim based on it also fails as a matter of law.

### 5. Fraud

63.     The Claimants assert a cause of action for fraud, premised on the same allegations as the Misrepresentation Claims, as well as allegations that GMACM concealed material facts regarding notices, payments, assignments, and transfers related to the Mortgage Loan and promissory note on the Subject Property with the intent to defraud the Claimants.  To the extent the fraud claim is premised on the alleged misrepresentations discussed above, discussed in ¶¶ 55-62 *supra*, the fraud claim fails for the same reasons as the misrepresentation claims, leaving only the Claimants' allegations of concealment.

64.     The elements of a cause of action for fraud based on concealment are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Kaldenbach v. Mut. of Omaha Life Ins. Co., 100 Cal. Rptr. 3d 637, 652 (Cal. Ct. App. 2009).

65.     It appears that the Claimants are asserting that GMACM wrongfully failed to disclose notice of the foreclosure sale, as well as assignments and transfers of the Property.  As an initial matter, GMACM did not have a duty to disclose assignments of the Deed of Trust to the Claimants.  See Deed of Trust at § 20.  Therefore, any concealment of assignments or transferred cannot form the basis of a fraudulent concealment claim.

ny-1237844

66.    With regard to the allegation that GMACM concealed notice of the foreclosure sale, this is contradicted by the fact that GMACM attempted to call the Claimants on May 13, 2011 to inform them of the foreclosure sale and left a message when the Claimants did not answer.  See ¶ 23, *supra*.  Therefore, Claimants cannot assert that GMACM intentionally failed to disclose this information to the Claimants or had an intent to deceive them, and their fraudulent concealment claim fails because it does not meet the requisite elements for the cause of action.

### 6.  Unfair Business Practices

67.    Claimants also assert a cause of action for violation of the California Business & Professional Code, referred to as the "unfair competition law" (the "UCL").  "A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition."  Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000) (citation omitted) (quotation omitted).  Courts have made clear that the UCL cannot be used as an end-run around the requirements of other statutes.  Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001) (dismissing a UCL claim where underlying negligence and fraud claims were insufficient as a matter of law); see also Krantz v. BT Visual Images, L.L.C., 107 Cal. Rptr. 2d 209, 219 (Cal. Ct. App. 2001) (the viability of a UCL claim stands or falls with the antecedent substantive causes of action).

68.    The Claimants predicate their UCL claim on the same theories that provide the basis for each of their other causes of action.  See Complaint ¶¶ 91-92. Indeed, their UCL claim is a mere recasting of their other claims.  As all of the Claimants' causes of actions fail—as do the faulty theories upon which they are predicated—so, too, does the Claimants' UCL claim.

24

69.     Furthermore, even if the Claimants could demonstrate a UCL claim, they cannot obtain relief under the statute.  "A UCL action is equitable in nature; damages cannot be recovered."  Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 943 (Cal. 2003). (citing Bank of the West v. Superior Court, 833 P.2d 545 (Cal. 1992)).  Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution."  Id. (citing Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 973 P.2d 527, 539 (Cal. 1999)).

70.     Bankruptcy Code section 502(b) provides that in connection with allowing or disallowing proofs of claim, the Court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount . . . ."  11 U.S.C. § 502(b).  Bankruptcy Code section 502(b) makes no provision for granting of equitable relief.  Instead, the Bankruptcy Code and Bankruptcy Rules require that requests for an injunction be sought through an adversary proceeding.  See Fed. R. Bankr. P. 7001(7).  Consequently, even if the Claimants had provided a basis for relief under the UCL, such relief is inappropriately sought through the claims allowance process.

71.     Furthermore, the Claimants cannot obtain restitution because GMACM has not acquired any property from the Claimants that the Claimants were otherwise entitled to keep.  For restitution to be available, the "offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep."  Day v. AT&T Corp., 74 Cal. Rptr. 2d 55, 64 (Cal. Ct. App. 1998) (emphasis in original); see also *Memorandum Opinion and Order After Trial of the Contested Matter of the ResCap Liquidating Trust and the ResCap Borrower Claims Trust's Objection to Claims 3889, 4129, 4134, and 4139 Filed by Tia Smith* [Docket No. 9917], at

25

11-12.  Because the foreclosure sale was rescinded, the only thing obtained by GMACM

from the Claimants was the payments made to GMACM as the servicer of the Loan.  The

Claimants cannot assert that they were entitled to keep these payments, as they were

payments the Claimants were legally obligated to make pursuant to the terms of the Note

and Deed of Trust.  As a result, the Claimants were not deprived of any property they were

entitled to keep, and therefore, are not entitled to any restitution under the UCL.

### 7.  Declaratory Relief, Injunctive Relief, and Specific Performance

72.    The Claimants' final causes of action are for Declaratory Relief,

Injunctive Relief, and Specific Performance.  These claims are based on the same

allegations as the previous claims, and therefore fail for the same reasons.  Additionally, for

the reasons stated in ¶ 70 *supra*, because of the equitable nature of the requested relief is not

appropriate in the claims allowance process, especially in this context where the requested

relief would be applied to an alleged contract that no debtor entity is to a party to, but

rather, is an alleged contract with third party entities that are not a party to this dispute.

### <u>CONCLUSION</u>

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed

Order granting the relief requested herein and such other and further relief as this Court may

deem proper.

26

ny-1237844

Dated: July 14, 2016
     New York, New York

                    /s/  Norman S. Rosenbaum
                    Norman S. Rosenbaum
                    Jordan A. Wishnew
                    Jessica J. Arett
                    MORRISON & FOERSTER LLP
                    250 West 55th St.
                    New York, New York 10019
                    Telephone: (212) 468-8000
                    Facsimile: (212) 468-7900

                    *Counsel for the ResCap Borrower Claims Trust*