**Exhibit 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF SARA LATHROP IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 684 FILED BY BERNARD WARD AND COLLEEN HALLORAN**

I, Sara Lathrop, hereby declare as follows:

1.  I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since June 2006. I began my association with ResCap in 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("GMACM"). In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I then became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I oversaw GMACM associates in their efforts to

1

provide borrowers with loss mitigation options and assisted in the development of GMACM's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued this role with the ResCap Liquidating Trust (the "Liquidating Trust") in December 2013. In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Objection To Claim No. 684 filed by Bernard Ward and Colleen Halloran* (the "Objection").[2]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3. In my current and former capacities as Senior Claims Analyst and Loss Mitigation Manager to the Borrower Trust, the Liquidating Trust, and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records kept in the course of their regularly conducted business activities (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

2

ny-1238672

affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimants. Since the Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

4. The Debtors have taken steps in these Chapter 11 Cases to afford Borrowers who have filed proofs of claim additional protections, as set forth in the Borrower Claim Procedures approved by the Procedures Order. A Request Letter was sent to the Claimant and a response was received on July 3, 2013, attached hereto as Exhibit A.

5. On October 25, 2006, GMACM originated a loan (the "Loan") in the amount of $905,000.00 to Bernard Ward, evidenced by a note (the "Note") and secured by a deed of trust (the "Deed of Trust") executed by the Claimants on property located at 3300 Kirkham Street, San Francisco, CA 94122 (the "Property"). Copies of the Note and the Deed of Trust are attached hereto as Exhibit B and Exhibit C, respectively. The Loan was transferred to Wells Fargo Bank, N.A. ("Wells Fargo").

6. GMACM serviced the Loan from origination until servicing was transferred to Ocwen Loan Servicing, LLC on February 16, 2013.

3

ny-1238672

7. On May 26, 2010, a Notice of Default was recorded in the San Francisco County Assessor's Office. See Notice of Default, attached hereto as Exhibit D. At that time, the account was owing for the January 1, 2010 payment. See id.

8. On January 12, 2011, after months of working with Mr. Halloran to get sufficient documents to review Mr. Ward for a loan modification, GMACM approved Mr. Ward for a traditional trial plan. See Servicing Notes, attached hereto as Exhibit E, at 71 of 126. On January 14, 2011, GMACM sent Mr. Ward a trial plan agreement (the "Trial Modification"). See Trial Modification, attached hereto as Exhibit F. The Trial Modification laid out the terms of the trial plan, the amount of each trial payment ($3,260.26), the date each payment was due, the amount of the escrow payment, and each party's rights under the agreement. See id. The Trial Modification is also signed by Ms. Halloran, in her capacity as power of attorney for Bernard Ward. See id.

9. The Claimants made the required payments under the Trial Modification, and as a result, the Loan was reviewed for a permanent modification. See Servicing Notes at 69 of 126. On April 7, 2011, Wells Fargo approved a permanent modification of the Loan (the "First Loan Modification"). See April 7, 2011 Email from Wells Fargo to GMACM, attached hereto as Exhibit G.

10. On April 22, 2011, Mr. Halloran sent GMACM a letter that memorialized an alleged conversation between a representative of GMACM and Mr. Halloran whereby GMACM informed Mr. Halloran that the Loan had been approved for a modification (the "April 22 Letter"). See April 22 Letter, attached as Exhibit 3 to the Proof of Claim. In the letter, Mr. Halloran stated his understanding that Mr. Ward was approved for a traditional loan modification with an interest rate of 2.88%, as well as 432 modified payments of principal, interest, and PMI

4

ny-1238672

of $3,253.24 per month. See id. The April 22 Letter also indicated that the paperwork to execute the Loan Modification was forthcoming.

11. On April 28, 2011, GMACM's customer care division sent a letter in response to the April 22 Letter (the "April 28 Letter"). See April 28 Letter, attached hereto as Exhibit H. In the April 28 Letter, GMACM confirmed that a traditional permanent modification was approved on April 21, 2011, and that the modification would include terms such as the modified monthly payment and interest rate. See id. The April 28 Letter did not include an actual agreement to modify the Loan.

12. After the permanent loan modification was denied, the Property was foreclosed upon on May 20, 2011. See Servicing Notes at 60 of 126. A representative of GMACM attempted to call the Claimants on May 13, 2011 to inform them of the foreclosure sale, and when no one answered, the representative left a voicemail. See id.

13. On June 6, 2011, GMACM received a letter from the Claimants disputing the foreclosure sale. See Servicing Notes at 53 of 126.

14. On June 9, 2011, three days after receiving the letter contesting the foreclosure sale GMACM commenced the process of rescinding the foreclosure sale. See Servicing Notes at 43 of 126. The foreclosure sale was rescinded on June 13, 2011. See id. at 50 of 126. On June 21, 2011, GMACM corrected the Claimants' credit report so that it would not reflect the foreclosure sale. See id. at 43 of 126.

15. On June 23, 2011, GMACM again began reviewing the Loan for a modification. See Servicing Notes at 41 of 126. On July 7, 2011, GMACM received approval from the investor for a new loan modification (the "Second Loan Modification"). See Servicing Notes at 40 of 126.

5

16. GMACM mailed the permanent modification documents to the Claimants on July 22, 2011. See Servicing Notes at 36 of 126. However, the modification was denied on September 28, 2011 because the Claimants did not return the signed modification documents. See id at p. 35.

17. On March 12, 2012, GMACM approved the Claimants for a third modification (the "Third Loan Modification"). The terms included capitalizing the payments owed for May 2010 through March 2012 (for an initial payment of April 1, 2012), a new unpaid principal balance of $1,171,779.69, a maturity date of November 1, 2046, an initial monthly principal and interest payment of $2,441.00, and a step-rate interest rate that would start at 2.5% (for a monthly PITI payment of $3,066.77) for the first five years, increase to 3.5% (for a monthly PITI payment of $3,417.69) for the sixth year, and then increase to 3.75% (for a monthly PITI payment of $3,661.81) for the remaining period of the Loan. See Servicing Notes at 31 of 126. Thus, despite including an additional eleven months of capped unpaid monthly payments, the Third Loan Modification provided the Claimants with a lower interest rate, a lower monthly payment, and an earlier maturity date than the First Loan Modification.

18. GMACM mailed the permanent modification documents to the Claimants on March 12, 2012. See Servicing Notes at 30 of 126. However, the modification was denied on August 13, 2012 because the Claimants did not return the signed modification documents. See id. at 28 of 126.

ny-1238672

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 14, 2016

/s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for ResCap Liquidating Trust