**MORRISON | FOERSTER**

250 WEST 55TH STREET
NEW YORK, NY 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

July 14, 2016

Writer's Direct Contact
+1 (212) 336.4328
JWishnew@mofo.com

**By Overnight Mail**

The Honorable Martin Glenn, U.S.B.J.
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

Re:    **In re Residential Capital, LLC, et. al., Case No. 12-12020 –
        Claim No. 4445 Filed by Alan Moss**

Dear Judge Glenn:

We represent the ResCap Borrower Claims Trust (the "Borrower Trust") in connection with
its objection to the above-referenced proof of claim filed by Alan Moss (the "Claimant").
We write to advise the Court of the decision issued on June 2, 2016 by the Honorable Lorna
G. Schofield, U.S.D.J. of the U.S. District Court for the Southern District of New York
concerning the disposition of the Claimant's proof of claim (the "Decision"). A copy of the
Decision is attached hereto as Exhibit 1.

As Your Honor may recall, Your Honor sustained the Borrower Trust's objection to the
Claimant's proof of claim. *See* D.E. 9052. The Claimant subsequently appealed Your
Honor's decision and Judge Schofield reversed the decision in part and remanded it back to
the Court in order to allow Your Honor to make a factual determination as to questions raised
by the documents submitted with the Borrower Trust's objection. *See* Decision at 17.

The Borrower Trust is feverishly working to complete its claims reconciliation process in
order to enable it to make distributions to holders of allowed claims. As a result, the
Borrower Trust would like to place this matter back on the Court's calendar at its earliest
convenience for a status conference in order to determine the most expeditious way to
proceed with this matter.

**MORRISON | FOERSTER**

The Honorable Martin Glenn, U.S.B.J.
July 14, 2016
Page Two


Thank you for your attention to this matter.

Respectfully Submitted,


/s/ Jordan A. Wishnew
Jordan A. Wishnew

Encls.

cc:     Alan Moss (by UPS, w/ encl.)

**<u>Exhibit 1</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                      :

In re:                                :
                                      :

RESIDENTIAL CAPITAL, LLC,      :
                                      :

                     Debtor.      :
------------------------------------------------------:
                                      X

ALAN MOSS,                        :
                                      :

                     Appellant,      :
                                      :

                  -against-          :
                                      :

ResCap Borrower Claims Trust, *as*    :
*Chapter 11 Trustee*,                 :
                     Appellee.      :
------------------------------------------------------X

+-----------------------------------------+
| USDC SDNY                               |
| DOCUMENT                                |
| ELECTRONICALLY FILED                    |
| DOC #:_____                 |
| DATE FILED: 06/02/2016_____             |
+-----------------------------------------+

15 Civ. 7140 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

        Alan Moss appeals an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") disallowing and expunging his Amended Claim against the Debtor Executive Trustee Services, LLC ("ETS"). Moss, an attorney, is appearing pro se. The claim arises out of ETS's actions as purported trustee leading up to and conducting a nonjudicial foreclosure sale of Moss's home. The sale was later vacated. In an opinion and order dated August 24, 2015 (the "Bankruptcy Court Opinion"), the Bankruptcy Court found that the Amended Claim does not sufficiently plead that ETS acted with malice to overcome the privilege accorded trustees, and on that basis disallowed the claim. For the reasons below, the Bankruptcy Court Opinion is reversed and remanded for further proceedings consistent with this Opinion.

## I.    BACKGROUND

### A.  Facts

The following facts appear to be undisputed and therefore are taken from the Bankruptcy Court Opinion, except as otherwise noted.

On June 22, 2005, Moss obtained a $612,500 loan (the "Loan") from non-debtor CJ Mortgage, Inc. ("CJM").  The Loan was evidenced by a note (the "Note") secured by a deed of trust (the "Deed of Trust") encumbering real property located in Moss Beach, California (the "Property").

CJM assigned the Deed of Trust to non-debtor Option One Mortgage Corp., which subsequently assigned the Deed of Trust to non-debtor TCIF, LLC ("TCIF") pursuant to an assignment dated September 15, 2007.  TCIF subsequently assigned the Deed of Trust to non-debtor Bank of New York Trust Company ("BONY") pursuant to an assignment dated April 29, 2008.

The Loan was referred to foreclosure on June 16, 2006, because the Loan was due and owing for the April 2006 payment.  Non-debtor TCIF REO2, LLC (also "TCIF")[1] appointed ETS as substitute trustee under the Deed of Trust pursuant to a Substitution of Trustee dated September 21, 2006.  However, only a trust beneficiary has the power to substitute a new trustee. *See* Cal. Civ. Code § 2934a(a)(1) ("The trustee under a deed upon real property . . . may be substituted by the recording . . . of a substitution executed and by . . . all of the beneficiaries under the trust deed, or their successors in interest . . . .").  TCIF was not assigned the Deed of

---

[1] According to exhibits to the April 15, 2015, Declaration of Kathy Priore, submitted in support of the ResCap Borrower Claims Trust's Objection to Amended Claim No. 4445 in the underlying bankruptcy case, there are two TCIF entities -- TCIF LLC (Ex. F Priore Decl.) and TCIF REO2, LLC (Ex. H Priore Decl.).  The distinction is not explained and does not appear to be material.  Accordingly, both entities are referred to herein, as they are in the Bankruptcy Court Opinion, as "TCIF."

Trust until September 15, 2007, at the earliest, and was not the beneficiary and did not have authority to substitute ETS as trustee when it attempted to do so in 2006. ETS, purporting to act as trustee, commenced nonjudicial foreclosure proceedings against the Property by issuing a Notice of Default (the "2006 NOD"), recorded on June 20, 2006. On May 4, 2007, ETS issued a Notice of Rescission of the 2006 NOD.

On September 17, 2007, the Loan was again referred to foreclosure because it was due and owing for the July 2007 payment. ETS recommenced nonjudicial foreclosure proceedings by issuing another Notice of Default (the "2007 NOD") on September 17, 2007. The Trust claims that TCIF was assigned the Deed of Trust two days before ETS issued the 2007 NOD, but TCIF did not issue a new substitution of trustee appointing ETS as substitute trustee. ETS recorded a Notice of Trustee's Sale on May 19, 2008 (the "2008 NOS").

On June 11, 2008, Moss contacted GMAC Mortgage, LLC ("GMACM"), which was servicing the Loan, to request a modification. GMACM offered Moss a six-month foreclosure repayment plan, which required Moss to make a $50,000 down payment and six monthly payments of $6,740.78 each. Moss accepted these terms and made the $50,000 down payment; GMACM then cancelled the foreclosure sale scheduled for June 13, 2008. GMACM mailed Moss a copy of the repayment plan agreement on June 13, 2008. GMACM never received an executed copy of the agreement in return nor Moss's $6,740.48 July 12, 2008, plan payment. GMACM recommended foreclosure on July 18, 2008. On August 21, 2008, GMACM received a $6,000 personal check from Moss, which GMACM returned to Moss because it was not timely and was an insufficient amount.

On May 7, 2009, ETS conducted a trustee sale, and BONY acquired title to the Property. On May 12, 2009, ETS executed a Trustee's Deed Upon Sale, granting BONY title to the

Property.  According to the Appellee, ResCap Borrower Claims Trust (the "Trust"), ETS conducted the foreclosure sale in error due to a failure to timely communicate conditions that would have warranted a cancellation of the foreclosure sale, which took place on May 7, 2009.

On July 22, 2009, Moss filed a complaint in the Superior Court of California, County of San Mateo (the "Superior Court"), alleging state law causes of action against BONY (the "BONY Action") and seeking to set aside the trustee sale.  According to Moss, he discovered during this lawsuit that TCIF did not yet have an assignment in the Deed of Trust when it substituted ETS as trustee.

On May 5, 2011, Moss filed another complaint in the Superior Court, asserting state law causes of action against ETS (the "ETS Action").  The complaint alleged the following causes of action against ETS for issuing the 2007 NOD, the 2008 NOS, and the Trustee Deed Upon Sale (together, the "Notices") and for conducting the sale without investigating its authority to do so: (i) negligence and negligence per se; (ii) fraud; and (iii) intentional and negligent infliction of emotional distress.  ETS did not enter an appearance in the ETS Action, and the Superior Court entered a default on June 17, 2011.  In accordance with California Civil Procedure,[2] and according to the docket, a prove-up hearing was held on March 9, 2012.  No findings appear on the docket in connection with the hearing.  ETS filed a motion to set aside the default on April 4, 2012.  According to the docket, the May 31, 2012, hearing on the motion never occurred because

---

[2] The California Code of Civil Procedure § 585(b) states that after a defendant fails to answer the complaint, "the clerk, upon written application of the plaintiff, shall enter the default of the defendant. The plaintiff thereafter may apply to the court for the relief demanded in the complaint. The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint . . . If the taking of an account, or the proof of any fact, is necessary to enable the court to give judgment or to carry the judgment into effect, the court may take the account or hear the proof, or may, in its discretion, order a reference for that purpose." (emphasis added).  The last sentence describes what is known as a "prove-up" hearing.

the litigation was stayed on May 23, 2012, on account of the automatic stay in connection with

the Debtors' bankruptcy filings. Thus, no default judgment against ETS was entered in the ETS

Action.

On September 13, 2012, ETS issued a Notice of Rescission of the Trustee Deed Upon

Sale, dated May 12, 2009. ETS also issued a Notice of Rescission of the 2007 NOD on January

9, 2013. The Trust asserts that Moss continues to hold title to the Property subject to the Note

and Deed of Trust. In November 2013, BONY and Moss settled, resulting in the dismissal with

prejudice of the BONY Action.

### B.  Procedural History in the Underlying Bankruptcy Proceeding[3]

On November 7, 2012, Moss timely filed a $750,000 general unsecured claim against

ETS. Following briefing and a hearing, the Bankruptcy Court entered an order on February 13,

2015, finding that the claim failed to allege that ETS acted with a lack of good faith and with

actual malice, but gave Moss 30 days to amend the claim. Moss filed the Amended Claim on

March 16, 2015, which is the operative claim and is based on the same facts and causes of action

Moss alleged in the ETS Action.

The Bankruptcy Court held a hearing on a motion to expunge the Amended Claim. At

the hearing the court refused to allow Moss to obtain discovery of ETS's records, stating, "You

don't get to do discovery to determine whether you have a claim. You have to properly state a

claim to be able to get discovery."

On August 24, 2015, the Bankruptcy Court issued its Opinion, holding that California's

qualified common interest privilege applies to the Notices issued by ETS and that Moss failed to

---

[3] *In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y.).

allege facts supporting a reasonable inference that ETS acted with malice.  Moss filed his notice

of appeal on September 4, 2015, challenging the Bankruptcy Court's Order.

## II.    STANDARD

When reviewing a bankruptcy court's decision, the court accepts its factual findings

unless clearly erroneous but reviews its conclusions of law de novo.  *In re Saint Vincents*

*Catholic Med. Ctrs. of N.Y.*, 449 B.R. 209, 213 (S.D.N.Y. 2011).  Where, as here, a litigant is

proceeding pro se, it is "well established" that his submissions "must be construed liberally and

interpreted to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of*

*Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks, citation, and emphasis omitted).

Under 11 U.S.C. § 502(a), a claim evidenced by a proof of claim filed under § 501 "is

deemed allowed, unless a party in interest, . . . objects."  A properly executed and filed proof of

claim constitutes prima facie evidence of the validity of the claim.  *See* Fed. R. Bankr. Proc.

3001(f).  "To overcome this prima facie evidence, the objecting party must come forth with

evidence which, if believed, would refute at least one of the allegations essential to the claim."

*In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000).  If an

objection is made, the court must determine the allowability of the claim under the standards set

forth in § 502(b).  *See* 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J.

Sommer eds., 16th ed. 2014).  Section 502(b)(1) requires disallowance of a claim to the extent

that "such claim is unenforceable against the debtor and property of the debtor, under any

agreement or applicable law . . . ."  The validity of claims is determined by applicable non-

bankruptcy law, for example applicable state substantive law.  *See Raleigh v. Ill. Dep't of*

*Revenue*, 530 U.S. 15, 20 (2000) ("The 'basic federal rule' in bankruptcy is that state law

governs the substance of claims." (quoting *Butner v. United States*, 440 U.S. 48, 57 (1979))).

## III.    DISCUSSION

The Bankruptcy Court held that (1) because no default judgment was entered in the ETS Action, the default does not have preclusive effect; and (2) ETS is covered by California's common interest privilege because Moss's Amended Claim failed to allege that ETS acted with malice in recording the Notices; thus (3) the Amended Claim fails to state a claim for relief and should be disallowed.  I agree with the first holding but, for the reasons stated below, the Amended Claims should not be disallowed at this juncture..

### A.  EFFECT OF ETS'S DEFAULT

The Bankruptcy Court correctly held that the Superior Court's entry of default against ETS does not have preclusive effect.

Federal courts are required by statute to give full faith and credit to state court judicial proceedings.  *See* 28 USC § 1738.  This requirement has been interpreted to mean that a federal court must give a state court judgment the same preclusive effect it would receive in that state.  *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 379-82 (1985), *reh'g denied* 471 U.S. 1062 (1985) (full faith and credit statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered").  Thus, California law on collateral estoppel applies to the question of the preclusive effect, if any, of the default entered in the ETS Action in California state court.

California law bars relitigation when (1) "the issue sought to be precluded from relitigation [is] identical to that decided in a former proceeding"; (2) "the issue must have been actually litigated in the former proceeding"; (3) the issue "must have been necessarily decided in the former proceeding"; (4) "the decision in the former proceeding must be final and on the merits" and (5) the party against whom preclusion is sought must be the same as, or in privity

Case 1:15-cv-07148-LGS    Document 18    Filed 06/02/16    Page 8 of 18

with, the party to the former proceeding was a final judgment on the merits. *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990), *cert. denied*, 500 US 920 (1991). "The party asserting collateral estoppel bears the burden of establishing these requirements." *Id.*

Notwithstanding the requirement that an issue must have been "actually litigated," in California, collateral estoppel may bar the relitigation of issues raised in a default proceeding. "[A] judgment of default in a civil proceeding is 'res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.'" *Murray v. Alaska Airlines, Inc*., 237 P.3d 565, 571 (Cal. 2010) (quoting *Fitzgerald v. Herzer*, 177 P.2d 364, 366 (Cal. Ct. App. 1947)). This general principal is subject to two limitations. The first is that the defaulting defendant "had actual notice of the proceedings and a 'full and fair opportunity to litigate.'" *In re Cantrell*, 329 F.3d 1119, 1124 (9th Cir. 2010) (quoting *In re Harmon*, 250 F.3d 1240, 1247 n.6 (9th Cir. 2001)); *see also Murray*, 237 P.3d at 571. The second limitation is that the first court must have decided, either expressly or implicitly, the issue on which default is sought. *See In re Cantrell*, 329 F.3d at 1124 ("'the record [must] show[] an express finding upon the allegation' for which preclusion is sought [or] 'the court in the prior proceeding [must have] necessarily decided the issue.'" (quoting *In re Williams' Estate*, 223 P.2d 248, 254 (Cal. 1950); *In re Harmon*, 250 F.3d at 1248)).

The entry of default in the ETS case does not establish any facts nor resolve any legal issues in this case because at least two of the above requirements are not satisfied. First, in the present case, there was no final judgment or any other final decision. The ETS Action was interrupted and halted after the clerk of the court entered a default but while a motion to set aside the default was pending, and before the entry of judgment. The clerk's entry of default is a

8

ministerial act without legal effect; it is not final and it is not a decision on the merits.  "A clerk's

entry of default possesses none of the characteristics of a preclusive judgment.  It is not final; it

is not on the merits; it does not decide anything; it results from no litigation of any issue.  Indeed

it does not *adjudicate* anything; it is not a judicial act. . . . [S]uch an instrument can have no

effect under the rules of preclusion by judgment."  *Ferraro v. Camarlinghi*, 79 Cal. Rptr. 3d 19,

39 (Ct. App. 2008) (emphasis in original).  Consequently, the fourth numbered requirement

above, a final decision, is not satisfied.  *See In re Bosque*, No. 10-62444, 2013 WL 795243, at *4

(Bankr. N.D. Cal. Mar. 4, 2013) (denying preclusive effect to a default judgment where there

was no showing that the judgment was entered by any judge or that it became a final judgment,

citing *Ferraro*).

Second, the California Superior Court never decided the issues on which default is

sought.  Moss argues that the default compels acceptance of the factual allegations and claims in

the complaint filed in the ETS Action, which he incorporates by reference into his Amended

Claim.  However, the California Superior Court made no express findings of any sort and did not

render any decision that "necessarily decided" any factual or legal issues in the case.

Accordingly, the second and third numbered requirements above, and as restated in *Cantrell*, are

not satisfied.

The cases Moss cites to the contrary are inapposite because in each one a default

judgment was entered, and not simply a default entered by the clerk of court.[4]  One case he cites

---

[4] Moss cites to the other following cases: *Carlsen v. Koivumaki*, 174 Cal. Rptr. 3d 339, 346 (Ct.
App. 2014) (reversing the trial court's entry of default judgment in favor of the defendant
because the plaintiff had adequately stated a cause of action against the defendant in his
complaint); *Steven M. Garber & Associates v. Eskandarian*, 59 Cal. Rptr. 3d 1, 5 (Ct. App.
2007) (affirming judgment entered for unpaid attorney fees); *Molen v. Friedman*, 75 Cal. Rptr.
2d 651 (Ct. App. 1998) (affirming a judgment against the defendants awarding damages of
$1,103,794.34 and terminating the lease at issue); *Devlin v. Kearny Mesa AMC/Jeep/Renault,
Inc.*, 202 Cal. Rptr. 204 (Ct. App. 1984) (affirming judgment award of $3,425.69 compensatory

extensively, *Kim v. Westmoore Partners, Inc.*, hurts, not helps, his case. *See* 133 Cal. Rptr. 3d

774 (Ct. App. 2011). As *Kim* explains, Moss is not automatically entitled to entry of judgment

simply because ETS defaulted; Moss would have to "prove up" his damages with actual

evidence before winning judgment. *See id.* at 779.

Therefore, because the California Superior Court never issued a final judgment and did

not decide any issues on the merits, the Clerk's entry of default in the court's docket in the ETS

Action has no preclusive or binding effect on this case.

### B. CALIFORNIA'S COMMON INTEREST PRIVILEGE

The qualified privilege afforded trustees in nonjudicial foreclosure proceedings is

available to ETS as a putative trustee, except on a showing of malice. In this case, the facts in

the record raise serious questions of whether ETS acted in reckless disregard of Moss's rights,

which is sufficient to show malice. Consequently, the Bankruptcy Court should not have

disallowed the claim based on the privilege, and should not have done so based only on the

pleadings.

### 1.  Applicable Law of Qualified Privilege

California's nonjudicial foreclosure process is properly commenced when a "trustee,

mortgagee, or beneficiary, or any of their authorized agents file[s] . . . a notice of default." Cal.

Civ. Code § 2924(a)(1). None of these parties may initiate the foreclosure process unless it is the

true holder of the interest under the mortgage or deed of trust, or the original or substituted

trustee under the deed of trust, or a designated agent. *See* Cal. Civ. Code § 2924(a)(6).

"In performing acts required by this article, the trustee shall incur no liability for any

good faith error resulting from reliance on information provided in good faith by the beneficiary

---

damages and $80,000 punitive damages).

Case 1:15-cv-07140-LGS    Document 19    Filed 06/02/16    Page 11 of 18

regarding the nature and the amount of the default under the secured obligation, deed of trust, or

mortgage."  Cal. Civ. Code § 2924(b).  In addition, the following (in relevant part) "shall

constitute privileged communications pursuant to Section 47:  (1) The mailing, publication, and

delivery of notices as required by this section.  (2) Performance of the procedures set forth in this

[Article 1, Mortgages in General]."  [5]  Cal. Civ. Code § 2924(d).   Pursuant to case law, the

relevant part of Section 47 is subsection (c)(1), which creates a qualified privilege for "a

communication, without malice" between persons interested in the communication.  *See Kachlon*

*v. Markowitz*, 85 Cal. Rptr. 3d 532, 545 (Ct. App. 2008) ("We hold that section 2924 deems the

statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and

the performance of statutory nonjudicial foreclosure procedures, to be privileged

communications under the qualified common-interest privilege of section 47, subdivision

(c)(1)."); *see also Boyce v. T.D. Serv. Co.*, 185 Cal. Rptr. 3d 356, 361 (Apr. 10, 2015) (reiterating

*Kachlon*'s holding).  "[W]hen the complaint alleges facts showing that there is a qualified

privilege, the defendant is relieved of the burden [of proof], and the plaintiff must allege and

prove that the defense of privilege is not available because of malice."  HARRY D. MILLER AND

MARVIN B. STARR, CALIFORNIA REAL ESTATE, § 10:46 (Karl E. Geier ed., 4th ed. 2015)

(additional citations omitted).

---

[5] According to the legislative history, the 1996 Amendment added the language found in
§ 2924(d)(1), which "would provide that the mailing, publication, and delivery of notices and the
performance of specified procedures are privileged communications for the purposes of the law
relating to defamation."  Act to Amend Sections 2924 and 2924c of the Civil Code, relating to
Mortgages, ch. 483, 1996 Cal. Legis. Serv. (West).  This provision seems to have been intended
to preclude liability in a slander of title action, i.e. for statements made in derogation of a
plaintiff's title to property.  The 2006 Amendment added the additional language in § 2924(d)(2),
which "would additionally provide that performing the functions or procedures necessary to
carry out the duties regarding a sale of a separate interest in a common interest development
constitute privileged communications."  Act of Sept. 28, 2006, ch. 575, 2006 Cal. Legis. Serv.
(West).

For purposes of overcoming the qualified privilege, malice means "actual malice, meaning 'that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.'"  *Perez v. Wells Fargo Bank, N.A.*, 929 F. Supp. 2d 988, 1002 (N.D. Cal. 2013) (quoting *Kachlon,* 85 Cal. Rptr. 3d at 547).  "[N]egligence in making a sufficient inquiry into the facts on which the statement was based does not, of itself, relinquish the privilege.  Mere inadvertence or forgetfulness, or careless blundering, is no evidence of malice."  *Miller v. Canary Asset Mgmt., Inc.*, No. B258413, 2015 WL 9437650, at *7 (Cal. Ct. App. Dec. 23, 2015) (citing *Kachlon,* 85 Cal. Rptr. 3d at 554) (internal quotation marks and alterations omitted).  "[T]o constitute malice the negligence must be such as evidenced a wanton and reckless disregard of the consequences and of the rights and of the feelings of others."  *Kachlon,* 85 Cal. Rptr. 3d at 554 (internal quotation marks and citation omitted).

## 2.  Protected Communications

Here the Amended Claim, as well as the underlying Complaint in the ETS Action, are based on ETS's issuing the Notices and conducting the sale of the Property without investigating ETS's authority to do so.  These are precisely the activities accorded qualified immunity under Section 47(c)(1) -- "[t]he mailing, publication, and delivery of notices as required by this section [2924 and the p]erformance of the procedures set forth in this [Article 1, Mortgages in General]."  Cal. Civ. Code § 2924(d).

## 3.  Availability of Privilege to Putative Trustee

A threshold issue is whether ETS is accorded this qualified protection under § 2924(d) when ETS was only purporting to act as trustee but had not been validly appointed trustee.

Although the California courts have not expressly addressed this question, the qualified privilege appears to apply to ETS's actions as putative trustee.

The language of § 2924(d) does not limit who enjoys the privilege, but instead states what is included as a privileged communication. This is in contrast to subsection (b) which expressly absolves "the trustee" of liability. The language and difference in approach suggest that subsection (d) is not limited to trustees.[6]

Section 2924(d) brings certain communications within the scope of the privilege in § 47(c). Section 47(c) specifies to whom the privilege applies -- i.e., "a person who is also interested [in the communication], or . . . one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent." Anyone who performs the trustee's duties, either as trustee or as putative trustee, bears the same type of interest in the communications. *See Kachlon*, 84 Cal. Rptr. 3d at 550 ("the trustee's statutory duties in nonjudicial foreclosure are consistent with the type of communications by one interested party to another covered by the common interest privilege" in § 47). Therefore the language of § 47(c) would seem to include a putative trustee, such as ETS, within the privilege.

The qualified privilege in § 2924(d) appears to have been derived from, or at least be related to, a common law principle -- that "[a] rival claimant of property who prosecutes an action in good faith to prove his or her own interest or title to land has a qualified privilege to disparage another's title, provided it is done by an honest and good-faith assertion of a personal

---

[6] The 1996 Amendment to § 2924(d) may simply have been intended to extend its protection to the mortgagee or beneficiary who, like the trustee, are authorized to file a notice of default. *See* § 2924 (a)(1); *Kachlon*, 85 Cal. Rptr. 3d at 551 n.13 ("[T]he amendment extends privilege protection to beneficiaries when they act as trustees and record the notice of default, as section 2924 authorizes them to do."). The framers of the provision may not have considered a putative trustee, like ETS, as part of their analysis.

inconsistent legally protected interest." MILLER AND STARR, CALIFORNIA REAL ESTATE, §
10:46 (2015) (citations and emphasis omitted). In that iteration, a good faith assertion of an
interest in the property is sufficient to invoke the privilege; a valid, enforceable interest is not
necessary. Applying this principle to § 47(c), the limitation of the privilege to "communications
without malice" would seem to limit not only which communications are privileged, but also
who enjoys the privilege. In other words, those who make the communications without malice
are protected, whether or not they have a legally valid interest.

The district court for the Northern District of California took this approach in *Bergman v.
Bank of America* on facts similar to the present case. *See* No. C-13-00741, 2013 WL 5863057, at
*20 (N.D. Cal. Oct. 23, 2013). There, the court dismissed the claim for wrongful foreclosure
against a defendant because the complaint did not plausibly allege facts showing the absence of
privilege. The complaint made only "conclusory allegations that [the defendant] acted with
malice and a reckless disregard for the truth by recording the [Notice of Trustees sale] when [the
defendant] was not validly the trustee [when it recorded these documents]." *Id*. Specifically, the
complaint failed to allege that the defendant "was aware, or should have been aware, that it was
not validly the trustee when it recorded these documents." *Id*. The court did not expressly
address the issue of whether the privilege applies to a trustee that is not validly appointed, but
simply concluded that the privilege applied to the defendant's actions because the complaint
failed to plead sufficiently that the defendant had acted with malice. For the same reason, ETS's
actions here are protected by the qualified privilege in §§ 2924(d) and 47(c) absent a showing of
malice.

#### 4. <u>Malice</u>

Several facts in the record at a minimum raise a serious question as to whether ETS acted with malice.  First, ETS recorded the first notice of default, the 2006 NOD, on June 20, 2006.  At that time, TCIF had not yet (even invalidly) substituted ETS as trustee.  The Substitution of Trustee by which TCIF purported to substitute ETS as trustee is dated September 21, 2006, and was recorded November 10, 2006.  ETS lacked even apparent authority to issue the 2006 NOD.

Second, the Trust claims that TCIF was assigned the Property and thereby received authority to appoint ETS as trustee pursuant to a document dated September 15, 2007.  However, the document bears both a typewritten date and a notarization date of May 7, 2008.  The first date is crossed out and September 15, 2007, is written above it, but the notarization date of May 7, 2008, remains the same.  The document suggests that TCIF actually made the assignment on May 7, 2008, as Plaintiff alleges, and that someone attempted to alter the document, albeit crudely, to make it appear that TCIF was granted the authority to appoint ETS as trustee in 2007 before ETS issued the 2007 NOD on September 18, 2007.  The May 7, 2008, date is also significant because it was after TCIF supposedly assigned the Deed of Trust to BONY on April 29, 2008.  If the assignment to TCIF occurred in May 2008, then TCIF's assignment of the Deed of Trust to BONY in April 2008 was invalid, and ETS's sale and Trustee's Deed Upon Sale granting BONY title to the Property presumably were also invalid.

Third, ETS should not have conducted the foreclosure sale of the Property, but did so "in error," according to the Trust, "due to a failure to timely communicate conditions that would have warranted a cancellation of the foreclosure."  In other words, ETS sold Moss's property when it should not have, because of a "failure" to communicate, intentional or not, by an unidentified person to another unidentified person.  The Trust's statement obfuscates whether the

failure to communicate was innocent, reckless or intentional and any role of ETS leading up to the improper sale.

Fourth, the documents reflect other irregularities that, together with the above facts, call into question whether ETS acted with reckless disregard of Moss's rights. Attached to the Substitution of Trustee appointing ETS is an affidavit of mailing, reciting that the document was mailed on November 8, 2006, and containing a certification under penalty of perjury by the Trustee Sale Officer that the foregoing is correct; but the document is dated November 7, 2006, one day before the attested-to mailing. Another irregularity occurred on May 7, 2009, when ETS recorded the Trustee's Deed Upon Sale with the 2006 NOD and the 2007 NOD. However, the 2006 NOD had been rescinded two years earlier in a Notice of Rescission dated May 4, 2007. Despite providing these documents to the Bankruptcy Court, the Trust did not provide a copy of the 2007 NOD itself to the Bankruptcy Court.

### C.  THE BANKRUPTCY COURT'S DECISION

Federal Rule of Bankruptcy Procedure 3001(f) states that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." "Thus, under section 502(a), a proof of claim or proof of interest which was properly filed pursuant to section 501(a) constitutes prima facie evidence of the validity and the amount of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Resnick & Sommer, 16th ed. 2014) (citations omitted). If an objection is made, the court must determine the allowability of the claim under the standards set forth in § 502(b). Section 502(b) contemplates notice, a hearing and a determination of the amount of the claim, except to the extent that (as relevant here) "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

The Bankruptcy Court imposed an additional requirement on the claimant, Moss.  The Bankruptcy Court required that the claim meet the pleading standards applied to Rule 8 of the Federal Rules of Civil Procedure.  The Bankruptcy Court then held that the Amended Claim did not satisfy this requirement because it "failed to allege facts establishing that ETS acted with malice" and therefore sustained the Trust's Objection.

This approach is problematic here because although the Bankruptcy Court  purported to apply the federal pleading standards, it did not merely review the sufficiency of the claim as a court would the sufficiency of a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The Bankruptcy Court also reviewed and relied on evidence that the Trust was required to submit with its objection to overcome the prima facie validity of the claim.  The Bankruptcy Court Opinion cites declarations and exhibits that, as discussed above, support a plausible finding that ETS acted "in reckless disregard of the plaintiff's rights," which is a state of mind sufficient to show malice.  *Perez v. Wells Fargo Bank, N.A.*, 929 F. Supp. 2d 988, 1002 (N.D. Cal. 2013) (quoting *Kachlon*, 85 Cal. Rptr. 3d at 547).  Consequently, the Bankruptcy Court erred in sustaining the objection and disallowing the Amended Claim based on insufficient pleading when it had before it documents that, in effect, addressed what the court found deficient in the claim.  Under those circumstances, some further inquiry into the factual questions raised by the documents was appropriate,

## IV.    CONCLUSION

For the foregoing reasons, the Bankruptcy Court Opinion is REVERSED and

REMANDED for further proceedings consistent with this Opinion.  The Clerk of Court is

directed to close this case.

SO ORDERED.

Dated:  June 2, 2016
          New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**