**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                          :
                                                :
                                                :
        RESIDENTIAL CAPITAL, LLC, *et. al.*     :        Chapter 11
                                                :        Case No. 12-12020 (MG)
                                                :
                        Debtors,                :

------------------------------------------------------------x
                                                :
THE RESCAP BORROWER CLAIMS,                     :
        TRUST,                                  :
                                                :
                        Objector,               :
                                                :
        - against -                             :
                                                :
Richard D. Rode,                                :
                                                :
                        Claimant.               :
                                                :

------------------------------------------------------------x

## JOINT PRETRIAL ORDER

  The Trust and Claimant having conferred, and having conferred with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

## I. NATURE OF THE CASE

### A. Claimant's Description of Nature of the Case

  Richard D. Rode ("Claimant") is a builder.  His company, Rode Construction, Inc. ("Rode Construction"), built the dwelling located at 2301 W. Lawther Drive, in Deer Park, Harris County, Texas on a parcel of real estate purchased in 1997 for $39,500.00 by Richard D. and Barbara O. Rode, and borrowed $31,000.00 from Bayshore National Bank of La Porte (Bayshore.) By 2000, the parcel of real estate was free and clear of liens and encumbrances.

  On June 15, 2000, Rode Construction obtained a construction loan from Bayshore National Bank, a local bank with which Rode Construction had a business relationship.  Richard D. Rode and Barbara O. Rode deeded the parcel of real estate to Rode Construction.  Rode Construction granted a Deed of Trust to Bayshore and made a Note payable to Bayshore in the amount of $240,000.00 with installment

payments over a 12 month term, with a balloon payment due on May 15, 2001. Rode Construction provided the materials and labor to build the dwelling.

When the dwelling was completed, Claimant and Barbara O. Rode, purchased the property from Rode Construction, financing their purchase through North American Mortgage Company (North American) on March 6, 2001. Claimant has continuously occupied the Homestead since soon after the dwelling was completed in January, 2001. Claimant and Barbara O. Rode divorced in 2005 and Claimant is now re-married. He and his wife, Dee Rode, reside at the Homestead. On March 30, 2001, Bayshore, the local bank, was acquired by SouthTrust Bank, N.A. ("SouthTrust Bank"), according to the FDIC[1] on-line public records.

Rode Construction continued to do business with the local bank personnel who were now employed by SouthTrust Bank. An employee of SouthTrust Bank solicited an application to re-finance the loan secured by the Deed of Trust (DOT) which Claimant and Barbara O. Rode had granted to North American Mortgage Company. through SouthTrust Bank, suggesting that Claimant would have a lower interest rate on the re-financed obligation. Claimant applied to re-finance the purchase money loan with SouthTrust Bank and a loan was offered by SouthTrust Bank. Mr. Rode accepted the offer to re-finance because the offered product carried a lower interest rate on the obligation than the purchase money loan financing provided by or through North American.

A Note and Deed of Trust were prepared for what appeared to be a conventional real estate closing. The Note displayed the date of March 18, 2003, but the purported real estate closing did not occur until March 19, 2003. After March 19, 2003, the purported mortgage loan was "serviced" by an affiliate of SouthTrust Bank and Claimant made his payments at SouthTrust Bank.

On July 14, 2003, Claimant was informed that the "servicing" of his purported loan would be transferred to Homecomings Financial, LLC (Homecomings) effective August 1, 2003. Claimant thereafter sent his payments to Homecomings as instructed. There were servicing errors by Homecomings which are not pertinent to the limited issues for trial in this matter prior to 2007.

Servicing errors (again) arose in 2007. Claimant was offered a loan modification in June, 2008 because of errors in Homecomings/GMACM's servicing of the subject loan whereby the 2007 property taxes were paid by both Claimant and Homecomings, the Harris County Treasurer refunded the tax payments to Homecomings, Homecomings failed to credit the escrow account with the refund and because forced-

---

[1] Retrievable at

https://research.fdic.gov/bankfind/detail.html?bank=19343&name=Bayshore%20National%20Bank%20of%20La%20Porte&searchName=BAYSHORE%20NATIONAL%20BANK%20OF%20LA%20PORTE&searchFdic=&city=&state=&zip=&address=&searchWithin=&activeFlag=&tabId=2

place insurance was charged to the account and not timely refunded.  Claimant disagreed with the characterization of the correction of Homecomings/GMACM's errors as a loan modification, but Homecomings/GMACM insisted that the correction had to be characterized as a loan modification. Homecomings  purportedly approved Claimant for a trial modification in September, 2008, when, in fact, Homecomings/GMACM were required to correct the servicing errors and for reasons then unknown to Claimant, Homecomings/GMACM refused to correct the errors without characterizing the correction as a loan modification.

The Homestead was damaged by the natural disaster known as "Hurricane Ike" in September, 2008.  At the time the Homestead was damaged, it appears that Homecomings/GMACM was carrying a separate hazard insurance policy or policies as a credit enhancement under the Pooling and Servicing Agreement for the RALI Series 2003-QS12 Trust and collected insurance proceeds from the policies. No insurance proceeds were shared with Claimant, who paid approximately $100,000.00 out of his own pocket to repair the damages to the Homestead from "Hurricane Ike."

As a result of the natural disaster known as "Hurricane Ike," a national disaster was declared.  Homecomings/GMACM offered a three (3) month forbearance of payments to Claimant, which may have been based on third party payments to Homecomings/GMAMC.  As a result of the forbearance offered to Claimant, which he believed in good faith to be a true offer to waive payments based on the "Hurricane Ike" national disaster declaration, Claimant was declared to be in default of his payments.

Homecomings/GMACM continued to service the loan into default by continuing to obtain force- placed hazard insurance on the Homestead.  Still hoping to obtain an accounting of the true amount of payments claimed to be due to Homecomings/GMACM and having been engineered into default by Homecomings/GMACM's false offer to forbear three (3) months of payments due to the "Hurricane Ike" national disaster, Claimant sought a loan modification which he had learned was the terminology used by Homecomings/GMACM for correcting servicing errors.

Claimant made the first payment under the 2009 "loan modification" in September, 2009 which was acknowledged by Denise Jurgen of Homecomings/GMACM on or about September 24, 2009.  Concerned that he had not been provided with an accounting of his payments, Claimant had hired an attorney to assist him in assuring that his payments would be accounted for, that his account would be brought current and that the falsely engineered default would be cured. Claimant executed the "loan modification agreement" and it was sent to Homecomings/GMACM on October 1, 2009 by overnight delivery.

Homecomings/GMACM executed the "loan modification" agreement and then unilaterally cancelled the contract.  GMACM then accelerated the payments due under the Note made payable to SouthTrust and commenced foreclosure proceedings

against the Claimant.  Claimant brought an action by Petition for damages and equitable relief in the Harris County, Texas District Court against Homecomings/GMACM which was stayed as a result of the Chapter 11 filing of the RESCAP Debtors.  The First Amended Petition resulted in a Notice of Removal to the United States District Court for the Southern District of Texas and was ultimately dismissed without prejudice due to these Chapter 11 proceedings.

By a document dated June 24, 2016 and received on June 30, 2016, Power Default Services, Inc. caused a purported Notice of Acceleration to be delivered by registered mail to the Claimant, along with purported Notice of Substitution of Trustee and Notice of Trustee's Sale in the name of Ocwen Loan Servicing, LLC, successor in interest to the RESCAP Debtors by virtue of the sale of the servicing platform approved by this Court on February 16, 2013, dramatically increasing the Claimant's damages and requiring urgent, equitable relief.

## B.   Trust's Description of Nature of the Case

Richard D. Rode ("Claimant") obtained a loan from SouthTrust Mortgage Corporation ("SouthTrust") pursuant to the terms of a note dated March 18, 2003 in the principal amount of $265,175.00 (the "Note").  The Note was secured by a deed of trust (the "Deed of Trust" and, together with the Note, the "Mortgage Loan") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Southtrust and its successors and assigns.  Residential Funding Corporation ("RFC"), one of the debtors in the above captioned chapter 11 cases (collectively, the "Debtors"), purchased the Mortgage Loan from SouthTrust, and transferred its interest on or about June 1, 2003 to Deutsche Bank Trust Company Americas ("Deutsche Bank") as trustee in connection with the securitization of the Mortgage Loan.  Debtor Homecomings Financial, LLC ("Homecomings"), began servicing the Mortgage Loan on or around April 18, 2003 until July 1, 2009.  Debtor GMAC Mortgage, LLC ("GMACM") serviced the Mortgage Loan for Deutsche Bank from July 1, 2009 through February 16, 2013.

GMACM approved Claimant for a permanent loan modification on August 24, 2009.  At the time Claimant's August 2009 modification was approved, the escrow account for the Mortgage Loan—which reflected amounts that had already been advanced by GMACM in its capacity as servicer to protect the Note holder's interest in the Property—had a negative balance of $9,650.15.

Permanent loan modification documents reflecting the status of the escrow account were sent to Claimant on August 26, 2009 (the "August 2009 Modification Agreement"), due back October 1, 2009.  Among other things, the August 2009 Modification Agreement contemplated debt forgiveness of $10,000.  Claimant returned the signed August 2009 Modification Agreement to GMACM on October 5, 2009.

On October 7, 2009, GMACM countersigned the August 2009 Modification Agreement.  On that same date, GMACM processed an insurance refund with respect

4

to an insurance policy on the Property in the amount of $4,686.00, which was also credited against the escrow account balance.  As a result of the refund and the debt forgiveness contemplated under the August 2009 Modification Agreement, the escrow account would have been left with an impermissibly large balance, entitling Claimant to a refund.  Accordingly, consummating the loan modification on the terms set forth in the August 2009 Modification Agreement would have resulted in Claimant receiving a double recovery with respect to the escrow account surplus— once as an account credit due to the debt forgiveness, and once in cash from GMACM's own pocket due to the refund of the escrow account cash balance.  The ResCap Borrower Claims Trust (the "Trust") contends that such a double recovery would have been contrary to GMACM's intent in entering into the August 2009 Modification Agreement.

Upon processing the final modification documentation, GMACM also determined that Claimant had not submitted new paystubs for the proof of income as directed, which also required backing off the modification.  GMACM therefore voided the August 2009 Modification Agreement, although this decision was not communicated to Claimant until at least several months later.

Pursuant to letters dated October 27, 2009 and October 30, 2009 from Claimant's counsel to the Debtors, Claimant informed GMACM that he did not intend to perform under the terms of the August 2009 Modification Agreement unless and until he received a countersigned agreement from GMACM.  The Trust asserts that the return of the August 2009 Modification Agreement to Claimant was not a condition to its effectiveness.  GMACM did not return a copy of the fully executed agreement to Claimant, and Claimant did not make monthly mortgage payments beginning on November 1, 2009 as required under the August 2009 Modification Agreement.  The Trust contends that Claimant's failure to perform under the August 2009 Modification Agreement was independent from GMACM's decision to void the modification, and constituted a separate breach of the agreement by Claimant.

Claimant asserts that he was damaged by GMACM's failure to honor the terms of the August 2009 Modification Agreement.

Claimant has always lived at the Property since the dwelling was completed.

## II.    BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

Jurisdiction arises under 28 U.S.C. sec. 1334.  This Court has jurisdiction to hear and decide this matter under 28 U.S.C. sec. 157(a), 157(b)(1) and 157(b)(2)(B).  The parties submit that this is a core matter with respect to which the Court may enter final orders.

### III.    STIPULATED FACTS

1.    The Mortgage Loan is evidenced by a Note to SouthTrust dated March 18, 2003.

2.    The Mortgage Loan is secured by a deed of trust on real property located at 2301 West Lawther Lane, Deer Park, Texas 77536 (the "Property").

3.    The Note and Deed of Trust identified SouthTrust as the "Lender."

4.    The Deed of Trust granted a security interest in the Property to the Lender, by naming Mortgage Electronic Registration Systems, Inc. as "nominee" for the Lender and Lender's successors and assigns.

5.    The Deed of Trust also named Mortgage Electronic Registration Systems, Inc. as the beneficiary of the Deed of Trust.

6.    On October 14, 2008, GMACM approved Claimant for a permanent modification.

### IV.    PARTIES' CONTENTIONS

For purposes of the scheduled evidentiary hearing, the pleadings are deemed amended to embrace the following, and only the following, contentions of the parties.  Claimant reserves his rights to appeal from all Interlocutory Orders in these proceedings.

### A.    Claimant's Contentions

1.    Richard D. Rode ("Claimant") is a builder.

2.    His company, Rode Construction, Inc. ("Rode Construction"), built the dwelling located at 2301 W. Lawther Drive, in Deer Park, Harris County, Texas on a parcel of real estate purchased in 1997for $39,500.00 by Richard D. and Barbara O. Rode, against which he borrowed $31,000.00 from Bayshore National Bank of La Porte (Bayshore.)

3.    By 2000, the parcel of real estate was free and clear of liens and encumbrances.

4.    On June 15, 2000, Rode Construction obtained a construction loan from Bayshore National Bank, a local bank with which Rode Construction had a business relationship.

5.    Richard D. Rode and Barbara O. Rode deeded the free and clear parcel of real estate to Rode Construction to be used as additional security for the construction loan.

6.    Rode Construction granted a Deed of Trust to Bayshore and made a Note payable to Bayshore in the amount of $240,000.00 with installment payments over a 12 month term, with a balloon payment due on May 15, 2001.

7.    Rode Construction provided the materials and labor to build the dwelling.

8.    When the dwelling was completed, Claimant and Barbara O. Rode, purchased the property from Rode Construction, financing their purchase through North American Mortgage Company (North American) on March 6, 2001.

9.    Claimant has continuously occupied the Homestead since soon after the dwelling was completed in January, 2001.

10.    Claimant and Barbara O. Rode divorced in 2005 and Claimant is now re-married.

11.    He and his wife, Dee Rode, reside at the Homestead.

12.    On March 30, 2001 Bayshore, the local bank, was acquired by SouthTrust Bank, N.A.

13.    Rode Construction continued to do business with the local bank personnel who were now employed by SouthTrust Bank.

14.    An employee of SouthTrust Bank solicited an application to re-finance the loan secured by the Deed of Trust (DOT) which Claimant and Barbara O. Rode had granted to North American Mortgage Company, through SouthTrust Bank, suggesting that Claimant would have a lower interest rate on the re-financed obligation.

15.    Claimant applied to re-finance the purchase money loan with SouthTrust Bank and a loan was offered by SouthTrust Bank.

16.    Mr. Rode accepted the offer to re-finance because the offered product carried a lower interest rate on the obligation than the purchase money loan financing provided by or through North American.

17.    A Note and Deed of Trust were prepared for what appeared to be a conventional real estate closing.

18.    The Note was made payable to SouthTrust Mortgage Corporation and the Deed of Trust was granted to SouthTrust Mortgage Corporation.

19.    The Note displayed the date of March 18, 2003, but the purported real estate closing did not occur until March 19, 2003.

20.     On March 18, 2003, RFC Mortgage Conduit originated the Mortgage Loan in the amount of $265,175.00, plus interest to the Claimant, using SouthTrust Mortgage Corporation ("SouthTrust") as the named Lender.

21.    The Mortgage Loan is secured by a deed of trust on real property located at 2301 West Lawther Lane, Deer Park, Texas 77536 (the "Property"), but the actual address of Claimant's Homestead is 2301 West Lawther Drive, Deer Park 77536 (the "Homestead").

22.    After March 19, 2003, the purported mortgage loan was "serviced" by an affiliate of SouthTrust Bank and Claimant made his payments at SouthTrust Bank.

23.    On July 14, 2003, Claimant was informed that the "servicing" of his purported loan would be transferred to Homecomings Financial, LLC (Homecomings) effective August 1, 2003.

24.    Claimant thereafter sent his payments to Homecomings as instructed.

25.    There were servicing errors by Homecomings which are not pertinent to the limited issues for trial in this matter prior to 2007.

26.    Servicing errors (again) arose in 2007.

27.    Claimant was offered a loan modification in June, 2008 because of errors in Homecomings/GMACM's servicing of the subject loan whereby the 2007 property taxes were paid by both Claimant and Homecomings, the Harris County Treasurer refunded the tax payments to Homecomings, Homecomings failed to credit the escrow account with the refund and because forced-place insurance was charged to the account and not timely refunded.

28.    Claimant disagreed with the characterization of the correction of Homecomings/GMACM's errors as a loan modification, but Homecomings/GMACM insisted that the correction had to be characterized as a loan modification.

29.    Homecomings purportedly approved Claimant for a trial modification in September, 2008, when, in fact, Homecomings/GMACM were required to correct the servicing errors and for reasons then unknown to Claimant, Homecomings/GMACM refused to correct the errors without characterizing the correction as a loan modification.

30.    The Homestead was damaged by the natural disaster known as "Hurricane Ike" in September, 2008.

31.    At the time the Homestead was damaged, it appears that Homecomings/GMACM was carrying a separate hazard insurance policy or policies as a credit enhancement under the Pooling and Servicing Agreement for the RALI Series 2003-QS12 Trust and collected insurance proceeds from the policies.

32.    No insurance proceeds were shared with Claimant, who paid approximately
       $100,000.00 out of his own pocket to repair the damages to the Homestead from
       "Hurricane Ike."

33.    As a result of the natural disaster known as "Hurricane Ike," a national disaster
       was declared.  Homecomings/GMACM offered a three (3) month forbearance of
       payments to Claimant, which may have been based on third party payments to
       Homecomings/GMAMC.

34.    As a result of the forbearance offered to Claimant, which he believed in good
       faith to be a true offer to waive payments based on the "Hurricane Ike" national
       disaster declaration, Claimant was declared to be in default of his payments.

35.    Homecomings/GMACM continued to service the loan into default by continuing
       to obtain force- placed hazard insurance on the Homestead.

36.    Still hoping to obtain an accounting of the true amount of payments claimed to
       be due to Homecomings/GMACM and having been engineered into default by
       Homecomings/GMACM's false offer to forbear three (3) months of payments
       due to the "Hurricane Ike" national disaster, Claimant sought a loan modification
       which he had learned was the terminology used by Homecomings/GMACM for
       correcting servicing errors.

37.    Claimant made the first payment under the 2009 "loan modification" in
       September, 2009 which payment was acknowledged by Denise Jurgen of
       Homecomings/GMACM on or about September 24, 2009.

38.    Concerned that he had not been provided with an accounting of his payments,
       Claimant had hired an attorney to assist him in assuring that his payments would
       be accounted for, that his account would be brought current and that the falsely
       engineered default would be cured.

39.    Claimant executed the "loan modification agreement" and it was sent to
       Homecomings/GMACM on October 1, 2009 by overnight delivery.

40.    Homecomings/GMACM executed the "loan modification" agreement and then
       unilaterally cancelled the contract.

41.    GMACM then accelerated the payments due under the Note made payable to
       SouthTrust and commenced foreclosure proceedings against the Claimant.

42.    Claimant brought an action by Petition for damages and equitable relief in the
       Harris County, Texas District Court against Homecomings which was
       subsequently amended.

43.    The First Amended Petition resulted in a Notice of Removal to the United
       States District Court for the Southern District of Texas.

44. The proceedings on Claimant's First Amended Petition in the United States District Court for the Southern District of Texas against Homecomings and GMACM was stayed as a result of the Chapter 11 filing of the RESCAP Debtors.

45. The First Amended Petition was ultimately dismissed without prejudice due to these Chapter 11 proceedings.

46. On June 24, 2016, Power Default Services, Inc. caused a purported Notice of Acceleration to be delivered by registered mail to the Claimant on June 30, 2016, along with purported Notice of Substitution of Trustee and Notice of Trustee's Sale in the name of Ocwen Loan Servicing, LLC, successor in interest to the RESCAP Debtors by virtue of the sale of the servicing platform approved by this Court on February 16, 2013, dramatically increasing the Claimant's damages and requiring urgent, equitable relief.

**B.    Trust's Contentions**

1. Debtor RFC purchased the Mortgage Loan from Southtrust and transferred its interest in the Mortgage Loan when the Mortgage Loan was securitized on or around June 1, 2003, when Deutsche Bank was appointed as trustee.

2. Homecomings serviced the Mortgage Loan from approximately April 18, 2003 until July 1, 2009.

3. On July 1, 2009, GMACM began servicing the Mortgage Loan for Deutsche Bank.

4. GMACM transferred servicing of the Mortgage Loan to Ocwen Loan Servicing, LLC on February 16, 2013 in connection with the Debtors' sale of their servicing platform.

5. Claimant applied for a loan modification in August 2008 and was approved for a trial modification in September 2008.

6. Due to a number of delays in finalizing the permanent loan modification documents following GMACM's approval of Claimant for a permanent modification in October 2008, the modification was required to be reset several times and ultimately expired.

7. GMACM reopened Claimant's loan modification review on August 20, 2009 using the original information received in Claimant's March 2009 workout package.

8. GMACM approved Claimant for a loan modification on August 24, 2009, with a payment due date of October 1, 2009.

9. New permanent loan modification documents including the August 2009 Modification Agreement were sent to Claimant on August 26, 2009, with a return date of October 1, 2009.

10. The purpose of the modification from GMACM's perspective was to try to preserve Claimant's ownership in the Property and avoid a potentially more costly foreclosure by modifying the Mortgage Loan's payment terms to allow Claimant to meet his obligations in a sustained manner over the long term, consistent with GMACM's servicing guidelines.

11. At the time the modification was approved, the Mortgage Loan's escrow account—which reflected amounts that had already been advanced by GMACM in its capacity as servicer—had a negative balance of $9,650.15.

12. The negative balance in the Mortgage Loan's escrow account as of August 24, 2009 was primarily the product of two factors:  (1) lender-placed insurance premiums for periods as to which Claimant had not provided evidence of coverage, and (b) real estate taxes due on the Property, which had substantially increased from prior years.

13. The modifications embodied in the in the August 2009 Modification Agreement contemplated the following: (a) the annual interest rate on the Note was to be reduced from 5.375% to 5.00%; (b) $5,189.97 in overdrawn escrow amounts was to be capitalized and added to the principal balance of the Note then outstanding, bringing the amount payable under the Note to $192,480.84; (c) $10,000 in debt forgiveness was to be posted to Claimant's account; (d) the monthly payment of principal and interest (excluding any escrow amounts) was to be increased from $2,149.16 to $2,320.25, but the total monthly payment due would be reduced from approximately $3,968.46 to $3,013.70, as a result of the debt forgiveness, and capitalization of escrow surplus amounts.

14. Claimant returned the signed August 2009 Modification Agreement to GMACM on October 5, 2009.

15. On October 7, 2009, GMACM countersigned the August 2009 Modification Agreement.

16. Pursuant to letters dated October 27, 2009 and October 30, 2009 from Claimant's counsel to the Debtors, Claimant indicated to GMACM that he did not intend to perform under the terms of the August 2009 Modification Agreement unless and until he received a countersigned agreement from GMACM.

17. Upon processing the final modification documentation, GMACM also determined that Claimant had not submitted new paystubs for the proof of income as directed, which also required backing off the modification.

18.  Because the consummation of the August 2009 Modification Agreement would have been contrary to the intent of GMACM in entering into the agreement, GMACM voided the August 2009 Modification Agreement and did not return a copy of the fully executed agreement to Claimant.

19.  After the August 2009 Modification Agreement was voided, GMACM restarted the loan modification review process, and ultimately approved Claimant for a loan modification on revised terms in August 2010, subject to receiving appropriate documentation from Claimant.

20.  The August 2010 modification was never completed because Claimant did not submit the requisite documents.

21.  Claimant's last payment under the Mortgage Loan was for October 2008.

22.  At the time Claimant returned the August 2009 Modification Agreement to GMACM, the Mortgage Loan account was owing for twelve payments, from November 2008 through October 2009.

23.  Claimant remains in possession of the Property.

## V.  ISSUES TO BE TRIED

1.  Whether GMACM breached the August 2009 Modification Agreement.

2.  To the extent GMACM breached the August 2009 Modification Agreement, whether GMACM's breach was excused under the doctrines of unilateral mistake or frustration of purpose.

3.  Whether Claimant simultaneously and independently breached the August 2009 Modification Agreement.

4.  The extent of Claimant's actual compensatory damages arising out of a breach by GMACM of the August 2009 Modification Agreement.

5.  Whether Claimant is entitled to punitive damages arising out of a breach by GMACM of the August 2009 Modification Agreement.

## VI.  EXHIBITS

### A.  Claimant's Exhibits

1.  Expert Report of Bill Paatalo his direct testimony by Declaration and all documents attached thereto

2.  Expert Report of Robert M. Adams, CPA and all documents attached thereto

3.  Homecomings Responses to Requests for Admission

4. Homecomings Responses to Interrogatories

5. GMACM Responses to Requests for Admission

6. GMACM Responses to Interrogatories

7. Copy of Note and Allonge

8. Quit Claim Deed

9. Assignment of Deed of Trust, 04-16-10, by Donna Fitton

10. Correspondence from Jeffrey H. Uzick to GMACM

11. Transaction History from GMACM

12. Payment sent for $3,025 in January of 2009

13. Correspondence from Homecomings Financial

14. Proposed Loan Modification Agreement of 10-01-09

15. Qualified Written Response of 06-08-09 from Rich Rode disputing totals and credits

16. Proposed Loan Modification Agreement of 04-01-09

17. Correspondence from GMACM regarding insurance credit dated 09-24-09

18. Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package

19. Correspondence from GMACM to Uzick regarding insurance credit dated 09-24-09

20. Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package

21. Correspondence from Uzick to Jungen/GMACM dated 09-18-09 requesting GMACM apply payment of $3,025

22. Correspondence from Uzick to Hoecker/Homecomings dated 07-29-09 re: inappropriate charges

23. Correspondence from GMACM to Uzick dated 08-28-09 re: force-placed insurance & payment history

24. Correspondence from Homecomings to Rode regarding modification offer dated 12-02-05

25. Correspondence from Homecomings to Rode regarding modification offer dated 06-25-07

26. Correspondence from Homecomings to Rode regarding modification offer dated 05-17-07

27. Correspondence from Homecomings to Rode rescinding modification offer dated 04-30-07

28. Correspondence from Homecomings to Rode offering programs to assist dated 01-05-07

29. Correspondence from Homecomings to Rode offering programs to assist dated 08-25-06

30. Correspondence from Homecomings to Rode offering program to assist dated 08-04-06

31. Correspondence from Homecomings to Rode regarding modification offer dated 05-29-09

32. Correspondence from Homecomings to Rode rescinding modification offer dated 01-16-07

33. Correspondence from Homecomings to Rode rescinding modification offer dated 08-15-06

34. Escrow Analysis Statements dated 08-25-10

35. Correspondence dated 02-16-09 from Homecomings to Rode returning payment of $3,025

36. Correspondence dated 07-17-09 from Homecomings to Rode returning payment of $3,100

37. Correspondence dated 08-22-08 from Homecomings to Rode accepting repayment program

38. Correspondence dated 08-19-08 from Homecomings to Rode re: new payment amount of $4,001.67

39. Correspondence dated 08-28-09 from GMACM re: release of information to third-party

14

40. Correspondence dated 09-02-09 from GMACM re: authorization to release information to Uzick

41. Correspondence dated 05-07-07 from Unknown to Rode of default demand

42.  Correspondence dated 06-04-07 from Unknown to Rode of default demand

43. Correspondence dated 07-02-07 from Unknown to Rode of default demand

44. Correspondence dated 05-02-08 from Unknown to Rode of default demand

45. Correspondence dated 06-17-08 from Unknown to Rode of default demand

46. Correspondence dated 07-14-08 from Unknown to Rode of default demand

47. Correspondence dated 12-12-08 from Unknown to Rode of default demand

48. Correspondence dated 07-16-09 from Unknown to Rode of default demand

49. Correspondence dated 08-01-07 from Unknown to Rode of default demand

50. Correspondence dated 08-13-08 from Unknown to Rode of default demand

51. Correspondence dated 04-11-08 from Unknown to Rode of default demand

52. Correspondence dated 05-12-08 from Unknown to Rode of default demand

53. Correspondence dated 07-17-09 from Unknown to Rode re: current principal balance

54. Credit report of Rich Rode

55. Escrow Analysis Statements

56. Correspondence from Homecomings Financial dated 02-16-09 returning payment of $3,025

57. Transaction History from Homecomings Financial

58. Qualified Written Response from Rich Rode of 07-06-09 again disputing totals and credits, including attachments:

58-A. Debt validation letter from GMAC to Rode dated 06-10-09

58-B. Correspondence from Rode to Homecomings dated 06-08-09 forwarding modification paperwork

58-C. Correspondence from Homecomings to Rode approving and enclosing loan modification

58-D. Rode's signature on loan modification

58-E. Federal Express shipping labels evidencing return of modification documents

59. 04-20-09 account statement from Homecomings

60. 06-18-09 account statement from Homecomings

61. Notice from Harris County Tax Assessor showing refund to Homecomings Financial for overpayment of taxes in 2007 disputed in August of 2008 to Homecomings

62. Transaction History & Notes Provided by Servicer – 2007 to 2010

63. Transaction History & Notes Provided by Servicer – 2008

64. Checks/payments to Servicer

65. IRS Form 1099-C issued in 2009

66. Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of $10,000 payment

67. Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments

68. Correspondence dated 10-01-09 from Uzick to Jungen/GMACM forwarding signed modification

69. Qualified written request dated 07-25-09 from Rode to GMACM

70. Correspondence dated 07-06-09 from Rode to GMACM disputing amount of debt

71. Debt Validation Letter dated 06-10-09 from GMACM to Rode and correspondence from Homecoming/GMACM re: GMACM as servicer

72. Correspondence dated 06-11-09 from Rode to Homecomings forwarding modification agreement, checks for $3,025 and $2,401.87, and Quit Claim Deed signed by Barbara Rode

73. Correspondence dated 07-29-09 from Uzick to Hoecker/Homecomings regarding misapplication of funds & inappropriate miscellaneous charges and late fees

74. Servicer's Transaction history from 09-05-08 to 10-14-08 evidencing misapplied payments and refunds due to Rode

75. Hurricane Ike Disaster Information

76. Chicago Title Master Statement & closing documents dated 03-28-11 re: fire sale of 2204 Catalina due to loss of credit line due to foreclosure notice

77. Rode's Credit report dated 11-23-09 showing delinquency and foreclosure proceedings

78. Farmers Insurance 12-06-08 correspondence regarding damages incurred due to Hurricane Ike

79. IBTS document evidencing actual repair of damages due to Hurricane Ike dated 12-02-10

80. Declaration of Repairs made by Rode dated 02-26-10

81. Evidence of Force-Placed Insurance by Homecomings dated 07-20-08

82. 09-10-08 Federal Register article regarding federal disaster due to Hurricane Ike

83. Fannie Mae Appraisal Report dated 02-12-03 evidencing value of 2301 West Lawther property

84. Correspondence from Texas Coastal Declining Credit Line

85. Correspondence From Farmers Insurance regarding Hurricane Ike Damages

86. Correspondence From IBTS regarding Hurricane Ike Damages

87. Attorneys' Fees Statements and proofs of payment

    87-A: Attorney Uzick's Statement of Services through February 29, 2016

    87-B: March 29, 2016 Trust Account Deposit

    87-C: Proof of payments to Wendy Alison Nora through February, 2016

88. October 2009 Statement Showing Removal of Funds from Escrow Account

89. Closing of IRA Necessitated Due to Breach of Contract

90. Homecomings Statement of 10-20-08 showing receipt of payments held in suspense

91. Printout of Homecomings/GMACM's online transaction history from 09-05-06 to 05-05-08

92. Chase/WAMU printout from 08-08-07 to 08-21-07 showing payment to servicer of $12,728.55 on 08-08-07

93. Homecomings/GMACM's Statement of 07-18-07 evidencing payments and reversals dated 06-27-07, 06-28-07, and 06-29-07

94. Washington Mutual's Statement from 06-21-07 to 07-20-07 showing 06-28-07 payment

95. Washington Mutual's Statement from 07-21-07 to 08-20-07 showing 06-28-07 payment of $12,728.55

96. Donna Fitton Employment Record

    96-A. Produced by Objector on March 7, 2016

    96-B. LinkedIn Profile (public admission) of Donna Fitton (also included in Paatalo Expert Report)

97. Judy Faber Employment Record

    97-A. Produced by Objector on March 7, 2016

    97-B. LinkedIn Profile (public admission) of Judy Faber regarding her employment history

98. Photographs of Claimant's Homestead damaged by Hurricane Ike

99. Photographs of Claimant's Homestead in fully repaired condition

100. Declaration of Kathy Priore and all attachments (Doc. 8452-3)

    100-A: Exhibit A – Note

    100-B: Exhibit B – Deed to Trust

    100-C: Exhibit C – Assignment of Deed of Trust

    100-D: Exhibit D – Letter dated August 28, 2009

100-E: Exhibit E – Letter dated July 20, 2008

100-F: Exhibit F – Letter dated September 24, 2009

100-G: Exhibit G – Servicing Notes

100-H: Exhibit H – Letter dated July 29, 2009

100-I: Exhibit I – Letter dated August 26, 2009

100-J: Exhibit J – Quit Claim Deed

100-K: Exhibit K – Fixed Rate Loan Modification Agreement (signed by Rode only)

100-L: Exhibit L – Fixed Rate Loan Modification Agreement (executed)

100-M: Exhibit M – Letter dated October 29, 2009

100-N: Exhibit N – Letter dated October 30, 2009

100-O: Exhibit O – Payment History

100-P: Exhibit P – Petition

100-Q: Exhibit Q – Answer to Petition

100-R: Exhibit R – Amended Petition

100-S: Exhibit S – Notice of Removal

100-T: Exhibit T – Answer to Amended Petition

100-U: Exhibit U – Scheduling Order

100-V: Exhibit V – Notice of Bankruptcy

100-W: Exhibit W – Dismissal Order

100-X: Exhibit X – Rode Litigation Docket Report

100-Y: Exhibit Y – Request Letters

101. Minnesota Secretary of State Certificate of No Filing by RALI Series 2003-QS12 Trust Minnesota

102. Pooling and Servicing Agreement for the RALI Series 2003-QS12 Trust

103. Prospectus for the RALI Series 2003-QS12 Trust

104. Supplemental Prospectus for the RALI Series 2003-QS12 Trust Ocwen's April 27, 2016 Response to the Qualified Written Request under RESPA and Debt Validation Request under the FDCPA

105. Current appraisal of Homestead (pending)

106. Notice of Substitute Trustee's Sale and Acceleration to Maturity dated 03-11-10

107. Notice of Acceleration, Notice of Substitution of Trustee and Notice of Sale dated June 24, 2016 and received on June 30, 2016

108. Homecomings Production of Documents and all documents produced in Homecomings' Response to Request for Production of Documents (GMACM and Homecomings provided a single set of documents Bates Numbered 1-1050); individual documents are specifically identified below as Exhibits 110-232, by Bates numbers.

109. GMACM Production of Documents and all documents produced in GMACM's Response to Request for Production of Documents (GMACM and Homecomings provided a single set of documents Bates Numbered 1-1050); individual documents are specifically identified below, by Bates numbers.

110. Payment History for the Mortgage Loan account from 05-17-07 to 03-04-13 (Bates 1-7)

111. Loan History (i.e., Servicing Notes) for the Mortgage Loan account from 05-03-07 to 03-12-10 (Bates 8-49)

112. Rescap correspondence of 06-21-13 requesting further information, Rode's reply, & Proof of Claim dated 11-14-12 (Bates 50-52)

113. Rode's First Amended Petition in State Court dated 02-06-12 (Bates 53-64)

114. Nations Direct letter and Homecomings' Modification Approval Letter dated 08-26-09 (Bates 65-68)

115. Fixed Rate Loan Modification Agreement (unsigned) dated 10-01-09 (Bates 69-75)

116. Homecomings' Modification Approval Letter dated 08-26-09 (Bates 76)

117. Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package (Bates 77-79)

118. Correspondence from GMACM to Uzick dated 09-24-09 regarding insurance credit (Bates 80)

119. Quitclaim Deed dated 11-18-08 (Bates 81-83)

120. Correspondence dated 10-01-09 from Uzick to Jungen/GMACM forwarding signed modification (Bates 84-94)

121. Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 95-96)

122. Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 97-98)

123. Notice of Substitute Trustee's Sale dated 03-11-10 (Bates 99-102)

124. Notice of Acceleration of Maturity dated 03-11-10 (Bates 103-105)

125. Correspondence dated 04-06-10 from Uzick to Gamez/Pite Duncan regarding removal of Substitute Trustee's Sale (Bates 106-107)

126. Account history dated 07-14-08 to 02-24-10 (Bates 109-119)

127. Correspondence from Homecomings to Rode dated 09-25-08 regarding refund of $2,459.36 from Harris County (Bates 120)

128. E-Mail from Homecomings to Rode dated 11-05-08 promising to reply to request in 2 days (Bates 121)

129. Application For Tax Refund dated 08-08-08 (Bates 122)

130. Harris County Tax Assessor Statement of 08-07-08 regarding 2301 West Lawther property (Bates 123)

131. Correspondence from Harris County Tax Assessor to Rode regarding refund to Homecomings (Bates 124)

132. Correspondence from Homecomings to Rode dated 09-25-08 regarding refund of $2,459.36 from Harris County (Bates 125)

21

133. Correspondence from Rode to Homecomings dated 09-05-08 requesting confirmation of posting of payment of $2,459.36 (Bates 126)

134. Customer/Track/Loan document dated 08-19-08 regarding overpayment of taxes (Bates 127)

135. Homecomings Transaction History dated 2008 (Bates128-129)

136. Correspondence from GMACM to Rode dated 06-10-09 re: GMACM as servicer (Bates 130)

137. Correspondence from Rode to Homecomings forwarding check for $3,025 and Quit Claim Deed signed by Barbara Rode (Bates 131-132)

138. Correspondence dated 07-06-09 from Rode to GMACM disputing amount of debt (Bates 133-134)

139. Correspondence dated 07-29-09 from Uzick to Hoecker/Homecomings regarding misapplication of funds & inappropriate miscellaneous charges and late fees (Bates 135-136)

140. Correspondence from GMACM to Uzick dated 08-28-09 re: force-placed insurance & payment history (Bates 137-138)

141. Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package (Bates 139-140)

142. Correspondence from Uzick to Jungen/GMACM dated 09-18-09 requesting GMACM apply payment of $3,025 (Bates 141)

143. Correspondence from GMACM to Uzick dated 09-24-09 regarding insurance credit (Bates 142)

144. Correspondence dated 10-01-09 from Uzick to Jungen/GMACM forwarding signed modification (Bates 143-144)

145. Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 145)

146. Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of $10,000 payment (Bates 146-147)

147. First Page of Notice of Substitute Trustee's Sale dated 03-11-10 (Bates 148)

148. Correspondence from Uzick to Gerhardt/Bradley, Arant dated 02-06-12 forwarding Amended Petition and discussing discovery (Bates 149-150)

149. Notice of Rescission of Acceleration (undated) (Bates 151)

150. RESCAP correspondence of 06-21-13 requesting further information, Rode's reply, & Proof of Claim dated 11-14-12 (Bates 152-154)

151. Rode's First Amended Petition in State Court dated 02-06-12 (Bates 155-166)

152. Nations Direct letter and Homecomings' Modification Approval Letter dated 08-26-09 (Bates 167-170)

153. Fixed Rate Loan Modification Agreement (unsigned) dated 10-01-09 (Bates 171-177)

154. Homecomings' Modification Approval Letter dated 08-26-09 (Bates 178)

155. Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package (Bates 179-181)

156. Correspondence from GMACM to Uzick dated 09-24-09 regarding insurance credit (Bates 182)

157. Quitclaim Deed dated 11-18-08 (Bates 183-185)

158. Correspondence dated 10-01-09 from Uzick to Jungen/GMACM forwarding signed modification (Bates 186-189)

159. Nations Direct letter and Homecomings' Modification Approval Letter dated 08-26-09 (Bates 190-192)

160. Fixed Rate Loan Modification Agreement (unsigned) dated 10-01-09 (Bates 193-196)

161. Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 197-198)

162. Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of $10,000 payment (Bates 199-200)

163. Notice of Substitute Trustee's Sale and last page of Notice of Acceleration to Maturity dated 03-11-10 (Bates 201-204)

164. Correspondence from Unknown to Rode with no date forwarding Notice of Acceleration of Maturity of 03-11-10 (Bates 205)

165. Notice of Acceleration of Maturity dated 03-11-10 (missing last page) (Bates 206-207)

166. Correspondence dated 04-06-10 from Uzick to Gamez/Pite Duncan regarding removal of Substitute Trustee's Sale (Bates 208-209)

167. Account history dated 07-14-08 to 02-24-10 (Bates 211-221)

168. Correspondence from Homecomings to Rode dated 09-25-08 regarding refund of $2,459.36 from Harris County (Bates 222)

169. E-Mail from Homecomings to Rode dated 11-05-08 promising to reply to request in 2 days (Bates 223)

170. Application For Tax Refund dated 08-08-08 (Bates 224)

171. Harris County Tax Assessor Statement of 08-07-08 regarding 2301 West Lawther property (Bates 225)

172. Correspondence from Harris County Tax Assessor to Rode regarding refund to Homecomings (Bates 226)

173. Correspondence from Homecomings to Rode dated 09-25-08 regarding refund of $2,459.36 from Harris County (Bates 227)

174. Correspondence from Rode to Homecomings dated 09-05-08 requesting confirmation of posting of payment of $2,459.36 (Bates 228)

175. Customer/Track/Loan document dated 08-19-08 regarding overpayment of taxes (Bates 229)

176. Homecomings Transaction History dated 2008 (Bates 230-231)

177. Correspondence from GMACM to Rode dated 06-10-09 re: GMACM as servicer (Bates 232)

178. Correspondence from Rode to Homecomings forwarding check for $3,025 and Quit Claim Deed signed by Barbara Rode (Bates 233-234)

179. Correspondence dated 07-06-09 from Rode to GMACM disputing amount of debt (Bates 235-236)

180. Correspondence dated 07-29-09 from Uzick to Hoecker/Homecomings regarding misapplication of funds & inappropriate miscellaneous charges and late fees (Bates 237-238)

181. Correspondence from GMACM to Uzick dated 08-28-09 re: force-placed insurance & payment history (Bates 239-240)

182. Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package (Bates 241-242)

183. Correspondence from Uzick to Jungen/GMACM dated 09-18-09 requesting GMACM apply payment of $3,025 (Bates 243)

184. Correspondence from GMACM to Uzick dated 09-24-09 regarding insurance credit (Bates 244)

185. Correspondence dated 10-01-09 from Uzick to Jungen/GMACM forwarding signed modification (Bates 245-246)

186. Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 247)

187. Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of $10,000 payment (Bates 248-249)

188. First Page of Notice of Substitute Trustee's Sale dated 03-11-10 (Bates 250)

189. Correspondence from Uzick to Gerhardt/BradleyArant dated 02-06-12 forwarding Amended Petition and discussing discovery (Bates 251-252)

190. Notice of Rescission of Acceleration (undated) (Bates 253)

191. Third Party Authorization and Agreement to Release regarding Uzick dated 08-28-09 (Bates 254)

192. Correspondence dated 06-11-09 from Rode to Homecomings forwarding modification agreement, checks for $3,025 and $2,401.87, and Quit Claim Deed signed by Barbara Rode (Bates 255-256)

193. Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 257-258)

194. Correspondence dated 07-29-09 from Uzick to Hoecker/Homecomings regarding misapplication of funds & inappropriate miscellaneous charges and late fees (Bates 259-260)

195. Correspondence from Uzick to Jungen/GMACM dated 09-18-09 requesting GMACM apply payment of $3,025 with transaction history (Bates 261-264)

196. Correspondence from Rode to Homecomings forwarding check for $3,025 and Quit Claim Deed signed by Barbara Rode (Bates 265-270)

197. Voided Fixed Rate Loan Modification Agreement signed by Rode dated 06-08-09 (Bates 271-273)

198. Quitclaim Deed dated 11-18-08 (Bates 274-276)

199. Correspondence dated 06-11-09 from Rode to Homecomings forwarding modification agreement, checks for $3,025 and $2,401.87, and Quit Claim Deed signed by Barbara Rode (Bates 277-278)

200. Voided Fixed Rate Loan Modification Agreement signed by Rode dated 06-08-09 (Bates 279-281)

201. Quitclaim Deed dated 11-18-08 (Bates 282-283)

202. Fixed Rate Loan Modification Agreement signed by Rode on 10-01-09 & by Homecomings on 10-07-09 (Bates 284-287)

203. Correspondence from Homecomings to Rode regarding modification offer dated 06-25-07 (Bates 288)

204. Correspondence from Homecomings to Rode regarding modification offer dated 05-17-07 (Bates 289)

205. Correspondence from GMACM to Uzick dated 09-24-09 regarding insurance credit (Bates 290)

206. Correspondence from Homecomings to Rode dated 12-07-05 requesting financials (Bates 291-295)

207. Correspondence from GMACM to Uzick dated 08-28-09 re: force-placed insurance & payment history (Bates 296-297)

208. Correspondence dated 07-29-09 from Uzick to Hoecker/Homecomings regarding misapplication of funds & inappropriate miscellaneous charges and late fees (Bates 298-299)

209. Correspondence from Homecomings to Rode regarding modification offer dated 05-29-09 (Bates 300-301)

210. Correspondence from GMACM to Rode dated 01-18-13 approving modification (Bates 302-303)

211. Non-HAMP Loan Modification Agreement (unsigned) (Bates 304-308)

212. Correspondence from Homecomings to Rode dated 08-15-06 regarding non-payment (Bates 309-310)

213. Correspondence from Homecomings to Rode offering programs to assist dated 01-05-07 (Bates 311)

214. Correspondence from Homecomings to Rode offering program to assist dated 08-04-06 (Bates 312)

215. Correspondence from Homecomings to Rode offering program to assist dated 08-25-06 (Bates 313)

216. Correspondence from Homecomings to Rode regarding modification offer dated 12-02-05 (Bates 314)

217. Correspondence from Homecomings to Rode rescinding modification offer dated 04-30-07 (Bates 315)

218. Correspondence from Homecomings to Rode rescinding modification offer dated 01-16-07 (Bates 316-317)

219. Correspondence dated 04-11-08 from Unknown to Rode of default demand (Bates 318-319)

220. Notice of Objection of the Rescap Borrower Claims Trust to Claim Numbers 5610 and 5612 Filed by Richard D. Rode dated 04-09-15 (Bates 320-322)

221. Objection of the Rescap Borrower Claims Trust to Claim Numbers 5610 and 5612 Filed by Richard D. Rode dated 04-09-15 with exhibits (Bates 323-651)

222. Copy of the "Original" Note (Bates 652-654)

223. Undated Allonge (Bates 655)

224. Deed of Trust signed 03-19-03 (Bates 656-666)

225. Renewal and Extension Exhibit to Deed of Trust dated 03-18-03 (Bates 667)

226. Undated Planned Unit Development Rider (Bates 668)

227. Assignment of Deed of Trust signed by Donna Fitton on 04-16-10 (Bates 669-670)

228. Judy Faber employment information (Bates 671)

229. Seller/Servicer Contract dated 09-15-99 between Residential Funding and Homecomings Financial (Bates 672-684)

230. Seller/Servicer Contract dated 11-24-92 between Residential Funding and GMACM (Bates 685-687)

231. GMAC-RFC Servicer Guide dated 11-01-07 (Bates 688-1049)

232. Donna Fitton employment information (Bates 1050)

**B.    Trust's Exhibits**

1.    Note, dated March 18, 2003

2.    Deed of Trust, dated March 18, 2003

3.    Assignment of Deed of Trust dated April 16, 2010

4.    Loan History (i.e., Servicing Notes) for the Mortgage Loan account from May 3, 2007 through March 12, 2010

5.    Payment History for the Mortgage Loan account from May 17, 2007 through March 4, 2013

6.    Modification Approval Letter, dated August 26, 2009

7.    Fixed Rate Loan Modification Agreement, dated as of October 1, 2009

8.    GMAC RFC Servicer Guide effective November 1, 2007

9.    Letter from Claimant's counsel, dated October 27, 2009

10.    Letter from Claimant's counsel, dated October 30, 2009

11.    Claimant's Responses to Trust's Request for Admissions, dated December 29, 2015

12.    Claimant's Responses to the Trust's Request for Interrogatories, dated January 12, 2016

13. Claimant's Responses to the Trust's Document Requests, dated January 13, 2016

No exhibit not listed by Claimant or the Trust may be used at trial except (a) for cross-examination purposes, (b) for rebuttal, or (c) if good cause for its exclusion from the pretrial order is shown.

## VII.   STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

### A.   Stipulations

The Parties stipulate to the authenticity of the following Exhibits:

1. Homecomings Responses to Requests for Admission

2. Homecomings Responses to Interrogatories

3. Homecomings Responses to Requests for Production of Documents (excluding documents produced)

4. GMACM Responses to Requests for Admission

5. GMACM Responses to Interrogatories

6. GMACM Responses to Request for Production of Documents (excluding documents produced)

7. Claimant's Responses to Trust's Request for Admissions, dated December 29, 2015

8. Claimant's Responses to the Trust's Request for Interrogatories, dated January 12, 2016

9. Claimant's Responses to the Trust's Document Requests, dated January 13, 2016 (excluding documents produced)

10. Loan History (i.e., Servicing Notes) for the Mortgage Loan account from May 3, 2007 through March 12, 2010

11. Fixed Rate Loan Modification Agreement, dated as of October 1, 2009

12. Payment History for the Mortgage Loan account from May 17, 2007 through March 4, 2013

The Parties stipulate to the admissibility of the following Exhibits:

1. Homecomings Responses to Requests for Admission

2. Homecomings Responses to Interrogatories

3.    Homecomings Responses to Requests for Production of Documents (excluding documents produced)

4.    GMACM Responses to Requests for Admission

5.    GMACM Responses to Interrogatories

6.    GMACM Responses to Request for Production of Documents (excluding documents produced)

7.    Claimant's Responses to Trust's Request for Admissions, dated December 29, 2015

8.    Claimant's Responses to the Trust's Request for Interrogatories, dated January 12, 2016

9.    Claimant's Responses to the Trust's Document Requests, dated January 13, 2016 (excluding documents produced)

10.   Loan History (i.e., Servicing Notes) for the Mortgage Loan account from May 3, 2007 through March 12, 2010

11.   Payment History for the Mortgage Loan account from May 17, 2007 through March 4, 2013

12.   Fixed Rate Loan Modification Agreement, dated as of October 1, 2009

**B.    Claimant's Objections**

1.    The copy of the Note has not been authenticated and the "original" has not been examined.

2.    The "servicing notes" are not a complete record of Claimant's payments.  His payments to Homecomings from the date of the first payment to May 2, 2007 have not been provided.

3.    The Objector's proffered version of the "servicing notes" may be used by Claimant to establish events which are admitted therein but are not reliable because nearly four (4) years of records have not been provided.

**C.    Trust's Objections**

1.    The Trust objects to the "Expert Report of Bill Paatalo, his direct testimony by Declaration and all documents attached thereto" (Ex. 1) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

2.    The Trust objects to the "Expert Report of Robert M. Adams and all documents

attached thereto" (Ex. 2) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.  The Trust also objects to the admission of the exhibits referenced in the "Expert Report of Robert M. Adams" on the basis that the exhibits were not attached to the report when it was provided to the Trust.

3.    The Trust objects to the "Quit Claim Deed" (Ex. 8) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

4.    The Trust objects to "Assignment of Deed of Trust, April 16, 2010 by Donna Fitton" (Ex. 9) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

5.    The Trust objects to "Correspondence from Jeffrey H. Uzick to GMAC" (Ex. 10) because it is not sufficiently specific regarding which of the numerous letters between those parties the Claimant wishes to introduce.  The Trust also objects to the "Correspondence from Jeffrey H. Uzick to GMAC" because it is duplicative of other exhibits offered by the Claimant.

6.    The Trust objects to the "Transaction History from GMACM" (Ex. 11) because it is duplicative of other exhibits offered by the Claimant.

7.    The Trust objects to "Payment sent for $3,026 in January of 2009" (Ex. 12) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

8.    The Trust objects to "Correspondence from Homecomings Financial" (Ex. 13) because it is not sufficiently specific regarding which of the numerous documents sent by Homecomings the Claimant wishes to introduce.   The Trust also objects to the "Correspondence from Homecomings Financial" because it is duplicative of other exhibits offered by the Claimant.

9.    The Trust objects to the "Proposed Loan Modification Agreement of "10-01-09" (Ex. 14) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

10.   The Trust objects to the "Qualified Written Response of 06-08-09 from Rich Rode disputing totals and credits" (Ex. 15) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

11.   The Trust objects to the "Proposed Loan Modification Agreement of 04-01-09" (Ex. 16) because it is not relevant as required by Fed. R. Evid. 401 and 402, and

even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

12.    The Trust objects to "Correspondence from GMACM regarding insurance credit dated 09-24-09" (Ex. 17) because it is duplicative of other exhibits offered by the Claimant.

13.    The Trust objects to the "Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package" (Ex. 18) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

14.    The Trust objects to "Correspondence from GMACM to Uzick regarding insurance credit dated 09-24-09" (Ex. 19) because it is duplicative of other exhibits offered by the Claimant.

15.    The Trust objects to "Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package" (Ex. 20) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.  The Trust also objects to "Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package" (Ex. 20) because it is duplicative of other exhibits offered by the Claimant.

16.    The Trust objects to "Correspondence from Uzick to Jungen/GMACM dated 09-18-09 requesting GMACM apply payment of $3,025" (Ex. 21) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

17.    The Trust objects to "Correspondence from Uzick to Hoecker/Homecomings dated 07-29-09 re: inappropriate charges" (Ex. 22) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

18.    The Trust objects to "Correspondence from GMACM to Uzick dated 08-28-09 re: force-placed insurance & payment history" (Ex. 23) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

19.    The Trust objects to "Correspondence from Homecomings to Rode regarding modification offer dated 12-02-05" (Ex. 24) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

20.    The Trust objects to "Correspondence from Homecomings to Rode regarding

modification offer dated 06-25-07" (Ex. 25) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

21.   The Trust objects to "Correspondence from Homecomings to Rode regarding modification offer dated 05-17-07" (Ex. 26) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

22.   The Trust objects to "Correspondence from Homecomings to Rode rescinding modification offer dated 04-30-07" (Ex. 27) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

23.   The Trust objects to "Correspondence from Homecomings to Rode offering programs to assist dated 01-05-07" (Ex. 28) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

24.   The Trust objects to "Correspondence from Homecomings to Rode offering programs to assist dated 08-25-06" (Ex. 29) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

25.   The Trust objects to "Correspondence from Homecomings to Rode offering program to assist dated 08-04-06" (Ex. 30) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

26.   The Trust objects to "Correspondence from Homecomings to Rode regarding modification offer dated 05-29-09" (Ex. 31) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

27.   The Trust objects to "Correspondence from Homecomings to Rode rescinding modification offer dated 01-16-07" (Ex. 32) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

28.   The Trust objects to "Correspondence from Homecomings to Rode rescinding modification offer dated 08-15-06" (Ex. 33) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

29.   The Trust objects to "Escrow Analysis Statements dated 08-25-10" (Ex. 34) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

30.    The Trust objects to "Correspondence dated 02-16-09 from Homecomings to
       Rode returning payment of $3,025" (Ex. 35) because it is not relevant as
       required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value
       is outweighed the danger of waste of time under Fed. R. Evid. 403.

31.    The Trust objects to "Correspondence dated 07-17-09 from Homecomings to
       Rode returning payment of $3,100" (Ex. 36) because it is not relevant as
       required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value
       is outweighed the danger of waste of time under Fed. R. Evid. 403.

32.    The Trust objects to "Correspondence dated 08-22-08 from Homecomings to
       Rode accepting repayment program" (Ex. 37) because it is not relevant as
       required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value
       is outweighed the danger of waste of time under Fed. R. Evid. 403.

33.    The Trust objects to "Correspondence dated 08-19-08 from Homecomings to
       Rode re: new payment amount of $4,001.67" (Ex. 38) because it is not relevant
       as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative
       value is outweighed the danger of waste of time under Fed. R. Evid. 403.

34.    The Trust objects to "Correspondence dated 08-28-09 from GMACM re: release
       of information to third-party" (Ex. 39) because it is not relevant as required by
       Fed. R. Evid. 401 and 402, and even if relevant, its probative value is
       outweighed the danger of waste of time under Fed. R. Evid. 403.

35.    The Trust objects to "Correspondence dated 09-02-09 from GMACM re:
       authorization to release information to Uzick" (Ex. 40) because it is not relevant
       as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative
       value is outweighed the danger of waste of time under Fed. R. Evid. 403.

36.    The Trust objects to "Correspondence dated 05-07-07 from Unknown to Rode
       of default demand" (Ex. 41) because it is not relevant as required by Fed. R.
       Evid. 401 and 402, and even if relevant, its probative value is outweighed the
       danger of waste of time under Fed. R. Evid. 403.

37.    The Trust objects to "Correspondence dated 06-04-07 from Unknown to Rode
       of default demand" (Ex. 42) because it is not relevant as required by Fed. R.
       Evid. 401 and 402, and even if relevant, its probative value is outweighed the
       danger of waste of time under Fed. R. Evid. 403.

38.    The Trust objects to "Correspondence dated 07-02-07 from Unknown to Rode
       of default demand" (Ex. 43) because it is not relevant as required by Fed. R.
       Evid. 401 and 402, and even if relevant, its probative value is outweighed the
       danger of waste of time under Fed. R. Evid. 403.

39.    The Trust objects to "Correspondence dated 05-02-08 from Unknown to Rode
       of default demand" (Ex. 44) because it is not relevant as required by Fed. R.
       Evid. 401 and 402, and even if relevant, its probative value is outweighed the

danger of waste of time under Fed. R. Evid. 403.

40.    The Trust objects to "Correspondence dated 06-17-08 from Unknown to Rode of default demand" (Ex. 45) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

41.    The Trust objects to "Correspondence dated 07-14-08 from Unknown to Rode of default demand" (Ex. 46) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

42.    The Trust objects to "Correspondence dated 12-12-08 from Unknown to Rode of default demand" (Ex. 47) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

43.    The Trust objects to "Correspondence dated 07-16-09 from Unknown to Rode of default demand" (Ex. 48) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

44.    The Trust objects to "Correspondence dated 08-01-07 from Unknown to Rode of default demand" (Ex. 49) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

45.    The Trust objects to "Correspondence dated 08-13-08 from Unknown to Rode of default demand" (Ex. 50) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

46.    The Trust objects to "Correspondence dated 04-11-08 from Unknown to Rode of default demand" (Ex. 51) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

47.    The Trust objects to "Correspondence dated 05-12-08 from Unknown to Rode of default demand" (Ex. 52) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

48.    The Trust objects to "Correspondence dated 07-17-09 from Unknown to Rode re: current principal balance" (Ex. 53) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

49.    The Trust objects to "Escrow Analysis Statements" (Ex. 55) because it is not

relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.  The Trust also objects to "Escrow Analysis Statements" (Ex. 55) because it is duplicative of other exhibits offered by the Claimant.

50.   The Trust objects to "Correspondence dated 02-16-09 from Homecomings to Rode returning payment of $3,025" (Ex. 56) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.  The Trust also objects to "Correspondence dated 02-16-09 from Homecomings to Rode returning payment of $3,025" (Ex. 56) because it is duplicative of other exhibits offered by the Claimant.

51.   The Trust objects to "Transaction History from Homecomings Financial" (Ex. 57) because it is duplicative of other exhibits offered by the Claimant.

52.   The Trust objects to "Qualified Written Response from Rich Rode of 07-06-09 again disputing totals and credits, including attachments" (Ex. 58, and all subparts) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.  The Trust also objects to "Qualified Written Response from Rich Rode of 07-06-09 again disputing totals and credits, including attachments" (Ex. 58 and all subparts) because it is duplicative of other exhibits offered by the Claimant.

53.   The Trust objects to "04-20-09 account statement from Homecomings" (Ex. 59) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.  The Trust also objects to "04-20-09 account statement from Homecomings" (Ex. 59) because it is duplicative of other exhibits offered by the Claimant.

54.   The Trust objects to "06-18-09 account statement from Homecomings" (Ex. 60) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.  The Trust also objects to "06-18-09 account statement from Homecomings" (Ex. 60) because it is duplicative of other exhibits offered by the Claimant.

55.   The Trust objects to "Notice from Harris County Tax Assessor showing refund to Homecomings Financial for overpayment of taxes in 2007 disputed in August of 2008 to Homecomings" (Ex. 61) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

56.   The Trust objects to "Transaction History & Notes Provided by Servicer – 2007 to 2010" (Ex. 62) because it is duplicative of other exhibits offered by the

Claimant.

57.    The Trust objects to "Transaction History & Notes Provided by Servicer –
2008" (Ex. 63) because it is duplicative of other exhibits offered by the
Claimant.

58.    The Trust objects to "Checks/payments to Servicer" (Ex. 64) because it is not
sufficiently specific regarding which of the numerous documents produced the
Claimant wishes to introduce.  The Trust also objects to "Checks/payments to
Servicer" (Ex. 64) because it is duplicative of other exhibits offered by the
Claimant.

59.    The Trust objects to "Qualified written request dated 07-25-09 from Rode to
GMACM" (Ex. 69) because it is not relevant as required by Fed. R. Evid. 401
and 402, and even if relevant, its probative value is outweighed the danger of
waste of time under Fed. R. Evid. 403.

60.    The Trust objects to "Correspondence dated 07-06-09 from Rode to GMACM
disputing amount of debt" (Ex. 70) because it is not relevant as required by Fed.
R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the
danger of waste of time under Fed. R. Evid. 403.

61.    The Trust objects to "Debt Validation Letter dated 06-10-09 from GMACM to
Rode and correspondence from Homecoming/GMACM re: GMACM as
servicer" (Ex. 71) because it is not sufficiently specific regarding which of the
documents potentially described the Claimant wishes to introduce.  The Trust
also objects to "Debt Validation Letter dated 06-10-09 from GMACM to Rode
and correspondence from Homecoming/GMACM re: GMACM as servicer" (Ex.
71) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even
if relevant, its probative value is outweighed the danger of waste of time under
Fed. R. Evid. 403.

62.    The Trust objects to "Correspondence dated 06-11-09 from Rode to
Homecomings forwarding modification agreement, checks for $3,025 and
$2,401.87, and Quit Claim Deed signed by Barbara Rode" (Ex. 72) because it is
not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its
probative value is outweighed the danger of waste of time under Fed. R. Evid.
403.

63.    The Trust objects to "Correspondence dated 07-29-09 from Uzick to
Hoecker/Homecomings regarding misapplication of funds & inappropriate
miscellaneous charges and late fees" (Ex. 73) because it is not relevant as
required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value
is outweighed the danger of waste of time under Fed. R. Evid. 403.

64.    The Trust objects to "Servicer's Transaction history from 09-05-08 to 10-14-08
evidencing misapplied payments and refunds due to Rode" (Ex. 74) because it is
duplicative of other exhibits offered by the Claimant.

65. The Trust objects to Hurricane Ike Disaster Information" (Ex. 75) because it is not sufficiently specific regarding which of the documents potentially described the Claimant wishes to introduce. The Trust also objects to "Hurricane Ike Disaster Information" (Ex. 75) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

66. The Trust objects to "Chicago Title Master Statement & closing documents dated 03-28-11 re: fire sale of 2204 Catalina due to loss of credit line due to foreclosure notice" (Ex. 76) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

67. The Trust objects to "Rode's Credit report dated 11-23-09 showing delinquency and foreclosure proceedings" (Ex. 77) because it is duplicative of other exhibits offered by the Claimant.

68. The Trust objects to "Farmers Insurance 12-06-08 correspondence regarding damages incurred due to Hurricane Ike" (Ex. 78) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

69. The Trust objects to "IBTS document evidencing actual repair of damages due to Hurricane Ike dated 12-02-10" (Ex. 79) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

70. The Trust objects to "Declaration of Repairs made by Rode dated 02-26-10" (Ex. 80) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

71. The Trust objects to "Evidence of Force-Placed Insurance by Homecomings dated 07-20-08" (Ex. 81) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

72. The Trust objects to "09-10-08 Federal Register article regarding federal disaster due to Hurricane Ike" (Ex. 82) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

73. The Trust objects to "Fannie Mae Appraisal Report dated 02-12-03 evidencing value of 2301 West Lawther property" (Ex. 83) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

74. The Trust objects to "Correspondence from Texas Coastal Declining Credit

Line" (Ex. 84) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

75.   The Trust objects to "Correspondence From Farmers Insurance regarding Hurricane Ike Damages" (Ex. 85) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Correspondence From Farmers Insurance regarding Hurricane Ike Damages" (Ex. 85) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

76.   The Trust objects to the "Proof of payments to Wendy Alison Nora through February, 2016" (Ex. 87-C) because it was not timely provided to the Trust in response to its request for production of documents.

77.   The Trust objects to the "Closing of IRA Necessitated Due to Breach of Contract" (Ex. 89) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

78.   The Trust objects to the "Homecomings Statement of 10-20-08 showing receipt of payments held in suspense" (Ex. 90) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

79.   The Trust objects to the "Printout of Homecomings/GMACM's online transaction history from 09-05-06 to 05-05-08" (Ex. 91) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

80.   The Trust objects to the "Chase/WAMU printout from 08-08-07 to 08-21-07 showing payment to servicer of $12,728.55 on 08-08-07" (Ex. 92) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

81.   The Trust objects to the "Homecomings/GMACM's Statement of 07-18-07 evidencing payments and reversals dated 06-27-07, 06-28-07, and 06-29-07" (Ex. 93) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

82.   The Trust objects to the "Washington Mutual's Statement from 06-21-07 to 07-20-07 showing 06-28-07 payment" (Ex. 94) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

83.    The Trust objects to the "Washington Mutual's Statement from 07-21-07 to 08-20-07 showing 06-28-07 payment of $12,728.55" (Ex. 95) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

84.    The Trust objects to "Donna Fitton Employment Record" (Ex. 96, including subparts) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.  The Trust also objects to "Donna Fitton Employment Record" (Ex. 96, including subparts) because it is duplicative of other exhibits offered by the Claimant.

85.    The Trust objects to "Judy Faber Employment Record" (Ex. 97, including subparts) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.  The Trust also objects to "Judy Faber Employment Record" (Ex. 97, including subparts) because it is duplicative of other exhibits offered by the Claimant.

86.    The Trust objects to the "Photographs of Claimant's Homestead damaged by Hurricane Ike" (Ex. 98) because it was not timely provided to the Trust in response to its request for production of documents.  The Trust also objects to the "Photographs of Claimant's Homestead damaged by Hurricane Ike" (Ex. 98) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

87.    The Trust objects to the "Photographs of Claimant's Homestead in fully repaired condition" (Ex. 99) because it was not timely provided to the Trust in response to its request for production of documents.  The Trust also objects to the "Photographs of Claimant's Homestead in fully repaired condition" (Ex. 99) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

88.    The Trust objects to the "Minnesota Secretary of State Certificate of No Filing by RALI Series 2003-QS12 Trust Minnesota" (Ex. 101) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

89.    The Trust objects to the "Pooling and Servicing Agreement for the RALI Series 2003-QS12 Trust" (Ex. 102) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

90.  The Trust objects to the "Prospectus for the RALI Series 2003-QS12 Trust" (Ex. 103) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

91.  The Trust objects to the "Supplemental Prospectus for the RALI Series 2003-QS12 Trust" (Ex. 104) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

92.  The Trust objects to the "Current appraisal of Homestead (pending)" (Ex. 105) because it was not timely provided to the Trust in response to its request for production of documents (and has not yet been produced). The Trust also objects to the "Current appraisal of Homestead (pending)" (Ex. 105) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

93.  The Trust objects to the "Notice of Substitute Trustee's Sale and Acceleration to Maturity dated 03-11-10" (Ex. 106) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

94.  The Trust objects to the "Notice of Acceleration, Notice of Substitution of Trustee and Notice of Sale dated June 24, 2016 and received on June 30, 2016" (Ex. 107) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

95.  The Trust objects to "Homecomings Production of Documents and all documents produced  in Homecomings' Response to Request for Production of Documents" (Ex. 108) because it is not sufficiently specific regarding which of the numerous documents produced the Claimant wishes to introduce. The Trust also objects to "Homecomings Production of Documents and all documents produced  in Homecomings' Response to Request for Production of Documents" (Ex. 108) because it is duplicative of other exhibits offered by the Claimant.

96.  The Trust objects to "GMACM Production of Documents and all documents produced in GMACM's Response to Request for Production of Documents" (Ex. 109) because it is not sufficiently specific regarding which of the numerous documents produced the Claimant wishes to introduce. The Trust also objects to "GMACM Production of Documents and all documents produced in GMACM's Response to Request for Production of Documents" (Ex. 109) because it is duplicative of other exhibits offered by the Claimant.

97.  The Trust objects to "Payment History for the Mortgage Loan account from 05-17-07 to 03-04-13 (Bates 1-7)" (Ex. 110) because it is duplicative of other

exhibits offered by the Claimant.

98.   The Trust objects to "Loan History (i.e., Servicing Notes) for the Mortgage Loan account from 05-03-07 to 03-12-10 (Bates 8-49)" (Ex. 111) because it is duplicative of other exhibits offered by the Claimant.

99.   The Trust objects to "Rescap correspondence of 06-21-13 requesting further information, Rode's reply, & Proof of Claim dated 11-14-12 (Bates 50-52)" (Ex. 112) because it is not sufficiently specific regarding which of the several documents described the Claimant wishes to introduce.  The Trust also objects to "Rescap correspondence of 06-21-13 requesting further information, Rode's reply, & Proof of Claim dated 11-14-12 (Bates 50-52)" (Ex. 112) because portions of it are duplicative of other exhibits offered by the Claimant.

100.  The Trust objects to "Rode's First Amended Petition in State Court dated 02-06-12 (Bates 53-64)" (Ex. 113) because it is duplicative of other exhibits offered by the Claimant.

101.  The Trust objects to "Nations Direct letter and Homecomings' Modification Approval Letter dated 08-26-09 (Bates 65-68)" (Ex. 114) because it is duplicative of other exhibits offered by the Claimant.

102.  The Trust objects to "Fixed Rate Loan Modification Agreement (unsigned) dated 10-01-09 (Bates 69-75)" (Ex. 115) because it is duplicative of other exhibits offered by the Claimant.

103.  The Trust objects to "Homecomings' Modification Approval Letter dated 08-26-09 (Bates 76)" (Ex. 116) because it is duplicative of other exhibits offered by the Claimant.

104.  The Trust objects to "Correspondence from GMACM to Uzick dated 09-24-09 regarding insurance credit (Bates 80)" (Ex. 118) because it is duplicative of other exhibits offered by the Claimant.

105.  The Trust objects to "Quitclaim Deed dated 11-18-08 (Bates 81-83)" (Ex. 119) because it is duplicative of other exhibits offered by the Claimant.

106.  The Trust objects to "Correspondence dated 10-01-09 from Uzick to Jungen/GMACM forwarding signed modification (Bates 84-94)" (Ex. 120) because it is duplicative of other exhibits offered by the Claimant.

107.  The Trust objects to "Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 95-96)" (Ex. 121) because it is duplicative of other exhibits offered by the Claimant.

108.  The Trust objects to "Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and

improper application of payments (Bates 97-98)" (Ex. 122) because it is duplicative of other exhibits offered by the Claimant.

109. The Trust objects to "Notice of Substitute Trustee's Sale dated 03-11-10 (Bates 99-102)" (Ex. 123) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Notice of Substitute Trustee's Sale dated 03-11-10 (Bates 99-102)" (Ex. 123) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

110. The Trust objects to "Notice of Acceleration of Maturity dated 03-11-10 (Bates 103-105)" (Ex. 124) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Notice of Acceleration of Maturity dated 03-11-10 (Bates 103-105)" (Ex. 124) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

111. The Trust objects to "Correspondence dated 04-06-10 from Uzick to Gamez/Pite Duncan regarding removal of Substitute Trustee's Sale (Bates 106-107)" (Ex. 125) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence dated 04-06-10 from Uzick to Gamez/Pite Duncan regarding removal of Substitute Trustee's Sale (Bates 106-107)" (Ex. 125) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

112. The Trust objects to "Account history dated 07-14-08 to 02-24-10 (Bates 109-119)" (Ex. 126) because it is duplicative of other exhibits offered by the Claimant.

113. The Trust objects to "Correspondence from Homecomings to Rode dated 09-25-08 regarding refund of $2,459.36 from Harris County (Bates 120)" (Ex. 127) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence from Homecomings to Rode dated 09-25-08 regarding refund of $2,459.36 from Harris County (Bates 120)" (Ex. 127) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

114. The Trust objects to "E-Mail from Homecomings to Rode dated 11-05-08 promising to reply to request in 2 days (Bates 121)" (Ex. 128) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "E-Mail from Homecomings to Rode dated 11-05-08 promising to reply to request in 2 days (Bates 121)" (Ex. 128) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

115. The Trust objects to "Application For Tax Refund dated 08-08-08 (Bates 122)"
(Ex. 129) because it is not relevant as required by Fed. R. Evid. 401 and 402,
and even if relevant, its probative value is outweighed the danger of waste of
time under Fed. R. Evid. 403.

116. The Trust objects to "Harris County Tax Assessor Statement of 08-07-08
regarding 2301 West Lawther property (Bates 123)" (Ex. 130) because it is not
relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its
probative value is outweighed the danger of waste of time under Fed. R. Evid.
403.

117. The Trust objects to "Correspondence from Harris County Tax Assessor to Rode
regarding refund to Homecomings (Bates 124)" (Ex. 131) because it is not
relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its
probative value is outweighed the danger of waste of time under Fed. R. Evid.
403.

118. The Trust objects to "Correspondence from Homecomings to Rode dated 09-25-
08 regarding refund of $2,459.36 from Harris County (Bates 125)" (Ex. 132)
because it is duplicative of other exhibits offered by the Claimant.  The Trust
also objects to "Correspondence from Homecomings to Rode dated 09-25-08
regarding refund of $2,459.36 from Harris County (Bates 125)" (Ex. 132)
because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if
relevant, its probative value is outweighed the danger of waste of time under
Fed. R. Evid. 403.

119. The Trust objects to "Correspondence from Rode to Homecomings dated 09-05-
08 requesting confirmation of posting of payment of $2,459.36 (Bates 126)"
(Ex. 133) because it is duplicative of other exhibits offered by the Claimant.
The Trust also objects to "Correspondence from Rode to Homecomings dated
09-05-08 requesting confirmation of posting of payment of $2,459.36 (Bates
126)" (Ex. 133) because it is not relevant as required by Fed. R. Evid. 401 and
402, and even if relevant, its probative value is outweighed the danger of waste
of time under Fed. R. Evid. 403.

120. The Trust objects to "Customer/Track/Loan document dated 08-19-08 regarding
overpayment of taxes (Bates 127)" (Ex. 134) because it is not relevant as
required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value
is outweighed the danger of waste of time under Fed. R. Evid. 403.

121. The Trust objects to "Homecomings Transaction History dated 2008 (Bates128-
129)" (Ex. 135) because it is duplicative of other exhibits offered by the
Claimant.

122. The Trust objects to "Correspondence from GMACM to Rode dated 06-10-09
re: GMACM as servicer (Bates 130)" (Ex. 136) because it is duplicative of other
exhibits offered by the Claimant.  The Trust also objects to "Correspondence

from GMACM to Rode dated 06-10-09 re: GMACM as servicer (Bates 130)"
(Ex. 136) because it is not relevant as required by Fed. R. Evid. 401 and 402,
and even if relevant, its probative value is outweighed the danger of waste of
time under Fed. R. Evid. 403.

123.    The Trust objects to "Correspondence from Rode to Homecomings forwarding
check for $3,025 and Quit Claim Deed signed by Barbara Rode (Bates 131-
132)" (Ex. 137) because it is duplicative of other exhibits offered by the
Claimant.

124.    The Trust objects to "Correspondence dated 07-06-09 from Rode to GMACM
disputing amount of debt (Bates 133-134)" (Ex. 138) because it is duplicative of
other exhibits offered by the Claimant.  The Trust also objects to
"Correspondence dated 07-06-09 from Rode to GMACM disputing amount of
debt (Bates 133-134)" (Ex. 138) because it is not relevant as required by Fed. R.
Evid. 401 and 402, and even if relevant, its probative value is outweighed the
danger of waste of time under Fed. R. Evid. 403.

125.    The Trust objects to "Correspondence dated 07-29-09 from Uzick to
Hoecker/Homecomings regarding misapplication of funds & inappropriate
miscellaneous charges and late fees (Bates 135-136)" (Ex. 139) because it is
duplicative of other exhibits offered by the Claimant.  The Trust also objects to
"Correspondence dated 07-29-09 from Uzick to Hoecker/Homecomings
regarding misapplication of funds & inappropriate miscellaneous charges and
late fees (Bates 135-136)" (Ex. 139) because it is not relevant as required by
Fed. R. Evid. 401 and 402, and even if relevant, its probative value is
outweighed the danger of waste of time under Fed. R. Evid. 403.

126.    The Trust objects to "Correspondence from GMACM to Uzick dated 08-28-09
re: force-placed insurance & payment history (Bates 137-138)" (Ex. 140)
because it is duplicative of other exhibits offered by the Claimant.  The Trust
also objects to "Correspondence from GMACM to Uzick dated 08-28-09 re:
force-placed insurance & payment history (Bates 137-138)" (Ex. 140) because it
is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its
probative value is outweighed the danger of waste of time under Fed. R. Evid.
403.

127.    The Trust objects to "Correspondence from Uzick to Jungen/GMACM dated 09-
02-09 forwarding insurance Dec Page, inappropriate charges & requesting
modification package (Bates 139-140)" (Ex. 141) because it is duplicative of
other exhibits offered by the Claimant.

128.    The Trust objects to "Correspondence from Uzick to Jungen/GMACM dated 09-
18-09 requesting GMACM apply payment of $3,025 (Bates 141)" (Ex. 142)
because it is duplicative of other exhibits offered by the Claimant.

129.    The Trust objects to "Correspondence from GMACM to Uzick dated 09-24-09

regarding insurance credit (Bates 142)" (Ex. 143) because it is duplicative of other exhibits offered by the Claimant.

130. The Trust objects to "Correspondence dated 10-01-09 from Uzick to Jungen/GMACM forwarding signed modification (Bates 143-144)" (Ex. 144) because it is duplicative of other exhibits offered by the Claimant.

131. The Trust objects to "Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 145)" (Ex. 145) because it is duplicative of other exhibits offered by the Claimant.

132. The Trust objects to "Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of $10,000 payment (Bates 146-147)" (Ex. 146) because it is duplicative of other exhibits offered by the Claimant.

133. The Trust objects to "First Page of Notice of Substitute Trustee's Sale dated 03-11-10 (Bates 148)" (Ex. 147) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "First Page of Notice of Substitute Trustee's Sale dated 03-11-10 (Bates 148)" (Ex. 147) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

134. The Trust objects to "Correspondence from Uzick to Gerhardt/Bradley, Arant dated 02-06-12 forwarding Amended Petition and discussing discovery (Bates 149-150)" (Ex. 148) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

135. The Trust objects to "Notice of Rescission of Acceleration (undated) (Bates 151)" (Ex. 149) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

136. The Trust objects to "Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of $10,000 payment (Bates 146-147)" (Ex. 146) because it is duplicative of other exhibits offered by the Claimant.

137. The Trust objects to "Rescap correspondence of 06-21-13 requesting further information, Rode's reply, & Proof of Claim dated 11-14-12 (Bates 152-154)" (Ex. 150) because it is not sufficiently specific regarding which of the several documents described the Claimant wishes to introduce.  The Trust also objects to "Rescap correspondence of 06-21-13 requesting further information, Rode's reply, & Proof of Claim dated 11-14-12 (Bates 152-154)" (Ex. 150) because portions of it are duplicative of other exhibits offered by the Claimant.

138. The Trust objects to "Rode's First Amended Petition in State Court dated 02-06-12 (Bates 155-166)" (Ex. 151) because it is duplicative of other exhibits offered by the Claimant.

139. The Trust objects to "Nations Direct letter and Homecomings' Modification Approval Letter dated 08-26-09 (Bates 167-170)" (Ex. 152) because it is duplicative of other exhibits offered by the Claimant.

140. The Trust objects to "Fixed Rate Loan Modification Agreement (unsigned) dated 10-01-09 (Bates 167-170)" (Ex. 153) because it is duplicative of other exhibits offered by the Claimant.

141. The Trust objects to "Homecomings' Modification Approval Letter dated 08-26-09 (Bates 178)" (Ex. 154) because it is duplicative of other exhibits offered by the Claimant.

142. The Trust objects to "Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package (Bates 179-181)" (Ex. 155) because it is duplicative of other exhibits offered by the Claimant.

143. The Trust objects to "Correspondence from GMACM to Uzick dated 09-24-09 regarding insurance credit (Bates 182)" (Ex. 156) because it is duplicative of other exhibits offered by the Claimant.

144. The Trust objects to "Quitclaim Deed dated 11-18-08 (Bates 183-185)" (Ex. 157) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Quitclaim Deed dated 11-18-08 (Bates 183-185)" (Ex. 157) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

145. The Trust objects to "Correspondence dated 10-01-09 from Uzick to Jungen/GMACM forwarding signed modification (Bates 186-189)" (Ex. 158) because it is duplicative of other exhibits offered by the Claimant.

146. The Trust objects to "Nations Direct letter and Homecomings' Modification Approval Letter dated 08-26-09 (Bates 190-192)" (Ex. 159) because it is duplicative of other exhibits offered by the Claimant.

147. The Trust objects to "Fixed Rate Loan Modification Agreement (unsigned) dated 10-01-09 (Bates 193-196)" (Ex. 160) because it is duplicative of other exhibits offered by the Claimant.

148. The Trust objects to "Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 197-198)" (Ex. 161) because it is duplicative of other exhibits offered by the Claimant.

149.    The Trust objects to "Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of $10,000 payment (Bates 199-200)" (Ex. 162) because it is duplicative of other exhibits offered by the Claimant.

150.    The Trust objects to "Notice of Substitute Trustee's Sale and last page of Notice of Acceleration to Maturity dated 03-11-10 (Bates 201-204)" (Ex. 163) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Notice of Substitute Trustee's Sale and last page of Notice of Acceleration to Maturity dated 03-11-10 (Bates 201-204)" (Ex. 163) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

151.    The Trust objects to "Correspondence from Unknown to Rode with no date forwarding Notice of Acceleration of Maturity of 03-11-10 (Bates 205)" (Ex. 164) because it is duplicative of other exhibits offered by the Claimant.

152.    The Trust objects to "Notice of Acceleration of Maturity dated 03-11-10 (missing last page) (Bates 206-207)" (Ex. 165) because it is duplicative of other exhibits offered by the Claimant.

153.    The Trust objects to "Correspondence dated 04-06-10 from Uzick to Gamez/Pite Duncan regarding removal of Substitute Trustee's Sale (Bates 208-209)" (Ex. 166) because it is duplicative of other exhibits offered by the Claimant.

154.    The Trust objects to "Account history dated 07-14-08 to 02-24-10 (Bates 211-221)" (Ex. 167) because it is duplicative of other exhibits offered by the Claimant.

155.    The Trust objects to "Correspondence from Homecomings to Rode dated 09-25-08 regarding refund of $2,459.36 from Harris County (Bates 222)" (Ex. 168) because it is duplicative of other exhibits offered by the Claimant.

156.    The Trust objects to "E-Mail from Homecomings to Rode dated 11-05-08 promising to reply to request in 2 days (Bates 223)" (Ex. 169) because it is duplicative of other exhibits offered by the Claimant.

157.    The Trust objects to "Application For Tax Refund dated 08-08-08 (Bates 224)" (Ex. 170) because it is duplicative of other exhibits offered by the Claimant.

158.    The Trust objects to "Harris County Tax Assessor Statement of 08-07-08 regarding 2301 West Lawther property (Bates 225)" (Ex. 171) because it is duplicative of other exhibits offered by the Claimant.

159.    The Trust objects to "Correspondence from Harris County Tax Assessor to Rode regarding refund to Homecomings (Bates 226)" (Ex. 172) because it is duplicative of other exhibits offered by the Claimant.

160. The Trust objects to "Correspondence from Homecomings to Rode dated 09-25-08 regarding refund of $2,459.36 from Harris County (Bates 227)" (Ex. 173) because it is duplicative of other exhibits offered by the Claimant.

161. The Trust objects to "Correspondence from Rode to Homecomings dated 09-05-08 requesting confirmation of posting of payment of $2,459.36 (Bates 228)" (Ex. 174) because it is duplicative of other exhibits offered by the Claimant.

162. The Trust objects to "Customer/Track/Loan document dated 08-19-08 regarding overpayment of taxes (Bates 229)" (Ex. 175) because it is duplicative of other exhibits offered by the Claimant.

163. The Trust objects to "Homecomings Transaction History dated 2008 (Bates 230-231)" (Ex. 176) because it is duplicative of other exhibits offered by the Claimant.

164. The Trust objects to "Correspondence from GMACM to Rode dated 06-10-09 re: GMACM as servicer (Bates 232)" (Ex. 177) because it is duplicative of other exhibits offered by the Claimant.

165. The Trust objects to "Correspondence from Rode to Homecomings forwarding check for $3,025 and Quit Claim Deed signed by Barbara Rode (Bates 233-234)" (Ex. 178) because it is duplicative of other exhibits offered by the Claimant.

166. The Trust objects to "Correspondence dated 07-06-09 from Rode to GMACM disputing amount of debt (Bates 235-236)" (Ex. 179) because it is duplicative of other exhibits offered by the Claimant.

167. The Trust objects to "Correspondence dated 07-06-09 from Rode to GMACM disputing amount of debt (Bates 235-236)" (Ex. 179) because it is duplicative of other exhibits offered by the Claimant.

168. The Trust objects to "Correspondence dated 07-29-09 from Uzick to Hoecker/Homecomings regarding misapplication of funds & inappropriate miscellaneous charges and late fees (Bates 237-238)" (Ex. 180) because it is duplicative of other exhibits offered by the Claimant.

169. The Trust objects to "Correspondence from GMACM to Uzick dated 08-28-09 re: force-placed insurance & payment history (Bates 239-240)" (Ex. 181) because it is duplicative of other exhibits offered by the Claimant.

170. The Trust objects to "Correspondence from Uzick to Jungen/GMACM dated 09-02-09 forwarding insurance Dec Page, inappropriate charges & requesting modification package (Bates 241-242)" (Ex. 182) because it is duplicative of other exhibits offered by the Claimant.

171. The Trust objects to "Correspondence from Uzick to Jungen/GMACM dated 09-

18-09 requesting GMACM apply payment of $3,025 (Bates 243)" (Ex. 183) because it is duplicative of other exhibits offered by the Claimant.

172. The Trust objects to "Correspondence from GMACM to Uzick dated 09-24-09 regarding insurance credit (Bates 244)" (Ex. 184) because it is duplicative of other exhibits offered by the Claimant.

173. The Trust objects to "Correspondence dated 10-01-09 from Uzick to Jungen/GMACM forwarding signed modification (Bates 245-246)" (Ex. 185) because it is duplicative of other exhibits offered by the Claimant.

174. The Trust objects to "Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 247)" (Ex. 186) because it is duplicative of other exhibits offered by the Claimant.

175. The Trust objects to "Correspondence dated 10-30-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of $10,000 payment (Bates 248-249)" (Ex. 187) because it is duplicative of other exhibits offered by the Claimant.

176. The Trust objects to "First Page of Notice of Substitute Trustee's Sale dated 03-11-10 (Bates 250)" (Ex. 188) because it is duplicative of other exhibits offered by the Claimant.

177. The Trust objects to "Correspondence from Uzick to Gerhardt/BradleyArant dated 02-06-12 forwarding Amended Petition and discussing discovery (Bates 251-252)" (Ex. 189) because it is duplicative of other exhibits offered by the Claimant.

178. The Trust objects to "Notice of Rescission of Acceleration (undated) (Bates 253)" (Ex. 190) because it is duplicative of other exhibits offered by the Claimant.

179. The Trust objects to "Third Party Authorization and Agreement to Release regarding Uzick dated 08-28-09 (Bates 254)" (Ex. 191) because it is duplicative of other exhibits offered by the Claimant.

180. The Trust objects to "Correspondence dated 06-11-09 from Rode to Homecomings forwarding modification agreement, checks for $3,025 and $2,401.87, and Quit Claim Deed signed by Barbara Rode (Bates 255-256)" (Ex. 192) because it is duplicative of other exhibits offered by the Claimant.

181. The Trust objects to "Correspondence dated 10-27-09 from Uzick to Jungen/GMACM requesting confirmation of acceptance of modification and improper application of payments (Bates 257-258)" (Ex. 193) because it is duplicative of other exhibits offered by the Claimant.

182.  The Trust objects to "Correspondence dated 07-29-09 from Uzick to Hoecker/Homecomings regarding misapplication of funds & inappropriate miscellaneous charges and late fees (Bates 259-260)" (Ex. 194) because it is duplicative of other exhibits offered by the Claimant.

183.  The Trust objects to "Correspondence from Uzick to Jungen/GMACM dated 09-18-09 requesting GMACM apply payment of $3,025 with transaction history (Bates 261-264)" (Ex. 195) because it is duplicative of other exhibits offered by the Claimant.

184.  The Trust objects to "Correspondence from Rode to Homecomings forwarding check for $3,025 and Quit Claim Deed signed by Barbara Rode (Bates 265-270)" (Ex. 196) because it is duplicative of other exhibits offered by the Claimant.

185.  The Trust objects to "Voided Fixed Rate Loan Modification Agreement signed by Rode dated 06-08-09 (Bates 271-273)" (Ex. 197) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Voided Fixed Rate Loan Modification Agreement signed by Rode dated 06-08-09 (Bates 271-273)" (Ex. 197)  because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

186.  The Trust objects to "Quitclaim Deed dated 11-18-08 (Bates 274-276)" (Ex. 198) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Quitclaim Deed dated 11-18-08 (Bates 274-276)" (Ex. 198) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

187.  The Trust objects to "Correspondence dated 06-11-09 from Rode to Homecomings forwarding modification agreement, checks for $3,025 and $2,401.87, and Quit Claim Deed signed by Barbara Rode (Bates 277-278)" (Ex. 199) because it is duplicative of other exhibits offered by the Claimant.

188.  The Trust objects to "Voided Fixed Rate Loan Modification Agreement signed by Rode dated 06-08-09 (Bates 279-281)" (Ex. 200) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Voided Fixed Rate Loan Modification Agreement signed by Rode dated 06-08-09 (Bates 279-281)" (Ex. 200) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

189.  The Trust objects to "Quitclaim Deed dated 11-18-08 (Bates 282-283)" (Ex. 201) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Quitclaim Deed dated 11-18-08 (Bates 282-283)" (Ex. 201) because it is not relevant as required by Fed. R. Evid. 401 and 402, and

even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

190. The Trust objects to "Fixed Rate Loan Modification Agreement signed by Rode on 10-01-09 & by Homecomings on 10-07-09 (Bates 284-287)" (Ex. 202) because it is duplicative of other exhibits offered by the Claimant.

191. The Trust objects to "Correspondence from Homecomings to Rode regarding modification offer dated 06-25-07 (Bates 288)" (Ex. 203) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence from Homecomings to Rode regarding modification offer dated 06-25-07 (Bates 288)" (Ex. 203) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

192. The Trust objects to "Correspondence from Homecomings to Rode regarding modification offer dated 05-17-07 (Bates 289)" (Ex. 204) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence from Homecomings to Rode regarding modification offer dated 05-17-07 (Bates 289)" (Ex. 204) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

193. The Trust objects to "Correspondence from GMACM to Uzick dated 09-24-09 regarding insurance credit (Bates 290)" (Ex. 205) because it is duplicative of other exhibits offered by the Claimant.

194. The Trust objects to "Correspondence from Homecomings to Rode dated 12-07-05 requesting financials (Bates 291-295)" (Ex. 206) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence from Homecomings to Rode dated 12-07-05 requesting financials (Bates 291-295)" (Ex. 206) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

195. The Trust objects to "Correspondence from GMACM to Uzick dated 08-28-09 re: force-placed insurance & payment history (Bates 296-297)" (Ex. 207) because it is duplicative of other exhibits offered by the Claimant.

196. The Trust objects to "Correspondence dated 07-29-09 from Uzick to Hoecker/Homecomings regarding misapplication of funds & inappropriate miscellaneous charges and late fees (Bates 298-299)" (Ex. 208) because it is duplicative of other exhibits offered by the Claimant.

197. The Trust objects to "Correspondence from Homecomings to Rode regarding modification offer dated 05-29-09 (Bates 300-301)" (Ex. 209) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence from Homecomings to Rode regarding modification offer

dated 05-29-09 (Bates 300-301)" (Ex. 209) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

198.    The Trust objects to "Correspondence from GMACM to Rode dated 01-18-13 approving modification (Bates 302-303)" (Ex. 210) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Correspondence from GMACM to Rode dated 01-18-13 approving modification (Bates 302-303)" (Ex. 210) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

199.    The Trust objects to "Non-HAMP Loan Modification Agreement (unsigned) (Bates 304-308)" (Ex. 211) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Non-HAMP Loan Modification Agreement (unsigned) (Bates 304-308)" (Ex. 211) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

200.    The Trust objects to "Correspondence from Homecomings to Rode dated 08-15-06 regarding non-payment (Bates 309-310)" (Ex. 212) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Correspondence from Homecomings to Rode dated 08-15-06 regarding non-payment (Bates 309-310)" (Ex. 212) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

201.    The Trust objects to "Correspondence from Homecomings to Rode offering programs to assist dated 01-05-07 (Bates 311)" (Ex. 213) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Correspondence from Homecomings to Rode offering programs to assist dated 01-05-07 (Bates 311)" (Ex. 213) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

202.    The Trust objects to "Correspondence from Homecomings to Rode offering program to assist dated 08-04-06 (Bates 312)" (Ex. 214) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Correspondence from Homecomings to Rode offering program to assist dated 08-04-06 (Bates 312)" (Ex. 214) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

203.    The Trust objects to "Correspondence from Homecomings to Rode offering program to assist dated 08-25-06 (Bates 313)" (Ex. 215) because it is duplicative of other exhibits offered by the Claimant.  The Trust also objects to "Correspondence from Homecomings to Rode offering program to assist dated

08-25-06 (Bates 313)" (Ex. 215) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

204. The Trust objects to "Correspondence from Homecomings to Rode regarding modification offer dated 12-02-05 (Bates 314)" (Ex. 216) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence from Homecomings to Rode regarding modification offer dated 12-02-05 (Bates 314)" (Ex. 216) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

205. The Trust objects to "Correspondence from Homecomings to Rode rescinding modification offer dated 04-30-07 (Bates 315)" (Ex. 217) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence from Homecomings to Rode rescinding modification offer dated 04-30-07 (Bates 315)" (Ex. 217) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

206. The Trust objects to "Correspondence from Homecomings to Rode rescinding modification offer dated 01-16-07 (Bates 316-317)" (Ex. 218) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence from Homecomings to Rode rescinding modification offer dated 01-16-07 (Bates 316-317)" (Ex. 218) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

207. The Trust objects to "Correspondence dated 04-11-08 from Unknown to Rode of default demand (Bates 318-319)" (Ex. 219) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Correspondence dated 04-11-08 from Unknown to Rode of default demand (Bates 318-319)" (Ex. 219) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

208. The Trust objects to "Objection of the Rescap Borrower Claims Trust to Claim Numbers 5610 and 5612 Filed by Richard D. Rode dated 04-09-15 with exhibits (Bates 323-651)" (Ex. 221) with respect to the exhibits to that filing because it is duplicative of other exhibits offered by the Claimant.

209. The Trust objects to "Copy of the "Original" Note (Bates 652-654)" (Ex. 222) because it is duplicative of other exhibits offered by the Claimant.

210. The Trust objects to "Undated Allonge (Bates 655)" (Ex. 223) because it is duplicative of other exhibits offered by the Claimant.

211. The Trust objects to "Deed of Trust signed 03-19-03 (Bates 656-666)" (Ex. 224)

because it is duplicative of other exhibits offered by the Claimant.

212. The Trust objects to "Renewal and Extension Exhibit to Deed of Trust dated 03-18-03 (Bates 667)" (Ex. 225) because it is duplicative of other exhibits offered by the Claimant.

213. The Trust objects to "Undated Planned Unit Development Rider (Bates 668)" (Ex. 226) because it is duplicative of other exhibits offered by the Claimant.

214. The Trust objects to "Assignment of Deed of Trust signed by Donna Fitton on 04-16-10 (Bates 669-670)" (Ex. 227) because it is duplicative of other exhibits offered by the Claimant.

215. The Trust objects to "Judy Faber employment information (Bates 671)" (Ex. 228) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Judy Faber employment information (Bates 671)" (Ex. 228) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

216. The Trust objects to "Seller/Servicer Contract dated 09-15-99 between Residential Funding and Homecomings Financial (Bates 672-684)" (Ex. 229) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

217. The Trust objects to "Seller/Servicer Contract dated 11-24-92 between Residential Funding and GMACM (Bates 685-687)" (Ex. 230) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

218. The Trust objects to "Donna Fitton employment information (Bates 1050)" (Ex. 232) because it is duplicative of other exhibits offered by the Claimant. The Trust also objects to "Donna Fitton employment information (Bates 1050)" (Ex. 232) because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

219. Because the Trust was provided with only 2.5 regular working hours (and only 16.5 hours in total) to review a list of Claimant's proposed exhibits that increased from 62 to 232 documents, the Trust reserves the right to seek to amend its objections to any of the foregoing exhibits on the basis that the Trust lacked sufficient time to review and prepare its objections. Additionally, in light of the extensive duplication in Claimant's exhibits, to the extent the Trust objects to an exhibit on the basis that it is duplicative of other exhibits, all other objections raised by the Trust to such document where listed as another exhibit shall also apply.

Any objections not set forth herein will be considered waived absent good cause shown.  The parties shall set forth any stipulations with respect to the authenticity and admissibility of exhibits and indicate all objections to exhibits and the grounds therefor.

## VIII.    WITNESSES

### A.    Claimant's Witness List

1.  Richard Rode

c/o Attorney Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Ave. S., Suite 5010
Minneapolis, Minnesota 55415
(612) 333-4144

Will authenticate relevant documents.  Has knowledge of the underlying facts of the case, economic and non-economic damages, and diminution of credit due to GMACM/Homecomings' actions.

2.  Maudeena (Dee) Rode

c/o Attorney Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Ave. S., Suite 5010
Minneapolis, Minnesota 55415
(612) 333-4144

Will authenticate relevant documents.  Has knowledge of non-economic damages.

3.  Denise Jungen, formerly Advocacy Resolution Specialist GMAC Mortgage previously located at 3452 Hammond Avenue Waterloo, Iowa 50704

UNAVAILABLE PURSUANT TO FED. R. CIV. P. 45( c), MADE APPLICABLE BY FED. R. BANKR. P. 9016; Documents will be authenticated by Dee Rode or Attorney Jeffrey H. Uzick.

Would have authenticated relevant documents. Has knowledge of the inappropriate charges, fees, payments, requested and approved loan modification agreement, and request for accounting by Claimant.

4.  Attorney  Daniel R. Gamez

Formerly of  Pite Duncan, LLP, 4375 Jutland Drive, Suite #200, Post Office Box 17935, San Diego, California 92177-0935 now located at Gamez Law Firm, 101 West Broadway, Suite 300, Room 10, San Diego, CA 92101; contacted at (858) 217-5051

UNAVAILABLE PURSUANT TO FED. R. CIV. P. 45( c), MADE APPLICABLE BY FED. R. BANKR. P. 9016; Documents will be authenticated by Richard D. Rode, Dee Rode or Attorney Jeffrey H. Uzick.

Would have authenticated relevant documents. Has knowledge attempt to foreclosure on Claimant's Homestead foreclosure after Claimant was approved for a loan modification agreement by GMACM/Homecomings, following the unilateral breach of the Modification Agreement by GMAC Mortgage, LLC (GMACM).

5.  Kris M. Caya, formerly claiming the capacity of "Limited Signing Officer" Homecomings Financial/GMAC Mortgage previously located at 3451 Hammond Avenue Waterloo, Iowa 50702

UNAVAILABLE PURSUANT TO FED. R. CIV. P. 45( c), MADE APPLICABLE BY FED. R. BANKR. P. 9016; Document will be authenticated by Kathy Priore who produced it or by Judicial Notice

Would have authenticated relevant document.  Has knowledge of her execution of the approved Loan Modification Agreement that was subsequently unilaterally breached and denied by GMACM/Homecomings.  Objector has stipulated that the Loan Modification Agreement was executed but not returned.

6.  Charles Hoecker, formerly SVP Customer Care Homecomings Financial/GMAC Mortgage previous contact information Post Office Box 4622 Waterloo, Iowa 50704-4622

UNAVAILABLE PURSUANT TO FED. R. CIV. P. 45( c), MADE APPLICABLE BY FED. R. BANKR. P. 9016

Charles Hoecker is believed to be presently employed by Ocwen Loan Servicing, LLC (Ocwen) and is believed to have personal knowledge of the problems with Claimant's escrow account, loan modification agreement, unwarranted and misapplied payments, and damage to the Claimant's credit as well as the GMAC/RFC policies and procedures for handling payments, credits and escrowed funds.  As a present employee of Ocwen (according to best information) Mr. Hoecker would have access to the RESCAP Debtors' "books and records" in the possession of Ocwen and is expected to testify to the payments received from hazard insurance policies arising from the damages to the subject property from the "Hurricane Ike" natural disaster.  Mr. Hoecker has access to the records which form the basis for the ongoing payments on the subject loan.

57

7. Larry R. Wickstrom
   5436 Yukon Ave. S.
   New Hope, Minnesota 55428
   (763) 536-1222

Authentication of relevant documents. Calculation of collateral value of all RALI SeriesTrusts claimed to have been created in the State of Minnesota in reports to the Securities and Exchange Commission (SEC), along with RASC, RAMP and RFMS I and RFMS II Series Trusts, which were represented to the SEC as being Minnesota Trusts, and which are also not registered with the Minnesota Secretary of State as required by Minn. Stat. sec. 318.02 since April 20, 1961. The total collateral value of the RALI and RASC Series Trusts represented to the SEC, the investors and the public as being Minnesota Trusts amounts to $113,138,824,329.00.  The collateral value of the RAMP, RFMS I and RFMS II Series Trusts are being calculated at the present time.

8. Bill Paatalo, Oregon Private Investigator - PSID#49411

   BP Investigative Agency, LLC
   P.O. Box 838
   Absarokee, MT 59001
   Office: (406) 328-4075
   www.bpinvestigativeagency.com

Will authenticate relevant documents. Mr. Paatalo will testify to the contents of his expert report dated March 31, 2016, including the failed of securitization, to the extent that the Objector is claiming a valid securitization, and, in any event, Mr. Paatalo will provide evidence that the balance due on the subject loan, on a declining balance was $46,341.40 as of March 31, 2016 and continues to decline.  This testimony will also involve the admission of the Objector that insurance claims were paid to the servicing agent following the natural disaster known as "Hurricane Ike."  Mr. Paatalo is also a rebuttal witness.

9. Robert M. Adams

   Certified Public Accountant
   5906 Dolores Street, Suite 113
   Houston, Texas 77057
   (713) 626-1040
   bob@bobadamscpa .com

Will authenticate relevant documents and will testify to some of the economic losses.

10. Tammy Hamzehpour, Chief Business Officer RESCAP Liquidating Trust

UNAVAILABLE PURSUANT TO FED. R. CIV. P. 45( c), MADE APPLICABLE BY FED. R. BANKR. P. 9016; Documents will be authenticated by Claimant, Dee Rode or Attorney Jeffrey H. Uzick.

Would have authenticated documents.  Believed to have access to the RESCAP Debtors' "books and records" to form the basis for knowledge of payments made to Homecomings Financial, LLC (Homecomings) and GMACM from hazard insurance policies in place on the Homestead at the time of the "Hurricane Ike" natural disaster.  Also believed to have knowledge of payments being made on the subject loan obligation creating a declining balance, based on the RESCAP Debtors' "books and records."

11. Deanna Horst Chief Claims Officer, RESCAP Liquidating Trust

UNAVAILABLE PURSUANT TO FED. R. CIV. P. 45( c), MADE APPLICABLE BY FED. R. BANKR. P. 9016; Documents will be authenticated by Claimant,  Dee Rode or Attorney Jeffrey H. Uzick

Would have authenticated documents.  Believed to have access to the RESCAP Debtors' "books and records" to form the basis for  knowledge of payments made to Homecomings Financial, LLC (Homecomings) and GMACM from hazard insurance policies in place on the Homestead at the time of the "Hurricane Ike" natural disaster. Also believed to have knowledge of payments being made on the subject loan obligation creating a declining balance,  based on the RESCAP Debtors' "books and records."

12. Kathy Priore, Associate Counsel for The ResCap Liquidating Trust

ADVERSELY BY SUBPOENA ONLY.

MAY BE UNAVAILABLE PURSUANT TO FED. R. CIV. P. 45( c), MADE APPLICABLE BY FED. R. BANKR. P. 9016;  Documents will be authenticated by Rich Rode if Priore cannot be subpoenaed or ordered to appear; or judicial notice will be requested, but examination is preferrable.

Will authenticate or will fail to authenticate documents.  Has knowledge of the basis for her Declaration in support of the Objection to Claims ## 5610 and 5612 filed on April 9, 2015 as Doc. 8452 in these contested proceedings as well as access to the RESCAP Debtors' "books and records" to form the basis for  knowledge of payments made to Homecomings Financial, LLC (Homecomings) and GMACM from hazard insurance policies in place on the Homestead at the time of the "Hurricane Ike" natural disaster as well as source of payments on declining balance on the subject loan up to February 16, 2013 when the servicing rights to the subject loan were purportedly acquired by Ocwen.

13. Peter S. Kravitz, Esq. Trustee of the RESCAP Borrower Claims Trust

   Solution Trust
   230 Park Avenue, 10th Floor
   New York, NY 10169
   Phone: 212-808-7230, and at
   29209 Canwood St. Suite 210
   Agoura Hills, CA 91301
   Phone: 310-974-6350, and at
   919 N. Market Street Suite 700
   Wilmington, DE 19807
   Phone: 203-444-6608
   http://solutiontrust.net
   http://solutiontrust.net/contact/

ADVERSELY BY SUBPOENA ONLY.

Has personal knowledge of the authority granted to the RESCAP Liquidating Trust as custodian of the RESCAP Debtors' "books and records" to object to Claims 5210 and 5212.

14. Attorney Jeffrey H. Uzick

   UZICK & ONCKEN, P.C.
   238 Westcott Drive
   Houston, Texas 77007
   (713) 869-2900

   Mr. Uzick will testify regarding reasonable and necessary attorneys' fees incurred in this action as damages from the breach of contract.

**B.    Trust's Witness List**

1. Sara Lathrop

The witnesses listed may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown. Each party shall list the witnesses it intends to call on its case in chief and, if a witness's testimony will be offered by deposition, shall designate by page and line numbers the portions of the deposition transcript it intends to offer. Each party shall set forth any objections it has to deposition testimony designated by the other and the basis therefor.

## IX.    RELIEF SOUGHT

**A.    Relief Sought By Claimant**

1. Damages for breach of contract

    2.   Punitive damages for breach of contract

**B.**    **Relief Sought by Trust**

The Trust is seeking to have Claimant's Proofs of Claim disallowed and expunged.

## X.   DEADLINES AND HEARING DATE

The parties propose the following pretrial deadlines:

- The parties shall participate in a telephonic pretrial conference at **3 p.m. prevailing Eastern Time on July 19, 2016**.  The Trust's counsel will arrange for a dial-in number.

- Written direct testimony for each witness that the parties intend to call at trial shall be exchanged **not later than July 22, 2016**.  Two courtesy copies of each witness's written direct testimony shall be provided to chambers concurrently with the parties' exchange. Neither party shall be permitted to call any witness to testify at trial (except rebuttal witnesses, if any) unless such witness's direct testimony has been provided to the opposing party by July 22, 2016.

- Pretrial memoranda of law, which shall include a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to establish each element, and addressing any evidentiary issues anticipated to arise during evidentiary hearing on this matter (the "Trial"), shall be filed **not later than July 29, 2016**.

- **Not later than 5:00 p.m. prevailing Eastern Time on July 29, 2016**, each party shall file any motions in limine or any objections to written testimony; provided, however, that objections must specifically identify the portion(s) of the written testimony at issue.

- **Not later than 5:00 p.m. prevailing Eastern Time on August 8, 2016**, each party shall file any responses to any motions in limine or any objections to written testimony.

- **Not later than 5:00 p.m. prevailing Eastern Time on August 8, 2016**, each party shall provide to the Court with (but not file) two copies of (i) the respective party's final witness and exhibit lists and (ii) pre-marked exhibits (Claimant to identify his exhibits with numbers, e.g., 1, 2, 3, etc.; the Trust to identify its exhibits with letters, e.g., A, B, C, etc.), assembled sequentially in notebooks and tabbed, or, if too voluminous, with each exhibit placed in a separate manila folder with number or letter visible on the lip, and the folder placed in a suitable container or box for ready reference.  Each exhibit list shall include a description of each exhibit.  One copy of the witness and exhibit lists and one set of exhibits should be provided to opposing counsel.  No witnesses or exhibits that are not listed in the witness and exhibit lists may be used at the Trial.

- The Trial shall take place on **August 15, 2016 through August 18, 2016 beginning at 9:00 a.m. prevailing Eastern Time each day**.

## XI.    EVIDENTIARY HEARING PROCEDURES

### A.    Use of Exhibits During Trial

Counsel is responsible for marking his or her own exhibits. Counsel must identify for the Court and opposing counsel, and give a copy to the witness, each exhibit before using it at the Trial. All exhibits that will be shown to a witness should, if possible, be placed before the witness at the start of counsel's witness examination.  Questions and arguments should be delivered from the lectern, but counsel may approach the witness without asking leave whenever it is necessary. And, if counsel is standing near the witness for the purpose of pointing something out on an exhibit, opposing counsel may also be present to observe first-hand what is being pointed out.

### B.    "Timed" Trial

The Trial will be a "timed trial," with a maximum of 6-trial hours during the course of each day. Each side will be allocated a maximum of 12-trial hours to use for opening statement, all direct, cross-examination and redirect witness examinations, and summation.  Counsel is responsible for having her or his witnesses present and ready to testify without any delays or gaps in testimony.

### C.    Status Report

**Not later than 5:00 p.m. prevailing Eastern Time on August 8, 2016**, counsel shall submit a written status report to the Court, identifying any issues that must be resolved before the Trial starts, and also whether counsel believe the case may be resolved by settlement before the Trial begins.

Dated:  July 18, 2016

 /s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

Dated:  July 18, 2016

> /s/ Wendy Alison Nora
> Wendy Alison Nora
> ACCESS LEGAL SERVICES
> 310 Fourth Ave. South
> Suite 5010
> Minneapolis, Minnesota 55415
>
> *Counsel for Richard D. Rode*

**IT IS SO ORDERED.**

Dated:  July 21, 2016.
  New York, New York

> **/s/Martin Glenn**
> MARTIN GLENN
> United States Bankruptcy Judge