UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


                Debtors.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                July 18, 2016

                12:03 PM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2  Telephone Conference, on the Record, Regarding Reed Claims

3  Objection.   Pre-trial Conference set for 09/15/2016 at 10:00

4  am.   Trial set for September 26 at 9:00 AM, continuing day to

5  day on September 27th, September 28th, September 29th and

6  September 30th.

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:   Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S :   (TELEPHONICALLY)

3  REED SMITH LLP

4       Attorneys for ResCap Borrower Claims Trust

5       1717 Arch Street

6       Suite 3100

7       Philadelphia, PA 19103

8

9  BY:   BARBARA K. HAGER, ESQ.

10

11

12

13  FRANK J. REED, IV

14       Claimant - Pro Se

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  All right, we're on the record in

3    Residential Capital, 12-12020.  Can I have the appearances,

4    please, for the Trust?

5          MR. REED:  Frank Reed, creditor pro se.

6          THE COURT:  All right, Mr. Reed.  And for the Trust?

7          MS. HAGER:  Good morning, Your Honor.  Barbara Hager

8    with Reed Smith, co-counsel for the Residential Capital

9    Borrower Claims Trust.

10         THE COURT:  Thank you.  All right, so I guess we last

11   had a conference on July 13th, and I set the telephone -- a

12   further telephone conference for today.  There were some open

13   issues that I think Mr. Reed and Ms. Hager were going to try

14   and discuss and resolve.

15         So Ms. Hager, tell me where we are.

16         MS. HAGER:  Yes, Your Honor.  This is Barbara Hager.

17   Your Honor, Mr. Reed and I spoke on the phone and also had some

18   email communications about his document requests and also his

19   notice of deposition directed to the Trust, and we were able to

20   narrow the scope down a little bit.  Mr. Reed did agree to take

21   out a number of categories, which was helpful.

22         But there are still a number of categories on both the

23   document requests and the notice of deposition that I believe

24   are an issue for a number of reasons.  The main issue is that a

25   lot of these do not relate in any way, it seems, to Mr. Reed's

1  claim for damages.  They're also vague and overbroad.  But most

2  importantly, I think, with respect to the narrow issues at hand

3  for trial, he's just seeking information that has nothing to do

4  with his damages, which was something that was discussed at the

5  last in-person status conference with the Court.

6         Now, of course, typically in doing my written response

7  to document requests I would include my objections and send

8  those out together with any of the documents that I didn't have

9  objections to; but here, since we're on such a tight time

10  frame, I was hoping that perhaps there was some way to address

11  this up front, because otherwise we're going to run into a

12  situation where -- perhaps, where we've got a timing issue.

13  These are going to be due, I believe, the end of next week.

14         So I would be looking, then, for Your Honor's

15  direction -- I'm not sure whether you would want us to file a

16  motion on shortened notice or how you'd like us to handle these

17  remaining outstanding requests.

18         THE COURT:  Tell me what the disputed areas, and then

19  I give Mr. Reed a chance to address them.

20         MS. HAGER:  Sure.  With respect to the document

21  requests themselves, Your Honor, Mr. Reed is seeking notices or

22  written complaints received by GMAC between 2003 and 2008 from

23  other borrowers claiming financial injury or other harm.  Other

24  categories are notices, bulletins, advisory statements or

25  written complaints received by GMAC for the time period of 2003

1  through 2010 from any governmental or quasi-governmental agency

2  regarding injury or harm to mortgagors resulting from wrongful

3  or improper foreclosure practices.  All complaints received by

4  GMAC -- and this one specifically refers to legal

5  proceedings -- received by GMAC between 2003 and 2010 from or

6  on behalf of mortgagors claiming financial injury or other harm

7  resulting from alleged wrongful foreclosure.  Internal GMAC

8  memos, guides, training materials, or handbooks pertaining to

9  foreclosure and/or the lis pendens process in New Jersey,

10  effective between 2003 and 2008.  Communications between GMAC

11  and its clients and vendors in regard to Frank Reed's account.

12  Internal policies and procedure manuals regarding delinquent

13  accounts and foreclosures.

14         Those are the document requests that we believe are

15  improper.

16         THE COURT:  Just give me that last one again?

17         MS. HAGER:  The last one was internal policies and

18  procedure manuals regarding delinquent accounts and

19  foreclosures.

20         THE COURT:  Okay.  Mr. Reed, do you want to respond?

21         MR. REED:  Yes, Your Honor.  We -- one of the elements

22  for the breach of contract is the foreseeability of a class of

23  harm or type of harm.  It doesn't have to be the specific harm

24  to me, but if my harm is within a certain class, the

25  foreseeability of the causation of that class can be invoked as

1    a defense by the Trust.

2           So the issue is trying to find -- and believe me, I

3    don't want all of this extra work, it's very difficult.  I

4    asked counsel if they'd stipulate to the fact that they have

5    aware -- they're aware of the fact that filing a foreclosure

6    can cause harm and interfere with someone's ability to obtain

7    and maintain financing.  And not that they -- I don't ask them

8    to admit that it actually did this to me.  I would rely on my

9    proofs to that effect.  But the point I'm trying to make is the

10   bridging point that they have and should be aware that filing a

11   foreclosure is harmful to someone's ability to obtain and

12   maintain financing, because that is one of the main -- one of

13   the harms that we're litigating here.

14          And so we look to other sources.  We looked -- where

15   is it that they have notice that this has caused harm?  Have

16   they been put on notice by the Federal Reserve?  I believe that

17   they have, based on my involvement prior, Your Honor, in court

18   proceedings.  Do they have notice that this kind of behavior

19   causes harm by, say there -- in New Jersey, there's a New

20   Jersey Practices Series which discusses it.  Are they using the

21   New Jersey Practices Series in their foreclosure practices?

22   Because it actually -- it talks about the harm that comes from

23   filing foreclosure.  So should they -- do they know this or is

24   did they constructively know it, that it causes harm?

25          And the awareness to it -- to whether or not this

1    class of harm could happen is an issue.  I foresee it being an

2    issue.  And Ms. Hager's refusal to stipulate to the general

3    knowledge of it shows that they have -- that they're afraid of

4    it.  So I have to then now go through it and see where I can

5    show that -- that they should be aware of it.

6            THE COURT:  Okay.  I'm going to go ahead and rule on

7    the record with respect to the six categories as to which the

8    Trust objects to producing documents.  With respect to the

9    first, which was notice or written complaints concerning other

10   borrowers, the objection is sustained.  The issues for trial

11   relate to other business ventures of Mr. Reed and whether he

12   can show damages with respect to it.  So the first category of

13   the objection is sustained.

14           The second category were notices received between 2003

15   and 2010 from governmental agencies regarding improper

16   practices.  The objection is sustained for the same reason.

17           Category 3 was all complaints between 2003 and 2010

18   from mortgagors having nothing to do with Mr. Reed.  That

19   objection is sustained.

20           I'll come back in a minute to internal GMAC guidelines

21   to foreclosure or lis pendens.  I'll come back to that in a

22   second.

23           With respect to the fifth category which was -- I

24   don't have it verbatim -- but it was communications with

25   vendors or others regarding Reed, the objection is overruled.

1   All nonprivileged documents concerning communications about Mr.

2   Reed need to be produced.

3         And the sixth category were internal policies on

4   delinquent accounts in foreclosure.  To the extent any internal

5   policies discuss or relate in any way to properties or business

6   opportunities of borrowers other than the one for which

7   foreclosure is being sought or which were delinquent, I'm going

8   to permit -- so I'm going to require production to the extent

9   any policies -- internal policies deal with or allude to in any

10  way possible other consequences that could come to a borrower

11  from having his account determined to be delinquent or

12  foreclosure commenced.

13        Let me come back to the internal GMAC guidelines with

14  respect to foreclosure and lis pendens.  I guess, there as

15  well -- tell me, Ms. Hager, what documents fall under that

16  category?  Do you know what documents GMAC has with respect to

17  the guidelines?

18        MS. HAGER:  Your Honor, this is Barbara Hager.  I do

19  not -- I do not know what documents they might have.  There --

20  it may be the case that there aren't any policies and

21  procedures.  I don't -- I really don't have an answer to that

22  at this time.

23        THE COURT:  Okay.  Well, I'm going to -- my ruling is

24  going to be, with respect to the internal GMAC guidelines to

25  foreclosure and lis pendens -- look, the issue with respect to

1    Mr. Reed's home have been dealt with and he's been awarded

2    damages by the Court, and that portion of my decision was

3    affirmed.  So it's only if internal GMAC guidelines refer,

4    relate, or deal in any way with the effects or consequences on

5    properties other than the one in foreclosure or as to which a

6    lis pendens is filed.  We're not going to revisit issues that

7    have already been decided by the Court.

8        Mr. Reed is entitled to obtain discovery of any

9    documents that would bear on, relate to, refer to potential

10    consequences to a borrower for other investment opportunities

11    or other properties that are not subject to the mortgages

12    serviced by or owned by GMAC or one of the ResCap companies.

13    So the objection is sustained as to categories 1, 2, and 3.

14    They're overruled completely as to category 5, which were any

15    communications regarding Mr. Reed other than, obviously, if

16    there's privilege, that will apply.

17        And as to internal guidelines regarding foreclosure or

18    lis pendens or internal policies regarding delinquent accounts

19    and foreclosure, those are only to be produced to the extent

20    that they refer or relate to -- I'll use a term for this, but I

21    don't necessarily limit it to that -- sort of the collateral

22    consequences, the other -- Mr. Reed talks about the -- argues

23    that it's foreseeable consequences.  To the extent that any of

24    those internal policies or guidelines refer or relate in any

25    way to that, that those have to be produced as well.

1          All right.  Now, let's deal, Ms. Hager, with respect

2     to -- what about with respect to the categories for 30(b)(6)

3     deposition?

4          MS. HAGER:  Yes, Your Honor.  This is Barbara Hager.

5     Your Honor, Mr. Reed has requested -- one category is

6     underwriting, period.  That's the extent of it.  The other

7     categories, financial -- excuse me -- Federal Reserve

8     investigations, findings, consent decrees, and wrongful

9     foreclosure harm.  The next is methods and practices regarding

10    delinquent account notification.  The next is due diligence

11    standards and best practices standards for proceeding to

12    foreclosure.  The next category is due diligence standards and

13    best practices standards for supervising foreclosure.  And

14    finally, prior litigation regarding wrongful foreclosures from

15    2003 through 2010.  Those are the only remaining categories

16    that we haven't been able to work through.

17         THE COURT:  All right.  You want to address that, Mr.

18    Reed?

19         MR. REED:  Your Honor, it's the same as what I said

20    regarding documents.  My primary goal here is to suss out

21    evidence that would show that the GMAC Mortgage would have

22    knowledge that they -- to use their word -- they can cause

23    collateral harm to an individual if their mortgages are

24    foreclosed upon, or made delinquent, or et cetera.  And the

25    issue is the significance of that.

1          And I've tried to craft it in that regard, taking

2     guidance from as much research as I can.  And I welcome your

3     continued guidance as well, in this matter.

4          THE COURT:  Okay.  I'm going to rule with respect to

5     the categories.  With respect to underwriting, the objection is

6     sustained.  With respect to the Federal Reserve investigation,

7     the objection is sustained.  With respect to methods and

8     practices for delinquent accounts.  I'll permit inquiry related

9     to consideration of effects on other investment opportunities.

10    In other words, because Mr. Reed claims that a foreseeable

11    consequence of foreclosure on his home was to adversely affect

12    his ability to finance or proceed with other investments.  I'll

13    permit examination, if there is anything that can be gained

14    from it with respect to those collateral effects, foreseeable,

15    unforeseeable, et cetera.

16         With respect to due diligence standards for proceeding

17    to foreclosure, the objection is sustained.  That's already

18    been dealt with in the Court's prior decision.

19         With respect to the due diligence standards for

20    supervising foreclosure, the objection is sustained, except to

21    the extent -- in other words, if Mr. Reed -- and I don't know

22    if the record would support this -- if Mr. Reed raised the

23    issue with GMAC in trying to obtain a forbearance or loan

24    modification or some relief with respect to his home, if he

25    raised the issue with GMAC about the consequences to me of your

1   doing that would be to foreclose, prevent, harm my efforts to

2   proceed with these other potential business ventures, to the

3   extent that the record establishes or Mr. Reed in good faith

4   argues that I -- and I think I alluded to this at the last

5   hearing -- if he raised with GMAC that I've got these other

6   business ventures.  You shouldn't be foreclosing because you're

7   going to harm me by the effect on obtaining financing and

8   proceeding, I'll permit the examination with respect to that

9   subject.  When I say "that subject", that subject is the effect

10  on other business ventures.  But otherwise the objection is

11  sustained.

12        So those will be the Court's rulings.  I think that

13  should -- Ms. Hager, does that resolve the disputed categories?

14        MS. HAGER:  Your Honor, there was one additional

15  category in the notice of deposition --

16        THE COURT:  Okay.

17        MS. HAGER:  -- which was prior litigation regarding

18  wrongful foreclosures.

19        THE COURT:  Oh, right.  The objection is sustained.

20  No, that's right.  I have that on my list here.  The objection

21  is sustained.  We're not -- this has got nothing to do with

22  what ResCap GMAC -- what litigation they may have been involved

23  in with others.  So that objection is sustained.

24        All right, any other categories, Ms. Hager?

25        MS. HAGER:  No, Your Honor.  That covers it.  Thank

1  you.

2         THE COURT:  Okay, Mr. Reed, anything else you want to

3  raise today?

4         MR. REED:  No, Your Honor.  I think -- like I said --

5         THE COURT:  Okay.

6         MS. HAGER:  -- you understand what I'm trying to

7  obtain.

8         THE COURT:  I do.  And I'm fully prepared to hear

9  whatever evidence that you can -- that's relevant and material

10  that you can introduce that deals with the other ventures that

11  you were seeking to do and the impact that foreclosure had on

12  it and whether that results in compensable damages to you.

13  Okay?

14         MR. REED:  Sure.

15         THE COURT:  All right.  Thanks very much to both of

16  you.  Okay, we're adjourned.

17         MS. HAGER:  Thank you, Your Honor.

18         MR. REED:  Thank you, Your Honor.  Bye-bye.

19      (Whereupon these proceedings were concluded at 12:22 PM)

20

21

22

23

24

25

I N D E X

RULINGS

|  | PAGE | LINE |
|---|---|---|
| Trust's objection to produce notices or written complaints received by GMAC between 2003 and 2008 from other borrowers claiming financial injury or other harm, is sustained. | 8 | 10 |
| Trusts' objection to requests for notices received between 2003 and 2010 from governmental agencies regarding improper practices, sustained. | 8 | 18 |
| Trust's objection to request for all complaints between 2003 and 2010 from mortgagors, sustained. | 8 | 20 |
| Trust's objection to request for communications between GMAC and its clients and vendors in regard to Frank Reed's account is overruled, and the documents will be produced. | 9 | 2 |

|  |  | PAGE | LINE |
|---|---|---|---|
| 2 | Internal policies and procedure manuals | 9 | 6 |
| 3 | regarding delinquent accounts and | | |
| 4 | foreclosures that allude to possible | | |
| 5 | consequences regarding other properties or | | |
| 6 | businesses will be produced. | | |
| 7 | Regarding Internal GMAC Guidelines, Mr. Reed | 10 | 10 |
| 8 | is entitled to obtain discovery of any | | |
| 9 | documents that would bear on, relate to, | | |
| 10 | refer to potential consequences to a | | |
| 11 | borrower for other investment opportunities | | |
| 12 | of other properties that are not subject to | | |
| 13 | the mortgages serviced by or owned by GMAC | | |
| 14 | or one of the ResCap companies. | | |
| 15 | Trust's objection to examination on | 12 | 7 |
| 16 | underwriting is sustained. | | |
| 17 | Trust's objection to examination on Federal | 12 | 8 |
| 18 | Reserve investigations is sustained. | | |
| 19 | With respect to examination on methods and | 12 | 9 |
| 20 | practices on delinquent accounts, | | |
| 21 | examination is permitted regarding | | |
| 22 | collateral effects of foreclosure. | | |

|   |   | PAGE | LINE |
|---|---|------|------|
| 1 |   |      |      |
| 2 | Trust's objection to examination on due | 12 | 18 |
| 3 | diligence standards for proceeding to |   |   |
| 4 | foreclosure is sustained. |   |   |
| 5 | Trust's objection to examination on due | 12 | 21 |
| 6 | diligence standards for supervising |   |   |
| 7 | foreclosure is sustained except as to Mr. |   |   |
| 8 | Reed's communications with GMAC regarding |   |   |
| 9 | potential harm to other business ventures. |   |   |
| 10 | Trust's objection to examination on prior | 13 | 21 |
| 11 | litigation regarding wrongful foreclosure is |   |   |
| 12 | sustained. |   |   |

1

2                          C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _Penina Wolicki_

10

11   _____

12   PENINA WOLICKI

13   AAERT Certified Electronic Transcriber CET**D-569

14

15   eScribers

16   700 West 192nd Street, Suite #607

17   New York, NY 10040

18

19   Date:  July 19, 2016

20

21

22

23

24

25