UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

RESIDENTIAL CAPITAL, LLC, et al.,
   Post-Effective Date Debtors                                  Chapter 11

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RESCAP BORROWER CLAIMS TRUST,         Case No. 12-12020-mg
   Objector
v.
RICHARD D. RODE,
    Creditor-Beneficiary

---

DECLARATION UNDER PENALTY OF PERJURY AS DIRECT TESTIMONY OF
RICHARD D. RODE IN CONTESTED CLAIMS PROCEEDINGS
CLAIMS NOS. 5610 AND 5612

---

Richard D. Rode declares, under penalty of perjury pursuant to 28 U.S.C. sec. 1746:

1. I am the Claimant in these proceedings and I state the facts set forth herein on my own personal knowledge.

2. I am an adult citizen of the State of Texas.

3. I reside at 2301 W. Lawther Drive, in Deer Park, Harris County, Texas with my wife, Maudeena (Dee) Rode.

4. 2301 W. Lawther Drive, in Deer Park, Harris County, Texas is my Homestead and the Homestead of my wife, Dee Rode.

5. I am a builder.

6. My company, Rode Construction, Inc. ("Rode Construction"), built the dwelling located at 2301 W. Lawther Drive, in Deer Park, Harris County, Texas on a parcel of real estate I and my former spouse, Barbara O. Rode, purchased in 1997 for $39,500.00.

1

7. My former spouse and I and borrowed $31,000.00 from Bayshore National Bank of La Porte (Bayshore) for the purchase of the parcel of real estate located at 2301 W. Lawther Drive, in Deer Park, Harris County, Texas .

8. By 2000, the parcel of real estate was free and clear of liens and encumbrances.

9. On June 15, 2000, Rode Construction obtained a construction loan from Bayshore National Bank, a local bank with which Rode Construction had a business relationship.

10. My former spouse and I deeded the parcel of real estate located at 2301 W. Lawther Drive, in Deer Park, Harris County, Texas to Rode Construction.

11. Rode Construction granted a Deed of Trust to Bayshore and made a Note payable to Bayshore in the amount of $240,000.00 with installment payments over a 12 month term, with a balloon payment due on May 15, 2001.

12. Rode Construction provided the materials and labor to build the dwelling.

13. When the dwelling was completed, my former spouse and I purchased the property from Rode Construction, financing the purchase through North American Mortgage Company (North American) on March 6, 2001 and occupied the Homestead together until the end of our marital relationship.

14. After the end of my relationship with Barbara O. Rode, I continued to occupy the Homestead.

15. I married Maudeena Rode on March 21, 2008 and we have lived at 2301 W. Lawther Drive, in Deer Park, Harris County, Texas together, occupying the real estate as our Homestead, since the date of our marriage.

16. I have continuously occupied the Homestead since soon after the dwelling was

completed in January, 2001.

17. In 2001, Bayshore, the local bank, was acquired by SouthTrust Bank, N.A. ("SouthTrust Bank").

18. Rode Construction continued to do business with the local bank personnel who were now employed by SouthTrust Bank.

19. An employee of SouthTrust Bank solicited an application to re-finance the loan secured by the Deed of Trust (DOT) which I and Barbara O. Rode had granted to North American Mortgage Company, through SouthTrust Bank, in 2003, suggesting that I would have a lower interest rate on the re-financed obligation.

19. I applied to re-finance the purchase money loan with SouthTrust Bank and a loan was offered by SouthTrust Bank.

20. I accepted the offer to re-finance because the offered product carried a lower interest rate on the obligation than the purchase money loan financing provided by or through North American.

21. A Note and Deed of Trust were prepared for what appeared to be a conventional real estate closing.

22. The Note displayed the date of March 18, 2003, but the purported real estate closing did not occur until March 19, 2003.

23. I signed a Note made payable to SouthTrust Mortgage Corporation, which was represented to be the Lender, on March 19, 2003.

24. I granted a Deed of Trust to SouthTrust Mortgage Corporation on March 19, 2003 and Barbara O. Rode joined in the conveyance pro forma to perfect the lien only.

26. After March 19, 2003, the purported mortgage loan was "serviced" by SouthTrust Mortgage, an affiliate of SouthTrust Bank, and I made my monthly payments locally and in person at SouthTrust Bank.

27. On July 14, 2003, I was informed that the "servicing" of the mortgage loan would be transferred to Homecomings Financial, LLC (Homecomings) effective August 1, 2003.

28. I thereafter sent my payments to Homecomings as instructed.

29. Prior to 2007, there were servicing errors by Homecomings which are not pertinent to the limited issues for trial in this matter but which support my claims against Homecomings and GMAC Mortgage, LLC (GMACM) as originally filed.

30. Because GMACM claimed to have succeeded to the interests of Homecomings as the servicer of the mortgage loan, the damages caused to me by the servicing activities of Homecomings are also claimed against GMACM as its successor in interest.

31. From August 1, 2003 to the date of the sale of GMACM's servicing platform to Ocwen Loan Servicing, LLC in February, 2013 (Judicial Notice of the Sec. 363 Sale in these proceeding is requested), the servicing of my mortgage loan was operated by Homecomings/ GMACM.

32. I have identified the servicing operation as Homecomings/GMAC for all actions taken from May, 2007 because the Objector states that GMACM began servicing my loan account in May, 2007, but GMACM continued to hold itself out to me as Homecomings at all times relevant to the claims contested herein. (See footnote 7 in this Court's September 2, 2015 Opinion and Order.)

33. I have recently discovered, since the filing of my Proofs of Claim, that other entities

whose Chapter 11 proceedings were administratively consolidated in the lead case entitled *In re Residential Capital, LLC* (*In re RESCAP, LLC*) are responsible for the damages I have suffered and continue to suffer and I reserve my rights to proceed against any and all nonbankrupt entities who are responsible for the past and present injuries to me as assignees, affiliates or successors in interest to the RESCAP Debtors and their various agents.

34. Servicing errors arose (again) in 2007.

35. Both Homecomings/GMACM and I paid the 2007 real property taxes to the Harris County Treasurer and the Harris County Treasurer refunded the tax payments to Homecomings.

36. Homecomings/GMACM failed to credit my escrow account with the refund of the 2007 property taxes.

37. Homecomings/GMACM obtained a policy of forced-place hazard insurance and charged the premiums to my escrow account with Homecomings/GMACM, although I had my own policy of property and casualty insurance to protect the Homestead/GMACM against insurable risks.

38. The premiums charges by Homecomings/GMACM to the escrow account for the improperly obtained forced-place hazard insurance were considerably more expensive than the premiums for the property and casualty insurance which I was carrying.

39. Homecomings/GMACM did not timely refund the premiums charged against the escrow account for the improperly obtained forced-place insurance, causing my loan account appear to be in default.

40. In June, 2008, Homecomings/GMACM offered me a loan modification in because of the errors in the servicing of my account involving the failure to credit the refund of the 2007 real

property taxes to Homecomings from the Harris County Treasurer and the improper charges for forced-place hazard insurance premiums.

41. I disagreed with the characterization of the correction of Homecomings/GMACM's accounting errors as a loan modification, but Homecomings/GMACM insisted that the corrections to my account had to be characterized as a loan modification.

42. Homecomings/GMACM purportedly approved me for a trial modification in September, 2008, when principles of business law and customer service would require Homecoming/GMACM to correct its own servicing errors and no modification of the loan should have been required from the account to be corrected.

43. For reasons then unknown to me, Homecomings/GMACM refused to correct the errors without characterizing the correction as a loan modification.

44. My Homestead was damaged by the natural disaster known as "Hurricane Ike" in September, 2008.

45. At the time the Homestead was damaged, it appears that Homecomings/GMACM was carrying a separate hazard insurance policy or policies as a credit enhancement under the Pooling and Servicing Agreement for the RALI Series 2003-QS12 Trust, published as the February 19, 2008 Prospectus Supplement filed with the Securities and Exchange Commission (SEC) (Exhibit 104).

46. Homecomings and GMACM admit that they collected insurance proceeds from the hazard insurance policies. (See Responses to Requests for Admission from Homecomings as Exhibit 3 and from GMACM at Exhibit 5).

47. In insurance proceeds under the forced-place policies were paid to

Homecomings/GMACM, I was never notified that any claims were made or that any payments received and no payments made on any such claims were provided to me to make the repairs as required by the RFC-GMAC Servicer Manual (Exhibit 231).

48. I paid approximately $100,000.00 out of my own pocket to repair the damages to my Homestead from "Hurricane Ike."

49. As a result of the natural disaster known as "Hurricane Ike," a national disaster was declared.

50. Homecomings offered me a three (3) month forbearance of payments, which may have been based on third party payments to Homecomings/GMACM.

51. As a result of the forbearance offered to me, which I believed in good faith to be a true offer to waive payments based on the "Hurricane Ike" national disaster declaration, I was declared to be in default in my payments.

52. Homecomings/GMACM continued to service my loan into default by continuing to obtain force- placed hazard insurance on the Homestead and failing to credit my escrow account with the 2007 property tax refund paid to Homecomings by the Harris County Treasurer.

53. Still hoping to obtain an accounting of the true amount of payments claimed to be due to Homecomings/GMACM and realizing that I was being engineered into default by Homecomings' false offer to forbear three (3) months of payments due to the "Hurricane Ike" national disaster, I sought a loan modification which I had learned was the terminology used by Homecomings for correcting servicing errors.

54. I have made payments to Homecomings/GMACM in the tens of thousands of dollars which have never been properly credited to my account.

55. I was offered a loan modification in June, 2009, which was voided on the pretext that Homecomings/GMACM was requiring a Quit Claim Deed from Barbara O. Rode, when Barbara O. Rode had conveyed her community property interest in the Homestead to me after the divorce in 2005, which was recorded in the Harris County Register of Deeds on June 13, 2006. (Request for Judicial Notice of the Special Warranty Deed from Barbara O. Rode to Richard D. Rode will be made.)

56. Eventually, another loan modification was offered to me in August, 2009, after GMACM claims it took over the servicing of the loan account from Homecomings.

57. GMACM still operating under the name of Homecomings in its communications with me.

58. I made the first payment under the 2009 "loan modification" in September, 2009, receipt of which was acknowledged by Denise Jurgen of GMACM on or about September 24, 2009 [Exhibit 19, 118 (Bates 80) and 205 (Bates 290].

59. Because I was concerned that I had not been provided with an accounting of tens of thousands of dollars in payments, I hired Attorney Jeffrey H. Uzick to assist me in assuring that my payments would be accounted for, that my account would be brought current and that the falsely engineered default would be cured.

60. I executed the August, 2009 loan modification agreement in the presence of Attorney Uzick, who transmitted it by facsimile to Homecomings/GMACM on October 1, 2009 and delivered the paper copy of the agreement to Homecomings/GMACM by overnight delivery that same day.

61. I now know that Homecomings/GMACM executed the loan modification agreement

on October 7, 2009 by the signature of Kris Cayo as "limited signing officer." [Exhibit 202 (Bates 284-287)].

62. Homecomings/GMACM admits that it then unilaterally cancelled the contract. (See Declaration of Kathy Priore of the RESCAP Liqudiating Trust in support of the Objection to the Proofs of my Claim , Exhibit 100 and its Exhibits A-Y.)

63. GMACM then accelerated the payments due under the Note made payable to SouthTrust and commenced foreclosure proceedings against me (Exhibit 106), claiming to be **the owner and holder of the Note** I made payable to SouthTrust Mortgage Corporation and the beneficiary of the Deed of Trust granted to SouthTrust Mortgage Corporation on March 19, 2003 (Exhibit 106, page 2).

64. The April 16, 2010 Assignment of Deed of Trust (Claimant's Exhibits 9, 100-C and 227, Objectors' Production of Documents, Bates 669-670) was executed by Donna Fitton, formerly an employee of Executive Trustee Services, a RESCAP Debtor, Exhibit 96-A, 97-B, Exhibit A to Declaration of Dee Rode and Exhibit 232, Bates 1050, in the capacity of "limited signing officer for Mortgage Electronic Registration Systems, Inc."; and

65. A copy of an Allonge has been uncovered which appears to have been attached to the Note originally made payable to SouthTrust Mortgage Corporation and which displays an endorsement stamp with the signature of Judy Faber, formerly an employee of GMAC Mortgage, LLC (Exhibit 97-A, 97-B, Exhibit B to Declaration of Dee Rode and Exhibit 228, Bates 671) in the capacity of "Vice President of Residential Funding Corporation." (See Exhibits 7: Note and Allonge; 222 Note, Objector's Production of Documents at Bates 652-654; and 223, undated Allonge, Objector's Production of Documents, Bates 655).

9

66. The undated Allonge purports endorse the Note from an employee of GMACM, Judy Faber, as Vice President of Residential Funding Corporation (which she was not) in favor of Deutsche Bank Trust Company Americas as Trustee of an unidentified Trust.

67. In 2010, I brought an action by Petition for damages and equitable relief in the Harris County, Texas District Court against Homecomings and GMACM, which was subsequently amended.

68. The First Amended Petition resulted in a Notice of Removal to the United States District Court for the Southern District of Texas.

69. The First Amended Petition was stayed as the result of the May 14, 2012 Chapter 11 Petitions of the RESCAP Debtors, consolidated into Case No. 12-12020.

70. Eventually, the First Amended Petition was dismissed without prejudice due to the Chapter 11 proceedings.

71. By a document dated June 24, 2016 and received on June 30, 2016, Power Default Services, Inc. caused a purported Notice of Acceleration to be delivered by registered mail to the Claimant, along with purported Notice of Substitution of Trustee and Notice of Trustee's Sale in the name of Ocwen Loan Servicing, LLC, successor in interest to the RESCAP Debtors by virtue of the sale of the servicing platform approved by this Court on February 16, 2013, dramatically increasing the Claimant's damages and requiring urgent, equitable relief.

72. Exhibits 24-33, 35-53, 59, 60 are true and correct copies of documents and items of correspondence sent to me by Homecomings/GMAC on the dates stated thereon.

73. Exhibits 78, 79, 80, 81, 85, 86, 98 are true and correct copies of documents I have retained pertaining to the national disaster known as Hurricane Ike.

74. Exhibits 110 and-232 (Bates 1-1050) are true and correct copies of documents produced by Homecomings and GMACM in response to Request for Production.

75. Exhibit 99 consists of true and correct printed copies of photographs of my Homestead located at 2301 W. Lawther Drive in Deer Park, Harris County, Texas in its current condition.

75. Exhibit 98 consists of true and correct photocopies of some of the photographs of damages to Homestead located at 2301 W. Lawther Drive in Deer Park, Harris County, Texas in the Hurricane Ike natural disaster.

76. Exhibits 1-233 in these proceedings are true and correct copies of documents that I received, prepared or retrieved, were sent directly to me or were provided my attorneys, in the course of my dealings with Homecomings/GMACM and these proceedings (including responses to discovery requests).

77. Exhibit 107 is a true and correct copy of the Notice of Acceleration and Sale dated June 24, 2016 and received by me on June 30, 2016.

78. My credit has been damaged as a direct result of Homecomings/ GMACM reporting my mortgage loan as being in default and foreclosure, although I am current on my payments on the second lien Home Equity Loan I obtained from the Shell Federal Credit Union on June 16, 2006 (Exhibit 77).

79. My business suffered from lack of access to credit because construction companies usually need access to credit for project funding and completion (Exhibit 84).

80. My ability to contribute to my household's income has been impaired for lack of access to credit to bid on major construction projects, causing me to alter my business plan from

11

pursuing large project requiring a line of credit to smaller projects which can be funded on purely cash basis.

81. I have experienced financial losses and litigation expenses from the Homecomings/GMACM its servicing obligations, which culminated with the unilateral cancellation of the August, 2009 Loan Modification Agreement:

a. Reduced productivity in business (described above);

b. Payments made to and not credited by Homecomings/GMACM;

c. Liquidation of assets:

(1) My retirement account (Exhibits 89, 92, 94 and 95) liquidated to bring the loan account current in on August 8, 2007 in the amount of $12,728.55, based on unexplained payment reversals on June 27, 28 and 29, 2007 (Exhibit 93);

(2) Distress sale of a rental property to remain in business and have funds to pay for legal services to defend against the wrongful foreclosure commenced by Notice of Acceleration and Sale in the name of GMAC Mortgage, LLC by notices dated March 11, 2011 (Exhibit 76) and to pursue my rights in these proceedings (Exhibit 87).

(3) Sale of a classic automobile to obtain funds for litigation expenses in 2016;

d. Tax liability for debt forgiveness income for a debt not forgiven (Exhibit 65) and which was not owed because the credit for payment of my own funds was taken by Homecomings/GMACM;

e. Attorneys fees and costs (Exhibit 87);

f. Expert witness fees; and

g. Travel to New York City, New York to pursue my rights in these proceedings.

82. To the best of my knowledge and belief in attempting to reconstruct payments I made to Homecomings/GMACM, the payments which have been misapplied and not credited amount to $59,313.00, including:

a. Funds were held in "suspense" and not applied;

b. Funds which were misapplied or were not credited to me, generating

(1) Late charges caused were Homecomings/GMACM's accounting errors,

(2) Forced-place insurances,

(3) Property inspections,

(4) Failure to credit real estate tax payments I made and which were refunded to Homecomings/GMACM) by the Harris County Treasurer, and

(5) Removal of my funds from my escrow account for "Corp. Adv." for which a 1099-C (Exhibit 65) was issued, imposing tax liability for me funds I had paid into the escrow account and which Homecomings/GMACM took from my escrow account for its own use.

83. I have reserve my rights to appeal from this Court's Opinion and Order of September 2, 2015 (Doc. 9094) as to the other bases for my Proofs of Claim which were disallowed and expunged thereby.

84. I reserve all of my rights to defend my Homestead and to bring any and all claims for relief against all necessary parties not subject to the discharge injunction granted which was in these proceedings in a court of competent jurisdiction.

FURTHER YOUR DECLARANT SAYETH NAUGHT.

Dated at Deer Park, Texas this 22ⁿᵈ day of July, 2016.

*/s/ Richard D. Rode*
_____
Richard D. Rode