**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION AND PROPOSED TESTIMONY OF SARA LATHROP IN SUPPORT
OF THE OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST
TO CLAIM NUMBERS 5610 AND 5612 FILED BY RICHARD D. RODE**

I, Sara Lathrop, hereby declare as follows:

1. I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "<u>Borrower Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I have been employed by affiliates of ResCap since June 2006. I began my association with ResCap in 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("<u>GMACM</u>"). In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I then became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I oversaw GMACM associates in their efforts to provide borrowers with loss mitigation options and assisted in the development of GMACM's

loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued this role with the ResCap Liquidating Trust (the "Liquidating Trust") in December 2013. In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *Objection of the ResCap Borrower Claims Trust to Claim Numbers 5610 and 5612 Filed By Richard D. Rode* [Dkt. No. 8452] (the "Claims Objection").

2.  In my current and former capacities as Senior Claims Analyst and Loss Mitigation Manager to the Borrower Trust, the Liquidating Trust, and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements are based upon my familiarity with the Debtors' Books and Records kept in the course of their regularly conducted business activities (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by Mr. Rode (the "Claimant").

3.  Since the Debtors' chapter 11 Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust, have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

appropriate treatment of the same. In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

4. Prior to the commencement of the Chapter 11 Cases, the Debtors and their non-debtor affiliates operated the fifth largest mortgage loan servicing business in the United States. As a primary servicer or subservicer, among other services, the Debtors were responsible for collecting and remitting mortgage loan payments, responding to borrower inquiries, accounting for principal and interest, holding custodial and escrow funds for payment of property taxes, insurance premiums, and ancillary products, counseling or otherwise working with delinquent borrowers (including, but not limited to, granting borrowers leniency under certain circumstances and structuring loan modifications and repayment plans for certain borrowers), supervising foreclosures and property dispositions, making advances of required principal, interest, and certain "property protection" costs with respect to delinquent mortgage loans, reporting and remitting payments due to investors, and generally administering the mortgage loans consistent with their contractual undertakings and business practices.

5. From time to time, the Debtors, in their capacity as servicer, agreed to enter into forbearance, modification, or deferment arrangements with borrowers ("<u>Deferment and Forbearance Arrangements</u>") on behalf of investors. The policies and practices regarding Deferment and Forbearance Arrangements were designed to manage borrower relationships, maximize collections, and avoid foreclosure (or repossession of collateral, as applicable) if reasonably possible.

6. By entering into Deferment and Forbearance Arrangements, the Debtors provided delinquent borrowers certain relief or a work-out to repay defaulted amounts. Such relief or work-outs included, without limitation, agreements for the borrower to repay past due amounts over time in addition to the regularly scheduled payment, forgiveness of past due amounts, and/or interest rate reductions or term extensions. The Debtors' reason for entering into such agreements was to avoid costs associated with foreclosures, as well as to pursue a policy of assisting borrowers to retain homeownership when there was a commitment from the borrower and a financial ability to pay on the loan.

7. The Debtors also participated in a number of loan modification programs, including as a leading participating servicer in the Home Affordable Modification Program (frequently referred to as "HAMP"), which is coordinated through Fannie Mae and sponsored by the U.S. Treasury Department. These programs enable borrowers to obtain modifications of the terms of their loans so that they can afford to make continued payments.

8. The Claimant is a borrower under a residential mortgage loan (the "Mortgage Loan") that was originated by SouthTrust Mortgage Corporation ("SouthTrust") on or about March 18, 2003. See Exhibits A and B to the *Declaration of Kathy Priore in Support of the Objection of the ResCap Borrower Claims Trust to Claim Numbers 5610 and 5612 Filed By Richard D. Rode* (the "Supp. Decl."). The Mortgage Loan is evidenced by a note in the amount of $265,175.00 (the "Note"), which was secured by a deed of Trust (the "Deed of Trust") of real property located at 2301 West Lawther Lane, Deer Park, Texas, 77536 (the "Property"). Id.

9. Debtor Residential Funding Corporation ("RFC") purchased the Mortgage Loan from SouthTrust, and transferred its interest in the Loan to Deutsche Bank Trust Company Americas ("Deutsche Bank") when the Mortgage Loan was securitized on or around

4

ny-1240225

June 1, 2003, upon Deutsche Bank's appointment as trustee. The Note was endorsed by SouthTrust to RFC and from RFC to Deutsche Bank, as trustee. Id. An assignment of the Deed of Trust was executed on April 16, 2010 from MERS to Deutsche Bank. See Exhibit C to the Suppl. Decl.

10. Homecomings serviced the Mortgage Loan from approximately April 18, 2003 until July 1, 2009.

11. On July 1, 2009, GMACM began servicing the Mortgage Loan for Deutsche Bank.

12. GMACM transferred servicing of the Mortgage Loan to Ocwen Loan Servicing, LLC on February 16, 2013 in connection with the Debtors' sale of their servicing platform.

13. The Claimant applied for a loan modification in August 2008 and was approved for a trial modification in September 2008. See Exhibit G to Supp. Decl. (the "Servicing Notes").

14. Due to a number of delays in finalizing the permanent loan modification documents following Homecomings' approval of Claimant for a permanent modification in October 2008, the modification was required to be reset several times and ultimately expired. Id.

15. GMACM reopened the Claimant's loan modification review on August 20, 2009 using the original information received in the Claimant's March 2009 workout package. Id.

16. Personnel in GMACM's loss mitigation department approved the Claimant for a loan modification on August 24, 2009, with a payment due date of October 1, 2009. Id.

5

ny-1240225

17. New permanent loan modification documents including a fixed rate loan modification agreement (the "<u>Modification Agreement</u>") were sent to the Claimant on August 26, 2009, with a return date of October 1, 2009. <u>Id</u>.; <u>Exhibit I</u> to Supp. Decl. Although GMACM was the servicer for the Mortgage Loan at the time the Modification Agreement was prepared, Homecomings was incorrectly named as the signatory under the Modification Agreement.

18. The purpose of the loan modification from GMACM's perspective was to try to preserve the Claimant's ownership in the Property and avoid a potentially more costly foreclosure by modifying the Mortgage Loan's payment terms to allow Claimant to meet his obligations in a sustained manner over the long term, consistent with GMACM's servicing guidelines.

19. At the time the terms of the Modification Agreement were approved by GMACM's loss mitigation department, the Mortgage Loan's escrow account—which reflected amounts that had already been advanced by GMACM in its capacity as servicer—had a negative balance of $9,650.15.

20. The negative balance in the Mortgage Loan's escrow account as of August 24, 2009 was primarily the product of two factors: (1) lender-placed insurance premiums for periods as to which the Claimant had not provided evidence of coverage, and (b) real estate taxes due on the Property, which had substantially increased from prior years.

21. The modifications embodied in the Modification Agreement contemplated that the following changes would be made with respect to the Claimant's obligations under the Note and Deed of Trust: (a) the annual interest rate on the Note was to be reduced from 5.375% to 5.00%; (b) $5,189.97 in overdrawn escrow amounts was to be

capitalized and added to the principal balance of the Note then outstanding, bringing the amount payable under the Note to $192,480.84; (c) approximately $10,000 in debt forgiveness was to be posted to the Claimant's escrow account bringing it to a $0 balance; (d) the monthly payment of principal and interest (excluding any escrow amounts) was to be increased from $2,149.16 to $2,320.25, but the total monthly payment due would be reduced from approximately $3,968.46 to $3,013.70, as a result of the debt forgiveness and capitalization of escrow surplus amounts. Id.

22.    The Claimant returned the signed Modification Agreement to GMACM on October 5, 2009. See Exhibit K to Supp. Decl.

23.    On October 7, 2009, an individual in GMACM's loss mitigation department countersigned the Modification Agreement in Homecomings' name. See Exhibit L to Supp. Decl.

24.    On that same date, GMACM (through its insurance or escrow department) processed an insurance refund with respect to an insurance policy on the Property in the amount of $4,686.00, which was also credited against the escrow account balance. The insurance refund was not anticipated by GMACM at the time it agreed to the terms of the Modification Agreement and significantly changed the economics of the modification agreement from GMACM's perspective. As a result of the refund and the debt forgiveness contemplated under the Modification Agreement, the Mortgage Loan's escrow account would have been left with an impermissibly large positive balance, entitling the Claimant to a cash refund, in addition to the other relief that had been provided under the terms of the Modification Agreement. Accordingly, consummating the loan modification on the terms set forth in the Modification Agreement would have resulted in Claimant receiving a double recovery with respect to the

7

ny-1240225

escrow account surplus—once as an account credit due to the debt forgiveness, and once in cash from GMACM's own pocket due to the refund of the escrow account cash balance. Such a double recovery would have been contrary to GMACM's intent in entering into the Modification Agreement.

25.     Upon processing the final modification documentation on or around October 19, 2009, GMACM also determined that the Claimant had not submitted new paystubs for the proof of income as directed, which also required backing off the modification as GMACM did not have the required documentation necessary to verify that the Claimant had a demonstrated ability to make the modified loan payments. See Servicing Notes.

26.     Because the consummation of the Modification Agreement would have been contrary to the intent of GMACM in entering into the agreement and the Claimant had not submitted the updated documentation to complete processing of the modification, GMACM voided the Modification Agreement and did not return a copy of the fully executed agreement to the Claimant. [GMACM did not notify the Claimant of this decision.]

27.     Pursuant to letters dated October 27, 2009 and October 30, 2009 from the Claimant's counsel to the Debtors, the Claimant indicated to GMACM that he did not intend to perform under the terms of the Modification Agreement unless and until he received a countersigned copy of the agreement from GMACM. See Exhibits M and N to Supp. Decl.

28.     After the Modification Agreement was voided, GMACM restarted the loan modification review process, and ultimately approved Claimant for a loan modification on revised terms in August 2010, subject to receiving appropriate documentation from Claimant. The August 2010 modification was never completed because Claimant did not submit the requisite documents.

29. The Claimant's last payment under the Mortgage Loan was for October 2008. See Exhibit O to Supp. Decl.

30. At the time the Claimant returned the Modification Agreement to GMACM, the Mortgage Loan account was owing for twelve payments, from November 2008 through October 2009. Id.

31. The Claimant remains in possession of the Property.

32. On November 16, 2012, the Claimant filed Claim No. 5610 against ResCap in the amount of $1,262,000 (comprised of a $339,000 secured claim and a $923,000 unsecured claim). See Exhibit 1-A to the Claims Objection. Pursuant to the *Stipulation of Richard D. Rode to Reclassification and Redesignation of Claim #5610 Pursuant to Debtors' Thirty-Sixth Omnibus Objection to Claims* [Dkt. No. 5758], the claim was reclassified as a claim against Debtor GMAC Mortgage, LLC ("GMACM").

33. On November 16, 2012, the Claimant filed Claim No. 5612 against the Debtor Homecomings Financial, LLC ("Homecomings") in the amount of $1,262,000 (comprised of a $339,000 secured claim and a $923,000 unsecured claim). See Exhibit 1-B to the Claims Objection.

34. Claim Nos. 5610 and 5612 are collectively referred to below as the "Claims". In Box 2 of each proof of claim form (Basis for Claim), the Claims provide that the basis for the claim is "each assert that they are based on "Escrow Overage/Overpayments, Mortgage Fraud, Damages, Respa Violation, Contingent." See Exhibits 1-A and 1-B to the Claims Objection.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 22, 2016

                                        /s/ Sara Lathrop
                                        Sara Lathrop
                                        Senior Claims Analyst for the ResCap Borrower Trust