**Hearing Date: August 15, 2016 at 9:00 a.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards

*Counsel for The ResCap Borrower Claims Trust*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

---

## RESCAP BORROWER CLAIMS TRUST'S MEMORANDUM
## OF LAW IN SUPPORT OF THE TRUST'S OBJECTION
## <u>TO CLAIM NUMBERS 5610 AND 5612 FILED BY RICHARD D. RODE</u>

# TABLE OF CONTENTS

**Page**

SHORT PREVIEW OF THE ESSENTIALS OF THE CASE......................................................1

ISSUES TO BE TRIED...........................................................................................................2

ANALYSIS OF THE LAW AND FACTS ...............................................................................3

    A.    Factual Background...................................................................................................3

    B.    GMACM's Breach of the Modification Agreement Was Excused Under
the Doctrines of Unilateral Mistake and/or Frustration of Purpose.......................9

        1.    Frustration of Purpose ...............................................................................9

        2.    Unilateral Mistake ..................................................................................10

    C.    The Claimant Cannot Sustain a Claim for Breach of Contract Because He
Failed to Tender Performance and Was Not Excused from Doing So.................13

    D.    Claimant Has Not Established that He Suffered Any Compensable
Damages as a Proximate Result of GMACM's Breach of the Modification
Agreement .............................................................................................................16

    E.    The Claimant Is Not Entitled to Punitive Damages ............................................20

CONCLUSION ......................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Amoco Prod. Co. v. Alexander,
    622 S.W.2d 563 (Tex. 1981) ................................................................................20

Atkinson v. Jackson Bros.,
    270 S.W. 848 (Tex. Comm'n App. 1925, holding approved) .................................13

Buchanan v. U.S. Bank N.A.,
    C.A. No. H-13-3525, 2014 U.S. Dist. LEXIS 90697 (S.D. Tex. July 3, 2014) .....................15

Builders Sand, Inc. v. Turtur,
    678 S.W.2d 115 (Tex. Ct. App. 1984)....................................................................16

Centex Corp. v. Dalton,
    840 S.W.2d 952 (Tex. 1992) ................................................................................10

Dobbins v. Redden,
    785 S.W.2d 377 (Tex. 1990) ................................................................................13

Dorsett v. Cross,
    106 S.W.3d 213 (Tex. Ct. App. 2003)....................................................................14

Erickson v. Rocco,
    433 S.W.2d 746 (Tex. Civ. Ct. App. 1968)............................................................14

Exxon Co. v. Sofec, Inc.,
    517 U.S. 830 (1996) ............................................................................................18

Flores v. Medline Indus., Inc.,
    No. 13-14-00436-CV, 2015 Tex. App. LEXIS 12719 (Tex. Ct. App. Dec. 17, 2015) ...........11

Gonzalez v. Denning,
    394 F.3d 388 (5th Cir. 2004) ...............................................................................16

Green Int'l, Inc. v. Solis,
    951 S.W.2d 384 (Tex. 1997) ................................................................................19

Guggenheim Corp. Funding, LLC v. Valerus Compression Servs., L.P.,
    465 S.W.3d 673 (Tex. Ct. App. 2015)....................................................................11

Gulf Pipe Line Co. v. Nearen,
    138 S.W.2d 1065 (Tex. 1940) ...............................................................................13

ii

James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.,
    335 S.W.2d 371 (Tex. 1960) ............................................................ 11, 12

Jim Walter Homes, Inc. v. Reed,
    711 S.W.2d 617 (Tex. 1986) .................................................................... 20

Laali v. IndyMac Mortg. Servs.,
    No. 4:1-cv-432, 2013 U.S. Dist. LEXIS 117075 (E.D. Tex. May 29, 2013) .......................... 14

Langlois v. Wells Fargo Bank N.A.,
    581 Fed. Appx. 421 (5th Cir. Tex. 2014) ...................................................... 14

MBM Fin. Corp. v. Woodlands Operating Co.,
    292 S.W.3d 660 (Tex. 2009) ................................................................... 19

Mead v. Johnson Group, Inc.,
    615 S.W.2d 685 (Tex. 1981) ................................................................... 18

Morrall v. CitiMortgage, Inc.,
    No. CV-114-086, 2015 U.S. Dist. LEXIS 22597 (S.D. Ga. Feb. 25, 2015) .......................... 17

Mustang Pipeline Co. v. Driver Pipeline Co.,
    134 S.W.3d 195 (Tex. 2004) ................................................................... 19

Peoples v. BAC Home Loans Servicing, LP,
    No. 4:10-cv-489-A, 2011 U.S. Dist. LEXIS 31626 (N.D. Tex. Mar. 25, 2011) ..................... 17

Preston v. Love,
    240 S.W.2d 486 (Tex. Civ. Ct. App. 1951) .................................................... 16

Ramirez Co. v. Housing Auth. of Houston,
    777 S.W.2d 167. (Tex. Ct. App. 1989) ........................................................ 10

Stewart v. Basey,
    245 S.W.2d 484 (Tex. 1952) ................................................................... 16

Stewart v. Sanmina Tex., L.P.,
    156 S.W.3d 198 (Tex. Ct. App. 2005) ......................................................... 16

Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.,
    118 S.W.3d 60 (Tex. Ct. App. 2003) ........................................................... 9

Valero Mktg. & Supply Co. v. Kalama Int'l, LLP,
    51 S.W.3d 345 (Tex. Ct. App. 2001) .......................................................... 13

Vance v. My Apt. Steak House of San Antonio, Inc.,
    677 S.W.2d 480 (Tex. 1984) ................................................................... 13

iii

Water Dynamics, Ltd. v. HSBCBank USA, Nat'l Ass'n,
   509 Fed. Appx. 367 (5th Cir. 2013) ...................................................................................... 15

STATUTES

TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Lexis 2016)..................................................... 19

OTHER AUTHORITIES

RESTATEMENT (SECOND) OF CONTRACTS, § 261 (AM. LAW INST. 1981) ....................................... 9

ny-1240248

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

In accordance with the Joint Pretrial Order [Docket No. 9994], the ResCap Borrower Claims Trust (the "Trust"), as successor in interest to the above-captioned debtors (the "Debtors") with respect to Borrower Claims, hereby files this pretrial memorandum in support of the *Objection of the ResCap Borrower Claims Trust to Claim Numbers 5610 and 5612 Filed By Richard D. Rode* [Dkt. No. 8452] (the "Objection") as to claim numbers 5610 and 5612 filed by Richard D. Rode (the "Claims").

### SHORT PREVIEW OF THE ESSENTIALS OF THE CASE

1.      On November 6, 2012, the Richard D. Rode (the "Claimant" or "Mr. Rode") filed the Claims seeking recovery for alleged wrongdoing on the part of debtors Homecomings Financial, LLC ("Homecomings") and GMAC Mortgage, LLC ("GMACM"). After an initial hearing, the Court issued a *Memorandum Opinion and Order Sustaining in Part and Overruling in Part the ResCap Borrower Claims Trust's Objection to Claim Nos. 5610 and 5612 Filed by Richard D. Rode* [Docket No. 9094] (the "Order"), which sustained the Objection to the Claims as to all but one cause of action.  Under the Order, the Claimant's sole remaining cause of action is for GMACM's alleged breach of a loan modification agreement that was executed by the parties in October 2009 (the "Modification Agreement").  See Order at 26.  The Court held that questions of fact remained regarding whether the Trust may rely on the affirmative defenses of unilateral mistake and frustration of purpose to defeat the breach of contract claim.  Id. at 27.  The Court further held that whether the Claimant independently breached the Modification Agreement or was excused from performing his obligations under the agreement by virtue of GMACM's alleged breach was also a contested factual issue.  Id. at 27-

28. Finally, the Court held that there was no basis for granting punitive damages in connection with the breach of contract claim.  Id.

2.    At trial, the Trust will show that the Claimant, who has the burden of proof, is not entitled to any recovery on account of his breach of contract claim for several reasons.  *First*, the Trust will show that GMACM was excused from performing under the Modification Agreement under the doctrines of unilateral mistake and frustration of purpose. *Second*, the Trust will show that, even if GMACM was not excused from performing under the Modification Agreement, the Claimant cannot sustain a breach of contract claim because he independently and simultaneously breached the Modification Agreement by failing to make (or even attempting to make) a single monthly payment under the agreement before he ever had knowledge of GMACM's internal decision to void the Modification Agreement.  *Third*, and finally, the Trust will show that the Claimant has not established that he suffered compensable damages on account of any breach of the Modification Agreement by GMACM or Homecomings.

## ISSUES TO BE TRIED

3.    Whether GMACM breached the August 2009 Modification Agreement.

4.    To the extent GMACM breached the August 2009 Modification Agreement, whether GMACM's breach was excused under the doctrines of unilateral mistake or frustration of purpose.

5.    Whether Claimant simultaneously and independently breached the August 2009 Modification Agreement.

6.    The extent of Claimant's actual compensatory damages arising out of a breach by GMACM of the August 2009 Modification Agreement.

2

7.    Whether Claimant is entitled to punitive damages arising out of a breach by GMACM of the August 2009 Modification Agreement.

## ANALYSIS OF THE LAW AND FACTS

### A.    Factual Background

8.    Prior to the commencement of the Chapter 11 Cases, the Debtors and their non-debtor affiliates operated the fifth largest mortgage loan servicing business in the United States.  As a primary servicer or subservicer, among other services, the Debtors were responsible for collecting and remitting mortgage loan payments, responding to borrower inquiries, accounting for principal and interest, holding custodial and escrow funds for payment of property taxes, insurance premiums, and ancillary products, counseling or otherwise working with delinquent borrowers (including, but not limited to, granting borrowers leniency under certain circumstances and structuring loan modifications and repayment plans for certain borrowers), supervising foreclosures and property dispositions, making advances of required principal, interest, and certain "property protection" costs with respect to delinquent mortgage loans, reporting and remitting payments due to investors, and generally administering the mortgage loans consistent with their contractual undertakings and business practices.

9.    From time to time, the Debtors, in their capacity as servicer, agreed to enter into forbearance, modification, or deferment arrangements with borrowers ("Deferment and Forbearance Arrangements") on behalf of investors.  The policies and practices regarding Deferment and Forbearance Arrangements were designed to manage borrower relationships, maximize collections, and avoid foreclosure (or repossession of collateral, as applicable) if reasonably possible.

10.    By entering into Deferment and Forbearance Arrangements, the Debtors provided delinquent borrowers certain relief or a work-out to repay defaulted amounts.  Such

3

relief or work-outs included, without limitation, agreements for the borrower to repay past due amounts over time in addition to the regularly scheduled payment, forgiveness of past due amounts, and/or interest rate reductions or term extensions. The Debtors' reason for entering into such agreements was to avoid costs associated with foreclosures, as well as to pursue a policy of assisting borrowers to retain homeownership when there was a commitment from the borrower and a financial ability to pay on the loan.

11.     The Debtors also participated in a number of loan modification programs, including as a leading participating servicer in the Home Affordable Modification Program (frequently referred to as "HAMP"), which is coordinated through Fannie Mae and sponsored by the U.S. Treasury Department. These programs enable borrowers to obtain modifications of the terms of their loans so that they can afford to make continued payments.

12.     The Claimant is a borrower under a residential mortgage loan (the "Mortgage Loan") that was originated by SouthTrust Mortgage Corporation ("SouthTrust") on or about March 18, 2003. The Mortgage Loan is evidenced by a note in the amount of $265,175.00 (the "Note"), which was secured by a deed of Trust (the "Deed of Trust") of real property located at 2301 West Lawther Lane, Deer Park Texas, 77536 (the "Property").

13.     Debtor Residential Funding Corporation ("RFC") purchased the Mortgage Loan from SouthTrust, and transferred its interest in the Loan to Deutsche Bank Trust Company Americas ("Deutsche Bank") when the Mortgage Loan was securitized on or around June 1, 2003, upon Deutsche Bank's appointment as trustee. The Note was endorsed by SouthTrust to RFC and from RFC to Deutsche Bank, as trustee. An assignment of the Deed of Trust was executed on April 16, 2010 from MERS to Deutsche Bank.

4

14.     Homecomings serviced the Mortgage Loan from approximately April 18, 2003 until July 1, 2009.

15.     On July 1, 2009, GMACM began servicing the Mortgage Loan for Deutsche Bank, and continued to do so until servicing of the Mortgage Loan was transferred to Ocwen Loan Servicing, LLC on February 16, 2013 in connection with the Debtors' sale of their loan servicing platform.

16.     The Claimant applied for a loan modification in August 2008 and was approved for a trial modification in September 2008.  Due to a number of delays in finalizing the permanent loan modification documents following Homecomings' approval of Claimant for a permanent modification in October 2008, the modification was required to be reset several times and ultimately expired.

17.     GMACM reopened the Claimant's loan modification review on August 20, 2009 using the original information received in the Claimant's March 2009 workout package.

18.     Personnel in GMACM's loss mitigation department approved the Claimant for a loan modification on August 24, 2009, with a payment due date of October 1, 2009.

19.     New permanent loan modification documents including the Modification Agreement were sent to the Claimant on August 26, 2009, with a return date of October 1, 2009. Although GMACM was the servicer for the Mortgage Loan at the time the Modification Agreement was prepared, Homecomings was incorrectly named as the signatory under the Modification Agreement.

20.    The purpose of the loan modification from GMACM's perspective was to try to preserve the Claimant's ownership in the Property and avoid a potentially more costly foreclosure by modifying the Mortgage Loan's payment terms to allow Claimant to meet his obligations in a sustained manner over the long term, consistent with GMACM's servicing guidelines.

21.    At the time the terms of the Modification Agreement were approved by GMACM's loss mitigation department, the Mortgage Loan's escrow account—which reflected amounts that had already been advanced by GMACM in its capacity as servicer—had a negative balance of $9,650.15.

22.    The negative balance in the Mortgage Loan's escrow account as of August 24, 2009 was primarily the product of two factors:  (1) lender-placed insurance premiums for periods as to which the Claimant had not provided evidence of coverage, and (b) real estate taxes due on the Property, which had substantially increased from prior years.

23.    The modifications embodied in the Modification Agreement contemplated that the following changes would be made under the Note and Deed of Trust:  (a) the annual interest rate on the Note was to be reduced from 5.375% to 5.00%; (b) $5,189.97 in overdrawn escrow amounts was to be capitalized and added to the principal balance of the Note then outstanding, bringing the amount payable under the Note to $192,480.84; (c) approximately $10,000 in debt forgiveness was to be posted to the Claimant's escrow account bringing it to a $0 balance; and (d) the monthly payment of principal and interest (excluding any escrow amounts) was to be increased from $2,149.16 to $2,320.25, but the total monthly payment due would be reduced from approximately $3,968.46 to $3,013.70, as a result of the debt forgiveness and

ny-1240248

capitalization of escrow surplus amounts.  The first payment under the Modification Agreement was due on November 1, 2009.

24.    The Claimant returned the signed Modification Agreement to GMACM on October 5, 2009.

25.    On October 7, 2009, an individual in GMACM's loss mitigation department countersigned the Modification Agreement in Homecomings' name.

26.    Also on October 7, 2009, GMACM (through its insurance or escrow department) processed an insurance refund with respect to an insurance policy on the Property in the amount of $4,686.00, which was also credited against the escrow account balance.  The insurance refund was not anticipated by GMACM at the time it agreed to the terms of the Modification Agreement and significantly changed the economics of the Modification Agreement from GMACM's perspective.  As a result of the refund and the debt forgiveness contemplated under the Modification Agreement, the Mortgage Loan's escrow account would have been left with an impermissibly large positive balance, entitling the Claimant to a cash refund, in addition to the other relief that had been provided under the terms of the Modification Agreement.  Accordingly, consummating the loan modification on the terms set forth in the Modification Agreement would have resulted in Claimant receiving a double recovery with respect to the escrow account surplus—once as an account credit due to the debt forgiveness, and once in cash from GMACM's own pocket due to the refund of the escrow account cash balance.  Such a double recovery would have been contrary to GMACM's intent in entering into the Modification Agreement.

27.    Upon processing the final modification documentation on or around October 19, 2009, GMACM also determined that the Claimant had not submitted new paystubs

for the proof of income as directed, which also required GMACM to not move forward with the modification, as GMACM did not have the required documentation necessary to verify that the Claimant had a demonstrated ability to make the modified loan payments.

28.    Because the consummation of the Modification Agreement would have been contrary to the intent of GMACM in entering into the agreement and the Claimant had not submitted the updated documentation to complete processing the modification, GMACM voided the Modification Agreement and did not return a copy of the fully executed agreement to the Claimant.  GMACM did not notify the Claimant of this decision.

29.    In letters dated October 27, 2009 and October 30, 2009 from the Claimant's counsel to the Debtors, the Claimant indicated to GMACM that he did not intend to perform under the terms of the Modification Agreement unless and until he received a countersigned agreement from GMACM.

30.    After the Modification Agreement was voided, GMACM restarted the loan modification review process and ultimately approved Claimant for a loan modification on revised terms in August 2010, subject to receiving appropriate documentation from Claimant. The August 2010 modification was never completed because Claimant did not submit the requisite documents.

31.    The Claimant's last payment under the Mortgage Loan was for October 2008.  At the time the Claimant returned the Modification Agreement to GMACM, the Mortgage Loan account was owing for twelve payments, from November 2008 through October 2009.

32.    The Claimant remains in possession of the Property.

33.    On November 16, 2012, the Claimant filed Claim No. 5610 against ResCap in the amount of $1,262,000 (comprised of a $339,000 secured claim and a $923,000

8

unsecured claim) and Claim No. 5612 against Homecomings in the amount of $1,262,000

(comprised of a $339,000 secured claim and a $923,000 unsecured claim).  See Exhibit 1-A and

1-B to the Objection.  Pursuant to the *Stipulation of Richard D. Rode to Reclassification and*

*Redesignation of Claim #5610 Pursuant to Debtors' Thirty-Sixth Omnibus Objection to Claims*

[Dkt. No. 5758], Claim No. 5610 was reclassified as a claim against GMACM.  In Box 2 of each

proof of claim form (Basis for Claim), the Claims provide that the basis for the claim is "Escrow

Overage/Overpayments, Mortgage Fraud, Damages, Respa Violation, Contingent."  Id.

**B.    GMACM's Breach of the Modification Agreement Was Excused Under the
          Doctrines of Unilateral Mistake and/or Frustration of Purpose**

**1.    Frustration of Purpose**

34.    As set forth above, GMACM voided the Modification Agreement after an

unexpected insurance refund was received the same day the contract was executed because the

insurance refund substantially altered the economics of the proposed modification.  To the extent

GMACM's action was a breach of the agreement, the breach was nonetheless excused under the

doctrines of unilateral mistake and/or frustration of purpose.

35.    Frustration of purpose is found when events occur or circumstances arise

that substantially frustrate a party's purpose in entering the contract.  The party seeking relief

must not have been at fault or have caused the frustration.  In addition, the non-occurrence of the

event that frustrated the purpose must have been a basic assumption upon which the contract was

made.  See, e.g., Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co., 118 S.W.3d

60, 64 (Tex. Ct. App. 2003).  See also RESTATEMENT (SECOND) OF CONTRACTS, § 261 (AM. LAW

INST. 1981):

> Where, after a contract is made, a party's performance is made
> impracticable without his fault by the occurrence of an event the
> non-occurrence of which was a basic assumption on which the
> contract was made, his duty to render that performance is

9

discharged, unless the language or the circumstances indicate the contrary.

36.     Before 1992, Texas courts had substantially recognized the defense under appellations such as "frustration of purpose."  See, e.g., Ramirez Co. v. Housing Auth. of Houston, 777 S.W.2d 167, 173 n. 11. (Tex. Ct. App. 1989)).  In 1992, the Supreme Court of Texas adopted the substance of the defense under the label "impossibility."  Centex Corp. v. Dalton, 840 S.W.2d 952, 954 (Tex. 1992).  Impossibility can be present at the time an agreement is made or can occur after an agreement has been made.  A party may still be discharged from performance even if the supervening event was reasonably foreseeable.  Id. at 955.

37.     Here, GMACM entered into the Modification Agreement on behalf of the noteholder based upon the understanding that the escrow account was overdrawn, which would be remedied through a combination of debt forgiveness and loan capitalization.  That understanding proved to be incorrect due to the crediting of a significant insurance refund on the same day the Modification Agreement was executed by GMACM.

38.     GMACM did not cause the insurance refund to be paid.  As a result of the receipt of the insurance refund, the terms of the modification fell outside of the applicable servicing guidelines because they would have resulted in the Claimant receiving a cash refund in connection with the modification.  As such, GMACM's performance under the Modification Agreement would have substantially frustrated GMACM's purpose in entering into the contract, which was to continue servicing the Mortgage Loan in compliance with applicable servicing guidelines.

### 2.     Unilateral Mistake

39.     To the extent the Court determines that GMACM's failure to take the potential for an insurance refund into account at the time it prepared the Modification Agreement

was a mistake for which GMACM was at fault, GMACM was nonetheless excused from

performing under the Modification Agreement as a unilateral mistake.  Under Texas law,

equitable relief will be granted against a unilateral mistake when the conditions of remediable

mistake are present.  James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist., 335 S.W.2d

371, 373 (Tex. 1960).  "These conditions generally are: (1) the mistake is of so great a

consequence that to enforce the contract as made would be unconscionable; (2) the mistake

relates to a material feature of the contract; (3) the mistake must have been made regardless of

the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense,

*i.e.*, rescission must not result in prejudice to the other party except for the loss of his bargain."

Id.  Each of those conditions is present here.

40.    "The determination that a contract or term is or is not unconscionable is

made in the light of its setting, purpose, and effect."  Flores v. Medline Indus., Inc., No. 13-14-

00436-CV, 2015 Tex. App. LEXIS 12719, at *19 (Tex. Ct. App. Dec. 17, 2015).

Unconscionability may be found where, among other things, there is no commercial reason to

justify the consequences of a mistake and the resulting economic costs will be borne by another

party.  Guggenheim Corp. Funding, LLC v. Valerus Compression Servs., L.P., 465 S.W.3d 673,

687 (Tex. Ct. App. 2015).  Those same circumstances apply to the Modification Agreement.

41.    GMACM's role as loan servicer was to collect and process loan payments

for the benefit of the noteholder, and to protect the noteholder's interest in the property securing

the Note by ensuring that no security interests with senior priority (such as tax liens) were

asserted against the property and that the property was properly insured to protect against

damage that would reduce its value.  In connection with its protective function, in certain

circumstances, GMACM would advance funds for the payment of taxes due and owing and/or

insurance premiums for the benefit of the noteholder. GMACM had no obligation—

contractually or otherwise—to take any action for the economic benefit of the Claimant.

GMACM's failure to take potential refunds into account in structuring the modification terms

was a "mistake" that turned the role of servicer on its head, by requiring GMACM to provide

relief to the detriment of GMACM and/or the noteholder while providing a significant windfall

to the Claimant. As such, the modification fell outside of the applicable servicing guidelines,

and GMACM would never have approved the Modification Agreement had it known of the

pending insurance refund. As a result, that mistake rendered the Modification Agreement

unconscionable.

42.     GMACM's failure to take potential refunds into account in structuring the

modification terms was a mistake that was made despite the exercise of ordinary care by

GMACM, because it only became apparent upon receipt of the refund on October 7, 2009 after

GMACM had already agreed to forgive escrow advances. "[T]he very word 'mistake' itself may

connote some degree of negligence," and "ordinary negligence . . . will not necessarily bar the

granting of equitable relief." James T. Taylor & Son, 335 S.W.2d at 374 (quotation omitted).

The mistake related to a material feature of the contract, because it directly impacted the

economics upon which the entire modification was premised—*i.e.*, the capitalization and

forgiveness of overdrawn escrow amounts.

43.     Finally, the mistake could easily have been remedied and the parties

returned to status quo. All that was required was a reworking of the loan modification to ensure

that both parties were able to recognize the desired benefits, and indeed, GMACM's servicing

records show that they undertook to promptly rework the loan modification, and subsequently

approved the Claimant for a revised loan modification. Moreover, GMACM's rescission of the

12

Modification Agreement did not harm the Claimant because he had not performed under the

Modification Agreement or otherwise changed his position in reliance on the Modification

Agreement.

C.    **The Claimant Cannot Sustain a Claim for Breach of Contract Because He
Failed to Tender Performance and Was Not Excused from Doing So**

44.    To prevail on a breach-of-contract claim under Texas law, a plaintiff must

prove:  (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff

tendered performance or was excused from doing so; (3) the defendant breached the terms of the

contract; and (4) the plaintiff sustained damages as a result of the defendant's breach.  Valero

Mktg. & Supply Co. v. Kalama Int'l, LLP, 51 S.W.3d 345, 351 (Tex. Ct. App. 2001) (citation

omitted).

45.    The Claimant's breach of contract claim fails because he cannot establish

the second element, which implements the rule that one who is in default under a contract cannot

maintain a suit for its breach.  Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990); Gulf Pipe

Line Co. v. Nearen, 138 S.W.2d 1065, 1068 (Tex. 1940).  Historically, this rule was strictly

construed, although it has been somewhat relaxed by the doctrine of substantial performance.

The rule of substantial performance allows a party to go forward with a contract action even

though he has breached nonmaterial terms of the contract where he has nonetheless substantially

performed under it.  Vance v. My Apt. Steak House of San Antonio, Inc., 677 S.W.2d 480, 482

(Tex. 1984); Atkinson v. Jackson Bros., 270 S.W. 848, 850 (Tex. Comm'n App. 1925, holding

approved).  Even under this more relaxed application, however, the Claimant cannot maintain a

claim for breach of contract.

46.    The Claimant did not tender performance or substantially perform under

the terms of the Modification Agreement, since he failed to make a single monthly payment

13

under the terms of that agreement.[1]  Texas courts have held that, where a borrower has defaulted

on the terms of a loan modification agreement, he or she cannot then maintain a claim for breach

of that agreement against the servicer.  Langlois v. Wells Fargo Bank N.A., 581 Fed. Appx. 421,

426 (5th Cir. Tex. 2014) ("[I]t is undisputed that the Langlois themselves ultimately breached the

LMA by failing to make the required escrow payments, and then defaulting on their payments

completely.  As discussed above, the Langlois cannot maintain a breach of contract claim against

Wells Fargo under Texas law since they breached the LMA themselves." (citing Dobbins v.

Redden, 785 S.W.2d 377, 378 (Tex. 1990)).

47.     The Claimant may argue that he was excused from making payments for a

number of reasons, and therefore his own breach of the agreement is of no matter.  None of the

reasons that have been suggested by the Claimant constitutes a legally valid excuse.  A party's

nonperformance of a contract will be excused when that party's performance is prevented by the

other party.  See Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex. Ct. App. 2003); Erickson v.

Rocco, 433 S.W.2d 746, 751-52 (Tex. Civ. Ct. App. 1968).  Texas courts have held that a

borrower will not be excused from performing under a loan modification agreement in the

absence of any evidence that the defendant did anything to prevent the borrower from meeting

his obligations under the note, deed of trust or modification agreement.  Laali v. IndyMac Mortg.

Servs., No. 4:1-cv-432, 2013 U.S. Dist. LEXIS 117075, at *40-42 (E.D. Tex. May 29, 2013).

48.     First, contemporaneous correspondence from the Claimant's counsel to

GMACM asserts that the Claimant refused to make any payments unless and until GMACM

returned a countersigned copy of the Modification Agreement to him.  But there is no

---

[1]     The Claimant did remit the reinstatement payment with the executed Modification Agreement; this payment
was a condition to the effectiveness of the agreement itself and not a monthly payment constituting performance
under the terms of the agreement.

ny-1240248

requirement in the Modification Agreement that conditions the obligation to make a loan

payment (or the effectiveness of the contract itself) on the return of a countersigned copy to the

Claimant.  Accordingly, GMACM's failure to comply with this demand did not constitute a

breach of contract that would excuse the Claimant's own performance.

49.     Second, that same correspondence from the Claimant's counsel to

GMACM also contends that GMACM was continuing to mishandle his escrow account

following execution of the Modification Agreement, and conditioned payment under the

Modification Agreement on the correction of alleged errors.  However, the Modification

Agreement did not contain any promises to the Claimant—either express or implied—regarding

the management of the escrow account.  Section 7 of the Modification Agreement also contains

an express acknowledgment that no representations, agreements or promises were made to the

Claimant by Homecomings or its representatives except those specifically set forth in the

agreement itself.  Moreover, Texas courts have held that misconduct or breach by loan servicers

in connection with the management of a borrower's account will not relieve a borrower of his or

her duty to make timely mortgage payments.  See Buchanan v. U.S. Bank N.A., C.A. No. H-13-

3525, 2014 U.S. Dist. LEXIS 90697, at *11-12 (S.D. Tex. July 3, 2014) ("Any misconduct or

breach on Ocwen's part regarding the homeowner's insurance does not excuse Ms. Buchanan

from her duty to make timely payments.  Generally, a mortgage borrower in default may not

assert a claim for breach of contract against the lender.").  See also, Water Dynamics, Ltd. v.

HSBCBank USA, Nat'l Ass'n, 509 Fed. Appx. 367, 369 (5th Cir. 2013) (citing Dobbins v.

Redden, 785 S.W.2d 377, 378 (Tex. 1990)).  Accordingly, any claim that GMACM breached the

Modification Agreement because it failed to manage the escrow agreement as promised fails, and

does not excuse the Claimant's own performance.

15

50.    Third, the Claimant may point to GMACM's decision to "back off" of the

Modification Agreement as evidence of a breach by GMACM that excused the Claimant's own

performance.  Critically, however, the Claimant does not (and cannot) contend that he knew

GMACM had signed the agreement and then decided to void it at the time the first monthly

payment under the Modification Agreement came due on November 1, 2009.  Indeed, he had no

knowledge of GMACM's <u>internal</u> decision to "back off" of the modification agreement until he

received copies of GMACM's servicing records in connection with discovery.  Under Texas law,

"[a] breach of contract occurs when a party fails to perform an act that it has expressly or

impliedly promised to perform."  Stewart v. Sanmina Tex., L.P., 156 S.W.3d 198, 214 (Tex. Ct.

App. 2005) (citation omitted).  GMACM's only obligation to the Claimant under the

Modification Agreement was to accept and process payments on the Note, albeit on modified

terms.  Because the Claimant never attempted to make any loan payments under the

Modification Agreement, GMACM never had the opportunity to breach its obligations to the

Claimant by refusing payment.[2]

### D.    Claimant Has Not Established that He Suffered Any Compensable Damages as a Proximate Result of GMACM's Breach of the Modification Agreement

51.    "The universal rule for measuring damages for the breach of a contract is

just compensation for the loss or damage actually sustained."  Stewart v. Basey, 245 S.W.2d 484,

486 (Tex. 1952).  Texas courts have held that where no foreclosure occurred, the borrower

remained in continuous possession and occupation of the residence, and title remained in the

---

[2]    Texas law does recognize a claim for anticipatory breach, which requires a plaintiff to establish: (1) an absolute repudiation of the obligation; (2) a lack of just excuse for the repudiation; and (3) damage to the nonrepudiating party.  Gonzalez v. Denning, 394 F.3d 388, 394-395 (5th Cir. 2004).  An anticipatory repudiation of a contract may be based on either words or actions by a party that indicate an intention not to perform the contract according to its terms.  Builders Sand, Inc. v. Turtur, 678 S.W.2d 115, 120 (Tex. Ct. App. 1984).The declaration of intent to abandon the obligation must be in positive and unconditional terms.  Preston v. Love, 240 S.W.2d 486, 487 (Tex. Civ. Ct. App. 1951).  GMACM made no such declaration of intent to the Claimant that would support a claim for anticipatory breach.

ny-1240248

borrowers name, the borrower could not establish that any damages were "actually sustained" from the servicer's alleged breach of a loan modification agreement. <u>Peoples v. BAC Home Loans Servicing, LP</u>, No. 4:10-cv-489-A, 2011 U.S. Dist. LEXIS 31626, at *10-11 (N.D. Tex. Mar. 25, 2011). Under the facts, a similar finding should apply here.

52.    Under the Modification Agreement, the Claimant would have been entitled to make lower monthly mortgage payments. Ordinarily, his damages would be calculated as the difference between the lower monthly amounts he should have paid under the Modification Agreement, and the higher monthly amounts that he was charged under the Note in the absence of the Modification Agreement. Here, however, the Claimant's account is still due and owing for the October 2008 payment. If anything, the Claimant has benefitted by not paying his monthly mortgage obligations (including real estate taxes and homeowners' insurance) for the past seven and one-half years while remaining in possession of his home.

53.    Because the Claimant cannot show that he paid more than he would have on his mortgage but for GMACM's alleged breach of the Modification Agreement, he turns to other indirect categories of damages. Specifically, the Claimant contends that his credit has been damaged, which has in turn led to a loss in business. These damages all arise directly out of the fact that the Claimant stopped making payments on the Note, but such damages are not related to the Modification Agreement. In fact, courts presented with analogous fact patterns have come to similar conclusions. <u>See</u>, <u>e.g.</u>, <u>Morrall v. CitiMortgage, Inc.</u>, No. CV-114-086, 2015 U.S. Dist. LEXIS 22597, at *11-12 (S.D. Ga. Feb. 25, 2015) ("Ultimately, Mr. Morrall's failure to tender the amount due is a complete bar to recovery for wrongful foreclosure based on this theory, as without such payment it cannot be said that Citi's purported "bad faith" representations or

negotiations caused his damages:  Mr. Morrall instead caused his own damages by failing to pay.").

54.    Such a holding is also consistent with the terms of the Claimant's own loan documents.  Assuming *arguendo* that the Modification Agreement is an enforceable contract and that GMACM was not excused from performing thereunder, GMACM's alleged breach of the agreement did not excuse the Claimant from performing his separate existing obligations under the Note and Deed of Trust.  See Deed of Trust, ¶ 1 ("No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.").

55.    The Claimant's alleged losses due to a decrease in business productivity and the liquidation of various assets are also not compensable because they are speculative and not reasonably quantifiable.  Nor can they be proximately tied to GMACM's alleged breach of the Modification Agreement with any certainty, which is fatal to the Claims.  Exxon Co. v. Sofec, Inc., 517 U.S. 830, 839-40 (1996) ("Although the principles of legal causation sometimes receive labels in contract analysis different from the 'proximate causation' label most frequently employed in tort analysis, these principles nevertheless exist to restrict liability in contract as well.  Indeed, the requirement of foreseeability may be more stringent in the context of contract liability than it is in the context of tort liability."); id. at 842 ("A party whose fault did not proximately cause the injury is not liable at all."); Mead v. Johnson Group, Inc., 615 S.W.2d 685, 687 (Tex. 1981) ("In an action for breach of contract, actual damages may be recovered when loss is the natural, probable, and foreseeable consequence of the defendant's conduct.").  The losses that the Claimant complains of could be attributable to, among other things, the general

downturn in the housing markets that began in 2008, and the inevitable impact that downturn

would have had on the Claimant's construction business.  Furthermore, losses to the Claimant's

business are not the natural, probable, or foreseeable consequence of a breach arising in

connection with a personal residential mortgage loan.

56.    The Claimant also points to a Form 1099-C as evidence that he incurred

tax liability for funds that GMACM allegedly took from his escrow account "for its own use."

The Form 1099-C appears to have been issued in connection with the forgiveness of debt that

was posted to the escrow account in connection with the Modification Agreement.  However, the

fact that GMACM issued a tax form to the Claimant reporting certain potentially non-taxable

income does not, in and of itself, establish that the Claimant actually paid any additional taxes as

a result.

57.    Finally, the Claimant seeks attorneys' fees and costs.  Although Texas law

permits a plaintiff to recover attorney's fees in connection with a breach of contract action,

attorney's fees cannot be the only damages.  Chapter 38 of the Texas Civil Practice and

Remedies Code allows recovery of attorneys' fees in breach of contract cases in addition to the

amount of a valid claim. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Lexis 2016).  Texas

case law is clear that, in order to recover fees, a party must (1) prevail on the breach of contract

claim, and (2) recover other damages.  MBM Fin. Corp. v. Woodlands Operating Co., 292

S.W.3d 660, 666 (Tex. 2009); Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 201

(Tex. 2004); Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997).   In other words, a party

is not allowed to maintain a lawsuit solely for attorneys' fees.  Accordingly, the Claimant must

establish that he is entitled to some other damages in addition to attorneys' fees in order to

19

prevail.  As set forth above, the Claimant has not demonstrated that he suffered any other

compensable losses, and therefore he is not entitled to attorneys' fees and costs.

### E.      The Claimant Is Not Entitled to Punitive Damages

58.      The Claimant is also seeking an award of punitive damages.  As the Court

already held, the Claimant has failed to allege conduct by GMACM or Homecomings that would

support an award of punitive damages in connection with his breach of contract claims.  Order at

28.  The Trust submits that this ruling is correct and should stand for two reasons.

59.      *First*, Texas law does not allow punitive damages in connection with

ordinary breach of contract claims even if the breach was intentional, or grossly negligent.  See,

e.g., Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986) ("The Reeds' injury was

that the house they were promised and paid for was not the house they received.  This can only

be characterized as a breach of contract, and breach of contract cannot support recovery of

exemplary damages."  (citing Bellefonte Underwriters Ins. Co. v. Brown, 704 S.W.2d 742

(1986); Amoco Prod. Co. v. Alexander, 622 S.W.2d 563 (Tex. 1981)).

60.      *Second*, the Court has already foreclosed the award of punitive damages to

borrower claimants in these cases, based upon a finding that punitive damages "would not punish

GMACM, but rather would reduce the claims of other borrowers with allowed claims, further

diluting the amount available to satisfy such claims."  See *Order Sustaining in Part and

Overruling in Part ResCap Borrower Claims Trust's Objection to Claim Number 2397 Filed by

John Satterwhite, In re Residential Capital, LLC*, Case No. 12-12020 (Bankr. S.D.N.Y. Apr. 7,

2015) [Docket No. 8432] (citation omitted).  As a result, like every other borrower claimant, the

Claimant's damages must be limited to the amount of his actual harm resulting from GMACM's

actions.

20

## **CONCLUSION**

The Claims must be disallowed and expunged.  The Claimant has failed to

demonstrate that either GMACM or Homecomings is liable to him on account of any breach of

the Modification Agreement.  As a result, the Objection to the Claims should be sustained.


Dated:  July 29, 2016
        New York, New York

/s/  Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

21