UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

RESIDENTIAL CAPITAL, LLC, et al.,
  Post-Effective Date Debtors                                           Chapter 11

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RESCAP BORROWER CLAIMS TRUST,               Case No. 12-12020-mg
  Objector

v.

RICHARD D. RODE,
    Creditor-Beneficiary

---

**PRE-TRIAL BRIEF OF RICHARD D. RODE**

---

**INTRODUCTION**

      Richard D. Rode (Mr. Rode) is a citizen of the State of Texas. Mr. Rode comes before this Court because certain of the RESCAP Debtors, to whom the RESCAP Borrower Claims Trust (Objector) succeeded in interest on the effective date of the confirmed Second Amended Chapter 11 in these proceeding, engaged in a pattern of conduct designed to cause him to lose his Homestead to foreclosure. They set about to create a default in order to foreclose on Mr. Rode's Homestead, in combination with other RESCAP Debtors whose identities were concealed from Mr. Rode until after the claims bar date in this action and, in fact, until September of 2015. The visible participants in the scheme were Homecoming Financial, LLC (Homecomings) and GMAC Mortgage, LLC (GMACM).

      Homecomings engaged in a series of accounting devices to make it appear that Mr. Rode had defaulted in his payments, when he had not. The scheme involved placing his payments in "suspense accounts," charging him for "forced-place" insurance, when he had his own policy of

1

property and casualty insurance, taking a refund of real property tax payments from the Harris County, Texas Treasurer when both Mr. Rode and Homecomings paid the 2008 real property tax and not crediting the refund to his escrow account, and charging late payment fees when Mr. Rode was not late in making payments. Homecomings created another appearance of default when they offered to forbear his payments for three (3) months following the Hurricane and did not. Finally, only for purposes of the issues being considered by this Court at this time,[1] GMACM, in the name of Homecomings, offered a Loan Modification Agreement to Mr. Rode, took his first payment (never credited to his account) , then promptly breached the Agreement. This Court has allowed Mr. Rode's Claim Nos. 5610 and 5612 to proceed to a contested claims hearing solely on the issues of breach of contract and damages.[2]

The Objector has raised defenses of unilateral mistake, frustration of purpose and independent breach of a Loan Modification Agreement executed and delivered by Mr. Rode to Homecomings Financial, LLC (Homecomings) on October 1, 2009.

---

[1] The scheme to foreclose on Mr. Rode's Homestead continued through the date of the Order for Relief through the named and other concealed and yet-to- be-identified RESCAP Debtors, through the Section 363 Sale to Ocwen Loan Servicing, LLC (Ocwen), approved by this Court and through Ocwen as successor in interest to the RESCAP Debtors and servicing agent for an unfunded Real Estate Mortgage Investment Conduit (REMIC) Trust for which Deutsche Bank Trust Company Americas purports to be Trustee, and their employees and agents.

[2] Mr. Rode reserves his claims against the RESCAP Debtors, who were named in his action in the District Court for Harris County, Texas, which was subsequently removed to the United States District Court for the Southern District of Texas, for appeal from these proceedings, if necessary. He reserves his rights to pursue all other the claims he discovered during the pendency of these bankruptcy proceedings to be pursued against all nonbankrupt tortfeasors and the successors in interest to the RESCAP Debtors, their employees, agents and assigns, to the full extent allowed by law. cause documents to be forged to make it appear that a securitization transaction had occurred. Mr. Rode will ask this Court to consider their newly discovered entities' joint and several liability in allocating the damages among them upon the determination of the issue of tortious breach of contract and when awarding him compensatory and punitive damages.

**STATEMENT OF FACTS**

The facts in support of the claims which have been allowed to proceed are set forth in Mr. Rode's Declaration, the Declaration of Maudeena Rode, the Declaration of Bill Paatalo, the Declaration of Larry R. Wickstrom, the Declaration of Robert Adams, CPA and the Declaration of Attorney Jeffrey H. Uzick and the Exhibits authenticated by each. There is no admissible direct testimony or authenticated evidence in support of the defenses interposed by the Objector. See the July 29, 2016 Motion in Limine, Motion to Strike and Objections to the July 22, 2016 Declaration of Sarah Lathrop (Doc. 1002) filed as Doc. 10011.

**ARGUMENT**

**I.  The RESCAP Debtors breached the contact with Mr. Rode for Loan Modification in October, 2009.**

The elements of a contract under Texas law are set forth in *City of Colony v. North Texas Municipal Water*, 272 S.W.3d 699, 720 (Tex. App., 2008).

Parties enter into a binding contract when the following elements exist: an offer; an acceptance in strict compliance with the terms of the offer; a meeting of the minds; each party's consent to the terms; and execution and delivery of the contract with the intent that it be mutual and binding. *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex.App.-San Antonio 1999, pet. denied). "Meeting of the minds" describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract. *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex.App.-Dallas 1999, pet. denied). Mutual assent, concerning material, essential terms, is a prerequisite to formation of a binding, enforceable contract. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). *Kelly v. Rio Grande*

*Computerland Group*, 128 S.W.3d 759, 766 (Tex.App.-El Paso 2004, no pet.); *Komet v. Graves*, 40 S.W.3d 596, 602 (Tex.App.-San Antonio 2001, no pet.). The determination of whether there is a meeting of the minds, and thus offer and acceptance, is based upon objective standards of what the parties said and did and not on their subjective state of mind. *Copeland*, 3 S.W.3d at 604.

Homecomings/GMACM does not defend on the basis that no offer was made or that Mr. Rode did not strictly comply with the terms of the offer. Homecomings/GMACM does not argue that there was no meeting of the minds, which, objectively, there clearly was. The terms of the contract were in writing and Homecomings/GMACM does not argue that the parties did not consent to terms of the Loan Modification Agreement. Homecomings/GMACM does not argue that the parties did not assent to the agreement and its material, essential terms.

A contract was formed, Mr. Rode performed on the contract and Homecomings/GMACM refused to honor its terms. The Objector, successor in interest to Homecomings/GMACM, instead raises defenses which have no foundation in fact or law.

**II. Texas recognizes that a contractual relationship between parties may create duties under both contract and tort and the nature of the injury determines whether exemplary damages may be awarded.**

The leading case on the issue of whether the economic loss doctrine applies to preclude exemplary damages is *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618, 29 Tex.Sup.Ct.J. 369 (Tex., 1986) In Jim Walter Homes, the Supreme Court of Texas held:

Although the principles of contract and tort causes of action are well settled, often it is difficult in practice to determine the type of action that is brought. We must look to the substance of the cause of action and not necessarily the manner in which it was pleaded. *International*

*Printing Pressmen and Assistants Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729 (1946).

The contractual relationship of the parties may create duties under both contract and tort law. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947). The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone. *Mid-Continent Aircraft Corp. v. Curry County Spraying Service*, 572 S.W.2d 308, 312 (Tex.1978); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977). The Reeds' injury was that the house they were promised and paid for was not the house they received. This can only be characterized as a breach of contract, and breach of contract cannot support recovery of exemplary damages. *Bellefonte Underwriters Insurance Co. v. Brown*, 704 S.W.2d 742 (1986); *Amoco Production Co. v. Alexander*, 622 S.W.2d 563 (Tex.1981).

Mr. Rode's injuries are not an economic loss to the subject of the contract itself. He was denied the opportunity to bring his account out of the default status. As a direct and proximate result of the breach of the Loan Modification Agreement, foreclosure was initiated by GMACM based on a default Homecomings/GMACM had engineered by its mortgage servicing devices, designed to create and maintain his default. He has been involved in a harrowing more than six (6) year ordeal in which his credit was ruined, his business was affected, and he and Maudeena lived under the constant threat of renewed foreclosure, once Ocwen succeeded to the servicing rights held by GMACM on the date of the Order for Relief. The injury in this case does not involve the benefit of the bargain based on the difference between a reduced interest of a few basis points (the difference between 5.375% under the original terms to be

5

modified to 5.00%). The breach of contract pleaded in the Texas action involves the breach of Homecomings/GMACM's agreement to allow Mr. Rode to make payments on the terms of the Loan Modification Agreement in order to avoid foreclosure.

Mr. Rode has the right to produce evidence that Homecomings/GMACM acted with a fraudulent purpose when it breached the Loan Modification Agreement. He is entitled to produce evidence will be produced that Homecomings/GMACM acted fraudulently when it breached the contract to modify Mr. Rode's loan in order to attempt to foreclose on Mr. Rode's Homestead. He has the burden of proving his right to exemplary damages by clear and convincing evidence and is not precluded from doing so where his injuries are not clearly not limited to the economic loss which is the subject of the contract itself, Jim Walker Homes, Inc. under the Texas Civil Practice and Remedies Code at Sec. 41.003, which provides:

> Sec. 41.003. STANDARDS FOR RECOVERY OF EXEMPLARY DAMAGES. (a) Except as provided by Subsection (c), exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from:
> (1) fraud;
> (2) malice; or
> (3) gross negligence.
> (b) The claimant must prove by clear and convincing evidence the elements of exemplary damages as provided by this section. This burden of proof may not be shifted to the defendant or satisfied by evidence of ordinary negligence, bad faith, or a deceptive trade practice.

In *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 39-40 (Tex., 1998), the Texas Supreme Court held:

> Punitive damages are not designed or intended to compensate or enrich individual victims. See *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex.1994); see also *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Instead, the purpose of punitive damages is to punish a party for its "outrageous, malicious, or otherwise morally culpable conduct" and to deter it and others from committing the same or similar acts in the future. See *Moriel*, 879 S.W.2d at 16-17;

6

*Lunsford v. Morris*, 746 S.W.2d 471, 471-72 (Tex.1988).

Mr. Rode reserves his right to argue for punitive damages at the close of the contested claims case, based on the evidence adduced at trial.

**III.  There is no basis for Homecomings/GMACM's purported affirmative defense of unilateral mistake.**

In *James T. Taylor & Son, Inc. v. Arlington Independent School District*, 160 Tex. 617, 335 S.W.2d 371, 372-373 (Tex., 1960), the Supreme Court of Texas adopted the majority view for granting relief based on unilateral mistake, for which the remedy of recision, writing:

> Most of the cases and legal writers affirm the proposition that equitable relief will be granted against a unilateral mistake when the conditions of remediable mistake are present. These conditions generally are: (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i. e., rescission must not result in prejudice to the other party except for the loss of his bargain. There may be other circumstances which will govern or influence the extension of relief, such as the acts and extent of knowledge of the parties.

Even if Homecomings/GMACM were able prove the full amount of its claimed calculation error (Mr. Rode intends to prove that Homecomings/GMACM took Mr. Rode's funds from the escrow account for its own use and then issued a 1099-C to Mr. Rode for the funds it took from him) the amount at issue is not of so great a consequence that it would be unconscionable to enforce the contract.  The ownership of the funds in the escrow account and refunds pending should have been known to GMACM in the exercise of ordinary case.  There is no term of the contract which addresses any forgiveness of debt whatsoever, so the internal calculations made by Homecomings/GMACM are not a material feature of the contract.  The remedy of recision was not sought by Homecomings/GMACM.  It chose to breach the contract and did not even notify Mr. Rode that it was dishonoring its contractual obligations, concealing

its true intention all along, which was to take Mr. Rode's funds and then foreclose on his Homestead. Mr. Rode could not be returned to the status quo even if Homecomings/GMACM sought the lawful remedy of recision, because he was denied the timely opportunity to have his obligation treated as being current and restore his credit, damaged by Homecomings/GMACM's design.

**IV. There is no basis for the purported affirmative defense of frustration of purpose.**

"Frustration of purpose" is an excuse to performance that is sometimes described as "impossibility of performance" or "commercial impracticability." *See Ramirez Co. v. Housing Authority of City of Houston*, 777 S.W.2d 167, 173 n.11 (Tex. App.—Houston [14th Dist.] 1989, no writ). Under this theory, an obligor may be excused from performing a contract if an event occurs and the contract was made on the basic assumption that the event would not occur. See Restatement (Second) of Contracts § 261; *Chevron Phillips Chemical Co. v. Kingwood Crossroads, L.P., 346 S.W.3d 37, 52* (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

Texas has recognized three contexts in which the excuse may be available: (1) the death or incapacity of a person necessary for performance, (2) the destruction or deterioration of a thing necessary for performance, and (3) a change in the law that prevents a person from performing. See *Tractebel Energy Marketing, Inc. v. E.I. Du Pont De Nemours & Co.,* 118 S.W.3d 60, 65 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

There is no basis for Homecomings/GMACM to assert the affirmative defense of "frustration of purpose." No party died or become incapable of performing the contract. Nothing necessary for the performance of the contract deteriorated or was destroyed. The law did not change so as to prevent the contract from being performed.

8

**V.  Mr. Rode's attorney did not independently breach the contract by demanding confirmation of the novation prior to having Mr. Rode send the subsequent monthly payment.**

Mr. Rode had already made the October 1, 2009 payment, which was acknowledged as having been received in September, 2009.  Attorney Uzick was performing his duty to Mr. Rode to verify the novation.  Novation is the substitution of a new agreement between the same parties or the substitution of a new party on an existing agreement. *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.-Houston [1st Dist.] 1999, pet. denied). Therefore, only the new obligation may be enforced. *Priem v. Shires*, 697 S.W.2d 860, 864-65 (Tex.App.--Austin 1985, no writ). The elements of novation are: (1) a previous, valid obligation; (2) an agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Mandell v. Hamman Oil and Refining Co.*, 822 S.W.2d 153, 163 (Tex.App.--Houston [1st Dist.] 1991, writ denied).  Attorney Uzick would have been remiss not to assure that the novation had been executed by Homecomings/GMACM before Mr. Rode submitted his second payment under the Loan Modification Agreement.  Insisting on the execution of the Loan Modification Agreement, required under Texas case law to establish a novation and the Statute of Frauds where the contract would not be fully performed within one year was necessary.  Had Attorney Uzick not done so, Mr. Rode would have been making payments on a contract which Homecomings/GMACM had secretly repudiated.

## CONCLUSION

The Objector has no facts and no law to support its defenses.  Mr. Rode will prove compensatory and punitive damages from the breach of contractual duties by Homecomings/GMACM at the upcoming evidentiary hearing.

Dated at Madison, Wisconsin this 29th day of July, 2016.

*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
VOICE (612) 333-4144
FAX (612) 206-3170
accesslegalservices@gmail.com
Wisconsin Attorney ID #1017043
Minnesota Bar #165906

**UNSWORN DECLARATION OF SERVICE**

The above-captioned document filed by CM/ECF on July 29, 2016 and was thereby served all parties and their counsel capable of service by CM/ECF in these proceedings.

*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora