Response Date: September 8, 2016

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the ResCap Borrower Claims Trust*

**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone:    (609) 987-0050
Facsimile:    (609) 951-0824
Diane A. Bettino
Barbara K. Hager, *admitted pro hac vice*

*Co-Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**THE RESCAP BORROWER CLAIMS TRUST'S MOTION IN LIMINE
TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF STEVIE WATSON**

**PRELIMINARY STATEMENT**

The ResCap Borrower Claims Trust (the "Borrower Trust") submits this motion *in limine* to exclude the purported expert report, addendum report, and testimony of Stevie Watson offered by the Claimant Frank J. Reed III ("Claimant").

In her opinion dated June 20, 2012 (the "Letter") issued in connection with this matter, Ms. Watson opines on the "economic loss Mr. Reed had relating to his property at 9717 Old Dell Trace, Richmond, Virginia." See Declaration of Stevie Watson ("Watson Decl.") at ¶ 3. A true and correct copy of the Declaration of Stevie Watson attaching the Letter is attached hereto as **Exhibit A**.

This Court has already aptly found that similar reports would not be admissible at trial as "they are filled with impermissible hearsay; they stray into areas beyond the witnesses' apparent expertise…[and] they contain faulty analysis and unsupported conclusions." The Borrower Trust submits that Ms. Watson's Letter is no different and should be stricken. The Borrower Trust further contends that Ms. Watson should be precluded from testifying for the below reasons.

First, Ms. Watson's testimony is not helpful to the finder of fact because specialized knowledge is not required for conclusions that are merely guestimates and possible approximations of various expenses for the Old Dell Trace property, including taxes, insurance, and amount spent on renovations, and because it invades the province of the fact-finder.

Second, even if some portion of Ms. Watson's analysis was somehow deemed relevant in this case, the Declaration and Letter do not meet the standards for admissibility of expert testimony set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and subsequent case law and rules. Ms. Watson's testimony and the Letter are devoid of any reliable, consistent, or testable methodology. Ms. Watson cites to what she "felt" was the

- 2 -

amount Mr. Reed likely spent on various efforts, including taxes and renovations, and completely failed to acknowledge numerous other factors that would impact her analysis.

Specifically, Ms. Watson admittedly guesses at many of her figures and has no reasonable explanation as to how she arrived at her damages amount. She relies on other figures without making her own assessment and does not limit her testimony and opinions to her knowledge or experience, but instead goes far beyond such testimony by conveying her own subjective belief and interpretations based on third-party estimates and information she received from Mr. Reed.

Following the Appellate Court's decision on December 23, 2015, the only issue remaining for determination is whether the Claimant suffered any cognizable damages caused by the Foreclosure Action. See Reed v. ResCap Borrower Claims Trust, No. 15-cv-02375, Dkt. No. 16 at 19 (S.D.N.Y. December 23, 2015). Ms. Watson's Declaration and Letter do not offer any opinion testimony that is relevant to this issue. And as noted, Ms. Watson's opinion does not pass muster under the rules governing expert testimony. For these and the reasons that follow, Ms. Watson's Letter and Declaration should be stricken and she should be precluded from testifying at trial.

**RELEVANT FACTS**

In her Letter, Ms. Watson concludes that Claimant Frank Reed is in the business of buying and selling properties. Ms. Watson states that she has worked with Mr. Reed as his buyer's and/or seller's agent for several transactions. Ms. Watson comments that she is particularly familiar with the Old Dell Trace property, which she notes was featured in an article about notable neighborhoods in Richmond, Virginia. Ms. Watson goes on to state common facts in this litigation, including that during 2008, Mr. Reed was extensively renovating the Old Dell

Trace property, that Mr. Reed did not finish the renovations, and that the market has declined since 2008.[1]

Ms. Watson then summarizes a number of facts she obtained from Mr. Reed and third-parties, indicating that Mr. Reed intended to sell the Old Dell Trace property "for a profit"; that the Old Dell Trace property was appraised for $1,725,000.00 in 2008; and that the same property is now assessed (for purposes of taxes) at $608,400.00. Despite testimony to the contrary, Ms. Watson then summarily concludes that Mr. Reed would have, in fact, sold the Old Dell Trace property for a profit, such that his damages would be the difference between the appraised value and the assessed value – two figures she admits are not comparable. Ms. Watson explains her damages calculation by indicating that in her opinion "the house would have sold for the appraised value of $1,725,000.00." After performing some simple addition and subtraction of numbers she admits were guesses and approximations, Ms. Watson opines that Claimant suffered a total of $1,116,600.00 in economic damages. This valuation falls drastically short of the standard required for admission of expert testimony required to aid a trier of fact.

## ARGUMENT

As the proponent of Ms. Watson's testimony, Claimant bears the burden of proving Ms. Watson is qualified and her opinion is relevant, reliable and otherwise admissible. <u>Wantanabe Realty Corp. v. City of New York</u>, No. 01 CIV.10137, 2004 WL 188088, at *2 (S.D.N.Y. Feb. 2, 2004), (finding the burden of demonstrating that the testimony is competent, relevant, and reliable rests with the proponent of the testimony) <u>aff'd</u>, 159 F. App'x 235 (2d Cir. 2005). Expert testimony is admissible only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Claimant has failed to satisfy his burden of proof.

---

[1] These topics are not generally in dispute.

I.  **The Opinions Expressed By Ms. Watson Are Irrelevant To The Issues At Hand And Will Not Assist The Trier Of Fact**

Throughout her letter, Ms. Watson merely acts as a conduit for Mr. Reed and other witness testimony and documents, which will not assist the trier of fact and should be excluded as hearsay.

This Court does not need "expert" testimony to understand commonly known facts. See e.g., U.S. v. Didomenico, 985 F.2d 1159, 1163 (2d Cir. 1993) (concluding "that the district court was well within the bounds of discretion in excluding [claimant's psychiatric expert's] testimony because the testimony did not meet the helpfulness criterion of Rule 702") (citations omitted); Grdinich v. Bradlees, 187 F.R.D. 77, 82 (S.D.N.Y. 1999) (excluding claimant's expert and finding that "[e]xpert testimony is not admissible when it addresses 'lay matters which a jury is capable of understanding and deciding without the expert's help.'") (citations omitted).  Further, "[a]lthough the Rules permit experts leeway with respect to hearsay evidence, Fed. R. Evid. 703, a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 136 (2d Cir. 2013) (quotation omitted).  The Report flouts these important principles.

Specifically, the Letter merely repeats facts reported by Claimant, and third parties, all of which Ms. Watson simply assumes are correct for purposes of formulating her damage calculation.  Ms. Watson also admits to guessing about a number of monetary amounts for purposes of calculating damages.  Blatantly uneducated guesswork is the antithesis of expert opinion.  This is not the type of damage figure reasonably capable of measurement and based upon known reliable factors required to prove lost profits. Three Crown Ltd. Partnership v. Salomon Bros., Inc., 906 F. Supp. 876, 894 (S.D.N.Y. 1995) (excluding damages calculation of a

"leading academic" where it was based, on the unsupported and speculative assumption that one of plaintiff's investment groups would have entered a particular future line of trades but for defendant's anti-competitive practices); Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000) (citing New York law) (holding projections of future profits based upon "a multitude of assumptions" that require speculation and conjecture and few known factors do not provide the requisite certainty).

## II. Ms. Watson Does Not Use Any Relevant Or Reliable Methods, And Therefore Her Opinions Wholly Lack Foundation And Do Not Satisfy The Daubert Standard

None of Ms. Watson's so-called "methodologies" are supportable or reliable. An expert opinion must have "a reliable basis in the knowledge and experience of [the expert's] discipline." Daubert, 509 U.S. at 591-92; see also Fed. R. Evid. 702 (permitting expert testimony only if, among other things, "(c) the testimony is the product of reliable principles and methods and the expert has reliably applied the principles and methods to the facts of the case"). Although there is no definitive test for determining the reliability of expert testimony, the Supreme Court has identified a number of factors bearing on reliability, including "(1) whether a theory or technique 'can be (and has been) tested,' (2) 'whether the theory or technique has been subjected to peer review and publication,' (3) a technique's 'known or potential rate of error,' and 'the existence and maintenance of standards controlling the technique's operation,' and (4) whether a particular technique or theory has gained 'general acceptance' in the relevant scientific community." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002) (quoting Daubert, 509 U.S. at 593-94) (internal citations omitted). The Supreme Court has expressly extended Daubert and its reliability requirements beyond scientific testimony to encompass all expert testimony. See also, Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999); Davis v. Carroll, 937 F. Supp. 2d 390, 417 (S.D.N.Y. 2013) ("Neither Daubert nor Kumho Tire tolerate

expert testimony that departs from scientific or professional standards and cannot be independently justified as a reliable analytical tool.").

Here, the foregoing Letter meets none of the indicia of reliability and utterly fails to satisfy the requirements of F.R.E. 702. Ms. Watson did not adequately account for any external factors such as the ongoing financial crisis. While she acknowledges that "there was a period of some decline," Ms. Watson opines that the Old Dell Trace property would have sold at its appraised value. Watson Dep. at 13:4-5. Even assuming there was a buyer, which there was not, the Old Dell trace property was not fully renovated and the "kitchen had not been replaced." Watson Dep. at 18:8-11. Ms. Watson makes no attempt to explain why those factors are not included in her analysis.

Further, expert testimony will be rejected where there is "too great an analytical gap between the data and the opinion proffered." General Electric Co. v. Joiner, 522 U.S. at 146 (1997); Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (finding that expert testimony will not be admitted where it is "speculative or conjectural," "conclusory," or "without factual basis"). Ms. Watson purports to provide expert testimony on economic damages incurred by the Claimant, but she provides no explanation – let alone application of a reliable, verifiable and accepted method – to reach these figures. As noted above, her specific opinion as to Claimant's economic damages is nothing more than simple calculations based on "[Mr. Reed's] investment in the 900, what [she] felt he had put already into the house, what he was probably paying in taxes, maybe insurance premiums." Id. at 27:20-23. Even worse, Ms. Watson, continuously admitted that she did not know the true figures for any of her variables as they were all "*guesstimate[s]*." Id. at 28:11 (emphasis added). In fact, the numbers that she used were not

"based on any data," they were just based on "the visual of what [Ms. Watson] recalled." Id. at 29:5-7.

A mere glance at Ms. Watson's explanation is enough to show that Ms. Watson's methodology is not sound:

> Q. You said one of the things that you accounted for was the amount he put into the house. Did you have a specific figure that you used in calculating the numbers in your letter?
>
> A. Well, I'm guessing if his house was valued at 800,000, he would have been paying 8,000 a year for taxes or close to that and if it was higher, he would have been paying more.
>
> Q. What would you have done with that 8,000 plus number?
>
> A. Probably included in that total….[by] [a]dding the 900, the million 50 that I thought he may have put into his addition and improvements and adding another 50 or so for six, eight years of taxes at 8,000.
>
> Q. No, now you just said a million 50 for the work that was done, did you mean 150,000?
>
> A. Yes.
>
> Q. In the appraisal that is attached that was prepared by Uminski, what did he do to come up with the appraised value?
>
> A. I have no idea. I was not involved with that.

Watson Dep. at 28:22-30:10.

Additionally, Ms. Watson calculates the value of any damages allegedly suffered by Claimant is subject to arbitrary comparators. Specifically, the appraisal from 2008 is an entirely distinct evaluation from the assessment completed later. Ms. Watson explained that the assessment is "typically what the county uses to base their taxes on that individual property….It is different that an appraised value [and]… does not, in our area, mean market value." Id. at 30:12-15. In other words, any comparison of these figures is akin to an "apples and oranges" assessment. Id. at 33:10-11 ("I think assessed value and appraised value are two different

- 8 -

things"). When pressed on the fact that these figures were different, Ms. Watson admitted that the assessed value was never equal to an appraisal. Id. at 31:14-16.

These numbers are particularly important because the difference between them is precisely the damages figure assessed by Ms. Watson, yet Ms. Watson insists she made her calculations using the alternative "guesstimate" method described above. Further, Ms. Watson indicated that she had no information concerning the number of liens Mr. Reed had on the property, the chances that a buyer would have been interested in purchasing the property for the list price in 2009, and did not know why Mr. Reed had not finished the renovations. Id. at 33:25-36:1. Despite these important variables for determining the actual profit realized from selling the Old Dell Trace property, Ms. Watson considered only her "guestimate" figures to come up with her $1,116,600.00 damages amount. The Supreme Court has condemned this sort of unsupported expert opinion, which is "connected to existing data only by the ipse dixit of the expert." See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997); see also E.E.O.C. v. Bloomberg L.P., No. 07 Civ. 8383 (LAP), 2010 WL 3466370, at *15 (S.D.N.Y. Aug. 31, 2010) (involving social psychologist, and excluding expert opinion "supported by what appears to be a 'because I said so' explanation"); Dev. Specialists, Inc. v. Weiser Realty Advisors LLC, 09 Civ. 4084, 2012 U.S. Dist. LEXIS 11701, at *22 (S.D.N.Y. Jan. 26, 2012) (excluding real estate appraiser's expert testimony where, among other things, his methodology "'connected to existing data only by the ipse dixit of the expert.'").

Ms. Watson simply provides no reliable basis for her conclusion that Mr. Reed would have realized a profit on an unfinished property and after the market crash. Davis, 937 F. Supp. 2d at 60-62, 69 (striking art appraiser's valuation under Daubert where the expert failed to link his personal knowledge and experience to the issue in a non-speculative manner). Thus, any

testimony on these points would not "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

### III. Ms. Watson's Letter And Testimony Should Be Excluded In Large Part – If Not In Their Entirety – Because She Is Not Qualified To Provide An Expert Opinion On Any Of The Issues At Hand

An expert witness may not offer opinions falling outside of the areas in which she is qualified as an expert by knowledge, skill, experience, training, or education. See Fed. R. Evid. 702; Gray v. Briggs, 45 F. Supp. 2d 316, 323-24 (S.D.N.Y. 1999) (finding expert, whose expertise resided primarily in the securities industry, lacked sufficient knowledge of and experience with ERISA to offer opinions involving ERISA, and thereby excluding opinions).

Ms. Watson's opinions purport to represent the value of the Old Dell Trace property at two different points in time, as well as the difference between those numbers, but her total lack of experience should prevent her from testifying concerning an area where she possesses no expertise. Specifically, Ms. Watson is not a licensed appraiser, she has never done an appraisal report, and she did not have any personal familiarity with the appraiser who created the report that she relied on. Watson Dep. at 25:19-26:15. She has never previously calculated a loss on a property as she did in this case, id., at 27:13-17, she offers no basis for her calculations and even admits the one thing she may be qualified to do, she did not do here. Id. at 31:11 (" I don't do appraisals. I do market analysis. Q. Did you do a market analysis? A. No").

### CONCLUSION

For the foregoing reasons, the Borrower Trust respectfully requests that Stevie Watson be precluded from testifying at trial and that her Report and Addendum be stricken.

Dated: August 12, 2016
    New York, New York

*/s/ Barbara K. Hager*
Diane A. Bettino
Barbara K. Hager, *admitted pro hac vice*
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824

*Co-Counsel for The ResCap Borrower Claims Trust*

-and-

Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

## **[PROPOSED] ORDER**

It is **HEREBY ORDERED** that the ResCap Borrower Claims Trust's Motion *In Limine* To Exclude the Report and Testimony of Ms. Stevie Watson, is **GRANTED**.

The Trust's counsel shall serve a copy of this Order on Frank Reed.

**IT IS SO ORDERED.**

Dated: _____
New York, New York

_____
MARTIN GLENN
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

### CERTIFICATE OF SERVICE

I hereby certify that on this 12th day August, 2016, I caused a true and correct copy of the foregoing Motion in Limine to Exclude the Expert Testimony of Stevie Watson to be sent to the following parties via Electronic Mail:

> Frank Reed
> Pro Se Claimant
> 817 Matlack Drive
> Moorestown, NJ 08057
> frankreednj@aol.com

> */s/ Barbara K. Hager*
> Barbara K. Hager