1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              August 4, 2016

19              4:07 PM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    Telephone Conference, on the Record, Regarding the Reed Matter.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Aliza Chodoff

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

3

1

2    A P P E A R A N C E S :   (TELEPHONICALLY)

3    REED SMITH LLP

4            Attorneys for ResCap Borrower Claims Trust

5            1717 Arch Street

6            Suite 3100

7            Philadelphia, PA 19103

8

9    BY:   BARBARA K. HAGER, ESQ.

10

11

12   ALSO PRESENT:

13           FRANK J. REED, IV, Creditor - Pro Se

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2           THE COURT:  All right, we're on the record in
 3    Residential Capital, number 12-12020.  This is a telephone
 4    hearing on the record in connection with the ResCap Borrower
 5    Claims Trust objection to claim number 3759, filed by Frank
 6    Reed.
 7           May I have the appearances, please?
 8           MS. HAGER:  Good afternoon, Your Honor.  This is
 9    Barbara Hager with Reed Smith, co-counsel for the Borrower
10    Claims Trust.
11           THE COURT:  Mr. Reed?
12           MR. REED:  Your Honor, this is Frank Reed, creditor
13    pro se.
14           THE COURT:  All right.  Thanks, Mr. Reed.
15           Mr. Reed, let me start with you.  Why don't you tell
16    me, what's the additional discovery that you want to take and
17    tell me the reasons why?
18           MR. REED:  I thought -- and I'll -- I thought it was
19    no more discovery.  What I was seeking to do was have the
20    various declarants put their declarations on a sworn deposition
21    because of the rule that I cited -- I don't have it in front of
22    me at the moment, -- whereby a deposition testimony can be
23    introduced at trial if a witness is outside of a hundred-mile
24    radius.
25           I learned of this just recently.  I seek no more
```

1    information other than what was said in the declarations.  I

2    seek no other documents, no further discovery, only the

3    documents that were attached or cited in the declarations.  I

4    think they're all attached to it.  And the purpose of it is

5    very transparent.  And it's -- and that is I fail to find the

6    mechanism whereby -- if I subpoena witnesses outside the

7    hundred-mile radius, if they do not show, I'm ignorant of any

8    mechanism which I can use to compel them to appear at trial in

9    September.

10           However, I --

11           THE COURT:  That's true.  You can't if they're more

12   than -- unless they appear voluntarily and are more than a

13   hundred miles from the court, you can't compel them to come.

14           MR. REED:  Correct.  So I found this rule that says

15   their testimony's in a deposition can be introduced for the

16   truth of the matter or any reason at trial.  And I cited the

17   rule.  And so I don't seek any additional discovery, although I

18   don't see an order stopping me personally from doing more

19   discovery.  I'm not going to play coy.  I know we've moved

20   along in this process, and I don't feel that I have to play coy

21   in that regard.

22           I am not seeking anything new.

23           THE COURT:  Who -- Mr. Reed, who are the witnesses who

24   you wish to depose?

25           MR. REED:  Your Honor, one is a county official who

1   provided tax records and ownership records from purchases and

2   sales of various property over the course of a number of years

3   in Henrico County.  Another is his assistant.  The -- another

4   one is the appraiser who appraised my property in Virginia back

5   contemporaneous in 2008.  He provided the appraisal, who has no

6   objection to it being used as an -- in our proceedings, and he

7   has stated in the declaration that it is true and accurate and

8   that he did perform it and that the contents are true and

9   accurate.  And he's willing to be deposed to state on the

10  record so that there's no question as to the, not just

11  authenticity, but the contents of the appraisal.

12          Then there are suppliers -- a number of suppliers and

13  contractors who have provided statements and/or invoices from

14  their records for what has -- was paid for in the expansion of

15  that property before it stopped, and also some contractors who

16  are owed money for work that was done but not paid fully.  And

17  so those are -- I'm trying to recover for those also who I owe,

18  because it's an ascertainable loss under the law, a debt owed

19  is something that I can pursue in this forum.

20          And so we have people who have been paid eighty

21  percent of their bill, fifty percent of their bill, ninety

22  percent of their bill.  And they want to -- they testified this

23  is how much I've received, here's some invoices, this is what I

24  have.  So we have the county official testifying to the --their

25  declaration and providing the signed, sealed documents from the

 1  county.  We have the appraiser and his documents that were

 2  produced at the time, long before this, contemporaneous to my

 3  work on the house.  The appraisal was from 2008.  It's in his

 4  records.  It's accurate, and he's willing to testify to it.

 5          I mean, I could seek to have it admitted as a business

 6  record, but I'm trying to avoid what happened to me before.

 7  And I don't -- and just trying to avoid that because these

 8  facts are true.  They're relevant, and they are -- I don't want

 9  them excluded because of some mistake as a matter of rule,

10  instead of a matter of reality.

11          THE COURT:  Mr. Reed --

12          MR. REED:  And so I discovered --

13          THE COURT:  Mr. Reed, how many witnesses are you

14  seeking to depose?  Because you listed -- let me finish.  You

15  listed suppliers and contractors.  What I'm trying to know is

16  precisely how many people are you seeking to depose.

17          MR. REED:  I think it's twelve, and they have like an

18  hour each set aside for two days.  That's it.  We'll take one

19  hour for each person.

20          THE COURT:  Well, if you take their depositions, Ms.

21  Hager's entitled to cross-examine them.  So you may think it's

22  an hour, but that doesn't mean it's an hour.

23          MR. REED:  I understand that if I -- I've tried

24  to -- I can provide more time if I need to.  And if I miss out

25  on some, I don't know.  I'm just trying to, like I said, get

1   that -- just the declaration in.  But if -- I now realize what

2   you're saying, that you think -- they may want to -- have a lot

3   of questions from me.

4           THE COURT:  Let me ask you a couple of more questions,

5   Mr. Reed.

6           MS. HAGER:  But --

7           THE COURT:  Just stop, Ms. Hager.  Not yet.

8   Mr. Reed --

9           MR. REED:  Your Honor --

10          THE COURT:  No, just stop, Mr. Reed.  Let me ask my

11  question.

12          With respect to the tax records, is all you're trying

13  to do is authenticate those documents which you want to

14  introduce into evidence?  Because there are separate rules of

15  evidence that deal with the admissibility of official records,

16  is -- are you -- do you want to depose the tax -- I don't know,

17  you said it was to introduce tax records from various sales,

18  and both the recorder and the assistant.  Is all you're trying

19  to do is authenticate the documents that you wish to use?

20          MR. REED:  Yes.  In that case, yes, authenticate them,

21  but not just authenticate them, but for their substance as

22  well, for the truth of the matter of their -- of the -- that I

23  did indeed go to this property and it was purchased at this

24  dollar amount and sold at that dollar amount.

25          THE COURT:  Okay, let me stop --

1          MR. REED:  And that's --

2          THE COURT:  Stop.  Have you given Ms. Hager a copy of

3   the documents that you want to introduce, that you say are

4   official public records?

5          MR. REED:  Long ago, Your Honor, when I had my

6   deadline for producing those documents.

7          THE COURT:  Okay, all right.

8          All right.  Ms. Hager, let me hear from you.

9          I'll give you another chance, Mr. Reed.  But let me

10  hear from Ms. Hager first.

11         MS. HAGER:  Yes, Your Honor, thank you.  Your Honor,

12  with respect to -- with respect to the subpoenas, I guess,

13  generally, of course, my concern when I saw them was that my

14  understanding was we were through with discovery.  And knowing

15  that we're on a tight deadline, I had concerns about that.  Two

16  of the people who are on the list -- or excuse me, two of the

17  people for whom Mr. Reed sent out subpoenas are not on his

18  witness list.  And now I understand, I think, that one of those

19  two is the person that he wants to use to authenticate the

20  Virginia tax records.  That may be a nonissue.

21         The other, I took from Mr. Reed's earlier email today,

22  is someone who he previously had gotten a declaration for but

23  inadvertently hadn't previously given it to me by the deadline

24  or included him on the witness list.  So --

25         THE COURT:  Let me -- I just want to stop you.  I want

1    to know -- I didn't quite understand that last statement.

2              MS. HAGER:  Sure.  There's an individual who was

3    subpoenaed by the name of David Houseman (ph.), who did not

4    appear on Mr. Reed's witness list and for whom Mr. Reed did not

5    supply a declaration previously.

6              THE COURT:  Yes.

7              MS. HAGER:  Mr. Reed sent me an email earlier today in

8    which he explained that he had gotten a declaration from Mr.

9    Houseman earlier on but inadvertently did not produce it to me.

10   And I didn't have a chance to look more closely at his email.

11   There were some attachments.  It may be that it is now

12   attached, and perhaps I do now have it.  But I guess what I'm

13   trying to say is that, by the due date, he hadn't produced

14   that.  And he had not provided that declaration or made Mr.

15   Houseman's name available.

16             There's another individual who was subpoenaed by the

17   name of Stevie Watson (ph.), who I deposed last month, I

18   believe, or perhaps back in June.  So I'm not sure why she

19   would be subpoenaed again.  Mr. Reed was there and had a chance

20   to ask her at that time.

21             THE COURT:  Did he do that?  Did he ask questions?

22             MS. HAGER:  With respect to her, I don't recall

23   offhand.  Some of the depositions we've had, he has asked

24   questions and a few he has not.  That one in particular, I

25   don't remember.  And I apologize.  I don't have it in front of

1    me.

2              THE COURT:  Okay.

3              MS. HAGER:  The other folks on the list are mainly, as

4    Mr. Reed said, they seem to be suppliers of materials with

5    respect to work that was being done on one or more of his

6    properties in Virginia.  And one of the individuals was the

7    appraiser who provided the as is appraisal for the property at

8    Old Dell Trace in Richmond.  I indicated to Mr. Reed once I got

9    these subpoenas that I would stipulate to -- because

10   I -- initially, I thought he was doing this for authentication

11   purposes.  And I told him that, with respect to ten of the

12   twelve individuals listed, that I would be -- excuse me, eight

13   of the twelve individuals listed, that I would be amenable to

14   agreeing to authenticity of those declarations.

15             But then, subsequently, I took from an email that,

16   with respect to all of these individuals, he's also concerned

17   about hearsay issues so wants to have a deposition so that he

18   doesn't have an issue with admissibility and, of course, with

19   getting these folks to New York.

20             I'll say that, obviously, we're on tight deadlines.

21   If Your Honor is inclined to let some of these go forward, I

22   think that would really be pushing up against the deadline of

23   the 12th for motions in limine and the pre-trial -- joint pre-

24   trial order.  If so, in the event that these go forward, I

25   think we would maybe need to think about pushing other dates --

1        THE COURT:  I'm not pushing any dates.

2        MS. HAGER:  -- back to accommodate --

3        THE COURT:  I'm not pushing any dates.

4        MS. HAGER:  Okay.

5        THE COURT:  The dates are --

6        MS. HAGER:  Yeah.  I mean, if --

7        THE COURT:  The dates are set.

8        MS. HAGER:  Sure.  Well, these going forward next week

9   is -- I mean, I think he's out of time to do it, because even

10  though the order doesn't say that discovery closed, I mean, I

11  think a fair reading of it is that it did because we've

12  basically done everything.  All documents have been exchanged.

13  The witness lists have been exchanged.  The depositions of the

14  other party's witnesses have happened.  I did not take

15  depositions of these individuals that Mr. Reed is now seeking

16  to depose a month and a half after I took them.

17        We were already down in Virginia twice taking

18  depositions.  So I feel that, given Your Honor's prior

19  instructions and the schedule as we have it, that these are out

20  of time.

21        THE COURT:  Well, let me just say first, for anybody

22  who was not listed, I required the disclosure of each side's

23  witnesses.  So you -- Ms. Hager, you've said that two of the

24  witnesses are not on the witness list.  They're not testifying,

25  period, Mr. Reed.

1          MR. REED:  Your Honor, I would like to clarify that

2     one -- the one that was not presented, that's fine.  I mean, it

3     was a mistake.  I received his declaration.  It went into -- it

4     went to a different email of mine, and I work out of the

5     primary email with Ms. Hager.  And I just didn't send it.

6     I -- it's an error on my behalf.  We received it in time.  I

7     had it in time.  It's dated, time stamped, everything.  And if

8     I -- we miss out on that for that gentleman, I feel bad, but

9     that's what's going to happen.

10          THE COURT:  Who's --

11          MR. REED:  The second one is --

12          THE COURT:  -- who's the other person?  Ms. Hager

13     identified David Houseman as one who is not on the witness

14     list.  Who is -- Ms. Hager, who is the other person not on the

15     witness list?

16          MR. REED:  He was listed --

17          MS. HAGER:  Tom --

18          MR. REED:  -- on the generic form.

19          THE COURT:  Just a second, Mr. Reed, okay?

20          Ms. Hager, who was on the other person who is not on

21     the witness list?

22          MS. HAGER:  Thomas Little (ph.).

23          THE COURT:  Mr. Reed, was Thomas Little on your

24     witness list?

25          MR. REED:  He was -- my witness list was -- contained

1  a list of people who I thought -- who were unnamed, but listed

2  as authorized for authentication by their -- either employer or

3  government agency.  So Mr. Little, for example, I put

4  representatives from Henrico County for the documents I'd be

5  seeking from Henrico County.  But I didn't have Mr. Little's

6  name.

7             THE COURT:  Tell me this, Mr. Reed.  Who is Mr.

8  Little?

9             MR. REED:  He's the tax assessor or the head tax

10  assessor or head of the tax office for Henrico County,

11  Virginia.

12             THE COURT:  And what is it that you want to depose him

13  about?  You're trying to authenticate a document?

14             MR. REED:  Yes, the -- that goes back to what you were

15  talking about in the beginning, Your Honor --

16             THE COURT:  Okay.

17             MR. REED:  -- that there might be a different rule

18  where the tax -- where these sealed, signed government

19  documents are admissible under a different methodology.

20             THE COURT:  All right.  May I ask you this, Mr. Reed?

21  Have you given Ms. Hager a copy of whatever government records

22  that you want to introduce at trial?

23             MR. REED:  Yes, those were provided with the

24  dec -- accompanying declarations back at the time when it was

25  required.

1          THE COURT:  Okay.  And Ms. Hager, are you able to

2  agree to the authenticity -- if you have vehement objections,

3  I'm not dealing with those now.  But I don't want Mr. Reed to

4  face an issue at trial where he goes to introduce an exhibit

5  and the objection is lack of foundation because he hasn't

6  established that it's authentic.  If you had an objection as to

7  authenticity -- he's said he's given you the documents.  If

8  they're government records, if you intend to object on

9  authenticity, I'm going to let him take those depositions,

10  okay?

11          I don't consider those that he's trying to

12  authenticate documents so they're admissible.  I don't hear Mr.

13  Reed saying that he wants to offer those witnesses for any

14  other purpose.  If he's -- if there are people he wants to

15  depose who are not on his witness list, but they're government

16  officials, and the purpose of the deposition is to authenticate

17  documents, if you'll stipulate to the authenticity, then

18  there's no reason for the deposition.  But if you can't -- I'm

19  not forcing you.  If you won't stipulate to the authenticity,

20  I'll let Mr. Reed take those depositions.

21          There's -- Mr. Reed, those two other people are

22  government employees who you wish to depose if you need to

23  authenticate documents, correct?

24          MR. REED:  I'm sorry, I didn't hear the first part of

25  your question.

1       THE COURT:  Okay.  Two of the people of the twelve who

2  you want to depose are employees or officials of government

3  agencies, and you want to depose them to authenticate

4  government records that you want to be able to introduce at

5  trial.  Do I understand that correctly?

6       MR. REED:  That is correct, Your Honor.

7       THE COURT:  Okay.  So look, with respect to those two,

8  Ms. Hager, we don't have to resolve it on the phone today.  You

9  need to resolve it with Mr. Reed either later today or no later

10  than tomorrow morning.  If you can stipulate to the

11  authenticity of the documents, then he doesn't need to take

12  those two depositions.  That leaves ten that we have to deal

13  with.

14       MS. HAGER:  Right.  And so I think we're talking about

15  Thomas Little and Elizabeth Welch (ph.).  And if I am

16  remembering the documents correctly that came, I believe from

17  Elizabeth Welch, with not a declaration, with a letter, if I'm

18  remembering them correctly, those are fine because I think that

19  they're government records and I wouldn't have a problem.

20       THE COURT:  Okay.

21       MS. HAGER:  I wouldn't be objecting to those for

22  authenticity purposes.

23       THE COURT:  Okay.  Just, I want you to final -- here,

24  I -- my ruling with respect to those is -- is that the other

25  person, Elizabeth Welch, Mr. Reed?

1           MR. REED:  I'm sorry?

2           THE COURT:  Are the two government employees Thomas

3    Little and Elizabeth Welch?

4           MR. REED:  Yes.

5           THE COURT:  Okay.  So with respect to those two, if

6    Ms. Hager will agree to the authenticity of the records, then

7    those depositions don't need to be taken.  If she, for whatever

8    reason, won't agree, then you can go ahead and take those

9    depositions, okay?  For that, you will work out.  But that

10   leaves ten people to deal with.

11          Now, of the other ten, are all of them on Mr. Reed's

12   witness list, Ms. Hager, other than David --

13          MS. HAGER:  No.

14          THE COURT:  We've dealt with David Houseman.

15          MS. HAGER:  I don't think we did deal with David

16   Houseman.  David Houseman would be the other name who is not on

17   the list.

18          THE COURT:  I know.  I said that -- are the

19   other -- we're dealing with ten people, nine -- if Mr.

20   Houseman's not on the list, are the other nine on the witness

21   list?

22          MS. HAGER:  Yes, Your Honor.

23          THE COURT:  Okay.  So Mr. Reed, the procedure I follow

24   at trial, which I've explained before -- and since you've been

25   through one trial with me, I think you understand this -- I

1    take written direct testimony, declarations provided that the

2    witness appears at trial for cross-examination.  Okay?  It's

3    not my procedure to allow you -- I'm putting aside whether

4    you're entitled to depose people, but you can't simply depose

5    and say is this your statement that you gave under oath and

6    that that's sufficient.  Okay?

7         For those witnesses, who I take their direct testimony

8    in written form, they are to appear in my courtroom to testify

9    for cross-examination.  If you're correct that -- if there are

10    witnesses who you can't subpoena or you can't compel to come

11    because they're more than a hundred miles from the court, you

12    are generally correct that you can take their deposition and

13    offer their deposition testimony.

14         What I am concerned about is that, while there is no

15    written order that set a deadline for you to complete your

16    deposition discovery, in the last two telephone hearings we had

17    a discussion and a deadline wherein you were going to take the

18    depositions.  Well, now, suddenly, there are an additional nine

19    depositions that you want.  As I said, as to Mr. Houseman, you

20    didn't disclose him as a witness, I'm not going to allow you

21    add the witness now.

22         But as to the other nine, which you did disclose the

23    names, where are they located, generally?  Do you have the

24    addresses in there, Ms. Hager?  Are they all in Virginia?

25         MS. HAGER:  They are --

RESIDENTIAL CAPITAL, LLC, et al.                    19

1          MR. REED:  They're all in --

2          MS. HAGER:  -- all in Virginia.

3          MR. REED:  They're all in Richmond, Your Honor,

4   within, I don't know, maybe eight to ten miles of -- centered

5   of where we were taking the depositions or scheduled to take

6   them.

7          THE COURT:  And on what subjects are they testifying?

8          MR. REED:  Seven of them, I think -- I don't have

9   it -- I'm having trouble connecting to my internet while I'm

10  talking to you on the phone.  Seven of them, I believe, are the

11  contractors and suppliers.  The eighth one is the appraiser,

12  and then the ninth one -- I can withdraw Stevie Watson.  I

13  have -- I reviewed her deposition, and we can withdraw her.

14         THE COURT:  Okay.  So there are -- so we're basically

15  talking about eight people, assuming that they're the -- that

16  you work it out as to Thomas Little and Elizabeth Welch, there

17  are eight other people who you did list on your witness list

18  who you wish to depose.  Am I understanding that correctly?

19         MR. REED:  Yes.  And again, Your Honor, I apologize,

20  but this is -- as I stated, I've recently learned of this.

21  Otherwise, in the previous conversations, I would have brought

22  it up.  I would have served the subpoenas.  And I would have

23  done it, especially in the time that we were down in Virginia.

24         THE COURT:  Okay.

25         MR. REED:  It's not convenient for me as well.

1          THE COURT:  Mr. Reed, did you -- with respect to those
2    eight people, have they agreed to appear for depositions?
3          MR. REED:  Yes.
4          THE COURT:  And have you selected dates when you're
5    going to do them or want to do these?
6          MR. REED:  I have the 8th and 9th, and I think
7    there's -- I think --
8          THE COURT:  August 8th and 9th?
9          MR. REED:  Yeah, because I was trying to get them -- I
10   was trying to get it done as quickly as possible --
11         THE COURT:  I know.  I'm just --
12         MR. REED:  -- as early as possible.
13         THE COURT:  I'm -- yeah, I'm just asking the question.
14   I'm not challenging you about it.  I'm just -- so you want to
15   take, originally -- you dropped one of them.  But as to eight
16   people, you were going to take their depositions in Richmond on
17   August 8th and 9th.  Do I understand that correctly?
18         MR. REED:  Yes.
19         THE COURT:  Okay.  And the subjects which you wish to
20   cover with them in a deposition are the subjects on which they
21   gave their declarations.  Do I understand that correctly too?
22         MR. REED:  Absolutely.
23         THE COURT:  Okay.  Ms. Hager, let me hear you further.
24   I'll tell you right now I'm inclined to let Mr. Reed -- look,
25   he's not a lawyer.  And he listed these eight people on his

1    witness list.  He can't compel them to come.  I won't permit

2    the use of their declarations unless they -- unless you either

3    agree or they show up in my courtroom for cross-examination.

4    But I don't -- you would -- I take it, Ms. Hager, you would

5    agree that if the witnesses are more than a hundred miles from

6    the court that Mr. Reed would be entitled to take their

7    depositions.  And if the testimony, if his questions are

8    proper, he'd be entitled to offer that testimony at trial.  Do

9    you agree with that?

10            MS. HAGER:  I do agree with that, Your Honor.

11            THE COURT:  Okay.  All right.

12            So look, it seems to me -- and Mr. Reed, you said you

13    thought you would be an hour with them, and that may well be.

14    But Ms. Hager obviously is entitled to cross-examine them.  So

15    I can't -- I don't know exactly how much time each person will

16    take.

17            Ms. Hager, obviously, I don't have the declarations

18    and I don't want to see them at this point.

19            But Mr. Reed, it may be that if you speak to Ms. Hager

20    she would agree that you could simply use the declarations and

21    not have to go through the depositions.  I don't know.  That's

22    completely up to her.  I'm not forcing her to do that.  The

23    government officials is a different story.  You just want that

24    to authenticate documents, and it sounds like you'll be able to

25    work that out.

1    If she doesn't want to agree -- and she's perfectly

2    entitled not to, because she would -- under my procedures, she

3    would be entitled to cross-examine each of these witnesses in

4    the courtroom, okay?  It may be -- I don't know what the

5    subjects -- or you said contractors who gave you invoices.  It

6    may be that you're not going to question some of the invoices.

7    I don't know.

8    So as to the eight people, I will permit Mr. Reed to

9    go forward with the depositions.  Are those dates, August 8th

10    and 9th, are they available for you, Ms. Hager?

11    MS. HAGER:  They are generally, Your Honor.  I may

12    have issues being physically present in Virginia, so I may do

13    it by phone.  I've actually got a personal issue at the moment.

14    My dad has Stage IV lung cancer, and we're in the midst of

15    chemo.  I'm in fact at the treatment center right now.  So

16    that's tying up time.  But I am sure that if these go forward I

17    could do it telephonically.  That is not a problem for me.  I

18    don't feel the need to necessarily be with these particular

19    individuals.

20    So if these go forward, I can certainly call in, and

21    that would be acceptable.

22    THE COURT:  You and Mr. Reed work that out.  I'll just

23    tell you, when I was in practice, the few times I tried to do a

24    deposition by telephone it was a mess.

25    MS. HAGER:  I know.  I just don't have other options.

1   We only have one more week.

2           THE COURT:  I know.  Do you have anybody -- any of

3   your colleagues who you can send?  I'm not -- look, you will

4   deal with that.  Yes, Ms. Hager, I will permit you to do your

5   participation in the depositions by telephone.  Work out with

6   Mr. Reed and make sure that it's at a place where there's a

7   speakerphone.

8           And I just had one miserable experience that I

9   remember trying to do a deposition examination -- I wasn't the

10  main lawyer doing it -- by telephone.  The speaker didn't work

11  right, couldn't hear.  So I just -- the logistics, best laid

12  plans don't always work very well.

13          MR. REED:  Your Honor --

14          MS. HAGER:  Right.  I'm --

15          THE COURT:  Mr. Reed, go ahead.

16          MR. REED:  I'm using a reputable and known

17  stenographic service.

18          THE COURT:  Sure.

19          MR. REED:  We're using their offices.

20          THE COURT:  Okay.

21          MR. REED:  I will find out about the speakerphone

22  equipment immediately.

23          THE COURT:  Okay.  That's fine.

24          MR. REED:  And --

25          THE COURT:  Look, I'm going to -- you and Ms. Hager

1   work that out, okay?  I'm confident that you'll be able to work
2   that out.

3          So yes, as to -- so here's where are.  And tell me
4   whether this -- whether there are other issues we have to deal
5   with.  As to Little and Welch, who are employees of a public
6   agency that you wish to depose to authenticate records, Ms.
7   Hager will confirm with you by tomorrow whether she will
8   stipulate to authenticity.  That doesn't mean that they're
9   admissible, but that she -- because there may be relevance
10  issues.  I'm not dealing with that now.

11         But we don't need the wit -- she'll let you know
12  whether you need the witnesses to authenticate.  I don't want
13  you blindsided at trial because you face an objection on
14  foundation grounds, okay?

15         All right.  So to David Houseman, who was not on the
16  witness list, you're not going to be able to use David Houseman
17  because you didn't disclose him by the deadline that I applied.

18         MR. REED:  That's fair, Your Honor.

19         THE COURT:  Okay.  You dropped your request to depose
20  Stevie Watson, so we're talking about eight depositions, all in
21  Richmond, for which you've subpoenaed the witnesses, where they
22  will appear on August 8th and 9th.  I can't -- it's not up to
23  me to compel them to appear.  If you've got -- assuming they
24  do, you can take those depositions.  And you'll work out with
25  Ms. Hager so she can participate by telephone, okay?

1          MR. REED:  Okay.

2          THE COURT:  Are there other issues we need to deal

3    with today?

4          MR. REED:  Your Honor, an unrelated issue cropped up

5    last night.  I think it was -- when I looked at -- Ms. Hager

6    sent me drafts of the pre-trial order --

7          THE COURT:  Yes.

8          MR. REED:  -- we're working on for the end of next

9    week.  Ms. Hager has proposed to use in another federal piece

10   of litigation, of which I'm a plaintiff, summary judgment

11   motions and, I believe, an order in that case granting a

12   dismissal of our claims by -- a victory against us -- or me by

13   the defendant.

14         However, it's -- within the last two weeks, I -- Ms.

15   Hager may or may not be aware of -- is I applied that matter to

16   the Third Circuit Court of Appeals.  And that order's been

17   vacated, and it's been overturned based on my appeal.  And

18   there's a new opinion in that.  And I don't know -- my

19   documents -- time for submitting documents has passed.  But she

20   may be relying on things in that trial court order and motions

21   filed.  If those are now mooted because of my victory at the

22   Third Circuit Appeals, I'd send that to her, and I don't know

23   how that would be -- it may be relevant.

24         THE COURT:  Let me ask you, have you sent her -- what

25   I understand you to be saying is the Third Circuit reversed the

1  decision of the district court?

2          MR. REED:  Yes.  Yes, Your Honor.

3          THE COURT:  Okay.

4          MR. REED:  Per curium.

5          THE COURT:  Okay.  Send it to Ms. Hager.

6          So if she still intends to try and offer the trial

7  court decision, you'll object and say that -- you'll tell me

8  that the appellate court reversed the decision.  So I'm not

9  going to get into ruling now what's admissible and what's not

10 admissible.

11         Ms. Hager, were you aware that the Third Circuit

12 reversed, according to Mr. Reed?

13         MS. HAGER:  No, Your Honor, I wasn't.

14         THE COURT:  Okay.  So look, Mr. Reed, send Ms. Hager a

15 copy of the Third Circuit decision, and you may solve the

16 problem.  I'm glad you're raising it now, okay?

17         MR. REED:  Okay.

18         THE COURT:  All right.  Are there any other issues,

19 Mr. Reed, that you want to raise?

20         MR. REED:  I really need a babysitter because it takes

21 an awful lot of time for me to do this work, so that would be

22 helpful.

23         THE COURT:  Babysitters, I can't help you with.

24         MR. REED:  Well, that's -- this action is very

25 difficult.  So -- all right.  Well, listen, that's -- and I

 1   have nothing more at the moment.

 2          THE COURT:  Okay.  Ms. Hager, anything else you want

 3   to raise?

 4          MS. HAGER:  Yes, Your Honor, one matter.

 5          THE COURT:  Oh, you had sent him a letter that you

 6   have a problem about when we have the pre-trial.

 7          MS. HAGER:  Yes, Your Honor.  I found out subsequently

 8   my husband is going to be away in Europe that week.  I can

 9   still come --

10          THE COURT:  And he's not taking you?

11          MS. HAGER:  -- to New York.  I just can't

12   leave -- sadly, no.  Before kids, I used to go with him on

13   those trips, which he does often.

14          But I can still come.  I just can't leave the kids

15   early, so I can be there by noon --

16          THE COURT:  Look, here's what I want --

17          MS. HAGER:  -- works for Your Honor.

18          THE COURT:  -- you to do.  Work out with Mr. Reed and

19   with Deanna Anderson, my courtroom deputy -- let me see.  I can

20   look now.

21          MS. HAGER:  Okay.

22          THE COURT:  You're saying the 14th you can come later

23   in the day?

24          MS. HAGER:  I can come.  A train would get in at a

25   quarter to 11, so I could be in the courthouse by 12.

1          THE COURT:  We can do it -- does 2 o'clock work for

2     you?

3          MS. HAGER:  Well, no, because then I'm going to have a

4     problem on the backside --

5          THE COURT:  Oh.

6          MS. HAGER:  -- getting back in time for them.

7          THE COURT:  Well, what time would you like to do it?

8          MR. REED:  Your Honor, the thing is --

9          THE COURT:  I'm sorry, Mr. Reed, go ahead.

10          MR. REED:  I said, you think I'm joking about that

11     babysitting issue.  Ms. Hager needs it too.

12          THE COURT:  Ms. Hager, what time can you reasonably be

13     here for the hearing?

14          MS. HAGER:  The best time -- and I do hate to say this

15     -- but the best time for me would be noon --

16          THE COURT:  Okay.  Can --

17          MS. HAGER:  -- because I can get in --

18          THE COURT:  -- you do it at noon, Mr. Reed?

19          MS. HAGER:  -- and I can get home.

20          THE COURT:  Mr. Reed, can you --

21          MR. REED:  Yes.

22          THE COURT:  -- do it at noon?

23          MR. REED:  Yes.

24          THE COURT:  Okay.  We'll do it at noon, okay?

25          So we'll change the time --

1          MS. HAGER:  I appreciate that.

2          THE COURT:  -- for the final pre-trial conference to

3    September 14th, at 12 noon.

4          MS. HAGER:  Thank you very much.

5          THE COURT:  Okay?  Is that all right, Mr. Reed?

6          MR. REED:  Yes, Your Honor.

7          THE COURT:  Okay.  All right.

8          Ms. Hager, anything else?

9          MS. HAGER:  No, Your Honor, thank you.

10         THE COURT:  All right.  Mr. Reed, anything else?

11         MR. REED:  No.  No, Your Honor, at --

12         THE COURT:  Okay.

13         MR. REED:  -- this time, no.

14         THE COURT:  Let me just say so that -- because this is

15   going to be on the record, so with the depositions of the eight

16   people in Richmond, discovery is closed.  Okay?  So I want to

17   enable you to take your best shot at proving your case at

18   trial, Mr. Reed.  So that's why I'm letting you go forward with

19   these depositions.

20         But this is the close -- the final close of discovery.

21   There's no more discovery after these people are deposed, okay?

22         MR. REED:  That's fine with me, Your Honor.

23         THE COURT:  Ms. Hager, you understand that as well?

24         MS. HAGER:  Yes, Your Honor, thank you.

25         THE COURT:  Okay, thanks very much, both of you.

1          We're adjourned.

2          MS. HAGER:  Thank you, Your Honor.

3          MR. REED:  Bye-bye.

4       (Whereupon these proceedings were concluded at 4:47 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3

4                              RULINGS

5                                                    PAGE      LINE

6   Mr. Reed allowed to take depositions of      17         8

7   government officials if authenticity not

8   stipulated to.

9   Request to depose David Houseman denied      18        20

10  Request to depose eight witnesses included on 22        8

11  witness list granted as specified

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         C E R T I F I C A T I O N

3

4    I, Aliza Chodoff, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   ALIZA CHODOFF

12   AAERT Certified Electronic Transcriber CET**D-634

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  August 5, 2016

19

20

21

22

23

24

25