**Hearing Date: September 15, 2016 at 9:00 a.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S MEMORANDUM
OF LAW IN SUPPORT OF THE TRUST'S OBJECTION TO CLAIM NUMBER 3862**

ny-1244520

**TABLE OF CONTENTS**

**Page**

SHORT PREVIEW OF THE ESSENTIALS OF THE CASE ...................................................... 1

ISSUES TO BE TRIED .................................................................................................................. 2

ANALYSIS OF THE LAW AND FACTS ................................................................................... 3

    GMACM Did Not Commit An Unfair or Deceptive Practice When Originating the Mortgage Loan ........................................................................................................ 5

    The Lack of Review of Ms. Gosselin's Income During Origination Did Not Cause Her to Default on the Mortgage Loan ................................................................. 7

    Ms. Gosselin Has Failed to Demonstrate Any Unfair or Deceptive Practice Resulting From the Misdirected Payment ................................................................. 9

    Ms. Gosselin Has Failed to Demonstrate Any Damages Caused by the Misdirected Payment ....................................................................................................... 9

    Ms. Gosselin's Alleged Damages Stemming From the Misdirected Payment Are Too Speculative .................................................................................................... 11

    Ms. Gosselin's Alleged Damages Stemming From the Misdirected Payment Are Too Speculative .................................................................................................... 12

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Aspinall v. Philip Morris Cos.,
    813 N.E.2d 476 (Mass. 2004) ................................................................................................6

Brown v. Bank of Am. Nat'l Ass'n,
    67 F. Supp. 3d 508 ........................................................................................................6, 7, 10

Connolly v. Suffolk Cty. Sheriff's Dep't,
    815 N.E.2d 596 (Mass. Ct. App. 2004) ................................................................................11

Conway v. Electro Switch Corp.,
    523 N.E.2d 255 (Mass. 1988) ...............................................................................................11

Frappier v. Countrywide Home Loans, Inc.,
    No. 09-CV-11006 (DJC), 2013 WL 1308602 (D. Mass. Mar. 31, 2013), aff'd, 750
    F.3d 91 (1st Cir.), cert. denied, 135 S. Ct. 179 (2014) ...........................................................8

Kitner v. CTW Transport, Inc.,
    762 N.E.2d 867 (Mass. Ct. App. 2002) ................................................................................11

Lam v. PNC Mortgage,
    130 F. Supp. 3d 429 .................................................................................................................9

Liu v. Amerco,
    677 F.3d 489 (1st Cir. 2012) ...................................................................................................7

Walsh v. TelTech Sys., Inc.,
    821 F.3d 155 (1st Cir. 2016) ...................................................................................................8

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

In accordance with the Joint Pretrial Order [Docket No. 9533], the ResCap Borrower Claims Trust (the "Trust"), as successor in interest to the above-captioned debtors (the "Debtors") with respect to Borrower Claims, hereby files this pretrial memorandum in support of the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7552] (the "Objection") as to claim number 3862 filed by Rhonda Gosselin (the "Claim").

## SHORT PREVIEW OF THE ESSENTIALS OF THE CASE

1. On November 9, 2012, Rhonda Gosselin (the "Claimant" or "Ms. Gosselin") filed the Claim seeking recovery for alleged wrongdoing on the part of debtor GMAC Mortgage, LLC ("GMACM"). After an initial hearing, the Court issued a *Memorandum Opinion and Order Sustaining in Part and Overruling in Part the ResCap Borrower Claims Trust's Objection to Claim No. 3862 Filed by Rhonda Gosselin* [Docket No. 8516] (the "First Order") and an *Order Granting the ResCap Borrower Claims Trust's Motion for Partial Reconsideration* [Docket No. 8972] (the "Second Order" and with the First Order, the "Orders"), which sustained the Objection to the Claim as to all but two causes of action. In the Orders, the Court overruled the objection without prejudice as to claims for violation of chapter 93A of the Massachusetts General Laws ("Chapter 93A") and the Massachusetts Consumer Credit Disclosure Act (the "MCCDA"). See Second Order at 7. The Court determined that three factual issues needed to be resolved through an evidentiary hearing in order to make a final determination of the Chapter 93A and MCCDA claims: (1) whether GMACM violated Chapter 93A by originating a loan to Ms. Gosselin without properly assessing Ms. Gosselin's ability to repay the Mortgage Loan; (2) whether Ms. Gosselin suffered any economic damages as a result of a payment that was

1

ny-1244520

misdirected by GMACM; and (3) when Ms. Gosselin received a TILA notice of the right to cancel. The answer to that final issue of fact has been stipulated to by the parties, who agree that the TILA notice was received at the time the Mortgage Loan (defined below) was originated. <u>See</u> Stipulation Facts No. 16. As a result, as explained more fully below, no evidentiary hearing is necessary to determine that the MCCDA claim fails as a matter of law.

2. At trial, the Trust will show that Ms. Gosselin, who has the burden of proof, is not entitled to any recovery on account of the Chapter 93A claim because Ms. Gosselin cannot demonstrate that GMACM engaged in an unfair or deceptive practice. Moreover, even if the alleged wrongdoing can be shown, Ms. Gosselin cannot demonstrate any damages she incurred as a result of GMACM's alleged actions. Specifically:

- The stipulated facts support a finding that the information available to GMACM at the time of origination supported a conclusion that Ms. Gosselin could afford the monthly payment on the Mortgage Loan, and in fact, Ms. Gosselin made payments for a number of months. Therefore the origination of the Mortgage Loan did not constitute an unfair or deceptive act.

- Ms. Gosselin's default on the Mortgage Loan was not the result of her inability to make payments using the income available to her at the time of origination, but rather by unforeseen hardship that she experienced months after the Mortgage Loan was originated.

- GMACM's error in sending Ms. Gosselin's payment to the wrong person was a mistake that GMACM quickly remedied, and therefore cannot form the basis for a cause of action under Chapter 93A.

- In the alternative, even if Ms. Gosselin could demonstrate that the Misdirected Payment (defined below) amounted to an unfair and deceptive practice, she has failed to demonstrate that she was damaged as a result.

### ISSUES TO BE TRIED

3. Whether Ms. Gosselin suffered any economic damages as a result of the Misdirected Payment that would result in a claim under Chapter 93A.

2

ny-1244520

4. Whether GMACM violated Chapter 93A by originating the Mortgage Loan without properly assessing Claimant's ability to repay the Mortgage Loan.

5. The extent of actual damages, if any, proximately caused by Ms. Gosselin by GMACM's alleged violation of Chapter 93A or the MCCDA.

## ANALYSIS OF THE LAW AND FACTS

6. On or around November 9, 2012, Ms. Gosselin filed a proof of claim against GMACM, designated as Claim No. 3862 (the "Gosselin Claim"), asserting a secured claim for $153,669.00 and a general unsecured claim for $165,980.60. See Exhibit A to the *Declaration of Deanna Horst in Support of the ResCap Borrower Claims Trust's Supplemental Objection and Reply in Support of Its Seventy-Fifth Omnibus Objection to Claims (No-Liability Borrower Claims) As To Claim No. 3862 Filed By Rhonda Gosselin*, attached as Exhibit 1 to the Supplemental Objection [Docket No. 7842] (the "Supp. Decl").

7. GMACM's books and records show that it originated a loan in the amount of $85,000.00 to Ms. Gosselin on July 26, 2006 (the " Mortgage Loan"). See Pretrial Order [Docket No. 9959], Stipulated Facts No 1. The Mortgage Loan was a cash-out refinancing of her primary residence. See Stipulated Facts No. 4. The loan product that Ms. Gosselin applied for did not require her to verify her income. See Stipulated Facts No. 5. Rather, Ms. Gosselin was approved based on her credit score, loan-to-value ratio, and mortgage payment. See Stipulated Facts Nos. 6-10. Ms. Gosselin was also approved for the Mortgage Loan because her loan history at the time she applied did not reflect any late payments on her existing mortgage. See Stipulated Facts No. 11.

8. The Mortgage Loan paid off a prior lien on Ms. Gosselin's property of $24,559.46, as well as credit card debt totaling $41,528.45. See Stipulated Facts No. 12. Additionally, Ms. Gosselin received $14,523.72 in cash from the proceeds of the Mortgage Loan.

3

See Stipulated Facts No. 13. As a result of the Mortgage Loan, Ms. Gosselin's payment on her monthly debt, including her mortgage and credit card payments, decreased from $2,214.00 to $1,351.37. See Stipulated Facts Nos. 14-15.

9. From the time of origination through April 1, 2007, Ms. Gosselin had sufficient monthly income to make the monthly payment due on the Mortgage Loan, and in fact made the monthly payments due on August 1, 2006 through March 1, 2007. See Stipulated Facts Nos. 19-26, 29.

10. Beginning in April 2007, Ms. Gosselin could no longer make the monthly payments due on the Mortgage Loan because she was not receiving rent payments from her tenant. See Stipulated Facts No. 30.

11. On June 8, 2007, after failing to make the April through June 2007 payments, Ms. Gosselin informed GMACM that she would be unable to make all three payments that were due, and GMACM agreed to allow her to make the April and May payments in June and make the June payment in July. See Stipulated Facts Nos. 27-29, 32-33.

12. Ms. Gosselin made a payment on June 9, 2007 to cover the April and May payments. See Stipulated Facts No. 34. That payment was accidentally transferred to another customer by GMACM (the "Misdirected Payment") and that customer refused to return the payment. See Supp. Decl. ¶ 9. Ms. Gosselin was advised by a GMACM employee on June 22, 2007 to put a stop payment on the original check. On June 28, 2007 GMACM told her it would cover any costs, including amending her credit if it was affected due to the issue, waiving any late charges, and offering to enroll her in a privacy guard. See Stipulated Facts Nos. 35, 37.

4

13.     On June 25, 2007, Ms. Gosselin made another payment that covered the April and May payments, and GMACM accepted this payment and brought the account current. See Stipulated Facts No. 36.

14.     Ms. Gosselin did not make the payment that was due on July 1, 2007 to cover the June and July 2007 payments. See Stipulated Facts No. 39. As a result, on August 9, 2007, GMACM referred the Mortgage Loan to foreclosure. See Stipulated Facts No. 40.

15.     The foreclosure sale was placed on hold for numerous reasons between 2007 and 2010, including attempts to qualify Ms. Gosselin for a loan modification and Ms. Gosselin's first bankruptcy proceeding. See Stipulated Facts Nos. 41-50. The foreclosure process was again placed on hold after Ms. Gosselin filed a chapter 7 bankruptcy petition in April 2010, again staying the foreclosure proceedings. As part of the chapter 7 proceeding, Ms. Gosselin filed an adversary proceeding (the "Adversary Proceeding"), asserting the causes of action against GMACM that are at issue in the Claim.

16.     Ms. Gosselin is currently in default under the terms of the Mortgage Loan. See Stipulated Facts No. 54. At the time the servicing of the Mortgage Loan was transferred to GreenTree Servicing, LLC on February 1, 2013, Ms. Gosselin had not made a payment on the Mortgage Loan since November 25, 2010. See Stipulated Facts No. 53.

17.     No foreclosure proceeding has ever been completed on Ms. Gosselin's property, and Ms. Gosselin continues to reside in the property. See Stipulated Facts Nos. 55-56.

**GMACM Did Not Commit An Unfair or Deceptive Practice When Originating the Mortgage Loan**

18.     Ms. Gosselin asserts that GMACM violated Chapter 93A during the origination of the Mortgage Loan. "To allege a violation of Chapter 93A, a plaintiff must show that the defendant engaged in trade or business and committed an unfair or deceptive act, causing

5

ny-1244520

economic injury to the plaintiff." Brown v. Bank of Am. Nat'l Ass'n, 67 F. Supp. 3d 508, 514 (D. Mass. 2014). Courts have found that conduct is "deceptive" when "it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted…" Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 488 (Mass. 2004). When determining whether a practice is "unfair," courts consider several factors, including: (1) whether the practice is within the "penumbra" of some legal or established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. See Brown, 67 F. Supp. 3d at 514.

19. Ms. Gosselin asserts that, by originating a loan without assessing her income, GMACM committed an unfair and deceptive act in violation of Chapter 93A, and that this act caused "excess fees and costs, and other damages." See First Amended Complaint, attached to the Proof of Claim as Exhibit B. However, even though Ms. Gosselin's income was not a factor in deciding to approve her for the Mortgage Loan, the evidence demonstrates that Ms. Gosselin in fact could afford to make her monthly payments, and that her credit history suggested the payments were affordable.

20. As discussed in ¶ 7 *supra*, Ms. Gosselin was approved for the Mortgage Loan because (i) her credit score of 679 exceeded the minimum threshold of 660, (ii) her loan-to-value ratio of 47% was significantly less than the maximum 90%, (iii) her new loan payment was only 1.75x her existing loan payment, and (iv) her payment history did not reflect any late payments on her existing mortgage. See Credit Report, attached as Exhibit C to the *Declaration of Deanna Horst in Further Support of the ResCap Borrower Claims Trust's Supplemental Objection and Reply in Support of Its Seventy-Fifth Omnibus Objection to Claims (No-Liability Borrower Claims) as to Claim No. 3862 Filed by Rhonda Gosselin* [Docket No. 8007].

6

Additionally, while not necessarily a reason for the approval of the Mortgage Loan, Ms. Gosselin's credit report showed that she was current on all of her credit cards, which at the time required monthly payments of approximately $1,703.  See Credit Report; see also Stipulated Facts No. 14.

21.     Taken together, this information demonstrates that Ms. Gosselin was able to make a total monthly payment on her debt prior to the origination of the Mortgage Loan that was larger than her monthly payment after the origination of the Mortgage Loan.  See Stipulated Facts Nos. 14-15. Furthermore, using her monthly income at the time of origination, Ms. Gosselin did make her monthly payments until her income declined due to lack of payment by a tenant.  See Stipulated Facts Nos. 30-31.  As a result, the evidence does not support Ms. Gosselin's contention that she could not afford to make payments under the Mortgage Loan, and therefore she cannot demonstrate the GMACM committed an unfair or deceptive trade practice during the Mortgage Loan's origination.

**The Lack of Review of Ms. Gosselin's Income During Origination Did Not Cause Her to Default on the Mortgage Loan**

22.     The fact that Ms. Gosselin admits that she **could** afford her monthly mortgage payments at the time of origination is fatal to her claim for an additional reason.  A Chapter 93A requires a plaintiff to plead economic injury.  See Brown, 67 F. Supp. 3d at 514. "Merely proving an unfair or deceptive act by the defendant … is insufficient to establish injury to the consumer."  Id. (quoting Rule v. Fort Dodge Animal Health, Inc., 607 F. 3d 250, 254 (1st Cir. 2010)).  Rather, "the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself."  Brown, at id. (quoting Tyler v. Michaels Stores, Inc., 984 N.E. 2d737, 745 (Mass. 2013)).  This means that in order to state a claim under Chapter 93A, a claimant must establish causation of damages.  See Liu v. Amerco,

7

ny-1244520

677 F.3d 489, 495 (1st Cir. 2012) ("Causation of damages is required for a chapter 93A claim…"); Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) ("A plaintiff's failure to establish both factual causation and proximate causation is fatal to her Chapter 93A claim.") Here, because Ms. Gosselin did not have a problem making payments on the Mortgage Loan until she ceased receiving rental income in 2007, she cannot demonstrate that the Mortgage Loan itself caused her asserted damages.

23. In a similar case, Frappier v. Countrywide Home Loans, Inc., No. 09-CV-11006 (DJC), 2013 WL 1308602 (D. Mass. Mar. 31, 2013), aff'd, 750 F.3d 91 (1st Cir.), cert. denied, 135 S. Ct. 179 (2014) a borrower plaintiff filed a lawsuit against a lender for allegedly providing the borrower with a loan that the lender knew the borrower could not afford. The borrower asserted that he incurred damages after he defaulted on the loan and lost the property in a foreclosure sale. Id. at *1. The court found that the borrower had not demonstrated a sufficient causal relationship because the borrower had made the payments under the loan for the first fifteen months, and only after he lost his job and incurred additional unexpected expenses was he unable to make his mortgage payment. Id. at *19. As a result, the court found that the borrower's "hardships caused his default, not the [loan]." Id.

24. This situation presents a nearly identical scenario. Here, Ms. Gosselin admits that she was able to make the payments under the Mortgage Loan with the income that she had at the time of origination. See Stipulated Facts No. 31. Ms. Gosselin only faced difficulty in making her mortgage payments after her tenant stopped paying his rent. See Stipulated Facts No. 30. As a result, as with the borrower in Frappier, it was not the Mortgage Loan itself that caused Ms. Gosselin to default and incur additional fees, but rather unforeseen intervening hardships that did not exist at the time the loan was originated. Therefore, Ms.

8

ny-1244520

Gosselin cannot demonstrate that the Mortgage Loan was the "factual and proximate cause" of her asserted damages.

### Ms. Gosselin Has Failed to Demonstrate Any Unfair or Deceptive Practice Resulting From the Misdirected Payment

25.    Ms. Gosselin asserts that GMACM violated Chapter 93A when it sent the Misdirected Payment to a third party.  However, the Misdirected Payment does not constitute an unfair or deceptive trade practice.

26.    In order to demonstrate an action constitutes an "unfair or deceptive," a plaintiff needs to show evidence of the defendant "acting 'unethically or unscrupulously, "as opposed to mistakenly, even negligently so." Lam v. PNC Mortgage, 130 F. Supp. 3d 429, 435-36 (D. Mass. 2015) (holding that mistakes made by a loan servicer with regard to a borrower's account did not constitute a violation of Chapter 93A).

27.    Here, there is nothing to suggest that the Misdirected Payment was anything other than a mistake, which GMACM took responsibility for and corrected less than two weeks after the mistake was made. See Stipulated Facts No. 34-35.  Ms. Gosselin has failed to put forward any evidence to suggest that GMACM acted unethically or unscrupulously, and therefore she has not demonstrated a violation of Chapter 93A related to the Misdirected Payment.

### Ms. Gosselin Has Failed to Demonstrate Any Damages Caused by the Misdirected Payment

28.    Ms. Gosselin's Chapter 93A claim stemming from the Misdirected Payment also fails because she cannot establish that the Misdirected Payment caused her any harm, as all of her damages stem from unsubstantiated and unforeseeable emotional distress. Ms. Gosselin asserts that she was damaged by the Misdirected Payment, which was resolved in less than a month, because she "was so depressed that she allowed her real estate license to

lapse." See Claimant's Responses to Interrogatories, Response 16. She asserts that if the Misdirected Payment had not occurred, she would not have caused her license to lapse, and she would have received a salary in this occupation every year since the Misdirected Payment occurred. Ms. Gosselin also asserts that this further caused her to file for bankruptcy, resulting in attorney's fees.

29. To establish emotional distress damages under Chapter 93A, a plaintiff must establish: (1) "the actor intended to inflict emotional distress or that he knew or should have known that it was the likely result of the alleged conduct"; (2) "the conduct was "extreme or outrageous""; (3) "the actions of the defendant were the cause of the … distress"; and (4) "the emotional distress was … 'severe.'" See Brown, 67 F. Supp. 3d 508 at 514-15. To constitute "extreme or outrageous" conduct, the actions must be "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." Id. at 515 (quoting Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014)).

30. Here, Ms. Gosselin does not explain how GMACM's conduct was "extreme or outrageous." GMACM made a mistake, which it correctly very quickly. It also offered to provide Ms. Gosselin with privacy guard in the event that the very limited personal information included on the Misdirected Payment would get in the wrong hands. This hardly can be seen as acting "beyond all possible bounds of decency" and therefore cannot entitle Ms. Gosselin to emotional distress damages.

31. Similarly, Ms. Gosselin has not provided any evidence that GMACM "knew or should have known" that the mailing of Misdirected Payment would cause Ms. Gosselin "severe" emotional distress, let alone cause her to be allegedly so depressed that she allowed her real estate license to lapse.

10

ny-1244520

### Ms. Gosselin's Alleged Damages Stemming From the Misdirected Payment Are Too Speculative

32. In addition to failing to meet the standard for emotional distress damages under Chapter 93A, the damages claimed by Ms. Gosselin also fail because they are too speculative. In Massachusetts, "damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty." Kitner v. CTW Transport, Inc., 762 N.E.2d 867, 873 (Mass. Ct. App. 2002) (quoting Lowrie v. Castle, 113 N.E. 206 (1916); Conway v. Electro Switch Corp., 523 N.E.2d 255 (Mass. 1988) ("damages may not be determined by speculation or guess … must be causally related to the defendant's wrongdoing, and the plaintiff should not be made more than whole.") (internal citations omitted).

33. Here, Ms. Gosselin's asserted damages caused by the misdirected payment are without a doubt too speculative to be recoverable under Massachusetts law. As an initial matter, Ms. Gosselin has not proffered any evidence to support her contention that her lapse in her real estate license was caused by the Misdirected Payment, especially given that in the **nine** years since the Misdirected Payment, Ms. Gosselin has not regained her license. See Claimant Response to Interrogatories, Response 16.

34. Perhaps more importantly, Ms. Gosselin has not provided any evidence of the income she would have allegedly earned had she not allowed her license to lapse. In an analogous case, Connolly v. Suffolk Cty. Sheriff's Dep't, 815 N.E.2d 596, 606 (Mass. Ct. App. 2004), a court denied plaintiffs' claim for compensatory damages for overtime that they were not permitted to work because of a discriminatory overtime policy. The court held that, while the plaintiffs had demonstrated that the policy was discriminatory, they "could not prove that they would have likely worked any overtime shifts" during the period in question, and therefore the damages could not be awarded because they were too speculative. See id. at 604-5. Similarly,

11

here, Ms. Gosselin has failed to put forward any evidence that would prove that she would have sold any houses had her license not lapsed, let alone the amount that the houses would have sold for and the commission she would have received. As a result, Ms. Gosselin has failed to demonstrate with reasonable certainty any damages stemming from the Misdirected Payment, and her claim for violation of Chapter 93A fails.

### Ms. Gosselin's MCCDA Claim Fails Under the Facts as Stipulated

35. The Court also overruled the Objection without prejudice as to Ms. Gosselin's claim under the MCCDA, which is premised on her claim that she is entitled to rescission as a result of deficiencies in her TILA notice of the right to cancel ("the "Notice"). See First Order at 27-28. The Court found that there were no deficiencies in the Notice, and therefore Ms. Gosselin's right to rescind expired three days after her receipt of Notice, and thus her claim under the MCCDA also expired after three days. See id. However, because the Court did not have any evidence regarding the date that Ms. Gosselin received the Notice, it could not determine when her rescission rights expired. See id.

36. Ms. Gosselin admits that she received the Notice at the time or origination (see Stipulated Facts No. 16), and as a result her time to rescind expired on July 30, 2006. Therefore, Ms. Gosselin's MCCDA claim is untimely because she commenced the Adversary Proceeding after her time to rescind had expired.

### CONCLUSION

37. The Claim must be disallowed and expunged. Ms. Gosselin has failed to demonstrate any wrongdoing on the part of any Debtor entity. As a result, the Objection to the Claim should be sustained.

|  |  |
|---|---|
| Dated: September 1, 2016 | /s/ Norman S. Rosenbaum<br>Norman S. Rosenbaum<br>Jordan A. Wishnew<br>Jessica J. Arett<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel for the ResCap Borrower Claims Trust* |

13

ny-1244520