# United States Bankruptcy Court

## Southern District of New York
## Manhatten Division

|  |  |
|---|---|
| _____ ) |  |
| In Re RESIDENTIAL CAPITAL, LLC, et al, ) | Chapter <u>11</u> |
| Debtors ) |  |
| ) | <u>Debtor Case No. 12-12020-MG</u> |
| _____ ) | (consolidated) |

**<u>RHONDA GOSSELIN'S TRIAL MEMORANDUM IN OPPOSITION TO
OBJECTION TO CLAIM NUMBER 3862</u>**

Table of Contents

PROCEDURE HISTORY.................................................................................................4

ISSUES PRESENTED...................................................................................................5

STATEMENT OF THE CASE.......................................................................................6

Applicable Facts............................................................................................................6

Applicable Statutory and Case Law.............................................................................8

Application of Mass. G. L. c. 93A to the Loan Orgination...................................8

Improper Loan Origination...........................................................................................9

Improper Loan Servicing..............................................................................................10

Violation of Massachusetts Consumer Credit Cost Disclosure Act................................10

Application of the Law to the Facts..............................................................................12

 Application of Mass. G. L. c. 93A..............................................................................12

Improper Loan Origination...........................................................................................13

Violation of MCCCDA.................................................................................................14

Misdirected Payment....................................................................................................15

Application of c. 93A to Liability.................................................................................17

Application of c. 93A to Enhanced Damages...............................................................18

CONCLUSION..............................................................................................................18

Table of Authorities

Kattar v. Demoulas, 433 Mass. 1, 12 (2000)........................................................8

Commonwealth v. DeCotis, 366 Mass. 234, 244 n. 8 (1974)..............................8

Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 503 (1979)..............................9

Kerlinsky v. Fidelity & Deposit Co., 690 F. Supp. 1112, 1119 (D. Mass. 1987), aff'd, 843
    F.2d 1383 (1st Cir. 1988)..........................................................................9

PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)..........................9

Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 562-563 (2008)..........................9

Commonwealth v. Fremont, supra, 452 Mass. 733 (2008)..................................9

Commonwealth v. Fremont Investment & Loan, No. 07-4373-BLS 2008-MBAR-002
    (Ma. Sup. Ct, Suffolk, Feb. 26, 2008)......................................................9

McKenna v. Wells Fargo Bank, N.A., No. 10-10417 (JLT), 2011 WL 1100160, at *2 (D.
    Mass. Mar. 21, 2011), aff'd, 693 F.3d 207 (1st Cir. 2012)..................................11

Jesinoski v. Countrywide Home Loans, Inc., 574 U.S. , 135 S.Ct. 790, 190 L.Ed.2d 650
    (2015)..............................................................................................11

Jesinoski v. Countrywide Home Loans, Inc., 11-cv-00474 (D.Minn. April 19, 2012).....11

Kattar v. Demoulas, supra, 433 Mass. 1, 13 (2000)..........................................12

Commonwealth v. Fremont, 452 Mass. 733, 749 (2008) (n. 25)......................................14

Mayo v. Key Financial Services, Inc.,424 Mass. 826., 864 (1997)................................15

Commonwealth v. Fremont, supra, 452 Mass. 733 (2008)................................17

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

In accordance with the Joint Pretrial Order [Docket No. 9533], the Claimant, Rhonda

Gosselin hereby files her pretrial memorandum in opposition to Seventy-Fifth Omnibus

Objection to Claims [#7552], as restated and supplemented.

## I.  PROCEDURE HISTORY

1.      Rhonda Gosselin filed a case filed in the United States Bankruptcy Court

for the District of Massachusetts against GMACM Mortgage Corporation and others in

2010, and this was ultimately dismissed without prejudice on a jurisdictional basis.

2.      The Bankruptcy Case was filed within thirty days following, on May 14,

2012.

3.      This Claim[#3862] was filed on November 9, 2012.  Ms. Gosselin

received a notice that her claim was allowed and she was invited to vote.  After the plan

was confirmed, however, the second amended plan allowed the reorganized debtors to

file objections to the allowed claims.

4.      The Claim[#3862] was not mentioned in the body of the Objection[#7552]

and neither in the two Declarations (Horst, Exhibit 2, and Rosenbaum, Exhibit 3).

Quixotically, it was inserted into the Proposed Order only.

5.      Ms. Gosselin's opposition [#7652] mentioned this and reinforced the claim

as well as could be, considering that there no real objection before the Court.

Nevertheless, the reorganized Debtors filed a reply[#7842] and a supplemental

declaration [#7842-1].

-4-

6.     The Court considered the pleadings despite the deficient pleadings, and issued an opinion [#8516] including:

a.          "The Objection is **OVERRULED** with respect to Gosselin's Chapter 93A claim to the extent it is based on allegations concerning origination of the Loan."

b.          "The Objection is therefore **OVERRULED** with respect to Gosselin's Chapter 93A claim to the extent it is based on allegations concerning the Misdirected Payment."

c.          Thus, the Objection is **OVERRULED** with respect to Gosselin's Chapter 93A claim premised on GMACM's allegedly wrongful foreclosure.

d.          "However, since the Trust has not provided any evidence about when Gosselin received a TILA notice of right to cancel, the Objection is **OVERRULED** with respect to Gosselin's MCCCDA claim. Also see note 4 - "Additionally, because Gosselin asserted her MCCCDA Claim within four years of the date on which her Loan was originated, it is timely for the reasons stated in section II.F of this Opinion."

7.     The ResCap Borrower Claims Trust's (the "Trust") moved [#8574] to reconsider regarding the allegedly wrongful foreclosure.  The Court allowed this motion in an opinion [#8972] dated August 5, 2015.

8.     After a series of hearings, trial was set for September 15, 2016 in New York.

## II.  ISSUES PRESENTED

9.     Whether Rhonda Gosselin deserves relief due to improper GMACM's loan origination.

-5-

a.          Was Ms. Gosselin income as known to GMACM sufficient to repay the loan?

b.          Was Ms. Gosselin forced to engage in litigation in order to save her house?

c.          Was the violation seriously enough to bar foreclosure?

d.          Did the transfer, during litigation, work a fraud against the Creditor, and should Ms. Gosselin be compensated for her loss.

10.        Whether Rhonda Gosselin merits relief due to the Misdirected Payment and the ensuring servicing violations because Ms. Gosselin was forced to resort to litigation as a consequential damage of the Misdirected Payment?

11.        Whether Rhonda Gosselin should be compensated due to the  MCCCDA Claim.

a.          Was the mortgage loan rescinded under Mass. G. L. c. 140D § 10?

b.          Is Ms. Gosselin owed the fees and points paid under the loan?

12.        Should the recovery be enhanced according to Mass. G. L. c. 93A?

III. **STATEMENT OF THE CASE**

A. **Applicable Facts**

13.        The loan was consummated on July 26, 2006[1]. The preliminary application is dated July 13, 2006.

14.        The Uniform Residential Loan Application[2] shows <u>no</u> income for Ms. Gosselin at the time of origination.  This is shown on every copy produced by the

---

1  Stipulated Facts No 1.

2  '1003' form.  See the header of the document.  This form is used to summarize the borrower's financial information as of the date of the loan application.  See Exhibit (Trust's Exhibits).

debtors.  Furthermore, there is no transcript from the IRS at the time of loan origination; there is a copy ordered April 15, 2010, presumably associated with a loan modification in negotiation. There is no indication that GMACM ever looked at Ms. Gosselin's income as a borrower, despite the claim that GMACM determined that the loan would leave her with a 47% of income to debt servicing.

15.    GMACM, when approving the loan, never attempted to verify Ms. Gosselin's income.

16.    GMACM never evaluated that Ms. Gosselin had the ability to make the payments, according to established standards within the financial industry and according to the laws of the Commonwealth of Massachusetts.

17.    GMACM advised Gosselin to stop payment on the check and said it would cover any costs associated with this error[3].

18.    Ms. Gosselin does not have income tax returns prior to 2007 and no party requested information from the IRS.  The 2007 income tax return showed $7,234 in income; in 2008, $17,498 gross; and 2009, $8008, confirmed on the transcript requested by GMACM and produced during discovery.  The Payment Schedule (BT 000365) shows a payment of $758.45; the Combined Housing Expense Information on the 1003 form is $813.37.  The best percentage of income to debt servicing of these is 52%.

19.    Ms. Gosselin made a payment variously ascribed to June 8 or 9, 2007. GMACM failed to credit this amount to her account, and instead appended it to a statement for an unrelated borrower.  Ms. Gosselin was sent an unapplied statement intended for yet a different party, to which even different party's check was attached.

_____

3    Stipulated Facts 35 and 37. (Doc. No. 8516, p. 6)

Simply, Ms. Gosselin lost faith in GMACM's servicing and could not decide how to

make sure her payments would be accurately credited.

20.     While the simple remedy of crediting of the misapplied payment might

seem sufficient, but Ms. Gosselin was already in severe financial distress.  When

GMACM did not accept her payment, a series of further problems were set in action, like

a set of dominoes falling.  Ms. Gosselin attempted to pay in cash next at the local

GMACM offfice, as permitted by the mortgage, but this was refused.  Eventually, she

and GMACM agreed a forbearance agreement and she began to sending checks to

GMACM for service.

21.     GMACM thereupon sent Ms. Gosselin a loan modification.  She did not

sign the loan modification, because the new payment was more than the unaffordable

prior loan payment, and she thought she did not owe more money at that point.  GMACM

then instituted foreclosure, and Ms. Gosselin was forced to resort to retain attorneys.

B.  **Applicable Statutory and Case Law**

i.  **Application of Mass. G. L. c. 93A to the Loan Orgination.**

22.     In *Commonwealth v. Fremont* 452 Mass. 733 (2008), the Supreme Judicial

Court of Massachusetts stated the law developed under c. 93A in a context of unfair loan

origination practices:

> General Laws c. 93A, § 2 (a), makes unlawful any "unfair or deceptive
> acts or practices in the conduct of any trade or commerce." Chapter 93A
> creates new substantive rights, and in particular cases, "mak[es] conduct
> unlawful which was not unlawful under the common law or any prior
> statute." *Kattar v. Demoulas*, 433 Mass. 1, 12 (2000), quoting
> *Commonwealth v. DeCotis*, 366 Mass. 234, 244 n. 8 (1974). The statute
> does not define unfairness, recognizing that "[t]here is no limit to human
> inventiveness in this field." *Kattar v. Demoulas*, supra at 13, quoting

-8-

> *Levings v. Forbes & Wallace, Inc*., 8 Mass. App. Ct. 498, 503 (1979).
> What is significant is the particular circumstances and context in which
> the term is applied. See *Kerlinsky v. Fidelity & Deposit Co.*, 690 F. Supp.
> 1112, 1119 (D. Mass. 1987), aff'd, 843 F.2d 1383 (1st Cir. 1988). It is well
> established that a practice may be deemed unfair if it is "within at least the
> penumbra of some common-law, statutory, or other established concept of
> unfairness." *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593,
> 596 (1975). See *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547,
> 562-563 (2008), and cases cited.

> *Id*., 425 Mass. at 742-743.

23.    Violation of the MCCCDA violation was enacted into statute, codified at

Mass. G. L. c. 140D § 34.

24.    Mass. G. L. c. 93A confers a private right of enforcement by a consumer

who has been harmed by violation of a consumer protection statute.  940 CMR 3.16(4).

### ii.    Improper Loan Origination

25.    While the Regulation at CMR 940 8.06(15)[4] was promulgated on April 4,

2008, this merely codified a long-standing practice of Massachusetts jurisprudence

reiterated shortly before that in *Commonwealth v. Fremont*, supra, 452 Mass. 733 (2008),

where the Supreme Judicial Court stated "Fremont violated an established concept of

unfairness in issuing loans without meaningful consideration of borrowers' ability to

repay".  Furthermore, the court applied this principle upon loan transactions well before

the regulations were placed in place[5].  The only change from the earlier practice of

---

4    "It is an unfair or deceptive act or practice for a mortgage broker to arrange or mortgage lender to make a
mortgage loan unless the mortgage broker or lender, based on information known at the time the loan is
made, reasonably believes at the time the loan is expected to be made that the borrower will be able to repay
the loan based upon a consideration of the borrower's income, assets, obligations, employment status, credit
history, and financial resources, not limited to the borrower's equity in the dwelling which secures repayment
of the loan (subject, however, to the treatment of No Income Loan Products in 940 CMR 8.06(16)).[...]"  940 CMR
8.06(15).

5    The loans in question in *Fremont* were originated from January, 2004, to March, 2007.  See
*Commonwealth v. Fremont Investment & Loan,* No. 07-4373-BLS 2008-MBAR-002 (Ma. Sup. Ct,
Suffolk, Feb. 26, 2008).

looking to equity for the power of a judge to revise, amend, rescind or even annul a loan, is the implementation of c. 93A, giving a codification of the equity practice and allowing judges to base judgments on unfair or deceptive practices committed during business activity.

26.     The remedy for the borrowers faced by the unfair loan, was, to put it bluntly, that "foreclosure should not be permitted, or the obligation to repay the loans they had received." *Id*. at 741.  Obviously, this cannot be invoked in this case, because the loan is known to have been owned by Federal National Mortgage Association, as of the time that the Adversary Proceeding was filed in 2010.  Instead, the direct and consequential damages should be measured.  Ideally, Gosselin should able to receive enough money to pay off the mortgage and recoup her costs to date, because she was put to litigation, and the creditors' dividend, currently at 37%, will prevent that.  However, if her loss is trebled, according to c. 93A§ 2, she would receive just about what needed to undo the damage and move forward.

### iii.  Improper Loan Servicing

27.     The Court decided that GMACM was not liable for a breach of contract. However, the transgressions are best expressed at 12 C.M.R. § 1024.35 for violations of RESPA,  12 U.S.C. § 2601 et seq., and the Gramm-Leach-Bliley Acct, 15 U.S.C. §§ 6801-6809.  As violations of consumer protection laws, these are also violations of c. 93A. See 940 CMR 3.16(4).

### iv.  Violation of Massachusetts Consumer Credit Cost Disclosure Act
### (G. L. c. 140D)

28.    A conclusion that there is no violation of CCCDA or TILA when only one of the Notice to Right to Cancel (the TILA rescission disclosure) is left with a borrower is incorrect.  See Document Number 8516, Page 28.

29.    The Court was mistaken when it wrote, 'Massachusetts courts have held that "as long as a borrower receives one such notice, the rescission period is not extended." *McKenna v. Wells Fargo Bank, N.A.*, No. 10-10417 (JLT), 2011 WL 1100160, at *2 (D. Mass. Mar. 21, 2011), *aff'd*, 693 F.3d 207 (1st Cir. 2012)'.  The decision was rendered by an U.S. District Court for the District of Massachusetts, and affirmed by the First Circuit, and not Massachusetts state courts reviewed by the Supreme Judicial Court.  The federal courts are bound to uphold a state law as interpreted by the highest court of the state, and not vice versa.  Even as a matter of federal interpretation, however, the decision of this Court is in error, because the United States Supreme Court reiterated that the Truth-In-Lending Act should be interpreted strictly, *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. ___, 135 S.Ct. 790, 190 L.Ed.2d 650 (2015), and in the face of a claim from the borrowers that, in that case, the joint borrowers were given only two copies and not the required four copies.  *Id.  Jesinoski* involves a rescission sent to the lender within three years from consummation, and with a claim that the Jesinoskis were not given as many copies of the required documents as required by law[6],  The dockets of the three cases involve make it clear that the district court opinion, *Jesinoski v. Countrywide Home Loans, Inc.*, 11-cv-00474 (D.Minn. April 19, 2012) was among the documents sent to the Supreme Court, and the opposing brief strenuously

---

6    The text of the Minnesota District Court opinion may be accessed at
https://www.gpo.gov/fdsys/pkg/USCOURTS-mnd-0_11-cv-00474/pdf/USCOURTS-mnd-0_11-cv-00474-0.pdf and the opinion may be found in the docket file on appeal, which was transferred to the Supreme Court while it had jurisdiction.

argued to follow *McKenna*, all to no avail, and as a result, McKenna has been overruled.
Otherwise, the Supreme Court could have found reason in the record to sustain the
decision below; tacitly, the allegation that the number of copies of the documents were
not delivered to the borrower is sufficient reason to sustain the borrower's decision to
rescind the loan.

### C.  **Application of the Law to the Facts**

### i.    **Application of Mass. G. L. c. 93A**

30.      If the enactment of c. 93A showed a paradigm shift by making unlawful
acts which were not unlawful at common law, it more showed that a new approach to
systematize the enforcement of justice as regulation of business activity was codified and
enforcement was made uniform.  As it was said in *Kattar v. Demoulas*, <u>supra</u>, 433 Mass.
1, 13 (2000),  "[t]here is no limit to human inventiveness in this field."  GMACM deftly
exploited the chinks in the consumer protection stockade:

a.          by offering a loan destined to failure, ending in foreclosure, with the
excuse that GMACM was allowed to ignore the borrower's inability to pay, in the guise
of never asking for a guarantee of income.  The Uniform Residential Loan Application
income area was simply left blank.  However, as the Supreme Judicial Court decided in
*Commonwealth v. Fremont*, <u>supra</u>, offering a blind eye to inability to pay was not
sufficient. GMACM, for its part, was able to increase the percentage of foreclosures by
willfully originating loans at risk or certainly destined to end in foreclosure, but this is not
an allowable use of a mortgage loan.  *Id.*

b.          by basing the decision on whether or not to offer a loan on the equity

-12-

in the house and not the ability of pay of the borrower.

  c.  by claiming that because the activity was lawful at the time of origination, GMACM should not be punished, even in the guise of damages at law. However, the *Commonwealth v. Fremont*, <u>supra</u>, applied c. 93A to such improper loan origination dating to Ms. Gosselin's loan, and much earlier.

  d.  by steering Ms. Gosselin toward a loan modification, which would lead her into paying even more each monthly, when her difficulties started when GMACM returned her payment, and her precarious situation became untenable. The contention, indeed, promise, that GMACM would compensate Ms. Gosselin for her increased expense were hollow indeed, as the conciliatory response turned to the strident drumming of threats of foreclosure, even when she stepped up with the increased payment in forbearance, at which point she was clearly paying more than 50% of her gross income on the mortgage payment.

  31.  Ms. Gosselin's loan was deemed unlawful by *Commonwealth v. Fremont*, <u>supra</u>, both at the onset and as the history developed. The remedies as listed there[7], should be considered by the Court here.

### ii. **Improper Loan Origination**

  32.  There is no evidence that GMACM considered Ms. Gosselin's ability to repay the loan when offering the 2006 loan. This is born out by the Stipulated Facts. The only factors considered was whether there was sufficient value in the property in case of foreclosure, and whether the loan could satisfy the Massachusetts Borrower Benefit

---

7 "[F]oreclosure should not be permitted, or the obligation to repay the loans they had received." See Paragraph 26.

standards.

33.    Extending a loan without meaningful consideration of the ability of the borrower to repay the loan violates an established concept of unfairness. *Commonwealth v. Fremont*, 452 Mass. 733, 749 (2008) (n. 25). This is a violation of c. 93A. *Id,* 452 Mass. at 749. The court may, and should allow, injunctive relief, including but not limited to enjoin any foreclosure and declare the loan unenforceable.

### iii. **Violation of MCCCDA**

34.    The Massachusetts Consumer Credit Cost Disclosure Act., codified at G. L. c. 140D, closely parallels the Federal Truth In Lending Act, 15 U.S.C. 1601 et seq. One of the significant difference is the four year statute of limitation. Another difference is that under a state law, as allowed by 15 U.S.C. 1633, is not preempted by TILA if the Bureau of Consumer Protections (formerly administrated by the Federal Reserve Bank) exempts that state from one or another part of TILA, as long as that state has enacted a set of laws and regulation which substitute for TILA. Massachusetts is among the states which have requested such exemptions, and c. 140D is a substitute for TILA; c. 183C is the counterpart of HOEPA, 15 U.S.C. 1639 et seq.

35.    Under MCCCDA, just as TILA, among the disclosures is the requirement for the lender to provide the borrower with two copies of the Notice to Right to Cancel. Ms. Gosselin, however, was only given one copy of the Notice to Right to Cancel. Accordingly, under MCCCDA, Ms. Gosselin had four years after consummation in which to rescind the loan. She did so, on July 26, 2010.

36.    While the effect of receiving one copy of the Notice to Right to Cancel

-14-

instead of receiving two copies has been given different treatments when before the First

Circuit and the Supreme Court, as mentioned above, the U.S. Supreme Court has the final

word.  Justice Scalia found, <u>in the context of borrowers seeking rescission based on the</u>

<u>failure to being provided with enough copies of the Notice to Right to Cancel</u>, that there

was no reason to dismiss the case, and sent the *Jesinoski* case back to further action in the

District of Minnesota.

37.     It should be noted that MCCCDA is a state law and the final word on its

interpretation is not with the First Circuit, or the United States, it is for the final court of

the state to decide.  The Supreme Judicial Court has commented about the similarities

between MCCCDA and TILA, and has indicated that, within the limits of similarity,

cases interpreting TILA can be referred as an indication for how the state courts, and in

particular the appellate courts, will decide.  *Mayo v. Key Financial Services, Inc.,* 424

Mass. 826., 864 (1997).

38.     Ms. Gosselin was not provided with the full set of disclosures required by

MCCCDA.  She rescinded the loan within the period allowed.  Consequently, she should

be repaid the fees and points paid associated with the loan.  Furthermore, the servicer, at

the time GMACM, did not act within the allowed 20 days to pay her, which was another

violation of MCCCDA and c. 93A.  There is no provision for stacking the duplicated

violations, but the Court should at least enhance the damages, $17,723.24, to an amount

of $53,169.72, and her fair and reasonable attorney fees.

### iv.  **Misdirected Payment**

39.     In the present case, GMACM clearly disclosed the Plaintiff's financial

information to a third party, and the Plaintiff was not provided notice of the disclosure,

was not given the opportunity to prevent GMACM from making the disclosure, and the

third party did not return the check to the Plaintiff, instead retaining it for their own

purposes.  This is a violation of the privacy of the Plaintiff.

40.    The contract between GMACM and the Plaintiff was entered into in 2006,

well after the enactment of the Gramm-Leach-Bliley Act, and she had the reasonable

expectation that her privacy would be respected by GMACM as a financial institution.  It

should not be necessary to claim that the Gramm-Leach-Bliley Act is the basis of her

claim and confers jurisdiction for damages for the breach.  Nevertheless, Defendants

claim that they are not liable for the consequential damages of emotional distress despite

the obvious consequences of the Plaintiff's suddenly being informed that her mortgage

servicer was no more reliable than the random person anywhere in the United States, or

rather the random GMACM customer, to whom her payment, having been delivered to

GMACM within the time for making payment, would instead be sent.

41.    While the Gramm-Leach-Bliley Act does not confer a private right of

action, it explicitly allows any state law to supplement it to the extent that the state law

does not conflict with its provisions.  15 U.S.C. § 6807.  Mass. G. L. c. 93A confers such

a private right of enforcement by a consumer who has been harmed by violation of a

consumer protection statute.  940 CMR 3.16(4).

42.    The idea that the Misdirected Payment, $1,516.00, June 8, 2007, was

rectified by a credit was simplistic.  Ms. Gosselin was already having grave troubles with

the increased mortgage payment, and she had to add to this increased expense to retaining

a series of attorneys, each of which required payment.

43.     While GMACM promised to make reparations and pay any costs associated with the Misdirected Payment, Ms. Gosselin was never paid for the increased costs as she sought to avoid foreclosure.  Indeed, GMACM continued to sought to exert further pressure on her, extorted a higher payment and despite the amount that was paying, noticed the non-judicial foreclosure notwithstanding.

44.     Ms. Gosselin paid approximately $12,019 to her attorneys, and accrued another $81,988.34 in unpaid attorney fees, as the problems associated with the snowballing effects of the Misdirected Payment.

### v.  Application of c. 93A to Liability

45.     The fact pattern relating to the loan origination fits the same posed in *Commonwealth v. Fremont*, supra, 452 Mass. 733 (2008).  That is, the lender made no meaningful inquiry about the specific ability of the prospective borrower to repay the loan, except by by forfeiting the property.  Under *Fremont*, this is a violation of c. 93A, and when the violation is so egregious, the loan can be declared unenforceable or more often altered and tailored to the ability of the borrower to pay.[8]

46.     Ms. Gosselin paid approximately $11,750 to her attorneys[9], and accrued another $81,988.34 in unpaid attorney fees, as the problems associated with the snowballing effects of the Misdirected Payment.  The Court should allow attorney fees in the amount of $93,738.34 as damages.  Mass. G. L. c. 93A § 9(4).

---

[8]  The loans subject to the *Fremont* cases and a number of sister cases, were, to the extent of the knowledge of the undersigned, resolved by loan modifications, with terms very favorable to the borrowers.

[9]  John Jerxyk, $2,000; L. Jed Berliner, $4,000; Francis Lafayette, $2,000; Kimberly Stevens, $2,000; Laird Heal, $1,750.

vi.    **Application of c. 93A to Enhanced Damages**

47.    After a finding of violation of c. 93A, the court may increase damages to "include double or treble damages, attorneys' fees and costs". See Mass. G. L. c. 93a § 9(3A).

48.    Ms. Gosselin paid approximately $11,750 to her attorneys, and accrued another $81,988.34 in unpaid attorney fees, as the problems associated with the snowballing effects of the Misdirected Payment and her basic unability to pay the mortgage loan itself.

## IV. CONCLUSION

WHEREFORE, Rhonda Gosselin, creditor, asks that the Objection to her Proof of Claim be <u>overruled</u>, consistently with this Memorandum as the evidence adduced in trial, and for such other and further relief as the Court should find merited in the interests of justice.

Dated:  October 17, 2014

Respectfully Submitted for
Rhonda Gosselin

/s/ Laird J. Heal
Laird J. Heal
38 Central Square, Suite 4
Boston, MA 02128
617-851-0232
617-561-1455 (facsimile)
LairdHeal@LH-Law-Office.com
*Counsel to Rhonda Gosselin*

/s/ Laird J. Heal

Dated:  September 8, 2016

-18-

## CERTIFICATE OF SERVICE

I hereby certify that immediately upon receipt of the Notice of Electronic Filing, I will immediately cause service of the within included Memorandum by first class mail, together with this Certificate of Service, upon any party not shown here as receiving electronic service, namely:

**By Electronic Service**

Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601

**By First-Class Mail**

/s/ Laird J. Heal
Laird J. Heal