**Hearing Date: October 13, 2016 at 2:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline: September 30, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims
Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------  )
                                                                       )
In re:                                                                 )   Case No. 12-12020 (MG)
                                                                       )
RESIDENTIAL CAPITAL, LLC, et al.,                                      )   Chapter 11
                                                                       )
                                        Debtors.                       )   Jointly Administered
                                                                       )
---------------------------------------------------------------------  )

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 2892 FILED**
**BY GERARD WIENER, FOR HIMSELF AND AS REPRESENTATIVE OF THE**
**<u>ESTATE OF ROLAND WIENER</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ....................................3

BACKGROUND .........................................................................................................3

RELIEF REQUESTED .................................................................................................5

OBJECTION ................................................................................................................5

BACKGROUND FACTS ..............................................................................................5

ARGUMENT ..............................................................................................................12

    1.    Because the Claimant Did Not Seek to Convert the Foreclosure Sale to A
        Judicial Foreclosure, MCL § 600.3205 Claim is Moot ........................................12

    2.    The Claimant's Allegations Regarding Irregularities in the Foreclosure
        Sale Are Not Sufficient to Overcome the Presumptive Validity of the
        Sheriff's Deed ........................................................................................................13

    3.    Breach of Contract .................................................................................................15

        a.    There is No Written Agreement to Forbear Payment Under the
            Loan .............................................................................................................16

        b.    Because There Was No Written Agreement, the Claimant Has Not
            Satisfied the Statute of Frauds ....................................................................17

        c.    The Claimant Would Have Been In Breach of Either Purported
            Agreement ....................................................................................................18

        d.    The Claimant Cannot Save His Claims Under a Promissory
            Estoppel Theory ..........................................................................................19

    4.    Negligence .............................................................................................................20

    5.    Conversion/Statutory Conversion .........................................................................22

    6.    Slander of Title ......................................................................................................23

    7.    Declaratory and Injunctive Relief .........................................................................25

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adams v. Wells Fargo Bank, N.A.,
  No. 11-10150, 2011 WL 3500990 (E.D. Mich. Aug. 10, 2011) ............................................ 13

Brennan v. Edward D. Jones & Co.,
  626 N.W.2d 917 (Mich. App. 2001) .................................................................................... 22

Coldsnow v. Farris,
  No. 174779, 1996 WL 33363104 (Mich. Ct. App. June 7, 1996) ......................................... 21

Collins v. Wickersham,
  862 F. Supp. 2d 649 (E.D. Mich. 2012) ............................................................................... 16

Crown Technology Park v. Dan Bank, FSB,
  619 N.W.2d 66 (Mich. Ct. App. 2000) ...................................................................... 19, 20, 24

Feinberg v. Bank of N.Y. (In re Feinberg),
  442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................................... 5

Fultz v. Union-Commerce Assocs.,
  683 N.W.2d 587 (Mich. 2004) ............................................................................................. 20

GKC Mich. Theaters, Inc. v. Grand Mall,
  564 N.W.2d 117 (Mich. Ct. App. 1997) ............................................................................... 23

Hart v. Ludwig,
  79 N.W.2d 895 (Mich. 1956) ............................................................................................... 20

Head v. Phillips Camper Sales & Rental, Inc.,
  593 N.W.2d 595 (Mich. Ct. App. 1999) ............................................................................... 22

Hurley v. Deutsche Bank Co. Americas,
  No 07-11924, 2008 WL 373426 (E.D. Mich. Feb. 12, 2008) ............................................... 22

KP Bldg. Prods., Inc. v. Ciraulo Bros. Bldg. Co.,
  No. 08-cv-11520, 2008 WL 5422693 (E.D. Mich. Dec. 30, 2008) ...................................... 16

McClements v. Ford Motor Co.,
  702 N.W.2d 166 (Mich. 2005) ............................................................................................. 21

McKinstry-Austin v. JPMorgan Chase Bank, N.A.,
  Civ. No. 14-13069, 2015 WL 5591106 (E.D. Mich. Sept. 22, 2015) ................................... 14

Mefaj v. IndyMac FSB,
    No. 14-13486, 2015 WL 2343812 (E.D. Mich. May 14, 2015).............................................24

Michaels v. Amway Corp.,
    522 N.W.2d 703 (Mich. Ct. App. 1994)....................................................................18

Mrla v. Fannie Mae,
    No. 15-CV-13370, 2016 WL 3924112 (E.D. Mich. July 21, 2016)..........................................12

Narra v. Fannie Mae,
    No. 2:13-cv-12282, 2014 WL 505571 (E.D. Mich. Feb. 7, 2014) ............................12, 13, 21

Pauley v. Bank of America, N.A.,
    Civ. No. 14-13069, 2016 WL 213032 (E.D. Mich. Jan. 19, 2016) ........................................14

Ryan v. Ocwen Loan Servicing, LLC,
    No. 15-11555, 2016 WL 1242433 (E.D. Mich. Mar. 30, 2016)............................................21

Spadafore v. Aurora Loan Servcs, LLC,
    564 Fed. Appx. 168 (6th Cir. 2014) ........................................................................15

Sullivan v. Thomas Org., PC,
    276 N.W.2d 522 (Mich. Ct. App. 1979).....................................................................23

Thomas v. Mussog,
    No. 278060, 2008 WL 1991718 (Mich. App. May 8, 2008)..............................................22

West-Bowlson v. U.S. Bank, N.A.,
    No. 13-13584, 2014 WL 3124239 (E.D. Mich. July 8, 2014)........................................20, 21

White v. Wells Fargo, N.A.,
    No. 2:14-cv-12506, 2015 WL 1842811 (E.D. Mich. Apr. 22, 2015)....................................18

**STATUTES**

11 U.S.C. § 502(a)...............................................................................................5

11 U.S.C. § 502(b)..............................................................................................25

11 U.S.C. § 502(b)(1)..........................................................................................5

MCL § 566.132(2)..............................................................................................18

MCL § 600.3205 .........................................................................................passim

MCL § 600.3205c(8) ...........................................................................................12

MCL § 600.3220 ............................................................................................13, 14

iii

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7001(7)..........................................................................................................25

iv

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant

to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the

"Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned debtors

(collectively, the "Debtors") with respect to Borrower Claims (as defined below), hereby submits

this objection (the "Objection") seeking to disallow and expunge, without leave to amend, proof

of claim no. 2892 (the "Claim") filed by Gerard Wiener, for himself and as representative of the

estate of Roland Wiener (the "Claimant") against Debtor GMAC Mortgage, LLC[1] ("GMACM")

for $299,000.00 pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), on the grounds that the Claim fails to state a basis for liability against the Debtors.[2]  The

Borrower Trust seeks entry of an order substantially in the form annexed hereto as Exhibit 1 (the

"Proposed Order") granting the requested relief.  In support of the Objection, the Borrower Trust

submits the declaration of Sara Lathrop, Senior Claims Analyst for the Borrower Trust, attached

hereto as Exhibit 2 ("Lathrop Decl.") and the declaration of Frank DeLuca, attorney at McKelvie

DeLuca, P.C., attached hereto as Exhibit 3 (the "DeLuca Decl.").

## PRELIMINARY STATEMENT

1.    The Borrower Trust examined the Claim and the statements and

exhibits submitted in support thereof.  A copy of the Claim is attached hereto as Exhibit 4.

The asserted basis for the Debtors' liability is "fraud, violation of statute, wrongful

---

[1] The Claim was originally improperly filed against Debtor Residential Capital, LLC, but was redesignated as a claim against GMACM pursuant to the *Order Granting Debtors' Thirty-Eighth Omnibus Objection to Claims (Wrong Debtor Borrower Claims)* [Docket No. 5898].

[2] The Borrower Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and the Borrower Trust reserves all of its rights to amend this Objection should any further bases come to light.

foreclosure, negligence." Attached to the Claim is a Third Amended Complaint and Request for Injunctive Relief filed by the Claimant against GMACM and non-Debtor defendants (the "Third Amended Complaint"). The Third Amended Complaint asserts causes of action for (1) violation of MICH. COMP. LAWS SERV. § 600.3205a-c (LexisNexis 2016) ("MCL § 600.3205" or the "Loan Modification Statute"); (2) negligence; (3) breach of contract; (4) agency/respondent superior; (5) temporary restraining order and permanent injunction; (6) conversion; (7) declaratory judgment; (8) action to determine interest in land under MCR 3.411; and (9) slander of title. All of the causes of action purportedly arise out of the servicing of a loan in the name of the Claimant's father and the subsequent foreclosure sale of the property securing the loan.

2.     The Claimant establishes neither any wrongdoing by any debtor nor any viable cause of action arising out of his allegations. The Claimant's statutory claims related to the foreclosure sale fail because either the statute does not provide for a remedy currently available to the Claimant or the Claimant failed to allege any violation of the statute. In addition, the Claimant's breach of contract claim is barred by the statute of frauds, and even if a contract existed, the Claimant would have been in breach of the purported agreement.

3.     Similarly, the Claimant's negligence claim is not only barred by the statute of frauds, but the Claimant cannot establish that GMACM owed him a duty, a necessary element for any negligence claim. The Claimant also failed to sufficiently allege the elements of a slander of title claim, and because Michigan does not permit a conversion claim for real property, that claim fails as well. Finally, the Claimant's request for

declaratory and injunctive relief is improper because, in addition to failing for the reasons

described above, such relief is not available under the Bankruptcy Code.

4.      Therefore, as more fully described in the objection, the Claim should

be disallowed and expunged in its entirety from the Claims Register (defined below).

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

5.      This Court has jurisdiction over this Objection under 28 U.S.C.

§ 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before

this Court under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

7.      On May 14, 2012, each of the Debtors filed a voluntary petition in this

Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are

being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.      On May 16, 2012, the Court entered an order [Docket No. 96]

appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in

these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain,

and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and

(b) maintain the official claims register for the Debtors (the "Claims Register").

9.      On November 9, 2012, the Claimant filed the Claim.  See Claim.

10.     On March 21, 2013, this Court entered an order approving procedures

for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket

No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for

Borrowers[3] and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

11.    The Debtors sent Request Letters to certain Borrowers, including the Claimant, requesting additional documentation in support of their claims. See Lathrop Decl. ¶ 4. The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged. A Request Letter was sent to the Claimant, however, no response was received. See Lathrop Decl. ¶ 4.

12.    On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

13.    The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court.

---

[3]    As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

See Plan, Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims." See id.

## RELIEF REQUESTED

14.    The Borrower Trust files this Objection, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the form annexed hereto as Exhibit 1, disallowing and expunging the Claim with prejudice from the Claims Register.

## OBJECTION

15.    A filed proof of claim is "deemed allowed, unless a party in interest … objects."  11 U.S.C. § 502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1).  Furthermore, the burden of persuasion once an objection refutes an essential allegation of the claim is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence.  Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

## BACKGROUND FACTS

16.    On February 12, 1997, Debtor Homecomings Financial Network, Inc. originated a loan (the "Loan") in the amount of $87,500.00 to Roland C. Wiener ("Roland Wiener"), evidenced by a note (the "Note") and secured by a mortgage (the "Mortgage") executed by Roland Wiener on property located at 1946 Parmenter, Apt. 305, Royal Oak,

Michigan, 48073  (the "Property"). Copies of the Note and the Mortgage are attached to the
Lathrop Decl. as Exhibit A and Exhibit B, respectively.  The Loan was transferred to the
Federal Home Loan Mortgage Corporation ("Freddie Mac").  See Lathrop Decl. at ¶ 5.  The
terms of the Note require a monthly payment of $688.36.  See Note.

17.    Debtor Homecomings Financial, LLC serviced the Loan from
origination until servicing was transferred to GMACM on September 11, 2006.  GMACM
serviced the Loan until the Property was sold at REO sale on September 20, 2010.  See
Lathrop Decl. ¶ 6.

18.    On or around April 2009, the Claimant informed GMACM that Roland
Wiener had passed away.  See Servicing Notes at 70 of 87, attached to the Lathrop Decl. as
Exhibit C.

19.    On May 1, 2009, the Loan became delinquent, as it was owing for the
April 1, 2009 payment.  See Servicing Notes at 2 of 87.  As a result, GMACM initiated
foreclosure by advertisement proceedings in August 2009, and a sheriff's sale was
scheduled for September 8, 2009.  See id. at 60 of 87.

20.    The Claimant's attorney contacted GMACM on August 17, 2009 to
request a meeting to discuss a possible loan modification pursuant to MCL § 600.3205.  See
August 17, 2009 Letter, attached to the DeLuca Decl. as Exhibit B.  The Claimant was put
in contact with Patricia Scully ("Ms. Scully"), a loss mitigation specialist at GMACM.  See
Servicing Notes at 60 of 87.

21.    On October 7, 2009, Ms. Scully sent the Claimant a proposed six-
month special forbearance agreement (the "October 7 Forbearance Agreement") that would
have adjourned the foreclosure sale while the Claimant determined what he wanted to do

with the property after the death of Roland Wiener.  See October 7 Forbearance Agreement, attached to the DeLuca Decl. as Exhibit C.  The October 7 Forbearance Agreement called for six payments of $480.79, with payments due on the 15th of each month beginning with November 15, 2009 and ending April 15, 2010.  See id.  The October 7 Forbearance Agreement also stated that monthly payments under the agreement were to be made via certified funds and provided an address where funds were to be sent.  See id.  The October 7 Forbearance Agreement also indicated that the Claimant needed to provide GMACM with additional information showing his ability to pay the Loan if he wanted a loan modification. See id. In the email attaching the October 7 Forbearance Agreement, Ms. Scully says "Upon receipt of the first installment on the Forbearance I can cancel the [foreclosure] sale, then the Estate will have time to decide how they wish to proceed.  Please advise. I have enclosed a copy of the Forbearance agreement for your review."  See October Email Chain, attached to the DeLuca Declaration as Exhibit D.

22.     On October 14, 2009, counsel for the Claimant sent an email to Ms. Scully indicating that the estate is "inclined" to enter into the October 7 Forbearance Agreement, but requested that the date of payment be changed.[4]  See October Email Chain. On or around October 14, 2009, Ms. Scully adjourned the foreclosure sale to November 17, 2009.  See Servicing Notes at 53 of 87.

23.     Plaintiff neither returned a signed copy of the October 7 Forbearance Agreement to GMACM nor made the monthly payment required to be made on November 15, 2009.  See Servicing Notes.

---

[4] Counsel for the Claimant requested that the date for payments be changed from the 10th of the month to the 15th of the month.  It is unclear why this is being requested, as the October 7 Forbearance Agreement already provided for a payment date of the 15th of each month.  See October 7, Forbearance Agreement.

24.    GMACM did not hear from the Claimant until November 16, 2009, when the Claimant contacted Ms. Scully via email indicating that he had attempted to make a payment online to his GMACM account (even though the October 7 Forbearance Agreement required payments to be made by certified funds and sent either to GMACM directly or through Western Union).  See November 16, 2009 Email Chain, attached to the DeLuca Decl. as Exhibit E; see also October 7 Forbearance Agreement.  Ms. Scully responded that same day, indicating that because the Claimant never confirmed he was going to execute the October 7 Forbearance Agreement, the Property was set to go to a foreclosure sale on November 17, 2009.  See November 16, 2009 Email Chain.

25.    Despite this, Ms. Scully further adjourned the foreclosure sale, but the previous forbearance terms were no longer available through Freddie Mac's loan modification program.  See November 23, 2009 Email Chain, attached to the DeLuca Decl. as Exhibit F.  As a result, on November 19, 2009, Ms. Scully offered the Claimant a forbearance agreement for six months at a 70% reduction of the payment amount at the time (the "November 19 Forbearance Offer").  See id.  In addition, Ms. Scully informed the Claimant that he would need to provide a completed HAMP financial package as soon as possible pursuant to Freddie Mac's guidelines in order to further adjourn the foreclosure sale.  See id.

26.    The Claimant provided information indicating that his sister would assume the mortgage.  See November 23, 2009 Email Chain.  At no time did he indicate an acceptance of the terms of the November 19 Forbearance Offer, or make any payment consistent therewith.  See Servicing Notes.  Ms. Scully responded that in order to assume the Loan, the Claimant would need to submit a completed HAMP package from his sister

and the Loan would need to be brought current.  See November 23, 2009 Email Chain; see also Scully Deposition Transcript, at 81-82, attached to the DeLuca Decl. as Exhibit J.

27.      More than a month later, on December 23, 2009, the Claimant faxed a HAMP package; however the package did not include necessary information, including income for the Claimant's sister or any information regarding homeowners insurance.  See Scully Deposition at 89.  Furthermore, because the package came in so close to the Christmas holiday, Ms. Scully was not in the office and therefore did not receive the package.  See Scully Deposition, at 88-89.

28.      As a result, the Property was sold at a foreclosure sale on January 5, 2010 to Freddie Mac for $65,000.  See Sheriff's Deed on Mortgage Foreclosure, attached to the DeLuca Decl. as Exhibit G.  Prior to the sale, notice of the date of the sale was duly posted in a conspicuous place upon the premises described in the mortgage that the premises, or some part of them, would be sold on January 5, 2010.  See id.

29.      After the foreclosure sale, GMACM ceased to have any interest in the Property.  See Lathrop Decl. ¶ 13.

30.      The Claimant filed a suit against GMACM and non-Debtors Bankers Trust Company ("Bankers Trust"), Jeffrey Baskin, Lauren Newman, and Fifth Third Mortgage-MI, LLC on June 22, 2010 in the Circuit Court for the County of Oakland, Michigan (the "State Court"), Case Number 2010-111283-CH (the "Action").  See State Court Docket, attached hereto as Exhibit 5.

31.      On June 30, 2010, the Claimant and GMACM stipulated to an order stating, "the redemption period is tolled pending further order of the court" (the "Redemption Period Order").  See Order Tolling Redemption Period, attached to the

DeLuca Decl. as <u>Exhibit A</u>.  GMACM notified Freddie Mac of the Redemption Period

Order on July 7, 2010.  <u>See</u> Freddie Mac Email, attached to the DeLuca Decl. as <u>Exhibit H</u>.

Due to an administrative error, Freddie Mac did not properly identify the Property as being

on hold, and as a result, it sold the Property to Jeffrey Baskin and Lauren Newman on

September 20, 2010.  <u>See</u> Deed of Sale, attached to the DeLuca Decl. as <u>Exhibit I</u>.

GMACM had no involvement with the sale.  <u>See</u> Lathrop Decl. ¶ 13.

      32.    On November 24, 2010, the Claimant amended the complaint to add

Freddie Mac as a defendant.  Freddie Mac later removed the Action to the United States

District Court for the Eastern District of Michigan (the "<u>District Court</u>"), case number 11-

10770-GCS-PJK.  <u>See</u> District Court Docket, attached hereto as <u>Exhibit 6</u>.

      33.    The Claimant amended the Complaint two additional times, filing  the

Third Amended Complaint on November 8, 2011.  <u>See</u> Third Amended Complaint, attached

to the Proof of Claim.  In the Third Amended Complaint, the Claimant alleged causes of

action for (1) violation of MCL § 600.3205; (2) negligence; (3) breach of contract; (4)

agency/respondeat superior; (5) a request for a temporary restraining order and permanent

injunction; (6) conversion/statutory conversion; (7) declaratory judgment; (8) action under

Michigan Court Rule 3.411; and (9) slander of title.  <u>See</u> <u>id</u>.

      34.    On January 30, 2012, GMACM and Bankers Trust filed a motion for

summary judgment directed at the Third Amended Complaint (the "<u>First Summary</u>

<u>Judgment Motion</u>").  <u>See</u> District Court Docket.  The Claimant filed a response to the First

Summary Judgment Motion on March 19, 2012 (the "<u>First Summary Judgment Response</u>").

<u>See</u> First Summary Judgment Response, attached hereto as <u>Exhibit 7</u>.  The District Court

scheduled a hearing on the motion for June 18, 2012. <u>See</u> District Court Docket. The

proceedings were stayed when GMACM filed a notice of bankruptcy. <u>See</u> <u>id</u>.

35.     On July 18, 2012, the Claimant filed a motion for relief from the

automatic stay in this Court. <u>See</u> Docket No. 813. The parties agreed to modify the

automatic stay on a limited basis, allowing the parties to move forward with the GMACM's

summary judgment motion in the District Court (the "<u>Order Modifying the Automatic</u>

<u>Stay</u>"). <u>See</u> Order Modifying the Automatic Stay [Docket No. 2275]. Pursuant to that

order, the Claimant would be permitted to depose two (2) witnesses of GMACM. <u>See</u> <u>id</u>.

The Order Modifying the Automatic Stay also provided that after the conclusion of those

depositions, GMACM could renew its motion for summary judgment. <u>See</u> <u>id</u>.

36.     The Claimant took the depositions of the two GMACM representatives

on November 29 and 30, 2012. <u>See</u> DeLuca Declaration, ¶ 12. Thereafter, on December 20,

2012, GMACM renewed its motion for summary judgment (the "<u>Second Summary</u>

<u>Judgment Motion</u>"). <u>See</u> District Court Docket.

37.     The Claimant filed a response to the Second Summary Judgment

Motion on February 6, 2013 (the "<u>Second Summary Judgment Response</u>"), and GMACM

filed its reply on February 20, 2013. <u>See</u> Second Summary Judgment Response, attached

hereto as <u>Exhibit 8</u>. On May 14, 2013, the District Court entered an order (the "<u>District</u>

<u>Court Order</u>") denying, without prejudice, the Second Summary Judgment Motion on the

grounds that there were disputed issues of fact as to whether or not GMACM had complied

with the Order Modifying the Automatic Stay, and determined that without such a

determination it could *not rule on the merits* of summary judgment. <u>See</u> District Court

Order, attached hereto as <u>Exhibit 9</u>, at 2-3 (emphasis added).

## ARGUMENT

38.    The Claimant asserts causes of action based on the foreclosure sale. For the following reasons, those causes of action fail as a matter of law.

### 1.    Because the Claimant Did Not Seek to Convert the Foreclosure Sale to A Judicial Foreclosure, MCL § 600.3205 Claim is Moot

39.    MCL § 600.3205 was a statute that, at the time at issue in this Objection, "permitted a court to convert a foreclosure by advertisement into a judicial foreclosure in certain circumstances."  See Mrla v. Fannie Mae, No. 15-CV-13370, 2016 WL 3924112, at *9 n. 5 (E.D. Mich. July 21, 2016).  The Claimant asserts that GMACM violated MCL § 600.3205 by (a) failing to provide the Claimant with a copy of the calculation made to determine eligibility for a loan modification; (b) failing to provide the Claimant with a copy of the program, process, or guidelines under which GMACM would make its determination; and (c) failing to proceed to foreclosure by judicial action.  See Third Amended Complaint ¶ 73.

40.    Through his cause of action under MCL § 600.3205, the Claimant is attempting to utilize the statute to set aside the foreclosure sale and seek damages. However, neither of these remedies is available under the statute.  In fact, the only remedy that is available became moot as soon as the foreclosure sale was completed.

41.    It is well-settled law in Michigan that the Michigan Loan Modification Statute does not allow a court to set aside a foreclosure sale if the statute is violated. Rather, the only remedy provided for under the statute is to seek to convert a foreclosure sale being conducted pursuant to the statute to a judicial foreclosure.  See MCL § 600.3205c(8); see also Narra v. Fannie Mae, No. 2:13-cv-12282, 2014 WL 505571, at *6 (E.D. Mich. Feb. 7, 2014) ("Courts have examined [the issue of available remedies] on

multiple occasions and have concluded that a borrower's sole relief for a purported violation of the loan modification statutes is to seek to convert the foreclosure sale to a judicial foreclosure.") (citing Riley-Jackson v. Ocwen Loan Servicing, LLC, No. 13-cv-12538, 2013 WL 5676827, at *4 (E.D. Mich. Oct. 18, 2013)).    Under MCL § 600.3205(c)(8), the Claimant would have "had to act before the foreclosure by advertisement was completed." Adams v. Wells Fargo Bank, N.A., No. 11-10150, 2011 WL 3500990, at *4 (E.D. Mich. Aug. 10, 2011).  "The governing provision [of MCL § 600.3205] allows specified borrowers to convert a foreclosure by advertisement to a judicial foreclosure; it does not allow those borrowers to avoid foreclosure altogether or set aside a completed foreclosure."  See id.

42.    Here, the Claimant did not act to convert the foreclosure, and therefore, his remedy expired and his claim under MCL § 600.3205 is moot.  See Narra, 2014 WL 505571, at *6.    Consequently, the Claimant's cause of action under that statute fails as a matter of law.

**2.    The Claimant's Allegations Regarding Irregularities in the Foreclosure Sale Are Not Sufficient to Overcome the Presumptive Validity of the Sheriff's Deed**

43.    In the Second Summary Judgment Response, which was filed after the Bar Date and after the close of discovery in the underlying litigation, the Claimant alleged for the first time that he did not receive notice of the January 5, 2010 foreclosure sale.  See Second Summary Judgment Response at 16-17.  While unclear, the Claimant appears to be asserting a new cause of action for violation of MICH. COMPL. LAWS SERV. § 600.3220 (LexisNexis 2016) ("MCL § 600.3220"), which governs the procedure for adjourning a foreclosure sale in a foreclosure by advertisement proceeding.  However, this new cause of action fails because it is contradicted by the law in Michigan.

44.    MCL § 600.3220 states that a sheriff may adjourn a foreclosure sale by "posting a notice of such adjournment before or at the time of and at the place where said sale is to be made…." MCL § 600.3220. If the adjournment is for more than one week, the notice shall also be published in "the newspaper in which the original notice was published…" See id.

45.    Here, the Claimant does not make any allegations that GMACM did not comply with the statute. In fact the Third Amended Claimant admits that he received notice that the foreclosure sale was adjourned to December 29, 2009, one week prior to the actual sale date of January 5, 2010. See Third Amended Complaint, ¶ 53. Thus, under MCL § 600.3220, GMACM was only required to post notice of the adjournment at the place of sale, which is evidenced by the Sheriff's Deed. The "Sheriff's Deed … constitutes presumptive evidence of the facts contained therein and establishes compliance with the related statutory requirements. See Pauley v. Bank of America, N.A., Civ. No. 14-13069, 2016 WL 213032, at *2 (E.D. Mich. Jan. 19, 2016). The statute does not require that the borrower *receive* actual notice of the adjourned sale date, only that notice is posted at the place of sale. see McKinstry-Austin v. JPMorgan Chase Bank, N.A., Civ. No. 14-13069, 2015 WL 5591106, *6 (E.D. Mich. Sept. 22, 2015) ("The statute does not require borrowers be given actual notice…"). Therefore the Claimant's assertion that he was not provided with notice of the sale date does not mean that GMACM did not comply with the statutory notice procedures.

46.    Regarding the Claimant's allegations that there is no evidence any notices were published after the first adjournment in October 2009, this argument fails because the Claimant has failed to demonstrate any prejudice from this alleged defect. The

Claimant admits that he received notice of the December 29, 2009 sale date, and the subsequent adjournment was conducted pursuant to M.C.L. § 600.3220.   Therefore, the Claimant has not established that he was harmed by the alleged failure to publish the prior notifications.   See Spadafore v. Aurora Loan Servcs, LLC, 564 Fed. Appx. 168, 172 (6th Cir. 2014) (holding that an alleged failure to republish notices of adjournment did not invalidate a foreclosure sale when the plaintiffs had notice of the foreclosure proceedings). As a result, the Claimant's cause of action for violation of MCL § 600.3220 fails as a matter of law.

### 3.  Breach of Contract

47.     Claimant also asserts a cause of action for breach of contract. See Third Amended Complaint ¶¶ 78-82.   When discussing this claim, the Third Amended Complaint and the First Summary Judgment Response contain contradictory theories as to when an alleged contract was created. In the Third Amended Complaint, the Claimant asserts that a forbearance agreement was entered into on November 20, 2009 as a result of the November 19 Forbearance Offer.  See Third Amended Complaint ¶ 79.  In contrast, the First Summary Judgment Response asserts that the October 7 Forbearance Agreement was the valid contract.  See First Summary Judgment Motion at 13-14.   However, no matter which theory the Claimant asserts, the cause of action fails because: (1) the parties never actually entered into a written forbearance agreement, (2) any alleged oral agreement is barred by the statute of frauds, and (3) even if there was an agreement, the Claimant was in breach by not making the required payment.

48.     "Under Michigan law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused

the other party injury." <u>KP Bldg. Prods., Inc. v. Ciraulo Bros. Bldg. Co.</u>, No. 08-cv-11520,

2008 WL 5422693, at *3 (E.D. Mich. Dec. 30, 2008) (citation omitted). "One who first

breaches a contract cannot maintain an action against the other contracting party for his

subsequent breach or failure to perform." <u>Collins v. Wickersham</u>, 862 F. Supp. 2d 649, 657

(E.D. Mich. 2012) (quoting <u>Michaels v. Amway Corp.</u>, 522 N.W.2d 703, 706 (Mich. Ct.

App. 1994). The Claimant cannot satisfy any of the elements of a breach of contract cause

of action.

### a. There is No Written Agreement to Forbear Payment Under the Loan

49.     In the First Summary Judgment Response, the Claimant asserts that the

October 7 Forbearance Agreement was a binding contract because, even though the

Claimant never actually signed the agreement, he expressed his intent via email to execute

the agreement upon certain conditions and he attempted to make a payment. <u>See</u> First

Summary Judgment Response at 17. However, as the Claimant admits, the email allegedly

expressing his acceptance stated that "the estate was inclined to enter the forbearance

agreement, with a requested change of the payment due date from the 10th to the 15th; that

Plaintiff would sign the agreement; and to please advise by what means Plaintiff should

submit the agreement." <u>See</u> Third Amended Complaint, ¶ 48. However, this email merely

demonstrates a purported intent to enter into the October 7 Forbearance Agreement in the

future, it does not demonstrate that the agreement was actually agreed to or memorialized in

writing.

50.     In the Third Amended Complaint, the Claimant asserts that he entered

into a forbearance agreement on or about November 20, 2009 when he faxed the paperwork

for the assumption of the loan (presumably, asserting that he accepted the November 19

Forbearance Offer). <u>See</u> Third Amended Complaint ¶ 79. However, as is clear from the

emails between Scully and counsel to the Claimant, on or around November 19, 2009, the documents provided by the Claimant did not agree to the six month forbearance agreement, but instead submitted paperwork for an assumption.  See November 23, 2009 Email Chain. This was made clear to the Claimant in Ms. Scully's email from November 23, 2009, where she indicated that an assumption package would need to be completed and that the loan would be brought current through that process.  See November 23, 2009 Email Chain.  She also indicated that the foreclosure sale would be adjourned to December 29, 2009 (less than a six-month adjournment).  See id.  Thus, the Claimant fails to provide any evidence of a written agreement to enter into a loan forbearance as a result of the November 19 Forbearance Offer.

### b.   Because There Was No Written Agreement, the Claimant Has Not Satisfied the Statute of Frauds

51.   Without a written agreement, any alleged forbearance agreement fails under the statute of frauds.  Michigan's statute of frauds relating to financial institutions provides as follows:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

MICH. COMPL. LAWS SERV. § 566.132(2)(a-c) (LexisNexis 2016).[5]  Here, because the Claimant

does not allege and/or produce evidence that there was a "promise or commitment in writing and

signed with an authorized signature" by GMACM to "modify or permit a delay in repayment or

performance of the loan" or to make "any other financial accommodation," there is no agreement

in accordance with the statute of frauds, and the Claimant's breach of contract cause of action

fails.

### c.  The Claimant Would Have Been In Breach of Either Purported Agreement

52.    Even if the Claimant did enter into some sort of forbearance agreement

either through the October 7 Forbearance Agreement or on November 19, 2009, the

Claimant cannot pursue a breach of contract claim under either of these alleged agreements

because the Claimant breached the alleged agreements by not making the required

payments.  There is no dispute that the Claimant did not make the November 15 payment as

would have been required by the alleged October 7 Forbearance Agreement, nor did he

make any payment under the alleged agreement from November 20, 2009.  At the time of

the foreclosure sale on January 5, 2010, the last payment made on the account was in March

2009, and the account was owing for the April 2009 payment.

53.    There can be no breach of contract cause of action if the plaintiff was

in default of the contract at the time of the alleged breach.  See Michaels v. Amway Corp.,

522 N.W. 2d 703 (Mich. Ct. App. 1994); see also White v. Wells Fargo, N.A., No. 2:14-cv-

12506, 2015 WL 1842811, at *4 (E.D. Mich. Apr. 22, 2015) (holding that a plaintiff

---

[5] MCL 566.132.(3) provides as follows: "As used in subsection (2), 'financial institution' means a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act, Act No. 173 of the Public Acts of 1987, being sections 445.1651 to 445.1683 of the Michigan Compiled Laws, or Act No. 125 of the Public Acts of 1981, being sections 493.51 to 493.81 of the Michigan Compiled Laws, or an affiliate or subsidiary thereof."

borrower could not sustain a cause of action for breach of a loan modification agreement for the defendant's foreclosure where the plaintiff failed to make the required payment under the agreement).   Therefore, in addition to the reasons stated above, the Claimant's breach of contract claim fails because he was in breach of the purported agreements he alleges were entered into prior to the foreclosure sale, and therefore cannot assert a claim for GMACM's subsequent breach of those fictitious agreements.

### d.  The Claimant Cannot Save His Claims Under a Promissory Estoppel Theory

54.    The Claimant also suggests that the doctrine of promissory estoppel could apply to the breach of contract claim.  <u>See</u> Second Summary Judgment Response at 18.  However, promissory estoppel will not save the Claimant's breach of contract claim. The Michigan Court of Appeals has specifically addressed this question, holding that the legislature's intent when answering the question whether MCL § 566.132(2) bars enforcement of an oral promise or commitment.  The court stated that "it would make absolutely no sense to conclude that the Legislature enacted a new section of the statute of frauds specifically addressing oral agreements with financial institutions but, nevertheless, the Legislature still intended to allow promissory estoppel to exist as a cause of action for those same oral agreements."  <u>Crown Technology Park v. Dan Bank, FSB</u>, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000) (holding that a promissory estoppel claim should be disposed because there was "no relief available.")  <u>Id</u>. at 73.  The Claimant's attempt to circumvent the clear, unambiguous language provided for in MCL § 566.132(2) is futile.  As a result, the Claimant's breach of contract claim is meritless and must be dismissed as a matter of law.

**4.  Negligence**

55.    The Claimant's negligence claim is barred because there is a contract in place governing the rights and obligations of the parties.  Michigan law is clear: where there is a contract at issue and a plaintiff brings causes of action for breach of contract and tort, there must be a violation of a specific legal duty that is "separate and distinct" from the contract to allow the tort claim to continue. Fultz v. Union-Commerce Assocs., 683 N.W.2d 587 (Mich. 2004); Hart v. Ludwig, 79 N.W.2d 895 (Mich. 1956).  If there is no specific duty pled that is "separate and distinct" from the contract, then the non-contract cause of action – here, negligence – fails as a matter of law.  Id.

56.    Here, there is an express contract governing the rights and obligations of the parties: the Note and Mortgage.  The Claimant has not alleged and cannot show that there is a specific legal duty that is separate and distinct from the Note and Mortgage to support a negligence claim. Therefore, the Claimant's negligence claim fails on the merits.

57.    Furthermore, if a borrower's negligence claim relies on enforcement of the terms of an alleged oral promise, then MCL § 566.132(2) is a bar to adjudicating the claim on its merits. Crown v. Tech., 619 N.W.2d 66 at 74.  As the Court of Appeals in Crown explained in dismissing a negligence claim that was asserted to circumvent the statute of frauds, a negligence claims in this context is "at its core, an action to enforce an oral promise and, accordingly, is barred by M.C.L. § 566.132(2)." Therefore, no relief is available for such a claim, and the Claimant's negligence claim also fails as a matter of law.

58.    To the extent the Claimant's negligence claim is also premised on GMACM's alleged violation of the Loan Modification statute, the claim fails because a necessary element of a negligence claim is a duty owed to the defendant by the Plaintiff. West-Bowlson v. U.S. Bank, N.A., No. 13-13584, 2014 WL 3124239, at *6 (E.D. Mich.

July 8, 2014) ("To establish negligence, a plaintiff must show that the defendant owed the

plaintiff a duty...."). Courts in Michigan have been clear that a loan servicer does not owe a

duty of care to a borrower to evaluate them for a loan modification. See Ryan v. Ocwen

Loan Servicing, LLC, No. 15-11555, 2016 WL 1242433, at *3 (E.D. Mich. Mar. 30, 2016)

(holding that a servicer owes no duty of care to a borrower to evaluate a request for a loan

modification, under either the Home Affordable Modification Program or the

borrower/lender relationship); West-Bowlson, 2014 WL 3124239, at *5 (allegations that

Defendant's negligence resulted in violation of M.C.L. § 600.3205 were not sufficient to

state a claim for negligence against a servicer because banks do not owe a duty of care to

borrowers). Thus, GMACM did not owe a duty of care to the Claimant with regard to the

loan modification.

59.    Furthermore, to allow a claim for negligence for violation of MCL §

600.3205 would allow the Claimant to plead around the intention of the legislature. As with

the statute of frauds, the legislature was very clear regarding the limited remedies available

to borrowers for a violation of MCL § 600.3205. See Narra, 2014 WL 505571, at *6. A

claim for negligence would open the door to remedies that were not contemplated by the

statute, in violation of the intent of the legislature. See McClements v. Ford Motor Co., 702

N.W.2d 166, 171 (Mich. 2005) ("Where a statute gives new rights and prescribes new

remedies, such remedies must be strictly pursued; and a party seeking a remedy under the

act is confined to the remedy conferred thereby and to that only.") (citation omitted);

Coldsnow v. Farris, No. 174779, 1996 WL 33363104, at *2 (Mich. Ct. App. June 7, 1996)

(plaintiff could not plead around exclusive remedy in Dramshop Act by asserting a

negligence claim). Therefore, in addition to being unable to identify a legal duty of

GMACM as servicer, the Claimant's negligence claim fails for the same reasons as his MCL § 600.3205 claim.

### 5.   Conversion/Statutory Conversion

60.   The Claimant asserts that GMACM acted in concert with Freddie Mac to "willfully and wrongfully assert possession and control over the subject property as well as aided in the conversion of the property."  Third Amended Complaint ¶ 102.  However, this claim lacks merit because it does not involve the conversion of personal property.

61.   Michigan law does not recognize a claim for statutory conversion of real property – a claim for statutory conversion will only lie where the property at issue is personal, movable property.  Hurley v. Deutsche Bank Co. Americas, No 07-11924, 2008 WL 373426 (E.D. Mich. Feb. 12, 2008).  Michigan defines "conversion" as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with their rights therein."  Thomas v. Mussog, No. 278060, 2008 WL 1991718, at *1 (Mich. App. May 8, 2008) (citation omitted); see also Brennan v. Edward D. Jones & Co., 626 N.W.2d 917, 919 (Mich. App. 2001) (defining conversion as "any distinct act of dominion wrongfully exerted over another's personal property."); Head v. Phillips Camper Sales & Rental, Inc., 593 N.W.2d 595, 603 (Mich. Ct. App. 1999) (defining conversion as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.") (citation omitted).

62.   In Hurley, the Court recognized the distinction between personal and real property for purposes of a statutory conversion claim under MCL § 600.2919(a).  That case involved a claim of statutory conversion by former homeowners against banks that had foreclosed on their homes.  Id.  The defendant argued that "conversion only applies to

personal property", and the Court agreed, concluding that the only reason conversion could lie was because the personal property at issue was not a fixture.

63.     Here it is undisputed that the Property is real, rather than personal, property.  As a result, there is no question that the Claimant's claim for conversion is unsupported by the statute an the cases thereunder.  This was also recognized by the District Court, which rejected the Claimant's conversion claim against the other defendants because it did not "involve a claim for conversion of personal, moveable property, rather than real property."  <u>See</u> *Opinion and Order Granting Defendant's Motions for Summary Judgment (#41, 56, and 58) Except as to GMAC Mortgage, LLC and Denying Plaintiff's Motion to Extend Dates and Permit Discovery (#74)*, attached hereto as <u>Exhibit 10</u>.  As a result, the Claimant's conversion cause of action fails as a matter of law.

**6.  Slander of Title**

64.     In Michigan, slander of title claims have both a common law and statutory basis.  To establish a slander of title at common law, the Claimant must show falsity, malice and special damages, i.e., that GMACM "maliciously published false matter disparaging [the Claimant's] title, causing [the Claimant] special damages."  <u>Sullivan v. Thomas Org., PC</u>, 276 N.W.2d 522 (Mich. Ct. App. 1979).  The same three elements are required in slander of title actions brought under MCL 565.108.  <u>GKC Mich. Theaters, Inc. v. Grand Mall</u>, 564 N.W.2d 117 (Mich. Ct. App. 1997) (applying the standard to a claim brought under the statute).  The Claimant has failed to plead both the falsity and malice elements.

65.     The Claimant's slander of title claim is based on allegations that GMACM commenced foreclosure proceedings while there was an agreement to forbear and that it filed "false notices of foreclosure by advertisement that were patently untrue on their

face." See Third Amended Complaint ¶¶ 114-116. As to the first allegation, as discussed above, there was no valid agreement to forbear foreclosure proceedings, and the Claimant was in default under the terms of the Note and Mortgage. Therefore, there was nothing improper about the foreclosure sale, as GMACM acted in accordance with its contractual rights, and it could not have acted with malice in continuing with a proper foreclosure. Furthermore, as with his negligence claim, the slander of title cause of action is merely an attempt to get around the statute of frauds. See Crown Tech. Park, 619 N.W.2d at 72 (the language in MCL §566.132(2) is "unambiguous" and "plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision.").

66. The Claimant's allegation that the foreclosure notices were "patently untrue," is also insufficient to plead slander of title. See Third Amended Complaint ¶ 116. Such conclusory statements neither allege what false statements were made in the foreclosure notices, nor allege that GMACM published said notices with malice, and therefore these allegations are insufficiently pled. Mefaj v. IndyMac FSB, No. 14-13486, 2015 WL 2343812, at *5 (E.D. Mich. May 14, 2015) (slander of title claim was insufficient where it failed to identify any false statements or allege malice).

67. The Claimant also asserts that GMACM facilitated the sale of the property in violation of the court order and *lis pendens* that was filed in June 2010. See Third Amended Complaint ¶ 117. However, it is undisputed that GMACM had no further interest in the Property at the time Freddie Mac sold the Property, and GMACM fulfilled its obligations under the court order by informing Freddie Mac of the order. See ¶ 31 *supra*.

Thus, GMACM did not cause the allegedly false *lis pendens* to be filed, and the Claimant's slander of title claim fails.

### 7. Declaratory and Injunctive Relief

68.     The Claimant's final causes of action are for Declaratory Relief, Permanent Injunction, and Setting Aside the Foreclosure Sale.  See Third Amended Complaint ¶¶ 88-97, 106-112.  These claims are based on the same allegations as the previous claims, and therefore fail for the same reasons.  Additionally, even if the Claimant could demonstrate the viability of the previous claims he cannot obtain the declaratory or injunctive relief requested.  Bankruptcy Code section 502(b) provides that in connection with allowing or disallowing proofs of claim, the Court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount. . . ."  11 U.S.C. § 502(b).  Bankruptcy Code section 502(b) makes no provision for granting of equitable relief.  Instead, the Bankruptcy Code and Bankruptcy Rules require that requests for an injunction be sought through an adversary proceeding.  See Fed. R. Bankr. P. 7001(7).  Consequently, even if the Claimants had provided a basis for relief, such relief is inappropriately sought through the claims allowance process, especially in this context where the requested relief would be applied to an alleged contract that no Debtor entity is a party to, but rather, is an alleged contract with third party entities that are not a party to this dispute.

### CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as this Court may deem proper.

Dated: September 9, 2016
       New York, New York

/s/  Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*