**Exhibit 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF SARA LATHROP IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 2892 FILED BY GERARD WIENER, FOR HIMSELF AND AS REPRESENTATIVE OF THE ESTATE OF ROLAND WIENER**

I, Sara Lathrop, hereby declare as follows:

1. I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "<u>Borrower Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I have been employed by affiliates of ResCap since June 2006. I began my association with ResCap in 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("<u>GMACM</u>"). In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I then became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I

1

ny-1245660

became a Manager in that division. In this role, I oversaw GMACM associates in their efforts to provide borrowers with loss mitigation options and assisted in the development of GMACM's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued this role with the ResCap Liquidating Trust (the "<u>Liquidating Trust</u>") in December 2013. In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "<u>Declaration</u>") in support of the *ResCap Borrower Claims Trust's Objection To Claim No. 2892 Filed By Gerard Wiener, For Himself and as Representative of the Estate of Roland Wiener* (the "<u>Objection</u>").[2]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3. In my current and former capacities as Senior Claims Analyst and Loss Mitigation Manager to the Borrower Trust, the Liquidating Trust, and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

2

ny-1245660

Records kept in the course of their regularly conducted business activities (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimant.  Since the Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

        4.       The Debtors have taken steps in these Chapter 11 Cases to afford Borrowers who have filed proofs of claim additional protections, as set forth in the Borrower Claim Procedures approved by the Procedures Order.  A Request Letter was sent to the Claimant, however, no response was received.

        5.       On February 12, 1997, Debtor Homecomings Financial Network, Inc. originated a loan (the "Loan") in the amount of $87,500.00 to Roland C. Wiener ("Roland Wiener"), evidenced by a note (the "Note") and secured by a mortgage (the "Mortgage") executed by Roland Wiener on property located at 1946 Parmenter, Apt. 305, Royal Oak, Michigan, 48073  (the "Property"). Copies of the Note and the Mortgage are attached hereto as Exhibit A and Exhibit B, respectively.  The Loan was transferred to the Federal Home Loan

Mortgage Corporation ("Freddie Mac"). The terms of the Note require a monthly payment of $688.36. See Note.

6. Debtor Homecomings Financial, LLC serviced the Loan from origination until servicing was transferred to GMACM on September 11, 2006. GMACM serviced the Loan until the property was sold at REO sale on September 20, 2010. See Servicing Notes at 10 of 87.

7. On or around April 2009, the Claimant informed GMACM that Roland Wiener had passed away. See Servicing Notes at 70 of 87, attached hereto as Exhibit C.

8. On May 1, 2009, the Loan became delinquent, as it was owing for the April 1, 2009 payment. See Servicing Notes at 2 of 87. As a result, GMACM initiated foreclosure by advertisement proceedings in August 2009, and a sheriff's sale was scheduled for September 8, 2009. See id at 60 of 87.

9. On August 25, 2009, the Claimant was put in contact with Patricia Scully ("Ms. Scully"), a loss mitigation specialist at GMACM. See Servicing Notes at 60.

10. On or around October 14, 2009, Ms. Scully adjourned the foreclosure sale to November 17, 2009. See Servicing Notes at 53 of 87.

11. Plaintiff neither returned a signed copy of the October 8 Forbearance Agreement to GMACM nor made the monthly payment required to be made on November 15, 2009. See Servicing Notes.

12. At no time did the Claimant indicate an acceptance of the terms of the November 19 Forbearance Offer, or make any payment consistent therewith. See Servicing Notes.

13. After the foreclosure sale on January 5, 2010, GMACM ceased to have any interest in the Property, and nothing in the Books and Records suggests that GMACM was involved with the sale of the Property to third parties on September 21, 2010.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 9, 2016

/s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for ResCap
Liquidating Trust

5

ny-1245660