**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the ResCap Borrower Claims Trust*

**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone:    (609) 987-0050
Facsimile:    (609) 951-0824
Diane A. Bettino
Barbara K. Hager, *admitted pro hac vice*

*Co-Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

------------------------------------------------------------------------

## THE RESCAP BORROWER CLAIMS TRUST'S REPLY BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF CHRISTY ZOLTUN DONATI

The ResCap Borrower Claims Trust (the "Borrower Trust") submits this Reply in Support of its Motion *In Limine* to Exclude the Expert Report and Testimony of Christy Zoltun Donati ("Ms. Donati") offered by the Claimant Frank J. Reed III ("Claimant" or "Mr. Reed").

## PRELIMINARY STATEMENT

There are two issues here, Ms. Donati's Report (the "Report") and her testimony via her declaration dated April 12, 2016 ("Donati Declaration").[1] The Report is ***identical to her original report prepared in connection with the September 2014 trial***, which was previously excluded by

---

[1]    True and correct copies of the Donati Declaration and the Report are attached hereto as **Exhibit A and B**, respectively.

this Court and should again be excluded.  Order, 9/18/14 (No 7499) (ruling the Report was "not

admissible at trial" as it is "filled with impermissible hearsay," "stray[s] into areas beyond the

witnesses' apparent expertise," and "contain[s] faulty analysis and unsupported conclusions.").

Further, while Ms. Donati previously provided testimony at the September 2014 trial, her

testimony at the upcoming trial will not assist the trier of fact at the limited trial and is not

relevant as she has nothing to add concerning damages.

Notably the declaration provided by Ms. Donati concerns the amount of her "expert" fees

which remain unpaid by Mr. Reed.  Expert fees are not recoverable, an issue conceded by Mr.

Reed in his recent submissions.  See September 8, 2016 Statement of Claimant With Respect to

Rescap Borrower Claims Trust's Motion *In Limine* to Exclude Evidence Concerning Claimant's

Expert Witness Fees as Damages at ¶ 1.  Further, Ms. Donati does not purport to be an expert on

damages and should not be permitted to testify at trial as the upcoming hearing is for the

purposes of determining damages only.  See Claimant's Opposition to The Borrower Trust's

Motion to Exclude the Report and Testimony of Christy Donati ("Cl.'s Opp") at ¶ 23.  ("The

only issue remaining to be tried during the scheduled evidentiary hearing is the extent of my

[Claimant's] damages").

As such, Ms. Donati's Report should be stricken and she should be precluded from

testifying at trial.

## ARGUMENT

### 1.    Ms. Donati's Report Should Be Excluded Because The Report Consists Entirely Of Impermissible Legal Conclusions

Mr. Reed's position that an expert may opine on legal issues is misapplied in this case

and his cited case law is inapposite.  Ms. Donati's testimony, as a legal professional, is not

regarding the "ordinary practices" or "trade or customs" of like professionals.  Instead, she

makes legal conclusion such as: "the debtors, as a matter of law, have indisputably committed both a negligent and/or a wrongful act against the Reeds." <u>See</u> Report at p. 12. Even if Ms. Donati's legal opinions were permissible, which they most certainly are not, such opinions would not be relevant here; this hearing pertains to Mr. Reed's alleged damages as liability has previously been determined.

"[A]n expert testimony on issues of law is inadmissible." <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1294 (2d Cir. 1991). <u>See also</u>, <u>Hygh v. Jacobs</u>, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."). This is because the "special legal knowledge of the judge makes the witness' testimony superfluous." <u>Marx & Co., Inc. v. Diners' Club, Inc.</u>, 550 F.2d 505, 510 (2d Cir. 1977) (finding testimony of expert who "gave his opinion as to the legal standards which . . . governed [defendants'] conduct," provided "legal opinions as to the meaning of the contract terms at issue," and "repeatedly gave his conclusions as to the legal significance of various facts adduced at trial" should have been excluded).

Here, Ms. Donati's Report opines on a host of legal issues, reading instead like a legal memorandum. <u>Hygh v. Jacobs</u>, 961 F.2d 359, 363 (2d Cir. 1992) (finding where an expert offers an opinion as to the legal implications of the facts, that testimony also encroaches on the responsibilities of the judge and jury, and is inadmissible). Contrary to Mr. Reed's position that Ms. Donati is providing helpful "background" guidance for the Court, Cl.'s Opp. at ¶ 36, Ms. Donati offers only her conclusions as to GMACM's liability for negligence, fraud, and breach of contract.[2] <u>Id.</u> at p. 12; <u>see also</u> <u>id.</u> at pp. 13-14 (concluding she found "seven (7) wrongful acts"

---

[2]    On pages 10 and 11 of the Report, Ms. Donati also attempts to incorporate the "opinion" of the Federal Reserve Board as a basis to conclude the Borrower Trustee's liability. <u>See</u> Report, pp. 10-11. Ms. Donati states that these excerpts are a "legally valid basis" for the determination that GMACM committed a negligent and/or wrongful act.

which constitute negligence); id. at p. 14 (concluding "GMACM also committed fraud on the Chancery Court and the Reeds vis-à-vis its pleadings and filings related to the Reed 2008 foreclosure"); id. (stating that if "GMACM does indeed prove to be the owner/holder of the note and/or mortgage, then it would be in breach of contract" for failure to send the NOI).

Each and every one of Ms. Donati's opinions constitutes a blatant, improper legal conclusion. Beyond the improper opinions, the Report is rife with citations to law, rendering it more of a legal memorandum than expert report. Even if these opinions were valid under Daubert, none opine on or even relate to the narrow issue in front of this Court. Simply stated, Ms. Donati's "opinions" are matters reserved for this Court. Accordingly, the Report violates relevant Second Circuit authority and should be excluded.

**2.    The Opinions Expressed By Ms. Donati Are Irrelevant To The Issues At Hand And Will Not Assist The Trier Of Fact As They Are Not Based On Reliable Methods, And Do Not Satisfy The Daubert Standard**

Mr. Reed's foundation for his argument that Ms. Donati's testimony was previously admissible is fundamentally flawed as this hearing is **not** a "remand of the same matter."[3] Cl.'s Opp. at ¶ 6. Instead, the issues have been substantially narrowed by the Appellate Court – limited to Mr. Reed's damages only. Further, even if her so-called "methodologies" were based on actual facts in evidence, which they are not, they are entirely unrelated to Mr. Reed's

---

Id. at p. 12. This too is a blatant legal conclusion as to an ultimate issue, which was already determined by this Court.

[3]   Notably, Mr. Reed's argument that the Court's decision to allow the testimony is "law of the case" and should not be disturbed **cuts squarely against his argument** that the Report should be permitted, as the Court previously excluded the Report as impermissible under well-established legal principles.

Importantly, Ms. Donati's Report **remains identical to her previously insufficient submission**. Contrarily, the purpose of the upcoming hearing has been substantially narrowed by the Appellate Court and Ms. Donati's testimony (while admitted in the earlier hearing) should be stricken here as she is **not qualified** to opine on Mr. Reed's damages. See, e.g., Gray v. Briggs, 45 F. Supp. 2d 316, 323-24 (S.D.N.Y. 1999) (finding expert, whose expertise resided primarily in the securities industry, lacked sufficient knowledge of and experience with ERISA to offer opinions involving ERISA, and thereby excluding opinions).

damages – the only issue remaining for this Court.[4]   As such, the Report and Ms. Donati's testimony should be excluded.

Here, the opinions of Ms. Donati are irrelevant to Mr. Reed's damages and not helpful to the trier of fact.  Mr. Reed's opposition further emphasizes this:  "Ms. Donati opines as to the accrual of the right to foreclose, the Fair Foreclosure Act, standing, and the prosecution of a foreclosure." Cl.'s Opp. at ¶ 12.

First, the claim that GMACM and RFC violated the FFA has long been disposed of.  See July 11, 2014 Order, p. 2.  Further, any opinions concerning the accrual of the right to foreclose, standing, the *lis pendens* process, and the continued negligent prosecution of the foreclosure are no longer at issue.  See Report, pp. 3-9, 12.  Mr. Reed's contention that Ms. Donati is an "expert on New Jersey foreclosure practice" is of no consequence.  Cl.'s Opp. at ¶ 13.  Ms. Donati's needless argument on matters already resolved, recitations of the law and assertion of legal conclusions cannot assist the trier of fact in any way, but will only add confusion and squander precious time in a restricted trial schedule.  Daubert, 509 U.S. at 591-92 (finding an expert opinion must be "relevant" so as to assist the trier of fact); see also Fed. R. Evid. 702.  Additionally, Mr. Reed specifically argues that Ms. Donati's testimony "is inherently relevant' to "foreseeability of the consequences of a wrongful foreclosure for purposes of breach of contract damages."  Cl.'s Opp. at ¶¶ 10-11.  However, Mr. Reed has **withdrawn** his claim for breach of contract and, as such, Ms. Donati's testimony is most certainly not relevant.

Ms. Donati should be precluded from offering expert testimony at trial.  Finally, because Ms. Donati does not employ any relevant or reliable methods, her opinions do not satisfy

---

[4]    An expert opinion must have "a reliable basis in the knowledge and experience of [the expert's] discipline." Daubert, 509 U.S. at 591-92.  See also Fed. R. Evid. 702.

<u>Daubert</u>.  Accordingly, her Report should be stricken and her testimony should be excluded from trial.

## **<u>CONCLUSION</u>**

For these reasons, the Borrower Trust respectfully requests that Christy Zoltun Donati be precluded from testifying at trial and that her Report be stricken.

Dated:  September 13, 2016
       New York, New York

/s/ Barbara K. Hager

Diane A. Bettino
Barbara K. Hager, *admitted pro hac vice*
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: (609) 987-0050
Facsimile:  (609) 951-0824

*Co-Counsel for The ResCap Borrower Claims Trust*

-and-

Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

### [PROPOSED] ORDER

It is **HEREBY ORDERED** that the ResCap Borrower Claims Trust's Motion *In Limine*

To Exclude the Expert Report and Testimony of Christy Zoltun Donati, is **GRANTED**.

The Trust's counsel shall serve a copy of this Order on Frank Reed.

**IT IS SO ORDERED.**

Dated: _____
New York, New York                          _____
                                            MARTIN GLENN
                                            United States Bankruptcy Judge

# EXHIBIT A

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone: (856) 956-6950
*Creditor, Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Case No.  12-12020  (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL LLC et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) |  |
|  | ) |  |

### DECLARATION OF CHRISTY DONATI

I, Christy Donati, declare as follows:

1.      I am an a attorney licensed in New Jersey.

2.      I have extensive experience in residential foreclosure practice as I participated in thousands of foreclosure cases.

3.      I was retained by Frank Reed to render services in connection with acting as an expert witness in New Jersey residential foreclosures for the period of April 2014 through October 2014 including research, consulting, written expert report, testimony in court, travel and related expenses.

4.      Frank Reed still owes me $2,500.00 for my services rendered.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   April 12   , 2016.


_____
Christy Donati

# EXHIBIT B

# Expert Report
# New Jersey Foreclosure Complaints
Legal and Professional Standards

By
Christy Zoltun Donati, Esq.
903 Cummings Avenue
Blackwoood, NJ 08012
P:  (856) 237-7479
E:  Christy@Zoltun.com

## I. Purpose and Scope

I am Christy Zoltun Donati, Esqire.  I have been retained by Frank J. Reed, III, Creditor Pro Se, of 817 Matlack Drive Moorestown, NJ 08057, in relation to his prosecution of his and his wife's proof of claim against GMACM and Residential Funding Corporation In re: Residential Capital, LLC, et al., Case No. 12-12020 (MG), Chapter 11, Jointly Administered, United States Bankruptcy Court Southern District of New York.

I have been retained to discuss the legal and professional standards that are recognized and adhered to in the preparation, filing and prosecuting of foreclosure actions in the State of New Jersey; and to discuss why these standards exist and the importance of strict compliance with these standards.

The particular standards that I will address in this report will be confined to those standards of legal and professional care that are the subject of Mr. & Mrs. Reed's proofs of claims.

## II. Relevant Qualifying Experience

**Foreclosure Attorney**
**Phelan Hallinan & Schmieg LLP**
**400 Fellowship Rd, Mt Laurel, NJ 08054**

**1/2010 – 3/2014**

**Firm Resume**
PhelanHallinan & Schmieg, LLP specializes in providing loss mitigation, foreclosure, bankruptcy, REO, eviction and related services in New Jersey and Pennsylvania to the residential mortgage servicing industry. Since its founding over 25 years ago, the firm has developed into the region's premier default services operation, representing almost every major lender and loan servicer.

(As published on:  http://www.fedphe.com as recent as 8/8/14).

As a Foreclosure attorney for "the region's premier default services operation, representing almost every major lender and loan servicer," I managed thousands of foreclosure proceedings.  This included the verification and / or performance of all conditions precedent required by contract or law to achieve the actual accrual of the right to file a foreclosure action.  I would also draft the foreclosure complaints in compliance with all professional and legal standards; or review complaints for such compliance BEFORE their filing.

Additionally, I would file the foreclosure complaints, their associated lis pendens and subsequent pleadings.  Again, with the responsibility to do so in compliance with all relevant professional and legal standards.

To accomplish the tasks I outline above, I not only was a practicing licensed attorney in the state of New Jersey, but I attended a great deal of in house specialized legal training as well as numerous Continuing Legal Education seminars all on the subject of foreclosure.


**Additional Relevant Professional Experience**

**Real Estate Paralegal**
**Reed – Smith**
**Philadelphia, PA**

**5/86 – 3/97  &  1/03 – 8/07**

Worked on the drafting of real estate related contracts and agreements and provided litigation support services for real estate related contracts and agreements.


**Real Estate Paralegal**
**Obermayer, Rebman, Maxwell & Hipple**
**Philadelphia, PA**

**9/97- 9/98**

Worked on the drafting of real estate related contracts and agreements and provided litigation support services for real estate related contracts and agreements.


**Real Estate Paralegal**
**Pep Boys – in house legal department**
**Philadelphia, PA**

**3/97- 8/97**

Worked on the drafting of real estate related contracts and agreements and provided litigation support services for real estate related contracts and agreements.

### III. <u>Analysis of the Reed File</u>
    **Reasons for Legal and Professional Standards of Care and**
     **The Foreseeability of Harm for Failing to Adhere to Those Standards**

**a) Accrual of the Right to Foreclose**

<u>Notice</u>

As noted in a relevant legal treatise, Weinstein, 30A New Jersey Practice: Law of Mortgages § 30.3A (2d ed. 2010), titled "Accrual of Right to Foreclose":

> Generally speaking, unless prohibited by law, forbearance in the mortgage, or some valid defense exists, the right to foreclose accrues on default (breach of any covenant or condition in the mortgage or secured obligation), **expiration of** any grace periods, if any, _**and**_ **performance or expiration of any conditions precedent, such as the giving of any required notice or demand in accordance with the mortgage documents or applicable law**.

> (emphasis added)

The reason this notice is significant is expressed in a variety of legal authorities one of which is the legal treatise Weinstein 30 New Jersey Practice: Law of Mortgages § 24.16 (2d ed. 2008).

> "**The institution of foreclosure is traumatic to the debtor mortgagor and creates a permanent court record which can be injurious to the debtor's credit.**  The notice of intention is meant to give the debtor a chance to prevent acceleration and institution of Foreclosure."

> (emphasis added)

<u>The Mortgage Documents</u>

The Reed's Mortgage contract expressly provides that notice be given prior to the institution of litigation and that this notice conform with the requirements of the New Jersey Fair Foreclosure Act. (see the Reed's Mortgage contract).

The Fair Foreclosure Act

Recently, and generally, the New Jersey Supreme Court affirmed the absolute requirement that a notice of intent to foreclose must be sent prior to instituting a foreclosure action in New Jersey in US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 470, 38 A.3d 570, 581-82 (N.J. 2012), in which it stated:

> "The notice of intention is a central component of the FFA, **serving the important legislative objective of providing timely and clear notice to homeowners that immediate action is necessary to forestall foreclosure**."

> (emphasis added).

The relevant rule of *Guillaume* is derived from a long list of cases standing for the same principle – i.e. the intent and purpose of the FFA is to provide a delinquent homeowner the opportunity to take curative action PRIOR to the drastic mechanism of foreclosure BECAUSE of the serious and disruptive, or even potentially disastrous effect it can have on the homeowner. See US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 38 A.3d 570 (N.J. 2012); Wells Fargo Home Mortg., Inc. v. Stull, 378 N.J.Super. 449, 876 A.2d 298 (N.J.Super.App.Div. 2005); EMC Mortg. Corp. v. Chaudhri, 400 N.J.Super. 126, 136-37, 946 A.2d 578, 585 (N.J.Super. App.Div. 2008)(the FFA "was designed to make clear the rights and remedies of both borrowers and lenders prior to and throughout the foreclosure process").

"[T]he Fair Foreclosure Act was designed to make clear the rights and remedies of both borrowers and lenders **prior to** and throughout the foreclosure process." Wells Fargo Home Mortg., Inc. v. Stull, 378 N.J.Super. 449, 456, 876 A.2d 298, 302-303 (N.J.Super.App.Div. 2005)(emphasis added).

Now, specifically as the FFA pertains to the Reed's proofs of claim, there are two relevant facts and they are as follows:

The New Jersey Chancery Court found

1) that GMACM did not comply with the notice requirements of the FFA and
2) that GMACM neglected to plead its compliance, making its pleading negligently defective as well.

This was expressed in the Court's dismissal of the 2008 foreclosure action.  (see the New Jersey Chancery Court's Written Opinion substantiating the dismissal of the GMACM foreclosure complaint).

**b) Standing**

The Reed Note

GMACM has indicated in its pleadings and filings in the 2008 foreclosure action in the New Jersey Chancery Court that they were the "Holder" of the note and mortgage.  The term "Holder" is a specific legal term which expressly denotes that *that* person or entity has the rights to the payments under the note AS WELL AS the right to enforce the note.

In other words all the rights remain vested in that one person or entity.  Again, this is what GMACM ultimately indicates to the New Jersey Chancery Court in its 2008 Motion for Summary Judgment.  In this motion and supporting certification, GMACM explicitly states that it is the Holder of the note and the glaring implication is that this is the basis of its standing to enforce the Note and Mortgage.  However, this representation was and is apparently not true.

To enforce the note as a holder pursuant to *N.J.S.A.* 12A:3-301, plaintiff would have to establish that it received the note, through negotiation, prior to and continued to maintain this at the time of the filing of any enforcement action (i.e. the filing of a foreclosure complaint).  That would require that the plaintiff have physical possession of note <u>and</u> that the note be endorsed prior to or at the time of delivery, either in favor of plaintiff or in blank.

In reviewing the Reed's documents in pursuit of their proofs of claim in the Rescap Bankruptcy case, I have seen the declaration of Lauren Delehey The Debtor's Chief litigation Officer and the exhibits she attached.  Ms. Delehey asserted that at no time was GMACM the "owner" of the note and she submitted the endorsed note as proof.

At this point, I will not opine as to the "ownership" of the note, as that is not the relevant question of fact.  The relevant inquiry is actually who was the "Holder" of the note at the time that GMACM asserted to the New Jersey Chancery Court that it was in fact the "Holder" of the note to gain and maintain its standing to bring the foreclosure action.

It is indisputably clear that GMACM was not the holder at the time it brought the foreclosure suit against the Reeds.  By their own evidence submitted, the note shows no endorsement to GMACM *and* there is no endorsement in the blank so that GMACM could be a Holder via possession.

At this juncture it is imperative to reinforce here that "Holder" is a specific legal term denoting legal status that can be ONLY obtained in two distinct ways and in light of Ms. Delehy's supplied evidence, there is no way that GMACM was the 'Holder" of the Reed note at the time it filed its foreclosure action.  As such, GMACM had no standing to file the foreclosure action against the Reeds.

It should also be noted that GMACM never asserted that it had standing that would flow from being a "non-holder in possession". This fact is not inconsequential for GMACM as this status is mutually exclusive of the status of being a "Holder".


Reed Mortgage Contract

In addition to the requirements above, regarding the debt obligation, i.e. the note, a plaintiff in a foreclosure action must also be the counterparty, (the mortgagee), to the mortgagor in the mortgage contract - *at the time of the filing of a foreclosure complaint in the Chancery Courts in New Jersey* - to have standing to bring the foreclosure action. This is because the mortgagee derives its authority to proceed in foreclosure in the Chancery Court from the rights it is granted by the mortgage contract. Therefore, without being the mortgagee at the time of the filing of the plaintiff has no right to file or prosecute the foreclosure.

In our modern world of finance, "becoming a mortgagee" typically occurs via assignment from the original mortgagee as notes and their related securities are bought and sold in various transactions. In the Reed's case this was the fact as well. However, the assignment of the mortgage from a predecessor in interest, (in this case MERS), to GMACM did not occur until *after* the foreclosure action was filed. Therefore, GMAC not only lacked standing to bring a foreclosure action in the Chancery Courts of New Jersey.


**c) The Lis Pendens**

The lis pendens in New Jersey goes strictly with **action,** meaning, the lawsuit itself. To that specific point, the lis pendens incorporates the caption and docket number from the subject litigation. As such, if a case is disposed of, in any manner, the lis pendens must be removed. This is not only required by statute, but common law as it is well understood that the lis pendens interferes with the property rights of the owner. Generally, it interferes with his right to sell or finance it. See below:


LIS PENDENS: case law re practical effect

**Spyco, Inc. v. Demenus, 226 N.J.Super. 482, 486 (Ch. Div. 1988)** (involving an action brought by a mortgagee to discharge lis pendens on ground that the particular mortgagee was not named as a defendant in the related foreclosure action – chancery court discharge lis pendens, noting):

> "An improperly filed Notice of Lis Pendens can create "a hardship on the owners of real estate where the alleged interest in the property is uncertain or problematical ... **[T]he very filing of a notice of lis pendens**

**destroys the ability of the property holder to convey marketable title if the litigant has any possibility of success."** *Fravega v. Security S & L Ass'n,* 192 *N.J.Super.* 213, 218, 469 *A.*2d 531 (Ch. Div.1983). Because the very filing of a Notice of Lis Pendens constitutes a "taking of property" in the constitutional sense, *Chrysler Corp. v. Fedders Corp.,*519 *F.Supp.* 1252 (D.N.J.1981), rev'd on other grounds, 670 *F.*2d 1316 (3d Cir.1982), due process concepts are implicated. *Trus Joist Corp. v. Treetop Associates Inc.,* 97 *N.J.* 22, 32, 477 *A.*2d 817 (1984). That need evoked the legislative response which in 1982 led to the adoption of *N.J.S.A.* 2A:15-7(b). Therefore, since a copy of the Notice must be served on the defendant in the pending action it is illogical and indeed may be unconstitutional to permit the filing of the Notice against the property interest of a person who is not a named defendant in that action.

By failing to follow the statutory mandate the plaintiffs in the federal action have created the present situation. Not being a named party in that suit and not having received notice of the filing of the *lis pendens* and having discovered its **potentially disastrous effect of its financing plans**, Spyco had no alternative other than this separate action to discharge that *lis pendens.* This court has full jurisdiction to accord that relief."

**Fravega v. Security Sav. and Loan Ass'n,** **192 N.J.Super. 213, 218 (Ch. Div. 1983)**(noting, on a motion to discharge a lis pendens):

"… **the very filing of a notice of** *lis pendens* **"destroys the ability of a property holder to convey marketable title if the litigant has** *any* **possibility of success."** Emphasis supplied. *Chrysler Corp. v. Fedders Corp., supra* at 1260. Clearly then, by couching the burden in terms of "probability" rather than possibility the Legislature intended to elevate the standard by which plaintiffs' proofs would be measured."

**Chrysler Corp. v. Fedders Corp., 519 F.Supp. 1252, 1262 (D.N.J. 1981)**(this decision was made prior to the 1982 amendment of NJ's lis pendens statute – the 1982 amendment expressly allowed for a challenge, by motion, to a lis pendens filing, within which the filer of the lis pendens had to establish a probability of success in the action – as in the two case cited above. The court held that the statute was unconstitutional. The District Court's decision was overturned by the 3rd Circuit on other grounds. Nonetheless, the dicta as to the effect of a lis pendens filing is compelling and relevant):

"The effect of the filing of a lis pendens on a defendant's property and the consequent limitation on his or her right to alienate that property varies considerably depending upon the defendant's plans with respect to the realty. On the one hand, because the lis pendens does not affect the defendant's right to use and enjoy the land, a defendant who has no intention of alienating or mortgaging his or her land will suffer virtually no

harm. If every defendant fell into this class, there would be no cause for concern about the New Jersey statute.

There is, however, another class of defendants, of which Fedders claims to be a member. These **defendants have the present intention of selling their realty. It is easy to see that this class is seriously affected by the filing of a lis pendens**. It is an unfortunate fact of life that modern litigation, like that described in the earlier times of Charles Dickens' Bleak House, has a way of dragging on for a long time. The complaint in this case is extremely long and complicated, and it is unlikely that this case will lend itself to rapid disposition. …**so it is unlikely that any purchaser can be found who would be willing to buy the property, even at a discounted price. Unless the lis pendens is dissolved, defendants who wish to alienate their property are seriously harmed. Even if the property is sold at a discount, the defendant has lost many dollars in comparison to the property's value before the lis pendens is filed."**

**Chrysler Corp. v. Fedders Corp., 670 F.2d 1316, 1328 (3d Cir. 1982)**(here, the 3rd Circuit recognizes the effects noted by the District Court):

As the district court correctly noted, the effect on the defendant property owner of filing a notice of lis pendens "varies considerably depending upon the defendant's plans with respect to the realty." 519 F.Supp. at 1262. As we noted in Part A above, the property owner does not suffer at all in either its possession or use of the property. Thus, the filing of the notice of lis pendens does not affect those defendants who have no intention of alienating or mortgaging the property. **Only those defendants who desire to sell their property are affected because the practical effect of the filing of the notice of lis pendens may be to prevent alienability or at least to hinder it.**

Additionally, it is of no small consequence that the knowledge that a lis pendens can affect the value of property is so widely known that it even appears on Wikipedia (see excerpt immediately below) and by my opinion should be considered to be in the body of knowledge encompassed in the Common Knowledge Doctrine, and as such it make s the acts of the GMACM and RFC even more egregious.

*Effect [edit]*

*Lis pendens is taken as constructive notice of the pending lawsuit and it serves to place a cloud on the title of the property in question until the suit is resolved and the notice released or the lis pendens is expunged.* ***Careful buyers will be unwilling to purchase land subject to a "lis pendens" or will only purchase the land at a discount, prudent lenders will not lend money on the security of the land and title insurance companies will not insure the title to such land:*** *title is*

*taken subject to the outcome of the lawsuit. Because so much real property is purchased with borrowed money, this usually keeps the owner from selling the property. It also may keep the owner from borrowing money secured by the property (such as to pay the costs of defending the suit).*

(http://en.wikipedia.org/wiki/Lis_pendens)

Generalities being said, I must now specifically turn to these issues as they relate to the Reeds. I have reviewed correspondence with the Reeds lenders which proclaim that Mr. Reed lost financing options from their respective institutions.

First, I would like to address a sequence of letters by and between Mr. Reed and TD Bank.  TD Bank is a large multi-billion dollar bank spanning much of the Eastern Coast of the United States.   It enjoys a solid reputation in the community at large and is subject to Federal Regulation.  It is with an eye to that regulation that I must view the letters to and from Mr. Reed and TD Bank as factually true.

TD Bank is subject to Equal Credit Opportunity Act and as such, must disclose to Mr. Reed any and all material reasons why any offer of credit is denied.  This is clearly mandated in Regulation B § 202.9(a)(2).

The ONLY reason TD Bank cites as being the reason for its declination of Mr. Reed's "cash our Refi" is the foreclosure action that was uncovered from the

public record.  This letter was provided as part of TD Bank's regular business operations as mandated by Federal Law and as such is admissible for consideration under the Federal Rules of Evidence 803(6).  As such, I believe that the actions of both GMACM and RFC hindered and or interfered with Mr. Reed's right to prepay his note and his obligation to make payments up to and including paying off his note.

Additionally, I reviewed correspondence from an individual named Thomas Tartamosa who purportedly worked for a lender from which Mr. Reed had apparently sought credit and financing as well.  The contents of this letter are similar with the TD letter, and comports with both the general rule and specific circumstances.  As such I believe it corroborates Mr. Reeds assertions that the wrongful foreclosure filing interfered with and or hindered his financing abilities.

I also reviewed the report and foundational documents of Louise Carter and I concur with her analysis of the causation of Mr. Reed's lost value on 817 Matlack Dirve Moorestown, NJ property as it also comports with the general rule and specific circumstances.

## IV. Regulators Opinions - *Negligence / Wrongful Acts*

The Reeds have clearly identified the various elements in fact and law which comprise the tort of negligence in their proofs and arguments presented to the Court and I have examined these facts in light of the governing professional and legal standards of care.  However, there is another authority that I can turn to for alternative guidance as to the proper characterization of GMACM and RFC's behavior as it regards the Reeds.    The opinion of the GMACM and RFC's primary regulator, the Federal Reserve Board (FRB) is a legally valid basis for this determination,  (see Federal Rules of Evidence 803(8)(c)).

There exists written and oral testimony before the United States Senate, testimony that is a matter of the public record and was given by and on behalf of the Debtor's regulator, the Federal Reserve Board, pursuant to its participation and issuance of an Federal Interagency report.    Both the report and the testimony are relevant to the Reed's claims.  This testimony by and on behalf of the Debtor's regulator provides a definitive definition of what actions by the Debtor, (and similarly regulated entities), constitute negligent and/or wrongful behavior.

Specifically, the General Counsel of the FRB, acknowledging the patterns of misconduct and negligence in the processing of foreclosures, testified, in relevant part:

> *"The Federal Reserve's…foreclosure review process as well as…the enforcement action that the Board issued in April 2011…were taken in response to patterns of **misconduct and negligence** related to deficient practices in residential mortgage loan servicing and foreclosure processing…and represented significant and pervasive failure as well as unsafe and unsound practices."*
>
> [Statement of Scott G. Alvarez, General Counsel, Board of Governors of the Federal Reserve System: Submitted to the Senate Committee on Banking, Housing, and Urban Affairs Subcommittee On Housing, Transportation, and Community Development - U.S. Senate, Washington, D.C. - December 13, 2011].

More specifically defining the actual categories of negligent acts is the following testimony:

> *2. The servicer **initiated foreclosure** or conducted a foreclosure sale **in advance of the time allowed for foreclosure under the terms of the note and mortgage or applicable state law.***

> *14. **The servicer initiated foreclosure** or completed a foreclosure sale **without providing adequate notice as required under applicable law,***

> [Testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, Office of the Comptroller of the Currency, Before the Subcommittee on Housing Transportation, and Community Development of the Committee on Banking Housing, and Urban Affairs, United States Senate, December 13, 2011] (emphasis added).

It is without question that the GMACM did in fact commit the acts described in items 2 and 14 of the Testimony cited immediately above vis a vis the Reeds. This was determined as a matter of fact and law in the 2009 dismissal of the debtors' 2008 foreclosure action against the Reeds.

Additionally, the FRB found and stated publicly and before Congress the following:

> *"The reviews also revealed that **all** of the services relied heavily on outsourcing arrangements with outside counsel and other third-party vendors to carry out foreclosure processes without adequate oversight of those arrangements." […]*

> *"The agencies, (FRB being one), found that the servicers reviewed, (the debtors being among those), did not properly structure, carefully conduct, or **prudently manage** their third party vendor relationships with outside law firms (the law firms actually conducting the foreclosure litigation)".*

> [Interagency Review of Foreclosure Policies and Practices, Federal Reserve System, Office of the Comptroller of the Currency Office of Thrift Supervision, Washington, D.C., April 2011, (pp.8 and 9 respectively)] (emphasis added).

Therefore, the combination of the authoritative definition provided by GMACM's regulator as to what comprises a negligent and/or wrongful act by the debtor and the factual determination by the New Jersey Chancery Court in the 2009 dismissal of the debtors' foreclosure action, in which it was necessarily determined that the foreclosure action was both untimely and in violation of New Jersey foreclosure law, the debtors', as a matter of law, have indisputably committed both a negligent and / or a wrongful act against the Reeds.

### V. Continued Negligent Prosecution of the Foreclosure

Upon review of the Dismissal Order and its associated Opinion it is clear that GMACM continued to prosecute the foreclosure negligently.  The Reed's disclosed to them vis-à-vis their motion for dismissal that the law GMACM was relying on had been overturned, (GE Capital Mortgage Services, Inc. v. Weisman OCN-F-8083-99 (N.J. Super. Ch. Div. 2001) (Unpublished)).  The current law based on EMC Mortgage Corporation v. Chaudhri 400 N.J. Super. 126, 946 A.2d 578 (App. Div. 2008) was published and obviously as discoverable as a click of a button.  GMACM and its counsel are sophisticated participants in the mortgage and foreclosure industries.  It is reckless that they did not stay up to date with current law and the judge in the foreclosure case admonished GMACM for relying on old law.

### VI.  Reed Modification

I have reviewed evidence that clearly indicates the Reeds entered into a modification of their loan.  The record indicates that an agreement was not only struck by the meeting of the minds, but consideration was tendered and accepted by GMACM.  However, it appears that GMACM failed to complete their obligations under the modification.  They never adjusted the Reeds account to reflect the modification, which would have stopped the foreclosure.  GMACM's failure is a breach of contract, an act of negligence, recklessness or bad faith.

### VII. Conclusion re: Foreseeability

In general, it is well understood in the foreclosure profession / industry that it is quite foreseeable that the very act of filing a foreclosure is extremely harmful to the individual(s) being foreclosed.  It is further understood that this is why there are multiple authorities that strictly govern the elements of the foreclosure process:

1) The contracts between parties to Notes and Mortgages themselves typically agree via the express provisions of their contracts that provide the strict requirements that must be fulfilled to institute foreclosure.

2) The numerous standards imposed as a matter of public policy vis-à-vis both controlling relevant legislation and the actions, rules and/or opinions of the industry regulators.

3) Common law of negligence.


## VIII. Conclusion re:  Liability

<u>Negligence / Malice</u>

During my review and analysis of the Reed documents I have applied my understanding of the professional and legal standards of care required pre, during and post filing of a foreclosure complaint in the State of New Jersey. While conducting this review and analysis I have identified numerous violations by GMACM of both legal and professional standards which govern the pre, during and post foreclosure filing time frames and their associated actions during those times, as well as RFC's violation of post foreclosure filing legal standards of care (through its permissive allowance of GMACM - either RFC's agent or co-holder of the note and/or assignee of the mortgage – to continue the wrongful maintenance of the lis pendens FOR YEARS AFTER its acquisition of the loan). Specifically, seven (7) wrongful acts:

1) The failure to send the Reeds notice required by law and contract.

2) GMAMC's actual physical filing of foreclosure complaint without verifying that actual notice had been given to the Reeds.

3) GMACM's filing of ANY complaint based on the false assertion that GMACM had standing as the "Holder" of the Reed note.

4) GMACM's filing of a CHANCERY division foreclosure action based on the false assertion that it had standing in Chancery to foreclose as the "Assigniee" of the mortgage at or before the time of the filing of the foreclosure.

5) GMAMC's continued prosecution of the foreclosure under overturned law.

6) GMACM's failure to honor the loan modification.

7) GMACM's failure to remove the lis pendens despite the associated foreclosure's dismissal, the Reeds contacting GMACM through counsel and the Reeds even suing them in the New Jersey State Court's Law Division over the foreclosure and lis pendens.

Therefore, it is my professional opinion that both GMACM and RFC acted not only in a negligent manner toward the Reed's but they did so with actual malice, (i.e. they acted with the reckless disregard of the property rights of others).


Fraud

It is also my professional opinion that GMACM also committed fraud on the Chancery Court and the Reeds vis-a-vis its pleadings and filings related to the Reed 2008 foreclosure.  Specifically this fraud was committed where GMACM explicitly represented itself to be the Holder of the Reed note and Assignee of the Reed Mortgage at the time of the filing of the foreclosure and that status was the basis for its standing at the time of its filing of the 2008 foreclosure complaint. The evidence demonstrates in a clear and convincing manner that GMAMC was neither the Holder of the Reed note nor the Assignee of the Mortgage.


Breach of Contract

Additionally, I find that it is also relevant to state that it is my professional opinion that if GMACM does indeed prove to be the owner / holder of the note and / or mortgage, then it would be in breach of contract with Frank Reed as a counterparty to the note and / or mortgage for not sending the required notice of intent to foreclose, as that notice was required under not only the New Jersey Fair Foreclosure Act, but the Mortgage contract as well.


Signed:_____    Dated:_____
          Christy Zoltun Donati, Esquire

Blackwood, New Jersey

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ )
                                                                   )
In re:                                                             )        Case No. 12-12020 (MG)
                                                                   )
RESIDENTIAL CAPITAL, LLC, et al.,                                  )        Chapter 11
                                                                   )
                                              Debtors.             )        Jointly Administered
                                                                   )
------------------------------------------------------------------ )


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 13th day September, 2016, I caused a true and correct copy of

the foregoing Reply Brief in Support of its Motion *In Limine* to Exclude the Expert Report and

Testimony of Christy Zulton Donati to be sent to the following parties via Electronic Mail:


Frank Reed
Pro Se Claimant
817 Matlack Drive
Moorestown, NJ  08057
frankreednj@aol.com


*/s/ Barbara K. Hager*
Barbara K. Hager