**Hearing Date and Time:  TBD**
**Response Date:  September 8, 2016**

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone:  (856) 956-6950
*Creditor, Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Case No.  12-12020  (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**OPPOSITION OF CLAIMANT FRANK J. REED III TO
RESCAP BORROWER CLAIMS TRUST'S MOTION *IN LIMINE*
TO EXCLUDE ALL EVIDENCE OF DAMAGES**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Claimant Frank Reed ("Reed") hereby submits this opposition to the motion *in limine*

filed by The ResCap Borrower Claims Trust ("ResCap"), by which ResCap seeks to exclude all

evidence of damages.  See ResCap's Motion [ECF Doc. # 10040].  In support of his opposition,

Reed respectfully states as follows:

## PRELIMINARY STATEMENT

1.      ResCap has filed the instant motion *in limine* seeking to exclude evidence of all of

Reed's damages claims.  [ECF Doc. # 10040].

2.      Citing general damage principles regarding foreseeability and speculativeness,

and attacking Reed's evidence regarding his claimed damages and evidence, ResCap contends

that the evidence which Reed intends to produce during the trial will not ultimately demonstrate

that he is entitled to damages, and therefore, ResCap seeks to exclude all of his damages

evidence on a wholesale basis.  [ECF Doc. # 10040].

3.      Firstly, in making this motion, ResCap is improperly, and quite clearly,

attempting to try the facts of this matter in the context of this motion.  ResCap is attempting to

circumnavigate or avoid the fact-finding purpose of the scheduled evidentiary hearing, and elude

Reed's opportunity to present evidence demonstrating that he has sustained ascertainable losses

under the New Jersey Consumer Fraud Act ("CFA")

4.      The demonstration of damages under the CFA is a concept which ResCap has

thus far seemingly failed to fully grasp or appreciate under clear New Jersey and federal

precedent.  Indeed, in making this motion, ResCap relies virtually exclusively on non-CFA

damage concepts such as foreseeability and speculativeness, so much so that, aside from a two-

sentence general statement regarding the CFA.  See ResCap's Motion, pg.4 at bottom of page

[ECF Doc. # 10040].

5.      Incredibly, ResCap otherwise devotes its entire brief to discussion of non-CFA

damage concepts and citing non-CFA-related case law in factually attacking Reed's anticipated

damages evidence.  In fact, the majority of the case law cited by ResCap does not even involve

or concern New Jersey law!

6.      ResCap's motion ignores the District Court's very clear remand of the CFA

damages standard under New Jersey law.  See [15-cv-02375-GHW, Document 16, pg.15-

16](stating that "The CFA requires a private plaintiff to establish "(1) an unlawful practice, (2)

an 'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the

ascertainable loss".  *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1115 (N.J. 2011)").

7.      This being so, ResCap's motion seeking to exclude Reed's anticipated damages

evidence is wholly improper and without merit, and must be denied.  ResCap is simply seeking

to re-impose, on the eve of trial, the wholesale exclusion of Reed's damages claims, which the

District Court has already explicitly overturned.

8.      Furthermore, contrary to ResCap's factual attacks on Reed's proposed evidence

and its improper attempt to try the evidence in the context of this motion practice as opposed to

an evidentiary hearing, it is respectfully submitted that the damages evidence contemplated for

trial will demonstrate that Reed sustained various ascertainable losses as a result of the unlawful

foreclosure filing, as discussed in further detail below.

9.      Accordingly, it is respectfully submitted that ResCap's motion seeking exclusion

of the testimony of Robert Curley and/or of evidence which concerns Reed's attempts to

refinance the Matlack property must be denied.

**BACKGROUND**

10.     The crux of Reed's claims and contentions is straightforward – when Reed missed

two mortgage payments with respect to a residential property located at 817 Matlack Drive in

Moorestown, New Jersey, debtor GMAC Mortgage, LLC ("GMACM") filed a foreclosure action

against Reed without any prior notice, in direct contravention of the terms of the mortgage

contract and New Jersey statutory obligations.

11.    The only immediate right of action that GMACM had upon the mortgage default was the right to send a notice of an intention to foreclose, with an opportunity to cure.  The mortgage contract specifically enjoined the parties from taking "any judicial action" without first giving notice.  However, GMACM instead filed a foreclosure action without having providing the statutorily and contractually-required notice.

12.    It was also discovered, during the course of this bankruptcy proceeding, that GMACM did not even have standing to file the foreclosure action in that it had not been assigned the mortgage and note when it filed the foreclosure action, yet GMACM stated that it did.  [ECF Doc # 7619, pg.12[1]].

13.    An evidentiary hearing regarding Reed's permitted claims was held by the Court on September 15 and 16, 2014.  [ECF Doc # 7560, 7561].

14.    The Court issued a Memorandum Opinion and Order on October 6, 2014, dismissing numerous of Reed's claims, but also holding in part that GMACM's conduct in filing the foreclosure action was wrongful, and awarding as damages the attorney fees Reed incurred in the underlying state court action.  [ECF Doc # 7619].

15.    This Court specifically held that GMACM breached its contract with Reed by failing to send a Notice of Intent prior to bringing the Foreclosure Action, and that GMACM had violated the New Jersey Consumer Fraud Act when it misrepresented in the Foreclosure Action that it owned the Note, and that as a result it had standing to foreclose.

---

[1] The Court stated in its October 6, 2014 opinion that: "the record before this Court establishes that GMACM did not have standing to bring the Foreclosure Action when it was filed for three reasons: First, GMACM did not obtain an assignment of the Mortgage until after the Foreclosure Action was filed; second, the assignment to GMACM that was executed on behalf of MERS by GMACM's employee, Jeffrey Stephan, falsely stated that MERS transferred the Note to GMACM, an impossibility since MERS did not own or have authority to transfer the Note; and third, GMACM did not hold the Note or demonstrate that it was given authority to bring the Foreclosure Action on behalf of the noteholder.  These grounds would have been fatal to GMACM's effort to foreclose on the Property when it commenced the Foreclosure Action, apart from GMACM's failure to provide the Reeds with the NOI under New Jersey's FFA."

16.    Reed filed a Notice of Appeal on October 20, 2014, asserting numerous grounds

for appeal, including the position that the Court erred when, prior to the evidentiary hearing, it

*sua sponte* dismissed a large portion of Reed's damage claims and ordered that Reed could only

seek damages regarding, and present evidence with respect to, the foreclosure property at 817

Matlack. [ECF Doc # 7674].

17.    On appeal, the District Court held that the Court erred when it summarily

excluded the indirect damage claims, and remanded the matter "for further proceedings to

determine whether the Reeds suffered any cognizable damages caused by the Foreclosure

Action, but not directly related to the Property".  [15-cv-02375-GHW, Document 16, pg.18-19][2]

18.    The only issue remaining to be tried during the scheduled evidentiary hearing is

the extent of Reed's damages – under breach of contract and the CFA – related to properties,

ventures costs and fees in addition to the previously tried improperly-foreclosed-upon Matlack

property.

**Deposition of Robert Curley**

19.    Mr. Curley was deposed by ResCap on May 31, 2015.  See Curley deposition

transcript.

20.    During the deposition, Mr. Curley testified that he oversees all commercial and

small business lending throughout southern New Jersey, and has done so since March 2008.

Curley Dep. at 15:12-19.  He became a commercial and small business lender in 1993.  Curley

Dep. at 17:15-19.

---

[2]  The District Court stated in its December 23, 2015 decision that: "New Jersey law requires
that the Reeds' damages be "ascertainable" or "foreseeable." But the law does not support the
exclusion of indirect damages, such as lost profits, so long as they meet those requirements.  The
court's conclusory culling of a category of damages prior to the evidentiary hearing created the
possibility that an ascertainable or foreseeable loss directly caused by the Foreclosure Action
was overlooked".

21.     Mr. Curley noted that the Reeds "paid us back millions of dollars [on various

loans] over a fifteen-year period", and that the bank believed that he would continue to do so.

Curley Dep. at 87:18-23.

22.     Mr. Curley testified that the bank was negotiating the issuance of a line-of-credit

to Reed, using Matlack and other of Reed's investment properties as cross-collateral, because

Reed had cash flow needs for his property buying/renovating/selling business, and he was in the

process of selling one or two of his investment/rental properties.  Curley Dep. at 82:5-20, 86:11-

21.  Indeed, Reed was contingently approved.  Curley Dep. at 107:13-21.

23.     Mr. Curley testified that the bank decided not to extend the line of credit because

it learned of the Matlack lis pendens and GMACM foreclosure, thus effectively ending the

business relationship.  Curley Dep. at 89:2-15.

## ARGUMENT

24.     Despite the fact that the remand concerns factual issues concerning Reed's

entitlement to damages for GMACM's violation of the New Jersey Consumer Fraud Act,

ResCap almost completely ignores CFA case law and New Jersey jurisprudence in its motion.

25.     Critically, pursuant to the New Jersey Consumer Fraud Act and New Jersey law,

under which Reed seeks damages and under which ResCap has already be found liable, a

claimant need only show a causal connection between the defendant's unlawful conduct and

plaintiff's ascertainable loss.  See *Payan v. Greenpoint Mortg. Funding*, 681 F. Supp. 2d 564

(D.N.J. 2010).  Also, the unlawful conduct need not be shown to be the sole cause of plaintiff's

loss, but may be shown merely to have contributed to the loss.  See *Arcand v. Brother Int'l*

*Corp.*, 673 F.Supp. 2d 282 ( D.N.J. 2009).  As stated by the New Jersey Supreme Court in

*Thiedemann v. Mercedes-Benz USA, LLC,* 183 N.J. 234, 872 A.2d 783 (2005):

> The certainty implicit in the concept of an "ascertainable" loss is
> that it is quantifiable or measurable.  Moreover, it need not yet have
> been experienced as an out-of-pocket loss to the plaintiff. *See, e.g.,*
> *Cox, supra,* 138 *N.J.* at 22–23, 647 *A.*2d 454 (noting that to
> demonstrate "loss" victim need not have actually spent money to
> perform repairs to correct defendant's errors in performing kitchen

renovation).    An "estimate of damages, calculated within a reasonable degree of certainty" will suffice to demonstrate an ascertainable loss.  *Id.* at 22, 647 *A.*2d 454.

[*Id.*, 183 N.J. at 248-49, 872 A.2d at 793].

26.    As further explained by the court in *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 332 N.J. Super. 31, 752 A.2d 807 (App. Div. 2000), in discussing the showing required to establish damages under the New Jersey CFA:

> Indeed, if liability is found upon a violation of our Consumer Fraud Act, ***we reiterate that the Act requires only a causal nexus between the "method, act, or practice declared unlawful" and the consumer's "ascertainable loss."*** *N.J.S.A.* 56:8-19.  The Supreme Court has taken pains to point out that this element is a significant distinction from the requirement of reliance in a common law fraud claim.  A defendant who violates the Act because of an unlawful "method, act, or practice" that results from an omission of a material fact with the "intent that others rely upon such concealment, suppression or omission," *N.J.S.A.* 56:8-2, is "liable for [such] misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby.' "  The distinction between proof of reliance and proof of causation can be best explained in the context of this case.  If plaintiffs succeed in proving that Mass Mutual withheld material information with the intent that consumers would rely on it in purchasing Mass Mutual's policy, the purchase of the policy by a person who was shown the literature would be sufficient to establish *prima facie* proof of causation.

[*Id.*, 332 N.J. Super. at 48-49, 752 A.2d at 817 (internal citation omitted)].

27.    Furthermore, New Jersey "permit[s] considerable speculation by the trier of fact as to damages" and the "fact that a plaintiff may not be able to fix its damages with precision will not preclude recovery of damages".  *V.A.L. Floors, Inc. v. Westminster Communities, Inc.*, 355 N.J. Super. 416, 424-25, 810 A.2d 625, 630 (App. Div. 2002).  See *Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 463 (3d Cir. 1999)("Although New Jersey law requires a "reasonably accurate and fair basis for the computation of alleged lost profits," the fact that a plaintiff may not be able to fix its damages with precision will not preclude recovery of damages")(internal citation omitted).  Past experience of an ongoing, successful business

provides a reasonable basis for the computation of lost profits "with a satisfactory degree of

definiteness." *Weiss v. Revenue Bldg. & Loan Ass'n*, 116 N.J.L. 208, 212, 182 A. 891 (E & A

1935).

28.     ResCap ignores many aspects of Reed's damages claim in its motion, including

the fact that, as a contractor involved in buying, selling and renovating properties, Reed himself

may provide evidence regarding the damages he suffered as a result of the unlawful foreclosure.

See *VAL Floors*, *supra*.

29.     Also, as the owner of the various properties at issue, Reed may provide evidence

and testimony as to their value, and the damages he suffered as a result of the unlawful

foreclosure.  See F.R.E. § 701 (whereby that lay witnesses can provide opinion evidence to

establish the value of property assets or losses that the witness owns).

30.     Thus, Reed has laid the foundation that he can testify to the profit he would have

had on the property because he has been in the buying and selling (ie, "flipping") business, and

can, of course, provide his own testimonial evidence regarding lost profit as a contractor.

31.     ResCap's motion completely also fails to address the extensive testimony that Mr.

Curley gave regarding these now-relevant (as a result of remand) 'other consequences' issues of

the unlawful foreclosure filing during his deposition.  Mr. Curley also stated that "Mr. Reed is in

the business of flipping real estate properties and has been for the past twenty years.  Therefore,

it is deemed reasonable to assume capital gains are a recurring source of income."  Curley Dep.,

121:18-21.

32.     For instance, Mr. Curley testified during his May 31, 2016 deposition that the

bank was negotiating the issuance of a line-of-credit to Reed, using Matlack as collateral,

because Reed's cash flow for his property buying/renovating/selling business was temporarily

less liquid and he was in the process of selling one or two of his investment/rental properties.

Mr. Curley testified that the bank decided not to extend the line of credit because it learned of the

GMACM foreclosure.

33.    TD Bank certainly did not think it would be speculative, noting that Reed had

paid back "millions of dollars" in business loans.  The properties in question were commodities

that Reed was using in his business of buying and selling.

34.    The interruption of this banking relationship the domino effect that it had on

Reed's property business and interests – including the loss of the Virginia rental properties – is

supported by the evidence which ResCap is so desperately attempting to try on the eve of trial.

35.    Thus, contrary to ResCap's factual attacks on Reed's proposed evidence and its

improper attempt to try the evidence in the context of this motion practice as opposed to in the

evidentiary hearing, it is respectfully submitted that the damages evidence contemplated for trial

will demonstrate that Reed sustained various ascertainable losses as a result of the unlawful

foreclosure filing.

36.    I do note that, with respect to the 133 Brookschase Lane property, upon a

complete review of the property history, I recall that it was sold due to a requirement that TD

Bank had presented to me.  They indicated to me that they wanted one of my properties to be

sold to close the approved line of credit.  I sold 133 Brookschase to accommodate that request.

Therefore I withdraw my contention that the unlawful foreclosure was a cause of the loss of that

property and profit.

**CONCLUSION**

Based upon the foregoing, claimant Frank Reed III respectfully request that this Court

deny the ResCap Borrower Claims Trust's Motion *In Limine* to exclude the entirety of Reed's

damages evidence.

Dated:  Moorestown, New Jersey
            September 8, 2016

Respectfully Submitted,


By: _____
      Frank Reed, *pro se*