Hearing Date and Time:  TBD
Response Date:  September 8, 2016

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone:  (856) 956-6950
*Creditor, Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**OPPOSITION OF CLAIMANT FRANK J. REED III TO RESCAP
BORROWER CLAIMS TRUST'S MOTION *IN LIMINE* TO EXCLUDE
THE EXPERT REPORT AND TESTIMONY OF STEVIE WATSON**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Claimant Frank Reed ("Reed") hereby submits this opposition to the motion *in limine* filed by The ResCap Borrower Claims Trust ("ResCap"), by which ResCap seeks the exclusion of the expert report and testimony of Stevie Watson. In support of his opposition, Reed respectfully states as follows:

## PRELIMINARY STATEMENT

1. Stevie Watson is a real estate agent with approximately 27 years of experience in the real estate business and market in the Richmond, Virginia area, and is particularly knowledgeable with respect to Reed's involvement with a property which Reed formerly owned, located at 9717 Old Dell Trace, Richmond, Virginia (the "Dell Trace Property").

2. The ResCap Trust has filed the instant motion *in limine* seeking to exclude the expert testimony of Ms. Watson, asserting three arguments[1] in support of its motion to exclude: (1) the opinion of Ms. Watson is not expert testimony, is not relevant, and will not assist the trier of fact; (2) Ms. Watson's report does not meet the standards for admissibility of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and (3) Ms. Watson is not qualified to weigh in as an expert "on the issues at hand" because she is not licensed appraiser, and "possesses no expertise" regarding property valuation. See generally, ResCap's Motion *In Limine* [ECF Doc. # 10037].

3. Critically, in seeking to exclude Ms. Watson as an expert, ResCap's attack focuses predominantly on a June 20, 2012 letter prepared by Ms. Watson, and a damages calculation/opinion contained in the letter, mischaracterizing the letter as an expert report which does not meet the requirements of Rule of Evidence 702 and *Daubert*. However, as explained in

---

[1] It must be noted with objection that in the third paragraph of ResCap's motion submission, ResCap, utilizing supposed quoted language, refers to a prior holding or holdings of this Court as being supportive of its current motion, without any specific reference to or citation to the purported holding(s). Of course, I cannot reasonably response to or attempt to distinguish such a purported prior holding given ResCap's lax omission of a proper reference or citation. ResCap does not cure the omission in the remainder of the motion brief.

more detail herein, the June 20, 2012 letter was not actually prepared for this action as an expert report. Rather, the letter was originally prepared and submitted in connection with Reed's claim submission package to the Federal Reserve Board in the context of the Board's Independent Foreclosure Review process, and was then provided in this action as an attachment to a Declaration by Ms. Watson prior to her deposition. [ECF Doc. # 10037-1]. Thus, ResCap's central ground for seeking to exclude Ms. Watson's testimony – the purported deficiencies of the June 20, 2012 letter 'expert report' per F.R.E. 702 and *Daubert* – is misplaced.

4.  Assuming *arguendo* that the truncated damage calculation opinion contained in the letter is deemed to be a deficient expert opinion under F.R.E. 702 and *Daubert*, Ms. Watson's opinion regarding the saleability of the of the Dell Trace Property (ie, likelihood of being sold in a particular market at various times and under various circumstances), based on her extensive knowledge of the property (she was involved in the sale of the property to Reed, and considered as an agent for Reed's re-sale of the property), and based on her extensive experience with and knowledge of the Richmond, Virginia area real estate market (where she has been a realtor for 27 years[2]) should not be excluded.

5.  Furthermore, ResCap completely ignores the fact that Ms .Watson is not purely an expert witness, but is also a fact witness in this matter. Ms. Watson was involved in the sale of the Dell Trace Property to Reed, and consulted as a possible agent for Reed's re-sale of the property. Watson Dep. at 15:9-19, 19:9-14. Ms. Watson was also personally involved in multiple other real estate transactions involving Reed in the course of his business of buying and selling properties. Watson Dep. at 13:13-14:17.

6.  Moreover, in focusing on the damage calculation contained in the June 20, 2012 letter, ResCap ignores the fact that, pursuant to the New Jersey Consumer Fraud Act and New Jersey law, under which Reed seeks damages and under which ResCap has already been found liable, a claimant need only show a causal connection between the defendant's unlawful conduct

---

[2] See transcript of May 19, 2016 deposition of Ms. Watson, at 7:21-8:2. Although referenced and cited in its motion, the transcript was not included by ResCap with its motion submission.

and plaintiff's ascertainable loss (see *Payan v. Greenpoint Mortg. Funding*, 681 F. Supp. 2d 564 (D.N.J. 2010)), and the unlawful conduct need not be shown to be the sole cause of plaintiff's loss, but may be shown merely to have contributed to the loss.  See *Arcand v. Brother Int'l Corp.*, 673 F.Supp. 2d 282 ( D.N.J. 2009).  Furthermore, New Jersey "permit[s] considerable speculation by the trier of fact as to damages" and the "fact that a plaintiff may not be able to fix its damages with precision will not preclude recovery of damages".  *V.A.L. Floors, Inc. v. Westminster Communities, Inc.*, 355 N.J. Super. 416, 424-25, 810 A.2d 625, 630 (App. Div. 2002).

7. Ms. Watson's professional and personal knowledge, as highlighted herein, are relevant to the trial issues in this matter and will be helpful to the Court.  It is thus respectfully submitted that Ms. Watson should be allowed to provide expert opinion testimony regarding the saleability of the Dell Trace Property and the Richmond, Virginia real estate market.  Ms. Watson should also, of course, be allowed to provide fact testimony regarding her specific knowledge of the Dell Trace property, its sales history, and Reed's business of buying and selling properties.

8. The Court, as the trier of fact in the coming bench trial, is more than capable of: discerning relevant expert evidence versus personal knowledge testimony; weighing its probative value versus its prejudicial effect; and excluding improper inferences, if any, from its decisional analysis.

9. Accordingly, contrary to ResCap's first argument, Ms. Watson's expert opinion testimony will assist the Court in assessing the facts and providing a basis for Reed's proffer of the ascertainable damages relevant to Reed's already-allowed consumer fraud act claim.  She is a highly-experienced real estate agent who is intimately familiar with the real estate market local to the subject property, and has first-hand knowledge of the sales history of the property.

10. Second, Ms. Watson's opinion will meet the standards for admissibility of expert testimony under *Daubert*, Federal Rule of Evidence 702, and relevant case law.  As noted, in

arguing that Ms. Watson's "report" does not meet the admissibility standards of *Daubert* and Rule 702, and concluding that her "report" and testimony should therefore be excluded, ResCap conveniently ignores the fact that, while Ms. Watson does possess relevant opinion and fact information in this matter, the June 20, 2012 letter about which it complains and on which it primarily focuses was not provided as an expert report *per se*, but was actually prepared in June 2012 in connection with Reed's submission of a claim to the Federal Reserve Board's Independent Foreclosure Review. The June 20, 2012 letter was part of Reed's FRB claim package – it was not prepared as an expert report under the auspices of state or federal rules of evidence, a fact which ResCap overlooks in latching on to and extensively attacking the letter as being a deficient 'expert report' under Rule 702 and *Daubert*.

11. ResCap also overlooks the fact that, in contested matters, there is no duty to provide or exchange written expert reports, unless otherwise directed by the court. See Fed. R. Bankr. P. 9014(c); Fed. R. Civ. P. 26(a)(2)(B). Here, the Court did not direct that the parties exchange written expert reports. [ECF Doc. # 9962].

12. The June 20, 2012 letter was clearly not prepared or submitted as a Rule 26(a)(2)(B) expert report, contrary to ResCap's convenient assumption otherwise. As discussed below, Ms. Watson's anticipated opinion and testimony will satisfy the standards for admissibility of expert testimony under Rule of Evidence 702 and relevant case law.

13. Third, Ms. Watson is indeed qualified to weigh in as an expert on the issues with respect to which she will opine – namely, issues of property saleability, value and marketability. Ms. Watson is a highly experienced real estate agent in the Richmond, Virginia area with 27 years of experience. In addition, she has attained a GRI designation (Graduate, Realtor Institute).[3] Watson Dep. at 9:9-15. Moreover, Ms. Watson is vastly familiar with the local real estate market and with the history of the specific property in question. Ms. Watson is clearly

---

[3] The Realtor Institute is a national program of real estate instruction administered by State Realtor Associations whose course of study meets the accreditation standards established by the National Association of Realtors.

qualified to supply expert opinion to the Court with respect to issues of property saleability, value and marketability.

14. Accordingly, it is respectfully submitted that exclusion of the testimony of Stevie Watson as an expert is not warranted and ResCap's motion should be denied.

## BACKGROUND

15. The crux of Reed's claims and contentions is straightforward – when Reed missed two mortgage payments with respect to a residential property located at 817 Matlack Drive in Moorestown, New Jersey, debtor GMAC Mortgage, LLC ("GMACM") filed a foreclosure action against Reed without any prior notice, in direct contravention of the terms of the mortgage contract and New Jersey statutory obligations.

16. The only immediate right of action that GMACM had upon the mortgage default was the right to send a notice of an intention to foreclose, with an opportunity to cure. The mortgage contract specifically enjoined the parties from taking "any judicial action" without first giving notice. However, GMACM instead filed a foreclosure action without having providing the statutorily and contractually-required notice.

17. It was also discovered, during the course of this bankruptcy proceeding, that GMACM did not even have standing to file the foreclosure action in that it had not been assigned the mortgage and note when it filed the foreclosure action, yet GMACM stated that it did. [ECF Doc # 7619, pg.12[4]].

18. An evidentiary hearing regarding Reed's permitted claims was held by the Court on September 15 and 16, 2014. [ECF Doc # 7560, 7561].

---

[4] The Court stated in its October 6, 2014 opinion that: "the record before this Court establishes that GMACM did not have standing to bring the Foreclosure Action when it was filed for three reasons: First, GMACM did not obtain an assignment of the Mortgage until after the Foreclosure Action was filed; second, the assignment to GMACM that was executed on behalf of MERS by GMACM's employee, Jeffrey Stephan, falsely stated that MERS transferred the Note to GMACM, an impossibility since MERS did not own or have authority to transfer the Note; and third, GMACM did not hold the Note or demonstrate that it was given authority to bring the Foreclosure Action on behalf of the noteholder. These grounds would have been fatal to GMACM's effort to foreclose on the Property when it commenced the Foreclosure Action, apart from GMACM's failure to provide the Reeds with the NOI under New Jersey's FFA."

19. The Court issued a Memorandum Opinion and Order on October 6, 2014, dismissing numerous of Reed's claims, but also holding in part that GMACM's conduct in filing the foreclosure action was wrongful, and awarding as damages the attorney fees Reed incurred in the underlying state court action. [ECF Doc # 7619].

20. This Court specifically held that GMACM breached its contract with Reed by failing to send a Notice of Intent prior to bringing the Foreclosure Action, and that GMACM had violated the New Jersey Consumer Fraud Act when it misrepresented in the Foreclosure Action that it owned the Note, and that as a result it had standing to foreclose.

21. Reed filed a Notice of Appeal on October 20, 2014, asserting numerous grounds for appeal, including the position that the Court erred when, prior to the evidentiary hearing, it *sua sponte* dismissed a large portion of Reed's damage claims and ordered that Reed could only seek damages regarding, and present evidence with respect to, the foreclosure property at 817 Matlack. [ECF Doc # 7674].

22. On appeal, the District Court held that the Court erred when it summarily excluded the indirect damage claims, and remanded the matter "for further proceedings to determine whether the Reeds suffered any cognizable damages caused by the Foreclosure Action, but not directly related to the Property". [15-cv-02375-GHW, Document 16, pg.18-19][5]

---

[5] The District Court stated in its December 23, 2015 decision that: "New Jersey law requires that the Reeds' damages be "ascertainable" or "foreseeable." But the law does not support the exclusion of indirect damages, such as lost profits, so long as they meet those requirements. The court's conclusory culling of a category of damages prior to the evidentiary hearing created the possibility that an ascertainable or foreseeable loss directly caused by the Foreclosure Action was overlooked".

# ARGUMENT

23. It is well-settled that the Court has wide discretion in determining the qualification and competency of a witness to express an opinion as an expert. See generally, *U.S. v. Bermudez*, 526 F.2d 89 (2d Cir. 1975), certiorari denied 96 S.Ct. 2166, 425 U.S. 970; *U.S. v. Green*, 523 F.2d 229 (2d Cir. 1975), certiorari denied 96 S.Ct. 858, 423 U.S. 1074.

24. As a threshold matter, in the impending bench trial, the Court's role as gatekeeper with respect to expert evidence is much less critical than in a jury trial, since a judge is "presumed to be able to exclude improper inferences from his or her own decisional analysis." *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 473-74 (N.D.N.Y. 2004). This Court is, of course, perfectly capable of discerning relevant evidence, weighing its probative value versus its prejudicial effect, and rejecting improper inferences or intrusions upon its role. See *Henry v. Champlain Enters. Inc.*, 288 F. Supp. 2d 202, 221 (N.D.N.Y. 2003)(a trial court should be able to separate the "wheat from the chaff"); see also *Rondout*, 321 F. Supp. 2d at 474 ("In non jury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence.")(quoting 11 Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2885 (2d ed. 1995)). See also *Arista Records Inc. v. Launch Media, Inc.*, 2006 WL 2591086 (S.D.N.Y. Sept. 8, 2006)(finding motions to exclude expert testimony and reports "premature […], as issues pertaining to the expert witnesses are more appropriately addressed and resolved during the course of the trial").

### A. Ms. Watson's Expert Testimony Will Assist The Court

25. ResCap contends that the expert testimony of Stevie Watson should be excluded because her opinion is not expert testimony and will not assist the trier of fact – in this instance, the Court.

26. In taking this position, ResCap focuses almost exclusively on the contents of the one-page letter, dated June 20, 2012, which Ms. Watson prepared for Reed's submission of claim

materials to the Federal Reserve Board for its Independent Foreclosure Review. More specifically, ResCap focuses almost entirely, both in its motion and during Ms. Watson's deposition, on the letter's brief damage calculation opinion. As noted, ResCap's focus on and attack on Ms. Watson's June 20, 2012 letter is misplaced since the letter was not an expert report prepared or exchanged under the F.R.E. or F.R.C.P.

27.     Assuming *arguendo* that the damage calculation opinion contained in the letter qualifies as a deficient expert opinion under F.R.E. 702 and *Daubert* and is excluded, Ms. Watson's opinion regarding the saleability of the of the Dell Trace Property, based on her extensive knowledge of the property (she was involved in the sale of the property to Reed, and was considered as a possible agent for Reed's re-sale of the property), and based on her extensive experience with and knowledge of the Richmond, Virginia area real estate market (where she has been a realtor for 27 years) should not be excluded. Contrary to ResCap's statement otherwise[6], such information does not constitute "commonly known facts".

28.     Furthermore, ResCap completely ignores the fact that Ms. Watson is not just an expert witness, but is also a fact witness in this matter. Ms. Watson was involved in the sale of the Dell Trace Property to Reed, and was possibly going to be the agent when Reed re-sold the property. Watson Dep. at 15:9-19, 19:9-14. She personally visited the property numerous times while it was undergoing renovations and improvements by Reed. Watson Dep. at 16:24-17:13. Ms. Watson was also personally involved in multiple other real estate transactions involving Reed in the course of his buying and selling properties. Watson Dep. at 13:13-14:17.

29.     Moreover, in focusing on the damage calculation contained in the June 20, 2012 letter, ResCap ignores the fact that, pursuant to the New Jersey Consumer Fraud Act and New Jersey law, under which Reed seeks damages and under which ResCap has already be found liable, a claimant need only show a causal connection between the defendant's unlawful conduct

---

[6] ResCap states that Ms. Watson "merely acts as a conduit for Mr. Reed and other witness testimony and documents" and Court does not need expert testimony "to understand commonly known facts". See ResCap Motion at pg.5 [ECF Doc. # 10037].

and plaintiff's ascertainable loss. See *Payan v. Greenpoint Mortg. Funding*, 681 F. Supp. 2d 564 (D.N.J. 2010). Also, the unlawful conduct need not be shown to be the sole cause of plaintiff's loss, but may be shown merely to have contributed to the loss. See *Arcand v. Brother Int'l Corp.*, 673 F.Supp. 2d 282 ( D.N.J. 2009). As stated by the New Jersey Supreme Court in *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 872 A.2d 783 (2005):

> The certainty implicit in the concept of an "ascertainable" loss is that it is quantifiable or measurable. Moreover, it need not yet have been experienced as an out-of-pocket loss to the plaintiff. *See, e.g., Cox, supra,* 138 *N.J.* at 22–23, 647 *A.*2d 454 (noting that to demonstrate "loss" victim need not have actually spent money to perform repairs to correct defendant's errors in performing kitchen renovation). An "estimate of damages, calculated within a reasonable degree of certainty" will suffice to demonstrate an ascertainable loss. *Id.* at 22, 647 *A.*2d 454.
>
> [*Id.*, 183 N.J. at 248-49, 872 A.2d at 793].

30. Furthermore, New Jersey "permit[s] considerable speculation by the trier of fact as to damages" and the "fact that a plaintiff may not be able to fix its damages with precision will not preclude recovery of damages". *V.A.L. Floors, Inc. v. Westminster Communities, Inc.*, 355 N.J. Super. 416, 424-25, 810 A.2d 625, 630 (App. Div. 2002). See *Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 463 (3d Cir. 1999)("Although New Jersey law requires a "reasonably accurate and fair basis for the computation of alleged lost profits," the fact that a plaintiff may not be able to fix its damages with precision will not preclude recovery of damages")(internal citation omitted).

31. It is respectfully submitted that Ms. Watson's professional and personal knowledge, as highlighted herein, are relevant to the trial issues in this matter and will be helpful to the Court. Accordingly, Ms. Watson should be allowed to provide expert opinion testimony regarding the saleability of the Dell Trace Property and the Richmond, Virginia real estate market. Ms. Watson should also, of course, be allowed to provide fact testimony regarding her specific knowledge of the Dell Trace property, its sales history, and Reed's business of buying and selling properties.

32. Rule of Evidence 702, titled "Testimony by Expert Witness", states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

33. "Federal Rule of Evidence 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter." *United States v. Molina*, 172 F.3d 1048, 1056 (8th Cir. 1999).

34. Ms. Watson's expert and fact testimony will assist the Court in assessing the facts, this history, renovations and saleability of the Dell Trace Property, and the Richmond, Virginia area real estate market. She is a highly-experienced real estate agent who is intimately familiar with the real estate market local to the subject property, and has first-hand knowledge of the history of the property.

35. Notably, Rule of Evidence 703, titled "Bases of an Expert's Opinion Testimony", states:

> **An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed**. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.
>
> [Emphasis added].

36. The Advisory Committee's notes to Rule 703 emphasize that the facts and data upon which expert opinion is based may be derived from any one of three sources. The first is first-hand observation, and the second method is the use of the familiar hypothetical question or having the expert attend the trial and hear the testimony establishing the facts. The third source, according to the Committee, is: "the presentation of data to the expert outside of court and by his own perception. In this respect, the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions, and to bring the judicial practice in line with the practice of the experts themselves when not in court".

37. Trial courts have considerable discretion to admit expert evidence if it will assist the trier of fact in understanding the evidence and will not usurp the function of the jury and the trial judge. See *Gould Paper Corp. v. Boise Cascade Corp.*, No. 95 Civ. 9771, 2000 WL 1099941 (S.D.N.Y. July 10, 2000)("The Committee Note to the recent amendment of Fed.R.Evid. 702 states that [a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule")(internal quotation marks omitted).

38. In light of Ms. Watson's extensive experience as a real estate agent specializing in residential property generally, her extensive and lengthy experience with the Richmond, Virginia real estate market specifically, and her knowledge and familiarity with the particular residential property at issue, is it respectfully submitted that her testimony will assist the trier of fact in understanding the purported facts, evidence and claims relevant to this matter.

39. This being so, her testimony should not be excluded, and ResCap's motion should be denied. See *First Union Nat. Bank v. Benham*, 423 F.3d 855 (8th Cir. 2005)(holding that disallowing an attorney's expert testimony on the issue of legal malpractice, on grounds that the expert's conclusions were based on his own experience and not the experience of other lawyers, was abuse of discretion, given that the rule governing admissibility of expert testimony allows a witness to qualify as expert based on his own knowledge, skill, experience, training, or education, and that testimony of the attorney, who had been licensed in state for more than 36

years, had practiced extensively in area of mergers and acquisitions, and had based his testimony upon parties' depositions, witnesses, and the facts and circumstances surrounding underlying merger, was not so fundamentally unsupported that it could offer no assistance to the trier of fact).

40. In *Spitzer v. Stichman*, 278 F.2d 402 (2d Cir. 1960), a proceeding for reorganization of a corporate debtor which was operating a commuter railroad, the problem of valuation of the railroad was complicated by the possibility that some part or all of the debtor's commuter railroad plant might be purchased or condemned by a public authority at some indeterminate time in future. The court of appeals held that there was no abuse of discretion by the trial court in permitting an attorney who had handled a great many real estate operations and reorganizations to testify as to his opinion as to maximum price likely to be realized in sale of railroad plant to the public authority. The court specifically reasoned:

> In testing the competency of the witness to give opinion testimony with respect to the highest price which might be obtained from a sale of the railroad, it would have to appear to the trial court: (1) that he had knowledge of the property to be sold; (2) that he had knowledge of the various attendant circumstances and conditions which would affect the disposal of the property and determine the price; and (3) that he had the ability, by reason of his training and experience, to make a judgment which would be helpful to the court in determining the issue. […].
>
> It appears that Mr. Stichman had knowledge of the historical, political, economic and engineering factors which would affect and determine the price. His career had peculiarly fitted him for the judgment required. There cannot be more than a few men whose qualifications to supply this important evidence to the court even equal Mr. Stichman's.
>
> [*Id*. at 409].

41. Similarly here, Ms. Watson has substantial knowledge of the property at issue, she has knowledge of the various attendant circumstances and conditions which would affect the saleability of the property and determine the price, and she has the ability, by reason of her training and experience, to provide an opinion or observation which would be helpful to the Court in determining facts and issues relevant to Reed's claims.

### B. Ms. Watson's Opinion Will Meet The Standards For Admissibility Of Expert Testimony Under Federal Rule Of Evidence 702

42. ResCap contends that Ms. Watson's "report" does not meet the standards for admissibility of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Rule of Evidence 702.[7]

43. In arguing that Ms. Watson's "report" does not meet the admissibility standards of *Daubert* and Rule 702 and should therefore be excluded, ResCap conveniently ignores the fact that, while Ms. Watson does possess both expert opinion and fact evidence with respect to this matter, the letter about which ResCap complains was prepared in June 2012 in the context of the Reed's submission of a claim to the Federal Reserve Board.

44. By singling out and attacking the June 20, 2012 letter summary as being a deficient expert report under Rule 702 and *Daubert*, ResCap erroneously overlooks the fact that in contested matters there is no duty to provide or exchange written expert reports. See Fed. R. Bankr. P. 9014(c); Fed. R. Civ. P. 26(a)(2)(B). The June 20, 2012 letter was not prepared or submitted as a Rule 26(a)(2)(B) expert report.

45. Ms. Watson's anticipated opinion and testimony will satisfy the standards for admissibility of expert testimony under Rule of Evidence 702 and relevant case law.

46. Assuming *arguendo* that the contemplated testimony of Ms. Watson does not strictly satisfy the requirements of Rule 702, her testimony will still aid the Court as the trier of fact and should thus be allowed in light of her many years of experience in the buying and selling of residential property, and her intimate knowledge of the local market as well as the history of

---

[7] In 2000, Rule 702 of the Federal Rules of Evidence was amended to codify the factors outlined in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) regarding the admissibility of expert testimony. In *Daubert*, the Supreme Court announced that trial courts must perform a gate-keeping function in determining the admissibility of expert testimony. The <u>Daubert</u> factors, which were not intended to be exhaustive nor to be applicable in every case, include: (1) whether the technique or theory utilized by the expert can be tested and had been tested; (2) whether the technique or theory had been the subject of peer review and publication; (3) the potential rate of error and "the existence and maintenance of standards controlling the techniques operation;" and (4) the general acceptance of the expert's theory or technique in the relevant scientific community.

the Dell Trace Property in particular. See, e.g., *In re Best Prods. Co.*, 168 B.R. 35 (Bankr. S.D.N.Y. 1994)(court used examiner's report as a reference and relied on its analysis of potential claims and related issues in assessing whether a settlement could be approved); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (Bankr. S.D.N.Y. 1993)(court relied on the range of the value of the claims identified by examiner to determine whether settlement between debtors and creditors could be considered reasonable); *In re FiberMark, Inc.*, 339 B.R. 321, 325-26 (Bankr. D. Vt. 2006)(noting that even when inadmissible, an expert report allows the parties to make an informed determination of their substantive rights and provides context for debate, and a court can rely on the report for help in understanding facts and legal conclusions when formulating its own conclusions).

47. The Court can determine during the course of Ms. Watson's testimony whether the methodology she uses in discussing the saleability, market value and marketability is sufficiently reliable. See *Marini v. Adamo*, 2014 WL 465036 (E.D.N.Y. 2014)(holding that an expert's methodology for determining the valuation of error coins was sufficiently reliable to warrant admission of the expert's testimony in rare coin buyers' fraud action against sellers, despite the subjective component to valuing coins, inconsistent markup, and the difficulty of pricing coins with limited supply, where the expert primarily determined a coin's value by looking at auction records for similar coins and then using his expertise to determine if the coin ought to be valued higher or lower depending on market's strength at time of sale versus time of appraisal, and an added markup to determine retail value); *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536 (2d Cir. 1989)(holding that an expert was properly allowed to testify as to the value of a corporate party to merger agreement; the record indicated that the witness had considerable experience in the field of mergers and acquisitions and was qualified to evaluate the corporation's assets, and to the extent that he may have departed from general valuation practices or adopted procedures subject to criticism, there was ample opportunity for such facts to be elicited and argued to the jury); *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744-45 (3d

Cir. 1994)("A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate. He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence").

### C. Ms. Watson Is Qualified To Weigh In As An Expert On The Issues With Respect To Which She Will Opine

48. Finally, ResCap contends that Ms. Watson is not qualified to weigh in as an expert "on the issues at hand". Specifically, ResCap finds fault with the fact that Ms. Watson is not licensed as real estate appraiser and has never provided testimony as an appraiser. See ResCap Motion, pg.10 [ECF Doc. # 10037].

49. What is missing from ResCap's protestations is any legal authority or citation whatsoever, or even a reasoned explanation, supporting its bare conclusion that only a licensed appraiser may provide expert testimony that in any way touches on the value of a residential home or on damages related thereto.

50. On the contrary, Ms. Watson's 27-years of experience as a real estate agent intimately involved in the buying and selling of residential homes in the geographic area relevant to this matter more than qualifies her to weigh in on the valuation of the Dell Trace Property. Furthermore, ResCap ignores that fact that Ms. Watson's opinions and conclusions are and will be largely based on actual appraisals (by licensed appraisers) that were performed on the subject property, and not simply or purely based her own bare or arbitrary estimation of the property value or change in value.

51. Most importantly, the primary crux of Ms. Watson's expert-related testimony will concern the Dell Trace Property's saleability and marketability in the context of Reed's business of buying and selling homes. Evidence demonstrating the ascertainable loss suffered by Reed as a result of GMACM's unlawful conduct under the NJ Consumer Fraud Act will come from other sources and witnesses.

52. Simply stated, the fact that Ms. Watson is a real estate agent and not a licensed appraiser does not preclude her from offering expert opinion with respect to the saleability, marketability or even market value of a residential home, or from offering expert testimony on issues of market value, marketability and damages assessment. See *Plywood Property Associates v. National Flood Ins. Program*, 928 F.Supp. 500, 508 (D.N.J. 1996)("Prior qualification as an expert witness, specialized degrees, licenses or publications in their field, while all commendable, are not required to be possessed by every witness acting as an expert"); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995)(holding that consulting engineer's extensive practical experience established his qualifications to testify as expert in products liability action against manufacturer of hot-melt glue on issue of whether plaintiff was within "breathing zone" of glue fumes in workplace; manufacturer's objection to engineer's alleged lack of formal education with regard to fume dispersal patterns or experience in interpreting air quality studies went to weight rather than admissibility of engineer's testimony); *N.V. Maatschappij Voor Industriele Waarden v. A. O. Smith Corp.*, 590 F.2d 415 (2d Cir. 1978)(noting that, in an action to recover for breach of a license agreement, in which the only issue was whether technical information conveyed by the patentee infringed on other patents, trial court erred in refusing to qualify as an expert a patent agent with considerable experience in the relevant art merely because of the expert's lack of formal training in patent law).

53. Indeed, Federal courts have allowed persons to testify as expert witnesses even though they did not possess certificates of training or education, memberships in professional organizations, and may not have been the most outstanding practitioners in their fields. See *United States v. Barker*, 553 F.2d 1013, 1024 (6th Cir. 1977).

54. In general, the fact that an expert does not have a degree or license in a particular specialty goes to the weight of his or her testimony rather than its admissibility. See *United States v. Bilson*, 648 F.2d 1238, 1239 (9th Cir. 1981); *Lappe v. American Honda Motor Co.*, 857 F.Supp. 222, 227 (N.D.N.Y. 1994)(in products liability case, finding that a proposed expert's

lack of specialization in certain areas of engineering did not go to the admissibility of the expert's opinion, but rather, affected its weight); *Bank of New York Mellon Trust Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd.*, 910 F.Supp.2d 629 (S.D.N.Y. 2012)(holding that an investment banking firm officer, who had, since 2001: structured synthetic residential mortgage-backed securities (RMBS) transactions; priced RMBS; and supervised the determination of assumptions used to determine the cash flows from RMBS – had sufficient experience in dealing with RMBS to offer an opinion regarding future RMBS cash flows as it related to an early termination payment under a cash flow swap agreement); *Bowser v. Publicker Industries*, 101 F.Supp. 386 (D.C.Pa. 1951)(holding that while fact that an expert witness was not a registered electrical engineer was proper for jury to consider in connection with the value of his opinions and the weight to be given them, it did not make him incompetent to testify in support of a charge of negligence resulting in death by electrocution when electric current arced from a high tension line to the cable of crane nor did it require that his testimony to be stricken out); *Santana Marine Service, Inc. v. McHale*, 346 F.2d 147, 148 (5th Cir. 1965)(holding that District Court was justified in finding that one of the plaintiffs was qualified to testify as an expert, where he testified that he had six years of practical experience in designing, making, and installing lift devices and that he had done considerable home study of recognized scientific treatises in the field – "A person may become qualified as an expert by practical experience and home study. Professional education is not a prerequisite"); *Southern Cement Co., Division of Martin-Marietta Corp. v. Sproul*, 378 F.2d 48, 49-50 (5th Cir. 1967)(in an action for damages arising from the loss of water in plaintiff's wells as consequence of defendant's limestone mining operations, the Court of Appeals held that plaintiff's expert was properly allowed despite the fact that the expert had not mined limestone or worked in mine of same size as that operated by defendants – he had practical experience in mining for many years including experience as mine superintendent and in blasting – the issues raised by the defendants went to the weight of his testimony and not to its admissibility).

55.     "[T]he 'touchstone' of admissibility is helpfulness to the trier of fact." *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991). "Moreover, 'a lack of specialization does not affect the admissibility of the [expert's] opinion but only its weight,' *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991), although 'a[n expert] must have skill in the matter to which the subject relates.' *Id*. (quoting *Petition of Central Kansas Elec. Co-op, Inc.*, 224 Kan. 308, 582 P.2d 228, 236 (1978)). "An expert must, however, stay within the reasonable confines of his subject area and cannot render expert opinions of an entirely different field or discipline." *Wheeler*, 935 F.2d at 1100. An expert, relying upon his experience and knowledge of causation factors, may express an opinion which draws a rational conclusion as to causation. *Orth v. Emerson Elec. Co., White–Rodgers Div.*, 980 F.2d 632, 637 (10th Cir.1992). "Absolute certainty is not required." *Id*. See also *Rich v. Ellerman & Bucknall S.S. Co.*, 278 F.2d 704, 707-08 (2d Cir. 1960)(looking with disfavor on the trial court's exclusion of testimony of potential expert witnesses where they had many years' experience in the field – "The rulings on evidence, while perhaps not sufficient in themselves for reversal, are justly criticized as unduly restrictive of plaintiff's proof. Some expert testimony was finally allowed to stand, yet testimony of the plaintiff, Venable and Tolbert as to the customary practice of chassis stowage was excluded, despite their many years' experience in the field. The witnesses were sufficiently qualified").

56.     Clearly, in light of her considerable and relevant experience, Ms. Watson is qualified to testify as an expert. See *U.S. S.E.C. v. Zwick*, 317 Fed.Appx. 34 (2d Cir. 2008)(holding that expert testimony on broker-dealers' securities transaction markups was admissible in a securities fraud action against broker-dealers, where the expert's testimony as to whether markups were excessive, as would give rise to broker-dealers' fraud liability, was based on the expert's experience in securities industry as a trader and his opinion on what constituted an excessive markup for securities at issue); *Rich v. Ellerman & Bucknall S.S. Co.*, 278 F.2d 704 (2d Cir. 1960)(in longshoreman's action for injuries, testimony of plaintiff's experts as to

customary practice of chassis stowage was improperly excluded where the witnesses were sufficiently qualified in view of their many years of experience in the field); *Tropea v. Shell Oil Co.*, 307 F.2d 757 (2d Cir. 1962)(holding that a witness who had operated gasoline service stations, selling various brands of gasoline, in a number of locations in the New York metropolitan area for approximately 20 years, was competent to testify as to the customs of the trade in disposing of waste fluid pumped from fuel storage tanks); *SR Intern. Business Ins. Co., Ltd. v. World Trade Center Properties, LLC*, 467 F.3d 107 (2d Cir. 2006)(concluding that the District Court did not abuse its discretion in determining that a witness with over 31 years in the property insurance industry as both a broker and an underwriter was qualified by virtue of his experience to testify, as an expert, regarding custom and practice of insurers); *King v. Deutsche Dampfs-Ges*, 523 F.2d 1042 (2d Cir. 1975)(concluding that the trial court did not abuse its discretion in allowing a supervisor of a marine carpenter to give his opinion as to what constituted proper stowage of beams forming a superdeck in hatch, despite the contention that he was not qualified as an expert with respect thereto since he was not a longshoreman, where he had worked with stowed cargo for 28 years and had ample opportunity to observe that it was possible to fit steel beams together tightly so as to avoid a gap such as that into which carpenter fell).

## CONCLUSION

Based upon the foregoing, claimant Frank Reed III respectfully request that this Court deny the ResCap Borrower Claims Trust's Motion *In Limine* to exclude the expert testimony of Stevie Watson.

Dated:  Moorestown, New Jersey
       September 7, 2016

                                            Respectfully Submitted,

                                By: _____
                                    Frank Reed, *pro se*