Hearing Date: October 13, 2016 at 10:00 a.m. (Prevailing Eastern Time)

MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor
San Francisco, CA  94108-5530
Tel:  (415) 788-1900
Fax:  (415) 393-8087
Timothy J. Halloran - CA State Bar No. 104498
Karen K. Stromeyer - CA State Bar No. 245712

*Attorneys for Claimants
Bernard Ward and Colleen Halloran*
Claim No. 684

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| In re:<br><br>RESIDENTIAL CAPITAL, LLC, et al.<br><br>　　　　Debtors. | Case No. 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |
|---|---|

**DECLARATION OF TIMOTHY J. HALLORAN IN SUPPORT OF BERNARD WARD AND COLLEEN HALLORAN'S RESPONSE TO OBJECTION TO CLAIM NO. 684**

I, Timothy J. Halloran, declare as follows:

1.　　I am an attorney duly licensed to practice in all courts of the State of California, and am senior shareholder at Murphy, Pearson, Bradley & Feeney, attorneys of record for Claimants herein Bernard Ward and Colleen Halloran.  I have personal knowledge of the information set forth herein below, unless noted as based on information and belief, all of which is true and correct of my own personal knowledge, and if called upon to testify, I could and would competently testify thereto.

2.　　I have been one of the primary attorneys that have overseen this case since April 2011, and have been consistently involved since that date.

-2-

3. I have personally reviewed the billing statements and invoices of costs that were incurred in this matter. To date Murphy, Pearson, Bradley & Feeney has billed $91,140.00 in attorney's fees and incurred $11,020.37 in costs in this matter.

4. In addition to the above, Claimant's damages in this action are in part based upon the difference between the interest paid under the original, predatory loan, and the modified April 2011 loan, which GMAC breached or fraudulently reneged upon as follows: Assuming an equal principal of $1,129,853.88, which was the amount all agreed was appropriate for the modification, the interest rate for the 432 months of payments with the step-ups of 2.875, 3.875 and eventually 4.876 percent, when calculated on a loan calculator, shows the amount of interest paid at $1.2 million for the life of the loan. Conversely, in taking that same principal that would have been applicable in April of 2011 under the non-modified predatory loan of $1,129,853.88 and calculating what the average U.S. Treasury security was during the six-year period between 2011 and 2016, that average interest rate was 2.31 percent. This is the baseline of calculating the interest rate under that loan. Adding the contractual obligation of an additional 3.25% to that index yields an interest rate of 5.25% times the monthly payments of 480 payments. The interest paid of $1.6 million for the life of the loan. Thus, for the length of the loans in question the Wards will be paying $400,000 more interest, solely and exclusively because of the GMAC's intentional activity in breaching their agreement and failing to act.

5. Throughout the state court litigation Claimants and GMACM tried to work out terms for a loan modification, and actually reached an agreement on modified loan terms prior to GMACM's bankruptcy. However, while GMACM offered to pay

-2-

some attorney's fees, the parties could not reach an agreement on the exact amount of attorney's fees and costs to be paid, which delayed settlement of the entire matter.

6. The Borrowers Trust highlights two alleged loan modifications that they purport were offered to Claimants which provided "better" terms than Claimants would have received in the April 2011 permanent loan modification. The first – the alleged "Second Loan Modification" – is at Exhibit B to the declaration of Greg Huber. This loan modification was never offered to Claimants as a resolution to the civil action. Instead it was produced in response to a document request that sought the entire file related to the subject property. If this loan modification approval was received by GMACM they failed to convey it to Claimants or their counsel.

7. Similarly, the alleged "Third Loan Modification" was apparently never even reduced to a writing, it exists only in the "Service Notes" of GMACM. If this loan modification was indeed received by GMACM, it was never offered to Claimants as a resolution to the civil action.

8. On at least two occasions since April 2011 my clients have tried to make payments under the loan, however their checks were returned "uncashed."

9. Recently my office again attempted to obtain information from Ocwen, as the current servicer of the loan, regarding what the current principal balance of the loan was. Ocwen refused to furnish this information.

10. My office has also conveyed my client's willingness to accept the last permanent loan modification offered by GMAC prior to its bankruptcy. To date Ocwen has not responded.

-4-

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: September 16, 2016

                                                      */s/ Timothy J. Halloran*
                                                Timothy J. Halloran