1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, LLC, et al.,

9

10                  Debtors.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14                  United States Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  September 14, 2016

19                  10:14 AM

20

21   B E F O R E:

22   HON. MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25

1    Borrower Claims Trust's General Status Conference.

2

3    Status Conference Regarding Claim(s) of Alan Moss.

4    Telephonic pre-trial conference regarding claims of Rhonda

5    Gosselin.

6

7    Doc# 10093 ResCap Borrower Claims Trust's Motion In Limine to

8    Exclude Testimony of Rhonda Gosselin. (related document(s)9959)

9

10    (CC: Doc. no. 9971) ResCap Borrower Claims Trust's Ninety-

11    Fourth Omnibus Objection to Claims ((I) No Liability Borrower

12    Claims, (II) Redesignate, Reclassify, Reduce and Allow Borrower

13    Claim, (III) Reclassify, Reduce and Allow Borrower Claim, and

14    (IV) Redesignate and Allow Borrower Claim).

15

16    (CC: Doc# 10047) ResCap Liquidating Trust's Second Omnibus

17    Motion to Enforce Injunctive Provisions of Plan and

18    Confirmation Order.

19

20    Transcribed by:  Penina Wolicki

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

```
 1
 2   A P P E A R A N C E S :
 3   MORRISON & FOERSTER LLP
 4        Attorneys for ResCap Borrower Claims Trust
 5        250 West 55th Street
 6        New York, NY 10019
 7
 8   BY:   JORDAN A. WISHNEW, ESQ.
 9         JESSICA J. ARETT, ESQ.
10
11
12   KRAMER LEVIN NAFTALIS & FRANKEL LLP
13        Attorneys for ResCap Liquidating Trust
14        1177 Avenue of the Americas
15        New York, NY 10036
16
17   BY:   JOSEPH A. SHIFER, ESQ.
18         NATHANIEL ALLARD, ESQ.
19
20
21
22
23
24
25
```

```
1

2   POLSINELLI PC

3        Attorneys for ResCap Borrower Claims Trust

4        600 Third Avenue

5        42nd Floor

6        New York, NY 10016

7

8   BY:   DANIEL J. FLANIGAN, ESQ. (TELEPHONICALLY)

9

10

11  ALAN I. MOSS, ESQ. (TELEPHONICALLY)

12        PRO SE

13

14

15  LAW OFFICE OF LAIRD HEAL

16        Attorney for Rhonda Gosselin

17        78 Worcester Road

18        Sterling, MA 01564

19

20  BY:   LAIRD J. HEAL, ESQ.

21

22

23  ALSO PRESENT: (TELEPHONICALLY)

24        KATHY PRIORE, ResCap Liquidating Trust

25
```

1                    P R O C E E D I N G S

2          THE CLERK:  All rise.

3          THE COURT:  All right, please be seated.  We're here

4    in Residential Capital, 12-12020.  Mr. Wishnew?

5          MR. WISHNEW:  Good morning, Your Honor.  Jordan

6    Wishnew, Morrison & Foerster for the ResCap Borrower Claims

7    Trust.  Your Honor, we begin today's agenda on page 4, item

8    number 3 under the heading "Status Conference".

9          THE COURT:  Yes.

10          MR. WISHNEW:  This is the Borrower Claims Trust's

11    request for a status conference concerning the amended claim

12    4445 filed by Alan Moss.

13          THE COURT:  Yes.

14          MR. WISHNEW:  I believe Mr. Moss is on the phone.

15          THE COURT:  Mr. Moss, are you on the phone?

16          MR. MOSS:  I am.

17          THE COURT:  Thank you very much.

18          Go ahead, Mr. Wishnew.

19          MR. WISHNEW:  Thank you, Your Honor.  Your Honor, this

20    matter -- you had previously -- the Court had previously

21    decided the matter.  It was taken up on appeal by Mr. Moss.

22    The Judge Lorna Schofield of the Southern District issued an

23    opinion reversing in part Your Honor, and so the matter is now

24    back before the Court.

25          The issue on which Your Honor decided was that there

1   was a qualified privilege that essentially precluded all the

2   tort claims Mr. Moss was asserting against the debtors.  There

3   was a question about whether there was reckless disregard of

4   Moss' rights, and so whether actual malice existed.  And so

5   there were concerns by the district court about the facts in

6   the record, raising questions whether ETS acted in reckless

7   disregard of Mr. Moss' rights.  So that contested issue is back

8   before the Court.

9           In addition, the underlying tort claims that existed

10  in the original objection, which include:  negligence,

11  negligence per se, fraud, and intentional infliction of

12  emotional distress, those -- or the Trust's objection to those

13  specific claims at this point is undetermined.

14          So I defer to the Court in terms of how it wishes to

15  proceed, but one suggestion would be to issue a decision on the

16  individual claims so as to narrow the contested issues that

17  would require further discovery by the parties, because

18  obviously Mr. Moss bears the burden to prove reckless

19  disregard, since the Trust will continue to assert the

20  qualified privilege defense, even after further discovery.  And

21  if there are less than all of the remaining claims going

22  forward, then there could be additional discovery required in

23  that regard.

24          So that's at least the Trust's suggestion as to how

25  the matter would proceed, but I'm not sure if Mr. Moss has

1   additional suggestions or the Court has any thoughts.

2            THE COURT:  Have you talked with Mr. Moss about --

3            MR. WISHNEW:  No, we've not, Your Honor.

4            THE COURT:  All right.  Mr. Moss, what do you have to

5   say.

6            MR. MOSS:  I also would defer to the Court in how it

7   wishes to proceed here.  I don't agree with some of what Mr.

8   Wishnew just said, including the burden that I may or may not

9   have here.  I think the district court made clear that the

10  Trust has the burden.  And other than that, I defer to the

11  Court on how it wishes to proceed.

12           THE COURT:  Let me ask you this, Mr. Moss.  What

13  discovery do you wish to undertake?

14           MR. MOSS:  Well, what I want -- the deficiency that I

15  see, although it was cast before -- by me as discovery, I think

16  really is I misnamed it, I think.  Because the only documents

17  in the record are from ResCap.  My claim is against Executive

18  Trustee Services, and they have not chosen to include any

19  documentation at all from Executive Trustee Services.  So I

20  believe that the record at least should be amended first, and

21  then I would be --

22           THE COURT:  I'm sorry, say that again, please?

23           MR. MOSS:  I'm sorry, I did not understand.

24           THE COURT:  I did understand what you said, so I'm

25  asking you to repeat that.  I didn't understand what it is that

RESIDENTIAL CAPITAL, LLC, ET AL.                    8

1   you suggested that we do.

2          MR. MOSS:  Oh, I'm sorry.  What I'm suggesting is that

3   the record that was compiled as to my claim only has

4   documentation from ResCap.  And there's nothing in the record

5   from Executive Trustee Services against whom my claim is

6   directed.  And I think that it would be proper to order the

7   Trust to submit for the record any records that they may have

8   in their possession from ETS.

9          THE COURT:  Let me ask you this.  Am I correct that

10  you're an attorney, Mr. Moss?

11         MR. MOSS:  I am.

12         THE COURT:  Okay.  Here's what I'd like to do, Mr.

13  Wishnew.  I want to enter a -- I'm not going to decide those

14  other issues now, in part because I have three or four trials

15  between now and the middle of November, and I just don't -- the

16  Court just doesn't have the time to go back and deal with those

17  underlying claims.

18         So I'm going to order, submit -- talk to Mr. Moss, but

19  submit a proposed case management and scheduling order setting

20  ninety days for fact discovery, forty-five days for expert

21  discovery.  Get a date from my courtroom deputy, Deanna

22  Anderson for the next case management conference.  Try and pick

23  an omnibus date if there is one, near the end of the fact

24  discovery period.

25         Mr. Moss can appear by telephone at the conference.

1  And let's see where -- I mean, Mr. Moss will do whatever

2  discovery he thinks he has to do, and likewise the Trust can do

3  whatever discovery it has to do.  It's a fairly limited --

4  ninety days is a fairly limited time period.  But it seemed,

5  based on my knowledge of what the underlying basis of the

6  claims are, I think that's a sufficient time period.

7           So Mr. Moss, Mr. Wishnew will prepare -- I have a

8  template that I use for case management and scheduling orders.

9  It is on the court's public website under my chamber rules, so

10  you can see what it looks like.  And while this is a contested

11  matter and not an adversary proceeding, I use that same

12  template when scheduling discovery of contested matters.

13          One of the -- Mr. Moss, one of the provisions in the

14  case management and scheduling order is a requirement that the

15  parties confer about ADR or mediation.  It typically requires a

16  face-to-face meeting, but since you're in California, not here,

17  Mr. Wishnew, change that to "by telephone".  All right?

18          So you're going to need to confer with Mr. Wishnew as

19  to whether you could possibly reach a settlement or whether

20  you're proposing mediation.  I don't compel you to do -- I

21  order that you have the discussion, but I don't order that

22  mediation or other ADR be followed.  But I do require that that

23  occur within fourteen days after the entry of a case management

24  and scheduling order.  But since you're in California, I'll

25  permit that communication to be by telephone rather than face-

1   to-face as I would ordinarily require.

2           Mr. Wishnew, you also ought to talk with Mr. Moss as

3   to whether -- I mean, Mr. Moss, with respect to discovery, I

4   encourage the parties to try and agree on discovery voluntarily

5   as opposed to actually having to serve a request for production

6   of documents.  So that's obviously your option what to do.  But

7   if you want ETS documents, talk to Mr. Wishnew about it and

8   hopefully there won't be a problem about it; they will

9   voluntarily -- you'll describe for them what you want with a

10  letter to Mr. Wishnew, and if the documents exist he'll

11  endeavor to produce it.

12          So with a ninety-day fact discovery period, it's a

13  fairly limited period of time, but you should be able to move

14  forward pretty quickly.  If there are -- you'll see in the case

15  management order, Mr. Moss, that if there are discovery

16  disputes -- and I must say in the ResCap matters, that that's

17  rarely occurred; the Trust has generally been quite cooperative

18  in producing documents -- but if there are any discovery

19  disputes, I don't take motions to compel discovery.  What I

20  require is that the parties meet-and-confer in an effort to try

21  and resolve the dispute, and if you can't resolve it, the party

22  needing the assistance of the Court arranges for a telephone

23  hearing with me.  I generally do those in the afternoon at say

24  4 or 5 o'clock in the afternoon.  And I generally don't want

25  any motions.  I try to reduce the amount of paper -- you're

1    representing yourself -- but what has to be filed.

2              I'm generally able to resolve those discovery disputes

3    with just the parties on the telephone without having to --

4    either side having to generate a lot of paper.  Sometimes when

5    I have that conference, if I believe I need a letter brief,

6    I'll ask for it and give a short time for that.  But the result

7    has been I rarely have discovery disputes arise, because the

8    parties are very good at getting them solved before they

9    actually have to come to me.  But you'll see that -- that's

10   standard language that's in my case management and scheduling

11   order.

12             Mr. Wishnew, I also encourage you, in talking with Mr.

13   Moss, with respect to the underlying legal claims -- and you

14   raised issues about that now -- whether through discussion you

15   can narrow the claims that Mr. Moss is pursuing so that we can

16   focus on those that he's -- wants to proceed with.  And if not,

17   I mean, they'll stay in, and at an appropriate time, the Court

18   will deal with it.

19             Mr. Moss, I've been -- we're working our way down in

20   the number of remaining contested claims, at this point.  There

21   are still some.  So typically, where there are disputed issues

22   of fact that need to be resolved, I set evidentiary hearings

23   pretty quickly; and that I won't do over the telephone.  So if

24   you're not able to resolve it by settlement, you'll have to

25   come to New York for a trial.  And generally, I require a joint

1    pre-trial conference order before trial.  The template for that

2    is also on my chambers rules.  Mr. Wishnew can forward you what

3    the standard format looks like.  It's premature to get to that

4    now.

5              But if the matter is going to come to trial, both

6    sides need to cooperate in preparing the joint pre-trial

7    conference order that supersedes the pleadings and it lists all

8    the exhibits that each side intends to offer and various other

9    things.  You can -- as I say, it's on the court's public

10   website under my chambers rules, so you can see what that

11   requires.

12             Mr. Wishnew, anything else with respect to Moss?

13             MR. WISHNEW:  Not at this time, Your Honor.

14             THE COURT:  Mr. Moss, anything you want to raise?

15             MR. MOSS:  I don't have any other issues at this time.

16   Thank you, Your Honor.

17             THE COURT:  Okay.  All right.  So Mr. Wishnew will be

18   in touch with you or one of his colleagues will be in touch

19   with you.  And get the form -- the proposed case management

20   order submitted.  Obviously share it with Mr. Moss before you

21   submit it.  And you'll have to get a date from Deanna for the

22   next conference which, again, Mr. Moss will be able to

23   participate by telephone.

24             I guess it's pretty early in the morning for you in

25   California, Mr. Moss -- but actually not that early at this

1    point.  So --

2            MR. MOSS:  Not that early.  It's quite fine.  Thank

3    you.

4            THE COURT:  Okay.  All right.  Thank you very much,

5    Mr. Moss.  You can stay on the phone or you're excused;

6    whichever you wish.

7            MR. MOSS:  All right, thank you.

8            THE COURT:  Okay, go ahead, Mr. Wishnew.

9            MR. WISHNEW:  Thank you, Your Honor.  The next matter

10   on today's agenda, item 4 on page 4, the Borrower Claims

11   Trust's general status conference.

12           As Your Honor just alluded to, we are working our way

13   down and coming very close to the end, Your Honor.  The

14   Borrower Claims Trust docketed a status letter yesterday at

15   docket number 10096.  I'm happy to report, without getting too

16   far ahead of ourselves in the agenda, that the matter scheduled

17   for trial tomorrow, the Gosselin matter, has been settled.  So

18   that is one --

19           THE COURT:  I got that news yesterday afternoon.  I'm

20   glad you were able to reach a settlement.

21           MR. WISHNEW:  Yeah, we called you five minutes after

22   we learned of that, Your Honor.  So --

23           With regards to the overall status, Your Honor, at

24   this point in time, there are twenty-five unresolved claims.

25   Seven of the claims are the subject of the ninety-fourth

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1   omnibus objection that my colleague Ms. Arett will be handling

2   shortly.  One of the claims is scheduled for an evidentiary

3   hearing during the last week in September, and a second is

4   scheduled for a status conference --

5            THE COURT:  You're talking about the Reed claim?

6            MR. WISHNEW:  Yes, Your Honor.

7            THE COURT:  Okay.

8            MR. WISHNEW:  A second is scheduled for a status

9   conference.  That was the Gosselin matter.  With regards to --

10  there are two pending individual objections scheduled for

11  initial hearings in October and November.  There are three

12  additional claims pending the completion of settlements and

13  approximately eleven unresolved claims that will be the subject

14  of either an omnibus objection, individual objection, or

15  potentially consensual resolution.

16           Your Honor, considering where we were three years ago,

17  in December 2013, with 1,420 borrower claims being unresolved,

18  the fact that we're down to 25 at this point is, I think a

19  significant achievement.  We greatly appreciate Your Honor's

20  time and commitment to get us to this point.  The goal

21  obviously is to get distributions out as quickly as possible to

22  holders of allowed borrower claims.  And that remains the

23  Borrowers Trust's commitment.  And so we will be moving forward

24  in that regard.

25           THE COURT:  Okay.  Thank you.

1          MR. WISHNEW:  Thank you, Your Honor.  Your Honor, so

2   as I -- that brings us to item 5 on today's agenda, the pre-

3   trial conference for the seventy-fifth omnibus claims

4   objection.

5          THE COURT:  It's not a pre-trial conference.  It is

6   the hearing on the seventy-fifth omnibus objection.

7          MR. WISHNEW:  Right.  So that -- there was an

8   evidentiary hearing scheduled for tomorrow.  That matter has

9   now been --

10          THE COURT:  Yes.

11          MR. WISHNEW:  -- consensually resolved.  We provided

12   counsel, who's actually in the courtroom today -- Mr. Heal -- a

13   copy of the stipulation for his client to consider.

14          THE COURT:  Come on up, Mr. Heal.

15          MR. HEAL:  Thank you.

16          MR. WISHNEW:  And so subject to final documentation,

17   we can consider that matter resolved, Your Honor.

18          THE COURT:  All right.  Mr. Heal, do you want to just

19   make your appearance?

20          MR. HEAL:  Thank you, Your Honor.  I thought it was

21   the right thing to show up.  But I didn't --

22          THE COURT:  Just make your appearance so I --

23          MR. HEAL:  Thank you.  Laird Heal for Ms. Gosselin.

24          THE COURT:  All right.  How are you feeling, Mr. Heal?

25          MR. HEAL:  Well, it's enough so that I'm stopping

RESIDENTIAL CAPITAL, LLC, ET AL.                    16

1   acting -- working as a lawyer for a while.  I can do other

2   things.

3            THE COURT:  Well, I'm glad to see you -- you appear

4   well.  Let me put it that way.

5            MR. HEAL:  Yes, thank you.

6            THE COURT:  I know you've had a lot of difficulties.

7   So --

8            All right, you can have a seat, if you wish.

9            MR. HEAL:  Thank you.

10            THE COURT:  All right, so Mr. Heal, I gather that

11   you've reached an agreement-in-principle on behalf of Ms.

12   Gosselin to settle the matter?

13            MR. HEAL:  Yes, we are, Your Honor.  And the status

14   report said there's still cases to hear.  And then she realized

15   there was time before she'd get her money.

16            THE COURT:  Yeah.  I take it she's not well.  From

17   your last -- I had gotten the request for her to appear by

18   telephone at the trial, so --

19            MR. HEAL:  Yes.  Her kidney is not recovering.

20            THE COURT:  Well, please give her my best.  I'm sorry

21   that --

22            MR. HEAL:  I will, Your Honor.

23            THE COURT:  -- she's not well.  Okay.

24            MR. HEAL:  Thanks.

25            THE COURT:  Okay.  I think we're getting close to --

RESIDENTIAL CAPITAL, LLC, ET AL.                    17

1    you can hear from Mr. Wishnew's report, I think we're getting

2    closer to the end, and hopefully be able to speed the

3    distributions to borrowers.  Okay?

4            MR. HEAL:  Okay.  Thank you, Your Honor.

5            THE COURT:  Thank you.  You can have a seat if you

6    want, or you can be excused if you want.  Okay?

7            Go ahead, Mr. Wishnew.

8            MR. WISHNEW:  Thank you, Your Honor.  Your Honor, that

9    brings us to the last page of today's agenda under "Uncontested

10   matters".  I will turn the podium over to my colleague, Ms.

11   Arett, who will handle the ninety-fourth omnibus objection.

12           THE COURT:  Okay.  All right.

13           MS. ARETT:  Good morning, Your Honor.  Jessica Arett

14   of Morrison & Foerster, on behalf of the ResCap Borrower Claims

15   Trust.

16           THE COURT:  You lost your chance for this trial

17   tomorrow.

18           MS. ARETT:  I know.  I was -- I'm not going to say I

19   wasn't disappointed, but you know.  It's not about me.

20           Okay, so the next matter on the agenda is number 6.

21   It's the Borrower Trust's ninety-fourth omnibus objection to

22   claims; no-liability borrower claims; redesignate, reclassify,

23   reduce, and allow borrower claim; reclassify, reduce, and allow

24   borrower claim; and redesignate and allow borrower claim --

25   quite a mouthful -- filed at docket number 9974 (sic) on July

1    11th, 2016.

2         Your Honor, through the ninety-fourth omnibus claims

3    objection, the Borrower Trust sought to expunge or modify and

4    allow ten proofs of claim.  It sought to expunge seven claims

5    that do not represent valid pre-petition claims against the

6    debtors, because they do not prove by a preponderance of the

7    evidence any specific wrongdoing by the debtors.  It also

8    sought to modify by reducing, redesignating, and/or

9    reclassifying three claims and allowing those claims as

10   modified.

11        The Borrower Trust thoroughly examined the debtors'

12   books and records in an effort to validate the accuracy of the

13   allegations made in the claims at issue and determined that for

14   those claims which the Borrower Trust seeks to expunge, the

15   books and records do not show any liability due and owing the

16   claimants.  And then for those claims that the Borrower Trust

17   seeks to modify and allow, the books and records reflect that

18   the claims improperly assert either the amount of the claim,

19   the appropriate debtor against which the claim should be

20   asserted, and/or the classification of the claim.

21        And responses to the objection were due on August

22   11th, 2016.  The Borrower Trust was contacted by counsel for

23   two of the claimants to resolve the objection.  One claimant, I

24   believe, Haru Lindsey, voluntarily withdrew her claim and

25   notice of that was filed at docket number 10076.  And then the

1    Borrowers Trust also reached a settlement-in-principle with

2    claimants Joseph and Maxine Dossett, who had claim number 3741.

3    And we're currently in the process of finalizing that

4    settlement agreement.

5            And the Borrower Trust did not receive responses from

6    any of the other claimants whose claims were identified in the

7    objection.  So as a result, for the reasons stated in the

8    objection, I'd respectfully request that the Court grant the

9    ninety-fourth omnibus claims objection as to the eight

10   uncontested claims, and grant the relief requested in the

11   objection.

12           THE COURT:  All right.  Does anybody else wish to be

13   heard?

14           All right, the Court has reviewed the ninety-fourth

15   omnibus objection to claims.  It's at ECF docket number 9971.

16   The objection is supported by the declaration of Sara Lathrop,

17   senior claims analyst for the ResCap Borrower Claims Trust.

18   The Lathrop declaration is at ECF 9971-7.  It's also supported

19   by the declaration of Norman S. Rosenbaum, which is at ECF

20   9971-8.

21           As Ms. Arett has indicated, no objections were filed.

22   Ms. Arett also put on the record that one of the claims has

23   been withdrawn, notice of which has been filed on ECF.  And as

24   to one other, an agreement-in-principle to settle has been

25   reached.  As to all of the other claims that are subject to the

1  ninety-fourth omnibus objection, and they fell into several

2  different categories:  so-called no-liability borrower claims;

3  and a group that are redesignate, reclassify, reduce, and allow

4  borrower claims; third, reclassify, reduce, and allow claims;

5  and fourth, redesignate and allow borrower claims, each of

6  those categories is set forth in an exhibit to the omnibus

7  objection.  And the Court concludes that each of the objections

8  is well-taken and the objections are sustained, and the relief

9  sought with respect to each of the claims that are set forth in

10  Exhibits A through D, other than those -- the one that has been

11  withdrawn and one which has been -- an agreement-in-principle

12  has been settled, the objection is sustained.

13        MS. ARETT:  Thank you, Your Honor.

14        THE COURT:  Okay.

15        MS. ARETT:  And I think now I'll turn the podium over

16  to Mr. Nathan Allen (sic).

17        THE COURT:  Okay.

18        MR. ALLARD:  Good morning, Your Honor.  Nathaniel

19  Allard of Kramer Levin Naftalis & Frankel, for the ResCap

20  Liquidating Trust.  We're now at the last item on the agenda,

21  on page 7.  This is the Liquidating Trust's second omnibus

22  motion to enforce the plan injunction provisions, which can be

23  found at ECF number 10047.  And we filed on August 15th, 2016.

24        It's supported by the declaration of Kathy Priore, the

25  Liquidating Trust's associate counsel, which is attached to the

1    motion at Exhibit 2.  And Ms. Priore is on the phone if you or

2    anybody else has any questions.

3                THE COURT:  Okay.

4                MR. ALLARD:  So this motion was brought pursuant to

5    the procedures that were previously approved by Your Honor.

6    And this motion was very similar to the previous enforcement

7    motion which we filed and was ordered.

8                As we discussed in the motion and the procedures

9    motion, the purpose of these is to ensure an efficient and

10   uniform resolution of the -- what started out as hundreds of

11   pending litigations against the debtors, for which no

12   corresponding proof of claim was timely filed.

13               We have continued our, essentially, letter-writing

14   campaign provided for in the procedures that have been largely

15   very successful.  It's a lot of work.  We make a good-faith

16   determination that the party is, in fact, pursuing monetary

17   claims and that we have appropriate addresses for the notice.

18   We send multiple letters to the parties.

19               So in this -- I would say this batch that we started

20   out thinking about for this motion was a group of approximately

21   eighty parties.  And many of them, as a result of our efforts,

22   have been successfully resolved or withdrawn.  We filed the

23   motion -- as you'll see, there's a spreadsheet attached to the

24   motion -- against twenty-four parties.

25               There were no objections filed.  As we note in the

1    agenda, we received three informal responses, which I will

2    briefly describe.  And we are seeking to -- we'll remove those

3    parties from the motion.  One, Blake F. Sy, which is row number

4    10 of the exhibit, has actually dismissed voluntarily since the

5    motion.  So we don't need to proceed against that party.

6          One of the parties, Patricia Alton, row number 2, is

7    willing to dismiss voluntarily, so we're in the process of

8    effectuating that with them.  And then out of an abundance of

9    caution for one of the parties, the notice was sent to their

10   attorney contact who we were informed has recently become a

11   judge, I believe in Cuyahoga County, Ohio.  And we received a

12   telephone call from her clerk informing us that they're

13   forwarding along the notices and keeping them apprised, but

14   that party is the George and Kathleen Sari at row number 23.

15   But just to be safe, we are withdrawing the motion with respect

16   to them so we can make sure that they're getting proper notice.

17         THE COURT:  So you're going forward as to twenty-one?

18         MR. ALLARD:  Yes.  We are requesting entry of the

19   order with respect to the twenty-one matters listed on Exhibit

20   5 to the motion.

21         THE COURT:  And just address for me whether the

22   twenty-one parties received notice of the bankruptcy, the bar

23   date.  I think that -- what were they -- what was the

24   circumstances as to the twenty-one?

25         MR. ALLARD:  Yes.  They received multiple notices.  At

1    this -- I can't say for certainty that they received notice of

2    the bar date at the time.

3            THE COURT:  Well, part of -- yes, go ahead.  I'm

4    sorry.

5            MR. ALLARD:  But they received multiple letters and

6    notices over time.

7            THE COURT:  Did they receive notice before the plan

8    was confirmed?

9            MR. ALLARD:  They received -- they should have.

10           THE COURT:  There's a due process issue if they

11   didn't -- if they didn't receive notice -- sufficient notice --

12   I won't say what that means necessarily in the context -- but

13   if they didn't receive -- we have the recent Second Circuit

14   decision in the General Motors case dealing with due process

15   issue.  And that's why I asked the question whether the twenty-

16   one parties against whom you're seeking relief today were

17   provided -- now they didn't file any opposition and they did

18   receive notice of this hearing.  That, I think, you've clearly

19   established.  And I'm not sure I need to go further than that,

20   but I do -- it's the Second Circuit General Motors decision

21   that leads me to ask the question.

22           MR. ALLARD:  When we have been contacted by parties

23   and we go back and look, many of them have been served.  There

24   was a very broad notice of the bar date.  So I would think that

25   the vast majority have been.  I don't want to say for certain

1 | that all of them are.

2 |         THE COURT:  Do you know that any of the twenty-one

3 | were not served?

4 |         MR. ALLARD:  I can't say that I know that.

5 |         THE COURT:  Either notice -- I won't limit it to

6 | notice of the bar date.  Notice of the bankruptcy?  The

7 | pendency of the bankruptcy?

8 |         Look, you're relying on a provision -- paragraph 40 of

9 | the confirmation order and Article 9 of the plan, which

10 | includes the discharge language and the discharge injunction.

11 | And my question is, did they know about it?  Were they given

12 | notice of it?

13 |         MR. ALLARD:  Right.  And I would add that every time a

14 | case was filed, there was a notice of the bankruptcy --

15 |         THE COURT:  Pendency.

16 |         MR. ALLARD:  -- filed in that state court action.

17 |         THE COURT:  So as --

18 |         MR. ALLARD:  So if that was filed before the effective

19 | date, shortly thereafter, there would have been a notice of

20 | that.

21 |         THE COURT:  So all twenty-one as to which you're

22 | seeking relief today, relate to pending state court actions?

23 |         MR. ALLARD:  Yes.

24 |         THE COURT:  Okay.  And in each of those twenty-one, a

25 | notice of the pendency of the bankruptcy was filed in the case?

RESIDENTIAL CAPITAL, LLC, ET AL.                              25

1  Is that what you're telling me?

2            MR. ALLARD:  To my knowledge, yes.  Yes.

3            THE COURT:  Okay.  All right.  I'm satisfied based on

4  that.

5            So here it is the case that paragraph 40 of the

6  confirmation order and also in Article 9 of the plan, there

7  is -- the following language is in the plan:  that failing to

8  file a proof of claim by the applicable bar date "shall be

9  deemed disallowed" -- referring to a claim -- "disallowed,

10 discharged, released, and expunged as of the effective date,

11 without any further notice to or action, order, or approval of

12 the bankruptcy court.  And holders of such claims may not

13 receive any distributions on account of such claims unless such

14 late proof of claim is deemed timely filed by a final order of

15 the bankruptcy court."  That's in Article 8(b), that language

16 that I just read.

17            As indicated, the Court had previously granted similar

18 relief to what's being asked for today.  So with respect to the

19 twenty-one parties against whom you're seeking relief today,

20 the motion is granted.

21            MR. ALLARD:  Thank you..  We will submit a revised

22 order.

23            THE COURT:  Okay.  All right, thank you very much.

24            Mr. Wishnew, anything else for today?

25            MR. WISHNEW:  That's it, Your Honor.  That's --

1             THE COURT:  Okay, we have a noon telephone --

2             MR. WISHNEW:  Yes, Ms. Hager from the Reed Smith firm

3   will be handling that for the Borrower Claims Trust.

4             THE COURT:  Okay.  Thanks very much, Your Honor.

5             MR. WISHNEW:  Thank you, Your Honor.

6             THE COURT:  All right, we're adjourned.

7         (Whereupon these proceedings were concluded at 10:45 AM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3

4                              RULINGS

5                                              PAGE      LINE

6   Re Alan Moss matter, scheduling order to be    8        19

7   entered as outlined by the Court on the

8   record.

9   Ninety-forth omnibus objection to claims is   20         7

10  sustained as to remaining claims.

11  Trust's second omnibus motion to enforce      25        20

12  injunctive provisions of plan and

13  confirmation order is granted.

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10

_____

11

PENINA WOLICKI

12

AAERT Certified Electronic Transcriber CET**D-569

13

14

eScribers

15

700 West 192nd Street, Suite #607

16

New York, NY 10040

17

18

Date:  September 15, 2016

19

20

21

22

23

24

25