1

1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 Case No. 12-12020-mg

5 - - - - - - - - - - - - - - - - - - - -x

6 In the Matter of:

7

8 RESIDENTIAL CAPITAL, LLC, et al.,

9

10           Debtors.

11

12 - - - - - - - - - - - - - - - - - - - -x

13

14           United States Bankruptcy Court

15           One Bowling Green

16           New York, New York

17

18           September 14, 2016

19           12:03 PM

20

21 B E F O R E:

22 HON. MARTIN GLENN

23 U.S. BANKRUPTCY JUDGE

24

25

1

2  Pre-Trial Conference Regarding Reed Claims Objection.

3  Trial set for September 26 at 9:00 AM, continuing day-to-day on

4  September 27th, September 28th, September 29th, and September

5  30th.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

```
 1
 2   A P P E A R A N C E S :
 3   REED SMITH LLP
 4        Attorneys for ResCap Borrower Claims Trust
 5        1717 Arch Street
 6        Suite 3100
 7        Philadelphia, PA 19103
 8
 9   BY:   BARBARA K. HAGER, ESQ.
10
11
12   FRANK J. REED, III
13        PRO SE
14
15
16
17
18
19
20
21
22
23
24
25
```

RESIDENTIAL CAPITAL, LLC, ET AL.                    4

1                    P R O C E E D I N G S

2            THE CLERK:  All rise.

3            THE COURT:  All right, please be seated.  We're here

4    in Residential Capital, number 12-12020.  This is a pre-trial

5    conference in connection with the contested matter concerning

6    the claim of Frank Reed.

7            May I have the appearances, please, first for the

8    Trust?

9            MS. HAGER:  Barbara Hager with Reed Smith, co-counsel

10   for the Borrower Claims Trust.

11           THE COURT:  Thank you very much.

12           Mr. Reed?

13           MR. REED:  Frank Reed, creditor pro se.

14           THE COURT:  All right, thank you.

15           All right, Ms. Hager tell me where we are.  Are we

16   ready to go to trial?

17           MS. HAGER:  Well, Your Honor, we have the matter of

18   the pending motions in limine.

19           THE COURT:  You're going to hear answers on all of

20   those --

21           MS. HAGER:  Okay.

22           THE COURT:  -- now.

23           MS. HAGER:  Sure.  Beyond that, I think there might be

24   some discussion about the timing of presentation of witnesses.

25   Mr. Reed was just asking me about that before we got started in

1   terms of trying to properly frame his subpoenas to get his

2   people here.  So I think he wants to talk about that.

3           THE COURT:  Okay.

4           MS. HAGER:  From my perspective, just a comment on the

5   cognizable damages that Mr. Reed is seeking.  You'll recall,

6   some months ago Mr. Reed was ordered to provide a statement of

7   his cognizable damages.  I think ultimately he provided two.

8   And in the pre-trial -- joint pre-trial which was filed on the

9   12th, there were a couple of other categories of damages that

10  had not appeared in that cognizable damages statement from

11  earlier this year.  So specifically, he's raising this issue of

12  lost loan revenue, which seems to be a result of the claim that

13  he didn't get any funds from TD Bank or from a relative as a

14  result of the foreclosure, therefore, the Trust should be

15  responsible for paying him those, essentially, loaned funds

16  that he otherwise would have gotten.

17          So that was something new that we hadn't seen in a

18  prior statement.  And he's also got this discussion of

19  homelessness, and he's asking the Court for an equitable remedy

20  whereby the Trust would essentially pay off his existing

21  mortgage on the Matlack property.  So a couple things on that.

22  That wasn't raised previously as an item of damages; but also,

23  this trial doesn't concern the Matlack property.

24          Further, I don't know that this is an item of damages

25  per se or simply just his method of calculating a particular

1  damage.  With respect to the rental payments that he's claiming

2  were lost from the New Jersey rental properties, he's using his

3  wife's life expectancy to figure out the length of time for

4  which he would have received those rental payments.  This came

5  up, again, in the joint pre-trial.

6           I mean, I would have moved in limine to exclude that.

7  And so I wanted to call it to Your Honor's attention today.  If

8  there's a motion that I should file --

9           THE COURT:  I'm not going to hear any more --

10          MS. HAGER:  Okay.

11          THE COURT:  -- motions before trial.

12          MS. HAGER:  Okay.

13          THE COURT:  I want to make that crystal clear.  I'm

14  going to rule on all the pending --

15          MS. HAGER:  Sure.

16          THE COURT:  -- motions in limine.  At the time of

17  trial -- I had a deadline for filing motions in limine.  Mr.

18  Reed, you didn't file your oppositions.  The only way we got

19  them was because Ms. Hager or somebody at Morrison & Foerster

20  emailed one of my law clerks.

21          MR. REED:  We did file them.

22          THE COURT:  No, you didn't.  You did not file any of

23  your oppositions to the -- I've got them, finally.  And I got

24  the Trust's replies.  But you didn't file them.

25          MR. REED:  I came to this court --

1            THE COURT:  Mr. Reed, you oppositions to the motions

2    in limine were never received in this court, weren't filed.

3    They're not on ECF.  They are now because my courtroom deputy

4    arranged for them to be filed.  It didn't affect any ruling on

5    the motions, because I got them, I read them, I received the

6    Trust's replies, I have rulings that I'm going to give.

7            But I'm not hearing any more motions in limine before

8    the start of trial.

9            MS. HAGER:  Sure.  Fair enough.  I suppose from --

10           THE COURT:  What I will -- just let me make clear.

11   There's a joint pre-trial order.  It sets forth the issues that

12   are going to be tried.  I'm not going to try anything else.

13           MS. HAGER:  Right.  I guess to my point, Your Honor,

14   those items that I just mentioned are in the joint pre-trial --

15           THE COURT:  Yeah.

16           MS. HAGER:  -- that I didn't see until the afternoon

17   of the day that we filed them, under some very strange family

18   circumstances.

19           THE COURT:  I know you've had --

20           MS. HAGER:  My point being that had I been aware of

21   them previously, I would have taken steps to deal with them.

22   And so I suppose, taking Your Honor's lead, I'll just object to

23   them at trial, and we'll have to go from there.

24           THE COURT:  We'll have to go from there.

25           Anything else, Ms. Hager?

1          MS. HAGER:  No, Your Honor.

2          THE COURT:  Okay.  Mr. Reed?

3          MR. REED:  First, I'd just like to say thank you for

4     having them put in.  I did come.  My daughter delivered them.

5     She came through security.  She handed them to the fifth-floor

6     clerk.  And I don't know what else -- it's what we've done with

7     every single one of them.  So they were done.  I came here.  I

8     have my E-ZPass receipts that we drove here on the day.

9          THE COURT:  Mr. Reed, I got them.

10         MR. REED:  Thank you -- yeah, you got them.  I'm glad.

11         THE COURT:  I got them.  I considered them.

12         MR. REED:  And as for today, the question -- the

13    biggest question I had in my mind at the moment, before hearing

14    what your rulings are, was scheduling of witnesses, since it's

15    a longer time period.  Many --

16         THE COURT:  Shorter is better.  I mean, if you don't

17    want -- I set a much longer period than I ordinarily would.

18    And I know you've -- I received something that you filed

19    indicating you're not proceeding on a breach of contract

20    theory, you're not seeking damages in connection with any

21    credit reporting.  And so I see you're --

22         MR. REED:  I've narrowed it --

23         THE COURT:  -- you've narrowed it.

24         MR. REED:  -- very narrow -- very narrow.  It's in

25    the -- it's in the pre-trial brief, which is much narrower.

1  And that letter that came subsequent, it's narrowed greatly.

2          I'd be surprised if it lasts all the time that you've

3  allotted.  But I'm trying to talk to the witnesses, and I have

4  subpoenas that I'm picking up from the clerk after our hearing

5  today.  And I want to -- I don't want everyone sitting day one

6  waiting and then they're not going to be heard until day two.

7  And so I was going to work it out with Ms. Hager to try and

8  schedule that.

9          THE COURT:  Did you talk -- okay.  The two of you

10  ought to see if you can work out the scheduling of the

11  witnesses.  I don't know how long you anticipate with some

12  flexibility to cross-examine Mr. Reed's witnesses.

13          I like to go full days, Mr. Reed, so I don't like

14  we're out of witnesses at 2 o'clock, and what happens?  So but

15  you've been through a trial here before.  You certainly see how

16  it works.  If you have all the people sitting in the courtroom,

17  well, so be it.  Although there is an issue -- I don't know

18  whether, Ms. Hager, you're going to insist on excluding of

19  witnesses from the trial.  I don't really find it a big deal,

20  frankly.  But that's -- the rules permit it, and you'll have to

21  decide what you want to do.

22          You go first, Mr. Reed.  You have to put your case in.

23  You have the burden of proof.  As last time, to the extent you

24  have written testimony that you're offering, you'll stand and

25  you'll offer the written testimony.  I'll listen to any

1   objections to it.  If it comes in, then Ms. Hager cross-

2   examines and then you can ask questions in rebuttal.

3           MR. REED:  Ms. Hager and I were discussing the fact

4   that the depositions and the length of time of the various

5   depositions make a good way for me to organize the people, and

6   I think that's -- because that's -- that's essentially what we

7   did.  They affirmed their declaration, we entered it, and then

8   Ms. Hager had questions related to that.

9           THE COURT:  Usually, cross-examination at trial

10  usually takes less time than the deposition, but not always.

11  I'm not -- okay.

12          So you ought -- the two of you -- I'm not in a

13  position to tell you in what order you call the witnesses.  I

14  can't anticipate how long Ms. Hager's cross-examination is

15  going to be, and I can't anticipate what, if any, rebuttal

16  you'll have -- whatever rebuttal.  When you -- after Ms. Hager

17  cross-examines, you're entitled to examine the witness on the

18  scope of her cross-examination.

19          So you've got -- if there are six topics that are

20  covered in the written testimony and Ms. Hager only cross

21  examines about four of them, you don't get to do the other two.

22  Okay?  Any further examination is --

23          MR. REED:  It's based on what she's --

24          THE COURT:  -- has to be limited to the subjects that

25  she's covered.  Okay?

1          MR. REED:  So for example, another question that I had

2    is, certain things that were said in the deposition, I'd like

3    them to repeat for the record and say it.  So do I hand them

4    the deposition and say read this paragraph and then that's part

5    of the case-in-chief, and then that way she can --

6          THE COURT:  You have written testimony for witnesses.

7    That's your direct.  I don't know what's in the depositions,

8    what's not.  So somebody -- when a witness is going to be

9    cross-examined, Ms. Hager, it would be helpful if I had a copy

10   of the transcript in front of me so I can -- I can't answer a

11   question in the abstract.

12         If something came -- if three things came up in the

13   deposition that you wished you had included in the direct

14   testimony and Ms. Hager doesn't cross-examine about it, you

15   don't get to cover it.  Okay?  It's a narrowing.  Okay?  You

16   put in your direct, instead of -- you had the opportunity to do

17   it in writing rather than with a witness on the witness stand.

18   She gets to cross-examine.  You get to conduct further

19   examination limited to those topics that Ms. Hager has covered.

20         If there are other issues, we'll see when they come

21   up.  You can ask for leave to be able to ask those questions.

22   I can't rule on them in the abstract.  Okay?

23         All right, any other -- Ms. Hager, remind me.  You

24   were going to take some more depositions -- just refresh me.

25   Mr. Reed wanted to use some exhibits and there was an issue as

1  to whether there was foundation.  You were going to go -- he

2  was -- you were going to go take some more depositions.  Did

3  that ever happen?

4         MS. HAGER:  I think you're referring to the sort of

5  most recent round of depositions.

6         THE COURT:  Yes.

7         MS. HAGER:  Right?  So there were maybe four or five

8  of them.  Those were --

9         THE COURT:  You were going to do some of them by

10  telephone.

11         MS. HAGER:  I did them by telephone.  I --

12         THE COURT:  That worked out okay?

13         MS. HAGER:  I couldn't leave -- yes.  Yes.  So those

14  folks were, with one exception, contractors.

15         THE COURT:  Okay, yes.  Now I remember.

16         MS. HAGER:  Yeah.

17         THE COURT:  Yes, okay.  All right.

18         Any other issues you want to raise, Mr. Reed?

19         So the two of you need to talk and try to work out --

20         MR. REED:  Yeah, I --

21         THE COURT:  Preferably, fewer days is better than more

22  days, okay?  And I know you delivered --

23         MR. REED:  Yeah, I didn't know when --

24         THE COURT:  That's fine.  No, I've got them right

25  here.  Okay.

1          All right, let me give you the rulings on the motions
2   in limine.  And Mr. Reed, on the way out, if you stop at my
3   chambers door -- knock on the door -- my courtroom deputy will
4   hand you paper copies.  I'm not going read these in their
5   entirety.  They were just entered on the Electronic Court
6   Filing system within the last hour.  Okay?
7          Since you're not on ECF, my courtroom deputy has
8   copies of the orders to give you.  Okay.
9          So the first order is denying creditor Frank Reed's
10  motion in limine to exclude expert report and testimony of
11  Oscar Marquis.  And the substance was you withdrew your
12  proposed expert of Evan Hendricks and said you're not seeking
13  damages in connection with credit reports, and that's what
14  Marquis was about, so that motion is denied as moot.  Since
15  you --
16          MR. REED:  Okay.
17          THE COURT:  -- withdrew Hendricks, it didn't seem to
18  me that had to be heard.  Okay.
19          The Court is granting the ResCap Borrower Claims
20  Trust's motion in limine to exclude the expert testimony of
21  Christy Zoltun Donati.
22          The Donati -- I'm just summarizing.  It's the written
23  order that's going to count.  The Donati expert report was
24  prepared and offered in evidence during the September 15 to 16,
25  2014 trial.  The Court ruled then that Donati's expert was not

1    admissible at trial because it is filled with impermissible

2    hearsay, contains faulty analysis and supported conclusions.

3    Reed proposes to offer the same unchanged expert report at the

4    forthcoming trial.  The previously excluded expert report has

5    not improved with age.

6              MR. REED:  Your Honor, with --

7              THE COURT:  I don't want to hear any argument.

8              MR. REED:  No, not argument.

9              THE COURT:  Okay.

10             MR. REED:  She's been withdrawn anyway.  She's not on

11   the list.

12             THE COURT:  Okay.  All right.  Then you'll -- there's

13   an order that's been entered because -- okay.

14             Order denying the ResCap Borrower Claims Trust's

15   motion in limine to exclude evidence of claimant's attempts to

16   refinance the Matlack property.

17             The Trust had moved in limine to exclude evidence at

18   trial concerning Reed's efforts to refinance the mortgage on

19   his Matlack Drive property, including the proposed testimony of

20   Robert Curley.  The issue on remand is whether Mr. Reed

21   suffered any compensable damages in connection with economic

22   loss relating to other real estate transactions.

23             The damages recoverable relating to Reed's Matlack

24   property were already tried and determined in the earlier trial

25   on September 15 and 16, 2014.  Whether evidence about Reed's

1   failed efforts to refinance the Matlack property because of

2   attempted wrongful foreclosure were the legal cause of

3   compensable losses relating to other properties, for example if

4   the refinancing failed because of the filing of the foreclosure

5   action and would have made sufficient funds available for Reed

6   successfully to complete the other real estate transactions,

7   that can't be determined at this time.  The Court needs to hear

8   the evidence and arguments at trial.

9            Next is an order denying the ResCap Borrower Claims

10  Trust's motion in limine to exclude evidence of damages at

11  trial.

12           With respect to the two Richmond, Virginia properties:

13  Old Dell Trace and Brookstrace, the motion in limine is denied.

14  The Court needs to hear the evidence at trial before

15  determining whether the alleged damages with respect to these

16  two properties are too speculative and whether Reed's

17  methodology in computing alleged damages is permissible.  With

18  respect to the two New Jersey properties, Reed seeks to recover

19  damages for loss of rent and lost profits.  The Trust contends

20  that Reed has failed to establish that the debtors' conduct was

21  the legal cause for any damages relating to these properties.

22  Again, the motion in limine is denied.  The Court will

23  determine whether the alleged damages are recoverable after

24  hearing the evidence at trial.

25           The Trust also argues that Reed is seeking duplicative

1   damages for the same economic loss.  Duplicative damages may

2   not be recovered, but it is not clear at this stage whether

3   that is what Reed is attempting to do.  Reed can properly offer

4   alternative measures of damages, but duplicative recovery will

5   not be permitted.  In any event, the time to address this

6   argument will be after all of the evidence is admitted at

7   trial.  The Court cannot determine at this stage what the

8   alleged duplicative damages are.  Therefore the motion in

9   limine on these grounds is denied.

10          Finally, the Trust argues that it will be unduly

11  prejudiced if Reed is permitted to introduce evidence

12  "concerning speculative damages."  This will be a bench trial

13  and not a jury trial.  The risk of prejudice is minimal or

14  nonexistent.  Reed's proffered evidence will still have to

15  satisfy the Rules of Evidence to be admitted at trial.  Nothing

16  in this order precludes the Trust's counsel from asserting

17  timely objections to evidence at trial.

18          Next is an order granting in part the ResCap Borrower

19  Claims Trust's motion in limine to exclude the expert report

20  and testimony of Stevie Watson.

21          Mr. Reed's opposition argued that Watson's June 20,

22  2012 letter, which Reed submitted as an expert report, was

23  prepared for a Federal Reserve Board review of an earlier claim

24  Reed submitted.  The Watson expert report related to alleged

25  economic loss suffered by Reed in connection with the Old Dell

1   Trace property in Richmond, Virginia.  The June 20, 2012 letter

2   is attached to Watson's declaration dated March 30, 2016.

3   Other than stating that she is a realtor who has done a variety

4   of real estate transactions with Frank Reed -- that's in her

5   declaration at paragraph 1 -- Watson's qualifications to

6   provide an expert opinion on Reed's economic loss have not been

7   established.  Watson's methodology apparently is to rely in

8   substantial part on an appraisal prepared by someone else at a

9   different date with no foundation established regarding that

10   appraisal, and then comparing the opinion as to value in that

11   appraisal with a tax assessment of the property.

12         The motion in limine includes quotations from Watson's

13   deposition in this contested matter.  The testimony tends to

14   show that Watson's opinion is based on substantial part on

15   unsupported "guesstimates" and "assumptions" that Watson made

16   but are not contained in her opinion.

17         The Court concludes that Watson's expert report is not

18   admissible.  Reed also argues that Watson will also testify as

19   a fact witness regarding her work in marketing the Dell Trace

20   property.  Whether Watson can offer competent admissible

21   evidence as a fact witness will be determined at trial.

22         Therefore, the motion in limine is granted to the

23   extent that Watson's expert report will be excluded from

24   evidence.

25         Next is an order granting in part and denying in part

RESIDENTIAL CAPITAL, LLC, ET AL.                    18

1   the ResCap Borrower Claims Trust's motion in limine to exclude
2   evidence concerning claimant's attorneys' fees incurred in
3   defense of the foreclosure action.
4           Mr. Reed, in his opposition stated that he's not
5   seeking to recover any of Walter's attorneys' fees relating to
6   the Matlack foreclosure, but related to other matters.  The
7   Trust filed a reply, limiting its motion in limine to a request
8   to exclude evidence of Walter's fees relating to the Matlack
9   foreclosure, but making no argument whether any other fees paid
10  to Walter is compensable.
11          I won't read the rest, but basically, you can't offer
12  evidence of fees paid to Walters in connection with the Matlack
13  foreclosure, but if you've got evidence in connection with some
14  other matter, I'll consider it and Ms. Hager can object if it's
15  appropriate.
16          Next is an order granting the ResCap Borrower Claims
17  Trust's motion in limine to exclude evidence concerning
18  claimant's expert witness fees as damages.
19          Mr. Reed submitted a statement concurring in the
20  Trust's position, and so the motion in limine is granted, but
21  Mr. Reed acknowledged that he wasn't trying to introduce
22  evidence.
23          So that is all of the motions in limine.  Mr. Reed,
24  you can pick up copies of the orders next door.  Ms. Hager,
25  you'll have to pull them off of ECF.

1          All right.  So all of the motions in limine have been

2    resolved.  I always try -- I try, if possible, to do that

3    before trial so that each side knows what can come in and what

4    can't come in and how they should proceed.

5          The two of you ought to confer.  Mr. Reed, you ought

6    to let Ms. Hager know whether, in light of your agreement not

7    to pursue breach of contract damages, not to seek damages in

8    connection with credit reports -- I don't know whether any of

9    your exhibits fall away because of that.  You ought to let Ms.

10   Hager know whether you're withdraw -- whether you no longer

11   plan to offer some of the exhibits that are on your list.

12   Okay.

13          Just bear with me a second.  Okay?

14       (Pause)

15          THE COURT:  Okay.  So we start trial on Monday the

16   26th at 9 a.m.  And I'm looking at a calendar to see whether

17   there are any issues scheduled.

18       (Pause)

19          THE COURT:  No, it doesn't appear that I have any

20   other problems.  So the usual is that we start at 9 and we take

21   a morning recess, and then we break for lunch normally around

22   12:30 or so.  If a witness is on the witness stand and their

23   questioning can be completed in a relatively short time, we may

24   move our lunch break back a little bit.  I try not to

25   inconvenience witnesses, if possible.  Otherwise typically we

1  take the lunch break from 12:30 until 2.  And we ordinarily

2  will go on till 5 o'clock.  But again, if a witness is close to

3  completing his or her testimony, we'll go a little later and

4  finish them up.

5        When there are objections that are going to be made

6  during trial, I generally only want to hear "objection" and

7  maybe one word "hearsay" or "foundation".  I don't want -- I

8  don't want explanations or speaking objections.  If I need a

9  further explanation for an objection, I'll ask for it.  But I

10  don't want to hear -- I don't want to hear argument about

11  whether something should or shouldn't be in, unless I ask for

12  it.  I generally try to be very crisp in ruling on evidentiary

13  objections.

14        Also, you'll make whatever objections you feel are

15  appropriate, but there is no jury, and I think that use your

16  discretion in deciding whether to make objections.

17        With respect to Mr. Reed's testimony, Ms. Hager, I

18  will permit him to testify in the narrative form.  He doesn't

19  have to ask himself questions.  And he'll have to come up to

20  the witness stand and be sworn.  And Mr. Reed, I would urge you

21  to plan out what it is you want to tell me.  And if you want to

22  bring up some notes with you, if Ms. Hager, if she asks for it,

23  she's entitled to see the notes.  I should tell you that.  And

24  I don't know whether she'll ask to see them or not.  But I

25  think it will help you organize your testimony if you have some

1   notes.

2          If you're going to refer to exhibits that you want me

3   to look at, you need to refer to the exhibits by their exhibit

4   number.  And you're going to need to offer the exhibits in

5   evidence as well.

6          I'll try and give some leeway, because you're without

7   a lawyer.  But the rules of evidence do apply.  But I think it

8   will help move your testimony along and other witnesses along,

9   and when you cross-examine any witnesses, or if you have

10  witnesses on redirect -- in other words, you put in the written

11  and Ms. Hager cross-examines, and you have further questions,

12  it helps if you have organized your thoughts as to what you

13  want to ask about.  If you're going to show the witnesses

14  exhibits, you need to tell Ms. Hager what exhibits you're

15  referring to and tell me as well so that I can look at them.

16         I don't think I have any other guidance to give

17  anybody.  Any other questions that either of you have, Mr.

18  Reed?

19         MR. REED:  I don't think so.

20         THE COURT:  Okay, Ms. Hager.

21         MS. HAGER:  Just one with respect to our copy of the

22  exhibits, Your Honor.  Is that something Your Honor wants the

23  day of trial, or do you need those beforehand?

24         THE COURT:  We'll have them beforehand.  Yeah, so

25  that -- I usually like to have things in hand, if possible, a

1   week before trial.  I have Mr. Reed's exhibits now.  So you

2   really ought to-- and obviously -- have you given Mr. Reed a

3   set of your exhibits?

4           MS. HAGER:  Yes.

5           THE COURT:  Okay.  Yes, I do like to see them a week

6   before if possible.

7           MS. HAGER:  Sure.

8           THE COURT:  I have them all up on the bench here, and

9   again, you will refer to exhibits by number or letter.  Okay?

10          Any more questions, Mr. Reed?

11          MR. REED:  No.

12          THE COURT:  Okay.  You both can make opening

13  statements if you wish to do so.  They don't need to be

14  lengthy.  They can help orient me to what the issues you're

15  raising, you're focusing on.  There are some rental properties

16  in New Jersey and several properties in Richmond, Virginia.

17  And your opening statement isn't evidence, but so you'll have

18  to put in the evidence in trial.  But helps if you wish to sort

19  of give me the walking tour of what it is you're going to

20  endeavor to prove.  Okay?

21          MR. REED:  Okay.

22          THE COURT:  And Ms. Hager, obviously you can make an

23  openings before you -- as you wish.  Okay?

24          MS. HAGER:  Yes, Your Honor.

25          THE COURT:  All right.  I will see you all on the

1    26th.  I'll ask this question, because I always do.  Is there

2    any possibility of settlement?

3           MS. HAGER:  I don't think so, Your Honor.

4           THE COURT:  Okay.  See you all on the 26th at 9

5    o'clock.

6           MS. HAGER:  Thank you, Your Honor.

7           THE COURT:  And the courtroom is -- you can get into

8    the court security, pass court security, I think, at 8:30.

9           MR. REED:  Your Honor, is there any way I can have my

10   phone at trial, because I use it as my -- like I have files and

11   notes and stuff like that.

12          THE COURT:  Okay.  Turn the ringer off.  I have to --

13   I will have to -- we'll have to provide the court security

14   officers with something in writing, which we'll do, authorizing

15   you -- do you use a computer too, Mr. Reed?

16          MR. REED:  Yes.

17          THE COURT:  Authorizing you to bring your phone and a

18   computer into court for the trial beginning on September 26th.

19          MR. REED:  Okay.

20          THE COURT:  All right?  But you have to keep the

21   ringer off and --

22          MR. REED:  Not a problem.  Not a problem.

23          THE COURT:  Okay.  And Ms. Hager, you can bring any

24   electronics in that you want.  Lawyers -- our court rule

25   permits lawyers to bring them in.

1          MR. REED:  That's why they asked me that, Your Honor.

2          THE COURT:  Nonlawyers, only with special permission

3    from the court.  And I will -- we will give the court security

4    officers a writing authorizing you to bring your phone and

5    computer into the court.  Okay?

6          MR. REED:  Okay.

7          THE COURT:  Anything else?  All right, see you all on

8    the 26th.  Thank you.

9          MS. HAGER:  Thank you.

10       (Whereupon these proceedings were concluded at 12:36 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                               I N D E X

3

4                               RULINGS

5                                          PAGE      LINE

6  Frank Reed's motion in limine to exclude      13        10

7  expert report and testimony of Oscar

8  Marquis, denied as moot.

9  ResCap Borrower Claims Trust's motion in      13        20

10 limine to exclude the expert testimony of

11 Christy Zoltun Donati, granted.

12 ResCap Borrower Claims Trust's motion in      14        15

13 limine to exclude evidence of claimant's

14 attempts to refinance the Matlack property,

15 denied.

16 ResCap Borrower Claims Trust's motion in      15        10

17 limine to exclude evidence of damages at

18 trial, denied

19 ResCap Borrower Claims Trust's motion in      16        19

20 limine to exclude the expert report and

21 testimony of Stevie Watson, granted in part.

22

23

24

25

|   |   | PAGE | LINE |
|---|---|------|------|
| 1 |   |      |      |
| 2 | ResCap Borrower Claims Trust's motion in | 17 | 25 |
| 3 | limine to exclude evidence concerning |   |   |
| 4 | claimant's attorneys' fees incurred in |   |   |
| 5 | defense of the foreclosure action, granted |   |   |
| 6 | in part. |   |   |
| 7 | ResCap Borrower Claims Trust's motion in | 18 | 17 |
| 8 | limine to exclude evidence concerning |   |   |
| 9 | claimant's expert witness fees as damages, |   |   |
| 10 | granted. |   |   |

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

PENINA WOLICKI

AAERT Certified Electronic Transcriber CET**D-569

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  September 15, 2016