**Hearing Date:  October 13, 2016 at 10:00 a.m. (Prevailing Eastern Time)**

MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor
San Francisco, CA  94108-5530
Telephone:   (415) 788-1900
Facsimile:   (415) 393-8087
Timothy J. Halloran - CA State Bar No. 104498
Karen K. Stromeyer - CA State Bar No. 245712

*Attorneys for Claimants*
*Bernard Ward and Colleen Halloran*
Claim No. 684

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, et al.<br><br>        Debtors. | Case No. 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

**BERNARD WARD AND COLLEEN HALLORAN'S RESPONSE TO**
**OBJECTION TO CLAIM NO. 684**

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................... 1

II.  PROCEDURAL BACKGROUND......................................................... 1

III. FACTUAL BACKGROUND .............................................................. 1

IV.  ARGUMENT ........................................................................................ 7

      A.  The Proof of Claim States a Claim for Relief............................. 8

            1.  Contract terms were sufficiently certain. ....................... 8

            2.  Reliance on statute of frauds is precluded by promissory estoppel. ...................................................... 10

            3.  Clear and unambiguous promise.................................... 11

            4.  Reliance on Promise ...................................................... 11

            5.  Damages......................................................................... 12

      B.  The Borrowers Trust is further precluded from asserting the statute of frauds to avoid the contract under California Civil Code section 1623................................................................. 16

      C.  Claimants set forth enforceable claims for negligent and fraudulent representation.......................................................... 17

      D.  Claimants set forth a claim for fraud. ....................................... 19

      E.  Claimants set forth an actionable claim for negligence. ........... 19

            1.  Duty................................................................................ 19

            2.  Breach, Causation, and Damages................................... 24

      F.  The Borrowers Trust has failed to present any evidence to refute Claimants' claims regarding wrongful foreclosure/set aside foreclosure sale. .............................................................. 24

      G.  Violation of California Business and Professions Code § 17200 ............ 24

V.   DISPUTED ISSUES OF FACT SHOULD BE SUBJECT TO AN EVIDENTIARY HEARING ................................................................. 25

## TABLE OF CONTENTS
(continued)

**Page**

VI.    CONCLUSION ................................................................................................ 26

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aceves v. U.S. Bank, N.A.,*
192 Cal.App.4th 218 (2011) .................................................................................. 11, 12

*Alexander v. Codemasters Group Limited,*
104 Cal.App.4th 129 (2002) ........................................................................................ 8

*Alvarez v. BAC Home Loans Servicing, L.P.,*
228 Cal.App.4th 941 (2014) ...................................................................... 20, 21, 22, 23

*Biakanja v. Irving,*
49 Cal.2d 647 (1958) ........................................................................................... 20, 21

*Boschma v. Home Loan Center, Inc.,*
198 Cal. App. 4th 230 (2011) ................................................................................... 19

*Bushell v. JPMorgan Chase Bank, N.A.,*
220 Cal.App.4th 915 (2013) ......................................................................... 11, 12, 17

*Bustamante v. Intuit, Inc.,*
141 Cal.App.4th 199 (2006) ....................................................................................... 8

*Byrne v. Laura,*
52 Cal.App.4th 1054 (1997) ..................................................................................... 10

*Fox v. Pollack,*
181 Cal.App.3d 954 (1986) ...................................................................................... 17

*Garcia v. World Savings, FSB,*
183 Cal.App.4th 1031 (2010) ................................................................................... 11

*In re Allegheny Intern., Inc.,*
954 F.2d 167 (3rd Cir. 1992) ...................................................................................... 7

*In re MF Global Holdings Ltd.,*
Nos. 11-15059, 11-02790, 2012 WL 5499847 (Bankr. S.D.N.Y. Nov. 13, 2012) ......... 7

*In re W.R. Grace & Co.,*
346 B.R. 672 (Bankr. D. Del. 2006) ............................................................................ 7

*Jolley v. Chase Home Finance, LLC,*
213 Cal. App. 4th 872 (2013) ............................................................................. 19, 22

iii

## TABLE OF AUTHORITIES
(continued)

**Page**

*Juran v. Epstein,*
    23 Cal.App.4th 882 (1994) ........................................................................ 10

*Kasky v. Nike, Inc.,*
    27 Cal.4th 939 (2002) ........................................................................... 25

*Ladas v. California State Auto. Assn.,*
    19 Cal.App.4th 761 (1993) ......................................................................... 8

*Lazar v. Superior Court,*
    12 Cal.4th 631 (1996) ........................................................................... 17

*Lueras v. BAC Home Loans Servicing, LP,*
    221 Cal. App. 4th 49 (2013) ............................................................ 17, 19, 20

*Marlene F. v. Affiliated Psych. Med. Clinic, Inc.,*
    48 Cal.3d 583 (1989) ........................................................................... 19

*Nymark v. Heart Fed. Savings & Loan Assn.,*
    231 Cal.App.3d 1089 (1991) ..................................................................... 20

*Olszewski v. Scripps Health,*
    30 Cal.4th 798 (2003) ........................................................................... 25

*Prentice v. North Am. Title Guaranty Corp., Alameda Division,*
    59 Cal.2d 618 (1963) ........................................................................... 15

*Redke v. Silvertrust,*
    6 Cal.3d 94 (1971) ............................................................................. 10

*Rufini v. CitiMortgage, Inc.,*
    227 Cal.App.4th 299 (2014) ..................................................................... 19

*Secrest v. Security Nat. Mortg. Loan Trust 2002–2,*
    167 Cal.App.4th 544 (2008) ..................................................................... 10

*West v. JPMorgan Chase Bank, N.A.,*
    214 Cal.App.4th 780 (2013) ..................................................................... 19

*Wilk v. Vencill,*
    30 Cal.2d 104, 180 P.2d 351 (1947) .............................................................. 10

## TABLE OF AUTHORITIES
(continued)

**Page**

### STATUTES

Bankruptcy Code
   § 502(b)(1) ................................................................................ 7

California Business and Professions Code
   § 17200 ................................................................................ 24

California Civil Code
   § 1550 ................................................................................ 8

California Civil Code
   § 1565 ................................................................................ 8

California Civil Code
   § 1580 ................................................................................ 8

California Civil Code
   § 1584 ................................................................................ 9

California Civil Code
   § 1623 ................................................................................ 16

California Civil Code
   § 1624 ................................................................................ 10

California Civil Code
   § 1714 ................................................................................ 23

U.S. Code
   §§ 501(a)-(b) ................................................................................ 7

### RULES

Federal Rules of Bankruptcy Procedure
   Rule 3001(f) ................................................................................ 7

**TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:**

## I.    PRELIMINARY STATEMENT

1.      Claimants Bernard Ward and Colleen Halloran ("Claimants") hereby

oppose the ResCap Borrower Claims Trust's (the "Borrowers Trust") Objection to Claim

No. 684.  The basis of this objection is that all of Claimants' causes of action asserted in

their Complaint in the pending, stayed, state court action fail as a matter of law.  For the

reasons stated herein, the Borrowers Trust fails to establish by admissible evidence the

invalidity of the claims.

## II.    PROCEDURAL BACKGROUND

2.      On May 14, 2012, Debtors filed a voluntary petition for relief under

chapter 11 of the United States Bankruptcy Code imposing an automatic stay on

Claimants' pending state court litigation against GMAC Mortgage, LLC ("GMACM") in

California Superior Court.

3.      On September 24, 2012, Claimants filed a timely Claim in the instant

matter.

4.      The Borrower Trust has filed the instant Objection to the Claim.

## III.    FACTUAL BACKGROUND

5.      On October 25, 2006, Claimants entered into a loan and promissory note

dated October 25, 2006, secured by a deed of trust, with GMACM ("Loan") for a

property located at 3300 Kirkham Street, San Francisco, California 94122 (the

"Property").  Unbeknownst to Claimants, at some point the loan was transferred to Wells

Fargo Bank, N.A., however GMACM serviced the loan at all relevant times herein.

(Objection at ¶ 15-16.)

1

6.      As part of the instant bankruptcy proceedings, servicing of the Loan was transferred from GMACM to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. Ocwen refuses to acknowledge that the Loan has been modified and had returned checks sent to them for the modified payment amount.

7.      In approximately May 2009, Claimants began experiencing financial difficulties in making their monthly payments. In December 2009 GMACM began non-judicial foreclosure proceedings related to the Property.

8.      In August 2010 Claimants, through their counsel, requested a loan modification pursuant to the Home Affordable Modification Program ("HAMP"). Initially, a loan modification under HAMP was denied on the grounds that the principal balance exceeded the program limits. Over the following months Claimants sent further correspondence and additional financial documentation to GMACM attempting to cure the delinquent amounts owing, and to negotiate a traditional modification for the Loan.

9.      On January 14, 2011, Claimants were informed that they were approved for a trial repayment plan ("Repayment Agreement"). The Repayment Agreement set forth a payment schedule to be made to suspend foreclosure activity on the account: payments of $3,260.26 due on February 1, 2011, March 1, 2011, and April 1, 2011. (See Exhibit F to Lathrop Declaration.) GMACM is expressly identified as the "Lender" in the Repayment Agreement.

10.     Claimants timely made all required payments under the Repayment Agreement.

11.     On or about April 21, 2011, an agent at Loss Mitigation at GMACM informed Claimants' counsel in a telephone conversation that Claimants were approved

2

as of April 21, 2011, for a traditional modification to the Loan which would require

payments of principal interest, taxes and insurance of $3,253.24 per month. The

modified interest rate was stated as "2.875 or 2.88" and the modified term of the loan was

432 payments. ("Permanent Loan Modification"). (See transcript of April 21, 2011

conversation, attached hereto as Exhibit 1.) The call concluded with the GMACM agent

stating that documentation regarding the Permanent Loan Modification would follow, but

likely would not arrive by May 1, so the Claimants should make the May payment of

$3,253.24 pursuant to these modified terms. (See transcript of April 21, 2011

conversation, attached hereto as Exhibit 1.)

      12.     On April 22, 2011, Claimants' counsel sent a letter to GMACM

confirming that on April 21, 2011, Claimants were approved for a permanent loan

modification with a payments of principal interest, taxes and insurance of $3,253.24 per

month for a term of 432 months, and that the modified interest rate was 2.88%. (See

Exhibit 3 to Complaint, Exhibit A to Claim.)

      13.     Pursuant to the stated loan modification, Claimants made the May 2011

payment of $3,253.24, which GMACM accepted and cashed. (See Exhibit 4 to

Complaint, Exhibit A to Claim.)

      14.     On April 28, 2011, GMACM sent correspondence to Claimants' counsel

confirming that Claimants were approved for a traditional permanent loan modification,

approved on April 21, 2011 with an effective date of May 1, 2011. The correspondence

confirmed the scheduled monthly payment was $3,253.24 which includes principal and

interest payment being $2,678.12, and the modified interest rate of 2.875%. (See Exhibit

5 to Complaint, Exhibit A to Claim.)

15.    Wells Fargo, the lender, had approved Claimants' permanent loan modification on April 7, 2011 via an email to GMACM. (See Exhibit G to Lathrop Declaration.)

16.    Additionally, GMACM's foundationless log of "Servicing Notes" attached as Exhibit E to Lathrop Declaration state in a note dated April 21, 2011 that Claimants were approved for a permanent loan modification with an effective date of May 1, 2011; modified payments of principal and interest of $2,678.12 and principal, interest, and insurance payment of $3,253.24; a modified interest rate of 2.875%; and a modified term of 432. (See "Servicing Notes," Exhibit L to Lathrop Declaration at page 69.)

17.    GMACM has no explanation for the gross negligence, if not outright deceit that occurred next. Despite possession of (1) the April 7, 2011 email from Wells Fargo approving the permanent loan modification; (2) Claimants' counsel's April 22, 2011 letter to GMACM confirming the Permanent Loan Modification; (3) GMACM's April 28, 2011 letter to Claimants' counsel confirming the Permanent Loan Modification; (4) the April 21, 2011 notation in GMACM's "Servicing Notes" confirming the permanent loan modification; and (5) Claimants' May 2011 payment of $3,253.24; the formal loan documentation was never sent to Claimants.

18.    Instead, on April 29 or May 5, 2011 someone at GMACM inexplicably resubmitted Claimants' information to Wells Fargo for approval of a permanent loan modification. (See "Servicing Notes," Exhibit L to Lathrop Declaration at page 67.) When doing so, the GMACM agent entered the wrong information, which allegedly caused Wells Fargo to deny Claimants a permanent loan modification on May 13, 2011.

4

(See "Servicing Notes," Exhibit L to Lathrop Declaration at page 66; Exhibit C to Huber Declaration.)

19.     The Borrowers Trust admits that the denial of Claimants' permanent loan modification was due to GMACM's "accounting error" i.e. negligence.  (See Objection at ¶ 23.)

20.     Armed with the erroneous May 13, 2011 denial of a permanent loan modification, GMACM immediately went forward with a foreclosure of the Property on May 16, 2011, without giving notice to Claimants or their counsel. (See "Servicing Notes," Exhibit L to Lathrop Declaration at page 65.)

21.     Despite full awareness that Claimants were represented by counsel, and despite having previously directed *all* communications regarding the Loan to that counsel, and having receipt of the denial for three days, on May 17, 2011, GMACM sent a letter sent via United States mail to Claimants' home address stating that Claimants' request for a permanent loan modification was denied.

22.     Before Claimants had a chance to receive GMACM's correspondence, GMACM *purchased the Property for itself* at a foreclosure sale on May 20, 2011 for $828,000 – an almost $300,000 discount from the $1,124,595 debt.

23.     Immediately upon receipt of GMACM's May 17, 2011 correspondence stating that Claimants' request for a permanent loan modification was denied, Claimants' counsel contacted GMACM on May 23, 2007. A GMACM agent, Brett Becker, informed Claimants' counsel that the foreclosure process for the Property was "under review" and was "working its way up the ladder," and that while this process was underway the status quo at the Property would be maintained – that there would be no

further sale or transfer of the property in any fashion. That day Claimants' counsel also

sent via facsimile and email a Notice of Dispute for illegal foreclosure and breach of

contract to Loss Mitigation for GMACM demanding that it acknowledge and perform

under the Permanent Loan Modification, and accordingly to set aside the wrongful

foreclosure and sale of the Property.

24.    That same day, May 23, 2011, GMACM enclosed check no. 12184971

issued by GMAC Mortgage, in the amount of $3,715.42 made payable to BERNARD V.

WARD. The accompanying unsigned cover letter did not state what the check

represented, or why it was issued. Instead the letter states that "these funds do not

represent the full amount due to reinstate your account at this time." It appears as though

that this payment by GMACM was an attempt to "unring the bell" and refund the

payment accepted by GMACM pursuant to the April 21, 2011 Permanent Loan

Modification. (See Exhibit 7 to Complaint, Exhibit A to Claim.) The letter then goes on

to state that the account "has been transferred to our attorney to begin foreclosure

proceedings." This is statement is patently false, as the property was foreclosed on and

sold to GMAC on May 20, *three days before* GMAC claims in this correspondence that it

will begin foreclosure process. (See Exhibit 7 to Complaint, Exhibit A to Claim.)

25.    Contrary to the oral representations of GMACM's agent that the status

quo at the property would be maintained, on May 26, 2011, eviction proceedings were

started. (See "Servicing Notes," Exhibit L to Lathrop Declaration at page 56.) On

June 3, 2011, agents of GMACM posted a notice to quit on the Property, effectively

beginning eviction proceedings to dispossess Claimants of their rightful possession of the

Property.

26.     Because Claimants could not rely upon the written or oral representations of GMACM, on June 8, 2011 a civil action was filed against GMACM in the Superior Court of the County of San Francisco, Case No. CGC-11-511574, alleging causes of action for (1) breach of contract; (2) negligence; (3) wrongful foreclosure; (4) to set aside wrongful sale; (5) negligent misrepresentation; (6) intentional misrepresentation; (7) fraud; (8) unfair business practices; (9) declaratory relief; (10) injunctive relief; and (11) specific performance.  (See Complaint, Exhibit A to Claim.)

## IV.    ARGUMENT

27.     Generally, a filed proof of claim that alleges facts sufficient to support legal liability to the claimant is prima facie evidence of the validity and amount of the claim.  Fed R. Bankr. P. 3001(f); 11 U.S.C. §§ 501(a)-(b).  The burden then shifts to the objector to produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.  *In re Allegheny Intern., Inc.,* 954 F.2d 167, 173-174 (3rd Cir. 1992).

28.     The party objecting to the proof of claim bears the burden of "providing evidence to show that the proof of claim should not be allowed."  *In re MF Global Holdings Ltd.,* Nos. 11-15059, 11-02790, 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012).  Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006).

A.     **The Proof of Claim States a Claim for Relief.**

29.     Claimants set forth a legally sufficient claim for breach of contract.  Under California law the communications between GMACM and Claimants' counsel were sufficient to constitute a contract and demonstrate mutual consent to the material terms.

1.     **Contract terms were sufficiently certain.**

30.     The Borrowers Trust claims that there was no contract formed as to a permanent loan modification because there was not "meeting of the minds" as to *all possible* terms of the contract.  However, far less is required under California law to form a binding contract.

31.     Contract formation requires mutual consent, which cannot exist unless the parties "agree upon the same thing in the same sense." Cal. Civ. Code §§ 1580, 1550, 1565.  "Mutual consent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Alexander v. Codemasters Group Limited*, 104 Cal.App.4th 129, 141 (2002).  "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Ladas v. California State Auto. Assn.*, 19 Cal.App.4th 761, 770 (1993).  The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. *Bustamante v. Intuit, Inc.,* 141 Cal.App.4th 199, 209 (2006).

32.     Here, the essential terms of the Permanent Loan Modification were stated three times between Claimants' attorney and GMACM: on April 21, 2011; on April 22, 2011; and on April 28, 2011.  These terms are also confirmed in GMACM's "Service

8

Notes" for April 21, 2011. Those terms were: Approval date of April 21, 2011 with an effective date of May 1, 2011; modified monthly payments of principal and interest of $2,678.12 and principal, interest, and insurance monthly payment of $3,253.24; a modified interest rate of 2.875%; and a modified term of 432. These terms are sufficient for a court to determine the scope of the duty – to make a certain payment ($3,253.24) by a certain date (May 1, 2011), for a certain term (432 months). The scope of the duty required is sufficiently set forth to determine if performance was made and to assess damages. The one exception, which the Borrows Trust focuses on is Claimants' attorney statement of the modified interest rate as 2.88%, which was a clear rounding of the interest rate, quoting the GMACM agent's statement during the April 21, 2011 phone call. (See transcript of April 21, 2011 conversation, attached hereto as Exhibit 1.)

33.    The Borrowers Trust constructs numerous other "essential terms" that were not covered by these communications – the amount of the modified principal balance of the Loan; the actions resulting from or the parties rights upon breach of the agreement (including the ability to assess late fees or initiate foreclosure); or the total amount paid over the life of the loan. However, none of these terms are strictly essential to the formation of a contract as they are not necessary for the court to determine the scope of the duty being imposed and assess damages, rather they constitute a laundry list of additional terms that may be *desirable* for a lender to include in a contract.

34.    Further, GMACM *accepted and cashed* the first installment of $3,253.24 for the May 1, 2011 payment under the terms of the Permanent Loan Modification. This constituted acceptance of the performance offered by Claimants under the terms of the agreement. *See* Cal. Civ. Code § 1584. GMACM thereafter beached the agreement by

9

refusing to accept any further payments under the stated terms, denying the existence of any loan modification, and proceeding with foreclosure, sale, and purchase of the property for itself.

2.   **Reliance on statute of frauds is precluded by promissory estoppel.**

35.   The Borrowers Trust next asserts that GMACM was not bound by the terms of the Permanent Loan Modification because none of the correspondence was signed by GMACM or Claimants, which renders any agreement invalid under the statute of frauds. Cal. Civ. Code § 1624. Generally, a contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." *Secrest v. Security Nat. Mortg. Loan Trust 2002–2*, 167 Cal.App.4th 544, 552 (2008). California courts have held that forbearance agreements altering a mortgage are covered by the statute of frauds. *Ibid.*

36.   Courts, however, "have the power to apply equitable principles to prevent a party from using the statute of frauds where such use would constitute fraud." *Juran v. Epstein*, 23 Cal.App.4th 882, 895 (1994). "Without the qualifying doctrine of estoppel in a proper case the statute would encourage rather than prevent the perpetration of frauds." *Wilk v. Vencill*, 30 Cal.2d 104, 108, 180 P.2d 351 (1947). Accordingly, equitable estoppel may preclude the use of a statute of frauds defense. *Byrne v. Laura*, 52 Cal.App.4th 1054, 1068 (1997). "The doctrine of estoppel has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute." *Redke v. Silvertrust*, 6 Cal.3d 94, 101 (1971).

37.     The elements of promissory estoppel are (1) a clear and unambiguous promise by the promisor, and (2) reasonable, foreseeable and detrimental reliance by the promisee. *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal.App.4th 915, 929 (2013).

### 3.     **Clear and unambiguous promise**

38.     Here, GMACM made numerous unambiguous statements that Claimants were approved for a permanent loan modification, and set forth specific terms, to which Claimants agreed. "To be enforceable, a promise need only be "definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." It is only where a supposed contract does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, that there is no contract. *Garcia v. World Savings, FSB,* 183 Cal.App.4th 1031, 1045 (2010). "[T]hat a promise is conditional does not render it unenforceable or ambiguous." *Ibid.*

39.     For example, in *Garcia v. World Savings,* an oral extension of time to cure a default by a foreclosure agent was deemed sufficient to support promissory estoppel. *Id.* at 1045. In *Aceves v. U.S. Bank,* U.S. Bank agreed to "work with Aceves on a mortgage reinstatement and loan modification" if she no longer pursued relief in the bankruptcy court. This also was deemed a clear and unambiguous promise sufficient to support promissory estoppel. *Aceves v. U.S. Bank, N.A.*, 192 Cal.App.4th 218, 231 (2011).

### 4.     **Reliance on Promise**

40.     As the servicer of a loan it is entirely foreseeable that a family living in a home, desperately trying to avoid foreclosure proceedings would rely on the statement

11

that they had been approved for a permanent loan modification, and make payments

thereunder, as actually occurred, and GMACM reasonably expected that Claimant would

rely on their statements, highlighted by the fact that Claimants were instructed to make

the May 1, 2011 payment despite the fact that confirming documentation would not

arrive prior to that time.  Claimants relied on these statements and did not seek alternate

loan financing from another lender, or seeking bankruptcy relief to restructure the Loan.

41.     Similarly, the court in *Bushell v. JPMorgan Chase Bank,* held that

plaintiffs detrimentally relied on Chase's promise to permanently modify their loan by

repeatedly contacting Chase, by repeatedly preparing documents at Chase's request, by

discontinuing efforts to pursue a refinance from other financial institutions or to pursue

other means of avoiding foreclosure, and by losing their home and making it unlikely

they could purchase another one, which adequately alleged detrimental reliance to sustain

a promissory estoppel cause of action.  *Bushell v. JPMorgan Chase Bank, N.A.*, 220

Cal.App.4th 915, 930 (2013).  Likewise, in *Aceves v. U.S. Bank, N.A.,* plaintiff foregoing

her rights under chapter 13 bankruptcy protections was sufficient for the plaintiff to

demonstrate detrimental reliance.  *Aceves v. U.S. Bank, N.A.,* 192 Cal.App.4th 218, 230

(2011).

42.     Accordingly, as Claimants meet all the requirements of promissory

estoppel, the Borrowers Trust is precluded from denying the Permanent Loan

Modification on the basis of the statute of frauds.

**5.     <u>Damages</u>**

43.     Because of GMACM's admitted negligence Claimants have been denied

the loan terms under the Permanent Loan Modification that they were promised by

GMACM, and that they were approved for by Wells Fargo.  Claimants have suffered

damages as a result of this breach of contract, and the negligent and/or fraudulent

representations of GMACM. Claimants were promised a Permanent Loan Modification

at certain terms. However, due to the ineptitude and indifference of GMACM, Claimants

were never sent confirming paperwork for the Permanent Loan Modification approved by

Wells Fargo in April 2011. Had GMACM simply completed this elementary task, this

case never have existed. Instead, some GMACM agent took it upon themselves to

unnecessarily resubmit Claimants' loan application to Wells Fargo for a second time,

despite a clear previous approval, and in doing do provided incorrect information.

GMACM admits this was their fault, and it is this clear error that caused Claimants to

lose the permanent modification that Wells Fargo had previously approved. Then,

instead of any one of the *ten* GMACM agents that handled Claimants' account in the

following days realizing this colossal error and contacting Wells Fargo to reinstate the

original permanent loan modification, GMACM took the erroneous denial of the second

modification, recklessly disregarding the first approval clearly noted in their "Service

Notes," and acted upon it by immediately foreclosing on Claimants home, and selling it

to themselves, at discount. Not one of these ten GMACM agents recognized or took

efforts to rectify what was clearly apparent – that GMACM was wrongfully acting on a

loan denial it had no reasonable basis to believe was valid.

     44.    GMACM has taken the position that (although undisputedly approved by

Wells Fargo in April 2011) there was no permanent loan modification. Accordingly,

GMACM (and successor-in-interest Owen) has maintained that the pre-modification

terms are those that still apply to this property. These are substantially worse terms than

Claimants were promised in April 2011:

| October 25, 2006 Loan Terms: | |
|---|---|
| Principal: | $905,000 |
| Type: | Adjustable Rate |
| Interest Rate: | • 7.25% for the initial period (Nov 1, 2006-Nov 1, 2011)<br>• Thereafter (Nov 1, 2011-2046) interest is calculated by adding 3.25% to current index (12-month average of annual yields for United States Treasury Securities) not to exceed 9.95% |
| Monthly Principal and Interest payment: | 55 payments of $2,740.57<br>5 payments of $6,538.84<br>420 payments of $7,843 |
| Length of loan (number of payments) | 480 months (40 years) + Balloon payment |

| April 2011 Modification: | |
|---|---|
| Principal: | $1,129,853.88 |
| Type: | Step/fixed |
| Interest Rate: | 2.875%, 3.875%, 4.86% |
| Monthly Principal and Interest payment: | $2,706.95, $3,648.48, $4,575,91 |
| Maturity Date: | 04/01/2047 (432 months) |
| Modification Effective Date: | 04/01/2011; First payment due: 05/01/2011 |

45.     Due to GMACM's admitted error Claimants have been damaged in the amount of the difference between what the interest rate for the October 2005 and the loan modification that Claimants were approved for and promised in April 2011 totaling at least $400,000.  (See Declaration of Timothy J. Halloran at ¶ 4.)

46.     In addition, Claimants have incurred attorney's fees and costs based on GMACM's admitted wrongful foreclosure and sale.  Claimants were forced to file a civil lawsuit and incur $91,140.00 in attorney's fees and $11,020.37 in costs to reinstate the possession of their home and attempt to obtain modified loan terms.  (See Halloran Decl.

14

at ¶ 3.)  GMACM took the position that the denial of the loan modification was due the lender, Wells Fargo, refusing to extend a permanent loan modification.  When a plaintiff must bring an action against a third party as "the natural and probable consequence" of the defendant's negligence, the plaintiff is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred.  *Prentice v. North Am. Title Guaranty Corp., Alameda Division* 59 Cal.2d 618, 620 (1963).

47.    Throughout the state court litigation Claimants and GMACM tried to work out terms for a new loan, and actually reached an agreement on terms prior to GMACM's bankruptcy.  (See Halloran Decl. at ¶ 5.)  Claimants and GMACM actually reached an agreement on modified loan terms prior to GMACM's bankruptcy, however, while GMACM offered to pay some attorney's fees, the parties could not reach an agreement on the exact amount of attorney's fees and costs to be paid, which delayed settlement of the entire matter.  (See Halloran Decl. at ¶ 5.)

48.    GMACM refused to take any loan payments from Claimants during the ongoing litigation.  Likewise, Ocwen has refused to accept any loan payments, and returned Claimants' checks uncashed.  (See Halloran Decl. at ¶ 8.)  Ocwen is presumably charging Claimants interest and penalties for late payments, although GMACM has admitted that this dispute was wholly caused by GMACM's error.  This is an additional element of Claimants damages.

49.    In apparent efforts to demonstrate that Claimants failed to mitigate these damages, the Borrowers Trust highlights two alleged loan modifications that they purport were offered to Claimants which offered "better" terms than they would have received in

the original Permanent Loan Modification.  However, absolutely no evidence is presented

that neither of these alleged loan modifications were actually offered to Claimants, or

appropriately, to their counsel.  (See Halloran Decl. at ¶¶ 6-7.)  These "offers" appear to

be self-serving documentation produced internally by GMACM as part of its own loss

mitigation efforts.  Therefore, any contention that Claimants failed to mitigate their

damages by accepting these "better" loan terms is unfounded.

**B.**     **The Borrowers Trust is further precluded from asserting the statute of**
          **frauds to avoid the contract under California Civil Code section 1623.**

50.     Based on the circumstances here, the Borrowers Trust is barred from using

the statue of frauds as a defense of this matter under Civil Code section 1623.  This

section states:

> Where a contract, which is required by law to be in writing,
> is prevented from being put into writing by the fraud of a
> party thereto, any other party who is by such fraud led to
> believe that it is in writing, and acts upon such belief to his
> prejudice, may enforce it against the fraudulent party.

51.     Here, the loan modification was required to be in writing.  GMACM

represented to Claimants that the Permanent Loan Modification for which they were

approved in April 2011 would be put in writing, and that it would be sent to Claimants

shortly.  (See transcript of April 21, 2011 conversation, attached hereto as Exhibit 1.)

However, this was a false statement – GMAMC never prepared and never sent the loan

paperwork to Claimants.  Claimants detrimentally relied on this false statement that the

formal documentation was forthcoming and thus the permanent modification was in

writing and definite.  They relied on this false statement and ceased any other efforts to

restructure the Loan.  As GMACM was the cause of the contract failing to be put into

writing, they cannot now use this failure as a basis to bar enforcement of the agreement.

**C.     Claimants set forth enforceable claims for negligent and fraudulent representation.**

52.     Negligent misrepresentation of fact is a form of deceit.  It is undisputed that "a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 68-69, 77-80 (2013); *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 930 (2013).

53.     The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce the plaintiff's reliance, (4) ignorance of the truth and justifiable reliance by the plaintiff, and (5) damages.  *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986).  The elements of a fraudulent misrepresentation are the same except that in the second element the defendant made the misrepresentation knowing the representation was false at the time it was made.  *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996).

54.     Here there is no question that GMACM agents made misrepresentations of fact to Claimants, with *at a minimum* no reasonable grounds to believe they were true, if not outright knowledge of their falsity.

55.     The Borrowers Trust conveniently takes a myopic view of the representations made to Claimants in order to construe them truths.  On April 21, 2011 Claimants were informed that they were approved for a permanent loan modification, and that as long as they made the May 1, 2011 payment, no foreclosure proceedings would go forward, regardless of whether the formal documents were received or returned. Claimants were not informed that GMACM would not send the documents, that

GMACM would resubmit their modification for a second time unnecessarily and incorrectly, and that as GMACM had not sent the paperwork on the original loan modification to Claimants, Claimants would lose the Permanent Loan Modification, and their home, and be forced to go through years of litigation. GMACM then affirmatively concealed from Claimants that they had resubmitted the loan, and received a denial from the lender Wells Fargo. Rather than contacting counsel, as it had in every other communication, GMACM instead sent via the slowest possible means – US Mail – notification that the modification Claimants did not know they were being submitted for, had been denied. Then, GMACM went forward with a foreclosure and foreclosure sale to itself before Claimants had received its letter informing them of the denial of the loan modification.

56.     Even more egregiously, on May 23, 2011 GMACM sent correspondence to Claimants stating that "[y]our account has been transferred to our attorney <u>to begin foreclosure proceedings.</u>" [Emphasis added]. This is statement is patently false, because <u>the foreclosure and sale to GMACM occurred on May 20, *three days before* GMAC states in this correspondence that it will "begin" the foreclosure process.</u> (See Exhibit 7 to Complaint, Exhibit A to Claim.) This is an outright material misrepresentations about the date, time, or status of a foreclosure sale.

57.     GMACM agent Brett Becker then represented to Claimants on May 23, 2011 that GMACM would not go forward with eviction or other proceedings while the loan modification was under review despite the fact eviction proceedings had already started. Claimants then received a three-day notice to quit the Property on June 3, 2011.

**D.**   **Claimants set forth a claim for fraud.**

58.   In order to state a cause of action for fraud against a lender, as with any other type of fraud, the borrower must allege: (1) a misrepresentation (false representation, concealment or nondisclosure) as to a material fact; (2) knowledge of its falsity or scienter; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. *West v. JPMorgan Chase Bank, N.A.*, 214 Cal.App.4th 780, 792 (2013); *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248 (2011). Thus, an unqualified representation that a loan will be modified or approved may support an action for fraud where the borrower is justified in assuming superior knowledge on the part of the bank officer and the representation is expressed in a manner that is intended to be relied upon and is in fact relied upon by the borrower to his or her detriment. *Rufini v. CitiMortgage, Inc.*, 227 Cal.App.4th 299, 308-309 (2014); *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 68-69, 77-80 (2013); *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 894-895 (2013).

59.   As discussed above GMACM agents' malfeasance robbed Claimants of the permanent loan modification they had received, then GMACM agents concealed this fact from Claimants, instead fast tracking the Property for acquisition by GMACM.

**E.**   **Claimants set forth an actionable claim for negligence.**

60.   To make out a claim for negligence, a plaintiff must plead four elements: duty, breach, causation, and damages. *Marlene F. v. Affiliated Psych. Med. Clinic, Inc.*, 48 Cal.3d 583, 588 (1989).

**1.**   **Duty.**

61.   The Borrowers Trust asserts that Claimants cannot prevail on a negligence claim because lenders owe no duty of care to borrowers. However, California Courts of

Appeal are split as to whether lenders owe borrowers a duty of care when considering a

loan modification application. See *Alvarez v. BAC Home Loans Servicing, L.P.*, 228

Cal.App.4th 941, 948 (2014) [a lender owed a duty to exercise reasonable care in

processing and reviewing plaintiff's loan modification applications]; *cf. Lueras v. BAC*

*Home Loans Servicing L.P.*, 221 Cal.App.4th 49, 67, 163 Cal.Rptr.3d 804 (2013) [loan

modification is a traditional lending activity and does not create a duty of care].

62.    As a general rule, a financial institution owes no duty of care to a

borrower when the institution's involvement in the loan transaction does not exceed the

scope of its conventional role as a mere lender of money. *Nymark v. Heart Fed. Savings*

*& Loan Assn.*, 231 Cal.App.3d 1089, 1095-1096 (1991).   However, the general rule does

not support the sweeping conclusion that a lender never owes a duty of care to a

borrower.   Rather, the question of whether a lender owes such a duty requires a balancing

of the six-factor test set forth in *Biakanja v. Irving,* 49 Cal.2d 647 (1958).   *Nymark v.*

*Heart Fed. Savings & Loan Assn.*, *supra*, 231 Cal.App.3d at 1098-1099.  These factors

are:  "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the

foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury,

(4) the closeness of the connection between the defendant's conduct and the injury

suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of

preventing future harm."  *Biakanja v. Irving, supra,* 49 Cal.2d at 650.

63.    Here, based on *Biakanja* factors, GMACM owed Claimants a duty of care

as at least five of the six factors weigh in favor of finding a duty of care.

64.    First, the transaction was unquestionably intended to affect Claimants. The decision on Claimants' loan modification application would determine whether or not they could keep their home.

65.    Second, the potential harm to Claimants from mishandling the application processing was readily foreseeable: the loss of an opportunity to keep their home was the inevitable outcome. GMACM's admitted errors of failing to send the permanent loan modification documentation, unnecessarily resubmitting Claimants for a second loan modification, and in doing so conveying incorrect information, directly deprived Claimants of the permanent loan modification that they had in fact been granted.

66.    Third, the injury to Claimants is certain, they lost the loan modification that they had been approved for, their home was foreclosed on and bought by GMAMC. Claimants are currently in possession of the home, however they do not have certain loan terms, have been damaged in the amount of the interest rate they were promised and the loan rate GMACM's successor-in-interest Ocwen asserts is the current loan rate. Ocwen is presumably issuing penalties to Claimants for late payments on the loan, although they refuse to accept any loan payments due to the current pending litigation.

67.    Fourth, there is a close connection between GMACM's conduct and any injury actually suffered because GMACM's admitted error in unnecessarily resubmitting Claimants for a second loan modification, and in doing so conveying incorrect information, was the *direct cause* of Claimants losing the permanent loan modification that they had previously been approved for.

68.    Fifth, as respect to this *Biakanja* factor, the *Alvarez v. BAC Home Loans Servicing, L.P.* court found it "highly relevant that the borrower's ability to protect his

21

own interests in the loan modification process is practically nil and the bank holds all the

cards:"

> Traditionally, banks managed loan "from cradle to grave" as they made mortgage loans and retained the risk of default, called credit risk, and profited as they were paid back. These tasks have been dispersed among different actors in the modern mortgage servicing context, however, changing the relationships between the borrower, the loan originator, the ultimate holder of the loan, and the servicer of the loan. First, borrowers are captive, with no choice of servicer, little information, and virtually no bargaining power. Servicing rights are bought and sold without input or approval by the borrower. Borrowers cannot pick their servicers or fire them for poor performance. The power to hire and fire is an important constraint on opportunism and shoddy work in most business relationships. But in the absence of this constraint, servicers may actually have positive incentives to misinform and under-inform borrowers. Providing limited and low-quality information not only allows servicers to save money on customer service, but increases the chances they will be able to collect late fees and other penalties from confused borrowers.

*Alvarez v. BAC Home Loans Servicing, L.P.*, *supra*, 228 Cal.App.4th at 949. The court

held that "the borrower's lack of bargaining power, coupled with conflicts of interest that

exist in the modern loan servicing industry, provide a moral imperative that those with

the controlling hand be required to exercise reasonable care in their dealings with

borrowers seeking a loan modification." *Id.*

69.     Sixth, as the *Alvarez* court also recognized, the policy of preventing future

harm also strongly favors imposing a duty of care on defendants. "[T]he California

Legislature has expressed a strong preference for fostering more cooperative relations

between lenders and borrowers who are at risk of foreclosure, so that homes will not be

lost." See *Jolley v. Chase Home Finance*, 213 Cal.App.4th 872, 903. Ultimately, it is

simply unreasonable to assume that the legislature intended to insulate the mortgage

servicing industry from having to meet even the most basic standard of care in performing their duties.

70.    In *Alvarez* plaintiffs did not allege that the defendant owed a duty to offer or approve a loan modification.  Rather, plaintiffs alleged that defendants owed them a duty to exercise reasonable care in the processing and review of their loan modification applications once they had agreed to consider them.  *Alvarez v. BAC Home Loans Servicing, L.P.*, *supra*, 228 Cal.App.4th at 944.

71.    The facts in the instant case are even more egregious that those in *Alvarez*.  In *Alvarez*, the plaintiff was denied a permanent loan moderation that by all metrics he would have received but for the defendant's transmission of incorrect information.  However, Claimants in this case h*ad already been approved for a permanent loan modification*.  It was the subsequent errors of GMACM of unnecessarily resubmitting Claimants for a second loan modification, and in doing so conveying incorrect information, that caused Claimants to lose what they had already been granted.  Furthermore, no one at GMACM noticed this egregious error or questioned the result, rather they blasted ahead, foreclosing on the property immediately and buying it for itself at the foreclosure auction.

72.    Finally, Claimants are not seeking to impose a special or heightened duty upon GMACM.  Rather, "[t]he California legislature has determined that a person who undertakes an activity owes a duty to others to exercise ordinary care or skill."  Cal. Civ. Code § 1714.  Here, GMACM undertook the activity of servicing Claimants' loan.  Having undertaken that task, it owed Claimants a duty to exercise ordinary care in

carrying out the task and not to commit egregious errors that caused Claimants to lose a

permanent loan modification that allowed them to remain in their home.

### 2. Breach, Causation, and Damages.

73.    As discussed *infra*, as a direct result of the wanton failure of GMACM to

exercise care in relation to Claimants' loan modification, Claimants were they lost the

loan modification that they had been approved for, their home was foreclosed on and

bought by GMAMC.  Claimants are currently in possession of the home, however they

do not have certain loan terms, have been damaged in the amount of the interest rate they

were promised and the loan rate GMACM's successor-in-interest Ocwen asserts is the

current loan rate.  Ocwen is presumably issuing penalties to Claimants for late payments

on the loan, although they refuse to accept any loan payments due to the current pending

litigation.  Accordingly, Claimants respectfully request that this Court overrule the

Borrowers Trust's objection as to this claim.

### F. The Borrowers Trust has failed to present any evidence to refute Claimants' claims regarding wrongful foreclosure/set aside foreclosure sale.

74.    The Borrowers Trust asserts that these claims are moot because the

foreclosure has been rescinded.  However, they offer no evidence in support of this

contention, and no evidence that title has been returned to Claimants. They only cite as

evidence their "Servicing Notes" for which absolutely no foundation has been provided.

### G. Violation of California Business and Professions Code § 17200

75.    California's Unfair Competition Law ("UCL") prohibits any "unlawful,

unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL

incorporates other laws, and therefore violations of other laws may be treated as unfair

competition under the "unlawful" prong of the UCL. *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

24

949 (2002). A business practice may also be "unfair or fraudulent in violation of the

UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30

Cal.4th 798, 827 (2003). Here, based on the above, GMAMC engaged in a practice of

gross misconduct with relation to the servicing of Claimants' loan, causing them to lose a

loan they were approved for.

## V.    DISPUTED ISSUES OF FACT SHOULD BE SUBJECT TO AN EVIDENTIARY HEARING

76.    There is a clear conflict between the parties as to the critical facts. In the

event that this Court does not consider the evidence sufficient for judgment for

Claimants, then Claimants that the matter be set for an evidentiary hearing. The

Borrowers Trust relies virtually entirely on the Lathrop Declaration for the factual basis

and its evidence in support of the Opposition. However, Lathrop's sole competency to

testify is that she has reviewed GMACM's records and is reporting their contents. She

has no firsthand knowledge of any of the facts contained in the records. She cannot testify

whether the records are truthful, nor can she testify as to whether they are complete.

These records are cryptic, and she cannot testify as to whether these records omit

important facts, or are self-serving. The records produced by Lathrop, particularly the

"Servicing Notes" completely lack a meaningful foundation, and as such are

inadmissible.

## VI.    <u>CONCLUSION</u>

Wherefore, Claimants respectfully request that this Court overrule the Borrowers

Trust's Objection to the Claim, and other such further relief as this Court may deem

necessary and proper.


DATED:  September 20, 2016             MURPHY, PEARSON, BRADLEY &
                                      FEENEY


                                      By _____
                                         Timothy J. Halloran
                                         Karen Stromeyer
                                         Attorneys for Claimants
                                         BERNARD WARD and
                                         COLLEEN HALLORAN


3025933.docx

# EXHIBIT 1

12-12020-mg    Doc 10132    Filed 09/21/16    Entered 09/21/16 13:53:58    Main Document
Pg 34 of 36

12-12020-mg    Doc 9980-4    Filed 07/14/16    Entered 07/14/16 11:26:55    Lathrop
Decl. Exhibit A    Pg 36 of 38

**[Transcription of call between Bernard Ward and Colleen Halloran's representative and GMAC representative on April 21, 2011, produced by GMAC in the course of litigation in *Ward v. GMAC Mortgage LLC*, San Francisco Superior Court Case No. CGC-11-511574]**

**GMAC:** Loan Resolution this is Mark, account number please

**HALLORAN:** Uh, account number is ████ 3940

**GMAC:** Thank you, your full name?

**HALLORAN:** My full name is Timothy Halloran

**GMAC:** Halloran, is that how you pronounce your name?

**HALLORAN:** Yes it is.

**GMAC:** Mr. Halloran, please do verify the account holder and the last 4 digits of the social security number?

**HALLORAN:** Bernard V. Ward is the account holder and the last 4 digits of the social is 3158. I am the attorney for Mr. Ward.

**GMAC:** Thank you. The property address please?

**HALLORAN:** 3300 Kirkham Street is the property address.

**GMAC:** Thank you. Is the buyer currently occupying the property?

**HALLORAN:** Yes, yes, and the zip code is 94122.

**GMAC:** Thank you for that information Mr. Halloran. The account is in foreclosure, however it has been approved for a traditional modification last 21st of April, 2011.

**HALLORAN:** Okay. And what are the terms?

**GMAC:** Okay. It is... (Unintelligible) of that will be by the first of May 2011. The modified principal and interest would be $2,678.12.

**HALLORAN:** Uh-huh.

**GMAC:** The modified principal, interest, taxes and insurance $3,253.24.

**HALLORAN:** Okay, $3,253.24....

**GMAC:** Hm?

-1-

12-12020-mg    Doc 10132    Filed 09/21/16    Entered 09/21/16 13:53:58    Main Document
Pg 35 of 36

12-12020-mg    Doc 9980-4    Filed 07/14/16    Entered 07/14/16 11:26:55    Lathrop
Decl. Exhibit A    Pg 37 of 38

**HALLORAN:** I'm sorry, I'm just writing this down, so hold just....it's three...

**GMAC:** Okay, I see.

**HALLORAN:** Huh?

**GMAC:** Its $3,253...

**HALLORAN:** $3,253 What?

**GMAC:** And 24 cents.

**HALLORAN:** 24 cents. That's the monthly payment, principal...?

**GMAC:** That's correct.

**HALLORAN:** Okay great.

**GMAC:** The modified rate...I'm sorry?

**HALLORAN:** And she should...go ahead.

**GMAC:** The modified rate would be 2.875 or 2.88.

**HALLORAN:** Okay.

**GMAC:** The modified term 432.

**HALLORAN:** 432 payments?

**GMAC:** Yes.

**HALLORAN:** Okay, what's the APR on the modified rate?

**GMAC:** I'm sorry?

**HALLORAN:** What, what's the interest rate...the modified interest rate?

**GMAC:** 2.875 or 2.88.

**HALLORAN:** 2.88 is the modified interest rate. Okay. Uh, and should she be receiving...my client receiving the modified terms?

Claim Number: 684
Bernard Ward and Colleen Halloran v. GMAC Mortgage LLC and DOES 1-20
Type: POC

12-12020-mg    Doc 10132    Filed 09/21/16    Entered 09/21/16 13:53:58    Main Document
Pg 36 of 36

12-12020-mg    Doc 9980-4    Filed 07/14/16    Entered 07/14/16 11:26:55    Lathrop
Decl. Exhibit A    Pg 38 of 38

**GMAC:** That is correct. Any time from now on I will go ahead and send the documentation or the statement in regards to the approval. And once the borrow have receive it, all he...all she has to do or you need...the borrower needs to have it notarized, okay?

**HALLORAN:** Okay, and should she...if the material doesn't arrive before May 1 should my client, nevertheless make the $3,253 payment for May 1.

**GMAC:** That is correct.

**HALLORAN:** Gotcha. Alright. Uh, is there...can it be faxed to me as the attorney so that I can take a look at the deed, the modification or emailed to me, either way?

**GMAC:** Um, I would recommend for you to have that by the borrower, once she will be able to receive it. Because as of as of now will not, we have not yet generate that modification documents in regards to that...

**HALLORAN:** Gotcha.

**GMAC:** ..as well.

**HALLORAN:** Okay, so it sounds like it may not get there before the May 1 so I will just make sure she makes the payment May 1st, that's $3,253.24

**GMAC:** That is correct.

**HALLORAN:** Alright, thank you very much.

**GMAC:** Thank you for calling Mr. Halloran and have a good one.

**HALLORAN:** You too. Bye-bye.

**GMAC:** Bye now.

Claim Number: 684
Bernard Ward and Colleen Halloran v. GMAC Mortgage LLC and DOES 1-20
Type: POC