## Exhibit A

Exhibit A

No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 4542 and 4567 | Michael Alape (4542)<br>Aida Alape (4567)<br><br>100 Lakeview Ave<br>Piscataway, NJ 08854<br><br>$1,000,000 each<br><br>Residential Capital LLC | Escrow Issue | Suncoast Mortgage Corporation originated a loan in the amount of $280,000 to claimants on March 11, 2006. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants assert "loss of home due to (GMAC) Residential Capita LLC negligence to secure maximum flood insurance" as basis for claim in box 2 of the proof of claim form.  Claimants attach a chronology of how damages occurred and Claimants' attempts to get help paying for property damage, but provides no additional explanation or documentation in support of the claim. On June 21, 2013, Debtors sent Claimants a letter requesting additional information and documentation in support of the claim. Claimants responded on July 22, 2013. Claimant attached the original Proof of Claim, a document label "Standard Flood Hazard Determination," a Portion of "Mandatory Purchase of Flood Insurance Guidelines September 2007, Section C," an insurance policy Proof of Loss form, and a "Notice of Intention to Foreclose" from Ocwen dated June 17, 2013.<br><br>Claimants allege they had inadequate flood insurance and that GMACM incorrectly determined that their home was in a "B" flood zone when the property was actually in an "AE" zone. Claimants assert that GMACM's failure to properly identify their flood zone is a violation of the Flood Disaster Protection Act.  Claimants also allege GMACM eliminated the Claimants' flood insurance plan and stopped requiring the related monthly escrow payments without notifying | 10 |

| Claim No(s). | Name and Address Claim Amount Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | the Claimants.<br><br>Debtors have no liability for the allegation that GMACM incorrectly determined their home was in an incorrect flood zone or that it improperly eliminated Claimant's flood insurance plan. Non-Debtor CoreLogic, a third party vendor that handled property preservation and property related details, had the account listed in a Non-Required Flood Zone. No Debtor was involved in this decision. At the time of origination, CoreLogic (f/k/a/ First American Flood Data Services) determined that the property was in Flood Zone B and therefore did not require flood insurance. In April 2009, CoreLogic reduced the coverage of the Claimants' voluntary flood policy, as it determined that the original premium of $388.00 only purchased coverage of $24,100 (rather than the prior $250,000). Because at the time of that reduction the Property's flood zone (assigned by CoreLogic) did not require a higher amount of insurance, Debtors did not start flood gap insurance when the decrease in coverage occurred.<br><br>In July 2010, CoreLogic did a second review of the Property as a result of a FEMA map revision. At that time, CoreLogic determined that the property was located in flood zone X and as a result flood insurance was not required. This was a mistake, as the property should have been listed in flood zone AE. However, GMACM was not aware of the mistake, and therefore did not require insurance in addition to the Claimants' voluntary coverage of $24,100. At no time was the | |

ny-1233022

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimants' voluntary coverage cancelled.<br><br>Debtors also have no liability for violating the Flood Disaster Protection Act because the act does not allow for a private right of action. See Segall v. Rapkin, 875 F. Supp. 240, 241 (S.D.N.Y. 1995) (holding that there was no private right of action for a borrower against a company that mistakenly determined their property to be in the wrong flood plain); Wentwood Woodside I, L.P. v. GMAC Commercial Mortg. Corp, 419 F.3d 310, 323 (5th Cir. 2005).<br><br>GMACM has no liability for the allegation that it reduced Claimants' insurance coverage because Claimants' coverage was reduced because Claimants' premium could not purchase the previous amount of coverage, but could only purchase $24,100 in coverage. Such coverage was purchased voluntarily by Claimants. | |
| 3712 | Hermenegildo Firpi and Nelia Guzman<br><br>1374 NE 178th St North Miami Beach, FL 33162<br><br>$147,000<br><br>Residential Capital, LLC | Escrow Issue | Non-Debtor Bank United FSB originated a loan in the amount of $256,000 on August 4, 2006. Loan was securitized and Wells Fargo was appointed trustee on or about October 1, 2006. Debtor GMAC Mortgage, LLC serviced the loan from October 25, 2006 until servicing transferred to Ocwen Loan Servicing on February 16, 2013. At the time of transfer to Ocwen, the loan was due for September 1, 2008 payment.<br><br>Claimants assert "Civil Lawsuit for civil theft (attached)" as basis for claim in box 2 of the proof of claim form. Attached to the proof of claim was a filed complaint alleging that GMACM received insurance funds in the amount of $125,000.00, but | 10 |

3

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | never released any of the monies to the Claimants. Claimants attach documents to the proof of claim related to litigation filed on August 7, 2012 in the 11th Judicial District, in and for Miami-Dade County, Florida, Case No. 12-29666CA21.  The complaint alleges breach of contract and theft related to insurance funds associated with a fire to the property in July 2008.  Claimants allege GMACM withheld insurance payment because claimants were having the repair work done for less than the full amount, and that a portion of the payment was for personal property.  Because of the alleged failure to disburse, claimants were unable to complete the repairs.  A letter was sent to the claimants for additional information on June 21, 2013. No response was received.<br><br>According to the Debtors' books and records, a fire on the property occurred on July 11, 2008; however, Claimant did not notify GMACM of the fire. On August 8, 2008, a property inspection was conducted because the account was more than 45 days delinquent.  The inspection reported that the property was vacant and that there appeared to be more than $2,000 in fire damage to the property.  A letter was mailed to the Claimants on August 8, 2008 to inform them that the property appeared to be vacant.<br><br>GMACM referred the Claimants' account to foreclosure on December 8, 2008 because it was owing for the September 2008 through December 2008 payments. GMACM conducted a property inspection on December 11, 2008 to confirm that the property was vacant due to fire damage.  GMACM began property | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | preservation repair work, and a Loss Draft (a suspense account to hold future insurance proceeds) was set up on January 6, 2009. GMAC spoke to an adjuster on January 9, 2009, who stated that the fire loss was claimed by the borrower/home owner.  At the time, the insurance claim was under investigation due to the homeowner being arrested for arson.<br><br> The insurance company eventually settled with the claimants in the amount of $200,000.  The insurance company provided a check to claimants in the amount of $125,000 on July 17, 2009, which included funds both to repair the property and replace the contents lost in the fire.  As is customary, the check was made out to both the homeowner and GMACM.<br><br>It was part of GMACM's policies and procedures not to release any insurance funds without first receiving: (1) the endorsed insurance claim check, (2) Homeowners Statement, (3) Insurance Adjusters Report/Contractors Estimate (the "<u>Insurance Estimate</u>"), (4)  signed contractor agreement, and (5) Contractor Affidavit indicating that repairs have been completed.  These requirements were listed in a letter to Claimants on August 10, 2009.<br><br>GMACM received a quote signed by a contractor and the claimants dated September 2, 2009 indicating that the cost of repairs would be $52,600.  GMACM received the endorsed insurance check from claimants on September 10, 2009. |  |

5

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | The insurance carrier did not provide a breakdown of how the funds were to be allocated between property repairs and content replacement.  Multiple calls were placed by GMACM's insurance department to the insurance adjuster to obtain a copy of the settlement documents; however, GMACM was only able to confirm with the adjuster verbally the amount of the settlement and that two additional payments were issued totaling $75,000.00 to the borrower's attorney and public adjuster.  Because GMACM was unable to confirm if any of the funds were for contents, it was unable to release any of the funds to the borrower under contents.<br><br>GMACM informed the claimants on multiple occasions that the insurance payment could not be disbursed until all of the necessary documentation, including the Insurance Estimate, was provided; however, the claimants did not provide GMACM with a copy of the Insurance Estimate. On September 10, 2009, the Debtors' books and records reflect the property as a vacant foreclosure. Funds were deposited into a suspense account, where they remain.<br><br>In a letter from claimants' attorney dated September 2, 2011, the Claimants included the Homeowners' statement, contractor estimate and demand that $40K be released for the personal property.<br><br>GMACM sent letters to claimants on February 10 and March 11, 2011 requesting | |

ny-1233022

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | the missing items: affidavit of bills paid and release of liens, insurance estimate and inspection report. Additional letters requesting the Insurance Estimate were sent on April 8, August 1, October 19, November 15, and December 14, 2011, and also on March 6 and March 30, 2012, all requesting the same information requested in the February 10, and March 11, 2011 letters.  The Insurance Estimate was never received, though GMACM did receive a third party estimate from Epic Estimators in the amount of $267,106.94 and a contract from M.R. Sanchez in the amount of $52,300.  However, because GMACM did not receive the settlement documents confirming how the funds were to be allocated, it was not able to accept the third party estimates in lieu of an estimate from the insurance company.<br><br>The property was sold in a foreclosure sale in June 2012. Property was sold to a third party in July of 2012 but was rescinded later that month because the buyer did not remit the funds agreed upon.<br><br>The entire $125,000 insurance balance was transferred to Ocwen Loan Servicing, LLC when the loan was service transferred on February 16, 2013.<br><br>Claimants also allege that during this time they were engaged in loss mitigation efforts that were not completed because they couldn't complete the repairs on the property and therefore were forced into foreclosure.  Debtors have no liability for their claims related to loss mitigation because in all instances GMACM | |

ny-1233022

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | acted in accordance with its policies.  Claimants spoke with a representative of GMACM via phone on July 8, 2008. Claimants stated that they would like assistance with their mortgage payments. The GMACM representative suggested a repayment plan; however, Claimants declined and did not want to provide financial information. Claimants stated they would like to change the interest rate on the loan. The GMACM representative advised them they would need to be current in order to refinance.<br><br>Claimant spoke with a representative of GMACM via phone on July 11, 2008. Claimant gave GMACM permission to speak with third party Natalie Jackson, who was authorized by the Claimants to speak to GMACM regarding their account. Ms. Jackson requested a fixed interest rate for the loan as Claimants were having difficulty making payments. GMACM took verbal financials but was not able to approve the loan for a repayment plan. GMACM advised the Claimants to make payment on the account and in the meantime, GMACM will review for loan for a modification.  GMACM mailed an Options to Avoid Foreclosure Letter to Claimants on July 14, 2008.  Claimants spoke with GMACM via phone on July 24, 2008, at which time, GMACM advised that the loan had been denied a loan modification. GMACM offered to take new financial information from Claimants, however, Claimants were not able to provide the information at that time. GMACM advised Claimants to call back when they are able to discuss.<br><br>Claimants spoke with GMACM again via phone August 2, 2008.  Claimants stated | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | they were unable to make a payment now but they hoped to make one soon.  GMACM offered to take Claimants' financial information to review their account for options. Claimants refused stating they do not have funds for payment.<br><br>GMACM mailed a breach letter to Claimants on August 5, 2008.  Claimants spoke with GMACM via phone on August 14, 2008 at which time Claimants stated the payment to pay the June 2008 payment was mailed that day and they do not have plans for future payments. Claimants stated they are planning to try to refinance the home.  Claimants spoke with GMACM via phone on August 19, 2008, at which time Claimants then stated they plan to make the next payment on August 22, 2008. Claimants also stated they would like a loan modification to which GMACM advised it would need to take financial information.  Claimants declined to give financial information.<br><br>GMACM mailed a breach letter to claimants on September 2, 2008.  Unauthorized third party, Neilda Guzman, spoke with GMACM via phone on September 10, 2008, at which time GMACM advised it cannot release information to Ms. Guzman as she is not authorized on the account.  Ms. Guzman made a payment over the phone.<br><br>Claimants spoke with GMACM via phone on September 11, 2008, at which time claimants stated they were not sure when the next payment will be made on the | |

ny-1233022

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | account.  GMACM mailed an Options to Avoid Foreclosure letter to Claimants on September 12, 2008 and a breach letter on October 3, 2008 and November 4, 2008.  GMACM mailed a Loss Mitigation Foreclosure Referral Letter to Claimants on December 4, 2008.  On December 8, 2008, GMACM referred the account to foreclosure because the account was owing for the September 2008 payment.<br><br>Claimants spoke with GMACM via phone on December 19, 2008, at which time Claimants requested assistance with the mortgage. GMACM advised Claimants that they need to take financial information over phone and advised how to obtain a workout package online for loan modification review.  Claimants spoke with GMACM via phone on December 23, 2008, at which time claimants advised GMACM they will fax a workout package that day. Claimants stated they do not currently live in the home. Debtors never received a workout package from claimants. | |
| 4720 | Alexis Smith<br><br>566 South Ocean Ave Freeport, NY 11520<br><br>Unliquidated<br><br>Residential Capital, | Origination Issue | Non Debtor Mortgage Lenders USA, Inc. originated the loan in the amount of $495,000 on September 25, 2006. Debtor Homecomings Financial serviced the loan from February 7, 2007 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "see attached brief and supporting documents" as basis for claim.  Attached are documents entitled Brief in support of Proof of Claim, a | 9-10 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  | LLC |  | GMAC monthly account statement dated August 18, 2011, and a Voluntary Lien Report from homeinfomax.com dated November 9, 2012. On June 21, 2013, Debtors sent claimant a letter requesting additional information in support of claim, however claimant did not respond to the request.<br><br>Debtors have no liability for the allegation of "fraudulent inducement of origination with the intent to sell the loan on Wall Street" because the loan was originated by non-Debtor Mortgage Lenders USA, Inc. on September 25, 2006, and there is no evidence to demonstrate that Debtors had any involvement in negotiation over original terms of the loan. |  |
| 241 | Felix O. Abu<br><br>6999 Romanzo Way Elk Grove, CA 95758<br><br>$1,248,955.60<br><br>Executive Trustee Services, LLC | General No Liability | Non-debtor Greenpoint Mortgage Funding, Inc. originated a loan in the amount of $273,600 on January 9, 2007. GMACM began servicing loan April 2, 2007 and serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "mortgage note" as the basis for claim in box 2 of the proof of claim form for claim number 241.  Claimant attaches "Trustee's Deed upon Sale but provides no additional explanation or documentation in support of the claim. On June 21, 2013, Debtors sent Claimant a letter requesting additional information and documentation in support of the claim. Claimant responded on July 22, 2013. In the Claimant Response Letter, Claimant states the Basis of Claimant as: "Basis of claim include illegal foreclosure sale and transfer of title of my property by Executive Trust Service (ETS) to U.S. Bank National Association on | 8 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | behalf of Greenpoint Mortgage Funding Trust. Also, ETS violated RESPA, TILA, and fraudulent misrepresentation and violation of California business professional code #17200. These misconducts by ETS cause me to have medical and emotional problems, causes me to have attorney fees, financial loss.  Additionally relief is sort based on the final supplemental order of the Southern District Court and the bankruptcy court (Docket No. 3294 Filed on March 21, 2013.) Please enclosed legal documents and other documents that support the basis of my claim."<br>Claimant attached the following to the Claimant Response: Basis of Claim Form, Amended Claim, Correspondence with Eddie R Jimenez/Pike Duncan, LP law firm dated March 15, 2013, Correspondence with Eddie R. Jimenez/Pike Duncan, LP, law firm dated February 20, 2013, objections letter to ETS dated December 14, 2011, Homestead Declaration Affidavit, and adversary complaints filed with the United Stated Bankruptcy Court for Eastern District of California, Sacramento.<br><br>Claimant asserts "mortgage note" as basis for claim in box 2 of the proof of claim form for claim number 246.  Claimant attaches "Add Declaration of Homestead Affidavit Designation and Declaration of Homestead Affidavit," Deed of Trust, Legal Description, Adjustable Rate Rider, Interim Interest Rider, Family Rider, Greenpoint Mortgage Funding Trust 2007-AR2 (PSA), and the GMAC Mortgage Payment History but provides no additional explanation or documentation in support of the claim. On May 20, 2013, Debtors sent Claimant a letter requesting additional information and documentation in support of the claim. Claimant responded on June 19, 2013. In the Claimant Response Letter, Claimant states the | |

12

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Basis of Claim as: "Debtors (GMAC Mortgage Corporation and Executive Trust (ETS)) wrongfully foreclosed of residence and illegally transferred by property; and illegal eviction from residence. These action cause me to incur traumatic emotional injury, shame, medical issues, financial loss, and attorney's fees. Also, basis of claim include Debtor(s) violation of RESPA, TILA, Fraudulent misrepresentation and violation of California Business Professional Code 17200. Therefore, I am asking for relief based on final supplemental order of the Southern District Court and of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013). Please see complaints filed with the Bankruptcy Court Eastern District of California- Sacramento Division and other court documents that support the basis of my claim." Claimant attached a letter that outlines the attachments to the Claimant's response stating the following are included: Basis of Claim Form, Amended Claim, Correspondence with Eddie R Jimenez/Pike Duncan, LP law firm dated March 15, 2013, Correspondence with Eddie R. Jimenez/Pike Duncan, LP, law firm dated February 20, 2013, and adversary complaints filed with the United Stated Bankruptcy Court for Eastern District of California, Sacramento.<br><br>The account was referred to Foreclosure August 6, 2009 because the account was owing for the May 1, 2009 payment. The foreclosure sale was held on January 19, 2012 as the account owed for September 2009-January 2012 payments. The property was sold for $121,125. The loan was reacquired by GMACM after the foreclosure sale and was handled in the REO department until the loan was | |

13

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | transferred to Ocwen for servicing.<br><br>Claimant filed two proofs of claim, designated as claim numbers 241 and 246. These claims were originally included in the 50th Omnibus Objection where the Borrower Trust objected to them for Claimant's lack of standing based on his personal Chapter 7 bankruptcy (Bankruptcy Court; Eastern District of California, Case 12-bk-36170), and the fact that there was no affirmative abandonment of the claims by the Trustee. (See pages 121-128 of transcript of November 15, 2013 hearing.) In an adversary proceeding in the Claimant's bankruptcy case, filed on January 18, 2013 against GMAC/Ally Bank, Inc. and any known or unknown dba used by GMAC/Ally Bank, Inc., asserting essentially wrongful foreclosure claims (Case 13-ap-02020), the court dismissed the action for Claimant's lack of standing to assert such claims on April 4, 2013.  Claimant received a discharge in the bankruptcy matter on January 29, 2013 and the entire matter was closed on April 23, 2013.<br><br>In the Chapter 7 proceeding, Claimant originally filed Amended Schedules on October 31, 2012, which indicated contingent claims against both Residential Capital, LLC and Executive Trustee Services, LLC, individually, with a combined value of $5,000.  A copy of the Amended Schedules is attached to the Objection as Exhibit 5.  As noted, there was no action taken by the Trustee with respect to this contingent claim before Claimant received a discharge on January 29, 2013. | |

14

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant re-opened his personal Chapter 7 bankruptcy and on June 5, 2013, Claimant filed a Motion to Compel Abandonment, and also on the same date filed further Amended Summary of Schedules, which showed claims 241 and 246 on Schedule B, at a combined value of $5,000.  A copy of the Amended Summary of Schedules is attached to the Objection as Exhibit 6.  On August 13, 2013, Claimant successfully re-opened his personal bankruptcy to request the Trustee formally abandon certain properties, including the claims pending in the ResCap bankruptcy, which Claimant asserted to be of, "'inconsequential value and benefit to the estate.'"<br><br>Claimant's motion was uncontested and the bankruptcy court granted the relief sought on December 19, 2013.  The Trustee filed his report of no distribution on March 12, 2014, in which the requested property was abandoned.<br><br>Executive Trustee Services has no liability for any of the alleged actions because its only role was as a substitute trustee, and therefore its only role was filing of the notices required under California's non-judicial foreclosure laws.  The filing of these notices is a privileged act under California Civil Code Section 47, and therefore is not actionable unless the Claimant alleges actual malice, which he has not. | |

**Exhibit B**

Exhibit B
Redesignate, Reclassify, Reduce and Allow Borrower Claim

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Modified Claim Amount/ Classification<br><br>Modified Debtor Name | Reason for Modification | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 246 | Felix O. Abu<br><br>6999 Romanzo Way Elk Grove, CA 95758<br><br>$1,248,955.60 Secured<br><br>Residential Capital, LLC | $5,000 General Unsecured Claim<br><br>GMAC Mortgage Corporation | Non-debtor Greenpoint Mortgage Funding, Inc. originated a loan in the amount of $273,600 on January 9, 2007. GMACM began servicing loan April 2, 2007 and serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "mortgage note" as the basis for claim in box 2 of the proof of claim form for claim number 241.  Claimant attaches "Trustee's Deed upon Sale but provides no additional explanation or documentation in support of the claim. On June 21, 2013, Debtors sent Claimant a letter requesting additional information and documentation in support of the claim. Claimant responded on July 22, 2013. In the Claimant Response Letter, Claimant states the Basis of Claimant as: "Basis of claim include illegal foreclosure sale and transfer of title of my property by Executive Trust Service (ETS) to U.S. Bank National Association on behalf of Greenpoint Mortgage Funding Trust. Also, ETS violated RESPA, TILA, and fraudulent misrepresentation and violation of California business professional code #17200. These misconducts by ETS cause me to have medical and emotional problems, causes me to have attorney fees, financial loss.  Additionally relief is sort based on the final supplemental order of the Southern District Court and the bankruptcy court (Docket No. 3294 Filed on March 21, 2013.) Please enclosed legal documents and other documents that support the basis of my claim." Claimant attached the following to the Claimant Response: Basis of Claim Form, Amended Claim, Correspondence with Eddie R Jimenez/Pike Duncan, LP law firm dated March 15, 2013, Correspondence with Eddie R. Jimenez/Pike Duncan, LP, law firm dated February 20, 2013, objections letter to ETS dated December 14, | 11-12 |

Exhibit B
Redesignate, Reclassify, Reduce and Allow Borrower Claim

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Modified Claim Amount/ Classification<br><br>Modified Debtor Name | Reason for Modification | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 2011, Homestead Declaration Affidavit, and adversary complaints filed with the United Stated Bankruptcy Court for Eastern District of California, Sacramento.<br><br>Claimant asserts "mortgage note" as basis for claim in box 2 of the proof of claim form for claim number 246.  Claimant attaches "Add Declaration of Homestead Affidavit Designation and Declaration of Homestead Affidavit," Deed of Trust, Legal Description, Adjustable Rate Rider, Interim Interest Rider, Family Rider, Greenpoint Mortgage Funding Trust 2007-AR2 (PSA), and the GMAC Mortgage Payment History but provides no additional explanation or documentation in support of the claim. On May 20, 2013, Debtors sent Claimant a letter requesting additional information and documentation in support of the claim. Claimant responded on June 19, 2013. In the Claimant Response Letter, Claimant states the Basis of Claim as: "Debtors (GMAC Mortgage Corporation and Executive Trust (ETS)) wrongfully foreclosed of residence and illegally transferred by property; and illegal eviction from residence. These action cause me to incur traumatic emotional injury, shame, medical issues, financial loss, and attorney's fees.  Also, basis of claim include Debtor(s) violation of RESPA, TILA, Fraudulent misrepresentation and violation of California Business Professional Code 17200. Therefore, I am asking for relief based on final supplemental order of the Southern District Court and of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013). Please see complaints filed with the Bankruptcy Court Eastern District of California- Sacramento Division and other court documents that support the basis of my claim." Claimant attached a letter that outlines the attachments to the Claimant's response stating the following are included: Basis | |

<u>Exhibit B</u>
<u>Redesignate, Reclassify, Reduce and Allow Borrower Claim</u>

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Modified Claim Amount/ Classification<br><br>Modified Debtor Name | Reason for Modification | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | of Claim Form, Amended Claim, Correspondence with Eddie R Jimenez/Pike Duncan, LP law firm dated March 15, 2013, Correspondence with Eddie R. Jimenez/Pike Duncan, LP, law firm dated February 20, 2013, and adversary complaints filed with the United Stated Bankruptcy Court for Eastern District of California, Sacramento.<br><br>The account was referred to Foreclosure August 6, 2009 because the account was owing for the May 1, 2009 payment. The foreclosure sale was held on January 19, 2012 as the account owed for September 2009-January 2012 payments. The property was sold for $121,125. The loan was reacquired by GMACM after the foreclosure sale and was handled in the REO department until the loan was transferred to Ocwen for servicing.<br><br>Claimant filed two proofs of claim, designated as claim numbers 241 and 246. These claims were originally included in the 50th Omnibus Objection where the Borrower Trust objected to them for Claimant's lack of standing based on his personal Chapter 7 bankruptcy (Bankruptcy Court; Eastern District of California, Case 12-bk-36170), and the fact that there was no affirmative abandonment of the claims by the Trustee. (See pages 121-128 of transcript of November 15, 2013 hearing.) In an adversary proceeding in the Claimant's bankruptcy case, filed on January 18, 2013 against GMAC/Ally Bank, Inc. and any known or unknown dba used by GMAC/Ally Bank, Inc., asserting essentially wrongful foreclosure claims (Case 13-ap-02020), the court dismissed the action for Claimant's lack of standing to assert such claims on April 4, 2013. Claimant received a discharge in the | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Modified Claim Amount/ Classification<br><br>Modified Debtor Name | Reason for Modification | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | bankruptcy matter on January 29, 2013 and the entire matter was closed on April 23, 2013.<br><br>In the Chapter 7 proceeding, Claimant originally filed Amended Schedules on October 31, 2012, which indicated contingent claims against both Residential Capital, LLC and Executive Trustee Services, LLC, individually, with a combined value of $5,000.  A copy of the Amended Schedules is attached hereto as <u>Exhibit 5</u>.  As noted, there was no action taken by the Trustee with respect to this contingent claim before Claimant received a discharge on January 29, 2013.<br><br>Claimant re-opened his personal Chapter 7 bankruptcy and on June 5, 2013, Claimant filed a Motion to Compel Abandonment, and also on the same date filed further Amended Summary of Schedules, which showed claims 241 and 246 on Schedule B, at a combined value of $5,000.  A copy of the Amended Summary of Schedules is attached to the Objection as <u>Exhibit 6</u>.  On August 13, 2013, Claimant successfully re-opened his personal bankruptcy to request the Trustee formally abandon certain properties, including the claims pending in the ResCap bankruptcy, which Claimant asserted to be of, "'inconsequential value and benefit to the estate.'"<br><br>Claimant's motion was uncontested and the bankruptcy court granted the relief sought on December 19, 2013.  The Trustee filed his report of no distribution on March 12, 2014, in which the requested property was abandoned.  Because Claimant valued his claims in the amount of $5,000, claim 246 should be reduced and allowed as general unsecured claims against GMAC in the amount of $5,000 | |

Exhibit B
Redesignate, Reclassify, Reduce and Allow Borrower Claim

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Modified Claim Amount/ Classification<br><br>Modified Debtor Name | Reason for Modification | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | (as claim 241 is being disallowed pursuant to the reasons listed on <u>Exhibit A</u>), and he should not be allowed to argue in this bankruptcy proceeding that his claim has any greater value.<br><br>The Borrower Trust is prepared to allow this claim in the reduced amount in order to expedite the resolution of this claim.  In the event the Claimant contests the reduced amount of this claim, the Borrower Trust reserves its right to seek the disallowance of the entire claim. |  |

**Exhibit C**

Exhibit C
Reclassify, Reduce and Allow Borrower Claim

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Modified Claim Amount/ Classification | Reason for Modification | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 4734 | Carol Dawson and Terry Clark<br><br>911 Centers Street Charleston, WV 25311<br><br>$79,000 Secured Claim<br><br>GMAC Mortgage, LLC | $4,300 General Unsecured Claim | This claim involves two separate loans.  One loan (the "Dawson Loan") was originated in the amount of $67,150 by non-Debtor Equity Resources Inc. on or about April 9, 1998.  Debtor GMAC Mortgage serviced the loan from May 19, 2005 until servicing transferred to SN Servicing Group in November 6, 2006. At time of servicing transfer to SN Servicing Group, the account was owing for the February 1, 2002 through November 1, 2006 payments.<br><br>The allegations related to the Dawson loan primarily relate to origination claims  (predatory lending, fraud, joint venture and conspiracy) and servicing claims (breach of good faith and fair dealing and illegal pursuit of foreclosure).  Debtors have no liability for the origination claims because no Debtor was involved in the origination of this loan.  Additionally, the servicing allegations do not appear to be made against Debtors, but against other parties.  Debtors have not been involved in the servicing of this loan since 2006.  At the time GMAC Mortgage began servicing, the loan was already in foreclosure status.  All foreclosure activity was placed on hold due to litigation.  At the time servicing transferred in 2006 no foreclosure had been completed by a debtor entity.<br><br>Another loan (the "Clark Loan") was originated in the amount of $79,189.58 by non-Debtor Travelers Bank & Trust on or about April 14, 1998.  Debtor GMAC Mortgage serviced the loan from May 19, 2005 until February 9, 2007 when servicing of the loan was transferred to Private Capital Group, LLC. At the time of service release to Private Capital Group, LLC, the account was owing for the February 20, 2002-February 1, 2007 payments. | 12-13 |

1

Exhibit C
Reclassify, Reduce and Allow Borrower Claim

| Claim No(s). | Name and Address Claim Amount Asserted Debtor Name | Modified Claim Amount/ Classification | Reason for Modification | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | The allegations related to the Clark loan allege (i) unlawful debt collection; (ii) that the property was relinquished; (iii) claimants were discharged in a bankruptcy proceeding that was filed in November 2002; and (iv) that GMAC Mortgage continued to seek payment from claimant in July 2005.  Claimant also alleges GMAC Mortgage communicated with claimants when they were represented by counsel in violation of WV Code 46A-2-128(e). Bankruptcy was filed by Pat and Terry Clark as joint debtors on August 8, 2002. Between July and November 2005, GMACM sent six or seven notices to claimants, some of which indicated that the communication was an attempt to collect a debt.  Under West Virginia law, such notices are permissible when they include a disclosure that the collector is not seeking to collect if the debt has already been discharged in bankruptcy.  Based on a review of its books and records, one of the letters sent to claimants does not include the required disclosure.  While it is unclear that the letter involved an attempt to collect on a debt, in order to expedite the resolution of this claim, the Borrower Trust is prepared to allow statutory damages of $4,300.  In the event the Claimants contest this amount, the Borrower Trust reserves its right to seek the disallowance of the entire claim. With regard to the allegation that the GMACM communicated with claimants when they were represented by counsel, the Debtors' books and records do not show that the Claimants ever informed GMACM, either on paper or electronically, that the consumer was represented by counsel, as required by the statute.  Further, the Claimants make no allegations regarding when or how GMACM allegedly became aware of the Claimants' legal representation. As a result, the | |

Exhibit C
Reclassify, Reduce and Allow Borrower Claim

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Modified Claim Amount/ Classification | Reason for Modification | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | Claimant is not entitled to statutory damages based on this allegation. |  |

**Exhibit D**

Exhibit D
Redesignate and Allow Borrower Claim

| Claim No(s). | Name and Address Claim Amount Asserted Debtor Name | Modified Debtor Name | Reason for Redesignation | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 154 | Paul Homer and Melinda Carpenter<br><br>131 Lakeside Drive Eastford, CT 06242<br><br>$10,500 General Unsecured Claim<br><br>Residential Capital, LLC | GMAC Mortgage, LLC | GMAC Mortgage originated the loan in the amount of $200,000 on May 27, 2005. GMACM serviced the loan until the loan was paid off May 29, 2009.<br><br>Claimant asserts "settled litigation (see attached)" as basis for claim and the Settlement Agreement between Claimant and Debtors.<br><br>Debtors will allow this claim in full per the settlement agreement that was signed May 2012.  Because the settlement agreement was with GMAC Mortgage, LLC, it is the proper debtor against which the claim should be asserted. | 13-14 |