Hearing Date:  October 13, 2016 at 10:00 a.m. (Eastern Time)
Objection Deadline:  October 3, 2016 at 4:00 p.m. (Eastern Time)

**POLSINELLI**
Daniel J. Flanigan
600 Third Avenue, 42nd Floor
New York, NY 10016
Telephone:  (212) 644-2090
Facsimile:  (212) 684-0197

*Counsel for ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF MOTION OF RESCAP BORROWER CLAIMS TRUST**
**FOR ORDER AUTHORIZING INTERIM DISTRIBUTION**
**AND ESTABLISHING DISPUTED CLAIMS RESERVE**

**PLEASE TAKE NOTICE** that the undersigned has filed the attached *Motion of ResCap Borrower Claims Trust for Order Authorizing Interim Distribution and Establishing Disputed Claims Reserve* (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take place on **October 13, 2016 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 523 (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for

the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **October 3, 2016 at 4:00 p.m. (Prevailing Eastern Time)**, upon (a) the Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 100041408; (b) Polsinelli, 600 Third Avenue, 42nd Floor, New York, NY 10016 (Attention: Daniel J. Flanigan), as counsel to the ResCap Borrower Claims Trust; (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); (d) The ResCap Liquidating Trust, Jill Horner (Jill.Horner@rescapestate.com) and ResCap Liquidating Trust Chief Treasury Director Paul Grande (paul.grande@rescapestate.com); and (e) The ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Norman S. Rosenbaum, Jordan A. Wishnew and Jessica J. Arett).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written objection to the relief requested in the Motion, the Bankruptcy Court may deem any opposition waived, treat the Motion as conceded, and enter an order granting the relief requested in the Motion without further notice or hearing.

2

54804131.1

Dated: September 22, 2016  　　　　*/s/ Daniel J. Flanigan*
　　　New York, New York　　　　　Daniel J. Flanigan
　　　　　　　　　　　　　　　　　**POLSINELLI**
　　　　　　　　　　　　　　　　　600 3rd Avenue, 42nd Floor
　　　　　　　　　　　　　　　　　New York, NY 10016
　　　　　　　　　　　　　　　　　Telephone: (212) 644-2090
　　　　　　　　　　　　　　　　　Facsimile: (212) 684-0197
　　　　　　　　　　　　　　　　　dflanigan@polsinelli.com

　　　　　　　　　　　　　　　　　*Counsel for ResCap Borrower Claims Trust*

3

54804131.1

Hearing Date:  October 13, 2016 at 10:00 a.m. (Eastern Time)
Objection Deadline:  October 3, 2016 at 4:00 p.m. (Eastern Time)

**POLSINELLI**
Daniel J. Flanigan
600 Third Avenue, 42nd Floor
New York, NY 10016
Telephone: (212) 644-0199
Facsimile: (212) 684-0197

*Counsel for ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**MOTION OF RESCAP BORROWER CLAIMS TRUST**
**FOR ORDER AUTHORIZING INTERIM DISTRIBUTION**
**AND ESTABLISHING DISPUTED CLAIMS RESERVE**

54811844.1

## **TABLE OF CONTENTS**

**Page**

JURISDICTION AND VENUE ................................................................................................... 2
BACKGROUND ............................................................................................................................ 2
THE CLAIMS RESOLUTION PROCESS ................................................................................... 4
RELIEF REQUESTED .................................................................................................................. 5
BASIS FOR RELIEF ..................................................................................................................... 6
NOTICE ........................................................................................................................................10
CONCLUSION .............................................................................................................................11

54811844.1

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Allegheny Intern.*,
   954 F.2d 167 (3rd Cir. 1992) ..................................................................................................8

*In re Armstrong*,
   292 B.R. 678 (B.A.P. 10th Cir. 2003) .....................................................................................9

*In re Bally Total Fitness of Greater N.Y., Inc.*,
   No. 08-14818 (BRL) (Bankr. S.D.N.Y. Oct. 5, 2009) ........................................................8, 9

*In re Citadel Broad. Corp.*,
   No. BKR. 09-17442 (BRL), 2010 WL 2010808 (Bankr. S.D.N.Y. May 19,
   2010) .......................................................................................................................................9

*In re Couture Hotel Corp.*,
   No. 14-34874-BJH-11, 2016 WL 91949 (Bankr. N.D. Tex. Jan. 5, 2016) .............................9

*In re Dana Corp.*,
   No. 06-10354 (BRL) (Bankr. S.D.N.Y. Nov. 28, 2007) ......................................................8, 9

*In re Enron Corp.*,
   No. 01-16034 (AJG), 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006) ................ 7, 8, 9, 10

*In re Experient Corporation*,
   535 B.R. 386 (Bankr. D. Colo. 2015) .....................................................................................9

*In re Heartland Publications, LLC*,
   No. 09-14459(KG), 2010 WL 2745973 (Bankr. D. Del. Apr. 16, 2010) ................................9

*In re Loucheschi LLC*,
   471 B.R. 777 (Bankr. D. Mass. 2012) ....................................................................................8

*Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union Square, Inc.)*,
   160 B.R. 40 (S.D.N.Y. 1993) ..................................................................................................8

*In re Metromedia Fiber Network, Inc.*,
   416 F.3d 136 (2d Cir. 2005) .................................................................................................10

*In re Oaks*,
   No. 11 B 48903, 2012 WL 5717940 (Bankr. N.D. Ill. Nov. 15, 2012) ...................................9

*In re Oakwood Homes Corp.*,
   329 B.R. 19 (D. Del. 2005) .....................................................................................................7

12-12020-mg    Doc 10136    Filed 09/22/16    Entered 09/22/16 13:11:15    Main Document
Pg 7 of 18

*In re Zolner*,
    173 B.R. 629 (Bankr. N.D. Ill. 1994) ...........................................................................................9

**Statutes / Rules**

Rule 3021 of the Federal Rules of Bankruptcy Procedure ............................................................1

Bankruptcy Rule 1015(b) ................................................................................................................2

Bankruptcy Rule 3021 ......................................................................................................... 2, 5, 10

11 U.S.C. § 1142(b) ......................................................................................................................10

28 U.S.C. §§ 157 and 1334 .............................................................................................................2

28 U.S.C. §§ 1408 and 1409 ...........................................................................................................2

Sections 105(a), 502(c) and 1142(b) of title 11 of the United States Code .............. 1, 2, 5, 6, 7, 10

Chapter 11 of the Bankruptcy Code ............................................................................................1, 2

Bankruptcy Code sections 1107(a) and 1108 .................................................................................2

**Other Authorities**

Confirmation Order, II.36, p. 49 .....................................................................................................6

iii
54811844.1

**TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "**Borrower Claims Trust**," "**Borrower Trust**," or "**Trust**"), as successor to the debtors and debtors in possession in the above-captioned cases (the "**Debtors**"), hereby submits this motion (the "**Motion**") for entry of an order in substantially the form annexed hereto as **Exhibit A** (the "**Proposed Order**") pursuant to sections 105(a), 502(c) and 1142(b) of title 11 of the United States Code, as amended (the "**Bankruptcy Code**"), Rule 3021 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065] (the "**Confirmation Order**"), the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] as attached to the Confirmation Order as Appendix 1 [Docket 6065-1] (the "**Plan**"), and the *ResCap Borrower Claims Trust Agreement*, dated December 17, 2013, by and among Peter S. Kravitz, as Borrower Claims Trustee, Province East LLC, as Delaware Trustee, and each of the Debtors [Docket No. 6136](as amended, the "**Trust Agreement**"),[1] establishing a Disputed Claims Reserve ("**DCR**" or "**Disputed Claims Reserve**"). In support of the Motion, the Borrower Trust relies upon and incorporates by reference the Declaration of Peter S. Kravitz, Borrower Claims Trustee, (the "**Kravitz Dec.**"), a copy of which is annexed hereto as **Exhibit B**, and represents as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Trust Agreement. Capitalized terms not otherwise defined herein or in the Trust Agreement shall have the meaning set forth in the Confirmation Order. Capitalized terms not otherwise defined herein or in the Trust Agreement or Confirmation Order shall have the meaning set forth in the Plan.

1

54811844.1

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 502(c) and 1142(b) and Bankruptcy Rule 3021.

**BACKGROUND**

3.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors managed and operated their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108 until the effective date of the Plan, which established the Liquidating Trust and the Borrower Trust as successors to the Debtors in certain respects. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.      On August 29, 2012, the Bankruptcy Court entered an order establishing: (i) November 9, 2012 as the deadline for Creditors to file proofs of claim against the Debtors (the "**General Bar Date**"), and (ii) November 30, 2012 as the deadline for governmental units to file proofs of claim [Docket No. 1309]. Due to events precipitated by Hurricane Sandy, the Bankruptcy Court approved an extension of the General Bar Date to November 16, 2012 [Docket No. 2093].

5.      On March 21, 2013, the Bankruptcy Court entered an order approving certain omnibus claim objection procedures [Docket No. 3294] (the "**Claims Procedures Order**").

6.      On December 11, 2013, the Court entered the Confirmation Order confirming the Plan. The Plan created the Borrower Trust for the primary purpose of resolving Borrower Claims and making distributions thereon. In furtherance of that purpose, the Plan provided that the

2

Borrower Trust would succeed to the rights and duties of the Debtors under the Claims Procedures Order with respect to Borrower Claims. The Plan further provided for the transfer by the Debtors to the Borrower Trust of $57.6 million (which, as of confirmation, was reduced to approximately $56.1 million due to certain credits for pre-confirmation payments made by Debtors to certain Borrower Claimants in settlement of their claims) ("**Borrower Trust Fund**").[2]

7. The amount of the Borrower Trust Fund was established pursuant to the Global Settlement memorialized in the Plan Support Agreement among the Debtors, the Creditors' Committee, Ally Financial, Inc. ("**AFI**"), and the Consenting Claimants, dated May 23, 2013 [Docket No. 3814] ("**PSA**"), which furnished the basic blueprint for the Plan, in an amount estimated to be sufficient to provide Borrower Claimants with recoveries at least equal to recoveries of the respective non-Borrower Unsecured Creditors at the applicable Debtor Group, primarily the Residential Funding Company ("**RFC**") and GMAC Mortgage, LLC ("**GMACM**") groups ("**Comparable Recoveries**").[3] Borrower Claimants were classified as follows under the Plan: (i) Class R-5 (ResCap Unsecured Claims)[4]; (ii) Class GS-5 (GMACM Unsecured Claims); (iii) Class RS-5 (RFC Unsecured Claims), and (iv) ETS. The respective Comparable Recovery percentages, which for all purposes of the Borrower Trust were finally fixed under the Plan and not subject to further modification for any reason including subsequent developments in the

---

[2] The additional amount of $3,200,000 was transferred to the Trust for the intended purpose of covering the Trust's estimated expenses of administration.

[3] The discussion herein is based on the Plan, the Disclosure Statement, and the thorough discussion of the creation and funding of the Borrower Trust and the True-Up process contained in the *Direct Testimony of William R. Thompson* [Docket No. 5713] ("**Thompson Testimony**").

[4] While these are identified as a possible class in the Plan, the Borrower Trust believes, based on representations made by the Debtor and Committee professionals, that there are no valid Borrower claims against ResCap. The Debtor and Committee professionals' representations are reflected in the fact that there is no discussion at all in the Plan or Disclosure Statement of any Borrower Claims against ResCap, no funds were allocated for payment of those Claims, and the Borrower Claims True-Up analysis identified no such Claims. The absence of such Claims is also evidenced by the fact that there have been no such Claims Allowed to date.

3

54811844.1

administration of the Liquidating Trust, were as follows: Residential Capital, LLC ("**ResCap**") – **36.3%,** GMACM – **30.1%,** ETS – **100.0%** and **RFC– 9.0%** ("**Comparable Recovery Percentages**").

## THE CLAIMS RESOLUTION PROCESS

8. More than 3,000 Borrower Claims were filed in these cases. The Debtors had made substantial progress resolving Borrower Claims prior to confirmation of the Plan and the Borrower Trust has continued this process post-confirmation. As of confirmation of the Plan, there were approximately 1420 unresolved Borrower Claims, which included most of the large, controversial, and hotly contested individual Borrower Claims many of which were filed in absurdly inflated amounts. Now only 26[5] unresolved Borrower Claims ("**Unresolved Borrower Claims**") remain.

9. Excluding the 9 Claims[6] listed on **Exhibit C**, which have been disallowed by this Court but have been appealed (but with no stay pending appeal extant in any of the cases) (together with any Borrower Claims (that have been disallowed but with respect to which the appeal time has not expired as of the date of filing of this Motion ("**Filing Date**") or that are disallowed at any time after the Filing Date (the "**Disallowed Claims On Appeal**"), the filed amount of the remaining Unresolved Borrower Claims which are listed on **Exhibit D** annexed hereto, is $9,983,252.22.

---

[5] The 25 unresolved Borrower Claims do not include duplicates in the count.

[6] The 10 Claims listed on Exhibit C do not include duplicates in the count.

4

**RELIEF REQUESTED**

10.   The Trust proposes to distribute at this time to the holders of Allowed Borrower Claims[7] their pro rata share of a total distribution amount of $48,435,226.87 ("**Interim Distribution**"), after setting aside (i) an amount of estimated future expenses necessary for the Borrower Trust to complete its tasks (including payment of unpaid convenience claims and claims settled with an agreed onetime payment) of approximately $1.5 million, and (ii) $4,638,130.88 as a reserve for the remaining Unresolved Borrower Claims as set forth on Exhibit D, which has been calculated on the same percentage of their filed claim amounts that is being used to calculate the distribution amount for the Allowed Borrower Claims. As explained more fully below, there will be no reserve for the Disallowed Claims on Appeal.

11.   By this Motion, the Borrower Trust requests, pursuant to the Confirmation Order, the Plan, the Borrower Trust Agreement, and Bankruptcy Code sections 105(a), 502(c) and 1142(b), and Bankruptcy Rule 3021, that the Court enter the Proposed Order

(1)   Establishing a Disputed Claims Reserve[8] in the amount of $4,638,130.88 (but establishing no reserve for the Disallowed Claims on Appeal);

(2)   Authorizing a total distribution of $48,435,222.87 Claims to holders of Allowed Borrower Claims, pro rata based on the same percentages used to reserve for the Unresolved Borrower Claims; and

(3)   Estimating the Disallowed Claims on Appeal at $0 for the purpose of the Interim Distribution.

---

[7] Allowed Borrower Claims as used herein means Allowed Borrower Claims that are not either a Borrower Convenience Claim or a claim settled with an agreed onetime payment.

[8] If a Claimant (or husband and wife Claimants) filed more than one Claim, only a single Claim amount has been reserved for.

## BASIS FOR RELIEF

12. The Confirmation Order entered in these cases provides:

> None of the Debtors, the Liquidating Trust, the RMBS Claims Trust, the Private Securities Claims Trust or the Borrower Claims Trust shall be required to establish reserves for Claims that have been disallowed or expunged by order of the Bankruptcy Court in the absence of an order of the Bankruptcy Court expressly directing the Debtors to establish such a reserve. [Confirmation Order, II.36, p. 49].

No such reserve should be established.

13. Section 4.3(a) of the Trust Agreement provides that any distribution "shall be made pro rata to all holders of Borrower Claims Trust Beneficial Interests; provided that in connection with such distribution the Disputed Claims Reserve shall be deemed to have a Borrower Claims Trust Beneficial Interest corresponding to the Estimated Amount of all Disputed Borrower Claims as of the relevant time." Section 1.2(ee) of the Trust Agreement provides that the "Estimated Amount" of one or more Disputed Borrower Claims, either individually or in one or more groupings or in the aggregate, may be the filed amount of the Claims or "such amount as estimated by the Bankruptcy Court at the request of the Debtors or the Borrower Claims Trust including pursuant to Bankruptcy Code sections 105 and 502(c) . . ."

14. One of the main reasons for the creation of the Borrower Trust—the desire for prompt distributions to Borrower Claimants,[9] perhaps the neediest of all the creditors—has been thwarted for years—in part by the large number of Claims that needed to be processed and adjudicated, but for the most part because of the grossly inflated claims of certain of the Borrower Claimants. Now the Borrower Claims pool has become small enough that the Trust is in a position to make a substantial distribution to holders of Allowed Borrower Claims while also

---

[9] As stated in the Thompson Testimony, ¶ 15: "The purpose of the Borrower Claims Trust is to streamline and expedite the process of making distributions to Borrowers."

6

54811844.1

setting aside a Reserve for the Unresolved Borrower Claims in the same percentage of their filed amounts in their respective classes as set forth in Exhibit D as will be distributed to holders of Allowed Borrower Claims in their respective classes.

15. The Trust cannot accomplish such a distribution and also reserve fully for the Disallowed Claims on Appeal. As set forth above, the Confirmation Order expressly states that no such reserve is required unless the Court orders one. In such a situation it has been held that the Court has complete discretion in determining whether any reserve should be required. (See *In re Oakwood Homes Corp.*, 329 B.R. 19 (D. Del. 2005) where the District Court rejected JPMorgan's appeal of the Bankruptcy Court's determination that no reserve would be required instead of the $61 million that JPMorgan claimed should be set aside.) Since this Court has determined in each instance that the Disallowed Borrower Claims On Appeal are disallowed, no reserve is or should be required. This Court's previous determination disallowing each of the Claims furnishes the only (and an entirely sufficient) basis for establishing a reserve, which should be zero given the Court's findings. *In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006).

16. The Confirmation Order's directive that no reserve need be established is sufficient in itself to justify not establishing a reserve for the Disallowed Claims On Appeal. In addition, and furnishing an entirely separate and self-sufficient basis for the relief requested in this Motion, Section 502(c) of the Bankruptcy Code provides for the estimation of contingent or unliquidated claims ("for purposes of allowance . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . ."). The Trust Agreement implements this by providing, as stated above, that the Trust may seek the Court's estimation of Borrower Claims. The resolution of these Claims has long

7

delayed the administration of these Cases and threatens to cause even more delay. This is by no means a mere administrative convenience but a substantial injustice to those with proper claims and those who did not seek to take unfair advantage of the process by filing obviously improper claims. There is no unfairness to the Disallowed Claims on Appeal but their excessive and highly inappropriate demands continue to cause unfairness to others. In addition to the District Court decision in *Enron*, *supra*, *see In re Bally Total Fitness of Greater N.Y., Inc.*, No. 08-14818 (BRL) (Bankr. S.D.N.Y. Oct. 5, 2009) (approving the debtors' motion to estimate claims for purposes of establishing claims reserves) [Docket No. 1547]; *In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. Nov. 28, 2007) (same) [Docket No. 7236]; *In re Enron Corp.*, Case No. 01-16034, 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006) (approving the debtors' motion to estimate claims for purposes of establishing reserves and setting the reserve amount as the maximum amount of recovery); *Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union Square, Inc.)*, 160 B.R. 40, 42 (S.D.N.Y. 1993) (estimating a claim at $794.07 vs. the $50 million that the claimant had asserted).

17. The holders of the Disallowed Claims on Appeal have already had their day in court. Anticipating objection by one or more of the holders of Disallowed Claims on Appeal, it is important to note that the burden of proof in a claim estimation process, for the purpose of establishing (or not) a reserve or otherwise, is treated similarly to the claim objection process itself. *In re Loucheschi LLC*, 471 B.R. 777, 779 (Bankr. D. Mass. 2012). The burden is initially on the claimant before shifting to the objector, and then the burden reverts back to the claimant. *In re Allegheny Intern.*, 954 F.2d 167, 173-74 (3rd Cir. 1992); *Loucheschi*, 471 B.R. at 779 (holding that the claimant's proof of claim was accorded prima facie evidence and then the debtor has the burden of presenting sufficient evidence to overcome the presumption of validity,

8

and, if successful, the burden would then shift to the claimant to proof its claim). *See also In re Armstrong*, 292 B.R. 678, 686 (B.A.P. 10th Cir. 2003) ("[W]e conclude that the burden of proof should be on the claimant to present sufficient evidence that it has a colorable claim capable of temporary evaluation."); *In re Experient Corporation*, 535 B.R. 386, 405 (Bankr. D. Colo. 2015) (concluding that the burden of proof should be on the claimant for claims estimation); *In re Zolner*, 173 B.R. 629, 655-36 (Bankr. N.D. Ill. 1994) (burden of proof is on the claimant).

18. In the case of each of the Disallowed Claims on Appeal, they have already failed to meet their burden in the proceeding that led to the disallowance of their claims. That burden continues with regard to the issues raised by this Motion.

19. Using the trial court's claims rulings for estimating the Disputed Claim amounts is appropriate, as is estimating disallowed claims at zero even though an appeal may be pending. *In re Enron*, 2006 WL 544463. The provisions of the Confirmation Order and Plan regarding disallowed claims are not at all unusual but are typical. See *e.g. Bally, supra; Dana, supra; In re Oaks*, No. 11 B 48903, 2012 WL 5717940, at *24 (Bankr. N.D. Ill. Nov. 15, 2012); *In re Couture Hotel Corp.*, No. 14-34874-BJH-11, 2016 WL 91949, at *41 (Bankr. N.D. Tex. Jan. 5, 2016); *In re Heartland Publications, LLC*, No. 09-14459(KG), 2010 WL 2745973, at *14 (Bankr. D. Del. Apr. 16, 2010); *In re Citadel Broad. Corp.*, No. BKR. 09-17442 (BRL), 2010 WL 2010808, at *67 (Bankr. S.D.N.Y. May 19, 2010).

20. There was no stay pending appeal of the Confirmation Order. In none of the cases involving the Disallowed Claims on Appeal has a stay pending appeal been issued, which was a significant fact to the court in *In re Enron*, 2006 WL 544463, and it should be here as well. Bankruptcy Rule 3021 provides that after a plan is confirmed, a distribution "shall be made to creditors whose claims have been allowed . . . ." This situation is no different than the cases

9

54811844.1

involving equitable mootness where a stay pending appeal has been determined to be necessary to preserve the status quo, and prevent estate representatives from taking actions authorized by the Bankruptcy Court, pending appeal. *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144-45 (2d Cir. 2005). Of course any of the affected Claimants may seek to stay the proposed Order pursuant to this Motion and in that connection the Court can consider whether a stay is appropriate at all and in any event what conditions, such as bonds, the Claimants should furnish in connection with the requested stay.

21. In addition, the Court has broad authority under sections 1142(b) and 105(a) of the Bankruptcy Code over the property of the estate administered under the Plan to issue any order necessary to implement the provisions of the Plan and the Bankruptcy Code. See 11 U.S.C. § 1142(b). *In re Enron*, 2006 WL 544463, at *3 (estimating, pursuant to sections 105(a), 502(c), and 1142 of the Bankruptcy Code, certain claims at $0 for purposes of establishing reserve claim amounts).

22. The Borrower Trust requests that the Court grant the relief requested herein so that the great multitude of Borrower Claimants will not continue to be held hostage by a small group of overreaching Borrower Claimants.

**NOTICE**

23. The Borrower Trust has provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141], as well as to all holders of Unresolved Borrower Claims, Disallowed Claims On Appeal, and Allowed Borrower Claims (limited, however, as described above in note 7).

## **CONCLUSION**

WHEREFORE, the Borrower Trust respectfully requests that this Court enter the Proposed Order granting the relief requested in this Motion, and such other and further relief as may be just and proper.

Dated:  September 22, 2016          */s/ Daniel J. Flanigan*
         New York, New York          Daniel J. Flanigan
         **POLSINELLI**
         600 3rd Avenue, 42nd Floor
         New York, New York 10016
         Telephone: (212) 644-0199
         Facsimile: (212) 684-0197
         dflanigan@polsinelli.com

*Counsel for Borrower Claims Trust*