UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

IN RE RESIDENTIAL CAPITAL, LLC,

                    DEBTORS.

RESCAP LIQIDATING TRUST,

                    APPELLANT,

      - against -

PHH MORTGAGE CORPORATION, ET AL.,

                    APPELLEES.

────────────────────────────────

**Chapter 11**

**Bk. Case No. 12-12020 (MG)**

**16-cv-0034 (JGK) (GWG)**

OPINION AND ORDER

**JOHN G. KOELTL, District Judge:**

This is an appeal pursuant to 28 U.S.C. § 158(a)(1) from the Memorandum Opinion and Order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") dated November 23, 2015 (the "Order"). See In re Residential Capital, LLC, 541 B.R. 202 (Bankr. S.D.N.Y. 2015). The appeal is brought by ResCap Liquidating Trust (the "Trust"), as successor to Residential Funding Company, LLC ("RFC"), a financial services company that, along with its affiliates (together, "the Debtors"), filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code on May 14, 2012 (the "Petition Date") with discharge effective as of December 17, 2013 (the "Effective Date"). The appellees, Decision One Mortgage Company, LLC ("Decision One"), PHH Mortgage Corp. ("PHH"), Honor Bank

1

f/k/a The Honor State Bank ("Honor Bank") and Sierra Pacific
Mortgage Company, Inc. ("Sierra Pacific"), are lenders that sold
residential mortgage loans to the Debtors pursuant to contracts
executed with RFC prior to the Petition Date (the "Contracts").

After the bar date for claims as set forth in the Order
Establishing Deadline for Filing Proofs of Claim and Approving
the Form and Manner of Notice Thereof (the "Bar Date Order") had
passed, and after the Debtors had filed the Second Amended Joint
Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and
the Official Committee of Unsecured Creditors (the "Plan"), and
after the entry of the Order Confirming the Plan (the
"Confirmation Order"), and after the Effective Date, the Trust
initiated separate litigations against Decision One, PHH and
Honor Bank. The Trust asserted various claims on the Contracts
related to each appellee's representations and warranties
concerning the residential mortgage loans. The Trust initiated
similar litigation against Sierra Pacific three days prior to
the Effective Date. In response, each appellee filed
counterclaims against the Trust, asserting that the Trust's
lawsuits breached certain provisions in the Contracts, which
purport to entitle each appellee to seek damages in the form of
attorney's fees and costs from the Trust (the "Counterclaims").[1]

_____

[1] Sierra Pacific asserted its Counterclaims pursuant to
settlement agreements related to the Contracts. The settlement

The litigations are currently pending in the United States District Court for the District of Minnesota.

The Trust filed a motion in Bankruptcy Court to enjoin the appellees from pursuing the Counterclaims, arguing that the Counterclaims were subject to the bankruptcy discharge and the injunction provisions (the "Injunction Provisions") of the Bar Date Order, the Plan and the Confirmation Order. However, the Trust did not contest that the appellees may otherwise seek attorney's fees as defenses or setoffs under the Contracts.

The Bankruptcy Court denied the Trust's motion, reasoning that the Counterclaims are not pre-petition claims subject to discharge and the Injunction Provisions "because they result from the voluntary post-confirmation actions of RFC and the Trust." In re Residential Capital, LLC, 541 B.R. at 217. Accordingly, the dispute on appeal is whether the Bankruptcy Court erred by declining to enjoin the appellees from pursuing their contractually-based Counterclaims because --- contrary to the general rule that contract claims accrue for purposes of the Bankruptcy Code at the time of contract execution --- those Counterclaims arose post-confirmation, post-discharge because

---

agreements also predated the Petition Date. Sierra Pacific contends that there is no relevant difference between pursuing claims under a settlement agreement as opposed to an original contract. See Sierra Pacific's Op. Br. at 5. Therefore, references to the Contracts include Sierra Pacific's settlement agreements unless otherwise noted.

the Trust had "voluntarily . . . returned to the fray" by suing

on the Contracts post-confirmation, post-discharge, thus

rendering the bankruptcy discharge and complementary Injunction

Provisions inapplicable.

For the reasons explained below, the Order is **reversed and
the case is remanded** for further proceedings consistent with

this opinion.

**I.**

The following facts are undisputed unless otherwise noted.

**A.**

Years prior to the Petition Date, RFC entered into the

Contracts. See App. at 1-180; see also App. at 447-49.[2] Pursuant

to the Contracts, the Debtors purchased residential mortgage

loans from the appellees, again prior to the Petition Date.

According to the Trust, the residential mortgage loans turned

out to be defective and greatly contributed to the Debtors'

eventual insolvency and bankruptcy. Each Contract contains

certain provisions --- such as covenants not to sue, notice and

opportunity to cure provisions, forum selection clauses, and/or

prevailing party provisions --- breach of any of which purport

to entitle each respective appellee to assert claims seeking

attorney's fees and other costs from RFC (the "Clauses"). See,

---

[2] Citations to "App." refer to the Appendix filed by the Trust.
Citations to "Appellees' App." refer to the Appendix filed by
the appellees.

4

e.g., App. at 10, 12, 22-23, 32-33, 47-48; Appellees' App. at 168, 172-73, 228-29.

**B.**

On August 29, 2012, the Bankruptcy Court entered its Bar Date Order setting November 9, 2012 (subsequently extended to November 16, 2012) as the general bar date by which claimants were required to file proofs of claims with the Bankruptcy Court. See App. at 181-200; Bankr. Dkt. 2093 (Order Extending Deadline for Filing Proofs of Claims) at 2. On or around September 7, 2012, the appellees received notice of this bar date. See Bankr. Dkt. 1412 (Affidavit of Service for the Notice of Deadlines for Filing Proofs of Claim). The notice advised potential creditors that they must file proofs of claim against the Debtors by the bar date and that the bar date applied "to all claims against the Debtors that arose before May 14, 2012." App. at 201. The notice stated that "claim" had the same definition as contained in the Bankruptcy Code, meaning a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." App. at 202 (quoting 11 U.S.C. § 101(5)). The notice also informed any creditor that if it failed to file a timely proof of claim, and was otherwise not exempt from this requirement, it would be "forever barred, estopped and enjoined from asserting

5

such claim against the [D]ebtors." App. at 205. No appellee

filed a proof of claim that would cover the Counterclaims. See

App. at 516. In fact, other than PHH, which filed a proof of

claim unrelated to the Counterclaims, none of the appellees

filed a proof of claim at all.[3] See App. at 521-24, 526-27.

The Debtors notified their creditors, including the

appellees, that the Debtors' own pre-petition claims would

survive the bankruptcy. The Debtors' proposed disclosure

statement filed on July 4, 2013 provided that the Trust

"retain[s] and may enforce all rights to commence and pursue, as

appropriate, any and all Causes of Action of the Debtors or the

Debtors' Estates, whether arising before or after the Petition

Date" unless the Debtors had expressly waived the action in

question. Bankr. Dkt. 4157 (Proposed Disclosure Statement) at

119; see also Bankr. Dkt. 4770-1 (Amended Proposed Disclosure

Statement containing same language) at 139; Bankr. Dkt. 4809

(Order Approving Disclosure Statement) at 6. The notice of the

disclosure statement, which each appellee received on or around

---

[3] While the general bar date was November 16, 2012, the
Confirmation Order set a bar date of no later than 45 days after
the Effective Date for claims arising from the rejection of
executory contracts. See App. at 285. In their papers, the
parties disagreed on whether the Contracts were executory or
non-executory, and thus which bar date applied. However, at oral
argument, counsel for both Decision One and the Trust agreed
that whether the Contracts were executory or non-executory does
not affect the outcome of this case. Indeed, because it is
undisputed that no appellee filed a proof of claim that covers
the Counterclaims, it is unnecessary to resolve the issue.

August 29, 2013, also disclosed that the Plan would "CONTAIN[]
RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS." App. at 214
(emphasis in original).

On October 24, 2013, the Debtors filed a plan supplement
(the "Plan Supplement") in which they identified lenders, like
the appellees (and Decision One and PHH in particular), as
potential targets of litigation. See Bankr. Dkt. 5342-12 (The
Plan Supplement). The Plan Supplement provided that the Trust
"may enforce all rights to commence and pursue, as appropriate,
any and all Causes of Action of the Debtors or the Debtors'
Estates, whether arising *before or after the Petition Date*,
including any Causes of Action specifically enumerated in the
Plan Supplement, and the Liquidating Trust's and Borrower Claims
Trust's respective rights to commence, prosecute, or settle such
Causes of Action shall be preserved *notwithstanding the
occurrence of the Effective Date*" and that "the claims and
Causes of Action reserved include, among others, Causes of
Action against *mortgage servicing companies*, borrowers,
realtors, *loan originators*, insurance companies, *correspondent
lenders*, suppliers of goods and services, vendors, *financial
institutions* or any other parties." Bankr. Dkt. 5342-12 at 3
(emphasis added). The Plan Supplement also contained a section
titled "Potential Claims Relating to RMBS Recoveries," which
provided:

The Estates are in the process of reviewing loans
placed into Residential Mortgage Backed Securities for
recovery opportunities. Some of those loans were sold
to the Estates via correspondent relationships. Those
relationships are governed by contractual agreements
that contain representations and warranties for loans
sold to the Estates, whereby certain correspondents
may have potentially breached the contractual
agreements. The Estates are investigating, and
expressly reserve all Causes of Action against or
related to any entity or person that sold or
transferred any loan, mortgage, security, note or
certificate to any Debtor, their affiliates,
subsidiaries, officers, directors and employees,
including, for the avoidance of doubt, entities that
had a correspondent relationship with the Debtor.
Bankr. Dkt. 5342-12 at 4-5.

In addition, the Plan Supplement included a non-exhaustive
table identifying certain recovery efforts on behalf of the
estate. See Bankr. Dkt. 5342-12 at 6-14.[4] It disclosed that
"[t]he Estates are pursuing recovery of a defective loan(s)
under the reps and warrants of an executed Purchase/Sale
agreement" against Decision One and PHH. Bankr. Dkt. 5342-12 at
11, 13. Despite this, no appellee filed any proof of claim
asserting any contractual right to attorney's fees in the event
any appellee was sued by any of the Debtors.

On December 6, 2013, the Debtors filed the Plan. See App.
at 297-420 (The Plan). It is undisputed that no appellee
objected to the Plan and, on December 11, 2013, the Bankruptcy
Court entered the Confirmation Order with an Effective Date of

---

[4] The Table did not specifically mention Sierra Pacific or Honor
Bank. See Bankr. Dkt. 5342-12 at 6-14.

December 17, 2013. App. at 217-96 (The Confirmation Order); <u>see</u> <u>also</u> Bankr. Dkt. 6137 (Notice of Entry of Confirmation Order). The Plan and the Confirmation Order each provided for the discharge of claims arising prior to the Effective Date[5]:

> The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Liquidating Trust, or any of their respective assets or properties arising prior to the Effective Date. App. at 405 (The Plan).
>
> ...
>
> [E]ach holder . . . of a Claim against or Equity Interest in a Debtor shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date. . . . App. at 272-73 ¶ 42 (The Confirmation Order).

The Plan and Confirmation Order also contained Injunction Provisions that bar any actions against the Trust arising from claims that have been discharged:

> Except as otherwise provided in the Confirmation Order or herein and in accordance with Article IX.E hereof, all Entities . . . who have held, hold or may hold Claims, Equity Interests, Causes of Action or liabilities that constitute Released Claims, are permanently enjoined and precluded, from and after the

---

[5] As in the bar date notice, the term "claim" in both the Plan and the Confirmation Order possessed the same broad meaning as contained in the Bankruptcy Code. App. at 309 (The Plan) (citing 11 U.S.C. § 101(5)); <u>see also</u> App. at 217 n.1 (The Confirmation Order).

effective date of the Plan, from: (a) commencing or
continuing in any manner or action or other proceeding
of any kind against any Released Party whether
directly, derivatively or otherwise, on account of or
in connection with or with respect to any Released
Claims . . . (b) enforcing, attaching, collecting or
recovering by any manner or means any judgment, award,
decree or order against any Released Party on account
of or in connection with or with respect to any
Released Claims . . . and (e) commencing or continuing
in any manner or action or other proceeding of any
kind against any Released Party on account of or in
connection with or with respect to any Released
Claims. . . .[6] App. at 404-05 (The Plan).

...

Except as otherwise expressly specified in the Plan,
after the Effective Date, any holder of such Claim or
Equity Interest shall be precluded from asserting
against the Debtors, the Liquidating Trust, or any of
their respective assets or properties, any other or
further Claim based on any document, instrument, act,
omission, transaction, or other activity of any kind
or nature that occurred before the entry of the
Confirmation Order. App. at 405 (The Plan).

...

[A]ll such holders shall be forever precluded and
enjoined, pursuant to section 524 of the Bankruptcy
Code, from prosecuting or asserting any discharged
Claim against or terminated Equity Interest in the
Debtors. App. at 273 ¶ 42 (The Confirmation Order).

The Plan also provided for the automatic rejection of all

executory contracts that had not been already assumed or that

were not expressly assumed under the Plan. See App. at 377 (The

---

[6] The term "Released Claims" was in turn defined to include
"liabilities that . . . have been discharged . . . pursuant to
the . . . Plan." App. at 329 (The Plan). The term "Released
Party" included the Trust. App. at 329 (The Plan).

Plan). None of the Contracts were expressly assumed under the
Plan.

## C.

Pursuant to the Plan and the Confirmation Order, the Trust
was established to pursue causes of actions on behalf of the
bankruptcy estate. See App. at 281-82 ¶ 48 (The Confirmation
Order). Between December 14, 2013 and May 13, 2014, the Trust
sued each of the appellees alleging that each breached
representations and warranties contained in the Contracts. See,
e.g., Appellees' App. at 1-79. Subsequently, between August 16,
2014 and July 16, 2015, each appellee filed the Counterclaims
based on alleged breaches of the Clauses. See App. at 449-50,
481-84, 507-15, 573-81. The Trust thereafter filed a motion
asking the Bankruptcy Court to enjoin the Counterclaims, which
are currently pending in the United States District Court for
the District of Minnesota. The Bankruptcy Court denied the
motion. This appeal followed.

## II.

The Court reviews the Bankruptcy Court's factual findings
for clear error and its legal conclusions de novo. See Cellmark
Paper, Inc. v. Ames Merch. Corp. (In re Ames Dep't Stores,
Inc.), 470 B.R. 280, 283 (S.D.N.Y.), aff'd, 506 F. App'x 70 (2d
Cir. 2012); see also Conway Hosp., Inc. v. Lehman Bros. Holdings
Inc., 531 B.R. 339, 342 (S.D.N.Y. 2015).

11

### III.

This appeal turns on when the appellees' Counterclaims accrued. The Trust argues that, under the settled law in this circuit, the appellees' Counterclaims are contingent claims that accrued pre-petition at the time the Contracts were executed, were discharged during the bankruptcy, and are thus subject to the Injunction Provisions. The appellees counter by repeatedly relying on the refrain that the Trust's voluntary, post-confirmation, post-discharge lawsuits breached the Contracts, meaning their Counterclaims accrued post-confirmation, post-discharge and accordingly survived the bankruptcy. The appellees' argument ignores that the Trust filed its lawsuit against Sierra Pacific post-petition but prior to the Effective Date. In any event, the distinction is ultimately immaterial because all of the appellees' Counterclaims accrued pre-petition.

### A.

As an initial matter, the appellees argue that the Bankruptcy Court made factual findings regarding the Contracts that control in this case. The facts concerning when the Trust sued the appellees and when the appellees asserted their Counterclaims are not disputed. The Trust voluntarily initiated litigation against the appellees after the Petition Date (and, in the case of Decision One, Honor Bank, and PHH, after the

Effective Date). The appellees asserted their Counterclaims thereafter. The Trust's claims against the appellees and the appellees' Counterclaims against the Trust derive from the same Contracts. However, when the appellees' Counterclaims accrued, and whether the bankruptcy's discharge and Injunction Provisions apply to those Counterclaims, is an issue of statutory interpretation and bankruptcy law, which the Court reviews <u>de novo</u>.

**B.**

"The Bankruptcy Code determines when [a] claim arose." <u>Conway Hosp., Inc.</u>, 531 B.R. at 342 (citing <u>Pearl–Phil GMT (Far East) Ltd. v. Caldor Corp.</u>, 266 B.R. 575, 581 (S.D.N.Y. 2001)). The Plan, the Confirmation Order and the Bar Date Order each adopted the Bankruptcy Code's definition of a "claim," meaning a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). "In interpreting this provision, the Second Circuit Court of Appeals has held that the term 'claim' is sufficiently broad to encompass any possible right to payment." <u>Conway</u>, 531 B.R. at 342 (quoting <u>Mazzeo v. United States (In re Mazzeo)</u>, 131 F.3d 295, 302 (2d Cir. 1997)). As a general rule, "[c]ontract claims . . . arise upon execution of an agreement." <u>Id.</u> at 343 (quoting <u>Kling Realty Co. v. Texaco,</u>

13

Inc. (In re Texaco Inc.), No. 10cv8151, 2011 WL 4526538, at *4
(S.D.N.Y. Sept. 28, 2011)); see also Pearl-Phil GMT, 266 B.R. at
582 ("[T]he clear weight of case law in this Circuit . . .
recognizes that contract-based bankruptcy claims arise at the
time the contract is executed.").

The appellees, through their Counterclaims, are seeking
attorney's fees and costs pursuant to provisions in the pre-
petition Contracts that they claim authorize such payments based
on the Trust's purported post-confirmation breach of various
provisions in those Contracts. The appellees' Counterclaims are
"contingent claims" that accrued pre-petition upon the execution
of each respective Contract. Ogle v. Fid. & Deposit Co. of Md.,
586 F.3d 143 (2d Cir. 2009) is instructive.

In Ogle, 586 F.3d at 145, Fidelity & Deposit Company of
Maryland ("Fidelity") entered into several pre-petition
agreements with Agway, Inc. ("Agway") that required Agway to
indemnify Fidelity for attorney's fees that Fidelity might incur
to enforce those agreements. After Agway filed for Chapter 11
bankruptcy, Fidelity unsuccessfully demanded indemnity under the
agreements and incurred attorney's fees in litigation to collect
from Agway. Id. During Agway's bankruptcy proceeding, Fidelity
had filed a claim to protect its contingent right to payment
under the agreements with Agway. See id.

14

The issue before the Second Circuit Court of Appeals in Ogle was thus "whether an unsecured creditor can collect *post*-petition attorneys' fees based on a *pre*-petition indemnity agreement." Id. at 144. The Supreme Court in Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007) had previously held that pursuit of such fees was permissible when litigating issues of bankruptcy law. Following Travelers, the Court of Appeals in Ogle reviewed the definition of contingent claim: "A 'contingent' claim under the [Bankruptcy] Code refers to obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created. A claim will be deemed to have arisen pre-petition if the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation-a right to payment-under the relevant non-bankruptcy law." Ogle, 586 F.3d at 144 (citations and internal quotation marks omitted). The Court of Appeals noted that it was settled and undisputed that, "Under contract law, a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed." Id. (quoting In re Manville Forest Prods. Corp., 209 F.3d 125, 129 (2d Cir. 2000)).

Ogle went on to hold "that an unsecured claim for post-
petition fees, authorized by a valid pre-petition contract," is
a contingent claim "deemed to have arisen pre-petition." Id. at
147 (citing In re SNTL Corp., 571 F.3d 826, 844 (9th Cir.
2009)); see also In re Texaco Inc., 2011 WL 4526538, at *4 ("The
fact that environmental liability, the contingency here,
materializes post-petition does not transmogrify the claim into
a post-petition claim, but merely means that the contingent
claim moved closer to becoming liquidated upon the happening of
the contingency." (alteration, citation, and internal quotation
marks omitted)). The appellees' Counterclaims for attorney's
fees are just that, unsecured contingent claims for post-
petition fees that were within the contemplation of the parties
at the time of pre-petition contract execution. The
Counterclaims therefore accrued upon the execution of each
Contract, years prior to the Petition Date. The appellees
accordingly should have filed proofs of claims to preserve their
claims, which were discharged when they failed to do so. See
Conway Hosp., Inc., 531 B.R. at 343 (holding that failure to
file timely proof of claim precluded pre-petition claim).

The appellees do not dispute that they contemplated that
litigation related to the Contracts might arise when they
executed the Contracts with the protective Clauses, hence the
inclusion of provisions that enable the appellees to claim

16

attorney's fees in the event of contractual breach, or that
provide for covenants not to sue or forum selection clauses. See
In re Manville, 209 F.3d at 129 (claims for indemnity arose pre-
petition where "the terms of the indemnification agreements were
so broad as to encompass all types of future liability"); Pearl-
Phil GMT, 266 B.R. at 580 ("Certainly the possibility of a
future breach is within the presumed contemplation of the
contracting parties."). Instead, they attempt to distinguish
Ogle by asserting that Ogle involved attorney's fees incurred to
enforce an indemnity while this case involves claims for
attorney's fees incurred to compensate for other contractual
breaches. The effort fails. The appellees suggest no principled
way to distinguish the requirement to pay attorney's fees to
enforce the Clauses in the Contracts here from the requirement
to pay attorney's fees to enforce the indemnification agreements
in Ogle. In both cases, the requirement to pay attorney's fees
was triggered post-petition when the debtor failed to meet pre-
petition contractual obligations.

Contrary to the appellees' argument, Ogle is not limited to
claims for the post-petition costs of enforcing pre-petition
indemnification agreements. Ogle, 586 F.3d at 147 ("[Travelers']
analysis and rationale would seem equally applicable to post-
petition costs arising out of pre-petition contracts more
generally."); see also In re Texaco Inc., 2011 WL 4526538, at *4

17

(observing that Ogle extends beyond indemnification agreements).

Indeed, Ogle is consistent with the general rule that "contract

claims," including those based on event default provisions,

"arise upon execution of an agreement." Conway, 531 B.R. at 343

(quoting In re Texaco Inc., 2011 WL 4526538, at *4)); cf. In re

Caldor, Inc.-NY, 240 B.R. 180, 194 n.17 (Bankr. S.D.N.Y. 1999)

(rejecting argument that an indemnification agreement is

distinct from a sale contract for purposes of claim accrual),

aff'd sub nom. Pearl-Phil GMT, 266 B.R. at 575. The appellees

have not presented this Court with any other exceptions to this

rule that counsel a different conclusion.

The appellees also argue that Travelers and Ogle support

their position because the Supreme Court and the Court of

Appeals, respectively, permitted claims for attorney's fees to

proceed against debtors. But the creditors in both cases had

timely preserved their claims for attorney's fees by satisfying

applicable procedural requirements, including by filing proofs

of claims, which supports the conclusion that the appellees were

also required to do so in this case. See Travelers, 549 U.S. at

445-47; Ogle 586 F.3d at 145; see also Fed. R. Bankr. P.

3003(c)(2). Neither Ogle nor Travelers indicated that claimants

for attorney's fees, like the appellees, could avoid the

discharge of their contractual claims for attorney's fees even

18

if they failed to file proofs of those claims in accordance with
the Bankruptcy Court's orders.

The appellees' claims for attorney's fees accrued at the
time the Contracts were executed even though they remained
contingent until the Trust allegedly breached the Contracts. The
appellees could have submitted proofs of claims to preserve
these claims prior to the bar date but did not. Therefore,
pursuant to the Bar Date Order, the Plan, and the Confirmation
Order, the Counterclaims were discharged and became subject to
the Injunction Provisions. This is true regardless of whether
the Contracts are executory or non-executory.[7] See In re Hawker
Beechcraft, Inc., 486 B.R. 264, 276-77 (Bankr. S.D.N.Y. 2013).

---

[7] The appellees, like the Bankruptcy Court, rely on In re Texaco
Inc., 254 B.R. 536, 557-59 (Bankr. S.D.N.Y. 2000) for the
propositions that (1) "no court has ever held that future claims
for possible future breaches of contract constitute 'claims'
under Section 101(5) that must be filed pre-confirmation" and
(2) whether the Contracts were assumed or rejected in the
bankruptcy is irrelevant. Texaco is distinguishable. There, the
court held that discharge did not permit the debtor to disregard
its ongoing and future "prudent operator contractual and
statutory lessee obligations as they arose in the ordinary
course after Confirmation" because "when a debtor [post-
confirmation] continues to derive benefits under the contract or
lease, the debtor will also be burdened with the obligations,
and the lease or other contract will be deemed to pass through
or ride through the bankruptcy unaffected by it." Id. at 541-42,
557 (citations and internal quotation marks omitted). Here, it
is undisputed that the Trust's litigations relate to
representations and warranties allegedly breached years prior to
the Petition Date, not an ongoing attempt to do business under
the Contracts.

The appellees cite several similar, inapposite out-of-
circuit cases that found that contractual claims arose post-

Accordingly, the appellees' Counterclaims arose pre-petition, were discharged in bankruptcy and are therefore subject to the Injunction Provisions.

### C.

The appellees nonetheless urge that the relevant claim accrual inquiry should focus on what they perceive as the self-serving nature of the Trust's post-confirmation acts. They protest that the Trust's litigations on the Contracts are asymmetrical, apparently calculated to take advantage of the bankruptcy discharge to allow the Trust to pursue riskless litigation.[8]

For support, the appellees ask the Court to follow the Bankruptcy Court and adopt the Ninth Circuit's nonbinding "Ybarra rule," which provides that a claim for attorney's fees

---

discharge because the debtor continued to incur new obligations under pre-petition contracts. See, e.g., Wuthrich v. Amer Sports Winter & Outdoor Co., No. C-14-0871 EMC, 2015 WL 1503424, at *5-6 (N.D. Cal. Apr. 1, 2015) (concluding debtor's personal guaranty in pre-petition agreement not discharged as to merchandise purchased post-confirmation, post-discharge); In re Spencer, 457 B.R. 601, 613 (E.D. Mich. 2011) (no discharge of condominium fees incurred post-confirmation, post-discharge).
[8] The appellees cite several cases involving legal fees sought pursuant to court- or arbitration-awarded sanctions. See, e.g., In re Ruben, 774 F.3d 1138, 1140 (7th Cir. 2014). However, sanction claim accrual is different from contract claim accrual. See In re Water Valley Finishing, Inc., 139 F.3d 325, 329 (2d Cir. 1998) (per curiam). The appellees also rely on In re Bowden, No. 14-10545, 2015 WL 4710376, at *5 (Bankr. M.D.N.C. Aug. 6, 2015). But Bowden actually concluded that a creditor's efforts to obtain fees against a debtor based upon the debtor's pre-petition litigation conduct violated the automatic stay.

20

"is deemed to have arisen postpetition if the debtor 'returned
to the fray' postpetition by voluntarily and affirmatively
acting to commence or resume the litigation with the creditor."
In re Gillespie, 516 B.R. 586, 591 (B.A.P. 9th Cir. 2014)
(quoting In re Ybarra, 424 F.3d 1018, 1026-27 (9th Cir. 2005)).
Adopted pre-Travelers and pre-Ogle, the Ybarra rule has operated
as an exception to the Ninth Circuit's general "fair
contemplation" test, which provides that a claim arises when the
"claimant 'can fairly or reasonably contemplate the claim's
existence even if a cause of action has not yet accrued under
nonbankruptcy law.'" Id. (quoting In re SNTL Corp., 571 F.3d at
839). The Ninth Circuit Court of Appeals in Ybarra did not
purport to have a statutory basis for creating a "voluntarily .
. . returned to the fray" exception to "claim" as defined in the
Bankruptcy Code; rather, the Ybarra rule is a creature of policy
aimed at preventing devious debtors from using the bankruptcy
"discharge shield . . . as a sword . . . to undertake risk-free
litigation at others' expense." Ybarra, 424 F.3d at 1026 (citing
Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 531 (9th
Cir. 1998)); see also In re Gillespie, 516 B.R. at 591 (noting
Ybarra rule reflects that Congress "did not intend to insulate
debtors from costs associated with postpetition acts") (citing
Ybarra, 424 F.3d at 1024)).

The appellees' reliance on the Ybarra rule is unpersuasive.

The exception --- which had never been relied upon in this
Circuit prior to the Bankruptcy Court's Order in this case ---
is at odds with well-established Second Circuit precedent that
looks to contract execution as the time of claim accrual, not to
the act that caused the breach, let alone the character of, or
intent associated with, that act. See Conway, 531 B.R. at 343
("The fact that the [contractual event of default]—the relevant
contingency—'materialized post-petition does not transmogrify
the claim into a post-petition claim, but merely means that the
contingent claim moved closer to becoming liquidated upon the
happening of the contingency.'" (quoting In re Manville, 209
F.3d at 129)); see also Pearl-Phil GMT, 266 B.R. at 581. Indeed,
the Ybarra rule cannot be reconciled with the plain language of
Ogle, 586 F.3d at 146-47, which postdates the nonbinding
decision in Ybarra.

While the Bankruptcy Court cited Ybarra, it did not mention
Ogle. The Bankruptcy Court discounted cases holding that
contract claims accrue upon contract execution because those
cases dealt with "administrative priority" while this case
"involves discharge." See In re Residential Capital, LLC, 541
B.R. at 218. According to the Bankruptcy Court, the purpose of
administrative priority is to encourage third party dealings
with the bankruptcy estate and thus relevant administrative
expense case law is of less utility for purposes of determining

22

claim accrual in the discharge context "where claims arise from
voluntary post-confirmation conduct of a post-discharge debtor"
that is within the control of the debtor. Id.

Courts in the Ninth Circuit have recognized that this
purported distinction is questionable. See In re Sec. Aviation,
Inc., 374 B.R. 720, 725-26 (Bankr. D. Alaska 2007); In re Good
Taste, Inc., 317 B.R. 112, 120 (Bankr. D. Alaska 2004); see also
In re Mason, 509 B.R. 341, 344 (Bankr. D. Colo. 2014). In
determining whether a right to payment qualifies as an
administrative expense under the Bankruptcy Code, when the claim
accrued is a threshold issue that a court must resolve before
reaching whether "the consideration supporting the claimant's
right to payment was both supplied to and beneficial to the
debtor-in-possession in the operation of the business." Trs. of
Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 101 (2d
Cir. 1986); see also In re Keene Corp., 208 B.R. 112, 115
(Bankr. S.D.N.Y. 1997). If the claim accrued pre-petition, the
expense is not administrative and a court need not answer the
latter question. See, e.g., In re Texaco Inc., 2011 WL 4526538,
at *6; Pearl-Phil GMT, 266 B.R. at 580; In re Episode USA, Inc.,
202 B.R. 691, 696 (Bankr. S.D.N.Y. 1996), as amended (Nov. 20,
1996). Accordingly, contrary to the Bankruptcy Court's
conclusion, claim accrual is no different for purposes of
discharge as opposed to administrative priority. See, e.g.,

Conway, 531 B.R. at 343 (citing administrative priority cases to
support holding that claim was discharged); In re Texaco Inc.,
2011 WL 4526538, at *4-6 (holding that claim arose pre-petition
and was therefore discharged pursuant to confirmation order and
also could not qualify as administrative expense for same
reason).

The Ybarra rule is not rooted in statutory interpretation,
but policy considerations, which further weighs against its
adoption. As the Second Circuit Court of Appeals has cautioned,
"[e]xceptions to dischargeability are narrowly construed against
the creditor's objections, and confined to those plainly
expressed in the Bankruptcy Code." In re Furio, 77 F.3d 622, 624
(2d Cir. 1996) (emphasis added); see also In re Rosteck, 899
F.2d 694, 697 (7th Cir. 1990); In re Mattera, 203 B.R. 565, 571
(Bankr. D.N.J. 1997). There is therefore no basis for reading an
exception for "voluntarily . . . returning to the fray" into the
Bankruptcy Code where there is otherwise no statutory support
for the exception and the Court of Appeals has instructed that
"the term 'claim' is sufficiently broad to encompass any
possible right to payment." In re Mazzeo, 131 F.3d at 302.

Moreover, the appellees overstate the risk that discharge
of their contingent claims for attorney's fees would allow the
Trust to engage in riskless litigation. The Trust concedes that

24

the appellees' contractual rights to attorney's fees can be used
as defenses or setoffs against the Trust's claims.

Finally, in a recent decision decided after the Bankruptcy
Court issued its Order, the Court of Appeals for the Ninth
Circuit acknowledged that broad application of the Ybarra rule
(and its progeny and ancestry) is inconsistent with the Ninth
Circuit's fair contemplation test for claim accrual and, in an
effort to reconcile the two, explained that the "voluntarily . .
. returned to the fray" exception is only implicated where the
creditor could not "fairly and reasonably contemplate" further
post-discharge litigation with the insolvent debtor. See In re
Castellino Villas, A. K. F. LLC, No. 12-57186, 2016 WL 4608146,
at *4-6 (9th Cir. Sept. 6, 2016) (discussing cases relied upon
by the Bankruptcy Court: Ybarra, 424 F.3d 1018; Siegel, 143 F.3d
525; Shure v. Vermont (In re Sure-Snap Corp.), 983 F.2d 1015,
1018-19 (11th Cir. 1993)). According to the Court of Appeals,
this situation will usually arise "when the prepetition
litigation [between the debtor and the creditor] is resolved in
bankruptcy" and the debtor subsequently initiates another,
unexpected post-discharge litigation against the creditor
related to the same dispute. Id. at *4-5. The Court of Appeals
in Castellino Villas noted the absence of that fact pattern in
that case and concluded that the creditor's claim for post-
discharge attorney's fees under a prevailing party provision in

a pre-petition contract arose pre-petition and consequently had
been discharged in the bankruptcy in part because the inclusion
of the prevailing party provision itself evidenced that the
parties had contemplated future litigation on the contract. See
id. at *5.

In this case, the Trust's litigation on the Contracts was
entirely foreseeable, certainly within the appellees'
contemplation at the time of Contract execution with the
protective Clauses (a point the appellees do not dispute) and in
fact presaged during the bankruptcy proceedings by the
disclosure statement and the Plan Supplement. See, e.g., In re
Manville, 209 F.3d at 129; Pearl-Phil GMT, 266 B.R. at 580.
Indeed, the Trust sued Sierra Pacific prior to the Effective
Date. Nevertheless, the appellees, sophisticated lenders, failed
to file proofs of claims for their contingent claims. But "[b]ar
dates serve an integral role in bankruptcy law because [t]hey
are not designed merely as a 'procedural gauntlet' but rather
serve 'as an integral part of the reorganization process' and
the efficient administration of bankruptcy cases."[9] Conway, 531

---

[9] As a matter of policy, the Bankruptcy Court determined that
claims for attorney's fees should accrue post-petition in part
to avoid inundating bankruptcy courts with speculative proofs of
claims. But such proofs of claims are part of the normal
bankruptcy process, the wisdom of which is best left to the
legislature. See In re Mac-Go Corp., 541 B.R. 706, 719 (Bankr.
N.D. Cal. 2015) (discounting same concern and noting

B.R. at 342 (quoting In re Lehman Bros. Holdings Inc., 433 B.R.
113, 119 (Bankr. S.D.N.Y. 2010)).

    For these same reasons, the appellees' request for
equitable relief is equally unavailing. The cases the appellees
cite in which courts allowed parties to pursue pre-petition
claims for attorney's fees notwithstanding a bankruptcy
discharge involve circumstances not present here, namely indicia
of bad faith by the debtor who was re-litigating issues post-
discharge that had already been decided in court pre-discharge.[10]
See, e.g., Garrett v. Cook, 652 F.3d 1249, 1252-55 & n.4 (10th
Cir. 2011); Siegel, 143 F.3d at 531; In re Sure-Snap Corp., 983
F.2d at 1019. The same cannot be said for these appellees. The
dispute between the appellees and the Trust over the allegedly
defective residential mortgage loans was not decided pre-
discharge, but was plainly contemplated to be pursued and
litigated post-discharge. Moreover, there is no unfairness to
the appellees. The appellees could have filed their claims in
the bankruptcy and can still use the Clauses for the purpose of
defenses and setoffs. Further, the appellees clearly

---

"[c]reditors frequently do file contingent, unliquidated claims,
and the Bankruptcy Code expressly allows such claims").
[10] These circumstances are nearly identical to those described in
Castellino Villas, 2016 WL 4608146, at *4-5, as warranting
special relief but, as noted, are not present here. Indeed,
Ybarra, 424 F.3d at 1020, is also based on a similar, abusive
set of facts.

contemplated the potential for litigation when the Contracts
with the protective Clauses were executed in the first place.

Therefore, the appellees' Counterclaims for attorney's fees
were discharged in the bankruptcy.

### D.

Based on language in Ybarra and equitable principles, the
Bankruptcy Court found in the alternative that the Trust's
litigations had revived the Clauses. See In re Residential
Capital, LLC, 541 B.R. at 217. This conclusion suffers from the
same flaws already discussed. In particular, as the Trust points
out, "reaffirmation" is a statutory device. See In re Cruz, 254
B.R. 801, 813 (Bankr. S.D.N.Y. 2000) ("The only manner in which
a debtor's personal liability on a pre-petition debt can survive
a discharge is through an enforceable reaffirmation agreement
between the debtor and creditor pursuant to 11 U.S.C. § 524(c)."
(citation and internal quotation marks omitted)); In re Adams,
229 B.R. 312, 313 (Bankr. S.D.N.Y. 1999) ("Congress . . .
permit[ted] reaffirmations in certain limited circumstances,
following specific statutory procedures and only under the
supervision of the bankruptcy court . . . ."). The appellees do
not contend that there is a statutory basis for reviving the
Clauses, or that the Trust agreed to reaffirm the Clauses. For
the reasons explained above, equitable principles do not warrant
granting the appellees relief.

28

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, they are either moot or without merit. Therefore, for the reasons stated above, the Order entered by the Bankruptcy Court on November 23, 2015 is **reversed and the case is remanded** for further proceedings consistent with this opinion. The Clerk is directed to close this case.

**SO ORDERED.**

**Dated:     New York, New York**
**           September 20, 2016**

                                    _____/s/_____

                                          **John G. Koeltl**
                                  **United States District Judge**