Hearing Date:  October 13, 2016 at 2:00 p.m. (Eastern Time)

**POLSINELLI**
Daniel J. Flanigan
600 Third Avenue, 42nd Floor
New York, NY 10016
Telephone: (212) 644-0199
Facsimile: (212) 684-0197

*Counsel for ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**REPLY TO OBJECTIONS TO MOTION
OF RESCAP BORROWER CLAIMS TRUST
FOR ORDER AUTHORIZING INTERIM DISTRIBUTION
AND ESTABLISHING DISPUTED CLAIMS RESERVE**

54947152

**TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "**Borrower Claims Trust**," "**Borrower Trust**," or "**Trust**"), as successor to the debtors and debtors in possession in the above-captioned cases (the "**Debtors**"), hereby submits this Reply ("**Reply**") to Barry Mack's Objection ("**Mack Objection**") (Doc. 10156), Tia Smith's Limited Objection ("**Smith Objection**") (Doc. 10160), and, to the extent the Court chooses to consider it,[1] Erlinda Abibas Aniel's Objection (the "**Aniel Objection**") to the Motion of Rescap Borrower Claims Trust for Order Authorizing Interim Distribution and Establishing Disputed Claims Reserve ("**Motion**") (Doc. 10136). Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

**INTRODUCTION**

1. The Confirmation Order provides that no reserve need be established for disallowed Claims in the absence of an order of the Court expressly directing the Debtors to establish such a reserve. The Claimants have not provided any reason why the Court should require the establishment of reserves for the Disallowed Claims on Appeal, which would further postpone the proposed Distribution to holders of Allowed Claims[2] for an indefinite period but definitely into yet another calendar year. Each of the Objectors has had her or his day in Court and lost. To the extent the directive of the Confirmation Order is not deemed to be sufficient in itself, the Trust requests the Court to estimate each of the Claims at $0 in accordance with its prior decision disallowing each of their Claims.

---

[1] The Aniel Objection was not timely filed. It was mailed to the undersigned counsel for the Borrower Trust with a postmark of September 29, 2016. Counsel for the Borrower Trust caused the Objection to be filed as a courtesy to the Court.

[2] As used herein, the term Allowed Claims excludes Allowed Convenience Class Claims, all of which have been paid unless the Claimants have failed to provide the necessary IRS documentation.

1

**ARGUMENT**

*Confirmation Order Requires No Reserve For Disallowed Claims Absent Specific Bankruptcy Court Order*

2. The Objectors do not address the simple and controlling fact that the Confirmation Order, which has long been final and beyond appeal or stay, provides that no reserve need be established for Claims that have been "disallowed or expunged by <u>order of the Bankruptcy Court</u> in the absence of an <u>order of the Bankruptcy Court</u> expressly directing the Debtors to establish such a reserve." (emphasis added) [Confirmation Order, II.36, p. 49] (Doc. 6065). As shown in the Motion, this is not unusual but is a typical provision in plans and confirmation orders. In such a situation it has been held that the Court has "complete discretion" in determining whether any reserve should be required. (*See In re Oakwood Homes Corp.*, 329 B.R. 19, 22 (D. Del. 2005) where the District Court rejected JPMorgan's appeal of the Bankruptcy Court's determination that no reserve would be required instead of the $61 million that JPMorgan claimed should be set aside.) An exception certainly should not be made to the general no-reserve rule established by the Confirmation Order unless there is a special and particular and highly persuasive showing by a Claimant that its Claim should be reserved. None of the Objectors even bothers to try to make such a showing.

*Assuming That The No-Reserve-For-Disallowed-Claims Provision Of The Order Is Not By Itself Sufficient Cause To Overrule The Objections, The Objectors Have Not Met Their Burden To Show That Their Claims Should Be Estimated At More Than $0.*

2. As set forth in the Motion, the principle is firmly established in the case law that the burden of proof in the estimation process, as in the claim objection process itself, is on the claimant once the presumptive validity of the claim has been rebutted, as it has been rebutted in

each Objector's case.³    None of the Objectors met, or even tried to meet, or even acknowledged the existence of, that burden. But their claims have already been determined and disallowed in a proceeding on the merits, a much more elaborate proceeding than most purely "estimation" proceedings. (*In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006); *In re Seaman Furniture Co. of Union Square, Inc.*, 160 B.R. 40 (S.D.N.Y 1993) (court may use arbitration process as basis for estimation)). The standard of review on appeal from an estimation determination by the Bankruptcy Court is the very narrow one of abuse of discretion. As the Third Circuit stated in *Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 135-136 (3rd Cir. 1982):

> The Code, the Rules of Bankruptcy Procedure, 11 U.S.C. app. (1997), and the Suggested Interim Bankruptcy Rules, 11 U.S.C.A. (1982), are silent as to the manner in which contingent or unliquidated claims are to be estimated. Despite the lack of express direction on the matter, we are persuaded that Congress intended the procedure to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue. The principal consideration must be an accommodation to the underlying purposes of the Code. It is conceivable that in rare and unusual cases arbitration or even a jury trial on all or some of the issues may be necessary to obtain a reasonably accurate evaluation of the claims. See 3 Collier on Bankruptcy P 502.03 (15th ed. 1981). Such methods, however, usually will run counter to the efficient administration of the bankrupt's estate and where there is sufficient evidence on which to base a reasonable estimate of the claim, the bankruptcy judge should determine the value. In so doing, the court is bound by the legal rules which may govern the ultimate value of the claim. For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law. See, e.g., 3 Collier on Bankruptcy P 57.15(3.2) (14th ed. 1977). However, there are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the Code.

---

³ Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12-13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 Collier on Bankruptcy ¶ 502.02 (16th rev. ed. 2013).

3

*No Stays On Appeal*

3.      None of the Objectors has obtained or sought to obtain a stay on appeal of the Order disallowing their Claim. The fact that the objector had not obtained a stay pending appeal of the disallowance of its claim was significant to the court in *Enron*, *supra*, and should also be significant here. If the Objectors want to stay the Order approving this Motion, they should be required to seek that stay after the Order is entered, in the proper manner and after fully satisfying the requirements for imposition of such a stay.[4] In such a proceeding they would have to show not only the likelihood of prevailing on the appeal but also might be required, as the bankruptcy court required in *Oakwood*, *supra*, 22-23, to furnish a bond in appropriate amount to compensate the holders of Allowed Claims for the needless delay caused by the stay should the appeals fail.

*Alleged **POLSINELLI** Conflict*

4.      The Smith Objection asserts that the Motion must be denied because the **POLSINELLI** firm, which represents the Trust in this matter and also has represented the Mitchell and Kessler Classes throughout the Cases, supposedly has a conflict of interest. There is no basis in law or fact for this allegation. The Plan itself provides that the "[t]he Borrower Claims Trustee may retain professionals who represented parties in the Chapter 11 Cases, provided such retention is otherwise permissible under applicable law." *See* Plan, Art. IV.F.10. Both the Borrower Trust and Liquidating Trust Agreements contain similar provisions.

---

[4] The factors governing the decision whether to impose a stay pending appeal are: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *In re BGI, Inc.*, 504 B.R. 754, 762 (S.D.N.Y. 2014).

4

54947152

5. But more and better to the point, there is no adversity between the interests of the Trust and the interests of the Kessler and Mitchell Classes (referring to class action classes rather than reorganization plan classes). Those interests have been aligned throughout these Cases. The Kessler Class, whose lead plaintiff was the only borrower creditor representative on the Creditors Committee, aggressively led the effort virtually alone (though with powerful support from Committee counsel) to achieve the best possible treatment for Borrower Claimants under the Plan. Committee member Rowena Drennen not only effectively represented her own interest as a member of the RFC Creditor group but also the interests of the GMACM Creditor group that was ultimately to receive a far greater percentage return under the Plan than the RFC group (30% vs. 9%). It is representatives of the Kessler and Mitchell Classes that have served as the Oversight Committee created by the Borrower Trust. Their interest now as always is exactly the same as the Trust's—to maximize the return for <u>deserving</u> Borrower Claimants, i.e. those with <u>Allowed</u> Claims.

6. Even if the **POLSINELLI** firm were conflicted and subject to disqualification, that would not in the slightest detract from the merits of the Motion, which is for the benefit of all holders of Allowed Borrower Claims, not just the Kessler and Mitchell Class Claimants. The notion that there is some doubt, which the Smith Objection tries to imply, about the validity and finality of either the Mitchell or Kessler Class Claims, which were established by Court-approved Settlement Agreements and included as central features of the Plan, or that the Cooperation Agreement, also approved as part of the Plan, suggests some sort of nefarious "preferential treatment" are, to put it charitably, misinformed and misguided. All these allegations are worthy of the same respect as the Objection's statement that the insurance

policies being hotly litigated about now before Judge Lane have total coverage of 400 **BILLION** Dollars.

WHEREFORE, the Borrower Trust requests that this Court overrule the Mack Objection, Smith Objection, and Aniel Objection and enter the Proposed Order attached to the Motion granting the relief requested in the Motion, and such other and further relief as may be just.

Dated: October 10, 2016  
New York, New York

/s/ *Daniel J. Flanigan*  
Daniel J. Flanigan  
**POLSINELLI**  
600 3rd Avenue, 42nd Floor  
New York, New York 10016  
Telephone: (212) 644-0199  
Facsimile: (212) 684-0197  
dflanigan@polsinelli.com

*Counsel for Borrower Claims Trust*