**Hearing Date: October 13, 2016 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: October 3, 2016 at 4:00 p.m. (Eastern Time)**

Wendy Alison Nora, *pro hac vice*
Attorney for Claimant Tia Danielle Smith
ACCESS LEGAL SERVICES
310 Fourth Ave. S., Suite 5010
Minneapolis, Minnesota 55415
Telephone (612) 333-4144/Facsimile (612) 206-3170
accesslegalservices@gmail.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ) | |
| In re: ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., ) | Chapter 11 |
| Debtors. ) | Jointly Administered |
| ) | |

AMENDED, CORRECTED AND SUPPLEMENTED
LIMITED OBJECTION TO MOTION OF POSINELLI, COUNSEL FOR THE KESSLER AND
MITCHELL CLASS CLAIMANTS ON BEHALF OF THE RESCAP BORROWER CLAIMS
TRUST FOR ORDER AUTHORIZING INTERIM DISTRIBUTION AND ESTABLISHING
DISPUTED CLAIMS RESERVE (CORRECTIONS IN BOLD ITALICS; AMENDED AND
SUPPLEMENTED IN BOLD FONT) WITH SUPPLEMENTARY EXHIBITS C, D AND E

**NOW COMES** Tia Danielle Smith (Ms. Smith), by her attorney, Wendy Alison

Nora of ACCESS LEGAL SERVICES, *pro hac vice*, and objects, on a limited basis to the

Motion of POSINELLI for Order Authorizing Interim Distribution of and Establishing Disputed

Claims Reserve (Doc. 10136 and 10137), and amends, supplements and corrects her October 3,

2016 Limited Objection (a) to correct a typographical error in ¶6 to read ***$400,000,000.00 (Four***

***Hundred Million Dollars)*** and supplementing the factual basis for ¶6 with Exhibits C, D and E;

(b) to renumber second ¶6 as ¶7 and subsequent paragraphs in numerical order; and ( c)

1

supplementing her position in ¶5 and former ¶7, now ¶*8,* in bold font.  Ms. Smith shows the Court:

1. POSINELLI represents the "Kessler Class" Claimants (Claim No. 2110, filed on November 2, 2012 (reported as UNLIQUIDATED and SECURED); Claim No. 2117, filed on November 2, 2012 (reported as UNLIQUIDATED and GENERAL UNSECURED); Claim No. 2254, filed on November 5, 2012 (reported as UNLIQUIDATED and SECURED); Claim No. 5596 (reported as UNLIQUIDATED and SECURED), according to the Claims Registry at http://www.kccllc.net/rescap/creditor/search/result/) and attached hereto as Exhibit A.

2. In January, 2016, the search results from the Claims Registry at reported a different result at http://www.kccllc.net/rescap/creditor/search/result/ upon which counsel for Ms. Smith researched when prepared the now dismissed Adversary Case No. 16-1015 for filing.

3. To the best of the recollection of counsel for Ms. Smith, the Claim of the "Kessler Class" then appeared to report that a Claim Nos. 2117, 2254 and 5596 were withdrawn or expunged and that Claim No. 2110 was reported in the amount of $300,000,000.00.

4. The "Mitchell Class" Claimants (Claim 7354, filed on January 17, 2014,[1] in the amount of $14,500,000.00) are also represented by POSINELLI.

5. There appears to be a conflict of interest between POSINELLI and the RESCAP Borrower Claims Trust because POSINELLI represents the holder of the largest surviving undisputed "Borrower" claim and what appears to be a late-filed claim in the second largest surviving undisputed "Borrower Claim."  88.  **Without a written waiver of the conflict of interest arising under Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.6, 1.7, 1.8,**

---

[1] The Claims Bar Date was November 16, 2012 (Doc. 2093).

2

**1.9 and 1.10, POSINELLI may not represent the Borrower Claims Trust as a matter of law.**

6. There also appears to have been preferential treatment of the "Kessler Class" Claim exclusive "Cooperation Agreement" between the Kessler Class and the Liquidating Trust (Doc. 5342-10), executed as of the effective date of the Chapter 11 Plan (December 17, 2013), by which the LIQUIDATING TRUST and the Kessler Class are allowed to pursue recovery for payment of their claims from insurance policies which potentially total coverage in the amount of *$400,000,000.00 (Four Hundred Million Dollars)*[2] from which the individual homeowners, whose claims are being administered by the CLAIMS TRUST have been barred and excluded. (See Exhibit C, D, and E.)

*7.* Ms. Smith's first limited objection is that POSINELLI may not represent the Kessler Class and the Mitchell Class Claimants and the RESCAP Borrower Claims Trust in filing the Motion to distribute funds to the Kessler and Mitchell Class Claimants.

*8.* Ms. Smith's second limited objection is to the unnecessary language which alleges that her Proofs of Claim Nos. pending on appeal are not entitled to any reserve treatment, whereas the Claimants whose appeals have resulted in remand or which have not yet been tried are allowed reserve *treatment*. **POSINELLI's reasoning that earlier litigated disputed Proofs of Claim, which were disallowed, appealed and reversed on appeal are entitled to reserve treatment, whereas later litigated disputed Proofs of Claim now pending on appeal are not entitled to reserve treatment is based solely and exclusively upon the timing of individual proceedings**

---

[2] The first version of the Ms. Smith's Limited Objection contained a typographical error. Exhibits C, D and E attached hereto are the source documents for the allegation in ¶6

3

**and not upon constitutional or equitable principles. The Claimants whose appeals were heard and favorably determined prior to the date of POSINELLI's Motion are proposed to receive reserve treatment, despite remand for further proceedings, whereas appeals which are pending and have not been determined are excluded from reserve treatment. Such a distinction is arbitrary and has no rational basis and violates the fundamental bankruptcy principle requiring equal treatment of claimants within a valid classification.**

*9.* Finally, Ms. Smith's third limited objection is to POSINELLI's conclusory language that her Proofs of Claim were for an excessive and highly inappropriate amount and that her claims are preventing holders of allowed claims from receiving the distributions to which they are entitled, without an evidentiary basis.

*10.* Ms. Smith reserves her right to supplement this limited objection with additional evidence and requests an evidentiary hearing if the Court does not deny POSINELLI's Motion for conflict of interest and lack of evidence.

**WHEREFORE**, Ms. Smith requests that the Court deny POSINELLI's Motion for the reasons stated herein.

Dated at Madison, Wisconsin this 11th day of October, 2016.

*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora, pro hac vice
Attorney for Tia Danielle Smith
ACCESS LEGAL SERVICES
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
VOICE (612) 333-4144
FAX (612) 206-3170
accesslegalservices@gmail.com
Wisconsin Attorney ID #10170943/Minnesota Bar #0165906

4

# EXHIBIT A



Active Cases

KCC Precedent



Client Login

Case Number:   12-12020

## Case Home

« Go back

# Claim Search Results

Filter applied: **Debtor(s):** All Debtors **Creditor Name: Contains** "Drennen" **Claim Amount Type:** Filed Claim Amount

**Claim Number:** 2117  Download PDF

**Name:** Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard & Rebecca Picard et al.

**Filed Claim Amount:** UNLIQUIDATED

**Date Claim Filed:** 11/2/2012

**Debtor:** Residential Capital, LLC

**Filed Claim Nature:** General Unsecured

**Claim Number:** 2110  Download PDF

**Name:** Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard & Rebecca Picard et al.

**Filed Claim Amount:** UNLIQUIDATED

**Date Claim Filed:** 11/2/2012

**Debtor:** Residential Funding Company, LLC

**Filed Claim Nature:** Secured

**Claim Number:** 2254  Download PDF

**Name:** Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard, and Rebecca Picard et al.

**Filed Claim Amount:** UNLIQUIDATED

**Date Claim Filed:** 11/5/2012

**Debtor:** GMAC-RFC Holding Company, LLC

**Filed Claim Nature:** Secured

**Claim Number:** 5596   Download PDF

**Name:** Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard, and Rebecca Picard on Behalf of Themselves

**Filed Claim Amount:** UNLIQUIDATED

**Date Claim Filed:** 11/16/2012

**Debtor:** GMAC Mortgage, LLC

**Filed Claim Nature:** Secured

This website is maintained for the public's convenience and for informational purposes only. Users of this website should not take or refrain from taking any action based upon content included in the website or in the results of any search made on this site without seeking legal counsel on the particular facts and circumstances at issue from a licensed attorney. All search results provided through this website are qualified in their entirety by the official register of claims and the Schedules of Assets and Liabilities ("Schedules") filed in the bankruptcy case/s of the debtor/s.

Without limiting the generality of the foregoing, any failure by a debtor to designate a claim listed on the Schedules as "disputed", "contingent", or "unliquidated" does not constitute an admission that such amounts are not "disputed", "contingent", or "unliquidated". Further, each debtor reserves the right to amend their Schedules and Statements of Financial Affairs as necessary and appropriate. Debtors further reserve the right to dispute, on any grounds, or to assert offsets or defenses to, any claim reflected on their schedules or filed against a Debtor, including objecting to the amount, liability classification or priority of such claim, or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated".

©2014 Kurtzman Carson Consultants    |    Terms of Use    |    Privacy Statement

# EXHIBIT B

 KCC

Active Cases

KCC Precedent

Client Login



**Case Number:**   12-12020

## Case Home   ⌄

« Go back

# Claim Search Results

Filter applied: **Debtor(s):** All Debtors **Creditor Name: Contains** "Mitchell" **Claim Amount Type:** Filed Claim Amount

**Claim Number:** 5662  Download PDF

**Name:** Estate of Felecia Victoria Mitchell

**Filed Claim Amount:** $62,313.77

**Date Claim Filed:** 11/16/2012

**Debtor:** GMAC Mortgage, LLC

**Filed Claim Nature:** General Unsecured

**Claim Number:** 5724  Download PDF

**Name:** Estate of Felecia Victoria Mitchell

**Filed Claim Amount:** $62,313.77

**Date Claim Filed:** 11/16/2012

**Debtor:** GMAC Mortgage, LLC

**Filed Claim Nature:** General Unsecured

**Claim Number:** 5453  Download PDF

**Name:** Franklin Delano Mitchell and Melinda Ardell Mitchell

**Filed Claim Amount:** $569,515.89

**Date Claim Filed:** 11/16/2012

**Debtor:** Residential Capital, LLC

**Filed Claim Nature:** General Unsecured

**Claim Number:** 5453   Download PDF

**Name:** Franklin Delano Mitchell and Melinda Ardell Mitchell

**Filed Claim Amount:** $189,838.63

**Date Claim Filed:** 11/16/2012

**Debtor:** Residential Capital, LLC

**Filed Claim Nature:** Secured

**Claim Number:** 5019   Download PDF

**Name:** Linda M. Chavers aka Linda Marie Mitchell

**Filed Claim Amount:** $24,120.32

**Date Claim Filed:** 11/15/2012

**Debtor:** Residential Capital, LLC

**Filed Claim Nature:** General Unsecured

**Claim Number:** 2056   Download PDF

**Name:** Mitchell and Cheryl Riley

**Filed Claim Amount:** BLANK

**Date Claim Filed:** 11/1/2012

**Debtor:** Residential Capital, LLC

**Filed Claim Nature:** General Unsecured

---

**Claim Number:** 4548 Download PDF

**Name:** Mitchell H Nappier

**Filed Claim Amount:** UNLIQUIDATED

**Date Claim Filed:** 11/13/2012

**Debtor:** Residential Capital, LLC

**Filed Claim Nature:** General Unsecured

---

**Claim Number:** 1108 Download PDF

**Name:** Robert and Jurell Mitchell

**Filed Claim Amount:** $73,580.45

**Date Claim Filed:** 10/10/2012

**Debtor:** Residential Capital, LLC

**Filed Claim Nature:** Secured

**Claim Number:** 1949  Download PDF

**Name:** Robert and Jurell Mitchell

**Filed Claim Amount:** $173,530.15

**Date Claim Filed:** 10/29/2012

**Debtor:** Residential Capital, LLC

**Filed Claim Nature:** Secured

**Claim Number:** 7354  Download PDF

**Name:** The Mitchell Settlement Class

**Filed Claim Amount:** $14,500,000.00

**Date Claim Filed:** 1/17/2014

**Debtor:** Residential Funding Company, LLC

**Filed Claim Nature:** General Unsecured

**Claim Number:** 3645   Download PDF

**Name:** Velma R. Mitchell

**Filed Claim Amount:** UNLIQUIDATED

**Date Claim Filed:** 11/8/2012

**Debtor:** GMAC Mortgage, LLC

**Filed Claim Nature:** General Unsecured

This website is maintained for the public's convenience and for informational purposes only. Users of this website should not take or refrain from taking any action based upon content included in the website or in the results of any search made on this site without seeking legal counsel on the particular facts and circumstances at issue from a licensed attorney. All search results provided through this website are qualified in their entirety by the official register of claims and the Schedules of Assets and Liabilities ("Schedules") filed in the bankruptcy case/s of the debtor/s.

Without limiting the generality of the foregoing, any failure by a debtor to designate a claim listed on the Schedules as "disputed", "contingent", or "unliquidated" does not constitute an admission that such amounts are not "disputed", "contingent", or "unliquidated". Further, each debtor reserves the right to amend their Schedules and Statements of Financial Affairs as necessary and appropriate. Debtors further reserve the right to dispute, on any grounds, or to assert offsets or defenses to, any claim reflected on their schedules or filed against a Debtor, including objecting to the amount, liability classification or priority of such claim, or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated".

©2014 Kurtzman Carson Consultants    |    Terms of Use    |    Privacy Statement

# EXHIBIT C

12-12020-mg    Doc 9342-10    Filed 10/09/15    Entered 10/09/15 20:09:01    Exhibit 11
Pg 9 of 37

# Exhibit 11

# COOPERATION AGREEMENT

This agreement (the "Cooperation Agreement") is made and entered into as of the Effective Date, by and between the Liquidating Trust and the Kessler Settlement Class. The Liquidating Trust and the Kessler Settlement Class are referred to collectively in this Cooperation Agreement as "the Parties" or individually as a "Party".

## RECITALS

A.      On May 14, 2012, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.      On or about August 23, 2013, the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, et al., dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan", and the related disclosure statement, the "Disclosure Statement").

C.      On or about August 23, 2013, the Bankruptcy Court approved the Disclosure Statement.

F.      On August 23, 2013 and [_____], 2013, the Bankruptcy Court entered the Kessler Settlement Approval Orders.

D.      On or about [_____], 2013, the Bankruptcy Court issued an order confirming the Plan.

E.      On [_____], 2013, the Effective Date of the Plan occurred.

G.      The Plan provides for the conveyance, transfer, and assignment of the GM Insurance Rights to the Liquidating Trust and the Kessler Settlement Class on the Effective Date.

NOW, THEREFORE,  in consideration of the promises and the mutual covenants contained herein, the Parties agree as follows:

## DEFINITIONS

Other than the terms defined below or elsewhere in this Cooperation Agreement, capitalized terms shall have the meaning assigned to them in the Plan.

## AGREEMENT

1.      The Parties shall cooperate with each other in good faith to coordinate the prosecution of their respective GM Insurance Rights and shall use reasonable efforts not to prejudice the other's GM Insurance Rights, provided that nothing in this Cooperation Agreement shall require either the Liquidating Trust or the Kessler Settlement Class to undertake any efforts that would materially adversely affect the position of the cooperating party.

2.     Such cooperation shall include cooperating by bringing any insurance coverage action in a combined action or proceeding to the extent necessary to avoid insurance company defenses based on splitting of a cause of action through partial assignment.  To the extent the Parties after good faith consultation cannot agree on the venue or forum for a combined action (if necessary) or on any other action that must be done by the Parties unitarily then each Party shall provide the other party in writing their recommended decision and the reasons therefor with respect to the venue or forum for the combined action or any other action that must be done by both Parties unitarily (the "Writing").  Within ten (10) days the Parties shall further consult in good faith and if no agreement can be reached with respect to the venue or forum for a combined action then each Party shall submit within five (5) days its Writing to an independent arbitrator for a binding and non appealable determination.  The independent arbitrator for any such determination shall be: _____.  All costs of the independent arbitrator shall be shared equally by the Parties.  With respect to any other action that must be done by both Parties unitarily which does not involve the venue or forum for a combined action, within ten (10) days the Parties shall further consult in good faith and if no agreement can be reached then the Kessler Settlement Class shall have the right to select the other action for the Parties that must be done unitarily.

3.     Each assignee of the GM Insurance Rights shall bear its own attorney's fees, costs and expenses in pursuing recovery on the rights assigned to it.

4.     Except as expressly limited or conditioned in paragraphs 5 and 6, each Party shall have sole settlement authority with respect to its claims subject to the terms of the Kessler Settlement Agreement.

5.     Before any Party enters into a settlement involving any of its GM Insurance Rights, it shall give the other Party at least fourteen (14) days' notice of the proposed settlement, and disclose to the other Party any proposed amount to be paid under any of the GM Policies. Settlement can proceed as soon as the other Party consents or the fourteen (14) day notice period has been expired, unless otherwise ordered by the Bankruptcy Court.

6.     After any Party enters into a settlement involving any of its GM Insurance Rights, it shall, within fourteen (14) days of entering into the settlement, notify the other Party of the settlement and disclose to the other Party any amounts to be paid under any of the GM Policies. Any settlement entered into by any Party concerning its GM Insurance Rights shall contain a provision authorizing the disclosure to the other Party of the amount to be paid under any of the GM Policies and a provision whereby the settling insurance companies agree to waive any defense of splitting a cause of action or of merger and bar as to the non-settling Party arising out of, relating to, or resulting from the settlement.

7.     The Parties to this Cooperation Agreement have common legal interests in connection with potential claims that have been or may be asserted in connection with the GM Insurance Rights ("Common Interests").  To protect and advance those Common Interests, the Parties desire, from time to time, to exchange certain confidential, privileged, and/or work product information among themselves or their counsel, including the thoughts, mental impressions, and strategies of counsel, without waiving otherwise applicable privileges and

protections.  The Parties believe that exchanging such information is necessary to further their Common Interests, and, in the event of litigation, their joint defense.

8.     The Parties intend by this Cooperation Agreement to invoke as broadly as is legally permissible the joint defense doctrine and the common interest doctrine with respect to any materials shared pursuant to this Cooperation Agreement.

9.     Any notice required pursuant to this Cooperation Agreement shall be provided by email and by either regular mail or overnight mail, to the following:

As to the Kessler Settlement Class:

R. Frederick Walters
WALTERS, BENDER, STROHBEHN & VAUGHAN, P.C.
2500 City Center Square
1100 Main
Kansas City, MO 64105
Emailfwalters@wbsvlaw.com

Bruce Carlson
CARLSON LYNCH LTD.
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Email:  bcarlson@carlsonlynch.com

As to the Liquidating Trust:

if to the Delaware Trustee, to:

[_____]
Attention: Trust Administration

if to the Liquidating Trust, to:

[_____]

10.     This Cooperation Agreement shall not create any agency or similar arrangement among the Parties.  No Party shall have authority to waive or settle any claims, GM Insurance Rights or other rights on behalf of any other Party; nor shall any waiver or settlement by any Party be construed to apply to any claims, GM Insurance Rights or other rights of the other Party.

11.     This Cooperation Agreement supersedes all prior oral and written understandings, agreements, and arrangements between the Parties with respect to the Cooperation Agreement.

For the avoidance of doubt, this Cooperation Agreement does not supersede any other rights and obligations of the Parties as set forth in the Kessler Settlement Agreement, the Plan, the Confirmation Order or the Liquidating Trust Agreement.  Except for those set forth expressly in this Cooperation Agreement, there are no agreements, covenants, promises, representations or arrangements between the Parties with respect to the Cooperation Agreement.

12.     This Cooperation Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by all Parties.  This Cooperation Agreement may not be amended, altered, modified or waived, in whole or in part, orally.

13.     Each Party to this Cooperation Agreement warrants that it is acting upon its independent judgment and upon the advice of its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Cooperation Agreement.

14.     This Cooperation Agreement shall be interpreted, construed, enforced, and administered in accordance with the laws of the state of New York, without regard to conflict of laws rules.  This Cooperation Agreement shall be enforced in the Bankruptcy Court.  The Parties waive any objection that each Party may now have or hereafter have to the venue of such suit, action, or proceeding and irrevocably consent to the jurisdiction of the Bankruptcy Court in any such suit, action, or proceeding, and agree to accept and acknowledge service of any and all process which may be served in any such suit, action, or proceeding.

15.     This Cooperation Agreement shall be binding on and shall inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, heirs and legal representatives.  If any additional assignments of GM Insurance Rights are made under the GM Policies, the provisions and obligations under this Cooperation Agreement shall be binding on and extend to any such assignees and their respective successors, assigns, executors, administrators, heirs and legal representatives as set forth in Section 5(b) of the Kessler Settlement Agreement.

16.     This Cooperation Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations between the Parties, all Parties have contributed to the preparation of this Cooperation Agreement.

17.     With respect to itself, each Party to this Cooperation Agreement represents, covenants and warrants that (a) it has the full power and authority to enter into and consummate all transactions contemplated by this Cooperation Agreement and has duly authorized the execution, delivery, and performance of this Cooperation Agreement, and (b) the person executing this Cooperation Agreement has the full right, power and authority to enter into this Cooperation Agreement on behalf of the Party for whom he/she has executed this Cooperation Agreement, and the full right, power, and authority to execute any and all necessary instruments in connection herewith, and to bind such Party fully to the terms and obligations of this Cooperation Agreement.

4

18.     Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, words importing the singular number shall include the plural number and vice versa, and words importing persons shall include firms, associations, corporations, and other entities.   The term "including" shall mean "including, without limitation."

19.     The Parties acknowledge and agree that any breach of this Cooperation Agreement may result in immediate and irreparable injury for which there is no adequate remedy available at law, and the Parties agree that, in addition to any other remedies available, specific performance and injunctive relief are appropriate remedies to compel performance of this Cooperation Agreement.

20.     Nothing in this Cooperation Agreement shall constitute, or be construed as, an admission that any Party is liable to any other Party or to any person not a party to this Cooperation Agreement.  This Cooperation Agreement shall not be admissible in evidence nor shall it be used as evidence in any action or proceeding for any purpose other than for the purpose of enforcing the terms of this Cooperation Agreement.

21.     Any provision of this Cooperation Agreement held to be invalid, illegal, or unenforceable shall be ineffective to the extent of such invalidity, illegality, or unenforceability without affecting the validity, legality, or enforceability of the remaining provisions.

22.     This Cooperation Agreement may be executed in one or more counterparts, each of which, when so executed, shall be deemed to be an original and all of which taken together shall constitute one Cooperation Agreement.  This Cooperation Agreement may be executed and delivered by each Party by facsimile or electronic mail and a facsimile or electronic mail of this Cooperation Agreement when so executed shall be binding as an original.

IN WITNESS WHEREOF, the undersigned parties and their counsel have executed this Cooperation Agreement:

Dated: _____          THE KESSLER SETTLEMENT CLASS


By: _____
    Signature

    _____
    Printed Name

    _____
    Title



Dated: _____          THE LIQUIDATING TRUST


By: _____
    Signature

    _____
    Printed Name

    _____
    Title

# EXHIBIT D

12-12020-mg   Doc 9342-11  Filed 10/15/15   Entered 10/15/15 20:31:01   Exhibit 12
Pg 1 of 2

# Exhibit 12

## Policy Numbers for the GM Policies

**General Motors**
**Combined Specialty Insurance Program**
**12/15/00 – 12/15/03**

| Insurer | % of | Limit | Policy |
|---|---|---|---|
| **Primary - $50 million** | | | |
| Lloyd's & British Cos. | 100 | $50,000,000 | 823/FD0001142 |
| **First Excess - $50 mil xs $50 mil** | | | |
| Hartford | 40 | $20,000,000 | NDA 0200454-00 |
| CNA/Continental Casualty | 20 | $10,000,000 | 169737324 |
| Lloyd's & British Cos. | 20 | $10,000,000 | 823/FD0001144 |
| MAG/Clarendon | 20 | $10,000,000 | MAG 14 400436 50000 |
| Total | 100 | **$50,000,000** | |
| **Second Excess - $100 mil xs $100 mil** | | | |
| Swiss Re | 100 | **$100,000,000** | MP 27049.1 |
| **Third Excess - $100 mil xs $200 mil** | | | |
| ACE | 25 | $25,000,000 | GM-9384D |
| XL | 25 | $25,000,000 | XLE+O-03920-00 |
| Starr Excess | 25 | $25,000,000 | 6457606 |
| Chubb Atlantic | 25 | $25,000,000 | (03) 3310-10-90 |
| Total | 100 | **$100,000,000** | |
| **Fourth Excess - $100 mil xs $300 mil** | | | |
| Zurich/Steadfast Ins. Co. | 50 | $50,000,000 | IPR 2185703-00 |
| St. Paul Mercury | 25 | $25,000,000 | 512CM0406 |
| Axcelera/North Am. Specialty | 25 | $25,000,000 | BNX0000337-00 |
| Total | 100 | **$100,000,000** | |
| **Grand Total** | | **$400,000,000** | |

# EXHIBIT E

## COOPERATION AGREEMENT

This agreement (the "Cooperation Agreement") is made and entered into as of the Effective Date, by and among the ResCap Liquidating Trust (the "Liquidating Trust"), the Kessler Settlement Class, and the Mitchell Settlement Class. The Liquidating Trust, the Kessler Settlement Class and the Mitchell Settlement Class are referred to collectively in this Cooperation Agreement as "the Parties" or individually as a "Party".

## RECITALS

A.    On May 14, 2012, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.    On or about August 23, 2013, the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, et al., dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan", and the related disclosure statement, the "Disclosure Statement").

C.    On or about August 26, 2013, the Bankruptcy Court approved the Disclosure Statement.

D.    On August 23, 2013 and November 27, 2013, the Bankruptcy Court entered the Kessler Settlement Approval Orders.

E.    On or about December 11, 2013, the Bankruptcy Court issued an order confirming the Plan.

F.    On December [17], 2013, (i) the Bankruptcy Court entered the Order (A) Granting Claimants Limited Relief from Automatic Stay and (B) Approving the Debtors' Entry into the Settlement Agreement Regarding the Pending State Court Class Action Litigation, Authorizing the Debtors to Perform the Obligations Thereunder and Fixing the Amount of an Allowed General Unsecured Claim for the Class Action Plaintiffs (the "Mitchell Order"), and (ii) the Circuit Court of Jackson Count, Missouri, Division 4 (the "State Court") entered (a) the Order Finally Approving Class Action Settlement and Certifying a Class for Settlement Purposes, and (b) the Final Judgment (collectively, the "Mitchell State Court Orders").

G.    On December 17, 2013, the Effective Date of the Plan occurred.

H.    The Plan provides for the conveyance, transfer, and assignment of the GM Insurance Rights to the Liquidating Trust and the Kessler Settlement Class on the Effective Date.

I.    The Mitchell Order provides for the conveyance, transfer and assignment of certain of the GM Insurance Rights to the Mitchell Settlement Class provided that the State Court enters the Mitchell State Court Orders.

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein, the Parties agree as follows:

## DEFINITIONS

Other than the terms defined below or elsewhere in this Cooperation Agreement, capitalized terms shall have the meaning assigned to them in the Plan or the Mitchell Order.

## AGREEMENT

1.      The Parties shall cooperate with each other in good faith to coordinate the prosecution of their respective GM Insurance Rights and shall use reasonable efforts not to prejudice the other's GM Insurance Rights, provided that nothing in this Cooperation Agreement shall require either the Liquidating Trust, the Kessler Settlement Class or the Mitchell Settlement Class to undertake any efforts that would materially adversely affect the position of the cooperating party.

2.      The Parties agree that the Mitchell Settlement Class's right to collect on the allowed Mitchell Claim from the proceeds of the GM Insurance Policies shall be subordinated with respect to any valid claim to the proceeds of those same policies made by the Liquidating Trust and/or the Kessler Settlement Class as described in Section 5b of the Kessler Settlement Agreement.

3.      Such cooperation shall include cooperating by bringing any insurance coverage action in a combined action or proceeding to the extent necessary to avoid insurance company defenses based on splitting of a cause of action through partial assignment. To the extent the Parties after good faith consultation cannot agree on the venue or forum for a combined action (if necessary) or on any other action that must be done by the Parties unitarily then each Party shall provide the other parties in writing their recommended decision and the reasons therefor with respect to the venue or forum for the combined action or any other action that must be done by all Parties unitarily (the "Writing"). Within ten (10) days the Parties shall further consult in good faith and if no agreement can be reached with respect to the venue or forum for a combined action then each Party shall submit within five (5) days its Writing to an independent arbitrator for a binding and non appealable determination. The independent arbitrator for any such determination shall be: Charles E. Atwell. All costs of the independent arbitrator shall be shared equally by the Parties. With respect to any other action that must be done by all Parties unitarily which does not involve the venue or forum for a combined action, within ten (10) days the Parties shall further consult in good faith and if no agreement can be reached then the Kessler Settlement Class shall have the right to select the other action for the Parties that must be done unitarily.

4.      Each assignee of the GM Insurance Rights shall bear its own attorney's fees, costs and expenses in pursuing recovery on the rights assigned to it.

5.      Except as expressly limited or conditioned in paragraphs 6 and 7, each Party shall have sole settlement authority with respect to its claims subject to the terms of the Kessler Settlement Agreement and the Mitchell Order.

6.      Before any Party enters into a settlement involving any of its GM Insurance Rights, it shall give the other Party at least fourteen (14) days' notice of the proposed settlement, and disclose to the other Party any proposed amount to be paid under any of the GM Policies. Settlement can proceed as soon as the other Party consents or the fourteen (14) day notice period has been expired, unless otherwise ordered by the Bankruptcy Court.

7.      After any Party enters into a settlement involving any of its GM Insurance Rights, it shall, within fourteen (14) days of entering into the settlement, notify the other Party of the settlement and disclose to the other Party any amounts to be paid under any of the GM Policies. Any settlement entered into by any Party concerning its GM Insurance Rights shall contain a provision authorizing the disclosure to the other Party of the amount to be paid under any of the GM Policies and a provision whereby the settling insurance companies agree to waive any defense of splitting a cause of action or of merger and bar as to the non-settling Party arising out of, relating to, or resulting from the settlement.

8.      The Parties to this Cooperation Agreement have common legal interests in connection with potential claims that have been or may be asserted in connection with the GM Insurance Rights ("Common Interests"). To protect and advance those Common Interests, the Parties desire, from time to time, to exchange certain confidential, privileged, and/or work product information among themselves or their counsel, including the thoughts, mental impressions, and strategies of counsel, without waiving otherwise applicable privileges and protections. The Parties believe that exchanging such information is necessary to further their Common Interests, and, in the event of litigation, their joint defense.

9.      The Parties intend by this Cooperation Agreement to invoke as broadly as is legally permissible the joint defense doctrine and the common interest doctrine with respect to any materials shared pursuant to this Cooperation Agreement.

10.     Any notice required pursuant to this Cooperation Agreement shall be provided by email and by either regular mail or overnight mail, to the following:

As to the Kessler Settlement Class:

R. Frederick Walters
WALTERS, BENDER, STROHBEHN & VAUGHAN, P.C.
2500 City Center Square
1100 Main
Kansas City, MO 64105
Emailfwalters@wbsvlaw.com

Bruce Carlson
CARLSON LYNCH LTD.
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Email: bcarlson@carlsonlynch.com

As to the Mitchell Settlement Class:

R. Frederick Walters
WALTERS, BENDER, STROHBEHN & VAUGHAN, P.C.
2500 City Center Square
1100 Main
Kansas City, MO 64105
Emailfwalters@wbsvlaw.com

As to the Liquidating Trust:

ResCap Liquidating Trust
c/o Quest Turnaround Advisors, LLC
800 Westchester Avenue, Suite S-520
Rye Brook, NY 10573
Email: jbrodsky@qtadvisors.com

11.    This Cooperation Agreement shall not create any agency or similar arrangement among the Parties.  No Party shall have authority to waive or settle any claims, GM Insurance Rights or other rights on behalf of any other Party; nor shall any waiver or settlement by any Party be construed to apply to any claims, GM Insurance Rights or other rights of the other Party.

12.    This Cooperation Agreement supersedes all prior oral and written understandings, agreements, and arrangements between the Parties with respect to the Cooperation Agreement. For the avoidance of doubt, this Cooperation Agreement does not supersede any other rights and obligations of the Parties as set forth in the Kessler Settlement Agreement, the Mitchell Order, the Plan, the Confirmation Order or the Liquidating Trust Agreement.  Except for those set forth expressly in this Cooperation Agreement, there are no agreements, covenants, promises, representations or arrangements between the Parties with respect to the Cooperation Agreement.

13.    This Cooperation Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by all Parties.  This Cooperation Agreement may not be amended, altered, modified or waived, in whole or in part, orally.

14.    Each Party to this Cooperation Agreement warrants that it is acting upon its independent judgment and upon the advice of its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Cooperation Agreement.

15.    This Cooperation Agreement shall be interpreted, construed, enforced, and administered in accordance with the laws of the state of New York, without regard to conflict of laws rules.  This Cooperation Agreement shall be enforced in the Bankruptcy Court.  The Parties waive any objection that each Party may now have or hereafter have to the venue of such suit, action, or proceeding and irrevocably consent to the jurisdiction of the Bankruptcy Court in any

such suit, action, or proceeding, and agree to accept and acknowledge service of any and all process which may be served in any such suit, action, or proceeding.

16.    This Cooperation Agreement shall be binding on and shall inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, heirs and legal representatives.  If any additional assignments of GM Insurance Rights are made under the GM Policies, the provisions and obligations under this Cooperation Agreement shall be binding on and extend to any such assignees and their respective successors, assigns, executors, administrators, heirs and legal representatives as set forth in Section 5(b) of the Kessler Settlement Agreement and the Mitchell Order.

17.    This Cooperation Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations between the Parties, all Parties have contributed to the preparation of this Cooperation Agreement.

18.    With respect to itself, each Party to this Cooperation Agreement represents, covenants and warrants that (a) it has the full power and authority to enter into and consummate all transactions contemplated by this Cooperation Agreement and has duly authorized the execution, delivery, and performance of this Cooperation Agreement, and (b) the person executing this Cooperation Agreement has the full right, power and authority to enter into this Cooperation Agreement on behalf of the Party for whom he/she has executed this Cooperation Agreement, and the full right, power, and authority to execute any and all necessary instruments in connection herewith, and to bind such Party fully to the terms and obligations of this Cooperation Agreement.

19.    Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, words importing the singular number shall include the plural number and vice versa, and words importing persons shall include firms, associations, corporations, and other entities.    The term "including" shall mean "including, without limitation."

20.    The Parties acknowledge and agree that any breach of this Cooperation Agreement may result in immediate and irreparable injury for which there is no adequate remedy available at law, and the Parties agree that, in addition to any other remedies available, specific performance and injunctive relief are appropriate remedies to compel performance of this Cooperation Agreement.

21.    Nothing in this Cooperation Agreement shall constitute, or be construed as, an admission that any Party is liable to any other Party or to any person not a party to this Cooperation Agreement.  This Cooperation Agreement shall not be admissible in evidence nor shall it be used as evidence in any action or proceeding for any purpose other than for the purpose of enforcing the terms of this Cooperation Agreement.

22.    Any provision of this Cooperation Agreement held to be invalid, illegal, or unenforceable shall be ineffective to the extent of such invalidity, illegality, or unenforceability without affecting the validity, legality, or enforceability of the remaining provisions.

23.    This Cooperation Agreement may be executed in one or more counterparts, each of which, when so executed, shall be deemed to be an original and all of which taken together shall constitute one Cooperation Agreement. This Cooperation Agreement may be executed and delivered by each Party by facsimile or electronic mail and a facsimile or electronic mail of this Cooperation Agreement when so executed shall be binding as an original.

IN WITNESS WHEREOF, the undersigned parties and their counsel have executed this Cooperation Agreement:

Dated as of the Effective Date

THE KESSLER SETTLEMENT CLASS

By: _R. Frederick Walters_

Name:   R. Frederick Walters, Walters
Bender, Strohbehn & Vaughan
Title:   Co-Lead Counsel to the
Kessler Settlement Class

Dated as of the Effective Date

THE MITCHELL SETTLEMENT CLASS

By: _R. Frederick Walters_

Name:   R. Frederick Walters, Walters
Bender, Strohbehn & Vaughan
Title:   Counsel to the
Mitchell Settlement Class

Dated as of the Effective Date                    RESCAP LIQUIDATING TRUST

By Quest Turnaround Advisors, LLC, as
Liquidating Trust Manager

By: _____
    Name: Jeffrey Brodsky
    Title:  Member

## DECLARATION OF UNDER PENALTY OF PERJURY

Wendy Alison Nora declares, under penalty of perjury pursuant to 28 U.S.C. sec. 1746 that the facts set forth in the foregoing Limited Objection are true and correct to the best of her knowledge, information and belief and that Exhibits A, B, C, D and E attached hereto are true and correct copies of what they purport to be.

*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora

## DECLARATION OF SERVICE

Wendy Alison Nora declares, under penalty of perjury, that she filed the foregoing Limited Objection by CM/ECF on October 11, 2016 and thereby served all parties capable of service by CM/ECF.

*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora

5