**Hearing Date and Time: December 8, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Deadline for Objections: November 28, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

-------------------------------------------------------------

**NOTICE OF FILING OF MOTION FOR AN ORDER EXTENDING (I) THE**
**TERM OF THE RESCAP LIQUIDATING TRUST AND (II) THE DATE**
**BY WHICH OBJECTIONS TO CLAIMS MUST BE FILED**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

       1.      On November 16, 2016, the ResCap Liquidating Trust filed the *Motion for an Order Extending (i) the Term of the ResCap Liquidating Trust and (ii) the Date by Which Objections to Claims Must be Filed* (the "**Motion**").

       2.      A hearing (the "**Hearing**") to consider the Motion shall be held before the Honorable Martin Glenn, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court, One Bowling Green, New York, New York, 10004, on **December 8, 2016 at 10:00 a.m.** (prevailing Eastern Time).

       3.      Any objections to the Motion must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic filing system, and be served, so as to be received no later than **November 28, 2016 at 4:00 p.m.** (prevailing Eastern Time) upon (a) the chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York,

NY 10019 (Attention: Gary S. Lee, Norman S. Rosenbaum, and Jordan A. Wishnew); (c) co-counsel to the ResCap Liquidating Trust, Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth H. Eckstein, Douglas H. Mannal, and Joseph A. Shifer); (d) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); and (e) The ResCap Liquidating Trust, 8400 Normandale Lake Blvd. Suite 175, Minneapolis, MN 55437 (Attention: Kathy Priore).

4.      If no responses to the Motion are timely filed and served to the relief requested in the Motion, the Bankruptcy Court may deem any opposition waived, treat the Motion as conceded, and enter an order granting the relief requested in the Motion without further notice or hearing.

5.      A copy of the Motion can be obtained or viewed for a fee via PACER at www.pacer.gov or (without charge) on the Debtors' restructuring website at www.kccllc.net/rescap.

Dated: New York, New York
        November 16, 2016

                                KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                /s/Joseph A. Shifer_____
                                Kenneth H. Eckstein
                                Douglas H. Mannal
                                Joseph A. Shifer
                                1177 Avenue of the Americas
                                New York, New York 10036
                                Telephone: (212) 715-9100
                                Facsimile: (212) 715-8000

                                *Counsel for the ResCap Liquidating Trust*

**Hearing Date and Time: December 8, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Deadline for Objections: November 28, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**MOTION FOR AN ORDER EXTENDING (I) THE TERM OF**
**THE RESCAP LIQUIDATING TRUST AND (II) THE DATE**
**BY WHICH OBJECTIONS TO CLAIMS MUST BE FILED**

## Table of Contents

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

JURISDICTION ..................................................................................................................... 3

RELEVANT BACKGROUND ................................................................................................. 4

    A.   The Chapter 11 Cases ............................................................................................. 4

    B.   The Liquidating Trust ............................................................................................ 5

    C.   Claims ................................................................................................................... 6

REQUEST FOR RELIEF ........................................................................................................ 9

BASIS FOR RELIEF .............................................................................................................. 9

    A.   Extension of the Liquidating Trust ......................................................................... 9

        i.   Winding Down Non-Cash Assets ................................................................ 10

        ii.   Affirmative Litigations .............................................................................. 11

    B.   Extension of Claims Objection Deadline ................................................................ 13

NO PRIOR REQUEST .......................................................................................................... 15

NOTICE .............................................................................................................................. 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BGI, Inc. (f/k/a Borders Group, Inc.)*,
    Case No. 11-10614 (MG) (Bankr. S.D.N.Y. Sep. 25, 2015) ....................................................15

*In re Boylan Intern., Ltd.*,
    452 B.R. 43 (Bankr. S.D.N.Y. 2001) ......................................................................................12

*In re Fabrikant & Sons, Inc.*,
    Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Apr. 15, 2013) ..................................................12

*In re Gen. Mar. Corp.*,
    No. 11-15285 (Bankr. S.D.N.Y. May 8, 2015) ........................................................................15

*In re Motors Liquidation Company (f/k/a General Motors Corp.)*,
    Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Dec. 7, 2015) ....................................................12

*In re Motors Liquidation Company (f/k/a General Motors Corp.)*,
    Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Mar. 18, 2014) ..................................................15

**Statutes**

11 U.S.C. § 105 ...............................................................................................................................3, 4

11 U.S.C. § 1141 ............................................................................................................................4, 13

28 U.S.C. § 157 ...................................................................................................................................3

28 U.S.C. § 1334 .................................................................................................................................3

28 U.S.C. § 1408 .................................................................................................................................3

28 U.S.C. § 1409(a) ............................................................................................................................3

**Other Authorities**

Fed. R. Bankr. P. 1015(b) ...................................................................................................................4

Fed. R. Bankr. P. 9006 ............................................................................................................4, 8, 9, 13

**Hearing Date and Time: December 8, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Deadline for Objections: November 28, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "**Liquidating Trust**"), successor in interest to the

debtors (the "**Debtors**") in the above-captioned chapter 11 cases, hereby files this motion (the

"**Motion**") for entry of an order substantially in the form annexed hereto as **Exhibit A** (the

"**Proposed Order**") pursuant to the terms of the *Second Amended Joint Chapter 11 Plan*

*Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors*

[Docket No. 6065-1]  (the "**Chapter 11 Plan**"), (i) extending the term of the Liquidating Trust

for a period of two years from the third anniversary of the Effective Date[1] (i.e., December 17,

2013), through and including December 17, 2018, and (ii) extending the date by which

objections to Claims (defined below) must be filed from December 15, 2016, through and

including September 15, 2017, each without prejudice to further extensions.  In support of the

Motion, the Liquidating Trust submits the declaration of Jill Horner, Chief Financial Officer for

the Liquidating Trust (the "**Horner Declaration**"), annexed hereto as **Exhibit B**,  and

respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      In the approximately three years since its creation, the Liquidating Trust's

management, employees and professionals have worked diligently to pursue the Liquidating

Trust's objectives in a manner that maximizes recoveries to Unitholders.  In accordance with the

Debtors' Chapter 11 Plan, the Liquidating Trust was created on December 17, 2013 (*i.e.*, the

Effective Date under the Plan), to, among other things, (i) wind-down the Debtors' non-cash

assets, (ii) resolve claims asserted against the Debtors, (iii) pursue litigation on behalf of the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Chapter 11 Plan.

Debtors' estates, and (iv) make periodic distributions to Unitholders. Since the Chapter 11

Plan's Effective Date, the Liquidating Trust has made tremendous progress towards these goals.

2.     Specifically, since its creation, the Liquidating Trust has, among other

things, (i) resolved the vast majority of Claims (with only 35 Non-Borrower Claims yet to be

resolved out of 4,457 total Non-Borrower Claims filed), (ii) initiated 87 litigations against

correspondent lenders that have yielded over $236.9 million in settlements as of the date hereof,

with the Liquidating Trust continuing to pursue 33 such litigations, and (iii) distributed $2.23

billion to Unitholders. The following chart summarizes the distributions made to date by the

Liquidating Trust to Unitholders:

| Summary of Distributions to Unitholders | | | | | |
|---|---|---|---|---|---|
| Distribution # | Date Declared | Record Date | Distribution Date | Total Amount Distributed | Amount Per Unit |
| 1 | N/A | 12/17/2013 | 12/27/2013 | $1,765,000,000 | $17.65 |
| 2 | 5/15/2014 | 5/23/2014 | 6/9/2014 | $115,000,000 | $1.15 |
| 3 | 9/18/2014 | 10/2/2014 | 10/17/2014 | $150,000,000 | $1.50 |
| 4 | 3/6/2015 | 3/16/2015 | 3/31/2015 | $200,000,000 | $2.00 |

3.     Although the Liquidating Trust has made substantial progress in fulfilling

its purpose, it continues to pursue numerous valuable litigation claims against correspondent

lenders involving several billion dollars of claims, resolve the remaining disputed claims, and

anticipates making future distribution to Unitholders. Such efforts will continue beyond

December 17, 2016, the third anniversary of the Effective Date (the date on which the

Liquidating Trust is currently scheduled to dissolve).[2] It is without question that dissolving the

Liquidating Trust before it has had time to complete its work would be detrimental to

---

[2] Under the terms of the Chapter 11 Plan and the Liquidating Trust Agreement, the Liquidating Trust was to terminate on the earlier of: (a) the distribution of all Liquidating Trust Assets, (b) the determination of the Liquidating Trust Board to terminate the Liquidating Trust, (c) the completion of all distributions required to be made under the Liquidating Trust Agreement, or (d) the third anniversary of the Effective Date, subject to multiple, fixed-term extensions with approval of the Bankruptcy Court. *See infra* ¶ 10.

Unitholders.   Therefore, in accordance with the Chapter 11 Plan and the Liquidating Trust Agreement (which both anticipated that such extensions would be necessary), the Liquidating Trust seeks entry of the Proposed Order extending the Liquidating Trust's term for a period of two years, through and including December 17, 2018.

4.      Furthermore, while the claims reconciliation process to date has successfully addressed the vast majority of Claims, there remain approximately 56 unresolved Claims (including duplicative claims against multiple Debtors).   Both the Liquidating Trust and the Borrower Claims Trust require additional time to continue their claims reconciliation processes with respect to a limited number of Claims.   The Liquidating Trust believes that extending the Claims Objection Deadline by nine months, to September 15, 2017, will allow it and the Borrower Claims Trust to dedicate the necessary time and resources toward reviewing, objecting to, settling, satisfying, or otherwise resolving claims.   This extension should not prejudice claimants; to the contrary, creditors should ultimately receive greater distributions if both the Liquidating Trust and the Borrower Claims Trust are given the opportunity to review, negotiate, and, where appropriate, seek to expunge or reduce those Claims that are improperly filed or unsubstantiated.   During this extension, the Liquidating Trust and the Borrower Claims Trust will attempt to reach the consensual resolution of the Unresolved Claims, or, if necessary, seek to disallow certain Unresolved Claims.

## JURISDICTION

5.      This Court has jurisdiction over this Motion pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1334.   Further, pursuant to the Chapter 11 Plan, the Court retained jurisdiction to "issue such orders in aid of execution of the Plan." *See* Chapter 11 Plan, Art. XII.   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).   This matter is a core proceeding pursuant to 28 U.S.C. § 157.

6.     The statutory predicates of this Motion are sections 105(a) and 1141 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## **RELEVANT BACKGROUND**

### A.     **The Chapter 11 Cases**

7.     On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.   These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.     During the course of the Chapter 11 Cases, pursuant to bidding procedures and an auction process approved by the Court, the Debtors sold a majority of their assets, including the sale of (i) their servicing and origination platform to Ocwen Loan Servicing, LLC and Walter Investment Management Corporation, and (ii) the Debtors' "legacy whole loan" portfolio to Berkshire Hathaway, Inc. (together, the "**Asset Sales**").   The Debtors' remaining assets were transferred to the Liquidating Trust pursuant to the terms of the Chapter 11 Plan and the Liquidating Trust Agreement.[3]   The Liquidating Trust continues to hold a number of whole loans and insurance claims (currently being subserviced by a third-party) related to whole loans that were insured by government-sponsored entities.

9.     On December 11, 2013, this Court entered an order approving the terms of the Chapter 11 Plan. [Docket No. 6065] (the "**Confirmation Order"**).   On December 17, 2013,

---

[3] *See* Plan, Art. VI.C ("On the Effective Date, the Debtors are authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustees, for the benefit of the Liquidating Trust, in the form thereof existing on such date, all of the Debtors' and Estates' right, title and interest in and to the Available Assets free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other Persons and Entities to the maximum extent contemplated by and permissible under section 1141 of the Bankruptcy Code."); Liquidating Trust Agreement, § 2.5 ("On the Effective Date, the Debtors shall transfer all of the Available Assets… to the Liquidating Trust…").

the Effective Date of the Chapter 11 Plan occurred, and, among other things, the Liquidating

Trust was established [Docket No. 6137].

     **B.**     **The Liquidating Trust**

     10.     Pursuant to the Confirmation Order and the Chapter 11 Plan, the

Liquidating Trust was created and vested with broad authority over the post-confirmation

liquidation and distribution of the Debtors' assets, and was deemed substituted as the party to

any litigation in which the Debtors are a party.  *See generally* Confirmation Order ¶¶ 26, 30, 34,

48; Chapter 11 Plan Art. VI.

     11.     Further, pursuant to the Plan, the Liquidating Trust was established to

resolve claims and make distributions to holders of beneficial interests in the Liquidating Trust

(the "**Unitholders**").  Article VIII.A.3 of the Chapter 11 Plan provides that the Liquidating Trust

has the exclusive authority to "[f]ile, withdraw, or litigate to judgment, objections to Claims or

Equity Interests (other than Borrower Claims, Private Securities Claims, and the NJ Carpenters

Claims)."

     12.     Similarly, the ResCap Borrower Claims Trust (the "**Borrower Claims**

**Trust**") was also established by the Plan to resolve Borrower Claims and make distributions to

Borrowers on account of Allowed Borrower Claims from a fund transferred to the Borrower

Claims Trust under the Plan. *See* Plan, Art. IV.F. The Plan, as well as the provisions of the

Borrower Claims Trust Agreement, provide claims resolution authority to the Borrower Claims

Trust with respect to Borrower Claims.

     13.     The Liquidating Trust was created for an initial term of three years,

subject to further extensions approved by the Bankruptcy Court.  Specifically, section 12.1 of the

Liquidating Trust Agreement provides:

The Liquidating Trust shall dissolve upon the date that is the earliest to occur of: (i) the distribution of all Liquidating Trust Assets pursuant to the Plan Documents, (ii) the determination of the Liquidating Trust Board that the administration of the Liquidating Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all the distributions required to be made under this Liquidating Trust Agreement have been completed; provided, however, that in no event shall the Liquidating Trust dissolve later than three (3) years from the Effective date, unless the Bankruptcy Court, upon motion within the six (6) months prior to the third (3rd) anniversary of the Effective Date (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidating of the Liquidating Trust Assets . . .

Liquidating Trust Agreement, § 12.1(a). *See also* Chapter 11 Plan, Art. VI.H (same).

## C.    **Claims**

14.    On June 30, 2012, each of the Debtors filed with the Court its schedule of assets and liabilities and statement of financial affairs [Docket Nos. 548 – 597 and 649] (the "**Schedules and Statements**").[4]

15.    On July 17, 2012, the Court entered an order [Docket No. 798] appointing Kurtzman Carson Consultants LLC ("**KCC**") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "**Claims Register**").

16.    On August 29, 2012, this Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No.

---

[4] The Debtors filed amended schedules for Residential Capital, LLC, Residential Funding Company, LLC, GMAC Mortgage, LLC, GMAC-RFC Holding Company, LLC, GMAC Residential Holding Company, LLC, and Homecomings Financial, LLC on July 3, 2012. [Docket Nos. 683-688). On June 9, 2014, the Court entered an order authorizing the reduction and amendment of the scheduled amounts for certain claims on the schedules for Residential Funding Company, LLC and GMAC Mortgage, LLC [Docket No. 7078].

1309] (the "**Bar Date Order**").    The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "**General Bar Date**") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "**Governmental Bar Date**," with the General Bar Date, the "**Bar Date**").    Bar Date Order at ¶¶ 2-3.    On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (prevailing Eastern Time) [Docket No. 2093].    The Governmental Bar Date was not extended.    On March 21, 2013, the Court entered an order approving certain omnibus claim objection procedures [Docket No. 3294] (the "**Claims Objection Procedures Order**").

17.    The Confirmation Order required holders of Administrative Claims (as such term is defined in the Plan) to file their "requests for the payment of such Administrative Claims not already Allowed by Final Order in accordance with the procedures specified in the Confirmation Order, on or before the first Business Day that is thirty (30) days following the Effective Date." *See* Confirmation Order ¶ 50(f). As the Effective Date of the Plan occurred on December 17, 2013, the deadline by which holders of administrative claims must file requests for payment was January 16, 2014 (the "**Administrative Claims Bar Date**").

18.    To date, approximately 7,496 unsecured, secured, priority, and administrative proofs of claim (collectively, the "**Claims**") have been filed in these cases, including late filed claims, with asserted liabilities in excess of $110.0 billion, plus unliquidated amounts.    The Claims consist of approximately 3,039 Borrower Claims with asserted liabilities of approximately $15.5 billion, plus unliquidated amounts, and approximately 4,457 Non-Borrower Claims with asserted liabilities of approximately $94.5 billion, plus unliquidated

amounts.    In addition, approximately 6,189 additional unsecured, secured, priority, and administrative claims were identified in the Schedules (including contingent, unliquidated, and disputed claims).

19.      Under the Plan, a Claim is considered "Allowed" if (i) it is listed on the Schedules as neither disputed, contingent nor unliquidated, or (ii) is evidenced by a timely proof of claim and as to which an objection was not filed by the Claims Objection Deadline.  *See* Plan, Art. I.A.11.  Pursuant to Article I.A.54 of the Plan, the term "Claims Objection Deadline" is defined, as "(i) two hundred seventy (270) days following the Effective Date or (ii) such other later date the Bankruptcy Court may establish upon a motion by the Liquidating Trust, which motion may be approved without a hearing and without notice to any party."

20.      As the Effective Date of the Plan occurred on December 17, 2013, the initial Claims Objection Deadline was Monday, September 15, 2014.[5]  On August 26, 2014, the Court entered the *Order Granting Motion to Extend Date by Which Objections to Claims Must be Filed* [Docket No. 7445], extending the Claims Objection Deadline through and including June 15, 2015.  On June 10, 2015, the Court entered the *Order Granting the ResCap Liquidating Trust's Motion to Further Extend the Date by Which Objections to Claims Must be Filed* [Docket No. 8742], extending the Claims Objection Deadline through and including March 15, 2016.  On March 11, 2016, the Court entered the *Order Extending the Date by Which Objections to Claims Must be Filed* (the "**Previous Claims Objection Deadline Order**") [Docket No. 9734], extending the Claims Objection Deadline through and including December 15, 2016.

---

[5] 270 days following the Effective Date fell on Saturday, September 13, 2014.  Under Bankruptcy Rule 9006(a), made applicable pursuant to Article I.C. of the Plan, the Claims Objection Deadline was moved to the next day that was not a weekend day or legal holiday, *i.e.*, Monday, September 15, 2014.

## REQUEST FOR RELIEF

21.    The Liquidating Trust seeks an order extending the term of the Liquidating Trust through and including December 17, 2018, without prejudice to further extensions. This requested relief is consistent with the terms of the Chapter 11 Plan, the Confirmation Order, the Liquidating Trust Agreement and applicable bankruptcy law.

22.    In addition, pursuant to the Previous Claims Objection Deadline Order, the Claims Objection Deadline was extended to December 15, 2016.   By this Motion, the Liquidating Trust (for itself and the Borrower Claims Trust) seeks an extension of the Claims Objection Deadline of approximately 9 months, through and including September 15, 2017.  The Liquidating Trust consulted with counsel to the Borrower Claims Trust prior to submitting the Motion, and the Borrower Claims Trust is supportive of such extension to the Claims Objection Deadline.

## BASIS FOR RELIEF

### A.    Extension of the Liquidating Trust

23.    The Liquidating Trust Agreement provides that the Liquidating Trust may be extended beyond its initial three-year term, upon a showing that such extension is "necessary to facilitate or complete the recovery and liquidating of the Liquidating Trust Assets." Liquidating Trust Agreement, § 12.1(a).

24.    The relief requested herein is also supported by governing bankruptcy law. Bankruptcy Rule 9006(b) provides that "when an act is required or allowed to be done at or within a specified period . . . by order of [the] court, the court for cause shown may at any time in its discretion . . . order the period enlarged . . . ." Fed. R. Bankr. P. 9006(b).  Here, there is ample cause for an extension of the Liquidating Trust.

25.     Since the Liquidating Trust was formed, the Liquidating Trust management, employees, and the professionals retained by the Liquidating Trust have worked diligently to administer the Liquidating Trust and consummate the Chapter 11 Plan for the purpose of liquidating and distributing assets for the benefit of Unitholders.  As a result of these efforts, the  Liquidating Trust has been able to make distributions to Unitholders totaling $2.23 billion, or $22.30 per Unit.

26.     Notwithstanding the Liquidating Trust's substantial progress and the distributions made to Unitholders to date, there remains additional work that must be completed to fully monetize and distribute all of the Liquidating Trust's remaining assets in a manner that maximizes total distributions to Unitholders.  The Liquidating Trust will be unable to complete all of these tasks in a manner most beneficial to Unitholders if it dissolves before the third anniversary of the Effective Date.   For example, the litigation against the remaining correspondent lender defendants is still in the discovery phase and additional time is needed to either settle these cases or complete trial.  Accordingly, the Liquidating Trust must remain in existence to continue its work of winding down its non-cash assets, prosecuting affirmative litigations, and resolving disputed claims.

### i.  Winding Down Non-Cash Assets

27.     Although the Debtors sold a majority of their assets pursuant to the Asset Sales, the Liquidating Trust still holds certain assets.  The following chart describes the non-cash assets held by the Liquidating Trust as of September 30, 2016:[6]

---

[6] Assets may include assets held by non-Debtor subsidiaries that are being wound down by the Liquidating Trust.

| Asset Type | Gross Balance (in $000's) | Carrying Value (in $000's)[7] |
|---|---|---|
| Mortgage loans | $  220,836 | $  143,303 |
| Servicing advances | 63,630 | 18,400 |
| Interest receivable | 19,335 | 19,335 |
| Real estate owned | 6,310 | 2,643 |
| Trading securities | 1,150 | 1,150 |
| Other receivables | 70,257 | 70,257 |
| Other assets | 1,380 | 1,380 |
| **Total non-cash assets** | **$   382,898** | **$   256,468** |

28.     During the extension of time sought by this Motion, the Liquidating Trust will work to monetize these non-cash assets for the benefit of Unitholders.

### ii.  **Affirmative Litigations**

29.     Since the Effective Date, the Liquidating Trust has initiated affirmative litigations against various parties.  Importantly, the Liquidating Trust commenced 87 affirmative litigations against parties that sold defective loans to the Debtors prior to the Petition Date that were subsequently repackaged into residential mortgage-backed securities (the "**RMBS Litigations**"), asserting several billion dollars in damages, and resulting in settlement recoveries of approximately $236.9 million as of the date hereof.  The Liquidating Trust also commenced 39 preference actions (the "**Preference Actions**"), asserting approximately $30.8 million in damages, and resulting in the collection of approximately $2.3 million.  The Liquidating Trust is also a plaintiff in a pending adversary proceeding related to an insurance coverage dispute with certain insurers, with the Liquidating Trust asserting a right to reimbursement for approximately

---

[7] The Liquidating Trust's carrying value of mortgage assets uses internal models to determine the cash flows expected to be received over the life of the loan. The Liquidating Trust's recovery estimates and assumptions are based on loan level attributes including, but not limited to, delinquency status, aging, and claim versus loan status. The Liquidating Trust carrying value reflects the net present value of the cash flows expected to be received over the lifetime of the mortgage assets. Because of the uncertainties associated with estimating the amounts, timing and likelihood of possible outcomes, actual results could differ from the Liquidating Trust's estimates.

$41 million in defense costs and pre-bankruptcy settlements paid to certain class action plaintiffs. The following chart summarizes the current status of pending litigations as of the date hereof:

| Litigation Type | Number of Litigations | Jurisdiction |
|---|---|---|
| RMBS | 26 | Federal District Court Minnesota |
| RMBS | 3 | Minnesota State Court |
| RMBS | 4 | Federal Bankruptcy Court |
| Insurance Coverage Dispute | 1 | Federal Bankruptcy Court |

30.    As of the date hereof, there are approximately 33 pending RMBS Litigations and no pending Preference Actions. During the extension of time sought by this Motion, the Debtors will continue to prosecute these actions and secure recoveries on behalf of Unitholders.

31.    Based on these facts, as supported in the Horner Declaration, an extension is necessary to complete the successful wind-down of the Liquidating Trust. The Liquidating Trust believes that it is in its best interests and those of its Unitholders that it be afforded the opportunity to continue to pursue these remaining assets in order to maximize recoveries to Unitholders without fear of interruption due to its dissolution. This can only be effectuated through the extension of the Liquidating Trust's term.

32.    Courts in this jurisdiction have granted similar relief. *See e.g., In re Motors Liquidation Company (f/k/a General Motors Corp.),* Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Dec. 7, 2015) (extending the duration of the GUC Trust for an additional total of three years beyond its three-year initial term); *In re Fabrikant & Sons, Inc.*, Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Apr. 15, 2013) (extending the duration of the GUC Trust for an additional three years beyond its five-year initial term); *In re Boylan Intern., Ltd.*, 452 B.R. 43 (Bankr. S.D.N.Y. 2001) (extending the duration of the trust for an additional two years to permit the trustee an opportunity to continue its prosecution of a malpractice claim, the estate's "primary asset").

### B.    Extension of Claims Objection Deadline

33.    Pursuant to Rule 9006(b)(1) of the Bankruptcy Rules, "when an act is required or allowed to be done at or within a specified period . . . by order of the court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed . . . ." Fed. R. Bankr. P. 9006(b)(1).

34.    Additionally, section 1141(a) of the Bankruptcy Code provides that the provisions of a confirmed plan bind all creditors and equity security holders under the plan "whether or not such creditor, equity security holder, or general partner has accepted the plan." As indicated above, Article I.A.54 of the Plan expressly provides the Court with the discretion to extend the Claims Objection Deadline, without the need for a hearing or notice. Here, there is ample cause supporting an extension of the Claims Objection Deadline.

35.    The Liquidating Trust and Borrower Claims Trust continue to make significant progress in resolving Claims. To date, approximately 7,496 unsecured, secured, priority, and administrative proofs of claim have been filed in these cases, including 4,457 Non-Borrower Claims and 3,039 Borrower Claims. To date, 4,422 Non-Borrower Claims with asserted liabilities of approximately $94.5 billion and 3,018 Borrower Claims with asserted liabilities of approximately $15.5 billion have been resolved, expunged or withdrawn.[8]

36.    Thus, as a result of the efforts of the Debtors, the Liquidating Trust and the Borrower Claims Trust, over 99% of the Claims have either been expunged, resolved or otherwise withdrawn.

---

[8] "Resolved" Borrower Claims include 18 Borrower Claims which have been disallowed by the Court but have been appealed. *See Exhibit C, Notice of Motion of ResCap Borrower Claims Trust for Order Authorizing Interim Distribution and Establishing Disputed Claims Reserve* [Docket No. 10136].

37.     Although the claims reconciliation process to date has successfully addressed the vast majority of Claims, there remain approximately 56 unresolved Claims (the "**Unresolved Claims**") (including duplicative claims against multiple Debtors),  with asserted liabilities of approximately $40.9 million.  The Unresolved Claims include approximately 21 Borrower Claims with asserted liabilities of approximately $9.2 million and approximately 35 Non-Borrower Claims with asserted liabilities of approximately $31.8 million.

38.     The Liquidating Trust and Borrower Claims Trust are currently in the process of addressing these Unresolved Claims, which, by their nature, tend to require more time and involvement to assess and resolve than many of the Claims that have already been expunged, satisfied, or otherwise resolved, and it is possible that the resolution of a small number of such claims will not be finalized by the time the Liquidating Trust is currently set to dissolve, or by the current Claims Objection Deadline.

39.     The Liquidating Trust believes that extending the Claims Objection Deadline to September 15, 2017 will allow it and the Borrower Claims Trust to dedicate the necessary time and resources toward reviewing, objecting to, settling, satisfying, or otherwise resolving claims.  This extension should not prejudice claimants; to the contrary, creditors should ultimately receive greater distributions if both the Liquidating Trust and the Borrower Claims Trust are given the opportunity to review, negotiate, and, where appropriate, seek to expunge or reduce those Claims that are improperly filed or unsubstantiated.  During this extension, the Liquidating Trust and the Borrower Claims Trust will attempt to reach the consensual resolution of the Unresolved Claims, or, if necessary, seek to disallow certain Unresolved Claims.

40.     While additional extensions of time may be necessary – and the Liquidating Trust (for itself and the Borrower Claims Trust) expressly reserves the right to seek

such additional extensions – the Liquidating Trust and the Borrower Claims Trust will attempt to resolve, and, if necessary, file objections to, as many of the Unresolved Claims as possible before the expiration of the extended Claims Objection Deadline.

41.      Similar relief has been granted in other large, complex chapter 11 cases. *See In re Gen. Mar. Corp.*, No. 11-15285 (Bankr. S.D.N.Y. May 8, 2015) (granting the reorganized debtors' request to extend the claims objection deadline by a total of approximately forty-one (41) months from the effective date of the plan); *In re Motors Liquidation Company (f/k/a General Motors Corp.)*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Mar. 18, 2014) (granting the reorganized debtors' request to extend the claims objection deadline by a total of approximately forty-one (41) months from the effective date of the plan); *In re BGI, Inc. (f/k/a Borders Group, Inc.)*, Case No. 11-10614 (MG) (Bankr. S.D.N.Y. Sep. 25, 2015) (granting the liquidating trustee's request to extend the claims objection deadline by a total of approximately forty-eight (48) months from the effective date of the plan).  Here, the total extension requested by the Liquidating Trust is forty-five (45) months from the Effective Date.

## NO PRIOR REQUEST

42.      No previous motion for the relief sought herein has been made to this or any other court.  The Liquidating Trust reserves the right to seek further extensions (i) of its term, if an additional extension becomes necessary and is in the best interests of Unitholders and (ii) of the Claims Objections deadline for itself and the Borrower Claims Trust for good cause shown.

## NOTICE

43.      Although Article I.A.54 of the Plan expressly states that the Liquidating Trust may move this Court to extend the Claims Objection Deadline without hearing or notice to any party, and although the Liquidating Trust does not believe that the relief requested herein

15

will have a prejudicial effect on any creditor or other party in interest, out of an abundance of

caution, notice of this Motion has been given to the parties identified on the Special Service List

and General Service List (as such terms are defined in   Notice, Case Management, and

Administrative Procedures approved by the Court [Docket No. 141]), as well as to all claimants

with Unresolved Claims and the defendants in affirmative litigations prosecuted by the

Liquidating Trust, including the RMBS Litigations.  The Liquidating Trust submits that no other

or further notice of the Motion is necessary.

<u>**CONCLUSION**</u>

WHEREFORE, the Liquidating Trust respectfully requests that the Court (i) enter

the proposed order attached hereto as <u>Exhibit A,</u> (i) extending the Liquidating Trust's term to and

including December 17, 2018, (ii) extending the Claims Objection Deadline to September 15,

2017, both without prejudice to further extensions, and (iii) grant the Liquidating Trust such

other and further relief as the Court deems appropriate.

Dated: New York, New York
        November 16, 2016

KRAMER LEVIN NAFTALIS & FRANKEL LLP

<u>/s/ Joseph A. Shifer</u>
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

*Counsel for the ResCap Liquidating Trust*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Case No. 12-12020 (MG) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER EXTENDING (I) THE TERM OF THE RESCAP LIQUIDATING TRUST**
**AND (II) THE DATE BY WHICH OBJECTIONS TO CLAIMS MUST BE FILED**

This matter coming before the Court on the motion (the "**Motion**")[1] filed by the

ResCap Liquidating Trust, which is successor in interest to the debtors (collectively, the

"**Debtors**") in the above-captioned chapter 11 cases, for entry of an order pursuant the terms of

the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the*

*Official Committee of Unsecured Creditors* [Docket No. 6065-1] (the "**Chapter 11 Plan**"),

extending (i) the term of the Liquidating Trust for a period of two years from the third

anniversary of the Effective Date, and (ii) the Claims Objection Deadline; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 11 U.S.C. § 105

and 28 U.S.C. § 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy

Court Judges of the District Court for the Southern District of New York, dated January 31, 2012

(Preska, C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided; and no other or further notice need be provided; and the Court having reviewed the Motion

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and the Declaration of Jill Horner in Support of the Motion; and the Court having determined that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as provided herein.

2.      The duration of the Liquidating Trust, as described in Section 12.1(a) of the

Liquidating Trust Agreement, is extended through and including December 17, 2018, without

prejudice to the Liquidating Trust's ability to (i) seek further extensions or (ii) dissolve the

Liquidating Trust in accordance with the Chapter 11 Plan and the Liquidating Trust Agreement.

3.      The Claims Objection Deadline with respect to all Claims is extended to

September 15, 2017, without prejudice to the Liquidating Trust's ability to seek further extensions

for itself and the Borrower Claims Trust for good cause shown.

4.      The Court shall retain jurisdiction relating to the interpretation and

implementation of this Order.


Dated:  _____, 2016
        New York, New York


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Horner Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-----------------------------------------------------------

**DECLARATION OF JILL HORNER IN SUPPORT OF THE MOTION FOR AN ORDER**
**EXTENDING (I) THE TERM OF THE RESCAP LIQUIDATING TRUST AND (II) THE**
**DATE  BY WHICH OBJECTIONS TO CLAIMS MUST BE FILED**

I, Jill Horner, hereby declare as follows:

1.      I serve as the Chief Financial Officer for the ResCap Liquidating Trust (the "**Liquidating Trust**"), and from May 2013 to December 17, 2013, I served as Chief Finance Executive for Residential Capital, LLC and its debtor-affiliates (collectively "**ResCap**"), as the debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**"). I have been employed by affiliates of ResCap since 2000, originally as the Manager of Financial Planning and Analysis for Residential Capital Group, a managerial division under Residential Funding Company, LLC. I became a Senior Finance Officer for Originations on or around 2003 and expanded my role to include Financial Servicing Operations on or around 2007, a position I held until 2010, when I became interim Senior Financial Officer for the International Business Group. In 2011, I became the ResCap Senior Director for Financial Planning and Analysis, a position I held until I became the Chief Finance Executive.

2.      In my role as Chief Finance Executive at ResCap, I was responsible for, among other things, operational accounting, financial forecasting and analytics, accounts payable

processing, tax and treasury matters, including cash forecasting and cash management. In my current position as Chief Financial Officer to the Liquidating Trust, among my other duties, I continue to assist the Trust in connection with the claims reconciliation process. I am authorized to submit this declaration (the "**Declaration**") in support of the *Motion for an Order Extending (I) The Term of the ResCap Liquidating Trust and (II) The Date by Which Objections to Claims Must be Filed* (the "**Motion**").[1]

       3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' and Liquidating Trust's operations and finances, information learned from my review of the Debtors' and Liquidating Trust's litigation case files, books and records, as well as other relevant documents, and information I have received through my discussions with other members of the Debtors' and Liquidating Trust management or other employees, professionals and consultant of the Debtors and the Liquidating Trust, and/or Kurtzman Carson Consultants LLC ("**KCC**"), the Debtors' notice and claims agent, or my opinion based upon my experience, expertise, and knowledge of the Debtors' and Liquidating Trust's litigation matters, financial condition and history.

       4.      In making these statements based on my review of the Debtors' and Liquidating Trust's litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' and Liquidating Trust's employees, consultants or counsel, I have relied upon these employees, consultants, and counsel accurately recording, preparing, collecting, or verifying any such documentation and other information. If I

---

[1]   Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Motion.

were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

5.    I am familiar with the affirmative litigations prosecuted by the Liquidating Trust, including the RMBS Litigations and the Preference Actions.  Further, I am familiar with the claims reconciliation process in these Chapter 11 Cases. Since the Plan went effective, I, along with other members of the Liquidating Trust's management or other employees of the Liquidating Trust have continued the claims reconciliation process, analyzed claims, and determined the appropriate treatment of the same.  In connection with such review and analysis, where applicable, the Liquidating Trust has reviewed (i) information supplied or verified by personnel in departments within the Debtors' or Liquidating Trust's various business units, (ii) the Debtors' and Liquidating Trust's books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases. Considerable resources and time have been expended to ensure a high level of diligence in reviewing and reconciling the proofs of claim filed in these Chapter 11 Cases.  Such claims were reviewed and analyzed by the appropriate personnel and professional advisors.

6.    In the approximately three years since its creation, the Liquidating Trust's management, employees and professionals have worked diligently to pursue the Liquidating Trust's objectives in a manner that maximizes recoveries to Unitholders.  In accordance with the Debtors' Chapter 11 Plan, the Liquidating Trust was created on December 17, 2013 (*i.e.*, the Effective Date under the Plan), to, among other things, (i) wind-down the Debtors' non-cash assets, (ii) resolve claims asserted against the Debtors, (iii) pursue litigation on behalf of the Debtors' estates, and (iv) make periodic distributions to Unitholders.  Since the Chapter 11 Plan's Effective Date, the Liquidating Trust has made tremendous progress towards these goals.

7.      Specifically, since its creation, the Liquidating Trust has, among other things, (i) resolved the vast majority of Claims (with only 35 Non-Borrower Claims yet to be resolved out of 4,457 total Non-Borrower Claims filed), (ii) initiated 87 litigations against correspondent lenders that have yielded over $236.9 million in settlements as of the date hereof, with the Liquidating Trust continuing to pursue 33 such litigations, and (iii) distributed $2.23 billion to Unitholders.  The following chart summarizes the distributions made to date by the Liquidating Trust to Unitholders:

| Summary of Distributions to Unitholders | | | | | |
| --- | --- | --- | --- | --- | --- |
| Distribution # | Date Declared | Record Date | Distribution Date | Total Amount Distributed | Amount Per Unit |
| 1 | N/A | 12/17/2013 | 12/27/2013 | $1,765,000,000 | $17.65 |
| 2 | 5/15/2014 | 5/23/2014 | 6/9/2014 | $115,000,000 | $1.15 |
| 3 | 9/18/2014 | 10/2/2014 | 10/17/2014 | $150,000,000 | $1.50 |
| 4 | 3/6/2015 | 3/16/2015 | 3/31/2015 | $200,000,000 | $2.00 |

8.      While the claims reconciliation process to date has successfully addressed the vast majority of Claims, there remain approximately 56 unresolved Claims (including duplicative claims against multiple Debtors).

9.      To date, approximately 7,496 unsecured, secured, priority, and administrative proofs of claim (collectively, the "**Claims**") have been filed in these cases, including late filed claims, with asserted liabilities in excess of $110.0 billion, plus unliquidated amounts.  The Claims consist of approximately 3,039 Borrower Claims with asserted liabilities of approximately $15.5 billion, plus unliquidated amounts, and approximately 4,457 Non-Borrower Claims with asserted liabilities of approximately $94.5 billion, plus unliquidated amounts.   In addition, approximately 6,189 additional unsecured, secured, priority, and administrative claims were identified in the Schedules (including contingent, unliquidated, and disputed claims).

10.     Notwithstanding the Liquidating Trust's substantial progress and the distributions made to Unitholders to date, there remains additional work that must be completed to fully monetize and distribute all of the Liquidating Trust's remaining assets in a manner that maximizes total distributions to Unitholders.  The Liquidating Trust will be unable to complete all of these tasks in a manner most beneficial to Unitholders if it dissolves before the third anniversary of the Effective Date.   For example, the litigation against the remaining correspondent lender defendants is still in the discovery phase and additional time is needed to either settle these cases or complete trial.   Accordingly, the Liquidating Trust must remain in existence to continue its work of winding down its non-cash assets, prosecuting affirmative litigations, and resolving disputed claims.

### i.     Winding Down Non-Cash Assets

11.     Although the Debtors sold a majority of their assets pursuant to the Asset Sales, the Liquidating Trust still holds certain assets.  The following chart describes the non-cash assets held by the Liquidating Trust as of September 30, 2016:[2]

| Asset Type | Gross Balance (in $000's) | Carrying Value (in $000's)[3] |
|---|---|---|
| Mortgage loans | $    220,836 | $    143,303 |
| Servicing advances | 63,630 | 18,400 |
| Interest receivable | 19,335 | 19,335 |
| Real estate owned | 6,310 | 2,643 |
| Trading securities | 1,150 | 1,150 |
| Other receivables | 70,257 | 70,257 |
| Other assets | 1,380 | 1,380 |
| **Total non-cash assets** | **$    382,898** | **$    256,468** |

---

[2] Assets may include assets held by non-Debtor subsidiaries that are being wound down by the Liquidating Trust.

[3] The Liquidating Trust's carrying value of mortgage assets uses internal models to determine the cash flows expected to be received over the life of the loan. The Liquidating Trust's recovery estimates and assumptions are based on loan level attributes including, but not limited to, delinquency status, aging, and claim versus loan status. The Liquidating Trust carrying value reflects the net present value of the cash flows expected to be received over the lifetime of the mortgage assets. Because of the uncertainties associated with estimating the amounts, timing and likelihood of possible outcomes, actual results could differ from the Liquidating Trust's estimates.

ii.   **Affirmative Litigations**

12.   Since the Effective Date, the Liquidating Trust has initiated affirmative litigations against various parties.   Importantly, the Liquidating Trust commenced 87 affirmative litigations against parties that sold defective loans to the Debtors prior to the Petition Date that were subsequently repackaged into residential mortgage-backed securities (the "**RMBS Litigations**"), asserting several billion dollars in damages, and resulting in settlement recoveries of approximately $236.9 million as of the date hereof.   The Liquidating Trust also commenced 39 preference actions (the "**Preference Actions**"), asserting approximately $30.8 million in damages, and resulting in the collection of approximately $2.3 million.   The Liquidating Trust is also a plaintiff in a pending adversary proceeding related to an insurance coverage dispute with certain insurers, with the Liquidating Trust asserting a right to reimbursement for approximately $41 million in defense costs and pre-bankruptcy settlements paid to certain class action plaintiffs. The following chart summarizes the current status of pending litigations as of the date hereof:

| Litigation Type | Number of Litigations | Jurisdiction |
| --- | --- | --- |
| RMBS | 26 | Federal District Court Minnesota |
| RMBS | 3 | Minnesota State Court |
| RMBS | 4 | Federal Bankruptcy Court |
| Insurance Coverage Dispute | 1 | Federal Bankruptcy Court |

13.   As of the date hereof, there are approximately 33 pending RMBS Litigations and no pending Preference Actions.

iii.   **Claims**

14.   To date, approximately 7,496 unsecured, secured, priority, and administrative proofs of claim have been filed in these cases, including 4,457 Non-Borrower Claims and 3,039 Borrower Claims. To date, 4,422 Non-Borrower Claims with asserted

liabilities of approximately $94.5 billion and 3,018 Borrower Claims with asserted liabilities of approximately $15.5 billion have been resolved, expunged or withdrawn.4

15.     Thus, as a result of the efforts of the Debtors, the Liquidating Trust and the Borrower Claims Trust, over 99% of the Claims have either been expunged, resolved or otherwise withdrawn.

16.     Although the claims reconciliation process to date has successfully addressed the vast majority of Claims, there remain approximately 56 unresolved Claims (the "**Unresolved Claims**") (including duplicative claims against multiple Debtors),  with asserted liabilities of approximately $40.9 million.  The Unresolved Claims include approximately 21 Borrower Claims with asserted liabilities of approximately $9.2 million and approximately 35 Non-Borrower Claims with asserted liabilities of approximately $31.8 million.

17.     The Liquidating Trust and Borrower Claims Trust are currently in the process of addressing these Unresolved Claims, which, by their nature, tend to require more time and involvement to assess and resolve than many of the Claims that have already been expunged, satisfied, or otherwise resolved, and it is possible that the resolution of a small number of such claims will not be finalized by the time the Liquidating Trust is currently set to dissolve, or by the current Claims Objection Deadline.

---

4 "Resolved" Borrower Claims include 18 Borrower Claims which have been disallowed by the Court but have been appealed.  *See Exhibit C, Notice of Motion of ResCap Borrower Claims Trust for Order Authorizing Interim Distribution and Establishing Disputed Claims Reserve* [Docket No. 10136].

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 16, 2016

 /s/ Jill Horner
Jill Horner
Chief Financial Officer for the ResCap
Liquidating Trust