1  Alan Moss
   P.O. Box 721
2  Moss Beach CA 94038
   Telephone:  (415)494-8314
3  Facsimile:  (650)728-0738

4  Attorney *In Propria Personum*

5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT
9             FOR THE SOUTHERN DISTRICT OF NEW YORK
                        MANHATTAN DIVISION
10

11
                                    )  BANKRUPTCY CASE NO. 12-12020-MG
12                                   )  CHAPTER 11
   IN RE:                           )
13                                   )  Jointly Administered
                                    )  (Executive Trustee Services, Case No. 12-
14                                   )  12028)
                                    )
15 RESIDENTIAL CAPITAL, LLC, *ET*   )
   *AL.*                             )  CLAIMANT'S RESPONSE TO DEBTOR'S
16                                   )  MOTION FOR SUMMARY JUDGMENT
                                    )
17                                   )  [Claim No. 4445]
                      Debtors.)      )  Hearing Date: February 28, 2017
18 _____   )  Hearing Time: 11:00 A.M.

19

20

21

22

23                          FEB - 7 2017

24

25

26
_____

RESPONSE TO DEBTOR'S MOTION FOR
SUMMARY JUDGMENT RE: CLAIM NO. 4445              BANKRUPTCY ACTION NO. 12-12020-MG

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ..................................................... ii

INTRODUCTION ............................................................ 1

I. THIS MOTION FOR SUMMARY JUDGMENT IS PREMATURE
   AND SHOULD BE DISMISSED OR "TABLED" ................................ 2

II. STANDARD ON SUMMARY JUDGMENT ....................................... 4

III. UNDERLYING FACTS RELEVANT TO THIS MOTION .......................... 5

IV. DEBTOR MISUNDERSTANDS THE CALIFORNIA STATUTORY STRUCTURE
    AND MISREPRESENTS CALIFORNIA CASE LAW ............................. 9

    A. THE NEGLIGENCE CLAIM ......................................... 11

        1. ETS, AS A TRUSTEE ACTING PURSUANT TO CALIFORNIA CIVIL
   CODE § 2924, UNEQUIVOCALLY OWED CLAIMANT A DUTY ........... 12

        2. ETS BREACHED THE DUTY IT OWED TO CLAIMANT ................... 15

        3. ETS'S BREACH CAUSED HARM TO CLAIMANT ....................... 16

        4. NEGLIGENCE *PER SE* ......................................... 19

        5. EMOTIONAL DAMAGES LIE EVEN ABSENT PHYSICAL HARM/
   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ................ 20

    B. THE FRAUD CLAIM ............................................. 22

    C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ................ 24

CONCLUSION ............................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL AUTHORITIES

### STATUTES AND RULES

FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### FEDERAL CASES

*Aguinaldo vs. Ocwen Loan Serv. LLC* 2012 WL 3835080 . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Anderson vs. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 255; 106 S.Ct. 2505. . . . . . . . . . . . . . 4

*Bascos vs. FHLMC* (CD Cal.) 2011 WL 3157063  . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Beagle vs. Vasold* (1966) 65 Cal.2nd 166, 173. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Bergman vs. Bank of America*, 2013 WL 5863057 (Bergman I) . . . . . . . . 13, 14, 25

*Cedano vs. vs. Aurora Loan Services* (BAP 9th Cir. 2012) 470 B.R.522  . . . . . . . . . . . . . . 11, 14

*Celotex Corp. vs. Catrett* (1986) 477 U.S. 317, 106 S.Ct. 2548. . . . . . . . . . . . . . . . . . . . . . . . . 4

*Davenport vs. Litton Loan Servicing* (N.D. Cal. 2010) 725 F.Supp.2d 862 . . . . . . . . . . . . . . 24

*Freeman vs. King*, 2007 W L 1289810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Los Angeles Lumber (DC Cal 1942) 45 F.Supp.77 . . . . . . . . . . . . . . . . . . . . . . . . 10

*In Re Tome* (1990) 113 B.R. 626, Bkrtcy C.D. Cal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Karimi vs. GMAC Mortgage* (ND Cal) 2011 WL 3360017  . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Le Beau vs. Bank of America*, 2014 WL 4809843 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Maomanivong vs. National City Mtg.* (2014) 2014 WL 4623873 . . . . . . . . . . . . . . . . . . . . . . 20

*Mehta vs. Wells Fargo Bank* (N.D. Cal. 2010) 737 F.Supp.2d 1185 . . . . . . . . . . . . . . . . . . . 24

*Ottovich vs. Washington Mutual* (2010) 2010 WL 3769459 . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Perreault vs. NDEX West, LLC*, 2011 W L 11682629 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*T.W. Elec. Ser., Inc. vs. Pacific Elec. Contractors* (9th Cir. 1987) 809 F.2nd 626 . . . . . . . . . 4, 5

*UTE Indian Tribe vs. State of Utah* (CA 10, 1997) 114 F.3rd 1513 . . . . . . . . . . . . . . . . . . . . . 4

## CALIFORNIA AUTHORITIES

### STATUTES

Cal. Civil Code §2924-2924h . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

Cal. Civil Code §2934a(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Civil Code §2934a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cal. Civil Code §3541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Rule Of Court §8.1115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

### CASES

*Agarwal vs. Johnson*(1979) 25 Cal.3rd 932, 946 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ainsa vs. Mercantile Trust Co. Of San Francisco* (1917) 174 Cal. 504 . . . . . . . . . . . . . . . . . 12

*Anderson vs. Heart Federal Savings*(1989) 208 Cal.App.3rd 202 . . . . . . . . . . . . . . . . . . . . . . 16

*Ballengee vs. Sadlier* (1986) 179 Cal.App.3rd 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bank of America vs. La Jolla Group II*(2005) 129 Cal.App.4th 706 . . . . . . . . . . . . . . . . . . . . 21

*Bank of Seoul & Trust Co.* (1988) 198 Cal.App.3rd 113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Branch vs. Homefed Bank* (1992) 6 Cal.App.4th 793 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*California Golf, L.L.C. v. Cooper*(2008) 163 Cal.App.4th 1053 . . . . . . . . . . . . . . . . . . . . . . 10

*Capelouto vs. Kaiser*(1972) 7 Cal. 3rd 889 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Carter vs. Continental Land Title Co.* (1991)233 Cal.App.3rd 1597 . . . . . . . . . . . . . . . . . . . 12

*Dahl-Beck Electric Co. vs. Rogge*(1969) 275 Cal.App.2nd 893 . . . . . . . . . . . . . . . . . . . . . . . 13

*Dimock vs. Emerald Properties* (2000) 81 Cal.App.Cal.App.4th 868 . . . . . . . . . . . . . . . . . . . . 13

*Fleisher vs. Continental Aux. Co.* (1963) 215 Cal. App.2nd 136 . . . . . . . . . . . . . . . . . . . . . . 12

*Fletcher vs. Western Nat. Life Ins. Co.*(1970) 10 Cal.App.3rd 376 . . . . . . . . . . . . . . . . . . . . . 25

*Friedman vs. Merck & Co.* (2003) 107 Cal.App.4th 454 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Garfoot vs. Avila*(1989)213 Cal.App.3rd 1205. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1    *Grimes vs. Carter* (1966) 241 Cal.App.2nd 694 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2    *Hampton vs. Superior Court*(1952) 38 Cal.2d 652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3    *I.E. Associates v. Safeco Title Ins.* Co.(1985) 39 Cal.3d 281 . . . . . . . . . . . . . . . . . . . . . . . . . 10

4    *Kachlon vs. Markowitz* (2008)168 Cal.App.4th 316. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

5    *Kerivan vs. Title Ins. & Trust Co.* (1983) 147 Cal.App.3rd 225 . . . . . . . . . . . . . . . . . . . . . . . 12

6    *Kleckner vs. Bank of America* (1950) 97 Cal.App.2nd 30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7    *Merrill vs. Los Angeles Gas & Elec. Co.*(1910) 158 Cal. 499 . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8    *Moeller v. Lien*(1994) 25 Cal.App.4th 822 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9    *Molen vs. Friedman* (1998) 64 Cal.App.4th 1149 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6

10   *Molien vs. Kaiser Found. Hosp.*(1980) 27 Cal.App.3rd 916 . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

11   *Munger vs. Moore* (1970) 11 Cal.App.3rd 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22

12   *Niles vs. City of San Rafael* (1974) 42 Cal.App.3rd 230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

13   *Pierson vs. Fischer*(1955) !31 Cal.App.2nd 208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14   *Pintor vs. Ong* (1989) 211 Cal.App.3rd 837, 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15   *Potter vs. Firestone Tire and Rubber* (1993) 6 Cal.4th 965 . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

16   *ProValue Props vs. Qual, Loan Ser. Corp.* (2009) 170 Cal.App.4th 579 . . . . . . . . . . . 10, 11, 16

17   *Residential Capital vs. Cal-Western Reconveyance*(2003) 108 Cal.App.4th 807.. . . . . . 10, 15

18   *Rowland vs. Christian* (1968) 69 Cal.2nd 108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

19   *Smith vs. Superior Court* (1992) 10 Cal.App.4th 1033 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

20   *Spinks vs. Equity Residential* (2009) 171 Cal.App.4th 1004 . . . . . . . . . . . . . . . . . . . . . . . . . . 22

21   *Styne vs. Stevens*(2001) 26 Cal.4th 42, 61.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22   *Woodworth vs. Redwood Emp. Sav. & Loan Assn.*(1971) 22 Cal.App.3rd 347 . . . . . . . . . . . 12

23
24

**OTHER AUTHORITIES AND TREATISES**

25   Bernhardt, *California Mortgages, Deeds of Trust and Foreclosure
        Litigation, 4th Ed., §2.25* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

26

1  *48 California Forms of Pleading and Practice §555.57 (1) (a)* .......................... 27

2  Miller And Starr, *California Real Estate, 3rd Ed., §§10.4, 10.117* ...................... 12

3  Witkin, *California Procedure, 5th Ed., 6 Proceedings Without Trial §175-176* ............ 3

4  Witkin, 4 *Summary of California Law, 10th Ed. Torts§1022* ............................ 20

5  Witkin, 4 *Summary of California Law, 10th Ed. Torts§452* ............................ 33

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## INTRODUCTION

1

2          The debtor in this action, ResCap (hereinafter the "Trust"), moves for summary

3    judgment on the *sole* basis that Claimant "...was in default under the terms of the Loan. As a

4    result, the owner of the Loan had every right to conduct the foreclosure sale. Had ETS acted

5    differently and ensured that it was properly appointed as substitute trustee prior to conducting

6    the sale, the foreclosure sale would still have gone forward. As a result, the foreclosure sale

7    was caused by Mr. Moss' default on the terms of his loan, not the actions of ETS." [1]  This is

8    *not* the basis for which the Trust sought permission from this Court to file a summary judgment

9    motion.[2]  Furthermore, this statement is a clear error of law: just because a homeowner *might*

10   be in default, does not excuse the trustee, or a putative trustee, from complying with California

11   statutes designed and intended to control the trustee's activities. As but one example, the

12   trustee cannot act independently, but must be instructed to initiate foreclosure proceedings as

13   a first step. There is *no* evidence in the Trust's motion that this trustee was ever asked to

14   initiate foreclosure proceedings. The undersigned has requested such documentation on

15   multiple occasions and it has never been produced.[3]

16          Further, the motion is replete with references to, and records of, the Trust, i..e.

17   GMAC. The motion does *not* contain even one page of records from ETS, the actual entity

18   against whom this claim is directed.[4]  Despite numerous requests, a court hearing, further

19

20          [1]  Brief of Movant/Debtor at ¶2 (ECF Doc. # 10290, filed January 23, 2017.

21          [2]  *Cf.* Letter from Jordan Wishnew to the Court, December 27, 2016 (ECF Doc.# 10273).

22          [3]  In FN. 2 of its brief, the Trust asserts that it has not received discovery responses from the claimant. Those
23   responses were timely served by the requisite date and time of the Court Order. It is known from a subsequent conversation
     that the responses were received.

24          [4]  ETS stands for Executive Trustee Services, LLC and/or Executive Trustee Services, Inc. and/or
     ETS Services, Inc. Each was used interchangeably in different documents that were officially recorded with
25   the County of San Mateo.

26

1  discovery requests and the production of over 700 pages of largely meaningless, misleading

2  and obfuscating documents, Claimant still has not been given a *single* piece of paper

3  originating from ETS. It begs credulity that a major company, acting as a trustee in hundreds,

4  if not thousands, of foreclosures, did not maintain any records. Pointedly, none of the

5  discovery responses from the Trust stated that ETS did not maintain any records. Indeed, how

6  could they? They are required by California law. The Trust simply decided not to produce any

7  ETS records. If one looks at the Declaration of Sara Lathrop, filed with the Trust motion, (ECF

8  Doc. 10290-7), she states at ¶3 that she has reviewed *inter alia* "information supplied or verified

9  by former personnel in departments within the Debtor's various business units"; yet she

10  evidently couldn't find one piece of paper from ETS relevant to this claim. Here is but one

11  glaring example: she states at ¶8 that "According to the debtors books and records, no eviction

12  proceedings were ever commenced against Mr. Moss...." This singular, supposedly factual

13  assertion is the basis for the Trust's arguments; yet it is totally false. There were two such

14  actions, and one of them was pursued in direct violation of a Court Order.[5]

15                                              **I.**

16                        **THIS MOTION FOR SUMMARY JUDGMENT**

17                 **IS PREMATURE AND SHOULD BE DISMISSED OR "TABLED"**

18                On August 24, 2015, the Bankruptcy Court sustained the debtor's objection to

19  Claimant's claim. On June 2, 2016, claimant's appeal of that decision to the District Court was

20  decided: the District Court *reversed and remanded* the Opinion of the Bankruptcy Court with

21  instructions, to wit: "for further proceedings consistent with this Opinion." he District Court

22  noted that *inter alia* "ETS should not have conducted the foreclosure sale of the Property, but

23  did so "in error," according to the Trust, "due to a failure to timely communicate conditions that

24  _____

25       [5] *See* Exhibit N, Declaration of Alan Moss, to the Trust's supporting documents, ECF Doc.#10290-15

26

1   would have warranted a cancellation of the foreclosure." In other words, ETS sold Moss's

2   property when it should not have, because of a "failure" to communicate, intentional or not, by

3   an unidentified person to another unidentified person. The Trust's statement obfuscates

4   whether the failure to communicate was innocent, reckless or intentional and any role of ETS

5   leading up to the improper sale."[6] The District Court further stated, "The Bankruptcy Court

6   Opinion cites declarations and exhibits that, as discussed above, support a plausible finding

7   that ETS acted "in reckless disregard of the plaintiff's rights.," which is a state of mind sufficient

8   to show malice [citation omitted]. Consequently, the Bankruptcy Court erred in sustaining the

9   objection and disallowing the Amended Claim ....."[7]

10          To date, the Bankruptcy Court has taken no actions pursuant to the instructions

11   of the District Court. The District Court questioned the analytical bases of the Bankruptcy

12   Court in sustaining the debtor's objection. Further, the District Court found that the requisite

13   inquiry into the factual underpinnings of the claim was warranted and should be undertaken by

14   the Bankruptcy Court. The District Court was troubled by the facts of this claim, and wanted

15   further inquiry into the factual matters surrounding this claim.

16          It would be error to entertain a *subsequent* motion, based on different grounds,

17   let alone a dispositive motion, prior to following the directions of the District Court contained

18   in its Opinion, ordering a re-examination of its Decision. Should the Bankruptcy Court follow

19   the dictates of the District Court, and render a finding that ETS acted with malice, the result

20   would be that the Trust's Objection to the Amended Claim would be denied, and consequently,

21   the Amended Claim approved for the rolls. There would be no Motion For Summary Judgment.

22          Therefore, it is respectfully suggested that the instant Motion For Summary

23

24          [6] *See* Decision at P. 15.

25          [7] *Id.* at P. 17.

26

RESPONSE TO DEBTOR'S MOTION FOR
SUMMARY JUDGMENT RE: CLAIM NO. 4445          Page 3          BANKRUPTCY ACTION NO. 12-12020-MG

1  Judgment should be disallowed or tabled, and the Bankruptcy Court should re-visit its decision

2  striking the claim from the rolls and issue a new decision consistent with the holding of the

3  District Court. *See UTE Indian Tribe vs. State of Utah* (CA 10, 1997) 114 F.3rd 1513("....a district

4  court "must comply strictly with the mandate rendered by the reviewing court...[citations

5  omitted]...Under the 'law of the case' doctrine, the district court may not deviate from the

6  appellate court's mandate."[8]

7                                                    **II.**

8                                **STANDARD ON SUMMARY JUDGMENT**

9                    Under FRCP 56, applicable to these proceedings, summary judgment may be

10  granted only where there is an absence of any genuine issue of material fact. *T.W. Electric*

11  *Service, Inc. vs. Pacific Electric Contractors* (9th Cir. 1987) 809 F.2nd 626, citing *Celotex Corp.*

12  *vs. Catrett* (1986) 477 U.S. 317, 106 S.Ct. 2548.

13                    Summary judgment is a drastic remedy and therefore is granted cautiously:

14  "Neither do we suggest that the trial courts should act other than with caution in granting

15  summary judgment." *Anderson vs. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 255; 106 S.Ct. 2505.

16                    The moving party bears the initial burden of demonstrating the absence of a

17  genuine issue of material fact. If done, the burden then shifts to the nonmoving party to "go

18  beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories,

19  or admissions on file designate "specific facts showing that there is a genuine issue for trial."

20  *Celotex vs. Cartett*, 477 U.S. 317, 106 S.Ct. 2548(1968). The court's function is not to make

21  credibility determinations. *Anderson vs. Liberty Lobby Inc.* (1986) 477 U.S. 242, 106 S.Ct. 2505.

22  The inferences to be drawn from the facts must be viewed in a light most favorable to the party

23

24            [8]   In California, a reversal with directions requires specific further proceedings in the trial court. *Styne vs.*
25  *Stevens* (2001) 26 Cal.4th 42, 61. *Hampton vs. Superior Court* (1952) 38 Cal.2d 652.

26

1    opposing the motion. *T.W. Electric VS. Pacific Electric Contractors*(9th Cir. 1987), 809 F.2nd 626.

2                                                    III.

3                         **UNDERLYING FACTS RELEVANT TO THIS MOTION**

4                On July 22, 2009, this claimant filed a lawsuit against The Bank Of New

5    York(hereinafter "BONY"), who as the latest *alleged* assignee on title, was attempting to

6    foreclose on claimant's home. *See Moss vs. The Bank of New York*, Action No. 486130, Superior

7    Court of California, County of San Mateo. The complaint alleged multiple causes of action,

8    asserting essentially wrongful foreclosure and related causes of action.[9] The action was

9    removed to Federal District Court shortly thereafter.[10] The action remained there until July 5,

10   2012 when it was remanded back to the California Superior Court, San Mateo County for lack

11   of diversity: the District Court found that BONY had lied to the Court about its citizenship .

12   During the time that the action was in the District Court, the complaint was subjected to three

13   motions pursuant to FRCP 12(b)(6), and was amended three more times, resulting in the

14   operative complaint entitled Fourth Amended Complaint, filed in the U.S. District Court on

15   November 22, 2011. This action was resolved four years later, by agreement of the parties, in

16   November 2013.

17               As a separate and distinct matter, claimant filed a separate lawsuit against a

18   different entity, Executive Trustee Services, LLC(hereinafter "ETS"), the *alleged* trustee, for

19   *negligence. See Moss vs. Executive Trustee Services, LLC et al.*, Action No. 505386, filed May

20   5, 2011. This lawsuit was based on theories of negligence, negligence *per se,* fraud, and

21   intentional infliction of emotional distress. It was not founded on anything to do with wrongful

22   _____

23        [9] The original complaint, as filed, alleged causes of action for (1) set aside trustee sale due to sale being void, (2)
     set aside trustee sale due to sale being voidable, (3) set aside sale as to Lot 20 as void, (4)estoppel, (5) quiet title, (6)
24   intentional infliction of emotional distress, (7) breach of contract, (8) violation of one action rule, (9) accounting, and
     (10)cancellation of recorded documents. No cause of action sought money damages.

25        [10] The Federal court assigned the action number of CV-10-1734 JSW to this action.

26

1    foreclosure. It did not seek to undo the foreclosure sale. It sought monetary damages only.

2    When defendant failed to answer for six months, Claimant took the default of ETS. In California,

3    default is taken first, then judgment by default is taken as a separate matter in a prove-up of

4    damages. This bankruptcy action was filed a few days prior to this hearing date, staying that

5    action. It remains stayed to this day.

6          During this litigation, it was discovered that the Trust owned and operated ETS.[11]

7    As a result of this, when ResCap declared bankruptcy, ETS also filed a petition in bankruptcy.

8    *See* Action No. 12-12028, filed May 14, 2012 as Doc 1.

9          This Claim resulted from and is specifically based on this lawsuit against ETS.

10    The Claim, and the Amended Claim which is in issue in this motion, specifically incorporated

11    the Complaint as a basis for the this Claim.. As of the date this lawsuit was stayed, the status

12    of the case was that ETS had been defaulted by the San Mateo County Superior Court, because

13    it had failed to respond to the complaint for more than nine months. The ETS complaint detailed

14    the chain-of-title of the underlying loan, all from the recorded documents, and demonstrated

15    that ETS was not properly substituted in as a trustee of the loan: under California law, an entity

16    may be substituted in as trustee, provided that the present beneficiary(ies) record the

17    substitution. In this case, as can be seen from the recorded documents, it was TCIF who

18    recorded a Substitution of Trustee, on November 10, 2006, naming ETS as the trustee. TCIF was

19    not assigned the loan for seven more months, until June 16, 2008. Chronologically, this can be

20    put succinctly thusly:

21                   **CJ MORTGAGE**(6/22/05)[ORIGINAL LOAN]
                           ⇓

22                  Assigned To **OPTION ONE MORTGAGE**
       (BY ASSIGNMENT FROM **CJ MORTGAGE** DATED 6/27/05, RECORDED 4/4/07)

23     

---

24       [11] ETS was known, derived from official documents filed by it, as Executive Trustee Services, LLC
and Executive Trustee Services, Inc. and as ETS Services, Inc. All three entities are referred to herein as
25    "ETS."

26

⇓

**OPTION ONE** SUBSTITUTES NEW TRUSTEE
PREMIER TRUST DEED SERVICES (10/26/05, RECORDED 2/3/06)

⇓

**TCIF REO2, LLC**, *AS BENEFICIARY*, SUBSTITUTES NEW TRUSTEE
EXECUTIVE TRUSTEE SERVICES, LLC ("ETS") (9/21/06, RECORDED 11/10/06)

⇓

NOTICE OF DEFAULT ISSUED BY **ETS** ON BEHALF OF **TCIF REO2, LLC**
9/17/07, RECORDED 9/18/07)

⇓

Assigned To **TCIF, LLC**
(BY ASSIGNMENT FROM **OPTION ONE** DATED 5/7/08, RECORDED 6/16/08)

⇓

Assigned To **THE BANK OF NEW YORK TRUST COMPANY**
(By Assignment From **TCIF, LLC** dated 4/29/08, Recorded 6/16/08)

⇓

NOTICE OF TRUSTEES SALE issued by **ETS** (5/19/08, recorded 5/22/08)

⇓

TRUSTEES SALE conducted by **ETS** 5/7/09

⇓

TRUSTEES DEED TO **BONY** BY **ETS** (5/7/09, RECORDED 5/18/09)

The ETS lawsuit alleged that, *inter alia*, ETS was negligent when it issued the requisite notices required by California law to promulgate a foreclosure proceeding, to wit: (1) Notice of Default, (2) Notice of Trustee Sale, and (3) Trustees Deed Upon Sale. As can be seen from the diagram, ETS was made trustee by an entity that would *not* be assigned the loan for almost two years. Thus, TCIF had no power to substitute ETS, and therefore ETS had no power to issue any of the three notices. And BONY was assigned the loan by TCIF, LLC who had not yet been assigned the loan, and so had no ownership rights and no power to instruct ETS to foreclose.

ResCap concedes that ETS was illegally appointed and agrees that ETS had no power to issue any notices required by statute.[12]

---

[12] The Trust's response to Interrogatory no. 2 states: "According to the relevant assignments, it appears that TCIF REO2, LLC did not have the authority to substitute a trustee at that time. As a result, the Borrower Trust does not claim that Executive Trustee Services, LLC was lawfully appointed as Trustee of Deed of Trust No. 15070373 at that time." A similar response was received as to Request For Admission No. 15 and 27. These documents are attached to the Declaration of Alan Moss filed herewith.

1        Because the entity(TCIF) which substituted ETS was not the beneficiary, and

2  would not become the beneficiary, if at all, for eighteen months, ETS could not have had any

3  reasonable grounds for believing that it had been properly appointed as trustee. ETS received

4  no communication, either written or oral, demonstrating to it that the entity which named it as

5  trustee had the power to do so. ETS received no communication, either oral or written, that

6  demonstrated to it, or to any other reasonable individual or entity, that it was legally substituted

7  in as trustee. ETS made no inquiry of recorded documents in order to verify that it was legally

8  entitled to issue any notices or even if the entity that named it trustee existed or was the

9  beneficiary or had the power to do anything.[13]

10        Further, in the underlying case, GMAC/ResCap made four separate motions to

11

12

---

[13] ETS, as a subsidiary of GMAC/ResCap, at all times relevant hereto, was represented by the same office and same individual within GMAC, to wit the Litigation Case Manager("LCM"), who was responsible for the control of all litigation concerning claimant, both as to ETS and the wrongful foreclosure action. The same attorney represented both GMAC/ResCap and ETS. Said LCM admitted under oath that she knew of both the underlying case and the ETS case, that she was the LCM for both cases, and was periodically advised of the status of each case and the allegations of claimant. At no time did said LCM, despite notice of illegal substitution of ETS, make inquiry of said allegations, and determine the truth or lack of truth of the allegations. As a result, this matter was allowed to be litigated for more than four years; the two cases overlapped for more than two years. Never during this time was it admitted that the substitution of ETS was illegal and of no force and effect.

    Further, during the course of this litigation, claimant herein(plaintiff in the underlying case), posed multiple discovery questions to GMAC/ResCap beginning in 2009, and continuing thereafter through 2013, including interrogatories, requests for documents, requests for admission, subpoenas for documents and individuals, all to ascertain any documentation regarding the substitution of ETS as trustee, and to determine the validity or invalidity of said substitution. Said discovery requests were routinely forwarded to the LCM for responses and information in order to be responded to. Throughout these four years and the multitude of discovery requests and motions to compel, filed in both California and Federal courts, GMAC/ResCap failed and refused to acknowledge that ETS was improperly substituted as trustee. Not until ResCap's Objection to this claim was it admitted.

    Further, claimant caused to be served subpoenas duces tecum on each entity of ETS for business records concerning the loan and claimant. ETS refused to produce any records. Claimant is informed and believes, and on this basis alleges, that there was a program and practice at GMAC and ETS to foster foreclosures by any means necessary, including fraudulent notarizations of documents and other documentations, in order to finalize foreclosures, even by methods and means that did not comport with state law. Because of this, ETS was engaged in practices, the likes of which resulted in a failure to comport with state law. GMAC was held in contempt of court in numerous jurisdictions throughout the United States because of these practices, which have been well documented throughout the mortgage crisis. In point of fact, the individual who notarized some of the relevant documents in this matter, an employee of GMAC, was held in contempt on more than one occasion, and another GMAC employee who notarized other documents in this matter was sanctioned for notarizing unsigned documents. The fact that ETS allowed itself to act as trustee, notwithstanding any basis for believing that it was duly appointed, is another example of this pattern and practice.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1  dismiss pursuant to FRCP 12(b)(6); as a result of these motions, the latest amended complaint,

2  the Fourth Amended Complaint, contained a cause of action for Intentional Infliction of

3  Emotional Distress, which remained a viable cause of action, the District Court denying the

4  motion to dismiss as to this cause of action. *See Moss vs. BONY*, Action No. 10-1734(N.D. Cal.),

5  Order, p. 3 AT 5-11, dated February 16, 2012, ECF Doc.# 94.

6          Therefore, ETS lacked reasonable grounds for believing that it had the power to

7  issue any requisite notices, or in the truth of the information contained in the notices it issued

8  and therefore acted in reckless disregard of the rights of claimant. ETS acted in reckless

9  disregard of the rights of claimant from the initiation of litigation in July 2009 up to, and

10 including, the present time. ETS possessed no information, at no time, that it had been properly

11 substituted as trustee, and despite years to ascertain the truth, and despite having been placed

12 on notice that it had no power to act as trustee, failed to take any steps or to make any inquiry

13 regarding whether it had been properly appointed and substituted. Therefore, ETS lacked any

14 grounds, let alone reasonable grounds, to believe it had the power to issue any requisite notices

15 in this matter, and therefore ETS acted in reckless disregard of the rights of claimant.

16                                            **IV.**

17    **DEBTOR MISUNDERSTANDS THE CALIFORNIA STATUTORY STRUCTURE**

18              **AND MISREPRESENTS CALIFORNIA CASE LAW**

19          The Trust goes to great lengths in its motion to try to eliminate the causes of

20 action of the ETS complaint. In effect, in ¶¶27-33 of its motion, the Trust argues that it is of no

21 moment that ETS violated, directly, distinctly and *admittedly*, the controlling statutes on

22 trustees in foreclosure proceedings; it does not matter, the Trust argues, because Claimant was

23 in default. Put more succinctly, the Trust argues that if a noteholder is one payment behind,

24 that is sufficient, in and of itself, to render the California Civil Code absolutely nugatory. That

25

26

1    isn't the law, and cannot possibly be the law.[14]

2            In California, the power of sale allowed in a non-judicial foreclosure process is a

3    creature of statute[15], and any attempt to invoke the power of sale must be strictly construed in

4    order to insure compliance with these statutory requirements:

5        "The power of sale under a deed of trust will be strictly construed, and in its execution the
         trustee must act in good faith and strictly follow the requirements of the deed with respect
6        to the manner of sale. The sale will be scrutinized by courts with great care and will not be
         sustained unless conducted with all fairness, regularity and scrupulous integrity." *Pierson vs.*
7        *Fischer*(1955) !31 Cal.App.2nd 208, 214.

8            "Statutory provisions regarding the exercise of the power of sale provide
         substantive rights to the trustor and limit the power of sale for the protection of the
9        trustor. (*Ibid.*)" *Bank of America, N.A. vs. La Jolla Group II*(2005) 129 Cal.App.4th 706.

10           "No nonjudicial foreclosure of a security interest in real property is permitted
         except in compliance with this statutory system. Cal.Civ.Code §2924....Strict compliance
11       with the statutory requirements is obligatory: any statutory deficiency requires that the sale
         be set asid., *Anderson vs. Heart Federal Savings*(1989) 208 Cal.App.3rd 202." *In Re Tome*
12       (1990) 113 B.R. 626, Bkrtcy C.D. Cal.

13           By reviewing the chronology of events in this case, it is indisputable that the

14   entity which "substituted" ETS as trustee and attempted to "game the system" so as to

15   empower ETS with the power of sale, had no authority or power to do so. ETS could have

16   easily and readily discovered its lack of power in five minutes on-line(*Cf. Bergman vs. Bank of*

17   *America*, 2013 WL5863057, relied on by the Trust, where the Court found the trustee couldn't

18   _____

19   [14] California Civil Code §3541 states: " An interpretation which gives effect is preferred to one which makes void."
     Further " A statute should never be construed so strictly as to render it absurd or nugatory." *In re Los Angeles Lumber* (DC
20   Cal 1942) 45 F.Supp.77, " Statutes should be construed as to make them effective or operative rather than inoperative. *Van
     Dorn vs. Couch*(1937) 21 Cal.App.2d Supp 749.
21           The court in *Residential Capital vs. Cal-Western Reconveyance*(2003) 108 Cal.App.4th 807 held that, in a case
     involving interpretation of the California foreclosure statutes, must be " ...determined by " principles of interpretation of the
     statutory scheme setting forth the rules of trust deed nonjudicial foreclosure sales." *Id.* at P.172. See also *California Golf,*
22   *L.L.C. v. Cooper*(2008) 163 Cal.App.4th 1053, 1070-1071 [availability of particular remedy determined by consideration
     of " the policies advanced by the statutory scheme, and whether those policies would be frustrated by the allowance of the
23   additional remedy"]; *I.E. Associates v. Safeco Title Ins.* Co.(1985) 39 Cal.3d 281, 285; *Moeller v. Lien*(1994) 25
     Cal.App.4th 822, 834. Thus, " [t]he trustor is protected from unauthorized foreclosure and loss of its property and the
24   sanctity and finality of foreclosure sales is maintained without significant prejudice to the high bidder." *See also Pro-Value
     Properties* vs. *Quality Loan Service Corp.*(2009) 170 Cal.App.4th 579.

25       [15] Civil Code §§2924 - 2924h.

26

1  have discovered its lack of authority.)[16]

2     **A. THE NEGLIGENCE CLAIM**

3         The elements of negligence on the part of ETS have more than amply been

4  satisfied.

5         Debtor argues that of the requisite elements of negligence in California, claimant

6  cannot demonstrate that (1) ETS owed him a duty, and (2) claimant was damaged by ETS's

7  actions. Both assertions are false. The argument of the Trust, at ¶29, is that "...all of these

8  damages are the result of Foreclosure Proceedings being commenced against him by the owner

9  of the Loan, Bank of New York." The Trust first argues damages, then argues duty. They have

10 it just in reverse.[17]

11 ────────────────────

12     [16] TCIF had not yet been assigned the deed of trust, and from the face of the documents, would not take by
assignment for a minimum of eight months, most probably eleven months, and possibly twenty months(because of the white-
out, cross-out and evident changes to the document), after attempting to substitute a new trustee. It could have just as easily
13 been "Joe Schmo" that signed and issued the Notice of Default, the Notice of Sale and the Trustee's Deed.

14     ETS could have been given no power to act in this matter because TCIF had no power to do anything, let alone
substitute a new trustee. Under the statute, it is the *present* beneficiary that has the power to substitute a new trustee–but
TCIF was not the beneficiary at the time it substituted ETS as the trustee.. And under the deed of trust, only the beneficiary
15 had the power to substitute the trustee, and again TCIF was NOT the beneficiary on November 10, 2006 when the purported
substitution was recorded. On that date, it was Option One who was the beneficiary and Option One had already substituted
16 Premier Trust Deed Services; Option One never substituted ETS as trustee.

     Because ETS was not duly substituted in as the trustee, ETS had no authority, *ab initio* or ever, to this
17 day, to issue the Notice of Default, to issue the Notice of Trustees Sale, or to issue the Trustees Deed by which defendant
purports to claim title.

18     On September 17, 2007, when the Notice of Default was issued by ETS, it was not the trustee, nor was
it the mortgagee, nor was it the beneficiary, nor was it the authorized agent of any of these. And TCIF REO2 was none of
these either.

19     On September 21, 2006, the date that defendant claims the trustee was substituted, Option One was the beneficiary
of record–not TCIF and not BONY. No further substitution has ever been recorded, and indeed the defendant herein does
20 not argue that there was. Pointedly, the defendant offers to this court the substitution document dated September 21, 2006
as providing the authority for invoking the entire procedure by which it claims the right to the property; i.e., that ETS was
21 the properly substituted trustee which then made all of its subsequent actions legitimate.

     Bernhardt, *California Mortgages, Deeds of Trust and Foreclosure Litigation, 4th Ed.*, §2.25 states: " A party who
22 is not a trustee of record will not have the authority to conduct the foreclosure or deliver a valid trustee's deed." *See Pro
Value Props., Inc. Vs. Quality Loan Service Corp.*(2009)170 Cal.App. 4th 579.

23     [17] In asking for permission to file this motion, the Trust cited one case for its assertion that ETS did not owe a
duty to Claimant. *Cedano vs. vs. Aurora Loan Services* (BAP 9th Cir. Cir. 2012), which the Trust states held " that a
24 plaintiff could not assert that a substitute trustee breahed a duty of care by alleging that the trustee did not sufficiently ascertain
the validity of the foreclosure documents." This case does not so hold: it only holds that the MERS system was authorized
25 to name a substitute trustee because it was part of the Deed of Trust.

26

**1. ETS, As a Trustee Acting Pursuant To California Civil Code §2924,**

**Unequivocally Owed Claimant a Duty**

Under California law, the trustee has a duty to the Claimant herein, as an *equal agent of both the trustor and the beneficiary*. "As a common agent, the trustee must represent the interests of both parties." *Ainsa vs. Mercantile Trust Co. Of San Francisco* (1917) 174 Cal. 504, 510; *Ballengee vs. Sadlier* (1986) 179 Cal.App.3rd 1, 5; *Kerivan vs. Title Ins. & Trust Co.* (1983) 147 Cal.App.3rd 225, 229; Miller And Starr, *California Real Estate*, 3rd Ed., §§ 10.4, 10.117[18]; Bernhardt, *Mrtgages, Deeds of Trust, and Foreclosure Litigation*, 4th Ed., §2.26.[19] 48 California Forms of Pleading and Practice §555.57 (1) (a).

Moreover, "The trustee is liable to the parties for all damages resulting from its wrongful acts contrary to the terms of the deed of trust if its conduct is negligent, fraudulent, or illegal. For example, a trustee may be liable for damages for any unauthorized re-conveyance...." *Id.* citing *Kerivan supra, Fleisher vs. Continental Aux. Co.* (1963) 215 Cal. App.2nd 136, 140; *Woodworth vs. Redwood Empire Sav. & Loan Assn.* (1971) 22 Cal.App.3rd 347, 366; *Bank of Seoul & Trust Co.* (1988) 198 Cal.App.3rd 113, 118.

The Court in *Kerivan* stated:

> "In *Woodworth vs. Redwood Empire Sav. & Loan Assn.* (1971) 22 Cal.App.3rd 347, 366, the court stated as follows: "It is well established, however, that a trustee under a deed of trust is not a trustee in the technical sense. Rather, he is the agent of all the parties to the escrow at all times prior to performance of the conditions of the escrow and *bears a fiduciary relationship to each of them.*"

As an agent, the trustee may be liable for negligence in the performance of his duties. This

---

[18] "A trustee may be liable for damages for wrongful reconveyance. The trustee is a common agent of both parties and is liable for any losses suffered as a result of any intentional or negligent breach of trustee duties." citing *Carter vs. Continental Land Title Co.* (1991)233 Cal.App.3rd 1597, 1599.

[19] "The trustee has a *duty* to conduct the sale fairly and openly, with due diligence and sound discretion to protect the rights of the trustor and others..." citing *Baron vs. Colonial Mortgage Service Co.* (1980) 111 Cal.App.3rd 316, 322; *Kleckner vs. Bank of America* (1950) 97 Cal.App.2nd 30, 33.

1  principle was found applicable in *Munger vs. Moore* (1970) 11 Cal.App.3rd 1 where the court

2  stated:

> "That rule is that a trustee.....may be liable to the trustor..... for damages
> sustained where there has been an illegal, fraudulent or willfully oppressive
> sale of property under a power of sale contained in a mortgage or deed of
> trust. An agent has the duty to use reasonable skill and diligence and *if he
> violates this duty*, he is liable for any loss which his principal may sustain as
> the result of his negligence." *Dahl-Beck Electric Co. vs. Rogge* (1969) 275
> Cal.App.2nd 893."

7  The Trust argues that under California law, ETS acting as trustee was not a

8  fiduciary. While that may be true in its strictest sense, debtor has neither argued or cited any

9  case that stands for the proposition that only a fiduciary can breach a duty. And that is not the

10  law. Put another way, debtor cannot cite to any California case which holds that a trustee does

11  not owe a duty to a trustor such as Claimant herein.

12  As a general matter, in California:

> "Duty is not sacrosanct in itself, but only an expression of the sum total of
> those considerations of policy which lead the law to say that the particular
> plaintiff is entitled to protection." *Friedman vs. Merck & Co.* (2003) 107
> Cal. App.4th 454, 464. "The policy considerations to be taken into account
> in determining whether a duty is imposed by law were set forth in *Rowland
> vs. Christian* (1968) 69 Cal.2nd 108. "The major considerations are the
> foreseeability of harm to the plaintiff, the degree of certainty that the
> plaintiff suffered injury, the closeness of the connection between the
> defendants conduct and the injury suffered, the moral blame attached to the
> defendants conduct the policy of preventing future harm, the extent of the
> burden to the defendant and the consequences to the community of imposing
> a duty to exercise care with resulting liability for breach, and the availability,
> cost, and prevalence of insurance for the risk involved." At P. 464.

20  Debtor relies for its argument that ETS did not owe a duty to Claimant on

21  *Kachlon vs. Markowitz* (2008)168 Cal.App.4th 316. This case is inapposite at best. Its factual

22  pattern is incredibly complicated and is a will contest case, but what is abundantly clear is that

23  whatever the trustee or substituted trustee did in *Kachlon*, it had the power to do it because

24  it had been properly appointed. That is pointedly not the case here. Nothing in *Kachlon*

25  stands for the proposition that a trustee does not owe a duty to trustor. The debtor cannot

26

1  point to one California case that holds that an improperly and illegally appointed trustee's

2  actions were upheld. Quite the contrary is true; if improperly appointed, the trustee has no

3  power to do anything, and any actions it takes are void *ab initio*. *Dimock vs. Emerald*

4  *Properties* (2000) 81 Cal.App.Cal.App.4th 868.

5       The Trust also cites *Cedano vs. Aurora Loan Service* (470 BR 522) which it states

6  holds that a substitute trustee did not breach a duty of care by alleging that the new trustee did

7  not sufficiently ascertain the validity of the foreclosure documents. There is no such holding

8  in this case. First, it is impossible to fully understand the case because the opinion is based on

9  the underlying complaint, but that document is not available on PACER, making it impossible

10  to adequately understand part of the opinion. The case is really about the MERS system and

11  whether it had the authority to nominate a substitute trustee—nothing more.   The Trust also

12  relies on *Bascos vs. FHLMC* (CD Cal.) 2011 WL 3157063, and quotes a passage from the opinion

13  allegedly on P. 7 thereof. That page is simply footnotes and no such quoted language exists

14  therein. This case is also about the MERS system and its authority—issues not relevant to this

15  discussion.    Lastly, the Trust cites *Karimi vs. GMAC Mortgage* (ND Cal) 2011 WL 3360017,

16  the Trust quotes the Court as stating that "trustees are not subject to a common law duty of

17  care," which is at odds with other courts cited herein, but finds no significance in the first part

18  of the quoted language that "Although a trustee under a deed of trust...may be subject to

19  statutory requirements..." The duty alleged herein is specifically statutorily based: Cal. Civil

20  Code §2924 *et seq*. ETS admittedly violated this specific statute.

21       The Trust cannot have it both ways: it cannot, on the one hand, say there is no

22  duty to abide by a statute, and on the other argue that although ETS is in violation of the

23  statute, it is of no significance. It readily admits a violation of the statute—the statute which is

24  central to California's statutory scheme for nonjudicial foreclosures and must be strictly

25  construed and adhered to—and then argue that such a violation simply does not matter.

26

1           *Kachlon* was distinguished by *Perreault vs. NDEX West, LLC,* 2011 WL

2  11682629.  In the *Perreault* case, the plaintiff alleged violation of a subsection of Civil Code

3  2924(the statute regarding trustees), the same statute that Claimant herein alleges was breached

4  by debtor.  Therein, the Court found a duty on behalf of the trustee.  *Id.* at P. 5.[20]

5           There is simply no question that ETS, as trustee, was operating under a duty to

6  act properly to Claimant.  And debtor has not cited a single case, *decided by a California court,*

7  *that so holds.*

8           Given the Trust's argument in this case, it is interesting to note that in another

9  case, it argued just the opposite: that the trustee did have a duty to it, where ResCap was the

10  plaintiff.  *See Residential Capital, LLC vs. Cal-Western Reconveyance* (2003) 108 Cal.App.4th

11  807.  The Court summarized ResCap's argument thusly: " Residential Capital relies on this

12  authority to argue that the trustee and beneficiary have a duty to third party buyers to exercise

13  ordinary care in verifying the status of pending foreclosure sales before they go to auction."

14  *Id.* at P. 176.  This is Claimant's argument precisely.  The Court held that there was a duty "...of

15  a foreclosing trustee to ensure the sale is fairly conducted, according to proper

16  procedures..."[citation omitted].  This duty runs to both the beneficiary and the trustor."

17           **2. ETS Breached The Duty It Owed To Claimant.**

18           Although the Trust does not argue that it obviously breached its duty owing to

19  claimant, it bears repeating here.  It is beyond doubt that ETS was not properly substituted in

20  as the new trustee, and therefore had no power to issue the requisite notices or to conduct the

21

22

23        [20]  And it distinguishes *Kachlon* thusly: "The relevant portion of that case discusses affording certain legal

24  protections to the recording and filing of certain nonjudicial foreclosure documents, such as a Notice of Default. *See Kachlon*,
168 Cal.App.4th at 343, 85 Cal.Rptr.3d 532 (affirming judgment in favor of defendant on negligence and slander of title

25  claims where claims were based on defendant's recording of a Notice of Default). That authority does not, however, excuse
NDEx's alleged failure to [abide by its statutory duties].

26

1  sale or to issue the trustee's deed.[21]

2        A leading treatise on California real estate, Bernhardt, *California Mortgages,*

3  *Deeds of Trust and Foreclosure Litigation*, 4th Ed., §2.25 states: "A party who is not a trustee

4  of record will not have the authority to conduct the foreclosure or deliver a valid trustee's

5  deed." *See also Pro Value Props., Inc. Vs. Quality Loan Service Corp.* (2009) 170 Cal.App. 4th

6  579.

7        The debtor cannot argue that it would have been too difficult to discover that it

8  did not have the power of sale (as in *Kachlon*). As it states in its brief, it set forth recorded

9  documents which are easily obtainable online.

10        **3. ETS'S BREACH CAUSED HARM TO CLAIMANT**

11        The Trust argues that damages did not flow from anything that ETS did, stating

12  that "because ETS's recording of the Notices did not cause the commencement of the

13  foreclosure process, ETS's actions cannot be the cause of Mr. Moss's alleged damages." This

14  is a patently false and disingenuous statement. Under the statute, it was the recording of the

15  notice of default that did cause the commencement of the foreclosure process. *See* Cal. Civil

16  Code §2924a. Otherwise, under the statute, the process doesn't start. It is precisely because

17  ETS filed the Notices, without authority–easily discovered–and evidently without being

18  requested to do so by the beneficiary–actually the alleged beneficiary, since that assignment

19

20

─────────────────────

21  [21] As set forth above, the entity who attempted to substitute in ETS was not yet the beneficiary, and wouldn't
become the beneficiary for a year, and had no power to do so. Therefore, ETS could not do anything: it had no power. " No
22  non-judicial foreclosure of a security interest in real property is permitted except in compliance with this statutory system.
Cal.Civ.Code §2924....Strict compliance with the statutory requirements is obligatory: any statutory deficiency requires that
the sale be set aside, provided that the purchaser is not a bona fide purchaser for value without notice of the deficiency.
23  *Anderson vs. Heart Federal Savings* (1989) 208 Cal.App.3rd 202." *In Re Tome* (1990) 113 B.R. 626, Bkrtcy C.D. Cal.
        Because ETS was not duly substituted in as the trustee, ETS had no authority, *ab initio* or ever, to this day, to
24  issue the Notice of Default, or the Notice of Trustees Sale, or the Trustees Deed by which defendant purports to claim title.
ETS was named as trustee in derogation of this statute, because it was not named or substituted by a beneficiary of the deed
25  of trust.

26

1   was also erroneously done–that the process started and continued to finality.[22]

2           Further, debtor's rendition of the facts is also erroneous and disregards the

3   litigation below. ETS went ahead with a sale of claimant's home *after* claimant and ResCap

4   entered into an agreement, complied with by claimant, that took the matter out of default. ETS

5   totally, for whatever reason, disregard this and went ahead with the sale. It took four years plus

6   to undo ETS's illegal actions.

7           Lastly, debtor makes the uninformed statement that Claimant did not pay his

8   mortgage(it wasn't a mortgage) which resulted in the commencement of foreclosure and

9   therefore can't show that his damages were caused by ETS. First, there is no authority for this

10  statement, and none can be given because it isn't the law. Second, at the time of the

11  foreclosure, there was no default and debtor has merely argued a heresay statement. As pointed

12  out above, the debtor has admitted that there was supposed to be no sale. Third, even if there

13  was a default, that cannot possibly excuse a violation of California law, especially where it has

14  been repeatedly held that the procedural aspects of the foreclosure process must be "strictly

15  adhered to." Is the debtor's argument something like "Because Claimant *supposedly* missed

16  a payment(s), we could then violate California law?" If a negligent driver sustains injuries as

17  a result of his driving, is that a defense as to a physician who thereafter negligently treats him

18  

---

19      [22] As explained above, *before* ETS could issue any notices or conduct a property sale, it had to first ascertain
whether it was *empowered* to act as the lawful trustee to actually do these acts. This was neither a difficult task, nor so
20  convoluted that ETS could not have figured it out or done it. After all, this was their business, and on information and
belief, it existed solely to service the actions of ResCap. All they had to do was go online and look at the very recorded
21  documents that debtor has attached in support of its instant motion. And evidently, all that ETS did, as a wholly-owned
subsidiary of ResCap, was to initiate and carry out this process.
    The fact is, as explained above, was that ETS was not duly substituted in as trustee, and would not, for at least
22  a year, be so empowered–if then.
    To hold otherwise would be to conclude that an entity could act as trustee with-out ever checking on who had To
23  hold otherwise would be to conclude that an entity could act as trustee with-out ever checking on who had appointed them,
when, and whether they had such power to affect so dramatically peoples lives. Some entity, whether or not the owner of
24  a loan, could just place a call or write a letter and say "Start the foreclosure process. Send out a notice." Of course, that
cannot possibly be the legislative intent when these statutes were adopted, and especially where the process is supposed to
25  be strictly adhered to.

26

1 | for those injuries? Of course not.

2 |       The Trust primarily relies on *Bergman vs. Bank of America* (ND Cal 2013) 2013
3 | WL 5863057. First this is a pleading stage case, so that the standards are quite different from
4 | deciding a summary judgment motion. Second, the Trust misrepresents the holding of this case.
5 | It quotes language to support its argument that only applies to Bank of America, the beneficiary
6 | in this case, and not to the trustee, Trustee Corps. As to the trustee, the Court stated and held
7 | that: "Plaintiffs have not plausibly alleged that Trustee Corps was aware, or should have been
8 | aware, that it was not validly the trustee when it recorded these documents....because Bank of
9 | America was not the beneficiary, and thus Trustee Corps was not the trustee, at the time the
10 | SOT was executed....plaintiffs have not pled facts to suggest that Trustee Corps should have
11 | been able to discover Bank of America's alleged lack of authority." That is decidedly different
12 | than this claim where it is specifically alleged *and factually certain* that ETS could have easily
13 | discovered it was not properly and legally substituted as the trustee.

14 |       Further, inherent and subsumed in the holding of the District Court in *Bergman*
15 | is the conclusion that *if Trustee Corps could have discovered it was not properly substituted*
16 | *as trustee, the result would have been different*. It is patently clear from the facts of this case
17 | that Trustee Corps could not have possibly discovered this fact from the evidence available
18 | to it. *There is no factual dispute in the instant Claim that ETS could have discovered their*
19 | *lack of authority in five minutes*.

20 |       The Trust's further argument re: *Bergman*, that an *alleged* default(there is a
21 | dispute about this, which the Trust keeps throwing around as a proven fact) gave the "owner
22 | of his loan"(the Trust uses this language because it was not the owner of the loan when it
23 | supposedly commenced the process—BONY was improperly assigned the loan and it was of no
24 | force or effect), the right to commence foreclosure proceedings. The Trust does not, and
25 | cannot, argue that this fact alone gave an entity the right to violate California law, as it did here.

26 |

1            Debtor relies on the case of *Freeman vs. King*, 2007 WL 1289810 for authority for

2    their novel proposition. They cannot do so. This California appellate case is ***not citable as***

3    ***authority***.[23] The second line of the Westlaw version states: "Not Officially Published (Cal. Rules

4    of Court, Rule 8.1105 and 8.1110, 8.1115)" and then states "California Rules of Court, Rule

5    8.1115, restricts citation of unpublished opinions in California courts."[24] This California case

6    is not citable in any California court or any other court.

7            Lastly, a part of this Claim(attached to the Trust brief at Exhibit N is the

8    Declaration of the undersigned that was filed in San Mateo County Superior Court as part of

9    the process in obtaining a default judgment.[25] The harm to Claimant flowed not only from the

10   foreclosure process itself, but from the actions of what can only be called thugs, hired by

11   ResCap and ETS, to attempt to frighten Claimant out of his home—including disobeying a Court

12   Order, attempting to proceed with an eviction proceeding notwithstanding that it had been

13   stayed previously by the Superior Court. If the Claimant had not suspected this attempt and

14   appeared, ResCap would have obtained such an Order, and done so in part on the proven lies

15   under oath of the process server who never served the appropriate papers. ResCap attempted

16   to circumvent the law, and had it been successful, would have been impossible to unravel.

17   **4. NEGLIGENCE *PER SE***

18           The Trust objects to the negligence per se cause of action notwithstanding it was

19   not part of its request for a summary judgment motion. Essentially, it argues for the reasons

20   previously stated, that there is no duty owed on the part of ETS.

21

22       [23] Claimant therefore moves to strike any mention of, or reliance on this case.

23       [24] California Rule Of Court 8.1115:
    (A) Unpublished Opinions

24       "Except as provided in (b), an opinion of a California Court of Appeal ......that is not certified for publication or ordered
    published must not be cited or relied on by a court or a party in any other action.

25       [25] *See* ECF Doc. # 10290-15, filed as part of this instant motion.

26

1          For the reasons argued hereinabove, this is incorrect. And its cited case of

2  *Maomanivong vs. National City Mortgage* (ND Cal.) 2014 WL 4623873 does not change this

3  argument. It cites language on P. 16 which does not appear in the Opinion.

4          And its reliance on *Le Beau vs. Bank of America*, 2014 WL 4809843 is also

5  misplaced. First, this case is non-citable per the California Rules of Court, as stated on its first

6  page in WestLaw. Second, the Trust also mistates the supposed holding of the case. The

7  opinion's denial of this claim was based solely on an unrelated provision of California law: That

8  as a general rule, a financial institution owes no duty of care to a borrower when the institution's

9  involvement in the loan transaction does not exceed the scope of its conventional role as a mere

10  lender of money. This has no application to a trustee such as ETS.

11     **5.**    **EMOTIONAL DAMAGES LIE EVEN ABSENT PHYSICAL HARM/NEGLIGENT**

12           **INFLICTION OF EMOTIONAL DISTRESS**

13          The Trusts protestations notwithstanding, physical harm is not a requirement in

14  California to be awarded damages for negligent infliction of emotional distress. California

15  recognizes a right to recover damages for serious emotional distress in a negligence action.

16  *Molien vs. Kaiser Found. Hosp.* (1980) 27 Cal.App.3rd 916, 930. A plaintiff may recover general

17  damages for emotional distress, pain and suffering, along with other compensatory damages.

18  *Merrill vs. Los Angeles Gas & Elec. Co.* (1910) 158 Cal. 499, 511; *Niles vs. City of San Rafael*

19  (1974) 42 Cal.App.3rd 230, 244. *See* Witkin, 4 *Summary of California Law*, 10th Ed. § 1022.

20          Negligent infliction of emotional distress refers to the recovery of damages by a

21  plaintiff who has not otherwise suffered any physical or bodily injury, for emotional dis-tress

22  arising from a defendant's negligent conduct. *Molien, supra* at 924. In 1980, the California

23  Supreme Court abolished the "physical injury" requirement. *Molien supra,* 930; *Potter vs.*

24  *Firestone Tire and Rubber* (1993) 6 Cal.4th 965, 986. Under this rule, one may recover for

25  emotional distress suffered as the result of a negligent act that placed the plaintiff in fear for his

26

1    personal well-being, regardless of whether there is any physical impact and regardless of

2    whether the emotional distress is accompanied by any physical manifestation of injury. *Molien*

3    *supra at* 924; *Burgess vs. Superior Court* (1992) 2 Cal.4th 1064, 1074.[26]    Damages for emotional

4    distress may be recovered in a tort action for fraud. *Branch vs. Homefed Bank* (1992) 6

5    Cal.App.4th 793, 799.

6        Further, all detriment proximately caused by the breach of a duty imposed by

7    statute, as here, is compensable, including damages of emotional distress. *Pintor vs. Ong* (1989)

8    211 Cal.App.3rd 837, 841. It is not necessary that the plaintiff suffer other injury in addition to

9    the emotional distress. *Pintor supra at 845*. For example, damages for emotional distress have

10   been awarded for a breach of the duty imposed by Cal. Civil Code §2941, requiring

11   reconveyance of real property after a debt secured by a deed of trust has been satis-fied.

12   *Pintor at 841; this is part of the statutory scheme imposing a duty on trustees.*

13       In California, the courts have adopted a unitary concept of pain and suffering,

14   without attempting to bifurcate them, and this term has been used ad applied to a plaintiff who

15   may recover not only for physical pain but also for fright, nervousness, grief, anxiety, worry,

16   mortification, shock m humiliation, indignity, embarrassment, apprehension, terror, ro ordeal.

17   *Capelouto vs. Kaiser* (1972) 7 Cal. 3rd 889, 893. Medical testimony is not required. No definite

18   method of calculation is prescribed by law by which to fix compensation for pain and suffering.

19   It is required only that the award be just and reasonable in light of the evidence. *Garfoot vs.*

20   *Avila* (1989) 213 Cal.App.3rd 1205. Lastly, a jury may compute pain and suffering damages by the

21   per diem method by which damages are measured in terms of a stated number of dollars for

22   specific period of time. *Beagle vs. Vasold* (1966) 65 Cal.2nd 166, 173.

23       This is exactly what Claimant did in calculating his damages. Although criticized

24

25       [26] *See* 32 California Forms of Pleading and Practice §362.11 *et seq.*

26

1    by debtor, this is perfectly allowable in California. And the calculations were based on the

2    severe emotional distress and shock as this matter was unrolling. *See* Declaration of Alan Moss

3    filed herewith.

4        Claimant's right to emotional distress damages is clearly mandated by *Munger*

5    *vs. Moore* (1970) 11 Cal.App.3rd 11, which held: "The measure of damages for a wrong other than

6    breach of contract will be an amount sufficient to compensate the plaintiff for all detriment,

7    foreseeable or otherwise, proximately occasioned by the defendant's wrong."

8        In *Spinks vs. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th

9    1004, 1040, a wrongful eviction case, the Court stated: "The recovery includes all consequential

10   damages occasioned by the wrongful eviction (personal injury, including infliction of emotional

11   distress, and property damage),,,and upon a proper showing of malice, punitive damages."

12       Debtor's reliance on *Friedman, supra*, is misplaced and whose connection with

13   this instant case is attenuated at best, especially keeping in mind the *Rowland* factors.

14   *Friedman* is a complex case wherein a vegan underwent a medical procedure, after asking and

15   being told that there were no animal products involved. It is hard to imagine a case further away

16   from this case, where the debtor admittedly violated a statutory duty.

17       Nor does its reliance on the only other case it cites, fare any better. *Smith vs.*

18   *Superior Court* (1992) 10 Cal.App.4th 1033 is at least as attenuated from the case at bar as

19   *Friedman*. This is a legal malpractice case, arising from a divorce. This case holding is

20   restricted to legal malpractice cases.

21       But if it were broader, its holding is that emotional distress damages are

22   recoverable where there is an allegation of intentional or affirmative misconduct. Claimant's

23   complaint alleges just such activity.

24   **C. FRAUD**

25       The Trust argues that Claimant cannot demonstrate that he suffered the damage

26

1 | element required of fraud because the statutory notices *illegally* issued by ETS, and which then

2 | caused significant and continuing damage to Claimant, have been withdrawn. Further, debtor

3 | argues that any damages incurred in fighting and reversing the foreclosure was caused, not by

4 | the illegal actions of the debtor itself, but by Claimant's default.

5 | This argument is an affront to logic, propriety, the law, and just common sense

6 | and decency. And it ignores the basic facts that ETS acted illegally and in contravention of the

7 | California statutes when it did issue these two notices (Notice of Default and Notice of Trustee

8 | Sale) and, after selling Claimant's home, conveying the trust deed to the bank. That the notices

9 | have been withdrawn, and that Claimant's home has been returned to him *does not obviate all*

10 | *of the damage, including extreme emotional damage he incurred for the three plus years of*

11 | *litigating against a major corporation, with unlimited assets, to accomplish this. It is beyond*

12 | *cavil that the debtor would not have rescinded the notices nor reversed the sale absent this*

13 | *enormous amount of litigation.*  Perhaps if debtor could demonstrate to this court that it

14 | voluntarily admitted its mistakes, withdrew these notices and reversed the sale of Claimant's

15 | home, thereby not necessitating all of this litigation, that might be one thing. But that is not the

16 | case or the truth. The fact is that debtor used every means at its disposal to attempt to bury

17 | Claimant, and did so for a period exceeding three years. Debtor attempts to circumvent this by

18 | arguing that the beneficiary was not ResCap, but this is fallacious at best. It was ResCap, as

19 | the servicer, who conducted this litigation, forced it to go on and on, and refused to concede

20 | the most basic facts which have now been admitted in this matter.

21 | Likewise, even if Claimant was in default, which he wasn't, that did not cause ETS to violate

22 | the law. That violation, which caused all of claimant's damages, occurred only because of

23 | debtor's callous disregard for California law. Second, the debtor offers no competent evidence

24 | to this Court that the Claimant was in default at the time of these actions. Therefore, this

25 | argument is of no avail. And it cannot. Third, the argument ignores that Claimant has proved

26 |

1  the elements necessary for fraud. Fourth, Claimant has set forth compensable damages. *See*

2  Declaration of Alan Moss, filed herewith. Thus, Debtor has not advanced any theory to defeat

3  the Fraud cause of action, and the damages flowing therefrom.

4      **6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)**

5          Lastly, debtor argues that Claimant cannot assert a cause of action for IIED,

6  relying on *Aguinaldo vs. Ocwen Loan Serv. LLC* 2012 WL 3835080, which in turn relied on

7  *Davenport vs. Litton Loan Servicing* (N.D. Cal. 2010) 725 F.Supp.2d 862; *Mehta vs. Wells Fargo*

8  *Bank* (N.D. Cal. 2010) 737 F.Supp.2d 1185; and *Ottovich vs. Washington Mutual* (2010) 2010 WL

9  3769459.

10         These cases are inapposite to this instant case. The holdings of these cases are

11  necessarily limited to the facts of the cases.

12         In *Aguinaldo*, the allegations of the case were, according to the Court,

13  "conditional" promises and therefore unable to support a classification of outrageous con-duct.

14  In *Davenport*, the Court found the allegations of "certified mail failure and the refusal, after

15  meeting with her and her legal representative to modify her loan also do not, *by them-selves,*

16  qualify as outrageous...."(P. 884, emphasis supplied). In *Mehta*, the Court found only a

17  conditional promise to forestall a sale. In *Ottovich*, the IIED claim was dismissed because it was

18  inadequately pled, and plaintiff was allowed to amend.

19         Thus, two of the four cases were allowed to amend, and all were found to be

20  insufficient because of "conditional" promises and inadequate specificity.

21         Not one of these cases rises to the level of the instant case, wherein ETS deli-

22  berately and intentionally violated California statutes controlling the activities of trustees. This

23  is categorically different than, and far more serious than, these four cases. None of them

24  pointed to a violation of California law or could.

25         Therefore, these cases are not authority to hold that Claimant cannot obtain

26

1  damages for IIED.

2      Further, the allegations of the complaint, that ETS intentionally violated state law

3  with the intent to harm Claimant, have to be taken as true for this motion. As pointed out

4  above, the District Court ruled that the IIED cause of action was viable in the underlying case.

5      Behavior may be considered outrageous if a defendant (1) abuses a relation or

6  position that gives him power to damage the plaintiff's interest; (2) know the plaintiff is

7  susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with

8  the recognition that the acts are likely to result in illness through mental distress. *Agarwal vs.*

9  *Johnson* (1979) 25 Cal.3rd 932, 946. Neither physical injury or monetary loss is required to be

10  actionable. *Grimes vs. Carter* (19660 241 Cal.App.2nd 694.

11      Severe emotional distress was found to exist in *Fletcher vs. Western Nat. Life Ins.*

12  *Co.* (1970) 10 Cal.App.3rd 376 even though testimony showed the plaintiff suffered no shock,

13  horror, or similar physical effects and that most of his distress resulted from his unfortunate

14  economic situation. The Court held it may "consist of any highly unpleasant mental reaction

15  such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, dis-appointment, and

16  worry." P. 397. When this involved losing his home, all continuing for many months, this was

17  adequate for IIED.[27]

18  **CONCLUSION**

19      For the foregoing reason, claimant respectfully requests that the motion be denied.

20  Dated: February 6, 2017          Respectfully Submitted,

21

22                                    ALAN MOSS

23                                Attorney *In Propria Personum*

24

25  [27] *See* Witkin, 5 Summary of California Law, §452.

26

## PROOF OF SERVICE

**COURT:**    U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**CASE NAME:**  *RESCAP*

**ACTION NO.:**    BANKRUPTCY NO. 12-12020-MG(SDNY)

        I am employed in the County of San Francisco, California. I am over the age of 18 and not a party to the within action. On this date, I served the following:

        Claimants Response To Debtor's Motion For Summary Judgment, Claimant's Response To Debtor's 7056-1 Document, Declaration of Alan Moss

on the party(ies) set out in said document by causing a true copy thereof to be:

[ ]    Telecopied via facsimile to the addressee's facsimile number listed below per CRC 2008(b).

[ ]    Telecopied via facsimile to the addressee's telephone number listed below, and thereafter mailed according to the procedures set forth immediately hereinbelow.

[ X ]    By U.S. priority OVERNIGHT mail, by placing said document(s) in a sealed envelope with postage thereon fully prepaid, and then deposited in a U.S. Post Office.

[ ]    By U.S. mail, Return Receipt Requested, by placing said document(s) in a sealed envelope with appropriate postage thereon fully prepaid and then placed in the designated office area for outgoing mail.

[ ]    Delivered by hand to the person set forth below, or by handing said document in a sealed envelope to a messenger service for delivery as addressed.

[ ]    Sent via Priority overnight mailing, by handing said document in a sealed envelope to an agent for the USPS for overnight delivery.

and if mailed, addressed as follows and sent to the following address(es):

Hon. Martin Glenn (Chambers Copy)
Judge of the U.S. Bankruptcy Court in and for the
    Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York New York 10004-1408

Clerk's Office (Filing Copy)
U.S. Bankruptcy Court in and for the
    Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York New York 10004-1408

Morrison and Foerster LLP

1  ATTN: Norman S. Rosenbaum
250 West 55th Street
2  New York New York 10019

3

      I declare under penalty of perjury under the laws of the State of California that the
4  foregoing is true and correct.

5        Executed this __6th__ day of February, 2017, at San Francisco, California.

6  _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26