# EXHIBIT  A

**SERVICELINK** a Black Knight Company
**1320 GREENWAY DRIVE, SUITE 300**
**IRVING, TEXAS 75038**
Order Placement – FCL-CS@servicelinkfnf.com

TM # **160234950**

CLIENT # **16-03790**

LOAN #

## FORECLOSURE REPORT

DATE COMPLETED: **8/5/16**

EFFECTIVE DATE: **7/21/16**

BORROWER NAME: **COTTON, JERRY**

COUNTY: **ST. JOSEPH**

ADDRESS: **15423 ROSCOMMON LANE, GRANGER, IN 46530**

---

**VESTING INFORMATION:**

**WARRANTY DEED**, DATED 7/19/94, CONVEYING FROM **ADAMS ROAD DEVELOPMENT CORP, A CORPORATION** TO **JACK HICKEY HOMES, INC.**, RECORDED 11/10/94, IN BOOK INSTRUMENT # **9442192**.

**CORPORATE WARRANTY DEED**, DATED 10/25/94, CONVEYING FROM **JACK HICKEY HOMES, INC., AN INDIANA CORPORATION** TO **DAVID G. LAAKSO AND LISA J. LAAKSO, HUSBAND AND WIFE**, RECORDED 11/10/94, IN INSTRUMENT # **9442194**.

**QUIT-CLAIM DEED**, DATED 4/1/97, CONVEYING FROM **DAVID G. LAAKSO** TO **LISA J. LAAKSO**, RECORDED 4/2/97, IN INSTRUMENT # **9711373**.

**WARRANTY DEED**, DATED 5/20/97, CONVEYING FROM **LISA J. LAAKSO** TO **LISA J. LAAKSO AND JERRY D. COTTON, AS JOINT TENANTS WITH RIGHTS OF SURVIVORSHIP**, RECORDED 5/30/97, IN INSTRUMENT # **9720887**.

**QUIT-CLAIM DEED**, DATED 4/1/98, CONVEYING FROM **JERRY D. COTTON AND LISA J. COTTON, FORMERLY KNOWN AS LISA J. LAAKSO** TO **JERRY D. COTTON AND LISA J. COTTON, HUSBAND AND WIFE**, RECORDED 4/14/98, IN INSTRUMENT # **9817786**.

---

**REAL PROPERTY OWNER:  JERRY D. COTTON, LISA J. COTTON**

---

**MOBILE HOME: NONE**

---

**LEGAL DESCRIPTION:  SEE ATTACHED EXHIBIT "A"**

---

**TAX INFORMATION**

PARCEL #: **71-04-15-453-014.000-011**

| YEAR: | 2015-2016 | 1ST HALF | AMOUNT: $4,221.24 | STATUS: **PAID** |
|-------|-----------|----------|-------------------|------------------|
| YEAR: | 2015-2016 | 2ND HALF | AMOUNT: $4,221.24 | STATUS: **DUE** |

ASSESSMENT TOTAL: **$412,700.00**

*TAXES ARE PROVIDED AS A COURTESY AND DO NOT CONSTITUTE CERTIFIED AMOUNTS.

---

**MORTGAGE/DEED OF TRUST INFORMATION:**

**MORTGAGE**

BORROWER:  **LISA J. COTTON AND JERRY D. COTTON, HUSBAND AND WIFE**

LENDER:    **CORNERSTONE MORTGAGE INC., A INDIANA CORPORATION**

DATED: 4/1/98        RECORDED: 4/14/98        INSTRUMENT # 9817787
                     AMOUNT: $284,100.00

    **CORPORATION ASSIGNMENT OF MORTGAGE**

    ASSIGNOR:      **CORNERSTONE MORTGAGE INC., A INDIANA CORPORATION**

    ASSIGNEE:      **OHIO SAVINGS BANK**

    DATED: 3/27/98        RECORDED: 4/14/98    INSTRUMENT # 9817788

    **CORPORATION ASSIGNMENT OF MORTGAGE**

    ASSIGNOR:      **OHIO SAVIGS BANK, FKA OHIO SAVINGS BANK, F.S.B.**

    ASSIGNEE:      **RESIDENTIAL FUNDING CORPORATION**

    DATED: 4/14/98        RECORDED: 9/17/99    INSTRUMENT # 9946056

**MORTGAGE**

BORROWER:  **JERRY D. COTTON AND LISA J. COTTON, HUSBAND AND WIFE**

LENDER:    **FIFTH THIRD BANK, A MICHIGAN BANKING CORPORATION**

DATED: 8/6/03        RECORDED: 8/18/03        INSTRUMENT # 0351925
                     AMOUNT: $75,000.00

    **ASSIGNMENT OF NOTE, MORTGAGE AND OTHER LOAN DOCUMENTS**

    ASSIGNOR:      **FIFTH THIRD BANK, FORMERLY KNOWN AS FIFTH THIRD BANK
                     (CHICAGO)**

    ASSIGNEE:      **PRAMCO CV6, LLC**

    DATED: 1/30/07        RECORDED: 3/8/07    INSTRUMENT # 0709151

## MORTGAGE

BORROWER:  JERRY D. COTTON AND LISA J. COTTON, HUSBAND AND WIFE

LENDER:    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
           FOR DECISION ONE MORTGAGE COMPANY, LLC

DATED: 5/11/05              RECORDED: 5/18/05          INSTRUMENT # 0521398
                           AMOUNT: $450,000.00

### ASSIGNMENT OF MORTGAGE

ASSIGNOR:   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
            NOMINEE FOR DECISION ONE MORTGAGE COMPANY, LLC, ITS
            SUCCESSORS AND ASSIGNS

ASSIGNEE:   THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW
            YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE
            CWABS INC., ASSET-BACKED CERTIFICATES SERIES 2005-BC5

DATED: 10/15/15      RECORDED: 10/21/15       INSTRUMENT # 1528149

---

NAME SEARCH RAN ON:   JERRY D. COTTON, LISA COTTON

---

MORTGAGE FORECLOSURE: NONE

---

JUDGMENTS: NONE

---

HOA LIEN:

CLAIMANT:   WATERFORD GREEN AT KNOLLWOOD HOMEOWNERS ASSOCIATION INC.
OWNER:      JERRY COTTON AND LISA COTTON
AMOUNT:     $140.00 PLUS INTEREST COSTS & FEES
FILED:      10/6/15
INSTRUMENT#: 1526661

---

MECHANIC'S LIENS: NONE

---

CHILD SUPPORT LIENS: NONE

---

MUNICIPAL LIENS: NONE

---

STATE TAX LIENS: NONE

---

**TAX WARRANTS:**

PLAINTIFF:    **DEPARTMENT OF REVENUE**
DEFENDANT: **LISA J. COTTON**
AMOUNT:    **$5,882.14 PLUS INTEREST COSTS & FEES**
FILED:    **2/8/16**
WARRANT #: **10824217**

**FEDERAL TAX LIENS:**

SERIAL #:    **170754615**
PLAINTIFF:    **INTERNAL REVENUE SERVICE**
DEFENDANT: **JERRY D. LISA J. COTTON**
SSN:    **XXX-XX-5453**
AMOUNT:    **$49,092.11 PLUS INTEREST COSTS & FEES**
RECORDED:  **8/17/15**
INSTRUMENT #: **1521195**

SERIAL #:    **393423407**
PLAINTIFF:    **INTERNAL REVENUE SERVICE**
DEFENDANT: **LISA J. COTTON**
SSN:    **XXX-XX-1364**
AMOUNT:    **$61,825.06 PLUS INTEREST COSTS & FEES**
RECORDED:  **10/3/07**
INSTRUMENT #: **0739379**

THIS REPORT CONTAINS INFORMATION FROM PUBLIC LAND RECORDS AND IS NOT TO BE CONSTRUED AS AN OPINION OF TITLE, TITLE COMMITMENT OR GUARANTEE, OR TITLE INSURANCE POLICY. SERVICELINK REPRESENTS ONLY THAT THE INFORMATION CONTAINED HEREIN HAS BEEN ACCURATELY REPORTED FROM THE PUBLIC LAND RECORDS. IN NO EVENT SHALL SERVICELINK'S LIABILITY FOR ANY ERROR OR OMISSION ASSOCIATED WITH THIS REPORT EXCEED THE COST OF THE REPORT.

*DIVORCE CASES AND PROBATE CASES ARE NOT EXAMINED AND NEED TO BE THOROUGHLY REVIEWED BY AN ATTORNEY.*

SERVICELINK WILL NOT BE HELD RESPONSIBLE FOR ANY INDEXING ERRORS OR OMISSIONS.

**EXHIBIT "A"**

Lot Numbered Twenty-eight (28) as shown on the recorded Plat of
Waterford Green at Knollwood, Section One (1), recorded June 17,
1993 in the Office of the Recorder of St. Joseph County,
Indiana, as Instrument No. 9322700, and re-recorded August 5,
1993 as Instrument No. 9330487.









WATERFORD GREEN
AT
KNOLLWOOD
SECTION 1

FINAL PLAT
WATERFORD GREEN AT KNOLLWOOD
SECTION 1

SHEET 4



PROPERTY OF ST. JOSEPH COUNTY.

**URBAN DRAIN CERTIFICATE**

THE ST. JOSEPH COUNTY, INDIANA DRAINAGE BOARD HAS APPROVED THIS SUBDIVISION'S DRAINAGE SYSTEM AS AN URBAN DRAIN SPECIFIED IN THE 1965 INDIANA DRAINAGE CODE, CHAPTER 305, ACTS OF 1965, AS AMENDED.

**LEGAL DESCRIPTION**

A PART OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 38 NORTH, RANGE 3 EAST, HARRIS TOWNSHIP, ST. JOSEPH COUNTY, INDIANA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF THE SOUTHEAST QUARTER OF SAID SECTION 15, SAID POINT BEING MARKED BY A HARRISON MONUMENT, THENCE NORTH 01° 33' 45" WEST ALONG THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 15, 2049.63 FEET; THENCE NORTH 88° 26' 15" EAST ALONG THE NORTH LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 15, 1436.34 FEET; THENCE SOUTH 01° 33' 45" EAST PARALLEL WITH SAID EAST LINE, 240.30 FEET; THENCE SOUTH 22° 11' 10" WEST, 189.43 FEET, THENCE SOUTHEASTERLY ALONG A CURVE TO THE RIGHT...

**LAND SURVEYOR'S CERTIFICATION**

I, GRAHA K. BRAGAMAN, HEREBY CERTIFY THAT I AM A LAND SURVEYOR, LICENSED IN COMPLIANCE WITH THE LAWS OF THE STATE OF INDIANA, THAT THIS PLAT CORRECTLY REPRESENTS A SURVEY COMPLETED BY ME ON MAY 21, 1993, THAT THE LOCATION, SIZE, TYPE, AND MATERIAL OF ALL MONUMENTS SHOWN HEREON ACTUALLY EXIST AND THAT THEIR LOCATION, SIZE, TYPE, AND MATERIAL ARE ACCURATELY SHOWN AND THAT THE SAID SUBDIVISION COMPLIES WITH THE REQUIREMENTS OF THE SUBDIVISION CONTROL ORDINANCE OF ST. JOSEPH COUNTY, INDIANA.

GRAHA K. BRAGAMAN
REGISTERED LAND SURVEYOR #S-0345
STATE OF INDIANA
VALLEY-ABONMARCHE CONSULTANTS INC.

**CERTIFICATE OF APPROVAL**

PURSUANT TO INDIANA CODE SECTION 1 THE SUBDIVISION OF THE AREA PLATTED IN THIS SUBDIVISION (THE WITHIN-DESCRIBED REAL ESTATE) WAS CONSIDERED AND APPROVED BY THE PLAT COMMITTEE OF THE AREA PLAN COMMISSION OF ST. JOSEPH COUNTY, INDIANA.

R. E. JOHNSON

**WATERFORD GREEN AT KNOLLWOOD SECTION 1**

A PART OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 38 NORTH, RANGE 3 EAST, HARRIS TOWNSHIP, ST. JOSEPH COUNTY, INDIANA

VALLEY — ABONMARCHE
FINAL PLAT
WATERFORD GREEN AT KNOLLWOOD
SECTION 1

SHEET 5

**DEED OF DEDICATION**

ADAMS ROAD DEVELOPMENT CORPORATION, UNDERSIGNED BY DAVID A. EDRISON AND BETTY J. BABCOCK, PRESIDENT AND SECRETARY, RESPECTIVELY, OWNERS OF THE REAL ESTATE SHOWN AND DESCRIBED HEREIN, DO HEREBY LAYOUT, PLAT AND SUBDIVIDE SAID REAL ESTATE IN ACCORDANCE WITH THE REQUIREMENTS OF THE SUBDIVISION ORDINANCE OF ST. JOSEPH COUNTY, INDIANA. THIS SUBDIVISION SHALL BE KNOWN AND DESIGNATED AS WATERFORD GREEN AT KNOLLWOOD—SECTION 1.

**OWNER'S CERTIFICATION**

THIS IS TO CERTIFY THAT ADAMS ROAD DEVELOPMENT CORPORATION, UNDERSIGNED BY DAVID A. EDRISON AND BETTY J. BABCOCK, PRESIDENT AND SECRETARY, RESPECTIVELY, IS THE OWNER OF THE REAL ESTATE DESCRIBED HEREIN, AND HAS CAUSED THE SAME TO BE PLATTED AND SUBDIVIDED...

ADAMS ROAD DEVELOPMENT CORPORATION
3340 GRAPE ROAD, P.O. BOX 67
GRANGER, INDIANA 46530

DAVID A. EDRISON,
PRESIDENT

DATED THIS 26TH DAY OF MAY, 1993

BETTY J. BABCOCK,
SECRETARY

STATE OF INDIANA
COUNTY OF ST. JOSEPH   } SS:

BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC, IN AND FOR SAID COUNTY AND STATE, PERSONALLY APPEARED DAVID A. EDRISON AND BETTY J. BABCOCK, PRESIDENT AND SECRETARY, RESPECTIVELY, OF ADAMS ROAD DEVELOPMENT CORPORATION, ACKNOWLEDGED THE EXECUTION OF THE FOREGOING INSTRUMENT AS THEIR VOLUNTARY ACT AND DEED FOR THE PURPOSES THEREIN EXPRESSED.

WITNESS MY HAND AND NOTARIAL SEAL, THIS 26TH DAY OF MAY, 1993.

DOUGLAS K. NYKAMP

MY COMMISSION EXPIRES AUGUST 10, 1996.
DOUGLAS K. NYKAMP
NOTARY PUBLIC
NOTARY PUBLIC IS A RESIDENT OF ST. JOSEPH COUNTY, INDIANA

Return To:                                      AUDITORS RECORD

Property Address:
15423 ROSCOMMON LANE                    Transfer No. _8394_
GRANGER, IN 46530
YORK TITLE AND ESCROW, INC.             Taxing Unit _Harris_
P. O. BOX 4608
SOUTH BEND, INDIANA 46634               Date _11-10-94_
Mail Tax Statements to:
PROPERTY ADDRESS                        Key No. 06-1006-006027

## 9442192

**CORPORATE WARRANTY DEED**

### THIS INDENTURE WITNESSETH

That ADAMS ROAD DEVELOPMENT CORP  a corporation organized and existing
under the laws of the State of INDIANA

### CONVEYS AND WARRANTS

To JACK HICKEY HOMES, INC. (of) ST. JOSEPH County, INDIANA for the sum of Ten
Dollars ($10.00) and other valuable consideration, the receipt whereof is
hereby acknowledged the following described REAL ESTATE in ST. JOSEPH
County, in the State of Indiana, (to-wit:

Lot Numbered Twenty-eight (28) as shown on the recorded Plat of Waterford
Green at Knollwood, Section 1, recorded June 17, 1993 as Document Number
9322700 and re-recorded August 5, 1993 as Document Number 9330487 in the
Office of the Recorder of St. Joseph County, Indiana

Subject to all unpaid taxes for the year 1993, due and payable in 1994 and
taxes for all subsequent years.

Subject to covenants, restrictions and easements of record.

Grantor certifies under oath that no Indiana Gross Income Tax is due or
payable in respect to the transfer made by this deed.

The undersigned persons executing this deed on behalf of Grantor represent
and certify that they are duly elected officers of Grantor and have been
fully empowered, by proper resolution of the Board of Directors of Grantor,
to execute and deliver this deed; that Grantor has full corporate capacity
to convey the real estate described herein; and that all necessary
corporate action for the making of such conveyance has been taken and done.

IN WITNESS WHEREOF, Grantor has caused this deed to be executed this 19th
day of  July     , 19 94 .

                                        ADAMS ROAD DEVELOPMENT CORP.

DULY ENTERED FOR TAXATION
BEVERLY D. CRONE                        _____
AUDITOR                                 DAVID A. ECKRICH, PRESIDENT
ST. JOSEPH Co. INDIANA


STATE OF INDIANA, St  Joseph County, ss:

Before me, a Notary Public in and for said County and State, personally
appeared DAVID A. ECKRICH the PRESIDENT of ADAMS ROAD DEVELOPMENT CORP.,
who acknowledged the execution of the foregoing Deed for and on behalf of
said Grantor, and who, having been duly sworn, stated that the
representations therein contained are true

                    and Seal this 19th   day of   July     , 19 94 .

                                        _Mary Beth Marchais_
_____, Notary Public                    Signature of Notary Public
____ County, IN
____ July 21, 1996
County of Residence                     Notary Public's Printed Name

                    was prepared by:  Frank A. Antonovitz, Attorney-at-Law

Key No. 06; 1006 006027
Grantee's mailing address

Property Address:
15423 Roscommon Ln.
Granger, IN 46530

YORK TITLE AND ESCROW, INC.
P. O. BOX 4608
SOUTH BEND, INDIANA 46634

## Corporate Warranty Deed

Transfer $396
Taxing Unit Law
Date 11-10-94

**This Indenture Witnesseth,** That **Jack Hickey Homes Inc., an Indiana Corporation**

## 9442194

**Conveys and Warrants** to **David G. Laakso and Lisa J. Laakso, husband and wife**

for the sum of Ten & 00/100 Dollars ($10.00) and other valuable consideration, the following described real estate in St. Joseph County, in the State of Indiana:
Lot Numbered Twenty-eight (28) as shown on the recorded Plat of Waterford Green at Knollwood, Section One (1), recorded June 17, 1993 in the Office of the Recorder of St. Joseph County, Indiana, as Instrument No. 9322700, and re-recorded August 5, 1993 as Instrument No. 9330487.

Subject to the taxes for the year 1994 due and payable in May and November, 1995 and all subsequent taxes.

Grantor certifies that there is no Indiana Gross Income Tax due or payable at this time.

The undersigned persons executing this deed on behalf of said grantor corporation represent and certify that they are duly elected officers of said corporation and have been fully empowered, by proper resolution of the Board of Directors of said corporation to execute and deliver this deed; that the grantor corporation has full corporate capacity to convey the real estate described herein and that all necessary corporate action for the making of such conveyance has been taken and done.

**Subject To** any and all easements, agreements, and restrictions of record.

Signed this 25th day of October 19 94.

Jack Hickey Homes Inc.

BY: _Austin J. Hickey_
Austin J. Hickey
Chairman of the Board
STATE OF INDIANA, ST. JOSEPH COUNTY, ss:
Before me, a Notary Public in and for the said County and State, personally appeared Austin J. Hickey as Chairman of the Board of Jack Hickey Homes Inc., an Indiana Corporation

who acknowledged the execution of the foregoing Warranty Deed, and who, having been duly sworn, stated that any representations therein contained are true.

Witness my hand and notarial seal this 25th day of October , 19 94.

My commission expires:
Nov. 3, 1994.

Signature _Kathleen R. Guthrie_

Printed _Kathleen R. Guthrie_, Notary Public
Residing in _St. Joseph_ County, Indiana

This instrument prepared by Louis Klatch, Attorney at Law

00115571

*Mail Zappia & Zappia*

# 1

ST. JOSEPH CO.
INDIANA
FILED FOR RECORD

**9711373**    APR 2 8 13 AM '97

ST JOSE    RECORDER

STEPHEN ...RGORSKI    Key No.: 06 1006 006027
Transfer No.: 922
Taxing Unit: Harris
Date: 4-2-97

Mail Deed To:    LISA J. LAAKSO
                 15423 Roscommon Lane
                 Granger, IN    46530

Mail Tax Bills To: Same
Property Address: 15423 Roscommon Lane, Granger, IN 46530

## QUIT CLAIM DEED

DAVID G. LAAKSO, the Grantor, of St. Joseph County, Indiana,

RELEASES AND QUIT CLAIMS

LISA J. LAAKSO, the Grantee, for and in consideration of One Dollar ($1.00), the receipt of which is hereby acknowledged, Real Estate in St. Joseph County, in the State of Indiana, the following described real estate:

Lot Numbered Twenty-eight (28) as shown on the recorded Plat of Waterford Green at Knollwood, Section One (1), recorded June 17, 1993, in the Office of the Recorder of St. Joseph County, Indiana, as Instrument No. 9322700 and re-recorded August 5, 1993, as Instrument No. 9330487.

Signed and dated this 1 day of April, 1997.

David G. Laakso

DULY ENTERED FOR TAXATION
JOSEPH F. NAGY
AUDITOR
ST. JOSEPH CO. INDIANA

STATE OF INDIANA    )
                    ) SS:
ST. JOSEPH COUNTY   )

Before me, the undersigned, a Notary Public in and for said County and State, personally appeared DAVID G. LAAKSO, who acknowledged the execution of the foregoing Quit Claim Deed to be his voluntary act and deed.

Dated this 1 day of April, 1997.

Christine F Sanders

_____, Notary Public

My Commission Expires:

PREPARED BY: ANTHONY ZAPPIA

CHRISTINE F SANDERS
NOTARY PUBLIC STATE OF INDIANA
ST. JOSEPH COUNTY
MY COMMISSION EXP. MAY 3, 1998

Key No.  06-1006-006027

Grantee's mailing address
15423 Roscommon Lane
Granger, IN 46530

Property Address:
15423 Roscommon Lane
Granger, IN 46530

Transfer 3149
Taxing Unit _____
Date 5-30-97

# *Warranty Deed*

### *This Indenture Witnesseth, That*    Lisa J. Laakso

## 9720887

*Conveys and Warrants* to Lisa J. Laakso and Jerry D. Cotton as Joint
Tenants with Rights of Survivorship

for the sum of Ten & 00/100 Dollars ($10.00) and other valuable consideration, the following
described real estate in St. Joseph County, in the State of Indiana:
Lot Numbered Twenty-eight (28) as shown on the recorded Plat of
Waterford Green at Knollwood, Section One (1), recorded June 17,
1993 in the Office of the Recorder of St. Joseph County,
Indiana, as Instrument No. 9322700, and re-recorded August 5,
1993 as Instrument No. 9330487.

Subject to the taxes for the year 1996 due and payable in May
and November, 1997 and all subsequent taxes.

DULY ENTERED FOR TAXATION
JOSEPH F. NAGY
AUDITOR
ST. JOSEPH CO. INDIANA

*Subject To* any and all easements, agreements, and restrictions of record.

Signed this **20TH**   day of   **MAY**      19 **97** .

_____Lisa J. Laakso_____       _____
Lisa J. Laakso

_____       _____

STATE OF INDIANA, ST. JOSEPH COUNTY, ss:
     Before me, a Notary Public in and for the said County and State, personally appeared
     Lisa J. Laakso

who acknowledged the execution of the foregoing Warranty Deed, and who, having been duly
sworn, stated that any representations therein contained are true.

     Witness my hand and notarial seal this **20TH**   day of **MAY**       19 **97**

My commission expires:       Signature _____

**01/31/00**       Printed **Heidi M. Adamovsky** , Notary Public
HEIDI M. ADAMOVSKY, Notary Public
A Resident of St. Joseph County, IN.
My Commission Expires 01-31- 2006      Residing in **St. Joseph County** County, Indiana

*This instrument prepared by: Louis Klatch, Attorney at Law*

                                                     00134206

YORK TITLE AND ESCROW, INC.
P. O. BOX 4608
SOUTH BEND, INDIANA 46634

9817786

Key No. 061-1006 006027
Grantee's mailing address
15423 Roscommon Lane
Granger, IN 46530

Property Address:
15423 Roscommon Lane
Granger, IN 46530

Transfer 1237
Taxing Unit Harris
Date 4.14.98

## Quit-Claim Deed

*This Indenture Witnesseth,* That **Jerry D. Cotton and Lisa J. Cotton,**
formerly known as **Lisa J. Laakso,**

*Conveys and Quit-Claims* to **Jerry D. Cotton and Lisa J. Cotton, husband
and wife,**

for the sum of Ten & 00/100 Dollars ($10.00) and other valuable consideration, the following
described real estate in **St. Joseph** County, in the State of Indiana:

**Lot Numbered Twenty-eight (28) as shown on the recorded Plat of
Waterford Green at Knollwood Section One (1), recorded June 17,
1993 in the Office of the Recorder of St. Joseph County,
Indiana, as Instrument No. 9322700, and re-recorded August 5,
1993 as Instrument No. 9330487.**

**Grantor, Lisa J. Cotton, certifies that she is the same person
as Lisa J. Laakso, a grantee in a deed recorded May 30, 1997,
in the Office of the Recorder of St. Joseph County, Indiana,
9720887.**

DULY ENT...
JOSE...
...AU...
ST. JOSEPH CO. ...

*Subject To* any and all easements, agreements, and restrictions of record.

Signed this 1st day of April 19 98.

_____
**Jerry D. Cotton**

_____
**Lisa J. Cotton**

_____                    _____

**STATE OF INDIANA,** St. Joseph COUNTY, ss:

Before me, a Notary Public in and for the said County and State, personally appeared
**Jerry D. Cotton and Lisa J. Cotton, formerly known as Lisa J. Laakso,**

who acknowledged the execution of the foregoing Quit-Claim Deed, and who, having been duly
sworn, stated that any representations therein contained are true.

Witness my hand and notarial seal this 1st day of April , 19 98.

My commission expires:                    Signature _Christine M. Fahrenberg_
_03-03-2008_                              Printed _Christine M. Fahrenberg_ Notary Public
                                          Residing in _Elkhart_ County, Indiana

( 00141203 )

*This instrument prepared by: Louis Klutch, Attorney at Law*

②  YORK TITLE AND ESCROW, INC.
    P. O. BOX 4608
    SOUTH BEND, INDIANA 46634

                                                    98 APR 14 PM 2:42

WHEN RECORDED MAIL TO:

CORNERSTONE MORTGAGE, INC.
1001 HICKORY ROAD, SUITE 4A
SOUTH BEND, INDIANA 46615    **9817787**

Loan No. 3691443
                        [Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on APRIL 1, 1998
The mortgagor is LISA J. COTTON AND JERRY D. COTTON, HUSBAND AND WIFE

                                    ("Borrower"). This Security Instrument is given to

CORNERSTONE MORTGAGE, INC., A INDIANA CORPORATION

                                                , and whose address is

which is organized and existing under the laws of INDIANA
1001 HICKORY ROAD, SUITE 4A
SOUTH BEND, INDIANA 46615       ("Lender"). Borrower owes Lender the principal sum of

TWO HUNDRED EIGHTY FOUR THOUSAND ONE HUNDRED AND 00/100**********
Dollars (U.S. $ 284,100.00       ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on APRIL 1, 2013       . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in                                ST JOSEPH
County, Indiana :    LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
AS EXHIBIT "A".
A.P.N.: 06-1006-006027

which has the address of  15423 ROSCOMMON LANE                        GRANGER
                                        [Street]                            [City]

Indiana          46530              ("Property Address");
                [Zip Code]

INDIANA -- Single Family -- Fannie Mac/Freddie Mac UNIFORM INSTRUMENT          Form 3015 9/90 (DSI 1/97)
Document Systems, Inc. (800) 649-1362                     Page 1 of 7

    (141203)

                            ORIGINAL

IN MTG-A

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

INDIANA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Document Systems, Inc. (800) 649-1362
Page 2 of 7
Form 3015 9/90 (DSI 1/97)

IN MTG A                    ORIGINAL

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.   **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.   **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

INDIANA -- Single Family -- Fannie Mac/Freddie Mac UNIFORM INSTRUMENT
Page 3 of 7
Form 3015 9/90 (DSI 1/97)

ORIGINAL

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

INDIANA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3015 9/90 (DSI 1/97)
Document Systems, Inc. (800) 649-1362                    Page 4 of 7

IN MTG-A                    ORIGINAL

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

**INDIANA** – Single Family -- Fannie Mac/Freddie Mac UNIFORM INSTRUMENT                    Form 3015 9/90 (DSI 1/97)
Document Systems, Inc. (800) 649-1362                    Page 5 of 7

ORIGINAL

IN MTG-A

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances:  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM  COVENANTS.  Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

23. **Waiver of Valuation and Appraisement.**  Borrower waives all right of valuation and appraisement.

24. **Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:                                        Witnesses:

_____ (Seal)        _____ (Seal)
LISA J COTTON              - Borrower           JERRY D COTTON              - Borrower

Social Security Number ████████               Social Security Number ████████

_____ (Seal)        _____ (Seal)
                           - Borrower                                      - Borrower

Social Security Number _____         Social Security Number _____

_____ (Seal)        _____ (Seal)
                           - Borrower                                      - Borrower

Social Security Number _____         Social Security Number _____

**INDIANA** -- Single Family -- Fannie Mac/Freddie Mac UNIFORM  INSTRUMENT                    Form 3015 9/90 (DSI 1/97)
Document Systems, Inc. (800) 444-1362
Page 6 of 7

ORIGINAL

IN MTG-A

[Space Below This Line For Acknowledgement]

STATE OF  INDIANA      )
                               ) ss:
COUNTY OF ST JOSEPH     )

     Before me, a Notary Public in and for the State of  **INDIANA**
personally appeared  LISA J. COTTON, JERRY D. COTTON

who, having been first duly sworn, acknowledged the execution of the foregoing Mortgage, including the riders that are attached to, form a part of, and are incorporated  into the Mortgage, and stated that any representations  contained therein are true.

     WITNESS my hand and Notarial Seal this  **1ST**  day of April, 1998

                               _____
                               Notary Public

                               _____
                               Printed

I am a resident of
                         County.

                         CHRISTINE M. FAHRENKROG, Notary Public
                         A Resident of Elkhart County, IN
My commission expires: My Commission Expires March 3, 2006

This Security Instrument  was prepared by: DENISE COOK

    CORNERSTONE MORTGAGE, INC.

IN MTG-A

ORIGINAL

ORDER NO:  00141203

## EXHIBIT A - LEGAL DESCRIPTION

Lot Numbered Twenty-eight (28) as shown on the recorded Plat of
Waterford Green at Knollwood, Section One (1), recorded June 17,
1993 in the Office of the Recorder of St. Joseph County,
Indiana, as Instrument No. 9322700, and re-recorded August 5,
1993 as Instrument No. 9330487.

③

YORK TITLE AND ESCROW, INC.
P.O. BOX 4608
SOUTH BEND, INDIANA 46634

9817788

98 APR 14 PM 2:42

RECORDING REQUESTED BY:
CORNERSTONE MORTGAGE, INC.

WHEN RECORDED, MAIL TO:
CORNERSTONE MORTGAGE, INC.
1001 HICKORY ROAD, SUITE 4A
SOUTH BEND, INDIANA 46615

Order No. 00141203
Escrow No.
Application No.
Loan No. 3691443

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### Corporation Assignment of Mortgage

("Assignor"),

FOR VALUE RECEIVED, CORNERSTONE MORTGAGE, INC.
having its principal place of business at 1001 HICKORY ROAD, SUITE 4A
SOUTH BEND, INDIANA 46615
hereby grants, assigns and transfers to OHIO SAVINGS BANK

("Assignee")

all of Assignor's rights, title and interest in, to, and under that certain Mortgage dated APRIL 1, 1998
executed and delivered by LISA J. COTTON AND JERRY D. COTTON, HUSBAND AND WIFE

#### 9817787

, Mortgagor,

to Assignor (the "Mortgage"), which Mortgage is recorded concurrently herewith in the Official Records in
the County Recorder's office of          ST JOSEPH          County, State of INDIANA
, covering certain real estate and other property described therein, more particularly described as follows:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
"A".
A.P.N.: 06-1006-006027

TOGETHER with the note or notes therein described or referred to therein and secured thereby, the money
due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

IN WITNESS WHEREOF, Assignor has caused this Corporation Assignment of Mortgage to be executed by
its duly authorized officer as of the day and year first written below.

(141203)

ORIGINAL

DATE APRIL 1, 1998
STATE OF  INDIANA
COUNTY OF  ST JOSEPH

On  3-27-98 _____ before
me, _PAULETTA GREEN_ Notary Public, personally
appeared _Becky Donovan_ _____

_____

_____

_____

_____ personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

(Seal)

CORNERSTONE MORTGAGE, INC., A
INDIANA CORPORATION

_Becky Donovan_
BECKY DONOVAN

_Lee Treer_

_____

_____

_____

(This area for official notarial seal)

PAULETTA P. GREEN
NOTARY PUBLIC
Residing in St. Joseph Co. Indiana
My Commission Expires 11-13-98

This instrument prepared by

CORPIN AGM

ORIGINAL

ORDER NO:   00141203

## EXHIBIT A - LEGAL DESCRIPTION

Lot Numbered Twenty-eight (28) as shown on the recorded Plat of
Waterford Green at Knollwood, Section One (1), recorded June 17,
1993 in the Office of the Recorder of St. Joseph County,
Indiana, as Instrument No. 9322700, and re-recorded August 5,
1993 as Instrument No. 9330487.

**9946056**

## ASSIGNMENT OF REAL ESTATE
## MORTGAGE / DEED OF TRUST

*Mort: SMI*
*Document #*

*17261582ND*
*3389*

OHIO SAVINGS BANK, a Federal savings bank, formerly known as Ohio Savings Bank, F.S.B., its name changed by Charter amendment, for and in consideration of the sum of One Dollar ($1.00) and for other valuable consideration paid to it by **RESIDENTIAL FUNDING CORPORATION**

("Assignee"), the receipt of which is hereby acknowledged, has sold, assigned and transferred and does hereby sell, assign and transfer to Assignee, without recourse, all of its right, title and interest in and to a certain real estate mortgage or deed of trust dated ___APRIL 1___, 198__ , and executed and delivered by

LISA J. COTTON & JERRY D. COTTON, HUSBAND & WIFE
and recorded at ___9817787___ ON ___4-14-98___ of the
public records of ___ST JOSEPH___ County, State of ___INDIANA___

**LEGAL DESCRIPTION:**

LOT NUMBERED TWENTY-EIGHT (28) AS SHOWN ON THE RECORDED PLAT OF WATERFORD GREEN AT KNOLLWOOD, SECTION ONE (1), RECORDED JUNE 17, 1993 IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA, AS INSTRUMENT NO. 9322700, AND RE-RECORDED AUGUST 5, 1993 AS INSTRUMENT NO. 9330487.

RETURN TO  SMI/ Attn: Wesley Hess
P O Box 540817                          JOB #710_9904
Houston, TX 77254-0817

99 SEP 17 AM 8:32

Property Address: ___15423 ROSCOMMON LANE, GRANGER, IN 46530___

P.I.N. ___06-1006-006027___            Trustee: _____

Signed and Acknowledged in the Presence of:                    OHIO SAVINGS BANK, fka Ohio Savings Bank, F.S.B.

*Janice Roth*                                    By: _____
Janice Roth                                      Patricia M. Storm , Authorized Agent

*Rita Kennedy*                                   Date: ___APRIL 14th___ 198__
Rita Kennedy

STATE OF OHIO          )
                       ) SS:
COUNTY OF CUYAHOGA )

Before me, a Notary Public in and for said County and State, on this ___14th___ day of ___APRIL___ , 1998 , personally appeared the above named Patricia M. Storm, the Authorized Agent of Ohio Savings Bank, a Federal savings bank, formerly known as Ohio Savings Bank, F.S.B., its name changed by Charter amendment, who acknowledged to me that s/he did sign the foregoing instrument on behalf of said Federal savings bank with due authority and that such was his/her free act and deed and the free act and deed of said Federal savings bank.

This instrument prepared by *Suoretta Westbrooks*            *Lottie R Tuggle*
SUORETTA WESTBROOKS                                          Lottie R Tuggle, Notary Public
                                                            State of Ohio, Cuyahoga County
Ohio Savings Bank, 1801 East 9th St., Cleveland, OH 44114    My Commission Expires April 20, 2__

3691443

Branch :MNA,User :ME09                    Comment:                    Station Id :J4FQ

13875

Ø351925
RECORDED ON
08/18/2003  03:35:43PM
TERRI J. RETHLAKE
ST. JOSEPH COUNTY
RECORDER
REC FEE:   $33.00
PAGES: 13

RECORDATION REQUESTED BY:
FIFTH THIRD BANK (CHICAGO), A
MICHIGAN BANKING CORPORATION
101 WEST STEPHENSON STREET
FREEPORT, IL 61032

WHEN RECORDED MAIL TO:
Fifth Third Bank (Chicago), a Michigan
banking corporation
Attn:  Commercial Loan Services
P.O. Box 297 MD# GFPT1A
Freeport, IL 61032

---

## MORTGAGE

THIS MORTGAGE dated August 6, 2003, is made and executed between JERRY D. COTTON and LISA J. COTTON, HUSBAND AND WIFE, whose address is 15423 ROSCOMMON LANE, GRANGER, IN 46530 (referred to below as "Grantor") and FIFTH THIRD BANK (CHICAGO), A MICHIGAN BANKING CORPORATION, whose address is 101 WEST STEPHENSON STREET, FREEPORT, IL 61032 (referred to below as "Lender").

GRANT OF MORTGAGE.  For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in ST. JOSEPH County, State of Indiana:

   LOT NUMBERED TWENTY-EIGHT (28) AS SHOWN ON THE RECORDED PLAT OF WATERFORD GREEN AT KNOLLWOOD, SECTION ONE (1), RECORDED JUNE 17, 1993 IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA, AS INSTRUMENT NO. 9322700, AND RE-RECORDED AUGUST 5, 1993 AS INSTRUMENT NO. 9330487.

The Real Property or its address is commonly known as 15423 ROSCOMMON LANE, GRANGER, IN 46530.

CROSS-COLLATERALIZATION.  In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

REVOLVING LINE OF CREDIT.  Specifically, in addition to the amounts specified in the Indebtedness definition, and without limitation, this Mortgage secures a revolving line of credit, under which Lender may make future obligations and advances to Borrower up to a maximum amount of $75,000.00 so long as Borrower complies with all the terms of the Note.  Such future obligations and advances, and the interest thereon, are secured by this Mortgage whether such obligations and advances arise under the Note, this Mortgage or otherwise.  This Mortgage also secures all modifications, extensions and renewals of the Note, the Mortgage or any other amounts expended by Lender on Grantor's behalf as provided for in the

Branch :MNA,User :ME09                           Comment:                           Station Id :J4FQ

## MORTGAGE
### (Continued)

**Mortgage.**

As more fully described in this mortgage, the Property includes: (a) all extensions, improvements, substitutes, replacements, renewals, and additions to any of the property described; (b) all rents, proceeds, income, and profits from any of the other property described; and (c) all awards, payments, or proceeds of voluntary or involuntary conversion of any of the property described, including insurance, condemnation, tort claims, and other obligations dischargeable in cash.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any

Branch :MNA,User :ME09                    Comment:                    Station Id :54FQ

· ..

## MORTGAGE
### (Continued)

Page 3

stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be. of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Indiana law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender

Printed on 8/4/2016 11:19:08 AM

Branch :MNA,User :ME09                          Comment:                                          Station Id :J4FQ

# MORTGAGE
**(Continued)**                                                                               Page 4

being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the

Branch .MNA,User .ME09                              Comment.                          Station id .54rQ

---

**MORTGAGE**
**(Continued)**                                                                    Page 5

---

proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Grantor hereby appoints Lender as Grantor's attorney-in-fact for the purpose of executing any documents necessary to perfect or continue the security interest granted in the Rents and Personal Property. Lender may sign and file financing statements without Grantor's signature. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

---

Branch .MNA,User .ME09                          Comment:                          Station Id .J4PQ

**MORTGAGE**
**(Continued)**                                                              **Page 6**

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over

Branch :MNA, User :ME09                          Comment.                          Station Id :J4FQ

**MORTGAGE**
**(Continued)**                                                                 Page 7

and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any
tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are
collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse
instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the
proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the
obligations for which the payments are made, whether or not any proper grounds for the demand existed.
Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any
part of the Property, with the power to protect and preserve the Property, to operate the Property preceding
foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the
cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law.
Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property
exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person
from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of
the Property.

**Deficiency Judgment.** With respect to any Grantor who also is personally liable on the Note, Lender may
obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all
amounts received from the exercise of the rights provided in this section. Under all circumstances, the
Indebtedness will be repaid without relief from any Indiana or other valuation and appraisement laws.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or
available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any
and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to
sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be
entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the
Personal Property or of the time after which any private sale or other intended disposition of the Personal
Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of
the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the
Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other
remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this
Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise
its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights
and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and
ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker,
guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the
Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this
Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys'
fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not
prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time
for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness
payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.
Expenses covered by this paragraph include, without limitation, however subject to any limits under
applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit,
including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any
automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of
searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal
fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in
addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default
and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually
received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized
overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered
mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices
of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address,
as shown near the beginning of this Mortgage. Any party may change its address for notices under this
Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to
change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of
Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any
notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ASSIGNMENT OF INTEREST AS LESSEE OR PURCHASER.** Grantor assigns and mortgages to Lender, as
additional security for the Indebtedness, all of Grantor's right, title and interest in and to any and all leases, land
contracts or other agreements by which any part or all of the Real Property is being leased or purchased.

Branch :MNA,User :ME09                         Comment:                              Station Id :J4FQ

## MORTGAGE
(Continued)                                                                          Page 8

---

including all modifications, renewals and extensions, and all of Grantor's rights in and to any purchase options contained in each lease or other agreement. Grantor shall pay or cause to be paid each installment of rent or of principal or interest required to be paid by the lessee, buyer or other obligor under each lease, land contract or other agreement, as and when it shall become due and payable, whether by acceleration or otherwise. Grantor shall pay and perform, or cause to be paid and performed, all other obligations of the lessee, buyer or other obligor under each lease, land contract or other agreement. If Grantor shall default in the payment of any installment of rent or of principal or interest or in the payment or performance of any other obligation under any lease, land contract or other agreement, then Lender shall have the right, but shall have no obligation, to pay the installment or installments, to pay or perform the other obligation on behalf of Grantor and to exercise any rights of Grantor under the lease, land contract or other agreement, including any purchase option. All sums expended by Lender in doing so shall become part of the Indebtedness, payable by Grantor to Lender upon demand, together with interest at the highest rate borne by any of the Indebtedness. Any payment or performance by Lender under this section of an obligation that Grantor has failed to perform under a lease, land contract or other agreement, and any exercise by Lender of any right, remedy or option under a lease, land contract or other agreement, shall not be considered an assumption by Lender of the lease, land contract or other agreement or of any obligation or liability under it. Upon receipt by Lender from the lessor or seller under a lease, land contract or other agreement of any written notice of default by the lessee, buyer or other obligor, Lender may rely on the notice and take any action to cure the default even though the existence or nature of the default is questioned or denied by Grantor.

**ASSIGNMENT OF LEASES AND CONTRACTS.** Grantor assigns and mortgages to Lender, and grants to Lender a security interest in, as additional security for the Indebtedness, all of Grantor's right, title and interest in and to all existing and future oral or written leases of all or any part of the Real Property or of any interest in it and all existing and future land contracts or other agreements by which the Real Property or any interest in it is being or shall be sold, together with all rents and all other payments now or in the future owing by each lessee, buyer or other obligor under, and all other proceeds of, those leases, land contracts or other agreements. Without the written consent of Lender, Grantor shall not cancel, accept a surrender of, modify, consent to an assignment of the lessee's, buyer's or other obligor's interest under, or make any other assignment or other disposition of, any lease, land contract or other agreement or of any interest of Grantor in it and shall not collect or accept any payment of rent or of principal or interest or any other amount more than one month before it is due and payable. Grantor shall pay and perform all obligations and covenants required of Grantor by the terms of each lease, land contract or other agreement. If Grantor shall default in the payment or performance of any obligation or covenant, then Lender shall have the right, but shall have no obligation, to pay or perform it on behalf of Grantor, and all sums expended by Lender in doing so shall be payable by Grantor to Lender upon demand, together with interest at the highest rate borne by any of the Indebtedness. This section does not imply that Lender consents to the sale, lease or transfer of the Real Property or any interest in it.

**MINERALS.** Grantor assigns and mortgages to Lender, and grants to Lender a security interest in, as additional security for the Indebtedness, all of Grantor's right, title and interest in and to (i) all oil, gas and other minerals located in, on or under the Real Property, (ii) all oil, gas or mineral leases, royalty agreements and other contracts that have been or in the future are entered into with respect to the Real Property or with respect to any oil, gas or other minerals located in, on or under the Real Property ("**Mineral Leases**"), and (iii) all rents, profits, royalties and income at any time arising from the Mineral Leases or from the sale of oil, gas or other minerals located in, on or under the Real Property. Upon the occurrence of an Event of Default, Lender shall be entitled to the present and full possession, receipt and use of and right to such oil, gas, other minerals, Mineral Leases, rents, profits, royalties and income, for application to the Indebtedness in any manner that Lender in its sole discretion shall determine.

**ADDITIONAL WARRANTIES, REPRESENTATIONS AND AGREEMENTS.** Grantor represents and warrant to Lender, and agrees, as follows:

**Accuracy of Information.** All financial statements and other information concerning Grantor, the Property, any guarantor of any of the Indebtedness and any person obligated on any of the Indebtedness, that have been or in the future are furnished to Lender, are and shall be true and correct in all material respects.

**No Violations and Enforceability.** The execution, delivery and performance of this Mortgage by Grantor will not violate any law, rule, judgment, order, agreement or instrument binding upon Grantor and will not require the approval of any public authority or any third party, and this Mortgage is the valid and binding obligation of Grantor, enforceable in accordance with its terms.

**Status and Authority.** If Grantor is a corporation, partnership, limited liability company, association, trust or other entity, then it is duly organized and validly existing in good standing under the laws of the state indicated on the first page of this Mortgage; Grantor has full power and authority to enter into and perform its obligations under this Mortgage; the execution, delivery and performance of this Mortgage have been duly authorized by all necessary action of Grantor's board of directors, partners, members, managers, trustees or other governing body and will not violate Grantor's articles or certificate of incorporation, bylaws, partnership agreement, articles of organization, operating agreement, articles of association, trust agreement or other governing instrument; and Grantor is duly qualified and authorized to transact business, and is in good standing, in each jurisdiction in which the failure to be so qualified or authorized could have a material adverse effect upon (i) the validity, performance or enforceability of this Mortgage, (ii) the ability of Grantor to perform Grantor's obligations under this Mortgage or (iii) the ability of Lender to take possession of, collect or otherwise realize upon any Collateral.

**Costs of Inspection, Etc.** If Lender enters upon the Real Property to (i) inspect or conduct tests on the Real Property, (ii) appraise the Real Property, (iii) investigate whether the Real Property is a site or source of

Branch :MNA,User :ME09                        Comment:                        Station Id :J4FQ

## MORTGAGE
(Continued)                                                                    Page 9

environmental contamination or (iv) remove or remediate any environmental contamination and if, at the time of the inspection, tests, appraisal, investigation, assessment, removal or remediation, there shall have occurred and be continuing an Event of Default, then all costs and expenses of the inspection, tests, appraisal, investigation, assessment. removal or remediation shall be subject to the "LENDER'S EXPENDITURES" section of this Mortgage.  Grantor shall execute any consultant contract, waste manifest, notice and other documents that Lender requests to enable Lender to take or conduct any action or activity contemplated by this paragraph, if Grantor is given a reasonable opportunity to negotiate the terms of the contract, manifest, notice or other document.  Any inspection, test, appraisal or investigation  made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.

**Leases, Etc.**  Upon the occurrence of an Event of Default, Lender shall have the right, but no obligation, to exercise any right or remedy of Grantor under any lease, land contract, other agreement or Mineral Lease by which the Real Property or any interest in it is then being sold or leased, including any option to purchase the Real Property or to renew or extend the term of any lease, land contract, Mineral Lease or other agreement. Lender shall not, however, be liable for any obligation of Grantor under any such lease, land contract, Mineral Lease or other agreement.  Lender shall have no obligation to make any demand or inquiry as to the nature or sufficiency of any Rent payment received or to present or file any claim or take any other action to collect or enforce the payment of any Rent to which Lender may become entitled.

**Application of Proceeds.**  If any rents or profits or any proceeds of insurance or proceeds of any condemnation or eminent domain award or proceeds from any sale of the Property at foreclosure are paid to Lender, then Lender shall have the right to apply the rents or profits or proceeds, in amounts and proportions that Lender shall in its sole discretion determine, to the full or partial satisfaction of any or all of the indebtedness and obligations secured by this Mortgage, including any contingent or secondary obligations, whether or not they shall then be due and payable by the primary obligor.

**Property Information.**  During any period when any part of the Real Property is leased, Grantor shall promptly furnish to Lender, upon Lender's request from time to time, (i) copies of all leases then in effect with respect to all or any part of the Real Property, including all amendments, (ii) a written schedule that shows for each tenant the tenant's name, the current rental rate (including any percentage rent), any rental or leasing concessions, the units or area leased and the lease expiration date, (iii) a description of any parts of the Real Property that are not then leased, (iv) detailed financial statements relating to the Real Property, prepared in accordance with generally accepted accounting principles, for the periods and as of the dates that Lender shall require, which statements shall show, without limitation, all income and expenses, capital expenditures, tenant improvements, leasing commissions and all indebtedness secured by mortgages or liens upon the Real Property and (v) any additional information concerning the Real Property and the leasing of it that Lender shall request. Lender shall have the right at any reasonable time (whether or not any part of the Real Property is then being leased) to inspect and make copies of Grantor's records concerning the Real Property and any lease of or other transaction or matter concerning the Real Property.

**Release.**  Lender may at any time release all or any part of the Property from the lien of this Mortgage or release the liability of any person for the Indebtedness, with or without consideration and without giving notice to, or obtaining the consent of, the holder of any mortgage or lien upon, or other interest in, the Property.  A release shall not impair or affect the validity or priority of this Mortgage, regardless of the effect of the release upon the mortgage, lien or other interest or the holder of it.  This section does not imply that Lender consents to the placing of a mortgage, lien or other encumbrance on the Property.

**Limitation.**  Notwithstanding any other provision of this Mortgage, if the Real Property includes Grantor's principal dwelling, then this Mortgage does not secure any present or future indebtedness or obligation owing by Grantor or Borrower arising from an extension of "consumer credit." within the meaning of the federal Truth in Lending Act (15 USC 1601 et seq), unless either (i) the note, agreement or other instrument or document evidencing the indebtedness or obligation is specifically described above or (ii) the extension of credit is made after this Mortgage is given and the note, agreement or other instrument or document evidencing the indebtedness or obligation expressly states that it is secured by a mortgage on Grantor's principal dwelling.

**WAIVER OF TRIAL BY JURY.  LENDER AND GRANTOR IRREVOCABLY AND UNCONDITIONALLY WAIVES ITS, HIS OR HER RIGHT TO A TRIAL BY JURY IN ANY ACTION, INCLUDING ANY CLAIM, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY CLAIM ("CLAIM"), THAT IS BASED UPON, ARISES OUT OF OR RELATES TO THIS MORTGAGE OR THE INDEBTEDNESS, INCLUDING, WITHOUT LIMITATION, ANY CLAIM BASED UPON, ARISING OUT OF OR RELATING TO ANY ACTION OR INACTION OF LENDER IN CONNECTION WITH ANY ACCELERATION OF THE INDEBTEDNESS OR ANY FORECLOSURE OR OTHER ENFORCEMENT OF THIS MORTGAGE**

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Mortgage:

**Amendments.**  This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage.  No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.**  If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require.  "Net operating income" shall

Branch :MNA,User :ME09                    Comment:                    Station Id :J4FQ

## MORTGAGE
(Continued)                                                   Page 10

mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by, construed and enforced in accordance with federal law and the laws of the State of Indiana. This Mortgage has been accepted by Lender in the State of Indiana.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of St. Joseph County, State of Indiana.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means ERGONOMIC HEALTH SOLUTIONS, LLC, and all other persons and entities signing the Note in whatever capacity.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default"

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means JERRY D. COTTON and LISA J. COTTON.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Branch .MNA,User .ME09                                    Comment.                                      Station id .J4rQ

## MORTGAGE
### (Continued)                                                                          **Page 11**

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means ALL INDEBTEDNESS AND OBLIGATIONS NOW AND IN THE FUTURE OWING TO LENDER BY THE PERSON OR PERSONS SIGNING BELOW AS EITHER BORROWER OR GRANTOR (REFERRED TO IN THIS PARAGRAPH AS "THE UNDERSIGNED"), INCLUDING, BUT NOT LIMITED TO, (I) THE NOTE AND ALL OTHER PROMISSORY NOTES THAT HAVE BEEN OR ARE IN THE FUTURE SIGNED AND DELIVERED TO LENDER BY THE UNDERSIGNED, (II) THE UNDERSIGNED'S OBLIGATIONS UNDER ANY EXISTING OR FUTURE GUARANTIES OF INDEBTEDNESS OR OBLIGATIONS OF OTHERS AND (III) ALL OBLIGATIONS OF THE UNDERSIGNED HEREUNDER. "INDEBTEDNESS" INCLUDES ALL PRESENT AND FUTURE INDEBTEDNESS AND OBLIGATIONS OWING TO LENDER BY THE UNDERSIGNED, REGARDLESS OF WHETHER ANY SUCH INDEBTEDNESS OR OBLIGATION IS (A) NOT PRESENTLY INTENDED OR CONTEMPLATED BY LENDER OR THE UNDERSIGNED, (B) INDIRECT, CONTINGENT OR SECONDARY, (C) UNRELATED TO ANY COLLATERAL THAT SECURES ANY SUCH INDEBTEDNESS OR OBLIGATION OR TO ANY FINANCING OF ANY SUCH COLLATERAL BY LENDER OR (D) OF A KIND OR CLASS THAT IS DIFFERENT FROM ANY INDEBTEDNESS OR OBLIGATION NOW OWING TO LENDER BY THE UNDERSIGNED.     IF THE UNDERSIGNED IS MORE THAN ONE PERSON, THEN "INDEBTEDNESS" INCLUDES ALL INDEBTEDNESS AND OBLIGATIONS NOW AND IN THE FUTURE OWING TO LENDER BY ANY ONE OR MORE OF THOSE PERSONS, REGARDLESS OF WHETHER THE REMAINING PERSON OR PERSONS ARE NOT LIABLE FOR ANY SUCH INDEBTEDNESS OR OBLIGATIONS OR WHETHER ONE OR MORE PERSONS OTHER THAN THE UNDERSIGNED ARE ALSO LIABLE FOR SUCH INDEBTEDNESS AND OBLIGATIONS.

**Lender.**    The word "Lender" means FIFTH THIRD BANK (CHICAGO), A MICHIGAN BANKING CORPORATION, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated August 6, 2003, **in the original principal amount of $75,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

Branch :MNA,User :ME09                    Comment:                                  Station Id :J4PQ

**MORTGAGE**
**(Continued)**                                                          Page 12

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH
GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
JERRY D. COTTON, Individually

X _____
LISA J. COTTON, Individually

Signed, acknowledged and delivered in the presence of:

X _____

X _____

---

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF ___Indiana___                              )
                                                    ) SS
COUNTY OF ___Elkhart___                             )

On this day before me, the undersigned Notary Public, personally appeared **JERRY D. COTTON and LISA J.
COTTON**, to me known to be the individuals described in and who executed the Mortgage, and acknowledged
that they signed the Mortgage as their free and voluntary act and deed, for the uses and purposes therein
mentioned.

Given under my hand and official seal this ___6___ day of ___August___, 20_03_

By _____              Residing at ___Elkhart Indiana___

Notary Public in and for the State of ___India___     My commission expires ___Sept 22, 2010___

---

This Mortgage was prepared by:  Kathy Pflaume, Documentation Processor

---

Branch :MNA,User :ME09                                    Comment:                                                    Station Id :J4PQ

**RECORDING PAGE**

Branch :MNA, User :ME09                    Comment:                                        Station Id :J4FQ

8709151

RECORDED AS PRESENTED ON
03/08/2007 02:27:23PM
TERRI J. RETHLAKE
ST. JOSEPH COUNTY
RECORDER

REC FEE:     $15.00
PAGES:    2

**This instrument prepared by
and after recording, return to:**
Pramco CV6, LLC
6894 Pittsford-Palmyra Road
200 CrossKeys Office Park, Suite 230
Fairport, NY 14450

### ASSIGNMENT OF NOTE, MORTGAGE AND
### OTHER LOAN DOCUMENTS

THIS ASSIGNMENT OF NOTE, MORTGAGE AND OTHER LOAN DOCUMENTS
(this "Assignment") is made by **FIFTH THIRD BANK, and its predecessors in interest,**
whose address is 111 Lyons Street, NW, Mail Drop RMNR5D, Grand Rapids, MI 49503
("Assignor"), to **PRAMCO CV6, LLC,** whose address is 6894 Pittsford-Palmyra Road, 200
CrossKeys Office Park, Suite 230, Fairport, New York 14450 ("Assignee"), pursuant to the
terms of that certain Asset Sale Agreement dated September 6, 2006 (the "Sale Agreement")
between Assignor and Assignee. Capitalized terms used herein and not otherwise defined shall
have the meanings ascribed to them in the Sale Agreement.

THIS ASSIGNMENT WITNESSES THAT, in consideration of Ten Dollars ($10.00) and
other good and valuable consideration paid by Assignee, Assignor hereby assigns, transfers, sets
over and conveys, effective as of September 6, 2006, to Assignee and its successors and assigns,
without recourse and without representation or warranty, whether express, implied or created by
operation of law, except as expressly set forth in the Sale Agreement, the following:

That certain Mortgage dated August 6, 2003, executed by Jerry D. Cotton and Lisa J.
Cotton, to and for the benefit of Fifth Third Bank (Chicago), recorded August 18,
2003, in the Office of the St. Joseph County, Indiana, Recorder under Instrument No.
0351925 (the "Mortgage"), which Mortgage secures a revolving line of credit from
Fifth Third Bank (Chicago) to Jerry D. Cotton and Lisa J. Cotton in the maximum
amount of $75,000.00, together with any and all assignments thereto and
modifications thereof (the "Note"), together with such other documents, agreements,
instruments and other collateral that evidence, secure or otherwise relate to
Assignor's right, title or interest in and to the Mortgage and/or the Note, including
without limitation the title insurance policies and hazard insurance policies that might
presently be in effect.

S:\LOANS\Company 74\74210076\Assignment of Mortgage.doc

0709151

ST JOSEPH,IN                              Page 1 of 2                    Printed on 8/4/2016 11:20:16 AM
Document: MTG ASN 2007.9151

Branch :MNA,User :ME09                    Comment:                                    Station Id :J4FQ

THIS ASSIGNMENT FURTHER WITNESSES THAT Assignor hereby conveys and quitclaims to Assignee any and all right and interest it might have in the Mortgage, Note and other loan documents referenced above, and in the underlying loan and hereby joins in the conveyance of the Mortgage, Note, loan documents and loan to Assignee, without recourse and without representation or warranty, whether express, implied or created by operation of law, except as expressly set forth in the Sale Agreement.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized agent as of the 6th day of September, 2006.

**FIFTH THIRD BANK,** formerly known as Fifth Third Bank (Chicago), as Assignor

Witness _____

By: _____
     Timothy P. Sheehan
     Its Authorized Agent

### ACKNOWLEDGMENT

STATE OF NEW YORK        )
                         )SS.:
COUNTY OF MONROE         )

On the 30th day of January, 2007, before me, the undersigned, personally appeared Timothy P. Sheehan, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

ALISON LEE HUTCHINGS
Notary Public, State Of New York
Monroe County
Commission Expires February 20, 20 11

S:\LOANS\Company 74\74210076\Assignment of Mortgage.doc

0709151

Branch :MNA,User :ME09                          Comment:                          Station Id :J4PQ



'OLD FOR: **MERIDIAN TITLE CORP.**

Ø521398
RECORDED ON
05/18/2005  12:20:59PM
TERRI J. RETHLAKE
ST. JOSEPH COUNTY
RECORDER
REC FEE:    $34.00
PAGES:  12

After Recording Return To:

Decision One Mortgage Company, LLC
6060 J.A. Jones Drive, Suite 1000
Charlotte, North Carolina  28287

———————————— [Space Above This Line For Recording Data] ————————————

Loan Number 2010050444840
MIN: 100077910003767544

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **MAY 11, 2005**, together with all Riders to this document.
(B) "Borrower" is **JERRY D. COTTON AND LISA J. COTTON, HUSBAND AND WIFE.** Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is Decision One Mortgage Company, LLC. Lender is a **LIMITED LIABILITY COMPANY** organized and existing under the laws of **NORTH CAROLINA.** Lender's address is **6060 J.A. JONES DRIVE, SUITE 1000, CHARLOTTE, NORTH CAROLINA 28287.**
(E) "Note" means the promissory note signed by Borrower and dated **MAY 11, 2005.** The Note states that Borrower owes Lender **FOUR HUNDRED FIFTY THOUSAND AND 00/100ths** Dollars (U.S. **$450,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JUNE 1, 2035.**

**INDIANA**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3015  1/01 *(page 1 of 11 pages)*

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

2159305

Branch :MNA,User :ME09                                    Comment:                                    Station Id :J4PQ

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider

☐ Balloon Rider              ☐ Planned Unit Development Rider   ☐ Other(s) [specify]

☐ 1-4 Family Rider           ☐ Biweekly Payment Rider

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L)** **"Escrow Items"** means those items that are described in Section 3.
**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the _____County_____ of ___ST. JOSEPH___ :
   [Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]
**SEE ATTACHED SCHEDULE "A"**

Branch :MNA,User :ME09                Comment:                Station Id :J4PQ

which currently has the address of  15423 ROSCOMMON LANE
                                                                     [Street]
GRANGER                    , Indiana     46530        ("Property Address"):
              [City]                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3015 1/01  (page 3 of 11 pages)

Branch :MNA,User :ME09                    Comment:                    Station Id :54FQ

premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3015  1/01  *(page 4 of 11 pages)*

Branch :MNA,User :ME09                          Comment:                          Station Id :J4PQ

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30 day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3015 1/01  *(page 5 of 11 pages)*

Branch :MNA,User :ME09                          Comment:                          Station Id :J4PQ

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

**INDIANA**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3015 1/01  *(page 6 of 11 pages)*

Branch :MNA,User :ME09                    Comment:                    Station Id :J4FQ

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

**INDIANA**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3015  1/01  *(page 7 of 11 pages)*

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**INDIANA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**        Form 3015  1/01  *(page 8 of 11 pages)*

Branch :MNA,User :ME09                    Comment:                              Station Id :J4FQ

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**INDIANA**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3015  1/01  *(page 9 of 11 pages)*

Branch :MNA,User :ME09                                    Comment:                                    Station Id :J4FQ

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

    **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

    Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

    NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

    **22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

    **23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

    **24. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

**INDIANA**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          **Form 3015  1/01**  *(page 10 of 11 pages)*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        JERRY D. COTTON                -Borrower

_____        _____ (Seal)
                                        LISA J. COTTON                 -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                        -Borrower

———————————— [Space Below This Line For Acknowledgment] ————————————

STATE OF INDIANA,            St Joseph                County ss:

On this **11TH** day of **MAY**                , **2005** , before me, the undersigned, a Notary Public in and for said County, personally appeared **JERRY D. COTTON AND LISA J. COTTON, HUSBAND AND WIFE,** and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

(Seal)          HOLLY S. SCHULZ
My Commission Expires:   Notary Public, State of Indiana    [Typed or printed name] Notary Public Holly S Schulz
                         County of St. Joseph               County of residence: St Joseph Co .
_____        My Commission Expires Apr. 21, 2011

This instrument was prepared by: Decision One Mortgage Company, LLC

**INDIANA**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        **Form 3015** 1/01 *(page 11 of 11 pages)*

Branch :MNA,User :ME09                    Comment:                                    Station Id :J4FQ

## EXHIBIT A

Lot Numbered Twenty-eight (28) as shown on the recorded Plat of Waterford Green at Knollwood, Section One, recorded June 17, 1993 as Document Number 9322700 and re-recorded August 5, 1993 as Document Number 9330487 in the Office of the Recorder of St. Joseph County, Indiana.

Branch :MNA,User :ME09                    Comment:                              Station Id :J4PQ

*LICENSED TO MERS - TITLE AND NOT FOR SUB OR OTHER TRANSFER*

1528149
RECORDED AS PRESENTED ON
10/21/2015 03:02:40PM
PHILLIP G. DOTSON
ST. JOSEPH COUNTY
RECORDER
PGS: 2 FEES: $14.00

Recording Requested By:
**Bank of America**
Prepared By: Bank of America
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID#     7181088558221183O

Property Address:
15423 Roscommon Lane
Granger, IN 46530-6280

DNM-AM 34062154  E 10/9/2015  FCL011                                    This space for Recorder's use

MIN #: 1000779:0003767544                                 MERS Phone #: 888 679 6377

## ASSIGNMENT OF MORTGAGE

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (herein "Assignor"),
whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 and P.O. Box 2026, Flint, MI 48501-
2026, AS NOMINEE FOR DECISION ONE MORTGAGE COMPANY, LLC, ITS SUCCESSORS AND
ASSIGNS hereby assign and transfer to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW
YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED
CERTIFICATES, SERIES 2005-BC5 (herein "Assignee"), whose address C/O BAC, M/C: CA6 914-01-43,
1800 Tapo Canyon Road, Simi Valley, CA 93063, and its successors and assigns all its right, title, and interest in
and to a certain Mortgage described below.

Beneficiary:              MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
                          NOMINEE FOR DECISION ONE MORTGAGE COMPANY, LLC, ITS
                          SUCCESSORS AND ASSIGNS

Borrower(s):              JERRY D. COTTON AND LISA J. COTTON, HUSBAND AND WIFE
Date of Mortgage:         5/11/2005
Original Loan Amount:     $450,000.00
Recorded in St Joseph County, IN on: 5/18/2005, book N/A, page N/A and instrument number 0521398

Property Legal Description:    Refer to legal description on original mortgage.

I AFFIRM, UNDER THE PENALTIES FOR PERJURY, THAT I HAVE TAKEN REASONABLE CARE
TO REDACT EACH SOCIAL SECURITY NUMBER IN THIS DOCUMENT, UNLESS REQUIRED BY
LAW.

                          MORTGAGE ELECTRONIC REGISTRATION
                          SYSTEMS, INC., AS NOMINEE FOR DECISION ONE
                          MORTGAGE COMPANY, LLC, ITS SUCCESSORS
                          AND ASSIGNS

                          By: _____
                          James A Ellis, Assistant Vice President
                          Date  10-15-15

1528149

Branch :MNA,User :ME09                    Comment:                              Station Id :J4PQ

State of Arizona
County of Maricopa

## NOTARIAL ACKNOWLEDGMENT

On _10-15-2015_, before me, Mary E Jennings, Notary Public, personally appeared James A Ellis, Assistant Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR DECISION ONE MORTGAGE COMPANY, LLC. ITS SUCCESSORS AND ASSIGNS,  whose identity was proven to me on the basis of satisfactory evidence to be the person who his or she claims to be and whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year last written.

_Mary E Jennings_
Notary Public: Mary E. Jennings

**MARY E. JENNINGS**
Notary Public - Arizona
Maricopa County
Expires 06-15-2017

ATTACHED TO ASSIGNMENT OF ~~DEED OF TRUST~~ MORTGAGE

DATED:  October 15, 2015

PAGE 2 OF 2

DocID#    71810885582211830

ST JOSEPH,IN                        Page 2 of 2                  Printed on 8/4/2016 11:21:54 AM
Document: MTG ASN 2015.28159

Branch :MNA, User :ME09                    Comment:                    Station Id :J4FQ





## 1526661

RECORDED AS PRESENTED ON
10/06/2015    11:31:03AM
PHILLIP G. DOTSON
ST. JOSEPH COUNTY
RECORDER
PGS: 2    FEES:    $18.50

## NOTICE OF INTENTION TO HOLD HOMEOWNERS ASSOCIATION
## LIEN

Pursuant to paragraph 24 of the Protective Restrictions, Covenants, Limitations and Easements for Waterford Green at Knollwood, recorded as Instrument Nos. 9322700, 9339833, 9341071, 9400689, and 9410723 of the property records of St. Joseph County, Indiana, the Waterford Green at Knollwood Homeowners' Association, Inc., an Indiana not-for-profit corporation (hereinafter "Lienholder"), hereby gives notice of its intention to hold a lien against certain real property of _____ (hereinafter "Property Owner").

The name and address of the Lienholder are:

Waterford Green at Knollwood Homeowners' Association, Inc.
P.O. Box 565
Granger, Indiana 46530

The name and last address of the Property Owner as shown on the property tax records of St. Joseph County are:

**Jerry & Lisa Cotton**
**15423 Roscommon Lane**
**Granger, IN 46530**

The legal description and street and number of the real property against which the lien is filed are:

**Section I Lot 028** in Waterford Green at Knollwood, the Declaration was recorded on June 17, 1993 as Instrument Number 9322700 in the office of the Recorder of St. Joseph County, Indiana.

15423 Roscommon Lane Granger, IN 46530

The amount owed by the Property Owner to the Lienholder is $315.00, plus interest at the rate of eight percent (8%) per annum accruing since August 1, 2015, and the costs of placing the lien and collection, including attorneys' fees. The amount of $315.00 includes $175.00 for the HOA and $140.00 for the Lake Association Fees.

IN WITNESS WHEREOF, the Lienholder has caused this Notice of Intention to Hold Lien to be duly executed as of the 6 day of October, 2015.
WATERFORD GREEN AT KNOLLWOOD
HOMEOWNERS' ASSOCIATION, INC.

by _____
Janis Kruse - Treasurer

ST JOSEPH CO RECORDER
MAILED T G   10-6-15

1526661

ST JOSEPH,IN                    Page 1 of 2                    Printed on 8/4/2016 11:22:43 AM
Document: LN 2015.26661

Branch :MNA, User :ME09                    Comment:                                    Station Id :J4PQ

## INDIVIDUAL ACKNOWLEDGMENT

State/Commonwealth of _Indiana_

County of _St Joseph_ } ss.

On this the _16th_ day of _October_, _2015_, before me,

_Katherine Meyers_, the undersigned Notary Public,

*Name of Notary Public*

personally appeared _Janis Kruse_

*Name(s) of Signer(s)*

☐ personally known to me – **OR –**

☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same for the purposes therein stated.

WITNESS my hand and official seal.

KATHERINE MEYERS
Notary Public - Seal
State of Indiana
St Joseph County
My Commission Expires Jun 3, 2023

_____
*Signature of Notary Public*

prepared by
Janis Kruse
*Place Notary Seal/Stamp Above*

*I affirm under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law*

_Janis Kruse_

───────────── **OPTIONAL** ─────────────

*This section is required for notarizations performed in Arizona but is optional in other states. Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Notice of Intention to Hold Homeowners Asc. Lien_

Document Date: _10/6/2015_                    Number of Pages: _1_

Signer(s) Other Than Named Above: _N/A_

© 2013 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)  Item #25936

1526661

Branch :MNA,User :ME09                          Comment:                                          Station Id :J4PQ

| | | |
|---|---|---|
| **Form 668 (Y)(c)**<br>(Rev February 2004) | 10194 | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** |

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (800) 829-3903 | Serial Number<br>170754615 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

**Name of Taxpayer** JERRY D & LISA J COTTON

**Residence**        15423 ROSCOMMON LN
                     GRANGER, IN 46530-6280

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2012 | XXX-XX-5453 | 11/18/2013 | 12/18/2023 | 14941.62 |
| 1040 | 12/31/2013 | XXX-XX-5453 | 10/13/2014 | 11/12/2024 | 34150.49 |

| Place of Filing | COUNTY RECORDER<br>ST JOSEPH COUNTY<br>SOUTH BEND, IN 46601 | Total $ | 49092.11 |
|---|---|---|---|

This notice was prepared and signed at    CHICAGO, IL    on this,

the ____07th____ day of ____August____, ____2015____.

| Signature<br>*Cheryl Cordara*<br>for G.J. CARTER-LOUIS | Title<br>ACS SBSE<br>(800) 829-3903 | 24-00-0008 |
|---|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien)
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 1 - Kept By Recording Office**    Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X

Branch :MNA,User :ME09                    Comment:                    Station Id :J4FQ

| Form 668 (Y)(c)<br>(Rev. February 2004) | 1924 | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** |
|---|---|---|

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br>393423407 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

0739379

RECORDED AS PRESENTED ON

10/03/2007  02:45:16PM

TERRI J. RETHLAKE
ST. JOSEPH COUNTY
RECORDER

Name of Taxpayer LISA J COTTON

REC FEE:    $12.00
PAGES:  1

Residence    15423 ROSCOMMON LN
             GRANGER, IN 46530-6280

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 6672 | 12/31/2004 | XXX-XX-1364 | 05/15/2007 | 06/14/2017 | 9206.41 |
| 6672 | 03/31/2005 | XXX-XX-1364 | 05/15/2007 | 06/14/2017 | 25006.16 |
| 6672 | 12/31/2005 | XXX-XX-1364 | 05/15/2007 | 06/14/2017 | 15696.27 |
| 6672 | 03/31/2006 | XXX-XX-1364 | 05/15/2007 | 06/14/2017 | 11916.22 |

| Place of Filing | | |
|---|---|---|
| COUNTY RECORDER<br>ST JOSEPH COUNTY<br>SOUTH BEND, IN 46601 | Total $ | 61825.06 |

This notice was prepared and signed at _____ ST PAUL, MN _____ , on this,

the ___ 24th ___ day of ___ September ___ ___ 2007 ___.

| Signature    *R. A. Mitchell*<br>for MICHEAL SETSER | Title<br>REVENUE OFFICER<br>(574) 232-0354 | 24-09-2013 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

0739379

AR-WAR

State Form, 43533 (1-2001)

**WARRANT FOR COLLECTION OF TAX**
**STATE OF INDIANA**
**DEPARTMENT OF REVENUE**

Warrant Number:        10824217

Warrant Issue Date:    02/08/2016

Warrant Type:          Original

County:          St. Joseph

Notice Number:   16051271162

JERRY D. COTTON

15423 ROSCOMMON LN

GRANGER, IN 46530-6280

Joint/DBA:

Joint: LISA J. COTTON

Taxpayer SSN:    *********

Joint SSN:       *********

Form Number:     IT-40

DLN:

Liability Period:   12/31/2014

Tax Type:        Individual Income

---

TERRI J RETHLAKE

ST. JOSEPH COUNTY CLERK

101 S MAIN ST

SOUTH BEND, IN 46601-1807

---

| FILING DATE | DOCKET | PAGE NBR |
|---|---|---|
| 02/08/2016 | 02016 | 03782 |

---

STATEMENT OF AMOUNT DUE

Interest Calculated Through: 02/08/2016

Daily interest rate:    $0.39

| | |
|---|---|
| Amount Of Tax | $4,801.00 |
| Interest | $117.94 |
| Penalty | $0.00 |
| Collection Fee | $480.10 |
| Clerk Cost | $3.00 |
| | |
| Total to Collect | $5,882.14 |

---

REMITTANCE STATEMENT

---

NON EXECUTION EXPLANATION

---

THIS WARRANT MUST BE RETURNED TO:

INDIANA DEPARTMENT OF REVENUE

COLLECTION DIVISION

P.O BOX 595

INDIANAPOLIS, IN 46206-0595



ST. JOSEPH TITLE CORP.

9329583

PROTECTIVE RESTRICTIONS, COVENANTS
LIMITATIONS AND EASEMENTS
For
WATERFORD GREEN AT KNOLLWOOD, Section 1 (consisting of Lots 1
through 41, 55 through 63, 131 through 136, and 158 through 226,
all inclusive, and recorded on June 17, 1993, as Instrument No.
9322700)

In

St. Joseph County, Indiana

as more particularly described in Exhibit "A" which is attached
hereto and hereby made a part hereof.

All the lots in said Section (hereinafter sometimes referred to as
Waterford Green at Knollwood" or "this subdivision") shall be
subject to and impressed with the covenants, agreements, easements,
restrictions, limitations and charges hereinafter set forth; and
they shall be considered a part of the conveyance of any lot in
said Section without being written therein.  The provisions herein
contained are for the mutual benefit and protection of the owners,
present or future, of any and all lots in said Section; and they
shall run with the land and inure to the benefit of and be
enforceable by the owner, or owners, of any land or lots included
in said Section, their respective legal representatives, heirs,
successors, grantees and assigns. The owner, or owners, present or
future, of any land or lot included in said Section shall be
entitled to injunctive relief against any violation or attempted
violation of the provisions hereof and also damages for any
injuries resulting from any violation hereof; but there shall be no
right of reversion or forfeiture of title resulting from such
violation.   The restrictions and limitations imposed upon said
Section are as follows:

1.    ARCHITECTURAL CONTROL COMMITTEE.   In order to
maintain harmonious structural design, no building for the
principal use of residential dwelling or any other structure may be
erected on any lot, unless and until the plans and specifications
therefor have been approved in writing by the Waterford Green at
Knollwood Architectural Control Committee. There is hereby created
the Waterford Green at Knollwood Architectural Control Committee
which shall consist of three (3) persons appointed by the Adams
Road Development Corp., hereinafter referred to as the "Developer",
or its successors and assigns who shall serve until they are
removed by the Developer or have resigned.  This Committee may
designate any one of its members to act on its behalf.   In the
event of any vacancy on the Committee, the Developer shall appoint
a replacement.  The Committee shall have the authority to approve
all plans and specifications for all structures to be erected in
the subdivision.   No construction of any structure shall be
commenced until the Committee shall have issued its written
approval.  The decision of the Committee shall be entirely within
its discretion.  The authority of the Committee shall expire twenty

(20) years after the date of the recording of this Plat, subject to the provisions of Paragraph 31 hereof.

2.    (a)    LAND AND USE AND BUILDING TYPE.    No dwelling shall be erected, altered, placed or permitted to remain on any lot other than one single-family dwelling not to exceed two and one-half (2-1/2) stories in height and a private garage for not more than three (3) cars; exceptions may be made to this section only if they are unanimously approved in writing by the Architectural Control Committee.

(b)    HOME OCCUPATIONS.    No lot or lots shall be used for any purpose other than as a single-family residence, except that a home occupation, defined as follows, may be permitted: any use conducted entirely within the residence dwelling and participated in solely by a member of the immediate family residing in said residence, which use is clearly incidental and secondary to the use of the dwelling for dwelling purposes and does not change the character thereof and in connection with which there is: a) No sign or display that will indicate from the exterior that the building is being utilized in whole or in part for any purpose other than that of a dwelling; b) No commodity sold upon the premises; c) No person is employed other than a member of the immediate family residing on the premises; and d) No mechanical or electrical equipment is used; provided that, in no event shall a barber shop, styling salon, beauty parlor, tea room, fortune-telling parlor, animal hospital, or any form of animal care or treatment such as dog trimming, be construed as a home occupation.

3.    ARCHITECTURAL CONTROL.    No building or other structure shall be erected, constructed, placed, maintained, or altered on any lot, nor shall the natural topography or drainage of any lot be altered, until the construction plans for the structure or for the topographical alterations have been approved by the Architectural Control Committee. The plans must show floor plan, quality of construction, materials, outside colors to be used, harmony of external design with existing structures and location with respect to lot lines, topography and finish grade elevations. Two (2) sets of complete plans must be submitted. One (1) will be retained in the Developer's Office and one will be returned to the builder. The Committee's approval or disapproval as required in these covenants shall be in writing. No structure of any kind which does not comply fully with such approved plans shall be erected, constructed, placed or maintained upon any lot, and no changes or deviations in or from such plans as approved shall be made without the Committee's prior written consent. Neither the Developer, the Architectural Control Committee, nor any member thereof, nor any of their respective heirs, personal representatives, successors or assigns, shall be liable to anyone by reason of any mistake in judgment, negligence, or nonfeasance arising out of or relating to the approval or disapproval or

failure to approve any plans so submitted, nor shall they, or any of them, be responsible or liable for any structural defects in such plans or in any building or structure erected according to such plans or any drainage problems resulting therefrom. Every person and entity who submits plans to the Architectural Control Committee agrees, by submission of such plans, that he or it will not bring any action or suit against the Committee or the Developer to recover any damages or to require the Committee or the Developer to take, or refrain from taking, any action. Neither the submission of any complete sets of plans to the Developer's office for review by the Architectural Control Committee, nor the approval thereof by that Committee, shall be deemed to guarantee or require the actual construction of the building or structure therein described, and no adjacent lot owner may claim any reliance upon the submission and/or approval of any such plans or the buildings or structures described therein.

4.   DWELLING SIZE.

(a)  GENERAL RESTRICTIONS.  No dwelling shall be permitted on any lot with a living floor area of the main structure, exclusive of one-story open porches and garages, of less than the following number of square feet for the following types of dwellings.  Such minimum square footage will be the following:

| Type of Home | Minimum Square Footage |
|---|---|
| Ranch Style | 2,200 square feet |
| 2 Story | 2,400 square feet |
| 1-1/2 Story, Bi-Level and Tri-Level | 2,500 square feet (permitted only on specified terrain) |

(b)  GARAGES.  All dwellings must have a full-size attached garage which is capable of storing at least two (2) automobiles but not to exceed space for three (3) automobiles.

5.   BUILDING LOCATION.  No building shall be located on any lot nearer to the right-of-way line than the minimum building setback lines as shown on the recorded Plat.  Each building shall be located no nearer than eight (8) feet from any side lot line but shall have a total combined width for the two (2) side yards of not less than twenty (20) feet.  No dwelling shall be located closer than forty (40) feet to any rear lot line.  For the purposes of this covenant, eaves, steps and open porches shall not be considered as a part of the building; provided, however, that this shall not be construed so as to permit any portion of a building on a lot to be located nearer than eight (8) feet from any side lot line or twenty (20) feet from any building on an adjacent lot, whichever distance is greater.

6.   EASEMENTS.  There are strips of ground variable in width, as shown on this Plat, and marked "Easement", reserved for

-3-