**Hearing Date: February 28, 2017 at 11:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO ITS OBJECTION TO AMENDED CLAIM NO 4445 FILED BY ALAN MOSS**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................ 1

II. REPLY ........................................ 3

A. The summary judgment motion is not premature. ........................................ 3

B. All of Mr. Moss' causes of action fail because they were caused by his default rather than ETS's actions. ........................................ 3

C. The evidence does not establish that ETS breached a duty owed to Mr. Moss. ........................................ 6

D. There is no evidence that would support special circumstances necessary to support emotional distress damages stemming from the negligence claim. ........................................ 8

E. Mr. Moss fails to offer any evidence to support his claim for IIED. ........................................ 8

CONCLUSION ........................................ 10

EXHIBITS

Exhibit 1 Amended 7056-1 Statement
Exhibit 2 Supplemental Declaration of Sara Lathrop
Exhibit 3 Declaration of Jordan Wishnew

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Aguinaldo v. Ocwen Loan Serv., LLC,
No. 12-CV-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sep. 4, 2012)....................................9

Becker v. Wells Fargo Bank, N.A.,
No. 2:12-cv-0501-KJM-CKD-PS, 2013 WL 268935 (E.D. Cal. Jan. 23, 2013).......................8

Bergman v. Bank of Am.,
No. C-13-00741-JCS, 2013 WL 5863057 (N.D. Cal. Oct. 23, 2013) ..............................3, 4, 5

Bock v. Hansen,
170 Cal. Rptr. 3d 293 (Cal. Ct. App. 2014)...................................................................9

Dolan v. Bank of Am., N.A.,
No. 14-cv-2921-LAB (WVG), 2015 WL 5692385 (S.D. Cal. Sept. 28, 2015)........................9

Freeman v. King,
Case No. b181091, 2007 WL 1289810 (Cal. Ct. App. May 3, 2007) ..................................5, 6

Friedman v. Merck & Co.,
131 Cal. Rptr. 2d 885 (Cal. Ct. App. 2003)....................................................................6

Kachlon v. Markowitz,
85 Cal. Rptr. 3d 532 (Cal. Ct. App. 2008).......................................................................6

Kerivan v. Title Ins. & Trust Co.,
195 Cal. Rptr. 53 (Cal. Ct. App. 1983)...........................................................................7

Maomanivong v. Nat'l City Mortg. Co.,
No. C-13-05433 DMR, 2014 WL 4623873 (N.D. Cal. Sept. 15, 2014)..................................7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986) .......................................................................................................4

Mehta v. Wells Fargo Bank, N.A.,
737 F. Supp. 2d 1185 (S.D. Cal. 2010) ....................................................................9, 10

Munger v. Moore,
89 Cal. Rptr. 323 (Cal. Ct. App. 1970)...........................................................................7

Perreault v. NDEx West, LLC,
No. SACV 10-00337-CJC, 2011 WL 11682629 (C.D. Cal. Feb. 10, 2011) ............................7

Pintor v. Ong,
259 Cal. Rptr. 577 (Cal. Ct. App. 1989)..........................................................................8

Ragland v. U.S. Bank Nat'l Ass'n,
147 Cal. Rptr. 3d 41 (Cal. Ct. App. 2012)....8, 9

Rowland v. Christian,
443 P.2d 561 (Cal. 1968)....6

Spinks v. Equity Residential Briarwood Apts.,
90 Cal. Rptr. 3d 453 (2009)....8

Terry v. Travelers Indem. Co.,
No. 04-2314-MCE-GGH, 2005 WL 1984482 (E.D. Cal. Aug. 15, 2005)....8

Walton v. Mortg. Elec. Reg. Sys. Inc.,
507 Fed. Appx. 720 (9th Cir. 2013)....5

**OTHER AUTHORITIES**

Transcript of Hearing, In re Residential Capital, LLC, No. 12-12020 (Bankr. S.D.N.Y. Jan. 11, 2017)....3

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] confirmed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply"), together with the Supplemental Declaration of Sara Lathrop, Claims Analyst for the Borrower Trust (the "Supp. Decl."), annexed hereto as Exhibit 2, and Jordan Wishnew, counsel to the Borrower Trust (the "Wishnew Decl."), annexed hereto as Exhibit 3, to the response of claimant Alan Moss ("Mr. Moss") [Docket No. 10299] (the "Response") to the *ResCap Borrower Claims Trust's Motion for Summary Judgment as to its Objection to Amended Claim No. 4445 Filed by Alan Moss* [Docket No. 10290] (the "Motion"). In further support of the Motion, the Borrower Trust respectfully represents as follows:

## I. PRELIMINARY STATEMENT

1. Through the Motion, the Borrower Trust demonstrates that there is no genuine issue as to any material fact, and that based on the uncontroverted evidence, the Claim should be disallowed and expunged as a matter of law. In the Response, Mr. Moss failed to raise any genuine issue of fact. As a result, the Court should grant the Motion and disallow and expunge the Claim.

2. The Debtors' alleged liability to Moss derives from an alleged improper substitution of trustee. That is, while ETS was appointed substitute trustee on September 21, 2006 by TCIF, the loan itself was transferred to TCIF after that date, on June 15, 2007.[2] Mr. Moss asserts that ETS's failure to examine the chain of title and discern this timing discrepancy

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.
[2] A comprehensive review of the facts is set forth in the ResCap Borrower Claims Trust's 7056-1 Statement, attached to the Motion as Exhibit 1. An amended 7056-1 Statement is attached hereto as Exhibit 1.

violated a duty ETS purportedly owed to Mr. Moss, and also constituted fraud and intentional infliction of emotional distress (IIED).

3. All of these claims fail for the simple reason that ETS's action or inaction with regard to the chain of title was not the cause of the Foreclosure Proceeding because Mr. Moss was in default at the time it occurred. The uncontroverted evidence provides that Mr. Moss was more than a year behind on his payments at the time of the foreclosure sale. See Lathrop Decl. ¶¶ 5-8. As a result, the owner of the Loan had every right to proceed with foreclosure under the terms of the Deed of Trust, and would have done so even if ETS or another entity had been properly appointed as substitute trustee. Thus, under California law, since Mr. Moss' failure to fulfill his contractual obligations was the precipitating factor for foreclosure, Mr. Moss has not asserted a valid claim against ETS arising from its actions.

4. In addition, Mr. Moss cannot establish a negligence claim because ETS did not owe him a duty to investigate the chain of title prior to initiating the Foreclosure Proceeding. Further, California does not permit emotional distress damages stemming purely from injury to property to support a negligence claim.

5. Finally, Mr. Moss proffers no persuasive authority to substantiate his argument that the Foreclosure Proceeding, which the owner of the Loan was entitled to pursue, qualifies as "outrageous conduct" under California law. Thus, his IIED claim also fails.

6. Based on the uncontroverted evidence provided by the Borrower Trust and the absence of disputed material facts proffered by Mr. Moss, the Court should grant the Motion for the reasons set forth therein.

## II. REPLY

### A. The summary judgment motion is not premature.

7. In the Response, Mr. Moss asserts that the Motion is premature because the Court has not re-examined its prior decision. See Response at 2-3. Confusingly, Mr. Moss also asserts, without any support, that if the Bankruptcy Court finds that ETS acted with malice, the District Court's order would require that the Objection be denied. Id. at 3. However, the issues raised in the Motion are entirely separate from the issues addressed by the Court in its prior decision, as the Motion does not rely on any sort of privilege by ETS and the arguments do not depend on whether ETS acted with malice. See Transcript of Hearing at 8, In re Residential Capital, LLC, No. 12-12020 (Bankr. S.D.N.Y. Jan. 11, 2017). As such, this Motion is ripe for adjudication and the Court does not need to re-examine the prior decision.

### B. All of Mr. Moss' causes of action fail because they were caused by his default rather than ETS's actions.

8. California law is clear that a borrower is not harmed by "mere irregularities" in a foreclosure process where the borrower was in default under the terms of the loan and therefore would have been foreclosed on even if the irregularities had not occurred. See Bergman v. Bank of Am., No. C-13-00741-JCS, 2013 WL 5863057, at *21 (N.D. Cal. Oct. 23, 2013). For example, the plaintiffs in Bergman asserted damages because they were ousted from their home through the foreclosure process, lost their equity in the home, and were forced to retain counsel to challenge the foreclosure. Bergman, 2013 WL 5863057, at *23. The court found that Mr. and Mrs. Bergman were not prejudiced by the foreclosure, notwithstanding the allegation that the successor trustee did not have authority to conduct the sale. The court characterized the substitute trustee's alleged lack of authority as a "mere irregularity" in the process, which did not ultimately harm the plaintiffs who would have been subjected to

foreclosure regardless of that irregularity because they were in default under the terms of their loan. Bergman, 2013 WL 5863057, at *21.[3]

9. Here, there is no genuine dispute that Mr. Moss was in default at the time of the foreclosure sale. The Debtors' servicing notes reflect that when ETS recorded the 2007 Notice of Default on September 17, 2007, Mr. Moss was owing for the July 1, 2007 payment. See Servicing Notes at 5 of 131, attached as Exhibit I to the 7056 Statement; see also Lathrop Decl. ¶ 5.[4] Further, when ETS conducted the Foreclosure Proceeding on May 7, 2009, the Loan was in default and owing for the January 1, 2008 payment. See Servicing Notes at 4 of 131; see also Lathrop Decl. ¶ 7.

10. While Mr. Moss asserts that he was not in default at the time of the Foreclosure Proceeding, he fails to provide any evidence in support of this contention, which is contradicted by the evidence introduced by the Borrower Trust.[5] See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (the non-movant needs to demonstrate more than "some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a *genuine issue for trial*." (citation omitted)). Mr. Moss also asserts that the foreclosure sale was conducted "after claimant and ResCap entered into an agreement, complied with by claimant, that took the matter out of default." Response at 17. Again, Mr. Moss provides no evidence for this statement, which is also contradicted by the Servicing Notes.[6]

---

[3] Compared with the Bergmans, Mr. Moss has fared better—the Notices have been rescinded and Mr. Moss has retained title to his property. See Creditor Alan Moss' Amended Responses to Requests for Admissions from Debtor ResCap, responses 64 and 65, attached to the Wishnew Decl. as Exhibit A (the "RFA Responses").

[4] Mr. Moss asserts that the Borrower Trust has not provided documents from ETS. See Response at 1. The Borrower Trust provided Mr. Moss with all of the documents in its possession related to the Loan, which came from the Debtors' books and records. Such documents were maintained by GMACM. As servicer, GMACM provided ETS the information needed to perform its duties as substitute trustee. See Supp. Decl. ¶ 4.

[5] Mr. Moss provided no documents or statements in response to the Borrower Trust's discovery requests that would support his contention that he was not in default at the time of the Foreclosure Proceeding.

[6] On June 11, 2008, two days before the scheduled trustee's sale, Mr. Moss contacted GMACM to request a loan modification. GMACM's servicing notes reflect that during this call GMACM offered Mr. Moss a six-month

11. Since Mr. Moss was over a year behind on his loan payments at the time of the Foreclosure Proceeding, the owner of the Loan had every right to commence foreclosure. As stated in the Motion, the Foreclosure Sale would have gone forward even if ETS had undertaken a review of the chain of title, because Mr. Moss was in default. As such, just like in Bergman, Mr. Moss cannot blame the foreclosure on the fact that ETS, rather than a different entity that was properly appointed, conducted the proceedings.

12. Mr. Moss attempts to avoid the clear holding of Bergman by arguing that it only applies where a substitute trustee could not have discovered its lack of authority. However, nothing in Bergman supports this statement, and the holding in Bergman applies not just to the substitute trustee, but also to the owner of the loan. See Bergman, 2013 WL 5863057, at *5 (noting that the wrongful foreclosure claim is brought against both the owner of the loan and the substitute trustee).

13. Similarly, in Walton v. Mortg. Elec. Reg. Sys. Inc. (which Mr. Moss fails to distinguish), the court rejected the plaintiff's claim for negligence stemming from alleged lack of authority to foreclose. 507 Fed. Appx. 720, 721 (9th Cir. 2013) ("[Plaintiff] cannot prevail on her negligence claim because even if Appellees kept inaccurate records, she admits that she fell behind on her payments and has not alleged that she could have avoided the default.") Likewise, in Freeman v. King, the court held that attorney's fees that a plaintiff

---

foreclosure repayment agreement consisting of a $50,000 down payment and six monthly payments of $6,740.78 (the "Repayment Agreement"). Mr. Moss accepted this and paid the $50,000. The sale set for June 13, 2008 was postponed. On June 13, 2008 GMACM mailed a copy of the foreclosure repayment agreement to Mr. Moss. Mr. Moss did not make the next payment which was due on July 12, 2008 in the amount of $6,740.78. Foreclosure was recommenced on July 18, 2008. On August 21, 2008 GMACM received a personal check from Mr. Moss in the amount of $6,000. The check was returned to Mr. Moss as it was less the amount owed under the foreclosure repayment agreement and untimely. See Supp. Decl. at ¶ 5. Further, Mr. Moss himself has essentially admitted that he has nothing to support this statement, as he stated that he lacks sufficient information to admit or deny various requests for admission propounded by the Borrower Trust relating to any payments he made under the Repayment Agreement. See RFA Responses, Responses 55-58.

.

incurred defending a foreclosure that was improperly noticed were caused by the borrower's default, not the improper notice. Case No. b181091, 2007 WL 1289810, at *6 (Cal. Ct. App. May 3, 2007). Unable to refute this clear point of law, Mr. Moss resorts to asking this Court not to rely on Freeman because it was not published. See Response at 19. However, there is no local court rule that restricts the citation of an unpublished opinion.

**C. The evidence does not establish that ETS breached a duty owed to Mr. Moss.**

14. Mr. Moss has never established that ETS owed him a duty to examine the chain of title prior to initiating the Foreclosure Proceeding.

15. ETS's duties as a substitute trustee are circumscribed by statute: "The scope and nature of the trustee's duties are **exclusively defined by the deed of trust and the governing statutes. No other common law duties exist**." Kachlon v. Markowitz, 85 Cal. Rptr. 3d 532, 546 (Cal. Ct. App. 2008) (emphasis added). Mr. Moss asserts that ETS violated California Civil Code § 2924. See Response at 14. The duties required by Section 2924 "are twofold: (1) to 'reconvey' the deed of trust to the trustor upon satisfaction of the debt owed to the beneficiary, resulting in a release of the lien created by the deed of trust, or (2) to initiate nonjudicial foreclosure on the property upon the trustor's default, resulting in a sale of the property." See Kachlon v. Markowitz, 85 Cal. Rptr. 3d at 546. Although Mr. Moss asks the Court to read into Cal. Civ. Code § 2924 an implied duty to investigate chain of title relating to a substitute trustee's appointment, no such duty exists.

16. Instead of addressing this clear point of law, Mr. Moss peppers the Response with irrelevant cases addressing profoundly distinguishable facts.[7] The only cases he

[7] See e.g. Friedman v. Merck & Co., 131 Cal. Rptr. 2d 885 (Cal. Ct. App. 2003) (examining duty to warn of animal byproducts in tuberculous test where plaintiff was strict ethical vegan and asserted injuries from exposure to animal byproduct in test); Rowland v. Christian, 443 P.2d 561 (Cal. 1968) (examining duty of host to warn social guest of defects in bathroom fixtures).

cites that address the duties of a trustee involve the trustee's failure to perform duties that are explicitly identified in relevant statutes. See Munger v. Moore, 89 Cal. Rptr. 323 (Cal. Ct. App. 1970) (involving Civil Code § 2924c, which requires a trustee to accept a tender that would cure a default liability); Kerivan v. Title Ins. & Trust Co., 195 Cal. Rptr. 53 (Cal. Ct. App. 1983) (holding that liability can be imposed on a trustee that violates California's statute explicitly requiring cancellation of a note after a foreclosure sale); Perreault v. NDEx West, LLC, No. SACV 10-00337-CJC (RNBx), 2011 WL 11682629 (C.D. Cal. Feb. 10, 2011) (holding liability can be imposed for failure to distribute foreclosure proceeds as required by statute). However, Mr. Moss has not offered a single case or statute that states a substitute trustee has a duty to launch an investigation into whether it was properly appointed as substitute trustee.

17. With respect to negligence *per se*, Mr. Moss fails to rebut the Borrower Trust's legal authority holding that violations of Civil Code sections 2924 cannot give rise to a claim for negligence *per se*. See Maomanivong v. Nat'l City Mortg. Co., No. C-13-05433 DMR, 2014 WL 4623873, at *16 (N.D. Cal. Sept. 15, 2014) (refusing to allow violations of sections 2924(a) to serve as basis for negligence per se claim because "permitting negligence liability [for such violations] would expand the scope of the remedies the California legislature contemplated for a violation of those statutes.")

18. In sum, in addition to failing to demonstrate any prejudice resulting from ETS's actions, Mr. Moss has failed to show that ETS owed him a duty to investigate the authority of TCIF to appoint ETS as substitute trustee. As a result, Mr. Moss' claim for negligence fails.

**D. There is no evidence that would support special circumstances necessary to support emotional distress damages stemming from the negligence claim.**

19. California law is also clear that unintentional tort claims such as negligence, cannot support recovery for emotional distress arising from injury to property, absent special circumstances. Terry v. Travelers Indem. Co., No. 04-2314-MCE-GGH, 2005 WL 1984482, at *2 (E.D. Cal. Aug. 15, 2005). Mr. Moss does not cite a case that rebuts this point. For example, Mr. Moss cites to Pintor v. Ong, 259 Cal. Rptr. 577 (Cal. Ct. App. 1989), which does not even involve a negligence claim. Similarly, in Spinks v. Equity Residential Briarwood Apts., 90 Cal. Rptr. 3d 453 (2009), another case cited by Mr. Moss, the court did not address whether alleged emotional distress arising from an eviction could support a negligence claim.

20. In contrast, numerous courts have held that a foreclosure action cannot support a negligence claim for emotional distress. See Ragland v. U.S. Bank Nat'l Ass'n, 147 Cal. Rptr. 3d 41, 61 (Cal. Ct. App. 2012) (finding that Plaintiff's negligent infliction of emotional distress claim premised on a wrongful foreclosure failed "because Defendants' conduct resulted only in injury to property."); Becker v. Wells Fargo Bank, N.A., No. 2:12-cv-0501-KJM-CKD-PS, 2013 WL 268935, at *5 (E.D. Cal. Jan. 23, 2013) (holding that a negligent infliction of emotional distress claim stemming from an improper notice of default failed because "emotional distress damages cannot be awarded for solely financial loss.")

**E. Mr. Moss fails to offer any evidence to support his claim for IIED.**

21. Finally, Mr. Moss fails to support his claim for IIED. Again, in order to support such a claim, Mr. Moss must demonstrate that ETS engaged in "extreme and outrageous conduct…with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress [to the plaintiff]…" See Bock v. Hansen, 170 Cal. Rptr. 3d 293, 306 (Cal. Ct. App. 2014).

22. Mr. Moss failed to rebut the Borrower Trust's authority that foreclosing on a property after a borrower's default does not amount to "outrageous conduct," absent special circumstances (such as coercing the borrower to default or refusing to accept payment to bring a loan current). See e.g. Aguinaldo v. Ocwen Loan Serv., LLC, No. 12-CV-01393-EJD, 2012 WL 3835080, at *7 (N.D. Cal. Sep. 4, 2012) ("[A]s a matter of law . . . foreclosing on property does not amount to the 'outrageous conduct' required to support a claim for intentional infliction of emotional distress."); see also Dolan v. Bank of Am., N.A., No. 14-cv-2921-LAB (WVG), 2015 WL 5692385, at *6 (S.D. Cal. Sept. 28, 2015) (dismissing an intentional infliction claim because "there's nothing outrageous about foreclosing after a borrower defaults."); Ragland, 147 Cal. Rptr. 3d at 60 (holding that a claim for IIED could survive where the defendant induced a borrower to skip her loan payment and later refused to accept her loan payment). Mr. Moss has proffered no case, and the Borrower Trust is aware of none, that would suggest that a foreclosure initiated due to a borrower's default, where the default that was not caused by a third-party, is outrageous conduct.

23. Instead of providing a case to rebut those cited by the Borrower Trust, Mr. Moss tries to distinguish the Borrower Trust's legal authority by arguing they involved "conditional promises." See Response at 24. It is unclear why the existence of a "conditional promise" is relevant to the issue, as the discussions of the claim in the two cases Mr. Moss references do not mention conditional promises. In fact, Mehta v. Wells Fargo Bank, N.A. did not involve a conditional promise at all, as the court was very clear that an alleged promise by the servicer that the foreclosure would not occur was **not** conditioned on any action by the borrower. 737 F. Supp. 2d 1185, 1198 (S.D. Cal. 2010) ("Nor is there any indication that [defendant's promise] was conditional on any future action by Plaintiff." (citation omitted)). The

court went on to reject plaintiff's IIED claim, holding "Plaintiff was in default on his loan, Wells Fargo had the legal right to foreclose…[t]he fact that one of Defendant Wells Fargo's employees allegedly stated that the sale would not occur but the house was sold anyway is not outrageous as that word is used in this context." Id. at 1204 (citation omitted).

24. Mr. Moss is unable to factually distinguish the remaining cases cited by the Borrower Trust, instead arguing that their legal holdings should be ignored because the courts permitted the plaintiffs in those cases to amend their complaints.[8] As a result, Mr. Moss cannot assert a cause of action for IIED.

## CONCLUSION

25. WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Motion should be granted and the Claim disallowed and expunged in its entirety.

Dated: February 13, 2017
New York, New York

/s/ Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
*Counsel for the ResCap Borrower Claims Trust*

[8] The Court provided Mr. Moss with the opportunity to amend the Claim, which Mr. Moss did on March 16, 2015. See Amended Claim Pursuant to Court Order Dated February 13, 2015 Filed by Alan Moss [Docket No. 8334].