# Exhibit 2

**Supplemental Declaration of Sara Lathrop**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**SUPPLEMENTAL DECLARATION OF SARA LATHROP IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO ITS OBJECTION TO AMENDED CLAIM NO. 4445 FILED BY ALAN MOSS**

I, Sara Lathrop, hereby declare as follows:

1. I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I began my association with ResCap in June 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("GMACM"). In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I oversaw GMACM associates in their efforts to provide borrowers with loss mitigation options and

ny-1271743

assisted in the development of GMACM's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued in this role when the ResCap Liquidating Trust (the "Liquidating Trust") was established in December 2013. In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Reply in Support of its Motion for Summary Judgment as to Its Objection to Amended Claim No. 4445 Filed by Alan Moss* (the "Motion").[2]

2.   Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3.   In my capacity as Senior Claims Analyst, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases with regard to Borrower Claims. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records that were prepared and kept in the course of their regularly

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Motion.

2

ny-1271743

conducted business activities (the "Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or my designee at my direction have reviewed and analyzed the proof of claim form and supporting documentation filed by Mr. Moss. Since the Plan became effective and the Borrower Trust was established, I, along with members of the Liquidating Trust's management or employees of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, and the Liquidating Trust's and the Borrower Trust's professional advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Debtors' books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases.

      4.      Many of the documents provided to Mr. Moss in response to his document requests were maintained by GMACM. As servicer, GMACM provided ETS the information needed to perform its duties as substitute trustee.

      5.      In the Response, Mr. Moss asserts that ETS foreclosed despite a written agreement to cancel the scheduled foreclosure sale. The Servicing Notes do not support this allegation. On June 11, 2008, two days before the scheduled trustee's sale, Mr. Moss contacted GMACM to request a loan modification. See Servicing Notes at 51-52 of 131. GMACM's servicing notes reflect that during this call GMACM offered Mr. Moss a six-month foreclosure repayment agreement consisting of a $50,000 down payment and six monthly payments of

3

$6,740.78 (the "Repayment Agreement").  See id.  Mr. Moss accepted this and paid the $50,000. The sale set for June 13, 2008 was postponed.  See id at 53 of 131.  On June 13, 2008 GMACM mailed a copy of the foreclosure repayment agreement to Mr. Moss.  See id at 54 of 131.  Mr. Moss did not make the next payment which was due on July 12, 2008 in the amount of $6,740.78.  See id at 56 of 131.  Foreclosure was recommenced on July 18, 2008.  See id.  On August 21, 2008 GMACM received a personal check from Mr. Moss in the amount of $6,000. See id.  The check was returned to Mr. Moss as it was less the amount owed under the foreclosure repayment agreement and untimely.  See id.

6. In my previous declaration, I stated that no eviction proceedings were commenced against Mr. Moss.  I was mistaken in that statement.  After the prior statement was made, I discovered entries in the Servicing Notes that indicate eviction proceedings were commenced against Mr. Moss in May of 2009.  See Servicing Notes at 39 of 131.  These proceedings were commenced by GMACM, not ETS.  There is nothing in the Servicing Notes to suggest the eviction was ever completed, or that Mr. Moss was ever displaced from his home.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 13, 2017

                                                /s/ Sara Lathrop
                                                Sara Lathrop
                                                Senior Claims Analyst for ResCap
                                                Borrower Claims Trust

ny-1271743