1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9          Debtors.

10  - - - - - - - - - - - - - - - - - - - -x

11

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, New York

15

16              February 28, 2017

17              11:12 AM

18

19

20

21

22  B E F O R E:

23  HON. MARTIN GLENN

24  U.S. BANKRUPTCY JUDGE

25

1

2   (CC: Doc# 10273) Case Management Conference in connection with

3   the Claim(s) of Alan Moss.

4

5   (CC: Doc. no. 10290, 10299, 10300, 10301, 10307) Motion for

6   Summary Judgment as to Objection Filed by the ResCap Borrower

7   Claims Trust to Amended Claim No. 4445 Filed by Alan Moss.

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24   (973)406-2250

25   operations@escribers.net

1

2  A P P E A R A N C E S:

3  MORRISON & FOERSTER LLP

4          Attorneys for ResCap Borrower Claims Trust

5          250 West 55th Street

6          New York, NY 10019

7

8  BY:    JORDAN A. WISHNEW, ESQ.

9          JESSICA J. ARETT, ESQ.

10         NORMAN S. ROSENBAUM, ESQ.

11

12

13  ALAN I. MOSS

14         Pro Se (TELEPHONICALLY)

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           THE COURT:  All right.  Please be seated.  Okay, we're

3   here in Residential Capital, 12-12020.  May I have the

4   appearances, please?

5           MS. ARETT:  Good morning, Your Honor.  Jessica Arett

6   on behalf of the ResCap Borrower Claims Trust.

7           THE COURT:  Thank you very much.

8           Mr. Moss?

9           MR. MOSS:  Alan Moss, in pro per.

10          THE COURT:  All right.  We're here on the Trust's

11  motion for summary judgment with respect to its objection to

12  amended claim 4445 filed by Alan Moss.

13          Ms. Arett, go ahead.

14          MS. ARETT:  Thank you, Your Honor.

15          So as you said, the only matter on today's agenda is

16  our motion for summary judgment.  It was filed at docket number

17  10290.  Mr. Moss filed a response on February 7th at 10299.

18  And the Borrower Trust filed its reply on February 13th at

19  docket number 10307.

20          And in support of our motion, the Borrower Trust

21  submitted two declarations by Sara Lathrop, senior claims

22  analyst for the Borrower Trust, as exhibit to the Borrower

23  Trust's statement of material facts, docket number 10290-1; and

24  as Exhibit 2 to the reply, again docket number 10307.  Ms.

25  Lathrop is on the phone today and is available to answer any

1  questions that the Court may have for her.

2         The Borrower Trust asserts for the reasons set forth

3  in the motion and the reply that Mr. Moss has failed to

4  establish the existence of any material facts to substantiate

5  any liability of the debtors related to the actions of

6  Executive Trustee Services as substitute trustee.

7         Moreover, for the reasons set forth in our papers, the

8  Court can and should grant the motion as a matter of law,

9  because the law in California is clear that Mr. Moss is not

10 entitled to claims for negligence, fraud, or intentional

11 infliction of emotional distress.

12        I'm not going to repeat every argument in our

13 pleadings, but I would like to briefly highlight a few of the

14 major points.

15        THE COURT:  May I ask you this question?

16        MS. ARETT:  Yes.

17        THE COURT:  Do you agree that for purposes of

18 considering this summary judgment motion, I should assume that

19 ETS acted with malice in connection with its conduct that gives

20 rise to the claim?

21        MS. ARETT:  I think I know where you're getting at.  I

22 mean, obviously we don't --

23        THE COURT:  Well, obviously --

24        MS. ARETT:  -- admit that there was malice.  But

25 you're saying --

1          THE COURT:  I know.

2          MS. ARETT:  -- for purposes of this?

3          THE COURT:  Yes, because --

4          MS. ARETT:  Yes.

5          THE COURT:  -- so the brief history is I had

6    expunged -- wrote an opinion expunging the claim.  Mr. Moss

7    appealed.  The district court reversed and remanded -- I won't

8    go through the entire opinion -- but essentially because it

9    concluded that the documents that were before the Court when I

10   expunged the claim could be construed as raising a question of

11   fact about malice.

12         And your motion now, your summary judgment motion, is

13   principally predicated on a causation argument.

14         MS. ARETT:  Correct, yes.

15         THE COURT:  And so for purposes of evaluating the

16   motion, based on the district court's remand, I should conclude

17   that there's a factual dispute about malice.  Is that fair?

18         MS. ARETT:  Yes, that's fair.  I would say that our

19   motion -- whether or not the Court were to find that ETS acted

20   with malice, does not affect the arguments that are in our

21   motion.

22         THE COURT:  All right.

23         MS. ARETT:  So Mr. Moss' claim is premised on damages

24   that were allegedly caused by ETS's initiation of the

25   foreclosure proceedings, as Your Honor is well aware.

1          THE COURT:  What do you understand Mr. Moss' damages

2     to be comprised of?

3          MS. ARETT:  From my understanding of what Mr. Moss has

4     provided to us, his damages are emotional distress and

5     attorneys' fees and costs associated with -- that he says arise

6     as a result of the foreclosure proceeding.

7          THE COURT:  Was Mr. Moss represented by an attorney

8     other than himself in the foreclosure proceedings?

9          MS. ARETT:  That is a question that you'll have to ask

10    Mr. Moss, because he has not provided the Trust with any

11    evidence of any invoices or anything from attorneys.

12         THE COURT:  Okay.

13         MS. ARETT:  So I'm not sure.

14         THE COURT:  Well, let me ask you this question

15    hypothetically.  If Mr. Moss was represented by an attorney

16    other than himself, and incurred legal fees in defending

17    against the foreclosure, could such legal fees be compensable

18    as damages on the claims he's asserted?

19         MS. ARETT:  Well, I think based on the case law in

20    California, that those fees would not have been caused by the

21    actions of ETS, and so therefore would not be compensable as

22    damages.  But maybe I'm misunderstanding Your Honor's question.

23         THE COURT:  No, I don't think so.  I mean --

24         MS. ARETT:  Okay.

25         THE COURT:  -- ETS went forward with nonjudicial

1    foreclosure.

2            MS. ARETT:  Correct.

3            THE COURT:  There was litigation that ensued.  Indeed,

4    there was a foreclosure, but it was reversed.  All right.

5            And so if Mr. -- really my question is if -- I think

6    in your papers, for purposes of this motion, you acknowledge

7    that ETS did not have the authority to proceed with nonjudicial

8    foreclosure, because they hadn't gotten the proper assignment.

9    Right?  You agree with that for these purposes?

10           MS. ARETT:  Correct.  The entity that was -- that

11   substituted ETS at the time that the substitution was made, did

12   not have authority to make that --

13           THE COURT:  All right.

14           MS. ARETT:  -- substitution.

15           THE COURT:  So why -- if Mr. Moss was represented by

16   counsel who charged him for representing him, why would -- and

17   I mean, he was ultimately successful in the sense that the

18   foreclosure was reversed, why wouldn't Mr. Moss' attorneys'

19   fees have been caused by ETS's alleged wrongful conduct,

20   sufficient to enable him to assert his claim for that as

21   damages?

22           MS. ARETT:  I think because Mr. Moss -- there's no

23   dispute, or at least we assert that there's no dispute, that at

24   the time of the foreclosure, Mr. Moss was in default.  And

25   so --

1         THE COURT:  Absolute -- well, he disputes it.  He

2    denies it, but he hasn't put in any evidence to support it.

3         MS. ARETT:  Correct.

4         THE COURT:  He has a simple bald denial.  You had put

5    in evidence on summary judgment that you argue the Court should

6    conclude -- establish as an undisputed fact that Moss was in

7    default.

8         MS. ARETT:  Right.  And so case law in California is

9    clear that when there's a default, if there's some sort of

10   irregularities -- I think the Bergman case is pretty on point

11   here -- that mere irregularities in the process when there's a

12   default -- so let's say that ETS had been properly substituted,

13   the foreclosure would have gone forward anyway.  And --

14        THE COURT:  Correct; but it wasn't properly

15   substituted.  So --

16        MS. ARETT:  Right.  Right, but I'm saying like but

17   for -- had there been no wrongful conduct and ETS had been

18   properly substituted.

19        THE COURT:  But it wasn't.  I mean, your argument

20   would seem to lead to the conclusion that all bets are off.  If

21   somebody's in default, the servicer or the trustee can do

22   anything, and nothing is actionable because the foreclosure is

23   caused by the borrower's default.

24        MS. ARETT:  I think that that's what the Bergman case

25   actually says.

1        THE COURT:  I'm not sure I would read it quite that

2    broadly.

3        MS. ARETT:  Yeah.  And I mean, in this case, you

4    could -- there is an action, in that you can rescind the

5    foreclosure, and Mr. Moss would be entitled to his house back.

6        THE COURT:  Well, but if he -- if the foreclosure was

7    wrongful in that ETS went ahead with nonjudicial foreclosure at

8    a time that it was not properly authorized to do so, and Mr.

9    Moss incurred fees to achieve the result unwinding it, I don't

10   understand why that wouldn't be -- do you have a case that says

11   that wouldn't be a compens -- that wouldn't be compensable

12   damages?

13       MS. ARETT:  Well, I think -- I think that the Bergman

14   case actually says that.

15       THE COURT:  All right.

16       MS. ARETT:  I mean, in that case, the court says that

17   there were allegations that Bank of America acted with malice,

18   but that all of the attorneys' fees that they incurred, the

19   loss of their house, that wasn't prejudice, because the

20   borrowers were in default at the time.

21       THE COURT:  Okay.  All right, go ahead.  Go ahead.

22       MS. ARETT:  Oh, okay.  So I guess we covered the

23   causation argument.  There were a few other points.  So Mr.

24   Moss' negligence claim fails for the additional reasons that he

25   has not alleged that ETS owed him a duty to investigate the

1  chain of title.  And additionally, case law in California is
2  also clear that emotional distress damages aren't available for
3  a negligence claim when the loss is purely a loss to property.
4  Which is the case law --

5        THE COURT:  What's required for -- in order for -- and
6  I guess one could read Mr. Moss' claim as asserting both
7  negligent infliction of emotional distress and intentional
8  infliction of emotional distress.  What's required in order to
9  recover for negligent infliction of emotional distress under
10 California law?  Does there have to be some physical threat or
11 injury before you can recover for infliction of emotional
12 distress?

13       MS. ARETT:  There are certain cases that say that.
14 Additionally, it's clear that when it's purely economic harm in
15 the form of loss to property, that isn't sufficient for
16 negligent infliction of emotional distress.

17       THE COURT:  That's why -- and I understand your
18 position about that.

19       MS. ARETT:  Yes.

20       THE COURT:  And so what I'm trying to ask about is,
21 what beyond economic loss is required in California to recover
22 for either negligent or intentional infliction of emotional
23 distress?

24       MS. ARETT:  Well, for intentional infliction of
25 emotional distress, you need to be able to show that there was

1    some form of outrageous conduct.

2              THE COURT:  And you've got cases that say foreclosure

3    is not --

4              MS. ARETT:  Correct.

5              THE COURT:  -- does not satisfy the outrageous

6    conduct?

7              MS. ARETT:  Correct; correct.  And so for negligent

8    infliction -- I guess, I don't have a case that specifically

9    says what needs to be --

10             THE COURT:  Okay.

11             MS. ARETT:  -- had.  It's just I have cases that say

12   what doesn't qualify.  And in this case, what has been alleged

13   does not qualify.

14             THE COURT:  All right.  Go ahead.

15             MS. ARETT:  I believe that Your Honor has now covered

16   all of our arguments, so I will merely close with the facts

17   establish that the claimant hasn't met his burden of showing

18   that the debtors are liable for negligence, fraud, or

19   intentional infliction of emotional distress, and his claim

20   against the debtors' estates should be disallowed and expunged

21   in its entirety.

22             THE COURT:  May I ask you this?  The Bergman case is a

23   federal district court case from the Northern District of

24   California.

25             MS. ARETT:  Um-hum.

1        THE COURT:  Correct?  Are there any state court

2   cases -- because this is an issue of California law.  And when

3   I have to determine California law, in the absence of a binding

4   California Supreme Court case, I believe I'm instructed to

5   predict what the California Supreme Court would decide if faced

6   with the issue.

7        In doing so, I can look at the intermediate California

8   appellate court cases, I can certainly consider the district

9   court -- California Northern District case, but it's certainly

10  not binding.  And so on the issues that Bergman addresses, are

11  there any other cases that you believe support -- federal or

12  state -- that support the propositions that you rely on Bergman

13  for?

14        MS. ARETT:  So there were two other cases that we

15  cited in our papers:  Freeman v. King, which is a California

16  Court of Appeals case --

17        THE COURT:  Um-hum.

18        MS. ARETT:  -- and in that case the allegations were

19  that there wasn't sufficient notice of the foreclosure sale.

20  And the court found that that was insufficient, because again,

21  the borrower was in default at the time.

22        And then there was also Walton v. Mortgage Electronic

23  Registration Systems Inc., which was a Ninth Circuit case from

24  2013, which again, isn't a state court case, but -- and in that

25  case the facts were a little unclear, but the court did find

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1    that allegations that the records were inaccurate was

2    insufficient because the claimant had fallen behind on her

3    payments and had not alleged that she could have avoided

4    default.

5              THE COURT:  It's an unpublished opinion, but it's at

6    507 F. App'x 720, 721 (9th Cir. 2013).  And the quote you have

7    is:  "Plaintiff cannot prevail on her negligence claim because

8    even if appellees kept inaccurate records, she admits that she

9    fell behind on her payments and has not alleged that she could

10   have avoided the default."  That's what you're relying on

11   from --

12             MS. ARETT:  Yes, correct.

13             THE COURT:  -- from Walton?

14             MS. ARETT:  Yes.

15             THE COURT:  Okay.  All right, anything else you want

16   to argue now?

17             MS. ARETT:  Not at this time.

18             THE COURT:  Okay.  All right.

19             Mr. Moss, go ahead.  Mr. Moss, are you there?

20             MR. MOSS:  Oh, I'm sorry.  Yeah, I'm here.  Thank you.

21             THE COURT:  It's your turn.

22             MR. MOSS:  Yeah.  I respectfully dispute what Ms.

23   Arett has just argued on several bases.  And I think this

24   analysis of my claim is not nearly so simple a claim as the

25   Bergman case answers X, Y, or Z.

1           The Bergman case says many things, amongst them

2     that -- and I'm quoting:  "California courts have generally

3     been consistent with this approach allowing claims to go

4     forward so plaintiffs can properly allege that the wrong party

5     foreclosed as to the basis for the wrongful foreclosure claim."

6           The Bergman case also said and held as to the charges

7     against the trustee in that case, that -- and this is a

8     12(b)(6) case, Bergman, it's just a pleading case -- held that

9     in that case, the trustee -- the claim against the trustee

10    failed because it could not allege that the trustee could have

11    discovered that it did not have the authority to go ahead with

12    the foreclosure.  That is absolutely not the case here, as the

13    Court has already alluded to today.  The ResCap has already

14    admitted that it did not have the authority --

15           THE COURT:  Well, it admits that based on the benefit

16    of hindsight and discovery that it now agrees that -- at least

17    for purposes of this motion -- that there was not a valid

18    assignment.  I don't think they agreed to anything beyond that,

19    Mr. Moss.  I think you carry it much further than the record

20    supports.

21           Go ahead, Mr. Moss.

22           MR. MOSS:  Well, they agree that there's no -- they

23    had no -- ETS had no authority.  They agree that they have no

24    record or proof that ResCap or its predecessor ever instructed

25    ETS to initiate foreclosure proceedings.  And there's nothing

 1   in the record that they produced that says anything to the

 2   contrary.  There's absolutely no record of why ETS did that.

 3          Secondly, there's nothing in the record that they have

 4   produced or said that ETS ever checked to see if they had the

 5   authority.  And that begs the question, did ETS, as a trustee

 6   in California, in the nonjudicial foreclosure situation, have a

 7   duty to do that?

 8          THE COURT:  Well, I'm sorry, Mr. Moss.  I'm not

 9   deciding the issue now, but you and the Trust dispute whether

10   it had a duty to investigate the chain of title or whether it

11   could properly rely on the assignment that it received.  We're

12   not going to -- I'm not deciding that today.  But you assume

13   to -- you jumped to a conclusion that's not supported at this

14   point.

15          May I ask you this, Mr. Moss?  Were you represented by

16   counsel other than yourself in connection with the foreclosure

17   litigation in California?

18          MR. MOSS:  I was.

19          THE COURT:  And did you incur -- you were?

20          MR. MOSS:  I was.

21          THE COURT:  Okay.  And did you incur legal fees in

22   connection with trying to --

23          MR. MOSS:  Yes.

24          THE COURT:  -- prevent or unwind the foreclosure that

25   occurred?

1              MR. MOSS:  I did.

2              THE COURT:  Okay.  How much in legal fees did you

3    incur?

4              MR. MOSS:  18,000 dollars.  Because the --

5              THE COURT:  All right.

6              MR. MOSS:  -- I took over my own representation.  I

7    mean, the case went on for close to four years.

8              THE COURT:  All right.

9              MR. MOSS:  And --

10             THE COURT:  And let me ask you this.  Because you

11   settled with other defendants, and did you recover your legal

12   fees in connection with the settlements that you did obtain?

13             MR. MOSS:  Um --

14             THE COURT:  Because there's a single recovery rule.

15   You don't get to double-dip, so to speak.  And whether they

16   make -- there's obviously a dispute here whether your fees

17   would be recoverable as damages here.  But my question is, did

18   you recover your fees in connection with the settlement that

19   you did reach with the other defendants?

20             MR. MOSS:  My problem in responding to Your Honor is

21   that the settlement agreement is confidential.

22             THE COURT:  Well, it isn't going to be confidential if

23   you're going to go to trial in my court.  I'm going to order

24   you to produce it.  So answer my question.  Did you recover

25   your attorneys' fees in connection with the settlement that you

1    achieved against the nondebtor defendants?

2              MR. MOSS:  I did not.

3              THE COURT:  All right.  Okay, go ahead with your

4    argument, Mr. Moss.

5              MR. MOSS:  See if I can remember where I was.  So I

6    think ResCap takes the position that it's absolutely clear on

7    the one case that I was not owed a duty and that I did not

8    suffer any harm.  There are myriad California cases that say

9    just the opposite -- California cases.

10             And in fact, there's even another case from the

11   Federal District Court in San Francisco that contradicts

12   Bergman directly.  And I can give you that --

13             THE COURT:  Which case is that, sir?

14             MR. MOSS:  Tanboori.

15             THE COURT:  Say it again?  I'm having a little trouble

16   hearing you, sir.

17             MR. MOSS:  I'm sorry. Tanboori, T-A-N-B-O-O-R-I.

18             THE COURT:  Thank you.

19             MR. MOSS:  Yes.  And it directly contradicts, and

20   comes after Bergman.  And Bergman itself has language that

21   makes it clear that there's a duty by the trustee.  The general

22   accepted law in California is that the trustee, while not an

23   absolute fiduciary, owes an equal duty to both the trustor,

24   myself, and to the beneficiary; which is problematic here,

25   because --

1          THE COURT:  What case do you rely on for that

2    proposition?

3          MR. MOSS:  I can give you several.  They're all on --

4    they start on page 12 of my brief.  The first case is Kerivan,

5    K-E-R-I-V-A-N.  Another case is --

6          THE COURT:  All right, I'll look at page 12 of your

7    brief.  That's fine.

8          MR. MOSS:  Okay.

9          THE COURT:  Do you have a cite for Tanboori?

10          MR. MOSS:  I'm sorry, do I have a cite for?

11          THE COURT:  For Tanboori?

12          MR. MOSS:  I do, if I can put my hand on it here.

13          THE COURT:  Okay.

14          MR. MOSS:  If you'll give me just a second.  I'll give

15    it to you in just one second.

16          THE COURT:  That's fine.

17          MR. MOSS:  Tanboori is 2011 WL 6294472.

18          THE COURT:  Okay, thank you.

19          MR. MOSS:  And I believe the relevant language is at

20    page 12 of the slip op.

21          So I think it's really uncontrovertible that there is,

22    in California, a duty that goes by the trustee to me and

23    itself, and becomes more interesting, because while working on

24    this instant motion, I discovered that ResCap themselves made

25    the exact same argument that I'm making here, is that ResCap

RESIDENTIAL CAPITAL, LLC, ET AL.                                    20

1   sued a trustee in a proceeding for negligence, claimed duty,

2   claimed harm.

3             THE COURT:  In which case is that?

4             MR. MOSS:  And it's on all fours.

5             THE COURT:  Which case is that?

6             MR. MOSS:  It's ResCap v. -- ResCap v. Cal-Western.

7   The cite is 108 Cal. App. 4th 807.

8             THE COURT:  Okay.

9             MR. MOSS:  And lastly, I want to bring the Court's

10  attention to the case of Yvanova v. New Century Mortgage, which

11  is a Supreme Court of California Case from 2016.  That cite is

12  62 Cal. 4th 919.  And which held that a person in my position

13  can proceed with -- in this case a claim but lawsuit against a

14  trustee who had wrongfully initiated and gone forward with a

15  nonjudicial foreclosure.

16            And among the quotes there is the following from the

17  Supreme Court:  "The logic of defendants' no-prejudice argument

18  implies that anyone, even a stranger to the debt, could declare

19  a default and order a trustee's sale, and the borrower would be

20  left with no recourse because, after all, he or she owed the

21  debt to someone, though not to the foreclosing entity."

22            And what is striking about that, at least to me, is

23  that in their reply brief, ResCap actually makes the statement

24  that even if ETS had known and ResCap had known that they had

25  no authority, it wouldn't make any difference.  They would have

RESIDENTIAL CAPITAL, LLC, ET AL.                                21

1    gone ahead with the foreclosure anyway.  And if that isn't

2    malice, I don't know what is.  I mean, in light of the law that

3    I cited to Your Honor, for them to make that statement, I just

4    think is absolutely incredulous.

5           THE COURT:  Okay.  Any other arguments you want to

6    make, Mr. Moss?

7           MR. MOSS:  No, I'm fine, Your Honor.

8           THE COURT:  Okay.

9           MR. MOSS:  I'll stand on my brief.

10          THE COURT:  All right, thank you, Mr. Moss.

11          THE COURT:  All right.  I don't want to hear any more,

12   Ms. Arett.

13          I'm denying the motion for summary judgment without

14   prejudice.  The following schedule is going to apply in the

15   case.

16          A joint pre-trial order shall be filed on or before

17   Wednesday, April 12th at 5 p.m. New York time.  The final pre-

18   trial conference will be held at 2 p.m. April 19, 2017, again,

19   New York time.  Trial of this matter will be held beginning on

20   Monday, May 8th, at 9 a.m.  I'll determine the length of the

21   trial after I see the pre-trial order.

22          Mr. Moss, I'm certainly willing to have the joint pre-

23   trial conference with you on the phone, since you're in

24   California.  For the trial you need to be here.

25          MR. MOSS:  I understand.

1          THE COURT:  And trial briefs -- you can find -- Ms.

2    Arett email Mr. Moss the template for my joint pre-trial order.

3    It's available on the court's website, Mr. Moss, under my

4    chambers rules; but Ms. Arett can email you the template.

5          I insist that the joint pre-trial order be completed

6    entirely.  So all exhibits need to be marked.  You're the

7    plaintiff, Mr. Moss, so you use -- every exhibit has to have a

8    unique number:  1, 2, 3, et cetera.  The Trust labels its

9    exhibits with letters:  A, B, C, et cetera.  Every exhibit has

10   to have a unique identifier.

11         Trial briefs and all exhibits -- all proposed exhibits

12   need to be submitted to the Court -- not filed, but submitted

13   to the Court with the joint pre-trial order, which I've said is

14   due April 12th.

15         Mr. Moss, there are some cases in which I use -- where

16   the parties put their case-in-chief in with written direct

17   testimony under oath with the declarants available for cross-

18   examination.  I've concluded, after reviewing all the pleadings

19   that I want live direct examination and live cross-examination.

20   Any witness who testifies has to be present in my court and

21   testifying under oath from the witness stand.

22         That's going to be the schedule that we're going to go

23   on, and I fully expect that the Trust's counsel will cooperate

24   with Mr. Moss in making sure that I have complete pre-trial

25   papers, so that we can go forward with it.  Certainly the

1   briefs that I have -- I want separate trial briefs, but

2   certainly a lot of it may be cut and pasted from the summary

3   judgment briefs that have been submitted; although Mr. Moss has

4   cited some additional cases to the Court today, which is fine.

5          But we're going to go forward and resolve this case

6   after trial, unless it's settled.  All right?

7          Do you have any questions, Mr. Moss?

8          MR. MOSS:  I don't, Your Honor.

9          THE COURT:  Okay, Ms. Arett, do you have any

10  questions?

11         MS. ARETT:  No, Your Honor.

12         THE COURT:  Okay.  If there are -- I'm just raising

13  this, not inviting it.  If there are disputes or issues that

14  either side believes the Court needs to resolve as we move

15  towards trial -- I'm going to stick to this trial schedule.

16  I've got a very busy calendar coming up, and so fitting this in

17  was not easy.  But if there are issues, you should confer, and

18  if you can't resolve the issues, you can arrange a telephone

19  hearing with the Court.  Both sides can appear by telephone.

20  Okay?

21         Thank you very much, Ms. Arett.  Thank you, Mr. Moss.

22         All right, we're adjourned.

23         MR. MOSS:  Thank you.

24      (Whereupon these proceedings were concluded at 11:42 AM)

25

1

2                                   **I N D E X**

3     RULINGS:                                           PAGE   LINE

4     Motion for summary judgment is denied        21      13

5     without prejudice

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

Penina Wolicki (CET-569)

AAERT Certified Electronic Transcriber

eScribers

352 Seventh Ave., Suite #607

New York, NY 10001


Date:  March 1, 2017

**#**

**#604 (1)**
2:22

**A**

**able (1)**
11:25
**absence (1)**
13:3
**Absolute (2)**
9:1;18:23
**absolutely (4)**
15:12;16:2;18:6;
21:4
**accepted (1)**
18:22
**achieve (1)**
10:9
**achieved (1)**
18:1
**acknowledge (1)**
8:6
**acted (3)**
5:19;6:19;10:17
**action (1)**
10:4
**actionable (1)**
9:22
**actions (2)**
5:5;7:21
**actually (3)**
9:25;10:14;20:23
**additional (2)**
10:24;23:4
**additionally (2)**
11:1,14
**addresses (1)**
13:10
**adjourned (1)**
23:22
**admit (1)**
5:24
**admits (2)**
14:8;15:15
**admitted (1)**
15:14
**affect (1)**
6:20
**again (5)**
4:24;13:20,24;
18:15;21:18
**against (6)**
7:17;12:20;15:7,9;
18:1;20:13
**agenda (1)**
4:15
**agree (4)**
5:17;8:9;15:22,23
**agreed (1)**
15:18

**agreement (1)**
17:21
**agrees (1)**
15:16
**ahead (10)**
4:13;10:7,21,21;
12:14;14:19;15:11,
21;18:3;21:1
**Alan (4)**
2:3,7;4:9,12
**allegations (3)**
10:17;13:18;14:1
**allege (2)**
15:4,10
**alleged (5)**
8:19;10:25;12:12;
14:3,9
**allegedly (1)**
6:24
**allowing (1)**
15:3
**alluded (1)**
15:13
**although (1)**
23:3
**Amended (2)**
2:7;4:12
**America (1)**
10:17
**among (1)**
20:16
**amongst (1)**
15:1
**analysis (1)**
14:24
**analyst (1)**
4:22
**App (1)**
20:7
**appealed (1)**
6:7
**Appeals (1)**
13:16
**appear (1)**
23:19
**appearances (1)**
4:4
**appellate (1)**
13:8
**appellees (1)**
14:8
**apply (1)**
21:14
**approach (1)**
15:3
**App'x (1)**
14:6
**April (3)**
21:17,18;22:14
**ARETT (49)**
4:5,5,13,14;5:16,
21,24;6:2,4,14,18,
23;7:3,9,13,19,24;

**8:2,10,14,22;9:3,8,**
**16,24;10:3,13,16,22;**
**11:13,19,24;12:4,7,**
**11,15,25;13:14,18;**
**14:12,14,17,23;**
**21:12;22:2,4;23:9,**
**11,21**
**argue (2)**
9:5;14:16
**argued (1)**
14:23
**argument (7)**
5:12;6:13;9:19;
10:23;18:4;19:25;
20:17
**arguments (3)**
6:20;12:16;21:5
**arise (1)**
7:5
**arrange (1)**
23:18
**assert (2)**
8:20,23
**asserted (1)**
7:18
**asserting (1)**
11:6
**asserts (1)**
5:2
**assignment (3)**
8:8;15:18;16:11
**associated (1)**
7:5
**assume (2)**
5:18;16:12
**attention (1)**
20:10
**attorney (2)**
7:7,15
**attorneys (1)**
7:11
**attorneys' (4)**
7:5;8:18;10:18;
17:25
**authority (7)**
8:7,12;15:11,14,
23;16:5;20:25
**authorized (1)**
10:8
**available (4)**
4:25;11:2;22:3,17
**Avenue (1)**
2:22
**avoided (2)**
14:3,10
**aware (1)**
6:25

**B**

**back (1)**
10:5
**bald (1)**

**9:4**
**Bank (1)**
10:17
**based (3)**
6:16;7:19;15:15
**bases (1)**
14:23
**basis (1)**
15:5
**becomes (1)**
19:23
**beginning (1)**
21:19
**begs (1)**
16:5
**behalf (1)**
4:6
**behind (2)**
14:2,9
**believes (1)**
23:14
**beneficiary (1)**
18:24
**benefit (1)**
15:15
**Bergman (13)**
9:10,24;10:13;
12:22;13:10,12;
14:25;15:1,6,8;
18:12,20,20
**bets (1)**
9:20
**beyond (2)**
11:21;15:18
**binding (2)**
13:3,10
**Borrower (9)**
2:6;4:6,18,20,22,
22;5:2;13:21;20:19
**borrowers (1)**
10:20
**borrower's (1)**
9:23
**both (3)**
11:6;18:23;23:19
**brief (5)**
6:5;19:4,7;20:23;
21:9
**briefly (1)**
5:13
**briefs (1)**
22:1,11;23:1,1,3
**bring (1)**
20:9
**broadly (1)**
10:2
**burden (1)**
12:17
**busy (1)**
23:16

**C**

**Cal (2)**
20:7,12
**calendar (1)**
23:16
**California (23)**
5:9;7:20;9:8;11:1,
10,21;12:24;13:2,3,
4,5,7,9,15;15:2;16:6,
17;18:8,9,22;19:22;
20:11;21:24
**Cal-Western (1)**
20:6
**can (17)**
5:8;9:21;10:4;
11:11;13:7,8;15:4;
18:5,12;19:3,12;
20:13;22:1,4,25;
23:18,19
**Capital (1)**
4:3
**carry (1)**
15:19
**Case (44)**
2:2;7:19;9:8,10,
24;10:3,10,14,16;
11:1,4;12:8,12,22,
23;13:4,9,16,18,23,
24,25;14:25;15:1,6,
7,8,8,9,12;17:7;18:7,
10,13;19:1,4,5;20:3,
5,10,11,13;21:15;
23:5
**case-in-chief (1)**
22:16
**cases (11)**
11:13;12:2,11;
13:2,8,11,14;18:8,9;
22:15;23:4
**causation (2)**
6:13;10:23
**caused (4)**
6:24;7:20;8:19;
9:23
**CC (2)**
2:2,5
**Century (1)**
20:10
**certain (1)**
11:13
**certainly (5)**
13:8,9;21:22;
22:25;23:2
**cetera (2)**
22:8,9
**chain (2)**
11:1;16:10
**chambers (1)**
22:4
**charged (1)**
8:16
**charges (1)**
15:6
**checked (1)**

16:4
Cir (1)
    14:6
Circuit (1)
    13:23
cite (4)
    19:9,10;20:7,11
cited (3)
    13:15;21:3;23:4
Claim (17)
    2:7;4:12;5:20;6:6,
    10,23;8:20;10:24;
    11:3,6;12:19;14:7,
    24,24;15:5,9;20:13
claimant (2)
    12:17;14:2
claimed (2)
    20:1,2
Claims (7)
    2:3;7:4;6,21;5:10;
    7:18;15:3
clear (6)
    5:9;9:9;11:2,14;
    18:6,21
close (2)
    12:16;17:7
coming (1)
    23:16
compens (1)
    10:11
compensable (3)
    7:17,21;10:11
complete (1)
    22:24
completed (1)
    22:5
comprised (1)
    7:2
conclude (2)
    6:16;9:6
concluded (3)
    6:9;22:18;23:24
conclusion (2)
    9:20;16:13
conduct (5)
    5:19;8:19;9:17;
    12:1,6
confer (1)
    23:17
Conference (3)
    2:2;21:18,23
confidential (2)
    17:21,22
connection (7)
    2:2;5:19;16:16,22;
    17:12,18,25
consider (1)
    13:8
considering (1)
    5:18
consistent (1)
    15:3
construed (1)

6:10
contradicts (2)
    18:11,19
contrary (1)
    16:2
cooperate (1)
    22:23
costs (1)
    7:5
counsel (3)
    8:16;16:16;22:23
COURT (103)
    4:2,7,10;5:1,8,15,
    17,23;6:1,3,5,7,9,15,
    19,22;7:1,7,12,14,23,
    25;8:3,13,15;9:1,4,5,
    14,19;10:1,6,15,16,
    21;11:5,17,20;12:2,
    5,10,14,22,23;13:1,1,
    4,5,8,9,16,17,20,24,
    25;14:5,13,15,18,21;
    15:13,15;16:8,19,21,
    24;17:2,5,8,10,14,22,
    23;18:3,11,13,15,18;
    19:1,6,9,11,13,16,18;
    20:3,5,8,11,17;21:5,
    8,10,11;22:1,12,13,
    20;23:4,9,12,14,19
courts (1)
    15:2
court's (3)
    6:16;20:9;22:3
covered (2)
    10:22;12:15
cross- (1)
    22:17
cross-examination (1)
    22:19
cut (1)
    23:2

D

damages (9)
    6:23;7:1,4,18,22;
    8:21;10:12;11:2;
    17:17
debt (2)
    20:18,21
debtors (2)
    5:5;12:18
debtors' (1)
    12:20
decide (1)
    13:5
deciding (2)
    16:9,12
declarants (1)
    22:17
declarations (1)
    4:21
declare (1)
    20:18

default (11)
    8:24;9:7,9,12,21,
    23;10:20;13:21;
    14:4,10;20:19
defendants (3)
    17:11,19;18:1
defendants' (1)
    20:17
defending (1)
    7:16
denial (1)
    9:4
denies (1)
    9:2
denying (1)
    21:13
determine (2)
    13:3;21:20
difference (1)
    20:25
direct (2)
    22:16,19
directly (2)
    18:12,19
disallowed (1)
    12:20
discovered (2)
    15:11;19:24
discovery (1)
    15:16
dispute (6)
    6:17;8:23,23;
    14:22;16:9;17:16
disputes (2)
    9:1;23:13
distress (11)
    5:11;7:4;11:2,7,8,
    9,12,16,23,25;12:19
district (7)
    6:7,16;12:23,23;
    13:8,9;18:11
Doc (1)
    2:5
Doc# (1)
    2:2
docket (4)
    4:16,19,23,24
documents (1)
    6:9
dollars (1)
    17:4
double-dip (1)
    17:15
due (1)
    22:14
duty (8)
    10:25;16:7,10;
    18:7,21,23;19:22;
    20:1

E

easy (1)

23:17
economic (2)
    11:14,21
either (2)
    11:22;23:14
Electronic (1)
    13:22
else (1)
    14:15
email (2)
    22:2,4
emotional (11)
    5:11;7:4;11:2,7,8,
    9,11,16,22,25;12:19
enable (1)
    8:20
ensued (1)
    8:3
entire (1)
    6:8
entirely (1)
    22:6
entirety (1)
    12:21
entitled (2)
    5:10;10:5
entity (2)
    8:10;20:21
equal (1)
    18:23
eScribers (1)
    2:21
essentially (1)
    6:8
establish (3)
    5:4;9:6;12:17
estates (1)
    12:20
et (2)
    22:8,9
ETS (16)
    5:19;6:19;7:21,25;
    8:7,11;9:12,17;10:7,
    25;15:23,25;16:2,4,
    5;20:24
ETS's (2)
    6:24;8:19
evaluating (1)
    6:15
even (4)
    14:8;18:10;20:18,
    24
evidence (3)
    7:11;9:2,5
exact (1)
    19:25
examination (2)
    22:18,19
Executive (1)
    5:6
exhibit (4)
    4:22,24;22:7,9
exhibits (4)

22:6,9,11,11
existence (1)
    5:4
expect (1)
    22:23
expunged (3)
    6:6,10;12:20
expunging (1)
    6:6

F

faced (1)
    13:5
fact (3)
    6:11;9:6;18:10
facts (4)
    4:23;5:4;12:16;
    13:25
factual (1)
    6:17
failed (2)
    5:3;15:10
fails (1)
    10:24
fair (2)
    6:17,18
fallen (1)
    14:2
February (2)
    4:17,18
federal (3)
    12:23;13:11;18:11
fees (13)
    7:5,16,17,20;8:19;
    10:9,18;16:21;17:2,
    12,16,18,25
fell (1)
    14:9
few (2)
    5:13;10:23
fiduciary (1)
    18:23
Filed (8)
    2:6,7;4:12,16,17,
    18;21:16;22:12
final (1)
    21:17
find (3)
    6:19;13:25;22:1
fine (4)
    19:7,16;21:7;23:4
first (1)
    19:4
fitting (1)
    23:16
following (2)
    20:16;21:14
foreclosed (1)
    15:5
foreclosing (1)
    20:21
foreclosure (24)

6:25;7:6,8,17;8:1,
4,8,18,24;9:13,22;
10:5,6,7;12:2;13:19;
15:5,12,25;16:6,16,
24;20:15;21:1
**form (2)**
11:15;12:1
**forth (2)**
5:2,7
**forward (6)**
7:25;9:13;15:4;
20:14;22:25;23:5
**found (1)**
13:20
**four (1)**
17:7
**fours (1)**
20:4
**Francisco (1)**
18:11
**fraud (2)**
5:10;12:18
**Freeman (1)**
13:15
**fully (1)**
22:23
**further (1)**
15:19

**G**

**general (1)**
18:21
**generally (1)**
15:2
**gives (1)**
5:19
**goes (1)**
19:22
**Good (1)**
4:5
**grant (1)**
5:8
**guess (3)**
10:22;11:6;12:8

**H**

**hand (1)**
19:12
**harm (3)**
11:14;18:8;20:2
**hear (1)**
21:11
**hearing (2)**
18:16;23:19
**held (5)**
15:6,8;20:12;
21:18,19
**highlight (1)**
5:13
**himself (2)**
7:8,16

**hindsight (1)**
15:16
**history (1)**
6:5
**Honor (9)**
4:5,14;6:25;12:15;
17:20;21:3,7;23:8,11
**Honor's (1)**
7:22
**house (2)**
10:5,19
**hypothetically (1)**
7:15

**I**

**identifier (1)**
22:10
**implies (1)**
20:18
**inaccurate (2)**
14:1,8
**Inc (1)**
13:23
**incredulous (1)**
21:4
**incur (3)**
16:19,21;17:3
**incurred (3)**
7:16;10:9,18
**Indeed (1)**
8:3
**infliction (10)**
5:11;11:7,8,9,11,
16,22,24;12:8,19
**initiate (1)**
15:25
**initiated (1)**
20:14
**initiation (1)**
6:24
**injury (1)**
11:11
**insist (1)**
22:5
**instant (1)**
19:24
**instructed (2)**
13:4;15:24
**insufficient (2)**
13:20;14:2
**intentional (5)**
5:10;11:7,22,24;
12:19
**interesting (1)**
19:23
**intermediate (1)**
13:7
**investigate (2)**
10:25;16:10
**inviting (1)**
23:13
**invoices (1)**

7:11
**irregularities (2)**
9:10,11
**issue (3)**
13:2,6;16:9
**issues (4)**
13:10;23:13,17,18

**J**

**Jessica (1)**
4:5
**joint (5)**
21:16,22;22:2,5,13
**Judgment (8)**
2:6;4:11,16;5:18;
6:12;9:5;21:13;23:3
**jumped (1)**
16:13

**K**

**kept (1)**
14:8
**Kerivan (1)**
19:4
**K-E-R-I-V-A-N (1)**
19:5
**King (1)**
13:15
**known (2)**
20:24,24

**L**

**labels (1)**
22:8
**language (2)**
18:20;19:19
**lastly (1)**
20:9
**Lathrop (2)**
4:21,25
**law (11)**
5:8,9;7:19;9:8;
11:1,4,10;13:2,3;
18:22;21:2
**lawsuit (1)**
20:13
**lead (1)**
9:20
**least (3)**
8:23;15:16;20:22
**left (1)**
20:20
**legal (5)**
7:16,17;16:21;
17:2,11
**length (1)**
21:20
**letters (1)**
22:9
**liability (1)**

5:5
**liable (1)**
12:18
**light (1)**
21:2
**litigation (2)**
8:3;16:17
**little (2)**
13:25;18:15
**live (2)**
22:19,19
**LLC (1)**
2:21
**logic (1)**
20:17
**look (2)**
13:7;19:6
**loss (5)**
10:19;11:3,3,15,21
**lot (1)**
23:2

**M**

**major (1)**
5:14
**makes (2)**
18:21;20:23
**making (2)**
19:25;22:24
**malice (7)**
5:19,24;6:11,17,
20;10:17;21:2
**Management (1)**
2:2
**many (1)**
15:1
**marked (1)**
22:6
**material (2)**
4:23;5:4
**matter (3)**
4:15;5:8;21:19
**May (7)**
4:3;5:1,15;12:22;
16:15;21:20;23:2
**maybe (1)**
7:22
**mean (8)**
5:22;7:23;8:17;
9:19;10:3,16;17:7;
21:2
**mere (1)**
9:11
**merely (1)**
12:16
**met (1)**
12:17
**misunderstanding (1)**
7:22
**Monday (1)**
21:20
**more (2)**

19:23;21:11
**Moreover (1)**
5:7
**morning (1)**
4:5
**Mortgage (2)**
13:22;20:10
**Moss (70)**
2:3,7;4:8,9,9,12,
17;5:3,9;6:6;7:3,7,
10,15;8:15,22,24;
9:6;10:5,9;14:19,19,
20,22;15:19,21,22;
16:8,15,18,20,23;
17:1,4,6,9,13,20;
18:2,4,5,14,17,19;
19:3,8,10,12,14,17,
19;20:4,6,9;21:6,7,9,
10,22,25;22:2,3,7,15,
24;23:3,7,8,21,23
**Moss' (5)**
6:23;7:1;8:18;
10:24;11:6
**Motion (16)**
2:5;4:11,16,20;
5:3,8,18;6:12,12,16,
19,21;8:6;15:17;
19:24;21:13
**move (1)**
23:14
**much (4)**
4:7;15:19;17:2;
23:21
**myriad (1)**
18:8
**myself (1)**
18:24

**N**

**nearly (1)**
14:24
**need (4)**
11:25;21:24;22:6,
12
**needs (2)**
12:9;23:14
**negligence (6)**
5:10;10:24;11:3;
12:18;14:7;20:1
**negligent (5)**
11:7,9,16,22;12:7
**New (4)**
2:23;20:10;21:17,
19
**Ninth (1)**
13:23
**nondebtor (1)**
18:1
**nonjudicial (5)**
7:25;8:7;10:7;
16:6;20:15
**no-prejudice (1)**

20:17
**Northern (2)**
12:23;13:9
**notice (1)**
13:19
**number (5)**
4:16,19,23,24;22:8
**NY (1)**
2:23

## O

**oath (2)**
22:17,21
**Objection (2)**
2:6;4:11
**obtain (1)**
17:12
**obviously (3)**
5:22,23;17:16
**occurred (1)**
16:25
**off (1)**
9:20
**one (3)**
11:6;18:7;19:15
**only (1)**
4:15
**op (1)**
19:20
**operations@escribersnet (1)**
2:25
**opinion (3)**
6:6,8;14:5
**opposite (1)**
18:9
**order (9)**
11:5,8;17:23;
20:19;21:16,21;22:2,
5,13
**outrageous (2)**
12:1,5
**over (1)**
17:6
**owed (3)**
10:25;18:7;20:20
**owes (1)**
18:23
**own (1)**
17:6

## P

**page (3)**
19:4,6,20
**papers (4)**
5:7;8:6;13:15;
22:25
**parties (1)**
22:16
**party (1)**
15:4
**pasted (1)**

23:2
**payments (2)**
14:3,9
**Penina (1)**
2:20
**per (1)**
4:9
**person (1)**
20:12
**phone (2)**
4:25;21:23
**physical (1)**
11:10
**Plaintiff (2)**
14:7;22:7
**plaintiffs (1)**
15:4
**pleading (1)**
15:8
**pleadings (2)**
5:13;22:18
**Please (2)**
4:2,4
**pm (2)**
21:17,18
**point (2)**
9:10;16:14
**points (2)**
5:14;10:23
**position (3)**
11:18;18:6;20:12
**pre- (2)**
21:17,22
**predecessor (1)**
15:24
**predicated (1)**
6:13
**predict (1)**
13:5
**prejudice (2)**
10:19;21:14
**premised (1)**
6:23
**present (1)**
22:20
**pre-trial (6)**
21:16,21;22:2,5,
13,24
**pretty (1)**
9:10
**prevail (1)**
14:7
**prevent (1)**
16:24
**principally (1)**
6:13
**pro (1)**
4:9
**problem (1)**
17:20
**problematic (1)**
18:24
**proceed (2)**

8:7;20:13
**proceeding (2)**
7:6;20:1
**proceedings (4)**
6:25;7:8;15:25;
23:24
**process (1)**
9:11
**produce (1)**
17:24
**produced (2)**
16:1,4
**proof (1)**
15:24
**proper (1)**
8:8
**properly (6)**
9:12,14,18;10:8;
15:4;16:11
**property (2)**
11:3,15
**proposed (1)**
22:11
**proposition (1)**
19:2
**propositions (1)**
13:12
**provided (2)**
7:4,10
**purely (2)**
11:3,14
**purposes (6)**
5:17;6:2,15;8:6,9;
15:17
**put (4)**
9:2,4;19:12;22:16

## Q

**qualify (2)**
12:12,13
**quite (1)**
10:1
**quote (1)**
14:6
**quotes (1)**
20:16
**quoting (1)**
15:2

## R

**raising (2)**
6:10;23:12
**reach (1)**
17:19
**read (2)**
10:1;11:6
**really (2)**
8:5;19:21
**reasons (3)**
5:2,7;10:24
**received (1)**

16:11
**record (5)**
15:19,24;16:1,2,3
**records (2)**
14:1,8
**recourse (1)**
20:20
**recover (6)**
11:9,11,21;17:11,
18,24
**recoverable (1)**
17:17
**recovery (1)**
17:14
**Registration (1)**
13:23
**related (1)**
5:5
**relevant (1)**
19:19
**rely (3)**
13:12;16:11;19:1
**relying (1)**
14:10
**remand (1)**
6:16
**remanded (1)**
6:7
**remember (1)**
18:5
**repeat (1)**
5:12
**reply (4)**
4:18,24;5:3;20:23
**representation (1)**
17:6
**represented (4)**
7:7,15;8:15;16:15
**representing (1)**
8:16
**required (3)**
11:5,8,21
**ResCap (11)**
2:6;4:6;15:13,24;
18:6;19:24,25;20:6,
6,23,24
**rescind (1)**
10:4
**Residential (1)**
4:3
**resolve (3)**
23:5,14,18
**respect (1)**
4:11
**respectfully (1)**
14:22
**responding (1)**
17:20
**response (1)**
4:17
**result (2)**
7:6;10:9
**reversed (3)**

16:11
**reviewing (1)**
22:18
**right (22)**
4:2,10;6:22;8:4,9,
13;9:8,16,16;10:15,
21;12:14;14:15,18;
17:5,8;18:3;19:6;
21:10,11;23:6,22
**rise (1)**
5:20
**rule (1)**
17:14
**rules (1)**
22:4

## S

**sale (2)**
13:19;20:19
**same (1)**
19:25
**San (1)**
18:11
**Sara (1)**
4:21
**satisfy (1)**
12:5
**saying (2)**
5:25;9:16
**schedule (3)**
21:14;22:22;23:15
**seated (1)**
4:2
**second (2)**
19:14,15
**Secondly (1)**
16:3
**seem (1)**
9:20
**senior (1)**
4:21
**sense (1)**
8:17
**separate (1)**
23:1
**servicer (1)**
9:21
**Services (1)**
5:6
**set (2)**
5:2,7
**settled (2)**
17:11;23:6
**settlement (3)**
17:18,21,25
**settlements (1)**
17:12
**Seventh (1)**
2:22
**several (2)**
14:23;19:3
**shall (1)**

21:16
**show (1)**
  11:25
**showing (1)**
  12:17
**side (1)**
  23:14
**sides (1)**
  23:19
**simple (2)**
  9:4;14:24
**single (1)**
  17:14
**situation (1)**
  16:6
**slip (1)**
  19:20
**somebody's (1)**
  9:21
**someone (1)**
  20:21
**sorry (4)**
  14:20;16:8;18:17;
  19:10
**sort (1)**
  9:9
**speak (1)**
  17:15
**specifically (1)**
  12:8
**stand (2)**
  21:9;22:21
**start (1)**
  19:4
**state (3)**
  13:1,12,24
**statement (3)**
  4:23;20:23;21:3
**stick (1)**
  23:15
**stranger (1)**
  20:18
**striking (1)**
  20:22
**submitted (4)**
  4:21;22:12,12;
  23:3
**substantiate (1)**
  5:4
**substitute (1)**
  5:6
**substituted (4)**
  8:11;9:12,15,18
**substitution (2)**
  8:11,14
**successful (1)**
  8:17
**sued (1)**
  20:1
**suffer (1)**
  18:8
**sufficient (3)**
  8:20;11:15;13:19

**Suite (1)**
  2:22
**Summary (8)**
  2:6;4:11,16;5:18;
  6:12;9:5;21:13;23:2
**support (4)**
  4:20;9:2;13:11,12
**supported (1)**
  16:13
**supports (1)**
  15:20
**Supreme (4)**
  13:4,5;20:11,17
**sure (3)**
  7:13;10:1;22:24
**Systems (1)**
  13:23

**T**

**Tanboori (5)**
  18:14,17;19:9,11,
  17
**T-A-N-B-O-O-R-I (1)**
  18:17
**telephone (2)**
  23:18,19
**template (2)**
  22:2,4
**testifies (1)**
  22:20
**testifying (1)**
  22:21
**testimony (1)**
  22:17
**therefore (1)**
  7:21
**though (1)**
  20:21
**threat (1)**
  11:10
**title (2)**
  11:1;16:10
**today (4)**
  4:25;15:13;16:12;
  23:4
**today's (1)**
  4:15
**took (1)**
  17:6
**towards (1)**
  23:15
**Transcribed (1)**
  2:20
**trial (12)**
  17:23;21:18,19,21,
  23,24;22:1,11;23:1,
  6,15,15
**trouble (1)**
  18:15
**Trust (9)**
  2:7;4:6,18,20,22;
  5:2;7:10;16:9;22:8

**Trustee (13)**
  5:6,6;9:21;15:7,9,
  9,10;16:5;18:21,22;
  19:22;20:1,14
**trustee's (1)**
  20:19
**trustor (1)**
  18:23
**Trust's (3)**
  4:10,23;22:23
**trying (2)**
  11:20;16:22
**turn (1)**
  14:21
**two (2)**
  4:21;13:14

**U**

**ultimately (1)**
  8:17
**Um (1)**
  17:13
**Um-hum (2)**
  12:25;13:17
**unclear (1)**
  13:25
**uncontrovertible (1)**
  19:21
**under (4)**
  11:9;22:3,17,21
**undisputed (1)**
  9:6
**unique (2)**
  22:8,10
**unless (1)**
  23:6
**unpublished (1)**
  14:5
**unwind (1)**
  16:24
**unwinding (1)**
  10:9
**up (1)**
  23:16
**use (2)**
  22:7,15

**V**

**valid (1)**
  15:17

**W**

**Walton (2)**
  13:22;14:13
**website (1)**
  22:3
**Wednesday (1)**
  21:17
**What's (2)**
  11:5,8

**Whereupon (1)**
  23:24
**willing (1)**
  21:22
**without (1)**
  21:13
**witness (2)**
  22:20,21
**WL (1)**
  19:17
**Wolicki (1)**
  2:20
**working (1)**
  19:23
**written (1)**
  22:16
**wrong (1)**
  15:4
**wrongful (4)**
  8:19;9:17;10:7;
  15:5
**wrongfully (1)**
  20:14
**wrote (1)**
  6:6

**Y**

**years (1)**
  17:7
**York (3)**
  2:23;21:17,19
**Yvanova (1)**
  20:10

**1**

**1 (1)**
  22:8
**10001 (1)**
  2:23
**10273 (1)**
  2:2
**10290 (2)**
  2:5;4:17
**10290-1 (1)**
  4:23
**10299 (2)**
  2:5;4:17
**10300 (1)**
  2:5
**10301 (1)**
  2:5
**10307 (3)**
  2:5;4:19,24
**108 (1)**
  20:7
**11:42 (1)**
  23:24
**12 (3)**
  19:4,6,20
**12-12020 (1)**
  4:3

**12b6 (1)**
  15:8
**12th (2)**
  21:17;22:14
**13th (1)**
  4:18
**18,000 (1)**
  17:4
**19 (1)**
  21:18

**2**

**2 (3)**
  4:24;21:18;22:8
**2011 (1)**
  19:17
**2013 (2)**
  13:24;14:6
**2016 (1)**
  20:11
**2017 (1)**
  21:18

**3**

**3 (1)**
  22:8
**352 (1)**
  2:22

**4**

**4445 (2)**
  2:7;4:12
**4th (2)**
  20:7,12

**5**

**5 (1)**
  21:17
**507 (1)**
  14:6

**6**

**62 (1)**
  20:12
**6294472 (1)**
  19:17

**7**

**720 (1)**
  14:6
**721 (1)**
  14:6
**7th (1)**
  4:17

**8**

**RESIDENTIAL CAPITAL, LLC, et al.**
Case No. 12-12020-mg

February 28, 2017

**807 (1)**
  20:7
**8th (1)**
  21:20

### 9

**9 (1)**
  21:20
**919 (1)**
  20:12
**973406-2250 (1)**
  2:24
**9th (1)**
  14:6