JAMES P. KENNEDY
700 E. SONORA ROAD
PALM SPRINGS, CA 92264
760-969-3769
CLAIM NO. 4930

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-1202 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

## JAMES P. KENNEDY'S RESPONSE TO OBJECTION TO CLAIM NO. 4930



RECEIVED
MAR 3 2017
U.S. BANKRUPTCY COURT, SDNY



RECEIVED
MAR - 6 2017
U.S. BANKRUPTCY COURT, SDNY

## TABLE OF AUTHORITIES

*Marais v. Chase Home Fin., LLC,*

    24 F.Supp.3d 712, 723-24 (S.D. Ohio 2014)


*Russell v. Nationstar Mortg., LLC*

    CASE NO. 14-61977-CIV-BLOOM/VALLE (S.D. Fla. Jun. 15, 2015)


*Richard DAVIS and Constance Davis, Plaintiffs v. CREDITORS INTERCHANGE RECEIVABLE*

*MANAGEMENT, LLC, et al*

    .United States District Court, N.D. Ohio, Western Division., Defendants. Case No.
3:07CV1522. Nov. 12, 2008 585 F.Supp.2d 968


### STATUTES


### FEDERAL STATUTES

15 USC § 1692…………………………………………………...…………..9,24,26,27

RESPA …………………………………………………………………………15,28

§ 2605(e)(1)(A)

12 U.S.C. § 2605(e)(1)(B)

12 U.S.C. § 2605(e)(2)C.

12 U.S.C. § 2605(e)(1)(e).

§ 2605(e)(2)

Fair Debt Collections Practices Act; §§ 1692-1692p. § 808.  Unfair practices (1)...9,13,26

## STATE STATUTES

2954.1

(a)...............................................................................................7,13

2954 (a)(1)(c)...............................................................................6,11,29

15:1692 Fair Debt Collection Act.....................................................13

2955.5.......................................................................................25,33

## I.  PRELIMINARY STATEMENT

Claimant James Kennedy ("Claimant") hereby opposes the ResCap Borrower Claims Trust's

(the "Borrowers Trust") Objection to Claim No. 4930. The basis of this opposition is that all

of Claimant's causes of action asserted in the Complaint are valid and the Borrowers Trust

fails to establish by admissible evidence the invalidity of the claims.

## I.  INTRODUCTION

Debtor engaged in illegal conduct under California law when Debtor opened an escrow account

for the payment of taxes in violation of California Civil code 2954.  The law requires that a borrow

have two consecutive delinquent payments before an escrow account can be established for the

payment of property taxes.  Debtor also did not follow its own stated policy that it would remove

escrow charges for the payment of insurance by a specified date after Debtor received a full refund

for the policy and the policy was cancelled. Debtor violated the Fair Debt Collection Practices Act

and the California Rosenthal Act.    Debtor made wrongful deductions from Claimant's timely

payments, considered the payments to be insufficient, charged unwarranted late fees and other

costs that eventually pushed Claimant's account into default.    Debtor wrongfully reported

Claimant's account as delinquent and then later in default to credit agencies which caused

Claimant's lines of credit to be cancelled. Claimant never received a response to a request to

validate the debt. Claimant also sent numerous QWR's and Debtor failed to respond in accordance

with RESPA requirements.  It is surprising to learn that Debtor, after examining the proof of claim

and supporting documents from Claimant, as well as Debtor's books and records, can state that

4

they have found no evidence of Debtor liability owed to Claimant. Claimant made it very clear in the Proof of Claim submitted that Debtor had taken illegal action and also had not followed its clearly stated policy regarding escrow charges. Both are glaringly missing from Debtor's objections.

## II. CLAIM FACTS

1. On or about June 19, Debtor sent Claimant a notice that they claimant's taxes were delinquent for the April 2008 tax payment. In mid-July Debtor also sent Claimant a notice that they had no record of current hazard insurance for the property even though Claimant had insurance.

2. On August 5, 2008, Claimant mailed proof of payment of property taxes using the pre-addressed envelope provided by Debtor with proof of mailing (EXHIBIT 1) upon returning from travels.

3. On or about August 22, 2008 GMAC established an escrow account and paid $6,391 for force placed hazard insurance for the property. Claimant received an initial escrow analysis statement for the insurance payment. The document contained the statement that "If you pay the escrow advance amount of $6391.00, your new payment will be automatically adjusted to $1,719.23 effective with your November 01, 2008 payment."

4. On September 29, 2008 Claimant called Debtor and was assured that Debtor would correct the tax payment issue. On October 4, 2008, Debtor paid Claimant's property tax in the

amount of $2,478.80 plus a penalty of $461.52 and established an escrow account for the

payment of taxes and in doing so, Debtor violated California Civil Code 2954 (a)(1)(c).

California prohibits the establishment of an escrow account for the payment of taxes unless

the borrower has had two consecutive delinquent tax payments. Claimant's taxes were not

delinquent nor had any previous payments ever been delinquent. Debtor later claims that

they had received an email from the San Francisco County Tax Collector on October 4,

2008 (which is a Saturday when County offices are closed) informing Debtor that

Claimant's taxes were delinquent.

5. On or about October 4, 2008 Claimant called Debtor and was informed about the tax

    payment made by Debtor as Debtor had not received the proof of payment mailed on

    August 5, 2008.

6. On or about October 6, 2008 Claimant called the San Francisco tax collector and spoke

    with Lilly, who told claimant that they do not send out emails of delinquent taxes and that

    they have no idea which properties have mortgages let alone who services them.

7. On October 10, 2008 Claimant sent Debtor a letter (EXHIBIT 2)stating that he thought

    his account might be in error due to the charges for insurance as Claimant had continuous

    insurance coverage, and that his account needed to be adjusted for any charges for

    insurance. As proof of insurance was provided, the escrow charges for insurance were

    reversed in full and the policy was cancelled on October 23, 2008. Nearly a week later,

    on October 29, 2008, Debtor performed a new escrow analysis and adjusted the monthly

    payment for December, not November as stated on the escrow analysis.

8. Claimant made a timely payment for November on November 10, 2008 in the amount of

    $1719.23, comprised of interest and principle only per the escrow statement. Debtor

6

received Claimant's payment but put the funds in a suspense account as debtor considered the payment insufficient as the escrow charges had not been removed as stated.

    a. As Debtor did not apply payments according to the mortgage agreement, Debtor breached that agreement.

    b. As Claimant no longer owed the escrow payment charged, Debtor charged Claimant more than what was owed in breach of the mortgage agreement.

    c. Debtor also forced Claimant to deposit into escrow more funds than what were allowed as Claimant did not owe any escrow payments. This is a violation of RESPA and CC 2954.1 (a). While there is no private right of action for this RESPA violation, the RESPA violation itself is a breach of the mortgage agreement because Debtor agreed to follow RESPA requirements for escrow accounts.

    d. Debtor wrongfully charged Claimant a late fee for the November 1, 2008 payment.

9. Debtor reported Claimant's account as being 30 days delinquent to the credit agencies when it was not.

10. Debtor increased Claimant's monthly mortgage payment to include the escrow charges for property taxes starting with the December 1, 2008 payment.

11. Claimant spoke with Alex in the Tax Department on October 28, 2008 and informed Adam that taxes had already been paid and to please contact the County for a full refund but Debtor refused to do so, even though Adam stated that GMAC's notes confirmed stating it was because proof of payment had not been received.

7

12. On November 26, 2008 Claimant spoke with Dinah in the Escrow Department and informed her of the surplus payment and asked that Debtor make a refund request. That did not happen.

13. On December 1, 2008 Claimant made a payment in the amount of $1,719.23 consisting of principle and interest only. Debtor had removed the escrow charges for insurance but included escrow charges for property taxes from the required mortgage payment amount for the December 1, 2008 payment. Debtor then considered Claimant's payment to be insufficient and placed the funds in a suspense account.

14. As Debtor had established an escrow account for taxes in violation of California law, charging Claimant for those related escrow payments was in violation of the mortgage agreement so Debtor breached the contract again as well as for not applying payments according to the agreement. Debtor again wrongfully reported to the credit agencies that Debtor's account was 30 days delinquent when it was not.

15. On or around December 1, the County of San Francisco tax accessor withdrew funds from the surplus account comprised of Debtor's funds, and applied them to the December 10, 2008 payment. Debtor had therefore paid for future taxes in violation of the mortgage agreement. As Debtor's tax payment included payment for late fees which were not accessed to Claimant's account, extra funds remained in the surplus tax account. Claimant tried to make an on-time on-line payment for taxes on December 10, 2008 but could not as the system showed no taxes were owed. Claimant was prevented from using payment options that normally would have been available to him.

16. Debtor reported Claimant's timely payments as being late to credit agencies, reporting that the loan was in default. On or about December 1, 2009 Claimant received

8

notification from Debtor of their intent to foreclose on the property. On December 26, 2009 Claimant sent a Verification of Debt request to ETS as well as a copy as a QWR hand address to Debtor to the address listed for QWR correspondence.

17. In December Claimant was told of a repayment plan consisting of five payments that would start with the February payment.

18. Claimant never received a response to the Validation of Debt request. Debtor continued to take action to collect the debt well beyond the 30 day waiting period provided to Debtor to respond to the deb validation request in violation of the "Fair Debt Collections Practices Act" as codified at 15 USC § 1692

19. In December 2008, Debtor reported to the credit agencies that Claimant's loan was delinquent.

20. On January 1, 2009, CitiMortgage cancelled Claimant's line of credit as a direct result of the credit reporting.

21. Claimant called Debtor regarding no response to Validation of Debt request.

22. February 2009 had no funds to renew hazard insurance as financial plans now in disarray due to cancellation of credit.

23. March 3, 2009 Claimant called debtor and was transferred to insurance department. Spoke with Ann/Anna Stated wanted to reduce the amount of insurance coverage to cover outstanding loan balance as insurance coverage was too high. Was told coverage was appropriate to protect lender's investment if the homes were a total loss and the amount could not be changed.

24. Claimant discussed workout agreement with Debtor and made first payment as requested.

9

25. Debtor rejected Claimant's payment on the basis that it was agreed that funds would be paid by either Cashier's check or MoneyGram and Claimant paid by personal check. Debtor has been unable to provide a signed copy showing Claimant's agreement. Therefore payment was wrongfully not accepted.

26. Debtor filed notice of sale

27. Claimant discussed a follow up workout plan and sent in payments as required .

28. Claimant sent in the next monthly payment of principle and interest only as the payment plan was completed, however Debtor later informed that the repayment plan did not bring Claimant's account current.

29. Claimant sent the following QWR's:

October 10, 2008 (EXHIBIT 2)

December 26, 2008

January 19, 2012

May 14, 2012

August 4, 2012

## III. ARGUMENT

## VIOLATION OF CALIFORNIA CIVIL CODE 2954 (a)(1)(c) AND BREACH OF CONTRACT

1. California Civil Code 2954 (a)(1)(c) states:

> *(a)(1)  No impound, trust, or other type of account for payment of taxes on the property, insurance premiums, or other purposes relating to the property shall be required as a condition of a real property sale contract or a loan secured by a deed of trust or mortgage on real property containing only a single-family, owner-occupied dwelling, except:  (A) where required by a state or federal regulatory authority, (B) where a loan is made, guaranteed, or insured by a state or federal governmental lending or insuring agency,* ***(C) upon a failure of the purchaser or borrower to pay two consecutive tax installments on the property prior to the delinquency date for such payments,*** *(emphasis added)*

Debtor violated California Civil Code 2954 (a) (1) (c) on October 4, 2008 when Debtor established an escrow account for the payment of taxes.  The law requires that a borrower have two consecutive delinquent property tax payments before an escrow account can be established for the payment of property taxes.  As none of Claimant's taxes were delinquent ( 2), Debtor was prohibited from opening an escrow account for the payment of property taxes without Claimant's permission.  As

11

a result, Debtor substantially breached the mortgage agreement, and is therefore barred from collecting any late fees or other costs that Debtor charged to Claimant's account thereafter.

**Violation of California Civil code 2954.1 (a) 12 U.S. Code § 2609 (a) (1)**

Debtor stated on an escrow analysis statement that Claimant's November 1, 20008 payment would "automatically be adjusted" back to principle, and interest if the full amount owed for the insurance was received. Proof of insurance was submitted, Debtor received a full refund, and the policy was cancelled on or about October 23, 2008. Debtor failed to remove the charge and did not automatically adjust Claimant's required payment by the stated date so Claimant's payment was considered insufficient and placed in a suspense account and charged a late fee. This required that Claimant make a deposit into escrow when none was owed in violation of California Civil code 2954.1 (a), this is also in violation of 2954.1 (a) and RESPA 12 U.S. Code § 2609 (a) (1), and as the mortgage agreement requires that Debtor abide by RESPA, Debtor breached the mortgage agreement for failing to do so.

**Violation of the Fair Debt Collections Practices Act §§ 1692-1692p. § 808.  Unfair practices (1)**

**15:1692 Fair Debt Collection Act California**

Debtor violated the Fair Debt Collections Act and the Rosenthal Act when Debtor charged Claimant for escrow charges for taxes on or about December 1, 2008. Claimant had learned in May 2012 that Debtor had opened an escrow account in violation of California Civil Code 2954 and therefore the charges for the associated escrow account were prohibited.

13

Debtor called claimant several times a day as a result of wrongfully declaring Claimant's account as delinquent.  Each time, Claimant would explain why he felt his payment was correct yet the representative was only concerned about the payment it considered outstanding. This occurred day after day for months on end.  In May 2012 Claimant found information regarding California Civil Code 2954 and became aware that Debtor had taken action in violation of that code when Debtor established an escrow account for the payment of taxes as Claimant had not had two consecutive delinquent tax payments.

## VIOLATION OF RESPA 2605(e)(1)(a)AND MORTGAGE AGREEMENT:

**All of Claimant's QWR's meet RESPA qualifications as outlined in RESPA 2605 (e) (1) (B)**

"For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

**Claimant's correspondence all meet the standards to be considered a Qualified Written Request.**

- Each and every letter contained Claimant's name, account number, and a reason why Claimant thought the account was in error, as well as made a request for information.

- Each letter was sent to the address designated by Debtor for QWR's;

- October 10, 2008 is also considered to be a QWR as it satisfies the same criteria except at the time the letter was sent, Debtor did not have a designated address for QWR's. Due to statute of limitations, it is not included in the Proof of Claim but is evidence of failure to respond.

**2605(e)(2) states:**

*The servicer must acknowledge receipt of the QWR within twenty (20) days, unless the servicer takes the action requested by the QWR prior to the expiration of the 20-day period. 12 U.S.C. § 2605(e)(1)(A). Within sixty (60) days of receiving a QWR, the servicer must conduct an investigation and respond to the borrower in one of three ways: (1) by making appropriate corrections to the borrower's account (such as crediting erroneous late charges or penalties) and transmitting to the borrower a written notification of such correction; (2) by providing the borrower with a written explanation of the reasons why the servicer believes that the borrower's account is correct; or (3) by providing a written explanation that either includes information requested by the borrower or an explanation of why the requested information is unavailable or*

15

*cannot be obtained by the servicer. See Collier v. Wells Fargo, 2006 WL 1464170 (N.D. Tx. May*

*26, 2006). (Emphasis added)*

## THE FOLLOWING APPLIES TO ALL QWR RESPONSES (AND ALEGED RESPONSES)

### Debtor Failed to do an Actual Investigation into issues raised by Claimant therefore all responses are not in compliance with RESPA

"An investigation is, "[t]he action of investigating; the making of a search or inquiry; systematic examination; careful and minute research." Oxford English Dictionary (2d. ed.1989). Marais v. Chase Home Fin., LLC, 24 F.Supp.3d 712, 723 (S.D. Ohio 2014)

Debtor either did not have the knowledge of, or simply chose to ignore, the key elements that are at the root of the errors effecting Claimant's account. California Civil Code 2954(a)(1)(c) is a basic law that applied to the multitude of mortgages regulating the establishment of escrow accounts for taxes throughout California that were serviced by Debtor. Debtor did not consider State regulations and their impact on the mortgage agreement, then by default California Civil Code was excluded from any type of investigation. The other alternative is Debtor chose to ignore it. The same is true regarding Debtor's stated policy that was to have 'automatically' removed

16

escrow charges from Claimant's account for his November 1, 2008 payment. If Debtor is not aware of its own policy, then it is not considered when investigating the account error in Claimant's QWR.

Debtors investigation and response is in keeping with that of Chase's in Marais vs Chase (Marais v. Chase Home Fin., LLC, 24 F.Supp.3d 712, 723-24 (S.D. Ohio 2014) the Court found Chase not to have been responsive to the QWR because it simply enclosed copies of documents from their online system. There was not 'systemic examination' or 'careful search.'"

## None of the QWR responses provide an explanation after an investigation as required by RESPA

Each and every response (including alleged responses) fails to provide an explanation as to why Debtor believed Claimant's account was correct after an investigation of the errors stated in Claimant's QWR's as required by RESPA. As an investigation of those errors was not conducted, naturally any explanation offered excludes them, and therefore what is provided is non-responsive to Claimant's QWR's.

## Debtor's QWR responses demonstrate a shared flawed basis on which to build a QWR response

To show that Debtor believed Claimant's account was correct, Debtor routinely provided copies of transaction history, escrow statements and mortgage documents. On occasion, Debtor also provided quotes from the servicing records. What is standardized about these responses is the mistaken premise that all of that information is correct. Transaction histories and escrow statements were correct, Debtor's actions as described in the servicing records were without error

themselves and undoubtedly proved Debtor acted correctly, Debtor provided those documents in response to Claimant's QWR's. The problem is that Claimant's QWR's contained assertions that those documents were in error and required an answer that was not contained in those documents as it involved an error based on company policy and an error based on a violation of State regulation. As a result, the issues raised by Clamant were not addressed.

The same is true with regard to supplying quotes from servicing record notes:

For example, Debtor offered the following information stated to have been taken from the servicing records and then presented as if support for Debtor's position that Debtor acted correctly and Claimant's account was correct:

> "According to our records in May 2009, the Wichita County Tax Collector advised a tax refund was not available. However they applied our payment to the 2008 first installment due December 10, 2008."

This information does not support a position that Claimant either acted correctly or that Claimant's account was correct. It does the opposite. Aside from the property being located in San Francisco County, not Wichita County, the information shows the following:

- Debtor's tax payment was applied toward future taxes, not delinquent taxes

- Therefore, Claimant's taxes had in fact already been paid

- Had Debtor made a timely request as Claimant had asked, Debtor would have had a full refund.

Each point shows there was a problem with Claimant's account as a result of Debtor's property tax payment, which Debtor failed to acknowledge or correct.

18

**Debtor includes addition of bogus quote; shows intent to perpetuate improper escrow account**

The service records quote mentioned above is even used in the objection to Claimant's proof of Claim apparently as proof of Debtor's complete response and in answer to Claimant's tax issue raised in the QWR when clearly it does not. Further, Debtor felt the need to add a false statement to the quote by adding:

"…and if Claimant made that tax payment Claimant would need to contact County."

The QWR response contains nothing even remotely similar to that quote. Even though Debtor knows its payment was not used toward the April 10 tax payment as Claimant had already made payment, Debtor's embellishment shows that it still would not make a refund request and that if there was a surplus because Claimant had paid his December 10 taxes, it was up to Claimant to request a refund.

**Debtor's objection includes bogus QWR response and misrepresents documentation purported to be Debt Validation response**

On December 26, 2009 Claimant sent a Validation of Debt request to Debtor ETC. Claimant also addressed a copy of the letter specifically to Debtor GMACM the same day to the address Debtor identified as where to send QWR's. Claimant has provided certificate of mailing and certified mailing receipts. Claimant also sent a copy addressed to the Tax Department at GMACM to that departments specific address.

19

The letter was more than a mere request for debt validation, it notified servicer as to why Claimant felt his account was in error and requested information such as:

> o  Debtor charging Claimant escrow charges for the payment of future taxes paid for by Debtor;
>
> o  Wrongfully charged Claimant late fees
>
> o  Wrongfully reported that the loan was delinquent to credit agencies
>
> o  Requested a copy of the October 4th email claimed to have been sent to Debtor by the San Francisco Tax Board.

Claimant did not receive a response to this (the December 26, 2009) QWR or the Debt Validation request.

Claimant also did not receive a response to his January 19, 2012 QWR until provided in a later QWR response.

Claimant notified Debtor of this fact in a follow up QWR dated May 14, 2012.

Debtor responded to the May 14, 2012 QWR on June 5, 2012 and made the following allegations:

> •  Debtor claims it had responded to the January 19, 2012 QWR and enclosed a copy of that response dated February 6, 2012 as proof.  The document provided as proof, however, contains an escrow analysis performed on March 7, 2012, more than a month after the response is claimed to have been mailed
>
> •  Debtor also claims that the Debt Validation Request sent to ETS was responded to on January 11, 2010, and that a copy of the response would arrive under separate

cover. It did not. Claimant had previously contacted both ETS and GMACM and neither had a record of a response or any type of correspondence dated January 11, 2010.

- Claimant did receive under separate cover, a letter from GMAC dated January 22, 2010, however that is the letter sent from the Tax Department in response to Claimant's letter of December 26, 2009. The letter does not address the issues raised, but does state that Debtor made the tax payment in order to avoid a tax sale. A tax sale in California, however, can only occur if taxes are delinquent for five consecutive years, and Claimant's taxes were not delinquent at all.

- Debtor also claimed not to have received the December 26, 2009 QWR even though Claimant has a certificate of mailing.

- Debtor also claimed that the previous response dated February 6, 2012 provided Claimant with the information relating to the servicing of his account as the law, specifically the Real Estate Settlement Practices Act (RESPA) requires, when it did not.

- Debtor also included a BPO that including a picture of the front of the house purportedly taken in December. The BPO is not legitimate as the photo show sunlight on the front of the house as well as leaves on the trees of a deciduous tree that loses a majority if not all of its leaves by mid-November. The house faces north and never gets hit with sunlight that time of year. The leaves on the tree and lighting are that of a spring or fall time frame.

**Debtor claims it sent complete responses, but does not claim that they were compliant with**

**RESPA**

"Chase would have this Court decide that because it provided documents satisfying *some* of the

individual items of information requested by Marais, that it fully met its responsibilities under

RESPA. But RESPA is to be read liberally, not niggardly." *Marais v. Chase Home Fin., LLC*, 24

F.Supp.3d 712, 725 (S.D. Ohio 2014)

1. Each and every QWR response provided by Debtor failed to provide what could be considered a substantial response. None of the responses address the tax payment error or the escrow account error, nor did they provide even a majority of the information requested.

2. Even when Debtor was provided with an itemized, numbered list Debtor responded only to a select few, of which many of these were nonresponsive. (May 14 response dated June 5) Debtor even skipped over the numbered item that questioned the legality of the tax payment.

3. All but one of the numerous transaction histories provided did not included transaction histories for the time frame of the errors stated in the QWR's. The request was for transaction history from loan inception to present day.

4. Repeated requests for copies of Broker Price Opinions (BPO's) went unanswered in several responses.

5. Repeated requests for copies of property inspections also went unanswered in several responses.

22

6. Responses to previous QWR's were always claimed as having provided a complete response (including the objection to this claim) when they had not; hence the need for follow-up QWR's.

7. Debtor wrongfully claimed that the reason the tax payment was made was to avoid a tax sale. The State of California can only have a tax sale after five consecutive years of delinquent taxes.


To summarize, Claimant never received a response to his QWR dated December 26, 2009 or his Validation of Debt of Request sent December 26, 2009, or the QWR sent January 19, 2012. Debtor provided false documentation of a response, misrepresented a letter as being a Debt Validation response, and denied receiving a QWR where there is proof that it was mailed.


**Debtor fails to address errors presented and does not provide information requested**

Debtor responds to information request for a copy of the electronic communication received from the San Francisco County Tax Collector on October 4, 2008. Debtor responds by providing a quote from the service log, "Our records indicate, on June 19, 2008 correspondence was mailed to advising…" A quote from service records does not provide the document requested.

When asked for the document that allowed Debtor to pay Claimant's property taxes and open an escrow account when it is prohibited by California law, Debtor responds with the same servicing records quote.

Again, when Debtor is faced with the fact that Debtor obtained information that Claimant's taxes had been paid, that the payment went toward future taxes not delinquent taxes, and that Debtor did not make a timely request for refund, Debtor simply restates the events from the servicing record back to Claimant

Claimant asked specific questions regarding escrow analysis statements received from Debtor as to how certain calculations were arrived at, i.e. differing beginning and ending balances from one statement to the next.  Debtor failed to address any of these issues.

Claimant asked for copies of any signed repayment agreements with his signature on them proving that Claimant was aware that his payments had to be paid by cashier's check or MoneyGram.  Debtor failed to provide the information, yet did not address the fact that Debtor rejected claimant's payment by personal check.

## NO RESONSE TO VALIDATION OF DEBT REQUEST YET DEBTOR CONTIUED DEBT COLLECTION ACTIVITIES IN VIOLATION OF 15 USC § 1692

Claimant sent a request for validation of debt and a QWR upon receiving the Notice of Sale, but both went without response.  Debtor continued debt collection activities.    As the situation clearly had not been resolved for Claimant, he followed up with several additional QWR's that raised the tax issue, especially when Claimant discovered the California Civil Code 2954 in May of 2012.  Claimant also repeatedly pointed out that Debtor had paid future taxes not delinquent taxes.  Of five QWR's sent, three went without a response. Of those Claimant did received, none of them addressed the issues.  Horribly and emotionally frustrated that Debtor just ignored Claimant's QWR's and that Debtor had wrongfully charged him, and that Debtor did not take action.

Claimants lost sleep, was depressed, embarrassed and there were arguments with his partner over finances and the potential for losing the house. Claimant was beyond disbelief and spent many hours crafting the next QWR to see if someone would pay attention to an obvious glaring error caused by on Debtor. Instead Debtor failed to respond as responses were shown as being still in the system and not sent.

### Debtor over-insured and overcharged Claimant in violation of California Civil Code Section 2955.5

The replacement cost of Claimant's home in 2008 was stated to be $680,000. Debtor purchased hazard insurance coverage in the amount of $723,000. The amount of coverage was well above the replacement cost of $330,000 (EXHIBIT 3) which was estimated from an in-person appraisal. This is in violation of California Civil Code Section 2955.5 that prohibits coverage above the replacement cost of improvements.

As you can see, Debtor clearly did not respond to the QWR's in accordance with RESPA requirements.

## IV. CONSLUSION

WHEREFORE, for the reasons set forth above, the Claimant respectfully requests that this Court deny the Objection, or in the alternative, in the event that the Court is not prepared to deny the Objection, that Claimant be given the opportunity to conduct discovery in this matter and that an evidentiary hearing be held. In addition, Claimant respectfully requests such other and further relief that the Court deems just and proper. Claimant also submits his amended Claim to be for:

Trust Account Violations, Breach of Contract, RESPA 2605, CA Civil Code 2954, 2954.1, Fair

Debt Collections Practices Act and CA Rosenthal Act, 15 USC § 1692, CA 2955 claimant has

added emotional damages under RESPA, Rosenthal Act and Fair Debt Collections Practices Act,

plus damages noted by OCWEN as prior servicer charges not previously included and insurance

overcharges.

## V. DISPUTED ISSUES OF FACT SHOULD BE SUBJECT TO AN EVIDENTIARY HEARING

There is a clear conflict between the parties as to the critical facts regarding the Validation of debt

response and the responses to the QWR's.  In the event that this Court does not consider the

evidence sufficient for judgment for Claimant, then Claimant requests that the matter allow for

discovery and be set for an evidentiary hearing. The Borrowers Trust relies virtually entirely on

the Lathrop Declaration for the factual basis and its evidence in support of the Opposition.

However, Lathrop's sole competency to testify is that she has reviewed GMACM's records and is

reporting their contents. She has no firsthand knowledge of any of the facts contained in the

records. She cannot testify whether the records are truthful, nor can she testify as to whether they

are complete. These records are cryptic, and she cannot testify as to whether these records omit

important facts, or are self-serving.

## VI. BREAKDOWN OF AMOUNTS CLAIMED AND FURTHER SUPPORT:

### Statutory Damages Pattern or Practice

1. **PENALTY/DAMAGES: $1,000**: GMAC failed to respond to Claimant's December 26, 2009 Debt Validation Request yet continued to conduct collection activities.

   As such, GMAC acted in violation of the Fair Debt Collections Practices Act" as codified at 15 USC § 1692, which stipulates that a debt collector must, if requested, provide validation of the alleged debt and has to cease and desist ALL collection activity until validation of the original note is provided. GMAC moved forward anyway with foreclosure and collection activity. The Fair Debt Collections Practices Act, 15 USC § 1692 which provides: The FDCPA is a strict liability law, which means that a consumer need not prove actual damages in order to claim statutory damages of up to $1,000

2. DAMAGES/PENALTIES RELATED TO QUALIFIED WRITTEN REQUESTS (QWR'S):

   GMAC failed to respond, did not provided information significant to the QWR request, and failed to conduct a proper investigation regarding the disputed amounts/charges, fees, etc. claimed were owed. As a result, Claimant paid charges to which Debtor was not entitled. Claimant is also entitled to statutory damages

The Dodd-Frank Wall Street Reform and Consumer Protection Act was signed into law on July 21, 2010. The Act raises the available damages for failing to respond to RESPA requests as required. The available damages for each violation under 12 U.S.C. § 2605 changed as follows:

- Prior to July 21, 2012, individuals can claim actual damages plus $1,000
- As of July 21, 2012, the amount is increased to actual damages plus $2,000;
- If there is a pattern of practice of not responding properly, the penalty is $2000

A. ) **$1,000 penalty**: December 26, 2009 copy of debt validation request sent copy to GMAC as a QWR which went without response.

- In a, 2012 letter from GMAC, GMAC the QWR was never received. GMAC, however, in the same letter, GMAC provided false documentation (as discussed above) of a letter claimed to prove GMAC responded to my debt validation request

B. **$2,000 penalty:** January 19, 2012 QWR: No response from GMAC

GMAC provided false documentation:

C. GMAC claims that it responded on February 6, 2012, however as previously stated, the documents GMAC provided claim to have been sent on February 6, 2012 however the document provided as proof contains an escrow analysis dated March 7, 2012, performed a month after the letter was dated. Clearly a falsified document.

D. **Damages: $2,000**:  Response to May 14, 2012 QWR: Failure to do a reasonable investigation and failure to provide key information requested.

- Falsely claims I agreed on Dec. 18 to repayment agreement yet did not/could not provide signed copies of repayment plans as requested (as I never received plan).

- I informed GMAC that California Civil Code 2954 (a)(1)(c) prohibited GMAC from establishing an escrow account for property taxes as they had done, yet GMAC did nothing about it..   Damages $2,000

E. **Damages $2,000**:   August 4, 2012 QWR: GMAC failed to provide information requested and take corrective action regarding the errors.

- Repeated request made in two previous QWR's for a copy of the electronic communication GMAC claimed to have received from San Francisco County informing GMAC that I was delinquent on my April 2008 payment, as this was stated by GMAC to be the basis prompting GMAC to make payment for me. This request was ignored each time it was requested as it does not exist because the San Francisco County does not send out such communications.  Proof once again that GMAC will falsify claims to support its wrongful actions.

- Again requested copies of signed documents for the repayment plans GMAC claimed I agreed to, but only provided unsigned documents that are missing key information such as payment amounts, amounts owed, etc.

- Transaction history provided does not include information regarding an explanation of charges listed as "other" as requested, which are substantial in amount.

- Again, did not address tax issue that started the whole problem

F. **DAMAGES $2,000**:  As GMAC failed to provide information requested numerous times, presented falsified documentation in their responses, and clearly did not do a reasonable investigation into the dispute, especially regarding the stated violations of California Civil Code regarding the requirements for establishing and escrow account and required deposits, there is a clear pattern of practice demonstrated by GMAC with regard to response to the QWR'S sent.

3. Refund of late charges in the total amount of **$2,578.80**

4. Inspection fees and broker price opinion charges: **$3,425**

5. Charges for force placed insurance **$ 12,782**

GMAC's actions and breach of contract caused me significant financial harm by forcing me to pay fees, charges, and penalties which were not owed, forcing me to divert funds from other financial needs in order to pay GMAC demanded amounts in order to prevent the sale of my home through foreclosure.

- February 2009-10  $6,391
- February 2010-11   $6,391

GMAC reported the negative condition of my account to the credit bureaus and did not report

that I was disputing the amounts claimed. In or around the first week of January 2009 Citibank

and Bank of America each sent me a letter informing me that my lines of credit (EXHIBT 5)

were now closed because I was delinquent on a primary mortgage. As a result, my financial

plans were no longer valid and I could not pay the insurance premium due two weeks later or

the property or my April tax payment due shortly thereafter as planned.  GMAC charged me

for force placed insurance as a result at 7 times my normal insurance rate and my taxes went

unpaid for the first time incurring penalties.


6. Reimbursement of penalties and taxes owed due to forced sale of IRA to make repayment

   agreement pmts: TOTAL TAXES: **$6,578**

7. Early withdrawal penalty 10%: = 3,168

   > Additional regular income tax paid on $31,684= $3,4108  when funds would have
   >
   > been withdrawn after retirement and taxed at a lower rate.


7. Related Attorney's Fees and legal costs: **$4,160**

8. **$1,000** statutory damages, Violation of the Fair Debt Collections Practices Act; §§ 1692-

   1692p. § 808.  Unfair practices (1)

9. **$1,000** for violation of the California Fair Debt Collections Practices Act (Rosenthal Act)

**$50,000** emotional damages caused by Debtor's failure to respond to Claimant's 2012 QWR's and

as Claimant had discovered in May 2012 that Debtor had violated California Civil Code 2954 by

opening an escrow account for the payment of taxes therefore found that Debtor also acted in violation of the Fair Debt Collections Practices Act and the Rosenthal Act as Debtor had clearly charged Claimant for fees and costs that were not owed. Claimant expected that the clarity of the civil code violation would show that Debtor had made improper charges for fees and cost which would prove to Debtor that his account was in error, but the information did not change Debtor's position. As Claimant now realized he had valid legal grounds for his assertions, Debtor's failure to adequately respond to the May and August QWR's caused Claimant sleepless nights, arguments with his partner, and extreme depression as Claimant felt helpless, unimportant, humiliated and distraught at his failure to get Debtor to acknowledge the fact that Debtor had taken illegal action and failed to correct Claimant's account and refund the wrongful charges. Damage to Claimant's mental wellbeing was compounded by the fact that Debtor responded to the May and August QWR's by including false documentation as proof that previous QWR's had been sent a response, by sending a copy of correspondence wrongfully claimed to be a copy of the Debt Validation Request response, by claiming that pervious QWR's were not received when Claimant had proof of mailing, and by reciting excerpts from a service record offered as if responding to Claimant's request for the document Debtor claimed to have received informing Debtor that Claimants property taxes were delinquent. To this very day, nearly 5 years have passed since sending the May 14, 2012 QWR, and the duration of stress has continued through for that time as Claimant continues to have anxiety, stress, depression, lost sleep, and more arguments with his now spouse because Debtor failed to address the wrongful and illegal actions stated in the May 14 and August 4 QWR's. Had Debtor responded to Claimant's QWR's as required, the Civil Code violation, the unwarranted charges would have been refunded, and Claimant would not be in the position he is in today of having to continue to seek resolution for Debtor's errors. **United States District**

Court, N.D. Ohio, Western Division. Richard DAVIS and Constance Davis, Plaintiffs v.

CREDITORS INTERCHANGE RECEIVABLE MANAGEMENT, LLC, et al., Defendants.

Case No. 3:07CV1522. Nov. 12, 2008

585 F.Supp.2d 968

10. Overcharge for Lender Placed Insurance in violation of California Civil Code Section 2955.5

    i.  Estimated cost of insurance for 50% less coverage  $723,000  reduced to $340,000)

        1.  REFUND OWED FOR BOTH YEARS $6,391

11. Prior Servicer Fees **$498**  (see Ocwen Statement EXHIBIT 4 )

James P. Kennedy

700 E. Sonora Road

Palm Springs, CA  92264

760-969-3769

jamespkennedy@twc.com

March 3, 2017

# EXHIBIT 1



## Office of the Treasurer & Tax Collector

### Previous Year s Property Tax Information

**Payment History**

| | |
|---|---|
| **Block / Lot:** | 3622/92 |
| **Tax Bill #:** | 119711 |
| **Property Address:** | 3825 21ST ST |

The information on this screen represents only regular taxes for the 2008-2009 fiscal year. Please note that the accuracy of the information may be affected by pending payments and corrections. The information does not reflect any taxes for prior fiscal years, nor unsecured taxes, supplemental taxes, or escape taxes that may also have been paid or that may be outstanding.

**Payment for prior tax year: 2008-2009**

| Installment | Taxes | Late Cost | Late Fee | Installment Total | Date Paid |
|---|---|---|---|---|---|
| Installment 1 | $2,632.86 | | | $2,632.86 | 11/24/08 |
| Installment 2 | $0.00 | | | $0.00 | |

**If you have questions about the information listed above, please <u>contact the Treasurer & Tax Collector</u>**

**Online Payment Support**
For support on making payments via the web please e-mail <u>support@link2gov.com</u>

UNITED STATES
POSTAL SERVICE®

Certificate Of Mailing

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing.
This form may be used for domestic and international mail.

From: Jana P. Kinney
70 E Sonora Rd
Palm S. CA 92264

To: GMAC   Tax Dept
P.O Box 56970
Dallas TX 75356

U.S. POSTAGE
PALM SPRINGS, CA
92262
AUG 05 08
AMOUNT
$1.10

PS Form 3817, April 2007  PSN 7530-02-000-9065

# EXHIBIT 2

James P. Kennedy
700 E. Sonora Road
Palm Springs, CA 92264

October 10, 2008

GMAC Mortgage
Attn: Customer Care
P.O. Box 4622
Waterloo, IA  50704-4622

RE:                         James Kennedy
Loan Number:        0221057516
Property Address:   3825 21st Street, San Francisco, CA 94114

Dear Sir or Madam:

I am writing to you regarding the above mentioned account, and escrow charges that are erroneously charged to my account for force placed insurance.

GMAC recently purchased homeowner's insurance for my property when I already had insurance coverage in place.  The charges are to be removed as stated on the escrow analysis statement when premiums are refunded in full to my escrow account and my monthly payment reverts back to principle and interest only of $1,719.23 per month starting with the November payment.

Thank you very much for your help.  I look forward to hearing from you.

Sincerely,

James P. Kennedy

# EXHIBIT 3



PO Box 4025
Coraopolis, PA 15108-6942

Notification Date:  08/24/2008

000128 - 000281
JAMES KENNEDY
700 E SONORA RD
PALM SPRINGS, CA 92264-8436

## NOTICE OF PLACEMENT

RE:  **REFERENCE NUMBER: 5901**
Loan Number: 5901-0000-0221057516
Hazard Insurance Uninsured Date: 05/19/2008
Property Location:    3825 21ST STREET
SAN FRANCISCO CA  94114

Certificate Number:   B-7528910                     Expiration Date:  05/19/2009
Effective Date:         05/19/2008                    Annual Charge:  $6,391.00
Dwelling Limit:        $723,000.00

Deductibles: All perils except Windstorm/Hail
Residential Occupied:      $500 (except GU, NM, OK, VT, WV - Deductible $250)
Residential Vacant:          $750 (except OK, NM and VT - Deductible $500, GU and WV - Deductible $1,000)
Commercial Occupied:     $500 (except CA, GU - Deductible $1,000)
Commercial Vacant:         $1,000 or 2% of the insured amount, whichever is greater
Vandalism and Malicious Mischief:  $5,000 or 2% of the insured amount, whichever is greater

(Deductibles may change if occupancy changes.)

For Residential properties in the following states:  AL, FL, GA, HI, LA, MS, NC, SC and TX
Windstorm/Hail Deductible Applies:  Greater of $2,000 or 2% of dwelling limit

Dear Customer:

We have obtained lender-placed insurance coverage with BALBOA INSURANCE COMPANY to provide the necessary insurance protection under the terms of your mortgage. We have notified you during the past 90 days that this insurance would be placed if we did not receive a copy of a valid hazard insurance policy.

The cost of the insurance in the amount of $6,391.00 was advanced for the period 05/19/2008 to 05/19/2009. The coverage amount placed would be based on the replacement value, which we believe is the last known amount of coverage you purchased. If we do not have that information, the coverage amount will be based on the current principal balance of your mortgage loan. Lender-placed insurance does not provide guaranteed replacement cost coverage. Appropriate changes to your monthly payment will be made as indicated in our previous letter.

This insurance will remain in force unless we receive evidence of a hazard insurance policy with an effective date on or before 05/19/2008. Evidence of a valid policy in effect at a later date will result in cancellation of the coverage. Any insurance charges not used will be credited to your account.



Safeco Plaza
Seattle, WA 98185-0001

A Liberty Mutual Company

Friday, April 18, 2014

1 MB   *A-03-W4G-CM-00554-1

JAMES KENNEDY
700 E SONORA RD
PALM SPRINGS CA 92264-8436

MPX INSURANCE SERVICES INC

Dear JAMES KENNEDY,

Thank you for entrusting Safeco Insurance to protect your home and property. Occasionally we do a review of homes that are insured with us to make sure that our records accurately reflect the condition of the property and premises. An onsite inspection will be conducted at 3825 21ST ST.

Safeco is working with Mueller Services, Inc. to review the exterior of your property. This includes measuring your property, viewing exterior features and taking photographs.

Within the next few days, a field representative from Mueller will be in your area to complete the review. The representatives will wear photo identification and will introduce themselves if you are home. However, you do not need to be home for this exterior inspection to be completed.

If your property is insured under a landlord policy, please notify your tenants.

We appreciate your understanding and assistance with this review. If you have any questions about this process, please contact your independent Safeco agent.

Thank you for being a Safeco customer — we appreciate your business.

Sincerely,

Debbie Akers

Debbie Akers
Vice President, Safeco Insurance Underwriting Operations

# EXHIBIT 4

Ocwen Loa

WWW.OCWEN.COM

Helping Homeowners is What We DoITM

| Loan Numl | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Customer I | | 221057516 | | | | | | |
| CheckOr | PaymentDue | James Kennedy | | | | | | |
| Number | Date | PaymentR( eivedDate tionDate | DateAsses: edOrTrans s | DaysBetwe enPaymen | Descriptio dOrAssess | AmountAp ( ation | PrincipalAr tion | InterestAp tion |
| | 09/01/2013 | | 0 Beginnin, | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 09/01/2013 | 03/31/201 | 0 Loan Disl | ($152,163. | ($153,189. | $0.00 | $0.00 | $0.00 |
| | 09/01/2013 | 03/31/201 | 0 Escrow A Adjustment | ($10,516.2 | $0.00 | $0.00 | ($10,516.2 | $0.00 |
| | | 04/01/201 | 0 Property Expense | $83.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | 04/01/201 | 0 Property Expense | $83.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | 04/01/201 | 0 Property Expense | $83.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | 04/01/201 | 0 Prior Ser | $249.00 | $0.00 | $0.00 | $0.00 | $0.00 |

# EXHIBIT 5



4050 REGENT BLVD, MS N2A-215
IRVING, TX 75063

January 1, 2009


JAMES P KENNEDY
700 E. SONORA RD
PALM SPRINGS CA 92264


Dear JAMES P KENNEDY:                          Account Number:9222670946

As a servicing agent for CITIBANK, N.A., we periodically review the credit profiles of
Citibank EQUITY SOURCE ACCOUNT customers to ensure that they continue to meet Citibank's
lending standards.

Your recent credit profile, sent to us by the consumer reporting agency listed below,
indicated the following circumstance(s):

EXISTENCE OF DELINQUENCY ON FIRST MORTGAGE
DELINQUENT MANNER OF PAYMENT ON CREDIT OR OTHER OBLIGATIONS

As a result of this information, Citibank has decided that it will not continue to extend
credit to you on this account.

In accordance with the terms and conditions of your Account Agreement, your account will
be suspended immediately. You will no longer have access to your line of credit, and we
will not be able to honor any checks drawn against your account. Accordingly, please
destroy all unused checks immediately.

Please remember that you must continue to pay at least the minimum payment due, if any,
each month. You will continue to receive a monthly statement as long as there is a
balance due on your account.

Since our decision was based in part on information provided by the consumer reporting
agency(s) listed below, please contact that agency directly if you have questions about
the contents of your credit report. Your inquiry must be received within 60 days of
receipt of this letter. Please review the 'Information from Consumer Reporting Agencies'
section on the reverse side of this letter for additional information. The reporting
agency(s) are: Experian, 701 Experian Parkway, Allen TX 75013, (888)397-3742

If you have questions about Citibank's decision, please write to us at 4050 Regent Blvd,
MS N2A-215, Irving, TX 75063, or call (800) 685-0935*. If you believe that we are in
error, or if you have corrected this situation and want to reinstate your account, you
must request reinstatement by writing to us at the above address. Please outline the
reasons for reinstatement and supply appropriate documentation in support of your
request.

We apologize for any inconvenience caused by this action.

Sincerely,
Terry Johnson
Citibank, N.A.

*Please see reverse side for important information.
To ensure quality service, incoming calls are randomly monitored. For TTY service, call (800) 945-0258.
Checking Plus®, Ready Credit® and Equity Source Account® (ESA) are registered service marks of Citicorp.

Reference #108122700374000(BC10 - MB11E)

Item SU205 (Rev. 10/07)


EQUAL HOUSING
LENDER

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
| --- | --- |

Name of Debtor and Case Number:
**Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**JAMES P. KENNEDY**

Name and address where notices should be sent:

**JAMES P. KENNEDY
700 E. SONORA ROAD
PALM SPRINGS, CA 92264**

Telephone number: **760-969-3769**    email: **JAMESPKENNEDY@TWC.COM**

Name and address where payment should be sent (if different from above):

Telephone number:    email:

☑ Check this box if this claim amends a previously filed claim.

Court Claim
Number: CGC-12-524922
*(If known)*

Filed on: 10-03-12

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $ ___98412___

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: TRUST ACCOUNT VIOLATIONS, BREACH OF CONTRACT, CALIFORNIA CIVIL CODE 2954, see attached doc
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
| --- | --- | --- |
| 0221057516 | (See instruction #3a) | (See instruction #3b) |

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:
Value of Property: $_____ Annual Interest Rate_____% ☐ Fixed ☐ Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

if any: $_____    Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

9. Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or    ☐ I am a guarantor, surety,
(Attach copy of power of attorney, if any.)    their authorized agent.    indorser, or other codebtor.
(See Bankruptcy Rule 3004.)    (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: JAMES P. KENNEDY
Title:    03/03/2017
Company:    (Signature)    (Date)
Address and telephone number (if different from notice address above):

Telephone number:    Email: jamespkennedy2TWC.COM

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$_____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*