Hearing Date: March 23, 2016 at 10:00 A.M. (ET)

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS
NINETY-FIFTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY
BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIMS, AND (III)
ALLOW IN FULL BORROWER CLAIM) AS TO CLAIM NO. 4930**

ny-1275522

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

     *Background Facts* ..............................................................................................................2

     *Hazard Insurance* ..............................................................................................................3

     *QWR Responses* ................................................................................................................5

REPLY ............................................................................................................................................6

     *Breach of Contract Claim*..................................................................................................7

     *Statutory Violations* ..........................................................................................................9

CONCLUSION .............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.),
   954 F.2d 167 (3d Cir. 1992) ............................................................................................7

Feinberg v. Bank of N.Y. (In re Feinberg),
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) ..............................................................................7

Gonzalez v. Resurgence Fin., LLC,
   No. ED CV 14-172 DSF (PJW), 2014 WL 12600979 (C.D. Cal. May 12, 2014) ..................11

In re Oneida Ltd.,
   400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
   Oneida Ltd., No. 09-cv-2229 (DC, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
   2010) ..................................................................................................................................7

In re Residential Capital, LLC,
   507 B.R. 477 (Bankr. S.D.N.Y. 2014) ..............................................................................7

Van Egmond v. Wells Fargo Home Mortg.,
   No. SACV 12-0112-DOC (MLG), 2012 WL 1033291 (C.D. Cal. Mar. 21, 2012) ................10

Walker v. Ford Motor Co.,
   Case No. 3:16-cv-06297-WHO, 2017 WL 956656 (N.D. Cal. Mar. 13, 2017) ...............8

**STATUTES**

11 U.S.C. § 502(a) ....................................................................................................................6

11 U.S.C. § 502(b)(1) ............................................................................................................6, 7

15 U.S.C. § 1692k ..................................................................................................................11

15 U.S.C. § 2605(e)(2) ...........................................................................................................10

Cal. Civ. Code § 1788.30(f) ...................................................................................................11

Cal. Civ. Code § 2954(a)(1) .....................................................................................................9

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] filed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply") and the Supplemental Declaration of Sara Lathrop, Senior Claims Analyst to the Borrower Trust (the "Supp. Decl."), annexed hereto as Exhibit 1, to the response filed by James Kennedy (the "Respondent") [Docket No. 10332] (the "Response") to the *ResCap Borrower Claims Trust's Ninety-Fifth Omnibus Objection to Claims ((I) No Liability Borrower Claim, (II) Reduce and Allow Borrower Claims, and (III) Allow in Full Borrower Claim* [Docket No. 10296] (the "Objection").  The Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.    As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Response and the claim at issue, and for the reasons described herein, the Books and Records do not show any liability due and owing to Respondent. Moreover, as the Objection shifted the burden of proof back to Respondent, Respondent must demonstrate a valid claim against the Debtors' estates by a preponderance of the evidence.

2.    For the reasons set forth in the Objection, this Reply, and the Supplemental Declaration, Respondent has failed to establish that his claim is valid and should be allowed against the Debtors' estates.  Respondent's breach of contract claim fails because he has not demonstrated a violation of either the Note or the Deed of Trust.  Additionally, Respondents' claims for violation of the Real Estate Settlement Procedures Act ("RESPA") and Cal. Civ. Code

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

ny-1275522

2954 should be dismissed because Respondent has not demonstrated any violations of those statutes because (i) GMACM did not establish an escrow account for the future payment of Respondent's taxes and (ii) GMACM sufficiently responded to Respondent's QWR requests. Furthermore, Respondent's claims for violation of the Fair Debt Collection Practices Act ("FDCPA") and the Rosenthal Act are barred by the relevant statute of limitations.

## BACKGROUND

*Background Facts*

3.  On November 15, 2012, Respondent filed a proof of claim against Debtor GMAC Mortgage, LLC ("GMACM"), designated as Claim No. 4930 (the "Claim"), asserting a general unsecured claim in the amount of $34,363.80. See Exhibit A to the Supp. Decl.

4.  According to the Debtors' books and records, GMACM originated a loan in the amount of $272,000.00 to Respondent on September 20, 1993 (the "Loan"), secured by a deed of trust on property located at 3825 21st Street, San Francisco, CA 94114 (the "Property"). See Note, attached to the Supp. Decl. as Exhibit B, and Deed of Trust, attached to the Supp. Decl. as Exhibit C.

5.  GMACM serviced the Loan from origination until February 16, 2013 when servicing was transferred to Ocwen Loan Services, LLC. See Supp. Decl. ¶ 6.

*Delinquent Taxes*

6.  On or around June 19, 2008, GMACM sent a letter to Respondent advising him that his 2007/2008 taxes on the Property were delinquent (the "Delinquent Taxes") and requesting proof of the payment to the tax assessor. See Servicing Notes, attached to the Supp. Decl. as Exhibit D, at 156 of 158.

7.  GMACM's records do not reflect that it ever received proof from Respondent that he had paid the Delinquent Taxes. See Supp. Decl. ¶ 9. Furthermore, on or around September 24,

2008, GMACM received an electronic file from the San Francisco County Tax Collector (the "County") indicating the amount of the delinquent taxes was $2,939.80.[2] See Servicing Notes at 156 of 158. As a result, GMACM paid the Delinquent Taxes, as permitted by the Deed of Trust. See id. Pursuant to GMACM's regular business practices, GMACM would have paid the Delinquent Taxes even if it had received proof of payment from Respondent, as the records from the County would have been viewed as more reliable. See Supp. Decl. ¶ 9.

8.  Because GMACM paid the Delinquent Taxes, GMACM increased Respondent's monthly mortgage payment by $200.60, effective December 1, 2008, that would be charged monthly until the tax disbursement was repaid. See Servicing Notes at 12 of 158. However, Respondent's account was not updated as escrowed for taxes at that time.[3] See id. Rather, once Respondent paid the amount owed for the delinquent taxes, the extra monthly charge for the delinquent taxes would go away. See Supp. Decl. ¶ 10.

9.  In May 2009, GMACM learned from the San Francisco County tax assessor that Respondent had previously paid the Delinquent Taxes, but that a refund was not available because the county had applied the funds provided by GMACM to the December 2008 taxes. See Servicing Notes at 145-46 of 158.

*Hazard Insurance*

10.  In or around mid-July, GMACM sent Respondent a letter providing notice that it had no record of current hazard insurance for the Property. See Response ¶ 1. On or around

---

[2] GMACM would receive electronic files from county tax offices with information regarding all of the properties serviced by GMACM that had delinquent tax payments. See Supp. Decl. ¶ 8.
[3] There is a difference between an account being escrowed for taxes, which means that the borrower's monthly payment is increased to pay for future taxes that are then paid by GMACM, and GMACM charging a borrower for taxes that had been paid by GMACM pursuant to Section 7 of the Deed of Trust. In the former situation, an escrow account was permanently added to the borrower's account, and the borrower's monthly payment would increase to include payment for taxes that would go into the escrow account. In the latter situation, the borrower's monthly payment would increase only after GMACM paid the delinquent tax payment under Section 7, and the monthly payment return to the original principal and interest payment once the additional debt owed to GMACM was paid off. See Supp. Decl. ¶ 11.

3

ny-1275522

August 21, 2008, after not receiving proof of insurance, GMACM placed a homeowner's insurance policy on the Property and charged the $6,391.00 premium to Respondent's account. See Servicing Notes at 12 of 158.

11.     GMACM conducted an escrow analysis on August 27, 2008 informing Respondent that, because of the hazard insurance, he would need to pay an additional $532.58 beginning with the November 1, 2008 payment (the "August Escrow Analysis"). See August Escrow Analysis, attached to the Proof of Claim.

12.     On October 23, 2008, GMACM received a lender placed homeowner's insurance refund of $6,391. See Servicing Notes at 12 of 158. As a result, the charge to Respondent's account was reversed and the lender placed policy ceased. See id.

13.     On October 29, 2008, GMACM conducted a new analysis to update the hazard insurance refund and incorporate the payment of the Delinquent Taxes (the "October Escrow Analysis" and with the August Escrow Analysis, the "Escrow Analyses"). See October Escrow Analysis, attached to the Proof of Claim as Exhibit M. The new analysis applied to the December 1, 2008 payment, and as a result the monthly payment was calculated using the projected escrow balance as of November 30, 2008, which was $2,407.22. This amount was calculating by deducting the $532.58 escrow payment that would be received in November 2008 from the amount owed for the Delinquent Taxes ($2,939.80). See id. The Escrow Analysis also indicated that the prior analysis, which applied to the November 1, 2008 payment, remained unchanged. See id.

14.     On November 10, 2008, Respondent made a payment in the amount of $1,719.23 (the "November Payment"), which was not sufficient to cover the amount due. See Servicing

4

Notes at 12 of 158. As a result, the payment was placed in a suspense account until there was enough to make an entire payment. See id.

*QWR Responses*

15. On December 26, 2009, Respondent sent a QWR to GMACM asking for information regarding the payment by GMACM of property taxes and hazard insurance (the "First QWR").[4] See December 26, 2009 letter, attached to the Proof of Claim as Exhibit N. GMACM responded to the QWR on January 22, 2010 (the "First Response"), explaining the history of the tax disbursements and homeowner's insurance. See First Response, attached to the Supp. Decl. as Exhibit E. It also provided Respondent with the number for the Customer Care department at GMACM that he could call if he had additional questions. See id.

16. On January 19, 2012, Respondent sent another QWR to GMACM (the "Second QWR") disputing the validity of the debt owed and requesting extensive information regarding the servicing of the Loan, including the basis for various fees that were charged. See January 19, 2012 Letter, attached to the Proof of Claim as Exhibit O. GMACM responded to the letter on February 6, 2012 (the "Second Response"), and provided a copy of the Note, Deed of Trust, HUD-1 settlement statement, escrow analysis statements, and a payoff statement. See Second Response, attached to the Supp. Decl. as Exhibit F. GMACM indicated that no attorney's fees had been assessed to the account, and that all of Respondent's questions regarding debits or credits on the account, suspense accounts, late fees, and fees for property inspections and broker price opinions ("BPOs") could be located on the payment history and Note/Deed of Trust. See id. GMACM explained that it could not provide information regarding its servicing systems because those systems were proprietary and confidential. See id.

---

[4] Respondent asserts that this was both a Debt Validation Request and a QWR. See Response at 19.

5

ny-1275522

17. On May 14, 2012, Respondent sent another QWR to GMACM (the "Third QWR"). See Third QWR, attached to the Proof of Claim as Exhibit Q. The Third QWR was identical to the January 2012 QWR. On June 5, 2012, GMACM responded to the Third QWR (the "Third Response"). See Third Response, attached to the Supp. Decl. as Exhibit G. In the Third Response, GMACM referred Respondent to the Second Response, and also provided information regarding the history with the delinquent taxes and insurance in 2008, among other information. See id. Attached to the Third Response was the 2008 payment history and repayment plan offers made by GMACM. See id.

18. On July 26, 2012, GMACM responded to a letter that Respondent sent to the Consumer Financial Protection Bureau, which attached the previous responses. See July 26, 2012 Letter, attached to the Supp. Decl. as Exhibit H.

19. On August 4, 2012, Respondent submitted another QWR (the "Fourth QWR", and with the First, Second, and Third QWR, the "QWRs")) that asked for information regarding the tax delinquencies in 2008, as well as other account history information. See Fourth QWR, attached to the Proof of Claim as Exhibit R. GMACM responded on August 10, 2012 (the "Fourth Response," and with the First, Second, and Third Responses, the "Responses"). See Fourth Response, attached to the Supp. Decl. as Exhibit I. In the Fourth Response, GMACM directed Respondent to the previous responses, which explained what had occurred with regard to the tax issue in 2008. The Fourth Response also provided information regarding the current amount owing on the Loan, as well as the BPO fee that was assessed on June 21, 2012.

## REPLY

20. A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

6

property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). As noted previously by the Court, claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a Respondent establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by Respondents to rebut the presumption of Respondents' prima facie case. In re Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014). See also Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.), 954 F.2d 167, 173-74 (3d Cir. 1992).

21.    Once an objection refutes an essential allegation of the claim, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010).

22.    In the Response, Respondents states that (1) GMACM violated the Deed of Trust when it paid the Delinquent Taxes and placed the November Payment in a suspense account; (2) GMACM violated California Civil Code 2954(a)(1)(c), the FDCPA, and the Rosenthal Act when it charged Respondent's account for the Delinquent Taxes; and (3) the Responses were insufficient under RESPA.

***Breach of Contract Claim***

23.    With regard to Respondent's allegations that GMACM breached the Deed of Trust when it paid the Delinquent Taxes, GMACM's records do not show that any proof of payment was provided by Respondent. Further, as discussed in ¶ 7 *supra*, even if proof had been provided, the information received from the County in September 2008 (after the alleged proof

was allegedly submitted in August 2008), GMACM still would have paid the Delinquent Taxes. See Supp. Decl. ¶ 9.

24.     Section 4 of the Deed of Trust requires Respondent to timely pay all taxes which may attain priority over the loan, and Section 7 of the Deed of Trust states that if Respondent fails to timely pay his taxes, GMACM is permitted to pay them in order to protect its interest in the Property, and that any amount disbursed by GMACM to pay the taxes shall be added to the debt and payable with interest by Respondent upon notice from GMACM. See Deed of Trust §§ 4, 7. Thus, when GMACM paid the Delinquent Taxes, it was acting under the terms of the Deed of Trust. As a result, Respondent has failed to establish a cause of action for breach of contract related to the payment of the Delinquent Taxes.

25.     Furthermore, GMACM did not act improperly when it placed the November Payment in suspense, because the November Payment was less than required pursuant to the August Escrow Analysis, as the October Escrow Analysis indicated. See Escrow Analysis. Thus, Respondent failed to demonstrate a breach of contract related to the November Payment.

26.     Even if the Court finds that Respondent did sufficiently state a breach of contract claim, which he did not, he would not be able to recover emotional distress damages stemming from any alleged breach because such damages are not permitted under California law. See Walker v. Ford Motor Co., Case No. 3:16-cv-06297-WHO, 2017 WL 956656, at *6 (N.D. Cal. Mar. 13, 2017) ("Under California law, emotional distress damages are not recoverable for breach of contract claims."). As a result, the emotional distress damages newly alleged in the Response are not viable as to any breach of contract cause of action.[5]

---

[5] The Response includes an amended proof of claim, however, Mr. Kennedy has not sought leave from the Court to file an amended claim, and nothing in the original Proof of Claim suggests an intent by Mr. Kennedy to hold the estates liable for the newly asserted damages.

8

*Statutory Violations*

27. With regard to Respondent's allegation that GMACM violated California Civil Code 2954(a)(1)(c), GMACM did not violate that statute because no escrow account was actually added to Respondent's account.

28. California Civil Code § 2954(a)(1) states "No impound, trust, or other type of account for payment of taxes on the property, insurance premiums, or other purposes relating to the property shall be required as a condition of a real property sale contract or a loan secured by a deed of trust or mortgage on real property containing only a single-family, owner-occupied dwelling, except" in certain circumstances not relevant here. Cal. Civ. Code § 2954(a)(1). While the Borrower Trust is not aware of any cases that address this specific question, the plain reading of this statute is that it is intended to prevent a lender from establishing a permanent, traditional escrow account whereby the borrower pays a monthly installment for escrow items to the lender in advance of tax or insurance obligations coming due, and the lender makes payments to the tax authority/insurance company using the funds in the borrower's escrow account. It is not intended to apply to situations where the lender charges the borrower for a payment the lender already made on the borrower's behalf, pursuant to the Deed of Trust. Otherwise, the lender would be prevented from taking actions to preserve its rights in property securing its loans, such as payment of insurance and taxes.

29. Here, it is clear that GMACM did not establish a permanent escrow account for taxes that GMACM would use to pay Respondent's taxes going forward. Instead, it charged Respondent for taxes that GMACM had already paid. Thus, while there may be a disputed issue of fact regarding whether GMACM received the evidence from Respondent that the tax bill had been paid prior to making the payment, there is no dispute that, at that time, GMACM did not

9

establish a permanent escrow account. As a result, GMACM did not violate Cal. Civ. Code § 2954.

30. Finally, Respondent alleges that GMACM violated RESPA because the Responses were insufficient under the statute. RESPA requires a servicer to provide, within 30 days of receipt of a QWR, a written explanation of why the servicer believes the account is correct, as well as the name and telephone number of a person or department of the servicer that can provide assistance to the borrower. See 15 U.S.C. § 2605(e)(2).

31. In the Response, Respondent asserts that GMACM did not provide a sufficient response to "address the tax payment error or the escrow account error," among other alleged deficiencies such as a failure to provide copies of BPOs. A review of the Responses makes clear that, contrary to Respondent's assertions, GMACM provided Respondent with the information requested. For example, Respondent asserts that requests for copies of property inspections and BPOs were requested and not provided. See Response at 22. However, a review of the QWRs shows that only the Fourth QWR requested copies of the BPOs, and that the Fourth Response included such copies. See Fourth Response. Further, all of the Responses addressed Respondent's questions regarding the events surrounding the Delinquent Taxes, as well as subsequent servicing of the Loan. See Responses. Additionally, all of the Responses provided him with the telephone number of multiple GMACM departments. See id. Courts in California have found such responses to be sufficient as a matter of law. See, e.g. Van Egmond v. Wells Fargo Home Mortg., No. SACV 12-0112-DOC (MLG), 2012 WL 1033291, at *5 (C.D. Cal. Mar. 21, 2012) ("Defendant provided a complete responses to all of Plaintiff's inquiries that did relate to the servicing of the loan, such as who managed the loan pool, a complete and itemized statement of all payments and charges, and a good faith estimate of the payoff figure, among

other items. Defendant performed the required research and included the required disclaimer, which explained why certain information would not be provided.") (citation omitted).

32. As a result, Respondent has failed to establish that any of the Responses failed to meet the requirements of RESPA.

33. Respondent also asserts, for the first time in the Response, that GMACM violated the FDCPA and the Rosenthal Act when it charged Respondent for the Delinquent Taxes. See Response at 13. However, this allegation is barred by the statute of limitations for both statutes. The statute of limitations for both the FDCPA and the Rosenthal Act is one year. See 15 U.S.C. § 1692k; Cal. Civ. Code § 1788.30(f); Gonzalez v. Resurgence Fin., LLC, No. ED CV 14-172 DSF (PJW), 2014 WL 12600979 (C.D. Cal. May 12, 2014). In the Response, Respondent asserts that the violation occurred when GMACM charged him for taxes on or about December 1, 2008, and he discovered this violation no later than December 26, 2009 when he sent the First QWR. As a result, the statute of limitations expired well before the Proof of Claim was filed.

## CONCLUSION

34. WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

Dated:  March 20, 2017
        New York, New York

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

11

ny-1275522