**Exhibit 1**

**Supplemental Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF SARA LATHROP IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS NINETY-FIFTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIMS, AND (III) ALLOW IN FULL BORROWER CLAIM) AS TO CLAIM NO. 4930**

I, Sara Lathrop, hereby declare as follows:

1. I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I began my association with ResCap in June 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("GMACM"). In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I oversaw

1

ny-1276063

GMACM associates in their efforts to provide borrowers with loss mitigation options and assisted in the development of GMACM's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued in this role when the ResCap Liquidating Trust (the "Liquidating Trust") was established in December 2013. In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Reply In Support of Its Ninety-Fifth Omnibus Objection To Claims ((I) No Liability Borrower Claims, Reduce and allow Borrower Claims, and (III) Allowed In Full Borrower Claim) As To Claim No 4930* (the "Reply").[2]

2.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3.    In my capacity as Senior Claims Analyst, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases with regard to Borrower Claims. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

Debtors' Books and Records kept in the course of their regularly conducted business activities (the "Books and Records") as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or my designee at my direction have reviewed and analyzed the proof of claim form and supporting documentation filed by the Respondent. Since the Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust's management or employees of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

4. On November 15, 2012, Respondent filed a proof of claim against Debtor GMAC Mortgage, LLC ("GMACM"), designated as Claim No. 4930 (the "Claim"), asserting a general unsecured claim in the amount of $34,363.80. See Exhibit A attached hereto.

5. According to the Debtors' books and records, GMACM originated a loan in the amount of $272,000.00 to Respondent on September 20, 1993 (the "Loan"), secured by a deed of trust on property located at 3825 21st Street, San Francisco, CA 94114 (the "Property"). See Note, attached hereto as Exhibit B, and Deed of Trust, attached hereto as Exhibit C.

6. GMACM serviced the Loan from origination until February 16, 2013 when servicing was transferred to Ocwen Loan Services, LLC.

3

ny-1276063

*Delinquent Taxes*

7. On or around June 19, 2008, GMACM sent a letter to Respondent advising him that the 2007/2008 taxes on the Property were delinquent (the "Delinquent Taxes") and requesting proof of the payment to the tax assessor. See Servicing Notes, attached hereto as Exhibit D, at 156 of 158.

8. GMACM would receive electronic files from county tax offices with information regarding all of the properties serviced by GMACM that had delinquent tax payments.

9. GMACM's records do not reflect that it ever received proof from Respondent that he had paid the Delinquent Taxes. Furthermore, on or around September 24, 2008, GMACM received an electronic file from the San Francisco County Tax Collector (the "County") indicating the amount of the delinquent taxes was $2,939.80. See Servicing Notes at 156 of 158. As a result, GMACM paid the Delinquent Taxes, as permitted by the Deed of Trust. See id. Pursuant to GMACM's regular business practices, GMACM would have paid the Delinquent Taxes even if it had received proof of payment from Respondent, as the records from the County would have been viewed as more reliable.

10. Because GMACM paid the Delinquent Taxes, GMACM increased Respondent's monthly mortgage payment by $200.60, effective December 1, 2008, that would be charged monthly until the tax disbursement was repaid. See Servicing Notes at 12 of 158. However, Respondent's account was not updated as escrowed for taxes at that time. Rather, once Respondent paid the amount owed for the delinquent taxes, the extra monthly charge for the delinquent taxes would go away.

11. There is a difference between an account being escrowed for taxes, which means that the borrower's monthly payment is increased to pay for future taxes that are then paid by GMACM, and GMACM charging a borrower for taxes that had been paid by GMACM pursuant to Section 7 of the Deed of Trust. In the former situation, an escrow account would be permanently added to the borrower's account, and the borrower's monthly payment would increase to include payment for taxes that would go into the escrow account. In the latter situation, the borrower's monthly payment would increase only after GMACM paid the delinquent tax payment under Section 7, and the monthly payment would return to the original principal and interest payment once the additional debt owed to GMACM was paid off.

12. In May 2009, GMACM learned from the San Francisco County tax assessor that Respondent had previously paid the Delinquent Taxes, but that a refund was not available because the county had applied the funds provided by GMACM to the December 2008 taxes.

*Hazard Insurance*

13. On August 21, 2008, after not receiving proof of hazard insurance for the Property, GMACM placed a homeowner's insurance policy on the Property and charged the $6,391.00 premium to Respondent's account. See Servicing Notes at 12 of 158.

14. GMACM conducted an escrow analysis on August 27, 2008 informing Respondent that, because of the hazard insurance, he would need to pay an additional $532.58 beginning with the November 1, 2008 payment (the "August Escrow Analysis"). See August Escrow Analysis, attached to the Proof of Claim.

5

ny-1276063

15. On October 23, 2008, GMACM received a lender placed homeowner's insurance refund of $6,391. See Servicing Notes at 12 of 158. As a result, the charge to Respondent's account was reversed and the lender placed policy ceased. See id.

16. On October 29, 2008, GMACM conducted a new analysis to update the hazard insurance refund and incorporate the payment of the Delinquent Taxes (the "October Escrow Analysis" and with the August Escrow Analysis, the "Escrow Analyses"). See October Escrow Analysis, attached to the Proof of Claim as Exhibit M. The new analysis applied to the December 1, 2008 payment, and as a result the monthly payment was calculated using the projected escrow balance as of November 30, 2008, which was $2,407.22. This amount was calculating by deducting the $532.58 escrow payment that would be received in November 2008 from the amount owed for the Delinquent Taxes ($2,939.80). See id. The Escrow Analysis also indicated that the prior analysis, which applied to the November 1, 2008 payment, remained unchanged. See id.

17. On November 10, 2008, Respondent made a payment in the amount of $1,719.23 (the "November Payment"), which was not sufficient to cover the amount due. See Servicing Notes at 12 of 158. As a result, the payment was placed in a suspense account until there was enough to make an entire payment. See id.

*QWR Responses*

18. On December 26, 2009, Respondent sent a QWR to GMACM asking for information regarding the payment by GMACM of property taxes and hazard insurance (the "First QWR").[3] See December 26, 2009 letter, attached to the Proof of Claim as Exhibit N. GMACM responded to the QWR on January 22, 2010 (the "First Response"), explaining the history of the tax disbursements and homeowner's insurance. See First Response, attached

---

[3] Respondent asserts that this was both a Debt Validation Request and a QWR. See Response at 19.

hereto as <u>Exhibit E</u>.    It also provided Respondent with the number for the Customer Care department at GMACM that he could call if he had additional questions.  <u>See</u> <u>id</u>.

    19. On January 19, 2012, Respondent sent another QWR to GMACM (the "<u>Second QWR</u>") disputing the validity of the debt owed and requesting extensive information regarding the servicing of the Loan, including the basis for various fees that were charged.  <u>See</u> January 19, 2012 Letter, attached to the Proof of Claim as <u>Exhibit O</u>.  GMACM responded to the letter on February 6, 2012 (the "<u>Second Response</u>"), and provided a copy of the Note, Deed of Trust, HUD-1 settlement statement, escrow analysis statements, and a payoff statement.  <u>See</u> Second Response, attached hereto as <u>Exhibit F</u>.  GMACM indicated that no attorney's fees had been assessed to the account, and that all of Respondent's questions regarding debits or credits on the account, suspense accounts, late fees, and fees for property inspections and broker price opinions ("<u>BPOs</u>") could be located on the payment history and Note/Deed of Trust.  <u>See</u> <u>id</u>.  GMACM explained that it could not provide information regarding its servicing systems because those systems were proprietary and confidential.  <u>See</u> <u>id</u>.

    20. On May 14, 2012, Respondent sent another QWR to GMACM (the "<u>Third QWR</u>").  <u>See</u> Third QWR, attached to the Proof of Claim as <u>Exhibit Q</u>.  The Third QWR was identical to the January 2012 QWR.  On June 5, 2012, GMACM responded to the Third QWR (the "<u>Third Response</u>").  <u>See</u> Third Response, attached hereto as <u>Exhibit G</u>.  In the Third Response, GMACM referred Respondent to the Second Response, and also provided information regarding the history with the delinquent taxes and insurance in 2008, among other information.  <u>See</u> <u>id</u>. Attached to the Third Response was the 2008 payment history and repayment plan offers made by GMACM.  <u>See</u> <u>id</u>.

21. On July 26, 2012, GMACM responded to a letter that Respondent sent to the Consumer Financial Protection Bureau, which attached the previous responses. See July 26, 2012 Letter, attached hereto as Exhibit H.

22. On August 4, 2012, Respondent submitted another QWR (the "Fourth QWR", and with the First, Second, and Third QWR, the "QWRs")) that asked for information regarding the tax delinquencies in 2008, as well as other account history information. See Fourth QWR, attached to the Proof of Claim as Exhibit R. GMACM responded on August 10, 2012 (the "Fourth Response," and with the First, Second, and Third Responses, the "Responses"). See Fourth Response, attached hereto as Exhibit I. In the Fourth Response, GMACM directed Respondent to the previous responses, which explained what had occurred with regard to the tax issue in 2008. The Fourth Response also provided information regarding the current amount owing on the Loan, as well as the BPO fee that was assessed on June 21, 2012.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 20, 2017

/s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for the ResCap Borrower Claims Trust