## Exhibit A

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |

**Name of Debtor and Case Number:** Residential Capital, LLC, Case No. 12-12020

Claim #4930  Date Filed: 11/15/2012

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):

JAMES P. KENNEDY

**Name and address where notices should be sent:**

JAMES P. KENNEDY
700 E. SONORA ROAD
PALM SPRINGS, CA 92264

Telephone number: 760-969-3769       email: JAMESPKENNEDY@ROADRUNNER.COM

**Name and address where payment should be sent (if different from above):**

Telephone number:       email:

☑ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** CGC-12-524922
*(If known)*

Filed on: 10-03-12

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $** 34,363.80

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** TRUST ACCOUNT VIOLATIONS, BREACH OF CONTRACT, CALIFORNIA CIVIL CODE 2954, NEGLIGENCE, RESPA VIOLATIONS.
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** ████7516

**3a. Debtor may have scheduled account as:**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____    Annual Interest Rate _____% ☐ Fixed ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____       Basis for perfection: _____

Amount of Secured Claim: $_____       Amount Unsecured: $_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
☑ I am the creditor.
☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: JAMES P. KENNEDY
Title:
Company:
Address and telephone number (if different from notice address above):

*(Signature)* James P. Kennedy    11/14/12    *(Date)*

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

RECEIVED
NOV 1 5 2012
KURTZMAN CARSON CONSULTANTS

Telephone number:       Email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.

I took ownership of the property at 3825 21st Street in San Francisco, CA, 94114 on September 20, 1993. I signed a mortgage agreement for $272,000 with GMAC Mortgage with a monthly payment of principle and interest totaling $1,719.23. (EXHIBIT A)

I made timely payments to GMAC Mortgage in accordance with the terms of my mortgage agreement, maintained hazard insurance coverage and paid all property taxes on time.

On August 22, 2008 GMAC established an escrow account and paid $6,391 for hazard insurance (EXHIBIT B) for the property when insurance coverage was already in place. Proof of insurance was provided and on October 23, 2008 the charges were reversed in full. (EXHIBIT C)

On November 10, 2008 I made a timely payment for November in the amount of $1,719.23 per my mortgage agreement; however GMAC did not apply my payment as required to principle and interest (EXHIBIT A) but instead placed the funds in a suspense account. (EXHIBIT C)   This occurred because GMAC failed to adjust its records to reflect that the escrow charges were no longer applicable and did not adjust my required payment for November back to $1,719.23 as stated on the Escrow Advance Statement I received. (EXHIBIT D)  As a result, GMAC wrongfully considered my correct payment of $1,719.23 for November to be outstanding and a late fee was charged on my December statement.  (EXHIBIT E)

My next payment of $1.719.23 on Dec.1, 2008 was on time.   GMAC had still not corrected its records for the November 1 payment and wrongfully diverted funds from my December payment and applied them to the escrow charges for November. Again GMAC recorded my correct payment as insufficient, considered December unpaid, and placed the balance of the funds in a suspense account.   (EXHIBIT E) GMAC was demanding a deposit into escrow in excess of what is allowed per California Civil Code 2954 and RESPA Sec. 10.

Additionally, on October 4, 2008 GMAC paid my property taxes (EXHIBIT F) when they had already been paid on time (EXHIBIT G) and established an escrow account for repaying the funds GMAC advanced. (EXHIBIT H) Proof of payment was mailed to GMAC on August 5, 2008 (EXHIBIT I) and faxed on November 19, 2008. (EXHIBIT J) This violated California Civil Code 2954 as all property taxes had been paid on time.

After GMAC made the tax payment, I spoke with Adam in the Tax Dept. on Oct. 28 and with Dinah in the Escrow Dept. on Nov. 26 and told them GMAC needed to request a refund of their payment from the county. I offered to do a conference call with Adam and the County Tax Dept. but Adam refused. GMAC waited to respond to my request until May 2009 to call the County who confirmed GMAC's payment was a surplus payment, (EXHIBIT K), but the funds had been applied to my Dec. 2008 payment well before GMAC contacted the county. (EXHIBIT L) On December 10, 2008 I tried to make an on time payment for property taxes, however as GMAC's payment had already been applied, I could not do so as no payment was owed. As a result, I was excluded from using payment options that were available and suited me better financially than paying GMAC's escrow payment amounts.

On December 1, 2008 I made a timely payment in the amount of $1,719.23 per my mortgage agreement. GMAC wrongfully recorded my correct payment as being insufficient, placed funds in a suspense account and considered my December payment

outstanding. GMAC wrongfully charged my account for escrow payments that were not owed, (EXHIBIT E) and therefore GMAC was demanding a deposit into escrow in excess of what is allowed per California Civil Code 2954 and RESPA Sec. 10. GMAC continued to do so for the next 11 months.

As I made payment to cover principle and interest only, funds were wrongfully diverted from each payment to cover the shortage from the previous payment to cover the escrow charges that were not owed. Late fees, inspection fees and other costs were wrongfully charged to my account.

GMAC reported the negative condition of my account to the credit bureaus (EXHIBIT U) and did not report that I was disputing the amounts claimed. In or around the first week of January 2009 Citibank and Bank of America sent me a letter informing me that my lines of credit were now closed because I was delinquent on a primary mortgage. As a result, my financial plans were no longer valid and I could not pay the insurance premium due two weeks later for the property or my April tax payment due shortly thereafter as planned. GMAC charged me for force placed insurance as a result at 7 times my normal insurance rate (EXHIBIT V, W) and my taxes went unpaid for the first time incurring penalties.

In November 2009 I received notification of foreclosure (EXHIBIT X)and that the property would be put up for auction. I sent a letter requesting validation of the debt on December 26, 2009, (EXHIBIT N) however I never received a response. Clearly GMAC did not use competent and reliable information to substantiate the default.

Escrow analyses clearly show the extent of GMAC's negligence by providing false and misleading information with regard to accurate posting of transactions such that the errors in a single document rewrite account history changing account balances without any relation to previous balances and increase amounts owed by thousands of dollars without reporting any transactions. All errors were brought to GMAC's attention, yet GMAC ignored them.

- August 27, 2008 analysis (EXHIBT D): escrow analysis shows an escrow shortage of $6,391 as the 'actual balance' on 08/01/08. This is the result of the charge for force placed insurance transacted that month. The next escrow analysis was performed on October 14, 2008. The analysis shows the same insurance charge on 08/01/08 of $6,391.00-, however after this charge is applied, the 'actual balance' is reported as a shortage of $3,451.20-. This would mean the starting balance would have to have been a surplus of $2,939.80, however no such beginning balance is reported.

  Suspiciously, the surplus amount of $2,939.80 just happens to be the exact amount of the tax payment GMAC would then make two months later on October 4, 2008. This $2,939.80 surplus, however, is somehow dropped from the escrow balances from 10/01/08 to 11/01/08 with no transactions listed as having occurred.

- Oct. 14, 2008 analysis (EXHIBIT H) :  Applying the property tax payment of $2,939.80- to the reported 'actual balance' of $3.451.20-, produces an 'actual balance' of $6,391.00-, however the 'actual balance' on 11/01/08 has jumped to $9,330.80-;

- October 29, 2008 analysis (EXHIBIT M): The 'actual balance' on 08/01/08 is reported as being $12,782.00- not $3,451.20- as stated on the previous analysis. There is no indication as to how GMAC arrived at the reported $12,782.00- amount.

When the refund of $6,391.00 for the force placed insurance charges and a charge for property tax of $2,939.80- is applied to this 'actual balance' of $12,782.00- as reported on 10/01/08, the 'actual balance' is then said to be $9,330.80. Then, for 11/01/08 the 'actual balance', with no transactions listed, is reported to be $2,939.80-. Again, there is no information showing how.

GMAC, falsely claimed responses were sent when GMAC did not respond to QWR'S and responded insufficiently in violation of RESPA requirements to others. Of great significance is the June 5, 2012 response claiming that GMAC responded on February 6, 2012 (not received) to my QWR dated  Jan. 19, 2012, when the package stated to have been sent on that date includes an escrow analysis performed on March 7, 2012. (EXHIBIT P) The same package includes a debt validation request response also claimed to have been sent on February 12th but dated Feb. 22nd to the property address (not received) instead of the reply address.

GMAC breeched the mortgage contract first in a manner of such great significance that it forced my account into default. GMAC therefore is barred from pursuing foreclosure and the costs (late charges, penalties, inspection fees and other foreclosure costs) charged.  I have sustained other financial damages as a result of GMAC's wrongful actions (actions which include both RESPA and California Civil Code violations 2954 among other violations).

TOTAL DAMAGES $34,363.80

1. GMAC failed to respond to qualified written requests in accordance with RESPA regulations: TOTAL DAMAGES $9,000

   - December 26, 2009 copy of debt validation request sent copy to GMAC as a QWR which went without response. (EXHIBT N)  $1,000 penalty

   - January 19, 2012 QWR (EXHIBIT 0): No response from GMAC. $2,000

     GMAC provided false documentation: GMAC claims that it responded on February 6, 2012, however the documents GMAC provided as having been sent on that day contain an escrow analysis performed on March 7, 2012. (EXHIBIT P)  Also claims validation of debt response was sent  but was never received (EXHIBIT X)  Damages $2,000

   - May 14, 2012 QWR (EXHIBIT Q):  Falsely claims I agreed on Dec. 18 to repayment agreement yet did not/could not provide signed copies of repayment plans as requested (as I never received plan), did not take corrective action regarding the complaint presented, non-responsive.  Damages $2,000

   - August 4, 2012: (EXHIBIT R)  GMAC failed to provide information requested and take corrective action regarding the errors.  Damages $2,000

2. Late charges in the total amount of $2,578.80 (EXHIBIT S)

3. Inspection fees and broker price opinion charges: $3,425 (EXHIBIT T)

4. Charges for force placed insurance $ 12,782
   a. February 2009-10  $6,391 (EXHIBIT V)
   b. February 2010-11  $6,391 (EXHIBIT W)

5. I had to sell my IRA to make repayment agreement pmts: TOTAL TAXES: $6,578 Early withdrawal penalty 10%: = 3,168; additional regular income tax paid on $31,684= $3,4108 (EXHIBIT Y)

# EXHIBIT "A"

WE HEREBY CERTIFY THIS TO BE A TRUE
~~~~~~ ~~~~~~~~
~~~~~ ~~~~ CO.
~~~~ ~ SEPTEMBER            20   19 93

3825 21ST STREET

# NOTE

LOAN #

MONTEREY                    CALIFORNIA
[City]                      [State]

SAN FRANCISCO    CA    94114
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   272,000.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

### GMAC MORTGAGE CORPORATION OF PA
. I understand
that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of   6.500   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the   1st   day of each month beginning on   NOVEMBER   01 19 93   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on OCTOBER   01, 2023   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

### 8360 OLD YORK ROAD, ELKINS PARK, PA   19117-1590

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   1,719.23

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.00   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
Page 1 of 3
-6A (9105).01    VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

Form 3200 12/83
Initials

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JAMES F. KENNEDY                    -Borrower
SSN:

_____ (Seal)
                                    -Borrower
SSN:

_____ (Seal)
                                    -Borrower
SSN:

_____ (Seal)
                                    -Borrower
SSN:

*(Sign Original Only)*

WHEN RECORDED RETURN TO:
GMAC MORTGAGE CORPORATION
PO BOX CA
MONTEREY, CA 93942

WE HEREBY CERTIFY THIS TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
FIDELITY NAT ... CO.

BY

[Space Above This Line For Recording Data]

## DEED OF TRUST

LOAN #: ▮▮▮▮62-31

THIS DEED OF TRUST ("Security Instrument") is made on **SEPTEMBER 20, 1993** . The trustor is

**JAMES P. KENNEDY, A SINGLE MAN**

("Borrower"). The trustee is **GMAC MORTGAGE SERVICE COMPANY OF CALIFORNIA, A CALIFORNIA CORPORATION**

("Trustee"). The beneficiary is **GMAC MORTGAGE CORPORATION OF PA**

which is organized and existing under the laws of **PENNSYLVANIA** , and whose
address is **8360 OLD YORK ROAD, ELKINS PARK, PA 19117-1590**
("Lender"). Borrower owes Lender the principal sum of
**TWO HUNDRED SEVENTY-TWO THOUSAND AND 00/100** ***********************************

Dollars (U.S. $ **272,000.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on **OCTOBER 01, 2023** . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described
property located in **SAN FRANCISCO** County, California:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

which has the address of **3825 21ST STREET** **SAN FRANCISCO** [Street, City],
California **94114** ("Property Address");
[Zip Code]

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-6R(CA)(9108).01    VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

Form 3005 9/90
Amended 5/91
Page 1 of 6    Initials

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.**   Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.**   Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"); unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.**   Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

LOAN #          62-31

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

-6R(CA)(9108).01                          Page 4 of 8                                            Form 3005 9/90
                                                                                                Initials:

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

LOAN #:                62-31

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**23. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**24. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V.A. Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____ (Seal)
                                          JAMES P. KENNEDY              -Borrower

_____          _____ (Seal)
                                                                       -Borrower

_____ (Seal)   _____ (Seal)
                    -Borrower                                           -Borrower

State of California,
County of SAN FRANCISCO          } ss.

On SEPTEMBER 22, 1993    before me, C Madrid-Garibaldi Notary Public
                                                        personally appeared

JAMES P. KENNEDY
                                                        personally known to me (or
proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

_____ (Seal)
                                          C Madrid Garibaldi
(This area for official notarial seal)

OFFICIAL SEAL
C. Madrid-Garibaldi
NOTARY PUBLIC - CALIFORNIA
City & County of San Francisco
My Comm. Expires Aug 18, 1994

-6R(CA)           Page 6 of 6          Form 3005 9/90

# GMAC
# Mortgage

3451 Hammond Avenue
Waterloo, IA 50702
1-800-766-4622/Follow the Prompts

**Important Note**: In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

## ESCROW ADVANCE STATEMENT

ACCOUNT NUMBER: ███ 7516

PROPERTY ADDRESS:
3825 21ST STREET
SAN FRANCISCO CA 94114-2802

ANALYSIS DATE: AUGUST 27, 2008

JAMES P. KENNEDY
700 E SONORA RD
PALM SPRINGS CA   92264-8436

---

**PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.**

| Section 1: DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) U IN PRIOR ANAL |
|---|---|---|---|
| TOTAL ANNUAL DISBURSEMENTS: | | 0.00 | 0.00 |
| TOTAL ESCROW PAYMENT: | | 0.00 | 0.00 |

*(handwritten notes: "Only 22 km 800-356-9962 fom"  "Ins. Dept. FAX 866 336-902")*

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE**: If you pay the escrow advance amount of $6,391.00, your new total payment will automatically be adjusted to $1,719.23 effective with your NOVEMBER 01, 2008 payment. If you do not pay the advance, your total payment effective NOVEMBER 01, 2008 will be $2,251.81.

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 0.00 | 0.00 |
| Escrow Advance | 532.58 | 0.00 |
| Escrow Advance Spread 12 Months | | |
| Total | 532.58 | 0.00 |
| Principal/Interest | 1,719.23 | 1,719.23 |
| Total Payment | 2,251.81 | 1,719.23 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

**For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.**

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow advance payment

**THIS COUPON MUST ACCOMPANY YOUR ESCROW ADVANCE PAYMENT**

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE:** If you pay the escrow advance amount of $6,391.00, your new total payment will automatically be adjusted to $1,719.23 effective with your NOVEMBER 01, 2008 payment. If you do not pay the advance, your total payment effective NOVEMBER 01, 2008 will be $2,251.81.

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 0.00 | 0.00 |
| Escrow Advance | 532.58 | 0.00 |
| Escrow Advance Spread 12 Months | | |
| | | |
| Total | 532.58 | 0.00 |
| Principal/Interest | 1,719.23 | 1,719.23 |
| Total Payment | 2,251.81 | 1,719.23 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow advance payment

THIS COUPON MUST ACCOMPANY YOUR ESCROW ADVANCE PAYMENT

**GMAC Mortgage**

**THIS IS NOT A CHECK**

NOTE — you must use this address when remitting your escrow advance payment

| Account Number | Advance Amount |
|---|---|
| 7516 | 6,391.00 |

JAMES P. KENNEDY

| Total Amount Enclosed  $ |
|---|

||.|.|.||.|||..||...||..||.||...||.|||...|.||.||...||.|.|||.|

GMAC MORTGAGE
PO BOX 79162
PHOENIX AZ 85062-9162

If you pay the escrow advance amount of $6,391.00, your new payment will be automatically adjusted to $1,719.23 effective with your NOVEMBER 01, 2008 payment.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

ACCOUNT NUMBER: ████ 7516

PROJECTED ESCROW BALANCE AS OF: OCTOBER 31, 2008          -6,391.00  *

\*   Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and
     disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|------|----------|-------------------------|------------------------|------------------------|
| PROJECTED BALANCE | | | 6,391.00- | .00 |
| 11/01/08 | .00 | .00 | 6,391.00- | .00 |

---

Section 3:  ➡   | ESCROW ADVANCE          6,391.00 |

---

ESCROW ACCOUNT ACTIVITY (MAY 01, 2008 - OCTOBER 31, 2008)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|------|-----|------------------|-------------------|-----|---------------|----------------|
| BEGINNING BALANCE | | | .00 | | | .00 |
| 05/01/08 | | .00 | .00 | | .00 | .00 |
| 06/01/08 | | .00 | .00 | | .00 | .00 |
| 07/01/08 | | .00 | .00 | | .00 | .00 |
| 08/01/08 | | .00 | .00 | PAYMENT | 6,391.00- | 6,391.00- |
| 09/01/08 | | .00 | .00 | | .00 | 6,391.00- |
| 10/01/08 | | .00 | .00 | | .00 | 6,391.00- |

# EXHIBIT  "E"

# GMAC Mortgage Account Statement

## GMAC Mortgage

**CUSTOMER INFORMATION**

| | |
|---|---|
| Name: | James P. Kennedy |
| Account Number: | ■■■7516 |
| Home Phone #: | (415)550-8321 |

**PROPERTY ADDRESS**

3825 21ST STREET
SAN FRANCISCO    CA 94114

Visit us at www.gmacmortgage.com for account information or to apply on-line.



JAMES P. KENNEDY
700 E SONORA RD
PALM SPRINGS CA 92264-8436

For information about your existing account, please call: 1-800-766-4622.

For information about refinancing or obtaining a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information. Make necessary corrections on this portion of the statement, detach, and mail to address listed for inquiries on the reverse side.

| | |
|---|---|
| Account Number | ■■■7516 |
| Current Statement Date | December 01, 2008 |
| Maturity Date | October 01, 2023 |
| Interest Rate | 6.50000 |
| Current Principal Balance* | $196,708.51 |
| Current Escrow Balance | $2,407.22- |
| Interest Paid Year-to-Date | $10,845.65 |
| Taxes Paid Year-to-Date | $2,939.80 |

| | |
|---|---|
| Principal and Interest | $1,719.23 |
| Subsidy/Buydown | $0.00 |
| Escrow | $200.60 |
| Amount Past Due | $1,919.83 |
| Outstanding Late Charges | $85.96 |
| Other | $1,186.65- |
| Total Amount Due | $2,738.97 |
| Account Due Date | December 01, 2008 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:      1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

### Account Activity Since Last Statement

| Description | Due Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Receipt | 11/01/08 | 12/01/08 | $1,186.65 | | | | | | $1,186.65 |
| Payment | 11/01/08 | 12/01/08 | $532.58 | $650.20 | $1,069.03 | $532.58 | | | $1,719.23- |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week). See back for automatic payment sign-up information and other payment options.

### Important News

**Happy Holidays!   Your Annual Loan Statement (Form 1098) information will be mailed with your mortgage account statement in January to the address above.  In addition, you can obtain year-end tax information at www.gmacmortgage.com as early as 1/5/2009.  Our office hours for customer service and payment processing on Wednesday, 12/31/2008 will be 6:00AM - 7:00PM CT. Payments received after 7:00PM CT on 12/31 will be posted in 2009 for tax purposes.**

**See Reverse Side For Important Information**

**Mail This Portion With Your Payment**

### Mortgage Payment Coupon

EXHIBIT   "F"

# GMAC Mortgage Account Statement

# GMAC Mortgage

**CUSTOMER INFORMATION**

Name:      James P. Kennedy

Account Number: ▉7516
Home Phone #:   (415)550-8321

**PROPERTY ADDRESS**

3825 21ST STREET
SAN FRANCISCO    CA 94114

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

JAMES P. KENNEDY
700 E SONORA RD
PALM SPRINGS CA 92264-8436

For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | ▉7516 |
| Current Statement Date | October 10, 2008 |
| Maturity Date | October 01, 2023 |
| Interest Rate | 6.50000 |
| Current Principal Balance* | $197,358.71 |
| Current Escrow Balance | $9,330.80- |
| Interest Paid Year-to-Date | $9,776.62 |
| Taxes Paid Year-to-Date | $2,939.80 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:     1-800-256-9962**
**For Payment Arrangements call: 1-800-850-4622**

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $1,719.23 |
| Subsidy/Buydown | $0.00 |
| Escrow | $532.58 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $2,251.81 |
| Account Due Date | November 01, 2008 |

## Account Activity Since Last Statement

| Description | Due Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 10/01/08 | 10/10/08 | $1,719.23 | $646.70 | $1,072.53 | | | | |
| County Tax Paid | 09/01/08 | 10/04/08 | $2,939.80 | | | $2,939.80 | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

If you are considering a new home purchase or refinancing your existing mortgage, we are here
to help.  Simply call the number above or visit our website for fast, convenient service.

Looking for a great rate on a certificate of deposit? Visit www.gmacbank.com and check out
a 12-month CD from GMAC Bank. It's smart, it's simple, and best of all, it's safe. Member FDIC.

**See Reverse Side For Important Information**

P22   8

# EXHIBIT "G"

**Bank of America**         Online Banking

---

**JOINT ACCT : Account Activity**

**Transaction Details:**

**Description:** Check 1260

**Posting date:** 07/29/2008

**Amount:** $2,528.28

**Reference Number:** ▮▮▮9979

**Check number:** 1260

**Account nickname:** JOINT ACCT

**Account number:** ▮▮-5370

**Please Note:** Only items posted to your account within the newest 180 calendar days will be available online.

**Additional Details:**

    **My Description:**

**Check Image:**



         8/5/2008 4:31 PM

ank of America / Unime Banking : Transaction image Print

12-12020-mg    Doc 10337-2    Filed 03/20/17    Entered 03/20/17 17:02:44    Decl.
Exhibit A    Pg 24 of 123



**James P. Kennedy**
**700 E. Sonora Road**
**Palm Springs, CA  92264**

July 16, 2008

San Francisco Tax Collector
Real Estate Tax
PO Box 7426
San Francisco, CA  94102

As per my conversation with the Supervisor, Dennis Cheng, I am enclosing payment for my property tax for the property at 3825 21$^{st}$ Street, San Francisco, CA 94114, tax bill number 118488, vol. 24, block 3622, lot 092 in the sum of $2,528.28.  Payment per Mr. Cheng is considered payment in full and brings the account current. Payment includes $2,478.28 property tax plus $50 for bounced check fee.  All other penalties and interest charges have been waived by Mr. Cheng.

If there are any questions, please call me at 760-322-9776

Regards,

James P. Kennedy

# EXHIBIT  "H"


**GMAC**
**Mortgage**

3451 Hammond Avenue
Waterloo, IA 50702
1-800-766-4622/Follow the Prompts

**Important Note:** In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

## ESCROW ADVANCE STATEMENT

ACCOUNT NUMBER: ██████7516

PROPERTY ADDRESS:
3825 21ST STREET
SAN FRANCISCO CA 94114-2802

ANALYSIS DATE: OCTOBER 14, 2008

████████26-001
JAMES P. KENNEDY
700 E SONORA RD
PALM SPRINGS CA   92264-8436

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section I:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| TOTAL ANNUAL DISBURSEMENTS: | | 0.00 | 0.00 |
| TOTAL ESCROW PAYMENT: | | 0.00 | 0.00 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE:** If you pay the escrow advance amount of $8,798.22, your new total payment will automatically be adjusted to $1,719.23 effective with your DECEMBER 01, 2008 payment. If you do not pay the advance, your total payment effective DECEMBER 01, 2008 will be $2,452.41.

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 0.00 | 0.00 |
| Escrow Advance | 733.18 | 532.58 |
| Escrow Advance Spread 12 Months | | |
| Total | 733.18 | 532.58 |
| Principal/Interest | 1,719.23 | 1,719.23 |
| Total Payment | 2,452.41 | 2,251.81 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow advance payment

THIS COUPON MUST ACCOMPANY YOUR ESCROW ADVANCE PAYMENT

890-0600-1200F

ACCOUNT NUMBER: ███ 7516

PROJECTED ESCROW BALANCE AS OF: NOVEMBER 30, 2008          -8,798.22  *

\*   Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|------|----------|------------------------|----------------------|----------------------|
| PROJECTED BALANCE | | | 8,798.22- | .00 |
| 12/01/08 | .00 | .00 | 8,798.22- | .00 |

---

Section 3: ➡️  | ESCROW ADVANCE      8,798.22 |

ESCROW ACCOUNT ACTIVITY (NOVEMBER 01, 2008 - NOVEMBER 30, 2008)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|------|-----|------------------|-------------------|-----|---------------|----------------|
| 08/01/08 | | .00 | .00 | PAYMENT | 6,391.00- | 3,451.20- |
| 09/01/08 | | .00 | .00 | | .00 | 3,451.20- |
| 10/01/08 | | .00 | .00 | TAX | 2,939.80- | 6,391.00- |
| BEGINNING BALANCE | | | .00 | | | 9,330.80- |
| 11/01/08 | | .00 | .00 | | .00 | 9,330.80- |

# EXHIBIT "I"

James P. Kennedy
700 E. Sonora Road
Palm Springs, CA 92264
760-969-3769

August 5, 2008

GMAC Mortgage
Re: Property Tax Payment for account No. ███ 7516

As requested, enclosed is proof of property tax payment made for the second installment
for the tax year 2007-08.

Please let me know if you need anything additional.

Regards,

James P. Kennedy

**Bank of America**

JOINT ACCT : Account Activity

Transaction Details:

| | |
|---|---|
| **Description:** | Check 1260 |
| **Posting date:** | 07/29/2008 |
| **Amount:** | $2,528.28 |
| **Reference Number:** | █9979 |
| **Check number:** | 1260 |
| **Account nickname:** | JOINT ACCT |
| **Account number:** | █-5370 |

**Please Note:** Only items posted to your account within the newest 180 calendar days will be available online.

Additional Details:

My Description:

Check image:



8/5/2008 4:31 PM

**James P. Kennedy**
**700 E. Sonora Road**
**Palm Springs, CA  92264**

July 16, 2008

San Francisco Tax Collector
Real Estate Tax
PO Box 7426
San Francisco, CA  94102

As per my conversation with the Supervisor, Dennis Cheng, I am enclosing payment for my property tax for the property at 3825 21$^{st}$ Street, San Francisco, CA 94114, tax bill number 118488, vol. 24, block 3622, lot 092 in the sum of $2,528.28.  Payment per Mr. Cheng is considered payment in full and brings the account current. Payment includes $2,478.28 property tax plus $50 for bounced check fee.  All other penalties and interest charges have been waived by Mr. Cheng.

If there are any questions, please call me at 760-322-9776

Regards,

James P. Kennedy

EXHIBIT   "J"

James P. Kennedy
700 E. Sonora Road
Palm Springs, CA  92264

November 19, 2008

Fax to: GMAC Tax Department
817-826-1258

RE: Account No. ███████7516
Property Address:  3825 21st Street, SF, CA  94114

Following is proof of payment of property taxes for the April 2008 tax bill.

Please call me with any questions.

James Kennedy
760-322-9776

Bank of America | Online Banking | Transaction Image Film    https://onlineeast2.bankofamerica.com/cgi-bin/ias/1ouyeBmRpb8gVj...

12-12020-mg    Doc 10337-2    Filed 03/20/17    Entered 03/20/17 17:02:44    Decl.
Exhibit A    Pg 36 of 123



ink of America | Online Banking | Transaction Image Print   Filed 03/20/17   Entered 03/20/17 17:02:44   Decl.

12-12020-mg   Doc 10337-2

Exhibit A    Pg 37 of 123

 **Bank of America**

Online Banking

**JOINT ACCT : Account Activity**

**Transaction Details:**

| | |
|---|---|
| **Description:** | Check 1260 |
| **Posting date:** | 07/29/2008 |
| **Amount:** | $2,528.28 |
| **Reference Number:** | ████9979 |
| **Check number:** | 1260 |
| **Account nickname:** | JOINT ACCT |
| **Account number:** | ████████ |

**Please Note:** Only items posted to your account within the newest 180 calendar days will be available online.

**Additional Details:**

**My Description:**

**Check Image:**



8/5/2008

# EXHIBIT "K"

January 22, 2010

James P Kennedy
2835 21ˢᵗ Street
San Francisco CA  94114-2802

RE:    Account Number        ███████7516
       Property Address    3825 21ˢᵗ Street
                           San Francisco CA  94114-2802

Dear James P Kennedy:

This letter is in response to your recent letter concerning the tax disbursements on the above-referenced account.

A copy of the payment history confirming all tax disbursements made from your escrow is enclosed for your review.

Additionally, as we did not receive a copy of a paid receipt for the delinquent 2007/2008 property taxes, we disbursed the delinquent property taxes from your escrow account on October 4, 2008 in the amount of $2,939.80.

Per your request, we contacted your tax collector in May 2009 to verify if an overpayment existed. The county advised our funds were applied to the December 2008 property tax installment since they did not receive payment of the December 2008 property taxes from you. If you also paid your December 2008 property taxes, you will need to contact your country to request the refund.

If you have your own homeowner's insurance policy, please have your insurance agent fax a copy of the policy so we may update our records accordingly. The insurance policy can be faxed to our Insurance Department at 1-866-336-9021. If you would like to set up an escrow account to pay your homeowners insurance directly to your insurance carrier, please submit your request in writing to the following address:

                        GMAC Mortgage
                        Escrow Begin
                        PO Box 780
                        Waterloo IA 50704-0780

# EXHIBIT "L"

## Office of the Treasurer & Tax Collector

### Previous Year's Property Tax Information

**Payment History**

| | |
|---|---|
| **Block / Lot:** | 3622/92 |
| **Tax Bill #:** | 119711 |
| **Property Address:** | 3825 21ST ST |

The information on this screen represents only regular taxes for the 2008-2009 fiscal year. Please note that the accuracy of the information may be affected by pending payments and corrections. The information does not reflect any taxes for prior fiscal years, nor unsecured taxes, supplemental taxes, or escape taxes that may also have been paid or that may be outstanding.

**Payment for prior tax year: 2008-2009**

| Installment | Taxes | Late Cost | Late Fee | Installment Total | Date Paid |
|---|---|---|---|---|---|
| Installment 1 | $2,632.86 | | | $2,632.86 | 11/24/08 |
| Installment 2 | $0.00 | | | $0.00 | |

**If you have questions about the information listed above, please <u>contact the Treasurer & Tax Collector</u>**

**Online Payment Support**
For support on making payments via the web please e-mail <u>support@link2gov.com</u>

# EXHIBIT "M"


**GMAC**
**Mortgage**

3451 Hammond Avenue
Waterloo, IA 50702
1-800-766-4622/Follow the Prompts

**Important Note**: In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

## ESCROW ADVANCE STATEMENT

ACCOUNT NUMBER: ████7516

PROPERTY ADDRESS:
3825 21ST STREET
SAN FRANCISCO CA 94114-2802

ANALYSIS DATE: OCTOBER 29, 2008

████████ 001
JAMES P. KENNEDY
700 E SONORA RD
PALM SPRINGS CA   92264-8436

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

| Section 1:<br>DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S)<br>OF NEXT DISBURSEMENT | AMOUNT(S) USED<br>IN PRIOR ANALYSIS |
|---|---|---|---|
| TOTAL ANNUAL DISBURSEMENTS: | | 0.00 | 0.00 |
| TOTAL ESCROW PAYMENT: | | 0.00 | 0.00 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE**: If you pay the escrow advance amount of $2,407.22, your new total payment will automatically be adjusted to $1,719.23 effective with your DECEMBER 01, 2008 payment. If you do not pay the advance, your total payment effective DECEMBER 01, 2008 will be $1,919.83.

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 0.00 | 0.00 |
| Escrow Advance | 200.60 | 532.58 |
| Escrow Advance Spread 12 Months | | |
| | | |
| Total | 200.60 | 532.58 |
| Principal/Interest | 1,719.23 | 1,719.23 |
| Total Payment | 1,919.83 | 2,251.81 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

680-0680-1200F

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow advance payment

THIS COUPON MUST ACCOMPANY YOUR ESCROW ADVANCE PAYMENT



ACCOUNT NUMBER: ████7516

PROJECTED ESCROW BALANCE AS OF: NOVEMBER 30, 2008        -2,407.22 *

* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and
  disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|------|----------|-------------------------|------------------------|------------------------|
| PROJECTED BALANCE | | | 2,407.22- | .00 |
| 12/01/08 | .00 | .00 | 2,407.22- | .00 |

Section 3: ➡ | ESCROW ADVANCE | 2,407.22 |

ESCROW ACCOUNT ACTIVITY (NOVEMBER 01, 2008 - NOVEMBER 30, 2008)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|------|-----|------------------|-------------------|-----|---------------|----------------|
| 08/01/08 | | .00 | .00 | PAYMENT | 6,391.00- | 12,782.00- |
| 09/01/08 | | .00 | .00 | | .00 | 12,782.00- |
| 10/01/08 | | .00 | .00 | PAYMENT | 6,391.00 | 9,330.80- |
| 10/01/08 | | .00 | .00 | TAX | 2,939.80- | 9,330.80- |
| BEGINNING BALANCE | | | .00 | | | 2,939.80- |
| 11/01/08 | | .00 | .00 | | .00 | 2,939.80- |

# EXHIBIT "N"

**James P. Kennedy**
**700 E. Sonora Road**
**Palm Springs, CA  92264**

December 26, 2009

ETS Services, LLC
2255 North Ontario Street,
Suite 400
Burbank, CA  91504-3120

<div>

Re: T.S. Number:        318-C
Loan Number:        7516
Property Address:   3825 21$^{st}$ Street, San Francisco, CA  94114

</div>

The purpose of this letter is to notify you that I dispute the validity of the debt claimed. This includes but is not limited to account charges, late fees etc. for which I should not be held responsible.

GMAC made a property tax payment on October 4, 2008 even though I had mailed proof of payment as well as spoke directly with the GMAC Tax Department one month earlier on September 5, 2008 to inform them that my property tax payments were current. GMAC records and my documentation show support for these events. Despite my numerous attempts to resolve the issue, GMAC continued to wrongfully hold me responsible for repayment of those funds, charged my account late fees for non-payment, and in less than 90 days later reported to credit bureaus that I had become delinquent on a primary mortgage even though regular timely payments had been made.

As a result, I have suffered damages due to GMAC's servicing of my account that include but are not limited to the following:

- Payment options that were made available by the county to other tax payers were now not an option for me which prevented me from making my scheduled tax payment.

- On January 1, 2009, all credit lines that I had made available were immediately cancelled based on the report from GMAC to the credit agencies stating that I was delinquent on a primary mortgage causing immediate financial hardship and was now unable to pay for homeowner's insurance that was up for renewal that week.

- Subsequently, I have been charged through GMAC for forced insurance coverage because I did not have the funds available to buy it on my own as payments were due the week the credit lines were cancelled. This only amplified the financial hardship that I faced as the premiums charged for this insurance are six times greater than normal premium charges.

GMAC refused to take into consideration the impact their actions have had on me and my account even after obtaining information internally that my taxes had in fact been paid on time and that their subsequent payment created a surplus of property tax payments to the county.  GMAC never made a request to the county for a refund of those funds and continues to hold my account responsible for repayment of those funds as of October 4, 2008, and has taken steps subsequently to foreclose on my property.

GMAC has claimed that the tax payment on October 4$^{th}$ was made because they had received an email on September 24, 2008 from San Francisco County Tax Collector stating that my property taxes were delinquent.  I would like receive a copy of that email as verification of the basis for payment as claimed by GMAC.

Please call me with any questions.  760-869-3769

James P. Kennedy

EXHIBIT "O"

James P. Kennedy
700 E. Sonora Road
Palm Springs, CA 92264
760-969-3769

January 19, 2012

Via Certified Mail
Return Receipt Requested

GMAC Mortgage
Attn: Customer Care
PO Box 1330
Waterloo, IA 50704-1330

Re:               James Kennedy
Loan Number:      ▮▮▮7516
Property Address: 3825 21st Street, San Francisco, CA 94114

Dear Sir or Madam:

I am writing to you to request specific itemized information about the accounting and servicing of my mortgage and of my need for understanding and clarification of various charges, credits, debits, transactions, actions, payments, analyses and records related to the servicing of my loan from its inception to the present date. This letter is a qualified written request ("QWR") pursuant to the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §2605(e).

I am disputing the validity of the current debt you claim that I owe including all late fees, charges, inspection fees, property appraisal charges, force placed insurance charges, property tax charges, legal fees and corporate advances charged to this account. I believe my account is in error for the following reasons:

- Payment amounts not applied as instructed; loan has not been properly credited, debited, adjusted, amortized and charged correctly;
- Charges made to this account for property tax payments made by GMAC on behalf of borrower (e.g. April 2008 tax payment) and related charges and fees when taxes had already been paid months prior;
- Force placed insurance charges, late fees, escrow charges, legal fees and other possible costs charged to my account.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of my mortgage loan from its inception until the present date. Upon receipt of this letter, please refrain from reporting any negative credit information to any credit reporting agencies until you respond to my "requests."

Re:              James Kennedy
Loan Number:     ████7516

I also request that you conduct your own investigation and audit of my account since its
inception to "validate" the debt you claim I owe you is accurate to the penny.

In order to conduct this examination and audit, I need to have full and immediate
disclosure including copies of all pertinent information regarding my loan.   The
documents requested and answers to questions are needed to insure:

- That my loan has properly been credited, debited, adjusted, amortized and charged
  correctly;

- That interest and principal have been properly calculated and applied to my loan;

- That my principal balance has been properly calculated and accounted for;

- That no charges, fees or expenses, not obligated by me in any agreement, have been
  charged or assessed to or collected on my account;

In order to validate my debt and audit my account, I need copies of pertinent documents
to be provided and answers in writing to various servicing questions to be sent to me.  For
each record kept on computer or in any other electronic file or format, please provide a
paper copy of "all" information in each field or record in each computer system, program
or database used by you that contains any information on my account.

As such, please send to me, at the address above, copies of the documents requested
below as soon as possible.  Please provide me copies of:

1. All data, information, notations, text, figures and information contained in your
   mortgage servicing and accounting computer systems including, but not limited to
   Alltel's CPI system, any system by Alltell or any other similar mortgage servicing
   software used by you, any servicers, or sub-servicer of my mortgage account from the
   inception of my loan to the date written above.

2. All descriptions and legends of all Codes used in your mortgage servicing and
   accounting system so that the examiners, auditors and experts retained to audit and
   review my mortgage account may properly conduct their work.

3. All purchase and sale of mortgage agreements, sale or transfer of servicing rights or
   other similar agreement related to any assignment, purchase or sale of my mortgage
   loan or servicing rights by you, any broker, affiliate company, parent company,
   servicers, bank, government sponsored enterprise, sub-servicers, mortgage broker,
   mortgage banker or any holder of any right related to my mortgage, promissory note
   and deed of trust from the inception of my loan to the present date.

4. All prospectus' related to the sale or transfer of my note, deed of trust, mortgage and
   servicing rights or other similar agreement related to any assignment, purchase or sale
   of my mortgage loan or servicing rights by you, any broker, affiliate company, parent
   company, servicers, bank, government sponsored enterprise, sub-servicers, mortgage

Re:        James Kennedy
Loan Number: ████7516

broker, mortgage banker or any holder of any right related to my mortgage, promissory note and deed of trust from the inception of my loan to the present date.

5. All assignments, transfers, alonges, or other document evidencing a transfer, sale or assignment of my mortgage, deed of trust, promissory note or other document that secures payment by me to my obligation in this account from the inception of my loan to the present date.

6. All deeds in lieu, modifications to my mortgage, promissory note or deed of trust from the inception of my loan to the present date.

7. All escrow analyses conducted on my account from the inception of my loan until the date of this letter;

8. All letters, statements and documents sent to me by your company;

9. All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

10. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

11. All letters, statements and documents contained in my loan file or imaged by you, any servicer or sub-servicers of my mortgage from the inception of my loan to present date.

12. All electronic transfers, assignments, sales of my note, mortgage, deed of trust or other security instrument.

13. All copies of property inspection reports, appraisals, BPOs and reports done on my property.

14. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to my mortgage account from the inception of my loan to the present date.

15. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to my mortgage account from the inception of my loan to the present date.

16. All agreements, contracts and understandings with vendors that have been paid for any charge on my account from the inception of my loan to the present date.

17. All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories,

Re:                    James Kennedy
Loan Number:        ████7516

accounting records, ledgers, and documents that relate to the accounting of my loan from the inception of my loan until present date?

18. All loan servicing "transaction" records, ledgers, registers and similar items detailing how my loan has been serviced from the from the inception of my loan until present date.

19. Front copies of all payment coupons received form me from 2007 thru the date of your response to this letter.

Further, in order to conduct the audit and review of my account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of my mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below.

LOAN ACCOUNTING & SERVICING SYSTEMS

1) Please identify for me each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of my loan to the present date?

2) For each loan accounting and servicing system identified by you and any sub-servicer or previous servicer from the inception of my loan to the present date, please provide the name and address of the company or party that designed and sold the system?

3) For each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of my loan to the present date, please provide the complete transaction code list for each system.

DEBITS & CREDITS

1) In a spreadsheet form or in letter form in a columnar format such that it is clear which entry falls under what column heading,  please detail for me each and every credit on my account and the date such credit was posted to my account as well as the date any credit was received.

2) In a spreadsheet form or in letter form in a columnar format such that it is clear which entry falls under what column heading, please detail for me each and every debit on my account and the date such credit was posted to my account as well as the date any debit was received.

3) For each debit or credit listed, please provide me with the definition for each corresponding transaction code you utilize?

4) For each transaction code, please provide us with the master transaction code list used by you or previous servicers.

Re:            James Kennedy
Loan Number:   ▓▓▓▓▓7516

## ATTORNEY FEES

For purposes of my questions below dealing with attorney fees, please consider the terms "attorney fees" and "legal fees" to be one in the same.

1) Have attorney fees ever been assessed to my account from the inception of my loan to the present date?

2) If yes, please detail each separate assessment of attorney fees to my account from the inception of my loan to the present date and the date of such assessment to my account?

3) Have attorney fees ever been charged to my account from the inception of my loan to the present date?

4) If yes, please detail each separate charge of attorney fees to my account from the inception of my loan to the present date and the date of such charge to my account?

5) Have attorney fees ever been collected from my account from the inception of my loan to the present date?

6) If yes, please detail each separate collection of attorney fees from my account from the inception of my loan to the present date and the date of such collection from my account?

7) Please provide for me the name and address of each attorney or law firm that has been paid any fees or expenses related to my account from the inception of my loan to the present date?

8) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of attorney fees?

9) Please detail and list for me in writing each separate attorney fee assessed to my account and for which corresponding payment period or month such late fee was assessed from the inception of my loan to present date.

10) Please detail and list for me in writing each separate attorney fee collected from my account and for which corresponding payment period or month such late fee was collected from the inception of my loan to present date.

11) Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

12) Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment were made and the reasons for such adjustment.

Re:          James Kennedy
Loan Number:    ████7516

13) Has interest been charged on any attorney fee assessed or charged to my account? Yes or No?

14) Is interest allowed to be assessed or charged on attorney fees charged or assessed to my account? Yes or No?

15) How much in total attorney fees have been assessed to my account from the inception of my loan until present date? $ _____

16) How much in total attorney fees have been collected on my account from the inception of my loan until present date? $ _____

SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term "suspense account" and "unapplied account" as one in the same.

1) Has there been any suspense or unapplied account transactions on my account from the inception of my loan until present date?

2) If yes, why? If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3) In a spreadsheet or in letterform in a columnar format such that it is clear which entry falls under what column heading, please detail for me each and every transaction, both debits and credits that has occurred on my account from the inception of my loan until present date.

4) All documentation used to substantiate that property taxes had not been paid by borrower since the date of closing.

LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

1) Have you reported the collection of late fees on my account as interest in any statement to me or to the IRS? Yes or No?

2) Has any previous servicer or sub-servicer of my mortgage reported the collection of late fees on my account as interest in any statement to me or to the IRS? Yes or No?

3) Do you consider the payment of late fees as liquidated damages to you for not receiving my payment on time? Yes or No?

4) Are late fees considered interest? Yes or No?

Re:          James Kennedy
Loan Number:    ████7516

5) Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6) Were any of these expenses or damages charged or assessed to my account in any other way? Yes or No?

7) If yes, please describe what expenses or charges were charged or assessed to my account?

8) Please describe for me in writing what expenses you or others undertook due to any payment I made which was late?

9) Please describe for me in writing what damages you or others undertook due to any payment I made which was late?

10) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of late fees?

11) Please detail and list for me in writing each separate late fee assessed to my account and for which corresponding payment period or month such late fee was assessed from the inception of my loan to present date.

12) Please detail and list for me in writing each separate late fee collected from my account and for which corresponding payment period or month such late fee was collected from the inception of my loan to present date.

13) Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.

14) Please detail and list for me in writing any adjustments in late fees collected and on what date such adjustment was made and the reasons for such adjustment.

15) Has interest been charged on any late fee assessed or charged to my account? Yes or No?

16) Is interest allowed to be assessed or charged on late fees charged or assessed to my account? Yes or No?

17) Have any late charges been assessed to my account? Yes or No?

18) If yes, how much in total late charges have been assessed to my account from the inception of my loan until present date?  $_____

19) Please provide me with the exact months or payment dates you or other previous servicers of my account claim I have been late with a payment from the inception of my loan to the present date.

Re:            James Kennedy
Loan Number:        ▓▓▓▓7516

20) Have late charges been collected on my account from the inception of my loan until present date? Yes or No?

21) If yes, how much in total late charges have been collected on my account from the inception of my loan until present date? $_____

## PROPERTY INSPECTIONS

For purposes of this section "property inspection" and "inspection fee" refer to any inspection of my property by any source and any related fee or expense charged for such inspection.

1) Have any property inspections been conducted on my property from the inception of my loan until the present date?

2) If your answer is no, you can skip the rest of these questions in this section concerning property inspections?

3) If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for my mortgage, deed or note?

4) Please tell me the price charged for each property inspection?

5) Please tell me the date of each property inspection?

6) Please tell me the name and address of each company and person who conducted each property inspection on my property?

7) Please tell me why property inspections were conducted on my property?

8) Please tell me how property inspections are beneficial to me.

9) Please tell me how property inspections are protective of my property.

10) Please explain to me your policy on property inspections.

11) Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12) If yes, why?

13) Do you use property inspections to collect debts? Yes or No?

14) Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe?

15) If yes, please answer when and why?

Re:          James Kennedy
Loan Number:  ███████7516

16) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of property inspection fees?

17) Have you labeled in any record or document sent to me a property inspection as a misc. advance? Yes or No?

18) If yes, why?

19) Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?

20) If yes, why?

21) Please detail and list for me in writing each separate inspection fee assessed to my account and for which corresponding payment period or month such fee was assessed from the inception of my loan to present date.

22) Please detail and list for me in writing each separate inspection fee collected from my account and for which corresponding payment period or month such fee was collected from the inception of my loan to present date.

23) Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment.

24) Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment.

25) Has interest been charged on any inspection fees assessed or charged to my account? Yes or No?

26) If yes, when and how much was charged?

27) Is interest allowed to be assessed or charged on inspection fees charged or assessed to my account? Yes or No?

28) How much in total inspection fees have been assessed to my account from the inception of my loan until present date? $_____

29) How much in total inspection fee have been collected on my account from the inception of my loan until present date? $_____

BPO FEES

1) Have any BPOs [Broker's Price Opinions] been conducted on my property?

Re:                James Kennedy
Loan Number:      ██████7516

2) If yes, please tell me the date of each BPO conducted on my property that is the secured interest for my mortgage, deed or note?

3) Please tell me the price of each BPO?

4) Please tell me who conducted each BPO?

5) Please tell me why BPOs were conducted on my property

6) Please tell me how BPOs are beneficial to me.

7) Please tell me how BPOs are protective of my property.

8) Please explain to me your policy on BPOs.

9) Have any BPO fees been assessed to my account?  Yes or No?

10) If yes, how much in total BPO fees have been assessed to my account?  $_____

11) Have any BPO fees been charged to my account?  Yes or No?

12) If yes, how much in total BPO fees have been charged to my account?  $_____

13) Please tell me specifically what clause, paragraph and sentence in my note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect a BPO fee from me.

Please provide me with the documents I have requested and a detailed answer to each of my questions within the required lawful time frame.  Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional QWR letter.

Sincerely,


James P. Kennedy

GMAC's  QWR response to my May 14 QWR

      Documents show:

- References to contacting Wichita County Tax Collector when my property is located in San Francisco County in California

- States that on December 18, 2008 a repayment plan was approved, yet the repayment plan is addressed for mailing to me and dated December 18, 2008, so I could not have even received it yet. (and I never did).  No signatures, key figures missing from document
- Transaction History shows a history starting as of 6/12/09 and a second set with history starting 2/13/09 when the issue involved transactions in 2008
- Escrow analysis included is stated to have been performed on March 7, 2012 yet was part of the QWR response GMAC claims was mailed on February 6, 2012

June 5, 2012


James P Kennedy
700 E Sonora Rd
Palm Springs CA  92264-8436


RE:     Account Number       ▮▮▮7516
        Property Address     3825 21st Street
                             San Francisco CA  94114-2802


Dear James P Kennedy:

This letter is in response to your correspondence dated May 14, 2012, received on May 18, 2012 and identified as a Qualified Written Request ("QWR").

Our previous response(s) dated February 6, 2012 provided you with the information relating to the servicing of your account, as the law, specifically the Real Estate Settlement Practices Act ("RESPA"), requires. A copy of our response(s) is/are enclosed. As no new information has been submitted in your most recent correspondence, we trust that we have resolved your concerns.

If specific concerns exist related to the servicing of the above-referenced account, those concerns may be sent in writing to:

> GMAC Mortgage
> Attn:  Correspondence Department
> PO Box 4622
> Waterloo IA  50704

The following responses are in the same order as your inquiry.

1) Our records indicate, on June 19, 2008, correspondence was mailed to advising of delinquent taxes on your property; this correspondence requested proof of the remittance of the delinquent taxes. On October 4, 2008, we receive the electronic file from the Wichita County Tax Collector and disbursed the 2008 delinquent taxes of $2,939.80, including the penalty of $461.52.

June 5, 2012
Account Number ████ 7516
Page Two

2) Our records indicate, on June 19, 2008, correspondence was mailed to advising of delinquent taxes on your property; this correspondence requested proof of the remittance of the delinquent taxes. On October 4, 2008, we receive the electronic file from the San Francisco County County Tax Collector and disbursed the 2008 delinquent taxes of $2,939.80, including the penalty of $461.52. To discuss how the penalty was calculated, please contact the San Francisco County Collector at 415-554-4400.

3) and 4) Unfortunately, we did not receive your proof of payment for the delinquent taxes disbursed prior to October 4, 2008.

When the delinquent taxes were disbursed, your account was not updated as escrowed for taxes. However, as your account reflected the negative escrow balance, the escrow funds of $200.60 were added to your payment, effective December 1, 2008. As we maintain the lien of your property, we need to ensure the delinquent taxes are disbursed; enclosed is a copy of the Mortgage for your review.

4) Please be advised, we did not receive proof of the remittance of the delinquent taxes on August 5, 2008 and November 19, 2008.

5) through 7) According to our records in May 2009, the Wichita County Tax Collector advised a tax refund was not available. However, they applied our payment to the 2008 first installment due on December 10, 2008.

Our records indicate, on June 25, 2009, correspondence was also mailed to you advising of delinquent taxes on your property. As we did not receive of these taxes remitted, on November 20, 2009, we disbursed the 2009 delinquent taxes of $2,926.14. However, your account was not updated as escrowed for taxes.

Additionally, on June 23, 2010 and July 22, 2010, correspondence was also mailed to you advising of delinquent taxes on your property. As we did not receive proof of the remittance of these taxes, on August 16, 2010, we disbursed the delinquent 2009/2010 taxes of $6,152.90 and your account was updated as escrowed for taxes.

Therefore, on August 16, 2010, your escrow account was reanalyzed; this analysis reflected the escrow shortage of $15,962.27 and beginning with the October 1, 2010 payment, your payment was adjusted to $3,495.78.

June 5, 2012
Account Number ████ 7516
Page Four

2) According to the enclosed repayment agreements, your payments were to be remitted by certified funds or cashier's check. As check number 103 for $4,330.95 received was not one of these payment methods, on February 5, 2010, this check was returned to you. Please be advised, a nonsufficient funds fee was not assessed for this payment.

3) See response to number two.

4) Please be advised, correspondence was mailed to you advising of payment options, including the repayment plan and loan modification.

Our records indicate, on January 11, 2010, we responded to your Validation of Debt request; a copy of this response will be sent under separate cover. We apologize we did not receive your prior Qualified Written Requests.

Your account is due for the April 1, 2012 through June 1, 2012 payments of $7,208.69, including the late fees of $171.92. Please be advised, the breach letter expires July 9, 2010; therefore, foreclosure may begin after this date.

If you have any further questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

TN

# GMAC Mortgage

3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

12/18/09

## FORECLOSURE REPAYMENT AGREEMENT

JAMES P. KENNEDY

700 E SONORA RD
PALM SPRINGS        CA 92264-8436

RE:    Account Number        ███7516
       Property Address      3825 21ST STREET
                             SAN FRANCISCO      CA 94114-2802

JAMES P. KENNEDY ("Customer") and GMAC Mortgage, LLC ("Lender"), in consideration for the mutual covenants set forth in this Foreclosure Repayment Agreement (the "Agreement"), hereby agree as follows:

1.  There is an outstanding debt to the Lender pursuant to a note and mortgage or deed of trust or equivalent security instrument (the "Mortgage") executed on 09/28/93, in the original principal amount of $272000.00.

2.  The account is presently in default for non-payment to Lender of the 08/01/09 installment and all subsequent monthly payments due on the Mortgage for principal, interest, escrows and charges.

3.  The amount necessary to cure the default is $25985.74 plus such additional amounts that are presently due under the terms of the loan documents as of 12/18/09, and will increase until the default in the account is brought current.

4.  Lender has instituted foreclosure proceedings against the property securing the Mortgage indebtedness, which proceedings will continue until the default(s) described herein is/are brought current under the terms of the Mortgage, or otherwise cured as provided for in this Agreement.

5.  Notwithstanding the foregoing, Lender agrees to suspend but not terminate foreclosure activity on the default account, provided we receive the executed Agreement and we receive the initial installment in the amount of $4330.95 no later than MONTHLY. This executed Agreement can be mailed or faxed to us at:

12/18/09
Account Number    7516
Page Two

          GMAC Mortgage, LLC
          Attention: Default Payment Processor
          3451 Hammond Avenue
          Waterloo, IA  50702
          Fax: 866-340-5043

6. Pursuant to your request you agree to pay the remainder of the default, $, as indicated in the Payment Schedule enclosed and made a part hereof by reference. Customer understands that payments due under the Payment Schedule may include amounts due for real estate taxes and insurance, and the Payment Schedule amounts may, in such event, have to be increased, at the sole option of the Lender, if the items for such escrow purposes should increase during the duration of the Agreement.

7. All payments under this Agreement, including the regular monthly payments, shall be made in certified funds or cashier's check, shall include the account number on the Customer's check or on a written attachment to the check, and shall be sent to the following address:

          GMAC Mortgage, LLC
          Attention: Default Payment Processor
          3451 Hammond Avenue
          Waterloo, IA  50702

Additional methods of remitting payments under this agreement are:

- Money Gram using a Receive Code of 01/02/10
- Western Union using a Code City and State of

If payment is tendered in any other form, Lender may return the payment and invoke any remedies available under the loan documents and this Agreement.

8. In the event we do not receive timely payment called for under this Agreement, Lender may, without further notice to Customer, undertake or continue collection or foreclosure activities. In such event, any payments tendered under this Agreement shall be applied to the account in the manner specified in the Mortgage, and there will be no right to a refund of the tendered funds. In the event Lender chooses to accept any payment not in the full amount called for under this Agreement, such acceptance shall not be deemed a waiver of Lender's right to declare a default under this Agreement. Upon any default in meeting the terms of this Agreement, any such payments received under the terms of this Agreement shall be applied first against the default in the account, with the excess, if any, then applied according to the terms of the Mortgage. The parties expressly understand and agree time shall be of the essence as to the obligation under this Agreement.

12/18/09
Account Number    7516
Page Three

9.  Customer understands and agrees that all other provisions, covenants and agreements set forth in the Mortgage shall remain in force and effect during the duration of this Agreement and thereafter, and this Agreement shall not constitute a modification or extension of the Mortgage.

10. If a notice of a new or subsequent bankruptcy is received during the duration of this Agreement, the Agreement will automatically be voided.

11. Acceptance of any payment hereunder shall not constitute a cure nor be deemed a waiver of the existing default, and in no manner shall such acceptance prejudice any rights of Lender to proceed with the Trustee Sale Action noticed in the Notice of Default, and shall not constitute a violation of California Code of Civil Procedure Section 726.580(a), 580(d) (the One Form of Action Rule), and shall not invalidate the Notice of Default. Customer expressly relinquishes and waives any rights, claims and defenses Customer may have under any of the Code of Civil Procedure Sections or under the Loan with regard to any whole or partial payments, whether current, past or future.

12. If any additional amounts are added to the loan to be collected that have not been addressed in this agreement, those amounts will need to be paid at the conclusion of this agreement.

**Notice: This is an attempt to collect a debt, and any information obtained will be used for that purpose. If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced account, not as a personal liability.**

If you have any additional questions, please contact us at 800-850-4622, extension .

Loss Mitigation Department
Loan Servicing

Enclosure

12/18/09
Account Number▉▉▉7516
Page Four

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*CERTIFIED FUNDS ONLY\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOTE:  There is no grace period during this Agreement.  Pursuant to your request and in order to cure the default on this account, all payments must be received on or before the due date.

**RECEIVED AND AGREED:**

_____(Seal)          _____

JAMES P. KENNEDY                                         Date
Customer

_____                _____

                                                                   Date
Customer

Upon receipt of the signed agreement, we as the Servicer will also execute to indicate our concurrence with this agreement.

_____

Servicer

5:15

## SIGN AND RETURN THIS PAGE ONLY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* FAX TO 866-340-5043 \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# GMAC Mortgage

3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

02/26/10

## FORECLOSURE REPAYMENT AGREEMENT

JAMES P. KENNEDY

700 E SONORA RD
PALM SPRINGS      CA 92264-8436

RE:    Account Number        ████ 7516
       Property Address      3825 21ST STREET
                             SAN FRANCISCO      CA 94114-2802

JAMES P. KENNEDY ("Customer") and GMAC Mortgage, LLC ("Lender"), in consideration for the mutual covenants set forth in this Foreclosure Repayment Agreement (the "Agreement"), hereby agree as follows:

1. There is an outstanding debt to the Lender pursuant to a note and mortgage or deed of trust or equivalent security instrument (the "Mortgage") executed on 09/28/93, in the original principal amount of $272000.00.

2. The account is presently in default for non-payment to Lender of the 10/01/09 installment and all subsequent monthly payments due on the Mortgage for principal, interest, escrows and charges.

3. The amount necessary to cure the default is $ plus such additional amounts that are presently due under the terms of the loan documents as of 02/26/10, and will increase until the default in the account is brought current.

4. Lender has instituted foreclosure proceedings against the property securing the Mortgage indebtedness, which proceedings will continue until the default(s) described herein is/are brought current under the terms of the Mortgage, or otherwise cured as provided for in this Agreement.

5. Notwithstanding the foregoing, Lender agrees to suspend but not terminate foreclosure activity on the default account, provided we receive the executed Agreement and we receive the initial installment in the amount of $ no later than . This executed Agreement can be mailed or faxed to us at:

02/26/10
Account Number███████7516
Page Two

GMAC Mortgage, LLC
Attention: Default Payment Processor
3451 Hammond Avenue
Waterloo, IA  50702
Fax: 866-340-5043

6.  Pursuant to your request you agree to pay the remainder of the default, $, as indicated in the
Payment Schedule enclosed and made a part hereof by reference.  Customer understands
that payments due under the Payment Schedule may include amounts due for real estate
taxes and insurance, and the Payment Schedule amounts may, in such event, have to be
increased, at the sole option of the Lender, if the items for such escrow purposes should
increase during the duration of the Agreement.

7.  All payments under this Agreement, including the regular monthly payments, shall be made
in certified funds or cashier's check, shall include the account number on the Customer's
check or on a written attachment to the check, and shall be sent to the following address:

GMAC Mortgage, LLC
Attention: Default Payment Processor
3451 Hammond Avenue
Waterloo, IA  50702

Additional methods of remitting payments under this agreement are:
- Money Gram using a Receive Code of
- Western Union using a Code City and State of

If payment is tendered in any other form, Lender may return the payment and invoke any
remedies available under the loan documents and this Agreement.

8.  In the event we do not receive timely payment called for under this Agreement, Lender
may, without further notice to Customer, undertake or continue collection or foreclosure
activities.  In such event, any payments tendered under this Agreement shall be applied to
the account in the manner specified in the Mortgage, and there will be no right to a refund
of the tendered funds.  In the event Lender chooses to accept any payment not in the full
amount called for under this Agreement, such acceptance shall not be deemed a waiver of
Lender's right to declare a default under this Agreement.  Upon any default in meeting the
terms of this Agreement, any such payments received under the terms of this Agreement
shall be applied first against the default in the account, with the excess, if any, then applied
according to the terms of the Mortgage.  The parties expressly understand and agree time
shall be of the essence as to the obligation under this Agreement.

02/26/10
Account Number      7516
Page Three

9.  Customer understands and agrees that all other provisions, covenants and agreements set
    forth in the Mortgage shall remain in force and effect during the duration of this Agreement
    and thereafter, and this Agreement shall not constitute a modification or extension of the
    Mortgage.

10. If a notice of a new or subsequent bankruptcy is received during the duration of this
    Agreement, the Agreement will automatically be voided.

11. Acceptance of any payment hereunder shall not constitute a cure nor be deemed a waiver of
    the existing default, and in no manner shall such acceptance prejudice any rights of Lender
    to proceed with the Trustee Sale Action noticed in the Notice of Default, and shall not
    constitute a violation of California Code of Civil Procedure Section 726.580(a), 580(d) (the
    One Form of Action Rule), and shall not invalidate the Notice of Default. Customer
    expressly relinquishes and waives any rights, claims and defenses Customer may have under
    any of the Code of Civil Procedure Sections or under the Loan with regard to any whole or
    partial payments, whether current, past or future.

12. If any additional amounts are added to the loan to be collected that have not been addressed
    in this agreement, those amounts will need to be paid at the conclusion of this agreement.

**Notice: This is an attempt to collect a debt, and any information obtained will be used for
that purpose. If your debt has been discharged in bankruptcy, our rights are being
exercised against the collateral for the above-referenced account, not as a personal
liability.**

If you have any additional questions, please contact us at 800-850-4622, extension .

Loss Mitigation Department
Loan Servicing

Enclosure

02/26/10
Account Number████7516
Page Four

**************************CERTIFIED FUNDS ONLY**************************

NOTE:  There is no grace period during this Agreement.  Pursuant to your request and in order to cure the default on this account, all payments must be received on or before the due date.

**RECEIVED AND AGREED:**

_____ (Seal)            _____
JAMES P. KENNEDY                             Date
Customer

_____                   _____
                                             Date
Customer

Upon receipt of the signed agreement, we as the Servicer will also execute to indicate our concurrence with this agreement.

_____
Servicer

5:15

# SIGN AND RETURN THIS PAGE ONLY

************************** FAX TO 866-340-5043 **************************

2008 HISTORY STATEMENT OF MORTGAGE ACCOUNT

GMAC MORTGAGE, LLC
PO BOX 780
WATERLOO, IA 50704-0780

JAMES P. KENNEDY
700 E SONORA RD
PALM SPRINGS            CA 92264-8436

LOAN TYPE 1-0  CONVENTIONAL
ACCOUNT NUM ████ 7516

## 2008 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | 1719.23 | 02/08 | 02/01 | 619.35 | 1099.88 | | | | 202,435.81 | | |
| PAYMENT | 1719.23 | 03/08 | 02/29 | 622.70 | 1096.53 | | | | 201,813.11 | | |
| PAYMENT | 1719.23 | 04/08 | 04/01 | 626.08 | 1093.15 | | | | 201,187.03 | | |
| PAYMENT | 1719.23 | 05/08 | 05/01 | 629.47 | 1089.76 | | | | 200,557.56 | | |
| PAYMENT | 1719.23 | 06/08 | 05/30 | 632.88 | 1086.35 | | | | 199,924.68 | | |
| PAYMENT | 1719.23 | 07/08 | 07/01 | 636.30 | 1082.93 | | | | 199,288.38 | | |
| PAYMENT | 1719.23 | 08/08 | 08/01 | 639.75 | 1079.48 | | | | 198,648.63 | | |
| CORP ADV 2 E | 6391.00 | 08/08 | 08/21 | | | | | 6391.00 | 198,648.63 | | |
| REVERSAL | 6391.00 | 08/08 | 08/22 | | -6391.00 | | | 198,648.63 | -6,391.00 | | |
| CORP ADV 2 E | 6391.00 | 08/08 | 08/22 | | | | | 6391.00 | 198,648.63 | -6,391.00 | |
| PAYMENT | 1719.23 | 09/08 | 08/29 | 643.22 | 1076.01 | | | | 198,005.41 | -6,391.00 | |
| TAX DISB | | 09/08 | 10/04 | | -2939.80 | | | 198,005.41 | -9,330.80 | | |
| PAYMENT | 1719.23 | 10/08 | 10/10 | 646.70 | 1072.53 | | | | 197,358.71 | -9,330.80 | |
| ESCROW DEPOSIT | 6391.00 | 10/08 | 10/23 | | 6391.00 | | | 197,358.71 | -2,939.80 | | |
| MISC RECEIPT | 1719.23 | 10/08 | 11/10 | | | | | 197,358.71 | -2,939.80 | 1,719.23 | |
| PAYMENT | 532.58 | 11/08 | 12/01 | 650.20 | 1069.03 | 532.58 | | | 196,708.51 | -2,407.22 | |
| MISC RECEIPT | 1186.65 | 11/08 | 12/01 | | | | | 196,708.51 | -2,407.22 | 1,186.65 |

SUMMARY TOTALS

| | | | | | |
|---|---|---|---|---|---|
| PRINCIPAL BALANCE START OF PERIOD | 203,055.16 | | P & I PAYMENT | 1,719.23 |
| PRINCIPAL PAID DURING PERIOD | 6,346.65 | | ESCROW PAYMENT | 200.60 |
| PRINCIPAL BALANCE END OF PERIOD | 196,708.51 | | | |

| | | | | | |
|---|---|---|---|---|---|
| ESCROW | BALANCE START OF PERIOD | 0.00 | | TOTAL PAYMENT | 1,919.83 |
| ESCROW | PAID DURING PERIOD | 6,923.58 | | ACCUM LATE CHRG | 85.96 |
| ESCROW | DISBURSEMENTS | -9,330.80 | | | |
| ESCROW | BALANCE END OF PERIOD | -2,407.22 | | | |

| | | | |
|---|---|---|---|
| REFUND | OF OVERPAID INTEREST | 0.00 |
| INTEREST | REPORTABLE  DURING PERIOD | 10845.65 |
| PROPERTY | TAXES PAID DURING PERIOD | 2,939.80 |
| POINTS PAID | | 0.00 |

Entity002Org00000

2009 HISTORY STATEMENT OF MORTGAGE ACCOUNT

GMAC MORTGAGE
PO BOX 780
WATERLOO, IA 50704-0780

JAMES P. KENNEDY
700 E SONORA RD
PALM SPRINGS        CA 92264-8436

LOAN TYPE 1-0  CONVENTIONAL
ACCOUNT NUM ███████7516

## 2009 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | 733.18 | 12/08 | 01/14 | 653.73 | 1065.50 | 200.60 | | | 196,054.78 | -2,206.62 | |
| MISC RECEIPT | 986.05 | 12/08 | 01/14 | | | | | | 196,054.78 | -2,206.62 | 986.05 |
| PAYMENT | 933.78 | 01/09 | 02/13 | 657.27 | 1061.96 | 200.60 | | | 195,397.51 | -2,006.02 | |
| MISC RECEIPT | 785.45 | 01/09 | 02/13 | | | | | | 195,397.51 | -2,006.02 | 785.45 |
| PAYMENT | 1134.38 | 02/09 | 03/13 | 660.83 | 1058.40 | 200.60 | | | 194,736.68 | -1,805.42 | |
| MISC RECEIPT | 584.85 | 02/09 | 03/13 | | | | | | 194,736.68 | -1,805.42 | 584.85 |
| PAYMENT | 1334.98 | 03/09 | 04/14 | 664.41 | 1054.82 | 200.60 | | | 194,072.27 | -1,604.82 | |
| MISC RECEIPT | 384.25 | 03/09 | 04/14 | | | | | | 194,072.27 | -1,604.82 | 384.25 |
| CORP ADV 2 E | 6391.00 | 03/09 | 04/23 | | | | | 6391.00 | 194,072.27 | -1,604.82 | 384.25 |
| REVERSAL | -6391.00 | 03/09 | 04/24 | | | -6391.00 | | | 194,072.27 | -7,995.82 | 384.25 |
| CORP ADV 2 E | 6391.00 | 03/09 | 04/24 | | | | | 6391.00 | 194,072.27 | -7,995.82 | 384.25 |
| PAYMENT | 1535.58 | 04/09 | 05/14 | 668.01 | 1051.22 | 200.60 | | | 193,404.26 | -7,795.22 | |
| MISC RECEIPT | 183.65 | 04/09 | 05/14 | | | | | | 193,404.26 | -7,795.22 | 183.65 |
| PAYMENT | 1719.23 | 05/09 | 06/12 | 671.62 | 1047.61 | 183.65 | | | 192,732.64 | -7,611.57 | |
| MISC RECEIPT | 1719.23 | 05/09 | 08/14 | | | | | | 192,732.64 | -7,611.57 | 1,719.23 |
| MISC RECEIPT | 1719.23 | 05/09 | 09/14 | | | | | | 192,732.64 | -7,611.57 | 3,438.46 |
| PAYMENT | | 06/09 | 09/16 | 675.26 | 1043.97 | 632.88 | | | 192,057.38 | -6,978.69 | 1,086.35 |
| PAYMENT | 1282.71 | 07/09 | 10/14 | 678.92 | 1040.31 | 649.83 | | | 191,378.46 | -6,328.86 | |
| MISC RECEIPT | 436.52 | 07/09 | 10/14 | | | | | | 191,378.46 | -6,328.86 | 436.52 |
| CORP ADV 3 D | 83.00 | 07/09 | 10/20 | | | | | 83.00 | 191,378.46 | -6,328.86 | 436.52 |
| MISC RECEIPT | 1719.23 | 07/09 | 11/13 | | | | | | 191,378.46 | -6,328.86 | 2,155.75 |
| REVERSAL | -1719.23 | 07/09 | 11/19 | | | | | | 191,378.46 | -6,328.86 | 436.52 |
| NSF FEE | 25.00 | 07/09 | 11/19 | | | | | 25.00 | 191,378.46 | -6,328.86 | 436.52 |
| TAX DISB | | 07/09 | 11/20 | | | -2926.14 | | | 191,378.46 | -9,255.00 | 436.52 |
| PROP INSPECT | 11.25 | 07/09 | 11/25 | | | | | 11.25 | 191,378.46 | -9,255.00 | 436.52 |
| MISC RECEIPT | 1719.23 | 07/09 | 12/14 | | | | | | 191,378.46 | -9,255.00 | 2,155.75 |
| REVERSAL | -1719.23 | 07/09 | 12/15 | | | | | | 191,378.46 | -9,255.00 | 436.52 |
| PROP INSPECT | 11.25 | 07/09 | 12/22 | | | | | 11.25 | 191,378.46 | -9,255.00 | 436.52 |
| PAYMENT | 2352.11 | 08/09 | 12/31 | 682.60 | 1036.63 | 632.88 | | | 190,695.86 | -8,622.12 | 436.52 |
| PAYMENT | 2352.11 | 09/09 | 12/31 | 686.29 | 1032.94 | 632.88 | | | 190,009.57 | -7,989.24 | 436.52 |
| REVERSAL | -373.27 | 09/09 | 12/31 | | | | | | 190,009.57 | -7,989.24 | 63.25 |

```
                                   2009 DETAIL BY TRANSACTION
TRANSACTION    TRANSACTION LAST  POST  PRINCIPAL  INTEREST        ESCROW CR LIFE/ LT CHRG/ PRINCIPAL BAL ESCROW BAL UNAPP FUNDS
DESCRIPTION      AMOUNT    PAID  DATE    PAID       PAID          PAID    DISAB    FEES    AFTER TRAN    AFTER TRAN AFTER TRAN
```

SUMMARY TOTALS                                  221057516

```
PRINCIPAL BALANCE START OF PERIOD    196,708.51     P & I PAYMENT      1,719.23
PRINCIPAL PAID DURING PERIOD           6,698.94     ESCROW PAYMENT       632.88
PRINCIPAL BALANCE END OF PERIOD      190,009.57

ESCROW    BALANCE START OF PERIOD     -2,407.22     TOTAL PAYMENT      2,352.11
ESCROW    PAID DURING PERIOD           3,735.12     ACCUM LATE CHRG      429.80
ESCROW    DISBURSEMENTS                -9,317.14
ESCROW    BALANCE END OF PERIOD       -7,989.24

REFUND    OF OVERPAID INTEREST             0.00
INTEREST  REPORTABLE  DURING PERIOD    10493.36
PROPERTY  TAXES PAID DURING PERIOD      2,926.14
POINTS PAID                                0.00
```

Entity082Org00000

```
GMAC Mortgage, LLC                                              PAGE      1
PO Box 780                                                      DATE 06/05/12
3451 Hammond Avenue
Waterloo              IA 50704-0780
                                           HISTORY FOR ACCOUNT        7516


--------- MAIL -------------------- --------- PROPERTY ----------------


    JAMES F. KENNEDY


    700 E SONORA RD                      3825 21ST STREET


    PALM SPRINGS         CA 92264-8436 SAN FRANCISCO      CA 94114-2802

------ DATES ------  ---- CURRENT BALANCES -----  ------- UNCOLLECTED -------
PAID TO   03/01/12  PRINCIPAL       167598.09  LATE CHARGES          0.00
NEXT DUE  04/01/12  ESCROW           -139.01   OPTIONAL INS          0.00
LAST PMT  03/30/12  UNAPPLIED FUND      0.00   INTEREST              0.00
AUDIT DT  09/28/93  UNAPPLIED CODES            FEES                  0.00
                    BUYDOWN   FUND      0.00   ------ YEAR TO DATE -------
    LAST ACTIVITY   BUYDOWN   CODE            INTEREST            2749.60
       05/23/12                               TAXES               2722.43
--------------------------------------------------------------------------


POST   TRN  DUE    TRANSACTION    PRINCIPAL    INTEREST      ESCROW
DATE   CDE  DATE    AMOUNT         PAID         PAID         PAID
------ ---  ------ -------------- ------------- ------------- -------------
061209 UI  050109            .00          .00           .00           .00
  REF NUMBER    SG0R5EQ19KRE DESC
                      BAL AFTER     193404.26                  -7795.22
                    * ESC SHORTAGE       -16.95
T:00603     E/B:001 OPTIONAL INS BAL    00.00 LATE CHARGE BAL    00.00
061209 GRU 000000 000000 GRACE UNAP AMT:     .00
061209 UFU 050109  UNAPPLIED FUNDS (1)       -183.65  BALANCE       0.00
                      BAL AFTER     193404.26                  -7795.22
T:00603     /B:001 OPTIONAL INS BAL    00.00 LATE CHARGE BAL    00.00
061209 AP  050109      1719.23       671.62     1047.61      183.65
                      BAL AFTER     192732.64                  -7611.57
T:00603     E/B:001 OPTIONAL INS BAL    00.00 LATE CHARGE BAL   -85.96
081409 UFU 050109  UNAPPLIED FUNDS (1)      1719.23  BALANCE    1719.23
  REF NUMBER    SG0RL9OTDDND DESC
                      BAL AFTER     192732.64                  -7611.57
T:00603     /B:001 OPTIONAL INS BAL    00.00 LATE CHARGE BAL   -85.96


081409 SRA 050109      1719.23          .00          .00          .00
                      BAL AFTER     192732.64                  -7611.57
T:00603     E/B:001 OPTIONAL INS BAL    00.00 LATE CHARGE BAL   -85.96
091409 UFU 050109  UNAPPLIED FUNDS (1)      1719.23  BALANCE    3438.46
  REF NUMBER    SG0RT3734OFJ DESC
                      BAL AFTER     192732.64                  -7611.57
T:00603     /B:001 OPTIONAL INS BAL    00.00 LATE CHARGE BAL   -85.96


    INQ 1419
```

# GMAC Mortgage

February 6, 2012

James P Kennedy
700 E Sonora Rd
Palm Springs CA 92264-8436

RE:    Account Number    ▬▬▬7516
       Property Address    3825 21st Street
                           San Francisco CA 94114-2802

Dear James P Kennedy:

Please be advised that this letter serves as our response to your Qualified Written Request ("QWR") for information regarding the above-referenced GMAC Mortgage account dated January 19, 2012 and received in our office on January 23, 2012. In your correspondence, you request detailed information and documentation regarding nearly every aspect of the mortgage loan transaction, beginning with its origination.

In response to your inquiry, GMAC Mortgage has enclosed a copy of the account's payment history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because your letter appears to be questioning nearly every aspect of the loan transaction, it is difficult for GMAC Mortgage to identify any specific concern(s) you have regarding the servicing of the account. Nevertheless, in an effort to be responsive to your request, copies of pertinent documentation GMAC Mortgage has in its records are enclosed.

- Note
- Mortgage/Deed of Trust
- HUD-I Settlement Statement
- Escrow Analysis Statements
- Monthly Account Statements
- Payoff Statement

The following responses are in the same order as the inquiries in the QWR:

**Loan Accounting and Servicing Systems**

Subject to business and trade practices, which are proprietary and confidential.

GMAC Mortgage LLC        www.gmacmortgage.com
3451 Hammond Avenue
PO Box 780
Waterloo IA 50704-0780

# **GMAC Mortgage**

February 6, 2012
Account Number█████7516
Page Two

## Debits and Credits

See enclosed history and transaction code key.

## Attorney Fees

No attorney fees have been assessed on this account. The answers to questions concerning how or why these fees are assessed are outlined in the enclosed Note and Mortgage/Deed of Trust. RESPA does not require we respond on items from a previous servicer.

## Suspense/Unapplied Accounts

This information is detailed in the enclosed history.

## Late Fees

All late fees assessed are listed in the enclosed history. The answers to questions concerning how or why these fees are assessed are outlined in the enclosed Note and Mortgage/Deed of Trust. RESPA does not require we respond on items from a previous servicer.

## Property Inspections

This information is detailed in the enclosed history. The answers to questions concerning how or why these fees are assessed are outlined in the enclosed Note and Mortgage/Deed of Trust. RESPA does not require we respond on items from a previous servicer.

## BPO Fees

All BPO fees assessed are listed in the enclosed history. The answers to questions concerning how or why these fees are assessed is outlined in the enclosed Note and Mortgage/Deed of Trust. RESPA does not require we respond on items from a previous servicer.

If you have any further general servicing questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care KT
Loan Servicing

*Enclosures*

GMAC Mortgage LLC          www.gmacmortgage.com
3451 Hammond Avenue
PO Box 780
Waterloo IA 50704-0780

```
GMAC Mortgage, LLC                        PAGE      1
PO Box 780                                DATE 02/06/12
3451 Hammond Avenue
Waterloo         IA 50704-0780
                           HISTORY FOR ACCOUNT  ████7516


     --------- MAIL --------------------- -------- PROPERTY ----------------

     JAMES P. KENNEDY

     700 E SONORA RD             3825 21ST STREET

     PALM SPRINGS     CA 92264-8436 SAN FRANCISCO     CA 94114-2802

     ------ DATES ------  ---- CURRENT BALANCES -----  ------- UNCOLLECTED -------
     PAID TO   01/01/12  PRINCIPAL        169207.82  LATE CHARGES        0.00
     NEXT DUE  02/01/12  ESCROW              670.14  OPTIONAL INS        0.00
     LAST PMT  01/30/12  UNAPPLIED FUND        0.00  INTEREST            0.00
     AUDIT DT  09/28/93  UNAPPLIED CODES            FEES                 0.00
                         BUYDOWN  FUND         0.00  ------ YEAR TO DATE -------
       LAST ACTIVITY     BUYDOWN  CODE              INTEREST           920.87
         01/30/12                                   TAXES                0.00
     ........................................................................

     POST  TRN  DUE    TRANSACTION   PRINCIPAL   INTEREST      ESCROW
     DATE  CDE  DATE     AMOUNT        PAID        PAID         PAID
     ------ --- ------ ------------ ------------ ------------ ------------
     021309 GRU 000000 000000 GRACE UNAP AMT:        .00
       REF NUMBER    SG0Q7H7LU9P1 DESC
     021309 UFU 010109   UNAPPLIED FUNDS (1)        -986.05  BALANCE       0.00
                         BAL AFTER    196054.78                  -2206.62
     T:00603       /B:001  OPTIONAL INS BAL    00.00  LATE CHARGE BAL    00.00
     021309 AP  010109      933.78      657.27     1061.96      200.60
                         BAL AFTER    195397.51                  -2006.02
     T:00603       E/B:001  OPTIONAL INS BAL   00.00  LATE CHARGE BAL   -85.96

     021309 GRU 000000 000000 GRACE UNAP AMT:        .00
       REF NUMBER    SG0Q7H7LU9P1 DESC
     021309 UFU 010109   UNAPPLIED FUNDS (1)         785.45  BALANCE     785.45
                         BAL AFTER    195397.51                  -2006.02
     T:00603       /B:001  OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -85.96
     021309 SWA 010109      785.45         .00          .00          .00
                         BAL AFTER    195397.51                  -2006.02
     T:00603       E/B:001  OPTIONAL INS BAL   00.00  LATE CHARGE BAL   -85.96

     031309 GRU 000000 000000 GRACE UNAP AMT:        .00
       REF NUMBER    SG0QEIJE4QTI DESC
     031309 UFU 020109   UNAPPLIED FUNDS (1)        -785.45  BALANCE       0.00
                         BAL AFTER    195397.51                  -2006.02
     T:00603       /B:001  OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -85.96
     031309 AP  020109     1134.38      660.83     1058.40      200.60
                         BAL AFTER    194736.68                  -1805.42
     T:00603       E/B:001  OPTIONAL INS BAL   00.00  LATE CHARGE BAL   -85.96


     INQ 1357
```

# EXHIBIT   "P"

June 5, 2012


James P Kennedy
700 E Sonora Rd
Palm Springs CA  92264-8436


RE:    Account Number        ████7516
       Property Address      3825 21st Street
                             San Francisco CA  94114-2802


Dear James P Kennedy:

This letter is in response to your correspondence dated May 14, 2012, received on
May 18, 2012 and identified as a Qualified Written Request ("QWR").

Our previous response(s) dated February 6, 2012 provided you with the information
relating to the servicing of your account, as the law, specifically the Real Estate
Settlement Practices Act ("RESPA"), requires. A copy of our response(s) is/are enclosed.
As no new information has been submitted in your most recent correspondence, we trust
that we have resolved your concerns.

If specific concerns exist related to the servicing of the above-referenced account, those
concerns may be sent in writing to:


                   GMAC Mortgage
                   Attn:  Correspondence Department
                   PO Box 4622
                   Waterloo IA  50704

The following responses are in the same order as your inquiry.

1)  Our records indicate, on June 19, 2008, correspondence was mailed to advising of
    delinquent taxes on your property; this correspondence requested proof of the
    remittance of the delinquent taxes. On October 4, 2008, we receive the electronic
    file from the Wichita County Tax Collector and disbursed the 2008 delinquent
    taxes of $2,939.80, including the penalty of $461.52.

June 5, 2012
Account Number ████ 7516
Page Two

2) Our records indicate, on June 19, 2008, correspondence was mailed to advising of delinquent taxes on your property; this correspondence requested proof of the remittance of the delinquent taxes. On October 4, 2008, we receive the electronic file from the San Francisco County County Tax Collector and disbursed the 2008 delinquent taxes of $2,939.80, including the penalty of $461.52. To discuss how the penalty was calculated, please contact the San Francisco County Collector at 415-554-4400.

3) and 4) Unfortunately, we did not receive your proof of payment for the delinquent taxes disbursed prior to October 4, 2008.

When the delinquent taxes were disbursed, your account was not updated as escrowed for taxes. However, as your account reflected the negative escrow balance, the escrow funds of $200.60 were added to your payment, effective December 1, 2008. As we maintain the lien of your property, we need to ensure the delinquent taxes are disbursed; enclosed is a copy of the Mortgage for your review.

4) Please be advised, we did not receive proof of the remittance of the delinquent taxes on August 5, 2008 and November 19, 2008.

5) through 7) According to our records in May 2009, the Wichita County Tax Collector advised a tax refund was not available. However, they applied our payment to the 2008 first installment due on December 10, 2008.

Our records indicate, on June 25, 2009, correspondence was also mailed to you advising of delinquent taxes on your property. As we did not receive of these taxes remitted, on November 20, 2009, we disbursed the 2009 delinquent taxes of $2,926.14. However, your account was not updated as escrowed for taxes.

Additionally, on June 23, 2010 and July 22, 2010, correspondence was also mailed to you advising of delinquent taxes on your property. As we did not receive proof of the remittance of these taxes, on August 16, 2010, we disbursed the delinquent 2009/2010 taxes of $6,152.90 and your account was updated as escrowed for taxes.

Therefore, on August 16, 2010, your escrow account was reanalyzed; this analysis reflected the escrow shortage of $15,962.27 and beginning with the October 1, 2010 payment, your payment was adjusted to $3,495.78.

June 5, 2012
Account Number ████ 7516
Page Three

8) As we did not receive proof of homeowner's insurance, on August 8, 2008, we disbursed the lender placed homeowner's insurance premium of $6,391.00. On October 23, 2008, we receive the lender placed homeowner's insurance refund of $6,391.00 and these funds were deposited to your escrow account.

Therefore, on October 29, 2008, we reviewed your escrow account and effective with the December 1, 2008 payment, your payment was adjusted to $1,919.83. However, as your payments were adjusted to include the negative escrow balance, your payment was not updated to principal and interest.

9) See the enclosed Mortgage/Deed of Trust. To further discuss the lender placed homeowner's insurance disbursement, please contact our Insurance Department at 1-800-850-4622.

10) Enclosed is a 2008 payment history for your review; this history reflects the escrow balance after each transaction.

Workout Plans 2009-2001

1) On December 18, 2009, the repayment plan was approved. As we did not receive the payment of $4,330.95 by February 2, 2010; this plan was cancelled on February 16, 2010.

Our records indicate, on February 26, 2010, a new repayment plan was approved; the enclosed repayment agreement included the following payments due:

| | |
|---|---|
| • March 10, 2010 | $2,352.11 |
| • April 10, 2010 | $5,121.89 |
| • May 10, 2010 | $5,121.89 |
| • June 10, 2010 | $5,121.89 |
| • July 10, 2010 | $5,121.89 |
| • August 10, 2010 | $5,121.89 |

June 5, 2012
Account Number █████7516
Page Four

    2) According to the enclosed repayment agreements, your payments were to be
       remitted by certified funds or cashier's check. As check number 103 for
       $4,330.95 received was not one of these payment methods, on February 5, 2010,
       this check was returned to you. Please be advised, a nonsufficient funds fee was
       not assessed for this payment.
    3) See response to number two.
    4) Please be advised, correspondence was mailed to you advising of payment
       options, including the repayment plan and loan modification.

Our records indicate, on January 11, 2010, we responded to your Validation of Debt
request; a copy of this response will be sent under separate cover. We apologize we did
not receive your prior Qualified Written Requests.

Your account is due for the April 1, 2012 through June 1, 2012 payments of $7,208.69,
including the late fees of $171.92. Please be advised, the breach letter expires
July 9, 2010; therefore, foreclosure may begin after this date.

If you have any further questions, please contact Customer Care at 1-800-766-4622
between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to
1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

TN

REPRESENTATION OF PRINTED DOCUMENT

## GMAC Mortgage

3451 Hammond Avenue
Waterloo, IA 50702
1 800 766 4622/Follow the Prompts

Important Note In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

### ESCROW ANALYSIS STATEMENT

ACCOUNT NUMBER: ▮▮▮▮7516

PROPERTY ADDRESS:
3625 21ST STREET
SAN FRANCISCO CA 94114-2802

ANALYSIS DATE: MARCH 07, 2012

47740-0069120-028
JAMES P. KENNEDY
700 E SONORA RD
PALM SPRINGS CA  92264-8436

---

**PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.**

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| COUNTY | DECEMBER 2012 | 2,722.43 | 2,683.86 |
| COUNTY | APRIL 2013 | 2,722.43 | 2,683.86 |
| | TOTAL ANNUAL DISBURSEMENTS: | 5,444.86 | 5,367.72 |
| | TOTAL ESCROW PAYMENT: | 453.73 | 447.31 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE:** If you pay the escrow shortage amount of $89.93, your new total payment will automatically be adjusted to $2,172.96 effective with your MAY 01, 2012 payment. If you do not pay the shortage, your total payment effective MAY 01, 2012 will be $2,180.45.

| Payment change: | Now | Prior Analysis |
|---|---|---|
| Escrow | 453.73 | 447.31 |
| Surplus/Shortage | 7.49 | 509.33 |
| Escrow Shortage Spread 12 Months | | |
| | | |
| Total | 461.22 | 956.64 |
| Principal/Interest | 1,719.23 | 1,719.23 |
| Total Payment | 2,180.45 | 2,675.87 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

Any questions regarding changes in the "Estimated Amount of Next Disbursement" should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: 1-800-256-9962.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow shortage payment

**THIS COUPON MUST ACCOMPANY YOUR ESCROW SHORTAGE PAYMENT**

## GMAC Mortgage

**THIS IS NOT A CHECK**

NOTE   you must use this address when remitting your escrow shortage payment

| Account Number | Shortage Amount |
|---|---|
| ▮▮▮▮7516 | 89.93 |

JAMES P. KENNEDY

| Total Amount Enclosed  $ |
|---|

GMAC MORTGAGE
PO BOX 78162
PHOENIX AZ  85062 9162

If you pay the escrow shortage amount of $89.93, your new payment will be automatically adjusted to $2,172.96 effective with your MAY 01, 2012 payment.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

C16388

REPRESENTATION OF PRINTED DOCUMENT

**Section 2:**

ANALYSIS TYPE: 1/6 AGGREGATE                          ACCOUNT NUMBER: ████7516
PROJECTED ESCROW BALANCE AS OF: APRIL 30, 2012       817.63 *

\* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and disbursements anticipated to be made prior to the effective date of analysis.

| | | | Current Escrow Balance: 1,095.65- | | | |
|---|---|---|---|---|---|---|
| | | | Esc Rcpts to Eff Dt | | Esc Disb Prior to Eff Dt | |
| | | | Due Dt | Due Amt | Disb Date | Disb Amt |
| | | | 03/12 | 956.64 | | |
| | | | 04/12 | 956.64 | | |

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|---|---|---|---|---|
| PROJECTED BALANCE | | | 817.63 | 907.56 |
| 05/01/12 | 453.73 | .00 | 1,271.36 | 1,381.29 |
| 06/01/12 | 453.73 | .00 | 1,725.09 | 1,815.02 |
| 07/01/12 | 453.73 | .00 | 2,178.82 | 2,268.75 |
| 08/01/12 | 453.73 | .00 | 2,632.55 | 2,722.48 |
| 09/01/12 | 453.73 | .00 | 3,086.28 | 3,176.21 |
| 10/01/12 | 453.73 | .00 | 3,540.01 | 3,629.94 |
| 11/01/12 | 453.73 | .00 | 3,993.74 | 4,083.67 |
| 12/01/12 | 453.73 | 2,722.43- | 1,725.04 | 1,814.97 |
| 01/01/13 | 453.73 | .00 | 2,178.77 | 2,268.70 |
| 02/01/13 | 453.73 | .00 | 2,632.50 | 2,722.43 |
| 03/01/13 | 453.73 | .00 | 3,086.23 | 3,176.16 |
| 04/01/13 | 453.73 | 2,722.43- | 817.53 | 907.46 L |

\*Indicates Sum of Remaining Escrow Payments &/or Escrow Disbursements to Effective Date.

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
817.53

MAXIMUM PERMITTED LOW-POINT: (EXCLUDING MIP)
907.46

**Section 3:** ➡ | SHORTAGE | 89.93 |

ESCROW ACCOUNT ACTIVITY (MAY 01, 2011 - APRIL 30, 2012)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|---|---|---|---|---|---|---|
| 02/01/11 | PAYMENT | 446.37 | 2,678.27 | PAYMENT | 1,776.55 | 7,863.24- |
| 03/01/11 | PAYMENT | 446.37 | 3,124.64 | PAYMENT | 1,553.10 | 6,994.00- |
| 03/01/11 | | .00 | 3,124.64 | TAX | 2,683.86- | 6,994.00- |
| 04/01/11 | PAYMENT | 446.37 | 892.74 | PAYMENT | 1,776.55 | 5,217.45- |
| 04/01/11 | TAX | 2,678.27- | 892.74 | | .00 | 5,217.45- |
| BEGINNING BALANCE | | | 894.62 | | | 5,217.45- |
| 05/01/11 | PAYMENT | 447.31 | 1,341.93 | PAYMENT | 956.64 | 4,260.81- |
| 06/01/11 | PAYMENT | 447.31 | 1,789.24 | PAYMENT | 956.64 | 3,304.17- |
| 07/01/11 | PAYMENT | 447.31 | 2,236.55 | PAYMENT | 956.64 | 2,347.53- |
| 08/01/11 | PAYMENT | 447.31 | 2,683.86 | PAYMENT | 956.64 | 1,390.89- |
| 09/01/11 | PAYMENT | 447.31 | 3,131.17 | PAYMENT | 956.64 | 434.25- |
| 10/01/11 | PAYMENT | 447.31 | 3,578.48 | | .00 | 434.25- |
| 11/01/11 | PAYMENT | 447.31 | 4,025.79 | PAYMENT | 1,913.28 | 1,243.40- |
| 11/01/11 | | .00 | 4,025.79 | TAX | 2,722.43- | 1,243.40- |
| 12/01/11 | PAYMENT | 447.31 | 1,789.24 | PAYMENT | 956.00 | 286.50- |
| 12/01/11 | TAX | 2,683.86- | 1,789.24 | | .00 | 286.50- |
| 01/01/12 | PAYMENT | 447.31 | 2,236.55 | PAYMENT | 956.64 | 670.14 |
| 02/01/12 | PAYMENT | 447.31 | 2,683.86 | PAYMENT | 956.64 | 1,626.78 |
| 03/01/12 | PAYMENT | 447.31 | 3,131.17 | TAX | 2,722.43- | 1,095.65- |
| 04/01/12 | PAYMENT | 447.31 | 894.62 | | .00 | 1,095.65- |
| 04/01/12 | TAX | 2,683.86- | 894.62 | | .00 | 1,095.65- |

INTERNET REPRINT

# EXHIBIT "Q"

Re:            James Kennedy
Loan Number:   ████7516

James P. Kennedy
700 E. Sonora Road
Palm Springs, CA 92264
760-969-3769

May 14, 2012

Via Certified Mail
Return Receipt Requested

GMAC Mortgage
Attn: Customer Care
PO Box 1330
Waterloo, IA 50704-1330

Re:                James Kennedy
Loan Number:       ████7516
Property Address:  3825 21$^{st}$ Street, San Francisco, CA 94114

Dear Sir or Madam:

I am writing to you to request specific itemized information about the accounting and servicing of my mortgage and of my need for understanding and clarification of various charges, credits, debits, transactions, actions, payments, analyses and records related to the servicing of my loan from its inception to the present date. This letter is a qualified written request ("QWR") pursuant to the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §2605(e).

I am disputing the validity of the current debt you claim that I owe including all late fees, charges, inspection fees, property appraisal charges, force placed insurance charges, property tax charges, legal fees and corporate advances charged to this account. I believe my account is in error for the following reasons:

A) Payment amounts not applied as instructed; loan has not been properly credited, debited, adjusted, amortized and charged correctly;

B) Property tax charges, late fees, escrow charges, legal fees and other possible costs charged to my account for a property tax payment made by GMAC on behalf of borrower (paid by GMAC on October 4, 2008) when taxes had already been paid and proof of payment had been provided to GMAC as required.

GMAC has stated more than once as it is said to be noted in my GMAC account records, that the basis for sending the tax payment due April 10, 2008 was based on an electronic communication GMAC received from the San Francisco Tax Authority on or about September 29, 2008 stating that the tax payment was still delinquent. The San Francisco Tax Authority does not initiate electronic communications to mortgage companies when a tax payment is delinquent.

Re:                     James Kennedy
Loan Number:         ▮▮▮7516

1) Please provide me with a copy of the electronic communication received from the San Francisco Tax Authority stating that my April 10, 2008 tax bill had not been paid.

2) The tax payment amount made by GMAC includes charges for late fees. My tax payment is recorded as being paid on time and no late fees were ever charged. San Francisco County records confirm this. What was the basis GMAC used to determine the payment amount made on October 4, 2008? If based on a tax bill received or other written notification, please provide a copy.

3) GMAC sent a letter dated October 4, 2008 informing me that GMAC made a payment to the San Francisco County Tax Collector for the April 10, 2008 tax payment in the amount of $2,939.80:

   a. GMAC sent notification that this loan would not be converted to escrow, yet it was, and escrow charges were deducted from my regular monthly mortgage payment starting with the December 2008 payment. Please explain why GMAC established escrow for this tax payment when GMAC said it was not going to do so and why this action was considered correct.

   b. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorizing GMAC to pay property taxes and establish escrow payments as it did for the April 2008 tax payment, esp. given that California law allows such payment and the opening of an escrow account only "upon a failure of the purchaser or borrower to pay two consecutive tax installments on the property prior to the delinquency," and no such circumstances existed.

4) Proof of payment was provided to GMAC as required, and was done so more than once including but not limited to proof sent by US Mail on August 5, 2008 and a fax to the Tax Department sent November 19th. I was even assured on September 29th that GMAC would correct the issue when I called the Tax Department to advise that I had mailed proof of payment on August 5th however GMAC did not correct my account as promised.

5) GMAC had obtained proof of my payment independent of the proof of payment information that I had already sent, yet GMAC still did not correct my account. Adam in the Tax Department at GMAC stated that notes on my GMAC account confirmed that County tax records showed my account to have a surplus balance equal to the payment amount made by GMAC, and that no late fees were charged by the County for the tax payment period in question., This shows that an on time tax payment for a lesser amount (i.e. the amount I paid) would had to have been made and that GMAC's payment was unnecessary. Adam stated that despite this information, the fact remained that GMAC had not and would not take any action until GMAC received proof of payment provided from *me.* Clearly this was not an informational issue that prevented GMAC from taking the necessary action to correct my account, it was a service issue.

6) On or about November 26, 2008 I spoke with Dinah (sp?) in the Tax Department and informed her that GMAC needed to request a refund from the tax authority otherwise the funds would remain in a surplus account and would be used to pay future taxes. I provided the contact names, phone numbers and address to which

Re:                    James Kennedy
Loan Number:      ▮▮▮▮57516

the refund request should be sent. GMAC never made the refund request nor did GMAC correct my escrow account and continued to make wrongful deductions from my regular mortgage payments starting with the December 1st payment. The surplus funds were then applied to the December 10th payment, with still more surplus funds carried to the April 2009 payment.

7) I spoke with a supervisor at GMAC named Maryann who said a refund request would never be made as it would be expected that the surplus payment would cause the county to generate a refund to GMAC instead.

8) Force placed insurance charges. GMAC wrongfully deducted funds from my November 1, 2008 mortgage payment for escrow charges for force placed insurance when insurance was already in effect and proof of coverage had been provided to GMAC. Even though a full refund was made and the escrow charge was recorded as 'paid', GMAC did not "automatically adjust" my November payment to $1,719.23 as stated both in writing and verbally by Kim, a representative in GMAC's Insurance Department. My November 2008 mortgage payment needs to be properly allocated to mortgage and interest only. Please address.

9) Please tell me specifically what clause, paragraph and sentence in my note, mortgage or deed of trust or any agreement I have executed that states the amount of coverage required for hazard insurance.

10) The failure of GMAC to properly service my account is further evidenced by the significant misrepresentations in the analyses discussed below. The analyses are a clear example of how GMAC did not post transactions for my account properly, did not apply funds correctly, or simply failed to report transactions, all of which have affected my account on an ongoing basis:

    1) The August 27, 2008 escrow analysis shows an escrow shortage of $6,391 as the 'actual balance' on 08/01/08. This is the result of the charge for force placed insurance transacted that month. The next escrow analysis was performed on October 14, 2008. The analysis shows the same insurance charge on 08/01/08 of $6,391.00-, however after this charge is applied, the 'actual balance' is reported as a shortage of $3,451.20-. Prior to applying the insurance charge of $6,391.00, the 'actual balance' would be a surplus balance of $2,939.80, an amount equal to that of the anticipated refund for the tax payment GMAC made and charged my account. The $2,939.80 surplus, however, is somehow dropped from the escrow balances from 10/01/08 to 11/01/08. Please explain what happened to the $2,939.80 surplus.

    2) Re: Oct. 14 analysis: Applying the property tax payment of $2,939.80- to the reported 'actual balance' of $3.451.20-, produces an 'actual balance' of $6,391.00-, however the 'actual balance' on 11/01/08 has jumped to $9,330.80-; Please explain how GMAC arrived at the 'actual balance' reported of $9,330.80- by providing the list of transactions applied to the actual balance of $3.451.20-.and onward, in order to end at $9330.80-.

Re:            James Kennedy
Loan Number:   ▮▮▮▮7516

C) The next escrow analysis is performed on October 29,2008:

　　1) The 'actual balance' on 08/01/08 is now reported as being $12,782.00-, and not the $3,451.20- as stated on the previous analysis, Please explain how GMAC arrived at the reported $12,782.00- amount.

　　2) When the refund of $6,391.00 for the force placed insurance charges and a charge for property tax of $2,939.80- is applied to this 'actual balance' of $12,782.00- as reported on 10/01/08, the 'actual balance' is then said to be $9,330.80. Then, for 11/01/08 the 'actual balance', with no transactions listed, is reported to be $2,939.80-. Please confirm that these figures are correct and explain how they were arrived.

D) Workout plans 2009-2011:

　　1) Payment amounts were not sufficient to bring the account current by end of the payment period as told. Fees and charges continued to accrue as a result, compounding the amounts I then had to pay. This cycle stretched what was supposed to be a 6 month plan to bring the account current into a 15 month cycle of additional charges and fees. Please address.

　　2) GMAC returned a personal check that I sent for my February 2010 payment stating the reason was because payment needed to be made by certified check or money order. My account was then charged an NSF fee for that payment even though the check was not returned for that reason. No agreement was ever provided or signed by me stating that I could not make payment by personal check. The NSF fee charge needs to be refunded; my account adjusted accordingly, payments that were effected need to be properly applied.

　　3) Please provide me with a copy of all signed payment agreements/workout plans as well as those that I did not sign but were applied to my account. Additionally, identify for me in writing the provision, paragraph, section or sentence of the workout plan signed by me authorizing GMAC to require payment be made by cashier's check or money order.

　　4) I was told by ETS in December that there were no other options available to me to prevent foreclosure except to make 6 payment amounts starting with the January 2, 2010 payment made. In April 2010 I responded to a letter I received from GMAC informing me that there were, in fact, other options available to me regarding a workout plan .

E) To date, aside from sending confirmation letters of receipt, GMAC has failed to respond to three Qualified Written Requests. Each is attached.

F) In late November, 2009 GMAC/ETS sent a notice of default and election to sell notice. I sent a timely response disputing the debt, however I received no response. Please address.

Re:            James Kennedy
Loan Number:    ███████7516

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of my mortgage loan from its inception until the present date. Upon receipt of this letter, please refrain from reporting any negative credit information to any credit reporting agencies until you respond to my "requests."

I also request that you conduct your own investigation and audit of my account since its inception to "validate" the debt you claim I owe you is accurate to the penny.

In order to conduct this examination and audit, I need to have full and immediate disclosure including copies of all pertinent information regarding my loan. The documents requested and answers to questions are needed to insure:

- That my loan has properly been credited, debited, adjusted, amortized and charged correctly;

- That interest and principal have been properly calculated and applied to my loan;

- That my principal balance has been properly calculated and accounted for;

- That no charges, fees or expenses, not obligated by me in any agreement, have been charged or assessed to or collected on my account;

In order to validate my debt and audit my account, I need copies of pertinent documents to be provided and answers in writing to various servicing questions to be sent to me. For each record kept on computer or in any other electronic file or format, please provide a paper copy of "all" information in each field or record in each computer system, program or database used by you that contains any information on my account.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please provide me copies of:

1. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel's CPI system, any system by Alltell or any other similar mortgage servicing software used by you, any servicers, or sub-servicer of my mortgage account from the inception of my loan to the date written above.

2. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review my mortgage account may properly conduct their work.

3. All purchase and sale of mortgage agreements, sale or transfer of servicing rights or other similar agreement related to any assignment, purchase or sale of my mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to my mortgage, promissory note and deed of trust from the inception of my loan to the present date.

Re:          James Kennedy
Loan Number:     ████7516

4. All prospectus' related to the sale or transfer of my note, deed of trust, mortgage and servicing rights or other similar agreement related to any assignment, purchase or sale of my mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to my mortgage, promissory note and deed of trust from the inception of my loan to the present date.

5. All assignments, transfers, alonges, or other document evidencing a transfer, sale or assignment of my mortgage, deed of trust, promissory note or other document that secures payment by me to my obligation in this account from the inception of my loan to the present date.

6. All deeds in lieu, modifications to my mortgage, promissory note or deed of trust from the inception of my loan to the present date.

7. All escrow analyses conducted on my account from the inception of my loan until the date of this letter;

8. All letters, statements and documents sent to me by your company;

9. All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

10. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

11. All letters, statements and documents contained in my loan file or imaged by you, any servicer or sub-servicers of my mortgage from the inception of my loan to present date.

12. All electronic transfers, assignments, sales of my note, mortgage, deed of trust or other security instrument.

13. All copies of property inspection reports, appraisals, BPOs and reports done on my property.

14. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to my mortgage account from the inception of my loan to the present date.

15. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to my mortgage account from the inception of my loan to the present date.

Re:                    James Kennedy
Loan Number:        ████7516

16. All agreements, contracts and understandings with vendors that have been paid for any charge on my account from the inception of my loan to the present date.

17. All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers, and documents that relate to the accounting of my loan from the inception of my loan until present date?

18. All loan servicing "transaction" records, ledgers, registers and similar items detailing how my loan has been serviced from the from the inception of my loan until present date.

19. Front copies of all payment coupons received form me from 2007 thru the date of your response to this letter.

Further, in order to conduct the audit and review of my account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of my mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below.

LOAN ACCOUNTING & SERVICING SYSTEMS

20) Please identify for me each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of my loan to the present date?

21) For each loan accounting and servicing system identified by you and any sub-servicer or previous servicer from the inception of my loan to the present date, please provide the name and address of the company or party that designed and sold the system?

22) For each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of my loan to the present date, please provide the complete transaction code list for each system.

DEBITS & CREDITS

23) In a spreadsheet form or in letter form in a columnar format such that it is clear which entry falls under what column heading, please detail for me each and every credit on my account and the date such credit was posted to my account as well as the date any credit was received.

24) In a spreadsheet form or in letter form in a columnar format such that it is clear which entry falls under what column heading, please detail for me each and every debit on my account and the date such credit was posted to my account as well as the date any debit was received.

Re:                    James Kennedy
Loan Number: ████████7516

25) For each debit or credit listed, please provide me with the definition for each corresponding transaction code you utilize?

26) For each transaction code, please provide us with the master transaction code list used by you or previous servicers.

## ATTORNEY FEES

For purposes of my questions below dealing with attorney fees, please consider the terms "attorney fees" and "legal fees" to be one in the same.

27) Have attorney fees ever been assessed to my account from the inception of my loan to the present date?

28) If yes, please detail each separate assessment of attorney fees to my account from the inception of my loan to the present date and the date of such assessment to my account?

29) Have attorney fees ever been charged to my account from the inception of my loan to the present date?

30) If yes, please detail each separate charge of attorney fees to my account from the inception of my loan to the present date and the date of such charge to my account?

31) Have attorney fees ever been collected from my account from the inception of my loan to the present date?

32) If yes, please detail each separate collection of attorney fees from my account from the inception of my loan to the present date and the date of such collection from my account?

33) Please provide for me the name and address of each attorney or law firm that has been paid any fees or expenses related to my account from the inception of my loan to the present date?

34) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of attorney fees?

35) Please detail and list for me in writing each separate attorney fee assessed to my account and for which corresponding payment period or month such late fee was assessed from the inception of my loan to present date.

36) Please detail and list for me in writing each separate attorney fee collected from my account and for which corresponding payment period or month such late fee was collected from the inception of my loan to present date.

Re:                  James Kennedy
Loan Number:         ███████7516

37) Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

38) Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment were made and the reasons for such adjustment.

39) Has interest been charged on any attorney fee assessed or charged to my account? Yes or No?

40) Is interest allowed to be assessed or charged on attorney fees charged or assessed to my account? Yes or No?

41) How much in total attorney fees have been assessed to my account from the inception of my loan until present date?  $_____

42) How much in total attorney fees have been collected on my account from the inception of my loan until present date?  $_____

SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term "suspense account" and "unapplied account" as one in the same.

43) Has there been any suspense or unapplied account transactions on my account from the inception of my loan until present date?

44) If yes, why?  If no, please skip the questions in this section dealing with suspense and unapplied accounts.

45) In a separate spreadsheet or in letterform in a columnar format such that it is clear which entry falls under what column heading, please detail for me each and every transaction, both debits and credits that has occurred on my account from the inception of my loan until present date.

46) All documentation or supportive information used to substantiate that property taxes had not been paid by borrower since the date of closing.

LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

47) Have you reported the collection of late fees on my account as interest in any statement to me or to the IRS? Yes or No?

Re:           James Kennedy
Loan Number:  ███████7516

48) Has any previous servicer or sub-servicer of my mortgage reported the collection of late fees on my account as interest in any statement to me or to the IRS? Yes or No?

49) Do you consider the payment of late fees as liquidated damages to you for not receiving my payment on time? Yes or No?

50) Are late fees considered interest? Yes or No?

51) Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

52) Were any of these expenses or damages charged or assessed to my account in any other way? Yes or No?

53) If yes, please describe what expenses or charges were charged or assessed to my account?

54) Please describe for me in writing what expenses you or others undertook due to any payment I made which was late?

55) Please describe for me in writing what damages you or others undertook due to any payment I made which was late?

56) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of late fees?

57) Please detail and list for me in writing each separate late fee assessed to my account and for which corresponding payment period or month such late fee was assessed from the inception of my loan to present date.

58) Please detail and list for me in writing each separate late fee collected from my account and for which corresponding payment period or month such late fee was collected from the inception of my loan to present date.

59) Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.

60) Please detail and list for me in writing any adjustments in late fees collected and on what date such adjustment was made and the reasons for such adjustment.

61) Has interest been charged on any late fee assessed or charged to my account? Yes or No?

62) Is interest allowed to be assessed or charged on late fees charged or assessed to my account? Yes or No?

63) Have any late charges been assessed to my account? Yes or No?

Re:        James Kennedy
Loan Number:        ████7516

64) If yes, how much in total late charges have been assessed to my account from the inception of my loan until present date?  $_____

65) Please provide me with the exact months or payment dates you or other previous servicers of my account claim I have been late with a payment from the inception of my loan to the present date.

66) Have late charges been collected on my account from the inception of my loan until present date?  Yes or No?

67) If yes, how much in total late charges have been collected on my account from the inception of my loan until present date?  $_____

PROPERTY INSPECTIONS

For purposes of this section "property inspection" and "inspection fee" refer to any inspection of my property by any source and any related fee or expense charged for such inspection.

68) Have any property inspections been conducted on my property from the inception of my loan until the present date?

69) If your answer is no, you can skip the rest of these questions in this section concerning property inspections?

70) If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for my mortgage, deed or note?

71) Please tell me the price charged for each property inspection?

72) Please tell me the date of each property inspection?

73) Please tell me the name and address of each company and person who conducted each property inspection on my property?

74) Please tell me why property inspections were conducted on my property?

75) Please tell me how property inspections are beneficial to me.

76) Please tell me how property inspections are protective of my property.

77) Please explain to me your policy on property inspections.

78) Do you consider the payment of inspection fees as a cost of collection? Yes or No?

79) If yes, why?

Re:        James Kennedy
Loan Number:    ███████7516

80) Do you use property inspections to collect debts?  Yes or No?

81) Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe?

82) If yes, please answer when and why?

83) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of property inspection fees?

84) Have you labeled in any record or document sent to me a property inspection as a misc. advance?  Yes or No?

85) If yes, why?

86) Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee?  Yes or No?

87) If yes, why?

88) Please detail and list for me in writing each separate inspection fee assessed to my account and for which corresponding payment period or month such fee was assessed from the inception of my loan to present date.

89) Please detail and list for me in writing each separate inspection fee collected from my account and for which corresponding payment period or month such fee was collected from the inception of my loan to present date.

90) Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment.

91) Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment.

92) Has interest been charged on any inspection fees assessed or charged to my account? Yes or No?

93) If yes, when and how much was charged?

94) Is interest allowed to be assessed or charged on inspection fees charged or assessed to my account? Yes or No?

95) How much in total inspection fees have been assessed to my account from the inception of my loan until present date?  $_____

96) How much in total inspection fee have been collected on my account from the inception of my loan until present date?  $_____

Re:            James Kennedy
Loan Number:        ███7516

## BPO FEES

97) Have any BPOs [Broker's Price Opinions] been conducted on my property?

98) If yes, please tell me the date of each BPO conducted on my property that is the secured interest for my mortgage, deed or note?

99) Please tell me the price of each BPO?

100)    Please tell me who conducted each BPO?

101)    Please tell me why BPOs were conducted on my property

102)    Please tell me how BPOs are beneficial to me.

103)    Please tell me how BPOs are protective of my property.

104)    Please explain to me your policy on BPOs.

105)    Have any BPO fees been assessed to my account?  Yes or No?

106)    If yes, how much in total BPO fees have been assessed to my account?
        $_____

107)    Have any BPO fees been charged to my account?  Yes or No?

108)    If yes, how much in total BPO fees have been charged to my account?  $_____

109)    Please tell me specifically what clause, paragraph and sentence in my note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect a BPO fee from me.

Please provide me with the documents I have requested and a detailed answer to each of my questions within the required lawful time frame.  Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional QWR letter.

Sincerely,


James P. Kennedy

# EXHIBIT "R"

James P. Kennedy
700 E. Sonora Road
Palm Springs, CA 92264
760-969-3769

August 4, 2012

Via Certified Mail
Return Receipt Requested

GMAC Mortgage
Attn: Customer Care
PO Box 1330
Waterloo, IA 50704-1330

Re:                 James Kennedy
Loan Number:        ████7516
Property Address:   3825 21st Street, San Francisco, CA 94114

I am writing to you in response to your letter dated June 5, 2012, regarding the qualified written request that I sent dated May 14, 2012 and January 19, 2012. Unfortunately, your response states that "as no new information has been submitted in your most recent correspondence we trust we have resolved your concerns," however I have provided new information and GMAC has not provided me with all the information that I requested. Please review my QWR attached and review each response you provided to make certain that you have answered the question asked. As a result, please consider my QWR open and awaiting the information requested.

Please be advised that the QWR response dated February 6, 2012 was not sent as stated. After I did not receive a timely response to my QWR of January 19, 2012, I followed up with GMAC on three separate occasions, and each time GMAC confirmed that no response had been sent. However, I did receive a payoff statement which I had not requested.

Subsequent follow up confirmed on two separate occasions that there were documents in the system however they were never sent. A representative told me she would place a work order to have the documents in the system sent to me, and I received those documents shortly thereafter. While the package contained some of the information that I requested, a majority of the information and answers that I sought were not included and it was therefore not a proper response to my QWR.

James P. Kennedy    Loan No. ████7516

For emphasis sake, while there are others part to my complaint, I have restated a key component to help in your investigation regarding my complaint for you convenience:

A. GMAC did not take appropriate action to resolve the issue surrounding my April 10, 2008 tax payment made to the county on October 4, 2008 (such as simply contacting the county to verify my account status) when it was reasonable to expect that it would do so, given the circumstances and information provided to GMAC plus GMAC's promise to do so.  This includes events prior to the payment made by GMAC, events following that payment, and of specific noteworthiness: after GMAC states that it had confirmed in May, 2009 that the information it relied upon was not correct as warned numerous times prior, that the payment made was a surplus payment, that a timely request for refund would have resulted in GMAC obtaining a return of its payment resolving the issue, or any action by GMAC acknowledging any type of responsibility to bring resolution to the situation upon learning that the payment was not needed afterall.

Also, please address the following:

1. As previously stated, I provided proof that my April 10, 2008 taxes had been paid prior to GMAC sending in payment on October 4, 2008, and followed up with GMAC numerous times regarding my having provided proof.  Based on information received from GMAC, the October 4, 2008 payment was made by GMAC because the proof that I provided is claimed not to have been received by GMAC.    My loan agreement only requires that I provide proof of payment, of which I did, and satisfying that requirement is not conditional upon GMAC's confirmation that such proof was received by GMAC.  Please provide me with an explanation and identify for me the specific paragraph in my loan agreement that allows GMAC to make a payment for my property taxes based on the requirement that GMAC must acknowledge receipt of the proof of payment provided.

2. I had numerous conversations with GMAC prior to the October 4 payment and GMAC promised to follow up yet did not.  Please explain why, especially given the conversations that occurred making it reasonable to expect that GMAC would be prompted to follow up to verify that payment had or had not already been made (esp. as phone numbers and names of who to contact were provided making verification of payment easy to do), plus my specific requests to do so, GMAC did not take any action to confirm my payment status prior to sending payment, or following, until May 2009.

For your convenience, I have highlighted a few key requests from my previously submitted QWR to which a correct response was not received. They are listed below.

3. Please provide me with a copy of the electronic communication received from the San Francisco Tax Authority on October 4, 2012 stating that my April 10, 2008 tax bill had not been paid as claimed.

James P. Kennedy    Loan No. ████7516

4. What was the basis GMAC used to determine the payment amount made on October 4, 2008? If based on a tax bill received or other written notification, please provide a copy. Note: I am not asking how it is determined, but the source GMAC used to know how much payment to send. I am not asking how a tax bill with penalties is determined, but how GMAC determined what amount to pay.

WORKOUT PLANS

5. Please provide me with a copy of all workout/repayment agreements showing my signature.

OTHER REQUESTS:

6. All copies of property inspection reports, appraisals, BPOs and reports done on my property.

7. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to my mortgage account from the inception of my loan to the present date.

8. Please explain for me any charges listed on my account as 'other' or is listed without a clear explanation as to what the charge is for, and explain what the charge was for and the amount for such charge.

I look forward to your response.

Regards,

James P. Kennedy

EXHIBIT  "S"

| Account Nu | Date | Descriptior | Late Charges |
|---|---|---|---|
| 575 | 9/30/2011 | Payment | $85.96 |
| 575 | 8/29/2011 | Payment | $85.96 |
| 575 | 1/30/2012 | Receipt | $85.96 |
| 575 | 11/16/2011 | Receipt | $85.96 |
| 575 | 3/23/2011 | Payment | $429.80 |
| 575 | 8/23/2010 | Payment | $1,289.40 |
| | | | |
| | | | $2,063.04 |
| | | | |
| | | 2008 late c | 85.96 |
| | | 2009 late c | 429.8 |
| | | | |
| | | TOTAL | $2,578.80 |

# EXHIBIT "T"

| Account Number | Date | Other | |
|---|---|---|---|
| 7516 | 3/25/2011 | $11.25 | INSPECTIONS |
| 7516 | 2/8/2011 | $11.25 | INSPECTIONS |
| 7516 | 1/21/2011 | $7.50 | INSPECTIONS |
| 7516 | 1/7/2011 | $13.00 | INSPECTIONS |
| 7516 | 12/15/2010 | $12.50 | INSPECTIONS |
| 7516 | 12/14/2010 | $83.00 | INSPECTIONS |
| 7516 | 11/18/2010 | $11.25 | INSPECTIONS |
| 7516 | 3/18/2010 | $120.00 | INSPECTIONS |
| 7516 | 3/18/2010 | $11.00 | INSPECTIONS |
| 7516 | 3/18/2010 | $350.00 | BROKER PRICE OPINIONS |
| 7516 | 3/18/2010 | $146.55 | INSPECTIONS |
| 7516 | 3/18/2010 | $51.03 | INSPECTIONS |
| 7516 | 3/3/2010 | $83.00 | INSPECTIONS |
| 7516 | 11/1/2011 | $7.50 | INSPECTIONS |
| 7516 | 9/30/2011 | $7.50 | INSPECTIONS |
| 7516 | 8/29/2011 | $7.50 | INSPECTIONS |
| 7516 | 7/16/2011 | $7.50 | INSPECTIONS |
| 7516 | 6/16/2011 | $7.50 | INSPECTIONS |
| 7516 | 5/16/2011 | $7.50 | INSPECTIONS |
| 7516 | 4/15/2011 | $7.50 | INSPECTIONS |
| 7516 | 4/15/2011 | $11.25 | INSPECTIONS |
| 7516 | 3/23/2011 | $25.00 | INSPECTIONS |
| 7516 | 3/23/2011 | $11.25 | INSPECTIONS |
| 7516 | 3/23/2011 | $13.00 | INSPECTIONS |
| 7516 | 3/23/2011 | $11.25 | INSPECTIONS |
| 7516 | 3/23/2011 | $11.25 | INSPECTIONS |
| 7516 | 3/23/2011 | $11.25 | INSPECTIONS |
| 7516 | 3/23/2011 | $11.25 | INSPECTIONS |
| 7516 | 3/23/2011 | $83.00 | INSPECTIONS |
| 7516 | 3/23/2011 | $83.00 | INSPECTIONS |
| 7516 | 3/23/2011 | $83.00 | INSPECTIONS |
| 7516 | 3/23/2011 | $120.00 | INSPECTIONS |
| 7516 | 3/23/2011 | $11.00 | INSPECTIONS |
| 7516 | 3/23/2011 | $350.00 | INSPECTIONS |
| 7516 | 3/23/2011 | $146.55 | INSPECTIONS |
| 7516 | 3/23/2011 | $51.03 | INSPECTIONS |
| 7516 | 3/23/2011 | $480.00 | BROKER PRICE OPINIONS |
| 7516 | 3/23/2011 | $31.00 | INSPECTIONS |
| 7516 | 3/23/2011 | $34.93 | INSPECTIONS |
| 7516 | 1/21/2011 | $7.50 | INSPECTIONS |
| 7516 | 12/15/2010 | $12.50 | INSPECTIONS |
| 7516 | 8/23/2010 | $818.52 | BROKER PRICE OPINIONS |
| 7516 | 8/23/2010 | $43.68 | INSPECTIONS |

$3,425.04

# EXHIBIT   "U"

**GMAC MORTGAGE #** ▮▮▮▮▮▮▮

PO BOX 4622
WATERLOO , IA 50704-4622
(800) 766-4622

| | | | | |
|---|---|---|---|---|
| **Balance:** | $184,415 | **Pay Status:** | >60 Days Past Due< |
| **Date Updated:** | 11/2010 | **Account Type:** | Mortgage Account |
| **High Balance:** | $272,000 | **Responsibility:** | Individual Account |
| **Past Due:** | >$8,623< | **Date Opened:** | 09/1993 |
| **Terms:** | $2,352 for 360 months | | |

**Loan Type:** Conventional Real Estate Mtg
>Maximum delinquency of 120+ days in 11/2009<
**Estimated date that this item will be removed:** 08/2017

**Late Payments**
48 months

▮▮ ▮▮ 90
>11< >2< >10<

Last 48
Months

oct sep aug jul jun may apr mar feb '10 dec nov oct sep aug jul jun may apr mar feb '09 dec nov

oct sep aug jul jun may apr mar feb '08 dec nov oct sep aug jul jun may apr mar feb '07 dec nov

**Satisfactory Accounts**

1/22/2011 10:48

# EXHIBIT  "V"

```
HISTORY FOR ACCOUNT     7516                              PAGE     2
                                                         DATE 02/06/12


        --------- MAIL -------------------- --------- PROPERTY ----------------

        JAMES P. KENNEDY

        700 E SONORA RD                    3825 21ST STREET

        PALM SPRINGS        CA 92264-8436 SAN FRANCISCO        CA 94114-2802

---------------------------------------------------------------------------
POST  TRN  DUE     TRANSACTION    PRINCIPAL     INTEREST      ESCROW
DATE  CDE  DATE    AMOUNT         PAID          PAID          PAID
------ --- ------ --------------- ------------- ------------- -------------
031309 GRU 000000 000000 GRACE UNAP AMT:      .00
   REF NUMBER    SG0QEIJE4QTI DESC
031309 UFU 020109  UNAPPLIED FUNDS (1)          584.85 BALANCE      584.85
                   BAL AFTER    194736.68                   -1805.42
T:00603       /B:001  OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -85.96
031309 SWA 020109      584.85        .00           .00          .00
                   BAL AFTER    194736.68                   -1805.42
T:00603       E/B:001  OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -85.96


041409 GRU 000000 000000 GRACE UNAP AMT:      .00
   REF NUMBER    SG0QMK2FTDNE DESC
041409 UFU 030109  UNAPPLIED FUNDS (1)         -584.85 BALANCE        0.00
                   BAL AFTER    194736.68                   -1805.42
T:00603       /B:001  OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -85.96
041409 AP  030109      1334.98      664.41     1054.82      200.60
                   BAL AFTER    194072.27                   -1604.82
T:00603       E/B:001  OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -85.96


041409 GRU 000000 000000 GRACE UNAP AMT:      .00
   REF NUMBER    SG0QMK2FTDNE DESC
041409 UFU 030109  UNAPPLIED FUNDS (1)          384.25 BALANCE      384.25
                   BAL AFTER    194072.27                   -1604.82
T:00603       /B:001  OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -85.96
041409 SWA 030109      384.25        .00           .00          .00
                   BAL AFTER    194072.27                   -1604.82
T:00603       E/B:001  OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -85.96


042309 FB  030109     6391.00 163 CORP ADV 2 ESCROW
   REF NUMBER    SG0QOP0NSJ5O DESC
T:05006       /B:000
042409 SR0 030109      -6391.00        .00           .00      -6391.00
              163 CLEANUP
                   BAL AFTER    194072.27                   -7995.82
T:01755    I/B:001                 00.00                     -85.96




        INQ 1357
```

# EXHIBIT "W"

```
HISTORY FOR ACCOUNT    ████7516                     PAGE      8
                                                    DATE 02/06/12


        --------- MAIL -------------------- --------- PROPERTY ----------------

        JAMES P. KENNEDY

        700 E SONORA RD                  3825 21ST STREET

        PALM SPRINGS       CA 92264-8436 SAN FRANCISCO       CA 94114-2802

---------------------------------------------------------------------------
  POST TRN DUE    TRANSACTION      PRINCIPAL     INTEREST       ESCROW
  DATE CDE DATE     AMOUNT          PAID          PAID          PAID
------ --- ------ --------------- ------------- ------------- -------------
011210 FB  090109       31.00  40 EXPENSE ADVANCES
T:32551     /B:000
011210 FB  090109      480.00  40 EXPENSE ADVANCES
T:32551     /B:000
011410 UFU 090109   UNAPPLIED FUNDS (1)            1719.23  BALANCE    1719.23
   REF NUMBER    SG0SS0UVCTM9 DESC
                         BAL AFTER      190009.57               -7989.24
T:00603     /B:001                         00.00               -429.80

011410 SRA 090109      1719.23        .00           .00          .00
                         BAL AFTER      190009.57               -7989.24
T:00603     E/B:001                        00.00               -429.80
011510 UFU 090109   UNAPPLIED FUNDS (1)           -1719.23  BALANCE       0.00
   REF NUMBER    ECOM RETURN DESC
                         BAL AFTER      190009.57               -7989.24
T:19336     /B:005                         00.00               -429.80


011510 SR0 090109     -1719.23        .00           .00          .00
                         BAL AFTER      190009.57               -7989.24
T:19336     Y/B:005                        00.00               -429.80
012210 FB  090109     6290.00 163 CORP ADV 2 ESCROW
   REF NUMBER    SG0STTMQ0168 DESC
T:05006     /B:000
012510 SR0 090109     -6290.00        .00           .00       -6290.00
                    163 CLEANUP
                         BAL AFTER      190009.57              -14279.24
T:01755     I/B:001                        00.00               -429.80
012510 FE  090109     6290.00 163 CORP ADV 2 ESCROW
   REF NUMBER    163 CLEANUP  DESC
T:01755     /B:001
021210 UFU 090109   UNAPPLIED FUNDS (1)             63.25  BALANCE      63.25
                         BAL AFTER      190009.57              -14279.24
T:01702     /B:000 OPTIONAL INS BAL     00.00  LATE CHARGE BAL  -429.80
021210 UFF 090109   UNAPPLIED FUNDS (2)            -63.25  BALANCE       0.00
                         BAL AFTER      190009.57              -14279.24
                    OPTIONAL INS BAL     00.00  LATE CHARGE BAL  -429.80


     INQ 1357
```

# EXHIBIT "X"

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

**RECORDING REQUESTED BY:**

LSI TITLE COMPANY, INC.

**WHEN RECORDED MAIL TO:**
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
APN 3622-092

RECORDING FEE:  **$13.00**
RECORDED ON:  **November 24, 2009**
AS DOCUMENT NO:  **2009-i878172**
BY:  **s/ Menghong But**
LSI TITLE COMPANY (CA)

---

TS No. : GM-233318-C    Loan No.: ▮▮▮▮7516    *SPACE ABOVE THIS LINE FOR RECORDER'S USE*

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$10,797.57**  as of  **11/23/2009**,  and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,
**GMAC MORTGAGE, LLC FKA**
**GMAC MORTGAGE CORPORATION**
C/O ETS Services, LLC
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**(818) 260-1600 phone**



TS NO.: GM-233318-C          LOAN NO.: ████7516

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **9/20/1993**, executed by **JAMES P. KENNEDY, A SINGLE MAN**, as Trustor, to secure certain obligations in favor of **GMAC MORTGAGE CORPORATION OF PA**, as beneficiary, recorded **9/29/1993**, as Instrument No. **F457633**, in Book F974, Page 0382, of Official Records in the Office of the Recorder of **San Francisco** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$272,000.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 8/1/2009 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 11/23/2009

ETS Services, LLC **AS AGENT FOR BENEFICIARY**

BY: _____

Jennifer Esteban
**TRUSTEE SALE OFFICER**

**ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**(818) 260-1600**

**Date:** 11/27/2009

T.S. Number:    GM-233318-C
Loan Number:    ███████7516

# DEBT VALIDATION NOTICE

1. **The enclosed document relates to a debt owed to the current creditor:**

   **GMAC MORTGAGE, LLC  FKA**
   **GMAC MORTGAGE CORPORATION**

   **You may send us a written request for the name and address of the original creditor, if different from the**
   **current creditor, and we will obtain and mail the information to you.**

2. **As of 11/23/2009 the total delinquency owed was $10,797.57, but this amount will increase until the delinquency has been fully cured.**

3. **As of 11/27/2009, the amount required to pay the entire debt in full was $197,709.35, but this amount will increase daily until the debt has been fully paid.**

4. **You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after receiving this notice.  Otherwise, we will assume that the debt is valid.**

5. **If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of any judgement against you.**

---

**WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION**
**WE OBTAIN WILL BE USED FOR THAT PURPOSE**

---



January 22, 2010

James P Kennedy
2835 21st Street
San Francisco CA  94114-2802

RE:    Account Number        ████7516
       Property Address      3825 21st Street
                             San Francisco CA  94114-2802

Dear James P Kennedy:

This letter is in response to your recent letter concerning the tax disbursements on the above-referenced account.

A copy of the payment history confirming all tax disbursements made from your escrow is enclosed for your review.

Additionally, as we did not receive a copy of a paid receipt for the delinquent 2007/2008 property taxes, we disbursed the delinquent property taxes from your escrow account on October 4, 2008 in the amount of $2,939.80.

Per your request, we contacted your tax collector in May 2009 to verify if an overpayment existed. The county advised our funds were applied to the December 2008 property tax installment since they did not receive payment of the December 2008 property taxes from you. If you also paid your December 2008 property taxes, you will need to contact your country to request the refund.

If you have your own homeowner's insurance policy, please have your insurance agent fax a copy of the policy so we may update our records accordingly. The insurance policy can be faxed to our Insurance Department at 1-866-336-9021. If you would like to set up an escrow account to pay your homeowners insurance directly to your insurance carrier, please submit your request in writing to the following address:

GMAC Mortgage
Escrow Begin
PO Box 780
Waterloo IA 50704-0780

January 22, 2010
Account number███████7516
Page Two


The terms of your Mortgage deed indicate if property taxes become delinquent or we do not received proof of homeowners insurance, an escrow account can be established to pay your property taxes and/or homeowners insurance. The term of your Mortgage Deed indicate you agree to pay your property taxes current.

Additionally, if you wish to verify a repayment plan or loan modification is available, please contact our Loss Mitigation Department at 1-800-850-4622.

If you have any further questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosure

DW

# GMAC Mortgage

February 6, 2012

James P Kennedy
700 E Sonora Rd
Palm Springs CA 92264-8436

RE:    Account Number        ████7516
       Property Address     3825 21ˢᵗ Street
                            San Francisco CA 94114-2802

Dear James P Kennedy:

Please be advised that this letter serves as our response to your Qualified Written Request ("QWR") for information regarding the above-referenced GMAC Mortgage account dated January 19, 2012 and received in our office on January 23, 2012. In your correspondence, you request detailed information and documentation regarding nearly every aspect of the mortgage loan transaction, beginning with its origination.

In response to your inquiry, GMAC Mortgage has enclosed a copy of the account's payment history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because your letter appears to be questioning nearly every aspect of the loan transaction, it is difficult for GMAC Mortgage to identify any specific concern(s) you have regarding the servicing of the account. Nevertheless, in an effort to be responsive to your request, copies of pertinent documentation GMAC Mortgage has in its records are enclosed.

- Note
- Mortgage/Deed of Trust
- HUD-I Settlement Statement
- Escrow Analysis Statements
- Monthly Account Statements
- Payoff Statement

The following responses are in the same order as the inquiries in the QWR:

**Loan Accounting and Servicing Systems**

Subject to business and trade practices, which are proprietary and confidential.

GMAC Mortgage LLC        www.gmacmortgage.com
3451 Hammond Avenue
PO Box 780
Waterloo IA 50704-0780

# GMAC Mortgage

February 6, 2012
Account Number ███ 7516
Page Two

### Debits and Credits

See enclosed history and transaction code key.

### Attorney Fees

No attorney fees have been assessed on this account. The answers to questions concerning how or why these fees are assessed are outlined in the enclosed Note and Mortgage/Deed of Trust. RESPA does not require we respond on items from a previous servicer.

### Suspense/Unapplied Accounts

This information is detailed in the enclosed history.

### Late Fees

All late fees assessed are listed in the enclosed history. The answers to questions concerning how or why these fees are assessed are outlined in the enclosed Note and Mortgage/Deed of Trust. RESPA does not require we respond on items from a previous servicer.

### Property Inspections

This information is detailed in the enclosed history. The answers to questions concerning how or why these fees are assessed are outlined in the enclosed Note and Mortgage/Deed of Trust. RESPA does not require we respond on items from a previous servicer.

### BPO Fees

All BPO fees assessed are listed in the enclosed history. The answers to questions concerning how or why these fees are assessed is outlined in the enclosed Note and Mortgage/Deed of Trust. RESPA does not require we respond on items from a previous servicer.

If you have any further general servicing questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care KT
Loan Servicing

*Enclosures*

GMAC Mortgage LLC        www.gmacmortgage.com
3451 Hammond Avenue
PO Box 780
Waterloo IA 50704-0780

EXHIBIT "Y"

Department of the Treasury — Internal Revenue Service

# 1040    U.S. Individual Income Tax Return    2010    (99)    IRS Use Only — Do not write or staple in this space.

| | | | | | OMB No. 1545-0074 |
|---|---|---|---|---|---|

For the year Jan 1 - Dec 31, 2010, or other tax year beginning _____ , 2010, ending _____ , 20 ____

**Name, address, and SSN**

See separate instructions.

| Your first name | MI | Last name | | Your social security number |
|---|---|---|---|---|
| James | P | Kennedy | | |

If a joint return, spouse's first name | MI | Last name | | Spouse's social security number

Home address (number and street). If you have a P.O. box, see instructions. | Apartment no.

700 E. Sonora Road

City, town or post office. If you have a foreign address, see instructions. | State | ZiP code

Palm Springs | CA | 92264

Make sure the SSN(s) above and on line 6c are correct. ▲

Checking a box below will not change your tax or refund.

**Presidential Election Campaign**  ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund? . . . . . . . . . . . . . ▶ ☐ You ☐ Spouse

## Filing Status

Check only one box.

1 ☒ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above & full name here ▶
4 ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here ▶
5 ☐ Qualifying widow(er) with dependent child

## Exemptions

6a ☒ **Yourself.** If someone can claim you as a dependent, do **not** check box 6a . . . . . . . . . .
b ☐ **Spouse** . . . . . . . . . . . . . . . . . . .

Boxes checked on 6a and 6b | 1

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax cr (see instrs) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

No. of children on 6c who:
● lived with you
● did not live with you due to divorce or separation (see instrs)

Dependents on 6c not entered above

If more than four dependents, see instructions and check here . . . ▶ ☐

Add numbers on lines above ▶ | 1

d Total number of exemptions claimed . . . . . . . . . . . . . . . . . . . . . .

## Income

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . . . . . . . . | 7 | |
| 8a | Taxable interest. Attach Schedule B if required . . . . . . . . . . . . . . | 8a | 5. |
| b | Tax-exempt interest. Do not include on line 8a . . . . . | 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required . . . . . . . . . . . . | 9a | |
| b | Qualified dividends . . . . . . . . . . . . . . . . | 9b | | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes . . . . . . . . . | 10 | 0. |
| 11 | Alimony received . . . . . . . . . . . . . . . . . . . . . . . . | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ . . . . . . . . . . . . | 12 | 7,548. |
| 13 | Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here . . . . . . . . . . . ▶ ☐ | 13 | -3,000. |
| 14 | Other gains or (losses). Attach Form 4797 . . . . . . . . . . . . . . . | 14 | |
| 15a | IRA distributions . . . . . | 15a | | b Taxable amount . . . | 15b | |
| 16a | Pensions and annuities . . . . . . | 16a | | b Taxable amount . . . | 16b | 31,684. |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E . . . | 17 | 3,182. |
| 18 | Farm income or (loss). Attach Schedule F . . . . . . . . . . . . . . . | 18 | |
| 19 | Unemployment compensation . . . . . . . . . . . . . . . . . . . | 19 | |
| 20a | Social security benefits . . . . . . . | 20a | | b Taxable amount . . . | 20b | |
| 21 | Other income . . . . . . . . . . . . . . . . . . . . . . . . . | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your total income . . . . . . . . ▶ | 22 | 39,419. |

## Adjusted Gross Income

| | | | |
|---|---|---|---|
| 23 | Educator expenses . . . . . . . . . . . . . | 23 | | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ . . . . . | 24 | | |
| 25 | Health savings account deduction. Attach Form 8889 . . . | 25 | | |
| 26 | Moving expenses. Attach Form 3903 . . . . . . . . | 26 | | |
| 27 | One-half of self-employment tax. Attach Schedule SE . . . . . . | 27 | 236. | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans . . . . | 28 | | |
| 29 | Self-employed health insurance deduction . . . . . . | 29 | 4,212. | |
| 30 | Penalty on early withdrawal of savings . . . . . . . | 30 | | |
| 31a | Alimony paid b Recipient's SSN . . . . ▶ | 31a | | |
| 32 | IRA deduction . . . . . . . . . . . . . . . | 32 | | |
| 33 | Student loan interest deduction . . . . . . . . . . | 33 | | |
| 34 | Tuition and fees. Attach Form 8917 . . . . . . . . | 34 | | |
| 35 | Domestic production activities deduction. Attach Form 8903 . . . | 35 | | |
| 36 | Add lines 23 - 31a and 32 - 35 . . . . . . . . . . . . . . . . . . | 36 | 4,448. |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income . . . . . . . . . . . ▶ | 37 | 34,971. |

**BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**    FDIA0112  12/22/10    Form **1040** (2010)