1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10         Debtors.

11  - - - - - - - - - - - - - - - - - - - -x

12

13              United States Bankruptcy Court

14              One Bowling Green

15              New York, New York

16

17              March 23, 2017

18              10:09 AM

19

20

21

22

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

1

2  Doc #10310 Hearing RE: ResCap Liquidating Trust's Ninety-Sixth

3  Omnibus Objection to Claims (No Liability Claims).  Hearing on

4  the Omnibus Objection, solely as it relates to the Bank of

5  America Claim, will go forward on 3/23/17.  Hearing re: all

6  other claims is adjourned to 5/11/2017 at 10:00 a.m.

7

8  (CC: Doc #10311) Motion of the ResCap Liquidating Trust for

9  Final Decree Closing Chapter 11 Case of Executive Trustee

10 Services, LLC filed by Joseph A. Shifer on behalf of ResCap

11 Liquidating Trust.

12

13 (CC: Doc #10296) ResCap Borrower Claims Trusts Ninety-Fifth

14 Omnibus Objection to Claims ((I) No Liability Borrower Claims,

15 (II) Reduce and Allow Borrower Claims, and (III) Allow in Full

16 Borrower Claim).

17

18

19

20 Transcribed by:  Dena Page

21 eScribers, LLC

22 352 Seventh Avenue, Suite #604

23 New York, NY 10001

24 (973)406-2250

25 operations@escribers.net

```
 1
 2  A P P E A R A N C E S:
 3  MORRISON & FOERSTER LLP
 4          Attorneys for ResCap Borrower Claims Trust
 5          250 West 55th Street
 6          New York, NY 10019
 7
 8  BY:   JESSICA J. ARETT, ESQ.
 9          NORMAN S. ROSENBAUM, ESQ.
10
11
12  KRAMER LEVIN NAFTALIS & FRANKEL LLP
13          Attorneys for ResCap Liquidating Trust
14          1177 Avenue of the Americas
15          New York, NY 10036
16
17  BY:   NATHANIEL ALLARD, ESQ.
18
19
20  ALSO PRESENT:
21          JILL HORNER, ResCap Liquidating Trust (Telephonic)
22          JAMES P. KENNEDY, Pro Se (Telephonic)
23          SARA LATHROP, Residential Capital Estates (Telephonic)
24
25
```

RESIDENTIAL CAPITAL, LLC, ET AL.                                    4

1                   P R O C E E D I N G S

2          THE CLERK:  All rise.

3          THE COURT:  All right, please be seated.

4          We are in Residential Capital, 12-12020.

5          All right.

6          MR. ALLARD:  Good morning, Your Honor; Nathaniel

7   Allard of Kramer, Levin, Naftalis & Frankel for the ResCap

8   Liquidating Trust.  The first matter on the agenda is the

9   ResCap Liquidating Trust ninety-sixth omnibus objection to

10  claims.  It was filed on February 21st, 2017 at ECF number

11  10310.

12         In support of the objection, the Trust submitted the

13  declaration of Jill Horner who is the Liquidating Trust chief

14  financial officer, and I believe Ms. Horner is on the phone if

15  you have any questions.

16         THE COURT:  All right.  Go ahead Mr. Allard.

17         MR. ALLARD:  So some background:  Pursuant to the

18  objection, the Liquidating Trust objected to twenty-five

19  claims; twenty-four of those were virtually identical claims

20  filed by Royal Bank of Scotland and its affiliates.  We have

21  been in discussions with RBS and so we have adjourned the

22  objection as it pertains to those twenty-four claims.  So the

23  only claim going forward today is claim number 5271 filed by

24  Bank of America.

25         THE COURT:  Do you have a copy of the claim?

1          MR. ALLARD:  I do.

2          THE COURT:  It's not attached to the moving papers; at

3     least, I didn't see it.

4          MR. ALLARD:  I do.

5          May I approach?

6          THE COURT:  Yes, please.

7          Thank you.  Give me a chance to look at it, okay?

8     (Pause)

9          THE COURT:  Go ahead.

10         MR. ALLARD:  Okay, so if I could provide just some

11    background:  We have been in contact with counsel to Bank of

12    America and understand the claim related to an alleged improper

13    lien release.  And when we were in contact with them, we

14    offered to work with them to resolve the claim, at which point

15    they informed us that they no longer hold any interest in the

16    property or the claim.  For whatever reason, they were not able

17    to withdraw the claim so we were constrained to include them on

18    the objection.  And they did not respond to the objection.

19         THE COURT:  Did ResCap, GMAC Mortgage, LLC release the

20    lien on the property that's the subject of the proof of claim?

21         MR. ALLARD:  My understanding of the facts is there

22    was they argued there was an improper lien release, whereas,

23    there was a -- I think it was a clerical mistake where they

24    gave the address to an adjacent property.  So that was the

25    nature of the misunderstanding --

1          THE COURT:  Part of the problem I have in reading

2     the -- I have no clue, other than in the objection where you

3     say that the basis for Bank of America's claim was improper

4     release of the lien, I have no knowledge, no facts set out

5     about did ResCap mistakenly release the lien on the property,

6     what the status of that is.

7          MR. ALLARD:  Unfortunately --

8          THE COURT:  Let me just finish.

9          MR. ALLARD:  Sorry.

10          THE COURT:  I don't know whether the view that

11     the -- yes, you have an affidavit declaration in support of the

12     objection.  It's not particularly informative; you say you've

13     had discussions with Bank of America.  I had not been able to

14     review the claim previously, so let me come back and let me

15     understand.  Tell me what happened.  What did GMAC do with

16     respect to the lien on this property?

17          GMAC was servicing the loan on the property at one

18     time, correct?

19          MR. ALLARD:  That is my understanding.

20          THE COURT:  And did it release the lien on the

21     property?

22          MR. ALLARD:  So unfortunately, our understanding is

23     limited to the proof of claims not very informative, either, so

24     when we talked to them we tried to get this information.  So

25     let me -- I want to make that clear; my understanding is they

1   believe that instead of releasing the lien on one property,

2   they released -- the argument is they released the lien on an

3   adjacent property that had a slightly different address.

4           I don't have many facts beyond that; that's why we

5   tried to contact them, and they informed us that they weren't

6   really interested in pursuing the claim anymore.  And we

7   did -- the affidavit of service at ECF 10319 indicates that we

8   served the objection on them, as well, after our many calls and

9   emails back and forth.

10          THE COURT:  Whoever is typing on the phone, please put

11  your phone on mute.

12          Anything else you can tell me about it?

13          I hope you understand what my -- what's giving me

14  problems about it.  Is there anything else you can tell me

15  about the claim, or what happened here?

16          MR. ALLARD:  No, I mean, I think that the burden on

17  the claimant to put forth information really has not been met.

18          THE COURT:  Well, but a proof of claim properly

19  prepared is prima facie evidence of validity and amount.  The

20  objector has to come forward with competent evidence that would

21  refute at least one element of the claim.  What evidence have

22  you come forward with that refutes an element of the claims set

23  forth in the proof of claim?

24          MR. ALLARD:  Well, I would argue that the claimant has

25  not been damaged because we offered, to the extent that they

RESIDENTIAL CAPITAL, LLC, ET AL.                                  8

1   think there was some improper lien release, to work with them

2   to resolve that.

3           THE COURT:  That's not evidence; come on.  That

4   doesn't rebut an element -- well, let me ask you first:  do you

5   believe that the proof of claim, which I'm seeing for the first

6   time, sets forth a claim which is entitled to be treated as

7   prima facie evidence of validity and amount?

8           MR. ALLARD:  As far --

9           THE COURT:  Did somebody -- did you have

10  somebody -- did the Trust have somebody go back and look at the

11  property records for the property in question?

12          GMAC serviced the loan; it was a mortgage on specific

13  property.  The allegation is that GMAC improperly released the

14  lien, inadvertently or otherwise.  There's nothing in the

15  moving papers that addresses the issue whether GMAC, in fact,

16  released the lien on the property, when it released the lien on

17  the property, who the mortgagee is; none of that is set forth

18  in the papers, is it?

19          MR. ALLARD:  No.

20          THE COURT:  Okay.  So tell me what it is that you've

21  put forward, competent evidence that rebuts at least one

22  element of the claim?

23          MR. ALLARD:  That the amount of the claim was filed in

24  the amount 160,000, but there's no evidence of any damage to

25  that effect.

1          THE COURT:  If you released -- are you telling me that

2     when the proof of claim asserts that the amount of the secured

3     claim is 160,000 dollars that the -- how much was the note?

4     How much was borrowed?

5          Well, the proof of claim attaches a deed of trust; it

6     attaches a note.  How much was the note for?

7          As to the blue payment rider, I don't see the -- is

8     there an amount that was borrowed?

9          Ms. Horner, can you help me here?

10          Ms. Horner, are you on the phone?

11          COURTCALL OPERATOR:  Your Honor, there is no

12     appearance from Ms. Horner on CourtCall.

13          THE COURT:  Okay.

14          MR. ALLARD:  I don't see an amount listed here.

15          THE COURT:  Yeah, I don't, either.  Do you have any

16     reason to believe that 160,000 dollars that's listed as the

17     amount of the claim wasn't the amount of the --

18          MR. ALLARD:  I do not.

19          THE COURT:  Let me explain what I do when I get an

20     objection when there's no response that's been filed.  And I

21     think somebody from your office called and asked whether we

22     would simply, since no objection was filed and and/or an order

23     to sustain an objection.  And what I do in every one, in every

24     proof of claim, whether it's a ResCap or another, where there's

25     an objection to a proof of claim, we examine the papers to see

RESIDENTIAL CAPITAL, LLC, ET AL.                    10

1    whether the proof of claim is properly prepared and would

2    appear to establish a prima facie basis, prima facie as to

3    validity and amount.

4            I didn't have the proof of claim.  I'm looking at it

5    now; you handed it to me.  It appears proper on its face:  it's

6    got the deed of trust attached, GMAC gets service of the loan,

7    and the allegation is that GMAC improperly released it.  You

8    have not addressed in any of your papers whether GMAC did

9    release it, properly or improperly.

10           Other than saying -- and I appreciate the difficulty

11   sometimes -- other than saying you tried to work with Bank of

12   America to see whether you could get this resolved and they

13   won't withdraw the claim, my concern is, is that you haven't

14   rebutted at least one essential, necessary element of the

15   claim.  You basically have ignored it.  You -- I don't mean to

16   be pejorative about it, but other than saying, look, we tried

17   to work with Bank of America, they won't withdraw the claim;

18   they told us -- hearsay -- that they're not servicing the loan

19   anymore.  I don't know who the mortgagee was, I assume they

20   were servicing it for securitization trust typical.

21           Can -- what else would you like to say about it?

22           MR. ALLARD:  How would you like to proceed?

23           THE COURT:  With whom has your office been in touch

24   with about the claim?  I see the letter is from a --

25           MR. ALLARD:  Yeah, so the proof --

1          THE COURT:  -- lawyer, Morris & Morris.

2          MR. ALLARD:  Right, so the proof of claim was filed by

3    Morris & Morris, the attorney on the proof of claim no longer

4    is -- I believe, works there.  So we've been contacting the

5    attorney who took over the matter which was named Matthew Green

6    of Morris & Morris.

7        (Pause)

8          THE COURT:  Do you have any idea who owns the loan

9    now?

10         MR. ALLARD:  I do not.

11         THE COURT:  Do you know what the status of the loan

12   is?  In the fall -- current is -- do you know anything about

13   the status of the loan?

14         MR. ALLARD:  I don't.

15       (Pause)

16         THE COURT:  To show cause, indicating that this

17   objection to Bank of America, claim number 5271 came on for a

18   hearing on March 23rd, 2017.  No response to the objection was

19   filed on behalf of Bank of America, and no one appeared for

20   Bank of America at the hearing.

21         Unless Bank of America files a response to the motion

22   contesting the grounds for the objection, on or before 5 p.m.

23   March 30, 2017, the objection will be sustained in the claim

24   5271, expunged.

25         Trust counsel shall serve a copy of the OSC on counsel

1  for Bank of America and file certificate of service on the

2  docket.  We'll see whether Bank of America does something in

3  response or not.  If they do respond and contest the objection,

4  I'm probably going to set it for another hearing.  And if I do,

5  I probably will enter an order requiring they make some showing

6  and explain what happened here.  Okay.

7              MR. ALLARD:  That's fair.

8              THE COURT:  I just, I've got a proof of claim that on

9  its face appears to stay the claim, and no response is required

10  to an objection to a claim.  If no response is filed, the Court

11  has to examine the claim to determine whether it's properly

12  prepared and is entitled to its prima facie evidence of

13  validity.

14             Now, that's the circumstance I find myself in.  Simply

15  saying that somebody talked to a lawyer for BofA and you

16  couldn't get them to withdraw the claim, and without explaining

17  any of the facts about what really happened is just not enough,

18  so that's what I'm going to do.

19             MR. ALLARD:  Okay, thank you, Your Honor.

20             THE COURT:  Okay.  Thank you, Mr. Allard.

21             MR. ALLARD:  And the next matter on the agenda is the

22  motion of the ResCap Liquidating Trust for a final decree,

23  closing the Chapter 11 case of Executive Trustee Services, LLC.

24  That was filed on February 21st, 2017, and can be found on ECF

25  number 10311.

1        If I may provide a little background:  as I'm sure you

2   are well aware, the Chapter 11 cases from the petition date

3   consisted of the jointly administered cases of fifty-one

4   debtors.  Under the confirmed plan, the fifty-one debtors were

5   consolidated into three debtor groups to receive distributions

6   on allowed claims:  the ResCap debtors, the GMAC mortgage

7   debtors, and the RFC debtors.

8        In addition, although technically part of the GMAC

9   debtor group claims against Executive Trustee Services are

10  entitled to different treatment.  So previously in these cases,

11  we moved and got approval to close forty-seven of the fifty-one

12  cases, which left open the lead debtor case and the case of

13  ETS.  And today we seek to move just the additional case of

14  ETS; the purpose is mostly administrative and reducing the --

15        THE COURT:  Yes, so the Moss claim remains.

16        MR. ALLARD:  Right.

17        THE COURT:  Tell me how any recovery by Mr. Moss will

18  be handled if I close the ETS case?

19        MR. ALLARD:  So distributions are conducted by the two

20  trusts:  the Liquidating Trust and the Borrower Claims Trust.

21        THE COURT:  Your claim would be under the Borrower

22  Claims, then?

23        MR. ALLARD:  Yes, his claim is currently, as you know,

24  being litigated with the Borrower Claims Trust, so any recovery

25  that he is entitled to would come from funds that have already

1  been --

2          THE COURT:  That's fifty million dollars that we're --

3          MR. ALLARD:  Yes, it was --

4          THE COURT:  -- the Borrower Claims Trust.

5          MR. ALLARD:  Well, under the plan it was 57.6 million;

6  it was reduced slightly for certain pre-confirmation date

7  distributions, so I think it was -- ended up being about 56.1

8  million.  But any recovery that he's entitled to would come

9  from funds already with the borrower trust, and not from the

10 estate of ETS.

11         THE COURT:  And so your position is, Mr.

12 Moss -- there's no prejudice to Mr. Moss if the ETS case is

13 closed; is that a fair statement?

14         MR. ALLARD:  That's fair.

15         THE COURT:  So what happens to ETS's documents in the

16 case is closed?

17         I'm just -- the case is coming up for trial.  I don't

18 remember now whether or what the status -- I think discovery is

19 closed, but maybe it is; maybe it isn't.  Let's assume it's

20 not.  What is happening to ETS's documents if the case is

21 closed?

22         MR. ALLARD:  Well, so the -- at a high level, I

23 believe all the estates -- the successors -- the Liquidating

24 Trust which will still be in existence, and I think there's

25 cooperation agreement in place between the Borrower Claims

1   Trust and Liquidating Trust, so I don't think anything would

2   change in terms of the documents as long as --

3              THE COURT:  Well, I don't know what that means, so

4   what is the borrower's claim trust in possession of all ETS

5   documents that still exist today?

6              I just -- look, Mr. Moss, I know you served and I read

7   that you served Mr. Moss.  He hasn't filed an objection.  I

8   don't want to find myself in trial on the Moss claim and have

9   an issue arise about documents relating to the Moss claim; he

10  serves trial subpoenas.  I need to know that the borrower's

11  claim trust will accept any trial subpoena or documents -- may

12  be an issue about the scope or relevance, but if the ETS case

13  is closed that the borrower's claim trust will accept any trial

14  subpoena served by Mr. Moss and produce any responsive

15  documents, make any motion if there's a dispute about it.  I

16  don't want -- I'm not going to close the case if doing so in

17  any way impairs or affects stability of Moss, the claims trust,

18  or me to resolve the Moss claim.  It's going to go to trial;

19  unless it's settled it's going to trial.

20             And I read your motion.  In theory, I don't have a

21  problem with it.  I understand that the distribution to Moss,

22  if any, would come from the borrower's claims trust.  But I

23  need to be satisfied that closing the case will not affect or

24  impair the parties' ability to try the case.

25             MR. ALLARD:  My understanding is it would not at all.

1  I don't want to speak for the Borrower Claims Trust.

2           THE COURT:  Mr. Rosenbaum.

3           MR. ROSENBAUM:  Norm Rosenbaum, Morrison & Foerster

4  for the ResCap Borrower's Claim Trust.  Your Honor, I wasn't

5  aware that there would be any issue with document preservation

6  in terms of closing the ETS case.  I share Your Honor's concern

7  and I believe that --

8           THE COURT:  I don't want a bad surprise when I get to

9  trial.

10          MR. ROSENBAUM:  I appreciate it, Your Honor.  I think

11 we could all be on the same page in this, so I'll just

12 coordinate.  There shouldn't be -- document preservation, as

13 Mr. Allard was referring to, there's the cooperation agreement.

14 I can't say that the --

15          THE COURT:  Well, the case is closed; who is it going

16 to cooperate with?

17          MR. ROSENBAUM:  Well, the Trust is obligated to

18 cooperate -- the two trusts are obligated; the Liquidating

19 Trust is supposed be the --

20          THE COURT:  Right.

21          MR. ROSENBAUM:  -- depositor (ph.) of the documents,

22 so I think we'll just coordinate and make sure there's not

23 going to be any issues with any access to documents.  I can't

24 sit here and say the borrower's trust has every document in its

25 possession that they need for the Moss matter or any other

1  matter.  They do rely on the Liquidating Trust, and

2  their -- and some of this is imaged electronics -- electronic

3  images on different servers.  So I think we just need to

4  coordinate and make sure there's just not going to be

5  any -- there has to be preservation of all these documents that

6  I'm happy to coordinate.

7          THE COURT:  Well, isn't the -- I don't see anything in

8  the order about preservation of documents.

9          MR. ROSENBAUM:  Well, I think the two trusts should

10  coordinate and make sure that that's a part of the --

11          THE COURT:  Well, that's just not good enough for me;

12  I need -- look, Mr. Allard, I'm prepared to close the case, but

13  you're going to have to modify the order to provide for

14  preservation of ETS records.  I don't want to find out that I

15  close the case today and the Moss claim goes to trial and,

16  oops, ETS's records were destroyed when you, Judge, approved

17  the closing of the case.

18          And is this the only remaining claim against ETS?

19          MR. ALLARD:  That's correct.

20          THE COURT:  I want to see a revised order on closing

21  the case.  Work out with Mr. Rosenbaum; I want to be satisfied

22  that the order addresses preservation of records.

23          MR. ALLARD:  We are happy to do that.

24          THE COURT:  You know, I've just been -- well, I have

25  just been through this in another case where there's an issue,

1    I had been doing it.  We had the district attorney, I had

2    private parties, I had others; they were happy to have the duty

3    case closed but the preservation of records was a big deal.

4    And so I think the order ultimately provided for -- it

5    had -- there electronic records, there were some paper records.

6          I understand you want to get the case closed; I'm

7    happy to get the case closed, but I just don't want a bad

8    surprise with the Moss claim.  I know you didn't file anything,

9    but unless the case is -- unless the claim is resolved, it's

10   going to trial.

11         MR. ALLARD:  Correct.  Okay, we're happy to do that.

12         THE COURT:  So confer with Mr. Rosenbaum, come up with

13   a draft order.

14         I assume the U.S. Trustee -- has the U.S. Trustee seen

15   your proposed order?

16         MR. ALLARD:  Yes.

17         THE COURT:  Okay.  Share a revised draft with the U.S.

18   Trustee, as well, and advise the Court what the status is.  So

19   I'm going to conditionally grant the motion to close the ETS

20   case, subject to reviewing an order that adequately deals with

21   the preservation of records, okay.

22         MR. ALLARD:  Thank you, Your Honor.

23         THE COURT:  The records may already be in the

24   possession of the borrower's trust; I don't know, I just don't

25   know.

1          Do you know, Mr. Rosenbaum?

2          MR. ROSENBAUM:  As I said before, I can't say as a for

3    certainty every record is with the Trust.  I know they rely on

4    the liquidated trust.

5          THE COURT:  Sure.  Okay, I just don't -- it's not that

6    I don't accept your representation, Mr. Rosenbaum, but I just

7    want to be sure that, is there going to be consequences if they

8    are a required preservation and it turns out they weren't

9    preserved.  Everybody ought to understand that.

10         MR. ALLARD:  Correct.

11         THE COURT:  Okay.

12         MR. ALLARD:  Thank you.

13         THE COURT:  All right, Mr. Allard; thank you.

14         Ms. Arett?

15         MS. ARETT:  Good morning, Your Honor.

16         THE COURT:  Good morning.

17         MS. ARETT:  Jessica Arett of Morrison Foerster, on

18   behalf of the ResCap Borrower Claims Trust.

19         The next matter on the agenda is number 3, the

20   Borrower Trust's ninety-fifty omnibus objection to claims, no

21   liability borrower claims, reduce and allow borrower claims,

22   and allow and full borrower claim.  It was filed at docket

23   number 10296 on February 2nd, 2017.

24         I don't know if -- I know we received a response from

25   Mr. Kennedy; I don't know if he is on the line.

1          THE COURT:  Mr. Kennedy, are you on the line?

2          MR. KENNEDY:  Yes, I am --

3          THE COURT:  Thank you, Mr. Kennedy.

4          MR. KENNEDY:  -- Your Honor.

5          THE COURT:  All right, that's the only -- is that the

6    only response you received?

7          MS. ARETT:  Yes, it is.

8          THE COURT:  Okay.  So I have reviewed, we'll

9    deal -- we'll talk about the Kennedy claim in a minute.

10          MS. ARETT:  Okay.

11          THE COURT:  The -- and I guess, what, there were

12   several categories of -- in your -- that you grouped objections

13   in various categories; why don't you just briefly describe?

14          MS. ARETT:  Correct.  So there -- so through the

15   ninety-fifth omnibus objection, we seek to expunge four proofs

16   of claim that do not represent valid pre-petition claims

17   against the debtors; those would be the no liability borrower

18   claims.  The borrower trust thoroughly examined the debtors'

19   books and records in an effort to validate the accuracy of the

20   allegations made in those claims, and determined that the books

21   and records do not show any liability due and owing the

22   claimants.  The borrower trust also determined that two claims,

23   which were reflected on Exhibit B to the objection, those

24   would've been the reduce and allow borrower claims --

25          THE COURT:  Well, let me just -- the ones you see in

RESIDENTIAL CAPITAL, LLC, ET AL.                        21

1    disallow order, the four, 10/5th claim:  1015, 2549, 1039, and

2    5634.

3            MS. ARETT:  So 1015 was actually one that we withdrew

4    the objection to.

5            THE COURT:  Okay.  All right.

6            MS. ARETT:  So -- and then I think you left out Mr.

7    Kennedy's claim, 4930.

8            THE COURT:  I know.  We're going to talk about --

9            MS. ARETT:  Yeah, yeah.

10           THE COURT:  -- Mr. Kennedy's separately here.

11           MS. ARETT:  Correct, so there were --

12           THE COURT:  So 1015 is out, so it's 2549, 1039, 5634?

13           MS. ARETT:  Correct, and then the fourth one was Mr.

14   Kennedy's.

15           THE COURT:  All right, we're going to deal with Mr.

16   Kennedy's separately.

17           MS. ARETT:  Right.  Correct.

18           THE COURT:  As to the three, 1015,

19   2549 -- not -- excuse me, not 1015.  2549, 1039, and 5634, the

20   objection is sustained --

21           MS. ARETT:  Thank you, Your Honor.

22           THE COURT:  -- and the claims are expunged.

23           Okay, so go to the next category.

24           MS. ARETT:  Okay, so the next category, which

25   reflected on Exhibit B, the reduce and allow borrower claims,

1  were asserted in an amount greater than that for which the

2  debtors' estates were liable.

3          THE COURT:  And that's 1524 and 4921?

4          MS. ARETT:  Correct.

5          THE COURT:  The objection is sustained.

6          MS. ARETT:  Okay.

7          THE COURT:  And the claims are reduced.

8          MS. ARETT:  All right.  And then we also determined

9  that one claim should be allowed in the filed amount against --

10         THE COURT:  3848?

11         MS. ARETT:  Yes.

12         THE COURT:  All right, the claim is allowed.

13         MS. ARETT:  Great.  So then responses to the objection

14 were due on March 6th.  As I said earlier, the borrower

15 received one response to the objection from Mr. Kennedy; that

16 was at docket number 10332.

17         THE COURT:  All right, and that's claim 4930.

18         MS. ARETT:  Correct.

19         THE COURT:  All right.

20         MS. ARETT:  And we filed a reply on March 20th, 2017

21 at docket number 10337.  I'm happy to walk through --

22         THE COURT:  Please do.

23         MS. ARETT:  All right.  So Mr. Kennedy's proof of

24 claim is based on alleged errors made by GMAC mortgage during

25 the servicing of his loan.  And Mr. Kennedy asserts that GMAC

1    Mortgage placed lender insurance on his property and paid his

2    property taxes when it should not have.  Mr. Kennedy also

3    asserts that GMAC Mortgage's responses to various QWRs that

4    were sent to him were inadequate under RESPA.

5         However, review of the borrower trust books and

6    records demonstrate that as to all of these allegations, GMAC

7    acted in compliance with the terms of the deed of trust and

8    applicable law.

9         THE COURT:  The response that you filed concedes that

10   there's a disputed issue of fact over whether the tax bill was

11   paid, and that's in paragraph 29.  This is the allegation of a

12   statutory violation of California Civil Code 2954(a)(1)(C).

13   And what do you say in paragraph 29 of the objection?

14        MS. ARETT:  So I think we addressed this earlier in

15   the objection in saying that even if GMAC Mortgage had received

16   proof of the insurance, under -- because it -- or

17   sorry -- proof of the -- that the taxes were paid, because it

18   later received evidence from the San Francisco County showing

19   that the delinquent taxes had not been paid under its own

20   business practices, it would have gone forward and paid those

21   taxes anyway.  So whether or not they received proof that --

22        THE COURT:  Don't you -- I thought that the borrower's

23   trust concedes that there's an issue of fact whether the tax

24   bill was paid.  I understand your legal position --

25        MS. ARETT:  Correct.

1              THE COURT:  -- but you -- is -- am I correct that you

2     agree that there's a disputed issue of fact whether Mr. Kennedy

3     paid the tax bill?

4              MS. ARETT:  I think there's a disputed issue of

5     fact -- and this was not clear in the reply and I

6     apologize -- there's a disputed issue of fact as to whether or

7     not the borrower trust received evidence from Mr. Kennedy that

8     the tax bill was paid.

9              THE COURT:  Okay.

10             MR. KENNEDY:  Yeah, that's not correct.

11             THE COURT:  Well, you'll get --

12             MR. KENNEDY:  If I may interject?

13             THE COURT:  -- a chance, Mr. Kennedy.

14             Mr. Kennedy?

15             MR. KENNEDY:  Yes.

16             THE COURT:  I'll give you a chance to respond on

17    everything, okay?

18             MR. KENNEDY:  That fine.  Okay, thank you.

19             MS. ARETT:  Because later in -- GMAC Mortgage did

20    follow up with San Francisco County and learned that the taxes

21    had been paid, and that the records that they received from the

22    county were incorrect.

23             THE COURT:  Okay, and what did GMAC do when it found

24    out that Mr. Kennedy had paid the taxes?

25             MS. ARETT:  At that point, the county had applied the

1    taxes that GMAC Mortgage had paid to his December 1st, 2008

2    taxes.

3              THE COURT:  And what happened to the amount that he

4    paid?

5              MS. ARETT:  I believe that he did not pay his taxes in

6    December 1st, 2008.

7              THE COURT:  Well, which taxes did you -- did GMAC

8    subsequently learn he had paid?

9              MS. ARETT:  The taxes that he paid in July 2008, I

10   don't know exactly when those were due, but I know that they

11   were paid in July 2008.

12             THE COURT:  Why doesn't the fact -- I mean, so -- all

13   right, so if the county made a mistake --

14             MS. ARETT:  Um-hum.

15             THE COURT:  -- the mistake being it reported to GMAC

16   that the taxes hadn't been paid when, in fact, they had been

17   paid, what's -- what are the legal consequences of that for

18   GMAC?

19             MS. ARETT:  Well, I think that that's an issue that

20   Mr. Kennedy would have with the county.  I don't know that

21   GMAC -- I mean, I don't think that GMAC can be responsible

22   for --

23             THE COURT:  So what --

24             MS. ARETT:  -- correcting every single -- like,

25   make --

1             THE COURT:  Okay.

2             MS. ARETT:  -- confirming with the county every single

3    time.

4             THE COURT:  What evidence do I have before me that

5    shows that GMAC was informed by the county that Mr. Kennedy had

6    not paid the taxes, and on that basis GMAC paid the taxes?

7             MS. ARETT:  So when GMAC Mortgage is servicing

8    notes -- okay, we'll find the exact part of the notes in a

9    second -- it's on page 156 of 158 of the servicing notes, which

10   are Exhibit D to the supplemental declaration of the reply.

11            THE COURT:  Okay.

12            MS. ARETT:  And the entry on October 4th reads:  "Per

13   e-file September 24th, 2008, taxes are delinquent, as follows:

14   San Francisco County dispersed July 2008 second initial basis."

15   So that's the evidence that we have that GMAC Mortgage

16   received.

17            THE COURT:  Okay.  Address the breach of contract

18   claim.

19            Could you address the breach of contract claim?

20            MS. ARETT:  Yes, so pursuant to the deed of trust,

21   GMAC Mortgage was permitted to pay delinquent property taxes

22   and hazard insurance.

23            THE COURT:  I agree.

24            MS. ARETT:  And did so pursuant to the deed of trust,

25   so that they're --

1        THE COURT:  But it's got to be delinquent.

2        MS. ARETT:  It does have to be delinquent, but I mean,

3   it -- GMAC Mortgage received notice from the county in July,

4   informed Mr. Kennedy of that delinquency --

5        THE COURT:  Other than the reference in the servicing

6   notes, is there a piece of paper that shows that the county

7   gave notice to GMAC that the taxes hadn't been paid?

8        MS. ARETT:  The trust doesn't have that record

9   anymore, Your Honor.  That we were able to locate, anyway.

10       THE COURT:  All right.  How much -- the Trust now

11  acknowledges that Mr. Kennedy had made the tax payment, but the

12  Trust's position is supported by the servicing notes that the

13  county had mistakenly reported that he had not paid.  What was

14  the amount that GMAC advanced?

15       MS. ARETT:  I believe, I'll need to confirm, is

16  $2,939.80.

17       THE COURT:  Okay.  So address the issue of California

18  Civil Code 2954(a)(1)(C), the escrow -- establishing an escrow

19  account.

20       MS. ARETT:  So -- sorry, let me pull, I have a copy of

21  it, so just for my own record.

22       THE COURT:  Okay, sure.

23       MS. ARETT:  So a review of the statute, I believe,

24  demonstrates that they're -- that the purpose of the statute

25  was to prevent a servicing company from placing what is a

RESIDENTIAL CAPITAL, LLC, ET AL.                          28

1  traditional escrow account where you pay into it every month,

2  and then at the end of those six months they make the payment

3  for you, and that's just part of your monthly payment.  That is

4  different, and GMAC Mortgage makes a distinction between that

5  sort of escrow account and the type that was placed on Mr.

6  Kennedy's account at this point.  And they make that

7  distinction in the servicing notes.

8           THE COURT:  Okay, so GMAC, when it received notice

9  that Mr. Kennedy had not paid the taxes, which was in error,

10  the information was in error, it established an escrow at that

11  point?

12           MS. ARETT:  It -- yeah, well -- yes, so it created an

13  account that Mr. Kennedy would be paying into that would, once

14  the payment that GMAC Mortgage had paid was paid off.

15           THE COURT:  Yes.

16           MS. ARETT:  But then the escrow account would go away,

17  so it isn't --

18           THE COURT:  And how much -- what was the time gap

19  between the time that GMAC made the tax payment and learned

20  that, in fact, Mr. Kennedy had done so?

21           MS. ARETT:  So GMAC made the payment on October 4th,

22  and I believe they learned of the -- that Mr. Kennedy made the

23  payment in May 2009; I don't know the exact date.

24           THE COURT:  October 4th of which year?

25           MS. ARETT:  Of 2008.

1          THE COURT:  Okay.

2          MS. ARETT:  So --

3          THE COURT:  And what happened to the escrow when GMAC

4     learned that Mr. Kennedy had made the tax payment?

5          MS. ARETT:  Well, at that point, the county couldn't

6     provide a refund to GMAC Mortgage because it had paid -- it had

7     used GMAC Mortgage's funds to pay Mr. Kennedy's December 2008

8     payment.  So at that -- GMAC Mortgage would only remove the

9     escrow if it had received a refund in the amount that it paid

10    out, which it didn't because the county had then paid -- used

11    that money to pay Mr. Kennedy's taxes going forward.

12         THE COURT:  Okay.

13         MS. ARETT:  Yeah.

14         THE COURT:  Okay, deal with the rest of the claim.

15         MS. ARETT:  So there were four QWRs that --

16         THE COURT:  You acknowledge that they were proper

17    QWRs?

18         MS. ARETT:  Yes, Your Honor.

19         THE COURT:  Okay.

20         MS. ARETT:  So there was the December 26th, 2009 QWR,

21    which GMAC responded to on January 22nd, 2010.  There was

22    another QWR that was sent on January 19th, 2012 that GMAC

23    responded to on February 6th, 2012.  There was a SQR on May

24    14th, 2012 that GMAC responded to on June 5th of 2012.  And

25    then a fourth one on August 4th, 2012 that GMAC responded to on

1   August 10th.

2           And a review of the responses that GMAC Mortgage

3   provided, it addressed all of the issues that Mr. Kennedy

4   raised, and it -- if you look at the actual requires of RESPA,

5   it's just that GMAC Mortgage had to explain why it believed

6   that Mr. Kennedy's account was correct, which it did.  It

7   needed to provide him with a phone number and with various

8   departments within GMAC Mortgage, which it did.  It also

9   provided him with copies of his servicing notes, his deed of

10  trust, his note, and various other documents that were

11  requested.

12          THE COURT:  Okay.

13          MS. ARETT:  So it is our position that it was -- that

14  the responses were sufficient under RESPA.

15          THE COURT:  All right, address his FDCPA and Rosenthal

16  Fair Debt Collection Practices Act, Civil Code 1788 claim.

17          MS. ARETT:  So Mr. Kennedy raised these for the first

18  time in his response, but even if we were to relay that back to

19  the filing of the petition -- of the bankruptcy case -- they

20  would still be untimely.  Under both of those statutes, there's

21  a year statute of limitations.  Even being extremely generous

22  and saying that he did not realize the errors that were made

23  until his first QWR was mailed out, that's still December of

24  2009, which means that the statute of limitations expired in

25  December 2010, so --

RESIDENTIAL CAPITAL, LLC, ET AL.                    31

1           THE COURT:  Is it the same statute of limitations

2    under the Rosenthal Act?

3           MS. ARETT:  Yes, both one year.

4           THE COURT:  All right.  Okay.

5           Mr. Kennedy, do you want to go ahead and respond?

6           MR. KENNEDY:  Okay.  First of all, the -- my claim has

7    been completely misstated.  The issue with California Civil

8    Code 2954 is not whether -- this is not whether or not GMAC

9    paid my taxes, but the fact that they opened an escrow account

10   for the payment of the taxes.  California 2954 prohibits that,

11   unless the borrower falls into one of seven exceptions.  And

12   the closest exception that I can think of because they -- they

13   haven't said what exception that would be -- is that you

14   have -- it's required that you must miss -- have two delinquent

15   tax payments -- two consecutive delinquent tax payments before

16   GMAC could have done what they did as far as establishing an

17   escrow account.

18          Whether or not they paid the taxes, whether or not I

19   had already paid them, that's irrelevant.  The law specifically

20   states that you have to have two delinquent taxes in a row in

21   order for somebody to be able to open an escrow account for the

22   payment of taxes, and that was not the case.  My taxes

23   were -- none of my taxes were left delinquent at that point.

24          THE COURT:  Is it fair to say --

25          MR. KENNEDY:  Then --

RESIDENTIAL CAPITAL, LLC, ET AL.                                    32

1        THE COURT:  Mr. Kennedy, may I ask a question?  So I

2   understand the issue about the tax bill, which you did pay and

3   GMAC servicing notes reflect they were advised that you hadn't

4   paid.  Did you miss the next tax payment?

5        MR. KENNEDY:  I went to make the tax payment, I

6   had -- I had informed GMAC continuously, before the payment and

7   then after the -- after they made the payment, I told them you

8   need to call and get a refund.  They would not refund the money

9   to me because I didn't make the payment, and GMAC refused to do

10  that.

11       Finally, I -- I persisted with that.  Finally, in May

12  of the following year is when they called and the tax payment,

13  of course, by then had been applied to my December -- the

14  following payment, December of -- of 2008.  And so that's why

15  the payment -- that's why the refund wasn't available.  Had

16  they called them and asked for a refund immediately, you know,

17  when I notified them that there's a surplus and you need to get

18  it back, they would've gotten the refund.  But they didn't.

19       And had they done that, we wouldn't be here today

20  because that would've prevented any other damages from

21  occurring, my account would've been correct, and it would've

22  been resolved.

23       THE COURT:  All right, I understand your argument

24  about 2954, it's California Civil Code, Section 2954.  Could

25  you address the breach of contract claim?

1    MR. KENNEDY:  Yes, because -- because they went ahead

2   and -- and opened an escrow account, once again, against

3   California Civil Code, the deed of trust requires that they

4   follow local regulations with regard to escrow accounts.  And

5   therefore, they did not, and they then breached, by opening the

6   escrow account, they breached the deed of trust.  Also,

7   they -- they then charged me for the related escrow charges for

8   that payment that were prohibited by the law.  And that is also

9   in breach of -- of the contract.  And when I made the payments

10   of principal and interest only, they divert -- they called my

11   payment insufficient and put it in a suspense account, and then

12   diverted funds from that payment to pay for those unwarranted

13   escrow charges.  And that's a breach of -- of the contract.

14        Also, there was another escrow issue regarding

15   property insurance, and that only involves the fact that on an

16   escrow statement that I received from GMAC in -- for August, it

17   stated that if the amount for the insurance is paid in full, it

18   will be automatically -- my payment for November 1st, 2008,

19   will automatically be adjusted back to principal and interest

20   only.  I provided proof of insurance; the funds were completely

21   refunded, and the policy was cancelled on October 23rd.  Yet,

22   my payment for November 1st was not automatically adjusted as

23   stated on the escrow analysis, and they considered my payment

24   of principal and interest only insufficient and put my funds in

25   a suspense account, and then charged me later diverted funds to

1   pay for that -- to pay for that escrow charge.

2           It was then removed the following month.  So

3   they -- they didn't do it as they state.  And each escrow

4   analysis that I would ever get had a similar statement that if

5   you do this, if you pay this amount, then it will be removed by

6   such a date.  And they never followed their own policy, as far

7   as removing the -- the charges, and therefore, that's a breach

8   of -- of contract with that.

9           THE COURT:  All right, could you address --

10          MR. KENNEDY:  And --

11          THE COURT:  Could you address the RESPA claim, that's

12  the Real Estate Settlement Procedures Act.

13          MR. KENNEDY:  Yes.  Oh, and just one other thing,

14  going back to the tax issue.

15          THE COURT:  Yes, go ahead.

16          MR. KENNEDY:  They -- she stated that -- that they

17  received notice from the county on October 4th, stating that my

18  taxes were delinquent.  The county does not have records, and

19  they don't keep records as far as which properties have

20  mortgages that are not -- let alone who the servicer is, and

21  they do not send emails to mortgage companies telling them

22  that, you know, this property is delinquent on a property tax.

23  So for them to -- and I continually requested a copy of this

24  claimed email that they received on October 4.

25          Furthermore, October 4th is a Saturday, when the

1   government offices will be closed.  So that is the reason why

2   opposing counsel cannot find this supposed email because it

3   doesn't exist.

4           THE COURT:  Okay.

5           MR. KENNEDY:  So -- and -- and that leads into the

6   QWRs.  Each and every QWR that I sent, and there -- there are

7   five of them, not four; there was a fifth one that was sent in

8   October -- I think it was of 2009, that is included in my

9   response to the objection.  That was outside of the statute of

10  limitations to be included in my claim for damages, so I didn't

11  include it earlier.  But it does support the fact that there

12  were five QWRs in total, but of which GMAC did not respond to

13  sufficiently in accordance with RESPA requirements.

14          Now, given -- given the situation regarding the taxes,

15  in -- in each and every letter that I would send, I would state

16  that General Motors -- GMAC paid my taxes when taxes had

17  already been paid, and opened an escrow account wrongfully for

18  those charges.  And this goes to even before I learned two

19  years later about count -- you know, about the Civil Code 2954.

20  I -- I had -- and so anybody who is doing the research

21  investigating my QWR claims that -- that I believe my account

22  is wrong because General Motors paid -- GMAC paid my taxes when

23  they had already been paid and opened an escrow account.  That

24  should be a red flag to anybody that has to deal with these tax

25  situations because -- because 2954 affects every single

1  mortgage in California serviced by GMAC.

2           And so it's not like a narrow -- a narrow scope type

3  of regulation; it -- it's something that they need to know in

4  order to operate properly within the law.  And yet, there isn't

5  a single QWR response that ever is -- and even when I learned

6  of the law and then -- and asked them to address that

7  specifically, it's completely ignored.  And then it's like

8  the -- so it's never included in the investigations that they

9  do, and that's a requirement for GMAC to have fulfilled in

10 order to, you know, meet RESPA requirements.

11          In addition to that, I can go QWR by QWR of -- of they

12 say that they provided, for example, transaction histories.

13 Well, three -- three out of the four QWRs in 2012, they provide

14 transaction histories that don't cover the dates of -- of the

15 errors that I'm talking about.  Only one QWR provided proper

16 transaction histories for the complete time that I asked, and I

17 asked for the inception of the loan to present day.  And their

18 claim of -- also, I do have to go -- I want to make a note

19 about -- there's a claim that the deed of trust -- I don't

20 (indiscernible) around but the -- they claim the deed of trust

21 allows them to have paid my taxes.

22          Since payment of the taxes is not an issue with the

23 breach of contract, but the opening of an escrow account is,

24 the deed of trust does not -- it allows GMAC Mortgage to -- I'm

25 not going to say allows them to -- to pay the taxes, but it

1   does.  They're not -- it doesn't allow them to open an escrow

2   account; they -- they forgot to mention that part.  It -- it

3   allows them to add the amount that they've spent on my behalf

4   to my total outstanding mortgage whereby I'd be charged

5   interest according to the note as if it were -- were a lump sum

6   was my -- was my outstanding balance.  It says nothing about

7   allowing them to open an escrow account.  So that refutes that.

8           But --

9           THE COURT:  All right, could you address -- Mr.

10  Kennedy, could you address the Fair Debt Collection Practices

11  Act and Rosenthal Fair Debt Collection Practices Act?  The

12  issue there being the statute of limitations.

13          MR. KENNEDY:  Yes, let me get here.  One second.

14          Just one moment and I'll find it in my notes here.

15          THE COURT:  That's fine, go ahead.

16          MR. KENNEDY:  Thank you.

17          Let's see.  All right, there is -- let me

18  see -- there's a law page that quotes a -- a California law

19  provides -- has a continuing violation doctrine, which applies,

20  and what that does is it -- it -- the statute of limitation

21  starts from the last violation that was -- that occurred by

22  GMAC Mortgage, not from the first time when it happened.  And

23  so because GMAC kept sending me demand letters and kept

24  pursuing debt collection activities when, you know, they're not

25  allowed to, right through to the end when they turned the

1    account over to Ocwen in 2013; that's when the statute of

2    limitations would -- would start, and that's well within the

3    time frame of -- of when I filed.

4              THE COURT:  All right, and --

5              MR. KENNEDY:  And there's also a -- a federal law that

6    does the same -- that -- that does the same thing, let me just

7    find that.

8              There's a -- a case, Padilla v. Payco General American

9    Credits, and it says here, "without citing any legal authority,

10   Payco contends that the statute of limitations prohibits

11   Padilla from raising any facts or allegations because of the

12   one-year statute of limitations".  It says, "however, the

13   statute of limitations is not intended to deprive plaintiffs of

14   the use of evidence of violations that took place of more than

15   a year after the statute has" -- "the statute of limitations

16   has come into effect.  But rather than to protect defendants by

17   ensuring that the action is filed within one year of the most

18   recent date on which the defendant is alleged to have violated

19   the FCPDA."

20             THE COURT:  All right, Ms. Arett, could you respond,

21   please?

22             MR. KENNEDY:  And --

23             THE COURT:  That's fine, Mr. Kennedy.

24             MR. KENNEDY:  Okay.

25             THE COURT:  Let me hear from the trust counsel.

1          MS. ARETT:  So --

2          THE COURT:  We'll deal with the statute of limitations

3    on FDCPA (sic) and Rosenthal first.  Is Mr. Kennedy correct

4    that the statute runs from the last violation, and he alleges

5    the last violation is within the statute of limitations?

6          MS. ARETT:  Well, I would say here that the violation

7    that Mr. Kennedy alleges is the taxes, and so I don't know what

8    the continuing violation would be.

9          THE COURT:  What are you -- but you were

10   continuing -- not you, obviously -- GMAC was continuing to try

11   to collect from him assorted deficiencies and amounts shortages

12   that they were trying to collect; is that true or not?

13         MS. ARETT:  So are you -- I mean, the -- I don't know

14   exactly at what point Mr. Kennedy paid off the tax deficiency,

15   so I don't --

16         THE COURT:  Well, he says he didn't have a tax

17   deficiency.

18         MS. ARETT:  Well, right, but I'm saying if that was

19   the continuing violation, I don't know exactly when that --

20         THE COURT:  Um-hum.

21         MS. ARETT:  -- finalized, no, so --

22         THE COURT:  All right.  Deal with his RESPA demand.

23         MS. ARETT:  The RESPA --

24         THE COURT:  RESPA.

25         MS. ARETT:  Regarding the QWRs?

1            THE COURT:  Yes.

2            MS. ARETT:  I mean, I -- if you look at the responses,

3    I believe that GMAC Mortgage appropriately responded to every

4    single one of --

5            THE COURT:  All right.

6            MS. ARETT:  -- his QWRs.  I mean, it -- if you look

7    through, they provided -- so let's -- starting with the first

8    one, they provided him with the history of the period that he

9    is complaining of going back 2008 and 2009.  Prior to 2008, Mr.

10   Kennedy didn't have really any long -- I mean, he made his

11   payments.

12           Then in the February 2012, they provided him with,

13   again, account notes 2009 -- let me see what the

14   actual -- sorry.

15           So 2012 through -- actually, I don't know what the

16   final date there was.

17           THE COURT:  Well, Mr. Kennedy, how much in damages are

18   you seeking to recover?

19           MR. KENNEDY:  Well, because of the -- and I didn't

20   know about this when I filed the claim -- but because of the

21   RESPA violations, and actually, the -- the totaling, if you

22   will, or whatever, of the FCPDA and the Rosenthal is also

23   related to the fact that I never received a response to my

24   validation of that request.  What I did receive, and -- and

25   only figured it out recently, was a -- was a copy of a response

1    to a letter that I sent to GMAC's tax department.

2            GMAC has been able -- unable to present to me a

3    response to -- to that validation request.  And that, after

4    thirty days, prevents them from being able to pursue debt

5    activity at all.  So that's that matter.

6            But I'm sorry, what was your question; I apologize.

7            THE COURT:  How much in damages are you seeking to

8    recover?

9            MR. KENNEDY:  Oh, so I have emotional damages then

10   that I did not include because I didn't know that I -- that I

11   could, and so it -- the total is 94 -- I think, 94,000 dollars.

12           THE COURT:  How do you calculate the 94,000?

13           MR. KENNEDY:  Okay, let me get to my spreadsheet here.

14       (Pause)

15           MR. KENNEDY:  Okay.  I had to directly sell an IRA in

16   order to pay the amounts that they needed for the workout

17   program to prevent them from selling my house.  That was valued

18   at 31,684 dollars.  What I've asked for, for that is the -- is

19   the interest of -- let's see here -- 5,473 dollars for that,

20   which is calculated from the time that I had to cash in the IRA

21   until the time GMAC declared bankruptcy.  I had to pay taxes on

22   that IRA plus a penalty, totaling 7,695 dollars.  And then

23   there was an additional 1,100 dollars in interest.

24           Late fees are totaled 3,431 dollars, plus 800 dollars

25   in interest.  The buyer -- BPOs that totaled 4,500 dollars,

1   plus 1,100 dollars in interest.  Fees that I was charged of

2   4,100 dollars.

3           THE COURT:  What were the fees?

4           MR. KENNEDY:  Plus 1,500 dollars --

5           THE COURT:  What were the fees for?

6           MR. KENNEDY:  Well, that's what I wanted to know

7   because that also is requested in my QWRs and I never received

8   a response.  So I never had a breakdown of what the fees are

9   for.  And I --

10          THE COURT:  May I ask you --

11          MR. KENNEDY:  And I asked --

12          THE COURT:  Mr. Kennedy, what was --

13          MR. KENNEDY:  Yes.

14          THE COURT:  What were the payments for which -- that

15   you had to make for which you had to cash in your IRA?

16          MR. KENNEDY:  Well, the loan monthly payment was 1,700

17   dollars.  I had to make monthly payments of approximately 5,000

18   dollars a month for six months.

19          THE COURT:  Why?

20          MR. KENNEDY:  Because they -- because I was not paying

21   the escrow charges because I did not feel that they

22   were -- were proper, and continued just to pay my monthly

23   payment of interest and principal.  And they then pushed

24   my -- that caused my house to go into default and they actually

25   sent me a notice of sale.  And there were attorney's fees and

1  whatnot, so in order to recoup all of that I had to pay it all

2  off in -- in six months' time.  They also refused my first

3  payment, telling me later that it had to come by cashier's

4  check, and I was never aware of that.  And I asked them

5  in -- in the QWRs for copies of the signed agreement that says

6  that -- that shows that I was aware of that, and they -- they

7  never addressed that; they never provided that information.

8          So yeah, so all the sudden I had to come up with 4,000

9  dollars one month to make -- to save my house.  So I -- I had

10  to sell my IRA.

11          THE COURT:  Okay.  All right, I -- I'm going to

12  overrule the trust's objection to claim 4930 without prejudice.

13  The matter needs to be set down for trial.

14          Is there any discovery that you wish to take, Mr.

15  Kennedy?  Do you have the documents you believe you need to

16  prove your claim?

17          MR. KENNEDY:  Yes.

18          THE COURT:  Okay.

19          MR. KENNEDY:  I believe so.

20          THE COURT:  All right.

21          MR. KENNEDY:  Yes, I do.

22          THE COURT:  Ms. Arett, is there any discovery you wish

23  to take?

24          MS. ARETT:  At this time I can't think of anything,

25  but I'd like to reserve the rights of the bar interest.

1          THE COURT:  Well, I'm going to enter a case management

2    order --

3          MS. ARETT:  Okay.

4          THE COURT:  -- and that's why I'm asking whether there

5    is -- do you want to take his deposition; what is it that you

6    want to take?

7          MS. ARETT:  I think we would need --

8          THE COURT:  He's itemized --

9          MS. ARETT:  -- we need information regarding his --

10         THE COURT:  Stop, stop, stop.  He's described in

11   some -- with some specificity, the items that he's seeking to

12   recover in damages; do you have those documents?

13         MS. ARETT:  We have -- he provided them in his

14   response.

15         THE COURT:  Okay.

16         MS. ARETT:  I think we would need to take discovery

17   regarding the -- like, the IRA and other --

18         THE COURT:  Okay.

19         MS. ARETT:  -- like, because he alleges that his

20   credit was affected --

21         THE COURT:  All right, here --

22         MS. ARETT:  -- and so we would need discovery of

23   credit --

24         THE COURT:  -- is what I -- Ms. Arett, I would like

25   for you or your colleagues to prepare a case management and

1  scheduling order, providing sixty days for fact discovery.
2  This is not a matter that requires expert testimony, so it's
3  sixty days for fact discovery.

4       Talk to Mr. Kennedy and agree on a date for the next
5  case management and scheduling conference about two weeks
6  before -- you can get a date from Deanna for that, my courtroom
7  deputy.  Mr. Kennedy, you'll be able to appear by telephone.  A
8  case management and scheduling conference about two weeks
9  before the time for fact discovery runs out.

10       Mr. Kennedy, what you'll see -- there's the case
11 management scheduling order is a form that I use; it's on the
12 Court's website so you can see what it looks like, but Ms.
13 Arett will follow that form.  And it requires that usually face
14 to face, but you're in California, so you and the trust counsel
15 need to confer within fourteen days from the entry of the order
16 about settlement or alternate dispute resolution to try and
17 resolve the claim.  And you need to confer, again, you always
18 confer about settlement, but you absolutely need to confer
19 again, within fourteen days after the close of fact discovery.

20       When we have the next case management conference, if
21 the matter hasn't been resolved, I'll give a deadline for
22 submitting a joint pre-trial order.  That again, is a form, Mr.
23 Kennedy, that appears on the Court's website and Ms. Arett can
24 send you what the form looks like.  That has to be completed
25 entirely.

1          You can't -- if the matter goes to trial you have to

2    be here for it, I don't permit people to appear by telephone

3    during trial, so you would have to be here for the trial.

4          Where do you live, Mr. Kennedy?

5          MR. KENNEDY:  Palm Springs in Southern California.

6          THE COURT:  Okay.  So I have no problem about, for any

7    of these pre-trial hearings, for you to report by telephone as

8    you are today.  But if the matter goes to trial, you actually

9    have to be here and you have to be prepared to testify.

10         There are other documents that have to be filed before

11   trial, the exhibits and things like that, but I'm not going to

12   get into that today.  So what I urge both sides to do is to

13   confer whether settlement is possible.

14         But -- so submit the proposed order, Ms. Arett.  Make

15   sure you confer, in terms of the sixty days, that that's what

16   I'm telling you for fact discovery, and there's no time for

17   expert discovery.  In terms of scheduling the case management

18   conference, I don't know whether the trust has any omnibus days

19   that are set already about two weeks -- approximately two weeks

20   before the end of fact discovery.

21         During that -- and talk to Mr. Kennedy and make sure

22   he's available for that.  I guess it's early in the morning for

23   you, Mr. Kennedy, but is -- I usually start my calendar at 10

24   o'clock.  Are you able to do that?

25         MR. KENNEDY:  Yes, absolutely, Your Honor.

1          THE COURT:  Okay.  And we will see whether you can

2   settle this claim, Ms. Arett.

3          Some of the -- I'm not ruling on anything today, other

4   than that I'm overruling the trust's objection for the reasons

5   that I believe, are disputed issues of fact as to all the

6   claims.  Some of the items of damages that you've described to

7   me, I think you may have a really hard time recovering, Mr.

8   Kennedy, so I know -- and I'm not saying you won't and I'm not

9   saying you will, I'm just -- this isn't the time when you

10  really have to lay it out in detail, but I just -- as I

11  listened to you, you may have a hard time recovering the amount

12  that you're seeking.  So keep that in mind when you talk with

13  the trust counsel about settlement and, if necessary, we'll go

14  to trial.  It's -- that's where we are, okay.

15         Anything else you want to say, Mr. Kennedy?

16         MR. KENNEDY:  No, that's fine, thank you very much for

17  your --

18         THE COURT:  Okay.

19         MR. KENNEDY:  -- time, Your Honor.

20         THE COURT:  Ms. Arett, anything you want --

21         MS. ARETT:  No, Your Honor.

22         THE COURT:  Okay.  Is there anything else for me to

23  deal with today?

24         MS. ARETT:  No, that's it.

25         THE COURT:  Okay, so I am so ordering -- I don't need

RESIDENTIAL CAPITAL, LLC, ET AL.                    48

1    a written order on this -- I'm so ordering the transcript that

2    the objection is overruled without prejudice and the matter

3    will go forward in the manner that I've described, and so

4    confer with Mr. Kennedy and see whether you can work with the

5    schedule, okay?

6            MS. ARETT:  Sounds good.

7            THE COURT:  All right, thanks very much.  All right,

8    we're adjourned.

9        (Whereupon these proceedings were concluded at 11:25 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I N D E X

| RULINGS: | PAGE | LINE |
|---|---|---|
| Omnibus Objection to Claims (No Liability | 11 | 21 |
| Claims) sustained as it relates to the Bank | | |
| of America Claim barring a response to the | | |
| motion by 3/30/17 at 5 p.m. | | |
| Motion to close ETS case conditionally | 18 | 17 |
| granted | | |
| Objection to claims 1524 and 4921 is | 22 | 5 |
| sustained and claims are reduced | | |
| Claim 3848 allowed | 22 | 12 |
| Trust's objection to claim 4930 overruled | 43 | 11 |
| without prejudice | | |

1

2                        C E R T I F I C A T I O N

3

4    I, Dena Page, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9    _____

10   DENA PAGE

11   AAERT Certified Electronic Transcriber CET**D 629

12

13   eScribers

14   352 Seventh Ave., Suite #607

15   New York, NY 10001

16

17   Date:  March 24, 2017

18

19

20

21

22

23

24

25

## #

**#10296 (1)**
2:13
**#10310 (1)**
2:2
**#10311 (1)**
2:8
**#604 (1)**
2:22

## $

**$2,939.80 (1)**
27:16

## A

**ability (1)**
15:24
**able (8)**
5:16;6:13;27:9;
31:21;41:2,4;45:7;
46:24
**absolutely (2)**
45:18;46:25
**accept (3)**
15:11,13;19:6
**access (1)**
16:23
**accordance (1)**
35:13
**according (1)**
37:5
**account (23)**
27:19;28:1,5,6,13,
16;30:6;31:9,17,21;
32:21;33:2,6,11,25;
35:17,21,23;36:23;
37:2,7;38:1;40:13
**accounts (1)**
33:4
**accuracy (1)**
20:19
**acknowledge (1)**
29:16
**acknowledges (1)**
27:11
**Act (5)**
30:16;31:2;34:12;
37:11,11
**acted (1)**
23:7
**action (1)**
38:17
**activities (1)**
37:24
**activity (1)**
41:5
**actual (2)**
30:4;40:14
**actually (5)**

**21:3;40:15,21;
42:24;46:8**
**add (1)**
37:3
**addition (2)**
13:8;36:11
**additional (2)**
13:13;41:23
**address (12)**
5:24;7:3;26:17,19;
27:17;30:15;32:25;
34:9,11;36:6;37:9,10
**addressed (4)**
10:8;23:14;30:3;
43:7
**addresses (2)**
8:15;17:22
**adequately (1)**
18:20
**adjacent (2)**
5:24;7:3
**adjourned (3)**
2:6;4:21;48:8
**adjusted (2)**
33:19,22
**administered (1)**
13:3
**administrative (1)**
13:14
**advanced (1)**
27:14
**advise (1)**
18:18
**advised (1)**
32:3
**affect (1)**
15:23
**affected (1)**
44:20
**affects (2)**
15:17;35:25
**affidavit (2)**
6:11;7:7
**affiliates (1)**
4:20
**again (5)**
33:2;40:13;45:17,
19,22
**against (5)**
13:9;17:18;20:17;
22:9;33:2
**agenda (3)**
4:8;12:21;19:19
**agree (3)**
24:2;26:23;45:4
**agreement (1)**
14:25;16:13;43:5
**ahead (6)**
4:16;5:9;31:5;
33:1;34:15;37:15
**ALLARD (46)**
4:6,7,16,17;5:1,4,
10,21;6:7,9,19,22;

**7:16,24;8:8,19,23;
9:14,18;10:22,25;
11:2,10,14;12:7,19,
20,21;13:16,19,23;
14:3,5,14,22;15:25;
16:13;17:12,19,23;
18:11,16,22;19:10,
12,13**
**allegation (3)**
8:13;10:7;23:11
**allegations (2)**
20:20;23:6;38:11
**alleged (3)**
5:12;22:24;38:18
**alleges (3)**
39:4,7;44:19
**Allow (7)**
2:15,15;19:21,22;
20:24;21:25;37:1
**allowed (4)**
13:6;22:9,12;
37:25
**allowing (1)**
37:7
**allows (4)**
36:21,24,25;37:3
**alone (1)**
34:20
**alternate (1)**
45:16
**although (1)**
13:8
**always (1)**
45:17
**America (12)**
2:5;4:24;5:12;
6:13;10:12,17;11:17,
19,20,21;12:1,2
**American (1)**
38:8
**America's (1)**
6:3
**amount (19)**
7:19;8:7,23,24;
9:2,8,14,17,17;10:3;
22:1,9;25:3;27:14;
29:9;33:17;34:5;
37:3;47:11
**amounts (2)**
39:11;41:16
**analysis (2)**
33:23;34:4
**and/or (1)**
9:22
**anymore (3)**
7:6;10:19;27:9
**apologize (3)**
24:6;41:6
**appear (3)**
10:2;45:7;46:2
**appearance (1)**
9:12
**appeared (1)**

**11:19**
**appears (3)**
10:5;12:9;45:23
**applicable (1)**
23:8
**applied (2)**
24:25;32:13
**applies (1)**
37:19
**appreciate (2)**
10:10;16:10
**approach (1)**
5:5
**appropriately (1)**
40:3
**approval (1)**
13:11
**approved (1)**
17:16
**approximately (2)**
42:17;46:19
**Arett (84)**
19:14,15,17,17;
20:7,10,14;21:3,6,9,
11,13,17,21,24;22:4,
6,8,11,13,18,20,23;
23:14,25;24:4,19,25;
25:5,9,14,19,24;
26:2,7,12,20,24;
27:2,8,15,20,23;
28:12,16,21,25;29:2,
5,13,15,18,20;30:13,
17;31:3;38:20;39:1,
6,13,18,21,23,25;
40:2,6;43:22,24;
44:3,7,9,13,16,19,22,
24;45:13,23;46:14;
47:2,20,21,24;48:6
**argue (1)**
7:24
**argued (1)**
5:22
**argument (2)**
7:2;32:23
**arise (1)**
15:9
**around (1)**
36:20
**asserted (1)**
22:1
**asserts (3)**
9:2;22:25;23:3
**assorted (1)**
39:11
**assume (3)**
10:19;14:19;18:14
**attached (2)**
5:2;10:6
**attaches (2)**
9:5,6
**attorney (3)**
11:3,5;18:1
**attorney's (1)**

**42:25**
**August (3)**
29:25;30:1;33:16
**authority (1)**
38:9
**automatically (3)**
33:18,19,22
**available (2)**
32:15;46:22
**Avenue (1)**
2:22
**aware (4)**
13:2;16:5;43:4,6
**away (1)**
28:16

## B

**back (8)**
6:14;7:9;8:10;
30:18;32:18;33:19;
34:14;40:9
**background (3)**
4:17;5:11;13:1
**bad (2)**
16:8;18:7
**balance (1)**
37:6
**Bank (14)**
2:4;4:20,24;5:11;
6:3,13;10:11,17;
11:17,19,20,21;12:1,
2
**bankruptcy (2)**
30:19;41:21
**bar (1)**
43:25
**based (1)**
22:24
**basically (1)**
10:15
**basis (4)**
6:3;10:2;26:6,14
**behalf (4)**
2:10;11:19;19:18;
37:3
**beyond (1)**
7:4
**big (1)**
18:3
**bill (5)**
23:10,24;24:3,8;
32:2
**blue (1)**
9:7
**BofA (1)**
12:15
**books (3)**
20:19,20;23:5
**borrowed (2)**
9:4,8
**Borrower (25)**
2:13,14,15,16;

13:20,21,24;14:4,9,
25;16:1;19:18,20,21,
21,22;20:17,18,22,
24;21:25;22:14;
23:5;24:7;31:11
**borrower's (8)**
15:4,10,13,22;
16:4,24;18:24;23:22
**both (3)**
30:20;31:3;46:12
**BPOs (1)**
41:25
**breach (7)**
26:17,19;32:25;
33:9,13;34:7;36:23
**breached (2)**
33:5,6
**breakdown (1)**
42:8
**briefly (1)**
20:13
**burden (1)**
7:16
**business (1)**
23:20
**buyer (1)**
41:25

**C**

**calculate (1)**
41:12
**calculated (1)**
41:20
**calendar (1)**
46:23
**California (10)**
23:12;27:17;31:7,
10;32:24;33:3;36:1;
37:18;45:14;46:5
**call (1)**
32:8
**called (4)**
9:21;32:12,16;
33:10
**calls (1)**
7:8
**came (1)**
11:17
**can (13)**
7:12,14;9:9;10:21;
12:24;25:21;31:12;
36:11;45:6,12,23;
47:1;48:4
**cancelled (1)**
33:21
**Capital (1)**
4:4
**Case (36)**
2:9;12:23;13:12,
12,13,18;14:12,16,
17,20;15:12,16,23,
24;16:6,15;17:12,15,

17,21,25;18:3,6,7,9,
20;30:19;31:22;
38:8;44:1,25;45:5,8,
10,20;46:17
**cases (4)**
13:2,3,10,12
**cash (2)**
41:20;42:15
**cashier's (1)**
43:3
**categories (2)**
20:12,13
**category (2)**
21:23,24
**cause (1)**
11:16
**caused (1)**
42:24
**CC (2)**
2:8,13
**certain (1)**
14:6
**certainty (1)**
19:3
**certificate (1)**
12:1
**chance (3)**
5:7;24:13,16
**change (1)**
15:2
**Chapter (3)**
2:9;12:23;13:2
**charge (1)**
34:1
**charged (4)**
33:7,25;37:4;42:1
**charges (5)**
33:7,13;34:7;
35:18;42:21
**check (1)**
43:4
**chief (1)**
4:13
**circumstance (1)**
12:14
**citing (1)**
38:9
**Civil (7)**
23:12;27:18;
30:16;31:7;32:24;
33:3;35:19
**Claim (81)**
2:5,16;4:23,23,25;
5:12,14,16,17,20;
6:3,14;7:6,15,18,21,
23;8:5,6,22,23;9:2,3,
5,17,24,25;10:1,4,13,
15,17,24;11:2,3,17,
23;12:8,9,10,11,16;
13:15,21,23;15:4,8,
9,11,13,18;16:4;
17:15,18;18:8,9;
19:22;20:9,16;21:1,

7;22:9,12,17,24;
26:18,19;29:14;
30:16;31:6;32:25;
34:11;35:10;36:18,
19,20;40:20;43:12,
16;45:17;47:2
**claimant (2)**
7:17,24
**claimants (1)**
20:22
**claimed (1)**
34:24
**Claims (37)**
2:3,3,6,13,14,14,
15;4:10,19,19,22;
6:23;7:22;13:6,9,20,
22,24;14:4,25;15:17,
22;16:1;19:18,20,21,
21;20:16,18,20,22,
24;21:22,25;22:7;
35:21;47:6
**clear (2)**
6:25;24:5
**clerical (1)**
5:23
**CLERK (1)**
4:2
**close (7)**
13:11,18;15:16;
17:12,15;18:19;
45:19
**closed (10)**
14:13,16,19,21;
15:13;16:15;18:3,6,
7;35:1
**closest (1)**
31:12
**Closing (6)**
2:9;12:23;15:23;
16:6;17:17,20
**clue (1)**
6:2
**Code (7)**
23:12;27:18;
30:16;31:8;32:24;
33:3;35:19
**colleagues (1)**
44:25
**collect (2)**
39:11,12
**Collection (4)**
30:16;37:10,11,24
**coming (1)**
14:17
**companies (1)**
34:21
**company (1)**
27:25
**competent (2)**
7:20;8:21
**complaining (1)**
40:9
**complete (1)**

36:16
**completed (1)**
45:24
**completely (3)**
31:7;33:20;36:7
**compliance (1)**
23:7
**concedes (2)**
23:9,23
**concern (2)**
10:13;16:6
**concluded (1)**
48:9
**conditionally (1)**
18:19
**conducted (1)**
13:19
**confer (8)**
18:12;45:15,17,18,
18;46:13,15;48:4
**conference (4)**
45:5,8,20;46:18
**confirm (1)**
27:15
**confirmed (1)**
13:4
**confirming (1)**
26:2
**consecutive (1)**
31:15
**consequences (2)**
19:7;25:17
**considered (1)**
33:23
**consisted (1)**
13:3
**consolidated (1)**
13:5
**constrained (1)**
5:17
**contact (3)**
5:11,13;7:5
**contacting (1)**
11:4
**contends (1)**
38:10
**contest (1)**
12:3
**contesting (1)**
11:22
**continually (1)**
34:23
**continued (1)**
42:22
**continuing (5)**
37:19;39:8,10,10,
19
**continuously (1)**
32:6
**contract (7)**
26:17,19;32:25;
33:9,13;34:8;36:23
**cooperate (2)**

16:16,18
**cooperation (2)**
14:25;16:13
**coordinate (5)**
16:12,22;17:4,6,10
**copies (2)**
30:9;43:5
**copy (5)**
4:25;11:25;27:20;
34:23;40:25
**correcting (1)**
25:24
**counsel (7)**
5:11;11:25,25;
35:2;38:25;45:14;
47:13
**count (1)**
35:19
**County (16)**
23:18;24:20,22,
25;25:13,20;26:2,5,
14;27:3,6,13;29:5,
10;34:17,18
**course (1)**
32:13
**COURT (159)**
4:3,16,25;5:2,6,9,
19;6:1,8,10,20;7:10,
18;8:3,9,20;9:1,13,
15,19;10:23;11:1,8,
11,16;12:8,10,20;
13:15,17,21;14:2,4,
11,15;15:3;16:2,8,
15,20;17:7,11,20,24;
18:12,17,18,23;19:5,
11,13,16;20:1,3,5,8,
11,25;21:5,8,10,12,
15,18,22;22:3,5,7,10,
12,17,19,22;23:9,22;
24:1,9,11,13,16,23;
25:3,7,12,15,23;
26:1,4,11,17,23;
27:1,5,10,17,22;
28:8,15,18,24;29:1,
3,12,14,16,19;30:12,
15;31:1,4,24;32:1,
23;34:9,11,15;35:4;
37:9,15;38:4,20,23,
25;39:2,9,16,20,22,
24;40:1,5,17;41:7,
12;42:3,5,10,12,14,
19;43:11,18,20,22;
44:1,4,8,10,15,18,21,
24;46:6;47:1,18,20,
22,25;48:7
**COURTCALL (2)**
9:11,12
**courtroom (1)**
45:6
**Court's (2)**
45:12,23
**cover (1)**
36:14

**created (1)**
28:12
**credit (2)**
44:20,23
**Credits (1)**
38:9
**current (1)**
11:12
**currently (1)**
13:23

**D**

**damage (1)**
8:24
**damaged (1)**
7:25
**damages (7)**
32:20;35:10;
40:17;41:7,9;44:12;
47:6
**date (8)**
13:2;14:6;28:23;
34:6;38:18;40:16;
45:4,6
**dates (1)**
36:14
**day (1)**
36:17
**days (7)**
41:4;45:1,3,15,19;
46:15,18
**deadline (1)**
45:21
**deal (8)**
18:3;20:9;21:15;
29:14;35:24;39:2,
22;47:23
**deals (1)**
18:20
**Deanna (1)**
45:6
**Debt (5)**
30:16;37:10,11,
24;41:4
**debtor (3)**
13:5,9,12
**debtors (6)**
13:4,4,6,7,7;20:17
**debtors' (2)**
20:18;22:2
**December (8)**
25:1,6;29:7,20;
30:23,25;32:13,14
**declaration (3)**
4:13;6:11;26:10
**declared (1)**
41:21
**Decree (2)**
2:9;12:22
**deed (11)**
9:5;10:6;23:7;
26:20,24;30:9;33:3,

6;36:19,20,24
**default (1)**
42:24
**defendant (1)**
38:18
**defendants (1)**
38:16
**deficiencies (1)**
39:11
**deficiency (2)**
39:14,17
**delinquency (1)**
27:4
**delinquent (11)**
23:19;26:13,21;
27:1,2;31:14,15,20,
23;34:18,22
**demand (1)**
37:23;39:22
**demonstrate (1)**
23:6
**demonstrates (1)**
27:24
**Dena (1)**
2:20
**department (1)**
41:1
**departments (1)**
30:8
**deposition (1)**
44:5
**depositor (1)**
16:21
**deprive (1)**
38:13
**deputy (1)**
45:7
**describe (1)**
20:13
**described (3)**
44:10;47:6;48:3
**destroyed (1)**
17:16
**detail (1)**
47:10
**determine (1)**
12:11
**determined (3)**
20:20,22;22:8
**different (4)**
7:3;13:10;17:3;
28:4
**difficulty (1)**
10:10
**directly (1)**
41:15
**disallow (1)**
21:1
**discovery (12)**
14:18;43:14,22;
44:16,22;45:1,3,9,
19;46:16,17,20
**discussions (2)**

4:21;6:13
**dispersed (1)**
26:14
**dispute (2)**
15:15;45:16
**disputed (5)**
23:10;24:2,4,6;
47:5
**distinction (2)**
28:4,7
**distribution (1)**
15:21
**distributions (3)**
13:5,19;14:7
**district (1)**
18:1
**divert (1)**
33:10
**diverted (2)**
33:12,25
**Doc (3)**
2:2,8,13
**docket (4)**
12:2;19:22;22:16,
21
**doctrine (1)**
37:19
**document (3)**
16:5,12,24
**documents (15)**
14:15,20;15:2,5,9,
11,15;16:21,23;17:5,
8;30:10;43:15;
44:12;46:10
**dollars (17)**
9:3,16;14:2;41:11,
18,19,22,23,24,24,
25;42:1,2,4,17,18;
43:9
**done (3)**
28:20;31:16;32:19
**down (1)**
43:13
**draft (2)**
18:13,17
**due (3)**
20:21;22:14;25:10
**during (3)**
22:24;46:3,21
**duty (1)**
18:2

**E**

**earlier (3)**
22:14;23:14;35:11
**early (1)**
46:22
**ECF (3)**
4:10;7:7;12:24
**effect (2)**
8:25;38:16
**effort (1)**

20:19
**e-file (1)**
26:13
**either (2)**
6:23;9:15
**electronic (2)**
17:2;18:5
**electronics (1)**
17:2
**element (5)**
7:21,22;8:4,22;
10:14
**else (5)**
7:12,14;10:21;
47:15,22
**email (2)**
34:24;35:2
**emails (2)**
7:9;34:21
**emotional (1)**
41:9
**end (3)**
28:2;37:25;46:20
**ended (1)**
14:7
**enough (2)**
12:17;17:11
**ensuring (1)**
38:17
**enter (2)**
12:5;44:1
**entirely (1)**
45:25
**entitled (5)**
8:6;12:12;13:10,
25;14:8
**entry (2)**
26:12;45:15
**error (2)**
28:9,10
**errors (3)**
22:24;30:22;36:15
**eScribers (1)**
2:21
**escrow (27)**
27:18,18;28:1,5,
10,16;29:3,9;31:9,
17,21;33:2,4,6,7,13,
14,16,23;34:1,3;
35:17,23;36:23;37:1,
7;42:21
**essential (1)**
10:14
**establish (1)**
10:2
**established (1)**
28:10
**establishing (2)**
27:18;31:16
**estate (2)**
14:10;34:12
**estates (2)**
14:23;22:2

**ETS (11)**
13:13,14,18;14:10,
12;15:4,12;16:6;
17:14,18;18:19
**ETS's (3)**
14:15,20;17:16
**even (5)**
23:15;30:18,21;
35:18;36:5
**Everybody (1)**
19:9
**evidence (13)**
7:19,20,21;8:3,7,
21,24;12:12;23:18;
24:7;26:4,15;38:14
**exact (2)**
26:8;28:23
**exactly (2)**
25:10;39:14,19
**examine (2)**
9:25;12:11
**examined (1)**
20:18
**example (1)**
36:12
**exception (2)**
31:12,13
**exceptions (1)**
31:11
**excuse (1)**
21:19
**Executive (3)**
2:9;12:23;13:9
**Exhibit (3)**
20:23;21:25;26:10
**exhibits (1)**
46:11
**exist (2)**
15:5;35:3
**existence (1)**
14:24
**expert (2)**
45:2;46:17
**expired (1)**
30:24
**explain (3)**
9:19;12:6;30:5
**explaining (1)**
12:16
**expunge (1)**
20:15
**expunged (2)**
11:24;21:22
**extent (1)**
7:25
**extremely (1)**
30:21

**F**

**face (4)**
10:5;12:9;45:13,
14

**facie (5)**
  7:19;8:7;10:2,2;
  12:12
**fact (20)**
  8:15;23:10,23;
  24:2,5,6;25:12,16;
  28:20;31:9;33:15;
  35:11;40:23;45:1,3,
  9,19;46:16,20;47:5
**facts (5)**
  5:21;6:4;7:4;
  12:17;38:11
**fair (7)**
  12:7;14:13,14;
  30:16;31:24;37:10,
  11
**fall (1)**
  11:12
**falls (1)**
  31:11
**far (4)**
  8:8;31:16;34:6,19
**FCPDA (2)**
  38:19;40:22
**FDCPA (2)**
  30:15;39:3
**February (5)**
  4:10;12:24;19:23;
  29:23;40:12
**federal (1)**
  38:5
**feel (1)**
  42:21
**fees (6)**
  41:24;42:1,3,5,8,
  25
**fifth (1)**
  35:7
**fifty (1)**
  14:2
**fifty-one (3)**
  13:3,4,11
**figured (1)**
  40:25
**file (2)**
  12:1;18:8
**filed (20)**
  2:10;4:10,20,23;
  8:23;9:20,22;11:2,
  19;12:10,24;15:7;
  19:22;22:9,20;23:9;
  38:3,17;40:20;46:10
**files (1)**
  11:21
**filing (1)**
  30:19
**Final (3)**
  2:9;12:22;40:16
**finalized (1)**
  39:21
**Finally (2)**
  32:11,11
**financial (1)**

**4:14**
**find (7)**
  12:14;15:8;17:14;
  26:8;35:2;37:14;
  38:7
**fine (4)**
  24:18;37:15;
  38:23;47:16
**finish (1)**
  6:8
**first (10)**
  4:8;8:4,5;30:17,
  23;31:6;37:22;39:3;
  40:7;43:2
**five (2)**
  35:7,12
**flag (1)**
  35:24
**Foerster (2)**
  16:3;19:17
**follow (3)**
  24:20;33:4;45:13
**followed (1)**
  34:6
**following (3)**
  32:12,14;34:2
**follows (1)**
  26:13
**forgot (1)**
  37:2
**form (4)**
  45:11,13,22,24
**forth (5)**
  7:9,17,23;8:6,17
**forty-seven (1)**
  13:11
**forward (8)**
  2:5;4:23;7:20,22;
  8:21;23:20;29:11;
  48:3
**found (2)**
  12:24;24:23
**four (5)**
  20:15;21:1;29:15;
  35:7;36:13
**fourteen (2)**
  45:15,19
**fourth (2)**
  21:13;29:25
**frame (1)**
  38:3
**Francisco (3)**
  23:18;24:20;26:14
**Frankel (1)**
  4:7
**fulfilled (1)**
  36:9
**Full (3)**
  2:15;19:22;33:17
**funds (7)**
  13:25;14:9;29:7;
  33:12,20,24,25
**Furthermore (1)**

**34:25**

**G**

**gap (1)**
  28:18
**gave (2)**
  5:24;27:7
**General (3)**
  35:16,22;38:8
**generous (1)**
  30:21
**gets (1)**
  10:6
**given (2)**
  35:14,14
**giving (1)**
  7:13
**GMAC (66)**
  5:19;6:15,17;8:12,
  13,15;10:6,7,8;13:6,
  8;22:24,25;23:3,6,
  15;24:19,23;25:1,7,
  15,18,21,21;26:5,6,7,
  15,21;27:3,7,14;
  28:4,8,14,19,21;
  29:3,6,7,8,21,22,24,
  25;30:2,5,8;31:8,16;
  32:3,6,9;33:16;
  35:12,16,22;36:1,9,
  24;37:22,23;39:10;
  40:3;41:2,21
**GMAC's (1)**
  41:1
**goes (4)**
  17:15;35:18;46:1,
  8
**Good (5)**
  4:6;17:11;19:15,
  16;48:6
**government (1)**
  35:1
**grant (1)**
  18:19
**Great (1)**
  22:13
**greater (1)**
  22:1
**Green (1)**
  11:5
**grounds (1)**
  11:22
**group (1)**
  13:9
**grouped (1)**
  20:12
**groups (1)**
  13:5
**guess (2)**
  20:11;46:22

**H**

**handed (1)**
  10:5
**handled (1)**
  13:18
**happened (7)**
  6:15;7:15;12:6,17;
  25:3;29:3;37:22
**happening (1)**
  14:20
**happens (1)**
  14:15
**happy (6)**
  17:6,23;18:2,7,11;
  22:21
**hard (2)**
  47:7,11
**hazard (1)**
  26:22
**hear (1)**
  38:25
**Hearing (6)**
  2:2,3,5;11:18,20;
  12:4
**hearings (1)**
  46:7
**hearsay (1)**
  10:18
**help (1)**
  9:9
**high (1)**
  14:22
**histories (3)**
  36:12,14,16
**history (1)**
  40:8
**hold (1)**
  5:15
**Honor (14)**
  4:6;9:11;12:19;
  16:4,10;18:22;
  19:15;20:4;21:21;
  27:9;29:18;46:25;
  47:19,21
**Honor's (1)**
  16:6
**hope (1)**
  7:13
**Horner (5)**
  4:13,14;9:9,10,12
**house (3)**
  41:17;42:24;43:9

**I**

**idea (1)**
  11:8
**identical (1)**
  4:19
**ignored (2)**
  10:15;36:7
**II (1)**
  2:15
**III (1)**

**2:15**
**imaged (1)**
  17:2
**images (1)**
  17:3
**immediately (1)**
  32:16
**impair (1)**
  15:24
**impairs (1)**
  15:17
**improper (4)**
  5:12,22;6:3;8:1
**improperly (3)**
  8:13;10:7,9
**inadequate (1)**
  23:4
**inadvertently (1)**
  8:14
**inception (1)**
  36:17
**include (3)**
  5:17;35:11;41:10
**included (3)**
  35:8,10;36:8
**incorrect (1)**
  24:22
**indicates (1)**
  7:7
**indicating (1)**
  11:16
**indiscernible (1)**
  36:20
**information (5)**
  6:24;7:17;28:10;
  43:7;44:9
**informative (2)**
  6:12,23
**informed (5)**
  5:15;7:5;26:5;
  27:4;32:6
**initial (1)**
  26:14
**instead (1)**
  7:1
**insufficient (2)**
  33:11,24
**insurance (6)**
  23:1,16;26:22;
  33:15,17,20
**intended (1)**
  38:13
**interest (11)**
  5:15;33:10,19,24;
  37:5;41:19,23,25;
  42:1,23;43:25
**interested (1)**
  7:6
**interject (1)**
  24:12
**into (8)**
  13:5;28:1,13;
  31:11;35:5;38:16;

42:24;46:12
**investigating (1)**
35:21
**investigations (1)**
36:8
**involves (1)**
33:15
**IRA (6)**
41:15,20,22;
42:15;43:10;44:17
**irrelevant (1)**
31:19
**issue (18)**
8:15;15:9,12;16:5;
17:25;23:10,23;24:2,
4,6;25:19;27:17;
31:7;32:2;33:14;
34:14;36:22;37:12
**issues (3)**
16:23;30:3;47:5
**itemized (1)**
44:8
**items (2)**
44:11;47:6

**J**

**January (2)**
29:21,22
**Jessica (1)**
19:17
**Jill (1)**
4:13
**joint (1)**
45:22
**jointly (1)**
13:3
**Joseph (1)**
2:10
**Judge (1)**
17:16
**July (4)**
25:9,11;26:14;
27:3
**June (1)**
29:24

**K**

**keep (2)**
34:19;47:12
**Kennedy (80)**
19:25;20:1,2,3,4,9;
22:15,25;23:2;24:2,
7,10,12,13,14,15,18,
24;25:20;26:5;27:4,
11;28:9,13,20,22;
29:4;30:3,17;31:5,6,
25;32:1,5;33:1;
34:10,13,16;35:5;
37:10,13,16;38:5,22,
23,24;39:3,7,14;
40:10,17,19;41:9,13,

15;42:4,6,11,12,13,
16,20;43:15,17,19,
21;45:4,7,10,23;
46:4,5,21,23,25;
47:8,15,16,19;48:4
**Kennedy's (9)**
21:7,10,14,16;
22:23;28:6;29:7,11;
30:6
**kept (2)**
37:23,23
**knowledge (1)**
6:4
**Kramer (1)**
4:7

**L**

**last (3)**
37:21;39:4,5
**Late (1)**
41:24
**later (5)**
23:18;24:19;
33:25;35:19;43:3
**law (8)**
23:8;31:19;33:8;
36:4,6;37:18,18;38:5
**lawyer (2)**
11:1;12:15
**lay (1)**
47:10
**lead (1)**
13:12
**leads (1)**
35:5
**learn (1)**
25:8
**learned (6)**
24:20;28:19,22;
29:4;35:18;36:5
**least (4)**
5:3;7:21;8:21;
10:14
**left (3)**
13:12;21:6;31:23
**legal (3)**
23:24;25:17;38:9
**lender (1)**
23:1
**letter (3)**
10:24;35:15;41:1
**letters (1)**
37:23
**level (1)**
14:22
**Levin (1)**
4:7
**Liability (5)**
2:3,14;19:21;
20:17,21
**liable (1)**
22:2

**lien (13)**
5:13,20,22;6:4,5,
16,20;7:1,2;8:1,14,
16,16
**limitation (1)**
37:20
**limitations (12)**
30:21,24;31:1;
35:10;37:12;38:2,10,
12,13,15;39:2,5
**limited (1)**
6:23
**line (1)**
19:25;20:1
**liquidated (1)**
19:4
**Liquidating (13)**
2:2,8,11;4:8,9,13,
18;12:22;13:20;
14:23;15:1;16:18;
17:1
**listed (2)**
9:14,16
**listened (1)**
47:11
**litigated (1)**
13:24
**little (1)**
13:1
**live (1)**
46:4
**LLC (4)**
2:10,21;5:19;
12:23
**loan (10)**
6:17;8:12;10:6,18;
11:8,11,13;22:25;
36:17;42:16
**local (1)**
33:4
**locate (1)**
27:9
**long (2)**
15:2;40:10
**longer (2)**
5:15;11:3
**look (8)**
5:7;8:10;10:16;
15:6;17:12;30:4;
40:2,6
**looking (1)**
10:4
**looks (2)**
45:12,24
**lump (1)**
37:5

**M**

**mailed (1)**
30:23
**makes (1)**
28:4

**management (7)**
44:1,25;45:5,8,11,
20;46:17
**manner (1)**
48:3
**many (2)**
7:4,8
**March (4)**
11:18,23;22:14,20
**matter (13)**
4:8;11:5;12:21;
16:25;17:1;19:19;
41:5;43:13;45:2,21;
46:1,8;48:2
**Matthew (1)**
11:5
**May (12)**
5:5;13:1;15:11;
18:23;24:12;28:23;
29:23;32:1,11;
42:10;47:7,11
**maybe (2)**
14:19,19
**mean (9)**
7:16;10:15;25:12,
21;27:2;39:13;40:2,
6,10
**means (2)**
15:3;30:24
**meet (1)**
36:10
**mention (1)**
37:2
**met (1)**
7:17
**million (3)**
14:2,5,8
**mind (1)**
47:12
**minute (1)**
20:9
**miss (2)**
31:14;32:4
**misstated (1)**
31:7
**mistake (3)**
5:23;25:13,15
**mistakenly (2)**
6:5;27:13
**misunderstanding (1)**
5:25
**modify (1)**
17:13
**moment (1)**
37:14
**money (2)**
29:11;32:8
**month (4)**
28:1;34:2;42:18;
43:9
**monthly (4)**
28:3;42:16,17,22
**months (2)**

28:2;42:18
**months' (1)**
43:2
**more (1)**
38:14
**morning (4)**
4:6;19:15,16;
46:22
**Morris (6)**
11:1,1,3,3,6,6
**Morrison (2)**
16:3;19:17
**Mortgage (25)**
5:19;8:12;13:6;
22:24;23:1,15;
24:19;25:1;26:7,15,
21;27:3;28:4,14;
29:6,8;30:2,5,8;
34:21;36:1,24;37:4,
22;40:3
**mortgagee (2)**
8:17;10:19
**mortgages (1)**
34:20
**Mortgage's (2)**
23:3;29:7
**Moss (15)**
13:15,17;14:12,
12;15:6,7,8,9,14,17,
18,21;16:25;17:15;
18:8
**most (1)**
38:17
**mostly (1)**
13:14
**Motion (6)**
2:8;11:21;12:22;
15:15,20;18:19
**Motors (2)**
35:16,22
**move (1)**
13:13
**moved (1)**
13:11
**moving (2)**
5:2;8:15
**much (9)**
9:3,4,6;27:10;
28:18;40:17;41:7;
47:16;48:7
**must (1)**
31:14
**mute (1)**
7:11
**myself (2)**
12:14;15:8

**N**

**Naftalis (1)**
4:7
**named (1)**
11:5

12-12020-mg    Doc 10346    Filed 03/29/17    Entered 03/29/17 11:24:36    Main Document

RESIDENTIAL CAPITAL, LLC, et al.
Pg 56 of 60

Case No. 12-12020-mg                                                      March 23, 2017

**narrow (2)**
36:2,2
**Nathaniel (1)**
4:6
**nature (1)**
5:25
**necessary (2)**
10:14;47:13
**need (18)**
15:10,23;16:25;
17:3,12;27:15;32:8,
17;36:3;43:15;44:7,
9,16,22;45:15,17,18;
47:25
**needed (2)**
30:7;41:16
**needs (1)**
43:13
**New (1)**
2:23
**next (7)**
12:21;19:19;
21:23,24;32:4;45:4,
20
**Ninety-Fifth (2)**
2:13;20:15
**ninety-fifty (1)**
19:20
**Ninety-Sixth (2)**
2:2;4:9
**none (2)**
8:17;31:23
**Norm (1)**
16:3
**note (6)**
9:3,6,6;30:10;
36:18;37:5
**notes (10)**
26:8,8,9;27:6,12;
28:7;30:9;32:3;
37:14;40:13
**notice (5)**
27:3,7;28:8;34:17;
42:25
**notified (1)**
32:17
**November (2)**
33:18,22
**number (9)**
4:10,23;11:17;
12:25;19:19,23;
22:16,21;30:7
**NY (1)**
2:23

**O**

**objected (1)**
4:18
**Objection (37)**
2:3,4,14;4:9,12,18,
22;5:18,18;6:2,12;
7:8;9:20,22,23,25;

11:17,18,22,23;12:3,
10;15:7;19:20;
20:15,23;21:4,20;
22:5,13,15;23:13,15;
35:9;43:12;47:4;
48:2
**objections (1)**
20:12
**objector (1)**
7:20
**obligated (2)**
16:17,18
**obviously (1)**
39:10
**occurred (1)**
37:21
**occurring (1)**
32:21
**o'clock (1)**
46:24
**October (8)**
26:12;28:21,24;
33:21;34:17,24,25;
35:8
**Ocwen (1)**
38:1
**off (3)**
28:14;39:14;43:2
**offered (2)**
5:14;7:25
**office (1)**
9:21;10:23
**officer (1)**
4:14
**offices (1)**
35:1
**Omnibus (7)**
2:3,4,14;4:9;
19:20;20:15;46:18
**once (2)**
28:13;33:2
**one (23)**
6:17;7:1,21;8:21;
9:23;10:14;11:19;
21:3,13;22:9,15;
29:25;31:3,11;
34:13;35:7;36:15;
37:13,14;38:17;40:4,
8;43:9
**ones (1)**
20:25
**one-year (1)**
38:12
**only (11)**
4:23;17:18;20:5,6;
29:8;33:10,15,20,24;
36:15;40:25
**oops (1)**
17:16
**open (4)**
13:12;31:21;37:1,
7
**opened (4)**

31:9;33:2;35:17,
23
**opening (2)**
33:5;36:23
**operate (1)**
36:4
operations@escribersnet (1)
2:25
**OPERATOR (1)**
9:11
**opposing (1)**
35:2
**order (23)**
9:22;12:5;17:8,13,
20,22;18:4,13,15,20;
21:1;31:21;36:4,10;
41:16;43:1;44:2;
45:1,11,15,22;46:14;
48:1
**ordering (2)**
47:25;48:1
**OSC (1)**
11:25
**others (1)**
18:2
**otherwise (1)**
8:14
**ought (1)**
19:9
**out (13)**
6:4;17:14,21;19:8;
21:6,12;24:24;
29:10;30:23;36:13;
40:25;45:9;47:10
**outside (1)**
35:9
**outstanding (2)**
37:4,6
**over (3)**
11:5;23:10;38:1
**overrule (1)**
43:12
**overruled (1)**
48:2
**overruling (1)**
47:4
**owing (1)**
20:21
**own (3)**
23:19;27:21;34:6
**owns (1)**
11:8

**P**

**Padilla (2)**
38:8,11
**Page (4)**
2:20;16:11;26:9;
37:18
**paid (39)**
23:1,11,17,19,20,
24;24:3,8,21,24;

31:9;33:2;35:17,
23
25:1,4,8,9,11,16,17;
26:6,6;27:7,13;28:9,
14,14;29:6,9,10;
31:9,18,19;32:4;
33:17;35:16,17,22,
22,23;36:21;39:14
**Palm (1)**
46:5
**paper (2)**
18:5;27:6
**papers (5)**
5:2;8:15,18;9:25;
10:8
**paragraph (2)**
23:11,13
**Part (6)**
6:1;13:8;17:10;
26:8;28:3;37:2
**particularly (1)**
6:12
**parties (1)**
18:2
**parties' (1)**
15:24
**Pause (4)**
5:8;11:7,15;41:14
**pay (15)**
25:5;26:21;28:1;
29:7,11;32:2;33:12;
34:1,1,5;36:25;
41:16,21;42:22;43:1
**Payco (2)**
38:8,10
**paying (2)**
28:13;42:20
**payment (30)**
9:7;27:11;28:2,3,
14,19,21,23;29:4,8;
31:10,22;32:4,5,6,7,
9,12,14,15;33:8,11,
12,18,22,23;36:22;
42:16,23;43:3
**payments (6)**
31:15,15;33:9;
40:11;42:14,17
**pejorative (1)**
10:16
**penalty (1)**
41:22
**people (1)**
46:2
**Per (1)**
26:12
**period (1)**
40:8
**permit (1)**
46:2
**permitted (1)**
26:21
**persisted (1)**
32:11
**pertains (1)**
4:22

**petition (2)**
13:2;30:19
**ph (1)**
16:21
**phone (5)**
4:14;7:10,11;9:10;
30:7
**piece (1)**
27:6
**place (2)**
14:25;38:14
**placed (2)**
23:1;28:5
**placing (1)**
27:25
**plaintiffs (1)**
38:13
**plan (2)**
13:4;14:5
**please (5)**
4:3;5:6;7:10;
22:22;38:21
**plus (4)**
41:22,24;42:1,4
**pm (1)**
11:22
**point (7)**
5:14;24:25;28:6,
11;29:5;31:23;39:14
**policy (2)**
33:21;34:6
**position (4)**
14:11;23:24;
27:12;30:13
**possession (3)**
15:4;16:25;18:24
**possible (1)**
46:13
**practices (4)**
23:20;30:16;
37:10,11
**pre-confirmation (1)**
14:6
**prejudice (3)**
14:12;43:12;48:2
**prepare (1)**
44:25
**prepared (5)**
7:19;10:1;12:12;
17:12;46:9
**pre-petition (1)**
20:16
**present (2)**
36:17;41:2
**preservation (9)**
16:5,12;17:5,8,14,
22;18:3,21;19:8
**preserved (1)**
19:9
**pre-trial (2)**
45:22;46:7
**prevent (1)**
27:25;41:17

**prevented (1)**
32:20
**prevents (1)**
41:4
**previously (2)**
6:14;13:10
**prima (5)**
7:19;8:7;10:2,2;
12:12
**principal (4)**
33:10,19,24;42:23
**Prior (1)**
40:9
**private (1)**
18:2
**probably (2)**
12:4,5
**problem (3)**
6:1;15:21;46:6
**problems (1)**
7:14
**Procedures (1)**
34:12
**proceed (1)**
10:22
**proceedings (1)**
48:9
**produce (1)**
15:14
**program (1)**
41:17
**prohibited (1)**
33:8
**prohibits (2)**
31:10;38:10
**proof (20)**
5:20;6:23;7:18,23;
8:5;9:2,5,24,25;10:1,
4,25;11:2,3;12:8;
22:23;23:16,17,21;
33:20
**proofs (1)**
20:15
**proper (4)**
10:5;29:16;36:15;
42:22
**properly (5)**
7:18;10:1,9;12:11;
36:4
**properties (1)**
34:19
**property (20)**
5:16,20,24;6:5,16,
17,21;7:1,3;8:11,11,
13,16,17;23:1,2;
26:21;33:15;34:22,
22
**proposed (2)**
18:15;46:14
**protect (1)**
38:16
**prove (1)**
43:16

**provide (6)**
5:10;13:1;17:13;
29:6;30:7;36:13
**provided (11)**
18:4;30:3,9;33:20;
36:12,15;40:7,8,12;
43:7;44:13
**provides (1)**
37:19
**providing (1)**
45:1
**pull (1)**
27:20
**purpose (2)**
13:14;27:24
**Pursuant (3)**
4:17;26:20,24
**pursue (1)**
41:4
**pursuing (2)**
7:6;37:24
**pushed (1)**
42:23
**put (5)**
7:10,17;8:21;
33:11,24

## Q

**quotes (1)**
37:18
**QWR (9)**
29:20,22;30:23;
35:6,21;36:5,11,11,
15
**QWRs (10)**
23:3;29:15,17;
35:6,12;36:13;
39:25;40:6;42:7;
43:5

## R

**raised (2)**
30:4,17
**raising (1)**
38:11
**rather (1)**
38:16
**RBS (1)**
4:21
**RE (2)**
2:2,5
**read (2)**
15:6,20
**reading (1)**
6:1
**reads (1)**
26:12
**Real (1)**
34:12
**realize (1)**
30:22

**really (6)**
7:6,17;12:17;
40:10;47:7,10
**reason (3)**
5:16;9:16;35:1
**reasons (1)**
47:4
**rebut (1)**
8:4
**rebuts (1)**
8:21
**rebutted (1)**
10:14
**receive (2)**
13:5;40:24
**received (17)**
19:24;20:6;22:15;
23:15,18,21;24:7,21;
26:16;27:3;28:8;
29:9;33:16;34:17,
24;40:23;42:7
**recent (1)**
38:18
**recently (1)**
40:25
**record (3)**
19:3;27:8,21
**records (15)**
8:11;17:14,16,22;
18:3,5,5,21,23;
20:19,21;23:6;
24:21;34:18,19
**recoup (1)**
43:1
**recover (3)**
40:18;41:8;44:12
**recovering (2)**
47:7,11
**recovery (3)**
13:17,24;14:8
**red (1)**
35:24
**Reduce (4)**
2:15;19:21;20:24;
21:25
**reduced (2)**
14:6;22:7
**reducing (1)**
13:14
**reference (1)**
27:5
**referring (1)**
16:13
**reflect (1)**
32:3
**reflected (2)**
20:23;21:25
**refund (7)**
29:6,6,9;32:8,8,15,
16,18
**refunded (1)**
33:21
**refused (2)**

32:9;43:2
**refute (1)**
7:21
**refutes (2)**
7:22;37:7
**regard (1)**
33:4
**regarding (5)**
33:14;35:14;
39:25;44:9,17
**regulation (1)**
36:3
**regulations (1)**
33:4
**related (3)**
5:12;33:7;40:23
**relates (1)**
2:4
**relating (1)**
15:9
**relay (1)**
30:18
**release (8)**
5:13,19,22;6:4,5,
20;8:1;10:9
**released (7)**
7:2,2,8;13,16,16;
9:1;10:7
**releasing (1)**
7:1
**relevance (1)**
15:12
**rely (2)**
17:1;19:3
**remaining (1)**
17:18
**remains (1)**
13:15
**remember (1)**
14:18
**remove (1)**
29:8
**removed (2)**
34:2,5
**removing (1)**
34:7
**reply (3)**
22:20;24:5;26:10
**report (1)**
46:7
**reported (2)**
25:15;27:13
**represent (1)**
20:16
**representation (1)**
19:6
**request (2)**
40:24;41:3
**requested (3)**
30:11;34:23;42:7
**required (3)**
12:9;19:8;31:14
**requirement (1)**

36:9
**requirements (2)**
35:13;36:10
**requires (4)**
30:4;33:3;45:2,13
**requiring (1)**
12:5
**ResCap (13)**
2:2,8,10,13;4:7,9;
5:19;6:5;9:24;12:22;
13:6;16:4;19:18
**research (1)**
35:20
**reserve (1)**
43:25
**Residential (1)**
4:4
**resolution (1)**
45:16
**resolve (4)**
5:14;8:2;15:18;
45:17
**resolved (4)**
10:12;18:9;32:22;
45:21
**RESPA (10)**
23:4;30:4,14;
34:11;35:13;36:10;
39:22,23,24;40:21
**respect (1)**
6:16
**respond (6)**
5:18;12:3;24:16;
31:5;35:12;38:20
**responded (5)**
29:21,23,24,25;
40:3
**response (18)**
9:20;11:18,21;
12:3,9,10;19:24;
20:6;22:15;23:9;
30:18;35:9;36:5;
40:23,25;41:3;42:8;
44:14
**responses (5)**
22:13;23:3;30:2,
14;40:2
**responsible (1)**
25:21
**responsive (1)**
15:14
**rest (1)**
29:14
**review (4)**
6:14;23:5;27:23;
30:2
**reviewed (1)**
20:8
**reviewing (1)**
18:20
**revised (2)**
17:20;18:17
**RFC (1)**

12-12020-mg    Doc 10346    Filed 03/29/17    Entered 03/29/17 11:24:36    Main Document

RESIDENTIAL CAPITAL, LLC, et al.                    Pg 58 of 60

Case No. 12-12020-mg                                              March 23, 2017

13:7
**rider (1)**
  9:7
**right (35)**
  4:3,5,16;11:2;
  13:16;16:20;19:13;
  20:5;21:5,15,17;
  22:8,12,17,19,23;
  25:13;27:10;30:15;
  31:4;32:23;34:9;
  37:9,17,25;38:4,20;
  39:18,22;40:5;43:11,
  20;44:21;48:7,7
**rights (1)**
  43:25
**rise (1)**
  4:2
**Rosenbaum (12)**
  16:2,3,3,10,17,21;
  17:9,21;18:12;19:1,
  2,6
**Rosenthal (5)**
  30:15;31:2;37:11;
  39:3;40:22
**row (1)**
  31:20
**Royal (1)**
  4:20
**ruling (1)**
  47:3
**runs (2)**
  39:4;45:9

**S**

**sale (1)**
  42:25
**same (4)**
  16:11;31:1;38:6,6
**San (3)**
  23:18;24:20;26:14
**satisfied (2)**
  15:23;17:21
**Saturday (1)**
  34:25
**save (1)**
  43:9
**saying (9)**
  10:10,11,16;
  12:15;23:15;30:22;
  39:18;47:8,9
**schedule (1)**
  48:5
**scheduling (5)**
  45:1,5,8,11;46:17
**scope (2)**
  15:12;36:2
**Scotland (1)**
  4:20
**seated (1)**
  4:3
**second (3)**
  26:9,14;37:13

**Section (1)**
  32:24
**secured (1)**
  9:2
**securitization (1)**
  10:20
**seeing (1)**
  8:5
**seek (2)**
  13:13;20:15
**seeking (4)**
  40:18;41:7;44:11;
  47:12
**sell (2)**
  41:15;43:10
**selling (1)**
  41:17
**send (3)**
  34:21;35:15;45:24
**sending (1)**
  37:23
**sent (6)**
  23:4;29:22;35:6,7;
  41:1;42:25
**separately (2)**
  21:10,16
**September (1)**
  26:13
**serve (1)**
  11:25
**served (4)**
  7:8;15:6,7,14
**servers (1)**
  17:3
**serves (1)**
  15:10
**service (3)**
  7:7;10:6;12:1
**serviced (2)**
  8:12;36:1
**servicer (1)**
  34:20
**Services (3)**
  2:10;12:23;13:9
**servicing (12)**
  6:17;10:18,20;
  22:25;26:7,9;27:5,
  12,25;28:7;30:9;
  32:3
**set (6)**
  6:4;7:22;8:17;
  12:4;43:13;46:19
**sets (1)**
  8:6
**settle (1)**
  47:2
**settled (1)**
  15:19
**Settlement (5)**
  34:12;45:16,18;
  46:13;47:13
**seven (1)**
  31:11

**Seventh (1)**
  2:22
**several (1)**
  20:12
**shall (1)**
  11:25
**share (2)**
  16:6;18:17
**Shifer (1)**
  2:10
**shortages (1)**
  39:11
**show (2)**
  11:16;20:21
**showing (2)**
  12:5;23:18
**shows (3)**
  26:5;27:6;43:6
**sic (1)**
  39:3
**sides (1)**
  46:12
**signed (1)**
  43:5
**similar (1)**
  34:4
**simply (2)**
  9:22;12:14
**single (5)**
  25:24;26:2;35:25;
  36:5;40:4
**sit (1)**
  16:24
**situation (1)**
  35:14
**situations (1)**
  35:25
**six (3)**
  28:2;42:18;43:2
**sixty (3)**
  45:1,3;46:15
**slightly (2)**
  7:3;14:6
**solely (1)**
  2:4
**somebody (6)**
  8:9,10,10;9:21;
  12:15;31:21
**sometimes (1)**
  10:11
**Sorry (5)**
  6:9;23:17;27:20;
  40:14;41:6
**sort (1)**
  28:5
**Sounds (1)**
  48:6
**Southern (1)**
  46:5
**speak (1)**
  16:1
**specific (1)**
  8:12

**specifically (2)**
  31:19;36:7
**specificity (1)**
  44:11
**spent (1)**
  37:3
**spreadsheet (1)**
  41:13
**Springs (1)**
  46:5
**SQR (1)**
  29:23
**stability (1)**
  15:17
**start (2)**
  38:2;46:23
**starting (1)**
  40:7
**starts (1)**
  37:21
**state (2)**
  34:3;35:15
**stated (3)**
  33:17,23;34:16
**statement (3)**
  14:13;33:16;34:4
**states (1)**
  31:20
**stating (1)**
  34:17
**status (5)**
  6:6;11:11,13;
  14:18;18:18
**statute (17)**
  27:23,24;30:21,
  24;31:1;35:9;37:12,
  20;38:1,10,12,13,15,
  15;39:2,4,5
**statutes (1)**
  30:20
**statutory (1)**
  23:12
**stay (1)**
  12:9
**still (4)**
  14:24;15:5;30:20,
  23
**Stop (3)**
  44:10,10,10
**subject (2)**
  5:20;18:20
**submit (1)**
  46:14
**submitted (1)**
  4:12
**submitting (1)**
  45:22
**subpoena (2)**
  15:11,14
**subpoenas (1)**
  15:10
**subsequently (1)**
  25:8

**successors (1)**
  14:23
**sudden (1)**
  43:8
**sufficient (1)**
  30:14
**sufficiently (1)**
  35:13
**Suite (1)**
  2:22
**sum (1)**
  37:5
**supplemental (1)**
  26:10
**support (3)**
  4:12;6:11;35:11
**supported (1)**
  27:12
**supposed (2)**
  16:19;35:2
**sure (9)**
  13:1;16:22;17:4,
  10;19:5,7;27:22;
  46:15,21
**surplus (1)**
  32:17
**surprise (2)**
  16:8;18:8
**suspense (2)**
  33:11,25
**sustain (1)**
  9:23
**sustained (3)**
  11:23;21:20;22:5

**T**

**talk (5)**
  20:9;21:8;45:4;
  46:21;47:12
**talked (2)**
  6:24;12:15
**talking (1)**
  36:15
**tax (19)**
  23:10,23;24:3,8;
  27:11;28:19;29:4;
  31:15,15;32:2,4,5,
  12;34:14,22;35:24;
  39:14,16;41:1
**taxes (36)**
  23:2,17,19,21;
  24:20,24;25:1,2,5,7,
  9,16;26:6,6,13,21;
  27:7;28:9;29:11;
  31:9,10,18,20,22,22,
  23;34:18;35:14,16,
  16,22;36:21,22,25;
  39:7;41:21
**technically (1)**
  13:8
**telephone (3)**
  45:7;46:2,7

**telling (4)**
9:1;34:21;43:3;
46:16
**terms (5)**
15:2;16:6;23:7;
46:15,17
**testify (1)**
46:9
**testimony (1)**
45:2
**thanks (1)**
48:7
**theory (1)**
15:20
**therefore (2)**
33:5;34:7
**thirty (1)**
41:4
**thoroughly (1)**
20:18
**thought (1)**
23:22
**three (4)**
13:5;21:18;36:13,
13
**today (9)**
4:23;13:13;15:5;
17:15;32:19;46:8,
12;47:3,23
**told (2)**
10:18;32:7
**took (2)**
11:5;38:14
**total (3)**
35:12;37:4;41:11
**totaled (2)**
41:24,25
**totaling (2)**
40:21;41:22
**touch (1)**
10:23
**traditional (1)**
28:1
**transaction (3)**
36:12,14,16
**Transcribed (1)**
2:20
**transcript (1)**
48:1
**treated (1)**
8:6
**treatment (1)**
13:10
**trial (17)**
14:17;15:8,10,11,
13,18,19;16:9;17:15;
18:10;43:13;46:1,3,
3,8,11;47:14
**tried (4)**
6:24;7:5;10:11,16
**true (1)**
39:12
**Trust (56)**

2:8,11;4:8,9,12,13,
18;8:10;9:5;10:6,20;
11:25;12:22;13:20,
20,24;14:4,9,24;
15:1,1,4,11,13,17,22;
16:1,4,17,19,24;
17:1;18:24;19:3,4,
18;20:18,22;23:5,7,
23;24:7;26:20,24;
27:8,10;30:10;33:3,
6;36:19,20,24;38:25;
45:14;46:18;47:13
**Trustee (6)**
2:9;12:23;13:9;
18:14,14,18
**Trusts (4)**
2:13;13:20;16:18;
17:9
**Trust's (5)**
2:2;19:20;27:12;
43:12;47:4
**try (3)**
15:24;39:10;45:16
**trying (1)**
39:12
**turned (1)**
37:25
**turns (1)**
19:8
**twenty-five (1)**
4:18
**twenty-four (2)**
4:19,22
**two (12)**
13:19;16:18;17:9;
20:22;31:14,15,20;
35:18;45:5,8;46:19,
19
**type (2)**
28:5;36:2
**typical (1)**
10:20
**typing (1)**
7:10

**U**

**ultimately (1)**
18:4
**Um-hum (2)**
25:14;39:20
**unable (1)**
41:2
**Under (9)**
13:4,21;14:5;23:4,
16,19;30:14,20;31:2
**Unfortunately (2)**
6:7,22
**Unless (5)**
11:21;15:19;18:9,
9;31:11
**untimely (1)**
30:20

**unwarranted (1)**
33:12
**up (5)**
14:7,17;18:12;
24:20;43:8
**urge (1)**
46:12
**use (2)**
38:14;45:11
**used (2)**
29:7,10
**usually (2)**
45:13;46:23

**V**

**valid (1)**
20:16
**validate (1)**
20:19
**validation (2)**
40:24;41:3
**validity (4)**
7:19;8:7;10:3;
12:13
**valued (1)**
41:17
**various (4)**
20:13;23:3;30:7,
10
**view (1)**
6:10
**violated (1)**
38:18
**violation (8)**
23:12;37:19,21;
39:4,5,6,8,19
**violations (2)**
38:14;40:21
**virtually (1)**
4:19

**W**

**walk (1)**
22:21
**way (1)**
15:17
**website (2)**
45:12,23
**weeks (4)**
45:5,8;46:19,19
**weren't (2)**
7:5;19:8
**whatnot (1)**
43:1
**what's (2)**
7:13;25:17
**whereas (1)**
5:22
**whereby (1)**
37:4
**Whereupon (1)**

48:9
**wish (2)**
43:14,22
**withdraw (4)**
5:17;10:13,17;
12:16
**withdrew (1)**
21:3
**within (7)**
30:8;36:4;38:2,17;
39:5;45:15,19
**without (4)**
12:16;38:9;43:12;
48:2
**work (6)**
5:14;8:1;10:11,17;
17:21;48:4
**workout (1)**
41:16
**works (1)**
11:4
**written (1)**
48:1
**wrong (1)**
35:22
**wrongfully (1)**
35:17

**Y**

**year (6)**
28:24;30:21;31:3;
32:12;38:15,17
**years (1)**
35:19
**York (1)**
2:23

**1**

**1,100 (2)**
41:23;42:1
**1,500 (1)**
42:4
**1,700 (1)**
42:16
**10 (1)**
46:23
**10/5th (1)**
21:1
**10:00 (1)**
2:6
**10001 (1)**
2:23
**1015 (5)**
21:1,3,12,18,19
**10296 (1)**
19:23
**10310 (1)**
4:11
**10311 (1)**
12:25
**10319 (1)**

7:7
**10332 (1)**
22:16
**10337 (1)**
22:21
**1039 (3)**
21:1,12,19
**10th (1)**
30:1
**11 (3)**
2:9;12:23;13:2
**11:25 (1)**
48:9
**12-12020 (1)**
4:4
**14th (1)**
29:24
**1524 (1)**
22:3
**156 (1)**
26:9
**158 (1)**
26:9
**160,000 (3)**
8:24;9:3,16
**1788 (1)**
30:16
**19th (1)**
29:22
**1st (4)**
25:1,6;33:18,22

**2**

**2008 (12)**
25:1,6,9,11;26:13,
14;28:25;29:7;
32:14;33:18;40:9,9
**2009 (6)**
28:23;29:20;
30:24;35:8;40:9,13
**2010 (2)**
29:21;30:25
**2012 (8)**
29:22,23,24,24,25;
36:13;40:12,15
**2013 (1)**
38:1
**2017 (6)**
4:10;11:18,23;
12:24;19:23;22:20
**20th (1)**
22:20
**21st (2)**
4:10;12:24
**22nd (1)**
29:21
**23rd (2)**
11:18;33:21
**24th (1)**
26:13
**2549 (4)**
21:1,12,19,19

**RESIDENTIAL CAPITAL, LLC, et al.**
Case No. 12-12020-mg

*March 23, 2017*

**26th (1)**
  29:20
**29 (2)**
  23:11,13
**2954 (6)**
  31:8,10;32:24,24;
  35:19,25
**2954a1C (2)**
  23:12;27:18
**2nd (1)**
  19:23

**3**

**3 (1)**
  19:19
**3,431 (1)**
  41:24
**3/23/17 (1)**
  2:5
**30 (1)**
  11:23
**31,684 (1)**
  41:18
**352 (1)**
  2:22
**3848 (1)**
  22:10

**4**

**4 (1)**
  34:24
**4,000 (1)**
  43:8
**4,100 (1)**
  42:2
**4,500 (1)**
  41:25
**4921 (1)**
  22:3
**4930 (3)**
  21:7;22:17;43:12
**4th (6)**
  26:12;28:21,24;
  29:25;34:17,25

**5**

**5 (1)**
  11:22
**5,000 (1)**
  42:17
**5,473 (1)**
  41:19
**5/11/2017 (1)**
  2:6
**5271 (3)**
  4:23;11:17,24
**56.1 (1)**
  14:7
**5634 (3)**
  21:2,12,19

**57.6 (1)**
  14:5
**5th (1)**
  29:24

**6**

**6th (2)**
  22:14;29:23

**7**

**7,695 (1)**
  41:22

**8**

**800 (1)**
  41:24

**9**

**94 (1)**
  41:11
**94,000 (2)**
  41:11,12
**973406-2250 (1)**
  2:24