USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/25/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re RESIDENTIAL CAPITAL, LLC,

            Debtor,

---

THOMAS J. LA CASSE,

            Appellant,

-against-

RESIDENTIAL CAPITAL, LLC,

            Appellee.

**ORDER**

14 Civ. 1531 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      Thomas J. La Casse appeals a December 19, 2013 United States Bankruptcy Court order denying his motion for reconsideration of a November 7, 2013 memorandum opinion and order striking Proof of Claim Number 3856 in In re Residential Capital, LLC, Case No. 12-12020 (MG).[1] (Notice of Appeal (Dkt. No. 1))[2] La Casse contends that the bankruptcy court misconstrued Connecticut law in finding that Residential Capital, LLC ("RFC")[3], had standing to initiate a foreclosure action involving certain Connecticut property in which he held an interest.

---

[1] The bankruptcy court also denied La Casse's request for leave to amend Proof of Claim Number 3856. (See Bankr. Denial of Recon. (Dkt. No. 6156 in 12-12020-mg) at 3-4) La Casse has not appealed that portion of the bankruptcy court's decision, however.

[2] Unless otherwise noted, the page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system in 14 Civ. 1531.

[3] When it initiated the foreclosure action, Residential Capital, LLC was known as "Residential Funding Capital, LLC."

For the reasons stated below, the decision of the bankruptcy court will be affirmed.

## BACKGROUND

On January 30, 2006, La Casse entered into a $650,000 loan with Homecomings Financial, LLC ("Homecomings"), evidenced by a note (the "Weston Note") for property located at 153 Valley Forge Road, Weston, Connecticut (the "Weston Property") and secured by a mortgage (the "Weston Mortgage"). (See Bankr. Denial of Claims (Dkt. No. 5620 in 12-12020-mg) at 4) The mortgage identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for Homecomings. (See id.) In 2006, Homecomings sold the Weston Note and specifically indorsed it to RFC. (See Delehey Decl. (Dkt. No. 4635-5 in 12-12020-mg) ¶ 10) The Note was indorsed in blank and – according to RFC – was held by Wells Fargo on behalf of RFC under a custodial agreement. (See Bankr. Denial of Claims (Dkt. No. 5620 in 12-12020-mg) at 4 n.3) La Casse claimed before the bankruptcy court that HSBC Bank owned the Weston Note at the time of the foreclosure. (Id. at 4; see Qualified Written Request (Dkt. No. 5923 in 12-12020-mg) Ex. 4)

La Casse defaulted on the loan concerning the Weston Property. (See Bankr. Denial of Claims (Dkt. No. 5620 in 12-12020-mg) at 3) On April 26, 2009, RFC acquired possession of the Weston Note and provided it to counsel to initiate foreclosure. (See id.; Delehey Decl. (Dkt. No. 4635-5 in 12-12020-mg) ¶ 10) On May 18, 2009, RFC commenced a foreclosure action in Connecticut state court. (See Bankr. Denial of Claims (Dkt. No. 5620 in 12-12020-mg) at 4)

The Connecticut state court entered a default judgment against La Casse on August 18, 2009. RFC then filed a motion for Judgment of Strict Foreclosure. (See id. at 5)

2

With its motion, RFC submitted an affidavit signed by Jeffrey Stephan, who was both a vice president of MERS and an employee of GMAC Mortgage, the sub-servicer of the loan.[4] (See id.) The Connecticut state court granted RFC's motion and entered a Judgment of Strict Foreclosure on September 2, 2009. (See id.) Pursuant to Connecticut bankruptcy procedures, this initiated a process in which interested parties could redeem the property on their "law days," and if no party redeemed the property, the property would vest to the lender. (See id.) The law days were scheduled to begin on October 20, 2009, but La Casse filed a petition under Chapter 13 of the Bankruptcy Code that same day. The bankruptcy filing vacated the "law days" and reopened the Judgment of Strict Foreclosure. (See id.)

Less than a month later, La Casse's Chapter 13 petition was dismissed for failure to comply with a court order and to file required documents. (See id.) On November 30, 2010, RFC filed a motion to reset the law days and reenter the judgment against La Casse in Connecticut state court. There is no evidence in the record that this motion was ever granted. (See id.)

The case remained dormant for almost a year. On November 11, 2011, however, La Casse filed a motion in Connecticut state court to vacate judgment and dismiss RFC's action. (See id. at 6) La Casse argued that MERS could not legally transfer the mortgage, that RFC lacked standing to foreclose, and that RFC committed a fraud on the court in submitting the Stephan affidavit and purporting to be the noteholder. (See id.) RFC objected to the motion on January 23, 2012, and La Casse replied on February 7, 2012. (See id.)

---

[4] La Casse claims that Stephan's "affidavit was fraudulent and that Stephan ha[d] confessed during depositions in other matters to signing documents without having knowledge of the contents or veracity of those documents." (See id.)

3

On May 14, 2012, RFC filed a voluntary petition under Chapter 11 of the Bankruptcy Code, which automatically stayed the Connecticut state court action. (See id. at 2) RFC's petition was assigned to Bankruptcy Court Judge Martin Glenn. (See Voluntary Petition (Dkt. No. 1 in 12-12020-mg))

On November 9, 2012, La Casse filed three Proofs of Claim in the RFC bankruptcy proceeding – one against Homecomings, and two against RFC. (See Bankr. Denial of Claims (Dkt. No. 5620 in 12-12020-mg) at 2-3) The Proof of Claim at issue here is Proof of Claim Number 3856, which was filed against RFC and which relates to the Weston Property. (See id. at 3; Notice of Appeal (Dkt. No. 1) at 1)

After RFC filed for Chapter 11 protection, the Connecticut state court requested that RFC obtain relief from the automatic stay to allow RFC's action involving the Weston Property to proceed. (See Bankr. Denial of Claims (Dkt. No. 5620 in 12-12020-mg) at 6) On April 30, 2013, the bankruptcy court issued an order lifting the automatic stay to allow La Casse to prosecute his claims to the extent that they constitute a defense to RFC's foreclosure action. RFC filed the bankruptcy court's order lifting the stay with the Connecticut state court on May 14, 2013, but the proceedings in that court have not progressed since that date. (Id.)

On August 13, 2013, RFC moved to disallow La Casse's Proofs of Claim on the grounds that "they lack[ed] sufficient documentation and fail to state a basis for the Debtors' supposed liability." (Id. at 2) La Casse opposed RFC's motion, raising the same two arguments asserted in the motion to vacate he filed in Connecticut state court:

> First, [La Casse] argue[d] that the assignment of the Weston Mortgage by MERS is void. Second, [La Casse] assert[ed] that RFC did not have standing to foreclose on the Weston Property.

4

(Id. at 10) In his opposition, La Casse also states that he is seeking damages under the civil RICO statute, because RFC entered the Weston Property and "'left it in ruins.'" (Id. at 6 (quoting La Casse Opp. (Dkt. No. 5106 in 12-12020-mg) at 15)) According to La Casse, "'[a]nything of value was stolen, and what was too large or not valuable enough was vandalized.'" (Id.)

Judge Glenn rejected La Casse's arguments concerning the assignment of the Weston Mortgage and RFC's standing:

> As for the first argument, the Claimant posits that MERS generally does not have the legal authority or ability to transfer mortgages as a nominee, and even if it did, the transfer to RFC was void here because the mortgage had already been securitized and transferred to other parties before the purported MERS/RFC assignment. Connecticut courts have already rejected arguments that MERS lacks authority to act as a nominee of a lender and transfer mortgages. See RMS Residential Props., LLC v. Miller, 32 A.3d 307, 317 (Conn. 2011) (finding that since MERS was named as nominee, true nature of transaction was sufficiently disclosed, and preventing MERS from transferring mortgage would "frustrate the intentions of both mortgagors and mortgagees"). Further, even if the transfer to RFC was somehow void because the Weston Mortgage had already been securitized and transferred to other parties, that fact does not preclude RFC from foreclosing on the property so long as it was the noteholder. See id. at 312 (holding that the mortgage follows the note, so the "rightful owner of the note has the right to enforce the mortgage").
>
> Further, Connecticut law allows parties to receive legal title to property upon foreclosure even if the "legal title to the mortgaged premises has never been conveyed" to the foreclosing party, so long as that party is "entitled to receive the money secured" by the mortgage. CONN. GEN. STAT. § 49-17. Here, RFC held the note when it proceeded with the foreclosure, and the note was indorsed in blank. (See Delehey Decl. ¶ 10.) The Debtors submitted evidence of the Weston Note indorsed in blank. (See Motion Ex. H.) Even if the Claimant could somehow demonstrate that despite the note's blank indorsement, RFC was not the proper owner of the note, RFC was entitled to enforce the note merely by virtue of holding the note. See Miller, 32 A.3d at 313 (finding that noteholder could enforce note even without ownership); see also Bankers Trust of Cal., N.A. v. Vaneck, 899 A.2d 41, 42 (Conn. App. Ct. 2006) (holding that Connecticut law "permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage"). Thus, RFC has provided sufficient evidence demonstrating that it had standing to foreclose on the Weston Property.

(Id. at 10-11)

As to La Casse's RICO claim, Judge Glenn ruled that it had not been sufficiently pled:

> [La Casse's] documentation falls woefully short of supporting a civil RICO violation. None of the documents that the Claimant submitted would support a civil RICO claim. To bring a civil RICO claim in the Second Circuit, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." Zavalidroga v. Cote, 395 F. App'x 737, 740–41 (2d Cir. 2010) (internal quotation marks omitted). Even if a plaintiff can demonstrate a substantive RICO violation, the plaintiff must also show "injury to the plaintiff's business or property" and "that such injury was by reason of the substantive RICO violation." Catholic Health Care W. v. US Foodserv. (In re US FoodServ. Pricing Litig.), 729 F.3d 108, 117 (2d Cir. 2013). The "enterprise" complained of in a civil RICO action must be "distinct from those persons or entities who stand accused of conducting that racketeering activity." Allstate Ins. Co. v. Rozenberg, 590 F. Supp. 2d 384, 390 (E.D.N.Y. 2008). Here, the Proof of Claim relating to the Weston Property provides no allegations necessary to support a civil RICO claim, or any evidence of a pattern of racketeering activity, nor does it define any enterprise.

(Id. at 11-12) (footnote omitted)[5]

Judge Glenn concluded that "[s]ince the evidence submitted by the parties indicates that RFC was the noteholder at the time of foreclosure and therefore had standing to foreclose under Connecticut law, and since the Claimant's proof of claim relating to the Weston Property does not support a civil RICO claim, the Debtor's objection to the Proof of Claim 3856 is sustained. . . . [The claim is] disallowed and expunged in [its] entirety." (Id. at 12) (emphasis omitted)

La Casse moved for reconsideration and to allow an amendment to Proof of Claim Number 3856. (See Motion for Recon. (Dkt. No. 5923 in 12-12020-mg)) In his motion, La Casse argued that the bankruptcy court had misapplied Connecticut law concerning standing

---

[5] As to La Casse's claim that RFC had submitted a fraudulent affidavit to the Connecticut state court, the bankruptcy court found that this claim was "moot," "because RFC filed a superseding affidavit replacing the Stephan affidavit in Connecticut State Court." (Id. at 12)

6

to foreclose. In support of his motion to amend, La Casse submitted a proposed Amended Proof of Claim Number 3856, his own affidavit, and an affidavit from an expert witness, Marie McDonnell (the "Oct. 22, 2013 McDonnell Aff."). (See Bankr. Denial of Recon. (Dkt. No. 6156 in 12-12020-mg) at 3 (citing Exs. 1-3)) In La Casse's affidavit, he complains at length about the manner in which RFC took possession of the Weston Property and the damage done to the property at that time, and repeats his arguments that RFC was not the owner of the Weston Note at the time of the foreclosure. (See La Casse Aff. (Dkt. No. 5923 in 12-12020-mg) Ex. 2 ¶¶ 2-8, 13, 15-17, 19, 26, 28-28) In her affidavit, McDonnell – the head of a firm that "provides mortgage-backed securities research services and foreclosure forensics" – offers her opinion that RFC securitized the Weston Note and Mortgage and conveyed it to HSBC Bank USA in 2006. (Oct. 22, 2013 McDonnell Aff. (Dkt. No. 5923) Ex. 3 ¶¶ 3, 6)

On December 19, 2013, the bankruptcy court denied La Casse's motion for reconsideration. As to La Casse's motion to amend his proof of claim, Judge Glenn noted that the bar date had passed more than a year earlier, and that the Debtors' plan of reorganization had been entered. Under such circumstances, amendment is only justified "'in the most compelling circumstances.'" (See Bankr. Denial of Recon. (Dkt. No. 6156 in 12-12020-mg) (citing Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC, No. 11 Civ. 2232 (NRB), 2011 U.S. Dist. LEXIS 120734, *16-17 (S.D.N.Y. Oct. 19, 2011); In re Winn Dixie Stores, Inc., 639 F.3d 1053, 1056-57 (11th Cir. 2011))

As to the additional evidence provided concerning the securitization of La Casse's mortgage, Judge Glenn concluded that it "does not impeach the Debtors' evidence that RFC held the note indorsed in blank when it commenced foreclosure." (Id. at 3) As to the additional evidence La Casse provided concerning his RICO claim, Judge Glenn noted that that claim was

7

premised on the "fundamental point that the court already rejected: the claim that RFC was not entitled to foreclose on La Casse's home." (Id. at 4) The court concluded that "La Casse's proposed amended proof of claim would not indicate any Debtor liability, so amendment is [in]appropriate, particularly here since the Debtors' plan has been confirmed." (Id.)

On March 6, 2014, La Casse filed a notice of appeal concerning the bankruptcy court's order denying his motion for reconsideration. (See Notice of Appeal (Dkt. No. 1) at 1) Although under Federal Rule of Bankruptcy Procedure 8009, La Casse's brief was due on March 20, 2014, no brief was filed at that time. After numerous requests for adjournments by appellant, and ultimately the withdrawal of counsel and the appearance of new counsel, briefing was completed on March 8, 2017.[6] (See La Casse Am. Reply Br. (Dkt. No. 51))

---

[6] On April 7, 2014, when appellant's brief had still not been filed, this Court contacted appellant's counsel, Laird Heal. (See Nov. 3, 2014 Tr. (Dkt. No. 26) at 2) Mr. Heal informed the Court that he had recently suffered a medical condition that resulted in his hospitalization. (Id.) Mr. Heal stated that he would submit a letter to the Court requesting an extension of time to file appellant's brief. (Id.) No letter was filed, however, and this Court again contacted Mr. Heal on May 2, 2014, and June 6, 2014. (Id.) Mr. Heal stated that he was backlogged as a result of his medical condition and that he would submit a brief soon.

No brief was filed, however, so this Court conducted a conference in this matter on November 3, 2014. (Id.) As of that date, Mr. Heal had not entered a notice of appearance, filed a motion for an extension of time to file appellant's brief, or filed appellant's brief. (Id. at 3) At the November 3, 2014 conference, Mr. Heal again asked the Court for an extension of time to file appellant's brief. (Id. at 4) This Court instructed Mr. Heal to file a motion to consider the appeal out of time by December 3, 2014. (Id. at 6-8; Order (Dkt. No. 13))

After the November 3, 2014 conference, Mr. Heal requested six extensions of time to file appellant's brief, citing his medical condition. (Dkt. Nos. 15-22, 24-25) This Court granted each request, but in connection with the sixth request stated that "[t]here will be no further extensions," and that La Casse was to file his brief by January 19, 2015. (Dkt. No. 25) On January 20, 2015, La Casse filed his brief and a motion for leave to file the brief out of time. (Dkt. Nos. 28, 30) This Court granted La Casse's motion to file out of time, and directed RFC to file an opposition brief. (See Order (Dkt. No. 36) at 6) RFC filed its brief on October 19, 2015. (See RFC Br. (Dkt. No. 41)) On October 1, 2015, Mr. La Casse submitted a letter to this Court stating that "Laird Heal has been suspended from practicing in Federal Court as of two weeks ago, due to health reasons," and requesting an extension of time to retain new counsel and file a

8

## DISCUSSION

On appeal, La Casse contends that the bankruptcy court erred "in finding that the possession of a mortgage loan's Note indorsed in Blank is dispositive under Connecticut law." According to La Casse, possession of a note indorsed in blank creates no more than a rebuttable presumption of standing to bring a foreclosure action, and La Casse had submitted sufficient evidence to rebut the presumption. (La Casse Br. (Dkt. No. 28) at 7-9)

### I.   LEGAL STANDARD

Under Rule 9023 of the Federal Rules of Bankruptcy Procedure, reconsideration is proper "to correct a clear error of law or [to] prevent manifest injustice." Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) (quoting Collision v. Int'l Chem. Workers Union, Local 217, 34 F.3d 233, 236 (4th Cir. 1994)); see In re Emmons-Sheepshead Bay Dev. LLC, 518 B.R. 212, 220 (E.D.N.Y. 2014). "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC), 330 F.3d 111, 123 (2d Cir. 2003) (internal quotation marks and citations omitted); see Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the defendant identifies 'an intervening change of controlling law, the

---

reply brief. (Dkt. No. 40) This Court granted appellant's request and ordered the reply brief to be filed by November 15, 2015. (Id.) On November 16, 2015, Mr. Heal requested another extension of time to file a reply brief. (Dkt. No. 44) That same day, Mr. Heal moved to withdraw as counsel. (Dkt. No. 45) On December 16, 2015, this Court ordered that, unless substitute counsel filed a notice of appearance on behalf of La Casse within thirty days, La Casse would proceed pro se and the appeal would be deemed fully submitted. (Dkt. No. 46)

Larry Ginsberg filed a notice of appearance on January 13, 2016 (Dkt. No. 47), and filed appellant's reply brief on January 15, 2016. (Dkt. No. 48) Mr. Ginsberg filed an amended reply brief on March 8, 2017. (Dkt. No. 51)

availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). A motion for reconsideration "is generally not favored and is properly granted only upon a showing of exceptional circumstances." Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted).

A court's denial of a motion for reconsideration is reviewed for abuse of discretion. See Ayazi v. United Fed'n of Teachers Local 2, 487 F. App'x 680, 681 (2d Cir. 2012); Statek Corp. v. Dev. Specialists Inc. (In re Coudert Bros. LLP), 673 F.3d 180, 186 (2d Cir. 2012); Residential Capital, LLC, No. 15 Civ. 3248 (KPF), 2016 WL 796860, at *7 (S.D.N.Y. Feb. 22, 2016). "A court abuses its discretion when (1) its decision rests on an error of law or a clearly erroneous factual finding; or (2) cannot be found within a range of permissible decisions." Padilla v. Maersk Line, Ltd., 721 F.3d 77, 83 (2d Cir. 2013) (internal quotation omitted); see In re Campbell, 539 B.R. 66, 75–76 (S.D.N.Y. 2015).

"Motions to vacate, alter, or reconsider a bankruptcy court's decisions or findings are governed by Federal Rules of Civil Procedure 52(b), 59(e), and 60(b), which apply to adversary proceedings through Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024, respectively." In re: Emmons-Sheepshead Bay Dev., LLC, 662 F. App'x 100, 103 (2d Cir. 2016). "[S]uch a motion 'suffices to bring up for review the underlying order or judgment, at least where the motion renews arguments previously made.'" Burfeindt v. Postupack, 509 F. App'x 65, 67 n.1 (2d Cir. 2013) (quoting "R" Best Produce, Inc. v. DiSapio, 540 F.3d 115, 121 (2d Cir. 2008)).

## II. ANALYSIS

### A. Connecticut's Burden Shifting Regime

Connecticut law applies a burden shifting regime to determine whether a plaintiff has standing to initiate a foreclosure action:

> [A] holder of a note is presumed to be the owner of the debt, and[,] unless the presumption is rebutted, may foreclose the mortgage under [Connecticut General Statute] § 49–17. "The possession by the bearer of a note indorsed in blank imports prima facie that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie . . . and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Citations omitted; internal quotation marks omitted.) Garris v. Calechman, 118 Conn. 112, 115, 170 A. 789 (1934). [When] the defendant offer[s] no evidence to impeach the validity of [the plaintiff's] evidence that it possessed the note at the time that it commenced the present action or to rebut the presumption that [the plaintiff] owns the underlying debt, and as a matter of law the mortgage follows the note, we conclude that [the plaintiff] [i]s authorized by statute to commence th[e] foreclosure action.

RMS Residential Properties, LLC v. Miller, 303 Conn. 224, 231-32, 32 A.3d 307, 314 (2011) overruled in part by J.E. Robert Co. v. Signature Properties, LLC, 309 Conn. 307, 71 A.3d 492 (2013)[7]; see Equity One, Inc. v. Shivers, 310 Conn. 119, 136, 74 A.3d 1225, 1235-36 (2013);

---

[7] In J.E. Robert Co., the Connecticut Supreme Court clarified that its

> statement in RMS Residential Properties, LLC[,] . . . that "a holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under § 49–17," was not intended to suggest that mere proof that someone other than the party seeking to foreclose is the owner of the note will require dismissal for lack of standing. Rather, under such circumstances, the burden would shift back to the plaintiff to demonstrate that the owner has vested it with the right to receive the money secured by the note. To the extent that our statement in RMS Residential Properties, LLC [v. Miller] can be read otherwise, it is hereby overruled.

J.E. Robert Co., 309 Conn. at 327 n.18. Although Judge Glenn cites RMS Residential Properties, LLC, (Bankr. Denial of Claims (Dkt. No. 5620 in 12-12020-mg) at 10-11; Bankr. Denial of Recon. (Dkt. No. 6156 in 12-12020-mg) at 2), the proposition for which the case is cited – that possession by the bearer of a note indorsed in blank establishes a prima facie case of standing to bring a foreclosure action – is still good law. See Equity One, Inc. v. Shivers, 310 Conn. 119, 136, 74 A.3d 1225, 1235 (2013) (concluding that plaintiff had standing to commence foreclosure action based on its status as the holder of the note); Wells Fargo Bank, N.A. v.

11

Donnelly v. Garvan, 111 Conn. 626, 630, 151 A. 168, 169 (1930); Chase Home Fin., LLC v. Fequiere, 119 Conn. App. 570, 578, 989 A.2d 606, 611 (2010).

### B. The Bankruptcy Court Committed No Error

La Casse contends that the bankruptcy court improperly ruled that RFC's possession of the Weston Note was "dispositive under Connecticut law." As noted above, La Casse asserts that possession of a note indorsed in blank creates no more than a rebuttable presumption of standing to bring a foreclosure action, and that he submitted sufficient evidence to rebut the presumption. (La Casse Br. (Dkt. No. 28) at 7-9) La Casse further argues that "[t]he Supreme Court of the State of Connecticut has stated that if the plaintiff is not the holder of the mortgage loan at the onset of the judicial foreclosure case, then the case is a nonsuit. The Bankruptcy Court decided, erroneously, that it was enough for [RFC] to become holder on a date after the filing of the foreclosure complaint." (Id. at 9) La Casse's arguments are premised on a fundamental misunderstanding of the bankruptcy court's opinions.

As an initial matter, Judge Glenn found that RFC "held the note when it proceeded with the foreclosure, and the note was indorsed in blank." (Bankr. Denial of Claims (Dkt. No. 5620 at 11 (citing Delehey Decl. (Dkt. No. 4635-5 in 12-12020-mg) ¶ 10)) Accordingly, in arguing that Judge Glenn concluded that "it was enough for [RFC] to become

---

Tarzia, 150 Conn. App. 660, 665-66, 92 A.3d 983, 985-86 (2014) (finding standing where plaintiff "availed itself of the rebuttable presumption established in [RMS Residential Properties, LLC]" by pleading that it was the holder of the note and submitting an affidavit that included copies of the note).

Moreover, as discussed below, the bankruptcy court properly found that La Casse had not rebutted the presumption arising from RFC's possession of the Weston Note at the time of the foreclosure. Accordingly, the predicate for the burden-shifting described in J.E. Robert Co. is not present in this case.

12

holder" after the foreclosure action was filed, La Casse simply misapprehends the bankruptcy court's findings.

Judge Glenn further ruled that RFC was "entitled to enforce the note merely by virtue of holding the note." (Id. (citing Vaneck, 95 Conn. App. at 391 ("Connecticut law 'permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage'"))) In denying reconsideration, however, Judge Glenn explicitly acknowledged that RFC's possession of the Weston Note, at the time of foreclosure, was not dispositive. Indeed, Judge Glenn stated that he "d[id] not disagree [with La Casse's contention that a note indorsed in blank is not dispositive], given that ["RMS Residential Properties, LLC v.] Miller holds precisely that." (Bankr. Denial of Recon. (Dkt. No. 6156 in 12-12020-mg) at 2) Judge Glenn found, however, that the evidence submitted by La Casse did not rebut the presumption. (See id. ("Since La Casse did not impeach the Debtors' assertion that RFC possessed the note indorsed in blank at the time it commenced the foreclosure proceeding, but instead challenged ownership of debt relating to the note on the grounds that the mortgage and note had been securitized and was held in trust for another party, La Casse did not rebut the Debtors' evidence that RFC was entitled to foreclose.") (citing RMS Residential Properties, LLC for the proposition that "the production of the note [indorsed in blank] establishes [the noteholder's] case prima facie . . . and [the noteholder] may rest there"); Garris, 118 Conn. at 170.) This Court sees no error in Judge Glenn's determination.

McDonnell's affidavit (see Oct. 22, 2013 McDonnell Aff. (Dkt. No. 5923 in 12-12020-mg) Ex. 3) and underlying report (see Mar. 16, 2012 McDonnell Report (Dkt. No. 5106 in 12-12020-mg) Ex. 5) do not demonstrate that Judge Glenn erred. La Casse argues that, from this evidence, there is a "strong implication . . . that Residential Funding was not the owner of the

13

loan" at the time of the foreclosure. (La Casse Br. (Dkt. No. 28) at 26) However, under Connecticut law, a "strong implication" is not sufficient to rebut the presumption that arises from a noteholder's possession of a note. U.S. Bank N.A. v. Schaeffer, 160 Conn. App. 138, 146-47, 125 A.3d 262 (2015) succinctly summarizes the law on this point:

> The holder of a note seeking to enforce the note through foreclosure must produce the note. The note must be endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. [Schaeffer, 160 Conn. App. at 150.] If the foreclosing party produces a note demonstrating that it is a valid holder of the note, the court is to presume that the foreclosing party is the rightful owner of the debt. Id. The defending party may rebut the presumption that the holder is the rightful owner of the debt, but bears the burden to prove that the holder of the note is not the owner of the debt. Id. This may be done, for example, by demonstrating that ownership of the debt had passed to another party. Id. The defending party does not carry its burden by merely identifying some documentary lacuna in the chain of title that might give rise to the possibility that a party other than the foreclosing party owns the debt. Id. To rebut the presumption that the holder of a note endorsed specifically or to bearer is the rightful owner of the debt, the defending party must prove that another party is the owner of the note and debt. Id. Without such proof, the foreclosing party may rest its standing to foreclose the mortgage on its status as the holder of the note.

JPMorgan Chase Bank Nat. Ass'n v. Simoulidis, 161 Conn. App. 133, 145-46, 126 A.3d 1098, 1106 (2015) (emphasis in original); see Schaeffer, 160 Conn. App. at 151 (that "there was a 'plausible scenario' under which Wachovia might have transferred ownership of the note to some other party [other than to the plaintiff], is wholly insufficient to rebut the presumption that the holder of the note is also the owner of the note and debt").

Here, the bankruptcy court reviewed the evidence submitted by La Casse and concluded that it was insufficient to rebut the presumption of ownership. McDonnell's March 16, 2012 report and October 22, 2013 affidavit state that "the Mortgage Loan [concerning the Weston Property] had been securitized and was allegedly conveyed to HSBC Bank USA, National Association as Trustee for the Luminent Mortgage Trust 2006-3 on April 28, 2006." (Oct. 22, 2013 McDonnell Aff. (Dkt. No. 5923 in 12-12020-mg) Ex. 3 ¶¶ 4, 6; see Mar. 16, 2012

McDonnell Report (Dkt. No. 5106 in 12-12020-mg) Ex. 5 at 14, 22) McDonnell's March 16, 2012 report further represented that the mortgage on the Weston Property was "currently listed as a receivable in a publicly-offered Luminent Mortgage Trust, with HSBC serving as trustee and Wells Fargo serving as the Securities Administrator for the trust." (Bankr. Denial of Claims (Dkt. No. 5620 in 12-12020-mg) at 6-7 (citing Mar. 16, 2012 McDonnell Report (Dkt. No. 5106 in 12-12020-mg) Ex. 5 at 14, 22, 96); see Oct. 22, 2013 McDonnell Aff. (Dkt. No. 5923 in 12-12020-mg) Ex. 3 ¶¶ 4, 6, 10, 14 (stating that, based on her analysis, the note and mortgage were not owned by RFC but "that the Mortgage Loan had been securitized and was allegedly conveyed to HSBC . . . as [t]rustee for the Luminent Mortgage Trust 2006-3 on April 28, 2006"))

La Casse did not offer evidence demonstrating who owned the Weston Note at the time of the foreclosure, however, and – in particular – did not rebut RFC's evidence that it possessed the original Weston Note indorsed in blank on May 18, 2009, when the foreclosure action was commenced. McDonnell's report and affidavit provide merely a partial history of the note and mortgage's securitization, with a focus on 2006 and 2013. But the issue before the bankruptcy court was which entity held and owned the Weston Note as of May 18, 2009. Moreover, as Judge Glenn noted in both his underlying opinion sustaining the objection to La Casse's proof of claim, and in his order denying reconsideration, evidence of the securitization of the mortgage is irrelevant to rebut the presumption, because under Connecticut law, "the mortgage follows the note." RMS Residential Properties, LLC, 303 Conn. at 232; see also Bankr. Denial of Claims (Dkt. No. 5620 in 12-12020-mg) at 10; Bankr. Denial of Recon. (Dkt. No. 6156 in 12-12020-mg) at 2-3.

In Connecticut, "[t]he relevance of securitization documents on a lender's standing to foreclose a mortgage is questionable." Deutsche Bank Nat. Trust Co. v. G.L.A.D.

15

Enterprises, LLC, No. CV085020103, 2015 WL 2166715, at *6 (Conn. Super. Ct. Apr. 4, 2015) (citing D. Caron and G. Milne, Connecticut Foreclosures, (5th ed. 2011) § 30-3, p. 401 and finding that plaintiff – the holder of a note indorsed in blank – had standing to foreclose); see Deutsche Bank Nat. Trust Co. v. Ofili, No. CV146022822, 2015 WL 4726836, at *5 (Conn. Super. Ct. July 2, 2015) (where plaintiff alleged that it was the holder of the note, rejecting defendant's argument "that securitization of the note vitiates the plaintiff's right to bring [foreclosure] action"; "[w]hen a note is endorsed in blank, any person in possession of the note is a holder and is entitled to enforce the instrument" (citing Conn. General Statutes §§ 42a-1-201(b)(21)(A), 42a-3-205(b) and 42a-3-301); "the plaintiff is not required, necessarily, to be the legal owner of the debt at the commencement of the action to foreclose the mortgage. The plaintiff need only have the legal right to do so. . . ."). In sum, "La Casse did not rebut the Debtors' evidence that RFC was entitled to foreclose." (Bankr. Denial of Recon. (Dkt. No. 6156 in 12-12020-mg) at 2-3 (citing RMS Residential Properties, LLC, 303 Conn. at 231-32; Garris, 118 Conn. at 790.))

Although La Casse contends that he was entitled to an evidentiary hearing on the issue of RFC's standing, in most of the cases La Casse cites in support of this argument (see La Casse Br. (Dkt. No. 28) at 19-20), courts ruled that an evidentiary hearing was not required. See Equity One, 310 Conn. at n.12 (denying request for evidentiary hearing); Mengwall v. Rutkowski, 152 Conn. App. 459, 465, 102 A.3d 710, 712-13 (2014) (denying request for evidentiary hearing based on defendant's claim of discrepancy between the original note and a copy of the note); Tarzia, 150 Conn. App. at 665 (finding standing where plaintiff had "avail[ed] itself of the rebuttable presumption established in [RMS Residential Properties, LLC]" by pleading that it was the holder of the note and by submitting copies of the note, mortgage, and

16

assignment of the mortgage; no evidentiary hearing conducted); U.S. Bank, N.A. v. Ugrin, 150 Conn. App. 393, 403, 91 A.3d 924, 931 (2014) (concluding that the defendant had "not presented any evidence to refute the plaintiff's claim that it was the holder of the note at the time the present action was commenced, and, therefore, the court did not err by failing to hold an additional evidentiary hearing."); GMAC Mortg., LLC v. Ford, 144 Conn. App. 165, 174, 73 A.3d 742, 750 (2013) (finding that "there was no need for the court to hold an evidentiary hearing," because "[t]he defendant never asserted . . . that the plaintiff was not the holder of the note or that it did not hold the note at the time that the action was commenced"); see also Deutsche Bank Nat. Trust Co. v. Torres, 149 Conn. App. 25, 32, 88 A.3d 570, 574 (2014) (cited by La Casse, see La Casse Br. (Dkt. No. 28) at 20, but not containing any discussion of evidentiary hearing).

While an evidentiary hearing "ordinarily will be required" "when there is a genuine dispute as to jurisdictional facts," Equity One, 310 Conn. at n.12, no such "genuine dispute" existed here, because La Casse did not offer evidence that rebutted RFC's prima facie case. Indeed, La Casse never offered evidence before the bankruptcy court that RFC did not possess the Weston Note at the time it initiated foreclosure proceedings. Moreover, La Casse has cited no case suggesting that – where a party has established a prima facie case through proof that it held the note at the time of the foreclosure action – providing a partial securitization history is sufficient to justify an evidentiary hearing. See id. at 136 ("the defendant has not demonstrated that he was entitled to a full evidentiary hearing on the issue of the plaintiff's

17

standing; [i]t is apparent that . . . the plaintiff had standing to commence th[e] action" because of "the plaintiff's status as the holder of the note").[8]

In sum, the bankruptcy court did not err in concluding that La Casse failed to "set up and prove the facts" demonstrating that RFC lacked standing to foreclose. See Garris, 118 Conn. at 115.[9] Appellant has not demonstrated that Judge Glenn abused his discretion in denying the motion for reconsideration.

---

[8] In support of his appeal, La Casse references GMAC Mortgage's March 30, 2012 Qualified Written Request. (See La Casse Br. (Dkt. No. 28) at 12-13; Qualified Written Request (Dkt. No. 5923-4 in 12-12020-mg)). A "qualified written request" is

> a written correspondence . . . that-(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

See 12 U.S.C. § 2605(e)(1)(B).

While La Casse alleges that GMAC Mortgage's Qualified Written Request demonstrates RFC's lack of standing, this document supports, rather than undermines, the bankruptcy court's conclusion that RFC had standing to bring the foreclosure action.

The GMAC Mortgage states that "[t]he current Master Servicer is: Residential Funding Company, LLC fka Residential Funding Corporation." (Qualified Written Request (Dkt. No. 5923-4 in 12-12020-mg) at 2) In J.E. Robert Co., the Connecticut Supreme Court held that, pursuant to Conn. Gen. Stat. § 49–17, a loan servicer may bring a foreclosure action in its own right, because it is "the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed." J.E. Robert Co., 309 Conn. at 324 (emphasis omitted); see id. at 319 ("A person entitled to enforce an instrument . . . [also includes] a nonholder in possession of the instrument who has the rights of a holder."); Equity One, 310 Conn. at 127 ("[t]his court . . . has recently determined that a loan servicer for the owner of legal title to a note has standing in its own right to foreclose on the real property securing the note.").

[9] La Casse contends that "[i]n the aftermath of the denial [of his motion for reconsideration] counsel for [RFC] . . . stipulated that it 'was not the owner of the subject note at the time of commencing this foreclosure action.'" (La Casse Br. (Dkt. No. 28) at 11) La Casse argues that "because the stipulation contradicts the facts which the court found apparently conclusive, the . . . matter [should] be set down for a hearing on evidence." (Id. at 12)

## **CONCLUSION**

For the reasons stated above, the judgment of the bankruptcy court is affirmed, and the appeal is dismissed. The Clerk of Court is directed to close this case.

Dated: New York, New York
March 25, 2017

SO ORDERED.

*[signature]*
Paul G. Gardephe
United States District Judge

---

RFC does not dispute La Casse's account (RFC Br. (Dkt. No. 41) at 20), but contends that the alleged stipulation "was not filed in the Foreclosure Action until January 27, 2014, well after the Bankruptcy Court entered the Reconsideration Order on December 19, 2013." (Id.) RFC contends that the stipulation is thus not part of the record on appeal and cannot be considered by this Court. (Id.)

The record on appeal is governed by Bankruptcy Rule 8006. "[T]he touchstone for the designation of matter as part of the record is whether the matter was before the lower court (or at least considered by that court) in entering the order or judgment appealed from." In re Ames Dept. Stores, Inc., 320 B.R. 518, 522 (Bankr. S.D.N.Y. 2005). . . . "[I]f an item was not considered by the court, it should be stricken from the record on appeal." Id. at 521. See also In re Yepremian, 116 F.3d 1295, 1297 (9th Cir. 1997) (holding that deposition and declaration taken after bankruptcy court's grant of summary judgment were not part of record on appeal); In re Tiana Queen Motel, Inc., 34 B.R. 357, 361 (S.D.N.Y. 1983) (holding that a district court, "sitting as an appellate court . . . should not receive into evidence material that was not before the bankruptcy court").

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 389 B.R. 325, 339 (S.D.N.Y. 2008). Given that it is undisputed that the stipulation was never presented to the bankruptcy court, it is stricken from the record on appeal and may not be considered by this Court.

19