USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: Mar 29 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Residential Capital, LLC,

                    Debtor,

Erlinda Abibas Aniel,

                    Appellant,

          -v-

ResCap Borrower Claims Trust,
                    Appellee.

16-cv-3704 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

        Appellant Erlinda Aniel, proceeding *pro se*, appeals three Bankruptcy Court decisions

collectively sustaining the objections of Appellee ResCap Borrower Claims Trust ("the Trust")

to two claims Aniel filed in the bankruptcy proceedings below.  Aniel's claims primarily stem

from a dispute with debtors GMAC Mortgage, LLC ("GMACM") and Executive Trustee

Services ("ETS") over their efforts to foreclose on a piece of property Aniel owned in California.

For the reasons that follow, the judgment of the Bankruptcy Court (Glenn, J.) is AFFIRMED.


I.      **BACKGROUND**[1]

        A.      **Factual Background**

---

[1] The facts set forth herein are taken from the record on appeal, as designated by the parties.  When citing
to a Bankruptcy Court docket number from *In re Residential Cap., Inc.* No. 12-12020 (MG) (Bankr. S.D.N.Y. May
14, 2012) (Dkt. No. 1), the Court uses the citation convention "Bk. Dkt. No."  When citing to the district court
docket, the Court uses the convention "Dist. Dkt. No."

This appeal arises out of the consolidated bankruptcies of a group of entities, including GMACM, that acted as lenders and servicers for residential mortgages. Those entities filed petitions for bankruptcy under Chapter 11 of the Bankruptcy Code on May 14, 2012. *See* Bk. Dkt. Nos. 1, 59. The Bankruptcy Court confirmed the Chapter 11 Plan ("the Plan") on December 11, 2013, and the Plan took effect on December 17, 2013. Bk. Dkt. Nos. 6065, 6137. One component of the Plan was the creation of the Borrower Claims Trust, which was established for the benefit of borrowers who have claims against the debtor entities and their predecessors in interest. Bk. Dkt. No. 6065, App. 1 ("the Plan") at 6. The Plan sets out a procedure for objecting to claims made by borrowers and a timeframe in which those objections must be made. Aniel is one of the borrowers who lodged a claim against the Trust.

The background facts of that claim are as follows. On June 4, 2007, Aniel obtained a $2,000,000 refinance loan from MortgageIT, Inc. *See* Bk. Dkt. No. 9850 at 3 (hereafter "2016 Op.").[2] The loan was evidenced by a note executed by Aniel and secured by a deed of trust encumbering property located in Hillsborough, California. *Id.* On or around July 1, 2007, the Aniel loan was transferred to HSBC Bank U.S.A. as the trustee for a mortgage-backed security, known as DALT 2007-AO5. *Id.* According to the trial testimony of Kathy Priore, Associate Counsel for the Trust, the deed of trust was registered with Mortgage Electronic Registration Systems, Inc. ("MERS"). *See* Trial Tr. at 88; Bk. Dkt. No. 9112.[3] Priore also testified that it is common that, while a loan would be transferred to a security, the deed of trust would remain in

---

[2] The following facts are primarily taken from the Bankruptcy Court's findings of fact, made after a trial on one aspect of the Appellant's claim, as well as, where noted, other relevant portions of the record. Additionally, Aniel submitted a record on appeal, paginated beginning with AA0001. *See* Dist. Dkt. Nos. 5, 11. Where applicable, the Court cites to that record.

[3] The trial transcript for the March 24-25, 2016 trial appears at Bk. Dkt. Nos. 9820 and 9822. The Court hereafter cites to the trial transcript using the convention "Trial Tr. at #."

the MERS system until such time as there was a "default [on the loan] or bankruptcy [of the

borrower]." *Id.* MERS assigned the deed of trust to HSBC Bank pursuant to an agreement

executed on August 24, 2009. 2016 Op. at 4. GMACM was the subservicer of the Aniel loan

since its inception on June 4, 2007, until February 16, 2013, when servicing rights were

transferred to non-debtor Ocwen Financial Corporation (hereafter "Ocwen"). *See id.*

After Aniel stopped making payments on the loan in 2008, MERS substituted ETS as

trustee of the deed of trust. *Id.* ETS then recorded an initial notice of default. *Id.* Over the next

several years, Aniel contacted GMACM, seeking, *inter alia*, modification of the terms of her

loan, which GMACM ultimately denied on January 19, 2009. Bk. Dkt. No. 8820 at 7-8

(hereafter "2015 Op."). In February 2009, Aniel declared bankruptcy. *See id.* at 8.

On February 1, 2011, HSBC Bank assigned the deed of trust to GMACM. *See* 2016 Op.

at 4. The assignment was executed by Mira Smoot, an employee of GMACM. *See id.*

Thereafter, ETS, after rescinding the 2008 notice of default on the Aniel's property because it

was no longer timely, and after GMACM repeatedly failed in its attempts to contact Aniel,

recorded a subsequent notice of default, and scheduled a sale of the property for August 27,

2012. *Id.* at 4. No foreclosure ultimately occurred prior to the transfer of servicing rights of the

loan to Ocwen in 2013. *Id.* at 5.

On August 9, 2012, Aniel filed a complaint in the United States District court for the

Northern District of California asserting claims against GMACM and ETS. *See* 2015 Op. at 10;

AA0009-45 (including the full text of the Complaint) (hereafter "Complaint"); *see also Aniel v.

GMAC Mortgage et al.*, No. 4:12-cv-4201 (SBA) (N.D. Cal. Aug. 9, 2012) (Dkt. No. 1).[4] That

---

[4] Judge Armstrong denied Aniel's motion for a temporary restraining order enjoining sale of her property on October 30, 2012. *See Aniel v. GMAC Mortg., LLC*, No. C 12-04201 (SBA), 2012 WL 5373388, at *1 (N.D. Cal. Oct. 30, 2012).

action was ultimately stayed pending the bankruptcy proceeding. *See Aniel*, No. 4:12-cv-4201
(SBA) (N.D. Cal. Jun. 12, 2014) (Dkt. No. 49). Aniel filed proofs of claim 416 and 417 in the
underlying Bankruptcy Action on August 20, 2012, and attached her August 9 Complaint. *See*
Bk. Dkt. No. 8237-5; AA0002-93. The proofs of claim relied on and incorporated the
allegations and claims in the Complaint. *See id.*

In her Complaint, Aniel asserted causes of action for, *inter alia*, wrongful disclosure,
including violations of California Civil Code §§ 2934.5 and 2924, violation of the Fair Debt
Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, violation of the Real Estate Settlement
Practices Act, 12 U.S.C. § 2605, an action to set aside and cancel the trustee's upcoming sale,
declaratory relief, quiet title, and fraudulent concealment. *See AA0024-43.*

In particular, in support of these causes of action, Aniel made numerous allegations
attacking the series of transfers and assignments through which HSBC, GMACM, and ETS
acquired title over the note and deed of trust. Among other allegations, Aniel alleged that the
note was never properly transferred to the securitized trust on the basis, *inter alia*, that various
components of the securitization process, including the 2009 assignment of the deed of trust to
HSBC, violated the terms of the Pooling and Service Agreement ("PSA") governing the security.
*See*, e.g., Complaint ¶¶ 33, 47.

In addition to alleging that the securitization process – and subsequent assignments –
were defective on the basis that they violated the terms of the trust, Aniel also alleged that
various transfers and assignments were fraudulent documents created by GMACM and others to
fabricate a chain of title in order to foreclose on Aniel's property. In particular, she alleged that
the 2009 assignment of the deed of trust by MERS to HSBC never properly occurred, that the
woman who purported to sign the transfer document, Janine Yamoah, had no corporate authority

4

from MERS to effectuate the assignment (and was in fact an employee of GMACM), and that

Yamoah was a robo-signer. *Id.* ¶ 44. Plaintiff also alleged that the 2011 transfer was fraudulent

for similar reasons – that Mira Smoot, who signed the assignment on behalf of HSBC, lacked the

authority to do so, and was, in any event, a robo-signer. *Id.* ¶ 47.

### B.    Procedural History

As noted, on August 20, 2012, Aniel filed claims 416 and 417 in the underlying

Bankruptcy Action. *See* Bk. Dkt. No. 8237-5; AA0002-94. She attached the August 9

Complaint, which provided the basis for her claims. *See id.* The Trust thereafter filed an

objection to the claims, arguing that Aniel failed to state a claim because the allegations that the

2009 and 2011 assignments were fraudulent were conclusory and rebutted by relevant evidence,

and Aniel lacked standing to challenge the securitization of the loan, as she was not a party to the

Pooling and Servicing Agreement. *See* Bk. Dkt. No. 8237 ¶¶ 73-101; 2015 Op. at 13-14.

In a decision issued on June 30, 2015, the Bankruptcy Court sustained in part, and denied

in part, the Trust's objections. *See generally* 2015 Op. Much of this decision is not relevant to

the appeal, but the Court notes two holdings of significance.

The first holding of note in the 2015 Opinion pertains to standing. The Court addressed

Aniel's argument that the note and deed of trust were not transferred to the DALT 2007-AO5

security prior to the closing date of that trust, a purported violation of the Pooling and Servicing

Agreement that rendered the 2009 assignment defective. *See id.* at 28-31. The Bankruptcy

Court held that Aniel lacked standing to challenge any purported defects in the securitization of

the note or deed, because under California law, "plaintiffs lack standing to challenge

noncompliance with a PSA in securitization unless they are parties to the PSA or third party

5

beneficiaries of the PSA." *Id.* at 29 (quoting *Shknolnikov v. JPMorgan Chase Bank*, No. 12-03996 (JCS), 2012 WL 6553988, at *13 (N.D. Cal. Dec. 14, 2012)). The Bankruptcy Court acknowledged a decision by the California Court of Appeals that appeared to take a contrary position, *Glaski v. Bank of Am., Nat'l Ass'n*, 218 Cal. App. 4th 1079 (Cal. Ct. App. 2013). *See* 2015 Op. at 29. In that case, the California Court of Appeals held that a plaintiff could argue that the assignment or transfer of her "note and loan" to a securitized trust was defective, on the ground that "the assignment of the … deed of trust did not occur by the closing date [of the trust, as required in the Pooling and Servicing Agreement]." 218 Cal. App. 4th at 1093. The *Glaski* Court first held that a plaintiff would have standing to challenge assignment of a deed of trust if any defect in the assignment rendered it void, rather than merely voidable by the parties to the assignment. *See id.* at 1094-95. The court then went on to conclude that, under New York law, transfers that violate the terms of a pooling and servicing agreement are void, not voidable. *See id.* at 1096 (citing N.Y. Est. Powers & Trusts § 7-2.4); *see also* 2015 Op. at 30. In declining to follow *Glaski*, the Bankruptcy Court explained that *Glaski*'s holding had been undermined by a subsequent decision, *Rajamin v. Deutsche Bank National Trust Co.*, 757 F.3d 79 (2d Cir. 2014). 2015 Op. at 30. In that case, the Second Circuit held that under § 7-2.4, "unauthorized acts of a trustee may be ratified by the trust's beneficiaries," and thus, under New York law, "such acts are not void but voidable." *Id.* at 90; *see also* 2015 Op. at 31. Relying in part on *Rajamin*, the Bankruptcy Court held that Aniel lacked standing to challenge purported defects in the securitization of her loan. *See* 2015 Op. at 31.[5]

---

[5] In reaching its decision, the Bankruptcy Court appeared to take the following approach to choice-of-law issues governing the standing question. First, it determined that California law governed the question of under what circumstances a plaintiff would have standing to challenge an assignment or transfer of her loan in the context of a wrongful foreclosure cause of action – in particular, whether she would need to allege that the transfer or assignment was voided by a particular defect, or merely rendered voidable. *See* 2015 Op. at 29-31. On the other hand, as to whether a violation of the terms of a securitized trust created in New York renders a transfer or assignment void or voidable, the Bankruptcy Court adopted New York law, and thus relied on *Rajamin*. *See id.* at 31 (noting that "[t]he

Second, in the 2015 Opinion, the Bankruptcy Court addressed Aniel's argument that

certain assignments, including the 2009 and 2011 assignments of the deed of trust, were

improper or fraudulent. *See id.* at 34. As to MERS's 2009 assignment of the deed of trust to

HSBC Bank, the Bankruptcy Court concluded that Aniel "provided no reason why Yamoah," the

employee of MERS who executed the assignment, "lacked authority to sign . . . on behalf of

MERS," and that allegations that Yamoah was a mere robo-signer were "conclusory and lack[ed]

factual support." *Id.* The Bankruptcy Court further noted that the Trust had provided evidence

that Yamoah was in fact an authorized employee of MERS. *Id.* As to the 2011 assignment of

the deed of trust from HSBC to GMACM by Mira Smoot, the Bankruptcy Court found that the

"Trusts ha[d] not submitted evidence conclusively establishing the validity of the . . .

[a]ssignment." *Id.* Because "[w]hether Smoot indeed had authority to execute the 2011 Aniel

Assignment [on behalf of HSBC] [was] a contested matter," the Bankruptcy Court overruled the

objection to various claims, including the wrongful foreclosure cause of action, to the degree that

such claims turned on the factual argument that the 2011 assignment was defective. *Id.* The

Bankruptcy Court thus scheduled a trial to assess the validity of the 2011 assignment, a factual

question on which the remaining claims all turned. *Id.* at 47.

On February 25, 2016, the Bankruptcy Court entered a joint pretrial order identifying

four issues to be tried. *See* Bk. Dkt. No. 9678; *see also* 2016 Op. at 2. Of those, two are

significant to this appeal: "Whether Mira Smoot had sufficient authority to execute the 2011

Assignment as an authorized officer of HSBC," and "whether the assignment of the Deed of

---

Second Circuit's decision in *Rajamin*, resolving an issue of New York law in the absence of controlling authority by
the New York Court of Appeals, is binding precedent on this Court"). The Bankruptcy Court thus adopted the
approach to choice-of-law taken in *Glaski*. *See Glaski*, 218 Cal. App. 4th at 1094-97 (first stating that, under
California law, a borrower may challenge a foreclosure on the ground that an assignment was void, *id.* at 1094-95,
and then applying New York law to the question of whether violations of the securitized trust's requirements
rendered particular transfers or assignments void, *id.* at 1096-97). On appeal, neither party challenges this
approach, and the Court assumes that it is correct.

Trust is void." 2016 Op. at 2. After a two-day trial on March 24-25, 2016, the Bankruptcy Court

issued its 2016 Opinion, which found for the Trust on both issues. *See id.* at 3.

First, in its 2016 Opinion, the Bankruptcy Court found that evidence at the trial, including

testimony and documentary evidence, established that Smoot was an officer of GMACM with

the authority to execute assignments, and that HSBC had authorized GMACM to make such

assignments on its behalf – which in turn provided Smoot with the authority to do so on HSBC's

behalf. *See id.* at 7. In support of this conclusion, the Bankruptcy Court cited to a 2008 Power

of Attorney executed by HSBC granting GMACM the power to, *inter alia*, "execute . . .

assignments of deed of trust/mortgage and other recorded documents" on HSBC's behalf. *Id.* at

8 (quoting Dist. Dkt. No. 6-1 at 1 (hereafter "Power of Attorney")). The Bankruptcy Court

found that credible witnesses at trial established that HSBC had validly executed the Power of

Attorney. *See id.* It then addressed Aniel's argument that the Power of Attorney, executed in

2008, could not and did not provide GMACM or its authorized officers the power to assign her

particular deed of trust in 2011, as that deed of trust was itself assigned to HSBC in 2009, after

the date of the Power of Attorney's execution. *Id.* at 9. Rejecting this argument, the Bankruptcy

Court held that "the Claimants fundamentally misconceive the nature of the 2008 Power of

Attorney." *Id.* That document "did not purport to convey to GMACM power over ... certain

specific of deeds of trust then held by HSBC, but rather it conveyed to GMACM HSBC's

powers over deeds of trust then owned or thereafter acquired and deposited into securitization

trusts over which GMACM acted as loan servicer." *Id.* (emphases omitted). The Bankruptcy

Court noted that the exhibit attached to the Power of Attorney stated that "GMACM Mortgage is

the Servicer for many securitizations ... now in existence *and that will be formed from time to*

*time.*" *Id.* at 10 (quoting Power of Attorney at 1) (emphasis in quoting source). It further

8

observed that an exhibit attached to the Power of Attorney and listing the securitizations then serviced by GMACM included DALT 2007-AO5. *Id.*

Having found that Smoot lawfully executed the 2011 assignment from HSBC to GMACM, the Bankruptcy Court concluded that GMACM had title to the deed of trust after 2011, and that Aniel's claims premised on the contrary proposition necessarily failed. *See id.* at 12.

On August 9, 2016, the Bankruptcy Court denied Aniel's motion for reconsideration. *See* Bk. Dkt. No. 10031. Aniel now appeals from the 2015 and 2016 Opinions, as well as the August 9 motion for reconsideration.

## II.    LEGAL STANDARD

A district court reviews a bankruptcy court's legal conclusions *de novo*, but it must accept the bankruptcy court's factual findings "unless clearly erroneous." *In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005) (internal quotation marks omitted). A finding is "clearly erroneous" when "the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted). A reviewing court must give "particularly strong deference" to a bankruptcy court's "findings of fact based on credibility assessments of witnesses it has heard testify." *In re Boyer*, 328 F. App'x 711, 716 (2d Cir. 2009) (summary order) (quoting *United States v. Canova*, 412 F.3d 331, 357 (2d Cir. 2005)). If, as here, a litigant is proceeding *pro se*, it is "well established" that her submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

When a party in a bankruptcy proceeding correctly files a proof of claim, that "constitutes

prima facie evidence of the validity of the claim." *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d

Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000). In order to "overcome this prima facie evidence," a

party objecting to the claim "must come forth with evidence which, if believed, would refute at

least one of the allegations essential to the claim." *Id.* If the objecting party does so, the burden

shifts "back to the claimant, [who] must then prove by a preponderance of the evidence that

under applicable law the claim should be allowed." *In re Motors Liquidation Co.*, No. 12-CV-

6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks

omitted).

Additionally, "[t]he Court may affirm [a bankruptcy court's decision] on any ground that

finds support in the record." *Freeman v. J. Reg. Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010). On

the other hand, arguments not made to the bankruptcy court are ordinarily deemed waived on

appeal. *See In re Best Payphones, Inc.,* 432 B.R. 46, 60 (S.D.N.Y. 2010), *aff'd*, 450 F. App'x 8

(2d Cir. 2011) (summary order). The rule that arguments made for the first time on appeal are

generally deemed waived applies as well to pro se litigants. *See, e.g.*, *Woodson v. Loram Maint.*

*of Way Inc.*, 518 F. App'x 9, 9–10 (2d Cir. 2013) (summary order); *Richards v. Calvet*, 249 F.

App'x 840, 841–42 (2d Cir. 2007) (summary order).

## III.    DISCUSSION

On appeal, Aniel challenges three specific determinations of the Bankruptcy Court. *See*

Dist. Dkt. No. 5 (hereafter "Appellant Br."). First, she argues that the Bankruptcy Court erred in

finding that the 2008 Power of Attorney gave Mira Smoot the power to assign HSBC's deed of

trust to GMACM. *See id.* at 6-10. Second, she argues that the 2011 assignment is void because

10

GMACM could not, using the power provided by HSCBC, assign the deed of trust to itself, as such assignment would constitute an improper "gift" which GMACM was not permitted to make. *See id.* at 10-11. Third, Aniel argues that the Bankruptcy Court made a legal error when it held that she lacked standing to challenge the securitization of her loan. *See id.* at 13-15. The Court addresses each argument in turn, and finds each without merit.

### A. The Scope of the 2008 Power of Attorney

First, the Court rejects Aniel's argument that the Bankruptcy Court erred in finding that Smoot, an officer of GMACM, had sufficient authority to execute the 2011 assignment on HSBC's behalf. In particular, Aniel argues that, because HSBC received title to the deed of trust from MERS in 2009, but executed the Power of Attorney in 2008, the 2008 Power of Attorney could not have provided GMACM the necessary authority to assign that deed of trust to itself. *See* Appellant Br. at 6-10. Aniel is correct that, although the Power of Attorney form provided GMACM the power to, *inter alia*, "execute, acknowledge, seal, and deliver . . . assignments of deed of trust/mortgage and other recorded documents," as well as "do any other act or complete any other document that arises in the normal course of servicing," it did not clearly specify to which deeds of trust the power of attorney applied, or the temporal scope of those powers. *See* Power of Attorney at 1. Nevertheless, the Bankruptcy Court found, as fact, that the document "did *not* purport to convey to GMACM powers over ... certain specific deeds of trust then held by HSBC, but *rather* . . . conveyed to GMACM HSBC's power over deeds of trust then owned or thereafter acquired and deposited into securitization trusts for which GMACM acted as loan servicer." 2016 Op. at 9. In support of this factual conclusion, the Bankruptcy Court primarily relied on language in the Power of Attorney itself. *See id.* The trial evidence further corroborated the Bankruptcy Court's conception of the scope of the Power of

11

Attorney, as created to allow GMACM to effectuate its duties as servicer of the securitized trusts

cited therein, including any loans or deeds of trusts that would be deposited into such securities

while GMACM was serving as the servicer. *See* Trial Tr. at 35 (in which a current employee of

HSBC who worked there in 2008 testified that the "limited power of attorney was signed so that

it could be given to the servicer to perform their duties as servicer for loans that they service");

*id.* at 47 (in which another HSBC employee testified that "the [Power of Attorney] is basically

allowing the servicer to sign on behalf of HSBC for performing whatever they need as a

servicer," and clarified that such powers include "assigning and assignment of the deed"). The

text of the Power of Attorney coupled with this trial evidence establishes that the Bankruptcy

Court's determination as to the scope of the Power of Attorney was not "clearly erroneous" and

therefore may not be set aside by this Court. *In re Enron Corp.*, 419 F.3d at 124.


### B. GMACM's Assigning of the Deed of Trust to Itself

Second, Aniel argues that GMACM's assignment of the deed of trust to itself constituted

a "gift," and that there was insufficient evidence in the record "of the intent of HSBC" to allow

GMACM to transfer the deed to itself. *See* Appellant Br. at 11. This argument does not provide

grounds for reversal.

As a preliminary matter, this argument was not timely made to the Bankruptcy Court, and

this Court therefore deems it waived. *See* Dist. Dkt. No. 6 at 12-13 (hereafter "Appellee Br.").

As noted, the rule that arguments not made to a lower court are waived on appeal applies to pro

se and non-pro se litigants alike. *See, e.g., Woodson*, 518 F. App'x at 9–10; *Richards*, 249 F.

App'x at 841–42. Aniel did not make the argument that the 2011 assignment constituted an

improper gift in her pretrial memorandum. *See* Bk. Dkt. No. 9742; AA282-291. Instead, Aniel

first made the argument in a letter she filed with the Bankruptcy Court on May 5, 2016, seeking

to supplement her previously filed motion to reconsider the Bankruptcy Court's 2016 opinion –

well after trial had concluded. *See* Bk. Dkt. No. 9878. In its order denying that motion, the

Bankruptcy Court acknowledged that the letter was filed, *see* Bk. Dkt. No. 10031 at 1, but did

not explicitly address the argument other than by citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136,

144 (2d Cir. 1998) and holding that "[p]arties cannot use a motion for reconsideration to advance

new facts or arguments." Bk. Dkt. No. 10031 at 3-4. The Court agrees that the argument is

waived.

In any event, were the Court to reach the argument and review the record, the Court

would not find that the 2011 assignment constituted a "gift" GMACM made to itself without

HSBC's permission. Instead, testimony at the trial demonstrates that GMACM assigned the

deed of trust to itself as part of its duties as a loan servicer, and not as an unauthorized gift, and

that HSBC contemplated and authorized such assignments. *See* Trial Tr. at 101 (in which Kathy

Priore, Associated Counsel for the Trust, testified that "[t]he pooling and servicing agreement

would generally allow the trustee to appoint its subservicer to conduct the foreclosure on its

behalf. There wouldn't have been a – it wasn't being sold – the loan wasn't being sold to

GMAC Mortgage. The deed of trust was just being assigned to them to complete the

foreclosure."); *id.* at 102 ("The purpose of the assignment of the deed of trust is to assign the

deed to the servicer to conduct the foreclosure on its behalf."); *id.* at 131-32 ("[The o]wner of the

loan has always remained HSBC after it was securitized. GMAC Mortgage was the servicer.

And yes, they were assigned a beneficial – assignment of the deed of trust was assigned to

GMAC Mortgage in 2011, solely to do a bankruptcy or foreclosure issue."). In short, Aniel's

argument is waived and, in any case, without merit.

## C. The Bankruptcy Court's Standing Analysis

### 1. Aniel's Standing to Challenge Defects in the Securitization of her Loan

Finally, Aniel contests the Bankruptcy Court's holding in its 2015 Opinion that she
lacked standing to pursue certain arguments before that court. In particular, she contends that the
Bankruptcy Court erred in holding that she lacked standing to challenge alleged defects in the
securitization of her loan on the basis that certain assignments failed to comport with
requirements in the Pooling and Servicing Agreement.

As outlined above, in her Complaint and her opposition to the Trust's objections, Aniel
alleged that the process through which her loan was securitized violated specific requirements in
the Pooling and Servicing Agreement, and that such defects rendered the 2009 assignment of her
deed of trust to HSBC invalid. *See, e.g.*, AA176-77.

In its 2015 Opinion, the Bankruptcy Court held that Aniel lacked standing to make such
an argument. *See* 2015 Op. at 29-31. Aniel argues now that this holding was error, and was
predicated on a mistaken rejection of the holding in *Glaski*, the California Court of Appeals
decision that has since been affirmed by the California Supreme Court. The Court disagrees.
The Bankruptcy Court held that binding Second Circuit authority disagreed with *Glaski*'s
interpretation of New York trust law, and on that basis found that Aniel lacked standing to make
the arguments in question. *See id.* at 31 (citing *Rajamin*, 757 F.3d at 90). This determination
was correct.

In *Glaski*, the Court of Appeals first held that "a borrower can challenge an assignment of
his or her note and deed of trust if the defect asserted would void the assignment," rather than

simply make the assignment voidable. *Glaski*, 218 Cal. App. 4th at 1095 (emphasis omitted).[6]

The *Glaski* Court went on to conclude that "a borrower may challenge the securitized trust's

chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust

(which was formed under N.Y law) occurred after the trust's closing date," on the basis that

"[t]ransfers that violate the terms of the trust instrument are void under New York trust law, and

borrowers have standing to challenge void assignments of their loans even though they are not a

party to, or a third party beneficiary of, the assignment agreement." *Id.* at 1082-83. In a

subsequent decision issued after the Bankruptcy Court's 2015 Opinion, the California Supreme

Court endorsed *Glaski*'s standing framework, agreeing that "an allegation that the assignment

was *void*, and not merely voidable at the behest of the parties to the assignment, will support an

action for wrongful foreclosure." *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 923

(Cal. 2016) (emphasis added); *see also id.* at 939-40 ("In embracing *Glaski*'s rule that borrowers

have standing to challenge assignments as void, but not as voidable, we join several courts

around the nation."). Aniel argues that *Yvanova* establishes that the Bankruptcy Court erred in

declining to follow *Glaski*.

It is true that *Yvanova* overturned certain cases positively cited by the Bankruptcy Court

that had held that a plaintiff could not challenge an assignment without clearly distinguishing

between void and voidable assignments. *See* 2015 Op. at 31 (citing, *Jenkins v. JP Morgan*

*Chase Bank N.A.*, 156 Cal. Rptr. 3d 912, 927 (Cal. Ct. App. 2013)). But the Bankruptcy Court's

---

[6] "A void contract is without legal effect." *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 929 (Cal. 2016). "A voidable transaction, in contrast, 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.'" *Id.* (quoting Rest. 2d Contracts, § 7). "It may be declared void but is not void in itself." *Id.*

15

ultimate determination that Aniel could not challenge purported defects in the securitization

process was nevertheless proper.

The Bankruptcy Court explained that *Glaski*, even taking its approach to standing as

correct, was infirm insofar as it held that defects in the securitization process of a loan render

transfer of the loan or deed of trust void, rather than voidable, under New York law. That is

because subsequent Second Circuit authority expressly disagreed with *Glaski*'s understanding of

New York trust law. *See id.* at 31 (citing *Rajamin*, 757 F.3d at 90).

In *Rajamin*, the plaintiff had also argued that assignments of deeds of trust were void as

they were "executed and publicly recorded . . . years after the securitization transactions took

place." *Id.* at 82. Addressing this argument, the Second Circuit held that, "even if plaintiffs had

standing" to challenge an assignment as "invalid, ineffective, or void," New York trust law did

not render assignments void on the basis of non-compliance with the trust instrument, but merely

voidable. *Id.* at 88-89 (internal quotation marks omitted); *see also id.* at 91 ("[W]e reject

plaintiffs' contention that the assignments of some of plaintiffs' mortgages were void because

the assignments were recorded after the closing dates of the Defendant Trusts . . . . To the extent

that plaintiffs argue that these assignments violated the PSAs, the argument . . . is not one that

plaintiffs have standing to make."). The Bankruptcy Court cited *Rajamin* for the proposition

that, even if *Glaski*'s approach to standing was correct, its ultimate answer to the standing

question before it – whether a plaintiff had standing to challenge defects in a securitization

process for a trust created under New York law – was based on an erroneous understanding of

New York trust law. 2015 Op. at 30-31. This holding by the Bankruptcy Court was correct, and

nothing in *Yvanova* or other subsequent cases contradicts it. *See Yvanova*, 62 Cal. 4th at 931

("*Glaski* held allegations that the plaintiff's note and deed of trust were purportedly transferred

16

into the trust after the trust's closing date were sufficient to plead a void assignment and hence to establish standing. This last holding of *Glaski* is not before us."); *see also Mendoza v. JPMorgan Chase Bank, N.A.,* 212 Cal. Rptr. 3d 1, 11 (Cal. Ct. App. 2016), *review denied* (Mar. 22, 2017) (collecting cases for the proposition that "post-*Yvanova* California appellate courts . . . have embraced the emerging consensus that assignments, which allegedly violate PSA's and federal law are voidable rather than void, and as a result, borrowers do not have standing to challenge late transfers or other defects in the securitization process").[7]

On appeal, Aniel attempts to avoid *Rajamin* by asserting that she argued to the Bankruptcy Court that the late assignment of the deed of trust rendered that assignment void, rather than voidable. *See* Reply at 3. She argues that "because the 2009 Assignment took place after the closing date, that Assignment is VOID," and further notes that "Appellee offers no arguments or facts to establish that the securitized trust ratified the Assignment at a latter time." *Id.* This argument is precisely the argument the Bankruptcy Court, and *Rajamin*, held Aniel lacks standing to make. *See Rajamin*, 757 F.3d at 89 ("Because, as the above authorities demonstrate, a trust's beneficiaries may ratify the trustee's otherwise unauthorized act, and because a void act is not subject to ratification, such an unauthorized act by the trustee is not void but merely voidable by the beneficiary." (internal quotation marks and citation omitted)). Aniel illuminates no error in the Bankruptcy Court's analysis, and the Court sees none.

---

[7] The Court notes that at least one California appeals court has interpreted *Yvanova*'s standing rule to apply only in the "post-foreclosure context," rather than to "pre-foreclosure" suits. *Saterbak v. JPMorgan Chase Bank, N.A.*, 199 Cal. Rptr. 3d 790, 795–96 (2016), *reh'g denied* (Apr. 11, 2016*), review denied* (July 13, 2016) (stating that "*Yvanova*'s ruling is expressly limited to the post-foreclosure context. Because [plaintiff] brings a preforeclosure suit challenging Defendant's ability to foreclose, *Yvanova* does not alter her standing obligations"). If *Yvanova* is indeed so limited, then it might not be relevant whether Aniel alleged the assignments in this case were void or voidable. *See* 2016 Op. at 12 (noting that "at the time servicing was transferred [from GMACM] to Ocwen, there had been no foreclosure sale and the Aniels continue to live on the property"). The Court need not reach this argument, however, as even assuming *Yvanova* applies in the pre-foreclosure context, the Bankruptcy Court's decision was correct.

**2.  Aniel's Other Challenges to the 2009 Assignment of the Deed of Trust**

In addition to challenging the basic contours of the Bankruptcy Court's standing decision,

Aniel makes one additional argument for reversal related to the Bankruptcy Court's standing

analysis.  Aniel seems to contend that the Bankruptcy Court, in its 2015 opinion, held that she

lacked standing to argue that the 2009 assignment was fraudulent or fabricated by GMAC on the

basis, *inter alia*, that it was executed by an individual who lacked corporate authority from

MERS to effectuate the assignment and who was a robo-signer.  *See* Reply at 3 (arguing that

GMAC "created the [2009 and 2011] assignments themselves with many inaccurate statements,"

but that "[b]ecause of the Bankruptcy Court's initial [2015 standing decision,] Appellant could

not discuss the circumstances of the 2009 assignment of the Deed because it was assumed to be

valid without any factual support"); *see also* Appellant Br. at 13 (contending that the Bankruptcy

Court prevented Aniel from arguing that "[t]he [2009] Assignment to DALT2007-AO5 took

place after the closing date under the terms of the PSA, which gives proper inference that the

Assignment was likely fabricated"); *see also* Complaint ¶ 44 (alleging that the 2009 Assignment

was fabricated).  Because the allegation that an assignment is fraudulent or fabricated may be

distinct from an allegation that the assignment failed to comply with the requirements of a trust

instrument, Aniel argues that the Bankruptcy Court's rejection of her argument on standing

grounds was error.  This argument provides no basis for reversal for two reasons.

First, it is not evident that Aniel has standing to challenge the 2009 assignment on the

grounds that it was robo-signed.  Post *Yvanova*, at least one California appeals court has held that

"plaintiff homeowners lack standing to challenge the validity of robo-signatures" on the grounds

that such defects render an assignment voidable, and not void.  *Mendoza,* 212 Cal. Rptr. 3d at 15.

To the degree that the Bankruptcy Court held that Aniel lacked standing to challenge the 2009

assignment on that ground, then, it likely would not have been legal error.

Nevertheless, even assuming Aniel has standing to make such an argument, the

Bankruptcy Court did not error in its analysis of this issue. That is because, contrary to Aniel's

assertion on appeal, the Bankruptcy Court did not hold that she lacked standing to challenge the

2009 assignment as fabricated. It instead reached, and rejected, her argument that the 2009

assignment was fraudulent on the merits.

A review of the Bankruptcy Court's 2015 Opinion makes this conclusion evident. In its

2015 Opinion, the Bankruptcy Court held that Aniel lacked standing to challenge defects in the

securitization of her loan because she was not a party to the Pooling and Servicing Agreement.

*See* 2015 Op. at 13, 29-31; *see also id.* at 29 (noting that courts have held that "plaintiffs lack

standing to challenge noncompliance with a PSA in securitization unless they are parties to the

PSA or third party beneficiaries of the PSA" (internal quotation marks omitted)); *id.* at 31

("Because the Aniels have not alleged that they are parties to, or beneficiaries of, the [pooling

and servicing agreement] . . . they lack standing to challenge the securitization of the Aniel

Loan."). It did not hold that she lacked standing to challenge the 2009 and 2011 assignments in

any capacity. Instead, in that same opinion, the Bankruptcy Court addressed the merits of

Aniel's allegations that these assignments were fabricated. As to the 2009 assignment, the

Bankruptcy Court agreed with the Trust's contention that allegations of robo-signing were

conclusory, and cited to evidence the Trust provided that the executor of that assignment had

authority to execute it. *See id.* at 34. As to the 2011 assignment, the Bankruptcy Court found

that the Trust had not provided evidence that the assignment was properly executed; it thus

allowed Aniel to contest the validity of the 2011 assignment at a subsequent trial. *See id.*

19

Analysis of the proceedings at that trial further confirms the conclusion that the Bankruptcy Court did not prevent Aniel from challenging the 2009 assignment as fraudulent on standing grounds. At the 2016 trial, the Bankruptcy Court again addressed Aniel's allegations that the 2009 assignment was fabricated. Although it had already rejected such allegations in its 2015 Opinion, the Bankruptcy Court permitted Aniel to question the Trust's witness, Kathy Priore, about the 2009 assignment at length. In response to such questioning, Priore testified that the Aniel loan was placed into the trust in 2007 through the Pooling and Servicing Agreement, even though the "deed of trust" remained in the "MERS System." Trial Tr. at 81-82, 88. According to Priore, it was common in such situations that a deed of trust would not be assigned out of MERS until there was a "default or a bankruptcy." *Id.* at 88 ("So it was sitting in MERS. It doesn't mean that it wasn't securitized in 2007. It just means that the deed of trust was sitting still in the MERS system until it was assigned out of MERS to HSBC."); *see also id.* at 117 ("[T]he assignment of the deed of trust normally happens because of foreclosure or a bankruptcy activity is taking place. And if you look at this note from July 27th, it appears that the [2009] assignment was being done related to the bankruptcy."); *id.* at 121, 131. Although these facts were not directly at issue in the trial, the Bankruptcy Court included in its findings of fact that "the Loan was transferred to HSBC … as Trustee for DALT 2007-AO5" on or about July 1, 2007, and that "[t]he Deed of Trust was assigned to HSBC on August 24, 2009." 2016 Op. at 3-4.

In short, in its 2015 and 2016 Opinions, the Bankruptcy Court twice addressed Aniel's allegations that the 2009 assignment was fabricated on the merits. It did not preclude her from making such arguments on standing grounds.

Finally, to the degree that Aniel's contention on appeal is that the Bankruptcy Court erred

in disagreeing with her merits argument that the 2009 assignment was fabricated, the Court

rejects this argument.  In *Rajamin*, the Second Circuit first held that the plaintiff lacked standing

to challenge any failure of a securitization or assignment to comply with the terms of a PSA.  *See*

*Rajamin*, 757 F.3d at 91.  It went on, however, to address the precise argument Aniel makes here

– that the assignment of a mortgage after the closing date of the trust gives rise to an inference of

fabrication: "Lastly, we reject plaintiffs' contention that the assignments of some of plaintiffs'

mortgages were void because the assignments were recorded after the closing dates of the

Defendant Trusts . . . .  To the extent that plaintiffs argue that these assignments violated the

PSAs, the argument, for reasons already discussed, is not one that plaintiffs have standing to

make.  To the extent that plaintiffs rely on the dates of the recorded mortgage assignments to

imply that the assignments of their loans and mortgages to defendants were a sham, we reject the

implication as implausible.  A post-closing recordation does not in itself suggest that the

assignments were made at the time of the recordation, and the record does not give rise to such a

suggestion."  *Id.*  As in *Rajamin*, the fact that the 2009 assignment was made after the closing

date of the trust under the Pooling and Servicing agreement, viewed in the context of the record

below, does not support the argument that the 2007 transfer of Aniel's loan never happened or

that the 2009 assignment was a sham.  The Bankruptcy Court committed no error in rejecting

Aniel's arguments, and there is no basis for reversal.[8]

## IV.    CONCLUSION

---

[8] The Court additionally sees no error in the Bankruptcy Court's denial of Aniel's motion for
reconsideration.  *See* Bk. Dkt. No. 10031.

For the foregoing reasons, the judgments of the Bankruptcy Court are AFFIRMED in their entirety.  The Clerk of Court is directed to close this case.


SO ORDERED:


Dated:  March 29, 2016
        New York, New York

                                    ALISON J. NATHAN
                                United States District Judge