**Hearing Date: May 8, 2017 at 9:00 a.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*


**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S MEMORANDUM
OF LAW IN SUPPORT OF THE TRUST'S OBJECTION TO CLAIM NUMBER 4445**

ny-1279484

**TABLE OF CONTENTS**

SHORT PREVIEW OF THE ESSENTIALS OF THE CASE ........................................................1

ISSUES TO BE TRIED ...................................................................................................................2

ANALYSIS OF THE LAW AND FACTS .....................................................................................3

    ETS's Actions in Filing the Notices Were Privileged Under Cal. Civ. Code § 2924(d) Because Mr. Moss Has Failed to Demonstrate ETS Acted with Malice ..........................................................................................................................6

    Even If Mr. Moss is Able to Demonstrate Malice, His Fraud and Intentional Infliction of Emotional Distress Claims Still Fail ..................................................8

    Mr. Moss Cannot Recover Emotional Distress Damages .................................................10

    Mr. Moss Has Failed to Provide Any Evidence of the Attorney's Fees that He Allegedly Incurred ................................................................................................11

CONCLUSION .............................................................................................................................12

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Aguinaldo v. Ocwen Loan Servicing, LLC,
    Case No. 5:12-CV-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sep. 4, 2012)..................3, 4, 9

Cabanilla v. Wells Fargo Bank, N.A.,
    Case No. E055041, 2013 WL 1633626 (Cal. Ct. App. Apr. 17, 2013).....................................9

Davenport v. Litton Loan Servicing, LP,
    725 F. Supp. 2d 862 (N.D. Cal. 2010)..................................................................................9

Friedman v. Merck & Co.,
    131 Cal. Rptr. 2d 885 (Cal. Ct. App. 2003).........................................................................10

Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc.,
    No. C 10- 02842 WHA, 2010 WL 3769459 (N.D. Cal. Sept. 22, 2010) ............................1, 10

Kachlon v. Markowitz,
    85 Cal. Rptr. 3d 532 (Cal. Ct. App. 2008)..........................................................................6, 8

Lazar v. Superior Court of Los Angeles Cty.,
    909 P.2d 981 (Cal. 1996)...................................................................................................5, 8

Mehta v. Wells Fargo Bank, N.A.,
    737 F. Supp. 2d 1185 (S.D. Cal. 2010), aff'd, 510 Fed. Appx. 498 (9th Cir. 2013).................9

Sands & Assocs. v. Juknavorian,
    147 Cal. Rptr. 3d 725 (Cal. Ct. App. 2012).........................................................................11

Smith v. Superior Court of Orange Cty.,
    13 Cal. Rptr. 2d 133 (Cal. Ct. App. 1992)...........................................................................10

Terry v. Travelers Indem. Co.,
    No. 04-2314-MCE-GGH, 2005 WL 1984482 (E.D. Cal. Aug. 15, 2005) ............................11

Trope v. Katz,
    902 P.2d 259 (Cal. 1995).....................................................................................................11

**STATUTES**

Cal. Civ. Proc. Code § 877 ........................................................................................................11

Cal. Civ. Code § 2924(d)..............................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3001(c)(1) .....................................................................................................11

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

In accordance with the Joint Pretrial Order [Docket No. 9533], the ResCap Borrower Claims Trust (the "Trust"), as successor in interest to the above-captioned debtors (the "Debtors") with respect to Borrower Claims, hereby files this pretrial memorandum in support of the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7552] (the "Objection") as to claim number 4445 filed by Alan Moss (the "Claim").

### SHORT PREVIEW OF THE ESSENTIALS OF THE CASE

1. On November 7, 2012, Alan Moss (the "Claimant" or "Mr. Moss") filed the Claim seeking recovery for alleged wrongdoing on the part of debtor Executive Trustee Services, LLC ("ETS"). Specifically, Mr. Moss alleges that ETS is liable for negligence, fraud, and intentional infliction of emotional distress when it completed a foreclosure of Mr. Moss' property after Mr. Moss became delinquent under the terms of his loan, because the entity appointing ETS was not the beneficiary of the loan at the time ETS was appointed. On August 24, 2015, this Court entered a decision on this claim, finding that Mr. Moss had failed to sufficiently allege that ETS acted with malice, and therefore it was protected by the privilege afforded non-judicial foreclosure documents under California law. Mr. Moss appealed that decision to the United States District Court for the Southern District of New York (the "District Court"), which held that Mr. Moss' allegations, combined with some of the documents submitted in support of the Objection, were sufficient to raise a question of fact as to whether there was malice. As such, the District Court remanded the case back to the Bankruptcy Court for further proceedings.

1

ny-1279484

2. At trial, the Trust will show that Mr. Moss, who bears the burden of proof, is not entitled to any recovery on account of any of his causes of action because he cannot demonstrate that ETS was aware of the fact that it was not properly appointed as substitute trustee at the time it commenced and completed the non-judicial foreclosure process. As a result, Mr. Moss fails to demonstrate that ETS acted with malice when it initiated the foreclosure.

3. Moreover, even if the alleged wrongdoing can be shown, Mr. Moss cannot demonstrate how he was damaged by ETS's actions. The foreclosure has been rescinded, Mr. Moss was provided with a loan modification that brought his loan current, and he currently resides in the Property. Mr. Moss would have been under threat of foreclosure even if ETS hadn't acted as a result of his own payment delinquencies. Accordingly, he is not entitled to emotional distress damages from ETS. Further, Mr. Moss cannot recover attorney's fees and costs (his only other purported damages) because he has provided no evidence to support these alleged fees. As a result, Mr. Moss fails to meet his burden of proof, and the Court should disallow and expunge the Claim.

## ISSUES TO BE TRIED

4. Whether ETS acted with actual malice when it published the foreclosure related notices (the "Notices"), which means: (1) that the publication was motivated by hatred or ill will toward the claimant, or (2) by a showing that ETS lacked reasonable grounds for belief in the truth of the publications and therefore acted in reckless disregard of the claimant's rights.

5. Whether ETS acted with malice, as defined hereinabove, when it conducted or caused to be conducted, the Foreclosure Sale.

6. Whether ETS acted negligently, under California law, when it published the Notices and conducted the Foreclosure Sale.

7. Whether ETS committed fraud, under California law, when it published the Notices and conducted the Foreclosure Sale.

8. Whether publishing the Notices or conducting the Foreclosure Sale constituted extreme or outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the Claimant.

9. The extent of actual damages, if any, proximately and reasonably caused to the Claimant by ETS's publishing of the Notices and conducting the Foreclosure Sale.

## ANALYSIS OF THE LAW AND FACTS

10. On or around November 7, 2012, Mr. Moss filed the Claim against Executive Trustee Services, LLC ("ETS"), asserting a general unsecured claim for $750,000. See Exhibit M to the *ResCap Borrower Claims Trust's 7056-1 Statement of Material Facts as to Which There Is No Genuine Dispute*, attached to the *ResCap Borrower Claims Trust's Motion For Summary Judgment as to its Objection to Amended Claim No. 4445 Filed by Alan Moss* [Docket No. 10290-1] (the "7056-1 Statement"). With the Court's permission, Mr. Moss filed an amended claim on March 18, 2015 [Docket No. 8334] (the "Amended Claim").

11. The Debtors' books and records show that non-Debtor CJ Mortgage, Inc. originated a loan in the amount of $612,500.00 to Mr. Moss on June 22, 2005 (the "Loan"), secured by a deed of trust on property located at 86 San Lucas Ave., Moss Beach, CA 94038 (the "Property"). See Pretrial Order [Docket No. 10356], Stipulated Facts Nos. 1-3. Subsequently, the Loan was assigned to Option One Mortgage Corp. ("Option One") on or around June 27, 2005. See Stipulated Facts No. 4. Option One then transferred the Loan to TCIF, LLC ("TCIF"), who subsequently assigned the Loan to Bank of New York Trust Company ("Bank of New York") on or around April 29, 2008. See TCIF Assignment, attached to the 7056-1 Statement as Exhibit D; see also Stipulated Facts No. 9.

3

ny-1279484

12. Debtor GMAC Mortgage, LLC ("GMACM") serviced the Loan from March 14, 2006 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. See Stipulated Facts No. 13.

13. On September 21, 2006, an entity named TCIF REO2, LLC executed "Substitution of Trustee," naming ETS as substitute trustee. See Stipulated Facts No. 6. This appointment was improper because the entity that appointed ETS did not have the authority to do so at the time of the substitution. See Stipulated Facts No. 7.

14. On or around August 2, 2007, GMACM sent Mr. Moss a letter indicating that the Loan was in default and owing for the July 1, 2007 payment. See August 2007 Breach Letter, attached to the 7056-1 Statement as Exhibit H.

15. On September 17, 2007, GMACM referred the Loan to foreclosure because the account was owing for the July 1, 2007 payment. See Servicing Notes, at 100 of 131, attached to the 7056-1 Statement as Exhibit I.

16. ETS recorded a notice of default on September 17, 2007 (the "2007 Notice of Default"). See Stipulated Facts No. 8.

17. On June 11, 2008, two days before the scheduled trustee's sale, Mr. Moss contacted GMACM to request a loan modification. GMACM's servicing notes reflect that during this call GMACM offered Mr. Moss a six-month foreclosure repayment agreement consisting of a $50,000 down payment and six monthly payments of $6,740.78. See Servicing Notes at 73 of 131. Mr. Moss accepted this and paid the $50,000. The foreclosure sale set for June 13, 2008 was cancelled. See id.

18. On June 13, 2008, GMACM mailed a copy of the foreclosure repayment agreement to Mr. Moss. See Servicing Notes at 73 of 131. Mr. Moss paid the $50,000 payment

4

required under the repayment agreement on or around June 13, 2008.  See Stipulated Facts No. 20.  However, Mr. Moss did not make the next payment that was due on July 12, 2008 in the amount of $6,740.78. See Servicing Notes at 68 of 131. Foreclosure was recommenced on July 18, 2008.  See id. On August 21, 2008, GMACM received a personal check from Mr. Moss in the amount of $6,000.  See id. The check was returned to Mr. Moss as it was less than the amount owed under the foreclosure repayment agreement and was untimely.  See id.

19. As of May 7, 2009, the Loan was in default and owing for the January 1, 2008 payment.  See Servicing Notes at 4 of 131.

20. On May 7, 2009, ETS conducted a trustee sale (the "Foreclosure Proceeding") and Bank of New York acquired title in the property.  ETS recorded a Trustee's Deed Upon Sale on May 18, 2009 (the "Notice of Trustee's Deed Upon Sale", and with the 2007 Notice of Default, the "Notices"), which granted title in the property to Bank of New York.  See Notice of Trustee's Deed Upon Sale, attached to the 7056 Statement as Exhibit K.

21. A Notice of Rescission of the Trustee's Deed Upon Sale was recorded on September 18, 2012.  See Stipulated Facts No. 12.

22. On July 22, 2009, Mr. Moss commenced litigation against Bank of New York in Superior Court, San Mateo County, CA (the "Superior Court"), case number 486130.  See Stipulated Facts No. 25.

23. On May 5, 2011, Mr. Moss filed a parallel lawsuit against ETS in the Superior Court, case number 505386, for negligence, fraud, and intentional infliction of emotional distress resulting from ETS executing the Notice of Default and the Trustee's Deed Upon Sale.  See Stipulated Facts No. 26.

5

ny-1279484

24. In November 2013, Bank of New York, through Ocwen as loan servicer, completed a settlement with Mr. Moss to resolve his lawsuit against Bank of New York for its actions related to the foreclosure sale. See Stipulated Facts No. 31.

25. Mr. Moss continues to hold title to the Moss Property, subject to the note and the deed of trust.

26. In response to a request from the Debtors for additional information regarding the Claim, Mr. Moss provided an itemization of his claim amount (the "Diligence Response"). See Diligence Response, attached to the 7056 Statement as Exhibit O. In the Diligence Response, Mr. Moss asserts that he is entitled to emotional distress/pain and suffering damages in the amount of $730,000. Mr. Moss also asserts that he is entitled to $18,460.98 in attorney's fees and costs associated with defending the Foreclosure Proceeding. See id.

**ETS's Actions in Filing the Notices Were Privileged Under Cal. Civ. Code § 2924(d) Because Mr. Moss Has Failed to Demonstrate ETS Acted with Malice**

27. In the Claim, Mr. Moss asserts that ETS is liable for negligence, fraud, and intentional infliction of emotional distress because it recorded the Notices and executed the foreclosure. However, ETS cannot be liable for any of these causes of action because the Notices were privileged communications.

28. Non-judicial foreclosure documents are considered privileged under California Law. See Cal. Civ. Code § 2924(d); see also Kachlon v. Markowitz, 85 Cal. Rptr. 3d 532, 545 (Cal. Ct. App. 2008). The only exception to this privilege is when documents are published with actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff *or* a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard for the plaintiff's rights." See id. at 547 (internal quotations omitted).

6

ny-1279484

29. While the Trust admits that ETS was not properly appointed as substitute trustee at the time it recorded the Notices and commenced the foreclosure sale, Mr. Moss has provided no evidence that ETS was aware that it was not properly appointed as substitute trustee. Further, ETS had reasonable ground for believing that it was appointed, because a substitute trustee appointing it was recorded. Mr. Moss points to nothing on the face of the Substitution of Trustee that would indicate to ETS that it was not properly appointed. Instead, Mr. Moss continues to assert, without identifying any relevant legal basis, that ETS had a duty to review the chain of title to confirm that the entity appoint it as substitute trustee had authority to do so at the time of the substitution, and without doing such a review, it lacked reasonable grounds for believing that it had the power to issue any requisite notices. See Amended Claim at 6.

30. In the District Court Order, the District Court highlighted certain irregularities in the assignments for the Property that call into question whether ETS acted with reckless disregard for Mr. Moss' rights, including (1) that the assignment from Option One to TCIF had a hand written date that was different from the typed date, (2) that the rescission of the Trustee's sale indicated that the foreclosure was conducted "in error" and (3) that the dates on affidavit of mailing attached to the substitution of trustee are not consistent. See District Court Order [D.C. Docket No. 16] at 15-16. However, none of these irregularities would have affected ETS's belief that it was properly appointed as substitute trustee. The assignment from Option One to TCIF was done after the Substitution of Trustee was recorded, and any irregularity in the dates on the assignment does not suggest an irregularity in ETS's appointment. Similarly, the rescission is not evidence of ETS's knowledge at the time of the foreclosure sale, because it was executed and recorded after the foreclosure sale, and after ETS did become aware of the error.

7

Finally, the difference between the dates on the affidavit of mailing are irrelevant to whether the Substitution of Trustee itself was proper.

31. In the Claim, Mr. Moss asserts that ETS should have been aware that there were issues with the Substitution Trustee when he filed litigation against Bank of New York on July 22, 2009. See Amended Claim at 7. However, the litigation post-dated when ETS recorded the Notices, and therefore has no bearing on ETS' knowledge at the time the Notices were recorded. See ¶¶ 21-23 supra. Furthermore, ETS' failure to rescind the Notices was also privileged. See Kachlon, 85 Cal. Rptr. 3d at 553. In Kachlon, the court held that even where the substitute trustee was shown evidence that the note had been satisfied, its failure to rescind the notice of default was not an act of malice and therefore, said act was privileged and the substitute trustee was relieved of liability. See id. Here, while the lawsuit against Bank of New York put ETS on notice that its appointment as substitute trustee was contested, like in Kachlon, ETS took no further action until the contested issue was resolved, at which time it rescinded the Notices. As a result, Mr. Moss cannot demonstrate that ETS' actions amounted to actual malice.

**Even If Mr. Moss is Able to Demonstrate Malice, His Fraud
and Intentional Infliction of Emotional Distress Claims Still Fail**

32. Mr. Moss' claim for fraud requires a showing that ETS acted with an intent to deceive Mr. Moss. The elements of fraud in California are: (1) defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the plaintiff suffered resulting damages. Lazar v. Superior Court of Los Angeles Cty., 909 P.2d 981, 984 (Cal. 1996).

8

ny-1279484

33. Thus, even if Mr. Moss can demonstrate that ETS should have reviewed the chain of title and substitute trustee and therefore lacked reasonable ground for belief that it was not the substitute trustee, Mr. Moss has not demonstrated that ETS actually knew, or that ETS conducted the foreclosure sale with the intent to deceive Mr. Moss into believing that it was properly appointed. As a result, Mr. Moss' claim for fraud independently fails.

34. Similarly, Mr. Moss' intentional infliction of emotional distress claim also fails even if the Court finds that he has demonstrated that ETS lacked reasonably grounds for believing it was properly appointed as substitute trustee. The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress. Cabanilla v. Wells Fargo Bank, N.A., Case No. E055041, 2013 WL 1633626, at *6 (Cal. Ct. App. Apr. 17, 2013). Thus, Mr. Moss must demonstrate that ETS's actions constituted "outrageous conduct." However, this bar is very high for finding that a foreclosure sale amounts to "outrageous conduct." See Aguinaldo v. Ocwen Loan Servicing, LLC, Case No. 5:12-CV-01393-EJD, 2012 WL 3835080, at *7 (N.D. Cal. Sep. 4, 2012) ("[A]s a matter of law . . . foreclosing on property does not amount to the 'outrageous conduct' required to support a claim for intentional infliction of emotional distress.") (citation omitted); Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (holding that the act of foreclosing on a home "falls shy of 'outrageous,' however wrenching the effects on the borrower."); Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010), aff'd, 510 Fed. Appx. 498 (9th Cir. 2013) ("The fact that one of [the] Defendant [lenders]

9

ny-1279484

employees allegedly stated that the sale would not occur but the house was sold anyway is not outrageous as that word is used in this context." (citation omitted)); Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc., No. C 10- 02842 WHA, 2010 WL 3769459, at *4-5 (N.D. Cal. Sept. 22, 2010) (holding that the act of foreclosing on a home by itself does not constitute outrageous conduct for an intentional infliction of emotional distress claim).  Here, given that Mr. Moss was in default under the terms of the Loan and could have been foreclosed on by the beneficiary of the Loan, ETS's actions cannot constitute "outrageous conduct" under the standard.

**Mr. Moss Cannot Recover Emotional Distress Damages**

35.    Mr. Moss asserts that he experienced emotional distress as a result of ETS's actions.  However, there is no dispute that Mr. Moss, at the time the foreclosure was initiated, was more than a year delinquent on his mortgage payments.  See ¶ 19 *supra*.  Mr. Moss would have been living under the threat of foreclosure whether or not ETS had been properly appointed as substitute trustee, because the owner of the loan, Bank of New York, could have at any time executed new substitute trustee paperwork and proceeded with foreclosure.  As a result, Mr. Moss cannot credibly argue that any fear of foreclosure was caused by ETS's actions.

36.    Additionally, Mr. Moss cannot recover emotional distress damages for his negligence claim.  In California, where a "plaintiff incur[s] neither physical impact nor physical damage, and whose loss (other than emotional distress) is solely economic, [the plaintiff] is entitled to neither punitive damages nor to a recovery for emotional distress."  See Friedman v. Merck & Co., 131 Cal. Rptr. 2d 885, 907 (Cal. Ct. App. 2003) (citing Branch v. Homefed Bank, 8 Cal. Rptr. 2d 182, 187 (Cal. Ct. App. 1992) ("Recovery for worry, distress, and unhappiness as the result of damage to property, loss of a job or loss of money is not permitted when the defendant's conduct is merely negligent.")); Smith v. Superior Court of Orange Cty., 13 Cal.

10

Rptr. 2d 133, 137 (Cal. Ct. App. 1992) ("mere negligence will not support a recovery for mental suffering where the defendant's tortious conduct has resulted in only economic injury to the plaintiff.") (citation omitted); Terry v. Travelers Indem. Co., No. 04-2314-MCE-GGH, 2005 WL 1984482, at *2 (E.D. Cal. Aug. 15, 2005) ("[U]nder California law, Plaintiffs' unintentional tort claims (negligence and negligent misrepresentation) will not support recovery for emotional distress arising from property damage, absent special circumstances.") As a result, Mr. Moss cannot recover emotional distress damages under a negligence theory.

### Mr. Moss Has Failed to Provide Any Evidence of the Attorney's Fees that He Allegedly Incurred

37. Mr. Moss' only asserted damages other than emotional distress are for attorney's fees and costs associated with the lawsuit against Bank of New York. However, Mr. Moss has not provided the Trust with any evidence to support these alleged damages, and has not included any such evidence in his exhibits for trial.[1] See Pretrial Order. Mr. Moss cannot obtain an award for attorney's fees without providing proof that such fees were incurred. See Fed. R. Bankr. P. 3001(c)(1) ("when a claim…is based on a writing, a copy of the writing shall be filed with the proof of claim."). As such, even if it finds ETS is liable for the causes of action asserted, this Court should not award Mr. Moss any damages for his purported attorney's fees.

38. Further, even if Mr. Moss could demonstrate attorney's fees, the amount asserted is vastly outweighed by the benefit he received as a result of his settlement with Bank of New York, which must be deducted from any damages award. See Cal. Civ. Proc. Code § 877 (a settlement with a joint tortfeasor "shall reduce the claims against the others in the amount

---

[1] To the extent Mr. Moss, who is an attorney, asserts that he should be awarded attorney's fees for representing himself, such an award is not permitted in California. See Trope v. Katz, 902 P.2d 259 (Cal. 1995) (holding that an attorney litigant could not recover "reasonable attorney's fees" provided for under a statute); Sands & Assocs. v. Juknavorian, 147 Cal. Rptr. 3d 725 (Cal. Ct. App. 2012) (holding that a litigant appearing *in propria persona* was not entitled to attorney's fees, citing cases).

stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is greater.")  Thus, to the extent ETS is considered a joint tortfeasor with Bank of New York, the Settlement Agreement provided Mr. Moss with a loan modification that drastically reduced the amount he would pay over the life of the loan, as described in the chart below.

|  | Total Principal in Interest paid February 2014-2035 | Difference in Amount Paid Over Life of Loan Compared with Modification |
|---|---|---|
| February 2014 Modification[2] | $1,016,492.91 | - |
| Original Loan Terms (Interest Rate Floor)[3] | $1,469,459.88 | $452,966.97 |
| Original Loan Terms (Interest Rate Midpoint)[4] | $1,710,588.78 | $694,065.87 |
| Original Loan Terms (Interest Rate Ceiling)[5] | $1,967,492.91 | $950,727.87 |

39.    As a result, even assuming the lowest interest rate for the entire life of the loan, Mr. Moss still received a benefit of $452,966.97, which vastly outweighs any attorney's fees that he allegedly incurred.

## CONCLUSION

40.    The Claim must be disallowed and expunged.  Mr. Moss has failed to demonstrate that ETS's actions regarding the Loan were not privileged, and he has also failed to independently support his claims for fraud and intentional infliction of emotional distress.

---

[2] Uses modification terms of $725,000 in principal, and an adjustable interest rate of 2% for the first five years and 4.35% for the remaining term of the loan.  See Settlement Agreement.

[3] Assumes principal amount of $604,642.14 and the lowest interest rate provided for under the original loan terms: 10.25%.

[4] Assumes principal amount of $604,642.14 and an interest rate of 13.25%, which is half way between the floor and ceiling under the original loan terms.

[5] Assumes principal amount of $604,642.14 and the highest interest rate provided for under the original loan terms: 16.25%.

Furthermore, Mr. Moss has failed to provide any evidence to substantiate his damages for attorney's fees. As a result, the Objection to the Claim should be sustained.

Dated: April 24, 2017

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

13

ny-1279484