Alan Moss
P.O. Box 721
Moss Beach CA 94038
Telephone:    (415)494-8314
Facsimile:    (650)728-0738

Attorney *In Propria Personum*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
## MANHATTAN DIVISION

| | |
|---|---|
| IN RE:<br><br>RESIDENTIAL CAPITAL, LLC, *ET AL.*<br><br>DEBTOR.<br><br>———————————————<br><br>EXECUTIVE TRUSTEE SERVICES, LLC,<br><br>REAL PARTY IN INTEREST.<br><br>Debtor. | BANKRUPTCY CASE NO. 12-12020-MG<br>CHAPTER 11<br><br>Jointly Administered<br>(Executive Trustee Services, Case No. 12-12028)<br><br><br><br>CLAIMANT'S PRE-TRIAL MEMORANDUM OF LAW<br><br><br><br>Trial Date: May 8, 2017<br>Hearing Time: 9:00 A.M. |

Pursuant to the Pre-Trial Order entered in this matter on April 19, 2017(Pacer Doc. # 10362), Claimant submits the following in conformance with Part XII thereof.

RECEIVED
APR 2 5 2017

1

## INTRODUCTION

2

3          This matter is called for trial of Amended Claim No. 4445[1], filed by

4   Claimant in this bankruptcy action which controls the dismantling of the Residential

5   Capital empire.[2]   The Claim is based *solely* on a legal action filed by Claimant in the

6

7       [1]   The Amended Claim, filed pursuant to Court Order on March 16, 2016, Pacer Doc.# 8334, incorporated the original Claim No. 4445. The original claim is contained in the record as Exhibit 1 to the

8   Supplemental Horst Declaration, Pacer Doc. No. 7904-1, December 19, 2014. As used herein, the usage of the word "Claim" denotes the "Amended Claim" and its attached incorporated documents.

9

10      [2]   In his opposition to ResCap's Motion For Summary Judgment, Claimant asserted that the MSJ should not go forward because the bankruptcy court had yet to address the mandate of the District Court which had reviewed the ResCap's objection to the Claim.   On August 24, 2015, the Bankruptcy Court

11  sustained the debtor's objection to Claimant's claim.   On June 2, 2016, claimant's appeal of that decision to the District Court was decided: the District Court *reversed and remanded* the Opinion of the Bankruptcy

12  Court with instructions, to wit: "for further proceedings consistent with this Opinion." he District Court noted that *inter alia* "ETS should not have conducted the foreclosure sale of the Property, but did so "in

13  error," according to the Trust, "due to a failure to timely communicate conditions that would have warranted a cancellation of the foreclosure."   In other words, ETS sold Moss's property when it should not have,

14  because of a "failure" to communicate, intentional or not, by an unidentified person to another unidentified person.   The Trust's statement obfuscates whether the failure to communicate was innocent, reckless or

15  intentional and any role of ETS leading up to the improper sale."(*See* Decision and Order, P. 15). The District Court further stated, "The Bankruptcy Court Opinion cites declarations and exhibits that, as

16  discussed above, support a plausible finding that ETS acted "in reckless disregard of the plaintiff's rights.," which is a state of mind sufficient to show malice [citation omitted].   Consequently, the Bankruptcy Court

17  erred in sustaining the objection and disallowing the Amended Claim ...."(*Id.* At 17)
            To date, the Bankruptcy Court has taken no actions pursuant to the instructions of the

18  District Court.   The District Court questioned the analytical bases of the Bankruptcy Court in sustaining the debtor's objection. Further, the District Court found that the requisite inquiry into the factual underpinnings

19  of the claim was warranted and should be undertaken by the Bankruptcy Court.   The District Court was troubled by the facts of this claim, and wanted further inquiry into the factual matters surrounding this claim.

20          It would be error to entertain a *subsequent* motion, based on different grounds, let alone a

21  dispositive motion, prior to following the directions of the District Court contained in its Opinion, ordering a re-examination of its Decision. Should the Bankruptcy Court follow the dictates of the District Court, and

22  render a finding that ETS acted with malice, the result would be that the Trust's Objection to the Amended Claim would be denied, and consequently, the Amended Claim approved for the rolls.   There would be no

23  Motion For Summary Judgment.
            Therefore, it is respectfully suggested that the instant Motion For Summary Judgment should

24  be disallowed or tabled, and the Bankruptcy Court should re-visit its decision striking the claim from the rolls and issue a new decision consistent with the holding of the District Court.   *See UTE Indian Tribe vs. State*

25  *of Utah*(CA10, 1997) 114 F.3rd 1513("....a district court "must comply strictly with the mandate rendered

26

1   Superior Court of the County of San Mateo, California, *Moss vs. Executive Trustee*

2   *Services, LLC*(hereinafter "ETS").[3]  The Complaint in that action contained three main

3   causes of action:  negligence(and derivative causes of action: negligence *per se* and

4   negligent infliction of emotional distress ), fraud and intentional infliction of emotional

5   distress;  the Claim in this action mirrors these causes of action.[4]

6         The ETS action was filed when it was discovered, while working on a

7   wrongful foreclosure case filed by claimant[5], that ETS was never legally empowered to

8   act as the trustee when GMAC wrongfully foreclosed on Claimant's home.  GMAC's

9   *sole* role was that it acted as the servicer on Claimant's loan;  as such, it was obligated

10  to defend both ETS and BONYT.  GMAC is, of course, ResCap prior to its name

11  change. It was subsequently discovered during the ETS lawsuit that ETS was a wholly-

12  owned subsidiary of GMAC, a relationship inherently inimical to the California statutes

13  regarding trustees which place a duty on the trustee to treat both the beneficiary and

14  trustor equally .

15        The record developed to date *conclusively* demonstrates, by way of *inter*

16  *alia* discovery responses from ResCap, on behalf of both itself and ETS, that (1) ETS

17  was illegally appointed to act as trustee, (2) took actions against Claimant which were

18  illegal, and (3) violated California statutes controlling and dictating the role of trustees and

19  ─────────────────────────────

20  by the reviewing court...[citations omitted]...Under the 'law of the case' doctrine, the district court may not deviate from the appellate court's mandate." This argument is respectfully renewed herein.

21
     [3] Action No. 505386, Superior Court, County of San Mateo California.
22
     [4] The Complaint is an attachment to ResCap's Trial Exhibit 3, as set forth in the Pre-Trial Order.
23
     [5] *Moss vs. The Bank Of New York Trust Company, N.A.*, Action No. 486130(2009), San Mateo
24  County, California; this action was removed by BONYT to Federal District Court, Action No. 10-1734,
    (N.D. Cal, 2010), and then remanded back to San Mateo County when BONYT belatedly discovered it was
25  a California corporation, thereby defeating diversity jurisdiction which was the basis of its removal.

26

1  actions it takes during foreclosure proceedings.

2         As such, there is no defense to this Claim: there is no defense for violating

3  California law. ResCap, however, asserts as its single defense to the entire Claim, that

4  Claimant was in default or at least late in one of his payments. As is or should be readily

5  apparent, this is not a defense to a *negligence* action. California is a comparative

6  negligence state and has been for over forty years[6]. Perhaps a late payment might be

7  relevant to a determination of comparative negligence under California law, which can

8  affect the determination of damages. It is pointedly not a defense to this Claim based as

9  it is on negligence.[7]

10        Pursuant to the relevant statutes, an entity acting as trustee is required to

11 issue three notices in perfecting a foreclosure of a deed of trust property.[8] The statute

12 provides for immunity of a trustee in issuing these three notices—unless the trustee acted

13 with "malice." Throughout the litigation of this Claim, ResCap has attempted to

14 obfuscate the Claim by inserting this question of malice. But this is error. The Claim is

15 based entirely on the Complaint in *Moss vs. ETS* which is strictly an action founded on

16 negligence, and not on issuing notices. While it is true that ETS issued notices while it

17 illegally acted as trustee, the Claim merely alleges that ETS was negligent in failing to

18 determine that it was illegally appointed, and not that it, at some point in time, mistakenly

19 issued notices. As such, it is the position of Claimant that malice should not be part of

20 this trial. The sole question before the Court is whether ETS was negligent.

21        The issues to be decided, and the order of deciding these issues, is as

22

23        [6] *See Li vs. Yellow Cab Co. Of California*(1975) 13 Cal.3rd 804.

24        [7] This ETS action has been stayed by operation of law since the filing of this bankruptcy action.
   It is still pending on the Court's docket in San Mateo County.

25        [8] Notice of Default, Notice of Trustees Sale, Deed of Trust Upon Sale.

26

follows:

1.  After it was (illegally) appointed as trustee, was ETS negligent when it failed to ascertain its lack of statutory power(and as a result rendered its issuance of statutory notices nugatory)?

2.  After it was (illegally) appointed as trustee, was ETS negligent when it failed to ascertain its lack of statutory power that rendered its sale of Claimant's property at a trustee's sale(and thereafter issued a Trustees Deed Upon Sale) void?

3.  After it was appointed as trustee, did ETS act fraudulently when it issued the notices and conducted the trustee's sale?

4.  After it was appointed as trustee, did ETS intentionally inflict emotional damage on Claimant pursuant to California law?

5.  Provided that the Court believes malice should be considered, and in the event that the response to any of the above four issues is in the affirmative, did ETS act with malice in being negligent, and/or acting fraudulently, and/or committing the tort of Intentional Infliction Of Emotional Distress.

6.  In the event that the response to any of the above four issues is in the affirmative, and further that this was committed with malice if relevant, did this cause damage to Claimant, and if so, in what amount.

# I.

## UNDERLYING FACTS RELEVANT TO THIS CLAIM AND TRIAL THEREOF

This Claim resulted from, and is specifically based on, the lawsuit against ETS. The Claim specifically incorporated the Complaint as a basis for this Claim. The ETS complaint detailed the chain-of-title of the underlying loan, based on officially

recorded documents, and demonstrated that ETS was not properly substituted in as a trustee of the loan: under California law, an entity may be substituted in as trustee, provided that the present beneficiary(ies) record the substitution. In this case, as can be seen from the recorded documents, it was TCIF who recorded a Substitution of Trustee, on November 10, 2006, naming ETS as the trustee. TCIF was not the beneficiary at that time, and would not become the beneficiary until assigned the loan for at least seven more months, until June 16, 2008. Chronologically, this can be put succinctly thusly:

**CJ MORTGAGE**(6/22/05)[ORIGINAL LOAN]

⇓

Assigned To **OPTION ONE MORTGAGE**

(BY ASSIGNMENT FROM **CJ MORTGAGE** DATED 6/27/05, RECORDED 4/4/07)

⇓

**OPTION ONE** SUBSTITUTES NEW TRUSTEE

PREMIER TRUST DEED SERVICES (10/26/05, RECORDED 2/3/06)

⇓

**TCIF REO2, LLC**, *AS BENEFICIARY*, SUBSTITUTES NEW TRUSTEE

**EXECUTIVE TRUSTEE SERVICES, LLC**("ETS")(9/21/06, RECORDED 11/10/06)

⇓

**NOTICE OF DEFAULT** ISSUED BY **ETS** ON BEHALF OF **TCIF REO2, LLC**

9/17/07, RECORDED 9/18/07)

⇓

Assigned To **TCIF, LLC**

(BY ASSIGNMENT FROM **OPTION ONE** DATED 5/7/08, RECORDED 6/16/08)

⇓

Assigned To **THE BANK OF NEW YORK TRUST COMPANY**

(By Assignment From **TCIF, LLC** dated 4/29/08, Recorded 6/16/08)

⇓

**NOTICE OF TRUSTEES SALE** issued by **ETS** (5/19/08, recorded 5/22/08)

⇓

**TRUSTEES SALE** conducted by **ETS** 5/7/09

⇓

**TRUSTEES DEED** TO **BONY** BY **ETS** (5/7/09, RECORDED 5/18/09)

The ETS lawsuit alleged that, *inter alia*, ETS was negligent when it failed to determine that it had been legally substituted in as trustee of Claimant's note. It was in that role that ETS issued the requisite notices required by California law to promulgate a foreclosure proceeding, to wit: (1) Notice of Default, (2) Notice of Trustee Sale, and (3) Trustees Deed Upon Sale. As can be seen from the diagram, ETS was made trustee by an entity that would *not* be assigned the loan for almost two years. Thus, TCIF had no power to substitute ETS, and therefore ETS had no power to issue any of the three notices. And BONY was assigned the loan by TCIF, LLC who had not yet been assigned the loan, and so had no ownership rights and no power to instruct ETS to foreclose.

ResCap concedes that ETS was illegally appointed and agrees that ETS had no power to issue any notices required by statute.[9]

---

[9] The Trust's response to Interrogatory no. 2 states: "According to the relevant assignments, it appears that TCIF REO2, LLC did not have the authority to substitute a trustee at that time. As a result, the Borrower Trust does not claim that Executive Trustee Services, LLC was lawfully appointed as Trustee of Deed of Trust No. 15070373 at that time." A similar response was received as to Request For Admission No. 15 and 27. These documents are part of Claimant's exhibit list.

1    Because the entity(TCIF) which substituted ETS was not the beneficiary,

2  and would not become the beneficiary, if at all, for eighteen months, ETS could not have

3  had any reasonable grounds for believing that it had been properly appointed as trustee.

4  ETS received no communication, either written or oral, demonstrating to it that the entity

5  which named it as trustee had the power to do so.  ETS received no communication,

6  either oral or written, that demonstrated to it, or to any other reasonable individual or

7  entity, that it was legally substituted in as trustee.  ETS made no inquiry of recorded

8  documents in order to verify that it was legally entitled to issue any notices or even if the

9  entity that named it trustee existed or was the beneficiary or had the power to do

10 anything.  ResCap has not produced a *single piece of paper* that demonstrated that ETS

11 was instructed to initiate and finalize foreclosure of Claimant's home. ETS has admitted

12 in verified discovery responses that it performed no due diligence to ascertain whether

13 or not it had been illegally appointed to act as trustee. ETS cannot produce any evidence

14 that it attempted to determine its status by checking the website of the San Mateo County

15 Recorder–a process that would have taken less than five minutes.

16    Further, in the underlying case against BONYT, GMAC/ResCap made four

17 separate motions to dismiss pursuant to FRCP 12(b)(6);  as a result of these motions,

18 the latest and operative complaint, the Fourth Amended Complaint, contained a cause of

19 action for Intentional Infliction of Emotional Distress, which remained a viable cause of

20 action, the District Court denying the motion to dismiss as to this cause of action. *See*

21 *Moss vs. BONY*, Action No. 10-1734(N.D. Cal.), Order, p. 3 AT 5-11, dated February

22 16, 2012, ECF Doc.# 94.[10]

23    Under this fact situation, the issue of "malice" should not come up for

25    [10] *See* Claimant's Exhibits 40 and 41.

1  determination: this Claim is not based on the issuance of statutorily-required notices, but

2  rather on simple negligence in the failure to determine authority to act. However, if it is

3  determined that malice or lack thereof is relevant to this claim, ETS lacked reasonable

4  grounds for believing that it had the power to issue any requisite notices, or in the truth

5  of the information contained in the notices it issued and therefore acted in reckless

6  disregard of the rights of claimant. ETS acted in reckless disregard of the rights of

7  claimant from the initiation of litigation in July 2009 up to, and including, the present

8  time. ETS possessed no information, at no time, that it had been properly substituted as

9  trustee, and despite years to ascertain the truth, and despite having been placed on notice

10 that it had no power to act as trustee, failed to take any steps or to make any inquiry

11 regarding whether it had been properly appointed and substituted. Therefore, ETS

12 lacked any grounds, let alone reasonable grounds, to believe it had the power to issue any

13 requisite notices in this matter, and therefore ETS acted in reckless disregard of the

14 rights of claimant.

15                                         **III.**

16              **THE ELEMENTS OF EACH CLAIM, THE LAW, AND EVIDENCE**

17              The Trust goes to great lengths to try to eliminate the causes of action of

18 the ETS complaint. In effect, the Trust argues that it is of no moment that ETS violated,

19 directly, distinctly and *admittedly*, the controlling statutes on trustees in foreclosure

20 proceedings; it does not matter, the Trust argues, because Claimant was in default. Put

21 more succinctly, the Trust argues that if a noteholder is one payment behind, that is

22 sufficient, in and of itself, to render the California Civil Code absolutely nugatory. That

23

24

25

26

PRE-TRIAL MEMORANDUM OF LAW
RE: CLAIM NO. 4445                      Page 9              BANKRUPTCY ACTION NO. 12-12020-MG

1  is not the law, and cannot possibly be the law.[11]

2        In California, the power of sale allowed in a non-judicial foreclosure

3  process is a creature of statute[12], and any attempt to invoke the power of sale must be

4  strictly construed in order to insure compliance with these statutory requirements:

5        "The power of sale under a deed of trust will be strictly construed, and in its execution the
       trustee must act in good faith and strictly follow the requirements of the deed with respect

6        to the manner of sale. The sale will be scrutinized by courts with great care and will not be
       sustained unless conducted with all fairness, regularity and scrupulous integrity." *Pierson vs.*

7        *Fischer*(1955) !31 Cal.App.2nd 208, 214.

8        "Statutory provisions regarding the exercise of the power of sale provide
       substantive rights to the trustor and limit the power of sale for the protection of the

9        trustor. (*Ibid*.)" *Bank of America, N.A. vs. La Jolla Group II*(2005) 129 Cal.App.4th 706.

10       "No nonjudicial foreclosure of a security interest in real property is permitted
       except in compliance with this statutory system. Cal.Civ.Code §2924....Strict compliance

11       with the statutory requirements is obligatory: any statutory deficiency requires that the sale
       be set asid., *Anderson vs. Heart Federal Savings*(1989) 208 Cal.App.3rd 202." *In Re Tome*

12       (1990) 113 B.R. 626, Bkrtcy C.D. Cal.

13

14        By reviewing the chronology of events in this case, it is indisputable that

15  the entity which "substituted" ETS as trustee and attempted to "game the system" so as

16  to empower ETS with the power of sale, had no authority or power to do so. ETS could

17  have easily and readily discovered its lack of power in five minutes on-line at the website

18

19       [11] California Civil Code §3541 states: " An interpretation which gives effect is preferred to one which makes void."
     Further "A statute should never be construed so strictly as to render it absurd or nugatory." *In re Los Angeles Lumber* (DC

20     Cal 1942) 45 F.Supp.77, "Statutes should be construed as to make them effective or operative rather than inoperative. *Van
     Dorn vs. Couch*(1937) 21 Cal.App.2d Supp 749.
          The court in *Residential Capital vs. Cal-Western Reconveyance*(2003) 108 Cal.App.4th 807 held that, in a case

21     involving interpretation of the California foreclosure statutes, must be " ...determined by "principles of interpretation of the
     statutory scheme setting forth the rules of trust deed nonjudicial foreclosure sales." *Id.* at P.172. See also *California Golf,*

22     *L.L.C. v. Cooper*(2008) 163 Cal.App.4th 1053, 1070-1071 [availability of particular remedy determined by consideration
     of "the policies advanced by the statutory scheme, and whether those policies would be frustrated by the allowance of the

23     additional remedy"]; *I.E. Associates v. Safeco Title Ins.* Co.(1985) 39 Cal.3d 281, 285; *Moeller v. Lien*(1994) 25
     Cal.App.4th 822, 834.  Thus, "[t]he trustor is protected from unauthorized foreclosure and loss of its property and the

24     sanctity and finality of foreclosure sales is maintained without significant prejudice to the high bidder." *See also Pro-Value
     Properties vs. Quality Loan Service Corp.*(2009) 170 Cal.App.4th 579.

25       [12]  Civil Code §§2924 - 2924h.

26

1    of the Recorder of San Mateo County.

2    **A. The Negligence Claim**

3        The elements of negligence generally are (1) duty, (2) proximate cause, and

4    (3) damages.

5        **1. ETS, As a Trustee Acting Pursuant To California Civil Code**

6        **§2924, Unequivocally Owed Claimant a Duty**

7        Under California law, the trustee has a duty to the Claimant herein, as an

8    *equal agent of both the trustor and the beneficiary.* "As a common agent, the trustee

9    must represent the interests of both parties." *Ainsa vs. Mercantile Trust Co. Of San*

10    *Francisco* (1917) 174 Cal. 504, 510; *Ballengee vs. Sadlier* (1986) 179 Cal.App.3rd 1,

11    5; *Kerivan vs. Title Ins. & Trust Co.* (1983) 147 Cal.App.3rd 225, 229; Miller And

12    Starr, *California Real Estate*, 3rd Ed., §§10.4, 10.117[13]; Bernhardt, *Mrtgages, Deeds*

13    *of Trust, and Foreclosure Litigation*, 4th Ed., §2.26 .[14] 48 California Forms of Pleading

14    and Practice §555.57 (1) (a).

15        Moreover, "The trustee is liable to the parties for all damages resulting from

16    its wrongful acts contrary to the terms of the deed of trust if its conduct is negligent,

17    fraudulent, or illegal. For example, a trustee may be liable for damages for any

18    unauthorized re-conveyance...." *Id.* citing *Kerivan supra, Fleisher vs. Continental Aux.*

19    *Co.* (1963) 215 Cal. App.2nd 136, 140; *Woodworth vs. Redwood Empire Sav. & Loan*

20    *Assn.*(1971) 22 Cal.App.3rd 347, 366; *Bank of Seoul & Trust Co.* (1988) 198 Cal.App.3rd

21

22       [13] "A trustee may be liable for damages for wrongful reconveyance. The trustee is a common agent of both parties
23   and is liable for any losses suffered as a result of any intentional or negligent breach of trustee duties." citing *Carter vs. Continental Land Title Co.* (1991)233 Cal.App.3rd 1597, 1599.

24       [14] "The trustee has a **duty** to conduct the sale fairly and openly, with due diligence and sound discretion to protect
25   the rights of the trustor and others..." citing *Baron vs. Colonial Mortgage Service Co.*(1980) 111 Cal.App.3rd 316, 322; *Kleckner vs. Bank of America* (1950) 97 Cal.App.2nd 30, 33.

26

1   113, 118.

2         The Court in *Kerivan* stated:

3   "In *Woodworth vs. Redwood Empire Sav. & Loan Assn*.(1971) 22 Cal.App.3rd
    347, 366, the court stated as follows: "It is well established, however, that a
4   trustee under a deed of trust is not a trustee in the technical sense. Rather, he is
    the agent of all the parties to the escrow at all times prior to performance of the
5   conditions of the escrow and ***bears a fiduciary relationship to each of them.***"

6

7         As an agent, the trustee may be liable for negligence in the performance of

8   his duties.   This principle was found applicable in *Munger vs. Moore* (1970) 11

9   Cal.App.3rd 1 where the court stated:

10      "That rule is that a trustee.....may be liable to the trustor..... for damages
    sustained where there has been an illegal, fraudulent or willfully oppressive
    sale of property under a power of sale contained in a mortgage or deed of
11  trust.  An agent has the duty to use reasonable skill and diligence and ***if he
    violates this duty***, he is liable for any loss which his principal may sustain as
12  the result of his negligence." *Dahl-Beck Electric Co. vs. Rogge* (1969) 275
    Cal.App.2nd 893."

13

14        As best as can be understood, Debtor argues that it owed no duty to

15  Claimant and therefore cannot be found negligent.  Debtor relies for its argument that

16  ETS did not owe a duty to Claimant on  *Kachlon vs. Markowitz* (2008)168 Cal.App.4th

17  316, a case founded on a will contest.. This case is inapposite at best in this regard, but

18  what is abundantly clear is that whatever the trustee or substituted trustee did in

19  *Kachlon*, it had the power to do it because it had been properly appointed.  That is

20  pointedly not the case here. Nothing in *Kachlon* stands for the proposition that a trustee

21  does not owe a duty to trustor.  Quite the contrary is true; if improperly appointed, the

22  trustee has no power to do anything, and any actions it takes are void *ab initio*. *Dimock*

23  *vs. Emerald Properties* (2000) 81 Cal.App.Cal.App.4th 868.[15]

24  _____

25      [15] Given the Trust's argument in this case, it is interesting to note that in another case, it argued just
    the opposite: that the trustee did have a duty to it, where ResCap was the plaintiff. *See Residential Capital,*

26

## 2. ETS Breached The Duty It Owed To Claimant.

Although the Trust does not argue that it did not breach its duty owing to claimant, it bears repeating here. It is beyond doubt that ETS was not properly substituted in as the new trustee, and therefore had no power to issue the requisite notices or to conduct the sale or to issue the trustee's deed.[16] The entire chain-of-title documents clearly demonstrating the lack of authority of ETS is included in Claimant's trial exhibits(and most of the Trust exhibits). There is no objection to any of them.

A leading treatise on California real estate, Bernhardt, *California Mortgages, Deeds of Trust and Foreclosure Litigation*, 4th Ed., §2.25 states: "A party who is not a trustee of record will not have the authority to conduct the foreclosure or deliver a valid trustee's deed." *See also Pro Value Props., Inc. Vs. Quality Loan Service Corp.* (2009) 170 Cal.App. 4th 579.

The debtor cannot argue that it would have been too difficult to discover that it did not have the power of sale(as in *Kachlon*). As it states in its brief, it set forth recorded documents which are easily obtainable online. It admits that ETS did not

*LLC vs. Cal-Western Reconveyance*(2003) 108 Cal.App.4th 807. The Court summarized ResCap's argument thusly: " Residential Capital relies on this authority to argue that the trustee and beneficiary have a duty to third party buyers to exercise ordinary care in verifying the status of pending foreclosure sales before they go to auction." *Id.* at P. 176. This is Claimant's argument precisely. The Court held that there was a duty " ...of a foreclosing trustee to ensure the sale is fairly conducted, according to proper procedures..."[citation omitted]. This duty runs to both the beneficiary and the trustor."

[16] As set forth above, the entity who attempted to substitute in ETS was not yet the beneficiary, and wouldn't become the beneficiary for a year, and had no power to do so. Therefore, ETS could not do anything: it had no power. " No non-judicial foreclosure of a security interest in real property is permitted except in compliance with this statutory system. Cal.Civ.Code §2924....Strict compliance with the statutory requirements is obligatory: any statutory deficiency requires that the sale be set aside, provided that the purchaser is not a bona fide purchaser for value without notice of the deficiency. *Anderson vs. Heart Federal Savings*(1989) 208 Cal.App.3rd 202." *In Re Tome* (1990) 113 B.R. 626, Bkrtcy C.D. Cal.
Because ETS was not duly substituted in as the trustee, ETS had no authority, *ab initio* or ever, to this day, to issue the Notice of Default, or the Notice of Trustees Sale, or the Trustees Deed by which defendant purports to claim title. ETS was named as trustee in derogation of this statute, because it was not named or substituted by a beneficiary of the deed of trust.

1   conduct any due diligence in this regard. It admits that there are no documents that
2   demonstrate that ETS conducted any kind of investigation in this regard. Claimant's list
3   of exhibits includes the discovery responses of the REsCap.

4   ### 3. ETS'S BREACH CAUSED HARM TO CLAIMANT

5       The starting(and the ending point) on this issue is the latest California case
6   on the subject: *Yvanova vs. New Century Mortgage*(2016) 62 Cal.4th 919, wherein the
7   Supreme Court stated: "If there is a void assignment, the there is wrongful foreclosure
8   because there is no power. When property is old at the the trustee's sale at the
9   directionof an entity with no legal authority to do so, the borrower ha suffered a
10  cognizable injury."

11      The Trust argues that damages did not flow from anything that ETS did,
12  stating in prior papers that "because ETS's recording of the Notices did not cause the
13  commencement of the foreclosure process, ETS's actions cannot be the cause of Mr.
14  Moss's alleged damages." This is a patently false and disingenuous statement. Under
15  the statute, it was the recording of the notice of default that did cause the
16  commencement of the foreclosure process. *See* Cal. Civil Code §2924a. Otherwise,
17  under the statute, the process doesn't start. It is precisely because ETS filed the
18  Notices, without authority–easily discovered–and evidently without being requested to
19  do so by the beneficiary–actually the alleged beneficiary, since that assignment was also
20  erroneously done–that the process started and continued to finality.[17]

21
    ----
22  [17] As explained above, *before* ETS could issue any notices or conduct a property sale, it had to first ascertain
    whether it was *empowered* to act as the lawful trustee to actually do these acts. This was neither a difficult task, nor so
    convoluted that ETS could not have figured it out or done it. After all, this was their business, and on information and
23  belief, it existed solely to service the actions of ResCap. All they had to do was go online and look at the very recorded
    documents that debtor has attached in support of its instant motion. And evidently, all that ETS did, as a wholly-owned
24  subsidiary of ResCap, was to initiate and carry out this process.
        The fact is, as explained above, was that ETS was not duly substituted in as trustee, and would not, for at least
25  a year, be so empowered–if then.
        To hold otherwise would be to conclude that an entity could act as trustee with-out ever checking on who had To
26

1    Further, debtor's rendition of the facts is also erroneous and disregards the

2  litigation below. ETS went ahead with a sale of claimant's home *after* claimant and

3  ResCap entered into an agreement, complied with by claimant, that took the matter out

4  of default. ETS totally, for whatever reason, disregarded this and went ahead with the

5  sale. It took four years plus to undo ETS's illegal actions.

6    Lastly, debtor makes the uninformed statement that Claimant did not pay

7  his mortgage(it wasn't a mortgage) which resulted in the commencement of foreclosure

8  and therefore can't show that his damages were caused by ETS. First, there is no

9  authority for this statement, and none can be given because it isn't the law. Second, at

10  the time of the foreclosure, there was no default and debtor has merely argued a heresay

11  statement. As pointed out above, the debtor has admitted that there was supposed to be

12  no sale. Third, even if there was a default, that cannot possibly excuse a violation of

13  California law, especially where it has been repeatedly held that the procedural aspects

14  of the foreclosure process must be "strictly adhered to." Is the debtor's argument

15  something like "Because Claimant *supposedly* missed a payment(s), we could then violate

16  California law?" If a negligent driver sustains injuries as a result of his driving, is that

17  a defense as to a physician who thereafter negligently treats him for those injuries? Of

18  course not.

19    The Trust primarily relies on *Bergman vs. Bank of America* (ND Cal 2013)

20  2013 WL 5863057. First this is a pleading stage case, so that the standards are quite

21  different from deciding a summary judgment motion. Second, the Trust misrepresents

22

23  hold otherwise would be to conclude that an entity could act as trustee with-out ever checking on who had appointed them,
when, and whether they had such power to affect so dramatically peoples lives. Some entity, whether or not the owner of

24  a loan, could just place a call or write a letter and say "Start the foreclosure process. Send out a notice." Of course, that
cannot possibly be the legislative intent when these statutes were adopted, and especially where the process is supposed to

25  be strictly adhered to.

26

1   the holding of this case. It quotes language to support its argument that only applies to

2   Bank of America, the beneficiary in this case, and not to the trustee, Trustee Corps. As

3   to the trustee, the Court stated and held that: "Plaintiffs have not plausibly alleged that

4   Trustee Corps *was aware, or should have been aware, that it was not validly the trustee*

5   *when it recorded these documents*....because Bank of America was not the beneficiary,

6   and thus Trustee Corps was not the trustee, at the time the SOT was exe-

7   cuted....plaintiffs have not pled facts to suggest that Trustee Corps should have been able

8   to discover Bank of America's alleged lack of authority." That is decidedly different than

9   this claim where it is specifically alleged *and factually certain* that ETS could have easily

10  discovered it was not properly and legally substituted as the trustee.

11          Further, inherent and subsumed in the holding of the District Court in

12  *Bergman* is the conclusion that *if Trustee Corps could have discovered it was not*

13  *properly substituted as trustee, the result would have been different.* It is patently clear

14  from the facts of this case that Trustee Corps could not have possibly discovered this

15  fact from the evidence available to it. *There is no factual dispute in the instant Claim*

16  *that ETS could have discovered their lack of authority in five minutes.*

17          The Trust's further argument re: *Bergman*, that an *alleged* default(there is

18  a dispute about this, which the Trust keeps throwing around as a proven fact) gave the

19  "owner of his loan"(the Trust uses this language because it was not the owner of the

20  loan when it supposedly commenced the process–BONY was improperly assigned the

21  loan and it was of no force or effect), the right to commence foreclosure proceedings.

22  The Trust does not, and cannot, argue that this fact alone gave an entity the right to

23  violate California law, as it did here.

24          Lastly, a part of this Claim(attached to the Trust brief at Exhibit N is the

25  Declaration of the undersigned that was filed in San Mateo County Superior Court as part

26

1  of the process in obtaining a default judgment.[18]  The harm to Claimant flowed not only

2  from the foreclosure process itself, but from the actions of what can only be called

3  thugs, hired by ResCap and ETS, to attempt to frighten Claimant out of his

4  home–including disobeying a Court Order, attempting to proceed with an eviction

5  proceeding notwithstanding that it had been stayed previously by the Superior Court.  If

6  the Claimant had not suspected this attempt and appeared, ResCap would have obtained

7  such an Order, and done so in part on the proven lies under oath of the process server

8  who never served the appropriate papers.  ResCap attempted to circumvent the law, and

9  had it been successful, would have been impossible to unravel.  This is all demonstrated

10  by Claimant's declaration in that action.

11  　　　　　　　　**4.  NEGLIGENCE *PER SE***

12  　　　　　　The Trust objects to the negligence *per se* cause of action notwithstanding

13  it was not part of its request for a summary judgment motion.  Essentially, it argues for

14  the reasons previously stated, that there is no duty owed on the part of ETS.  This is a

15  separate cause of action, based on a violation of statute.  There was a clear violation of

16  statute, and this cause of action is valid for all of the reasons stated above.

17  　　　　　　**5.    EMOTIONAL DAMAGES LIE EVEN ABSENT PHYSICAL HARM/**

18  　　　　　　　**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

19  　　　　　　The Trusts protestations notwithstanding, physical harm is not a

20  requirement in California to be awarded damages for negligent infliction of emotional

21  distress.  California recognizes a right to recover damages for serious emotional distress

22  in a negligence action.  *Molien vs. Kaiser Found. Hosp.*(1980) 27 Cal.App.3rd 916, 930.

23  A plaintiff may recover general damages for emotional distress, pain and suffering, along

24

25  　　[18] *See* ECF Doc. # 10290-15, filed as part of this instant motion.

26

PRE-TRIAL MEMORANDUM OF LAW
RE: CLAIM NO. 4445　　　　　　　Page 17　　　　　BANKRUPTCY ACTION NO. 12-12020-MG

1  with other compensatory damages. *Merrill vs. Los Angeles Gas & Elec. Co.*(1910) 158

2  Cal. 499, 511; *Niles vs. City of San Rafael* (1974) 42 Cal.App.3rd 230, 244. *See* Witkin,

3  4 *Summary of California Law*, 10th Ed. §1022.

4          Negligent infliction of emotional distress refers to the recovery of damages

5  by a plaintiff who has not otherwise suffered any physical or bodily injury, for emotional

6  dis-tress arising from a defendant's negligent conduct. *Molien, supra* at 924. In 1980,

7  the California Supreme Court abolished the "physical injury" requirement. *Molien supra,*

8  930; *Potter vs. Firestone Tire and Rubber* (1993) 6 Cal.4th 965, 986.    Under this rule,

9  one may recover for emotional distress suffered as the result of a negligent act that

10  placed the plaintiff in fear for his personal well-being, regardless of whether there is any

11  physical impact and regardless of whether the emotional distress is accompanied by any

12  physical manifestation of injury. *Molien supra* at 924; *Burgess vs. Superior Court* (1992)

13  2 Cal.4th 1064, 1074.[19]    Damages for emotional distress may be recovered in a tort

14  action for fraud. *Branch vs. Homefed Bank*(1992)6 Cal.App.4th 793, 799.

15          Further, all detriment proximately caused by the breach of a duty imposed

16  by statute, as here, is compensable, including damages of emotional distress. *Pintor vs.*

17  *Ong* (1989) 211 Cal.App.3rd 837, 841. It is not necessary that the plaintiff suffer other

18  injury in addition to the emotional distress. *Pintor supra at 845.* For example, damages

19  for emotional distress have been awarded for a breach of the duty imposed by Cal. Civil

20  Code §2941, requiring reconveyance of real property after a debt secured by a deed of

21  trust has been satis-fied. *Pintor at 841; this is part of the statutory scheme imposing a*

22  *duty on trustees.*

23          In California, the courts have adopted a unitary concept of pain and

24

25      [19] *See* 32 California Forms of Pleading and Practice §362.11 *et seq.*

26

suffering, without attempting to bifurcate them, and this term has been used ad applied

to a plaintiff who may recover not only for physical pain but also for fright, nervousness,

grief, anxiety, worry, mortification, shock m humiliation, indignity, embarrassment,

apprehension, terror, ro ordeal. *Capelouto vs. Kaiser*(1972) 7 Cal. 3rd 889, 893. Medical

testimony is not required. No definite method of calculation is prescribed by law by

which to fix compensation for pain and suffering. It is required only that the award be

just and reasonable in light of the evidence. *Garfoot vs. Avila*(1989)213 Cal.App.3rd

1205. Lastly, a jury may compute pain and suffering damages by the per diem method

by which damages are measured in terms of a stated number of dollars for specific

period of time. *Beagle vs. Vasold*(1966) 65 Cal.2nd 166, 173.

This is exactly what Claimant did in calculating his damages. Although

criticized by debtor, this is perfectly allowable in California. And the calculations were

based on the severe emotional distress and shock as this matter was unrolling. *See*

Declaration of Alan Moss filed herewith.

Claimant's right to emotional distress damages is clearly mandated by

*Munger vs. Moore* (1970) 11 Cal.App.3rd 11, which held: "The measure of damages for

a wrong other than breach of contract will be an amount sufficient to compensate the

plaintiff for all detriment, foreseeable or otherwise, proximately occasioned by the

defendant's wrong."

In *Spinks vs. Equity Residential Briarwood Apartments* (2009) 171

Cal.App.4th 1004, 1040, a wrongful eviction case, the Court stated: "The recovery

includes all consequential damages occasioned by the wrongful eviction(personal injury,

including infliction of emotional distress, and property damage),,,and upon a proper

showing of malice, punitive damages."

/ / /

## C. FRAUD

The Trust argues that Claimant cannot demonstrate that he suffered the damage element required of fraud because the statutory notices *illegally* issued by ETS, and which then caused significant and continuing damage to Claimant, have been withdrawn. Further, debtor argues that any damages incurred in fighting and reversing the foreclosure was caused, not by the illegal actions of the debtor itself, but by Claimant's default.

This argument is an affront to logic, propriety, the law, and just common sense and decency. And it ignores the basic facts that ETS acted illegally and in contravention of the California statutes when it did issue these two notices(Notice of Default and Notice of Trustee Sale) and, after selling Claimant's home, conveying the trust deed to the bank. That the notices have been withdrawn, and that Claimant's home has been returned to him *does not obviate all of the damage, including extreme emotional damage he incurred for the three plus years of litigating against a major corporation, with unlimited assets, to accomplish this. It is beyond cavil that the debtor would not have rescinded the notices nor reversed the sale absent this enormous amount of litigation.* Perhaps if debtor could demonstrate to this court that it voluntarily admitted its mistakes, withdrew these notices and reversed the sale of Claimant's home, thereby not necessitating all of this litigation, that might be one thing. But that is not the case or the truth. The fact is that debtor used every means at its disposal to attempt to bury Claimant, and did so for a period exceeding three years. Debtor attempts to circumvent this by arguing that the beneficiary was not ResCap, but this is fallacious at best. It was ResCap, as the servicer, who conducted this litigation, forced it to go on and on, and refused to concede the most basic facts which have now been admitted in this matter.

1    Likewise, even if Claimant was in default, which he wasn't, that did not

2    cause ETS to violate the law. That violation, which caused all of claimant's damages,

3    occurred only because of debtor's callous disregard for California law. Second, the

4    debtor offers no competent evidence to this Court that the Claimant was in default at the

5    time of these actions. Therefore, this argument is of no avail. And it cannot. Third, the

6    argument ignores that Claimant has proved the elements necessary for fraud. Fourth,

7    Claimant has set forth compensable damages. *See* Declaration of Alan Moss, filed

8    herewith. Thus, Debtor has not advanced any theory to defeat the Fraud cause of

9    action, and the damages flowing therefrom.

10    **6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)**

11    Lastly, debtor argues that Claimant cannot assert a cause of action for

12    IIED.

13    Not one of these cases rises to the level of the instant case, wherein ETS

14    deli-berately and intentionally violated California statutes controlling the activities of

15    trustees. This is categorically different than, and far more serious than, these four cases.

16    None of them pointed to a violation of California law or could.

17    As pointed out above, the District Court in the BONYT litigation ruled that

18    the IIED cause of action was viable.

19    Behavior may be considered outrageous if a defendant (1) abuses a relation

20    or position that gives him power to damage the plaintiff's interest; (2) know the plaintiff

21    is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably

22    with the recognition that the acts are likely to result in illness through mental distress.

23    *Agarwal vs. Johnson* (1979) 25 Cal.3rd 932, 946. Neither physical injury or monetary loss

24    is required to be actionable. *Grimes vs. Carter* (19660 241 Cal.App.2nd 694.

25    Severe emotional distress was found to exist in *Fletcher vs. Western Nat.*

26

1  *Life Ins. Co.*(1970) 10 Cal.App.3rd 376 even though testimony showed the plaintiff

2  suffered no shock, horror, or similar physical effects and that most of his distress

3  resulted from his unfortunate economic situation. The Court held it may "consist of any

4  highly unpleasant mental reaction such as fright, grief, shame, humiliation,

5  embarrassment, anger, chagrin, dis-appointment, and worry." P. 397.    When this

6  involved losing his home, all continuing for many months, this was adequate for IIED.[20]

7          Claimant'S Declaration in the ETS litigation is directly relevant on this point.

8

9  Dated: April 23, 2017                          Respectfully Submitted,

10                                          _____

11                                              ALAN MOSS

12                                          Attorney *In Propria Personum*

13

14

15

16

17

18

19

20

21

22

23

24

_____

25      [20] *See* Witkin, 5 Summary of California Law, §452.

26

1

**PROOF OF SERVICE**

2

**COURT:**    U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

3

**CASE NAME:** *RESCAP*

4

ACTION NO.:    BANKRUPTCY NO. 12-12020-MG(SDNY)

5

6    I am employed in the County of San Francisco, California. I am over the age of 18 and not a party to the within action. On this date, I served the following:

7    Claimant's Pre-Trial Memorandum Of Law Pursuant To Pre-Trial Order

8    on the party(ies) set out in said document by causing a true copy thereof to be:

9    [  ]        Telecopied via facsimile to the addressee's facsimile number listed below per CRC 2008(b).

10    [ X ]        By U.S./FEDEX priority OVERNIGHT mail, by placing said document(s) in a sealed envelope with postage thereon fully prepaid, and then given to
11              an agent of FEDEX or the U.S. Post Office.
      [  ]        By U.S. mail, Return Receipt Requested, by placing said document(s) in a
12              sealed envelope with appropriate postage thereon fully prepaid and then placed in the designated office area for outgoing mail.
13    [  ]        Delivered by hand to the person set forth below, or by handing said document in a sealed envelope to a messenger service for delivery as
14              addressed.

15    and if mailed, addressed as follows and sent to the following address(es):

16    Hon. Martin Glenn(Chambers Copy)
      Judge of the U.S. Bankruptcy Court in and for the
17         Southern District of New York
      Alexander Hamilton Custom House
18    One Bowling Green
      New York New York 10004-1408

19
      Clerk's Office(Filing Copy)
20    U.S. Bankruptcy Court in and for the
         Southern District of New York
21    Alexander Hamilton Custom House
      One Bowling Green
22    New York New York 10004-1408

23    Morrison and Foerster LLP
      ATTN: Norman S. Rosenbaum
24    250 West 55th Street
      New York New York 10019

25

26

1

        I declare under penalty of perjury under the laws of the State of California
that the foregoing is true and correct.

2

        Executed this  __24th__  day of April, 2017, at San Francisco, California.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26