**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al*.,<br><br>Debtors. | **FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 12-12020 (MG) |

**MEMORANDUM OPINION SUPPORTING THE ENTRY OF ORDER GRANTING
THE UNITED STATES TRUSTEE'S MOTION FOR CIVIL CONTEMPT**

*A P P E A R A N C E S:*

OFFICE OF THE UNITED STATES TRUSTEE
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, New York 10014
By:     Andrew D. Velez-Rivera, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *United States Trustee's* (the "U.S. Trustee") *Motion for Entry of Civil Contempt Order Against Chaledeeannka Deborah Ann Williams Goyens-Bell Eberwein* ("Goyens") (the "Motion," ECF Doc. # 10391). Accompanying the Motion is a Memorandum of Law (the "Memo," ECF Doc. # 10391–1), and the *Declaration of Andrew D. Velez-Rivera* (the "Velez-Rivera Decl.," ECF Doc. # 10391–2). At a hearing on June 29, 2017 (the "Hearing"), the Velez-Rivera Declaration was admitted into evidence. Goyens did not appear at the Hearing. On July 5, 2017, the Court entered an order (the "Contempt Order," ECF Doc. # 10409) granting the Motion. The Court stated at the June 29, 2017 hearing that an Opinion would follow further explaining the basis for the Contempt Order.

The U.S. Trustee fulfills an important role in bankruptcy proceedings, helping to oversee the administration of bankruptcy cases. Here, the U.S. Trustee diligently performed this responsibility in helping to oversee the administration of this case by moving for contempt

against Goyens, who plainly has no legitimate purpose in filing papers before this Court, and who has repeatedly flouted the authority of other courts.

## I.    BACKGROUND

### A.    The Motion

The Motion requested that this Court enter an order requiring Goyens to withdraw her filing seeking "judicial notice" (the "Request for Notice," ECF Doc. # 10358)[1] and to impose a daily sanction of $100.00 for every day after June 17, 2017 that she failed to do so. (Motion at 1.) As of the Hearing, the Request for Notice had not been withdrawn. The Motion sought entry of an order holding Goyens in contempt, imposing monetary sanctions to compel compliance with the Contempt Order, and providing that if Goyens did not withdraw the Request for Notice after 60 days, the Request for Notice be removed from public view and that further accumulation of monetary sanctions cease. (*Id.* at 2.) Objections to the Motion were due June 22, 2017; none were filed. The U.S. Trustee served Goyens with the Motion on May 17, 2017. (*Id.* at 3.) The Court granted the Motion in a form substantially similar to what the U.S. Trustee sought, as described in the Contempt Order.

### B.    Goyens and Her History Before This Court

On April 17, 2012, Goyens and Robert Daniel Eberwein ("Eberwein") filed a joint voluntary petition for chapter 11 relief; the case was pending before my colleague, Judge Sean H. Lane, as Case No. 12-11580 (SHL) in the U.S. Bankruptcy Court for the Southern District of New York. (Velez-Rivera Decl. at 1–2.) In connection with that chapter 11 case, on October 4, 2012, the U.S. Trustee filed an adversary complaint (the "Adversary Complaint") against Eberwein, Goyens, and others (the "Adversary Case," Adv. Proc. No. 12-01901 (SHL)). (Velez-

---

[1]    The Request for Notice is 62 pages and appears to have no intelligible principle of organization. It appears to consist of random court documents and handwritten notes. Particularly egregious, some of the notes appear to have personal financial information and names of non-parties.

Rivera Decl. at 2.) The Adversary Complaint included serious allegations of wrongdoing by the defendants. (*Id.*)

The Adversary Complaint alleged that Goyens used 45 different names to file for bankruptcy throughout the nation. (*Id.* at 1–2) Between 1991 and 2009, Goyens filed 34 bankruptcy cases, six bankruptcy appeals, four adversary proceedings, nine civil cases in federal district court, and six appeals in the federal courts of appeals. (*Id.* at 2) Furthermore, between 2010 and 2012, Goyens filed six bankruptcy cases in the Southern District of New York. (*Id.*)

On June 27, 2012, in a chapter 13 case filed in this District by Eberwein (*see* Case No. 12-11486 (SHL)), in response to irrelevant and vexatious e-mails received by the court's staff, the Court entered an order providing "that [Eberwein] or other party in interest, or anyone affiliated or associated with any Debtor or other party in interest . . . and any recipient of the emails sent by [Eberwein] to the Court, is prohibited from sending emails or other forms of electronic transmission, including facsimile, to any employee of this federal bankruptcy court, to the United States Trustee (Region 2) or any employee of the United States Trustee, and to any case or standing trustee." (Case No. 12-11486 (SHL), ECF Doc. # 21, at 2.) Because the Debtors had intentionally been submitting large paper filings for no other purpose than to tie down the court's resources, on July 24, 2012, the Court entered another order requiring that, "with respect to any paper filing of more than 20 pages, or filings on the same day totaling more than 20 pages, that is submitted by any Debtor, Plaintiff or other party . . . in any such cases or adversary proceedings," an electronic copy of the filing also must be submitted. (*Id.*, ECF Doc. # 23, at 2.)

New York was not the only State where Goyens engaged in these shenanigans. Goyens is a "vexatious litigant" according to a list maintained by the Judicial Council of the State of

3

California.  (Velez-Rivera Decl. at 4.)  According to the Adversary Complaint, in 2002, the bankruptcy court for the Eastern District of California entered a 180-day bar order against future filings by Goyens, and the Northern District of California entered a one-year bar order barring filings by Goyens.  (*Id.* at ¶¶ 8–9.)  In 2006, the Northern District of California entered an additional order barring Goyens from filing papers for three years.  (*Id.* at ¶ 10.)  That same year, the Northern District of California entered an injunction against Goyens, "permanently enjoin[ing] her from filing, in any United States bankruptcy court, any bankruptcy case or adversary proceeding, or any document therein."  (*Id.* at ¶ 11.)  Furthermore, in 2007, the U.S. Trustee for Region 17 (encompassing the Northern District of California, the Eastern District of California, and the District of Nevada) sought and obtained an order for civil contempt against Goyens from the U.S. Bankruptcy Court for the Northern District of California.  (*Id.* at ¶ 12.)  That court entered an additional contempt order in 2010.  (*Id.* at ¶¶ 12, 14.)

Returning to New York, in 2013, Judge Lane entered a default judgment and injunction (the "Permanent Injunction," Velez-Rivera Decl., Ex. B) against Goyens on the Adversary Complaint.  (*Id.*)  The Permanent Injunction found that:

> In a 21-year history of multiple and abusive bankruptcy, civil and appellate cases filed in her own name and under approximately 45 aliases and names of other individuals, which cases have included the filing of several burdensome documents, Defendant Goyens has engaged continually in conduct that is injurious, fraudulent, unfair and deceptive to creditors, this and other Courts, and the bankruptcy process.

(Permanent Injunction ¶ 21.)  The Permanent Injunction also provided that:

> (B) Chaledeeannka Deborah Ann Williams Goyens-Bell Eberwein, and all persons in concert and participation with her, whether acting on their own behalves or on behalves of others, and whether using their own names or one or more aliases hereby are:

> (1) permanently enjoined from filing any new bankruptcy case or adversary proceeding in this and any other United States Bankruptcy Court, and
>
> (2) permanently enjoined from filing any document (including proofs of claim) in any other bankruptcy case or adversary proceeding without first obtaining leave to file such document from the United States Bankruptcy Judge presiding over such bankruptcy case or adversary proceeding.

(*Id.* at 11.) Relevant to the present case, the U.S. Trustee alleges that the filing of the Request for Notice violates the Permanent Injunction.

## II. LEGAL STANDARD

### A. Contempt of a Bankruptcy Court's Orders

"Courts have inherent power to enforce compliance with their lawful orders through civil contempt." *In re MF Global Holdings Ltd.*, 562 B.R. 41, 52 (Bankr. S.D.N.Y. 2017). Further, "bankruptcy courts have power to enter civil contempt orders." *Id.* It is well settled that a bankruptcy court has broad jurisdiction to enforce injunctions. *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005) ("Bankruptcy courts retain jurisdiction to enforce their own orders"). This power derives from the inherent power of the court, along with 11 U.S.C. § 105 and 28 U.S.C. § 157. *See Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 187 (2d Cir. 1990); *see also Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284–85 (9th Cir. 1996). If a civil contempt proceeding arises out of a core matter, the contempt proceeding is core. *See Mountain Am. Credit Union v. Skinner*, 917 F.2d 444, 447–48 (10th Cir. 1990).

Federal courts consider two factors in determining whether to hold a party in civil contempt: whether the alleged contemnor had notice of the court order, and whether that person complied with the order. *See In re Keane*, 110 B.R. 477, 482–83 (S.D. Cal. 1990). Furthermore,

5

with respect to compliance with a specific order, the court may impose civil contempt only where (1) the underlying order is clear and unambiguous, (2) proof of non-compliance is clear and convincing, and (3) the contemnor has not been reasonably diligent and energetic in attempting to accomplish what was ordered. *See EEOC v. Local 580*, 925 F.2d 588, 594 (2d Cir. 1991); *see also MF Global*, 562 B.R. at 52–53. In this regard, the "clear and convincing" prong requires that "[t]he clarity of the order must be such that it enables the enjoined party to ascertain from the four corners of the order precisely what acts are forbidden." *Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 363 (E.D.N.Y. 1998) (internal citation and quotation marks omitted). In addition, "[i]n the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal citation and quotation marks omitted). "[T]he defendant must not have diligently attempted to comply with the order." *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 535 (Bankr. S.D.N.Y. 2007).

### III.  DISCUSSION

Courts apply a two-step test to determine whether a party acted in contempt. Here, the first factor, whether Goyens had notice of the Permanent Injunction, is plainly met. A notice of entry of the Permanent Injunction was filed in the Adversary Case as ECF Doc. # 14, and this evidences that copies of the Permanent Injunction were properly served on Goyens by the U.S. Trustee. Furthermore, based on the record at the Hearing, this Court has already concluded that Goyens received adequate notice of the Permanent Injunction and will not revisit that finding here. (Contempt Order at 2.) The second factor, whether she complied with, or here failed to comply with, the Permanent Injunction, is satisfied. The Permanent Injunction barred Goyens from filing "any document," and Goyens flouted that order by causing to be entered the Request

6

for Notice, which is plainly a document. It is uncontested that she chose not to seek relief of this Court before filing the Request for Notice, which would otherwise excuse her conduct.

A three-step test determines whether courts should impose a contempt sanction for violating a specific court order. *See EEOC v. Local 580*, 925 F.2d 588, 594 (2d Cir. 1991); *see also MF Global*, 562 B.R. at 52–53. The first step is whether the order—here, the Permanent Injunction—was clear and unambiguous. Within its four corners, the Permanent Injunction was crystal clear. It prohibited Goyens from filing "any document" in any bankruptcy case or in any adversary proceeding.[2] Here, Goyens filed the Request for Notice without seeking leave of this Court beforehand. The second factor, whether proof of non-compliance is clear and convincing, is plainly satisfied, as Goyens filed the Request for Notice publically on ECF. Finally, Goyens plainly has not attempted to comply with the Permanent Injunction. The Permanent Injunction is particularly easy to comply with, because it requires no affirmative action on her part. Goyens simply had to do nothing. Here, she continues to burden the courts of this District with useless, vexatious, and irrelevant filings. These filings have zero benefit and unnecessarily burden the courts and their staff.

Goyens' earlier conduct, while not necessary for finding that she did not attempt to comply with the Permanent Injunction, adds context to these facts. Multiple courts have found her filings to be wholly without merit. Further, other courts have permanently enjoined her from filing further bankruptcy proceedings and papers. Finally, in this very case, Goyens has previously contacted this Court's chambers through the phone system and she has left bizarre, unintelligible voice messages. The previous vexatious, extraneous, and improper conduct engaged in by Goyens over many years illuminates to all that this filing is nothing new under the

---

[2] The Permanent Injunction provided an escape hatch for Goyens if she did, in fact, have legitimate business with the court. She is permitted to file papers with leave of the court; however, she chose not to exercise this option.

sun.  The Request for Notice is one of many vexatious filings.  Because the Permanent Injunction only required her to *refrain* from doing something, rather than *affirmatively* to perform an action, it is easier to find that the violation of the Permanent Injunction, which required only inaction, was willful.  *See generally Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2002 WL 1988200, at *3 (S.D.N.Y. Aug. 27, 2002) (trebling compensatory damages when holding a party in contempt based on noncompliance with an injunction, which required only refraining from copyright infringement and where no affirmative actions were necessary to comply with the injunction).

The federal courts are not playgrounds and court proceedings are not a game.  Vexatious litigation consumes valuable resources including tax dollars, the cost of processing these filings, paying judicial employees to process these filings, and most importantly, time.  According to "Table F—U.S. Bankruptcy Courts Statistical Tables For The Federal Judiciary (December 31, 2016)" (available at http://www.uscourts.gov/sites/default/files/data_tables/stfj_f_1231.2016.pdf), there were 7,778 filings in this District last year, and there are 10,795 cases pending in this District.  With nine full time judges in this District, that averages to over 1,000 pending cases before each judge.  Furthermore, many of these cases are complicated filings that require great attention to detail by the judges, law clerks, and staff of this District, and they do so ably on a daily basis.  While this District gives its full attention to every case, regardless of its size, these vexatious filings waste the time of a busy District and serve no benefit to this Court, honest debtors, creditors, or the public.  This particular case is a large case affecting the lives of thousands of people.  Courts, of course, must bear the ultimate responsibility for ensuring that vexatious litigation does not go forward, but the U.S. Trustee performs an invaluable service in identifying these situations for

the courts and minimizing the damage otherwise done. Here, the U.S. Trustee has done just that, and the U.S. Trustee has helped maintain the integrity of the judicial process.

## IV.  CONCLUSION

For the reasons explained above, the Court finds that Goyens willfully violated the Permanent Injunction and that the Court was justified in issuing the Contempt Order. Based on Goyens' repeated disregard for court orders, the Court has little reason to believe that Goyens will comply with previously issued orders and injunctions in this case or in other cases. The U.S. Trustee should consider referral to the U.S. Attorney for possible criminal contempt prosecution in the event of further contumacious conduct.

The U.S. Trustee shall serve a copy of the Contempt Order and this Opinion on Goyens.

Dated:   July 12, 2017
         New York, New York

                              ____*Martin Glenn*_____
                                  MARTIN GLENN
                              United States Bankruptcy Judge