Vito Genna
Clerk of the Court
U.S. Bankruptcy Court Southern District New York
One Bowling Green
New York, NY 10004-1408

**To be filed as correspondence to the court**

January 11, 2018

RE: In re RESIDENTIAL CAPITAL, LLC, et al.
<u>U.S. Bankruptcy Court Southern District New York</u>, Case No: 12-12020

# <u>TO THE IMMEDIATE ATTENTION: Honorable Judge Martin Glenn</u>

### NOTICE OF CONFLICTS OF INTEREST, FRAUD AND FRAUD UPON THE COURT BY DEBTORS IN CONSPIRACY WITH CREDITOR LNV CORPORATION, RESCAP LIQUIDATING TRUST AND SPECIAL INSURANCE COVERAGE COUNSEL FOR THE DEBTORS PERKINS COIE LLP

**PLEASE TAKE NOTICE** that the undersigned hereby notifies:

1) The Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, Room 534, (the "Bankruptcy Court");

2) Department of Justice, U.S. Trustee Program (this disclosure warrants revocation of Debtors' status as "debtors in possession" and assignment of a U.S. Bankruptcy Trustee);

3) The underwriters for Lloyds of London and other insurance underwriters;

4) The ResCap creditors;

5) The U.S. Senate Judiciary Committee;

6) The U.S. Senate Committee on Banking; Housing, and Urban Affairs;

7) The Government Accountability Office;

8) The Consumer Financial Protection Bureau;

9) The U.S. Senate Banking Subcommittee on Financial Institutions and Consumer Protection;

10) The U.S. Senate Finance Subcommittee on Taxation and IRS Oversight;

11) U.S. Senate Judiciary Subcommittee on Antitrust, Competition Policy and Consumer Rights;

12) The U.S. Senate Judiciary Subcommittee on the Constitution;

13) The U.S. Solicitor General Noel Francisco;

14) U.S. Attorney General Jeff Sessions;

15) The Board of Governors of the Federal Reserve System;

RECEIVED

JAN 22 2018

U.S. BANKRUPTCY COURT, SDNY

16) Oregon Attorney General Ellen Rosenblum, Senators Ron Wyden and Jeff Merkley, Governor Kate Brown,  District Attorneys for Washington & Clackamas Counties Oregon;

17) Illinois Attorney General Lisa Madigan; Senators Richard Durbin and Tammy Duckworth, Governor Bruce Rauner;

18) Arizona Attorney General Mark Brnovich, Senators John McCain and Jeff Flake, Governor Doug Ducey;

19) Indiana Attorney General Curtis Hill, Senators Todd Young and Joe Donnelly, Governor Eric Holcomb;

20) Tennessee Attorney General Herbert Slatery III, Senators Bob Corker and Lamar Alexander, Governor Bill Haslam;

21) New York Attorney General Eric Schneiderman, Senators Chuck Schumer and Kirsten Gillibrand, Governor Andrew Cuomo;

22) Internal Revenue Service Tax Fraud Division;

23) Office of the Special Inspector General For The Troubled Asset Relief Program; and

24) Financial Fraud Enforcement Task Force

The undersigned discovered on or around December 20, 2017 that **Perkins Coie LLP**, ("Perkins Coie"), is the Special Insurance Coverage Counsel for the **ResCap Liquidating Trust** and that **LNV Corporation**, ("LNV"), is a Creditor and that **Residential Funding Company LLC**, ("RFC-LLC"), is a Debtor in this Chapter 11 bankruptcy; and that <u>CSG Investments Inc.</u> ("CSG") loaned **Debtor GMACM Borrower LLC** at least $1,060,000,000, see <u>Exhibit 1</u> – press release created by CSG (also contained on CSG's website) showing loan to **Debtor GMACM Borrower LLC.**

LNV and CSG are each owned and fully controlled by multi-billionaire Daniel Andrew Beal sole owner of private Beal Bank SSB, 6000 Legacy Drive, Plano Texas 75024 and Beal Bank USA, a Nevada incorporated "industrial loan corporation" ("ICL").  Beal Bank USA is the parent corporation for **Creditor LNV**. See <u>Exhibit 2</u> – corporate disclosure statements from representative foreclosure cases involving **Creditor LNV**. (Note: ICLs enjoy little to no government regulation of their activities and questions have been long been raised by U.S. Senators regarding the potential for fraud and predatory practices in the banking industry created by ICLs.)

**Perkins Coie** attorneys <u>Gabrielle D. Richards</u>, <u>Ercik J. Haynie</u>, and <u>Jeffrey M. Peterson</u> claim to represent **Creditor LNV** in two foreclosure cases in Oregon, *LNV v. Subramaniam*, Case 3:14-cv-01836 and *LNV v. Fauley*, Case 3:15-cv-01422 both in the U.S. District Court Oregon and both on appeal in the U.S. 9th circuit, cases 15-35963 and 16-35593 respectively.  However the discovery by defendants in these cases on December 20, 2017 of **Perkins Coie's** role as Special Insurance Coverage Counsel for the

**ResCap Liquidating Trust** and that **RFC-LLC** is a Debtor and that **LNV** is a Creditor of the *In re RESIDENTIAL CAPITAL, LLC, et al*, Chapter 11 bankruptcy case raises a substantial significant question regarding conflict of interest and impropriety by **Perkins Coie** as a law firm representing Debtors, and also representing **one Creditor, LNV Corporation** in these two foreclosure actions where LNV falsely claims **Debtor RFC-LLC** conveyed beneficial interest in the mortgages by assignment to LNV whe evidence indisputably shows such conveyance never occurred. Furthermore Debtors, including **RFC-LLC** were also named as Defendants in *USA et al. v. Bank of America Corp. et al.*, Civil Action No. 13-5112, U.S. Dist. Court for D.C. Certiorari, Originating Case: 1:12-cv-00361-RMC; also known as the "USA and 49 State Attorney General Lawsuit" that resulted in a $25 Billion dollar settlement agreement on Thursday, February 9, 2012. See: https://www.justice.gov/opa/pr/federal-government-and-state-attorneys-general-reach-25-billion-agreement-five-largest. Debtors filed this Chapter 11 on May 14, 2012.

Debtors agreed not to continue the illegal activities identified in the Attorney Generals' complaint against them as a condition of their consent judgments specific to the settlement agreement. Facts contained herein definitively show that Debtors violated the conditions of their consent judgments. It also appears **Debtors and their Counsel Perkins Coie** engage in a scheme and artifice to defraud that includes money laundering, fraudulent tax evasion and insurance fraud with D. Andrew Beal who has a demonstrated propensity for such activities as determined by the U.S. 5th Circuit Court of Appeals.

In both Oregon cases **Perkins Coie** attorneys submitted to the U.S. District Court false forged counterfeit mortgage instruments, knowing they are false, and knowing judges would rely on them as being genuine, to secure summary judgments favoring their purported client, **Creditor LNV,** with intent to deprive their homeowner victims of their constitutional rights to due process of law and a trial by jury, which they did. Specifically relied upon in these two Oregon cases, as well as in many other foreclosure cases including those listed below are false recorded assignments of deed of trust that purport to convey beneficial interest in the mortgage note and trust deed from **Debtor RFC-LLC** or MERS as nominee for RFC-LLC to **Creditor LNV** each one is notarized by GMAC employee and Minnesota Public Notary **Diane M. Meistad** on **March 10, 2008**. (Note: LNV was incorporated in Nevada after March 10, 2008.) These false assignments each bear the signatures of GMAC employees Michael Mead, Betty Wright or Jeanne J. Smith; however these signatures appear to have been robo-signed and/or authored by individuals who were not Michael Mead, Betty Wright or Jeanne J. Smith. These false assignments were caused to be recorded with county Recorder's Offices across the United States using mail and/or wire services by Allison Martin an employee of Beal Bank SSB, purportedly also an employee of MGC Mortgage Inc.

("MGC") incorporated by Daniel Andrew Beal in Texas on January 27, 2008. MGC is purported by Beal to be the mortgage servicer for **Creditor LNV**. After being illegally recorded these false assignments were used by **Creditor LNV** to illegally foreclose on properties in the following representative cases:

> *__LNV v. Gebhardt__*, Case No. 3:12-CV-468-TA V-HBG, Eastern **Tennessee** U.S. District Court at Knoxville, appealed to U.S. 6th Circuit;
>
> *__Beal Bank USA v. Swifts__*, Case: 1:16-cv-10729, U.S. Dist. Court Ill. No. District Eastern Division; and *__Beal Bank USA v. Swifts__*, Case No. 2016 CH 593 in the Circuit Court of the 16[th] Judicial Circuit Kane County **Illinois**; formerly *__LNV Corporation v Swifts__* Case No. 11 CH 2069 in the Circuit Court of the 16[th] Judicial Circuit Kane County Illinois; *__In re.Swifts__* Case No. 07-12787 U.S. Bankruptcy Court Northern District of Illinois, Eastern Division; and
>
> *__LNV et al v. Hardwick__*, Case No. 51COJ-1204-MF-00098; Martin County **Indiana** Circuit Court; and
>
> *__LNV v. Fauley__*, Case 3:15-cv-01422 HZ, **Oregon** U.S. District Court on appeal in U.S. 9th Circuit Case: 16-35593; and
>
> *__LNV v. Subramaniam__*, Case 3:14-cv-01836-MO, **Oregon** U.S. District Court on appeal in U.S. 9th Circuit Case: 15-35963; and
>
> *__LNV v. Tuli Molina Wohl__*. Case No. 1 CA-CV 11-0603, **Arizona** Division One Court of Appeals;

Homeowners in the above named cases are representative of a much larger class of homeowners victimized by the illegal fraudulent activities of **Debtor RFC-LLC, Creditor LNV** and others. **Perkins Coie** attorneys in the Oregon cases, as well as other attorneys representing or claiming to represent **Creditor LNV** consistently misrepresent facts to judges with intent to win summary judgments to deprive these homeowners of their real property by depriving them of their constitutional right to due process of law and a jury trial; which they do. See Dkt.83, 84 and 87 Case: 15-35963 and Dkt. 62, 63 and 67 Case: 16-35593 in the U.S. 9th Circuit.

Ms. Subramaniam and Ms. Fauley in Oregon brought civil rights actions against **Perkins Coie** and attorneys Gabrielle D. Richards, Ercik J. Haynie, and Jeffrey M. Peterson in the U.S. District Court Oregon, see cases: 3:17-cv-01627 and 3:17-cv-01656. Both women were forced to represent themselves pro se due to the egregious abuse of process and chicanery of **Perkins Coie** attorneys in the foreclosure cases which is designed to cause these women undue financial burden and deprive them of legal representation, which it did. Had these women been able to access an attorney or even a para-legal before filing their respective civil rights complaints they would have known to file one complaint naming them

both as Plaintiffs instead of two separate complaints. Not being educated in law they didn't know this. Ms. Subramanim's complaint was dismissed immediately because she couldn't afford to pay the filing fee and applied for in forma pauperis status which was initially granted then withdrawn even though she qualifies financially; while Ms. Fauley was able to pay the filing fee so her case has been proceeding. Both cases are for the same causes against the same parties. **Perkins Coie** attorney Erick Haynie, in spite of being a Defendant in case: 3:17-cv-01656, *Fauley v. Mosman et al*, continues to represent **Creditor LNV** in an Oregon state court where he viciously tries to evict Ms. Fauley after an illegal Sheriff sale (the writ issued by the state court expired before the sale was executed) in spite of the following facts:

1. He knows she has CANCER and eviction threatens her recovery and therefore her life; and
2. He knows she is paying a supersedes bond undertaking pending the state court appeal; and
3. He knows she has already paid $41,000 in bond payments into an account held by Clackamas County Court; and
4. He knows she has paid $60,000 down and $387,000 in mortgage payments, while no evidence has ever been submitted to show his client(s) paid anything to acquire her mortgage; and
5. He knows substantial evidence has been submitted to show neither **Debtor RFC-LLC** nor **Creditor LNV** is a holder, owner of nor a party entitled to enforce ("PETE") the Fauley mortgage.

      **Perkins Coie** attorneys Gabrielle D. Richards, Ercik J. Haynie, and Jeffrey M. Peterson have been exceptionally ruthless in their pursuit to deprive these Oregon women of their rightful property without due process of law and without a jury trial. Ms. Subramaniam is a disabled person. **Creditor LNV** aka Daniel Andrew Beal and **Perkins Coie** intentionally exploited her disabilities and the economic disadvantage her disabilities cause to unduly gain a grant of summary judgment in a federal court and then to have her, and other disabled women she serviced, evicted from her home without service of summons thereby depriving her, or them, of any opportunity to prevent said eviction.

      According to a staff attorney at the Oregon Bar it appears to be a conflict of interest for **Perkins Coie** attorney Erick Haynie to continue representing **Creditor LNV** in the state eviction case against Ms. Fauley because she has sued him and **Perkins Coie;** and suggested she file a complaint. Because Ms. Fauley has to represent herself pro se while she works full-time; and because her father had a stroke and a heart attack in December 2017 so she hasn't been to do this yet. When these two Oregon women filed their civil rights complaints they had no idea that **Perkins Coie** represented the **ResCap Liquidating Trust** that LNV was a Creditor and that RFC-LLC was a Debtor in this Chapter 11 bankruptcy case. They and the other above named victims long suspected a massive fraud scheme. Collectively they, with

many other victims not named here, collected a large volume of substantial evidence suggesting such but until they discovered these parties' roles in the *In re RESIDENTIAL CAPITAL, LLC, et al*, Chapter 11 bankruptcy they had been unable to connect the dots.

After jury verdicts granting multi-million dollar awards to victimized homeowners in the **Creditor Mitchell** and **Kessler** class actions these attorneys and their clients became highly motivated to prevent a jury trial and discovery in foreclosure cases where they use false forged counterfeit mortgage instruments with intent to misrepresent the legal standing of the foreclosing party. These attorneys choose federal courts because they know after the Supreme Court decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___ (2007) and *Ashcroft v. Iqbal*, 556 U.S. ___ *(2009)* federal judges, especially based on *Iqbal*, would be inclined to readily grant to foreclosing parties summary dismissals pursuant to Fed. Rule Civ. Proc. 12(b)(6) and summary judgments pursuant to Fed. Rule Civ. Proc. 56.

These six representative cases include an overwhelming preponderance of irrefutable evidence and established rules of law that show the foreclosing party, **Creditor LNV**, is not an owner, holder, or party entitled to enforce ("PETE") the negotiable instrument pursuant to Federal Uniform Commercial Code ("UCC") Articles 3 and 9, and the 9th Circuit Bankruptcy Appeals Court decision *In re Veal*, 450 BR 897, 911 (B.A.P. 9th Cir. 2011) where the 9th Cir. Bankruptcy Justices articulate how U.C.C. Articles 3 and 9 work together to require authentication of endorsements that purport to convey mortgage instruments in order to correctly identify a party entitled to enforce ("PETE"). (In the specific representative cases the party purporting to covey mortgages, **Debtor RFC-LLC**, to **Creditor LNV** was NOT in a title position to do so.) Yet judges granted summary judgments to **Creditor LNV** anyway.

Numerous legal commentators have speculated about the unconstitutional effects of *Twombly* and *Iqbal* and the above named six representative cases from Tennessee, Illinois, Indiana, Oregon, and Arizona are representative examples of the egregious civil rights deprivations caused by lower courts' interpretation of *Twombly* and *Iqbal* and the Constitutional need for the Supreme Court to reconsider those decisions because the real-world application of exceptionally stringent pleading requirements in *Iqbal*, are routinely depriving average Americans of their constitutional rights and access to justice; and have and are unconstitutionally depriving thousands if not millions of Americans of their real property without due process of law or a jury trial. It is in the public interest to protect our democratic institutions, the impracticality of our courts and to uphold the Constitution of the United States. Deprivation of real

property without due process of law was a grave concern for our founding fathers. They saw a jury trial as essential to democracy. Thomas Jefferson in 1792 said:

> *"I consider trial by jury the greatest anchor ever yet devised by humankind for holding a government to the principles of its constitution."*

Irrefutable evidence from these six representative cases is highly convincing to any reasonable person, and if such irrefutable evidence had been presented to a jury these homeowners would never have suffered the horrors and substantial injury inflicted upon them by illegal foreclosures perfected with false forged counterfeit mortgage instruments, provable to be such, if only their evidence could be presented to a jury. Their right to discovery and to present a merit case to a jury was deprived by judges who appear biased against them and who refuse to acknowledge, in spite of an overwhelming preponderance of substantial evidence, a genuine issue of material fact warranting discovery and a trial by jury.

One clear example of such a forged/altered deed of trust uploaded into the Oregon U.S. District Court's electronic filing system by **Perkins Coie** attorney Gabrielle D. Richards using the internet (i.e. wire transmissions) is a purported copy of the "original" Subramaniam Deed of Trust. Download from PACER Doc. 5-2 in *LNV v. Subramaniam*, Case 3:14-cv-01836-MO, Oregon U.S. District Court on appeal in U.S. 9th Circuit Case: 15-35963 and view the file in its digital .pdf format on a computer.

This purported "original" Subramaniam Deed of Trust, Doc. 5-2 electronically submitted by **Perkins Coie** in *LNV v. Subramaniam* in the Oregon U.S. District Court as a pdf file appears instead to be **Creditor LNV**'s master copy of a digitally altered black and white photocopy of the Subramaniam "deed of trust" easily obtainable from public records. The digital alterations in this document are obvious to anyone with even rudimentary knowledge of how Adobe PhotoShop© can be used to alter digital images. Ms. Subramaniam specifically requests the Honorable Judge Martin Glenn, Senators, Attorney Generals, attorneys representing Creditors who may have been defrauded, and attorneys representing insurance underwriters who may be defrauded by this scheme and artifice to retrieve Doc. 5-2 from PACER and view it in its electronic form. Ms. Subramaniam requests the Honorable Judge Martin Glenn and the others to look at the initials at the bootom of each page. It is clearly visible that on every page with a blue ink signature Ms. Subramaniam's initials are also in the same shade of blue; yet on all other pages Ms. Subramaniam's initials are black. This would not be the case if this were the "genuine" and "original" instrument. Ms. Subramaniam requests the Honorable Judge Martin Glenn to look at the name "Denise Subramaniam" hand printed in blue ink above the notary signature zoomed to 300% on page 15 of Doc.

5-2 where it is clearly visible that the weight, clarity and color distribution seen within the pen strokes of the first two letters "De" when compared with the letters "nise Subramaniam" that follow them are dramatically different from each other suggesting digital cut and paste. A blotchy background is clearly visible behind these first two letters that is not visible behind the other letters; and the same blotchy background is visible behind the hand-written date and the notary signature above the name "Denise Subramaniam" where sharp straight edges are visible outlining the blotchy backgrounds. These characteristics are indicative of digital cut and paste. Ms. Subramaniam requests the Honorable Judge Martin Glenn and others to look at her initials on page 15 of Doc. 5-2 zoomed at 800% where it is clearly visible that the period after the last letter is black, while the two letters of the initials and the first period are blue. Ms. Subramaniam requests the Honorable Judge Martin Glenn and others to look at her initials on page 18 of Doc. 5-2 zoomed at 800% where white space around the letters are clearly visible and a portion of the line underneath and between the two letters of the initials is blue, while the rest of the line is black. When Ms. Subramaniam signed the genuine deed of trust to her mortgage in 2004 she signed a black and white printed form. If this were the genuine document she signed in 2004 there would be no white space surrounding the letters of her initials, and the black line on the form would be consistently black. The characteristics visible on Doc. 5-2 are consistent with digital alteration in PhotoShop© where the paint brush tool is used to color sections by "pouring" color into a shape. The color will spill into surrounding areas when the borders of two shapes being filled touch one another such as the portion of the line between the two letters of the initials here. Another characteristic of the paintbrush tool in PhotoShop© is that the weight and density of the "ink" is consistent. When a pen is used distribution of the ink within a pen stroke varies so the weight and density of the ink will be heavier in some places and lighter in others. This characteristic of a natural pen stroke will still be visible in a direct color copy of a genuine signature. See Doc. 134 and Doc. 134-1 to 134-3, *LNV v. Subramaniam* and Dkt. 7-11, 9th Circuit Case: 15-35963.

The software Adobe Acrobat© Professional provides functionality for viewing file properties. Below is a screen print of the file properties for Doc. 5-2 opened on Ms. Subramaniam's computer. "**2014-1121-Doc5-2-DOT.pdf**" is the name Ms. Subramaniam gave to the file when she downloaded it in or around March 2016 from PACER. "**1507_001.pdf**" is the file name given to the file by "**mbeaty**" the author of the file when he created it. The file was originally created by the author on 11/18/2014 10:49:09 AM. The file was first uploaded into the District Court's electronic filing system on Tuesday 11/18/2014 as Doc. 1-2 with **Creditor LNV**'s original complaint, and then uploaded again on Friday 11/21/2014 with **Creditor LNV**'s amended complaint as per the stamp on the top of each page of Doc. 5-2.



The file was modified on 11/28/2014 4:19:48 PM most likely by a District Court Clerk. Advanced properties show that the author "**mbeaty**" created the .pdf file using "GPL Ghostscript version 8.15; modified using iText 2.1.7 by 1T2XT" and the "PDF Version" was "1.6 (Acrobat 7.x).

In or around November 2017 Ms. Subramaniam spoke with an executive for a software company that produces a software product used by computer crime labs. She also spoke with a two Directors of regional computer crime labs that use this software and other software to provide computer and digital forensic authentication services for law enforcement agencies within the regions they service so she could understand the process that law enforcement would use to authenticate a file such as Doc. 5-2.

A the digital footprint of a file like Doc. 5-2 can be traced back to its paper source which can then be authenticated using conventional forensic document authentication procedures and methods including determination of paper and ink age and source, as well as signs of alteration and forgery, signature authentication etc. Ms. Subramaniam enjoyed a 20-year career in the software industry. As a former software programmer she knows digital files contain data programmatically accessible. The data available through Adobe Acrobat Professional's properties feature is only a fraction of the data accessible through various API function calls made through program code. The software used by computer crime labs accesses all this available data and displays it in the software's graphic user interface, ("GUI"). These

labs ONLY provide services to law enforcement agencies and a request for authentication of a digital file must be made by either the FBI or a local law enforcement agency.

The representative victims of the fraud scheme perpetrated by **Perkins Coie, Debtors** and **Creditor LNV** request the Honorable Judge Martin Glenn and others with a stake in determining whether they have been defrauded by such fraud scheme to file a complaint with the FBI asking them to open a criminal investigation that includes forensic authenticate of this particular digital file and what it shows specific to the activities of **Perkins Coie, Debtors** and **Creditor LNV** and LNV's owner Daniel Andrew Beal and whether those activities are criminal violations consistent with prohibited racketeering activities. (The six representative cases named herein are a VERY SMALL FRACTION of such cases so the ill-gotten proceeds of this scheme and artifice to defraud may easily amount to **many Billions of dollars** being hidden from **other Creditors** so as to deprive them of just remedy and from insurance underwriters made to pay for "losses" that may never have been genuine "losses" but illegal profits instead.

The author of digital file Doc. 5.2 **"mbeaty"** is Mark E. Beaty an employee of <u>CLMG Corporation</u> ("CLMG). See the screen print of his ZoomInfo Profile below (he also has a LinkedIn Profile). CLMG is identified as a **"servicer of commercial loans."** This corresponds with sworn deposition testimony of MGC employee Bret Maloney in the Swift court case, see Doc. 34 in _Fauley v. Mosman et al_, Case: 3:17-cv-01656, US Dist. Court OR; also see Doc. 35 and 35-2 the official transcript of sworn deposition of Bret Maloney. CLMG was involved in each eviction perfected after an illegal LNV foreclosure.



Substantial evidence in public records show Daniel Andrew Beal is the sole owner in full control of the operations of numerous private corporate entities structured so as to avoid government regulations and consumer protection laws, and which are used as alter egos for purposes of tax evasion, money

laundering and in furtherance of a scheme and artifice to defraud the United States; state governments and governments of other countries; insurance underwriters; securities investors; other creditors of *In re RESIDENTIAL CAPITAL, LLC, et al.*; innocent homeowners; and judges in state and federal courts.

Included within the Beal umbrella of privately owned corporate entities are: <u>Beal Financial Corporation</u> where D. Andrew Beal is President, Director and Chairman, Tim H. Taylor is Director and Secretary, Molly Curl was Secretary and Vice President from 2008 until around 2016, attorney Stephen Costas was Vice President from 2008 until around 2016; <u>Beal Service Corporation</u> where Jacob Cherner is President and CEO, D. Andrew Beal is Director, Tim H. Taylor is Secretary and Executive Vice President; <u>Beal Nevada Service Corporation</u> where Jacob Cherner is President and CEO, D. Andrew Beal is Director, Craig Singer is Treasurer and Assistant Secretary, Tim H. Taylor is Secretary, CFO, and Executive Vice President, attorney Robert A. Ackermann is Secretary and Vice President; <u>Beal Bank S.S.B.</u> privately owned by D. Andrew Beal; <u>Beal Bank U.S.A.</u>, an industrial loan corporation, where D. Andrew Beal is President, Treasurer, Director and Secretary, incorporated in Nevada on July, 27, 2004, and approved for FDIC insurance on August 2, 2004, FDIC #57833, the same day GMAC Automotive Bank, FDIC #57803, renamed to GMAC Bank then to Ally Bank was approved, see <u>Exhibit 3</u> pages 2&3, also see FDIC # 35054; **<u>LNV Corporation</u>** where D. Andrew Beal is President and sole Director, Tim H. Taylor is Secretary and Craig Singer is Treasurer, Stephen Costas was Secretary and Treasurer in 2008 until around 2016 see <u>Exhibit 4</u>, note: Craig Singer accompanies Andy Beal on his infamous high-stakes poker excursions including those in Russia, see <u>Exhibit 5</u> gambling trips to Russia 2012-2016 and on the campaign trial with Donald J. Trump; <u>LNV Corporation dba TX LNV Corporation</u> was incorporated as a foreign entity in Texas on June 24, 2010, Texas Taxpayer#: 32042107436, Texas SOS File#: 0801286054; <u>LPP Mortgage Ltd.</u> (TX) and LPP Mortgage, Ltd., L.P. (CA) where <u>Property Acceptance Corporation</u> Texas SOS Id# 18992800 is the managing member, all three of these entities are currently inactive, however Beal incorporated <u>LPP Mortgage Inc.</u> on 08/24/2017 in Texas SOS File#: 0802799138 and registered it as a foreign corporation in California on 11/21/2017, CA Id# C4086939 where Tim H. Taylor is the Secretary/Treasurer; <u>MGC Mortgage Inc.</u> ("MGC"), a purported residential mortgage servicer for LNV Corporation was incorporated in Texas on January 17, 2008, in 2013 the Texas Tax Franchise website identified Jacob Cherner as President, CEO and Director, attorney Robert A Ackermann as Sr. Vice President, Michelle Conner as Sr. Vice President, Stephen Costas as Sr. Vice President, Tim Taylor as Sr. Vice President, W.T. Saurenmann as Sr. Vice President, Kent Twitchell as Sr. Vice President, James Erwin as Sr. Vice President, attorney Erica Thomas as Sr. Vice President, and

Bret Maloney as Sr. Vice President, **note:** Bret Maloney testified under oath that he was the **only** Sr. Vice President of MGC, see Deposition of Bret Maloney, Doc. 35-2, in *Fauley v. Mosman et al*, Case 3:17-cv-016560, U.S. District Court Oregon; CLMG Corporation, a purported a commercial mortgage servicer according to Bret Maloney's deposition and custodian of records incorporated in Nevada on November 5, 2009 where Jacob Cherner is Director and James Erwin is President; Foreign Lending Corporation a subsidiary of Beal Bank SSB as per SEC records, incorporated in Texas on October 24, 1995 as BRE-3 Inc. (see Entity file# 137515500, changed name from BRE-3 Inc. to Foreign Lending Corporation on February 4, 1999, changed name to Beal Capital Markets Inc. on May 7, 2002 then merged with Beal CSG Investments Inc. on October 8, 2002 and merged out of existence in April 5, 2007 according to Stacey at the Texas SOS); CSG Investments Inc. ("CSG") where D. Andrew Beal was/is Director, Jacob Cherner was/is President, and Stephen Costas and Craig Singer were/are Sr. Vice Presidents, note: CSG still has an active website where Jacob Cherner is identified as the President; CLG Hedge Fund, LLC where LNV Corporation is the managing member incorporated in Nevada on July 30, 2008 the same day former President G.W. Bush signed into law the Housing and Economic Recovery Act of 2008; The Syndicated Debt Covenant Review Roundtable was incorporated on January 23, 2008 with Jacob Cherner as President, information about Syndicated loans can be found at: https://www.finweb.com/loans/the-3-types-of-syndicated-loans.html.

On January 4, 2008 a jury in *Mitchell et al. v. Residential Funding et al.*, Case No. 03CV220489 in the Circuit Court of Jackson County Missouri at Kansas City awarded the Mitchell class $5.4 in actual damages and $99 Million in punitive damages. On June 24, 2008 the Judgment and Order was issued by Judge Justine E. Del Muro. Between January 4, 2008 and June 24, 2008 numerous false assignments of deed of trust were hurriedly manufactured that purport to convey beneficial interest from **Debtor RFC-LLC** or MERS as nominee for RFC-LLC to **Creditor LNV** notarized by GMAC employee and Minnesota Public Notary **Diane M. Meistad** on **March 10, 2008** (a date prior to the actual incorporation of LNV in Nevada). These false assignments were then caused to be recorded in counties across the United States by D. Andrew Beal's purported MGC Mortgage Inc. mostly after June 24, 2008.

On March 17, 2008 D. Andrew Beal incorporated **Creditor LNV**. On March 18, 2008 D. Andrew Beal ran a full page ad in the Wall Street Journal. It was an open letter to Ben Bernanke, see Exhibit 6 – copy of the advertisement received from the Wall Street Journal. His target audience was not Bernanke but Wall Street CEOs eager to hide unenforceable dirty paper "assets" in anticipation of TARP bailout funds. If you know how Beal operates it's easy to decipher his real message and audience:

> *"I am sure that you are hearing from the Wall Street crowd about how stupid the marketplace is...because **AAA RMBS are being offered at 60 cents on the dollar** with no takers...Wall Street simply cannot believe buyers aren't standing in line to buy.*
>
> *Consider for a moment that many corporate bonds are trading at premiums above par value. How can this be? If the market is so stupid and there is no liquidity, **who is buying those good corporate bonds at 105 cents on the dollar??***
>
> *Many AAA mortgage bonds are actually extremely high risk because of little-considered nuances in the hundreds of pages of **trust indentures and servicing agreements**...these contracts permit the loan servicers to advance payments on behalf of defaulted homeowners for years and years and years at interest rates of 12% and more...The "servicer advances" are subsequently repaid FIRST from foreclosed home sales. Therefore, foreclosed home sales may result in little or no proceeds, or even a liability, to the AAAs. This mechanism effectively transfers funds that really should belong to the AAA securities to junior securities. Servicers that own junior securities are incredibly motivated to drag their feet resolving defaulted loans, **which results in great loss to the AAA holders.** This is not a misprint: **Defaulted first mortgage home loans may become a net liability, not an asset, to some of the AAAs.** This is still not widely understood."* [Emphasis added.]

D. Andrew Beal in this ad is telling his real target audience that he understood something they didn't, how to convert RMBSs/mortgage bonds into commercial bonds that sell for *"105 cents on the dollar"* to buyers somewhere, again they don't know where but he does, (i.e. international buyers). For Wall Street bankers he and GMAC (also an ILC) provided a way to hide unenforceable dirty paper "assets" from government regulators so they could partake of the TARP bailout and collect from insurance underwriters for "losses" all the while knowing in due time, in their behalf, D. Andrew Beal would foreclose on properties i.e. assets they declared to be losses; reaping treble profits from this scheme. Beal's sham corporate vehicles <u>MGC</u>, <u>LNV</u>, <u>CLMG</u>, <u>CSG Investments Inc.</u> morphed from "Foreign Lending Corporation" to its current unknown corporate structure, <u>The Syndicated Debt Covenant Review Roundtable</u> and <u>CLG Hedge Fund, LLC</u>, were each incorporated to perfect this scheme.

Judicial opinions in <u>*Southgate Master Fund, LLC v. United States*</u>, 659 F. 3d 466 (5th Circuit 2011) and <u>*Bemont Investments, L.L.C. v. United States*</u>, 679 F.3d 339 (5th Cir. 2012) provide insight into the modus operandi of Daniel Andrew Beal and his organization. The appellate court in <u>*Southgate*</u> affirmed the district court's findings: "Discerning none, we affirm the district court's holding that Southgate was a sham partnership that must be disregarded for federal-income-tax purposes." <u>*Bemont*</u> also involves use of $10 Million in long and short swaps brokered by Deutsche Bank and sham tax shelters created for D. Andrew Beal, the sole shareholder of Beal Financial Corporation, by Tom Montgomery, CPA, who began working for Beal in 2001. In summary the <u>*Bemont*</u> Court found:

> *"Although, at some point in time, Andrew Beal and Tom Montgomery focused on a possible tender offer, the structuring of the swaps to claim considerable losses was the primary objective of the parties...The only cash exchanged was the initial $5,000,000. This was done by wire transfer. BPB never actually paid $202,500,000 to Deutsche, and Deutsche never paid 197,500,000 to BPB....,This sale triggered a Section 988 foreign currency loss which the Government's expert testified was actually a fiction...Transferring the swaps from BPB to Bemont only altered the identity of the beneficiary of the hedge. It did not alter the nature of the underlying foreign currency exposure or enhance the efficacy of the hedges....BPB's 2001 tax return Schedule K-1 for Beal reflects a capital contribution of $206,500,000, but Beal did not contribute this in cash....In 2005, the IRS audited Beal's individual Form 1040 tax return for the 2002 tax year for losses — including those from BPB — flowing through to his personal return....Stephen Pocsik was assigned the examination of Beal's 2002 tax return....Pocsik specifically examined whether Beal had sufficient basis to absorb the losses, however, he was not furnished any information concerning the [Deutsche ] short swaps by Beth Montgomery, Beal's personal accountant...This information was deliberately withheld by Beth Montgomery....In summary, the Court concludes that the proposed tender offer in this case was just a smokescreen for tax avoidance....[T]he tax losses claimed do not correspond to any actual economic losses; nor do they constitute the type of "bona fide" losses that are allowable deductions under the IRS Code and regulations; and, in any event, they are not actual and real."*

Deutsche Bank was caught red-handed in a money-laundering scheme that involved $10 billion in dirty money from Russian oligarchs and was forced to pay fines totaling $671 million to New York's Department of Financial Services, Britain's Financial Conduct Authority, and the US Federal Reserve in 2017.  That followed a $7.2 billion settlement between Deutsche Bank and the U.S. Department of Justice last over toxic mortgage assets and the $2.5 billion it agreed to pay in 2015 over interest rate manipulation. Since the 1990s Deutsche Bank supplied Trump and his companies with a staggering $3.5 billion in loans and loan-guarantee agreements. Deutsche Bank loaned Jared Kushner $285 million on the eve of last year's election, in a transaction that, The Nation reported in August, involved a cast of characters tied to the infamous June 6, 2016, Trump Tower meeting between Kushner, Manafort, Donald Trump Jr., and an assortment of Russians who promised to supply the campaign with "dirt" on Hillary Clinton.  Andy Beal has his own shady history with Deutsche Bank and he is known to associate with those same Trump Tower Russians.  Deutsche Bank shows up as in the false endorsement chains of conveyance in numerous victims of LNV's fraudulent foreclosures including *LNV v. Fauley* in Oregon.

In addition to Andy Beal's propensity, as demonstrated through adjudicative facts in *Southgate* and *Bemont*, for teh Beal enterprise to use sham corporate entities to give an appearance of monetary transactions that never happened and for Beal employees to withhold, or otherwise deceive the United States government about material facts, D. Andrew Beal has an historical propensity to alter mortgage

notes to deceive courts. See *Beal Bank, SSB v. Sarich*, No. 05-2-11440-1SEA (King County Super. Ct.

Sept. 8, 2006), on appeal with the Court of Appeals State of Washington, footnote 3, on page 3 of the

Brief of Respondents Steve and Kay Sarich:

> "*The second page of the Term Note, dated September 24, 2002, attached as Exhibit 2 to Beal Bank's Complaint for Judicial Foreclosure of Deeds of Trust, appears to be signed by Kay Sarich. CP 20. However, a copy of the actual September 24,2002 Term Note obtained from the original lender (U.S. Bank) shows that Kay Sarich did not sign the note. CP 105. Beal Bank subsequently admitted switching the signature pages. See Letter from Nancy L. Isserlis to Katriana Samiljan and Spencer Hall, dated June 28, 2006. CP 238-39.*"

The incident in the Sarich case was not a fluke or a one time occurrence; it is one disturbing and

illegal act in a decade long pattern of forgery of mortgage notes and deeds of trust engaged in by Daniel

Andrew Beal and his organization of sham corporate entities and his corrupt employees and attorneys as

demonstrated by the six representative cases herein. Among the numerous false assignments of deed of

trust purporting to convey from **Debtor RFC-LLC** to **Creditor LNV** notarized on March 10, 2008 by

**Diane M. Meistad** are those recorded in the Clackamas and Washington County Recorder's Offices in

Oregon against real property belonging to **Robynne A. Fauley** located at 12125 SE Laughing Water

Road, Sandy, Oregon and real property belonging to **Denise Subramaniam** located at 13865 SW Walker

Rd., Beaverton Oregon respectively; and an assignment of mortgage recorded in the Kane County Illinois

Recorder's Office against real property belonging to **Christopher and Marcia A. Swift** located at 601

Sennett St., Batavia, Illinois; and an assignment of deed of trust recorded in the Sevier County Tenn.

Recorder's Office against real property belonging to **Catherine Gebhardt** located at 3753 Thomas Cross

Road, Sevierville, Tennessee; and an assignment of deed of trust recorded in the Maricopa County

Arizona Recorder's Office against real property belonging to **Tuli Molina-Wohl** located at 1321 E. Luke

Ave. Phoenix, Arizona; and an assignment of deed of trust recorded in the Martin County Indiana

Recorder's Office against real property belonging to **Rhonda L. Hardwick** located at 201 Church Street,

Loogootee Indiana. See Exhibit 2 – accurate copies of said assignments. These six false recorded

assignments identified here are a small representative sample of the numerous such false assignments

recorded by MGC.

Each false recorded assignment purporting to convey from **Debtor RFC-LLC**, or MERS in behalf

of RFC-LLC, to **Creditor LNV** has written or stamped on its face:

> **LNV Corporation
> 7195 Dallas Parkway
> Plano, Texas 75024**

The address <u>7195 Dallas Parkway, Plano, Texas 75024</u> is an empty lot. This address is also used for MGC and CLMG. This false address was used by D. Andrew Beal with intent to misrepresent that LNV is a separate and distinct corporate entity from Beal Bank SSB located at 6000 Legacy Drive, Plano Texas. In addition to recording false assignments D. Andrew Beal's corporate alter egos, including but not limited to MGC and LNV, routinely misappropriated homeowner's mortgage payments with intent to trump up a false default as an excuse to foreclose on properties.

In these six representative cases homeowners substantiated their disputes of the authenticity of LNV's foreclosure documents with substantial and irrefutable evidence. If these homeowners had not been deprived of their constitutional rights to due process of law and a jury trial by unconstitutional summary rulings obtained through the chicanery of attorneys employed by **Creditor LNV** aka Daniel Andrew Beal and/or **Debtor RFC-LLC** and/or the **ResCap Liquidating Trust**, including **Perkins Coie** attorneys, a jury would most likely have decided in their favor many years ago and would have awarded them damages in keeping with the jury awards in **Creditor Mitchell and Kessler** cases because of the substantial financial damages they suffered and the horrific emotional distress caused to them by the exceptionally inhumane actions of these parties that includes, but is certainly not limited to:

1. Trolling them online and sending threatening letters in an attempt to shut them up; and

2. **Perkins Coie** attorneys terrorizing Ms. Fauley's 86-year-old father, a retired attorney who lived with her, by threatening to report him to the Michigan Bar if he dared to even answer the phone or slip his daughter, a pro se litigant, a piece of paper; and

3. **Perkins Coie** attorneys failing to notify the court that agreed to motions for extensions of time they wrote were for medical need that might require Ms. Subramaniam, a pro se litigant, to undergo spinal surgery as clearly shown in medical records she emailed these attorneys, who when Ms. Subramaniam's doctors scheduled surgery on short notice refused to return her phone calls forcing her to file her own un-agreed to motion for a medical stay which they opposed claiming they knew nothing about her medical problems and that the impromptu letter her doctor wrote on short notice looked like she wrote it, forcing Ms. Subramaniam to enter all her medical records into public record days before surgery after which the judge informed her she needed an affidavit which she provided and her medical need motion was granted; and

4. **Perkins Coie** attorneys continuing to exploit Ms. Subramaniam's disabilities and her disadvantaged position as a pro-se litigant to their advantage during litigation and ultimately had her and another disabled senior woman living with her (for years Ms. Subramaniam provided housing that accommodated a special need for disabled senior women with exceptionally low incomes) evicted within 10 days of a Sheriff sale by making sure she never received service of summons for their state eviction complaint depriving her of any opportunity to seek a state supersedeas bond undertaking while the federal summary judgment is under appeal; and

5. **Perkins Coie** attorneys similarly exploited Ms. Fauley's disadvantage position as a pro se litigant after she was diagnosed with cancer and had to undergo surgery to remove aggressive cancerous tumors by opposing a medical need stay in the federal court (on the basis that federal courts can't interfere in state court proceedings) causing that stay to be denied, and

6. **Perkins Coie** attorney Erick Haynie continuously and intentionally misrepresenting facts about the federal foreclosure case to the state judge in the state eviction action; and

7. After the state judge granted supersedeas bond undertaking to Ms. Fauley **Perkins Coie** attorney Erick Haynie scheduling of a hearing in the state case with a different judge in an attempt to deceive the state court into believing Ms. Fauley had lost her appeal in the federal court so he could take the $40,000 in the supersedeas bond account and immediately evict her from her home of 25 years, fortunately the original judge was reassigned to preside over that hearing and Haynie's egregious ploy failed.

The Fauley Case is representative of the class of homeowners foreclosed on by LNV based upon one of the false recorded assignments that appear to be have been notarized on March 10, 2008 by Minnesota Notary Public Diane Meistad. Specific to her case evidence in the form of internal emails between Diane Meistad and MGC aka D. Andrew Beal employee Michael Barrett, coupled with the sworn deposition testimony of Bret Maloney, another employee of MGC aka D. Andrew Beal, and a forensic examination and preliminary report from the Swift case questioning the authenticity of the Jason J. Vecchio signatures on LNV submitted allonges in all six representative cases, shows a high probability that the questioned assignment in the Fauley case and a suspect undated endorsement bearing the signature of Jason J. Vecchio on an unattached purported allonge were manufactured via the LPS Desktop computer system by Michael Barrett or another MGC employee on or around October 27, 2008. Prema facia facts on prior recorded assignments and prior endorsements on the suspect purported "original" note conflict and show a different entity, not RFC-LLC or LNV, to be in possession of the note. See Exhibit 7 - accurate copies of recorded Fauley assignments and suspect endorsements on the questioned document that **Creditor LNV** and **Perkins Coie** attorneys falsely claim is the "original" Fauley note, see Exhibit 8 – photographs of that document. The recorded instruments are:

Instrument #2003-041141, recorded 4/3/2003, executed 7/29/2002;
Instrument #2007-038181, recorded 5/3/2007, executed 4/11/2007;
Instrument #2008-074676, recorded 8/31/2008, executed **10/27/2008**;
Instrument #2008-074677, recorded 8/31/2008, executed **3/10/2008**;
Instrument #2012-023399, recorded 4/17/2012, executed **3/10/2008**

Language on these assignments conveys both the note and the deed of trust. (Note: both the Fauley and Subramaniam mortgages were entered into the MERS system but no assignments were ever recorded to or from MERS.) Below are the facts as stated on these Fauley instruments:

**7/29/2002 - Instrument #2003-041141**
Conveys from **WASHINGTON MUTUAL BANK, FA** to **Deutsche Bank Trust Company of Americas as Trustee** signed by M. Free, Assistant Vice President, Lori A. Brown, Assistant Secretary, O. Simmons and D. Santana as witnesses, notarized in the State of Florida County of Duval on the 29th day of July 2002 signed by Florida Notary Public Regina W. Anderson.

**PROBLEM**
Facts on this dated recorded notarized assignment do not match the undated Brenda F. Brendle endorsement on the suspect note conveying to **Residential**.

**4/11/2007 - Instrument #2007-038181**
Conveys from **Residential Funding Company LLC** to **WASHINGTON MUTUAL BANK, FA** signed by Denise Bailey, Assistant Secretary of Residential Funding Company LLC, notarized in the State of Texas County of Harris by Notary Public Brenda F. McKinzy on April 11, 2007.

**PROBLEM**
Facts on this recorded instrument do not match those purported by the undated Judy Faber's endorsement on the unattached allonge to the suspect note conveying from **Residential Funding Corporation** to **Deutsche**.

**10/27/2008 - Instrument #2008-074676:**
Conveys from **Deutsche Bank Trust Company of Americas as Trustee** (formerly known as Bankers Trust Company) as Trustee, Residential Funding Company LLC formerly known as Residential Funding Corporation Attorney-in-Fact to **Residential Funding Company LLC** signed by Michael Mead, Limited Signing Officer, notarized in the State of Minnesota County of Hennepin by Minnesota Notary Public Diane M. Meistad on **October 27, 2008**.

**PROBLEM**
Although this recorded assignment matches the undated unattached Michael Mead endorsement on the suspect allonge it must be a false assignment because according to the prior recorded dated notarized assignment **WASHINGTON MUTUAL BANK, FA** was the holder of the deed of trust and the note on 10/27/2008 as per recorded assignment **Instrument #2007-038181** not Deutsche. The Michael Mead endorsement on the suspect note and the false recorded assignment misrepresent facts with intent to defraud.

**3/10/2008 - Instrument #2008-074677 re-recorded as Instrument #2012-023399:**
Recorded by Beal's MGC this assignment must also be false because it conveys the note and Deed of Trust to **LNV Corporation** from **Residential Funding Company LLC** signed by Jeanne J. Smith, Assistant Vice President notarized in the State of Minnesota County of Hennepin by Minnesota Notary Public Diane M. Meistad on **3/10/2008**.

**PROBLEM**
Even though facts on the undated Jason J. Vecchio endorsement on the unattached allonge match those on this assignment **Residential** could not be a holder on **3/10/2008** because **WASHINGTON MUTUAL** was holder from **4/11/2007** and was still holder on **10/27/2008** and is still holder as of today, so it is impossible for a conveyance to have taken place to **Deutsche** or

to **Residential** on 10/27/2008.  Even if a conveyance had taken place to **Residential**, which it did not, it did not occur until **10/27/2008** so **Residential** was not holder on **3/10/2008** when the assignment falsely purports to convey to LNV Corporation.

During discovery in Ms. Fauley's earlier lawsuit against several parties including MGC and LNV, (*Fauley v. Washington Mutual Bank, FA et al*, case 3:13-cv-00581 U.S. District Court Oregon), LNV gave her attorney a chain of email communications between MGC employee Michael Barnett and Diane M. Meistad, the Minnesota Notary Public who notarized the two suspect assignments recorded by MGC on October 31, 2008.  Their email conversation was specifically about these two suspect assignments and the endorsements on the suspect note; and tends to substantiate Ms. Fauley's claim these endorsements are forgeries and the last three recorded assignments are false misrepresentations intended to give LNV the appearance of being a holder.  (See Exhibit 9 – an accurate copy of emails provided by LNV during discovery in *Fauley v. Washington Mutual Bank, FA et al.*, U.S. District Court Oregon, Case: 3:13-cv-00581-AC.)  In an email from Michael Barnett to Diane Meistad dated Friday October 24, 2008 at 5:30 PM he states:

> *"Diane, this loan was last assigned to Washington Mutual from RFC but, prior to this assignment was assigned from Washington Mutual to Deutsche Bank and recorded in Clackamas County Oregon. We need an assignment from Deutsche Bank to RFC and from Washington Mutual to LNV Corp. I have templates for both assignments."*

Three icons are visible on the email showing that Barnett had attached three files to his email to Diane Meistad who replied to Michael Barnett on Monday 10/27/2008 at 8:38:36 AM:

> *"If the assignment was recorded from WAMU to DB and another assignment f/ RFC to WAMU - Technically the second assignment in 'invalid' because RFC was not in title to record the second assignment and it should not effect title. Because this assignment was invalid technically it didn't transfer ownership."*

Michael Barnett was not telling Diane Meistad the truth in his email to deceive her into doing something he knew was illegal.  On October 27, 2008 at 1:04:44 PM Diane Meistad responded to another email from Michael Barnett, and told him:

> *"I disagree since RFC was not in a position (title position) to transfer the asset. I will need to refer your request for this assignment to our Records Services team in Iowa to begin the process."*

> *---Original Message---*

> *Diane, since the assignment from RFC to WAMU is of record we have to correct the chain of title. At this point the county recorder's office shows that WAMU is the assignee of record for this loan (which is wrong), right? RFC did assign this loan and shouldn't have but, in order to*

*fix this one the correct chain should be from Deutsche to RFC, then from RFC to WAMU, then from WAMU to LNV Corp, which will correct the chain of title. Litton Loan Servicing LP prepared and recorded the assignment from RFC to WAMU, which should not have been recorded. We still need to get this loan from RFC to LNV to property convey this property, since we purchased it from RFC.  Please call me if you still concerns about the chain of assignments. Borrower loan #7889719/17103058-Ronynne Fauley. Thanks Michael.*

The last thing Michael Barnett would have wanted was to be referred to the "Records Service team" because they would have discovered his misrepresentation of fact so he emailed Diane Meistad again on October 27, 2008 at 1:32 PM:

*Okay Diane, I had my manager look at this file with me and we determined that we need to the following assignments to correct the chain of assignments:*

*1) Corrective Assignment from WAMU TO Deutsche Bank (to correct the assignment from RFC to WAMU, which was recorded in error) & Note Allonge;*

*2) Assignment from Deutsche Bank to RFC & Note Allonge;*

*3) Assignment from RFC to LNV Corp (Note allonge in file already)*

*The assignment from RFC to WAMU was recorded in error so it is not needed. We also have 2 endorsements on the original Note: WAMU to RFC and from RFC to Deutsche Bank which should be canceled to correct the Endorsement chain on the Note. We will just need the okay from you via email to cancel the endorsements. Will this work for you?*

*Thanks Michael.*

(NOTE: October 27, 2008 is the same date Diane Meistad notarized recorded instrument #2008-074676 which was recorded with Clackamas County on Friday 10/31/2008.)

The endorsements on the note were not canceled, and no corrective assignment from WAMU to Deutsche was recorded so a reasonable deduction is that Diane Meistad didn't provide the authority to cancel the endorsements and she did not provide the requested assignment from WAMU to Deutsche. These emails show that the suspect Jason J. Vecchio allonge was not provided by Meistad because Barnett told her MGC already had it.  It is highly unlikely Diane Meistad gave him an assignment from RFC to LNV notarized on 3/10/2008 since the date of their last email communication 10/27/2008 and the other assignment recorded on 8/31/2008 was in fact notarized on 10/27/2008. It is more probable that Barnett or another MGC employee manufactured this assignment from the LPS Desktop computer system and used a copy of Meistad's signature stored in the LPS database.  See the official court transcript of the Bret Maloney deposition in the Swift case, Doc. 35-2 in *Fauley v. Mosman et al*. which verifies that MGC uses the LPS Desktop System.  Also see Doc. 26, Motion for judicial notion of *United States of America v. Lorraine Brown*, Case No. 3:12-cr-198-J-25 MCR, (M.D. Fla.).

Oregon Revised Statutes § 73.0113(2), reads in relevant part:

> *"If an instrument is undated, its date is the date of its issue or, in the case of an*
> *unissued instrument, the date it first comes into possession of a holder."*

According to ORS § 40.135 Rule 311(1)(o) the following are presumptions:

> *"(d)    Money paid by one to another was due to the latter.*
>
> *(e)    A thing delivered by one to another belonged to the latter.*
>
> *(o)    An indorsement of a negotiable promissory note, or bill of exchange, was made at*
> *the time and place of making the note or bill.*
>
> *(x)    The law has been obeyed."*

Any reasonable person reviewing the indisputable facts presented above would conclude that it is IMPOSSIBLE for LNV to be the holder of the suspect note LNV and **Perkins Coie** attorney Erick Haynie claim is the "original" Fauley note. These problems are only the tip of the iceberg in terms of the preponderance of evidence that shows LNV's purported "original" note must be a forgery in the possession of the representative homeowners.

According to ORS § 40.130 Rule 310 if presumptions are conflicting, the presumption applies that is founded upon weightier considerations of policy and logic. Self-authenticating evidence according to ORS § 40.510 Rule 902(d) includes copies of official records authorized by law to be recorded or filed and actually recorded or filed in a public office, such as the recorded assignments referenced above. According to ORS § 40.105 Rule 305 the burden of persuasion is on the party asserting a claim for relief or defense, in the case of LNVs foreclosure action against Ms. Fauley in the federal court *LNV v. Fauley*, Case 3:15-cv-01422-HZ the burden of persuasion was on LNV to prove its purported "original" note is in fact authentic rather than a forgery.

LNV refused to permit forensic authentication, in spite of Ms. Fauley's numerous requests to do so at her own expense. The federal court failed to compel LNV. LNV should never have prevailed on summary judgment; and if summary judgment had not been unconstitutionally awarded a jury at a trial would have discredited the authenticity of the disputed assignments and allonges even without an expert witness because any reasonable person would conclude that they cannot be authentic.

**Perkins Coie** attorneys knew Ms. Fauley disputed Texas attorney Grant Hamilton's declaratory testimony; see pages 9-10, Doc. 23-2, *Fauley v. Mosman et al*. They know due process of law requires that Ms. Fauley have an opportunity to refute Hamilton's disputed testimony at a jury trial. If Ms. Fauley

had not been deprived of her constitutional right to due process of law and a jury trial she would have been able to cross examine Grant Hamilton to refute his testimony on the stand under oath; and a jury most likely would have concluded his declaratory testimony was not credible.

Similarly **Perkins Coie** attorney Ms. Richards knew Ms. Subramaniam refuted the declarative testimony of Michelle Conner and that she submitted evidence in the form of bank statements to show that Conner lied about Ms. Subramaniam's payment history; see Doc. 54 and 80 in *LNV v. Subramaniam*. **Perkins Coie** attorney Ms. Richards knew Ms. Subramaniam also refuted the false declarative testimony of Dana Lantry and had submitted substantial evidence including an audio taped conversation between herself and Dana Lantry that conflicted with Lantry's sworn testimony. Recorded instruments bearing Lantry's signature were omitted from Lantry's sworn declarative testimony where prima facia facts on those omitted recorded instruments conflict with Lantry's testimony. They show it was impossible for a conveyance to have occurred from **Debtor Homecomings Financial Network, Inc.** ("Homecomings") to **Debtor RFC-LLC on April 3, 2006** because the omitted prior recorded instruments irrefutably show Homecomings was the beneficiary of the Subramaniam note and deed of trust **after June 2006**. Other documentary evidence in Ms. Subramaniam's possession and witness testimony would show Homecomings was the beneficiary until at least January 2007. Had Ms. Subramaniam not been deprived of her right to due process of law and a jury trial by **Perkins Coie** attorneys she would have been permitted to cross examine these two false witnesses. A jury would most likely have issued a verdict unfavorable to LNV and favorable to Ms. Subramaniam and she would never have suffered the horrors and substantial injury inflicted upon her by LNV's illegal foreclosure perfected with false forged counterfeit mortgage instruments; see Documents: 104, 104-1-2, 122, 134, 134-1 to 134-3 in *LNV v. Subramaniam*; and 9th Cir. Case: 15-35963, Dkt. 7-1 to 7-20, 61-1 to 61-5, 66-1 to 66-5.

**Creditor LNV** filed a foreclosure complaint against the Swifts in June 2011 in the 16th Judicial Circuit Court Kane County, Illinois. LNV included as exhibits to that complaint a purported "true" copy of an original note that included two undated allonges both purporting to convey a note from **Residential Funding Company LLC to LNV Corporation**. One was signed by Carol Chapman, the other by Jason J. Vecchio creating a fact conflict where both undated allonges cannot be genuine. LNV delayed proceedings by failing to respond to discovery requests sent June 28, 2013. The court ordered LNV to respond but LNV's response was incomplete and in bad faith. LNV then delayed setting a date for an employee deposition until July 2014. During that delay the Swifts located other representative homeowners with recorded assignments notarized by Diane Meistad on March 10, 2008, including Tuli

Molina-Wohl, Cathy Gebhardt, and Rhonda Hardwick. Each of them was in litigation with LNV and LNV submitted to their courts nearly identical Jason J. Vecchio allonges where the signatures did not look original but like copies. LNV submitted later such Jason J. Vecchio allonges to the court in the Fauley and Subramaniam cases in Oregon. Several representative homeowners had false affidavits submitted to the courts by MGC employee Bret Maloney. Bret Maloney, Sr. Vice President of MGC Mortgage Inc. traveled from Texas to Illinois to be deposed on July 11, 2014. The Swifts were present during the deposition and can and will testify to what was said and done during that deposition. The Swifts obtained an official transcript of the deposition; see Doc. 34 in *Fauley v. Mosman et al*. Maloney brought to Chicago a purported "original note" that included the questioned undated allonges. Marcia Swift was shown the document and observed several things that caused her to suspect it was not "original." Her attorney questioned Bret Maloney about the two suspect allonges and Maloney admitted they were "pulled off" the LPS *"document scan imaging system."* Maloney claimed the extra Carol Chapman allonge was included was because someone *"pulled it off of the document imaging screens...so somebody sent you an extra allonge that should have been included"* he said this happened because the notes and allonges were kept *"under separate categories"* in the system.

Separation of a note from its allonges creates legal issues that defeat enforceability. Most state laws require allonges to be firmly attached to the note. Any reasonable person whose job was to scan original notes into the LPS system would know, or should reasonably know not to scan an unattached allonge because it is not legally part of the note. If the "original note" was conveyed to LNV on or before March 10, 2008 as purported on the recorded assignment notarized by Diane Meistad then it would or should have been scanned into the *"document scan imaging system"* on or around that date in 2008. The scanned image would have included endorsements and allonges attached to the note when it was scanned. Bret Maloney wanted the Swift's court to believe an unattached irrelevant allonge made its way into the LPS *"document scan imaging system"* to be *"pulled off"* by someone four years later in 2013 and *"incorrectly"* included in a Proof of Claim. It's more plausible that these allonges were manufactured in 2013 because prior to Mallony's explanation above he described how the LPS system included *"different templates that would be opened up"* for different functionalities, *"bankruptcy, loss mitigation, foreclosure."* This implies templates are used to create the documents as needed. The chain of emails was received by Robynne Fauley's former attorney from **Creditor LNV** during discovery support this logical deduction. An email dated October 24, 2008 sent to Diane Meistad by MGC employee Michael Barnett states: *"I have templates for both assignments."* Icons for Word documents attached to the email

are clearly visible. These were "the templates" referred to in the body of the email making it clear they originated with MGC. See Doc. 23 and page 68 of Doc. 23-2 in *Fauley v. Mosman et al*. These facts tend to support the claim someone used a template in 2011 and again in 2013 to create the two different allonges LNV submitted to courts in the Swift cases.

On or around August 7, 2014 the Swift's attorney hired OMNI Document Examiners to examine the questioned signature of Jason J. Vecchio on the "true" copy of the undated allonge LNV submitted to their court and to compare it with the Jason J. Vecchio signatures on the Gebhardt, Molina-Wohl and Hadwick allonges. The Dec. 4, 2014 preliminary report from OMNI verified the Jason J. Vecchio signatures were spot-on matches one to the other and could not all be "original" signatures. (See Doc. 23-9 in *Fauley v. Mosman et al*.) Robynne A. Fauley was shown the document LNV claimed to be her "original note" on December 2, 2014 before she knew anything about the Swift's OMNI report. It included a Jason J. Vecchio allonge almost identical to the one examined by OMNI. In January 2015 Denise Subramaniam was served LNV's foreclosure complaint that also included a Jason J. Vecchio allonge. The signatures on these two allonges appear to be exact duplicates to the ones already examined by OMNI. Due process of law requires that all six of these Jason J. Vecchio allonges be forensically examined for authenticity.

Rhonda Hardwick discovered after the OMNI preliminary report was issued two distinctly different versions of the Jason J. Vecchio signed allonge submitted by LNV to court in her case at different times. (See Doc. 23-11 in *Fauley v. Mosman et al*.) The signatures were still identical on each version but on the allonge LNV submitted to the court in 2010 "LNV Corporation" was **handwritten,** while on the one LNV submitted in 2013 it is **stamped**. The handwritten one was included in the OMNI examination. LNV told the court each allonge was a "true and correct" copy of the "original" note. This is factually impossible.

During the Swift's bankruptcy proceedings LNV substituted Beal Bank USA, and voluntarily dismissed the earlier foreclosure on or around January 2016. Then Beal Bank USA filed a new foreclosure complaint against the Swifts in or around June 2016 in the Kane County State Court. In or around November 2016 Beal Bank USA filed yet another complaint against the Swifts in the federal court seeking the same relief so as to increase the Swift's litigation costs and split litigation between two courts. Their attorney filed a motion to abstain the federal case pending the outcome of the state case. Federal Judge Gary Feinerman granted it. In his January 26, 2017 Memorandum Order he determined:

*"Because Beal easily could have brought (and initially did bring) in state court its claim for monetary relief against the Swifts, the federal suit is "vexatious" and "contrived" within the meaning of Colorado River. See Interstate Material Corp, 847 F.2d at 1289 ("[T]he federal suit could be considered both vexatious and contrived. ... [W]e see no reason why all claims and all parties could not have been ... part of one suit."). Even if the federal suit were not vexatious or contrived at its inception, it surely became so when Beal, having been alerted by this court of its state court personal deficiency claim, amended its state court complaint in an unsuccessful attempt to avoid parallelism rather than proceed in one forum. This factor thus weighs in favor of abstention."*

See Doc. 35-3 in *Fauley v. Mosman et al.*

The amended state complaint Judge Feinerman referred to above was filed on Dec. 27, 2017. On page 1 it states: "That attached hereto as Exhibit "A" and incorporated herein is a true copy of said Mortgage." The 2016*** version of the "true copy" of the mortgage is missing several signatures that were on the 2011* and 2013**. See images below:



| *From Bret Maloney Deposition, Page 170 Doc. 35-2, in *Fauley v. Mosman et al* | ***From Amended Complaint, Page 34 Doc. 35-4 in *Fauley v. Mosman et al* |

Notice the Jason J. Vecchio signature on the allonge is also missing on page 35 Doc. 35-4 in *Fauley v. Mosman et al*. See images of these allonges shown side-by-side on the following page:



*Jason J. Vecchio allonge from Bret Maloney Deposition, Page 171, Doc. 35-2, in *Fauley v. Mosman et al*

***Jason J. Vecchio allonge from Beal's amended complaint, Page 35, Doc. 35-4 in *Fauley v. Mosman et al*

The 2011* version of the Jason J. Vecchio allonge submitted with LNV's original complaint included a bar code and Loan ID #11380185 that is obliterated when LNV filed claim 17-1 in the Swift's bankruptcy on 1/2/2013, see left image above.  Then on the 2016*** version above right these areas are covered with black boxes.

Furthermore Jason J. Vecchio never worked for Residential Funding Company LLC. See pages 8-11 of Doc. 35-5 in *Fauley v. Mosman et al*: Swift Objection to LNV's Proof of Claim Doc 99-4, Case 12-35690 filed on February 24, 2014 which states on page 5:

> "Even if the order of negotiation and duplicate endorsements do not defeat the negotiability, the parties signing the endorsements lack the requisite capacity to do so. According to information available on the public record, Jason Vecchio, the party that signed the second endorsement on behalf of Residential was never an employee of Residential with the authority to endorse the note on its behalf. See Exhibit A attached hereto is a true and correct copy of Jason' Vecchio's LinkedIn profile."

The current 2016*** Allison Martin allonge below right was submitted to the court with Beal's amended complaint. It is very different from previous versions submitted to court. Below left is the version from 2013**. See side-by-side images below:



**Alison Martin allonge included with the Bret Maloney Deposition, Page 173, Doc. 35-2, in *Fauley v. Mosman et al*

***Alison Martin allonge included with Beal's amended complaint, Page 36, Doc. 35-4 in *Fauley v. Mosman et al*

Similarly in *LNV v. Gebhardt* Creditor LNV submitted to the court on Sept. 5, 2012 as an exhibit to support their "breach of contract" complaint a purported "accurate" copy of the "original" mortgage note, Doc. 1-1, hereafter referred to as "Note A." Then on Aug. 19, 2013 Creditor LNV filed a motion for summary judgment and attached as an exhibit, Doc. 10-2, another purported "accurate" copy of the "original" mortgage note hereafter referred to as "Note B" that did not match "Note A." Neither version is a copy of the actual original note. Further the fabricated alleged "original" note used to obtain an unconstitutional summary judgment ruling favoring Creditor LNV was sealed, odd in a breach of contract case filed in 2012 after two failed non-judicial foreclosure attempts in 2009 and 2011. (See Doc. 23-7 in *Fauley v. Mosman et al*.) This is just one more of many factual impossibilities that shows Creditor LNV aka Daniel Andrew Beal and his other sham Beal corporate entities and/or Debtor RFC-LLC and/or ResCap Liquidating Trust engage in a pattern of deception using different versions of what are supposed to be "true" copies of an original negotiable instrument. (Note: Newly discovered evidence in the Gebhardt case is more than shocking to the public conscience.)

A common thread tying together the Fauley, Swift, Subramaniam, Hardwick, Molina-Wohl, and Gebhardt cases is the Jason J. Vecchio alonges that purport to convey to **Creditor LNV** from **Debtor RFC-LLC** also named as a defendant along with other GMAC/Ally affiliated entities in *USA et al. v. Bank of America Corp. et al.*, Civil Action No. 13-5112, U.S. Dist. Court for D.C. Certiorari, Originating Case: 1:12-cv-00361-RMC. This lawsuit is also known as the "USA and 49 State Attorney General Lawsuit." That lawsuit resulted in a multi-billion dollar settlement, and was the catalyst for: *In re RESIDENTIAL CAPITAL, LLC, et al*. The Attorney Generals' complaint states:

> 64. *The Banks' failure to follow appropriate foreclosure procedures, and related unfair and deceptive practices include, but are not limited to, the following:*
>> a. *failing to properly identify the foreclosing party;*
>> b. *charging improper fees related to foreclosures;*
>> c. *preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments);*
>> d. *preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the Banks, they did so with the knowledge and approval of the Banks;*
>> e. *executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law;*
>> f. *misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents;*
>
>> See Page 27, Doc. 28-1 Exhibit A to Doc. 28, in *Fauley v. Mosman et al*, Motion for Judicial Notice of *USA et al. v. Bank of America Corp. et al.*

As part of that settlement agreement the defendants, including **Debtor RFC-LLC** were required to stop engaging in these activities yet **Creditor LNV** aka Beal Bank USA aka Daniel Andrew Beal continues to engage in these prohibited activities; and apparently does so in behalf of **Debtor RFC-LLC** as part of a secret agreement hidden from this Honorable court, other creditors, insurance underwriters, government regulators as well as victimized homeowners and the public. It is indisputable that the Beal entities directly engage in "*preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies*" as evidenced by

the numerous instances where LNV's attorneys, including **Perkins Coie** attorneys, have submitted distinctly different "true" copies of notes and allonges or clearly forged or altered instruments in foreclosures against the six representative homeowners; and there are many homeowners more in the class they represent. (Note: **Creditor LNV** aka Daniel Andrew Beal has been unduly enriched by approximately $19 Billion as a result of this scheme and artifice to defraud.)

If the Jason J. Vecchio allonges were genuine then the endorsement memorializing the purported conveyance would have occurred on or before **March 10, 2008** because the recorded assignments purporting the same conveyance were notarized on that date by Diane Meistad.

As with any contract once an authentic endorsement is made it never changes. It remains the same throughout time exactly as it was when first placed on the instrument. The representative homeowners each challenged the authenticity of **Creditor LNV's** aka Beal Bank USA's purported "true copies" of "original" notes and asked for professional forensic examination of those instruments to authenticate them. **Creditor LNV's** aka Beal Bank USA's attorneys do everything possible to prevent such authentication. If **Creditor LNV's** aka Beal Bank USA and the attorneys representing them, including **Perkins Coie**, actually believed these instruments were authentic any reasonable person would deduce that after years of litigation with these representative victim homeowners they'd be eager to have these instruments authenticated. The fact that they do not welcome authentication and instead fight authentication shows a consciousness of guilt; they know the documents are not genuine; and these attorneys are willfully compliant in the furtherance of their client(s)' illegal activities. Without the services of corrupt attorneys, including **Perkins Coie**, the Beal entities, including **Creditor LNV** and **Debtors RFC-LLC** and/or **ResCap Liquidating Trust** could not perfect foreclosures in violation of law.

The United States, as well as 49 State Attorney Generals, made it very clear in _USA et al. v. Bank of America Corp. et al_ that the activities **Creditor LNV** aka Beal Bank USA aka Andy Beal engage in are illegal. Additionally the United States brought a criminal indictment and conviction of Lorraine Brown the CEO of LPS for doing exactly what Beal does using the same LPS service providers and affiliates that she used. See Page 1, Motion for Judicial Notice of _United States of America v. Lorraine Brown_, Case No. 3:12-cr-198-J-25 MCR, (M.D. Fla.), Doc. 26 in _Fauley v. Mosman et al_:

> 2. In mid-2005, Jacksonville, Florida based Fidelity National Financial, Inc. ("FNF") purchased DocX from Brown and her partners. Through corporate reorganizations within FNF, DocX later fell under ownership of Fidelity National Information Services, Inc. ("FNIS"). In mid-2008, FNIS spun off a number of business lines into a new publicly-

*traded entity, Lender Processing Services, Inc. ("LPS"), based in Jacksonville, Florida. "DocX was rebranded as "LPS Document Solutions, a Division of LPS." Following this spin-off, Brown was the President and Senior Managing Director of LPS Document Solutions, which constituted DocX's operations in Alpharetta. At all times relevant to this Information, Brown was the chief executive of the DocX operations.*

Beal Bank SSB, Beal Bank USA, LNV, MGC, LPP Mortgage Ltd., CLMG and other Beal corporate entities solely owned and fully controlled by Daniel Andrew Beal aided and abetted by his attorneys use the same methods and means (mail and wire fraud) activities for which Lorraine Brown was criminally convicted to the next level and willfully utter false, fabricated and forged instruments to courts knowing judges will rely upon them as genuine with intent to steal real property. Andy Beal is a renowned gambler, see https://www.mosesbet.com/phil-ivey-the-corporation-andy-beal-50000100000-cash-games. He uses a sleight-of-hand gambling shell game (also known as thimblerig or three shells and a pea, a confidence trick used to perpetrate fraud), except in Beal's shell game no pea exists. He shuffles non-existent unenforceable paper "assets" around between his corporate entities and different sham "investment vehicles" to create an illusion of substance to obtain wagers for money many times greater than the value of the properties that purportedly back these "assets" by fraudulently converting residential mortgages to commercial bonds and re-selling the bad "paper" at huge profits on the international market; most likely in participation with RFC-LLC and other named defendants in *USA et al. v. Bank of America Corp. et al*. Beal uses his shell game to weave around state and federal government regulations that would give protection to homeowners and shuffles his dirty paper "assets" between loss and gain to deceive the IRS and insurance underwriters; and then ultimately to obtain free houses to legitimize the conversion of "dirty assets" into laundered "clean" money. The "shell game" swindle is referred to as a short-con because it is quick and easy to pull off, see https://en.wikipedia.org/wiki/Shell_game.

John L. O'Brien, Register of the Southern Essex District Registry of Deeds sent Marcia Swift an affidavit specifying that Carol Chapman is in fact a known robo-signer. Denise Bailey and Brenda McKinzey, signers on the Fauley 2007 recorded assignment, as well as Lorraine Brown, are on the McDonnell Property Analytics robo-signer list. See Motion for Judicial Notice of Adjudicative Fact Swift Court Cases, Doc. 35-7 in *Fauley v. Mosman et al*; and http://www.salemdeeds.com/robosite/pdf/Robosigners.pdf Marie McDonnell of McDonnell Property Analytics is a certified fraud examiner and on January 11, 2013 she:

*"Submitted an Affidavit In Support of John L. O'Brien's Affidavit and Request For Restitution in the sentencing of Lorraine Brown, the founder the chief executive of DocX LLC who plead guilty to conspiracy to commit mail and wire fraud."*

See Page 9, Doc. 35-7 in *Fauley v. Mosman et al*, Motion for
Judicial Notice of Adjudicative Facts - Swift Court Cases

A letter dated October 31, 2010 sent from MGC Mortgage Inc. to the Texas Attorney General by attorney Peter Weinstock of Hunton & Williams includes a cc to Texas attorney Robert Ackermann who personally participated in the Swift's current case and who identified himself as the General Counsel of LNV's servicer MGC Mortgage Inc. in a phone conversation with me in 2009. Weinstock's letter was in response to an October 4, 2010 letter to MGC by the Texas Attorney General. Weinstock denies that MGC is engaging in the prohibited activities described in that letter, but clearly MGC/LNV/Beal Bank USA did and do continue to engage in these activities. This shows "reasonable cause" to believe that in-house as well as independent attorneys/law firms hired by Beal entities knowingly provide services in furtherance of an ongoing criminal scheme that includes the use of false, fabricated, forged documents to create an illusion of standing to perfect foreclosures when they know these activities violate the law.

In addition to utterance in courts of false assignments of mortgage, and forged counterfeit notes and allonges, and false affidavits and declarations known to be false and forged, **Creditor LNV** and/or **Debtors RFC-LLC** and/or **Homecomings** and/or another GMAC Debtor aided and abetted by **Perkins Coie** attorneys and others named herein, willfully misappropriated mortgage payments so as to create a self-serving default when no default existed except when directly caused by the egregious bad acts of the forenamed parties. These false defaults were used to establish a false legal foundation for foreclose in furtherance of a criminal scheme against the homeowners named herein with intent to illegally deprive them of their property and of their civil rights under color of law. In the Fauley case, unbeknownst to Ms. Fauley MGC put her monthly payments into an escrow account instead of applying them to her mortgage. MGC then falsely claimed she defaulted so they could foreclosure. In the Subramaniam case a predecessor to MGC, EMC Mortgage Inc. the master servicer for the Bear Stearns BSABS 2004-HE4 Trust, falsely claimed in Sept. 2005 that Ms. Subramaniam had missed payments she had not missed. Ms. Subramaniam attempted to resolve that dispute over payments so she could refinance to get away from EMC. Her designated EMC employee contact refused to return her phone calls so she began calling several times a day. Finally in February 2006 another EMC employee told her that representative no longer worked for EMC and that EMC had sold her mortgage to GMAC, but GMAC claimed they did not

have Ms. Subramaniam's mortgage, thus began her nightmare. In June 2006 Litton Loan Servicing contacted her to say they had her mortgage. Litton scheduled a non-judicial trustee sale for Nov. 2006 based on EMC's false claim of missed payments. Ms. Subramaniam hired an attorney who proved she never missed a single payment that EMC had falsely claimed she missed and that she was current on her mortgage, but Litton refused to call off the trustee sale and said in a letter to her attorney in or around October 2006 that their client had no incentive to call off the trustee sale because the amount of equity Ms Subramanian had in her home would satisfy what their client wanted. See Doc. 40, 88 and 91, *Subramaniam v. Beal et al*, Case 3:12-cv-01681-MO, U.S. District Court Oregon. Ms. Subramaniam had no choice but to file for Chapter 13 bankruptcy to prevent the sale of her home even though she had no other debt. This bankruptcy destroyed her life. (Note: at this time their client was **Debtor Homecomings Financial Network Inc.** but this fact was hidden from Ms Subramaniam and her attorney.)

The Gebhardt case is also representative of the class of homeowners victimized by intention misappropriation of payments. Since November 2002 he had been making payments to **Debtor GMAC** but in October 2008 she was told MGC would be taking over servicing of her mortgage. To avoid problems during this transition she paid ahead. On Oct. 24, 2008 Ms. Gebhardt purchased a cashier check from Tennessee State Bank made payable to MGC Mortgage Inc. for $6,000. She mailed the check to MGC at 7195 Dallas Parkway, Plano TX 75024. The check was never credited to her mortgage. Unable to reach MGC by phone she contacted GMAC on Dec. 26, 2008 and was told the transfer of servicing to MGC had not completed. To avoid late fees she made a phone payment of $1,511.76 to GMAC. On Jan. 27, 2009 GMAC told Ms. Gebhardt her monthly payment amount had increased to $4,080.20 so she paid that amount. None of these payments were ever credited to her mortgage. **Debtor GMAC** and/or MGC servicer for **Creditor LNV** then claimed a deficiency and attempted to foreclose on her property. Ms. Gebhardt sued and she contacted Tennessee Congressman Roe's office about her problems with MGC/GMAC/LNV. A Congressional inquiry was made and on or around June 25, 2011 Ms. Gebhardt received a letter dated June 23, 2011 written by Erica Thomas who misrepresented herself to be the "Vice President" of MGC and who made a false claim to Congressman Roe's Office that MGC received no payments from Ms. Gebhardt. (Erica Thomas is an attorney, Texas Bar#: 24042027, but failed to identify herself as such in the letter. Ms. Fauley also received a letter from Texas attorney Erica Thomas after she had requested help from her Senator Ron Wyden. She had several phone conversations and other communications with attorney Erica Thomas specific to a modification of her mortgage that was never transacted because Ms. Thomas was acting in bad faith and never intended to modify Ms. Fauley's

mortgage. Ms. Thomas similarly omitted the fact that she was an attorney during all these communications.)  In April 2013 Ms. Gebhardt obtained a copy from Tennessee State Bank of the processed $6,000 cashier check she wrote as payable to MGC in 2008. The front of the check shows it was received on Oct. 28, 2008 and that the funds were paid to Beal Bank SSB on Oct. 29, 2008.  See Doc. 23-8 and 24 in *Fauley v. Mosman et al*.

Commingling of assets between the various corporations solely owned and controlled by Daniel Andrew Beal show them to be sham alter egos and conduits for laundering ill-gotten profits from fraudulent and prohibited activities such as those described herein.  This Court has a fiduciary duty pursuant to 18 U.S. Code § 4 report these activities to the FBI and the U.S. Justice Department and to pierce the corporate veils of **Creditor LNV Corporation** and Beal Bank SSB and Beal Bank USA and the other Beal corporate entities, to order an investigation, and to revoke Debtors' status as "debtors in possession" and appoint a U.S. Bankruptcy Trustee to prevent a manifest injustice and crimes.

NRS 78.030 prohibits establishment of a corporation for illegal purposes. NRS 78.747(2) states:
*A stockholder, director or officer acts as the alter ego of a corporation if:*
(a) *The corporation is influenced and governed by the stockholder, director or officer;*
(b) *There is such unity of interest and ownership that the corporation and the stockholder, director or officer are inseparable from each other; and*
(c) *Adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice.*

NRS 78.747(2) states:
*The question of whether a stockholder, director or officer acts as the alter ego of a corporation **must be determined by the court as a matter of law**.* [Emphasis added]

NRS 78.752(2)(e) states:
*No financial arrangement made pursuant to this subsection may provide protection for a person adjudged by a court of competent jurisdiction...to be liable for intentional misconduct, fraud or a knowing violation of law*

What has happened to these six representative homeowners is unconstitutional as well as unconscionable and should never have happened in the United States. Our constitution protects us from deprivation of property without due process of law. Our Founding Fathers were specifically concerned about protecting citizens from arbitrary deprivation of property experienced throughout history by subjects of the Monarchies of Europe and framed our Constitution to provide a fundamental guarantee to due process and a jury trial before a citizen of the United States can be deprived of their property: John Adams in 1774 said:

*"Representative government and trial by jury are the heart and lungs of liberty. Without them we have no other fortification against being ridden like horses, fleeced like sheep, worked like cattle, and fed and clothed like swine and hounds."*

Thomas Jefferson in his First Inaugural Address in 1801 said:

*"The wisdom of our sages and the blood of our heroes has been devoted to the attainment of trial by jury. It should be the creed of our political faith."*

Alexander Hamilton said:

*"The civil jury is a valuable safeguard to liberty."*

Patrick Henry, an American attorney, planter, and orator well known for his declaration to the Second Virginia Convention: "Give me liberty, or give me death!" said about our constitutional right to a jury trial:

*"Trial by jury is the best appendage of freedom."*

Virginia Declaration of Rights, 1776:

*"The civil jury trial is preferable to any other and ought to be held sacred."*

Massachusetts Constitution, 1780:

*"In civil suits the parties have a right to trial by jury and this method of procedure shall be held sacred."*

Justice Joseph Story, 1830:

*"One of the strongest objections originally taken against the Constitution of the United States was the want of an express provision securing the right of trial by jury in civil cases. As soon as the Constitution was adopted, this right was secured by the Seventh Amendment."*

Justice Stanley Matthews, 1885:

*"The right of trial by jury is expressly secured by the Seventh Amendment. The U.S. Supreme Court has always guarded this constitutional right with jealousy."*

Justice Hugo Black, 1939:

*"The founders of our government thought that trial by civil jury was an essential bulwark of civil liberty."*

Justice Frank Murphy, 1942:

*"The right of trial by jury in civil cases is so fundamental and sacred to the citizen that it should be jealously guarded by the courts."*

A jury trial is a fundamental cornerstone to the United States Constitution. The six representative homeowners herein have each been deprived of their constitution right to a trial by jury and as a result they have been deprived of their real property without due process of law in egregious violation of the United States Constitution; the supreme law of our country. In the words of 17th Century English philosopher John Locke: "*Wherever Law ends, Tyranny begins.*"

Abuse of summary judgments and summary dismissals has become rampant since the United States Supreme Court's controversial decision in *Ashcroft v. Iqbal*, 556 U.S. ___ (2009). Perhaps the unconstitutional consequence of the *Iqbal* opinion was never intended by the Supreme Court Justices, but it undeniably exists as evidenced by these six representative cases. Perhaps judicial misunderstanding of the Supreme Court's intent in *Iqbal* by lower court judges is to blame, either way it time for the Supreme Court to revisit its decision in *Iqbal* in light of these cases and thousands like them and to address the obvious unconstitutional consequences. Luke Meier, Professor of Law at Baylor Law School, writes in "Why Twombly Is Good Law (But Poorly Drafted) and Iqbal Will Be Overturned," Indiana Law Journal, Vol. 87, Issue 2:

> *The conventional wisdom with regard to the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal is that these two cases work together to usher in a new era of pleading. This reading of the cases, however, is wrong. In reality, Twombly was a valid application of the uncontroversial principle that a complaint must describe the real-world events on which the suit is based with some degree of factual specificity. The Iqbal opinion, unfortunately, mangled this concept by applying it to a complaint that described the real-world events on which the suit was based with sufficient factual specificity. Thus, rather than working in conjunction with each other, the Twombly and Iqbal cases are actually pulling in opposite directions.. The tendency to view Twombly and Iqbal as a collective unit has, unfortunately, interfered with efforts to understand pleading doctrine. The cases have dissimilar analytical foundations. In short, the Twombly decision can be justified as merely an application of preexisting principles regarding pleading; the Iqbal case, however, was wrongly decided and is destined to be overruled. To jointly criticize both opinions is to throw the baby (Twombly) out with the bathwater (Iqbal); to jointly praise both opinions is to miss how dirty the bath water is in which the baby is sitting. Until Twombly and Iqbal are decoupled and considered as separate entities, pleading jurisprudence will continue in a state of disarray.*

Arthur R. Miller a leading scholar in the field of American civil procedure and a University Professor at New York University writes in "From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure" Duke Law Journal, October 2010, Vol. 60, Number 1:

> "*Twombly and Iqbal have destabilized both the pleading and the motion-to-dismiss practices as they have been known for over sixty years. The cases are seen as the latest in*

> *a sequence of increasingly restrictive changes during the last quarter century. These have created expensive and time-consuming procedural stop signs that produce earlier and earlier termination of cases, thereby increasingly preventing claimants from reaching trial—particularly jury trial...there has been too much attention paid to claims by corporate and other defense interests of expense and possible abuse and too little on citizen access..."*

Abuse of summary judgments and dismissals is directed discriminatorily against American homeowners, specifically the six representative homeowners named herein, and it favors exceptionally powerful and wealthy corporate foreclosing parties. Such discrimination enables criminal activities to go unchecked and has resulted in a massive flow of wealth from the middle class to a handful of billionaire would-be American Oligarchs of which Daniel Andrew Beal is a key member. Undue profits gained through Beal's scheme and artifice to defraud in agreement with Debtors RFC-LLC and other GMAC entities, amount to several Billions of dollars. Not only have these six representative homeowners, other Creditors and this Court and the Courts hearing the six representative foreclosure cases by **Creditor LNV** been defrauded, the American public has been defrauded.

States Supreme Court's controversial decision in *Iqbal* has created an unconstitutional judicial environment where access to Justice is denied to all but the very wealthy and where judges feel comfortable making arbitrary and discriminatory summary decisions to deprive specific classes of litigants their right to due process of law and a jury trial because they know no one will hold them accountable. Here we have six cases where the preponderance of convincing and irrefutable evidence has been ignored by federal judges who have granted summary judgments to **Creditor LNV** or perhaps fraudulently in behalf of **Debtor RFC-LLC** and/or the **ResCap Liquidating Trust**.

These judges reasonably know of well established precedence regarding the constitutional duty of a judge in summary judgment. The U.S. Supreme Court in *Tolan v. Cotton* 572 U. S. ____ (2014) makes this precedence clear:

> *"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"*

It is indisputable that federal judge Michael W. Mosman knew a genuine issue for trial existed in *LNV v. Subramaniam*:

---

> Case: 15-35963, 08/26/2016, ID: 10101730, DktEntry: 51, Page 2 of 9
>
> "Well, if she's in default on a note that's forged, then she's *not* in default in a way that matters... right? You have to have an authentic note for her to be in default on it, don't you? Isn't that sort of the *basic* foundation of foreclosure?"
>
> Hon. Chief Judge Michael W. Mosman
> Status Conference, July 8, 2015
> District Court Transcript
> 9thCCA.Dkt. 47. Exh. A, p. 16

*Case 3:14-cv-01836-MO; Document 92-1, Filed 09/03/15 Transcript*

Yet he proceeded to deprive Ms. Subramaniam of her constitutional right to a jury trial and of her right to cross examine **Creditor LNV's** false witnesses, i.e. her right due process of law. It is undisputable that he knew she questioned the authenticity of the "note" AND that she could prove with substantial evidence to a jury at a trial that the note was a forgery and that **Creditor LNV** could not be the holder of her note as claimed.

In Williams v. Pennsylvania, 579 U.S. ___ (2016) the U.S. Supreme Court said:

> *"Due process guarantees 'an absence of actual bias' on the part of a judge. In re Murchison, 349 U. S. 133, 136 (1955). Bias is easy to attribute to others and difficult to discern in oneself...The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is "likely" to be neutral, or whether there is an unconstitutional "potential for bias."' Caperton v. A. T. Massey Coal Co., 556 U.S. 868 (2009) at 881...An insistence on the appearance of neutrality is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of a fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself."*

The appearance of judicial bias exists in how federal judges in the Fauley, Subramaniam and Gebhardt cases treated these women, pro se defendants in representative foreclosure cases herein.

The representative homeowners want this Honorable Court to know they also question the constitutionally of federal courts ever assuming jurisdiction of foreclosure actions because doing so violates the 10th Amendment to the United States Constitution which reads:

> *"The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."*

---

Federal courts are courts of limited jurisdiction. Nothing about a foreclosure action suggests it to be a power delegated to the United States. It is not a power conferred by the U.S. Constitution. Real property, physical land, is part and parcel with the state where it is located and is exclusive to that state. Foreclosing parties, especially corrupt ones including **Creditor LNV** and corrupt attorneys including the **Perkins Coie** attorneys choose federal courts because federal procedural rules and prevailing interpretations of *Iqbal* make it easier for them to get summary judgments and deny homeowners their constitutional rights to due process of law and a trial by jury. It also allows them to abuse litigation parallelism in order to evict homeowners in state courts while summary judgments are on appeal in federal courts. They know state courts won't interfere in federal proceedings so won't grant a supersedeas undertaking, state relief; and federal courts are reluctant to interfere in state proceedings so won't stay an eviction, which is solely a state matter. This division of litigation between federal and state courts leaves victimized homeowners without remedy to prevent eviction pending appeal; a remedy they would have had if the foreclosure was litigated in a state court.

The undersigned declare under oath that what they state in this letter to the court is true and accurate and that they are able and willing to testify before this court as to these matters of which they have personal knowledge. Further the undersigned believe that they may have rights as creditors in this case, but that due to the willful deception described herein by **Creditor LNV**, **Debtor RFC-LLC** and the **ResCap Liquidation Trust**; and by attorneys working for Perkins Coie, Special Insurance Coverage Counsel for the **ResCap Liquidating Trust**, they did not know and could not have reasonably discovered this fact before they did on December 20, 2017.

**THEREFORE** they request this court to appoint a special class counsel to for them and the class they represent. Such appointment of class counsel is in the public interest.

Denise Subramaniam

Tuli Molina-Wohl

Robynne A. Fauley

Catherine Gebhardt

Dated: January 11, 2018



About CSG Investments    Lending/Investing    Industries    Transactions    In The News    Contact Us

    

# TRANSACTIONS

Exhibit 1

[back]

View as PDF

**Public Markets - Primary Syndication**  CSG or its affiliates purchased amounts from underwriters of the below facilities ranging from **$10 million** to greater than **$500 million.**
    * Indicates Admin or Collateral Agent

| | | | | |
|---|---|---|---|---|
| **Chesapeake Energy Corp**<br>Oklahoma City, OK<br>**$4,000,000,000**<br>Bridge Term Loan | **Lyondellbasell Industries**<br>Rotterdam, Netherlands<br>**$3,250,000,000**<br>DIP Term Loan | **GMACM Borrower LLC**<br>Detroit, MI<br>**$1,060,000,000**<br>DIP Term Loan | **Infor US Inc.**<br>New York, NY<br>**$1,040,000,000**<br>Term Loan | **Allegheny Energy, Inc.**<br>Greensburg, PA<br>**$800,000,000**<br>Term Loan |
| **CITGO Petroleum Corp.**<br>Houston, TX<br>**$700,000,000**<br>Term Loan | **Gibson Energy ULC**<br>Calgary, AB<br>**$560,000,000**<br>Senior Secured Notes | **NorthWestern Corporation**<br>Sioux Falls, SD<br>**$390,000,000**<br>Syndicated Loan | **La Paloma Generating Co.**<br>McKittrick, CA<br>**$336,700,000**<br>Term Loan and Revolver | **BRSP LLC**<br>Newport, NC<br>**$290,000,000**<br>Term Loan |
| **Xplornet Communications Inc.**<br>Woodstock, NB<br>**$230,000,000**<br>Senior Secured Notes | **Guadalupe Power Partners**<br>Marion, TX<br>**$215,000,000**<br>Term Loan | **Sundevil Power Holdings LLC**<br>Gila Bend, AZ<br>**$185,000,000**<br>Term Loan & Revolver | **Diversified Machine Inc.**<br>Wixom, MI<br>**$175,000,000**<br>Term Loan | **Consona Holdings Inc.**<br>Atlanta, GA<br>**$150,000,000**<br>Term Loan |
| **Milk Specialties Co.**<br>Eden Prairie, MN<br>**$125,000,000**<br>Term Loan | **Majestic Properties**<br>Gardena, CA<br>**$48,000,000**<br>Term Loan* | | | |

© 2018 CSG Investments. All rights reserved. **Privacy Policy**

Clackamas County Official Records    2008-074677
Sherry Hall, County Clerk

$36.00

01259539200800746770020027    10/31/2008 02:17:25 PM

M-TDA        Cnt=1  Stn=10  ELIZABETH
$10.00 $16.00 $10.00

Exhibit 2

This Document Prepared By and
After Recording Please Return To:
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

## ASSIGNMENT OF DEED OF TRUST

Grantor:    **RESIDENTIAL FUNDING COMPANY, LLC**
One Meridian Crossings, Suite 100, Minneapolis, Minnesota 55423

Grantee:    **LNV CORPORATION**
7195 Dallas Parkway, Plano, Texas 75024

Property Address:    12125 Southeast Laughing Water Road, Sandy, OR 97055

Legal Description: Parcel 1, Partition Plat No. 1999-041, in the County of Clackamas and
State of Oregon.

BC 619513



## CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number: 7889719
Seller Loan Number: 4967689

FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'

the undersigned hereby grants, assigns and transfers to

all beneficial interest under that certain Deed of Trust dated 6/12/2002

executed by ROBYNNE A FAULEY

TO/FOR:

and recorded in Book _n/a_ on Page _n/a_ as Instrument No. _2002-057800_ on _6/20/2002_
of official Records in the County Recorder's Office of _Clackamas_ County, Oregon.

Property Address:    12125 SE SOUTHEAST LAUGHING WA  SANDY, OR  97055
MORTGAGE AMOUNT:  $330,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY: _____

NAME: Jeanne J. Smith

TITLE: Assistant Vice President

STATE OF                    Minnesota )
COUNTY OF                   Hennepin )

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Jeanne J.
Smith, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument.  WITNESS my hand and official seal.

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

_Diane M Meistad_
Notary Public in and for said State



(Area to right reserved for Recording)

<u>WHEN RECORDED MAIL TO:</u>

Prepared By and when recorded
Please return to: MGC Mortgage Inc.
Document Central Dept.
7195 Dallas Parkway
Plano, TX 75024
BC44513

Clackamas County Official Records      2008-074677
Sherry Hall, County Clerk

$36.00

012595382    0746770      27      10/31/008 02:17:25 PM

M-TDA       Cnt=1  Stn=10 ELIZABETH
$10.00 $16.00 $10.00

Clackamas County Official Records      2012-023399
Sherry Hall, County Clerk

$52.00

01574444201200233990020029      04/17/2012 12:01:27 PM

M-TDA       Cnt=1  Stn=5 CONNIEBRO
$10 00 $16.00 $16.00 $10.00

This Document Prepared By and
After Recording Please Return To:
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

## ASSIGNMENT OF DEED OF TRUST

**Grantor:**      **RESIDENTIAL FUNDING COMPANY, LLC**
                  **One Meridian Crossings, Suite 100, Minneapolis, Minnesota 55423**

**Grantee:**      **LNV CORPORATION**
                  **7195 Dallas Parkway, Plano, Texas  75024**

**Property Address:**    12125 Southeast Laughing Water Road, Sandy, OR 97055

**Legal Description:** Parcel 1, Partition Plat No. 1999-041, in the County of Clackamas and State of Oregon.

*Re-recorded at the request of LNV Corporation
to add Grantee name & address on Original
Assignment.
Previously Recorded: 10/31/08, as Inst. No. 2008-074677*

BC 619513

Exhibit 4
Page 1 of 2



## CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number: ███████
Seller Loan Number: ███████



**FOR VALUE RECEIVED,** 'Residential Funding Company, LLC fka Residential Funding Corporation'

the undersigned hereby grants, assigns and transfers to

*LNV Corporation*
*7195 Dallas Pkwy*
*Plano, TX 75024*

all beneficial interest under that certain Deed of Trust dated 6/12/2002

executed by ROBYNNE A FAULEY

TO/FOR:

and recorded in Book *n/a* on Page *n/a* as Instrument No. *2002-057800* on *6/20/2002*
of official Records in the County Recorder's Office of *Clackamas* County, Oregon.

Property Address:    12125 SE SOUTHEAST LAUGHING WA   SANDY, OR  97055
MORTGAGE AMOUNT:   $330,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY: _____

NAME: Jeanne J. Smith

TITLE: Assistant Vice President

STATE OF                    Minnesota )
COUNTY OF                   Hennepin )

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Jeanne J.
Smith, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument.  WITNESS my hand and official seal.

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

_____
Notary Public in and for said State

[Notary seal: DIANE M. MEISTAD / NOTARY PUBLIC - MINNESOTA / MY COMMISSION EXPIRES 01/31/2010]

(Area to right reserved for Recording)

WHEN RECORDED MAIL TO:

Prepared By and when recorded
Please return to:MGC Mortgage Inc.
Document Control Dept.
7195 Dallas Parkway
Plano, TX 75024
BC 619513

Exhibit 4
Page 2 of 2

**CORPORATION ASSIGNMENT of DEED OF TRUST**

RFC Loan Number: 10335983
Seller Loan Number: 10097572

FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'

the undersigned hereby grants, assigns and transfers to

LNV Corporation
7195 Dallas Parkway
Plano, Texas 75024

all beneficial interest under that certain Deed of Trust dated 2/10/2004

executed by DENISE SUBRAMANIAM

TO/FOR: People's Choice Home Loan, Inc a Wyoming Corporation.

and recorded in Book _N/A_ on Page _N/A_ as Instrument No. 2004.019937 on 3/1/04
of official Records in the County Recorder's Office of _Washington_ County, Oregon.

Property Address:   13865 SW WALKER ROAD  BEAVERTON, OR  97005
MORTGAGE AMOUNT:  $176,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY:

STATE OF                         Minnesota )       NAME: Betty Wright
COUNTY OF                        Hennepin )        TITLE: Assistant Vice President

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Betty
Wright, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

Notary Public in and for said State

DIANE M. MEISTAD
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

After Recording Return to:
MGC Mortgage Inc
Document Control
7195 Dallas Parkway
Plano, Texas 75024
BC 419600

2008K069730

**SANDY WEGMAN**
RECORDER - KANE COUNTY, IL

RECORDED: 9/3/2008 2:16 PM
REC FEE: 25.00   RHSPS FEE: 10.00
PAGES: 3

Prepared BY & After Recording Mail to:
**MGC Mortgage Inc**
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas 75024

RFC Loan Number: 11380185
Seller Loan Number: 656493104

## CORPORATION ASSIGNMENT of MORTGAGE

**FOR VALUE RECEIVED,** '(MERS) Mortgage Electronic Registration Systems, Inc.'

1595 Spring Hill Road, Suite 310, Vienna, VA 22182

the undersigned hereby grants, assigns and transfers to

LNV Corporation
7195 Dallas Parkway
Plano, Texas 75024

all beneficial interest under that certain Mortgage dated 1/26/2007
executed by Chris T. Swift and Marcia A. Swift, husband and wife as tenants by the entirety.
TO/FOR: GMAC Mortgage, LLC dba ditech.com

and recorded in Book _n/a_ on Page _n/a_ as Instrument No. 2007K018917 on 1/26/07
of official Records in the County Recorder's Office of _Kane_ County, Illinois.
* see attached Exhibit "A" for Legal.

Mortgage Amount:    $449,500.00

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Mortgage.

'(MERS) Mortgage Electronic Registration Systems, Inc.'

BY: _____

NAME: Michael Mead

TITLE: Assistant Vice President

3

35 -

STATE OF                  Minnesota)
COUNTY OF                Hennepin)

On 3/10/2008  before me, the undersigned, a Notary Public in and for said State personally appeared Michael
Mead, Assistant Vice President of '(MERS) Mortgage Electronic Registration Systems, Inc.'  personally known
to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he
executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon
behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Notary Public in and for said State

Prepared by Diane Meistad

Residential Funding Company, LLC
One Meridian Crossings, Ste. 100
Minneapolis, MN 55423, (952)979-4000

Property Address: 601 SENNETT ST  BATAVIA, IL  60510

BC 628243

## CORPORATION ASSIGNMENT of DEED OF TRUST

Bc: 612526 — 17101164

RFC Loan Number: 8263393
Seller Loan Number: 328544

FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'
8400 Normandale Lake Blvd. Ste 600
Minneapolis, MN 55437
the undersigned hereby grants, assigns and transfers to

LNV Corporation
7195 Dallas Parkway
Plano, Texas 75024

all beneficial interest under that certain Deed of Trust dated 11/7/2002
executed by CATHERINE GEBHARDT A SINGLE PERSON

TO/FOR: Sebring Capital Partners, Limited Partnership.

and recorded in Book 1562 on Page 298 as Instrument No. 02053378 on 11-13-02
of official Records in the County Recorder's Office of Sevier County, Tennessee.

Property Address:    3753 THOMAS CROSS ROAD, SEVIERVILLE, TN 37876
MORTGAGE AMOUNT: $243,100.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'Residential Funding Company, LLC fka Residential Funding Corporation'

Maximum principal indebtedness for Tennessee recording tax
purposes is $ -0- does not increase principal debt. Mortgage tax
paid on original filing.

BY:
NAME: Betty Wright
TITLE: Assistant Vice President

STATE OF                          Minnesota)
COUNTY OF                         Hennepin)

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Betty
Wright, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Notary Public in and for said State

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

DIANE M. MEISTAD
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

(Area to right reserved for Recording)

BK/PG: 3160/446-448
08048722

| | |
|---|---|
| 1 PGS : ASSIGNMENT | |
| ELAINE BATCH: 133807 | |
| 08/06/2008 - 10:38 AM | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 10.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 12.00 |

STATE OF TENNESSEE, SEVIER COUNTY
SHERRY ROBERTSON HUSKEY
REGISTER OF DEEDS

Prepared By & After Recording Mail to:
MGC Mortgage Inc
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas 75024





OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2008-0704628 08/13/08 10:44 AM
1 OF 1

WHEN RECORDED MAIL TO:

After Recording Return to:
MGC Mortgage Inc
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas 75024
(866) 544-9820

MIN: 100265600005185934
MERS Phone: 1-888-679-6377
BC: 619358

---

## CORPORATION ASSIGNMENT of DEED OF TRUST

**FOR VALUE RECEIVED, '(MERS) Mortgage Electronic Registration Systems, Inc.'**

1595 Spring Hill Road, Suite 310, Vienna, VA 22182

the undersigned hereby grants, assigns and transfers to

LNV Corporation
7195 Dallas Parkway
Plano, Texas 75024

all beneficial interest under that certain Deed of Trust dated 11/14/2006
executed by TULI M WOHL, An Unmarried Woman
Molina

and recorded in Book on Page as Instrument No. 20061525605 on of official Records in the County Recorder's Office of
Maricopa County, Arizona. Recorded on 11-21-06.

See Attached Exhibit "A".

Mortgage Amount:    $475,000.00

Property Address:    1321 E LUKE AVE    PHOENIX, AZ 85014

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'(MERS) Mortgage Electronic Registration Systems, Inc.'

BY:
NAME: Michael Mead
TITLE: Assistant Vice President

STATE OF              Minnesota)
COUNTY OF            Hennepin)

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Michael Mead,
Assistant Vice President of '(MERS) Mortgage Electronic Registration Systems, Inc.' personally known to me to be the
person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her
authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted,
executed the instrument. WITNESS my hand and official seal.

Notary Public in and for said State

This instrument was drafted by Diane Meistad
Assistant Secretary, Residential Funding Company,
LLC, One Meridian Crossings, Suite 100,
Minneapolis, MN 55423, (952) 979-4000.

DIANE M. MEISTAD
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES JAN 31, 2010

04/18/2014    00:29    6127693149    GREENWICH INVESTORS    PAGE 01/01

DIANA SCHUTTE    2P
MARTIN COUNTY RECORDER
FEE:    14.00
PJK Date 07/01/2008    Time 13:20:57
1 200800000    HI 58/301

After Recording Return to:
MGC Mortgage Inc
Document Control  Allison Martin
7105 Dallas Parkway
Plano, Texas 76024
B.O. 6129-18
MIN: 10014983143939391000
MERS Phone: 1-888-079-6377

CORPORATION ASSIGNMENT of MORTGAGE

FOR VALUE RECEIVED, '(MERS) Mortgage Electronic Registration Systems, Inc.'

                                        1595 Spring Hill Road, Suite 310, Vienna, VA 22182

the undersigned hereby grants, assigns and transfers to          LNV Corporation
                                                                 7105 Dallas Parkway
                                                                 Plano, Texas 76024

all beneficial interest under that certain Mortgage dated 9/30/2003

executed by RHONDA L HARDWICK

TO/FOR:     N-6      48

and recorded in Book  n/a  on Page  n/a  as Instrument No. 1200309659  on  10-7-03  of
official Records in the County Recorder's Office of  Martin  County, Indiana.

PROPERTY ADDRESS:  201 CHURCH ST  LOOGOOTEE, IN  47553

Mortgage Amount:  $87,550.00

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Mortgage.

                                        '(MERS) Mortgage Electronic Registration Systems, Inc.'

                                        BY:
                                        NAME: Michael Mead
                                        TITLE: Assistant Vice President

STATE OF                    (Minnesota)
COUNTY OF                   (Hennepin)

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Michael Mead,
Assistant Vice President of '(MERS) Mortgage Electronic Registration Systems, Inc.' personally known to me to be the
person whose name is subscribed to the within Instrument and acknowledged to me that he executed the same in
his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person
acted, executed the instrument. WITNESS my hand and official seal.

Notary Public in and for said State

       by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

DIANE M. MEISTAD
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2011

https://www.forbes.com/2008/12/30/gmac-washington-tarp-markets-equity-cx_bw_1230markets01.html

Brian Wingfield, Forbes Staff

Exhibit 3

12/30/2008 @ 4:20AM

# GMAC Gets Bailout Funds

For months, critics of an auto industry bailout have raised a legitimate question: What good will it do if customers can't get the financing to buy vehicles?

As 2008 draws to a close, Uncle Sam is trying to alleviate that problem while shelling out cash to keep the industry afloat. Late Monday, the Treasury Department said it would buy a $5 billion stake in GMAC, the financing arm of General Motors, in order to help prop up the company. In addition, the government will lend GM as much as $1 billion so that it can buy more equity in GMAC.

The funds will come from the Troubled Asset Relief Program, the $700 billion pool of taxpayer money that the U.S. government has set aside to get financial markets running smoothly. The aid is in addition to the $17.4 billion in emergency loans the Bush administration granted earlier this month to GM and Chrysler, which said they faced bankruptcy without immediate assistance.

While the timing of the announcement Monday evening was something of a surprise, the move itself was not entirely unanticipated. On Dec. 24, the Federal Reserve said it would allow GMAC to become a bank holding company, an action that permits it to receive TARP funds. The strings: GMAC had to convert 75% of its debt to equity by last Friday at midnight. However, earlier Monday the company refused to say if it had met the goal by the deadline.

Without government assistance, GMAC, which provides both vehicle and mortgage financing, was in jeopardy of filing for bankruptcy. This would have spelled further trouble for GM, as GMAC helps to finance purchases of most GM vehicles. In addition, GMAC is jointly owned by GM and Chrysler's parent company, Cerberus Capital Management. A Cerberus affiliate will also buy additional equity in GMAC.

The government's move Monday helps to shore up GMAC–for now–and by doing so, it keeps in play an option for consumers to obtain vehicle financing (provided that they qualify). But it's also another example of the sprawling bailout for banks and now the auto industry that Barack Obama's incoming administration will inherit in January.

The Treasury has already used the first half of the TARP kitty, and in order to receive the second $350 billion the administration will need to submit a report to Congress explaining how the funds will be used. Treasury Secretary Henry Paulson has said that the remaining amount will need to be tapped, though it is not clear whether he will do the honors, or whether he'll leave it to Obama.

In its statement Monday, the Treasury Department said it would "work with Congress and the President-elect's transition team on the appropriate timing for release of the remainder of the TARP funds to support financial market stability."









http://nvsos.gov/sosentitysearch/CorpDetails.aspx?lx8nvq=Ljyliw%252bxIqnp3exaL0fiuw%253d%253d&nt7=0

**Exhibit 4**





B3498 P0806   02-10-2014
              11:22:01.000
Brunswick County, NC Register of Deeds   Brenda M. Clemmons   PROP
                                         page 3 of 5

# SECRETARY CERTIFICATE

I, Stephen J. Costas, Secretary of LNV Corporation, a Nevada corporation (the "Corporation"), being familiar with the books and records of the Corporation, hereby certify that attached hereto as <u>Exhibit A</u> is a true and correct copy of resolutions, which have been duly adopted by the Board of Directors of the Corporation and which have not been amended, modified, or repealed in any respect and which are in full force and effect as of the date hereof.

LNV Corporation

Stephen J. Costas, Secretary

STATE OF TEXAS         §
                       §
COUNTY OF COLLIN       §

I, the undersigned, a Notary Public in and for the said County, in said State, hereby certify that Stephen J. Costas, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this date, being informed of the contents of such document, executed the same voluntarily.

GIVEN UNDER MY HAND, OFFICIAL SEAL this _18th_ day of _August_, 2011.



TERRI S. WEISS
My Commission Expires
November 21, 2014

Notary Public, State of Texas
My Commission expires: _11/21/2014_

B3496 P0607    02-10-2014
11:22:01.000
Brenda M. Clemmons    PROP
Brunswick County, NC Register of Deeds    page 4 of 5

Exhibit A

# WRITTEN CONSENT OF
# THE SOLE DIRECTOR OF
# LNV CORPORATION

The undersigned, being the sole member of the Board of Directors (the "Board") of LNV

Corporation, a Nevada corporation (the "Mortgage Loan Owner"), hereby adopts by written consent the

following resolutions as of  *August 18*  , 2011 (the "Effective Date") with the same force

and effect as if adopted at a meeting of the Board duly called and held:

RESOLVED, that the individuals named in the next paragraph are hereby designated as authorized signatories of the Mortgage Loan Owner (each such individual is referred to herein as an "Authorized Signer"), but only for the sole, limited and exclusive purposes, acting on behalf of the Mortgage Loan Owner, of signing, executing and (where required by law or custom) attesting, acknowledging and/or recording (1) requests for delivery of custodial mortgage loan documents, reconveyances, substitution of trustees, discharges, releases, and satisfactions of deeds of trust, trust deeds, mortgages and security deeds (each, a "Security Instrument"), which Security Instruments secure paid in full mortgage loans subserviced for MGC Mortgage, Inc. ("MGC") by Dovenmuehle Mortgage, Inc. ("Subservicer") pursuant to that certain Subservicing Agreement dated as of February 19, 2010 (as amended from time to time, the "SA") between MGC and Subservicer and letters of direction as needed to process pre-payoff land trust transactions; (2) partial releases of collateral encumbered by any of the Security Instruments, but only with the prior written approval of MGC in each instance; (3) modifications and/or extensions of so-called "balloon reset" mortgages owned or backing a security issued by FNMA or FHLMC, but only in accordance with applicable guidance issued by those Agencies and the related mortgage loan documents and with the prior written approval of MGC; (4) modifications of notes and Security Instruments upon the prior written approval of MGC and, if applicable, of FNMA, FHLMC, HUD, USDA/RHS, or VA; (5) substitutions of trustees, pleadings, notices, deeds or other instruments necessary to institute, continue or complete foreclosures of loans subserviced for MGC by Subservicer; and (6) with the prior written approval of MGC, any and all other related instruments and documents, including without limitation (i) the power to request mortgage loan documents from any document custodian holding the same, and (ii) the power to indorse instruments required to effectuate mortgage loan payments or refunds (such as checks evidencing such payments or refunds);

FURTHER RESOLVED, that each of the following persons are hereby appointed as an Authorized Signer:

Edward J. Bagdon
Jenalyn M. Blake
Paula Borshell
Janice Carlton-Oliva
William B. Corcoran
Cara Cuny
John DeNight
Michelle Dranka
Lenny Figliola


B3498 P0808 02-10-2014
11:22:01.000
Brenda M. Clemmons    PROP
Brunswick County, NC Register of Deeds    page 5 of 5

Richard G. Fike
Bettina Honold
Odishu R. Malik
Keith Manson
Bernadette McDonnell
Michael Nennig
Mary K. Przybyla
Tonette J. Salinas
James D. Stonecipher
Iris Tredway
Marianne Wallner
Susan Wilson

it being understood that each Authorized Signer is a current employee of Subservicer (as defined in the SA);

FURTHER RESOLVED, that all acts and doings of each Authorized Signer shall in all respects be consistent with and in furtherance of the duties and obligations of Subservicer under the SA, as that SA may have been, and may hereafter be, amended, supplemented or superseded.

FURTHER RESOLVED, that each appointment of each Authorized Signer made hereunder shall automatically expire: (i) when and if these resolutions are repealed, rescinded or annulled by the Mortgage Loan Owner for any reason; (ii) upon the expiration or earlier termination of the SA; or (iii) when MGC delivers written notice to Subservicer of such repeal, rescission or annulment; and an Authorized Signer's appointment hereunder shall automatically terminate upon: (1) the termination of the employer-employee relationship between the Authorized Signer and Subservicer; or (2) upon the resignation of the Authorized Signer, delivered to Subservicer or to MGC directly.

FURTHER RESOLVED, that no present or future Authorized Signer: (i) shall ever be deemed to be an officer or employee of MGC or the Mortgage Loan Owner for any purpose; (ii) shall ever be entitled to compensation of any kind or type from MGC or the Mortgage Loan Owner; and (iii) shall ever be entitled to any benefits whatsoever granted by MGC or the Mortgage Loan Owner by law or regulation to other officers, directors or employees of MGC or the Mortgage Loan Owner.

FURTHER RESOLVED, that this resolution shall be considered repealed and of no further effect upon the termination or expiration of the SA.

IN WITNESS WHEREOF, the undersigned has duly executed this Written Consent to be effective as of the date first indicated above.

_____
D. Andrew Beal, Director



Home   About Barbara   Calendar   News   FAQ   Forms   Contact Us
Search...  GO

My Data Reports | Commercial Recordings | Licensing

# LNV CORPORATION

☐ New Search                    ☐ Printer Friendly                    ☐ Calculate Fees

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 3/17/2008 |
| Type: | Domestic Corporation | Entity Number: | E0169702008-8 |
| Qualifying State: | NV | List of Officers Due: | 3/31/2016 |
| Managed By: | | Expiration Date: | |
| NV Business ID: | NV20081614653 | Business License Exp: | 3/31/2016 |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | THE CORPORATION TRUST COMPANY OF NEVADA | Address 1: | 311 S DIVISION ST |
| Address 2: | | City: | CARSON CITY |
| State: | NV | Zip Code: | 89703 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Commercial Registered Agent - Corporation | | |
| Jurisdiction: | NEVADA | Status: | Active |

View all business entities under this registered agent

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 100.00 |
| Par Share Count: | 10,000.00 | Par Share Value: | $ 0.01 |

## Officers                                                    ■ Include Inactive Officers

### President - D ANDREW BEAL

| | | | |
|---|---|---|---|
| Address 1: | 7195 DALLAS PARKWAY | Address 2: | |
| City: | PLANO | State: | TX |
| Zip Code: | 75024 | Country: | |
| Status: | Active | Email: | |

### Director - D ANDREW BEAL

| Address 1: | 7195 DALLAS PARKWAY | Address 2: | |
|---|---|---|---|
| City: | PLANO | State: | TX |
| Zip Code: | 75024 | Country: | |
| Status: | Active | Email: | |

### Secretary - TIM H TAYLOR

| Address 1: | 7195 DALLAS PARKWAY | Address 2: | |
|---|---|---|---|
| City: | PLANO | State: | TX |
| Zip Code: | 75024 | Country: | |
| Status: | Active | Email: | |

### Actions\Amendments

Click here to view 10 actions\amendments associated with this company

Information Center  |  Election Center  |  Business Center  |  Licensing Center  |  Securities Center  |  Online Services  |  Contact Us  |  Sitemap

This is a screen print of the Nevada SOS website search for LNV Corporation in 2012- notice D. Andrew Beal and California licensed attorney Stephen Costas were the only listed officers.



http://nvsos.gov/sosentitysearch/CorpDetails.aspx?lx8nvq=Ljyliw%252bxIqnp3exaL0fiuw%253d%253d&nt7=0 – This is a screen print of the current Nevada SOS record for LNV – Stephen Costas has been replaced by Tim Taylor.



http://tabletango.com/2012/05/andy-beal-is-in-russia-omg/#more-3542

# Andy Beal is in Russia – OMG!

May 7, 2012 Linda Leave a comment

Tony G's latest blog post tells of being in Minsk playing poker in incredible action games. Quoting The G:

"When I was in Minsk, I stayed at the Hotel Europa. And when I checked in, I saw **Andy Beal's** Ferrari with Florida plates. It's very nice to see Andy in Minsk nowadays."

Damn! I can't help but wonder if he's kickin' it in PLO or if he's insisting on the 'heads-up' play that he did with the Corporation, and if he's wearing a timer in his sock, and just a whole bunch of things. And how much did it cost to send his Ferrari to Minsk...I mean really. Not that he cares one way or the other about the money side of it, I'm just an ultra curious cat. I still think fondly of dealing to him at Bellagio. And I still love the picture of Craig Singer, me, and Andy taken at the Wynn. It's in this post.

I did a phone interview with Chris Moneymaker some weeks ago. I would like to apologize to him for it taken me so damned long to get it put up. My archaic manner of recording and transcribing is painfully slow to say the least. I can't begin to tell you how impressed I am with Chris Moneymaker's entire attitude about everything. He's so...together. His life goals appear to be very much in order and he's not a lunatic that can't wait to get busted. SWEET!

The interview was so long it went into a two-parter. Take a reading:

All In: The Poker Movie – Q & A with Chris Moneymaker
All In: The Poker Movie – Q & A with Chris Moneymaker Part II

Catch up more later on the personal side of life...see ya!

## Andy Beal in Minsk Russia in May, 2012

http://www.tonygpoker.com/personal-blog/prague-and-the-25k-high-roller/

# Tony G - Official Website



# Prague and the $25K High Roller

by Tony G on May 7, 2012

Today will find me leaving Lithuania for Prague. I'm on my way to the **Kings Casino** to play the $25K High Roller. There are plans for a streaming live cash game and that is one of my favorites in poker.

I returned to Lithuania recently from Minsk, Belarus and the big game I've been playing. The game is indescribable really; the chips are rolling across the floor, up the walls and across the ceiling, and just waiting to be scooped up. The pots in PLO are so big you need pole vaulting skills to get over them and a bulldozer to scrape them into your stack.

I love poker!!! It seems like the biggest games in the world are in Minsk right now. It's really a very incredible place, very fun, as well as very safe. The night life is some of the best in the world and great night clubs put it all together. And when I'm not in a poker game, I am the night life. It is never too late to stop doing everything and PARTY! Find me if you want to do it right.

When I was in Minsk, I stayed at the Hotel Europa. And when I checked in, I saw **Andy Beal's** Ferrari with Florida plates. It's very nice to see Andy in Minsk nowadays.

Prague and poker, I'm on my way!

---

http://www.dallasnews.com/business/business/2016/01/15/billionaire-banker-beal-buys-100-million-hicks-estate-in-biggest-home-deal-in-dallas-history

## January 15, 2016

# Billionaire banker Beal buys $100 million Hicks estate in biggest home deal in Dallas history

By Steve Brown

Realtors say it's the biggest home sale in Dallas history.

Businessman Tom Hicks' 25-acre North Dallas estate has just changed hands.

With a price tag of $100 million, the 28,000-square-foot mansion has been purchased by Dallas financier Andy Beal.

Beal had been shopping the Walnut Hill Lane home since back before Christmas.

Real estate agent Allie Beth Allman — who's marketed the one-of-a-kind property since last year along with David Nichols — just closed the sale Friday.

The Hicks mansion — also called the Crespi Estate — dates to the 1930s. The house was totally rebuilt and substantially enlarged starting in 2000.

The main house has seven bedrooms plus additional staff bedrooms. The master suite alone is 3,000 square feet.

The almost 28,000-square-foot house was enlarged starting in 2000. (Steve Brown)

There's a separate two-story guesthouse and an entertainment building with theater, game rooms and other features. It comes complete with a helipad.

Allman, who recently sold her Dallas company to billionaire Warren Buffett, has sold some of North Texas' most exclusive properties.

But the Hicks estate is her biggest deal ever.

"The most expensive sale in Dallas prior to this was closer to $20 million," Allman said. "It's my understanding that is the largest sale ever in Texas for a residential property."

She also originally sold the house to Tom Hicks in 2000.

The sprawling estate is around the block from former president George W. Bush's North Dallas home.

Allman won't talk about the actual sales price or details of the transaction. Based on the median price of homes sold in North Texas, you could buy 500 houses with what the asking price for the Hicks mansion was.

Beal is one of the richest men in Texas. He's the founder of Beal Bank, which is headquartered in Plano.

The 62-year-old's interests include everything from aerospace to high-stakes poker.

Beal also looked at the Trammell Crow estate on Preston Road in Highland Park before buying the larger, more spectacular Hicks property.

Allman said she's still hunting a buyer for the Crow property, most recently on the market for just $46 million.

"The Hicks estate is the only estate in Dallas and Preston Hollw that offers a land size of 25 plus acres and architecture that could not ever be duplicated again," Nichols said. "An estate of this magnitude may never be available again in Dallas."

http://www.bizjournals.com/dallas/news/2017/01/11/andy-beal-puts-former-hicks-estate-on-market.html

# Bank mogul Andy Beal puts former Hicks estate on market for $48.9M

## Jan 11, 2017, 7:17am CST

**Candace Carlisle** Senior Reporter *Dallas Business Journal*

It's only been a year since bank mogul Andy Beal bought the former Hicks estate in Preston Hollow, which was widely marketed for $100 million — yet it was time to put it on the market.

This time, Beal has priced it at $48.9 million.

The billionaire owner has hired the Realtor that sold him the 25-acre estate in the prestigious Preston Hollow neighborhood, Allie Beth Allman. She has begun marketing the property, which is also known as the Crespi estate, after putting it on MLS.

At the time Beal closed on the estate last January, the real estate community said it was the biggest residential home sale in the Lone Star state. Terms of the deal were undisclosed.

Allman, who gave the *Dallas Business Journal* a private tour of the European-style, 27,092-square-foot mansion and estate, has always thought it was a home that would attract a business executive, such as its former owner Tom Hicks.

Hicks previously owned the Texas Rangers and the Dallas Stars, and frequently used the estate, which is dubbed Walnut Place, as a place to entertain players and business colleagues.

And Beal owns Plano-based Beal Bank USA, which recently made a big loan to acquire and help upgrade the J.C. Penney campus, which sold for $353 million in a sale-partial leaseback deal.

"This house is a work of art," Allman, founder and CEO of Allie Beth Allman& Associates, told me. "This is a wonderful house for business development."

http://www.dallasnews.com/news/politics/2016/11/11/two-young-dallas-guns-helped-deliver-white-house-trump

## How two Dallas young guns helped deliver the White House to Trump

Filed under Politics at Nov 11

Donald Trump won the White House with his son's Texas posse right behind him.

**Don Trump Jr.** began his fundraising journey after the Republican convention and right here in Dallas, squired by **Tommy Hicks Jr.**, the eldest son of Dallas billionaire Tom Hicks, and their mutual buddy, Dallas hedge fund manager Gentry Beach.

After less than three days of schmoozing, the trio raised more than $2 million for Trump's campaign war chest from high-dollar donors in the Lone Star State.

"That's when it all got serious," Hicks Jr. says.

Agreed, says Charlie Kirk, founder of Turning Point USA who ran the Trump campaign's millennial assault. "Gentry and Tommy really saved this election," says Kirk. "When they came on board, things were in flux. It was a campaign looking for leadership. Gentry and Tommy delivered that through incredible sacrifice. They put pieces together that put the Trump campaign on a path to victory."

"These two young wild men have done more in three or four months than politicos who've run their traps for 30 years. They flat went nuts," says Robert Blaha, chairman of the Trump campaign in Colorado. "When Donald looks out of the window of the White House, he can thank these two guys."

**Big game of a different sort**
For the last three months, Trump Jr. has crisscrossed the country drumming up money for the presidential campaign with Hicks and Gentry as his constant wingmen, rainmakers and strategists.

The billionaires' namesakes, both 38, and Beach, 41, became pals 15 years ago as young guns on Wall Street and in Manhattan.

Trump Jr., an avid outdoorsman and safari hunter, frequently visits Texas to fish, hunt birds and socialize with his buddies. Beach is the godfather to one of his kids.

But with the campaign, the Trump-Hicks-Beach trio — along with a cadre of other rich Dallas guys — became successful big-game hunters of a political sort.

"We've literally worked our tails off seven days a week, 20 hours a day," Beach says.

"Gentry and Tommy did not waver," says Kirk, "even when the political elites and the media said, 'Oh there's no way. It's not going to happen.' Every day, Tommy and Gentry kept on pounding for dollars."

"There wasn't a time in the last five months when I wavered and didn't believe that he was going to win," says Beach, who joined forces with the Trumps late last year to prepare for the Iowa caucus.

**Why so steadfast?**
"I've seen people underestimate Donald Trump as long as I've known him," says Beach. "And I've seen him deliver time and time again."

**High-rollers roll in**
Campaign insiders say the money raised in North Texas by Hicks, Beach, Ray Washburne and Roy Bailey, managing director of Giuliani Deason Capital Interests LLC, equaled donations from the entire state of California.

Texas dollars came close to the amount raised in California and New York combined.

Genesco Sports Enterprises CEO John Tatum, a key fundraiser for thee presidential runs of Sen. John McCain and Mitt Romney, was among those tapped early on.

**Along with Tommy's dad, billionaire banker Andy Beal was already on board.**

**Donald Trump stumpers Andy Beal, left, and Tommy Hicks Jr., head back to Dallas on Wednesday aboard Beal s private jet after celebrating the upset victory in New York.**

**Donald Trump stumpers Andy Beal, left, and Tommy Hicks Jr., head back to Dallas on Wednesday aboard Beal s private jet after celebrating the upset victory in New York.**

**Just a month ago, Beal, who sits on Donald Trump's economic advisory council, was a closet skeptic.**

**But as an avid gambler, Dallas' richest man kept his poker face on.**

**Beal spent Monday, the last day of campaigning, with Trump and Hicks, traveling to Detroit and New Hampshire.**

**The enthusiasm was palpable. Beal began to believe Hillary Clinton and the political pundits were in for a shocker.**

"But until the public speaks, no one really knows," Beal says. "We felt we had a real shot at Donald being our next president."

Election elation

On Election Night, the Dallas contingent turned out in full force at the New York Hilton in Midtown Manhattan -- hopeful, but still uncertain.

https://www.bloomberg.com/news/articles/2016-09-26/billionaire-banker-backs-new-big-money-group-aiding-trump

# Billionaire Banker Backs New Big-Money Group Aiding Trump

*by Zachary Mider*
**September 26, 2016,** 11:52 AM PDT September 26, 2016, 12:58 PM PDT

- Andy Beal is paying expenses for a new Trump super-PAC
- The group disclosed spending more than $1 million last week



*Republican presidential nominee Donald Trump stops at Geno's Steaks in Philadelphia on Sept. 22, 2016.*

Andy Beal, a billionaire banker and friend of Donald Trump, is behind a new effort to help the Republican presidential candidate defeat Democrat Hillary Clinton.

Save America From Its Government, a super-political action committee, was formed earlier this month and spent about $1 million on advertisements last week, Federal Election Commission records show. According to Save America's website, Beal helped set up the group and is paying an undisclosed amount of administrative and overhead expenses. It's also soliciting outside donations.

At a rally in June, Trump suggested that his friend might serve a role in a Trump administration, remarking that he could put him in charge of negotiating with China. Beal was one of the original 13 men named in August as members of the Trump economic advisory team, although more names were later added to the list.

Most of the super-PAC's spending so far has been on newspaper advertising, according to its reports to the FEC. A full-page newspaper ad shown on its website attacks President Barack Obama's health-care law, questions Clinton's honesty and warns about creeping government expansion. "ENOUGH IS ENOUGH!!" it concludes. "Vote Trump."

*Andy Beal*
*Photographer: Matthew Mahon/Redu*

## QuickTake U.S. Campaign Finance

A representative for Beal didn't immediately respond to inquiries about his role at Save America today. Last week, he discussed his support for Trump in an interview with Bloomberg, saying "Washington just needs something different to shake it up. Donald is the only one who will get it done."



Tracking the Presidential Money Race Between Clinton and Trump →

In a written statement issued last week, a spokesman for Beal added that "American trade policies are shifting jobs overseas, decreasing the U.S. standard of living, and increasing the standard of living for many foreign countries. Mr. Beal believes that current U.S. government is the problem, and that more of the same simply perpetuates the problems."

Beal owes his fortune, estimated by Bloomberg at about $8 billion, to financial holdings including Dallas-based Beal Bank. He tangled with Trump in 2009 when he tried to wrest control of a bankrupt Trump company that owned property in Atlantic City, New Jersey. "There are no hard feelings," Beal told the Wall Street Journal earlier this year.

## Soviet girlfriend Olya Sinitsyna with Andy Beal



https://www.facebook.com/olya.sinitsyna.3

## Andy Beal's Russian/Soviet girl friend, Olya Sinitsyna with Trump on campaign in August 2016



## Andy Beal and Olya Sinitsyna with Craig Singer in Minsk in January 2016

# In St. Petersburg Again May 2015 & in June 2016





Audited by The Advertising Checking Bureau, Inc., 03/21/2008

THE WALL STREET JOURNAL.                                                          Tuesday, March 18, 2008   A5

ADVERTISEMENT

# To: Mr. Ben Bernanke

# Please DON'T PUT GARBAGE in the FEDERAL RESERVE

Dear Mr. Bernanke:

I was afraid that if I simply wrote you this letter, you might never see it. I thought this message was important and worthy of effort to attract your attention.

I am sure that you are hearing from the Wall Street crowd about how stupid the marketplace is because the market won't buy all the great loans that Wall Street has produced and how stupid or illiquid the market is because AAA RMBS are being offered at 60 cents on the dollar with no takers. First mortgage syndicated bank loans are offered for 70 cents on the dollar and Wall Street simply cannot believe buyers aren't standing in line to buy.

Consider for a moment that many corporate bonds are trading at premiums above par value. How can this be? If the market is so stupid and there is no liquidity, who is buying those good corporate bonds at 105 cents on the dollar?

## Many AAA mortgage bonds are actually extremely high risk because of little-considered nuances in the hundreds of pages of trust indentures and servicing agreements. In addition to widely understood mortgage default and other concerns, these contracts permit the loan servicers to advance payments on behalf of defaulted homeowners for years and years and years at interest rates of 12% and more. These "servicer advances" put funds back into the trust to be paid out to junior security holders. The "servicer advances" are subsequently repaid FIRST from foreclosed home sales. Therefore, foreclosed home sales may result in little or no proceeds, or even a liability, to the AAAs. This mechanism effectively transfers funds that really should belong to the AAA securities to the junior securities. Servicers that own junior securities are incredibly motivated to drag their feet resolving defaulted loans, which results in great loss to the AAA holders. This is not a misprint. Defaulted first mortgage home loans may become a net liability, not an asset, to some of the AAAs. This is still not widely understood.

## Similarly, "first mortgage syndicated bank loans" issued since about 2004 are routinely garbage and not traditional first mortgages on anything determinable at all. Many, if not most, of these loans permit the borrowers to sell the collateral, keep the money, and reinvest in almost anything they want to, including stock, junk bonds, defaulted loans, or perhaps ice cream cones. Many, if not most, of these syndicated bank loans also permit UNLIMITED amounts of additional "swap" debt that is either senior to or of equal priority with the syndicated loan. These provisions are also not widely understood and are sometimes even disguised in the loan documents.

## Falling prices for these type assets reflect people finally reading the hundreds of pages of fine print, not a problem with the marketplace. Prices should continue to fall as people wake up to the true nature of these assets. Many "last out" AAA RMBS are still overvalued at 60% of par. Many first mortgage syndicated bank loans are overvalued at 70% of par. Smart buyers won't touch any of this garbage at any price remotely close to what it originally sold for.

## The Fed may be walking on very slippery ground. My fear is that the Fed has little more understanding of the stench of the garbage than many of the current owners who bought all these debt instruments issued since about 2004.

Is the U.S. government taking some of this garbage on its balance sheet as collateral for U.S. Federal Reserve loans? The AAA rating means absolutely nothing. Garbage is garbage, even in a fancy wrapper that the rating agencies love.

I do not pretend to know how the Fed is collateralizing its loans. Perhaps I am naïve in underestimating the insightfulness of the Fed, but many intelligent people were caught up in complacent decisions involving these assets. I know nothing more than what I read in the media about the collateral for these Fed loans, but it sure sounds troubling.

Sincerely,

Gledawve Ragalad
Andy Beal
6000 Legacy Drive
Dallas, Texas 75024

Case 3:15-cv-01422-HZ    Document 1-3    Filed 07/29/15    Page 1 of 11

## Exhibit 7

After Recording Return To:

**PEELE MANAGEMENT CORPORATION**
ASSIGNMENT JOB #90822
P.O BOX 30014
RENO, NV. 89520-3014
(775) 827-9600

WM Loan No.

THIS DOCUMENT WAS PREPARED BY:

WASHINGTON MUTUAL BANK, FA
P.O. BOX 44090
JACKSONVILLE, FL 32231-9930
ATTN: CUSTODIAL LIAISON BB-CL3

Clackamas County Official Records    2003-041141
Sherry Hall, County Clerk

$31.00

00487043200300411411000200028    04/03/2003 01:21:47 PM

M 10A      Cnt=1 Stn=1 ELIZABETH
$10.00 $11.00 $10.00

### ASSIGNMENT OF MORTGAGE/DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned,
**WASHINGTON MUTUAL BANK, FA**

whose address is 7301 Baymeadows Way, Jacksonville, Florida 32256-6933.
By these presents does convey, grant, bargain, sell, assign, transfer and set over to:

**(GRANTOR)**
36-005  4610

Deutsche Bank Trust Company Americas as Trustee
3 Park Plaza, Sixteenth Floor, Irvine, CA 92614-8539    **(GRANTEE)**
the described Mortgage/Deed of Trust, together with the certain note(s) described therein with all interest, all liens and any rights
due or to become due thereon.

Said Mortgage/Deed of Trust is recorded in the County of    Clackamas State of    Oregon

Official Records on:
Original Mortgagor:    **ROBYNNE  A FAULEY**

Original Loan Amount:    **$330,000.00**

Property Address:    **12125  SOUTHEAST LAUGHING  WATER ROAD, SANDY, OR 97055**

Legal Municipality:    SEE ATTACHED LEGAL DESCRIPTION
Document #: 2003-057800    BOOK:    PAGE:
Recorded 6-20-02
Date:    July 29, 2002    WASHINGTON MUTUAL BANK, FA

---

O. Simmons    Witness    M. Free    Assistant Vice President

D. Santana    Witness    Lori A. Brown    Assistant Secretary

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this    29TH  day of  July , 2002
by M. Free and Lori A. Brown, Assistant Vice President and Assistant Secretary of Washington Mutual Bank, FA,
A Federal Savings Bank, on behalf of the corporation. He/She is personally known to me and did take an oath.

Regina W. Anderson
MY COMMISSION #DD048265 EXPIRES
October 12, 2005
Bonded Thru Troy Fain Insurance, Inc.

Regina W. Anderson    Notary Public
State of Florida At Large
My Commission Expires:    October 12, 2005

Exhibit C
Page 1 of 11



Exhibit C
Page 2 of 11



Exhibit "A"

Parcel 1, Partition Plat nO. 1999-041, in the County of
Clackamas and State of Oregon



Exhibit C
Page 3 of 11

7889719

**Clackamas County Official Records**
**Sherry Hall, County Clerk**                    **2007-038181**

$26.00

01098354200700381810010012    05/03/2007 10:09:23 AM

M-TDA          Cnt=1 Stn=10 LESLIE
$5.00 $11.00 $10.00

Recording requested by:

When recorded mail to:

Litton Loan Servicing LP
4828 Loop Central Drive
Houston, TX 77081

FATCO. NO. 104082-TO

TS # OR-07-79188-JB              Order # 3290940              Loan #

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to WASHINGTON MUTUAL BANK, FA all beneficial interest under that certain Deed of Trust dated 6/12/2002 executed by ROBYNNE A FAULEY, as Trustor(s) to STEWART TITLE GUARANTY COMPANY, as Trustee and recorded as Instrument No. 2002-057800, on 6/20/2002, in Book xxx, Page xxx of Official Records, in the office of the County Recorder of CLACKAMAS County, OR together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated:    APR 1 1 2007                    Residential Funding Company, LLC

By_____
                                         Denise Bailey
                                         Assistant Secretary

State of _Texas_              )
                              ) ss
County of _Harris_            )

                                         Brenda F. McKinzy

On  APR 1 1 2007  before me, _____ the undersigned Notary Public, personally appeared _____Denise Bailey_____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that +he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _Brenda F. McKinzy_  (Seal)

BRENDA F. MCKINZY
Notary Public, State of Texas
My Commission Expires
December 05, 2010

Exhibit C
Page 4 of 11

Clackamas County Official Rec
Sherry Hall, County Clerk

2008-074676

$41.00

012595372008000746760030037

10/31/2008 02:17:25 PM

M-TDA    Cnt=1 Stn=10 ELIZABETH
$15.00 $16.00 $10.00

BC 619 513
This Document Prepared By and
After Recording Please Return To:
MGC Mortgage, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST
(This Assignment is being recorded to corrected chain of assignments.)

**Grantor:**    Deutsche Bank Trust Company Americas (formerly known as Bankers Trust
Company) as Trustee
1761 East St. Andrew Place, Santa Ana, Ca 92705

**Grantee:**    Residential Funding Company, LLC
One Meridian Crossings, Suite 100, Minneapolis, MN 55423

**Property Address:**    12125 Southeast Laughing Water Road, Sandy, OR 97055

**Legal Description:** Parcel 1, Partition Plat No. 1999-041, in the County of Clackamas and
State of Oregon.

BC:619513                                        I

Exhibit C
Page 5 of 11

## ASSIGNMENT OF DEED OF TRUST

THIS ASSIGNMENT OF DEED OF TRUST (this "Assignment") is made by DEUTSCHE BANK TRUST COMPANY AMERICAS (formerly known as Bankers Trust Company) as Trustee, whose address is 1761 East St. Andrew Place, Santa Ana, CA 92705, ("Assignor"), to and in favor of RESIDENTIAL FUNDING COMPANY LLC., whose address is One Meridian Crossings, Suite 100, Minneapolis, Minnesota 55423 ("Assignee").

THIS ASSIGNMENT WITNESSES THAT, in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Assignee, Assignor hereby assigns, transfers, sets over and conveys to Assignee and its successors and assigns, without recourse and without representation or warranty, whether express, implied or created by operation of law, except as expressly set forth in the Purchase Agreement, the following:

1.  that certain Deed of Trust from Robynne A. Fauley, dated June 12, 2002, and recorded June 20, 2002, as Instrument No 2002-057800, in the Clerk's Office of the County of Clackamas, State of Oregon, (the "Deed of Trust"), which Deed of Trust secures that certain Promissory Note dated June 12, 2002, in the original principal amount of $330,000.00, executed by Robynne A. Fauley and payable to the order of Washington Mutual Bank, FA., as modified or amended (the "Note");

2.  Assigned to Deutsche Bank Trust Company Americas as Trustee by Assignment dated July 29, 2002, recorded on April 3, 2003, as Instrument No. 2003-041141, in the Clerk's Office of the County of Clackamas, State of Oregon.

3.  Assigned to Washington Mutual by Assignment dated April 11, 2007, recorded on May 3, 2007, as Instrument No. 2007-038181, in the Clerk's Office of the County of Clackamas, State of Oregon.

4.  as such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Deed of Trust and/or the Note and/or the loan evidenced by the Note, including without limitation the title insurance policies and hazard insurance policies relating thereto that are in effect.

BC:619513                                    2

Exhibit C
Page 6 of 11

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its Authorized Representative as of the 27ᵗʰ day of October, 2008.

Deutsche Bank Trust Company Americas (formerly known as Bankers Trust Company) as Trustee, Residential Funding Company, LLC formerly known as Residential Funding Corporation Attorney-in-Fact

WITNESS: Pamela L. Spencer

By:
Name: Michael Mead
Title: Limited Signing Officer

WITNESS: B. Zahn

POA recorded on 2/7/2003, as Instr. No. 2003-016512.

### ACKNOWLEDGMENT

STATE OF MINNESOTA    §
                      §
COUNTY OF HENNEPIN    §

Before me, the undersigned, a Notary Public, on this day personally appeared Michael Mead, who is personally well known to me (or sufficiently proven) to be the Limited Signing Officer of Residential Funding Company, LLC formerly known as Residential Funding Corporation and the person who executed the foregoing instrument by virtue of the authority vested in him/her, and he/she acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and in the capacities therein stated.

Given under my hand and seal this 27ᵗʰ day of October, 2008.

Notary Public, State of Minnesota
My commission expires: 01-31-2008

A F F I X  NOTARY SEAL

BC:619513    3

Exhibit C
Page 7 of 11

Clackamas County Official Records    2008-074677
Sherry Hall, County Clerk

$36.00

01259539200800746770020027    10/31/2008 02:17:25 PM

M-TDA        Cnt=1  Stn=10 ELIZABETH
$10.00 $16.00 $10.00

This Document Prepared By and
*After Recording Please Return To:*
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

## ASSIGNMENT OF DEED OF TRUST

Grantor:    **RESIDENTIAL FUNDING COMPANY, LLC**
            **One Meridian Crossings, Suite 100, Minneapolis, Minnesota 55423**

Grantee:    **LNV CORPORATION**
            **7195 Dallas Parkway, Plano, Texas 75024**

Property Address:    12125 Southeast Laughing Water Road, Sandy, OR 97055

Legal Description: Parcel 1, Partition Plat No. 1999-041, in the County of Clackamas and State of Oregon.

BC 619513



CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number: 7889719
Seller Loan Number: 4967689

FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'

the undersigned hereby grants, assigns and transfers to

all beneficial interest under that certain Deed of Trust dated 6/12/2002

executed by ROBYNNE A FAULEY

TO/FOR:

and recorded in Book _n/a_ on Page _n/a_ as Instrument No. 2002-057800 on 6/20/2002
of official Records in the County Recorder's Office of _Clackamas_ County, Oregon.

Property Address:    12125 SE SOUTHEAST LAUGHING WA  SANDY, OR  97055
MORTGAGE AMOUNT:  $330,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY:

STATE OF            Minnesota )    NAME: Jeanne J. Smith
COUNTY OF          Hennepin )    TITLE: Assistant Vice President

On 3/10/2008  before me, the undersigned, a Notary Public in and for said State personally appeared Jeanne J.
Smith, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

Notary Public in and for said State

(Area to right reserved for Recording)

WHEN RECORDED MAIL TO:

Prepared By and when recorded
Please return to: MGC Mortgage Inc.
Document Control Dept.
7195 Dallas Parkway
Plano, TX 75024
BCL4513



Clackamas County Official Records
Sherry Hall, County Clerk
2008-074677

$36.00

012595382      07467700      27      10/31/08 02:17:25 PM

M-TDA      Cnt=1 Stn=10 ELIZABETH
$10.00 $16.00 $10.00

Clackamas County Official Records
Sherry Hall, County Clerk
2012-023399

$52.00

01574442012002339002 0029      04/17/2012 12:01:27 PM

M-TDA      Cnt=1 Stn=5 CONNIEBRO
$10.00 $16.00 $16.00 $10.00

This Document Prepared By and
After Recording Please Return To:
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

## ASSIGNMENT OF DEED OF TRUST

**Grantor:**    **RESIDENTIAL FUNDING COMPANY, LLC**
One Meridian Crossings, Suite 100, Minneapolis, Minnesota 55423

**Grantee:**    **LNV CORPORATION**
7195 Dallas Parkway, Plano, Texas 75024

**Property Address:**    12125 Southeast Laughing Water Road, Sandy, OR 97055

**Legal Description: Parcel 1, Partition Plat No. 1999-041, in the County of Clackamas and State of Oregon.**

Re-recorded at the request of LNV Corporation
to add Grantee name & address on Original
Assignment.
Previously Recorded: 10/31/08, as Inst. No. 2008-074677

BC 619513

Exhibit 4
Page 1 of 2



CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number: 
Seller Loan Number: ▇▇▇



FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'

the undersigned hereby grants, assigns and transfers to

*LNV Corporation*
*7195 Dallas Pkwy*
*Plano, Tx 75024*

all beneficial interest under that certain Deed of Trust dated 6/12/2002
executed by ROBYNNE A FAULEY

TO/FOR:

and recorded in Book _n/a_ on Page _n/a_ as Instrument No. _2002-057800_ on _6/20/2002_
of official Records in the County Recorder's Office of _Clackamas_ County, Oregon.

Property Address:   12125 SE SOUTHEAST LAUGHING WA  SANDY, OR  97055
MORTGAGE AMOUNT:  $330,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY: _____

STATE OF                    Minnesota )     NAME: Jeanne J. Smith
COUNTY OF                   Hennepin )      TITLE: Assistant Vice President

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Jeanne J.
Smith, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument.  WITNESS my hand and official seal.

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

_____
Notary Public in and for said State

(Area to right reserved for Recording)

WHEN RECORDED MAIL TO:

Prepared By and when recorded
Please return to:MGC Mortgage Inc.
Document Control Dept.
7195 Dallas Parkway
Plano, TX 75024
RC 614513

Exhibit 4
Page 2 of 2

Exhibit 8

LOAN #: 4967689

# NOTE

JUNE 12, 2002                          PORTLAND,                          OREGON
[Date]                                  [City]                            [State]

18128 SOUTHEAST LAUGHING WATER ROAD, SANDY, OR 97055
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $_____,000.00   (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is _____, BANK, FA.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of   7.125%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

**3.   PAYMENTS**
   **(A) Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the   1st   day of each month beginning on   AUGUST 1, 2002.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that
I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on   JULY 1, 2032,   I still owe amounts under this Note, I will pay those amounts in full on that
date, which is called the "Maturity Date."
   I will make my monthly payments at
P.O. BOX 7158
PASADENA, CA 91109-7158

or at a different place if required by the Note Holder.
   **(B) Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $   2,223.27.

**4.   BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan
charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be
reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which
exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe
under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A) Late Charge for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days
after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000%   of my overdue
payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
   **(B) Default**
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   **(C) Notice of Default**
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain
date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest
that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other
means.
   **(D) No Waiver By Note Holder**
   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the
Note Holder will still have the right to do so if I am in default at a later time.
   **(E) Payment of Note Holder's Costs and Expenses**
   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid
back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include,
for example, reasonable attorneys' fees.

Initials: _____

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01
© 1999-2001 Online Documents, Inc.                         Page 1 of 2                         F3200NOT 0105

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)

PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION
WITHOUT RECOURSE
WASHINGTON MUTUAL BANK, FA

BRENDA F. HERRILD
VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
Residential Funding Corporation

BY _____
JUDY Faber, Vice President

[Sign Original Only]

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
© 1999-2001 Online Documents, Inc.                   Page 2 of 2                                    F3200NOT



BC: 619513

## NOTE ALLONGE

This Allonge is to be attached to and made a part of that certain Promissory Note made by Robynne A. Fauley, in the original principal amount of $330,000.00, dated June 12, 2002, and payable to Washington Mutual Bank, FA., as amended or modified (the "Note").

Pay to the order of Residential Funding Company, LLC, ("Assignee"), without recourse and without representation or warranty whether express, implied or created by operation of law.

DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee Company FKA Bankers Trust Company of California, N.A. as Trustee Residential Funding Company, LLC formerly known as Residential Funding Corporation Attorney-in-Fact

By: _____

Michael Mead, Limited Signing Officer



**Michael Barnett**

| | |
|---|---|
| **From:** | Michael Barnett |
| **Sent:** | Monday, October 27, 2008 1:32 PM |
| **To:** | 'Meistad, Diane' |
| **Subject:** | RE: Default Assignment Reqeust loan (Fauley, Robynne) |

┌─────────────────────┐
│    **Exhibit 9**    │
└─────────────────────┘

**Importance:**    High

Okay Diane, I had my manager look at this file with me and we have determined that we need to following assignments to correct the chain of assignments:

**1) Corrective Assignment from WAMU TO Deutsche Bank (to correct the assignment from RFC to WAMU, which was recorded in error) & Note Allonge
2) Assignment from Deutsche Bank to RFC & Note Allonge
3) Assignment from RFC to LNV Corp (Note allonge in file already)**

The assignment from RFC to WAMU was recorded in error so it is not needed.  We also have 2 endorsements on the original Note **WAMU to RFC and from RFC to Deutsche Bank** which should be cancelled, to correct the Endorsement chain on the Note.  We will just need the okay from you via email to cancel these endorsements.  Will this work for you?
Thanks Michael.


Oct 27, 2008 01:04:45 PM

Expires: Nov 10, 2008 01:04:44 PM

From: diane.meistad@gmacrfc.com

To: mbarnett@mgcmortgage.com

Cc:

Subject: RE: Default Assignment Reqeust loan (Fauley, Robynne)

I disagree since RFC was not in position (title position) to transfer the asset.

I will need to refer your request for this assignment to our Records Services team in Iowa to begin the process.

Diane

--- Original Message ---
Diane, since the assignment from RFC to WAMU is of record we have to correct the chain of title. At this point the county recorder's office shows that WAMU is the assignee of record for this loan (which is wrong), right? RFC did assign this loan and shouldn't have but, in order to fix this one the correct chain should be from Deutsche to RFC, then from RFC to WAMU, then from WAMU to LNV Corp, which will correct the chain of title. Litton Loan Servicing LP prepared and recorded the assignment from RFC to WAMU, which should have not been recorded. We still need to get this loan from RFC to LNV to property convey this property, since we purchased it from RFC. Please call me if you still concerns about the chain of assignments. Borrower loan #7889719/17103058-Robynne Fauley. Thanks Michael.

**LNV 00144**

Received: Oct 27, 2008 08:38:36 AM
Expires: Nov 10, 2008 08:38:36 AM
From: diane.meistad@gmacrfc.com
To: mbarnett@mgcmortgage.com
Cc:
Subject: RE: Default Assignment Reqeust loan #7889719/17103058(Fauley, Robynne)
Michael,
If the assignment was recorded from WAMU to DB and another assignment f/ RFC to WAMU - Technically the second assignment in 'invalid' because RFC was not in title to record the second assignment and it should not effect title.

Because of the assignment was invalid technically it didn't transfer ownership.


--- Original Message ---
Diane, this loan was last assigned to Washington Mutual from RFC but, prior to this assignment was assigned from Washington Mutual to Deutsche Bank and recorded in Clackamas County, Oregon. We need an assignment from Deutsche Bank to RFC and from Washington Mutual to LNV Corp. I have templates for both assignments. We will be re-recording the assignment from RFC to Washington Mutual to correct the chain of title with both of these assignments. Also, please find the Note Allonge from Deutsche Bank to RFC as well. Please forward these signed assignments back to me via our federal express account #252870180. Thanks Michael.

<<OR_Non-MERS Deutsche to RFC-619513.doc>> <<OR_Non-MERS Wamu to LNV-619513.doc>> <<Allonge Deutsche Bank to RFC_BC-619513.doc>>



Michael Barnett
MGC Mortgage Inc.
(469) 229-8634 Direct
(469) 229-8604 Fax
mbarnett@mgcmortgage.com <mailto:cgolden@mgcmortgage.com>

LNV 00145

**Michael Barnett**

| | |
|---|---|
| **From:** | Michael Barnett |
| **Sent:** | Friday, October 24, 2008 5:30 PM |
| **To:** | 'Meistad, Diane' |
| **Subject:** | Default Assignment Reqeust loan #7889719/17103058(Fauley, Robynne) |

**Importance:** High

Diane, this loan was last assigned to Washington Mutual from RFC but, prior to this assignment was assigned from Washington Mutual to Deutsche Bank and recorded in Clackamas County, Oregon. We need an assignment from Deutsche Bank to RFC and from Washington Mutual to LNV Corp. I have templates for both assignments. We will be re-recording the assignment from RFC to Washington Mutual to correct the chain of title with both of these assignments. Also, please find the Note Allonge from Deutsche Bank to RFC as well. Please forward these signed assignments back to me via our federal express account #252870180. Thanks Michael.

      

OR_Non-MERS      OR_Non-MERS      Allonge Deutsche
)eutsche to RFC-61.amu   to LNV-619513   Bank to RFC_B...

Michael Barnett
MGC Mortgage Inc.
(469) 229-8634 Direct
(469) 229-8604 Fax
mbarnett@mgcmortgage.com

LNV 00146

# FedEx Office℠ ✳

75 Broad Street
New York, NY 10004-2415
Tel: (212) 514-9460

Order Date: 01/12/2018        Branch: 4482
Order Time: 10:58:00          Register: 5
Pickup Date: 01/12/2018
Pickup Time: 12:00
Team Member: Gladys S.

4482007CJ1

Customer: Denise  Subramaniam
Account: MARY KAY

Project Name:
  Notice                               2.42
              1 @ 13.65
   BW 1S Copy/Print          86 @ 0.15
   CLR 1S Copy/Print          1 @ 0.75

Deposit                                0.00

Sub-Total                             13.65
Discount                              11.23

Tax                                    0.21

Total Amount                           2.63



4482007CJ1

**This is not a receipt**
All prices shown are estimates

Thank you for visiting

FedEx Office
Make It. Print It. Pack It. Ship It.
fedex.com/office

| Customer: **Subramaniam,Denise** | **Order Summary** | FedEx Office  |
|---|---|---|
| Account: **MARY KAY** | 4482-007CJ-1 | **Center 4482**<br>**New York NY Broad St** |
| Phone: **(972) 658-3915** | | |

| Proof Due Date: | **Order Due Date: 1/12/2018** |
|---|---|
| Proof Due Time: | **Order Due Time: 12:00** |

☑ "I have reviewed any proofs, either physical or digital, or waived reviewing a proof, for all projects in this order. By signing and dating here, I approve this order to be produced by FedEx Office."

*Customer Signature* _mai_    Date _1/12/18_

| Project Name | **2** | Project Management | **3** | Production Ready | **4** | Auxiliary | Proof Method |
|---|---|---|---|---|---|---|---|
| Notice | | | | Color Pages  BW Pages | | | **Proof Waived** |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Order Notes:**

| **6** | Delivery Options | |
|---|---|---|

| Total Projects: **1** | Order Taker: **Gladys Suarez** | Modified by: |
|---|---|---|
| Page: **1 of 2** | Order Date: **01/12/2018** | Modified Date: |
| Order Shared: **NO** | Order Time: **10:58** | Modified Time: |

| Customer: **Subramaniam,Denise** | **Project Details** | **FedEx Office®** |
| Account: **MARY KAY** | 4482-007CJ-1 | Center 4482 |
| Phone: **(972) 658-3915** | | New York NY Broad St |

| Proof Due Date: | **Order Due Date: 1/12/2018** |
| Proof Due Time: | **Order Due Time: 12:00** |

# PROOF WAIVED

| Project: **Notice** | Quantity: **1** |



BW Pages

Color Type:**Black and White**
Number of Originals:**86**
Size:**8.5x11**
Sides:**1:1**

Paper Type :**Standard**
Scaling Option :**Not Applicable**
Paper Code :**W Standard White**
Original Count :**Actual**

Orientation:**Portrait**
Source:**No Sources Added**
Service Type:**Full Service.**

Completed By: _____

## EXCEPTIONS & INSERTS

### Section 1 of 1 (Exception: Page 38)

Color Pages

Color Type:**Color**
Scaling Option:**Not Applicable**
Number of Originals:**1**
Sides:**1:1**

Paper Type :**Standard**
Source :**No Sources Added**
Paper Code :**LZ 24lb Laser**
Original Count :**Actual**

Orientation:**Portrait**
Size:**8.5x11**
Service Type:**Full Service.**

Completed By: _____

| Total Projects: **1** | Order Taker: **Gladys Suarez** | Modified by: |
| Page:  **2 of 2** | Order Date: **01/12/2018** | Modified Date: |
| Project Shared: **NO** | Order Time: **10:58** | Modified Time: |

**usa4482@fedex.com**

| | |
|---|---|
| **From:** | Dee Syfert <deesyfert@gmail.com> |
| **Sent:** | Friday, January 12, 2018 10:21 AM |
| **To:** | usa4482@fedex.com |
| **Subject:** | Attention: Gladys Print Order from Denise |
| **Attachments:** | Notice-Fraud-FraudUpon-Court-FINAL-signed-sm.pdf |

Hi Gladys,

The attached file is 87 pages - it needs to be printed in black and white single sided except for page 38 with the signa
same paper as rest of document).

The document will be picked up by a courier service to be delivered.

Please use this Mary Kay discount for Anne Breitling # 972-658-3915

I'll be paying for the order:
Denise Subramaniam
971-275-7618
Call as soon as you know how much it will cost.
Thank you in advance