MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum

*Counsel for The ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---------------------------------------------------------------------

**THE RESCAP LIQUIDATING TRUST'S OBJECTION TO THE NOTICE OF
CONFLICTS OF INTEREST, FRAUD AND FRAUD UPON THE COURT
BY DEBTORS IN CONSPIRACY WITH CREDITOR LNV CORPORATION, RESCAP
LIQUIDATING TRUST AND SPECIAL INSURANCE COVERAGE
<u>COUNSEL FOR THE DEBTORS PERKINS COIE LLP</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

I.      GENERAL BACKGROUND .......................................................................... 3

II.     INJUNCTIVE PROVISIONS OF PLAN AND CONFIRMATION ORDER ................. 4

III.    THE DEBTORS' RETENTION OF PERKINS COIE LLP ............................... 6

IV.     THE MOVANTS LITIGATION ...................................................................... 8

V.      THE MOVANTS' ALLEGATIONS CONCERNING LNV CORPORATION
        AND CSG INVESTMENTS, INC ................................................................. 10

ARGUMENT ....................................................................................................... 11

I.      THE MOTION IS AN EFFORT TO RELITIGATE MOVANTS' CLAIMS ............... 11

II.     THE MOVANTS ARE PRECLUDED BY THE BAR DATE ORDER AND
        PLAN INJUNCTION PROVISIONS FROM ASSERTING THEIR CLAIMS
        AGAINST THE TRUST ............................................................................. 13

III.    MOVANTS ARE NOT ENTITLED TO CLASS TREATMENT ............................. 13

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Burgos v. Hopkins,
  14 F.3d 787 (2d Cir. 1994)...................................................................................................12

D.C. Court of Appeals v. Feldman,
  460 U.S. 462 (1983)...................................................................................................11, 12

Done v. Wells Fargo Bank, N.A.,
  No. 08-CV-3040 (JFB)(ETB), 2009 U.S. Dist. LEXIS 84114 (E.D.N.Y. Aug.
  7, 2009) .....................................................................................................................12

Niles v. Wilshire Inv. Grp., LLC,
  859 F. Supp. 2d 308 (E.D.N.Y. 2011) .........................................................................12

Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.),
  335 B.R. 66 (S.D.N.Y 2005)........................................................................................12

Rooker v. Fid. Trust Co.,
  263 U.S. 413 (1923).....................................................................................................11

ny-1316303

The ResCap Liquidating Trust (the "Trust"), established pursuant to the terms of the Chapter 11 Plan confirmed in the above-captioned bankruptcy cases (the "Chapter 11 Cases"), as successor in interest to the above-captioned debtors (collectively, the "Debtors"), hereby submits this objection (the "Objection") to the *Notice of Conflicts Of Interest, Fraud and Fraud Upon The Court by Debtors in Conspiracy With Creditor LNV Corporation, ResCap Liquidating Trust and Special Insurance Coverage Counsel for the Debtors Perkins Coie LLP* [Docket No. 10469] (the "Motion") filed by Denise Subramaniam, Robynne A. Fauley, Tuli Molina-Wohl and Catherine Gebhardt (collectively the "Movants" and each a "Movant") and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    Despite the submission of a 38 page pleading and an additional 53 pages of exhibits, it remains unclear what, if any, relief Movants seek from this Court.  Movants conclude the Motion with a request to "appoint a special class counsel" -- a request which is not addressed in the body of the Motion in any substantive manner.  But distilled to its essence, the Motion is simply an effort to re-litigate before this Court various claims, causes of action and/or defenses that are the subject of litigation related to the foreclosure of Movants' residential mortgages pending before several federal and state courts. The artifice for this effort is Movants' wholly spurious allegation that the Trust's counsel Perkins Coie LLP ("PC") somehow suffers from an undisclosed and disabling conflict of interest arising from its representation of an alleged creditor of the Debtors, LNV Corporation ("LNV") in matters unrelated to the Chapter 11 Cases or the administration of the Trust.  The alleged conflict, according to Movants, is evidence of a conspiracy to defraud the Movants in connection with their residential mortgage loans.  While

Movants' allegations are baseless and PC suffers from no such conflicts[1], to the extent Movants desire to raise issues regarding the propriety of LNV's counsel, the proper forum in which to raise these claims are the courts before which their litigations are or were pending, not this Court.

2.       Based on the Trust's independent review of the Movants' Litigation (as such term is defined below), these cases have either been adjudicated in a matter adverse to the Movants, including by final non-appealable orders, or remain pending.  Regardless, each Movant has had or is having their day in court.  None of the Debtors appear to have been named as defendants or counter-defendants in the Movants' Litigation.  None of the Movants filed proofs of claims in the Chapter 11 cases, and they were not included on the voluminous lists compiled by the Debtors of the litigation pending as of the Petition Date (as such term is defined below) nor on the lists of residential mortgage loans being serviced by the Debtors as of the Petition Date.   In short, Movants are not parties in interest in these Chapter 11 Cases.

3.       Movants' purported effort to raise their claims against the Debtors, the Trust and PC are barred by the injunctive provisions of the Plan and Confirmation Order and the terms of Bar Date Order (as such terms are defined below).  Although the issue is not presently before the Court, the Trust respectfully submits that this Court would not have jurisdiction over Movants' alleged claims and causes of action.

4.       The Motion and whatever relief Movants purport to request cannot stand.

---

[1]       There is no evidence that PC's representation of the Trust is adverse to LNV, or that its representation of LNV is adverse to the Trust, or that PC has any material limitation in its representation of either client, such that any conflict of interest would arise under Rule of Professional Conduct 1.7.

2

## I.    GENERAL BACKGROUND

5.    On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.    On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official Claims Register for the Debtors (the "Claims Register").

7.    On August 29, 2012, this Court entered the Bar Date Order [Docket No. 1309], which established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribed the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m.  (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date" and, together with the General Bar Date, as applicable, the "Bar Date").  (Bar Date Order ¶¶ 2, 3).  On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].  The Governmental Bar Date was not extended.

8.    On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, *et al.* and the Official Committee of Unsecured Creditors (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases [Docket No. 6065].

3

On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

9.      The Plan provides for the creation and implementation of the Liquidating Trust, which, among other things, is "authorized to make distributions and other payments in accordance with the Plan and the Liquidating Trust Agreement" and is responsible for the wind down of the affairs of the Debtors' estates.  See Plan, Art. VI.A-D; see also Confirmation Order ¶ 22.  Pursuant to the Confirmation Order and the Plan, the Liquidating Trust was vested with broad authority over the post-confirmation liquidation and distribution of the Debtors' assets. See generally, Confirmation Order ¶¶ 26, 30, 48; Plan, Art. VI.

## II.    INJUNCTIVE PROVISIONS OF PLAN AND CONFIRMATION ORDER

10.     The Plan and Confirmation Order contain comprehensive release provisions (collectively, the "Plan Injunction Provisions").  Pursuant to the Plan Injunction Provisions, persons whose claims were released under the Plan are prohibited from "commencing or continuing in any manner or action or other proceeding of any kind against any Released Party[2] whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims."[3] Plan Art. IX.I; see also Confirmation Order ¶ 40.

11.     Paragraph 11 of the Bar Date Order provides that any party that did not file a proof of claim "shall be forever barred, estopped and enjoined from asserting such claim

---

[2]      Under the Plan, the term "Released Party" is defined as "the Liquidating Trust, and each Ally Released Party, Debtor Released Party, and Exculpated Party, or the property or Estate of any Entity so released, discharged or exculpated." Plan Art. I.A.243.  The term "Exculpated Party" includes the Debtors and the Debtors' "Representatives."  Plan Art. I.A.102. The term "Representatives" expressly includes such entity's or persons attorneys, among other parties. Plan Art. I.A.245.

[3]      Under the Plan, the term "Released Claims" is defined as "Claims, Equity Interests, Causes of Action or liabilities that: (i) have been discharged, terminated, or satisfied pursuant to the terms of the Plan; (ii) have been released pursuant to the Plan; or (iii) are subject to exculpation pursuant to the Plan." Plan Art. I.A.242.

4

against the Debtors (or filing a proof of claim with respect thereto), and the Debtors, their

Chapter 11 estates, their successors and their respective property shall be forever discharged

from any and all indebtedness or liability with respect to such claim."[4]

12.     Further, Article VIII.B of the Plan provides that the claim of any creditor

of the Debtors that failed to file a proof of claim by the applicable deadline "SHALL BE

DEEMED DISALLOWED, DISCHARGED, RELEASED, AND EXPUNGED AS OF THE

EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR

APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY

NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS

SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF

THE BANKRUPTCY COURT." (emphasis in original).

13.     In addition, as this Court is aware, a central aspect of the Plan is a broad

third party release (the "Third Party Release"), which provides as follows:

> On and as of the Effective Date of the Plan, except as provided by
> Article IX.E, the holders of Claims and Equity Interests shall be
> deemed to provide a full and complete discharge and release to the
> Ally Released Parties and their respective property from any and
> all Causes of Action whatsoever, whether known or unknown,
> asserted or unasserted, derivative or direct, foreseen or unforeseen,
> existing or hereinafter arising, in law, equity, or otherwise, whether
> for tort, fraud, contract, violations of federal or state securities
> laws, veil piercing or alter-ego theories of liability, contribution,
> indemnification, joint liability, or otherwise, arising from or related
> in any way to the Debtors, including those in any way related to
> RMBS issued and/or sold by the Debtors or their affiliates and/or
> the Chapter 11 Cases or the Plan, the Consent Order, and the Order
> of Assessment.

---

[4]     Pursuant to the Plan, the deadline to file Administrative Claims was January 16, 2014. See *Notice of the Deadline and Procedures for Filing Certain Administrative Claims* [Docket No. 6138].

ny-1316303

Plan Art. IX.D; Confirmation Order ¶ 40. The "Ally Released Parties" – i.e. the beneficiaries of the Third Party Release – are defined to include the Debtors' "Representatives." Plan Art. I.A.21. The term "Representatives," in turn, is defined to include an "entity's former and current . . . attorneys . . . , each solely in its capacity as such." Plan Art. I.A.245. Thus, the Third Party Release provides the Debtors' current and former attorneys with a release of all claims (solely in their capacity as such).

14.    Pursuant to Article XII of the Plan, this Court retained "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan . . . , including jurisdiction . . . to hear and determine any matter, case, controversy, suit, dispute, or Causes of Action: (i) regarding the existence, nature, and scope of the releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions" and "to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code." See also Confirmation Order ¶ NN ("The Plan Releases are, individually and collectively, integral to, and necessary for the successful implementation of, the Plan, essential to the Debtors' orderly liquidation and supported by reasonable consideration.").

## III.    THE DEBTORS' RETENTION OF PERKINS COIE LLP

15.    During the pendency of the Chapter 11 Cases, PC was retained by the Debtors first as an ordinary course professional pursuant to the Court's order authorizing the retention of ordinary course counsel [Docket No. 799].  In connection with PC's retention as an ordinary course professional, PC filed an Affidavit of Disinterestedness on September 10, 2012 [Docket No. 1387]. Specifically, PC was retained to continue to defend the Debtors in

connection with consumer protection matters related to residential mortgages and the pursuit of title insurance coverage. See id.

16.    Thereafter, PC was retained as Special Insurance Coverage Counsel in accordance with section 327(e) of the Bankruptcy Code, pursuant an order of the Court dated May 31, 2013 [Docket No. 3853].  PC filed a comprehensive declaration is support of the Debtors' application to retain PC as Special Insurance Coverage Counsel (the "PC Declaration") [Docket No. 3759 at Ex. 2].  In the PC Affidavit, PC represents that in accordance with dictates of section 327(e) of the Bankruptcy Code, in order to determine and confirm that it does not represent or hold an interest adverse to the Debtors or their estates, PC performed a comprehensive review of its connections with multiple categories of the Debtors' creditor constituents, vendors and contract-counter parties, among others.  LNV is identified in the Master Conflict List (Schedule 1 to the PC Declaration) among the "Other Parties to Servicing Agreements" but not as a creditor of the Debtors.  In Schedule 2 to the PC Declaration, PC identifies LNV as a current or former PC client. See PC Declaration at Schedule 2.  Thus, Movants' allegation of any conflict on the part of PC, or that PC conspired to conceal its connections to the Debtors, is simply belied by the facts and PC's adherence to the rigid and expansive requirements that all special counsel were required to meet in the Chapter 11 Cases and under section 327(e) of the Bankruptcy Code.

17.    Following the effective date of the Plan, PC was retained by the Trust to continue to provide services to the Trust. See Declaration of Kathy Nye (the "Nye Decl."), attached hereto as Exhibit A, at ¶ 7.  The Trust is granted broad authority regarding the retention of professionals under the Plan and the ResCap Liquidating Trust Liquidating Trust Agreement [Docket No. 6064, Ex. 1 at Section 2.4] and this Court's approval of such engagements is not

7

required. PC currently serves as counsel to the Trust in a pending adversary proceeding.  <u>See</u> <u>Drennen v. Certain Underwriters at Lloyd's of London</u> (Bankr. S.D.N.Y. Adv. Proc. No. 15-01025 (SHL)).  The adversary proceeding, which is an insurance coverage action against a number of E&O insurers, has no relationship to Movants or LNV and is the sole matter in which PC is currently representing the Trust.

## IV.    THE MOVANTS LITIGATION

18.    The Trust in consultation with KCC has reviewed the voluminous categories of lists it utilized for purposes of effecting notice to creditors and other parties in interest in the Chapter 11 Cases, including the Notice of Commencement of the Chapter 11 Cases and the Bar Date.  As of the Petition Date, Movants were not parties to pending litigation with the Debtors, were not listed in the Schedules of Asset Liabilities and Movants' mortgage loans were not being serviced by the Debtors.  In addition, none of the Movants filed proofs of claims in the Chapter 11 Cases.

19.    On page 4 of the Motion, Movants list several lawsuits to which they are parties (the "<u>Movants' Litigation</u>"), as well as additional actions involving parties whom Movants contend are representative of a class of similarly situated mortgagors, but whom are not Movants.  Movants' do not contend that any of the Debtors are parties to the Movants' Litigation.  Moreover, based on the Trust's review of its records none of the Debtors were named as parties to the Movants' Litigation. Nye Decl. at ¶ 4.  Debtor Residential Funding Corp. does apparently appear in the chain of title in certain of these cases, but as a former holder.  A review of the dockets and select entries in these matters reflect that each Movant has had a full and fair opportunity to raise its claims against the party seeking to foreclose on each Movants' interest

before a tribunal that is vested with appropriate jurisdiction. The docket entries summarized

below are representative of the opportunity Movants have had to adjudicate their claims:

- <u>LNV Corp. v. Subramanian</u>, No. 3:14-cv-01836-MO, 2015 WL 6123769 (D. Or. Oct. 16, 2015) (granting plaintiff's motion for summary judgment for judicial foreclosure), annexed hereto as <u>Exhibit B</u>, <u>aff'd</u>, 698 Fed. Appx. 476 (9th Cir. 2017).

- <u>LNV Corp. v. Fauley</u>, No. 3:15-cv-01422-HZ, 2016 WL 1589898 (D. Or. Apr. 18, 2016) (granting plaintiff's motion for summary judgment for judicial foreclosure), annexed hereto as <u>Exhibit C</u>, <u>aff'd</u>, 698 Fed. Appx. 479 (9th Cir. 2017)

- <u>LNV Corp. v. Wohl</u> (Ariz. Ct. App. No. 1 CA-CV-11-0603). <u>See</u> appellate docket, annexed hereto as <u>Exhibit D</u>. <u>See</u> <u>id</u>. at Docket No. 32, *Memorandum Decision*, dated November 13, 2012 (affirmed) and Docket No. 38, *Mandate*, filed on March 8, 2013.

- <u>LNV Corp. v. Gebhardt</u>, No. 3:12–CV–468–TAV–HBG, 2014 WL 1092109 (E.D. Tenn. Mar. 18, 2014), annexed hereto as <u>Exhibit E</u> (granting plaintiff's motion for summary judgment for recovery of amounts owed by defendant), <u>aff'd</u>, <u>LNV Corp. v. Gebhardt</u> (6th Cir. 14-5605) [Docket No. 53-2].

20.    In March of 2013, Movants Denise Subramaniam and Robynne A. Fauley,

in violation of the automatic stay extant under section 362(a) of the Bankruptcy Code, caused to

be served upon the Debtors summonses and complaints naming certain of the Debtors as

defendants. <u>See</u> Nye Decl. at ¶ 6.    In response, counsel to the Debtors filed Notices of

Bankruptcy in each action advising of the pendency of the Chapter 11 Cases, the automatic stay

and the application of the Supplemental Servicing Order. <u>See</u> <u>id</u>.    Thus Movants' statement that

"they may have rights as creditors in [the Chapter 11 Cases] …, they did not know and could not

have reasonably discovered this fact before they did on December 20, 2017", is patently false.

<u>See</u> Motion at 38.

## V.    THE MOVANTS' ALLEGATIONS CONCERNING LNV CORPORATION AND CSG INVESTMENTS, INC.

21.    In the Motion, Movants' allege that both LNV and an entity Movants'
allege is an affiliate of LNV Corporation, CSG Investments, Inc., are creditors of the Debtors.
As noted above, LNV is identified as a party to loan servicing agreements to which the Debtors
were parties. Other than in a co-plaintiff capacity, LNV was not listed in the Debtors' schedules
and did not file a proof of claim in the Chapter 11 Cases.   CSG Investments, Inc. was not listed
in the Debtors' schedules and did not file a proof of claim in the Chapter 11 Cases.  The Movants
have annexed as an Exhibit to the Motion what appears to be a copy of tombstone advertisement
from CSG Investments, Inc.'s website in which the firm indicates that a portion of one of  the
Debtors' debtor in possession loans was syndicated to CSG Investment, Inc.  The mere fact that
CSG Investments, Inc. may have been a lender under the syndicated DIP loan is simply of no
consequence.  First, other than the mere allegation that a conflict exists, Movants fail to articulate
how LNV's and CSG Investments Inc.'s connections to the Debtors arise to a conflict on the part
of PC and moreover, give rise to an orchestrated conspiracy to defraud the Movants.  In any
event, as noted above PC disclosed its connection to LNV and the debtor in possession loan in
which CSG Investments is alleged to have participated as a lender was paid off in full in
connection with the closing of the Debtors' sale of their servicing platforms in February of 2013.
See *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and
9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to asset Purchase Agreement with
Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims,
Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related
Relief* [Docket No. 2246] at ¶ 40.

10

**ARGUMENT**

**I.    THE MOTION IS AN EFFORT TO RELITIGATE MOVANTS' CLAIMS**

22.     Movants' failure to identify the nature of the relief requested, other than a vague request for the appointment of a "special class counsel", makes it nearly impossible to ascertain what relief, if any, Movants seek.   The bulk of the Motion is devoted to outlining Movants' mostly unintelligible arguments regarding the chain of title associated with their mortgages; the alleged bias of the courts that have adjudicated their cases; the fictitious conspiracy among PC, LNV and LNV's affiliates, and the Debtors; and Movants' wholly self-serving stance that civil litigation cannot be adjudicated by summary proceedings.   Thus whatever relief Movants purport to request, Movants are no doubt dissatisfied with the outcome or status of the mortgage foreclosure litigation to which they are parties, and seek to re-litigate their grievances before this Court.

23.     Despite their protestations to the contrary, Movants have had the benefit of the full adjudication of their claims before appropriate trial courts and on appeal. Supra ¶ 18. The Movants are not parties in interest in these Chapter 11 Cases, and they have not filed proofs of claims.  The Movants' transparent effort to invoke this Court's jurisdiction through the illusion of a conspiracy theory based on what at its most charitable can be described as spurious allegations should not be countenanced by this Court.

24.     Assuming for arguments sake, that this Court had appropriate jurisdiction over Movants' claims, in all likelihood they are now or would ultimately be barred by *res judicata* upon final resolution of the Movants' Litigation.[5]  *Res judicata* provides that "a final

---

[5]      In addition, to the extent the litigation was adjudicated in state courts, this Court would lack jurisdiction under the Rooker-Feldman doctrine.  The Rooker-Feldman doctrine is premised upon two United States Supreme Court decisions:  Rooker v. Fid. Trust Co., 263 U.S. 413 (1923) and D.C. Court of Appeals v.

judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 789 (2d Cir. 1994) (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)).  Three of the Movants' Litigations were fully and finally litigated in federal courts and the fourth in Arizona state court.  <u>See</u>, <u>e.g.</u>, <u>Niles v. Wilshire Inv. Grp., LLC</u>, 859 F. Supp. 2d 308, 338 (E.D.N.Y. 2011) ("In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court.") (internal quotation marks and citations omitted).  "All litigants, including *pro se* plaintiffs, are bound by the principles of res judicata." <u>Done v. Wells Fargo Bank, N.A.</u>, No. 08-CV-3040 (JFB)(ETB), 2009 U.S. Dist. LEXIS 84114, at *9 (E.D.N.Y. Aug. 7, 2009).

25.     Likewise, while this issue is not before the Court, it is highly doubtful that this Court would have jurisdiction to consider Movants' claims and causes of action.  First, the Court's post-confirmation jurisdiction is limited.  <u>See</u> <u>Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)</u>, 335 B.R. 66 (S.D.N.Y 2005). Second, neither the Debtors nor the Trust are parties to the Movants' Litigation and "related to" jurisdiction is absent 28 U.S.C. § 1334(c)(1). For the most part, the Movants' Litigation involves LNV's actions to foreclose on Movants' delinquent mortgages.  There is no nexus to the Chapter 11 Cases.  As noted above, if Movants wish to raise their specious arguments and theories concerning LNV's counsel, the appropriate forum is the court in which each Movant's case is pending.  The mere coincidence that PC is counsel to the Trust does not imbue this Court with jurisdiction over these matters.

---

<u>Feldman</u>, 460 U.S. 462 (1983).  The doctrine bars the exercise of federal court jurisdiction where the claims are "inextricably intertwined" with the claims adjudicated in a state court.  <u>Feldman</u>, 460 U.S. at 482, n.16.

12

II.    **THE MOVANTS ARE PRECLUDED BY THE BAR DATE ORDER AND PLAN INJUNCTION PROVISIONS FROM ASSERTING THEIR CLAIMS AGAINST THE TRUST**

26.    The Movants did not file claims against the Debtors (timely or otherwise) and as result, Movants are barred from asserting any such claims against the Debtors or the Trust by the Bar Date Order.  Similarly, any such claims constitute Released Claims under the Plan, and Movants are enjoined by the Plan Injunction Provisions from commencing or continuing any action against the Debtors, the Trust and any other Released Party with respect to such claims. See Plan Articles VIII.B, IX.I; see also Confirmation Order at ¶ 40.  This Court has not hesitated to enforce the Plan Injunction Provisions where warranted.  See, e.g., *Memorandum Opinion and Order Denying Motion to Lift the Automatic Stay and Enforcing Release of Claims Against Ally Financial Inc.* [Docket No. 6806] and *Memorandum Opinion and Order Granting in Part and Denying in Part Ally Financial Inc.'s Motion for an Order Enforcing the Chapter 11 Plan Injunction* [Docket No. 7148].

III.    **MOVANTS ARE NOT ENTITLED TO CLASS TREATMENT**

27.    To the extent Movants' request for the appointment of class counsel can be construed as seeking class certification, such request must be denied.  Movants did not file proofs of claim individually or on behalf of any putative class in the Chapter 11 Cases. Likewise, Movants have not commenced an adversary proceeding by which they could seek to invoke the provisions of Bankruptcy Rule 7023.  More to the point, at this juncture, any attempt by the Movants to seek to proceed in the Chapter 11 Cases or in any other forum against the Debtors, the Trust or any other Released Party on behalf of a putative class, would be in direct contravention of the Bar Date Order and the Plan Injunction Provisions.

13

WHEREFORE, the Trust respectfully submits that the Motion should be denied and, that in accordance with the Plan Injunction Provisions, that Movants be barred from asserting any claims against the Debtors' estates or any Released Party.

Dated: March 2, 2018
      New York, New York

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Liquidating Trust*

14