RESPONSE OF CATHERINE GEBHARDT TO Case No, 12-12020 (MG)


RE: NOTICE OF CONFILCTS OF INTEREST, FRAUD AND FRAUD UPON THE COURT BY DEBTORS IN CONSPIRACY WITH CREDITOR LNV CORPORATION, RESCAP LIQUIDATING TRUST AND SPECIAL INSURANCE COVERAGE COUNSEL FOR THE DEBTORS PERKINS COIE LLP (Doc. 10469)

In Objection to (Doc 10482) Filed by ResCap Liquidating Trust, Perkins Coie joined by LNV Corporation (Doc 10485)

To the Honorable Judge Glenn,

RECEIVED

APR - 2 2018

U.S. BANKRUPTCY COURT, SDNY

I thank you for the opportunity to respond and I would like to offer a genuine and sincere apology to the tribunal for any of the materials in the initial filing which were in poor taste, finding them most improper. However, I must attest that the parties who filed the Notice of Fraud (Doc. 10469) in this case are located in various parts of the country and we were not able to view all of the documents simultaneously causing some documentation to be possibly overlooked or unnoticed.   There was however much information presented that is dead on correct.

Pursuant to the information offered in the filing, it is important to realize the magnitude of the trauma we have experienced though some of us have pushed that much harder to learn all we could to make some semblance of sense and reason in regards to what we have individually suffered and experienced. I myself have dedicated thousands of hours in researching these parties who have harmed us as well as the individual people who make up these companies and who intermingle with others. There are some astounding finds, especially true for us who had no knowledge of the intricate interweaving of the financial industry. I am certainly not a lawyer, nor have I been trained in the field of law, but I do sir, know the difference between right and wrong and have dedicated an exorbitant amount of time into research in regards to that offered here.  We did not file a "motion" as the opposing parties assert in (Doc. 10482 and 10485); we have filed a notice to inform the court that fraud continues to be committing.

Residential Funding Corporation /Residential Funding Company, LLC has had a long- standing relationship with Sebring Capital Partners of which Sebring's paper was always transferred to Residential

Funding. It turns out that there are many GMAC entities, that as consumers we had no knowledge of without in-depth study, including some of the debtors in this case One might say in lay terms that Sebring was a front for GMAC/ Residential Funding Companies (RFC) and all of GMAC's numerous names which are indeed associated with Mr. D, Andrew Beal and the numerous Beal entities. At the time of the bailout in late 2008, GMAC received special treatment which involved setting up a bank holding company as of December 24, 2008, and thus received approximately five billion dollars from USA taxpayers, which occurred shortly thereafter. They then received even more money after that time. This is well documented in a government publication authored by Senator Elizabeth Warren titled GMAC Under the Tarp.  Perhaps in reality, all of the Residential Funding Companies were fed to Beal and/or the Beal entities through the numerous GMAC conduits. This trickery is in violation of consumer laws being that it hides or conceals the true companies involved.  See Intercept article by Mr. David Dayen, author of best-selling book titled Chain Of Title: https://theintercept.com/2016/11/07/foreclosure-victims-say-donald-trumps-economic-advisor-drove-them-out-of-their-homes.

      Ms. Subramanian is right in saying that that the Beal entities are numerous and all ultimately controlled by Mr. D. Andrew Beal, however CSG Investments must be a family affair as it involves family members who are now involved in FAM Financial Corporation which describes itself as a loan serving company handling both consumer and commercial loans. CSG Investments did indeed make a billion-dollar loan to GMACM Borrower LLC of which was a DIP term loan. In essence a debtor in possession finance is a special form of financing provided for companies in financial distress and usually this type of debt is considered senior to all of debt, equity, or other securities issued by a company violating any absolute priority rule placing this new financing ahead of a company's existing debts or payments though I understand in Louisiana, that rule may not apply as state interests are sometimes placed ahead of other debts. A DIP loan can keep a tottering business operating until it can be sold but only if there were a greater return to creditors than closure and liquidation. In other words, this was Beal's way in at the front of this dupe and why he tries hard to force individuals into bankruptcy. Beal and the numerous Beal entities are comprised of the same people named recurrently as top executive officers and those involved with servicer MGC Mortgage Inc. are most all adept and proficient in bankruptcy. Names such as Jacob Cherner, Stephen Costas, James Erwin, Ralph Wheatley, Jeff Tschirhart, Grant Hamilton, Erica Thomas, Bret Maloney etc. appear over and over in review of thousands of documents.

      Vulture funders who give DIP loans to companies often take first position, especially because of the selling of bonds and when the business goes defunct and a shareholder of that failing company has a

little weakened stock, the bond holder wins out.  Further it is noted that Capmark Financial Group Inc. in Horsham PA received a Term Loan of $1,500,000.00. To directly refute the claim already made by attorneys, this is no shell website. CSG Investments, Inc. provides capital solutions to many different industries specializing in commercial and corporate loan origination, as well as acquisition of secured debt, syndicated bank loans, and bond investing. Bond investing is most interesting here.  The Gebhardt case connects to CSG Investments in a convoluted fashion which has been recently discovered.

We who filed this notice are a group of four, however it should be stated that there are families scattered throughout the nation who have been victimized by Beal Financial Corporation and Residential Funding Companies who are connected to the many GMAC debtors and many of the numerous Beal morphed entities. In the article by Dayen, Beal's own corporate attorneys talk in this article about "imagined forged documents" making it appear that as if the paper did not exist, though there are many fabricated and forged purported instruments. Further, Lock Lorde who incidentally filed an appearance in this very case is mentioned by name in Dayen's article. It is obvious that attorney firms are taught to project the victimized and injured homeowners as crazed, vexatious, conspiracy theorists, and deadbeats, of which Lock Lorde defines in their own internal company Power Point presentation a description of how to handle pro se litigants of which is shown in **Exhibit 1**: Locke Lord internal manual. Ironically Locke Lorde has filed an appearance for LNV Corporation in this case.

There is not room here to list all the parties involved who fall under the Beal Financial Corporation (hereinafter referred to as BFC). These companies serve a purpose in vulture funding/vulture investments. Typically, BFC and all which fall under that umbrella target people such as single women, the disabled population, the elderly, those of foreign descent, those who are ill and disadvantaged (cancer, diabetics, heart issues), those working in the private sector, and those which without resources to fight the big dirty money of corporations and those who play unfairly on Wall Street. The Beal entities including LNV Corporation have seemingly intermingled with debtors in this bankruptcy proceeding as not only the purported successor in interest, but to the tune of $2.5 billion dollars which clearly shows that Beal and the Beal entities possess insider relationships with these debtors and/or their affiliates and former parent/subsidiary companies that functioned in concert during the time that flawed mortgages were created leading up to the financial crisis, of which the flawed mortgages would  have been in transit between the affiliated parties starting as early as the purported loan origination transactions. Nonetheless, these individuals have been more than likely

targeted by all of these parties from the beginning, ending Beal and the Beal entities. All four parties here are unmarried single women with the appearance of much equity in their respective homes.

Mr. Beal is an insider who has had a long affiliation with Residential Funding Corporation/ Residential funding company LLC, Sebring Capital/ Sebring entities, and GMAC and all of their entities, a relationship that goes way back. There are articles that substantiate that Beal was betting against homeowners and one in particular Beal wrote in a Wall Street Journal open letter to Ben Bernanke, federal reserve chairman, to not accept "junk" into the treasury.   Furthermore, Mr. Beal and the Beal entities including LNV Corporation are involved in a pattern that if presented rightly in a criminal court could possibly be deemed to exhibit patterns of gross criminal enterprise and in a civil venue could be deemed to exhibit patterns of civil racketeering. In a court of common law, they would be considered injurious and be forced to make restitution to their victims.

This intermingling of parent, subsidiary, affiliate companies too applies to Title Companies of which as early as July 2005, the Housing and Urban Development (HUD) issued a publication against First American Title Insurance Company titled HUD Settles Case Against Tennessee Title Company Over Violations of Mortgage Rules.  HUDS Assistant secretary, Brian Montgomery stated that "the law is very clear on this point"---"Parties that perform real work in the mortgage transaction deserve bona fide compensation but fabricating sham affiliations for the purpose of obscuring kickbacks violates the law" Companies which were sham businesses used to make referral payments back to the builders, real estate agents, and mortgage brokers in violation of RESPA.  Oddly enough after HUD penalized First American Title in the month of September 2005 a new company registered in Tennessee called MGC Investments LP which is an active company is also registered in Bowie Texas and in Carson California.

In the Gebhardt case, the mortgage originating broker transacted a deal using Sebring Capital Partners Limited Partnership for her brother-in-law approximately one month following the Gebhardt closing.  These two transactions were the only Sebring loans that broker had ever done; further the brokering for the brother-in-law was the last Sebring transaction ever done in Sevier County Tennessee. New evidence has been discovered that proves there was no title legally conveyed at all, though hundreds of thousands of dollars were paid by Gebhardt. Gebhardt too purportedly had First American Title Insurance at the purported closing. https://archives.hud.gov/news/2005/pr05-097.cfm

D. Andrew Beal was raised in Lansing Michigan and at a young age learned that he could make money by fixing and reselling used televisions to low income people and at age 19, became a real estate investor, who would buy properties, renovate them and resell them at a profit. Flipping is a term that

comes to mind, and though this is perfectly legal, there are shenanigans in the financial world involving illegal property flipping of which the Gebhardt case certainly illustrates from start to end. The Beal entities, by and through Sebring/RFC/GMAC/Homecomings Financial LLC/ RASC trust (also a debtor in this proceeding) may be involved in cases which involve illegal straw parties, illegal property flipping or even flopping.

These Beal entities (i.e. MGC Mortgage Inc., GMAC Mortgage, GMAC Mortgage Company LLC, and GMAC Mortgage LLC were working in concert and all were very hard to NOT take payments and correctly credit or apply them to the account, to create imaginary default. In other words, these parties worked vehemently to not accept money which in turn for many created true default because none of it was real from the start. One must remember that Beal and the Beal entities evaluate risk and are betting against the homeowner. In the Gebhardt case, none of the paperwork was real, therefore when transferred to Beal or Beal entities, they had to foreclose, no matter what. They tried to foreclose twice which was not successful. The first foreclosure attempt was by and through GMAC Mortgage LLC for LNV Corporation of which a GMAC employee, the infamous robo signer Mr. Jeffrey Stephan signed as a Limited Signing Officer of LNV Corporation. How is that possible? See **Exhibit 2** Jeffrey Stephan signing as a LSO for LNV Corporation in April 2009 when attempted foreclosure occurred by GMAC Mortgage LLC

In the settlement action of GMAC Mortgage LLC, Gebhardt received a check for compensation for illegal foreclosures by GMAC Mortgage LLC. This check was payable to Gebhardt pursuant to the Independent Foreclosure Review; see: https://www.federalreserve.gov/consumerscommunities/independent-foreclosure-review-payment-agreement-faqs.htm.

This clearly shows that all was being covered up the true parties involved who were all affiliated. Beal is an insider. In the foreclosure of Gebhardt in 2009, it was also stated to a mortgage broker who was attempting to modify Gebhardt's sham loan (known now to be a sham but not then) and GMAC refused to modify stating that the investor did not wish to do this and disclosed to her and to Gebhardt that the investor was MGC. It is known now that since the paperwork is fraudulent, the Lord himself could not modify anything as nothing plus nothing equals nothing and had to resort to any means to get the home, even if it involved suing Gebhardt on a bogus breach of contract, wherein there was no contract and the hiding of the note on file in the federal courts, all of which was done specifically to get the home from Gebhardt and to seal from the public view what they had done.

It should be noted that one at this point and time in 2009 that no one knew who exactly LNV Corporation was as all we knew of was MGC Mortgage, Inc. whom they claimed in numerous letters to homeowners to be the servicer. LNV Corp was an unknown entity by design. (That is because on the purported mortgage assignments filed in my land records and in numerous others, LNV Corporation, 7195 Dallas Parkway, Plano, Texas, 75024 did not exist in year 2009 and still does not exist today. In fact, LNV Corporation still does not exist in Texas because when LNV Corp filed in Texas on June 24, 2010 , LNV Corporation was not allowed to be used in TX and they are actually TX-LNV Corporation. In July 2010, TX-LNV Corporation was registered in Michigan. On the CSG investments, one can clearly see that GMACM Borrower LLC is in Detroit MI. Mortgage Electronic Registration Systems P.O Box is based out of Michigan as well.  The trial of Residential Funding Company LLC was starting to raise eyebrows in early 2008 and then the additional bail out came shortly after.  There are many crimes in the financial industry that have been unknown to me as well as many consumers.

Beal's LNV Corporation according to the LEI (Legal Entity Identifier) created in year 2012 to ensure transparency and tracking of financial transactions is a vulture fund, of which a vulture fund is a hedge fund or a private equity fund that invests in debt considered to be weak and/or in default which is known as distressed debt securities. (See **EXHIBIT 3**: LEI Identifier identifying LNV Corporation.) Investors in the fund profit by buying debt at a discounted rate price on the secondary market and then use numerous methods to gain a larger amount than the original purchasing price. Debtors include companies, countries, and individuals. Vulture funding is what is happening now in Puerto Rico, a country ravaged by misfortune and suffering people while greedy hedge funders continue to squeeze the lifeblood from them. A firm in Jackson TN (between Memphis and Nashville) also is another Beal entity, a company registered  in TN called the Jamaican Redevelopment Foundation, Inc, which was squeezing many in Jamaica in the collapse which occurred with the Financial Sector Adjustment Company (FINSAC debt)—many of these loans accounts (24,000) were sold to overseas debt collector Dennis Joslin the founder, Bad debtors there included many entrepreneurs who presented business plans and were given loans and approved, but the interest rates were skyrocketing up to 120 percent. Jason Rudd (the president of this company) had to go to Jamaica and forgive this debt yet said in later reports that they at the Beal camp were scapegoat, Connections to this company show Joe Gibson, Andrew Beal, Stephen Costas, and Robert Neff. Oddly, Robert Neff has mysteriously appeared in court documents of those fighting Beal fraud. Beal entities are interconnected closely in Tennessee.

For those who file BK, to get out of this arduous stressful game of fighting corporate billionaires with dirty money, I find it interesting that Chapter 13 payment plans go to Memphis Tennessee. In this court case, Beal has his hidden company, LNV Corporation without the 7195 Dallas Parkway, Plano TX address, but instead, has C/O Dovenmuehle Mortgage at an address in Tennessee.  Too there is a law firm in Memphis of which an attorney who works there is directly related to the so -called head of the subservicing division of Dovenmuehle alias MTG Operations. Further if one studies the TN attorney Michael T. Bates (who never was the Gebhardt trustee as claimed) one sees that Bates formerly connected with a middle TN law firm which was known as Hildebrand, Lassiter, and Tidwell. Bates also was listed in Gebhardt's deed of trust at Wilson Cirle Pike in Brentwood TN, but I found him located too at another address on Arden Place in Brentwood TN (Nashville)—Early on when researching Mr. Bates years ago I found a Colorado fax number of which I traced that fax number to aa plumbing business in Colorado only to learn that Bates formerly had a small office space there, Bates accounting is widely spread throughout Colorado.

The attorneys in most every case involving those fighting Beal and Beal entities (LNV Corporation) often lie  about who they are representing as there is no beneficiary lender. See **Exhibit 4** which denotes that TN LNV Corp attorney Ronald Steen cannot decide who the law firm of Stites & Harbison represents as he states in one letter in year 2012 that he represents LNV Corporation and two years later in year 2014 says he represents MGC Mortgage Inc.

We are four of those individuals who have suffered from the shenanigans and misconduct of attorneys who often work in collusion with LNV Corporation attorneys and are a mere voice for the others who are either still fighting or those who have lost their home and given up the fight from being plummeted by unethical attorneys of which most attorneys of Beal victims strangely have problems with protecting their clients interests or remembering who their client is and what their interests are. Many of the attorneys of victims have acted very strangely after being retained. This is not mere coincidence. The LEI defines LNV Corporation as an investment fund called Amonis NV Corporate Euro Bonds, which is located in Brussels Belgium. See **Exhibit 3.** The prospectus for Amonis NV Corporate Bonds Euro is written in French as the portfolio manager is located in Paris France. As it states on the face, Amonis NV is an open- ended investment company with variable capital and governed under Belgian law, offering it anonymity; i.e. an anonymous society. That may indeed explain why LNV Corporation is registered in Nevada , a corporate haven because Nevada has made it a criminal offense to disclose tax information on this entity.  See **Exhibit 5**: A letter written to a television reporter Bret Shipp from Texas who

requested this information. This letter to the reporter is not from the Nevada Secretary of State but from the Nevada Department of Taxation and it signifies that LNV Corporation was licensed from the Nevada Department of Taxation before registering with the Nevada SOS; of which there is evidence. Per many sources of information available the corporate veil in Nevada has been pierced there only twice in almost thirty years and must involve fraud to hold shareholders directly accountable.  It is then small wonder LNV is incorporated in Nevada when on May 30, 2011 the Nevada Department of taxation makes it a crime to disclose tax information on this entity.  It therefore makes sense that the two mortgage servicing lists discussed below (Exhibit 13) show two different contacts for MGC Mortgage Inc. where one is a maritime law firm in New Orleans, LA with the contact email being tarrigo@mcglinchey.com and phone number of 504-596-2821 and the other contact being attorney Grant Hamilton who claimed to be employed by MGC Mortgage Inc. and who submitted a false affidavit in LNV Corporation's foreclosure case against Robynne Fauley. That perhaps implies that MGC Mortgage Inc. is not really a mortgage servicer as portrayed and claimed to consumers (Beal victims) and courts across the country but perhaps MGC Mortgage Inc. is a loan correspondent; which is why they cannot modify and loans, see http://www.cmgfi.com/news/read/what-is-correspondent-lending?channel=corporate:

> "Correspondent lending" is the origination and sale of mortgages on the "mortgage secondary market," where mortgage originators and mortgage investors get together to do business.
> A "correspondent lender" is a special type of mortgage lender that originates and funds loans in its own name.

However there is a difference between correspondent lending and wholesale lending.  Beal Bank is a wholesale securities bank.  http://davekevelighan.com/the-similarities-and-differences-between-wholesale-lenders-correspondent-lenders-and-brokers:

> They are usually lenders that don't deal directly with the consumer, but offer mortgage loans through clients such as mortgage brokers or banks...wholesale lenders and correspondent lenders are similar in that they can both underwrite their own loans. However, a correspondent lender must do so under the required terms that are put in place by their investors. On the flipside, a mortgage broker has the ability to shop around terms like mentioned earlier, for the best interest rates and programs.

Better said, a mortgage broker would submit loan packages for underwriting and would typically have an independent wholesale or correspondent lender assist in this process. Interestingly enough almost all mortgages of Beal victims, we've studied across the country, involved a mortgage broker at origination; and furthermore involved wholesaling entities located in California. Mortgage broker

originators were not heavily regulated at the time these mortgages were originated. For instance in Tennessee mortgage broker originators did not even require licensing until 2005.

To reiterate MGC Mortgage Inc., as a loan correspondent could not modify anything; and this is the reason they requested consumer financial information to be resent multiple times because they did have it. MGC gleaned such financial information each time a new packet was requested asking for additional personal financial information. The only party that could have the complete consumer financial information was the originating broker.

This involves elements of international mortgage lending as described below with the Beal entity "**Collateral International LLC**" which was not disclosed to the consumer at the time of origination. The "NV" in "LNV" perhaps stands for Naamloze Vennootschap which is a legal structure for Dutch companies that literally means "nameless partnership for anonymous venture" and comes from the fact that the partners being shareholders are not directly known. "NV" is translated to be a public limited liability company in many Dutch territories. This is in contrast to the term for a private limited company which is called Besloten Vennootschap which is an exclusive or closed partnership, one in which the stock is not for sale on the open market. A BV therefore a private company whereas NV is a public limited liability company in Dutch territory, LNV Corporation is located (see Exhibit 3). Many money laundering scheme are centered in this area of the world, therefore the Beal victims have been duped.

The exact relationship(s) between the ResCap Debtors and the numerous GMAC entities and LNV Corporation is most certainly not what they claim it to be. The actual terms of the agreement between Residential Funding Company LLC (and/or numerous GMAC entities) and LNV Corporation memorialized by the numerous assignments of deed of trust recorded, as ours were, in counties across the country purporting to convey beneficial interest in our mortgages from Residential Funding Company LLC to LNV Corporation each notarized by Diane M. Meistad on March 10, 2008; most certainly are not what they seem to be, and what the ResCap Liquidating Trust, Perkins Coie and LNV Corporation portray them to be to this court as per the documents they have filed: Doc. 10482 and 10485. This information is provided by Gebhardt in very raw form in the breach of contract lawsuit LNV Corporation brought against her after she threw her attorney to the curb in federal court after discovering he was working in collusion with LNV Corporation's attorneys against her.

It should be noted that the powerful law firms that represent LNV Corporation including Locke Lord have vereins. Hunton & Williams LLP also has verein located in Brussels Belguim: https://en.wikipedia.org/wiki/Swiss_association:

*A Swiss association ("Verein" in German, "association" in French, "associazione" in Italian) is a legal structure in Swiss law, defined in the civil code...Unlike in Germany, a Swiss association does not need to be registered in order to have a separate legal personality...For instance, non-US offices of accounting firms in a Verein structure are not bound by Securities and Exchange Commission subpoenas from the United States.*

I am from Tennessee and have experienced much attorney misconduct and despite LNV Corporations counsel stating that we have all had a bite at the apple already and had our day in court, this is untrue, as measures are taken to ensure that one never gets to court. Further the seemingly misguided attorney described my ordeal as a foreclosure, when in fact, LNV Corporation sued me for breach of contract on a note which has now been sealed in federal court in September of 2012 just mere months after Residential Capital filed for Bankruptcy protection, being I had fought two prior foreclosures not knowing then what I know now. There is new evidence in that case which clearly shows that the note sealed is bogus and that the note and mortgage bifurcated on the day it originated with irrefutable proof, of which that case is soon to be filed involving parties working in concert. LNV Corporation claims to be the holder of the loan but they are not the holder of the note as falsely and criminally claimed. The closing attorney of that ordeal was sued by debtor GMAC Mortgage LLC, of which that attorney (Mr. Jerry Dewayne Kerley of Sevierville Tennessee) was indicted and convicted on fourteen felonies involving mortgage fraud, money laundering, and wire fraud. See: The indictment of TN title attorney Jerry Kerley:  https://law.justia.com/cases/federal/appellate-courts/ca6/13-5931/13-5931-2015-04-23.html

Claiming negotiability of an instrument that is not negotiable is criminal. In Tennessee, the deed of trust follows the note, however the note which is sealed is not the right note and fraud upon the court and fraud perpetrated against me was involved by lying attorneys.   It is ironic and almost comical to think that I hired two attorneys at different times which were both engaged in nefarious conduct, one filing a case against debtor GMAC Mortgage LLC in year 2009 in state court, only to have it removed by attorneys for GMAC Mortgage LLC Bradley, Arant, Boult & Cummings LPP in Nashville Tennessee, only then to find later a power point publication by that firm detailing mortgage fraud of which they are experts at recognizing for various reasons being that they engaged in it. I too have fraud for house and fraud for profit substantiated by newly found evidence; see http://slideplayer.com/slide/6239928 a power-point presentation Bradley, Arant, Boult, & Cummings , who is identified by many to be a nefarious law firm.

The second attorney I had hired who purposely filed a bogus breach of contract in state court was grievously working against me and was in collusion with the Stites & Harbison attorneys of which I caught him red handed. He is the one who stated that I should file a breach of contract case against LNV Corp and other parties, purposefully styling the case wrongly to protect the broker who was associated with the Beal entities and then convinced me to non-suit the state case of which was planned allowing LNV Corporation to file a breach of contract case against me in year 2012 after the ResCap BK had already been filed. There is an affidavit on file in the federal courts about the nefarious conduct of this attorney Douglas E. Taylor, who moved suddenly after being caught by me, moving into the law office of the first attorney I had hired who lost the case with GMAC, LLC only because he did not respond to the suit allowing them to file summary judgement without an answer from him, Said he did not know that case had come to him by a particular email though he was elevated to state representative in TN following the loss of that case against me. It is all misconduct.

There was no contract ever as what I had was servicing fraud on a bogus ordeal since the transaction at the start was fraudulent thus void which will be proven. There is no contract nor was there ever as this is smoke and mirrors.  See **Exhibit 6:** three servicing letters one of which directly refutes a GMAC Mortgage bill I have due Oct 01 2008 who is also the servicer of which bill shows recent activity in prior months.  I have parties including debtors, GMAC Mortgage LLC and one even states GMAC Mortgage Company, LLC. Servicing letter of October 10, 2008 states that my servicer is MGC and will be returning to GMAC effective October 26 2008 and that payments will not be accepted at that time, though my $6,000 check made payable to MGC Mortgage Inc, noted in several records. was deposited into Beal Bank in Plano TX on October 29, 2008 after the date that they state they would not accept servicing, of which I did not ever receive a 1098 from MGC Mortgage Inc. No one seems to want to talk about money that disappears through conduits.

Bret Maloney claimed in the _LNV Corporation vs Gebhardt_ **Breach of Contract** case that LNV Corporation is the owner and holder of the NOTE.  Please note that it is a matter of record that my loan application states I am not even an American citizen of which this fraud was perpetrated by a broker and their respective affiliate who was working in concert with others at origination to defraud me from the inception for house and profit.

It is very disturbing to learn that I too have endured identity theft as I am now known to be a woman in Warren Michigan who lost her home in 2007 due to forcible detainer in 2007 and I have never set foot in Warren Michigan in my life. The only person I know who had access to my private personal

information as well as my children's are the originating party. My children's private personal information was compromised as well.

In the Gebhardt ordeal, even the homeowners insurance shows quite a wicked trail, as the insurance was terminated after the first month in 2002 (yet this was not known until year 2015) as the company stated that from archived material the replacement value had been written to be too high, of which the insurance company representative told Gebhardt that this had been at the direction of the lender or the broker involved. This is because the appraisal was grossly overinflated of which the appraisal was done on Nov 07, 2002 the loan application was signed on Nov 07, 2002, the insurance was set up (though coverage did not take place until Nov 09, 2002), and yet the loan docs signed showed a loan number already on the document of which how can that be, when the loan application has not yet been signed? After the policy went into cancellation, the insurance agent who secured this abruptly left Tennessee and moved to North Carolina, wherein the assets were transferred to another local affiliate who then rewrote the replacement value at a lower figure relying on a statement of the agents' representative, who wrongly stated that the home was a 4000+ square foot brick home on the side of a mountain. This is quite a difference from a 2000 square foot mason rock and wood split level home with aluminum siding. The charge was very high per year of which flood/hazard forced insurance was added though I lived on the side of a mountain. I guess they believe that water travels uphill and are not familiar with the laws of gravity. This implies insurance fraud from the inception of which Sebring Capital Partners, RFC, and GMAC entities had to have known. See **Exhibit 7** showing insurance in cancellation and form bearing the name of Sandy Crawford who was the insurance agent's representative, though the form does not even bear my name. This document wrongly states that the purchase price is $280,000 when it was $286K, states the construction to be brick with a current market value of $300K though the seller said the house was worth only $190K of which that too is untrue. States square footage to be 4200 square feet. Sebring Capital Partners, Limited Partnership ISAOA is listed directly on the document. What is very odd is this is to become effective on 12/13/2002 as this was reinstated without my knowledge in year 2002. I learned that much later. Appraiser was a lady who was related to the originating broker, being a sister in law. Origination broker's daughter has connections with JP Morgan Chase in OH which is most interesting and relative to the Gebhardt case.

The Fedwire on November 07 2002 shows that the credit (there never was any money as banking does not work that way) traveled through the doors of Jerry Kerley's business Guaranty Land Title in Sevierville TN and was created by Bank One NA Chicago, where Paul Daugerdaus worked for

Jenkens and Gilchrist in Chicago. That Fedwire shows that it is to go to the attention of Mr. William T. Zaemes (also involved in Beal entity BVMC Inc. described below.) Mr. Zaemes is identified as the Sebring CFO and the beneficiary named on the Fedwire is Guaranty Land Title. See **Exhibit 8** showing Fedwire that came from Bank One NA Chicago on November 7, 2002. According to the FBI report Paul Daugerdaus of Jenkens & Gilchrist was creating abusive tax shelters and pushing these abusive shelters on all who wanted in on some action, lawyers, judges, accountants, (all wanted in on the action to make a fine return on their investment) of which Daugerdas was doing during the years of 1994 to year 2004. I closed in year 2002.

Beal too has a direct connection to Jenkens & Gilchrist in 1994. See **Exhibit 9** of the certified articles of incorporation of Beal Banc Acceptance Corp which shows that in 1994, he had a direct connection to Jenkens & Gilchrist which continues to this day. Jenkens & Gilchrist had to voluntarily disband in TX in year 2007 or face criminal prosecutions, though a New Jenkens & Gilchrist was then created in California until year 2011. The names on this document possibly involve a bank regulator, an insurance regulator, a former attorney and appellate judge, a former employee of the federal comptroller and Andrew Beal himself. This document indeed tells much and speaks volumes if one understands the taxation dupe.

In the case of Tuli Molina-Wohl, who also had refinanced her prior GMAC mortgage with Sebring Capital Partners, Limited Partnership, her escrow title instructions state that if the Sebring wire is to be returned, as she closed in November 2006 just two weeks before Sebring Capital Partners, Limited Partnership abruptly closed their doors in December 2006, to wire the funds to JP Morgan Chase Bank in Chicago to the attention of Shardonia Ellis who was the team lead for GMAC/ RFC in Bethesda Maryland from year 1997 to year 2007. Her instructions specifically say "RFC/Sebring Capital Partners, LP." Chances are very great that Tuli's case involved extension of "credit" too (there never was a loan which implies the connotation of real money exchanging hands) was possibly created by Bank One NA Chicago, as Bank One NA Chicago was absorbed by JP Morgan Chase in year 2004. It could have too been created by RFC as RFC and Sebring have a long business history of which numerous documents show that paper from Sebring most always went to RFC. Ms. Wohl's home was foreclosed upon during her time of attempting to modify with MGC Mortgage Inc. It should be noted that there is not a promissory note in her case entered into court record though her note copy signifies that it and was signed off by a clerk of Sebring who also happened to be a notary but presented herself as a vice president but is not an authorized representative of Sebring Capital Partners, Limited Partnership nor NealMikeLance

Corporation who makes up Sebring. Ms. Molina-Wohl's purported note was obviously fabricated and was not even needed in her state and thus the Beal parties foreclosed quickly and stole her property which had much equity. Her attorney too was working against her of which she paid him thousands of dollars. Much of her paperwork too has disappeared from the land files of Maricopa County Arizona which is typical of those fighting the Beal entities. It was an ugly ordeal which has traumatized her of which from such trauma, she has not recovered.

The Gebhardt case also has JP Morgan Chase as well as Bankers Trust (Deutsche), and The Bank of New York Melon involved of which volumes could be written but is worthy to mention. The assignments on file are fraudulent: All of them.

Further in another state in PA, a Beal victim has been fighting with an attorney who is working directly against her who refuses to send her what he receives from opposing counsel, copies of what he has filed purportedly on her behalf yet is taking her money. This woman is disabled and her "loan" which equates to illegal and deceptive debt collection practices has been transferred from MGC Mortgage Inc. to yet another morphed company. The documents are fraudulent and bear wrong dates. No, it is not an imagined state of fraudulent documents, nor is it cloak and daggers nor conspiracy theories as Beal and the Beal entities and Beal attorneys including Locke Lord wants Your Honor to believe.

Further, if one does make headway in Courts of law, there is a party who travels the country to observe court proceedings in various states and wishes to personally view those cases which LNV Corp has a chance of losing. That someone is Mr. Robert Ackerman of California, who is associated with many of the Beal entities including a now defunct company called BVMC Inc. which also involved the hedgers or loan correspondents/ escrow activities of NealMikeLance Corporation who is the entity involved in Sebring Capital Partners, Limited Partnership. This company consisted of Mr. Michael Brown, Mr. Lance Welch, and Mr. Neal R, Meissner all registered at 4000 International Parkway, Ste 3000, Carrollton TX. Mr. Robert Ackerman too is associated with the former defunct Jenkens & Gilchrist. Mr. Michael Brown was also the treasurer of MGC Mortgage Inc. in Nevada (but not in MGC Mortgage Inc. in Texas) in year 2014 but when I was shouting that from the roof tops during my treacherous fight alone in Tennessee after finding my second attorney to be working in collusion with the other side, Michael Brown was suddenly replaced, Things change when blatantly disclosed, things which are damning to Beal and Beal entities.

There is a motive to this madness involving Beal and the Beal entities who are insiders of RFC and GMAC entities in their targeting of  individuals and one of those motive is tax shelters, abusive tax

shelters created by Jenkens & Gilchrist of which now Mr. Paul Daugerdaus is now doing prison time for what some reporters call the biggest tax heist in history which was created to help the wealthy get wealthier, Too, there is direct involvement by Beal Capital Markets and their respective law firm during that time of Mr. Paul H. Deutch in New York representing Beal Capital Markets with Jenkens & Gilchrist, Mr. Gregory G. Hesse in Dallas representing Beal Capital Markets with Jenkens & Gilchrist, Charles B, Leuin of Chicago of Jenkens & Gilchrist representing Beal Capital Markets (International Air Transport Association) all of which can be referenced in the Bankruptcy proceedings of the United States Bankruptcy Court, Northern District of Illinois #02-48191 in re UAL Corporation, et al.

Thomas A. Montgomery, Certified public accountant (CPA) serves as a managing partner of Montgomery Cosica Grelich LLP and Montgomery's disciplines include advanced tax planning, mergers, acquisitions, debt/equity financing for large and medium sized business and he was responsible for starting and growing Beal Capital Markets, and is involved in the Southgate/Bea case involving Mr. D, Andrew Beal, wherein the judge said that Beal had numerous tax shams. Montgomery was instrumental in pushing shelters and in growing Beal Financial Corporation which parents all companies of which the Hunton Williams attorneys have as of June 2008 filed patent methods of restructuring real estate assets of which this document was filed by several but one eye catching entity is Mr. Peter Weinstock who is a former J & G shareholder, who registered Beal Bank USA in the state of FL in year 2012, Weinstock also responded to the TX governors office in response to the many complaints filed by many people in year against MGC Mortgage Inc. Weinstocks remarks were very lame and essentially said that they did not use robo-signed documents to foreclose as the letter said that if they were doing that, they had to give those homes back. Weinstock carbon copied that letter to Mr. Robert Ackerman, who is associated with Beal and formerly of J & G in California. See **Exhibit 10** Method of Restructuring Real Estate Assets filed with the US Patent Office on June 23, 2008 and published Dec 24, 2009 filed by Weinstock and others. The end result of the filing of the patent is to ensure that the shares go to the parent company to be prorated as losses or gains which come through Beal's personal income tax. That is known as an S Corp of which LNV Corporation vulture fund is an S Corp structure. With this method one can divest real property and avoid capital gains tax or federal tax on finance LEASES. See **Exhibit 11** of Letter of Peter Weinstock to TX Governors office dated October 31, 2010.

It should be noted that Beal and the Beal entities are interwoven between the states of Nevada and Texas being that those are two in the nation which do not possess an income sharing agreement with the Internal Revenue Service. The companies too are hidden in Delaware. It should be noted that

the two banks Beal Bank SSB located in Texas and is Texas chartered bank and Beal Bank USA is a Nevada chartered Bank and Beal subsidiaries or affiliates are transferring money which appears to be flowing back and forth. Given that Beal owns the largest private financial institution in the country, he may well be concealing for himself and others escaping any regulation which might be imposed.

When detailing the many Beal entities, it is important to realize that when Jenkens and Gilchrist disbanded, the majority of attorneys in TX went to Hunton & Williams LP and those in Illinois primarily went to Mayer Peabody. Hunton & Williams LP has an office in Brussels Belgium.

Numerous Beal entities involved in many of our cases of which all of us have fraud at origination, some of which is egregious and blatant. This is a small list of the Beal entities and their incorporators.

1. MGC Mortgage Inc. TX January 2008 (incorporated by former Jenkens & Gilchrist (hereinafter referenced as J & G) employee M. Elaine Meyers

2. The Syndicated Debt Covenant Roundtable, TX, Jan 2008, incorporated by former J & G employee M. Elaine Meyers

3. LNV Corporation, NV, March 17, 2008, incorporated by former J & G employee M. Elaine Meyers

4. CLG Hedge Fund LLC July 2998, NV, of which the parent company is LNV Corporation (vulture fund as referenced too in BB&T court case 3-13-cv-00191) LNV Corporation lost that case and appealed and lost that appeal as well.

5. TX-LNV Corp was registered in the state of TX in June year 2010

6. TX-LNV Corp was then registered in the state of MI in July 2010.

7. Collateral International LLC (engaged in business of international mortgage lending) of which parent company is CLMG. It is believed that CLMG may stand for Commercial Limited Mutual Guaranty as this company is who your house goes to when they have succeeded in stealing it from you though fraud, deceit, and fabrications and this fashion is often used on the foreign European market. (See **Exhibit 12** of info on Collateral International); One formerly could look up their property on the CLMG website through Beal Bank though I found mine and loudly questioned some entities about this; and now that website is only accessible to licensed brokers. When one announces what they know, they do their best to cover their tracks and hide it.

   CLMG is also closely connected with Beal Nevada Service Corporation where I once found the voicemail of Bret Maloney, the robo signer of affidavits of personal knowledge which summary judgements are often granted just based on that evidence alone. Again, my ordeal is a breach of contract wherein the attorney working against me for now known reasons and motives stripped me of my seventh amendment rights.

8. MGC Mortgage Inc. formerly was listed in 2011 with an address of McGlinchey Stafford in New Orleans LA and the contact signified an email address of a party working for McGlinchey Stafford. Formerly Burton Brillhart was the lead figure for MGC Mortgage Inc, who incorporated MGC Mortgage Inc. himself in the state of Arkansas in year 2009. Brillhart to this day is still affiliated with MGC and still works for maritime law firm McGlinchey Stafford. Also in 2011,

another servicing list shows the name of Grant Hamilton for the contact of MGC Mortgage Inc. whom one can never find as MGC Mortgage Inc. as address is not real and is forwarded to Beal Bank on Legacy Drive. (See **Exhibits 13** showing two different servicing lists for MGC Mortgage Inc. One being a contact for McGlinchey and one being a contact for MGC Mortgage Inc. showing Grant Hamilton as the contact)

9. Beal Nevada Service Corporation issued a check for my storage fees to a company in Sevierville TN of which the party I personally spoke with said that someone had come to pay him from TX and the check was signed by Jake Cherner. It is odd that a place would accept an out of state check should that business be unfamiliar to them.

10. Sebring Capital Partners, Limited Partnership is a Delaware company of which if one wants to hide something one knows to put in in Delaware.

11. Dovenmuehle is Delaware company.

12. Beal Financial Corporation is a Delaware company and the parent company of all Beal entities.

13. These companies are connected by Beal entities such as his numerous Bre companies, and his numerous CXA's.

14. McGlinchey Stafford is needed for maritime law, taxes and collection of derivatives or swaps made and sold out on the foreign market.

15. There are many other Beal related companies not identified here.

LNV Corporations counsel claims are untrue that LNV Corp is a servicing platform. Fiserv was a servicing platform. LNV Corp is believed to be a vulture fund. CLMG services for that fund according to Beal Bank Representatives.

Beal and Beal entities are believed to be insiders who wanted to take advantage of the pending collapse and Residential Funding Corporation or Residential Funding Company had nothing to give in cases wherein the note and mortgage became separated at origination or other egregious fraud took place at the beginning. All Beal victims to date have the commonality of origination fraud, LNV Corp would make one believe that the vulture funding company got these from Residential though Residential had nothing to give, especially with origination fraud, nothing to give one another other than fraud, of which they knew existed at the time, but pushed that bad paper anyway to make money. If an investment is illegally and unconstitutionally made, why should any party make something on their investment? They obviously are trying hard to hide bad paper.

M. Elaine Meyers, Peter Weinstock, Robert Ackerman are all key people of Beal entities directly tied to Jenkens & Gilchrist. This is a tax dupe. The tax trail does not match the document trail. The money trail does not match the document trail.

This is defrauding investors, creditors, the Internal Revenue Service, and homeowners. There are fake addresses in all our documents. Alan Greenspan was dead wrong when stating that many would

never steal from investors. How about those who target individuals and victimize them repeatedly? Vulture funding is legal in the United States though what is legal is not always lawful nor is it right. Many countries have outlawed this deleterious practice which is harmful to the economy and to people.

Nothing plus nothing equals nothing.

Too add insult to injury the fabricated phony mortgage payoff statements tell quite a story. Please see **Exhibit 14** for a power point presentation made by a victim of Beal from Louisiana titled Follow the Money. This victim fails to mention all of the Beal companies but the instances and content she cites are true and correct of which there is proof. Everything found on Beal and/or the Beal entities seemingly points to illegal tax shelters through J&G and broker fraud.

The merger of Peelle Management to Nation Wide Title Clearing is also significant as that is who paid the taxes in at least two families after LNV Corp stole the home, by initiating an action, causing unjust eviction or ejectment by the sheriff or federal marshal, credit bidding it to themselves, moving it through CLMG and then try to launder title. It is however impossible to launder title when there is or was no title. See https://livinglies.wordpress.com/2017/06/15/48841 & https://www.businesswire.com/news/home/20070629005580/en/Closing-Door-Opens---Peelle-NTC-Collaborate showing where Peelle Management (which was formerly in NV and is now in SC) and Nation Wide Title clearing in FL have merged as of 2007 preparing for the collapse.

I even have a purported default letter in the Breach of Contract case that has no letter head dated March 04, 2009 though the telephone number on the second page of that document bears a telephone number that led to Ocwen Loan Servicing in year 2009, as they had me slated for bankruptcy of which I have never filed in this case, nor will I. One can see that from the complaint LNV Corp attorney Ronald G, Steen filed on 09/05/2012 in the Federal Courts in Knoxville Tennessee. The sealed note in this case contains a Judy Faber stamp stating PAY TO THE ORDER OF JP MORGAN CHASE WITHOUT RECOURSE RESIDENTIAL FUNDING CORPORATION. Purported note also bears a forgery of Gayna Yeager, identified as a clerk and a notary whose commission expired years ago.

Trail of documents in my case shows heavy involvement of Lender Processing Service alias Black Knight. Lender processing service is mentioned by name in the investment of Amonis NV Corporate Euro Bonds.  There are many other things I did not cite nor explained which I could have touched on as this reads like a John Grisham book of which tidbits have been purposely omitted although I am hoping that the picture is most vivid and clear.

In most all cases involving those with these entities with few exception, great pains are made by the nefarious attorneys representing LNV Corporation or the Beal entities ensuring that these court cases are unpublished of which many of the same nefarious lawyers working for the Beal entities mention these unpublished cases in their own case law in other cases wherein they are working to defeat other victims. In cases in which the homeowner prevails, there are great pains made to implement a gag order. In my own case, I was sent 91 pages of documentation which included two allonges (the Vecchio allonge already mentioned and one bearing a stamp of Amy Nelson, as well as another allonge with James Erwin's name, that does not even bear my name, but is another victim located in Arkansas.) (See the OMNI report an a forensic examination of these Jason J, Vecchio signatures on these allonges we all have; it is an exhibit to Ms. Molina-Wohl's declaration.)

All of this sinister activity was manmade and was deliberately created earlier in preparation for the final moments knowing at the last minute when the bottom fell out though they were unsure when that would occur yet when it did, knowing they were going to make a fortune from the collapse. Greed is a very ugly thing and known as one of the seven deadly sins. When you knowingly harm others with impunity, it is wrong of which one pays sooner or later and the Beal victims have suffered repeatedly at the hands of unscrupulous attorneys who will do and say anything to win for their big money clients. Further they threaten, attempt to intimidate and hide the real truth. Obviously, it seems that law is no longer about justice and is more a game in beating your adversary at any cost.

Residential Funding entities, GMAC entities (ResCap Debtors), Sebring entities, and vulture Beal were all in it from the start and simply moved in for the kill when the time was right.  Your Honor with the collection of evidence presented today showing you what we have endured over a period of years I am hopeful you will see the patterns misconduct, abuse of process and deceit and am hopeful that you will perhaps provide appointment of counsel, because contrary to what LNV's counsel Locke Lord has sad we have never been heard as these entities ensured we never progressed that far to be heard.

I thank you for your time.

Catherine Gebhardt

Dated: March 30, 2018

**EXHIBIT 1**

# Locke Lord Bissell & Liddell LLP

# Dealing with the Pro Se Litigant

Arthur E. Anthony

Thomas G. Yoxall

February 3, 2011

Atlanta, Austin, Chicago, Dallas, Hong Kong, Houston, London, Los Angeles, New Orleans, New York, Sacramento, San Francisco, Washington DC

# Recent Increase in Pro Se Litigants

- Current industry climate has led to an increase in pro se litigants

  – Negative press surrounding mortgage lenders and servicers has emboldened borrowers to pursue legal action without seeking legal advice/representation

  – Borrowers often turn to the Internet as their first resource in dealing with these issues, no shortage of self-help "resources"

  – Many borrowers do not want to pay for representation

Locke Lord Bissell & Liddell

2

# Classifying Pro Se Litigants: Frustrated Borrowers

- Generally two types of pro se litigants:

  – Frustrated borrowers
  – Predatory borrowers

- Frustrated borrowers: genuinely frustrated borrowers who want to pay their mortgage, but are unable to and are looking for a loan modification or some other type of relief and have encountered difficulty navigating the loss mitigation process

  – Common claims:
    • TILA
    • RESPA
    • HAMP-related claims
    • Breach of contract/breach of trial mod (HAMP TPP)
    • Debt collection claims (state and federal)
    • Wrongful foreclosure
    • Consumer protection statutes (DTPA)

Locke Lord Bissell & Liddell LLP

3

# Classifying Pro Se Litigants: Predatory Borrowers

- Predatory borrowers: unrealistic and unreasonable borrowers who are trying to capitalize on the current industry turmoil and are willing to employ any tactic to obtain a free home

  – Common claims:
    - Show-me-the-note defense to foreclosure
    - Rescission of note
    - Conspiracy
    - Fraud
    - Lack of standing
    - Other Internet-based machinations focused on voiding the note and deed of trust while maintaining possession of the property

Locke Lord Bissell & Liddell...

4

# Primary Objective in Dealing with Pro Se Litigants: Early Resolution

- Need to resolve pro se cases as quickly as possible

  – Pro se litigants are emotionally tied to their cases; the more a case progresses, the less reasonable the plaintiff becomes

  – Pro se cases are expensive to defend because the plaintiff's lack of familiarity with the legal process often creates more work for the defendant

Locke Lord Bissell & Liddell

5

# Means of Achieving Early Resolution: Loan Modification

- Two parallel tracks to be pursued simultaneously

  - Loan modification or other form of mortgage assistance
  - Removal to Federal Court and Motion to Dismiss

- Loan modification or other form of mortgage assistance to settle the litigation

  - Ask the plaintiff at the outset to enter an agreement to deposit funds into the court's registry or trust account to be applied toward modification

    - Allows you to distinguish between those who are genuinely interested in and can afford a modification and those who are not interested in a modification and/or cannot afford one ("Predatory borrowers" are generally resistant to this approach and other efforts to resolve the litigation at the outset)

Locke Lord Bissell & Liddell LLP

6

# Means of Achieving Early Resolution: Removal and MTD

- Removal to Federal Court and Motion to Dismiss

  – Federal Judges are typically less lenient with pro se litigants than state court judges

  – Procedurally it is less difficult to dismiss a case in federal court than in state court

  – Removal and a motion to dismiss puts the plaintiff on the defensive and may leave the plaintiff looking for a way out of the litigation

  – Do not answer in state court before removing

    • Note, however, that where it is necessary to file an answer in state court before removing, a Rule 12(c) Motion for Judgment on the Pleadings may be filed after removing. A Rule 12(c) Motion can be filed once the pleadings are closed. Fed. R. Civ. P. 12(c). The pleadings are considered closed when a defendant files an answer in state court, provided there are no court-ordered replies, "counterclaims, cross-claims, or third-party claims . . . ." *Davis v. Nissan Motor Acceptance Corp.*, Civil Action No. 3:09-CV-869-L, 2009 WL 3363800, at *2 (N.D. Tex. Oct. 16, 2009). The standards are the same for deciding motions under Rule 12(c) and Rule 12(b)(6). *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

Locke Lord Bissell & Liddell™

7

# Motion to Dismiss:
## Pleading Deficiencies

- Pro se litigants are subject to the same pleading requirements as represented litigants. *Mitchell v. Walters*, No. 10-1061 (SRC), 2010 WL 3614210, at *2 (D.N.J. Sept. 8, 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)).

- Plaintiffs' failure to meet federal pleading standard

  - It is not enough that the plaintiff allege the mere possibility of misconduct, it is incumbent upon the plaintiff to "show that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2); *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

  - Courts should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quotation omitted).

  - "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Iqbal*, 129 S.Ct. at 1949-50 (noting that courts are not bound to accept as true a legal conclusion couched as a factual allegation).

LockeLordBissell&Liddell LLP

8

# Motion to Dismiss:

## Pleading Deficiencies (cont'd.)

- Plaintiffs' failure to meet heightened federal pleading standard for fraud

  – "To satisfy Rule 9(b), the plaintiff must allege with specificity 'the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent.'" *Lechner v. Citimortgage, Inc.*, No. 4:09-CV-302-Y, 2009 WL 2356142, at *4 (N.D. Tex. July 29, 2009) (quoting *Plotkin v. IP Axcess, Inc.*, 407 F.3d 690, 691 (5th Cir. 2005)).

Locke Lord Bissell & Liddell

9

# Motion to Dismiss:
## Substantive Deficiencies - FDCPA

- FDCPA

  - Servicer/lender not a debt collector, unless loan was in default at the time the loan was obtained. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *modified on other grounds*, 761 F.2d 237 (5th Cir. 1985). ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.")

Locke Lord Bissell & Liddell LLP

10

# Motion to Dismiss:
## Substantive Deficiencies – TILA

- TILA

  – Downstream servicer/assignee not a creditor for TILA purposes. *Roach v. Option One Mortgage Corp.*, 598 F. Supp. 2d 741, 749-50 (E.D. Va. 2009) (citing 15 U.S.C. § 1602(f)). TILA does allow for assignee liability in limited circumstances. *Id.* (citing 15 U.S.C. § 1641 (e)(1)).

  – One-year statute of limitations on damage claims for failure to disclose violations. *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986) ("Nondisclosure is not a continuing violation for purposes of the statute of limitations.") (quotation omitted).

Locke Lord Bissell & Liddell LLP

11

# Motion to Dismiss:
## Substantive Deficiencies - RESPA

- RESPA

  – QWR
    - Alleged QWR does not meet statutory requirements. 12 U.S.C. § 2605(e); *Castrillo v. Am. Home Mortgage Servicing, Inc.*, Civil Action No. 09-4369, 2010 WL 1424398, at *7 (E.D. La. Apr. 5, 2010);
    - QWR claim is not ripe—period to respond has not yet expired. 12 U.S.C. § 2605(e)(1)(A) (requiring a servicer to "provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays)"); 12 U.S.C. § 2605(e)(2) (requiring servicer to respond to a borrower's QWR "[n]ot later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt" of the QWR); 24 C.F.R. § 3500.21(e)(1), (e)(3) (clarifying that 12 U.S.C. § 2605(e)(1)(A) and 12 U.S.C. § 2605(e)(2) refer to "business days, rather than "calendar days"); and
    - Only servicers are subject to QWR provisions. 12 U.S.C. § 2605(e); *Castrillo*, 2010 WL 1424398, at *7.

Locke Lord Bissell & Liddell

12

# Motion to Dismiss:
# Substantive Deficiencies—RESPA (cont'd.)

- Failure to appropriately plead damages arising from violation. 12 U.S.C. § 2605(f)(1); *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000).
  - Stating a claim for statutory damages requires pleading a "pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1).

- One-year statute of limitations. *See Farmer v. Countrywide Fin. Corp.*, No. SACV08-1075 AG (RNBx), 2009 WL 1530973, at *5-6 (C.D. Cal. May 18, 2009).

- Can only recover damages for violations of 12 U.S.C. 2605 (RESPA servicer provisions), cannot enjoin foreclosure. 12 U.S.C. § 2605(f)(1)(A)-(B); *See also Chenault v. Chase Home Finance LLC*, No. 3:08-CV-0076-M, 2008 WL 4635392, at * 2 (N.D. Tex. Oct. 15, 2008) ("Even assuming a violation under § 2605(e), the statute does not provide any defense to foreclosure.")

Locke Lord Bissell & Liddell LLP

13

# Motion to Dismiss:
# Substantive Deficiencies – HAMP

- HAMP

  - No private right of action. *Simon v. Bank of Am., N.A.*, No. 10-cv-0030-GMN-LRL, 2010 WL 2609436, at *10 (D. Nev. June 23, 2010) ("[D]istrict courts have consistently held that [HAMP] does not provide borrowers with a private cause of action against lenders for failing to consider their application for loan modification . . . .").

  - Borrowers are not intended third-party beneficiaries of the Servicer Participation Agreement. *Simmons v. Countrywide Home Loans, Inc.*, No. 09cv1245 JAH, 2010 WL 2635220, at *5 (S.D. Cal. June 29, 2010) ("Qualified borrowers such as plaintiffs here cannot reasonably rely on a manifested intent to confer rights upon them since [HAMP] does not require that [lender] modify all eligible loans.")

Locke Lord Bissell & Liddell LLP

14

# Motion to Dismiss:

# Substantive Deficiencies – HAMP (cont'd.)

– Trial Period Plan does not give rise to an enforceable contract. *See Vida v. Onewest Bank, F.S.B.*, Civ. No. 10-987-AC, 2010 WL 5148473, at *6-7 (D. Or. Dec. 13, 2010) (dismissing breach of contract claim premised on a TPP because a "[TPP] is explicitly not an enforceable offer for loan modification" and payments under a TPP do not amount to consideration); *Prasad v. BAC Home Loans Servicing LP*, Civ. No. 2:10-CV-2343-FCD/KJN, 2010 WL 5090331, at *3-5 (E.D. Cal. Dec. 7, 2010) (dismissing contract related claims under a TPP because a binding contract does not arise under a TPP); *Locke v. Wells Fargo Home Mortgage*, No. 10-60286-Civ., 2010 WL 4941456, at *3-4 (S.D. Fla. Nov. 30, 2010) (finding that the statute of frauds barred the plaintiff's breach of contract claim); *but see Durmic v. J.P. Morgan Chase Bank, NA*, No. 10-CV-10380-RGS, 2010 WL 4825632, at *3-5 (D. Mass. Nov. 24, 2010) (denying motion to dismiss the plaintiff's contract related claims arising under a TPP).

Locke Lord Bissell & Liddell LLP

15

# Motion to Dismiss:
# Substantive Deficiencies – HAMP (cont'd.)

– Trial Period Plan does not give rise to a claim for promissory estoppel. *See Prasad*, 2010 WL 5090331, at *4-5 (denying plaintiff's promissory estoppel claim because the TPP did not amount to a clear promise and plaintiff did not allege a substantial detriment where the property was not currently in foreclosure); *Locke*, 2010 WL 4941456, at *4 (denying promissory estoppel claim because the TPP did not contain a "definite or substantial" promise and "promissory estoppel cannot be used to circumvent the statute of frauds'") (quotation omitted); *but see Durmic*, 2010 WL 4825632, at *5 (finding that plaintiff properly pled promissory estoppel "as an alternative theory of recovery").

Locke Lord Bissell & Liddell

16

# Motion to Dismiss:

## Substantive Deficiencies - Other Claims

- ### Deceptive Trade Practices Act

  - Borrower is not a consumer for Texas DTPA purposes. *See, e.g., Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336, at *6 (N.D. Tex. Jun. 24, 2009) (finding that under the Texas DTPA the plaintiffs were not consumers with regard to the defendant mortgage servicer, because the servicer "merely loaned [the plaintiffs] money in the form of a mortgage loan").

  - Georgia Fair Business Practices Act is designed to protect consumers from deceptive acts in the marketplace, not remedy private wrongs. As such, the FBPA does not apply to regulated areas of the consumer marketplace including dealing with residential mortgage transactions, where there is a regulatory framework in place to protect consumers. *See, e.g., Zinn v. GMAC Mortgage*, No. 1:05 CV 01747 MHS, 2006 WL 418437, at *3-4 (N.D. Ga. Feb. 21, 2006) (declining to apply the FBPA to the plaintiff's mortgage-related transactions, "because the alleged violation did not affect the consuming public generally"); *Krell v. Nat'l Mortgage Corp.*, 448 S.E.2d 248, 248-49 (Ga. Ct. App. 1994) (finding that violation of HUD regulations did not support a claim under the Georgia and Tennessee consumer protection statutes).

Locke Lord Bissell & Liddell

17

# Motion to Dismiss:

## Substantive Deficiencies – Other Claims (cont'd.)

- **Wrongful foreclosure**

  - Cannot state a claim if borrower has not lost possession of the home. *Smith v. Nat'l City Mortgage*, No. A-09-CV-881 LY, 2010 WL 3338537, at *13-14 (W.D. Tex. Aug. 23, 2010).

  - A plaintiff continuing to reside in the property post-foreclosure cannot recover damages under a wrongful foreclosure claim, and is also precluded from seeking rescission as a remedy where he has confirmed that he cannot pay the debt and has not made a tender. *See Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2010 WL 1026968, at *2-3 (E.D. Tex. Feb. 16, 2010) (finding that plaintiff could not recover damages for wrongful foreclosure because he remained in possession of the property); *Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835 (Tex. App.—Fort Worth 1999, pet. denied) (holding that in order to have a foreclosure sale cancelled, rescinded or otherwise set aside, the mortgagor is required to "tender 'all amounts due and owing' under the note and deed of trust") (quotation omitted).

Locke Lord Bissell & Liddell LLP

18

# Motion to Dismiss:

## Substantive Deficiencies – Other Claims (cont'd.)

- Show-me-the-note or lack-of-standing defense to foreclosure

  - Courts have rejected this defense to non-judicial foreclosure. *See, e.g., Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009) (stating that "courts have routinely held" that the show-me-the-note theory is inapplicable to nonjudicial foreclosure proceedings, where a state's foreclosure statute does not require presentation of the original note); *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV-2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010) (applying Texas foreclosure statute to find that MERS could administer a non-judicial foreclosure without producing the original loan documents).

  - State statutes allow interest holders other than the originating lender or assignee to conduct non-judicial foreclosures. *See, e.g.*, Tex. Prop. Code § 51.0025 (authorizing a servicer to conduct non-judicial foreclosure proceedings); *Sawyer*, 2010 WL 996768, at *3 (applying § 51.0025 to find that MERS could administer a non-judicial foreclosure without establishing its status as holder of the Note and Deed of Trust); *see also* Tex. Prop. Code § 51.0001(4)(C) (defining a "Mortgagee" as the "last person to whom the security interest has been assigned of record"); Tex. Prop. Code § 51.002(a)-(h) (setting forth the requirements for non-judicial foreclosure in Texas, which do not include establishing holder status); *Athey v. Mortgage Elec. Registration Sys., Inc.*, 314 S.W.3d 161, 165-66 (Tex. App.—Eastland 2010, pet. denied) (stating that Texas law does not require a mortgagee to establish its status as holder to conduct a non-judicial foreclosure).

LockeLordBissell&Liddell

19

**EXHIBIT 2**

THIS INSTRUMENT PREPARED BY & RETURN TO:
Patrick A. Taggart, Esq.
MCCURDY & CANDLER, LLC
Suite 600
250 East Ponce De Leon Avenue
Decatur, Georgia 30030

Lender Loan #0359526020
File No. 09-09159

## NOTICE OF APPOINTMENT OF SUBSTITUTE TRUSTEE

Tennessee, Sevier County

       **WHEREAS Catherine Gebhardt ,** executed a Deed of Trust on November 7, 2002, payable to the order of Michael T. Bates, Trustee, to secure a Promissory Note in the amount of $243,100.00, payable to the order of Sebring Capital Partners, Limited Partnership, all as fully set forth in said Deed of Trust which is of record in the Register's Office of Sevier County, Tennessee, in Deed Book 1562, Page 298, to which reference is hereby made; and

       **WHEREAS,** said Deed of Trust expressly provides that the holder of the Promissory Note is empowered to replace the Trustee therein named and appoint a successor trustee by the execution of an instrument to that effect and by filing same in the Register's Office of the County in which the property is situated; and

       **WHEREAS,** the undersigned, LNV CORPORATION, declares itself to be the owner and holder of said Promissory Note so secured by said Deed of Trust.

       **NOW, THEREFORE, LNV CORPORATION,** exercising their authority as such owner and holder, does, by these presents, nominate and appoint Patrick A. Taggart, Laura A. Grifka, Sidney A. Gelernter, or J. Michael Dugan as Substitute Trustee, effective April 10, 2009.

       Beneficiary has appointed the substitute trustee prior to the first notice of publication as required by T.C.A. § 35-5-101 and ratifies and confirms all actions taken by the substitute trustee subsequent to the date if the substitution and prior to the recording of this substitution.

       Should the undersigned become the last and highest bidder at the foreclosure sale, the Substitute Trustee is hereby authorized to transfer and assign said bid and to convey title to said foreclosure property to whomsoever the undersigned shall authorize. The statement in the Substitute Trustee's deed that the undersigned has requested transfer of its bid to grantee(s) in the Substitute Trustee's deed shall be binding on the undersigned and conclusive evidence in favor of the assignee or other parties thereto, that the Substitute Trustee was duly authorized and empowered to execute same.

BK/PG: 3333/729-730
09025006

2 PGS : APPOINTMENT OF TRUSTEE
ELAINE BATCH: 149472
05/01/2009 - 10:47 AM

| | |
|---|---|
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 10.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 12.00 |

STATE OF TENNESSEE, SEVIER COUNTY
**SHERRY ROBERTSON HUSKEY**
REGISTER OF DEEDS

**IN WITNESS WHEREOF,** the undersigned, LNV Corporation, has caused this instrument to be executed by its duly authorized officer and agent on April 10, 2009.

LNV Corporation

BY: _____

TITLE: __Jeffrey Stephan__
Limited Signing Officer

STATE OF Pennsylvania
COUNTY OF Montgomery

Before me, a Notary Public in and for said State and County, duly commissioned and qualified, personally appeared Jeffrey Stephan with whom I am personally acquainted (or proved on the basis of satisfactory evidence to be the person), and who, upon his or her oath, acknowledged himself or herself to be the ___LSO_____ of LNV Corporation, the within named bargainor, and as such officer being duly authorized so to do, executed the foregoing instrument for the purposed therein contained by subscribing thereto the name of the corporation by himself or herself as such officer.

WITNESS my hand and Notarial Seal at office on April 10, 2009.

_____
NOTARY PUBLIC

My Commission Expires:

_____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nikole Shelton, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Aug. 11, 2010
Member Pennsylvania Association of Notaries

**EXHIBIT 3**

Brought to you by

## opencorporates ....

A USER-FRIENDLY VIEW ON THE LEGAL ENTITY IDENTIFIER SYSTEM

Inv corporation

What is the LEI system?

About OpenCorporates

REGISTER

LOGIN

FILTER BY          COUNTRY          REGISTERED WITH

LEGAL FORM          ADVANCED

# Found 1 LEIs matching Inv corporation

Fuzzy Search of Registered Name, Transliterated Registered Name

Amonis NV - Corporate Bonds Euro    ISSUED    ACTIVE

549300IMLKY7L0GMQZ53

SHARE THIS SEARCH

CONNECT WITH US

Connect

Join

Follow

DOWNLOAD OPEN DATA

XML OR JSON

**RAPPORT SEMESTRIEL**

**30.06.11**

---

# AMONIS N.V.

---

**SICAV**

Société d'Investissement à Capital Variable
publique de droit belge à compartiments multiples
Société anonyme

OPC ayant opté pour des placements répondant aux conditions prévues par la directive
85/611/CEE

Aucune souscription ne peut être acceptée sur la base du présent rapport. Les souscriptions ne sont valables que si elles sont effectuées après la remise à titre gratuit du prospectus simplifié ou du prospectus

**AMONIS N.V.**

**EQUITY US SMID CAP**

| Dénomination | Quantité au 30.06.11 | Devise | Cours en devises | Evaluation (en EUR) | % Portefeuille | % Actif Net |
|---|---|---|---|---|---|---|
| INGRAM MICRO -A- | 22.200 | USD | 18,14 | 277.758,39 | 0,68% | 0,67% |
| INSIGHT ENTERPRISES | 8.503 | USD | 17,71 | 103.864,63 | 0,25% | 0,25% |
| INTEGRATED DEVICE TECHNOLOGY INC | 30.900 | USD | 7,86 | 167.516,64 | 0,41% | 0,40% |
| INTERACTIVE BROKERS GROUP INC | 4.850 | USD | 15,65 | 52.351,97 | 0,13% | 0,13% |
| INTERLINE BRANDS INC | 545 | USD | 18,37 | 6.905,30 | 0,02% | 0,02% |
| INTERMEC | 9.130 | USD | 11,04 | 69.521,12 | 0,17% | 0,17% |
| INTERNATIONAL RECTIFIER CORP. | 13.733 | USD | 27,97 | 264.932,24 | 0,64% | 0,64% |
| INVACARE CORP | 5.900 | USD | 33,19 | 135.062,94 | 0,33% | 0,33% |
| ISLE CAPRI CASINOS INC | 7.749 | USD | 8,85 | 47.300,51 | 0,12% | 0,11% |
| IXYS CORP | 5.375 | USD | 14,98 | 55.535,06 | 0,14% | 0,13% |
| J WILEY AND SONS INC -A- | 6.359 | USD | 52,01 | 228.114,35 | 0,55% | 0,55% |
| JARDEN CORP | 17.500 | USD | 34,51 | 416.543,09 | 1,01% | 1,00% |
| JOHN BEAN TECH W.ISS | 320 | USD | 19,32 | 4.264,17 | 0,01% | 0,01% |
| KADANT INC | 1.440 | USD | 31,51 | 31.295,93 | 0,08% | 0,08% |
| KBR INC | 23.800 | USD | 37,69 | 618.699,87 | 1,51% | 1,49% |
| KELLY SERVICES -A- NON-VOTING | 5.700 | USD | 16,50 | 64.868,78 | 0,16% | 0,16% |
| KEMET CORP | 6.300 | USD | 14,29 | 62.094,01 | 0,15% | 0,15% |
| KENNAMETAL INC | 12.560 | USD | 42,21 | 365.663,76 | 0,89% | 0,88% |
| KENNETH COLE PRODUCTIONS -A- | 1.600 | USD | 12,49 | 13.783,49 | 0,03% | 0,03% |
| KINDRED HEALTHCARE INC | 10.000 | USD | 21,47 | 148.084,28 | 0,36% | 0,36% |
| KINETIC CONCEPTS INC | 7.432 | USD | 57,63 | 295.414,12 | 0,72% | 0,71% |
| KRATOS DEFENSE&SECURITY SOLUTION | 1.800 | USD | 12,16 | 15.096,73 | 0,04% | 0,04% |
| LATTICE SEMICONDUCOR CORP | 10.200 | USD | 6,52 | 45.869,57 | 0,11% | 0,11% |
| LECROY CORP | 1.300 | USD | 12,04 | 10.795,60 | 0,03% | 0,03% |
| LENDER PROCESSING SERVICES WHEN ISSUED | 8.020 | USD | 20,91 | 115.665,90 | 0,28% | 0,28% |
| LEXMARK INTERNATIONAL INC -A- | 15.200 | USD | 29,26 | 306.757,25 | 0,75% | 0,74% |
| LITHIA MTRS | 6.600 | USD | 19,63 | 89.359,59 | 0,22% | 0,22% |
| MAIDENFORM BRANDS | 3.930 | USD | 27,66 | 74.975,89 | 0,18% | 0,18% |
| MENTOR GRAPHICS CORP | 18.415 | USD | 12,81 | 162.703,83 | 0,40% | 0,39% |
| MEREDITH CORP | 2.200 | USD | 31,13 | 47.236,61 | 0,11% | 0,11% |
| METTLER TOLEDO INTERNATIONAL | 4.000 | USD | 168,67 | 465.344,69 | 1,13% | 1,12% |
| MODINE MANUFACTURING CO | 1.200 | USD | 15,37 | 12.721,32 | 0,03% | 0,03% |
| MODUSLINK GLOBAL SOLUTIONS | 17.400 | USD | 4,48 | 53.765,56 | 0,13% | 0,13% |
| MTS SYSTEMS | 1.920 | USD | 41,83 | 55.394,42 | 0,13% | 0,13% |
| MUELLER INDUSTRIES INC | 6.800 | USD | 37,91 | 177.803,22 | 0,43% | 0,43% |
| NACCO INDUSTRIES INC -A- | 470 | USD | 96,82 | 31.386,28 | 0,08% | 0,08% |
| NARA BANCORP INC | 5.040 | USD | 8,13 | 28.261,68 | 0,07% | 0,07% |
| NASH FINCH CO | 2.500 | USD | 35,81 | 61.747,77 | 0,15% | 0,15% |
| NATIONAL FINANCIAL PARTNERS CORP | 8.870 | USD | 11,54 | 70.600,27 | 0,17% | 0,17% |
| NATL WESTERN LIFE INSURANCE COMPANY -A- | 500 | USD | 159,47 | 54.995,34 | 0,13% | 0,13% |
| NAVIGANT CONSULTING | 10.300 | USD | 10,49 | 74.522,88 | 0,18% | 0,18% |
| NAVISTAR INTERNATIONAL CORP | 14.700 | USD | 56,46 | 572.446,80 | 1,39% | 1,38% |
| NCR CORP | 30.040 | USD | 18,89 | 391.389,18 | 0,95% | 0,94% |
| NELNET INC -A- | 5.400 | USD | 22,06 | 82.162,98 | 0,20% | 0,20% |
| NESS TECHNOLOGIES INC | 5.900 | USD | 7,57 | 30.805,26 | 0,07% | 0,07% |
| NEWMARKET CORP | 1.900 | USD | 170,71 | 223.712,11 | 0,54% | 0,54% |
| NEWPARK RESOURCES INC | 17.600 | USD | 9,07 | 110.102,42 | 0,27% | 0,27% |
| NEWPORT | 7.700 | USD | 18,17 | 96.498,95 | 0,23% | 0,23% |
| NORTHEAST UTILITIES INC | 26.000 | USD | 35,17 | 630.699,73 | 1,54% | 1,52% |
| NU SKIN ENTERPRISES | 8.800 | USD | 37,55 | 227.913,23 | 0,55% | 0,55% |
| OIL STATES INTERNATIONAL | 10.000 | USD | 79,91 | 551.160,46 | 1,34% | 1,33% |
| OLIN | 15.100 | USD | 22,66 | 236.000,97 | 0,57% | 0,57% |
| OM GROUP | 6.400 | USD | 40,64 | 179.395,11 | 0,44% | 0,43% |
| OMNICARE INC | 25.500 | USD | 31,89 | 560.882,16 | 1,36% | 1,35% |
| ONEOK INC (NEW) | 6.450 | USD | 74,01 | 329.250,96 | 0,80% | 0,79% |
| ORBITZ WORLDWIDE INC | 7.500 | USD | 2,49 | 12.880,64 | 0,03% | 0,03% |
| OSI SYSTEMS | 868 | USD | 43,00 | 25.743,35 | 0,06% | 0,06% |
| PANTRY | 4.903 | USD | 18,79 | 63.542,69 | 0,15% | 0,15% |
| PATTERSON-UTI ENERGY | 29.000 | USD | 31,61 | 632.265,41 | 1,55% | 1,52% |
| PC CONNECTION INC | 5.500 | USD | 8,28 | 31.410,15 | 0,08% | 0,08% |
| PDL BIOPHARMA | 34.100 | USD | 5,87 | 138.060,49 | 0,34% | 0,33% |
| PEP BOYS-MANNY MOE  JACK | 3.080 | USD | 10,93 | 23.219,23 | 0,06% | 0,06% |
| PEPCO HOLDINGS | 10.740 | USD | 19,63 | 145.412,42 | 0,35% | 0,35% |
| PERKINELMER | 11.300 | USD | 26,91 | 209.734,11 | 0,51% | 0,51% |
| PERRY ELLIS INTERNATIONAL INC | 3.800 | USD | 25,25 | 66.179,26 | 0,16% | 0,16% |
| PHOTRONICS INC | 8.200 | USD | 8,47 | 47.904,27 | 0,12% | 0,12% |
| PINNACLE ENTERTAINMENT | 11.600 | USD | 14,90 | 119.212,33 | 0,29% | 0,29% |
| PIPER JAFFRAY COS ( WHEN ISSUED) | 3.100 | USD | 28,81 | 61.600,17 | 0,15% | 0,15% |
| PITNEY BOWES INC | 5.900 | USD | 22,99 | 93.555,20 | 0,23% | 0,23% |
| PNM RESOURCES INC | 1.750 | USD | 16,74 | 20.205,54 | 0,05% | 0,05% |

**EXHIBIT 4**

Case 3:12-cv-00468  Document 10-4  Filed 08/19/13  Page 2 of 5  PageID #: 97

# STITES & HARBISON PLLC

ATTORNEYS

SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219
(615) 782-2200
(615) 782-2371 Fax
www.stites.com

August 31, 2012

Ronald G. Steen, Jr.
(615) 782-2280
(615) 742-7238 FAX
ronald.steen@stites.com
Also admitted in Alabama

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Catherine Gebhardt
3753 Thomas Cross Road
Sevierville, TN 37876

RE:    LNV Corporation, a Nevada corporation ("LNV")
Loan No.: 1423946779
Property Address: 3753 Thomas Cross Road, Sevierville, TN 37876
Principal Balance: $348,771.21

Dear Ms. Gebhardt:

This firm represents LNV, the payee and holder of the Loan described above. LNV has notified me that the Loan is in default. As of the date of this letter, the full balance of the Loan has been accelerated and you owe $348,771.21, of which $234,914.99 constitutes the principal amount due and owing ("Indebtedness"). Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event LNV may deposit your check and then seek the remainder of the adjusted balance of the Indebtedness from you. If you want an updated balance before you make your payment, then write to the undersigned before making the payment.

THIS FIRM IS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt evidenced by the Loan or any part of it. If you dispute it - by notifying me in writing to that effect - I will obtain and mail to you proof of the debt. If, during the same period, you request in writing the name and address of your original creditor, if the original creditor is different from LNV, I will furnish you with that information also. The law does not require me to wait until the end of the 30-day period before taking action to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the 30-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect this debt until I mail the requested information to you.

Alexandria, VA    Atlanta, GA    Frankfort, KY    Franklin, TN    Jeffersonville, IN    Lexington, KY    Louisville, KY

STITES & HARBISON PLLC
ATTORNEYS

Catherine Gebhardt
August 31, 2012
Page 2

Please disregard this letter if either you have already cured the default or a bankruptcy petition has been filed on your behalf.

Very truly yours,

Ronald G. Steen, Jr.

cc:    Jeff Tschirhart, Esq.

17220N.120959.956650:1:NASHVILLE

# STITES & HARBISON PLLC
### ATTORNEYS

SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219
[615] 782-2200
[615] 782-2371 Fax
www.stites.com

Ronald G. Steen, Jr.
(615) 782-2280
(615) 742-7236 FAX
ronald.steen@stites.com
Also admitted in Alabama

February 28, 2014

**BY CERTIFIED MAIL**
  **RETURN RECEIPT REQUESTED**

Ms. Catherine Gebhardt
3753 Thomas Cross Road
Sevierville, TN 37876

      RE:    **Mortgagor/Grantor: Catherine Gebhardt**
             **Loan No. 1423946779 (the "Loan")**
             **Property Address: 3753 Thomas Cross Road, Sevierville, TN 37876**

Dear Ms. Gebhardt:

    This firm represents MGC Mortgage, Inc. ("MGC"), with regard to Loan No. 1423946779. We are writing in response to your correspondence via letter dated February 7, 2014 (the "Letter"). Although couched as qualified written request ("QWR") under the Real Estate Settlement Procedures Act ("RESPA"), the Letter seeks production of documents and information previously supplied to you in that certain lawsuit styled as *LNV Corporation v. Catherine Gebhardt*, Case No. 3:12-cv-468, currently pending in the United States District Court for the Eastern District of Tennessee (the "Lawsuit"), and therefore MGC is not obligated to respond. *See* 12 C.F.R. § 1024.35(g).

    As you may be aware, a QWR is a written correspondence which includes a statement of specific reasons why a borrower believes that his/her account is in error and which provides sufficient detail to allow the servicer of the loan to review the borrower's account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made or explain to the borrower why the servicer believes the account is accurate. A QWR is *not* a vehicle for a consumer to obtain confidential information concerning the lender's business practices, trade secrets or other proprietary information, nor can it be used to support a fishing expedition for documents or as a mechanism for seeking any other information which does not relate specifically to the borrower's loan. Additionally, it cannot be used to avoid the discovery deadlines set forth by the Court in the Lawsuit.

    The Letter provides no detail regarding any specific errors made by the servicer in connection with the Loan. Although the Letters are not in conformity with 12 U.S.C. § 2605, MGC reviewed its file in an attempt to obtain information responsive to your inquiries which were consistent with 12 U.S.C. § 2605. Enclosed is a copy of the payment history associated

Exhibit J page 4

**STITES & HARBISON** PLLC
ATTORNEYS

Ms. Catherine Gebhardt
February 28, 2014
Page 2

with this Loan.  Also enclosed is a Payoff Statement.  Furthermore, MGC finds no error with the Loan or any matters related to the Loan including the application of credits and debits thereto.

The remainder of your requests are overly broad or do not relate to any specific acts of wrongdoing related to the Loan.  Accordingly, these requests are declined, as they seek documentation and information that goes beyond that which is available through a "qualified written request" under 12 U.S.C. § 2605.

In providing the above response, MGC is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under your loan documents, at law or in equity, all of which rights and remedies are expressly reserved.  If you have any further concerns or questions regarding this matter, please contact me at (615) 782-2280 or ronald.steen@stites.com.  Thank you.

Very truly yours,

Ronald G. Steen, Jr.

RGS
Enclosures

1041326:1:NASHVILLE

**Exhibit J page 5**

**EXHIBIT 5**



**STATE OF NEVADA**
# DEPARTMENT OF TAXATION
Web Site: http://tax.nv.gov
1550 College Parkway, Suite 115
Carson City, Nevada 89706-7937
Phone: (775) 684-2000    Fax: (775) 684-2020

RENO OFFICE
4600 Kietzke Lane
Building L, Suite 235
Reno, Nevada 89502
Phone: (775) 687-9999
Fax: (775) 688-1303

BRIAN SANDOVAL
*Governor*
JAMES DEVOLLD
*Chair, Nevada Tax Commission*
DEONNE E. CONTINE
*Executive Director*

LAS VEGAS OFFICE
Grant Sawyer Office Building, Suite1300
555 E. Washington Avenue
Las Vegas, Nevada 89101
Phone: (702) 486-2300    Fax: (702) 486-2373

HENDERSON OFFICE
2550 Paseo Verde Parkway, Suite 180
Henderson, Nevada 89074
Phone: (702) 486-2300
Fax: (702) 486-3377

September 19, 2016

WFAA-TV
ATTN: Brett Shipp
606 Young Street
Dallas TX 75202

Re: LNV Corporation

Dear Sir:

Pursuant to NRS 360 as revised by Senate Bill No. 33, effective May 30, 2011, the Department of Taxation (Department) is prohibited from providing any information regarding a taxpayer that is obtained by the Department except under very limited circumstances. Disclosure of such information is a misdemeanor. A response to a request by you and or your agency for information is not an exception to the prohibition.

The limited circumstances under which we are permitted to provide information includes whether or not an individual/organization has an account with the Department. Based on our records, we do show LNV Corporation was registered with the Department.

If you have any questions, please contact me at (775) 684-2054.

Sincerely,

*Marian Singleton*

Marian Singleton, Revenue Officer III
Compliance Division

CC: Taxation

## Marian Singleton

**From:** Brenda Rubalcava
**Sent:** Monday, September 19, 2016 8:27 AM
**To:** Marian Singleton
**Cc:** Tina Padovano
**Subject:** FW: Public Records Request Question

-----Original Message-----
From: Tina Padovano
Sent: Monday, September 19, 2016 8:12 AM
To: Kathleen Williams; Jo Lynn Smith
Cc: Brenda Rubalcava
Subject: FW: Public Records Request Question

Below is another public records request.  Is this something that we can give to Mr. Shipp?

Thank you.
Tina

-----Original Message-----
From: Shipp, Brett [mailto:bshipp@wfaa.com]
Sent: Tuesday, September 06, 2016 8:03 AM
To: Tina Padovano
Cc: Trahan, Jason P
Subject: Public Records Request Question

Dear Custodian of Public Records,


Under the Freedom of Information provisions of the State of Nevada I am requesting access to or copies of the following
public information:

* A copy of the first and or original business license awarded to LNV Corporation from 2008 or possibly earlier.

If you have any questions please contact me prior to appealing this request to the Office of Attorney General.

Many thanks.

Brett Shipp
News 8 Investigates
WFAA-TV
606 Young Street
Dallas, TX.
75202

**EXHIBIT 6**

# MGC Mortgage, Inc.

7195 Dallas Parkway
Plano, Texas 75024-3601
www.mgcmortgage.com
1-866-544-9820

July 28, 2008

CATHERINE GEBHARDT
3753 THOMAS CROSS ROAD
SEVIERVILLE TN 37876

RE:    *Previous Homecomings Loan Number 7435022215*
       *New MGC Mortgage, Inc. Loan Number 17101164*

Dear Borrower:

Effective July 2, 2008, the servicing of your mortgage loan, that is, the right to collect payments from you, will be transferred from Homecomings Financial, LLC to MGC Mortgage, Inc. The transfer of servicing of your mortgage loan does not affect any term or condition of your mortgage instruments, other than terms related to the servicing of your loan. This notice should have been sent to you within 15 days of the servicing transfer date. However, the processing of transfer information has delayed this notice. Further, MGC Mortgage, Inc. ensures that, as a result of the delayed notice, you will not be required to pay an amount in excess of any amount that you otherwise would have paid.

Homecomings Financial, LLC will continue servicing your loan, which includes the collection of payments, through July 1, 2008. Should you have any questions relating to the transfer of servicing from Homecomings Financial, LLC, please contact its Customer Service Department toll-free at 1-800 206-2901. **Beginning July 2, 2008, all payments and correspondence should be directed to MGC Mortgage, Inc. at the following addresses.** Any payments received by Homecomings Financial, LLC from you after July 2, 2008, will be forwarded directly to MGC Mortgage, Inc.

| <u>Payments should be addressed to:</u> | <u>Correspondence should be addressed to:</u> |
|---|---|
| MGC Mortgage, Inc. | MGC Mortgage, Inc. |
| 15770 N Dallas Parkway LB 62 | 7195 Dallas Parkway |
| Dallas, TX 75248-3305 | Plano, TX 75024 |
| | Attn: Borrower Relations Department |
| | Website: www.mgcmortgage.com |

All payments should be made payable to MGC Mortgage, Inc. Until you receive your first monthly billing statement from MGC Mortgage, Inc., **please note your new MGC Mortgage, Inc. loan number on your check for easy identification.**

If your payments are currently made via automatic transfer from your checking or savings account, this service will be cancelled as of the transfer date. Enclosed is information regarding ACH payments with MGC Mortgage, Inc., should you wish to continue having your payments made via automatic transfer from your checking or savings account.

This transfer may affect the terms or the continued availability of mortgage life or disability insurance or any other type of optional insurance. If you currently have life, accidental death, and/or disability

insurance, your insurance will be cancelled effective July 2, 2008. However, you may contact your carrier for arrangements to maintain your coverage through direct billing.

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12U.S.C. 2605): During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old loan servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.D. 2605) gives you certain consumer rights. If you sent a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of receipt of your request. A "qualified written request" is written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate correction to your account, and must provide you with a written clarification regarding the dispute. During this 60-business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

If you have any questions regarding the transfer of your loan, you may direct them to our Borrower Relations Department at (866) 544-9820. This telephone number is toll-free. After July 2, 2008, you can reach us Monday through Friday (excluding holidays) between 8:00 a.m. and 4:45 p.m. Central time.

We are pleased to have you as a customer of MGC Mortgage, Inc., and we look forward to servicing your loan.

Sincerely,


Borrower Relations Department
MGC Mortgage Inc.


Enclosures

# MGC Mortgage, Inc.

7195 Dallas Parkway
Plano, TX 75024-4922
1-866-973-3399

June 16, 2009

 0-762-96291-0000893-001-000-000-000-000

CATHERINE GEBHARDT
3753 THOMAS CROSS RD
SEVIERVILLE TN 37876-1243

RE:    **Previous GMAC Loan Number 359526020**
       **New MGC Mortgage, Inc. Loan Number 0000003378**

Dear Borrower:

Effective July 01, 2009, the servicing of your mortgage loan, that is, the right to collect payments from you, was transferred from GMAC to MGC Mortgage, Inc. The transfer of servicing of your mortgage loan does not affect any term or condition of your mortgage instruments, other than terms related to the servicing of your loan.

GMAC is no longer servicing your loan, which includes the collection of payments, as of July 01, 2009 Should you have any questions relating to the servicing of your loan prior to July 01, 2009please contact GMAC.  Their Customer Service toll-free number is 1-800-766-4622 **Beginning July 01, 2009, all payments and correspondence should be directed to MGC Mortgage, Inc. at the following addresses.**

| Payments should be addressed to: | Correspondence should be addressed to: |
|---|---|
| MGC Mortgage, Inc. | MGC Mortgage, Inc. |
| 75 Remittance Drive  Suite 6664 | Attn:  Borrower Relations Department |
| Chicago, IL  60675-6664 | 7195 Dallas Pkwy |
| | Plano, TX  75024 |

All payments should be made payable to MGC Mortgage, Inc. Any payments received by GMAC from you after July 01, 2009, will be forwarded directly to MGC Mortgage, Inc. Until you receive your first monthly billing statement from MGC Mortgage, Inc.,**please note your new MGC Mortgage, Inc. loan number on your check for easy identification.**

If you currently make your payments via automatic transfer (ACH Draft) from your checking or savings account, this service will be **cancelled** as of **July 01, 2009**. **Your mortgage payment will no longer draft from your checking or savings account unless you complete and return the enclosed form.**

You may also use the enclosed form to establish ACH Drafting of your mortgage payment even if you have not used it in the past.  Upon receipt of the ACH form, we will process your request and notify you in writing of the effective date on which we will begin to draft your mortgage payment.  MGC Mortgage will consider drafting your mortgage payment on a specific day of the month as long as that date requested is within your grace period as defined in your Note.  Until you receive this notification please continue to send your payments to the mailing address above or call MGC Mortgage, Inc at 1-866-973-3399 to make a one time phone payment with one of our customer service representatives.

This transfer may affect the terms or the continued availability of mortgage life or disability insurance or any other type of optional insurance. If you currently have life, accidental death, and/or disability insurance, your insurance will be cancelled effective July 01, 2009. However, you may contact your carrier for arrangements to maintain your coverage through direct billing.

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605): During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old loan servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.D. 2605) gives you certain consumer rights. If you sent a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of receipt of your request. A "qualified written request" is written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate correction to your account, and must provide you with a written clarification regarding the dispute. During this 60-business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

If you have any questions regarding the transfer of your loan, you may direct them to our Borrower Relations Department at 866-973-3399. This telephone number is toll-free. After July 01, 2009, you can reach us Monday through Friday (excluding holidays) between 8:00 a.m. and 5:00 p.m. Central time.

We are pleased to have you as a customer of MGC Mortgage, Inc., and we look forward to servicing your loan.

Sincerely,


Borrower Relations Department
MGC Mortgage Inc.

Enclosures


If your loan is currently in bankruptcy, this letter is being sent for informational purposes only. This letter is not intended as an attempt to collect a debt, assess, or claim against or demand payment from any person who is protected by the U.S. Bankruptcy Code.

If you have recently been discharged of your personal liability on this debt due to your Chapter 7 bankruptcy, MGC is not seeking to collect, recover or offset the debt as a personal liability.

# MGC Mortgage, Inc

7195 Dallas Parkway
Plano, Texas 75024-3601
www.mgcmortgage.com
1-866-544-9820


October 10, 2008

CATHERINE GEBHARDT
3753 THOMAS CROSS ROAD
SEVIERVILLE, TN 37876


### NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

Re:    17101164

Dear Borrower:

You are hereby notified that the servicing of the above mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from MGC Mortgage, Inc. to GMAC Mortgage Company, LLC. effective October 27, 2008.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to your mortgage loan. All other terms contained in your mortgage documents remain in effect. Please note that if you have other loans serviced by MGC Mortgage, Inc. these loans will remain with MGC Mortgage, Inc. unless you are informed otherwise.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or at closing.

Your present servicer is MGC Mortgage, Inc.. If you have any questions relating to the transfer of servicing from your present servicer, call our Borrower Relations Department between 8:00 a.m. to 5:00 p.m., CST, Monday through Friday at (866) 544-9820. This is a toll-free number.

Your new servicer will be GMAC Mortgage Company, LLC. Below are its contacts for correspondence and payment questions:

| **Correspondences should be addressed to:** | **Payments should be addressed to:** |
|---|---|
| GMAC Mortgage Company, LLC | GMAC Mortgage Company, LLC |
| PO Box 4622 | PO Box 780 |
| Waterloo, IA 50704-4622 | Waterloo, IA 50704-0780 |

The toll-free telephone number of your new servicer, GMAC Mortgage Company, LLC, is (866) 725-0782. If you have any questions relating to the transfer of servicing to your new servicer, call Customer Service between 7:00 a.m. to 9:00 p.m., CST, Monday – Friday and between 9:00 a.m. to 1:00 p.m., CST, Saturday.

The date that your present servicer will stop accepting payments from you is October 26, 2008. The date that your new servicer will start accepting payments from you is October 27, 2008. Send all payments due on or after that date to your new servicer.

If you have mortgage life, disability, other type of optional insurance policies, and/or automatic payment drafting, the policies and automatic drafting will be cancelled. You may contact your new servicer to inquire about mortgage life, disability, other type of optional insurance policies, and/or automatic payment drafting.

You should also be aware of the following information which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a fee may not be imposed on you.

Section 6 of RESPA gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 Business Days of receipt of your request. A "qualified written request" is written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where services are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

We appreciate the opportunity to have been of service to you, and we are sorry for any inconvenience this has caused you.

Sincerely,

Borrower Relations Department

| Present Servicer: | MGC Mortgage, Inc. | |
| Future Servicer: | GMAC Mortgage Company, LLC | Effective October 27, 2008 |

## GMAC Mortgage Account Statement

### CUSTOMER INFORMATION

Name: Catherine Gebhardt

Account Number: 0359526020
Home Phone #: (865)774-1434

### PROPERTY ADDRESS

3753 THOMAS CROSS ROAD
SEVIERVILLE    TN 37876

# GMAC Mortgage

Visit us at www.gmacmortgage.com for account information or to apply on-line.

#6WNHJPY
#KW04729803415#

CATHERINE GEBHARDT
3753 THOMAS CROSS ROAD
SEVIERVILLE TN 37876-1243

For information about your existing account, please call: 1-800-766-4622.

For information about refinancing or obtaining a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

### Account Information

| | |
|---|---|
| Account Number | 0359526020 |
| Current Statement Date | November 13, 2008 |
| Maturity Date | December 01, 2032 |
| Interest Rate | 12.00000 |
| Current Principal Balance* | $235,191.53 |
| Current Escrow Balance | $2,610.28 |
| Interest Paid Year-to-Date | $9,715.47 |
| Taxes Paid Year-to-Date | $0.00 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:   1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

### Current Amount Due

| | |
|---|---|
| Principal and Interest | $2,489.50 |
| Subsidy/Buydown | $0.00 |
| Escrow | $257.37 |
| Amount Past Due | $5,493.74 |
| Outstanding Late Charges | $1,313.51 |
| Other | $1,146.11 |
| Total Amount Due | $8,408.01 |
| Account Due Date | October 01, 2008 |

### Account Activity Since Last Statement

| Description | Due Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Receipt | 09/01/08 | 11/13/08 | $455.76 | | | | | | $455.76 |
| Receipt | 09/01/08 | 11/13/08 | $784.85 | | | | | | $784.85 |
| Payment | 09/01/08 | 11/13/08 | $2,746.87 | $136.22 | $2,353.28 | $257.37 | | | |
| Payment | 08/01/08 | 11/13/08 | $2,468.28 | $134.87 | $2,354.63 | $257.37 | | | |
| Receipt | 07/01/08 | 10/31/08 | $278.59 | | | | | | $278.59- |
| Payment | 07/01/08 | 10/31/08 | $2,739.37 | $133.54 | $2,355.96 | $257.37 | | | $278.59- |
| Receipt | 06/01/08 | 10/31/08 | $7.50 | | | | | | $7.50- |
| Payment | 06/01/08 | 10/31/08 | $3,010.48 | $101.51 | $2,651.60 | $257.37 | | | $7.50- |
| PD PROP INSPECTION FEE | 05/01/08 | 10/29/08 | $94.50- | | | | | | $94.50- |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

If you are considering a new home purchase or refinancing your existing mortgage, we are here to help.  Simply call the number above or visit our website for fast, convenient service.

Looking for a great rate on a certificate of deposit? Visit www.gmacbank.com and check out a 12-month CD from GMAC Bank. It's smart, it's simple, and best of all, it's safe. Member FDIC.

### See Reverse Side For Important Information

## Mail This Portion With Your Payment

### Mortgage Payment Coupon

| Account Number | Due Date | Mortgage Payment | Total Amount Due | Amount Due With Late Fee if Received 15 Days AFTER Due Date | |
|---|---|---|---|---|---|
| 0359526020 | 10/01/08 | $2,746.87 | $8,408.01 | $2,746.87 | **GMAC Mortgage** |
| CATHERINE GEBHARDT | | | | | |

Please assist GMAC Mortgage in applying your payment

**Extra Funds**

| | |
|---|---|
| Full Payment(s) | $ |
| ADDITIONAL Principal | $ |
| ADDITIONAL Escrow | $ |
| Late Charge | $ |
| Other Fees (please specify) | $ |
| Total Amount Enclosed | $ |

Sign here to enroll in monthly ACH.
(See back for details.)

GMAC MORTGAGE
PO BOX 9001719
LOUISVILLE KY 40290-1719



02   1008   0359526020   00274687   00000   22222   8

**Home Equity, Refinancing, or Purchasing a New Home - 24 Hours a Day/7 Days a Week**

If you are considering a new home purchase, home equity financing, or refinancing your existing mortgage, GMAC Mortgage is here to help. We are available 24 hours a day, 7 days a week. Simply call 1-800-753-4622 or visit www.gmacmortgage.com for fast, convenient service. Or, you can always make an appointment with a GMAC Mortgage representative in your local area for face-to-face personal service. Whichever method you choose, be sure to contact us today to apply, or to obtain more information on how we can help you with your home mortgage needs.

| **To Apply Online** | **To Apply by Phone** | **To Reach Your Local Office** |
| --- | --- | --- |
| www.gmacmortgage.com | 1-800-753-GMAC (4622) | 1-866-806-GMAC (4622) |

## Convenient Payment Options

### Automatic Payment Plan

By signing the box on the front of the statement, GMAC Mortgage is authorized to withdraw your scheduled payment on your due date from your bank account. Please understand that you must continue to remit monthly payments by check until written confirmation is received.

Enrolling in GMAC Mortgage's Automatic Payment Plan is quick and easy. First, have your bank routing number and bank account number available and then call us at 1-800-766-4622.

- Listen for the prompts to access your mortgage account information
- Enter your mortgage Account Number and Social Security Number
- Follow the prompts.
  You can complete your enrollment , make changes to your existing Automatic Payment Plan information or request that an Automatic Payment Plan enrollment form be mailed directly to your home.

**Online Payment Services** — Pay your mortgage bills and view your mortgage account statement online! To get started simply register for Account Access at www.gmacmortgage.com, log-in, and follow the enrollment instructions.

**Mortgage Accelerator** — The bi-weekly payment option, available to qualified customers, could save you thousands of dollars on interest payments...call 1-800-335-6970 for more information (there are fees assessed with this program).

**Mail or Express Mail** — When making your mortgage payment, please detach the coupon portion and mail with your check or money order. Do not send cash. Do not send post dated checks. If paying more than the amount due, be sure to indicate on the coupon how to apply the excess money. Please write your account number on your check or money order.

**If you use a third party bill payer service or if you do not have your mortgage payment coupon** send to:   GMAC Mortgage, Attn: Payment Processing
PO Box 79135, Phoenix, AZ 85062-9135

**For Express Mail Only** send to:   GMAC Mortgage, 6716 Grade Lane,
Building 9, Suite 910, Louisville, KY 40213-1407

**Pay by Phone** — For information and the fee to use this quick and convenient service call 1-800-766-4622. Please have your bank routing number and bank account number available when you call.

## Account Information or Questions — 1-800-766-4622 or www.gmacmortgage.com

Our automated telephone service will help you get fast and confidential answers to questions. Be sure to have your account number and social security number available for identification. You can call 24 hours a day, 7 days a week. Representatives are available from 6:00 a.m.-10:00 p.m. CT Monday-Friday, and 9:00 a.m.-1:00 p.m. CT Saturday.

Special Number for the Hearing Impaired: 1-800-395-9228

**Inquiries** — General inquiries/correspondence should be mailed separately from your account payments.

**Supplemental Tax Bill** — If you receive a supplemental or interim bill from the tax collector and would like the bill paid from escrow, promptly forward the bill to the address listed below prior to the delinquency date.

| **General Inquiries** | **Insurance Policies/Bills** | **Tax Bills** | **Tax Bills in PA** |
| --- | --- | --- | --- |
| GMAC Mortgage | GMAC Mortgage | GMAC Mortgage | GMAC Mortgage |
| Attn: Customer Care | Attn: Tax Dept. | Attn: Tax Dept. | Attn: Tax Dept. |
| P.O. Box 4622 | P.O. Box 4025 | P.O. Box 961219 | P.O. Box 961241 |
| Waterloo, IA 50704-4622 | Coraopolis, PA 15108-6942 | Ft. Worth, TX 76161-0219 | Ft. Worth, TX 76161-0241 |
| | 1-800-256-9962 | | |

**Qualified Written Request** — Under the Real Estate Settlement Procedures Act, a qualified written request is a written correspondence, other than notice on your payment coupon or other payment medium supplied by us, regarding the servicing of your loan which includes your name, account number, and your reasons for the request. Any qualified written request you wish to submit must be sent to: GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

## Important Information

**Electronic Debit** — When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic funds transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution.

**Important Notice** — GMAC Mortgage may assess a return check fee consistent with the laws of your state and your mortgage contract on all checks returned unpaid by your financial institution. Additionally, GMAC Mortgage may be attempting to collect a debt and any information obtained will be used for that purpose. GMAC Mortgage may charge a fee for processing payoff requests.

**Important Credit Reporting Notification** — We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Your Privacy** — You will receive a copy of the GMAC Mortgage Privacy Notice annually. Should you wish to obtain an additional copy, please write to us at GMAC Mortgage, Voice of the Customer, 100 Witmer Rd., Horsham, PA 19044-1467.

**Partial Payments** — Partial payment funds, if not specified, will be posted to outstanding fees, escrow shortages or as a principal reduction in accordance with the terms of your loan.

**Optional Product Information** — Failure to pay a monthly charge for an Optional Product billed under "Add'l Products" will not cause your mortgage account to be in default. Please call 1-800-766-4622 if you have any questions or to cancel your Optional Product enrollment.



# EXHIBIT 7

**Allstate.**
You're in good hands.

*First Policy*

Alliance Menu | My Transactions | Alliance Communications| Help

Agent ID: A061542          Agency: Kevin Yates          Producer Name: STNC3F01

Policy Number:     Display Policy as of:

[ ]     [ ][ ][ ] 🔲   [ Search ]                    [ View Customer Portfolio ]   [ Exit ]

**Rating State: TN**                    **CATHERINE GEBHARDT**          **Status: TERMINATED**
**Homeowners: 930513305 11/09**         Home: (865) 428-1682            Pay Plan: MONTHLY
Ind Home                                Policy Term: 11/09/2002-        Pay Method: DIRECT MAIL
Deluxe Homeowners - Primary Residence   11/09/2003                     Premium: $2,172.00
Agent of Record: (41 06037)             Original Year: 2002            AAP:$2,172.00
Subproducer Code: 001                   Number of Times Renewed: 0    Balance: $0.00
Termination Date: 12/13/2002                                          Last Bill Amount: $0.00
Termination Reason: 50: CAUSE-REJECTED                                Current Amount Due: $0.00
APPLICATION                                                           Due Date:

                              **Activity**
                           Select One         •                    [ Continue ]

1   Policy View      2  [████]      3  [█████████]      4  [████]

## Residence Information                                                    ❓

Named Insured:          CATHERINE GEBHARDT          Home: (865) 428-1682
Mailing Address:        3753 THOMAS CROSS RO
                        SEVIERVILLE, TN 37876 - 1243

Insured Property Address:   Same as Mailing Address

## Coverage                                                                 ❓

Company-Line: Ind Home          Policy Type: Deluxe Homeowners -
                                Primary Residence

Number of Families: 1                                       Construction Type: Brick Veneer (Face
                                                            Brick, Stone, Masonry)

Town Class: 06                  Territory Zone: 027          Group: 06

                                                            Rating Tier: 006F

Total Dwelling Protection: $284,909

**Deductibles**

All Perils: $1,000

| Coverages | Limits | Deductibles | Premiums |
|---|---|---|---|
| Dwelling | $284,909 | $1,000 All Peril | $2,163.00 |
| Family Liability and Guest Medical Protection: | $100,000/$5,000 | | $9.00 |
| Replacement Cost Contents: | | | |
| Building Structures Reimbursement Extended Limits: | | | |

View Additional Premium Information

**Special Charges**

                                                            **Policy Premium: $2,172.00**

## Discounts Applied                                                        ❓

Protective Device          5.00%
Age of Home                9.00%

ALLSTATE INDEMNITY COMPANY
TENNESSEE

Home Office
Northbrook, IL
LOSS DEDUCTIBLES APPLIED                    Application No. 000078231763615
  The following loss deductibles apply as specified below.

    All Peril          $1000

DISCOUNTS APPLIED
  The following discounts have been applied to reduce your insurance premium.
  Protective Device                         Age of Home
Home Buyer

VALUE OF PERSONAL PROPERTY - APPROXIMATE VALUE OF PERSONAL PROPERTY IN THE
FOLLOWING CATEGORIES: (Note: The values listed are not an indication of
amount of coverage.  You must purchase increased protection for items in
these categories over the dollar amounts specified in the policy in order
to extend the Personal Property Protection Coverage.  See the policy for
the coverage limits on these items and see above under the section titled
"Section III Optional Coverages/Increased Coverages Applied" for your
specific increased limits.)

    Jewelry:                 Watches:              Furs:
    Silverware:              Cameras:              Stereo:

PREMIUM INFORMATION
  Total Estimated Annual Policy Premium     $2073.00
                        Amount Paid         $1970.00 Check/Money Order

ALLSTATE COST ESTIMATOR                    CALCULATIONS
  Ground Floor Square Footage:               Adjusted Base Cost     $149300
  Total Living Area Square Footage: 4200     Class Factor               3.0
  Year Dwelling Built: 1981                  Year Built Factor         1.00
  Construction Class:  3.0                   Location Multiplier       1.38
  Number of Stories: 2 STORY                 Replacement Cost       $274785

DWELLING INFORMATION
  Mo/Year Dwelling Purchased: 11/2002
  Purchase Price:  $280000          Current Market Value:  $300000
  No. Apts./Family Units:   1
  No. of Rooms:  9                  Roof Type: COMPOSITION
  Construction: BRICK
  Applicant lives in the building as: OWNER
  Unit Residence: PRIMARY           Unit type: HOUSE
  Dwelling in Course of Construction: No

ALLSTATE INDEMNITY COMPANY
TENNESSEE

Home Office
Northbrook, IL                           Application No. 000078231763615
HOUSEHOLD INFORMATION
    Date applicant moved into present residence: 11/2002
    Is the residence regularly unoccupied during the day or evening by all
    adult occupants in the household?:  NO
    Number of dogs on premises: NONE    Does anyone in the household smoke?: NO

POLICY TYPE - DELUXE                HOMEOWNERS

LOCATION OF PROPERTY
    Location of Property: SEVIERVILLE
    County: SEVIER                        Territorial Zone: 027
    Primary Responding Fire Dept.: SEVIERVILLE
    Is the property located within the city, T.S. or F.D.?: YES
    Miles to Fire Department: 3        Feet to Fire Hydrant:  800
    Subscription Fire Dept.: NO
    ADJUSTED PER RULE 4C/5D: NO        TOWN CLASS RATING: 0006

    Is a pre-approved alternate water supply available?:  NO

COVERAGES
    The premium stated below reflects the applicable loss deductibles
    listed under the section titled "Loss Deductibles Applied"

SECTION I COVERAGES                        LIMITS      PREMIUM
    Dwelling Protection                   $274785       $2064
    Other Structures Protection            $27479        INCL
    Personal Property Protection          $192350        INCL

SECTION I OPTIONAL/INCREASED COVERAGES SELECTED
    Building Structure Reimbursement Extended Limits                INCL
    (Dwelling & Other Structures)
    Property Insurance Adjustment                                  INCL

SECTION II COVERAGES
    Family Liability Protection - each occurrence    $100000
    Guest Medical Protection - each person             $5000
    Total Section II Premium                                        $9

SECTION III OPTIONAL COVERAGES/INCREASED COVERAGES APPLIED
    NONE

S.P.P. COVERAGES : NONE

Page   2 of More

ALLSTATE INDEMNITY COMPANY
TENNESSEE

Home Office
Northbrook, IL

Applicant Name: CATHERINE GEBHARDT
Address      : 3753 THOMAS CROSS RD
City         : SEVIERVILLE
Home Phone No.: 865-774-1434

Application No. 000078231763615

St.: TN  Zip Code: 37876
County: SEVIER

LOCATION OF PROPERTY : SAME

POLICY DISTRIBUTION/BILLING
   Policy sent to:  INSURED
   Initial premium notice sent to:  INSURED
   Renewal premium notice sent to:  INSURED

MORTGAGEE/THIRD PARTY INFORMATION
   First Mortgagee
   Loan Number: 328117   2328117               Mortgage Balance:  $243100
   Name   : SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP ISAOA
            4000 INTERNATIONAL PKWY, SUITE 3000
            CARROLLTON TX 75007
   Address: 4000 INTERNATL PKWY        Directory Code:  000388
   City   : CARROLLTON          St.: TX  Zip Code: 75007

ADDITIONAL INSURED INFORMATION : NONE

ADULT OCCUPANTS

| OCC. NO. | OCCUPANT NAME | SOCIAL SEC. NO. | RELATION TO INS. | BIRTH DATE | SEX | MARITAL STATUS | OCCUPATION | PRESENT EMPLOY. DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | CATHERINE GEBHARDT | L ▆▆▆▆ | SA | ▆▆▆▆ | F | DI EM | ADMINISTRATOR | 1992 |

CHILDREN IN HOUSEHOLD

| CHILD NO. | SEX | BIRTH DATE |
|---|---|---|
| 1 | F | ▆▆▆▆ |
| 2 | M | ▆▆▆▆ |
| 3 | F | ▆▆▆▆ |
| 4 | F | ▆▆▆▆ |

   Total number of residents in household including children: 5

ALLSTATE INDEMNITY COMPANY
TENNESSEE

Home Office
Northbrook, IL

PROTECTIVE DEVICES INSTALLED
  Smoke Detector (each floor)
  Fire Extinguisher

Application No. 000078231763615

Deadbolt Locks (all exterior doors

Applicant's Initials _____

Was the residence constructed by a Licensed Contractor?: YES
Was the residence remodeled or renovated?: NO
Does the insured have an alternative or supplemental heating source
(excluding fireplaces)?: NO
Is the property to be insured, or premises of applicant located on a
farm?: NO
Is there any non-residential property (schools, churches, stores, gas
Stations, etc.) within 40 feet of the property to be insured?: NO
Is there any store, business or professional activity in the building,
or the applicant's premises, or at additional premises owned by the
applicant?: NO
Is the dwelling on a solid and continuous foundation?: YES
Will the residence be occupied within the next 30 days?: YES

5 YEAR LOSS HISTORY (including losses at present and prior residences)

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| WATER | 07/27/1999 | $4314 |

PRIOR PROPERTY INSURANCE
  Company Name: FIRE INS EXCHANG        Expiration Date: 11/30/2002
  Policy No.: 914902540                 Years Insured: 5

  Does this application pertain to the same property location insured by the
  prior carrier?: NO
In the past 5 years have you been rejected, cancelled or nonrenewed
insurance similar to the coverage applied for on this application?: NO
Effective date of first qualifying Allstate property policy providing
continuous coverage to date:                                12/13/2002

OTHER ALLSTATE POLICIES (CROSS INDEX) : NONE

REMARKS
THIS IS A 4200 SQ FOOT DWELLING

ALLSTATE INDEMNITY COMPANY
TENNESSEE

Home Office
Northbrook, IL
                                        Application No. 000078231763615
BINDER PROVISION - In reliance on the statements in this application and
subject to the terms and conditions of the policy authorized for the Company's
issuance to the applicant, the Company named above binds the insurance applied
for, to
        become effective: 12:01 AM  12/13/2002
        Transaction time/date: 10:38 AM  11/19/2002

To the best of my knowledge the statements made on this application, including
any attachments, are true. I request the Company, in reliance on these
statements, to issue the insurance applied for. The Company may recompute the
premium shown if the statements made herein are not true. In the event of any
misrepresentation or concealment made by me or with my knowledge in connection
with this application, the Company may deem this binder and any policy issued
pursuant to this application, void from its inception. This means that the
Company will not be liable for any claims or damages which would otherwise be
covered.

I have read this entire application before signing.

_____        _____
        Applicant's Signature                    Date

(    ) I have inspected the premises.  (    ) I have not inspected the premises.

*Sandy Crawford*                         006037        D3M
_____        _____    _____
        Agent's Signature                 Number        Location Code

_____
        Producer's Signature

SAR897-1H

Page   6 of 006

# EXHIBIT 8

ser:  BECKYC  11:53:16  11/07/2002    Automated Clearing House:    QUICK SESSION SCREEN    V2.60.30
OST RESPONSE: 11:54:11 DFS058 SIGNON / SIGNOFF COMMAND COMPLETED
- HOST ID = F4BCCD1

oer:  BECKYC  11:53:31  11/07/2002    Automated Clearing House:    QUICK SESSION SCREEN    V2.60.30
* Fed-Line's Incoming Processor (FLIP) STARTING

ser:  FLIP    11:53:32    11/07/2002    FLIP PROCESSING ITEMS.
rocessing session 2


NEW 02 **** FT PROD **** FT INCOMING    ****NORMAL MSG/ACCTG ENTRY****

3100} Sender: 071000013 BANK ONE NA CHGO    {2000} Amount:    $242,485.02

3400} Receiver: 064202763 SEVIER CTY BK    {3600} Bus Function Code: CTR

1510} Type Code:    1000

5000} Originator:    01090430

                    KFC SEBRING CAPITAL CORP

                    ATTN BILL SAEMES

                    4000 INTL PARKWAY STE 3000

                    DALLAS TX          USA

6000} ORG to BNF Info:  GEBHARDT

4200} Beneficiary:    027326570

                    GUARANTY LAND TITLE CO.

1520} IMAD:          20021107G1QH052C001193

3320} Sender Ref:    07FC021107006684

1110} Timestamp:     11071138FT01

1120} OMAD:          20021107F4QC813C000000311071138FT01

*****************


ser:  FLIP    11:53:37    11/07/2002    FLIP PROCESSING ITEMS.
rocessing session 4


-> Your file AJ11107AO.UDT, has been successfully received and queued on the HOST at 11/07/02 11:53:29


Statistics for session 2:
        Number of Host Application messages processed:      1
Number of Host Service (DFS, ...) messages processed:      0
        Number of Acknowledgement messages processed:      0
                                                       ------
                Total Incoming queue count processed:       1

Statistics for session 4:
                Number of Host file processed:      0
Number of Host Service (DFS, ...) messages processed:      0
        Number of Acknowledgement messages processed:      1
                                                       ------
                Total Incoming queue count processed:       1

FEDLINE Incoming Processor (FLIP) ended normally.


ser:  BECKYC  11:54:00  11/07/2002    Automated Clearing House:    QUICK SESSION SCREEN    V2.60.30
SIGNED OFF

*************** 11:54:          Host Disconnected

*************** 11:59:          Host Disconnected


Exhibit C page 6

**EXHIBIT 9**

〕 0 ] 8 5 ] 0 3 3 3 C

FILED
In the Office of the
Secretary of State of Texas

JUN 2 2 1994

Corporations Section

## ARTICLES OF INCORPORATION OF

## BEAL BANC ACCEPTANCE CORP.

I, the undersigned natural person of the age of eighteen (18) years or more, acting as incorporator of a corporation under the Texas Business Corporation Act (the "Act"), do hereby adopt the following Articles of Incorporation for such corporation.

### ARTICLE I.

The name of the corporation is Beal Banc Acceptance Corp.

### ARTICLE II.

The period of its duration is perpetual.

### ARTICLE III.

The corporation is organized for the purpose of engaging in any lawful act, activity and/or business for which corporations may be organized under the Act.

### ARTICLE IV.

The aggregate number of shares which the corporation is authorized to issue is one million (1,000,000) shares of common stock, par value $1.00 per share.

### ARTICLE V.

The corporation will not commence business until it has received for the issuance of its shares consideration of the value of One Thousand Dollars ($1,000.00), consisting of money, labor done, or property actually received.

### ARTICLE VI.

Except as may be otherwise provided in the Act, no contract, act or transaction of the corporation with any corporation, person or persons, firm, trust or association, or any other

DMD405D59 20722-22

organization shall be affected or invalidated by the fact that any director, officer or shareholder

of this corporation is a party to, or is interested in, such contract, act or transaction, or in any

way connected with any such person or persons, firm, trust or association, or is a director,

officer or shareholder of, or otherwise interested in, any such other corporation, nor shall any

duty to pay damages on account to this corporation be imposed  upon such director, officer or

shareholder of this corporation solely by reason of such fact, regardless of whether the vote,

action or presence of any such director, officer or shareholder may be, or may have been,

necessary to obligate this corporation on, or in connection with, such contract, act or transaction,

provided that if such vote, action or presence is, or shall have been, necessary, such interest or

connection (other than an interest as a noncontrolling shareholder of any such other corporation)

be known or disclosed to the Board of Directors of this corporation.

Common or interested directors may be counted in determining the presence of a quorum

at a meeting of the Board of Directors or of a committee which authorizes the contract or

transaction.

## ARTICLE VII.

A director of the corporation shall not be liable to the corporation or its shareholders for

monetary damages for an act or omission in the director's capacity as a director, except that this

article does not eliminate or limit the liability of a director for:

(a)    a breach of a director's duty of loyalty to the corporation or its
shareholders,

(b)    an act or omission not in good faith that constitutes a breach of duty of the
director to the corporation or an act or omission that involves intentional
misconduct or a knowing violation of the law,

J 0 1 8 5 1 0 5 5 5 2

(c)    a transaction from which a director received an improper benefit, whether or not the benefit resulted from an action taken within the scope of the director's office, or

(d)    an act or omission for which the liability of a director is expressly provided for by statute.

If the Texas Civil Statutes are amended after approval by the corporation's shareholders of this Article VII to authorize corporate action further eliminating or limiting the personal liability of directors or eliminating or limiting the personal liability of officers, the liability of a director or officer of the corporation shall be eliminated or limited to the fullest extent permitted by law. No repeal or modification of this Article VII by the shareholders shall adversely affect any right or protection of a director or officer of the corporation existing by virtue of this Article VII at the time of such repeal or modification.

## ARTICLE VIII.

(a)    The corporation shall indemnify and hold harmless any person who was, is, or is threatened to be named a defendant or respondent in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative, or investigative, any appeal in such action, suit, or proceeding, and any inquiry or investigation that could lead to such an action, suit, or proceeding by reason of the fact that he is or was a director or officer of the corporation or, while a director or officer of the corporation, is or was serving at the request of the corporation as a director, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise, against judgments, penalties (including excise and similar taxes), fines, and reasonable expenses (including attorney's fees) actually incurred; provided that he (i) conducted himself in good faith, (ii) reasonably believed, in the case of conduct in his official capacity as a director or officer of the corporation, that his conduct was in the corporation's best interests and, in all other cases, that his conduct was at least not opposed to the corporation's best interests, and (iii) in the case of any criminal proceeding, had no reasonable cause to believe his conduct was unlawful; and provided further that  (i) he was not found liable on the basis that he improperly received a personal benefit, whether or not the benefit resulted from an action taken in the person's official capacity and (ii) he was not found liable to the corporation.  A person found liable either to the corporation or on the basis that personal benefit was improperly received by him, may only be indemnified for reasonable expenses (including attorneys' fees) actually incurred by the person in connection with the proceeding, however, if that person was found liable for willful or intentional misconduct in the performance of his duty to the corporation, the corporation shall

J O 1 8 5 1 0 3 5 5 3

not indemnify him in any respect. Notwithstanding anything contained in this Article VIII which may be to the contrary, the corporation shall indemnify a director or officer against reasonable expenses incurred by him in connection with a proceeding in which he is a named defendant or respondent because he was wholly successful, on the merits or otherwise, in the defense of the proceeding. The indemnification of directors and officers by the corporation herein provided shall be to the fullest extent authorized or permitted by applicable law, as such law exists or may hereafter be amended (but only to the extent that such amendment permits the corporation to provide broader indemnification rights than permitted prior to the amendment).

(b)    The expenses of directors and officers incurred as a party to any threatened, pending or completed proceeding, shall be paid by the corporation as they are incurred and in advance of the final disposition of the proceeding; provided, however, that the advance payment of expenses shall be made only upon receipt by the corporation of both a written affirmation from the director or officer of his good faith belief that he has met the standard of conduct necessary for indemnification under the Act and an undertaking by or on behalf of the director or officer to repay all amounts so advanced in the event that it is ultimately determined by a final decision, order, or decree of a court of competent jurisdiction that the director or officer has not met those standards.

(c)    Any director or officer may enforce his rights to indemnification or advance payments for expenses in a suit brought against the corporation if his request for indemnification or advance payments for expenses is wholly or partially refused by the corporation or if there is no determination with respect to such request within 60 days from receipt by the corporation of a written notice from the director or officer for such a determination. If a director or officer is successful in establishing in a suit his entitlement to receive or recover an advancement of expenses or a right to indemnification, in whole or in part, he shall also be indemnified by the corporation for costs and expenses incurred in such suit. It shall be a defense to any such suit (other than a suit brought to enforce a claim for the advancement of expenses under Section (b) of this Article VIII when the required affirmation and undertaking have been received by the corporation) that the claimant has not met the standard of conduct set forth in the Act. Neither the failure of the corporation nor independent legal counsel to have made a determination prior to the commencement of such suit that indemnification of the director or officer is proper in the circumstances because the director or officer has met the applicable standard of conduct nor a determination by the corporation or by independent legal counsel that the director or officer has not met such applicable standard of conduct shall be a defense to the suit or create a presumption that the director or officer has not met the applicable standard of conduct. In a suit brought by a director or officer to enforce a right under this Section (c) or by the corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that a director or officer is not entitled to be indemnified or is not entitled to an advancement of expenses under this Section (c) or otherwise, shall be on the corporation.

(d)    The right to indemnification and the payment or advancement of expenses as they are incurred and in advance of the final disposition of an action, suit, or proceeding shall not be exclusive of any other right to which a person may be entitled under these Articles of Incorporation, the bylaws, a resolution of shareholders or directors, an agreement, or otherwise;

DM04050D59 20722-22                                      4

provided, however, that all rights to indemnification and to the payment or advancement of expenses are valid only to the extent that they are consistent with the Act, as it may be limited by these Articles of Incorporation. The right to indemnification under Section (a) hereof shall continue for a person who has ceased to be a director or officer and shall inure to the benefit of his heirs, next of kin, executors, administrators and legal representatives.

(e)    The corporation may purchase and maintain insurance or other arrangement at its expense to protect itself, any director, officer, employee, or agent of the corporation or any person who is or was serving at the request of the corporation as a director, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan, or other enterprise, against any liability asserted against him and incurred by him in such a capacity or arising out of his status as such a person, irrespective of whether or not the corporation would have the power to indemnify him against that liability under this Article VIII. Without limiting the power of the corporation to procure or maintain any kind of insurance or other arrangement, the corporation may, for the benefit of persons indemnified by the corporation, (i) create a trust fund, (ii) establish any form of self-insurance, (iii) secure its indemnity obligation by grant of a security interest or other lien on the assets of the corporation, or (iv) establish a letter of credit, guaranty, or surety arrangement. The insurance or other arrangement may be procured, maintained or established within the corporation or with any insurer or other person deemed appropriate by the Board of Directors regardless of whether all or part of the stock or other securities of the insurer or other person are owned in whole or in part by the corporation.

(f)    The corporation shall not be obligated to reimburse the amount of any settlement unless it has agreed to such settlement. If any person shall unreasonably fail to enter into a settlement of any proceeding within the scope of Section (a) hereof, offered or assented to by the opposing party or parties and which is acceptable to the corporation, then notwithstanding any other provision of this Article VIII, the indemnification obligation of the corporation in connection with such action, suit, or proceeding shall be limited to the total of the amount at which settlement could have been made and the expenses incurred by such person prior to the time the settlement could reasonably have been effected.

(g)    The corporation may, but need not, to the extent authorized from time to time by the Board of Directors, grant rights to indemnification and to the advancement of expenses to any employee or agent of the corporation or to any director, officer, employee or agent of any of its subsidiaries to the fullest extent of the provisions of the Act and of this Article VIII subject to the imposition of such conditions or limitations as the Board of Directors of the corporation may deem necessary or appropriate.

(h)    The provisions of this Article VIII are valid only to the extent that they are consistent with applicable laws and regulations. The invalidity of any provision of this Article VIII will not affect the validity of the remaining provisions of Article VIII.

DMM05D59 20722-22                                                  5

## ARTICLE IX.

Any action required by the Act to be taken at any annual or special meeting of shareholders, or any action which may be taken at any annual or special meeting of shareholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holder or holders of shares representing not less than the minimum number of votes that would have been necessary to take such action at a meeting at which the holders of all shares entitled to vote on the action were present and voted.

## ARTICLE X

The right to accumulate votes in the election of directors and/or cumulative voting by any shareholder is hereby expressly denied.

## ARTICLE XI.

No shareholder of this corporation shall, by reason of his holding shares of any class of stock of this corporation, have any preemptive or preferential right to purchase or subscribe for any shares of any class of stock of this corporation, now or hereafter to be authorized, or any notes, debentures, bonds or other securities convertible into or carrying options, warrants or rights to purchase shares of any class, now or hereafter to be authorized, whether or not the issuance of any such shares or such notes, debentures, bonds or other securities would adversely affect the dividend or voting rights of any such shareholder, other than such rights, if any, as the Board of Directors, at its discretion, from time to time may grant, and at such price as the Board of Directors at its discretion may fix; and the Board of Directors may issue shares of any class of stock of this corporation or any notes, debentures, bonds or other securities convertible into or carrying options, warrants or rights to purchase  shares of any class without offering any

DM_US 40505059 20722-22                                    6

J 0 1 8 5 1 0 3 5 6

such shares of any class of such notes, debentures, bonds or other securities, either in whole or in part, to the existing shareholders of any class.

## ARTICLE XII.

The address of its initial registered office is **15770 N. Dallas Parkway, Suite 300, Dallas, Texas 75248** and the name of its initial registered agent at such address is Mr. David R. Farmer.

## ARTICLE XIII.

The number of directors shall be fixed by the bylaws of the corporation, and until changed by the bylaws, shall be four (4); the names and addresses of those who are to serve as directors until the first annual meeting of the shareholders or until their successors are elected and qualified are as follows:

| NAME | ADDRESS |
|---|---|
| D. Andrew Beal | 15770 N. Dallas Parkway, Suite 300, Dallas, Texas   75248 |
| M. Molly Curl | 15770 N. Dallas Parkway, Suite 300, Dallas, Texas   75248 |
| David R. Farmer | 15770 N. Dallas Parkway, Suite 300, Dallas, Texas   75248 |
| James W. Lewis, Jr. | 15770 N. Dallas Parkway, Suite 300, Dallas, Texas   75248 |

The Board of Directors shall have the power to alter, amend or repeal the bylaws of the corporation or to adopt new bylaws.

J0185103357

## ARTICLE XIV.

The name and address of the incorporator is as follows:

| NAME | ADDRESS |
|------|---------|
| James K. Dyer, Jr. | 1445 Ross Avenue, Suite 3200<br>Dallas, Texas  75202-2711 |

IN WITNESS WHEREOF, I have hereunto set my hand as of the _21st_ day of June, 1994.

_____

James K. Dyer, Jr.

J 0 ' 8 5 1 0 5 5 5 8

# Texas Department of Banking

April 13, 1994

Ms. Linda P. Mock, Paralegal
JENKENS & GILCHRIST, a P.C.
1445 Ross Avenue, Ste. 3200
Dallas, Texas 75202-2799

RE:    Use of the Corporate Name "BEAL BANC ACCEPTANCE CORP."

Dear Ms. Mock:

This letter is in response to your letter dated March 31, 1994, regarding the proposed use of the captioned corporate name. According to your request, the captioned entity will be an operating subsidiary for Beal Banc, S.A., a Texas-chartered savings and loan association.

We have reviewed your request and determined that the name as proposed does not appear to be prohibited by Chapter IX, Article 2 of The Texas Banking Code. The Banking Department of Texas does not object to the use of the captioned corporate name by an entity that is not holding out to the public that it is conducting a banking or trust business, but is informing the public of an actual affiliation with a authorized financial institution.

The review of your request is based upon the information provided to this office taken as a whole. Any variation in the presentation or usage of a name, such as the use of part of the whole name requested, may be objectionable to this office. Should it be determined that the actual usage of a name is prohibited the appropriate steps will be taken to enforce the subject statute.

This expression of no objection to the captioned name relates only to the provisions of Chapter IX, Article 2 of The Texas Banking Code and does not obligate the Secretary of State of the State of Texas to approve such name.

Sincerely,

Allen R. Barr
Deputy Director of
Corporate Activities

ARB:pt
cc:    Mr. Jimmy DeLao
       Office of the Secretary of State - Texas

2601 N. Lamar Boulevard, Austin, Texas 78705-4294 ▪ (512) 475-1300

BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY                    Page 1 of 2

## TEXAS SECRETARY of STATE
## CARLOS H. CASCOS

<u>UCC</u> | <u>Business Organizations</u> | <u>Trademarks</u> | <u>Notary</u> | <u>Account</u> | <u>Help/Fees</u> | <u>Briefcase</u> |
<u>Logout</u>

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| Filing Number: | 91687902 | Entity Type: | Domestic Professional Corporation |
| Original Date of Filing: Formation Date: | December 17, 1991 N/A | Entity Status: | Voluntarily terminated |
| Tax ID: Duration: | 17522040066 Perpetual | FEIN: | |

Name:       JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION
Address:    PO BOX 201660
            AUSTIN, TX 78720-1660 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| View Image | Document Number | Filing Type | Filing Date | Effective Date | Eff. Cond | Page Count |
|---|---|---|---|---|---|---|
| ☑ | 5675512 | Articles Of Incorporation | December 17, 1991 | December 17, 1991 | No | 5 |
| ☑ | 5675513 | Articles Of Merger | December 19, 1991 | December 19, 1991 | No | 10 |
| ☑ | 5675514 | Assumed Name Certificate | January 22, 1992 | January 22, 1992 | No | 1 |
| ☑ | 5675515 | Assumed Name Certificate | January 22, 1992 | January 22, 1992 | No | 1 |
| ☑ | 5675516 | Assumed Name Certificate | January 22, 1992 | January 22, 1992 | No | 1 |
| ☑ | 5675517 | Restated Articles Of Incorporation | June 12, 1992 | June 12, 1992 | No | 9 |
| ☑ | 5675518 | Assumed Name Certificate | June 30, 1993 | June 30, 1993 | No | 1 |
| ☑ | 5675522 | Articles Of Amendment | February 23, 1996 | February 23, 1996 | No | 2 |
| ☑ | 5675521 | Assumed Name Certificate | February 27, 1996 | February 27, 1996 | No | 1 |
| ☑ | 5675520 | Assumed Name Certificate | February 27, 1996 | February 27, 1996 | No | 1 |
| ☑ | 5675519 | Assumed Name Certificate | February 27, 1996 | February 27, 1996 | No | 1 |
| ☑ | 5675523 | Articles Of Amendment | December 30, 1998 | December 30, 1998 | No | 1 |
| ☑ | 2954830002 | Articles of Amendment | October 22, 2001 | October 22, 2001 | No | 2 |
| ☑ | 14606740002 | Certificate of Assumed Business Name | July 26, 2002 | July 26, 2002 | No | 1 |
| ☑ | 14607540002 | Certificate of Assumed Business Name | July 26, 2002 | July 26, 2002 | No | 1 |
| ☑ | 14606930002 | Certificate of Assumed Business Name | July 26, 2002 | July 26, 2002 | No | 1 |
| ☑ | 15326210002 | Change of Registered Agent/Office | August 13, 2002 | August 13, 2002 | No | 1 |
| ☑ | 31439960001 | Public Information Report (PIR) | December 31, 2002 | April 8, 2003 | No | 2 |
| ☑ | 53141950001 | Public Information Report (PIR) | December 31, 2003 | February 5, 2004 | No | 2 |
| ☑ | 82517970001 | Public Information Report (PIR) | December 31, 2004 | February 12, 2005 | No | 1 |
| ☑ | 127704930001 | Public Information Report (PIR) | December 31, 2005 | April 27, 2006 | No | 1 |
| ☑ | 167350610001 | Public Information Report (PIR) | December 31, 2006 | April 17, 2007 | No | 1 |
| ☑ | 159176880002 | Articles of Amendment | January 31, 2007 | January 31, 2007 | No | 1 |
| ☑ | 165511110002 | Articles of Amendment | March 30, 2007 | March 30, 2007 | No | 1 |
| ☑ | 204252390001 | Public Information Report (PIR) | December 31, 2007 | February 19, 2008 | No | 1 |
| ☑ | 277477850001 | Public Information Report (PIR) | December 31, 2008 | September 28, 2009 | No | 1 |
| ☑ | 326841470001 | Public Information Report (PIR) | December 31, 2009 | September 14, 2010 | No | 1 |
| ☑ | 304390530394 | Change of Registered Agent/Office | April 19, 2010 | April 19, 2010 | No | 1 |
| ☑ | 335269820001 | Public Information Report (PIR) | December 31, 2010 | October 18, 2010 | No | 1 |

BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY                    Page 2 of 2

| | | | | | | |
|---|---|---|---|---|---|---|
| ☑ | 377489930001 | Public Information Report (PIR) | December 31, 2011 | July 16, 2011 | No | 1 |
| ☑ | 449108090001 | Public Information Report (PIR) | December 31, 2012 | October 20, 2012 | No | 1 |
| ☑ | 499331420002 | Certificate of Termination | August 30, 2013 | August 30, 2013 | No | 4 |
| ☑ | 516515160001 | Public Information Report (PIR) | December 31, 2013 | November 23, 2013 | No | 1 |

[ Order ]    [ Return to Search ]

Instructions:
● To place an order for additional information about a filing press the 'Order' button.

Form 651
(Revised 09/09)
Return in duplicate to
Secretary of State
P O Box 13697
Austin, TX 78711-3697
512 463-5555
FAX 512 463-5709
Filing Fee $40



Certificate of Termination
of a
Domestic Entity

This space reserved for office use

**FILED**
In the Office of the
Secretary of State of Texas

AUG 30 2013

**Corporations Section**

## Entity Information

1   The name of the domestic entity is

Jenkens & Gilchrist, A Professional Corporation

2   The entity is organized as a    professional corporation    under the laws of Texas
                                    e g  for profit corporation  limited partnership  etc

3   The date of formation of the entity is    December 17, 1991

4   The file number issued to the filing entity by the secretary of state is    91687902

## Governing Persons

5   The names and addresses of each of the filing entity's governing persons are  (see instructions)

| NAME AND ADDRESS OF GOVERNING PERSON (Enter the name of either an individual or an organization but not both ) |  |  |  |  |
|---|---|---|---|---|
| IF INDIVIDUAL |  |  |  |  |
| Roger |  | Hayse |  |  |
| *First Name* | *M I* | *Last Name* |  | *Suffix* |
| IF ORGANIZATION |  |  |  |  |
| *Organization Name* |  |  |  |  |
| P  O  Box 201660 |  | Austin | TX  USA | 78720 |
| *Street or Mailing Address* | *City* | | *State   Country* | *Zip Code* |

| NAME AND ADDRESS OF GOVERNING PERSON (Enter the name of either an individual or an organization  but not both ) |  |  |  |  |
|---|---|---|---|---|
| IF INDIVIDUAL |  |  |  |  |
|  |  |  |  |  |
| *First Name* | *M I* | *Last Name* |  | *Suffix* |
| IF ORGANIZATION |  |  |  |  |
| *Organization Name* |  |  |  |  |
|  |  |  |  |  |
| *Street or Mailing Address* | *City* | | *State   Country* | *Zip Code* |

**RECEIVED**

AUG 30 2013

**Secretary of State**

4



BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY                    Page 1 of 1

# TEXAS SECRETARY of STATE
## CARLOS H. CASCOS

**UCC** | **Business Organizations** | **Trademarks** | **Notary** | **Account** | **Help/Fees** | **Briefcase** | **Logout**

BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 91687902 | **Entity Type:** | Domestic Professional Corporation |
| **Original Date of Filing:** | December 17, 1991 | **Entity Status:** | Voluntarily terminated |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 17522040066 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION
**Address:** PO BOX 201660
AUSTIN, TX 78720-1660 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|
| Last Update | Name | Title | | Address | |
| November 23, 2013 | ROGER HAYSE | PRESIDENT | | PO BOX 201660 AUSTIN, TX 78720 USA | |
| November 23, 2013 | ROGER HAYSE | DIRECTOR | | PO BOX 201660 AUSTIN, TX 78720 USA | |

[ Order ]    [ Return to Search ]

Instructions:
● To place an order for additional information about a filing press the 'Order' button.

**FILED**
In the Office of the
Secretary of State of Texas

JAN 3 1 2007

*Corporations Section*

**ARTICLES OF AMENDMENT**
to the
RESTATED ARTICLES OF INCORPORATION
of
JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION

Pursuant to the provisions of Article 4.04 of the Texas Business Corporation Act, the undersigned corporation adopts the following Articles of Amendment to the Restated Articles of Incorporation:

ARTICLE I.   The name of the corporation is Jenkens & Gilchrist, a Professional Corporation.

ARTICLE II.   The following amendment to the Restated Articles of Incorporation was adopted by the shareholders of the corporation on January 24, 2007.

A new Article XIII is added to read in its entirety as follows:

ARTICLE XIII

No member of the Board of Directors of the Corporation shall be liable, personally or otherwise, in any way to the Corporation or its shareholders for monetary damages caused in any way by an act or omission occurring in the director's capacity as a director of the Corporation, except as otherwise expressly provided by applicable Texas law.

ARTICLE III.  The number of shares of each class Common Stock outstanding and entitled to vote on the amendment was 110,439 shares of Common Stock.  There were no classes or series of shares entitled to vote on the amendment as a class.

ARTICLE IV. The number of shares of Common Stock voting for the amendment was 78,593 and the number of shares of Common Stock voting against the amendment was 1,519.

ARTICLE V.  This amendment effects no change in the stated capital of the corporation.

DATED: January 30, 2007              JENKENS & GILCHRIST,
                                     A PROFESSIONAL CORPORATION


                                     By: John C. Eichman
                                     Title:  Executive Vice President

DALLAS1 1118712v1 99999-00009

# EXHIBIT 10

US 20090319416A1

(19) **United States**

(12) **Patent Application Publication**     (10) Pub. No.: **US 2009/0319416 A1**
   Marek et al.                                 (43) Pub. Date:      **Dec. 24, 2009**

(54) **METHOD OF STRUCTURING REAL ESTATE ASSETS**

(75) Inventors:  **Brian Marek**, Duncanville, TX (US); **Charles E. Greef**, Dallas, TX (US); **Peter G. Weinstock**, Dallas, TX (US); **Jeff Blair**, Dallas, TX (US)

Correspondence Address:
HUNTON & WILLIAMS LLP
INTELLECTUAL PROPERTY DEPARTMENT
1900 K STREET, N.W., SUITE 1200
WASHINGTON, DC 20006-1109 (US)

(73) Assignee:  **Hunton & Williams LLP,** Richmond, VA (US)

(21) Appl. No.:  12/144,212

(22) Filed:  Jun. 23, 2008

**Publication Classification**

(51) Int. Cl.
   *G06Q 40/00*       (2006.01)
(52) U.S. Cl. .......................................... 705/37; 705/39

(57)            **ABSTRACT**

An system for and method of divesting real property is presented. The system and method improve upon prior art techniques by including one or more of the following advantages: the gain may be immediately booked, there may be no capitalization requirements as there may be on a financing lease, and the gain may avoid Federal income taxation and capital gains taxation.



Bank conveys real property to partnership in exchange for partnership interest — 105

Partnership obtains loan using real property as collateral — 110

Partnership conveys loan proceeds to bank — 115

Bank forms subsidiary and conveys to it general partnership interest — 120

Bank distributes subsidiary stock and limited partnership interest to parent — 125

Parent distributes limited partnership interest and subsidiary shares to parent shareholders *pro rata* — 130



Fig. 1

Patent Application Publication    Dec. 24, 2009    Sheet 2 of 2    US 2009/0319416 A1



Fig. 2

US 2009/0319416 A1

Dec. 24, 2009

1

## METHOD OF STRUCTURING REAL ESTATE ASSETS

### FIELD OF THE INVENTION

[0001]  The present invention generally relates to a system for and method of divesting real property.

### BACKGROUND OF THE INVENTION

[0002]  A company may enter into an arrangement in which it first sells, and then leases back, a place of business of the company and its underlying real property. The second transaction is sometimes known as a "leaseback." Thus, in a sale and leaseback arrangement, a company may sell its facilities and real property on which such facilities are located to a third party, and then lease the facilities and real property back from the third party. Typically, the company will continue using its place of business, leased from the third party.

[0003]  Accounting regulatory agencies sometimes treat leasebacks as so-called "financing leases." Under generally accepted accounting principles, "A lease that transfers substantially all of the benefits and risks incident to the ownership of property may be accounted for as the acquisition of an asset and the incurrence of an obligation by the lessee and as a sale or financing by the lessor. In a lease that transfers substantially all of the benefits and risks of ownership, the economic effect on the parties is similar, in many respects, to that of an installment purchase." See Statement of Financial Accounting Standards No. 13 (promulgated by the Financial Accounting Standards Board).

[0004]  Financing leases have certain disadvantages. First, the lessee may be required to capitalize the lease. That is, the lessee may be required to account for, on its balance sheets and financial statements, the sale price of the real property as an asset and the lease as a liability. Increasing both assets and liabilities is generally disfavored, because, for example, it can dilute its ratio of earnings to assets for the affected company. For regulated financial institutions, transactions that increase both assets and liabilities will decrease the ratio of capital to assets, which may be required to be maintained at certain minimum ratios. Second, the lessee may be required to realize the gain from the sale of the property over the term of the lease instead of at the time of the sale. That is, the company that sells the property may be prevented from immediately recognizing the gain (i.e., sale price minus book value) from the sale of the property. Instead, the company may be required to account for the gain in increments over the term of the lease. This situation is disfavored because such an income stream is generally not reflected on a company's balance sheet or financial statement. Thus, a potential investor doing due diligence on a such a company may not be aware that the company expects to periodically realize additional income from the sale of those assets. Note that some embodiments of the present invention may avoid one of these named disadvantages. Other embodiments may avoid both disadvantages.

### BRIEF DESCRIPTION OF THE FIGURES

[0005]  FIG. 1 is a flowchart depicting a method of divesting real property according to an embodiment of the present invention.

[0006]  FIG. 2 is a flowchart depicting a method of divesting real property according to an embodiment of the present invention.

### DETAILED DESCRIPTION OF CERTAIN EMBODIMENTS OF THE INVENTION

[0007]  The following description is intended to convey an understanding of the present invention by providing specific embodiments and details. It is understood, however, that the present invention is not limited to these specific embodiments and details, which are exemplary only. It is further understood that one possessing ordinary skill in the art, in light of known systems and methods, would appreciate the use of the invention for its intended purposes and benefits in any number of alternative embodiments, depending upon specific design and other needs.

[0008]  Some embodiments of the present invention allow a company to divest itself of real property while avoiding certain unwanted tax consequences. More particularly, some embodiments of the present invention allow a company to divest itself of real property without having to pay income or capital gains tax on any difference between the sale price and the book value of the real property.

[0009]  Some embodiments of the present invention allow a company to realize income resulting from a real estate divestiture all at once, as opposed to over a period of time as would be required with some sale and leaseback transactions. This is advantageous because the gain from the transaction may immediately appear on the company's public records, such as a balance sheet or financial statement, and be apparent to any current or potential investor.

[0010]  Some embodiments of the present invention allow a company to divest itself of real property without having to comply with the capitalization requirements of a financing lease. That is, some embodiments allow a company to divest itself of real property and immediately realize the associated gain without having to account for the market value of the property as an asset and any lease as a liability.

[0011]  Some embodiments of the present invention have the advantage of reducing a company's total booked assets without affecting the company's use of the divested real property. That is, certain embodiments of the present invention allow a company to improve its earnings to assets ratio by divesting itself of real estate without relinquishing its use of such property.

[0012]  FIG. 1 is a flowchart depicting a method of divesting real property according to an embodiment of the present invention. The divesting company may be, by way of non-limiting example, a bank, and the real property may be, by way of non-limiting example, a property on which the divesting company maintains a place of business. Throughout this disclosure, the term "bank" will be used to identify the divesting company, however, such usage is not meant to limit embodiments of the invention to divestitures by banks only. That is, any company or other entity may practice embodiments of the present invention. The method begins with the bank forming a second company, which may be, by way of non-limiting example, a limited partnership, a limited liability company, or any other tax pass-through entity. This second company will be referred to herein as the "partnership," however, this term is for illustrative purposes only and is not meant to limit embodiments of the present invention to using only partnerships in the capacity of the second company.

2

[0013]    At step **105**, the bank conveys its real property to be divested to the partnership in exchange for a general partnership interest and all limited partnership interests. (In embodiments in which the tax pass-through entity is a limited liability company, general shares may be used instead of the general partnership interests and limited shares may be used in place of the limited partnership interests. For clarity of exposition, the terms "general partnership interests" and "limited partnership interests" are used herein without any intent to limit the invention to the same.) That is, the partnership receives the real property, and the bank receives a general partnership interest and all of the limited partnership interests. The partnership may be one or both of formed by the bank and wholly owned by the bank.

[0014]    At step **110**, the partnership obtains a loan from a third-party bank using the real property as collateral. In some embodiments, the amount of the loan is the entire market value of the real property. Thus, in some embodiments, the partnership obtains the market value of the real property by collateralizing a loan with the real property. Thus, at this stage, the partnership retains ownership of the real property.

[0015]    At step **115**, the partnership distributes the loan proceeds to the bank. This money may be in the form of cash. The bank may immediately book the loan proceeds as an asset in its balance sheet and financial statement. That is, the bank may not be required to account for the loan proceeds in periodic increments, as may be required under a financing lease. Note further that the loan proceeds received from the partnership, minus the book value of the real property and any Federal income tax that may be applicable, may be treated as Tier 1 or regulatory capital under applicable banking regulations.

[0016]    After step **115**, the partnership has the real property that the bank formerly owned as an asset and has the amount due on the loan as a liability. Thus, in embodiments in which the loan amount is equal to the market value of the property, the net worth of the partnership is zero. Accordingly, the fair market value of the limited partnership interests may be substantially equal to zero dollars.

[0017]    At step **120**, the bank forms a wholly owned subsidiary. The bank then conveys its general partnership interests to the subsidiary. The subsidiary will be referred to herein as the "general partnership interest holding company." Thus, after stage **120**, the bank no longer owns the partnership's general partnership interest, but the bank retains its limited partnership interests. In some embodiments, persons who serve as officers or directors of the bank also serve as officers and directors of the general partnership interest holding company. In some embodiments, step **120** is omitted and the bank retains the general partnership interest that it obtained at step **105**. In those embodiments, the bank maintains some control over the real property. As general partner, the bank may continue to be able to protect the bank's interests in how the real property is developed.

[0018]    At step **125**, the bank distributes its limited partnership interest in the partnership to the bank's parent company. This distribution may be considered as an in-kind (rather than cash) dividend, which may require prior approval by applicable bank regulatory agencies. In embodiments that include step **120**, the bank also conveys to the bank's parent company the bank's shares in the general partnership interest holding company. Thus, after step **125**, the bank's parent company owns the entire limited partnership interest in the partnership

and may also own all shares in the general partnership interest holding company, which owns the partnership's entire general partnership interest.

[0019]    In some embodiments, the bank is not taxed on the loan proceeds received from the partnership. That is, in some embodiments, the loan proceeds are not treated as income or capital gains. Accordingly, in some embodiments, the bank does pay tax on the loan proceeds. In other embodiments, the bank may recognize and be taxed on a gain of the difference between the loan proceeds and the real property's book value, reduced by the amount of gain allocable to the retained general partnership interest (if any) upon distribution of the limited partnership interests to the bank's parent company.

[0020]    At step **130**, the bank's parent company distributes the limited partnership interests in the partnership to the shareholders of the bank's parent company. In embodiments that include step **120**, the bank's parent company also distributes the shares in the general partnership interest holding company to the shareholders of the bank's parent company. The bank's parent company distributes its partnership interests (including the shares of the general partnership interest holding company, if applicable), to its shareholders pro rata. That is, the bank's parent company distributes its partnership interests to a given shareholder in proportion to that shareholder's holdings in the bank's parent company.

[0021]    In some embodiments, restrictions are placed on transfers of the limited partnership interests and the shares in the general partnership interest holding company. Such restrictions may require that any transfer of the limited partnership interests and the shares in the general partnership interest holding company be accompanied by a like transfer of the parent company's common stock. That is, the parent company's shareholders may be required to treat the limited partnership interests, the shares in the general partnership interest holding company, and the shares in the bank's parent company that correspond, pro rata, to the limited partnership interests and the shares in the general partnership interest holding company as a single financial instrument for the purpose of any transfer. In some embodiments, the partnership's partnership agreement includes restrictions on transfer of the limited partnership interests in order to avoid having the IRS consider the partnership a "publicly traded partnership" as defined in Section 7704 of the Internal Revenue Code of 1986, as amended. In embodiments in which the partnership interests are tied to the shares in the bank's parent company, transfer restrictions may also be placed on the parent company's shares. Such restriction may be in the form of a contract that buyers of the parent company's shares must execute before obtaining such shares.

[0022]    The relevant regulatory agencies may treat the distribution of the limited partnership interests and the shares in the general partnership interest holding company (or the general partnership interest itself) as dividends in kind rather than as cash dividends. As discussed above in reference to step **115**, the limited partnership interests are essentially worth zero. Those two facts mean that the shareholders in the bank's parent company will be treated as having received a dividend in an amount equal to the fair market value of the received partnership interest, i.e., zero. The tax consequences to the shareholders of the bank's parent company are thus de minimus. Note that the shareholders in the bank's parent company do not realize any tax consequences until they sell or otherwise divest themselves of their partnership interests.

3

[0023] In some embodiments, the shareholders of the bank's parent company become limited partners in the partnership. In such embodiments, the parent company shareholders may be required to execute a document (e.g., a joinder) evidencing that they accept the terms of the partnership's partnership agreement. Distributing the limited partnership interests to a shareholder may be conditioned upon receipt of such a document executed by the shareholder. If a particular parent company shareholder fails to execute such a document, the parent company may (i) cancel the limited partnership interest that would have gone to that shareholder, thereby increasing pro rata the limited partnership interests of all other shareholders who executed and submitted such documents, or (ii) convert the limited partnership interest to an assignment of economic interest, which would entitle the shareholder to his or her pro rata share of the economic limited partnership interest, but would not entitle them to rights as a partner. The latter approach would allow all shareholders to retain their pro rata interest even if they fail to become partners.

[0024] In general, the distribution of limited partnership interests by a company to its shareholders is not a transaction that requires the filing and distribution of a registration statement with the Securities and Exchange Commission ("SEC"), provided that the shareholders receive the limited partnership interests in exchange for no consideration. In some embodiments, the bank's parent company's shareholders are not expected to receive anything other than their pro rated portion of the limited partnership interests in the partnership and are expected to receive these interests in exchange for no consideration. Therefore, in such embodiments, the distribution of these limited partnership interests may not be treated as the offering of a security requiring the filing of a registration statement with the SEC.

[0025] Thus, after step 130, ownership of the partnership is distributed to the shareholders of the bank's parent company. Accordingly, the bank neither owns nor directly controls the partnership. The bank is therefore not required to consolidate the partnership into the bank's balance sheet or financial statement. Note that, more generally, neither the bank nor the bank's parent company retain any interest in the partnership or the general partnership interest holding company.

[0026] FIG. 2 is a flowchart depicting a method of divesting real property according to an embodiment of the present invention. At step 205, the bank conveys its real property to be divested to its parent company. This conveyance may be considered as an in-kind (rather than cash) dividend, which may require prior approval by applicable bank regulatory agencies. The parent company then forms a tax pass-through entity, which will be referred to herein as a "partnership" for convenience, even though other company types may be used, such as limited liability companies. At step 210, the parent company conveys the real property to the partnership in exchange for a general partnership interest and the limited partnership interests of the partnership. (In embodiments in which the tax pass-through entity is a limited liability company instead of a partnership, general shares may be used in place of the general partnership interests and limited shares may be used in place of the limited partnership interests. For clarity of exposition, the terms "general partnership interests" and "limited partnership interests" may be used herein without limitation.) That is, the partnership receives the real property, and the bank's parent company receives a general partnership interest and all of the limited partnership interests.

[0027] At step 215, the partnership obtains a loan from a third-party bank using the real property as collateral. In some embodiments, the amount of the loan is the entire market value of the real property. Thus, in some embodiments, the partnership obtains the market value of real property by collateralizing a loan with the real property. At this stage, the partnership retains ownership of the real property.

[0028] At step 220, the partnership conveys the loan proceeds to the bank's parent company, and at stage 225, the bank's parent company conveys the proceeds to the bank. Note that after step 220, the partnership has the real property that the bank formerly owned as an asset and has the amount due on the loan as a liability. Thus, in embodiments in which the loan amount is equal to the market value of the property, the net worth of the partnership is zero after step 220. Accordingly, the fair market value of the limited partnership interests may be substantially equal to zero dollars.

[0029] The bank may immediately book the loan proceeds as an asset on its balance sheet and financial statement. That is, the bank may not be required to account for the loan proceeds in periodic increments, as may be required under a financing lease. Note further that the loan proceeds received from the partnership, minus the book value of the real property and any Federal income tax that may be applicable, may be treated as Tier 1 or regulatory capital under applicable banking regulations.

[0030] In some embodiments, the bank is not taxed on the loan proceeds received from the bank's parent company. That is, in some embodiments, the loan proceeds are not treated as income or capital gains. Accordingly, in some embodiments, the bank does pay tax on the loan proceeds. In other embodiments, the bank may recognize and be taxed on a gain of the difference between the loan proceeds and the real property's book value, reduced by the amount of gain allocable to the retained general partnership interest (if any) upon distribution of the limited partnership interests to the bank's parent company.

[0031] At step 230, the bank forms a wholly owned subsidiary. The bank's parent company then conveys its general partnership interests to the subsidiary. The subsidiary will be referred to herein as the "general partnership interest holding company." Thus, after stage 230, the bank's parent company no longer owns the partnership's general partnership interest, but it does retain its limited partnership interests. In some embodiments, persons who serve as officers or directors of the bank also serve as officers and directors of the general partnership interest holding company. In some embodiments, step 230 is omitted and the bank's parent company retains the general partnership interest that it obtained at step 210. In those embodiments, the bank maintains some control over the real property. As general partner, the bank may continue to be able to protect the bank's interests in how the real property is developed.

[0032] At step 235, the bank's parent company distributes the limited partnership interests and the shares in the general partnership interest holding company to the shareholders of the bank's parent company pro rata. That is, the bank's parent company distributes its partnership interests to a given shareholder in proportion to that shareholder's holdings in the bank's parent company.

[0033] In some embodiments, restrictions are placed on transfers of the limited partnership interests and the shares in the general partnership interest holding company. Such restrictions may require that any transfer of the limited part-

4

nership interests and the shares in the general partnership interest holding company be accompanied by a like transfer of the bank's parent company's common stock. That is, the bank's parent company's shareholders may be required to treat the limited partnership interests, the shares in the general partnership interest holding company, and the shares in the bank's parent company that correspond, pro rata, to the limited partnership interests and the shares in the general partnership interest holding company as a single financial instrument. In some embodiments, the partnership's partnership agreement includes restrictions on transfer of the limited partnership interests in order to avoid having the partnership treated as a "publicly traded partnership" as defined in Section 7704 of the Internal Revenue Code of 1986, as amended. In embodiments in which the partnership interests are tied to the shares in the bank's parent company, transfer restrictions may also be placed on the parent company's shares. Such restriction may be in the form of a contract that buyers of the parent company's shares must execute before obtaining such shares.

[0034] The relevant regulatory agencies may treat the distribution of the limited partnership interests and the shares in the general partnership interest holding company (or the general partnership interest itself) as dividends in kind rather than as cash dividends. As discussed above, the limited partnership interests are essentially worth zero. Those two facts mean that the shareholders in the bank's parent company will be treated as having received a dividend in an amount equal to the fair market value of the received partnership interest, i.e., zero. The tax consequences to the shareholders of the bank's parent company are thus de minimus. Note that the shareholders in the bank's parent company do not realize any tax consequences until they sell or otherwise divest themselves of their partnership interests.

[0035] In general, the distribution of limited partnership interests by a company to its shareholders is not a transaction that requires the filing and distribution of a registration statement with the Securities and Exchange Commission ("SEC"), provided that the shareholders receive the limited partnership interests in exchange for no consideration. In some embodiments, the parent company's shareholders are not expected to receive anything other than their pro rata portion of the limited partnership interests in the partnership and are expected to receive these interests in exchange for no consideration. Therefore, in such embodiments, the distribution of these limited partnership interests may not be treated as the offering of a security requiring the filing of a registration statement with the SEC.

[0036] In some embodiments, the shareholders of the bank's parent company become limited partners in the partnership. In such embodiments, the parent company's shareholders may be required to execute a document (e.g., a joinder) evidencing that they accept the terms of the partnership's partnership agreement. Distributing the limited partnership interests to a shareholder may be conditioned upon receipt of such a document executed by the shareholder. If a particular parent company shareholder fails to execute such a document, the parent company may (i) cancel the limited partnership interest that would have gone to that shareholder, thereby increasing pro rata the limited partnership interests of all other shareholders who executed and submitted such documents, or (ii) convert the limited partnership interest to an assignment of economic interest, which would entitle the shareholder to his or her pro rata share of the economic limited partnership interest, but would not entitle them to

rights as a partner. The latter approach would allow all shareholders to retain their pro rata interest even if they fail to become partners.

[0037] Other embodiments, uses, and advantages of the invention will be apparent to those skilled in the art from consideration of the specification and practice of the invention disclosed herein. The specification and drawings should be considered exemplary only, and the scope of the invention is accordingly not intended to be limited thereby.

1. A method divesting real property from a first company, the method comprising:

   conveying the real property to a tax pass-through entity;

   receiving, by the first company and from the tax pass-through entity, limited interest in the tax pass-through entity and general interest in the tax pass-through entity in exchange for the real property;

   obtaining, by the tax pass-through entity, proceeds of a loan from a third party, wherein the tax pass-through entity pledges the real property as collateral for the loan;

   conveying the loan proceeds from the tax pass-through entity to the first company;

   conveying, from the first company to a parent company of the first company, limited interest in the tax pass-through entity; and

   distributing, from the parent company to shareholders of the parent company, the limited and general interest in the tax pass-through entity, wherein the distributing is on a pro rata basis.

2. The method of claim 1, further comprising, before the step of distributing:

   conveying, from the first company to a fourth company, general interest in the tax pass-through entity, wherein the fourth company is owned by the first company; and

   conveying, from the first company to the parent company, interest in the fourth company.

3. The method of claim 1, wherein the tax pass-through entity comprises a limited partnership, further comprising the shareholders of the parent company becoming partners in the limited partnership.

4. A method of divesting real property from a first company, the method comprising:

   conveying the real property to a parent company of the first company;

   conveying, from the parent company to a tax pass-through entity, the real property;

   receiving, by the parent company and from the tax pass-through entity, substantially all limited interest in the tax pass-through entity and substantially all general interest in the tax pass-through entity in exchange for the real property;

   obtaining, by the tax pass-through entity, proceeds of a loan from a third party, wherein the tax pass-through entity pledges the real property as collateral for the loan;

   conveying the proceeds from the tax pass-through entity to the parent company;

   conveying the proceeds from the parent company to the first company;

   conveying, from the parent company to a subsidiary of the company, substantially all general interest in the tax pass-through entity; and

   distributing, from the parent company to shareholders of the parent company, substantially all limited interest in the tax pass-through entity and substantially all shares of

US 2009/0319416 A1

5

Dec. 24, 2009

the subsidiary, wherein the distributing is on a pro rata basis.

**5**. The method of claim **4**, wherein the tax pass-through entity comprises a limited partnership, further comprising the shareholders of the parent company becoming partners in the limited partnership.

* * * * *

# EXHIBIT 11





# Closing of One Door Opens Another -- Peelle And NTC Collaborate



Ms. Debbie Lastoria, VP Business Development Nationwide Title Clearing (Photo: Business Wire)

June 29, 2007 02:38 PM Eastern Daylight Time

PALM HARBOR, Fla.—(BUSINESS WIRE)—Nationwide Title Clearing teams up with Peelle Technologies following the permanent closure of Peelle Management Corporation. Closure of the mortgage industry service provider was announced recently after the passing of their founder. Remaining Peelle board members decided to focus future efforts on thriving sister company, Peelle Technologies, which provides imaging and document management systems to vertical markets and industries. The company turned to former Peelle Management Corporation's current leading competitor, Nationwide Title Clearing for a new collaboration.

To ensure that former Peelle Management Corporation clients are well cared for, executives of Nationwide Title Clearing and Peelle Technologies agreed to team up to transition former clients and remaining workflow to Nationwide Title Clearing at client discretion. Nationwide Title Clearing has acquired longtime industry professional, Ms. Debbie Lastoria as a result. Ms. Lastoria brings her experience, long-term business relationships and clients to Nationwide Title Clearing and is a welcome member of the team. Her new position of Vice President Business Development has the responsibility of overseeing existing and obtaining new client relationships.

"Since Nationwide Title Clearing is the leading outsource provider for the processing of lien releases, assignments and document retrieval in the mortgage servicing industry, it was an obvious choice to take on former Peelle Management Corporation clients and workflow and we are looking forward to the new business relationships," said Jim Stewart, President of Nationwide Title Clearing. "Future collaborations with Peelle Technologies looks promising as well for all concerned as both of our companies have natural synergies that are conducive to long term success," he concluded.

"We wanted to focus our efforts on our highly successful Peelle Technologies document management solution. Nationwide Title Clearing allows us to do that and is reputable for everyone," said President of Peelle Technologies, Dayn Pefferle. He continued, "Since 1996, Peelle Technologies is the single, most dependable source for document management systems and services for multiple industries including government, manufacturing, financial services, education, healthcare and transportation. We provide only best-of-breed software and hardware solutions and with our successful, long-term client relationships from virtually every industry segment, we are the leader in our field."

More information about Nationwide Title Clearing and its services can be found at www.nwtc.com, or by calling (800) 346-9152 ext. 225. More information about Peelle Technologies can be found at peelletech.com, or by calling (800) 233-5006.

## Contacts
Nationwide Title Clearing, Palm Harbor
Joellen Raiti, 800-346-9152 ext. 230
joellen_raiti@nwtc.com

3/24/2017                                    BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

# TEXAS SECRETARY of STATE
# ROLANDO B. PABLOS

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout
### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 801386661 | **Entity Type:** | Foreign Limited Liability Company (LLC) |
| **Original Date of Filing:** | February 18, 2011 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32043649436 | **FEIN:** | 631149133 |

| | |
|---|---|
| **Name:** | Collateral International, LLC |
| **Address:** | 6000 Legacy Dr.<br>Plano, TX 75024 USA |
| **Fictitious Name:** | N/A |
| **Jurisdiction:** | DE, USA |
| **Foreign Formation Date:** | July 12, 1995 |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|
| **Name** | | **Address** | | | **Inactive Date** |
| C T Corporation System | | 1999 Bryan St., Ste. 900<br>Dallas, TX 75201-3136 USA | | | |

[ Order ]    [ Return to Search ]

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

**Form 304**
**(Revised 12/09)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
Filing Fee: $750



**Application for
Registration
of a Foreign Limited
Liability Company**

This space reserved for office use.

**F I L E D**
In the Office of the
Secretary of State of Texas

**FEB 18 2011**

**Corporations Section**

1. The entity is a foreign limited liability company. The name of the entity is:

Collateral International, LLC
*Provide the full legal name of the entity as stated in the entity's formation document in its jurisdiction of formation.*

2A. The name of the entity in its jurisdiction of formation does not contain the word "limited liability company" or "limited company" (or an abbreviation thereof). The name of the entity with the word or abbreviation that it elects to add for use in Texas is:

2B. The entity name is not available in Texas. The assumed name under which the entity will qualify and transact business in Texas is:

*The assumed name must include an acceptable organizational identifier or an accepted abbreviation of one of these terms.*

3. Its federal employer identification number is:   63-1149133
☐ Federal employer identification number information is not available at this time.

4. It is organized under the laws of: (set forth state or foreign country)   Delaware
and the date of its formation in that jurisdiction is:   7/12/1995
*mm/dd/yyyy*

5. As of the date of filing, the undersigned certifies that the foreign limited liability company currently exists as a valid limited liability company under the laws of the jurisdiction of its formation.

6. The purpose or purposes of the limited liability company that it proposes to pursue in the transaction of business in Texas are set forth below.

Any lawful business or activity under the law of this state.
The entity also certifies that it is authorized to pursue such stated purpose or purposes in the state or country under which it is organized.

7. The date on which the foreign entity intends to transact business in Texas, or the date on which the foreign entity first transacted business in Texas is:   Upon qualification
*mm/dd/yyyy*                Late fees may apply (see instructions).

8. The principal office address of the limited liability company is:

| 6000 Legacy Drive | Plano | TX | USA | 75024 |
|---|---|---|---|---|
| *Address* | *City* | *State* | *Country* | *Zip/Postal Code* |

Form 304

T:\MSDOC - 05/31/2010 L T System Online

**RECEIVED** 6

**FEB 18 2011**

**Secretary of State**

Complete item 9A or 9B, but not both.  Complete item 9C.

[X] 9A.  The registered agent is an organization (cannot be entity named above) by the name of:

C T Corporation System

OR

[ ] 9B.  The registered agent is an individual resident of the state whose name is:

_____

| First Name | M.I. | Last Name | Suffix |

9C.  The business address of the registered agent and the registered office address is:

| 350 N. St. Paul Street  Suite 2900 | Dallas | TX | 75201-4234 |
| Street Address | City | State | Zip Code |

10.  The entity hereby appoints the Secretary of State of Texas as its agent for service of process under the circumstances set forth in section 5.251 of the Texas Business Organizations Code.

11.  The name and address of each governing person is:

**NAME AND ADDRESS OF GOVERNING PERSON** (Enter the name of either an individual or an organization, but not both.)
IF INDIVIDUAL

| Jacob | | Cherner | | |
| First Name | M.I. | Last Name | | Suffix |

OR  IF ORGANIZATION

Organization Name

| 6000 Legacy Drive | Plano | TX | USA | 75024 |
| Street or Mailing Address | City | State | Country | Zip Code |

**NAME AND ADDRESS OF GOVERNING PERSON** (Enter the name of either an individual or an organization, but not both.)
IF INDIVIDUAL

| Stephen | | Costas | | |
| First Name | M.I. | Last Name | | Suffix |

OR  IF ORGANIZATION

Organization Name

| 6000 Legacy Drive | Plano | TX | USA | 75024 |
| Street or Mailing Address | City | State | Country | Zip Code |

**NAME AND ADDRESS OF GOVERNING PERSON** (Enter the name of either an individual or an organization, but not both.)
IF INDIVIDUAL

| | | | | |
| First Name | M.I. | Last Name | | Suffix |

OR  IF ORGANIZATION

Organization Name

| | | | | |
| Street or Mailing Address | City | State | Country | Zip Code |

Form 304                                          7

TX061HOU - 03/31/2010 C T System Online

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

## Effectiveness of Filing (Select either A, B, or C.)

A. [X] This document becomes effective when the document is filed by the secretary of state.

B. [ ] This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. [ ] This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: __2/17/11__

Signature of authorized person (see instructions)

Stephen Costas
Printed or typed name of authorized person.

Form 304

8

TX-41BOC - 61.1/2010 © T System Online

00014943385                    **Filing Number: 801386661**

# TEXAS FRANCHISE TAX PUBLIC INFORMATION REPORT

*To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions*
**This report MUST be signed and filed to satisfy franchise tax requirements**

Comptroller of Public Accounts FORM 05-102 (9-09/29)
■ Tcode  13196

■ Taxpayer number  | 3 | 2 | 0 | 4 | 3 | 6 | 4 | 9 | 4 | 3 | 6 |

■ Report year | 2 | 0 | 1 | 2 |

You have certain rights under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at: (512) 463-4600, or (800) 252-1381, toll free nationwide.

Taxpayer name
COLLATERAL INTERNATIONAL, LLC

Mailing address
350 N SAINT PAUL ST

City **DALLAS** | State **TX** | ZIP Code **75201** | Plus 4 **4234** | Secretary of State file number or Comptroller file number
**0801386661**

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office
6000 LEGACY DRIVE, PLANO, TX 75024

Principal place of business
6000 LEGACY DRIVE, PLANO, TX 75024

*Please sign below!*

Officer, director and member information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or members change throughout the year.

3204364943612

**SECTION A**  Name, title and mailing address of each officer, director or member.

Name **JACOB CHERNER** | Title **CEO** | Director ○ YES | Term expiration | m m  d d  y y

Mailing address **6000 LEGACY DRIVE** | City **PLANO** | State **TX** | ZIP Ccode **75024**

Name **STEPHEN COSTAS** | Title **VP** | Director ○ YES | Term expiration | m m  d d  y y

Mailing address **6000 LEGACY DRIVE** | City **PLANO** | State **TX** | ZIP Ccode **75024**

Name **W.T. SAURENMANN** | Title **EXEC. VP** | Director ○ YES | Term expiration | m m  d d  y y

Mailing address **6000 LEGACY DRIVE** | City **PLANO** | State **TX** | ZIP Ccode **75024**

**SECTION B**  Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of ten percent (10%) or more.

Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of Ownership

Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of Ownership

**SECTION C**  Enter the information required for each corporation or LLC, if any, that owns an interest of ten percent (10%) or more in this entity or limited liability company.

Name of owned (parent) corporation or limited liability company **CLMG CORP** | State of formation **TX** | Texas SOS file number, if any **0801137307** | Percentage of Ownership **100.00**

Registered agent and registered office currently on file. *(See instructions if you need to make changes)* | ○ Blacken circle if you need forms to change the registered agent or registered office information.

Agent:  **CT CORPORATION SYSTEM**

Office:  **350 N. ST. PAUL ST., SUITE 2900** | City **DALLAS** | State **TX** | ZIP Code **75201**

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or member and who is not currently employed by this, or a related, corporation or limited liability company.

sign here ► | Title | Date **11/13/** | Area code and phone number ( )



Texas Comptroller Official Use Only





○ VE/DE  ○ PIR IND  ○

# EXHIBIT 13

**Mortgage Banking Licensee List - Servicers Only**

4/9/2014

| Credential Number | Credential Status | Main Address | Main Contact | Original Date | Effective Date | Expiration Date | Activity Description |
|---|---|---|---|---|---|---|---|
| MB.6760909 | UNCONDITIONAL | 1st Alliance Lending, LLC<br>111 Founders Plaza, Suite 1300<br>East Hartford, CT 06108 | Sanchez, Heather<br>860-289-0332<br>hsanchez@1agroup.com | 08/14/2012 | 01/01/2014 | 12/31/2014 | Servicing Percent=15 |
| MB.6760637 | UNCONDITIONAL | 21st Mortgage Corporation<br>620 Market Street<br>Knoxville, TN 37902 | Lindsay Eggers<br>(865) 523-2120 | 11/21/2008 | 01/01/2014 | 12/31/2014 | Servicing Percent=95 |
| MB.6760690 | UNCONDITIONAL | 360 Mortgage Group, LLC<br>11305 Four Points Drive<br>Bldg 1, Ste. 200<br>Austin, TX 78726 | Tracy Reece<br>512-418-6000<br>treece@360mtg.com | 09/04/2009 | 01/01/2014 | 12/31/2014 | Servicing Percent=35 |
| MB.6760954 | UNCONDITIONAL | Affinity Lending Solutions, LLC<br>1700 West Loop South Suite 210<br>Houston, TX 77027 | Jackie Adams<br>713-960-1377<br>licensing@gregg-valby.com | 05/09/2013 | 01/01/2014 | 12/31/2014 | Servicing Percent=10 |
| MB.6850032 | UNCONDITIONAL | Ag-America<br>5455 N Union Blvd<br>Colorado Springs, CO 80918 | Jessie Williams<br>719-447-0325 | 12/12/2013 | 12/12/2013 | 12/31/2014 | Servicing Percent=10 |
| MB.6759981-DBA1 | UNCONDITIONAL | AimLoan.com<br>4121 Camino Del Rio South<br>San Diego, CA 92108 | Vincent J. Kasperick<br>(888) 411-4246<br>mary@aimloan.com | 03/30/2006 | 01/01/2014 | 12/31/2014 | Servicing Percent=20 |
| MB.6760601 | UNCONDITIONAL | American Advisors Group, Inc.<br>3800 West Chapman Ave, 3rd & 7th Floor<br>Orange, CA 92868 | Ken Rodriguez<br>949-724-1707<br>kenr@aagreverse.com | 09/10/2008 | 01/01/2014 | 12/31/2014 | Servicing Percent=20 |
| MB.6760973 | UNCONDITIONAL | American Finance House LARIBA<br>750 East Green St.<br>Suite 210<br>Pasadena, CA 91101 | Mike Abdelaaty<br>626-449-4401<br>mabdelaaty@lariba.com | 06/21/2013 | 01/01/2014 | 12/31/2014 | Servicing Percent=50 |
| MB.6760563 | UNCONDITIONAL | American Financial Resources, Inc.<br>9 Sylvan Way<br>Parsippany, NJ 07054 | Richard Dubnoff<br>(973) 664-1918<br>compliance@afrmortgage.com | 05/06/2008 | 01/01/2014 | 12/31/2014 | Servicing Percent=20 |
| MB.0005608 | UNCONDITIONAL | American Portfolio Mortgage Corporation<br>800 East NW Highway, Suite 821<br>Palatine, IL 60074 | Barry Haskins<br>(847) 348-8122 | 02/22/2000 | 01/01/2014 | 12/31/2014 | Servicing Percent=10 |
| MB.0006422 | UNCONDITIONAL | Americash Mortgage<br>3080 Bristol Street<br>Suite 300<br>Costa Mesa, CA 92626 | Michael Martin<br>(714) 994-7554<br>mmartin@americashloans.com | 02/22/2002 | 01/01/2014 | 12/31/2014 | Servicing Percent=1 |
| MB.6759840 | UNCONDITIONAL | AmeriFirst Home Improvement Finance Co.<br>11171 Mill Valley Rd<br>Omaha, NE 68154 | Claudine Schreckenberger<br>402-505-6300<br>cschreckenberger@trustamerifirst.com | 02/06/2008 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6760814 | UNCONDITIONAL | Amerifirst Home Mortgage<br>616 W. Centre Avenue<br>Portage, MI 49024 | Amerifirst Home Mortgage<br>269-324-4240<br>mmeade@amerifirst.com | 05/26/2011 | 01/01/2014 | 12/31/2014 | Servicing Percent=10 |
| MB.6760882 | UNCONDITIONAL | AmeriHome Mortgage Corporation<br>2141 W Bristol Rd<br>Flint, MI 48507 | Rebecca Tomin<br>810-257-1335<br>AMCBT3@aol.com | 04/26/2012 | 01/01/2014 | 12/31/2014 | Servicing Percent=30 |
| MB.6760853 | UNCONDITIONAL | AmeriNational Community Services, Inc.<br>217 S. Newton Ave<br>Albert Lea, MN 56007 | Adrienne Thorson<br>507-369-1263<br>athorson@amerinational.net | 02/03/2012 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.0000720 | UNCONDITIONAL | Ameritrust Mortgage Corporation<br>284 Virginia Street<br>Crystal Lake, IL 60014 | Debbie Alley<br>(815) 459-7303<br>debbie@ameritrust-mortgage.com | 02/20/1987 | 01/01/2014 | 12/31/2014 | Servicing Percent=20 |
| MB.6759875 | UNCONDITIONAL | Amherst Funding Group, L.P.<br>5001 Plaza on the Lake<br>Suite 215<br>Austin, TX 78746 | Leigh Taylor<br>512-342-3048<br>ltaylor@amherst.com | 10/19/2005 | 01/01/2014 | 12/31/2014 | Servicing Percent=20 |
| MB.6760645 | UNCONDITIONAL | AMS Servicing, LLC<br>3374 Walden Avenue Suite 120<br>Depew, NY 14043 | James P. DePalma<br>(716) 204-3883<br>aherman@ams-servicing.com | 01/30/2009 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6760802 | UNCONDITIONAL | Arvest Mortgage Company<br>106 Parkwood St.<br>Lowell, AR 72757 | Arvest Mortgage Company<br>501-716-5714<br>dbradshaw@arvest.com | 04/12/2011 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6761025 | UNCONDITIONAL | Aura Mortgage Advisors, LLC<br>57 Warren Street<br>Roxbury, MA 02119 | Elyse Cherry<br>617-427-8600<br>echerry@bostoncommunitycapital.org | 03/10/2014 | 03/10/2014 | 12/31/2014 | Servicing Percent=33 |
| MB.6759376 | UNCONDITIONAL | Bayview Loan Servicing, LLC<br>4425 Ponce De Leon Boulevard, MS 5-257<br>Coral Gables, FL 33146 | Pondolfi, Robert<br>(305) 646-4169<br>robertpondolfi@bayviewassetmanagement.com | 03/24/2014 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6760581 | UNCONDITIONAL | Beneficial Financial I Inc.<br>26525 North Riverwoods Blvd<br>Suite 100<br>Mettawa, IL 60045 | Rose K. Patenaude<br>224-880-7000<br>rose.k.patenaude@us.hsbc.com | 06/25/2008 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6760673 | UNCONDITIONAL | Brendan Financial, Inc.<br>30 East Avenue Suite A<br>Riverside, IL 60546 | Michael Collins<br>(708) 442-2686<br>michael.collins@collinsandcollins.com | 07/09/2009 | 01/01/2014 | 12/31/2014 | Servicing Percent=45 |
| MB.6760534 | UNCONDITIONAL | BSI Financial Services, Inc.<br>1425 Greenway Drive<br>Suite 400<br>Irving, TX 75038 | Jill Johnson-Sheely<br>(972) 746-2037 | 02/28/2008 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6760903 | UNCONDITIONAL | C.U. Mortgage Services, Inc.<br>500 Main Street<br>New Brighton, MN 55112 | C.U. Mortgage Services, Inc.<br>651-787-9550<br>jgroth@cuxcompanies.com | 07/17/2012 | 01/01/2014 | 12/31/2014 | Servicing Percent=50 |
| MB.0004043 | UNCONDITIONAL | Caliber Home Loans, Inc.<br>3701 Regent Blvd.<br>Suite 200<br>Irving, TX 75063 | Gates, Lisa<br>800-401-6587<br>lisa.gates@caliberhomeloans.com | 06/15/1993 | 01/01/2014 | 12/31/2014 | Servicing Percent=51 |

| License # | Type | Company | Contact | | | | Servicing |
|---|---|---|---|---|---|---|---|
| MB.6760841 | UNCONDITIONAL | MGC Mortgage, Inc.<br>7195 Dallas Parkway<br>Plano, TX 75024 | Milo Loop<br>504-596-2821<br>tarrigo@mcglinchey.com | 09/20/2011 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6760832 | UNCONDITIONAL | Michigan Mutual, Inc.<br>800 Michigan Street<br>Port Huron, MI 48060 | Milo Loop<br>810-982-9948<br>licensing@firstpreferred.com | 08/12/2011 | 01/01/2014 | 12/31/2014 | Servicing Percent=20 |
| MB.6760840 | UNCONDITIONAL | Mid-Island Mortgage Corp.<br>900 Merchants Concourse<br>Westbury, NY 11590 | Lynn Porter<br>516-683-0800<br>lporter@mortgagecorp.com | 09/15/2011 | 01/01/2014 | 12/31/2014 | Servicing Percent=50 |
| MB.0004413 | UNCONDITIONAL | Midwest Loan Services, Inc.<br>616 Shelden Avenue, P.O. Box 144<br>Houghton, MI 49931 | Janet Burger<br>(906) 487-5870<br>mtsloan@up.net | 11/07/1995 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.0004331 | UNCONDITIONAL | MorEquity, Inc.<br>600 NW 2nd Street, Floor 4<br>Evansville, IN 47708 | Linda K Jones<br>(812) 461-2590<br>karen_barton@agfinance.com | 11/05/1994 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.0004131 | UNCONDITIONAL | Mortgage Center L.C.<br>29621 Northwestern Highway<br>Southfield, MI 48034 | Jackie Normandeau<br>248-353-8416<br>jnormandeau@mortgagecenter.com | 11/08/1993 | 01/01/2014 | 12/31/2014 | Servicing Percent=90 |
| MB.0005189 | UNCONDITIONAL | Mortgage Clearing Corporation<br>5612 S. Lewis Ave.<br>Tulsa, OK 74105 | Faith Crenshaw<br>(800) 727-9043<br>faithc@mortgageclearing.com | 06/17/1998 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6850016 | UNCONDITIONAL | Mortgage Service Center<br>1 Mortgage Way<br>Mt. Laurel, NJ 08054 | Gager, Gerry<br>856-917-0914 | 10/09/2012 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6850033 | UNCONDITIONAL | Mortgage Solutions Financial<br>5455 N Union Blvd<br>Colorado Springs, CO 80918 | Jessie Williams<br>719-447-0325 | 12/12/2013 | 12/12/2013 | 12/31/2014 | Servicing Percent=10 |
| MB.6760816 | UNCONDITIONAL | Mortgage Solutions of Colorado, LLC<br>5455 N Union Blvd.<br>Colorado Springs, CO 80918 | Mortgage Solutions of Colorado, LLC<br>719-447-0325<br>petep@msofco.com | 06/21/2011 | 01/01/2014 | 12/31/2014 | Servicing Percent=10 |
| MB.0005825-DBA5 | UNCONDITIONAL | MortgageQuestions.com<br>1 Mortgage Way<br>Mount Laurel, NJ 08054 | Eileen DelVeachio<br>(856) 917-0919 | 02/02/2000 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6760850 | UNCONDITIONAL | myCUmortgage, LLC<br>3040 Presidential Drive<br>Fairborn, OH 45324 | myCUmortgage, LLC<br>937-912-7669<br>jogden@wpcu.coop | 12/02/2011 | 01/01/2014 | 12/31/2014 | Servicing Percent=50 |
| MB.6760941 | UNCONDITIONAL | National Asset Mortgage, LLC<br>4350 St. Andrews Rd<br>Columbia, SC 29210 | Richards, Matthew<br>803-391-3299<br>admin@naamortgage.com | 03/14/2013 | 01/01/2014 | 12/31/2014 | Servicing Percent=50 |
| MB.0004414 | UNCONDITIONAL | Nationstar Mortgage, LLC<br>350 Highland Drive<br>Lewisville, TX 75067 | Gloria Fillmon<br>(469) 549-2348<br>Compliance@nationstarmail.com | 05/11/1995 | 01/01/2014 | 12/31/2014 | Servicing Percent=35 |
| MB.0000860 | UNCONDITIONAL | Nationwide Advantage Mortgage Company<br>1100 Locust Street Department 2009<br>Des Moines, IA 50391-2009 | Jean Anne Seeliger<br>(800) 356-3442 | 10/02/1987 | 01/01/2014 | 12/31/2014 | Servicing Percent=94 |
| MB.0000661 | UNCONDITIONAL | Neighborhood Lending Services, Inc.<br>1279 N. Milwaukee, 5th Floor<br>Chicago, IL 60622 | James K. Wheaton<br>(773) 329-4010<br>jWheaton@NHSChicago.org | 10/17/1986 | 01/01/2014 | 12/31/2014 | Servicing Percent=10 |
| MB.8760927 | UNCONDITIONAL | Neighborhood Mortgage Solutions, LLC<br>544 N Main St<br>Frankenmuth, MI 48734 | Weichmeyer, Greg<br>989-497-1651<br>gwischmeyer@gonms.org | 12/20/2012 | 01/01/2014 | 12/31/2014 | Servicing Percent=50 |
| MB.6760780 | UNCONDITIONAL | New American Funding<br>14511 Myford Road, Suite 100<br>Tustin, CA 92606 | Enrico Arvielo<br>800-450-2010<br>rick@nafinc.com | 07/02/2010 | 01/01/2014 | 12/31/2014 | Servicing Percent=24 |
| MB.6759458 | UNCONDITIONAL | New Day Financial, LLC d/b/a New Day USA<br>8160 Maple Lawn Boulevard<br>Fulton, MD 20759 | Khieu, May<br>301-483-4240<br>nmlslicensing@newdayusa.com | 10/07/2004 | 01/01/2014 | 12/31/2014 | Servicing Percent=50 |
| MB.6760896 | UNCONDITIONAL | NW HomeStart, Inc.<br>27 W. Stephenson Street<br>Freeport, IL 61032 | Deborah Elzinga<br>815-232-6197<br>delzinga@aeroinc.net | 06/12/2012 | 01/01/2014 | 12/31/2014 | Servicing Percent=70 |
| MB.6760782 | UNCONDITIONAL | NYCB Mortgage Company, LLC<br>1801 East Ninth Street, Suite 200<br>Cleveland, OH 44114 | NYCB Mortgage Company, LLC<br>216-588-4660<br>rgray@amtrust.com | 11/04/2010 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6759457 | UNCONDITIONAL | Ocwen Loan Servicing, LLC<br>1661 Worthington Road, Suite 100<br>West Palm Beach, FL 33409 | Mable Scarlett<br>(561) 682-8000 | 07/29/2004 | 01/01/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6760285 | UNCONDITIONAL | On Q Financial, Inc.<br>4800 N. Scottsdale Rd., #5500<br>Scottsdale, AZ 85251 | John Bergman<br>(480) 444-7100<br>john.bergman@onqfinancial.com | 02/22/2007 | 01/01/2014 | 12/31/2014 | Servicing Percent=1 |
| MB.6761023 | UNCONDITIONAL | Onslow Bay Servicing LLC<br>Ronald Jordan<br>110 Oakwood Dr Ste 210<br>Winston-Salem, NC 27103 | Onslow Bay Servicing LLC<br>336-760-9331<br>ken@acadvisors.com | 02/28/2014 | 02/28/2014 | 12/31/2014 | Servicing Percent=100 |
| MB.6760895 | UNCONDITIONAL | Pacific Union Financial, LLC<br>8900 Freeport Pkwy., Ste. 150<br>Irving, TX 75063 | LaRaia, Laura<br>972-827-3600<br>llaraia@loanpacific.com | 08/12/2012 | 01/01/2014 | 12/31/2014 | Servicing Percent=60 |
| MB.6760595 | UNCONDITIONAL | PennyMac Loan Services, LLC<br>6101 Condor Drive Suite 200<br>Moorpark, CA 93021 | Carol Queen<br>(818) 224-7442 | 08/11/2008 | 01/01/2014 | 12/31/2014 | Servicing Percent=99 |
| MB.6760914 | UNCONDITIONAL | Performance Equity Partners, Inc.<br>18470 Thompson Court Suite 1C<br>Tinley Park, IL 60477 | Performance Equity Partners, Inc.<br>708-478-6514<br>bwerth@peplending.com | 08/30/2012 | 01/01/2014 | 12/31/2014 | Servicing Percent=5 |
| MB.0000443 | UNCONDITIONAL | PHH Mortgage Corporation<br>1 Mortgage Way<br>Mount Laurel, NJ 08054 | Eileen Delvecchil<br>(856) 917-0919<br>loree.marzili@mortgagefamily.com | 06/27/1985 | 01/01/2014 | 12/31/2014 | Servicing Percent=40 |
| MB.0005089-DBA1 | UNCONDITIONAL | PHH Mortgage Services<br>1 Mortgage Way<br>Mount Laurel, NJ 08054 | Eileen DelVecchio<br>(856) 917-0919<br>Gerry.gager@mortgagefamily.com | 04/15/1998 | 01/01/2014 | 12/31/2014 | Servicing Percent=50 |
| MB.0004152 | UNCONDITIONAL | Platinum Home Mortgage Corporation<br>2200 Hicks Road, Suite 101 | Lori Pelinski<br>(847) 797-9500 | 12/13/1993 | 01/01/2014 | 12/31/2014 | Servicing Percent=10 |

https://www.idfpr.com/banks/mblookup/mbservicerslist.htm

| | | | | | | |
|---|---|---|---|---|---|---|
| | | Kevin Cordell<br>400 Morris Avenue<br>Denville, NJ 07834 | 862-219-5725<br>info@madisonmanagement.net | | | |
| MB.6760418 | UNCONDITIONAL | Marix Servicing LLC<br>7340 S Kyrene Road<br>Suite 101A<br>Tempe, AZ 85283 | Dahlager, Cari<br>877-906-2749<br>cari.k.dahlager@gt-cs.com | 08/27/2007 | 12/31/2018 | Servicing Activity=Yes |
| MB.6761122 | UNCONDITIONAL | Matrix Financial Services Corporation<br>Rebecca Sandberg<br>601 Carlson Parkway<br>Minnetonka, MN 55305 | Matrix Financial Services Corporation<br>612-629-2500<br>rebecca.sandberg@twoharborsinvestment.com | 09/11/2015 | 12/31/2018 | Servicing Activity=Yes |
| MB.6760657 | UNCONDITIONAL | Member First Mortgage, LLC<br>616 44th Street SE<br>Grand Rapids, MI 49548 | Diemer, Deb<br>616-301-6296<br>deb@memberfirstmortgage.com | 03/18/2009 | 12/31/2018 | Servicing Activity=Yes |
| MB.6759473 | UNCONDITIONAL | Metropolitan Home Mortgage, Inc.<br>4 Park Plaza, Suite 800<br>Irvine, CA 92614 | Claudia Nelson<br>800-319-6001<br>CNelson@mthm.com | 07/27/2004 | 12/31/2018 | Servicing Activity=Yes |
| MB.6760841 | UNCONDITIONAL | MGC Mortgage, Inc.<br>7195 Dallas Parkway<br>Plano, TX 75024 | Hamilton, Grant<br>469-229-8756<br>ghamilton@mgcmortgage.com | 09/20/2011 | 12/31/2018 | Servicing Activity=Yes |
| MB.6760832 | UNCONDITIONAL | Michigan Mutual, Inc.<br>800 Michigan Street<br>Port Huron, MI 48060 | Mark Walker<br>810-982-9948<br>mwalker@mimutual.com | 08/12/2011 | 12/31/2018 | Servicing Activity=Yes |
| MB.6760775 | UNCONDITIONAL | Mid America Mortgage, Inc.<br>20545 Center Ridge Rd. Ste. 250<br>Rocky River, OH 44116 | Mid America Mortgage, Inc.<br>440-356-3242<br>kara.lamphere@midamericamortgage.com | 09/23/2010 | 12/31/2018 | Servicing Activity=Yes |
| MB.6760840 | UNCONDITIONAL | Mid-Island Mortgage Corp.<br>900 Merchants Concourse<br>Westbury, NY 11590 | Lynn Porter<br>516-683-0600<br>lporter@mortgagecorp.com | 09/15/2011 | 12/31/2018 | Servicing Activity=Yes |
| MB.0004413 | UNCONDITIONAL | Midwest Loan Solutions, Inc.<br>616 Sheldon Avenue, P.O. Box 144<br>Houghton, MI 49931 | Carol Petrelius<br>(906) 483-4355<br>petreliusc@midwestloanservices.com | 11/07/1995 | 12/31/2018 | Servicing Activity=Yes |
| MB.6761047 | UNCONDITIONAL | Midwest MHC Finance,LLC<br>732 N Cass Avenue<br>Westmont, IL 60559 | Midwest MHC Finance,LLC<br>630-734-0300<br>bgallagher@sregpm.com | 07/30/2014 | 12/31/2018 | Servicing Activity=Yes |

MGC    Highlight All    Match Case    Whole Words    2 of 2 matches

**EXHIBIT 14**

# Follow the Money

## Where is it going?

D. Andrew Beal is a Texas billionaire and the owner of Beal Financial Corporation and all of its subsidiaries.  He has had a countless number of subsidiaries under the umbrella of Beal Financial Corporation. The reason I say countless is because just when I thought I had a full list of all its subsidiaries (active and inactive) it seems I find another one. So for me personally it is countless because I have been unable to find and count them all.

## LIST OF KNOWN ACTIVE SUBSIDIARIES

- Agility Assets
- Agility USP LLC
- Beal Bank
- Beal Capital Europe
- Beal Financial
- Beal Mortgage
- Beal Nevada
- Beal Properties
- Beal Savings Bank
- Beal Service
- CLG Hedge Fund
- CLMG Corp
- CSG Investments Inc
- CXA 10 Corporation
- CXA 12 Corporation
- CXA 13 Corporation
- CXA 16 Corporation
- CXA 18 Corporation
- CXA Corporation
- LNV Corporation
- Loan Acquisition
- LPP Mortgage
- MGC Mortgage
- Property Acceptance
- Syndicated Debt Covenant

For some of his subsidiaries Mr. D. Andrew Beal just changes the tax ID numbers . Some he changes the name by one word as if it is a new company. Some he changes the classification of the business.

There are many, many companies that are inactive. He may begin a company for approximately a year, some longer, some shorter. What is the purpose for these short time corporations if not for evasion and illegal activities?

He has a few that we cannot find any filings for such as Foreign Lending Corporation, International Lending Limited or Jamaica Redevelopment Foundation Inc. which are Beal Bank subsidiaries. There are more out there that either were not registered or registered out of the country.

MGC Mortgage (a Beal entity) Claims to be servicer for thousands of loans as early as 2008. All though they claim to be servicer they do not accept payments. Most checks are returned to the sender without any endorsements on the back to indicate that there was an attempt at cashing the payments before returning.

In 2010 a company called Dovenmuehle Mortgage became the "sub-servicer" for MGC Mortgage. According to the Texas Department of Office and Finance there is no such thing as "sub-servicer". For the majority of these mortgages LNV Corporation or LPP Mortgage (both Beal Entities) claims to be the Lender.



In August 2012, Catherine Gebhardt received a payoff statement, Joann Breitling received one in February 2013. Both statements instructed to wire transfer the funds with specific instructions into a Bank of America account. Copies of these statements are available upon request.

**FUNDS RECEIVED FOR PAYOFF MUST BE U.S. DOLLARS IN THE FORM OF CERTIFIED FUNDS OR WIRE TRANSFER ONLY, PAYABLE TO MGC MORTGAGE, INC. WIRES RECEIVED AFTER 3 PM CST WILL BE CREDITED ON THE NEXT BUSINESS DAY AND WILL REQUIRE ADDITIONAL PER DIEM INTEREST.**

**Funds sent by wire to Bank of America, Chicago, IL, ABA Number 026009593, Account Number 866116790, Account Title: Payoff Clearing Account. The borrower(s) name and loan number must be referenced as part of the wire transfer package, otherwise, funds will be rejected. To confirm our receipt of your wire transfer and application of our Payoff, contact our Customer Service Department at 1-877-471-7088 the day following your wire transfer.**

Cathy found this very strange and therefore decided to investigate this account. The circumstances that followed was even stranger.



Filed in 116th District Court Dallas

Part of Case #DC1107087

**TIME RECEIVED** February 5, 2013 4:02:52 PM CST    **\*\* INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY \*\***    **REMOTE CSID** POTS modem 5    **DURATION** (1/1)    **PAGES** 1    **STATUS** Received

Erika Orc POTSmodem5    XQ611/JMW 02/05/2013 04:01:38 PM -0600

February 05, 2013    ***OUR OFFICES WILL BE CLOSED FEBRUARY 18, 2013***    "CERTIFIED FUNDS ONLY"

Grant Hamilton
972-395-3555

PAYOFF STATEMENT FOR:
Samuel G Breitling
Jo Ann Breitling

LOAN NUMBER:
LOAN TYPE:
PROPERTY ADDRESS:

These figures are good to February 28, 2013.
The current total of the next payment.
The current total unpaid principal balance is          $      122,577.71
Interest at 12.37500%                                          46,626.00
NSF/Fee:                                                       24,277.37
Escrow/Impound overdraft                                       7,220.00
Unpaid Late Charges                                              396.00
Recoverable Balance
Prop Inspection Fee
Fee                                              .00
Payoff update fee

AMOUNT TO PAY LOAN IN FULL...........         $      201,942.90
Funds received on or after February 28, 2013 will require an additional
$ 41.56 in interest per day.

FUNDS RECEIVED FOR PAYOFF MUST BE U.S. DOLLARS IN THE FORM OF CERTIFIED
FUNDS OR WIRE TRANSFER ONLY, PAYABLE TO MGC Mortgage, Inc
WIRES RECEIVED AFTER 3 PM CST WILL BE CREDITED ON THE NEXT BUSINESS DAY
AND WILL REQUIRE ADDITIONAL PER DIEM INTEREST

Funds sent by wire to Bank of America, Chicago, IL, ABA Number 026009593,
Account number by digit, type of account, Credit to Account name and loan number, the
borrower(s) name and loan number must be referenced as part of the wire
transfer. For your wire transfer and application, to your Payoff send
receipt of your wire transfer and application, to your Payoff send
your Customer Service Department at 1-877-471-7366 the day following
your wire transfer.

PAYOFF CHECKS should be mailed to MGC Mortgage, Inc
1 Corporate Drive, Suite 360, Lake Zurich, IL 60047, Attention:
Payoff Processing.

The payoff figures provided are subject to final verification by the Note
holder. In accepting funds which are insufficient to satisfy the funds and
refuse or accept the payoff. In accepting funds which are insufficient to adjust these figures and
indebtedness for any reason.

Issuance of this statement does not suspend the contract requirement
to make the mortgage payment when due. A late charge of $160.53 will
be added to the full indebtedness, the payoff funds will be returned. This
satisfy the full indebtedness, the payoff funds will be returned. This
continues to accrue on the indebtedness until the total amount required
for payoff is received.

If the funds received for payoff are not sufficient to satisfy the full
indebtedness of the loan, then the shortage will be taken from the escrow/
impound account or the applicable monies, the payoff funds will be returned. This
satisfy the full indebtedness, the payoff funds will be returned. This
continues to accrue on the indebtedness until the total amount required
for payoff is received.

Unless your escrow balance is being credited to your escrow balance,
the escrow/impound account will continue to be made from the
receives your payoff funds. Any escrow balance or overpayment will be mailed
to you within 20 business days after the receipt and processing
of the funds required to pay the loan in full.

If your (the borrower(s) monthly payments are automatically deducted
from a checking or savings account, a written cancellation request
must be received no later than 3 business days
prior to the payoff date. Payments will continue to be automatically
deducted until the written request is received and has been processed.

Provide any changes to the borrower(s) mailing address where the
executed release/reconveyance documents should be sent.

XQ611/JMW    Loan Number:

TIME RECEIVED                        REMOTE CSID                DURATION    PAGES    STATUS
August 28, 2012 4:54:33 PM CDT                                 46          1        Received
08/28/2012 18:59 FAX                                                                @ 0017/001

** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

"CERTIFIED FUNDS ONLY"

August 28, 2012

Jeff
972-309-3454

PAYOFF STATEMENT FOR:                LOAN NUMBER:                        XQ741/LNI
Catherine Gebhardt                   LOAN TYPE:        Conventional
                                     PROPERTY ADDRESS:

These figures are good to August 31, 2012.
This loan is due for the December 01, 2009 payment.
The current total unpaid principal balance is:                 $         234,914.99
Interest at 12.00000%                                                      89,829.42
Escrow/Impound overdraft                                                   19,804.53
Unpaid late charges                                                           766.91
Recoverable Balance                                                        3,710.11
Recordg/Assignmt Fee                                                          12.00
Prop Inspection Fee                                                           383.25
Misc Client Fee
Payoff Update Fee                                 .00
      *** TOTAL AMOUNT TO PAY LOAN IN FULL *** *   $       348,771.21
Funds received on or after August 31, 2012 will require an additional
$ 61.14 in interest per Day.

FUNDS RECEIVED FOR PAYOFF MUST BE U.S. DOLLARS IN THE FORM OF CERTIFIED
FUNDS OR WIRE TRANSFER ONLY! PAYABLE TO MGC MORTGAGE, INC.
WIRES RECEIVED AFTER 3 PM CST WILL BE CREDITED THE NEXT BUSINESS DAY
AND WILL REQUIRE ADDITIONAL PER DIEM INTEREST.

Funds sent by wire to Bank of America, Chicago, IL, ABA Number 026009593,
Account Number 6665116790. Account Title: Payoff Clearing Account. The
borrower(s) name and loan number must be referenced as part of the wire
transfer package, otherwise, funds will be rejected. To confirm our
receipt of your wire transfer and application of our payoff contact
our Customer Service Department at 1-877-471-7868 the day following
your wire transfer.

PAYOFF CHECKS should be mailed to MGC Mortgage, Inc. at
1 Corporate Drive, Suite 360, Lake Zurich, IL 60047, Attention:
Payoff Processing.

The payoff figures provided are subject to final verification by the MGC
Mortgage, Inc. MGC Mortgage, Inc. reserves the right to adjust these
figures and refuse or accept any funds which are insufficient to satisfy
the full indebtedness for any reason.

Issuance of this statement does not suspend the contract requirement
to make the payments when due. A late charge of $ 103.89 will
be assessed 15 days after a current payment is due and should be
added to the payoff total if received after that time.

If the funds received for payoff are not sufficient to satisfy the full
indebtedness of the loan, the shortage will be taken from the escrow/
impound account (if applicable). If funds are still not sufficient to
satisfy the full indebtedness, the payoff funds will be returned. This
delay will cost you (the borrower) additional interest, as interest
continues to accrue on the indebtedness until the total amount required
for payoff is received.

Unless your escrow balance is being credited to your payoff balance,
scheduled tax and insurance disbursements will continue to be made from
the escrow/impound account until the MGC Mortgage, Inc. receives from
the Trustee or State the payoff balance. Any escrow balance of overpayment will be mailed to the
payoff funds. Any escrow balance of overpayment and remainder of

Catherine Gebhardt and Cammy Depew began making phone calls to Bank of America inquiring about this account number (most of them recorded). We made several calls to different branches and spoke to different employees of Bank of America, each one stated the same thing, "they were not able to locate the existence of that account" and "this account did not exist, personal or business). We were baffled. Why would MGC Mortgage require a wire transfer in an account that did not exist?

At this point Catherine decided to go to her personal bank and make a wire transfer of $5.00 to see if it would be accepted using the exact directions per the payoff solely expecting those funds to be rejected within three business days as her personal bank told her would occur if this account was invalid.

This transfer was not rejected which was more baffling. Catherine began a campaign trying to figure out what was going on with this account. In addition to making several phone calls she sent written request to Bank of America Headquarters inquiring information on this issue. She did not receive a timely response so approximately 20 days later Catherine decided to make another transfer, this time using the Bank of America headquarters address in Charlotte N.C. rather than the location specified in the payoff statement.

Three days later Catherine received a telephone call from her bank to notify her that the second transaction to N.C. was rejected. Later, that same day she received another call from her bank to notify her that the initial transaction was also rejected.

Sep 19 13 05:45p         Cathy                                                    8887741248                                      p.2

FedLine for the Web:FedWire Funds: Advice                                                                        Page 1 of 1

‣ Message List   Next ▶



## Incoming Messages

Delivered to FPM:   **09/18/2013 10:08:56**                    Test/Prod:   **Prod**
IMAD:   **20130918 B6B7HU2R 003513 09181008**
OMAD:   **20130918 QMGFNF6S 000617 09181008**
See Audit Log for this Message

**Message was marked as viewed.**

Create a return message...   | Export |

### Basic Information

Sender ABA (3100):            026009593  BK AMER NYC
Receiver ABA (3400):          064201968  TSBPF
Amount (2000):                5.00
Type/Subtype Code(1510):      1000 - Transfer of Funds
Business Function (3600):     BTR - Bank Transfer
Sender Reference (3320):      BOA6082 17SEP13
Reference for Beneficiary: (4320)   BOA6082-17SEP13

### Originator Information

Originator (5000):
    ID Code:           D - DDA Account Number
    Identifier:        008666116790
    Name:              DOVENMUEHLE MORTGAGE INC
    Address:           PAYMENT CLEARING PAYOFF CLEARING
                       1 CORPORATE DRIVE, SUITE 360
                       LAKE ZURICH IL 60047-8924

Originator FI (5100):
    ID Code:           B - SWIFT Bank Identifier Code
    Identifier:        BOFAUS3N

### Beneficiary Information

Beneficiary (4200):
    Name:              YOURSELVES

### FI to FI Information

Receiver FI Information (6100):
    Text:              RTN YR IMAD
                       09130MGFT003001766 DD 13SEP13 AMT
                       5.00/USD RETURNING WIRE FOR LIN,
                       1423946779 PER CHARLES KING
                       REQUEST

Create a return message...   | Export |



Sep 19 13 05:46p    Cathy
Sep. 18. 2013  2:45PM    T S B   DEPOSIT OPERATIONS
FedLine for the WebcFedWire Funds: Advice

8887741248

p.3
No. 1190   P.   1
Page 1 of 1

▲ Message List    Next ▶

**Incoming Messages**

Delivered to FPH:    09/18/2013 14:17:38       Test/Prod:    Prod
IMAD:        20130918 B6B7HU1R 007827 09181417
OMAD:        20130918 QMGFMP8B 001864 09181417
See Audit Log for this Message

Message was marked as viewed.

Create return message...    | Export |

**Basic Information**

Sender ABA (3100):              026009593  BK AMER NYC
Receiver ABA (3400):            064201968  TSBFF
Amount (2000):                  5.00
Type/Subtype Code(1510):        1000 - Transfer of Funds
Business Function (3600):       BTR - Bank Transfer
Sender Reference (3320):        50A5731 17S8P13
Reference for Beneficiary: (4320)   50A5731-17S8P13

**Originator Information**
Originator (5000):
    ID Code:                    D - DDA Account Number
    Identifier:                 00866116790
    Name:                       COVENHRUHLE MORTGAGE INC
    Address:                    PAYMENT CLEARING PAYOFF CLEARING
                                1 CORPORATE DRIVE, SUITE 360
                                LAKE ZURICH IL 60047-8924

Originator FI (5100):
    ID Code:                    B - SWIFT Bank Identifier Code
    Identifier:                 BOFAUS3N

**Beneficiary Information**
Beneficiary (4200):
    Name:                       YOURSELVES

**FI to FI Information**
Receiver FI Information (6100)
    Text:                       RTN IMAD
                                20130918QMGFP01300250 5.00/USD
                                PER BNF REQ

Create a return message...    | Export |

Upon arriving at her bank to retrieve the second wire transfer rejection Catherine was told by her bank that earlier that morning, not long after the first rejection, a man by the name of Charles King called her bank. The Banking official taking this call said that the caller id showed the call was coming from the U.S. Government. Charles King told her that he was with Mortgage Relief Aid. Charles King is the individual listed as the individual that rejected the second wire transfer.

**Tennessee State Bank**
"Banking at its Best"
Member FDIC

September 19, 2013

RE: Charles King

To Whom It May Concern;

I was notified by my Operations Department that a wire that had been sent by Catherine Gebhardt to Pay Off Clearing was to be returned per Charles King.

Later in the day I answered a call that showed as US Government on my caller ID. The caller identified himself as Charles King. He said he was with Mortgage Relief Aid and was inquiring if Tennessee State Bank accepted ACH Deposits for customers. My response was that as long as it was a valid account and the name and account matched up, there would be no problems. He said that Bank of America and another bank, I didn't recall the name of second bank did not accept ACH deposits.

Sherry R Cole
Customer Service Representative

**Tennessee State Bank - Dolly Parton Parkway Office**
642 Dolly Parton Parkway, P.O. Box 4188 - Sevierville, TN 37864
Phone (865) 429-7800 - Fax (865) 429-7888
www.tnstatebank.com

In early October 2013 Catherine received a telephone call from a person identifying herself as Linda with Bank of America. Catherine was not in the office at the time so her associate spoke with Linda for a short time. Linda requested from this associate Catherine's social security number. Her associate refused to disclose that information and advised her to call back in an hour. When Linda called back Catherine did not retrieve the call but a message was left on her voicemail. That message stated that she was Linda from Bank of America and she state "we have some correspondence from you / for you, please give us a call back". Catherine tried to return her call and was told that without an extension number or last name they could not help her. They also stated that Bank of America would never request a social security number from you if they are the ones that initiated the call.

Soon after Catherine received another call by an individual identifying herself as Allison. Allison stated she was calling from Bank of America however the caller id displayed the words card services. There was approximately a 45 minute conversation recorded by Catherine via audio tape between her and Allison. Allison was very concerned about how Catherine had obtained knowledge of this account. Catherine told Allison of her previous calls in which she was told that this account did not exist whether business or personal. Allison stated to Catherine that this account was a global account and the average bank representative did not have access to see the existence of global accounts. Catherine questioned Allison about the beneficiary of that account. Allison said that she could not disclose that but if Catherine named the suspected beneficiary she could say yes or no. Catherine asked was it LNV Corporation – NO, MGC Mortgage – NO, Dovenmuehle – Yes.

Catherine then questioned Allison on Global Accounts and how they operated. She then asked, "even though the beneficiary claims to be in the states could the ultimate and real beneficiary be outside the states and access these funds" and Allison said yes if they are sent by this wire transfer.

Stuart Hamm and Cammy Depew were sending checks to MGC Mortgage. In June of 2010 Dovenmuehle began sub-servicing for MGC. Before this time all of the checks were being returned to Cammy with no endorsements on the back.

The checks that were being deposited by Dovenmuehle Mortgage was being deposited into an account that was 2 numbers different then the payoff account.

After Catherine and Cammy began questioning the payoff account Dovenmuehle quit putting the account number and routing numbers on the back of the deposited checks.

Account number 8666116776

Routing number  111000025

111012822 08/17/2010
2134518195    RR - C
311990511 08/16/2010
000001014955070    RR - C
011000138 08/12/2010
000006137233317

↓Do not endorse or write below this line↓

STOP PAYMENT

$400.00

0000095025

7362454

July 30, 2010

DOLLARS    $ ******400.00

Please Direct Any Questions
To    Online Bill Payment Processing Center
(800) 240-2368

LA CAPITOL FCU

CAMAY DEPEW
4000 LANIER DR
GONZALES, LA 70297-7354

Void After 180 DAYS.
Signature On File
This check has been authorized
by your depositor

142040 309

Pay FOUR HUNDRED AND 00/100

To
the
Order
Of

MGC MORTGAGE INC
75 REMITTANCE DR DPT 6664
CHICAGO, IL 60675-6664

[1115000025] 08/09/2010
000000220021313

*111012822*
08/17/2010
46425966621

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

RETURN REASON-C
STOP PAYMENT

*15590001*
*5365*
*2*
*00001-004017*

For Deposit only to:
account 8666116776
Cust. Dovenmuehle Mortgage Inc
ACCMaster

DO NOT WRITE STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

Seq: 27
Dep: 013580
R/T: 111000025
Date: 08/09/10

>111000025< 08/09/2010
000007880201313

Security features on this document include a Micro-Print
Border, Artificial Watermark.
Absence of these features may indicate alteration.

* FEDERAL RESERVE BOARD OF GOVERNORS REG. CC



LNV Corporation is listed on numerous assignments as being the lender / note holder.

There is no phone number for LNV Corporation. Several phone calls were made to Beal Bank requesting to speak to LNV Corporation and was always transferred to CLMG (another of Beals subsidiaries) and then to MGC Mortgage. A few of these calls were recorded by Catherine Gebhardt and witnessed by Cammy Depew.

On one occasion Cammy called Beal Bank and spoke with a different receptionist. She informed me that it was not her position and was just filling in for the employees lunch break. I asked her for LNV Corporations telephone number. She said that she found a telephone directory and there was a number listed for LNV but it was strictly a voicemail number. I made the comment that I was beginning to believe that this company did not exist and her reply was that she had not been employed there long, she believed that they had at one time but no longer does.

I have left messages on the voicemail number but no one has ever responded. A paid telephone search was done on this number and it indicates that this is a mobile number owned by Beal Bank.

# Phone Report
## (469) 467-5242

Report Expiration
April 24, 2014

Name  BEAL BANK CORPO,

Most Recent Address  N/A - view People Search Results for possible matches

City  Plano , 75074

State  TX

County  Collin

Line Type  Mobile

Phone Carrier  Southwestern Bell Telephone Company - TX

Social Network Profiles

Social Network search results include Facebook, LinkedIn and Twitter profiles. Social networks require that you give us permission to run a Social Network search. No one in your network will be notified and your account information is not added to our search database.

**No social network profiles were found**

People Search Results

Now that we have established that LNV Corporation is more than likely an on paper only company we will talk a little more about Mr. D. Andrew Beal.

In Southgate Master Fund LLC v. United States, the U.S. Court of Appeals for the Fifth Circuit, based in New Orleans, affirmed a lower court ruling that a company formed by billionaire Dallas banker **D. Andrew Beal and others was a sham partnership** that must be disregarded for federal income tax purposes.  In an opinion authored by Judge Patrick E. Higginbotham, the court of appeals disallowed the company's attempt to allocate approximately $200 million in income tax deductions to Beal. The deductions allegedly resulted from Beal's acquiring (through a company that was treated as a partnership for tax purposes) a portfolio of non-performing Chinese debt for less than $20 million, disposing of the portfolio and generating more than $1 billion in artificial paper losses approximately equivalent to the debt's face value.  The court of appeals also affirmed the lower court's disallowance of monetary penalties that the Internal Revenue Service (IRS) had sought to impose, while noting that the penalty issue was "a close one."

**What is LNV Corporations intent????**

If you take the time to read this case decision in its entirety it is almost the same as the case with LNV Corporation.

http://caselaw.findlaw.com/us-5th-circuit/1581331.html

The question now is how????

I have found 2 presentations that explains what a Foreign Lending Corp. is.

If you would like to view the full PDF files they can be found at

http://publications.ruchelaw.com/pdfs/PPT/07-14%20PH%20et%20al%20-%20Foreign%20Persons%20Investing%20in%20US%20Real%20Estate,%20NYU%20Summer%20Institute.pdf

http://media.straffordpub.com/products/inbound-transactions-and-federal-tax-compliance-issues-with-1120-f-8833-and-other-forms-2012-12-05/presentation.pdf

I will take some of the pages to explain for this presentation.

On one I will mention Loan Acquisitions. On all the Assignments I have seen transferring the note from a lender to LNV Corporation or LPP Mortgage it states that the

"PURCHASE AGREEMENT IS BETWEEN" the seller and "LOAN ACQUISITIONS".

## ASSIGNMENT OF MORTGAGE

THIS ASSIGNMENT OF MORTGAGE (this "Assignment") is made by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") as nominee for Lender and Lender's successors and assigns, who is organized and existing under the laws of Delaware and whose address is 1595 Spring Hill Road, Suite 310, Vienna, Virginia 22182 ("Assignor"), to and in favor of LNV CORPORATION, INC., whose address is 7195 Dallas Parkway, Plano, Texas 75024 ("Assignee"), pursuant to the terms of that certain Amended and Restated Flow Mortgage Loan Purchase and Interim Servicing Agreement, (the "Purchase Agreement"), effective July 1, 2008 between DLJ MORTGAGE CAPITAL INC. and LOAN ACQUISITION CORPORATION.

# Foreign Corps Lending In The US: GLAM 2009-10



Foreign lending corp. (FLC) will have a trade or business within the U.S. under the following facts:

- FLC does not have an office or any employees situated within the U.S.

- FLC pays Origination Co. (OC), an unrelated U.S. corporation that has a U.S. office, to negotiate and solicit loan contracts with U.S. lenders on FLC's behalf.

- OC sends all loans back to FLC for final approval and execution of the loan agreements between FLC and the U.S. borrower.

© 2012 KPMG LLP, a Delaware limited liability partnership and the US member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ("KPMG International"), a Swiss entity. All rights reserved.
NDPPS 134002

68

Replacing same as previous page but replacing a few of the words with LNV Corporation and Loan Acquisitions

# Foreign Corps Lending In The US: GLAM 2009-10



Foreign lending corp. (FLC) will have a trade or business within the U.S. under the following facts:

- FLC does not have an office or any employees situated within the U.S.
- FLC pays [Loan Acquisitions], an unrelated U.S. corporation that has a U.S. office, to negotiate and solicit loan contracts with U.S. lenders on FLC's behalf.
- [LNV] sends all loans back to FLC for final approval and execution of the loan agreements between FLC and the U.S. borrower.

© 2012 KPMG LLP, a Delaware limited liability partnership and the US member firm of the KPMG network of independent
member firms affiliated with KPMG International Cooperative ("KPMG International"), a Swiss entity. All rights reserved.
NDPPS 134002

68



# Foreign Corps Lending In The US: GLAM 2009-10 (Cont.)

- Although OC cannot conclude contracts on FLC's behalf, OC is still acting as FLC's agent.

- The lending activities of FLC constitute a trade or business because they are regular and continuous, and they are situated within the U.S. because FLC is attributed OC's U.S. activities.

- The interest earned by FLC on the U.S. loans is effectively connected to the U.S. business since it is attributable to the "US office" through which the business is carried on.

  - This is a somewhat controversial position, since the U.S. office here is not attributable to FLC under the current regulations because of OC's lack of signatory power.

© 2012 KPMG LLP, a Delaware limited liability partnership and the US member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ("KPMG International"), a Swiss entity. All rights reserved.
NDPPS 134002

69

Replacing same as previous page but replacing a few of the words with LNV Corporation

# Foreign Corps Lending In The US: GLAM 2009-10 (Cont.)



- Although  cannot conclude contracts on FLC's behalf,  is still acting as FLC's agent.
- The lending activities of FLC constitute a trade or business because they are regular and continuous, and they are situated within the U.S. because FLC is attributed  U.S. activities.
- The interest earned by FLC on the U.S. loans is effectively connected to the U.S. business since it is attributable to the "US office" through which the business is carried on.
  - This is a somewhat controversial position, since the U.S. office here is not attributable to FLC under the current regulations because of  lack of signatory power.

© 2012 KPMG LLP, a Delaware limited liability partnership and the US member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ("KPMG International"), a Swiss entity. All rights reserved.
NDPPS 134002

69

