**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) **NOT FOR PUBLICATION** |
| | ) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) Case No. 12-12020 (MG) |
| | ) |
| | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR LEAVE TO FILE
LATE PROOF OF CLAIM AND TO ALLOW CLAIMAINT
TO CONTINUE TO LITIGATE**

*A P P E A R A N C E S:*

LOLINA PORTER
*Pro Se Claimant*
832 Monterey Road
Glendale, CA 91206
By:   Lolina Porter

MORRISON & FOERSTER
*Counsel for the ResCap Borrower Claims Trust*
250 West 55th Street
New York, NY 10019-9601
By:   Norman S. Rosenbaum, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Motion for Leave to File Proof of Claim Out of Time and Motion to Allow Claimant to Continue to Litigate Debtor in the District Court for Nondischargeability Determination* (the "Late Claim Motion," ECF Doc. # 10451) filed *pro se* by Lolina Porter ("Porter"). The ResCap Borrower Claims Trust (the "Trust") filed an opposition to the Motion (the "Opposition," ECF Doc. # 10465). Porter filed a response (the "Response," ECF Doc. # 10520). The Late Claim Motion seeks authority to file a late claim nearly six years after the Petition Date, and more than five years after the Bar Date. As

1

explained below, Porter has failed to establish cause to be permitted to file a late claim and continue litigation[1] in the District Court Action. Accordingly, the Late Claim Motion is **DENIED**.

## I. BACKGROUND

Porter was a *pro se* plaintiff in an action pending in the United States District Court for the Western District of Tennessee (the "District Court"), captioned *Porter v. GMAC Homecomings Financials Network, et al.*, Case No. 10-cv-02858-SHM-dkv (the "District Court Action"). The District Court Action was originally commenced by Porter in the Chancery Court of Shelby County, Tennessee on October 22, 2010. The case was removed to the District Court on November 29, 2010. (*See* District Court ECF Doc. # 51.) The complaint in the District Court Action names debtor GMAC Mortgage, LLC ("GMACM") and non-debtors Aurora Loan Services LLC ("Aurora"), and Genworth Financial ("Genworth") as defendants. According to Porter, GMACM originated a mortgage loan covering Porter's investment property located in Millington, Tennessee. The servicing of the loan was subsequently transferred to Aurora. (*See* Opp. Ex. 1.)

On May 14, 2012 (the "Petition Date"), the Debtors filed their chapter 11 cases in this Court (the "Chapter 11 Cases"). On May 24, 2012, GMACM filed a Suggestion of Bankruptcy in the District Court Action and on June 7, 2012, the District Court entered an order staying and closing the case on an administrative basis as result of the Debtors' Chapter 11 Cases. (*See* District Court Docket ECF Doc. # 33, 35.)

---

[1] The Late Claim Motion does not expressly seek relief from the automatic stay under section 362(a) of the Bankruptcy Code. As described later in this Opinion, although the District Court Action has now been dismissed, to the extent such relief is sought and necessary to continue litigation in the District Court Action, or any other legal proceeding against the Debtors or the Trust, it is similarly **DENIED**.

2

Shortly after the Petition Date, Porter was served at her address with notice of the Debtors' Chapter 11 Cases. *See Affidavit of Service of Notice of Commencement* (ECF Doc. # 336.) On August 29, 2012, this Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (the "Bar Date Order," ECF Doc. # 1309), establishing November 9, 2012 as the general claims bar date (the "Bar Date"). On or before September 7, 2012, Kurtzman Carson Consultants, LLC ("KCC"), the Debtors' claims and noticing agent, served Porter with notice of the Bar Date. *See Affidavit of Service of Bar Date Notice* (ECF Doc. # 1412.)

On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order," ECF Doc. # 6065) approving the terms of the Chapter 11 plan, as amended (the "Plan"). On December 17, 2013, the Effective Date of the Plan (as defined in the Plan) occurred, and, among other things, the Borrower Trust and the ResCap Liquidating Trust (the "Liquidating Trust") were established. (*See Notice of Entry of Confirmation Order*, ECF Doc # 6137.)

The Borrower Trust was established for the benefit of Borrowers who filed Borrower Claims (as defined in the Plan) to the extent such claims are ultimately allowed through settlement or order of the Court. (*See* Plan, Art. IV.F.) The Borrower Trust was required to "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims." *Id*.

3

On February 19, 2015, the Liquidating Trust filed a *Motion for Entry of an Order Establishing Procedures Enforcing Injunctive Provisions of Plan and Confirmation Order* (the "Procedures Motion," ECF Doc. # 8158). The Procedures Motion was granted on March 13, 2015 (the "Procedures Order," ECF Doc. # 8303). The Procedures Order established procedures for the two trusts to seek and obtain orders enforcing the release and injunctive provisions of the Plan and Confirmation Order (the "Plan Inunction Provisions") against anyone who did not file a proof of claim but who had litigation pending against the Debtors.

The Liquidating Trust's counsel sent Porter two letters—the first letter on June 30, 2015 (Opp. Ex. 1) and the second letter on November 19, 2015 (*id*. Ex. 2)—advising Porter that she was violating the Plan Injunction Provisions by pursuing the District Court Action, and that, by failing to file a proof of claim, she had not preserved her purported monetary claim against the Debtors. Porter did not withdraw the District Court Action as against GMACM.

On January 8, 2016, the Liquidating Trust filed the *ResCap Liquidating Trust's Omnibus Motion to Enforce Injunctive Provisions of the Plan and Confirmation Order* (the "Plan Injunction Motion," ECF Doc. # 9489), requesting entry of an order enforcing the Plan Injunction Provisions. The motion was granted by order dated February 11, 2016 (the "Enforcement Order," ECF Doc. # 9618). The Enforcement Order directed parties subject to the order to dismiss underlying actions with prejudice within fourteen days of the entry of the Enforcement Order. The Enforcement Order also authorized the Liquidating Trust to seek to hold parties who did not comply in contempt and to seek sanctions for reasonable fees and costs. To aid in its enforcement, the Enforcement Order also permitted the Liquidating Trust to file a notice in pending litigations.

On October 16, 2014, GMACM's counsel filed a notice in the District Court Action advising the District Court of the status of the Chapter 11 Cases, the entry of the Confirmation Order and the Plan Injunction Provisions (the "Status Notice"). The Status Notice further advised that Porter had failed to file a proof of claim in the Chapter 11 Cases and, because of the Plan Injunction Provisions, Porter was barred from continuing the District Court Action. On February 26, 2016, GMACM's counsel filed a *Notice of Bankruptcy Court Order* in the District Court Action (*see* District Court ECF Doc. # 46), notifying the District Court and Porter of the terms of the Enforcement Order. A copy of the Enforcement Order was attached.

On May 19, 2016, on the motion of Aurora, the District Court reopened the case to allow Aurora, GMACM, and Genworth to file dispositive motions. (*See* District Court ECF Doc. # 51.) On July 1, 2016, defendant Aurora filed a motion for judgment on the pleadings (District Court Docket ECF Doc. # 52), and on June 7, 2017, the District Court adopted a report and recommendation of a magistrate judge granting the Aurora motion for judgment on the pleadings. (*See* District Court Docket ECF Doc. # 56.)

On September 14, 2017, GMACM filed a motion in the District Court to enforce the terms of the Enforcement Order (the "GMACM Motion to Enforce," District Court Docket ECF Doc. # 59.) Specifically, Porter had not by that date dismissed the District Court Action as against GMACM. The District Court held a telephonic hearing on the GMACM Motion to Enforce on October 26, 2017. According to the District Court docket entry, Porter declined to voluntarily dismiss the District Court Action as against GMACM and, after hearing argument, the District Court directed supplemental briefing. (*See* District Court Docket ECF Doc. # 65.) GMACM filed a supplemental memorandum on November 20, 2017, and Porter filed her response on December 7, 2017. (*See* District Court Docket ECF Doc. # 68, 69, 70.)

5

On April 30, 2018, after the Late Claim Motion, Opposition, and Response were filed in this Court, the District Court adopted two reports and recommendations of a magistrate judge (the "Reports and Recommendations," District Court Docket ECF Doc. # 73, 74), granting Genworth's motion for judgment on the pleadings (District Court Docket ECF Doc. # 58) and GMACM's motion to dismiss (District Court Docket ECF Doc. # 59). Porter did not object to the Reports and Recommendations. Therefore, the District Court Action was dismissed.

On December 7, 2017, Porter filed the Late Claim Motion in this Court seeking authority to file a late proof of claim and to allow Porter to continue to litigate in the District Court Action. The Court is sensitive to Porter's *pro se* status. But many of her arguments are largely irrelevant. Porter states that she intended to be heard concerning her allegations that GMAC participated in mortgage fraud in enforcing Porter's subprime loan. (Mot. at 3.) She also alleges that "lenders" conspired with private mortgage insurance providers to "milk the real estate market and did not care about the Citizens of America . . . ." (*Id*. at 4.) These allegations are obviously serious but they are not relevant to the relief sought in the Late Claim Motion.

Porter has two excuses for her delay in responding to various motions and requests in the District Court Action, as well as the failure to timely file a proof of claim in this Court. First, she states that her daughter was kidnapped on December 16, 2010, and Porter was focused on "being available for saving and restoring the life of her 9 year old daughter from severe PTSD and suicidal tendency, while GMAC in 2012 has filed for Chapter 11 Bankruptcy." (*Id*. ¶ b.) These circumstances, Porter submits, forced her to "drop everything including working fulltime as a Software Engineer just to help her daughter cope with the life she now has to live after kidnapping." (*Id*. at 8.) Porter also argues that she "has not received herself, nor opened an envelope containing the 'Order Granting ResCap Liquidating Trust's Omnibus Motion to

6

Enforce Injunctive Provisions of Plan and Confirmation Order' prior to in or around the week of September 22, 2017." (*Id*. at 6.)

Porter filed the Response more than four months after the Trust filed its Opposition to the Late Claim Motion.[2] Porter's Response raised new facts and excuses for her neglect in filing a proof of claim. She alleges that (i) her husband suffered an ischemic stroke with recovery from July 2009 to September 2011; (ii) Porter moved her daughter to Ireland as recommended by her psychologist; (iii) Porter traveled to the Philippines to attend a kidnapping hearing; (iv) Porter moved her daughter from Ireland to Mississippi; and (v) Porter was not in California in 2015 but was instead in Mississippi and Tennessee. (*See* Resp. at 5–7.)

## II.     DISCUSSION

### A.     Porter May Not File a Late Proof of Claim

When creditors fail to file claims before a bar date despite receiving notice, "Bankruptcy Rule 9006(b)(1) gives the court the discretion to enlarge the time to file claims 'where the failure to act was the result of excusable neglect.'" *See In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (quoting FED. R. BANKR. P. 9006(b)(1)). "The Supreme Court has interpreted 'excusable neglect' to be a flexible standard—one that can include 'inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Id*. (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 395 (1993)). "However, 'the determination is at bottom an equitable one' that must take 'account of all relevant circumstances surrounding the party's omission.'" *Id*. (quoting *Pioneer*, 507 U.S. at 395). The *Pioneer* Court established four factors to assist bankruptcy courts in evaluating

---

[2]   Porter also introduced a new argument in the Response—that any debt is non-dischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code. That section applies to individual debtors only and exempts from discharge under the stated circumstances debts that the bankruptcy debtor owes to others. Section 523 is inapplicable to the Trust or the Debtors. *See* 11 U.S.C. § 523(a)(2)(A).

7

excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the late claimant's reasonable control; and (4) whether the late claimant acted in good faith. *Pioneer*, 507 U.S. at 395.

"The Second Circuit strictly observes bar dates and has adopted what has been characterized as a 'hard line' in applying the *Pioneer* test," meaning that this Court should focus its analysis "primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the Movant." *Lehman Bros.*, 433 B.R. at 119–20. The Second Circuit has noted that "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," and that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re BH S&B Holdings LLC*, 435 B.R. 153, 163 (Bankr. S.D.N.Y. 2010). Instead, "[o]nly in unusual instances would . . . ignorance of the rules, or mistakes construing the rules . . . constitute excusable neglect." *Id.* at 168.

Porter bears the burden of establishing excusable neglect. *See id.* Porter is in essence arguing that she has good cause for filing a late claim because (1) she never received or read the Procedures Order, and (2) the alleged debt is non-dischargeable. (Mot. ¶¶ 2, 10.)

*1. The Court Presumes Receipt of the Bar Date Notices*

Porter does not deny receiving the Bar Date Order that provided the deadline to file proofs of claim in these Chapter 11 Cases, nor does she deny that the Procedures Order was properly mailed to her address. (*Id.* ¶ 2.) Porter denies receiving or reading the Procedures Order. "While the Second Circuit has recognized that the postal system is not one hundred percent reliable, the Supreme Court has 'repeatedly recognized that mail service is an

8

12-12020-mg    Doc 10543    Filed 06/22/18    Entered 06/22/18 09:08:43    Main Document
Pg 9 of 12

inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.'" *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). In evaluating the adequacy of service by mail, courts in this circuit follow the so-called "mailbox rule." *In re Barquet Grp., Inc.*, 477 B.R. 454, 462 n.7 (Bankr. S.D.N.Y. 2012), *aff'd*, 486 B.R. 68 (S.D.N.Y. 2012) (citations omitted); s*ee also R.H. Macy*, 161 B.R. at 359; *In re AMR Corp.*, 492 B.R. 660, 663–64 (Bankr. S.D.N.Y. 2013). "A rebuttable presumption that an addressee received a mailed notice arises when the mailing party submits sufficient evidence to demonstrate the notice was properly addressed and mailed." *Barquet*, 477 B.R. at 462 n.7 (citations omitted). "This presumption of receipt is 'very strong' and 'can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary. . . . Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary.'" *Id*. (ellipsis in original) (quoting *In re FairPoint Commc'ns, Inc*., 462 B.R. 75, 81 n.7 (Bankr. S.D.N.Y. 2012)).

"Mail properly (1) addressed (2) stamped and (3) deposited in the mail system is presumed to have been received by the party to whom it is addressed." *Randbre Corp. v. Ladney (In re Randbre Corp.)*, 66 B.R. 482, 485 (Bankr. S.D.N.Y. 1986) (citing *Hagner v. United States*, 285 U.S. 427, 430 (1932)). The presumption can be raised either by evidence showing that the mail was sent through regular office procedures, or through an affidavit of the person who actually supervised or carried out the mailing. *In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 34 (N.D.N.Y. 1995) (citation omitted).

In the present case, the Trust produced sworn affidavits verifying service of the Bar Date Order and the Procedures Order. (Morrow Decl. Ex. A.) The summons and complaint Porter filed in the District Court Action identifies her address as 832 Monterey Road, Glendale, CA

9

91206.  (*See* Mot. Ex. I.)  Likewise, the Certificate of Service that Porter annexed to the Late Claim Motion lists the same address.  Porter was served with notice of the Chapter 11 Cases and the Bar Date at that address.  (*See* Opp. Exs. 7, 9.)  Lastly, at the hearing on the Late Claim Motion, Porter confirmed that she has resided at the above address during the pendency of these Chapter 11 Cases.

The presumption of receipt of mail properly addressed and mailed shifted the burden of proof to Porter to rebut the presumption.  *See, e.g.*, *In re Dana Corp.*, No. 06–10354, 2007 WL 1577763, at *4 (Bankr. S.D.N.Y. May 30, 2007).  "Federal courts in New York have held 'quite uniformly' that an affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of mailing."  *AMR*, 492 B.R. at 663–64 (citations omitted).  Indeed, "[c]ourts in this Circuit do not take this issue lightly given the important function served by a bar date in bankruptcy cases."  *Id.* at 664.

Porter's allegations are insufficient to rebut the presumption that she received notice of the Bar Date, and are inconsistent with the evidence the Trust presented to the Court.  First, Porter's denial of receipt, without more, is legally insufficient to overcome the presumption of receipt.  *See AMR*, 492 B.R. at 663–64.  Second, the sworn affidavits provided by the Trust indicate that the Bar Date Order and the Procedures Order were served by mail at Porter's address.  (*See* Morrow Decl. Ex. A.)  Therefore, the Court must presume that Porter received the Bar Date Order and the Procedures Order notifying Porter of the deadline to file a proof of claim.

### 2.  *Porter Fails to Meet the Pioneer Factors to File a Late Proof of Claim*

The Court must then address the *Pioneer* factors to determine whether Porter's neglect in filing a proof of claim is excusable.  Here, the *Pioneer* factors weigh against permitting Porter to file a late proof of claim.

10

First, the Court finds that the Debtors would likely be prejudiced if the Court were to allow this proof of claim to be filed late. In these Chapter 11 Cases, the amount of borrower claims is great and the claims management process has proven burdensome. Although "[t]he prejudice to the Debtors [would not be] traceable to the filing of any single additional claim" by a potential claimant like Porter, it is traceable "to the impact of permitting exceptions that will encourage others to seek similar leniency." *Lehman Bros.*, 433 B.R. at 121. As such, a "strict application of the [bar date] is needed to effectively manage the claims process and . . . permitting additional claims will lead to an opening of the claims process with foreseeable prejudice to the Debtors." *Id.* The claims process would have no end if motions seeking similar relief as that sought by Porter were granted by the Court.

Second, Porter did not request relief from this Court until December 2017, more than five years after she received notice of the deadline to file a proof of claim. Other courts have rejected late claims with shorter delays. *See, e.g.*, *Hefta v. Official Comm. Of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127 (3d Cir. 2005) (rejecting request to file proof of claim dated August 18, 2002, when bar date was April 30, 2002); *In re Enron Corp.*, 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003) (finding six-month delay after bar date to be "substantial" and weighs against permitting a late claim); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (rejecting request to file claim fifteen months after the bar date).

Third, Porter fails to show that the reason for the delay was beyond her control. Porter asserts that the delay was due to a kidnapping of her daughter, and coping with life after the kidnapping, but according to Porter, this occurred in 2010 – at least two years before the Petition Date and the Bar Date. (Mot. ¶ b.) The Court is sympathetic and sensitive to Porter's circumstances, but Porter did not seek relief from this Court until December 2017, five years

11

after the Bar Date and six years after the Petition Date. This *Pioneer* factor therefore weighs against Porter.

As for the final prong, there is no allegation or indication that Porter acted in bad faith in waiting to file a claim with this Court. (*See* Opp. ¶ 36.) Taken together, however, three of the four *Pioneer* factors weigh against allowing Porter to file a late claim, and thus the Court rejects Porter's request. Porter has been litigating against GMACM since 2010; she could have filed a proof of claim to preserve her rights as they relate to the District Court Action or otherwise, but she did not.

### III.    CONCLUSION

Porter did not file a proof of claim and she fails to show that she is entitled to file a late claim now or to continue litigation in the District Court Action. Therefore, Porter's Late Claim Motion is **DENIED**. ResCap's counsel shall serve a copy of this Opinion on Porter by U.S. Mail.

**IT IS SO ORDERED.**

Dated:  June 22, 2018
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge

12