UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,

          Debtors.


- - - - - - - - - - - - - - - - - - - -x



                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                June 21, 2018

                10:09 AM




B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2   (CC: Doc. No. 10520) Hearing RE: Motion for Leave to File Proof

3   of Claim out of Time, and Motion to Allow Claimant To Continue

4   To Litigate Debtor In The District Court, filed by Lolina

5   Porter.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24   (973)406-2250

25   operations@escribers.net

1

2   A P P E A R A N C E S:

3   MORRISON & FOERSTER LLP

4           Attorneys for ResCap Borrower Claims Trust

5           250 West 55th Street

6           New York, NY 10019

7

8   BY:   NORMAN S. ROSENBAUM, ESQ.

9

10

11  KRAMER LEVIN NAFTALIS & FRANKEL LLP

12          Attorneys for ResCap Liquidating Trust

13          1177 Avenue of the Americas

14          New York, NY 10036

15

16  BY:   JOSEPH A. SHIFER, ESQ.

17

18

19  LOLINA PORTER

20          Pro Se

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.                                    4

1                    P R O C E E D I N G S

2           THE COURT:  All right, please be seated.  We're here

3    in Residential Capital, 12-12020.  Mr. Rosenbaum?

4           MR. ROSENBAUM:  Good morning, Your Honor.  Norm

5    Rosenbaum, Morrison & Foerster, for the ResCap Borrowers Claims

6    Trust and the ResCap Liquidating Trust.

7           THE COURT:  Okay.

8           MR. ROSENBAUM:  Your Honor, the first matter on the

9    agenda is a status conference.

10          THE COURT:  Yeah, let's deal with the -- are you Ms.

11   Porter?

12          MS. PORTER:  Yes, Your Honor.

13          THE COURT:  Let's deal with the Porter matter first.

14          MR. ROSENBAUM:  Okay.

15          THE COURT:  And then we'll deal with the --

16          MR. ROSENBAUM:  And Your Honor, Mr. Shifer is here on

17   behalf of the --

18          THE COURT:  Sure.

19          MR. ROSENBAUM:  -- Liquidating Trust to address those

20   status conferences.

21          THE COURT:  Yes, thank you.  All right.  So we'll deal

22   with the claim objection -- not the claim -- the motion for

23   leave to file late claim.

24          Could you make your appearance, please?

25          MS. PORTER:  Sure.

1          THE COURT:  You can do it from there and then --

2          MS. PORTER:  Oh.  My name, Your Honor, is Lolina

3    Porter.  I'm here representing myself as pro se.

4          THE COURT:  Okay.  Why don't you go ahead and have a

5    seat.

6          Mr. Rosenbaum, are you going to address the -- well,

7    go ahead.  No, Ms. Porter, it's your motion.  Go ahead.

8          MS. PORTER:  Your Honor, first of all, good morning.

9          THE COURT:  Good morning.

10         MS. PORTER:  Thank you for allowing this to happen.  I

11   really appreciate it so much.  This case has meant a lot to me,

12   back in the day when I was hurt from family side and at the

13   same time liability time.

14         Anyway, I'm here this morning, Your Honor, to strongly

15   plead and beg the Court to allow me to file as a claimant in

16   the GMAC bankruptcy Chapter 13 (sic), due to the reasons that I

17   was out of the country a lot during those times, that I wasn't

18   able to really attend to the matters regarding this particular

19   case.

20         I felt that I failed the Court, so I would like to ask

21   your forgiveness for that.  But I would like also to stress

22   that I didn't mean to not reply or not attend to this matter,

23   because it is so dear for me.  But the life of my child -- my

24   daughter, who got kidnapped, was also dear to me, and I had to

25   attend to those matters at that time.

1           THE COURT:  Did you -- bear with me a second, Ms.

2      Porter.

3           So your address in California was 832 Monterey Road,

4      Glendale; is that correct?

5           MS. PORTER:  Yes, Your Honor.

6           THE COURT:  And that was always your home?

7           MS. PORTER:  That was always our home.

8           THE COURT:  Okay.  Are you still living there?

9           MS. PORTER:  Yes, sir.

10          THE COURT:  Okay.  All right.  I just wanted to be

11     sure that that was the correct address.

12          MS. PORTER:  Yes, Your Honor.  That was --

13          THE COURT:  Okay.  Go ahead -- anything else you want

14     to tell me?

15          MS. PORTER:  According -- based on my research that

16     excusable neglect, I'm sure -- I'm just hoping and believing

17     that through Bankruptcy Rule 9006 that I can be allowed to file

18     a late claim, if I satisfy the excusable neglect such as the

19     reason for the delay, including whether it wasn't in the

20     movant's reasonable control.  And I do believe that I fall

21     under that category, Your Honor.

22          THE COURT:  You filed a lawsuit.  Where was that

23     lawsuit?

24          MS. PORTER:  Western District of Tennessee, Your

25     Honor.

1       THE COURT:  If you were living in California, why did

2  you file it in Tennessee?

3       MS. PORTER:  Because the property, Your Honor, our

4  livelihood is in Tennessee, the one that was foreclosed while

5  my husband was -- had a stroke.

6       THE COURT:  I see.  So you were living in California,

7  but you owned a property in Tennessee?

8       MS. PORTER:  Yes, Your Honor.

9       THE COURT:  Okay.

10      MS. PORTER:  Yeah, that's part of our livelihood.

11      THE COURT:  This was a rental property that you had in

12  Tennessee?

13      MS. PORTER:  Yes, Your Honor.  Back in the day, I was

14  a programmer, working hard, no kids yet, so at that time, I

15  hoped to be a mother and replace my income.  So while I'm

16  working, I bought some properties to rent out, hence we got all

17  these properties, and I was able to become a mother to my

18  children.

19      THE COURT:  Can you describe for me the property in

20  Tennessee?

21      MS. PORTER:  Your Honor, that property, the subject

22  property, is a three-bedroom, two-bath.  It's a townhouse.  And

23  it was rented at that time for 1,025.

24      THE COURT:  Had you lived in that property -- had you

25  lived in Tennessee at any point?

1          MS. PORTER:  Just vacation time, Your Honor.  Yeah.

2          THE COURT:  So your -- the Glendale property was

3    always your home?

4          MS. PORTER:  Yes, Your Honor.

5          THE COURT:  Okay.  Anything else you want to tell me?

6          MS. PORTER:  I just pray, Your Honor, that you will

7    help me get able to file a claim.

8          THE COURT:  All right.  Thank you very much.

9          MS. PORTER:  Thank you, Your Honor.

10         THE COURT:  Mr. Rosenbaum.

11         MR. ROSENBAUM:  Norm Rosenbaum for the ResCap Borrower

12   Claims Trust.

13         Your Honor, as we set forth in our papers, although

14   Ms. Porter has obviously had some unfortunate family

15   circumstances and for the purposes of this hearing is not to

16   test the veracity of those, we feel that, as we've outlined,

17   she's failed to satisfy the excusable neglect standards under

18   Pioneer and as interpreted in the Second Circuit.

19         Your Honor, I just wanted to bring to the Court's

20   attention one item.  Since the briefing in this matter --

21         THE COURT:  Yes.

22         MR. ROSENBAUM:  -- the district court action has been

23   dismissed.  GMAC had filed a motion in the district court

24   action to enforce the enforcement order --

25         THE COURT:  Yes.

1         MR. ROSENBAUM:  -- that the court entered in

2    connection with the procedures order.  And that was briefed.

3    And the magistrate ruled on it and dismissed the case based on,

4    number one, enforcement of the enforcement order, giving

5    judicial notice to it; and also on the grounds of res judicata.

6         I have copies of those orders, if you'd like to see,

7    but it's not --

8         THE COURT:  Yeah, I would --

9         MR. ROSENBAUM:  -- it's not on the PACER docket.

10        THE COURT:  There were some other defendants in the

11   case, though, as well.

12        MR. ROSENBAUM:  So Ms. Porter sued -- this case was

13   initiated in state court and was removed.  She sued -- in

14   addition to an entity that she identified as GMAC Residential

15   Funding Corp., she also sued Aurora Financial Services, who

16   was --

17        THE COURT:  Aurora Loan Services.

18        MR. ROSENBAUM:  Aurora Loan Services, to whom the --

19   to which the servicing was transferred in --

20        THE COURT:  GMAC had been servicing the loan --

21        MR. ROSENBAUM:  I believe it was --

22        THE COURT:  -- and it transferred to Aurora?

23        MR. ROSENBAUM:  Yeah, it would either have been GMAC

24   or Homecomings at the time.

25        THE COURT:  Okay.

1          MR. ROSENBAUM:  This loan was originated in 2005.  And

2    the servicing was transferred to Aurora in April 2008.  And

3    subsequently, what transpired in that litigation was initial

4    filings and motion practice.  The court, based on the filing of

5    the notice of bankruptcy, stayed the entire matter in June of

6    2012 and then reopened it post-effective-date.

7          And there had been some briefing and motions to

8    dismiss filed prior to the district court staying the matter.

9    Part of a -- Aurora had filed a motion to dismiss that was

10   granted in part and denied in part.  And then subsequent to the

11   court reopening the case --

12         THE COURT:  There was also a Genworth Financial that

13   was --

14         MR. ROSENBAUM:  Yeah, Genworth Financial was the PMI

15   insurer.  Addressing Genworth Financial, subsequent to the

16   court reopening the case, both Aurora and Genworth renewed

17   their motions -- 12(b)(6) motions to dismiss.  The magistrate

18   ruled in their favor, and then the district court dismissed all

19   counts against both Aurora and Genworth.  And at the same time

20   that the court dismissed the counts against Genworth, based on

21   the magistrate's recommendation, the district court dismissed

22   as against GMAC.

23         THE COURT:  When was the case reopened?

24         MR. ROSENBAUM:  May 19th, 2016.

25         THE COURT:  Did the court enter an opinion or an

1   order, or did the magistrate judge write it and the district

2   court enter the dismissal against Aurora and Genworth?  What

3   were the reasons that the motion to dismiss was granted as to

4   those defendants?

5          MR. ROSENBAUM:  As to Aurora and Genworth?

6          THE COURT:  Yes.

7          MR. ROSENBAUM:  I can't speak to all the specifics,

8   but it was failure to state a claim --

9          THE COURT:  Okay.

10         MR. ROSENBAUM:  -- based on a -- the court went

11  through -- there was extensive briefing by Aurora initially and

12  subsequently, and Aurora meticulously went through the counts.

13         THE COURT:  Okay.

14         MR. ROSENBAUM:  And basically the magistrate agreed

15  with Aurora's position and Genworth's position.

16         THE COURT:  And when was the -- you say that based on

17  the notice of the bankruptcy -- once it was reopened, it was

18  then dismissed against GMAC as well?

19         MR. ROSENBAUM:  Yes, it was, Your Honor.  Those

20  orders --

21         THE COURT:  And when was that?

22         MR. ROSENBAUM:  Those orders were -- the order was

23  entered on April 30th, 2018, adopting the magistrate's

24  recommendation.

25         THE COURT:  And do you have a copy of that order you

1  can get to us?

2          MR. ROSENBAUM:  I do.

3          THE COURT:  Okay.  All right.  Anything else you want

4  to tell me?

5          MR. ROSENBAUM:  Your Honor, I think we've outlined the

6  basis for excusable neglect or the lack to satisfy the burden

7  of excusable neglect in our papers.

8          I would just add that again, these are unfortunate

9  circumstances, and I'm not here to challenge Ms. Porter's

10 allegations, but it appears to us, based on what's available on

11 the record, that the failure to file the proof of claim was

12 really within movant's control.

13         I would note that I think a couple things are

14 significant.  Based on the outline of events that Ms. Porter

15 outlined in her response, it appears that many of the

16 unfortunate circumstances that befell her husband and her child

17 really took place before the bar date.  Ms. Porter was active

18 in the district court action through June of 2012.  The docket

19 entries reflect that.  So she really hasn't proffered or

20 offered any explanation why she couldn't comply with the

21 original bar date, which was November 16th, 2012.

22         And then subsequent to receiving notice of the bar

23 date, as we outlined in our papers, both pursuant to the

24 proceedings in this court and multiple notices filed in the

25 district court action where counsel for GMAC was updating the

1   court, Ms. Porter was put on notice on several occasions during

2   the course of five years that -- the effect of the bar date,

3   the effect of the plan and confirmation order, and the fact

4   that she failed to file a proof of claim.

5          And again, it doesn't appear that there's a

6   satisfactory explanation why she didn't file this motion

7   until --

8          THE COURT:  Okay.  I have those arguments.

9          MR. ROSENBAUM:  Okay.  Thank you, Your Honor.

10          THE COURT:  Okay.

11          MR. ROSENBAUM:  And the only other thing I'd want to

12   point out is that it seems to be undisputed that the bar date

13   was received at her home address.

14          THE COURT:  Okay.  All right.  Thank you very much,

15   Mr. Rosenbaum.

16          MR. ROSENBAUM:  Thank you, Your Honor.

17          THE COURT:  Ms. Porter, is there anything else you

18   want to tell me?

19          MS. PORTER:  Your Honor, I just wanted to respond to

20   Mr. Norman's (sic) statement that I was active as of 2012.  I

21   may have replied to one letter or one motion at that time.  But

22   it was at the time when my daughter was -- almost wanted to

23   kill herself, and so I had to group myself and embrace my

24   daughter first.

25          THE COURT:  All right.  All right, I'm going to take

1    the matter under submission.

2           Mr. Rosenbaum, if you would give my law clerk the

3    copies of those orders, she --

4           MR. ROSENBAUM:  Your Honor, may I just add one thing?

5           THE COURT:  Yes.

6           MR. ROSENBAUM:  I just wanted to thank Ms. Porter for

7    accommodating my schedule and adjourning this and changing her

8    flight coming here.  So I very much appreciate it.

9           THE COURT:  Okay, thank you.  Thank you very much for

10   being here this morning.

11          MS. PORTER:  You're welcome, Your Honor.

12          THE COURT:  Okay.  You can either stay -- we're going

13   to move on to other matters.

14          MS. PORTER:  Oh.

15          THE COURT:  So you're excused, or you can stay.

16   That's fine.  Okay?

17          MS. PORTER:  Sure.

18          THE COURT:  And at the end of the hearing, Mr.

19   Rosenbaum, you can give my clerks the copies --

20          MR. ROSENBAUM:  Okay.

21          THE COURT:  -- of those orders.

22          All right, now let's go on to the general status of --

23          MR. ROSENBAUM:  I'll cede the podium to Mr. Fischer

24   (sic), Your Honor.

25          MR. SHIFER:  Good morning, Your Honor.  Joseph Shifer,

1  Kramer Levin Naftalis & Frankel, for the ResCap Liquidating

2  Trust.  I understand Your Honor wanted a -- it's been a while

3  since I've been up here.

4          THE COURT:  It's true.

5          MR. SHIFER:  It's good to be back.  I understand Your

6  Honor wanted an update as to where things stand in these cases.

7  And --

8          THE COURT:  Correct.

9          MR. SHIFER:  -- and probably with an eye --

10          THE COURT:  I'd like to see the cases --

11          MR. SHIFER:  -- towards eventual closure.

12          THE COURT:  -- done and closed.

13          MR. SHIFER:  I understand Your Honor.  I can run

14  through quickly what's happening at the ResCap Liquidating

15  Trust both on the claim side and on the asset side --

16          THE COURT:  Sure.

17          MR. SHIFER:  -- and try to preview as much as possible

18  what might need the Court's intervention in the future that

19  will bring us back here --

20          THE COURT:  Sooner rather than later, too.

21          MR. SHIFER:  I understand, Your Honor.

22          Your Honor, on the claims side, I'm pleased to report,

23  we're pretty much completely done.  There's the current

24  deadline to object to claims is set to expire July 13.  From

25  the Liquidating Trust's perspective, there's no need for a

1    further extension.

2            THE COURT:  Okay.

3            MR. SHIFER:  There were 7,500 claims that were filed

4    in these cases, approximately.  Approximately 4,500 were

5    assigned to the Liquidating Trust.  All those have been

6    resolved.

7            THE COURT:  Okay.

8            MR. SHIFER:  I can't speak to the Borrower Trust. I

9    believe there are --

10            THE COURT:  Sure.

11            MR. SHIFER:  -- a few pending matters that require a

12    couple of extensions of the objection deadline.  But from our

13    perspective, we're done, Your Honor.

14            On the asset side, Your Honor, the Liquidating Trust

15    continues to make distributions to unit holders.  I think most

16    recently, at the end of May, a further distribution of 350

17    million dollars was announced, bringing the total number of

18    distributions on units to $31.76, which is the equivalent of 3

19    billion dollars or so.

20            However, Your Honor, there's still certain assets that

21    remain to be liquidated.  Your Honor, in the last quarterly

22    financials that were filed by the Trust, there are still

23    approximately seventy-three million dollars in various cats and

24    dogs, odds and ends, that are held by the Trust.

25            THE COURT:  That's a lot of cats and dogs.

1      MR. SHIFER:  Yeah.  Well, mostly in the form of
2  mortgage loans that weren't able to be sold during the main
3  case.  The Liquidating Trust continues to receive income on
4  account of those loans, and it still may be possible to sell
5  those in some sort of bulk sale or to just run them off to the
6  end of -- to the end of the loans.

7      THE COURT:  Does the case have to remain open until
8  all those assets are gone?

9      MR. SHIFER:  Your Honor, the Liquidating --

10      THE COURT:  It doesn't seem to me it does.

11      MR. SHIFER:  -- Trust is actually -- has a finite
12  term.  Your Honor may recall under the plan there was an
13  initial term of three years that was set.  At the end of 2017
14  we sought a one-year extension.  The Trust is currently set to
15  expire December 17th, 2018.

16      THE COURT:  Give me that date again.

17      MR. SHIFER:  Pardon me?

18      THE COURT:  Give me that date again.

19      MR. SHIFER:  December 17th ,2018.

20      THE COURT:  Okay.

21      MR. SHIFER:  And as we get closer to that deadline,
22  we'll have to take another view as to what remains to be
23  distributed and what might need judicial intervention.

24      As Your Honor is well aware, probably putting aside
25  the seventy-three million and cats and dogs, one of the most

1  valuable assets that the Trust currently has is the ongoing

2  litigations in Minnesota.

3          THE COURT:  I thought most of them --

4          MR. SHIFER:  My understanding is --

5          THE COURT:  -- I thought most of those had been

6  resolved.

7          MR. SHIFER:  Yeah, there are eleven remaining cases.

8          THE COURT:  Is it correct, all of the cases, all of

9  the RMBS cases before me have been resolved?

10          MR. SHIFER:  Yes.  The only ones that I'm aware of

11  through reporting by the Liquidating Trust are eleven cases

12  that remain open in the District Court of Minnesota.

13          THE COURT:  This is before Judge Nelson?

14          MR. SHIFER:  Eleven of those are -- sorry -- ten of

15  them, I believe, are in front of Judge Nelson.

16          THE COURT:  Okay.

17          MR. SHIFER:  No, sorry.  Give me one second, Your

18  Honor.  Nine, I believe, are in front of Judge Nelson.  Those

19  were -- those had summary judgment motions and evidentiary

20  motions heard, I think, just yesterday.

21          THE COURT:  Oh, okay.

22          MR. SHIFER:  Those will be decided mid-August.

23          THE COURT:  All right.

24          MR. SHIFER:  There's a date on the trial -- a trial

25  date set for October.  However, it's not like all of them are

1   going to be going to trial in October.  I understand Judge

2   Nelson set the date, and whatever is ready to go will go in

3   October, and the rest will have to be --

4            THE COURT:  There were -- where are the other two?

5   You said -- because there were two -- there were some cases in

6   state court.

7            MR. SHIFER:  I believe all the state court cases have

8   been resolved.

9            THE COURT:  Okay.

10           MR. SHIFER:  Everything is in the district court now.

11           There is one case which is in the process of being

12  settled.  And there's one case -- I don't have the judge, but I

13  know it's not in front of Judge Nelson.  She has a trial date

14  set for --

15           THE COURT:  She had a conflict -- she had a

16  conflict --

17           MR. SHIFER:  Yeah.

18           THE COURT:  -- in one, because her husband is a

19  partner at a law firm that was involved in one of the cases.

20           MR. SHIFER:  That's the one, Your Honor.  They have a

21  trial date set early January 2019.  And I believe summary

22  judgment motions are scheduled for September.

23           So Your Honor, I think --

24           THE COURT:  So this --

25           MR. SHIFER:  -- so we'll have to see where these cases

1  are.

2          THE COURT:  But I just want to be clear about this.

3  As long as those cases remain open, these cases, at least some

4  of them, have to remain open, is what you're telling me.

5          MR. SHIFER:  Correct, Your Honor.

6          THE COURT:  Okay.

7          MR. SHIFER:  We are trying to foresee as much as

8  possible what might require us to come back here.

9          THE COURT:  And as to -- can some of the cases be

10  closed?  I mean, Residential Funding --

11          MR. SHIFER:  Actually --

12          THE COURT:  -- is the plaintiff in those cases is --

13          MR. SHIFER:  -- I believe that all three -- there are

14  currently three cases open, I believe.

15          THE COURT:  Okay.

16          MR. SHIFER:  We closed all the other ones out.  I

17  believe the main case, ResCap is still open; GMAC Mortgage is

18  still open; and RFC is still open.

19          THE COURT:  Okay.

20          MR. SHIFER:  As far as I -- I went through this with

21  the Trust.  All three are implicated in the ongoing

22  litigations.

23          THE COURT:  Okay.

24          MR. SHIFER:  We'd like to close them as much as

25  possible, certainly to cut off the payment of the U.S. Trustee

1   fees that are still being paid as the cases are open.

2           THE COURT:  So the recoveries, if any, from those

3   remaining actions in Minnesota, where do the proceeds go?

4           MR. SHIFER:  They go to unit holders, after payment of

5   expenses.

6           THE COURT:  So I've had some cases where by

7   transferring the rights between the remaining entities,

8   everything other than the one case is -- only one case has

9   remained open.  I don't remember here whether that was done

10  here.  I'm just looking to see -- I mean, as long as these

11  cases are open, you're paying Trustee fee -- U.S. Trustee fees

12  and --

13          MR. SHIFER:  Correct, Your Honor.

14          THE COURT:  -- I'm just trying to think whether -- and

15  I hope you and your colleagues will think about whether as

16  much -- as many of the -- and you say there are only three

17  cases that are remaining open?

18          MR. SHIFER:  Three of the bankruptcy cases that were

19  originally filed.

20          THE COURT:  Whether one -- it could be set up so that

21  only one has to remain open and two closed.  But I'm not going

22  to -- obviously I'm not deciding any --

23          MR. SHIFER:  We can definitely look into that, Your

24  Honor.  I know the Liquidating Trust itself has been appointed

25  as the sort of executor for all three estates.

1          THE COURT:  Right.

2          MR. SHIFER:  Perhaps there's some action that the

3   Liquidating Trust can take to consolidate everything into one

4   entity.

5          THE COURT:  Yeah.  And in one -- I can't remember

6   which of my cases -- an agreement was reached and approved by

7   the Court -- by me -- that the remaining entity would

8   distribute assets in accordance with the priorities and

9   schemes -- the plans that had been confirmed.  It assumed that

10  responsibility.  Everything else was closed.  One case remained

11  open.

12         MR. SHIFER:  Well, actually, Your Honor, I mean --

13         THE COURT:  It's not -- three is not --

14         MR. SHIFER:  -- through the --

15         THE COURT:  -- such a big deal.

16         MR. SHIFER:  -- mechanism of the units, the way they

17  were distributed on the effective date, which took into account

18  the varying -- what's the right word -- the recovery

19  percentage --

20         THE COURT:  Okay.

21         MR. SHIFER:  -- at each estate, the fact that the

22  units exist, and you sprinkle money -- the recoveries over

23  them, should take into account any differences among the

24  estates.

25         THE COURT:  Right.

1           MR. SHIFER:  So --

2           THE COURT:  Okay.

3           MR. SHIFER:  -- there was -- and while I'm up here,

4   Your Honor, I certainly want to mention, because it's

5   forthcoming, we do intend to file a motion to reacquire certain

6   assets that were abandoned by the debtors.  We recently

7   discovered that assets that were previously thought to be more

8   trouble than they were thought keeping around --

9           THE COURT:  Can you do that?

10          MR. SHIFER:  -- were actually valuable.

11          THE COURT:  I'm expressing uncertainty --

12          MR. SHIFER:  I'll reserve --

13          THE COURT:  -- because I've never had anybody try

14  to -- once assets are abandoned, you don't --

15          MR. SHIFER:  We're not seeking to undo the

16  abandonment --

17          THE COURT:  -- they're not yours anymore.

18          MR. SHIFER:  -- Your Honor.  I think Your Honor's

19  actually previously reviewed on this issue, that abandonment

20  under 554 is more or less irrevocable.

21          THE COURT:  Yeah.

22          MR. SHIFER:  But we're seeking to acquire them as of

23  whatever date the motion is --

24          THE COURT:  Who has the properties now?

25          MR. SHIFER:  It's being held in debtor bank accounts.

RESIDENTIAL CAPITAL, LLC, ET AL.                    24

1          THE COURT:  When are you bringing on that motion?

2          MR. SHIFER:  We plan on filing it as soon as I get

3    back to the office, Your Honor.

4          THE COURT:  Do you anticipate that that's going to be

5    a contested motion?

6          MR. SHIFER:  We don't.

7          THE COURT:  Okay.

8          MR. SHIFER:  We don't.  As far as we've -- we seek to

9    do some diligence into the assets to see whether any other

10   entity would have ownership rights to them.  As far as we can

11   tell, these were just segregated assets held within the

12   debtors' estates, not transferred to the Liquidating Trust --

13         THE COURT:  Okay.

14         MR. SHIFER:  -- because of some perceived tax

15   consequences which are no longer relevant.

16         THE COURT:  All right.  Any other motions you

17   contemplate bringing?

18         MR. SHIFER:  Other than at some point a motion to

19   extend the life of the trust, no, Your Honor.

20         THE COURT:  Okay.  All right. Thank you.

21         MR. SHIFER:  All right, thank you.

22         THE COURT:  Mr. Rosenbaum?

23         MR. ROSENBAUM:  Thank you, Your Honor.  Norm

24   Rosenbaum, Morrison & Foerster, for the Borrower Claims Trust.

25         So there's two sort of overlapping matters that impact

1    both trusts.  The first is the adversary proceeding pending

2    before Judge Lane for the recovery of --

3              THE COURT:  That's the insurance.

4              MR. ROSENBAUM:  Yes, that's the insurance recovery.

5    And both trusts are co-claimants in that matter.

6              I believe Fred Walters of Walters Strohbehn is on the

7    phone, if Your Honor -- and he's co-counsel in that matter.  If

8    Your Honor has questions about that, he can address them.

9    Basically the brief overview is that dispositive motions have

10   been filed in that action by both the plaintiffs and the

11   defendants.

12             From the defendants' side, it's outcome determinative.

13   If they prevail, the actions would be dismissed in their

14   entirety and then the parties would have to decide about appeal

15   issues.  From the plaintiffs' perspective, it's partial summary

16   judgment motions.  I think those are to be heard -- if you'd

17   bear with me for a second, Your Honor.  Argument is scheduled

18   for July 18th.

19             THE COURT:  Okay.

20             MR. ROSENBAUM:  Turning to the claims side, well,

21   we -- Your Honor just heard Ms. Porter's motion.  To the extent

22   Your Honor would allow a proof of claim, obviously that's

23   something that we'd have to address with an objection.  There

24   is -- from all the prior proceedings before the Court and the

25   claims expungement, we have worked through -- in the district

1  court and in the Second Circuit -- a number of appeals that

2  I've lost track of the exact number.  But it's been multiples

3  of ten.

4         There is one remaining appeal in which the party still

5  has the opportunity to seek cert, which has been done before in

6  other of the appeals.

7         THE COURT:  Which appeal is that?

8         MR. ROSENBAUM:  That's Aniel.

9         THE COURT:  Second Circuit -- the district court and

10  Second Circuit affirmed --

11         MR. ROSENBAUM:  Everything was affirmed by --

12         THE COURT:  -- what -- everything that was done here.

13  I had several opinions dealing with Aniel in --

14         MR. ROSENBAUM:  Aniel had claims both against the

15  Liquidating Trust, which Your Honor ruled on, which she

16  appealed to the district court and then the Second Circuit, and

17  then moved for cert, and the Supreme Court denied the petition.

18         There was two other claims that were against the

19  Borrowers Trust, same circumstances.  This was a latter

20  proceeding.  Affirmed by the district court, affirmed by the

21  Second Circuit.  If past history is accurate --

22         THE COURT:  Has her time to seek certiorari run yet,

23  or has she filed a petition --

24         MR. ROSENBAUM:  No, it hasn't.  I believe it's --

25         THE COURT:  -- for certiorari?

1          MR. ROSENBAUM:  -- mid-August.

2          THE COURT:  Okay.

3          MR. ROSENBAUM:  The only other matter that's

4    proceeding --

5          THE COURT:  That's the only appeal that remains live?

6          MR. ROSENBAUM:  Yeah.

7          THE COURT:  Is that -- am I correct?

8          MR. ROSENBAUM:  It's the only -- it's the only appeal

9    of Your Honor's claims expungement that remains live.

10         THE COURT:  Okay.

11         MR. ROSENBAUM:  There's also an adversary proceeding

12   that has been pending for quite some time that was filed by

13   Jennifer Wilson.  That was adversary proceeding 12-01936.  It

14   involves both the ResCap Liquidating Trust and the ResCap

15   Borrower Claims Trust.

16         THE COURT:  Give me the case number again.

17         MR. ROSENBAUM:  12-01936.

18         THE COURT:  Okay, go ahead.

19         MR. ROSENBAUM:  On July 7, 2014, Your Honor dismissed

20   the complaint in part with prejudice and without prejudice to

21   replead on a narrow issue relating to the Unfair Deceptive

22   Trade Practices Act of North Carolina.  Instead of taking the

23   opportunity to file a new complaint, the plaintiff appealed --

24   took an interlocutory appeal to the district court, and in

25   addition, prior to Your Honor hearing the matter, the plaintiff

RESIDENTIAL CAPITAL, LLC, ET AL.                                    28

1  moved to withdraw the reference.

2          Your Honor ruled in your decision that that did not

3  deprive -- the fact that that motion was pending did not

4  deprive you of jurisdiction, and you ruled on the motion.

5          The matter -- both appeals were eventually

6  consolidated before Judge Gardephe, and for reasons that I

7  don't have a satisfactory explanation for, Judge Gardephe

8  didn't rule on them until April of this year.  He affirmed Your

9  Honor's -- he denied the motion for an interlocutory appeal and

10 he denied the motion to withdraw the reference.

11         The plaintiff in that action is now seeking additional

12 time to appeal to the Court of Appeals.

13         We are looking at our options in that matter to see

14 what we can do.  And just to complete the picture, to remind

15 Your Honor, Ms. Wilson, in her complaint, sought both equitable

16 relief and damages.  Ms. Wilson did not timely file the proof

17 of claim, but the adversary proceeding was commenced prior to

18 the bar date.  And in Your Honor's decision, you deemed Ms.

19 Wilson to have filed an informal proof of claim.  So the matter

20 kind of cuts across both trusts.  To the extent we're not

21 otherwise able to resolve this, this would be something that

22 might come back before Your Honor.

23         THE COURT:  Well, it better come back sooner rather

24 than later, because it does seem to me that -- there's no stay

25 of anything before me.

1       MR. ROSENBAUM:  Correct, Your Honor.

2       THE COURT:  And it's certainly unclear as to whether

3  Wilson has any appellate rights in the Second Circuit, given

4  the procedural posture of the case.  There is no stay here.

5       Let's get it teed up.  Did she ever --

6       MR. ROSENBAUM:  Your Honor --

7       THE COURT:  I don't remember -- I don't remember my

8  ruling in this one, there were so many.

9       MR. ROSENBAUM:  I appreciate there have been many.

10  Your Honor, very briefly, the issue was her allegations that --

11  we had moved to dismiss on res judicata grounds.  The plaintiff

12  raised allegations of fraud on the court, which Your Honor

13  found troubling from the perspective of the debtors.  And that

14  was sort of your basis on which you dismissed without prejudice

15  to allow her to replead.

16       We had been in discussions.  I don't want to get into

17  anything further on that.

18       THE COURT:  I don't want to know about the

19  discussions.

20       MR. ROSENBAUM:  She's not here.

21       THE COURT:  But I mean, this needs to get resolved.

22  And if she's not here, I'm not going to make any rulings now,

23  but if -- I don't know whether I -- usually, when I grant

24  somebody leave to replead, I give them a limited amount of time

25  to do that.  I don't remember this one at all.  But it seems to

1    me that the choices are -- I mean, if she appeals to the Second
2    Circuit, it could be a year before anything happens.  This is
3    not going to sit here for a year.

4           And so you decide how you want to tee it up.  If you
5    think she had her deadline to file an amended pleading expired,
6    do what you think is appropriate.  If you think a deadline
7    should be imposed for her to amend, come back to me.  I'm not
8    telling you what to do, I'm just telling you I'm not waiting
9    for the Second Circuit, because it could be a year, it could be
10   two years.  That's not going to happen.  There's no stay in
11   effect in the bankruptcy court.

12          I want this teed up, and I want to get this over and
13   done with.  She'll pursue whatever appellate rights she has.
14   That's her right to do.  And she may have good claims and she
15   may not; and I'm not making any comment about that.  I have to
16   go back and read whatever I did with respect to her case
17   before.  All I'm telling you is, I'm not waiting for some
18   disposition from the Second Circuit.

19          Either settle it or get it teed up in the next month
20   or two.  It's really as straightforward as that, Mr. Rosenbaum.

21          MR. ROSENBAUM:  Yeah, I understand, Your Honor.  Thank
22   you.

23          Your Honor, just a couple other points on the Borrower
24   Trust.  To date, the Borrower Trust has distributed
25   approximately fifty million dollars on an interim distribution.

1   What the Borrower Trust would consider doing is, sort of in

2   part, possibly, depending on the outcome of the Wilson matter,

3   but the Borrower Trust would consider seeking approval to make

4   a final distribution to the GMAC claimants.  The --

5          THE COURT:  How much is your -- how much is the Trust

6   holding?

7          MR. ROSENBAUM:  Approximately five-and-a-half million

8   dollars, Your Honor.  And the distribution to the RFC claimants

9   is in part determined on what the end result of the insurance

10  liquidation (sic) is, because there's sort of a give-back

11  process and a subsequent distribution.

12         So the Trust would not -- the Borrowers' Trust would

13  not be in a position to seek to make a final distribution until

14  that litigation is concluded.  But they might seek, as part of

15  that, just to make another interim distribution to the RFC

16  claimants.

17         THE COURT:  Let me ask.  How much is Wilson seeking in

18  her claim?

19         MR. ROSENBAUM:  It's unliquidated, Your Honor.

20         THE COURT:  You know, another option is to seek to

21  estimate the claim so that we can set up a reserve and go ahead

22  and distribute everything else.  But don't -- I'm not going to

23  sit back -- I'm not talking you, Mr. Rosenbaum -- but I'm not

24  going to sit back and wait for -- you'll tell me, maybe there's

25  some more open things.  But if Wilson's is the only open

1    borrower's claim, I'm not going to sit back and wait -- she'll

2    go to the Second Circuit and then if she's unhappy there,

3    she'll file a petition for certiorari.  There's no stay here.

4    Okay?  There are ways that you can seek to have her claim

5    estimated.  It may be estimated at zero, it may be estimated at

6    something else.  But I think it's unreasonable to have to wait

7    until Ms. Wilson pursues all of her potential appellate

8    remedies, such as they are.

9            MR. ROSENBAUM:  I fully understand, Your Honor, and I

10   appreciate the input.  And we will proceed as directed.

11           THE COURT:  Okay.  All right.  Are there any other --

12   what are the other open matters?  So you and Mr. Shifer both

13   told me about the insurance litigation that's before Judge

14   Lane.

15           MR. ROSENBAUM:  That's it, Your Honor.

16           THE COURT:  What else -- so this is the one claim

17   that's holding everything up?

18           MR. ROSENBAUM:  Other than running out the appeal

19   process on Aniel, yes, Your Honor.  My understanding is that we

20   have addressed every --

21           THE COURT:  The Aniel certiorari --

22           MR. ROSENBAUM:  Yes.  We have addressed every single

23   claim that needs to be addressed.

24           THE COURT:  Okay.  What is her deadline for filing a

25   petition for certiorari?

1              MR. ROSENBAUM:  I'm sorry?

2              THE COURT:  Do you know what her deadline for filing a

3     petition for writ of certiorari --

4              MR. ROSENBAUM:  I thought the -- I don't have the

5     specific deadline.  If you want I can get back to Your Honor --

6              THE COURT:  No, I don't --

7              MR. ROSENBAUM:  -- but I thought it was mid-August.

8              THE COURT:  Okay.  So the court usually disposes of

9     pending certiorari petitions pretty quickly.

10             MR. ROSENBAUM:  Our practice has been to file a notice

11    that we don't intend to respond.  And that has -- with the

12    other petitions -- accelerated the denial of the petitions.  I

13    don't have to tell Your Honor that they move very quickly on

14    the --

15             THE COURT:  They do.  Okay.  Anything else I should

16    know?

17             MR. ROSENBAUM:  No, Your Honor.  Thank you very much.

18             THE COURT:  Okay, thank you.  I don't mean to be

19    difficult to either of you, but I'd like to get this case over

20    and done with.

21             MR. ROSENBAUM:  I think we share that feeling, Your

22    Honor.

23             THE COURT:  I'm sure you -- I'm sure you share it.

24    All right, thanks very much.

25             MR. ROSENBAUM:  Thank you, Your Honor.

1                    THE COURT:  All right, we're adjourned.

2              (Whereupon these proceedings were concluded at 10:48 AM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   Penina Wolicki (CET-569)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #604

15   New York, NY 10001

16

17   Date:  June 22, 2018

18

19

20

21

22

23

24

25

12-12020-mg    Doc 10551    Filed 06/22/18    Entered 06/29/18 10:35:20    Main Document

RESIDENTIAL CAPITAL, LLC, et al.    Pg 36 of 42

Case No. 12-12020-mg                                                                                    June 21, 2018

## #

**#604 (1)**
2:22

## $

**$31.76 (1)**
16:18

## A

**abandoned (2)**
23:6,14
**abandonment (2)**
23:16,19
**able (5)**
5:18;7:17;8:7;
17:2;28:21
**accelerated (1)**
33:12
**accommodating (1)**
14:7
**accordance (1)**
22:8
**According (1)**
6:15
**account (3)**
17:4;22:17,23
**accounts (1)**
23:25
**accurate (1)**
26:21
**acquire (1)**
23:22
**across (1)**
28:20
**Act (1)**
27:22
**action (7)**
8:22,24;12:18,25;
22:2;25:10;28:11
**actions (2)**
21:3;25:13
**active (2)**
12:17;13:20
**actually (5)**
17:11;20:11;
22:12;23:10,19
**add (2)**
12:8;14:4
**addition (2)**
9:14;27:25
**additional (1)**
28:11
**address (7)**
4:19;5:6;6:3,11;
13:13;25:8,23
**addressed (3)**
32:20,22,23
**Addressing (1)**
10:15

**adjourned (1)**
34:1
**adjourning (1)**
14:7
**adopting (1)**
11:23
**adversary (4)**
25:1;27:11,13;
28:17
**affirmed (5)**
26:10,11,20,20;
28:8
**again (5)**
12:8;13:5;17:16,
18;27:16
**against (7)**
10:19,20,22;11:2,
18;26:14,18
**agenda (1)**
4:9
**agreed (1)**
11:14
**agreement (1)**
22:6
**ahead (6)**
5:4,7,7;6:13;
27:18;31:21
**allegations (3)**
12:10;29:10,12
**Allow (4)**
2:3;5:15;25:22;
29:15
**allowed (1)**
6:17
**allowing (1)**
5:10
**almost (1)**
13:22
**although (1)**
8:13
**always (3)**
6:6,7;8:3
**amend (1)**
30:7
**amended (1)**
30:5
**among (1)**
22:23
**amount (1)**
29:24
**Aniel (5)**
26:8,13,14;32:19,
21
**announced (1)**
16:17
**anticipate (1)**
24:4
**anymore (1)**
23:17
**appeal (9)**
25:14;26:4,7;27:5,
8,24;28:9,12;32:18
**appealed (2)**

26:16;27:23
**appeals (5)**
26:1,6;28:5,12;
30:1
**appear (1)**
13:5
**appearance (1)**
4:24
**appears (2)**
12:10,15
**appellate (3)**
29:3;30:13;32:7
**appointed (1)**
21:24
**appreciate (4)**
5:11;14:8;29:9;
32:10
**appropriate (1)**
30:6
**approval (1)**
31:3
**approved (1)**
22:6
**Approximately (5)**
16:4,4,23;30:25;
31:7
**April (3)**
10:2;11:23;28:8
**Argument (1)**
25:17
**arguments (1)**
13:8
**around (1)**
23:8
**aside (1)**
17:24
**asset (2)**
15:15;16:14
**assets (9)**
16:20;17:8;18:1;
22:8;23:6,7,14;24:9,
11
**assigned (1)**
16:5
**assumed (1)**
22:9
**attend (3)**
5:18,22,25
**attention (1)**
8:20
**Aurora (12)**
9:15,17,18,22;
10:2,9,16,19;11:2,5,
11,12
**Aurora's (1)**
11:15
**available (1)**
12:10
**Avenue (1)**
2:22
**aware (2)**
17:24;18:10

## B

**back (14)**
5:12;7:13;15:5,19;
20:8;24:3;28:22,23;
30:7,16;31:23,24;
32:1;33:5
**bank (1)**
23:25
**bankruptcy (6)**
5:16;6:17;10:5;
11:17;21:18;30:11
**bar (6)**
12:17,21,22;13:2,
12;28:18
**based (8)**
6:15;9:3;10:4,20;
11:10,16;12:10,14
**basically (2)**
11:14;25:9
**basis (2)**
12:6;29:14
**bear (2)**
6:1;25:17
**become (1)**
7:17
**befell (1)**
12:16
**beg (1)**
5:15
**behalf (1)**
4:17
**believing (1)**
6:16
**better (1)**
28:23
**big (1)**
22:15
**billion (1)**
16:19
**Borrower (8)**
8:11;16:8;24:24;
27:15;30:23,24;31:1,
3
**Borrowers (2)**
4:5;26:19
**Borrowers' (1)**
31:12
**borrower's (1)**
32:1
**both (13)**
10:16,19;12:23;
15:15;25:1,5,10;
26:14;27:14;28:5,15,
20;32:12
**bought (1)**
7:16
**brief (1)**
25:9
**briefed (1)**
9:2
**briefing (3)**

**8:20;10:7;11:11**

**briefly (1)**
29:10
**bring (2)**
8:19;15:19
**bringing (3)**
16:17;24:1,17
**bulk (1)**
17:5
**burden (1)**
12:6

## C

**California (3)**
6:3;7:1,6
**can (18)**
5:1;6:17;7:19;
12:1;14:12,15,19;
15:13;20:9;21:23;
22:3;23:9;24:10;
25:8;28:14;31:21;
32:4;33:5
**Capital (1)**
4:3
**Carolina (1)**
27:22
**case (20)**
5:11,19;9:3,11,12;
10:11,16,23;17:3,7;
19:11,12;20:17;21:8,
8;22:10;27:16;29:4;
30:16;33:19
**cases (22)**
15:6,10;16:4;18:7,
8,9,11;19:5,7,19,25;
20:3,3,9,12,14;21:1,
6,11,17,18;22:6
**category (1)**
6:21
**cats (3)**
16:23,25;17:25
**CC (1)**
2:2
**cede (1)**
14:23
**cert (2)**
26:5,17
**certain (2)**
16:20;23:5
**certainly (3)**
20:25;23:4;29:2
**certiorari (7)**
26:22,25;32:3,21,
25;33:3,9
**challenge (1)**
12:9
**changing (1)**
14:7
**Chapter (1)**
5:16
**child (2)**
5:23;12:16

**children (1)**
7:18
**choices (1)**
30:1
**Circuit (11)**
8:18;26:1,9,10,16,
21;29:3;30:2,9,18;
32:2
**circumstances (4)**
8:15;12:9,16;
26:19
**Claim (19)**
2:3;4:22,22,23;
6:18;8:7;11:8;12:11;
13:4;15:15;25:22;
28:17,19;31:18,21;
32:1,4,16,23
**Claimant (2)**
2:3;5:15
**claimants (3)**
31:4,8,16
**Claims (13)**
4:5;8:12;15:22,24;
16:3;24:24;25:20,
25;26:14,18;27:9,15;
30:14
**clear (1)**
20:2
**clerk (1)**
14:2
**clerks (1)**
14:19
**close (1)**
20:24
**closed (5)**
15:12;20:10,16;
21:21;22:10
**closer (1)**
17:21
**closure (1)**
15:11
**co-claimants (1)**
25:5
**co-counsel (1)**
25:7
**colleagues (1)**
21:15
**coming (1)**
14:8
**commenced (1)**
28:17
**comment (1)**
30:15
**complaint (3)**
27:20,23;28:15
**complete (1)**
28:14
**completely (1)**
15:23
**comply (1)**
12:20
**concluded (2)**
31:14;34:2

**conference (1)**
4:9
**conferences (1)**
4:20
**confirmation (1)**
13:3
**confirmed (1)**
22:9
**conflict (2)**
19:15,16
**connection (1)**
9:2
**consequences (1)**
24:15
**consider (2)**
31:1,3
**consolidate (1)**
22:3
**consolidated (1)**
28:6
**contemplate (1)**
24:17
**contested (1)**
24:5
**Continue (1)**
2:3
**continues (2)**
16:15;17:3
**control (2)**
6:20;12:12
**copies (3)**
9:6;14:3,19
**copy (1)**
11:25
**Corp (1)**
9:15
**counsel (1)**
12:25
**country (1)**
5:17
**counts (3)**
10:19,20;11:12
**couple (3)**
12:13;16:12;30:23
**course (1)**
13:2
**Court (182)**
2:4;4:2,7,10,13,15,
18,21;5:1,4,9,15,20;
6:1,6,8,10,13,22;7:1,
6,9,11,19,24;8:2,5,8,
10,21,22,23,25;9:1,8,
10:4,8,11,12,16,18,
20,21,23,25,25;11:2,
6,9,10,13,16,21,25;
12:3,18,24,25;13:1,
8,10,14,17,25;14:5,9,
12,15,18,21;15:4,8,
10,12,16,20;16:2,7,
10,25;17:7,10,16,18,
20;18:3,5,8,12,13,16,
21,23;19:4,6,7,9,10,

15,18,24;20:2,6,9,12,
15,19,23;21:2,6,14,
20;22:1,5,7,13,15,20,
25;23:2,9,11,13,17,
21,24;24:1,4,7,13,16,
20,22;25:3,19,24;
26:1,7,9,9,12,16,17,
20,22,25;27:2,5,7,10,
16,18,24;28:12,23;
29:2,7,12,18,21;
30:11;31:5,17,20;
32:11,16,21,24;33:2,
6,8,8,15,18,23;34:1
**Court's (2)**
8:19;15:18
**current (1)**
15:23
**currently (1)**
17:14;18:1;20:14
**cut (1)**
20:25
**cuts (1)**
28:20

**D**

**damages (1)**
28:16
**date (16)**
12:17,21,23;13:2,
12;17:16,18;18:24,
25;19:2,13,21;22:17;
23:23;28:18;30:24
**daughter (3)**
5:24;13:22,24
**day (2)**
5:12;7:13
**deadline (8)**
15:24;16:12;
17:21;30:5,6;32:24;
33:2,5
**deal (5)**
4:10,13,15,21;
22:15
**dealing (1)**
26:13
**dear (2)**
5:23,24
**Debtor (2)**
2:4;23:25
**debtors (2)**
23:6;29:13
**debtors' (1)**
24:12
**December (2)**
17:15,19
**Deceptive (1)**
27:21
**decide (2)**
25:14;30:4
**decided (1)**
18:22
**deciding (1)**

21:22
**decision (2)**
28:2,18
**deemed (1)**
28:18
**defendants (3)**
9:10;11:4;25:11
**defendants' (1)**
25:12
**definitely (1)**
21:23
**delay (1)**
6:19
**denial (1)**
33:12
**denied (4)**
10:10;26:17;28:9,
10
**depending (1)**
31:2
**deprive (2)**
28:3,4
**describe (1)**
7:19
**determinative (1)**
25:12
**determined (1)**
31:9
**differences (1)**
22:23
**difficult (1)**
33:19
**diligence (1)**
24:9
**directed (1)**
32:10
**discovered (1)**
23:7
**discussions (2)**
29:16,19
**dismiss (5)**
10:8,9,17;11:3;
29:11
**dismissal (1)**
11:2
**dismissed (9)**
8:23;9:3;10:18,20,
21;11:18;25:13;
27:19;29:14
**disposes (1)**
33:8
**disposition (1)**
30:18
**dispositive (1)**
25:9
**distribute (2)**
22:8;31:22
**distributed (3)**
17:23;22:17;30:24
**distribution (7)**
16:16;30:25;31:4,
8,11,13,15
**distributions (2)**

16:15,18
**District (17)**
2:4;6:24;8:22,23;
10:8,18,21;11:1;
12:18,25;18:12;
19:10;25:25;26:9,16,
20;27:24
**Doc (1)**
2:2
**docket (2)**
9:9;12:18
**dogs (3)**
16:24,25;17:25
**dollars (3)**
16:17,19,23;
30:25;31:8
**done (8)**
15:12,23;16:13;
21:9;26:5,12;30:13;
33:20
**due (1)**
5:16
**during (3)**
5:17;13:1;17:2

**E**

**early (1)**
19:21
**effect (3)**
13:2,3;30:11
**effective (1)**
22:17
**either (4)**
9:23;14:12;30:19;
33:19
**eleven (3)**
18:7,11,14
**else (9)**
6:13;8:5;12:3;
13:17;22:10;31:22;
32:6,16;33:15
**embrace (1)**
13:23
**end (6)**
14:18;16:16;17:6,
6,13;31:9
**ends (1)**
16:24
**enforce (1)**
8:24
**enforcement (3)**
8:24;9:4,4
**enter (2)**
10:25;11:2
**entered (2)**
9:1;11:23
**entire (1)**
10:5
**entirety (1)**
25:14
**entities (1)**
21:7

**entity (4)**
9:14;22:4,7;24:10
**entries (1)**
12:19
**equitable (1)**
28:15
**equivalent (1)**
16:18
**eScribers (1)**
2:21
**estate (1)**
22:21
**estates (2)**
21:25;22:24;24:12
**estimate (1)**
31:21
**estimated (3)**
32:5,5,5
**events (1)**
12:14
**eventual (1)**
15:11
**eventually (1)**
28:5
**evidentiary (1)**
18:19
**exact (1)**
26:2
**excusable (5)**
6:16,18;8:17;12:6,
7
**excused (1)**
14:15
**executor (1)**
21:25
**exist (1)**
22:22
**expenses (1)**
21:5
**expire (2)**
15:24;17:15
**expired (1)**
30:5
**explanation (3)**
12:20;13:6;28:7
**expressing (1)**
23:11
**expungement (2)**
25:25;27:9
**extend (1)**
24:19
**extension (2)**
16:1;17:14
**extensions (1)**
16:12
**extensive (1)**
11:11
**extent (2)**
25:21;28:20
**eye (1)**
15:9

**F**

**fact (3)**
13:3;22:21;28:3
**failed (1)**
5:20;8:17;13:4
**failure (2)**
11:8;12:11
**fall (1)**
6:20
**family (2)**
5:12;8:14
**far (3)**
20:20;24:8,10
**favor (1)**
10:18
**fee (1)**
21:11
**feel (1)**
8:16
**feeling (1)**
33:21
**fees (2)**
21:1,11
**felt (1)**
5:20
**few (1)**
16:11
**fifty (1)**
30:25
**File (15)**
2:2;4:23;5:15;
6:17;7:2;8:7;12:11;
13:4,6;23:5;27:23;
28:16;30:5;32:3;
33:10
**filed (13)**
2:4;6:22;8:23;
10:8;9:12:24;16:3,
22;21:19;25:10;
26:23;27:12;28:19
**filing (4)**
10:4;24:2;32:24;
33:2
**filings (1)**
10:4
**final (2)**
31:4,13
**Financial (4)**
9:15;10:12,14,15
**financials (1)**
16:22
**fine (1)**
14:16
**finite (1)**
17:11
**firm (1)**
19:19
**first (5)**
4:8,13;5:8;13:24;
25:1
**Fischer (1)**

14:23
**five (1)**
13:2
**five-and-a-half (1)**
31:7
**flight (1)**
14:8
**Foerster (2)**
4:5;24:24
**foreclosed (1)**
7:4
**foresee (1)**
20:7
**forgiveness (1)**
5:21
**form (1)**
17:1
**forth (1)**
8:13
**forthcoming (1)**
23:5
**found (1)**
29:13
**Frankel (1)**
15:1
**fraud (1)**
29:12
**Fred (1)**
25:6
**front (3)**
18:15,18;19:13
**fully (1)**
32:9
**Funding (2)**
9:15;20:10
**further (3)**
16:1,16;29:17
**future (1)**
15:18

**G**

**Gardephe (2)**
28:6,7
**general (1)**
14:22
**Genworth (8)**
10:12,14,15,16,19,
20;11:2,5
**Genworth's (1)**
11:15
**give-back (1)**
31:10
**given (1)**
29:3
**giving (1)**
9:4
**Glendale (2)**
6:4;8:2
**GMAC (10)**
5:16;8:23;9:14,20,
23;10:22;11:18;
12:25;20:17;31:4

**Good (6)**
4:4;5:8,9;14:25;
15:5;30:14
**grant (1)**
29:23
**granted (2)**
10:10;11:3
**grounds (2)**
9:5;29:11
**group (1)**
13:23

**H**

**happen (2)**
5:10;30:10
**happening (1)**
15:14
**happens (1)**
30:2
**hard (1)**
7:14
**heard (3)**
18:20;25:16,21
**Hearing (4)**
2:2;8:15;14:18;
27:25
**held (3)**
16:24;23:25;24:11
**help (1)**
8:7
**hence (1)**
7:16
**herself (1)**
13:23
**history (1)**
26:21
**holders (1)**
16:15;21:4
**holding (2)**
31:6;32:17
**home (4)**
6:6,7;8:3;13:13
**Homecomings (1)**
9:24
**Honor (81)**
4:4,8,12,16;5:2,8,
14;6:5,12,21,25;7:3,
8,13,21;8:1,4,6,9,13,
19;11:19;12:5;13:9,
16,19;14:4,11,24,25;
15:2,6,13,21,22;
16:13,14,20,21;17:9,
12,24;18:18;19:20,
23;20:5;21:13,24;
22:12;23:4,18;24:3,
19,23;25:7,8,17,21,
22;26:15;27:19,25;
28:2,15,22;29:1,6,
10,12;30:21,23;31:8,
19;32:9,15,19;33:5,
13,17,22,25
**Honor's (4)**

23:18;27:9;28:9,
18
**hope (1)**
21:15
**hoped (1)**
7:15
**hoping (1)**
6:16
**hurt (1)**
5:12
**husband (3)**
7:5;12:16;19:18

**I**

**identified (1)**
9:14
**impact (1)**
24:25
**implicated (1)**
20:21
**imposed (1)**
30:7
**including (1)**
6:19
**income (2)**
7:15;17:3
**informal (1)**
28:19
**initial (2)**
10:3;17:13
**initially (1)**
11:11
**initiated (1)**
9:13
**input (1)**
32:10
**Instead (1)**
27:22
**insurance (4)**
25:3,4;31:9;32:13
**insurer (1)**
10:15
**intend (2)**
23:5;33:11
**interim (2)**
30:25;31:15
**interlocutory (2)**
27:24;28:9
**interpreted (1)**
8:18
**intervention (2)**
15:18;17:23
**into (6)**
21:23;22:3,17,23;
24:9;29:16
**involved (1)**
19:19
**involves (1)**
27:14
**irrevocable (1)**
23:20
**issue (3)**

23:19;27:21;29:10

**issues (1)**
25:15

**item (1)**
8:20

## J

**January (1)**
19:21

**Jennifer (1)**
27:13

**Joseph (1)**
14:25

**judge (11)**
11:1;18:13,15,18;
19:1,12,13;25:2;
28:6,7;32:13

**judgment (3)**
18:19;19:22;25:16

**judicata (2)**
9:5;29:11

**judicial (2)**
9:5;17:23

**July (3)**
15:24;25:18;27:19

**June (2)**
10:5;12:18

**jurisdiction (1)**
28:4

## K

**keeping (1)**
23:8

**kidnapped (1)**
5:24

**kids (1)**
7:14

**kill (1)**
13:23

**kind (1)**
28:20

**Kramer (1)**
15:1

## L

**lack (1)**
12:6

**Lane (2)**
25:2;32:14

**last (1)**
16:21

**late (2)**
4:23;6:18

**later (2)**
15:20;28:24

**latter (1)**
26:19

**law (2)**
14:2;19:19

**lawsuit (2)**

6:22,23

**least (1)**
20:3

**Leave (3)**
2:2;4:23;29:24

**less (1)**
23:20

**letter (1)**
13:21

**Levin (1)**
15:1

**liability (1)**
5:13

**life (2)**
5:23;24:19

**limited (1)**
29:24

**liquidated (1)**
16:21

**Liquidating (15)**
4:6,19;15:1,14,25;
16:5,14;17:3,9;
18:11;21:24;22:3;
24:12;26:15;27:14

**liquidation (1)**
31:10

**Litigate (1)**
2:4

**litigation (3)**
10:3;31:14;32:13

**litigations (2)**
18:2;20:22

**live (2)**
27:5,9

**lived (2)**
7:24,25

**livelihood (2)**
7:4,10

**living (3)**
6:8;7:1,6

**LLC (1)**
2:21

**Loan (4)**
9:17,18,20;10:1

**loans (3)**
17:2,4,6

**Lolina (2)**
2:4;5:2

**long (2)**
20:3;21:10

**longer (1)**
24:15

**look (1)**
21:23

**looking (2)**
21:10;28:13

**lost (1)**
26:2

**lot (3)**
5:11,17;16:25

## M

**magistrate (4)**
9:3;10:17;11:1,14

**magistrate's (2)**
10:21;11:23

**main (2)**
17:2;20:17

**making (1)**
30:15

**many (4)**
12:15;21:16;29:8,
9

**matter (15)**
4:8,13;5:22;8:20;
10:5,8;14:1;25:5,7;
27:3,25;28:5,13,19;
31:2

**matters (6)**
5:18,25;14:13;
16:11;24:25;32:12

**May (10)**
10:24;13:21;14:4;
16:16;17:4,12;30:14,
15;32:5,5

**maybe (1)**
31:24

**mean (7)**
5:22;20:10;21:10;
22:12;29:21;30:1;
33:18

**meant (1)**
5:11

**mechanism (1)**
22:16

**mention (1)**
23:4

**meticulously (1)**
11:12

**mid-August (3)**
18:22;27:1;33:7

**might (5)**
15:18;17:23;20:8;
28:22;31:14

**million (5)**
16:17,23;17:25;
30:25;31:7

**Minnesota (3)**
18:2,12;21:3

**money (1)**
22:22

**Monterey (1)**
6:3

**month (1)**
30:19

**more (3)**
23:7,20;31:25

**morning (6)**
4:4;5:8,9,14;
14:10,25

**Morrison (2)**
4:5;24:24

**mortgage (2)**
17:2;20:17

**most (4)**

16:15;17:25;18:3,
5

**mostly (1)**
17:1

**mother (2)**
7:15,17

**Motion (20)**
2:2,3;4:22;5:7;
8:23;10:4,9;11:3;
13:6,21;23:5,23;
24:1,5,18;25:21;
28:3,4,9,10

**motions (9)**
10:7,17,17;18:19,
20;19:22;24:16;
25:9,16

**movant's (2)**
6:20;12:12

**move (2)**
14:13;33:13

**moved (3)**
26:17;28:1;29:11

**much (5)**
5:11;8:8;13:14;
14:8,9;15:17,23;
20:7,24;21:16;31:5,
5,17;33:17,24

**multiple (1)**
12:24

**multiples (1)**
26:2

**myself (2)**
5:3;13:23

## N

**Naftalis (1)**
15:1

**name (1)**
5:2

**narrow (1)**
27:21

**need (3)**
15:18,25;17:23

**needs (2)**
29:21;32:23

**neglect (5)**
6:16,18;8:17;12:6,
7

**Nelson (5)**
18:13,15,18;19:2,
13

**New (2)**
2:23;27:23

**next (1)**
30:19

**Nine (1)**
18:18

**Norm (3)**
4:4;8:11;24:23

**Norman's (1)**
13:20

**North (1)**

27:22

**note (1)**
12:13

**notice (6)**
9:5;10:5;11:17;
12:22;13:1;33:10

**notices (1)**
12:24

**November (1)**
12:21

**number (5)**
9:4;16:17;26:1,2;
27:16

**NY (1)**
2:23

## O

**object (1)**
15:24

**objection (3)**
4:22;16:12;25:23

**obviously (3)**
8:14;21:22;25:22

**occasions (1)**
13:1

**October (3)**
18:25;19:1,3

**odds (1)**
16:24

**off (2)**
17:5;20:25

**offered (1)**
12:20

**office (1)**
24:3

**once (2)**
11:17;23:14

**one (24)**
7:4;8:20;9:4;
13:21,21;14:4;
17:25;18:17;19:11,
12,18,19,20;21:8,8,
20,21;22:3,5,10;
26:4;29:8,25;32:16

**ones (2)**
18:10;20:16

**one-year (1)**
17:14

**ongoing (2)**
18:1;20:21

**only (10)**
13:11;18:10;21:8,
16,21;27:3,5,8,8;
31:25

**open (17)**
17:7;18:12;20:3,4,
14,17,18,18;21:1,9,
11,17,21;22:11;
31:25,25;32:12

**operations@escribersnet (1)**
2:25

**opinion (1)**

10:25
**opinions (1)**
 26:13
**opportunity (2)**
 26:5;27:23
**option (1)**
 31:20
**options (1)**
 28:13
**order (7)**
 8:24;9:2,4;11:1,
 22,25;13:3
**orders (5)**
 9:6;11:20,22;14:3,
 21
**original (1)**
 12:21
**originally (1)**
 21:19
**originated (1)**
 10:1
**otherwise (1)**
 28:21
**out (6)**
 2:3;5:17;7:16;
 13:12;20:16;32:18
**outcome (2)**
 25:12;31:2
**outline (1)**
 12:14
**outlined (4)**
 8:16;12:5,15,23
**over (3)**
 22:22;30:12;33:19
**overlapping (1)**
 24:25
**overview (1)**
 25:9
**owned (1)**
 7:7
**ownership (1)**
 24:10

**P**

**PACER (1)**
 9:9
**paid (1)**
 21:1
**papers (3)**
 8:13;12:7,23
**Pardon (1)**
 17:17
**part (8)**
 7:10;10:9,10,10;
 27:20;31:2,9,14
**partial (1)**
 25:15
**particular (1)**
 5:18
**parties (1)**
 25:14
**partner (1)**

19:19
**party (1)**
 26:4
**past (1)**
 26:21
**paying (1)**
 21:11
**payment (2)**
 20:25;21:4
**pending (5)**
 16:11;25:1;27:12;
 28:3;33:9
**Penina (1)**
 2:20
**perceived (1)**
 24:14
**percentage (1)**
 22:19
**Perhaps (1)**
 22:2
**perspective (4)**
 15:25;16:13;
 25:15;29:13
**petition (5)**
 26:17,23;32:3,25;
 33:3
**petitions (3)**
 33:9,12,12
**phone (1)**
 25:7
**picture (1)**
 28:14
**Pioneer (1)**
 8:18
**place (1)**
 12:17
**plaintiff (5)**
 20:12;27:23,25;
 28:11;29:11
**plaintiffs (1)**
 25:10
**plaintiffs' (1)**
 25:15
**plan (3)**
 13:3;17:12;24:2
**plans (1)**
 22:9
**plead (1)**
 5:15
**pleading (1)**
 30:5
**please (2)**
 4:2,24
**pleased (1)**
 15:22
**PMI (1)**
 10:14
**podium (1)**
 14:23
**point (3)**
 7:25;13:12;24:18
**points (1)**
 30:23

**Porter (37)**
 2:5;4:11,12,13,25;
 5:2,3,7,8,10;6:2,5,7,
 9,12,15,24;7:3,8,10,
 13,21;8:1,4,6,9,14;
 9:12;12:14,17;13:1,
 17,19;14:6,11,14,17
**Porter's (2)**
 12:9;25:21
**position (3)**
 11:15,15;31:13
**possible (4)**
 15:17;17:4;20:8,
 25
**possibly (1)**
 31:2
**post-effective-date (1)**
 10:6
**posture (1)**
 29:4
**potential (1)**
 32:7
**practice (2)**
 10:4;33:10
**Practices (1)**
 27:22
**pray (1)**
 8:6
**prejudice (3)**
 27:20,20;29:14
**pretty (2)**
 15:23;33:9
**prevail (1)**
 25:13
**preview (1)**
 15:17
**previously (2)**
 23:7,19
**prior (4)**
 10:8;25:24;27:25;
 28:17
**priorities (1)**
 22:8
**pro (1)**
 5:3
**probably (2)**
 15:9;17:24
**procedural (1)**
 29:4
**procedures (1)**
 9:2
**proceed (1)**
 32:10
**proceeding (6)**
 25:1;26:20;27:4,
 11,13;28:17
**proceedings (3)**
 12:24;25:24;34:2
**proceeds (1)**
 21:3
**process (3)**
 19:11;31:11;32:19
**proffered (1)**

12:19
**programmer (1)**
 7:14
**Proof (6)**
 2:2;12:11;13:4;
 25:22;28:16,19
**properties (3)**
 7:16,17;23:24
**property (8)**
 7:3,7,11,19,21,22,
 24;8:2
**purposes (1)**
 8:15
**pursuant (1)**
 12:23
**pursue (1)**
 30:13
**pursues (1)**
 32:7
**put (1)**
 13:1
**putting (1)**
 17:24

**Q**

**quarterly (1)**
 16:21
**quickly (3)**
 15:14;33:9,13
**quite (1)**
 27:12

**R**

**raised (1)**
 29:12
**rather (2)**
 15:20;28:23
**RE (1)**
 2:2
**reached (1)**
 22:6
**reacquire (1)**
 23:5
**read (1)**
 30:16
**ready (1)**
 19:2
**really (6)**
 5:11,18;12:12,17,
 19;30:20
**reason (1)**
 6:19
**reasonable (1)**
 6:20
**reasons (3)**
 5:16;11:3;28:6
**recall (1)**
 17:12
**receive (1)**
 17:3
**received (1)**

13:13
**receiving (1)**
 12:22
**recently (2)**
 16:16;23:6
**recommendation (2)**
 10:21;11:24
**record (1)**
 12:11
**recoveries (2)**
 21:2;22:22
**recovery (3)**
 22:18;25:2,4
**reference (2)**
 28:1,10
**reflect (1)**
 12:19
**regarding (1)**
 5:18
**relating (1)**
 27:21
**relevant (1)**
 24:15
**relief (1)**
 28:16
**remain (6)**
 16:21;17:7;18:12;
 20:3,4;21:21
**remained (2)**
 21:9;22:10
**remaining (6)**
 18:7;21:3,7,17;
 22:7;26:4
**remains (3)**
 17:22;27:5,9
**remedies (1)**
 32:8
**remember (5)**
 21:9;22:5;29:7,7,
 25
**remind (1)**
 28:14
**removed (1)**
 9:13
**renewed (1)**
 10:16
**rent (1)**
 7:16
**rental (1)**
 7:11
**rented (1)**
 7:23
**reopened (3)**
 10:6,23;11:17
**reopening (2)**
 10:11,16
**replace (1)**
 7:15
**replead (3)**
 27:21;29:15,24
**replied (1)**
 13:21
**reply (1)**

12-12020-mg    Doc 10551    Filed 06/22/18    Entered 06/29/18 10:35:20    Main Document

RESIDENTIAL CAPITAL, LLC, et al.              Pg 41 of 42

Case No. 12-12020-mg                                                                                    June 21, 2018

5:22

**report (1)**
15:22

**reporting (1)**
18:11

**representing (1)**
5:3

**require (2)**
16:11;20:8

**res (2)**
9:5;29:11

**ResCap (8)**
4:5,6;8:11;15:1,
14;20:17;27:14,14

**research (1)**
6:15

**reserve (2)**
23:12;31:21

**Residential (3)**
4:3;9:14;20:10

**resolve (1)**
28:21

**resolved (5)**
16:6;18:6,9;19:8;
29:21

**respect (1)**
30:16

**respond (2)**
13:19;33:11

**response (1)**
12:15

**responsibility (1)**
22:10

**rest (1)**
19:3

**result (1)**
31:9

**reviewed (1)**
23:19

**RFC (3)**
20:18;31:8,15

**right (20)**
4:2,21;6:10;8:8;
12:3;13:14,25,25;
14:22;18:23;22:1,18,
25;24:16,20,21;
30:14;32:11;33:24;
34:1

**rights (4)**
21:7;24:10;29:3;
30:13

**RMBS (1)**
18:9

**Road (1)**
6:3

**Rosenbaum (75)**
4:3,4,5,8,14,16,19;
5:6;8:10,11,11,22;
9:1,9,12,18,21,23;
10:1,14,24;11:5,7,
10,14,19,22;12:2,5;
13:9,11,15,16;14:2,
4,6,19,20,23;24:22,

23,24;25:4,20;26:8,
11,14,24;27:1,3,6,8,
11,17,19;29:1,6,9,
20;30:20,21;31:7,19,
23;32:9,15,18,22;
33:1,4,7,10,17,21,25

**Rule (2)**
6:17;28:8

**ruled (5)**
9:3;10:18;26:15;
28:2,4

**ruling (1)**
29:8

**rulings (1)**
29:22

**run (3)**
15:13;17:5;26:22

**running (1)**
32:18

---

**S**

**sale (1)**
17:5

**same (3)**
5:13;10:19;26:19

**satisfactory (2)**
13:6;28:7

**satisfy (3)**
6:18;8:17;12:6

**schedule (1)**
14:7

**scheduled (2)**
19:22;25:17

**schemes (1)**
22:9

**se (1)**
5:3

**seat (1)**
5:5

**seated (1)**
4:2

**second (14)**
6:1;8:18;18:17;
25:17;26:1,9,10,16,
21;29:3;30:1,9,18;
32:2

**seek (7)**
24:8;26:5,22;
31:13,14,20;32:4

**seeking (5)**
23:15,22;28:11;
31:3,17

**seem (2)**
17:10;28:24

**seems (2)**
13:12;29:25

**segregated (1)**
24:11

**sell (1)**
17:4

**September (1)**
19:22

**Services (3)**
9:15,17,18

**servicing (3)**
9:19,20;10:2

**set (10)**
8:13;15:24;17:13,
14;18:25;19:2,14,21;
21:20;31:21

**settle (1)**
30:19

**settled (1)**
19:12

**Seventh (1)**
2:22

**seventy-three (2)**
16:23;17:25

**several (2)**
13:1;26:13

**share (2)**
33:21,23

**Shifer (61)**
4:16;14:25,25;
15:5,9,11,13,17,21;
16:3,8,11;17:1,9,11,
17,19,21;18:4,7,10,
14,17,22,24;19:7,10,
17,20,25;20:5,7,11,
13,16,20,24;21:4,13,
18,23;22:2,12,14,16,
21;23:1,3,10,12,15,
18,22,25;24:2,6,8,14,
18,21;32:12

**sic (4)**
5:16;13:20;14:24;
31:10

**side (7)**
5:12;15:15,15,22;
16:14;25:12,20

**significant (1)**
12:14

**single (1)**
32:22

**sit (4)**
30:3;31:23,24;
32:1

**sold (1)**
17:2

**somebody (1)**
29:24

**soon (1)**
24:2

**Sooner (2)**
15:20;28:23

**sorry (3)**
18:14,17;33:1

**sort (6)**
17:5;21:25;24:25;
29:14;31:1,10

**sought (2)**
17:14;28:15

**speak (2)**
11:7;16:8

**specific (1)**

33:5

**specifics (1)**
11:7

**sprinkle (1)**
22:22

**stand (1)**
15:6

**standards (1)**
8:17

**state (4)**
9:13;11:8;19:6,7

**statement (1)**
13:20

**status (3)**
4:9,20;14:22

**stay (6)**
14:12,15;28:24;
29:4;30:10;32:3

**stayed (1)**
10:5

**staying (1)**
10:8

**still (9)**
6:8;16:20,22;17:4;
20:17,18,18;21:1;
26:4

**straightforward (1)**
30:20

**stress (1)**
5:21

**Strohbehn (1)**
25:6

**stroke (1)**
7:5

**strongly (1)**
5:14

**subject (1)**
7:21

**submission (1)**
14:1

**subsequent (4)**
10:10,15;12:22;
31:11

**subsequently (2)**
10:3;11:12

**sued (3)**
9:12,13,15

**Suite (1)**
2:22

**summary (3)**
18:19;19:21;25:15

**Supreme (1)**
26:17

**Sure (9)**
4:18,25;6:11,16;
14:17;15:16;16:10;
33:23,23

---

**T**

**talking (1)**
31:23

**tax (1)**

24:14

**tee (1)**
30:4

**teed (3)**
29:5;30:12,19

**telling (4)**
20:4;30:8,8,17

**ten (2)**
18:14;26:3

**Tennessee (7)**
6:24;7:2,4,7,12,20,
25

**term (2)**
17:12,13

**test (1)**
8:16

**thanks (1)**
33:24

**though (1)**
9:11

**thought (6)**
18:3,5;23:7,8;
33:4,7

**three (8)**
17:13;20:13,14,
21;21:16,18,25;
22:13

**three-bedroom (1)**
7:22

**timely (1)**
28:16

**times (1)**
5:17

**told (1)**
32:13

**took (3)**
12:17;22:17;27:24

**total (1)**
16:17

**towards (1)**
15:11

**townhouse (1)**
7:22

**track (1)**
26:2

**Trade (1)**
27:22

**Transcribed (1)**
2:20

**transferred (4)**
9:19,22;10:2;
24:12

**transferring (1)**
21:7

**transpired (1)**
10:3

**trial (5)**
18:24,24;19:1,13,
21

**trouble (1)**
23:8

**troubling (1)**
29:13

**true (1)**
15:4
**Trust (33)**
4:6,6,19;8:12;
15:2,15;16:5,8,14,
22,24;17:3,11,14;
18:1,11;20:21;
21:24;22:3;24:12,19,
24;26:15,19;27:14,
15;30:24,24;31:1,3,
5,12,12
**Trustee (3)**
20:25;21:11,11
**trusts (3)**
25:1,5;28:20
**Trust's (1)**
15:25
**try (2)**
15:17;23:13
**trying (2)**
20:7;21:14
**Turning (1)**
25:20
**two (7)**
19:4,5;21:21;
24:25;26:18;30:10,
20
**two-bath (1)**
7:22

**U**

**uncertainty (1)**
23:11
**unclear (1)**
29:2
**under (5)**
6:21;8:17;14:1;
17:12;23:20
**undisputed (1)**
13:12
**undo (1)**
23:15
**Unfair (1)**
27:21
**unfortunate (3)**
8:14;12:8,16
**unhappy (1)**
32:2
**unit (2)**
16:15;21:4
**units (3)**
16:18;22:16,22
**unliquidated (1)**
31:19
**unreasonable (1)**
32:6
**up (9)**
15:3;21:20;23:3;
29:5;30:4,12,19;
31:21;32:17
**update (1)**
15:6

**updating (1)**
12:25
**usually (2)**
29:23;33:8

**V**

**vacation (1)**
8:1
**valuable (2)**
18:1;23:10
**various (1)**
16:23
**varying (1)**
22:18
**veracity (1)**
8:16
**view (1)**
17:22

**W**

**wait (3)**
31:24;32:1,6
**waiting (2)**
30:8,17
**Walters (2)**
25:6,6
**way (1)**
22:16
**ways (1)**
32:4
**welcome (1)**
14:11
**weren't (1)**
17:2
**Western (1)**
6:24
**what's (3)**
12:10;15:14;22:18
**Whereupon (1)**
34:2
**Wilson (8)**
27:13;28:15,16,
19;29:3;31:2,17;
32:7
**Wilson's (1)**
31:25
**withdraw (2)**
28:1,10
**within (2)**
12:12;24:11
**without (2)**
27:20;29:14
**Wolicki (1)**
2:20
**word (1)**
22:18
**worked (1)**
25:25
**working (2)**
7:14,16
**writ (1)**

33:3
**write (1)**
11:1

**Y**

**year (4)**
28:8;30:2,3,9
**years (3)**
13:2;17:13;30:10
**yesterday (1)**
18:20
**York (1)**
2:23

**Z**

**zero (1)**
32:5

**1**

**1,025 (1)**
7:23
**10:48 (1)**
34:2
**10001 (1)**
2:23
**10520 (1)**
2:2
**12-01936 (2)**
27:13,17
**12-12020 (1)**
4:3
**12b6 (1)**
10:17
**13 (2)**
5:16;15:24
**16th (1)**
12:21
**17th (2)**
17:15,19
**18th (1)**
25:18
**19th (1)**
10:24

**2**

**2005 (1)**
10:1
**2008 (1)**
10:2
**2012 (4)**
10:6;12:18,21;
13:20
**2014 (1)**
27:19
**2016 (1)**
10:24
**2017 (1)**
17:13
**2018 (3)**

11:23;17:15,19
**2019 (1)**
19:21

**3**

**3 (1)**
16:18
**30th (1)**
11:23
**350 (1)**
16:16
**352 (1)**
2:22

**4**

**4,500 (1)**
16:4

**5**

**554 (1)**
23:20

**7**

**7 (1)**
27:19
**7,500 (1)**
16:3

**8**

**832 (1)**
6:3

**9**

**9006 (1)**
6:17
**973406-2250 (1)**
2:24