# Exhibit

## M

Filing # 74481320 E-Filed 07/04/2018 10:04:52 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR
ORANGE COUNTY, FLORIDA

**PATRICIA K. HERMAN,**

               Counter Plaintiff,              CASE NO:    48-2007-CA-010062

vs.

**OCWEN LOAN SERVICING LLC,**

               Counter Defendant.

                                        /

## MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTER CLAIM

**COMES NOW** the Counter Plaintiff, **PATRICIA K HERMAN,** by and through her undersigned counsel, pursuant to Florida Rule of Civil Procedure 1.190(a), and moves this Honorable Court for an order granting leave to file Counter Plaintiff's Second Amended Complaint in this action, and as grounds thereof states as follows:

     1.    On or about February 14, 2017, this Honorable Court granted Plaintiff/Counter Defendant, OCWEN LOAN SERVICING, LLC (hereinafter referred to as "Ocwen"), motion to be substituted into this action as Party Plaintiff in place of GMAC MORTGAGE CORPORATION, LLC.

     2.    On or about July 31, 2017, this Honorable Court ordered that the style of the case be changed to reflect the counter claim to be against *Ocwen Loan Servicing, LLC.*

     3.    There are several relevant issues contained within Ms. Herman's Counter Claims that need to be amended, corrected, added or deleted due to Ocwen's substitution into this action.

     4.    Allowing Ms. Herman to file her *Second Amended Counter Claim* would serve to ensure that all relevant issues are fully litigated in this action.

     5.    Ocwen would not be unduly prejudiced by this Honorable Court allowing Ms. Herman to file her *Second Amended Counter Claim.* (Please see the attached copy of Ms. Herman's Second Amended Counter Claim, "Exhibit A").

6.      This amendment is not filed for the purposes of delay.

**WHEREFORE**, Ms. Herman respectfully requests that this Honorable Court grant

her Motion for Leave to File Second Amended Counter Claim, and further order that Ms.

Herman's *Second Amended Counter Claim*, which was filed on July 4, 2018, be deemed

filed as of that date.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Motion for*

*Leave to File Second Amended Counter Claim* will be furnished on this 4th day of July

2018 via Florida E-Filing Portal to all parties of record in this action.

/s/Patricia K. Herman
**PATRICIA K. HERMAN, ESQUIRE**
Florida Bar No: 0113018
Law Office of Patricia K. Herman, P.A.
1631 Rock Springs Road, #305
Apopka, Florida 32712-2229
Correspondence E-mail: lopkhpa@gmail.com
Service E-mail: service2lopkhpa@gmail.com
407/7731-5823
Attorney for Counter-Plaintiff



IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR
ORANGE COUNTY, FLORIDA

**PATRICIA K. HERMAN,**

      Counter Plaintiff,

vs.

CASE NO:   48-2007-CA-010062

**OCWEN LOAN SERVICING LLC,**

      Counter Defendant.

_____/

### COUNTER PLAINTIFF'S SECOND AMENDED COUNTERCLAIM

**COMES NOW** the Counter Plaintiff, PATRICIA K. HERMAN (hereinafter referred to as "Ms. Herman"), by and though her undersigned counsel, and files her *Second Amended Counter Claim* against the Counter-Defendant, and states as follows:

JURISDICTION

1. This is an action for damages in excess of FIFTEEN THOUSAND DOLLARS AND NO CENTS ($15, 000.00).

2. Ms. Herman at all times material hereto, resided in Orange County, State of Florida.

3. At all times material hereto, the Counter Defendant, OCWEN LOAN SERVICING, LLC (hereinafter referred to as "Ocwen"), a foreign for-profit corporation, with its principal place of business in West Palm Beach, Florida, was authorized to conduct business within the State of Florida.

4. Upon Ocwen's request, this Honorable Court bifurcated Ms. Herman's Counter Claim from its *Complaint for Mortgage Foreclosure* and allowed both causes of action to proceed.

5. On July 19, 2017, this Honorable Court entered its *Final Judgment* on Ocwen's *Complaint*

*for Mortgage Foreclosure*, awarding it title interest to the real property that is subject of the note and mortgage sued upon in this instant counterclaim.

6. Pursuant to this Honorable Court's February 4, 2013 *Order of Dismissal*, Ms. Herman was not a party to Ocwen's foreclosure action.

## VENUE

7. Venue is proper in Orange County, Florida.

8. The property, which is subject to the note and mortgage sued upon in this action, is located in Orange County, Florida, to wit:  1204 North Fairway Drive, Apopka, Florida 32712, bearing the legal description of:

> Unit #1204, Building 4, Greenbrook Villas at Errol Estates I, a Condominium, together with undivided interests in the land, common elements and common expenses appurtenant to said units, all in accordance with and subject to the covenants, conditions, restrictions, terms and other provisions of the Declaration of Condominium of Greenbrook Villas at Errol Estates I, a Condominium, recorded January 19, 1987, in O.R. Book 3854, Page 1905, et. Seq., along with subsequent Modification thereof, all in the Public Records of Orange County, Florida.

9. The injury to Ms. Herman occurred in Orange County, Florida.

## PROCEDURAL HISTORY

10. On August 20, 2007, GMAC MORTGAGE, LLC SUCCESSOR BY MERGER TO GMAC MORTGAGE CORPORATION, (hereinafter referred to as "GMAC"), filed the instant action for mortgage foreclosure.

11. On December 15, 2008, Ms. Herman filed her *Amended Answer, Affirmative Defenses and Counterclaim*, to GMAC's *Complaint to Foreclose Mortgage*.

12. On August 3, 2012, Ms. Herman properly coordinated, set and filed a *Notice of Hearing* on her *Amended Motion for Entry of Default Final Judgment and Motion to Compel*.

13. On August 23, 2012, GMAC unilaterally cancelled the hearing on Ms. Herman's *Amended Motion for Entry of Default Final Judgment and Motion to Compel.*

14. On August 24, 2012, GMAC filed its *Suggestion of Bankruptcy.*

15. On February 4, 2013, Ms. Herman was dismissed from the foreclosure action.

16. On January 4, 2017, Ocwen filed its *Motion to Place Case on Active Status, Motion to Substitute Party Plaintiff and Motion to Sever Counterclaims.*

17. On February 14, 2017, this Honorable Court entered its *Order Placing Case on Active Status,* due to the bankruptcy stay being lifted, placing the case on active status; substituting Ocwen for GMAC, as party plaintiff; severing the counterclaims; and, allowing both actions to proceed.

18. On July 19, 2017, this Honorable Court entered its *Final Judgment* of foreclosure against Ms. Herman.

19. On June 18, 2018, Ms. Herman filed her *Motion to Set Aside Final Judgment Entered on July 19, 2017 and Cancel Foreclosure Sale Set for July 17, 2018.*

20. On June 28, 2018, this Honorable Court ordered Ocwen to remove Ms. Herman's name from its July 19, 2017 *Final Judgment* of foreclosure.

21. Ocwen has set the foreclosure sale of the subject property to occur on July 17, 2018.

## FACTUAL BACKGROUND

22. On or about February 25, 2000, Ms. Herman entered into a contract to purchase the real property located at 1204 North Fairway Drive. (Please see a copy of the executed settlement documents, which are collectively attached hereto and incorporated herein as "Exhibit A").

23. The executed settlement documents, which the note and mortgage are predicated upon, do

not authorize the collection of private mortgage insurance or hazard insurance premiums,
nor does it authorize the removal of any monies from Ms. Herman's escrow account for
the payment of same.

## COUNT I

## WRONGFUL FORECLOSURE

### Breach of Contract

24. Ms. Herman hereby realleges the preceding paragraph, numbered 1 through 23, of this
    *Second Amended Counterclaim*, as if fully set forth herein.

25. On April 1, 2000, Ocwen breached the terms and conditions of the subject Note and
    Mortgage by its unauthorized charge and collection of private mortgage insurance,
    (hereinafter referred to as "PMI"), premium payments from Ms. Herman's monthly
    mortgage payment and escrow account.

26. The settlement documents, upon which the instant note and mortgage are predicated, do
    not authorize the collection of PMI payments from Ms. Herman. (Please see Exhibit A).

27. Ocwen has misapplied Ms. Herman's March 1, 2000 payment, in breach of the terms and
    conditions of the subject Note and Mortgage.

28. Ms. Herman informed Ocwen of the misapplication of her payment, and Ocwen has refused
    to correct same.

29. Ocwen has materially breached the terms of the subject Note and Mortgage.

30. Ocwen's breach of the subject Note and Mortgage occurred well before any alleged
    default of Ms. Herman.

31. Ms. Herman is entitled to relief from the subject Note and Mortgage due to Ocwen's
    material breach of same.

<u>Continuing Breach of Contract</u>

32. Ms. Herman hereby realleges the preceding paragraph, numbered 1 through 23, as if fully

set forth herein.

33. Subsequent to its initial breach on March 1, 2000, and without cessation, Ocwen, on a

monthly basis, has continued to repeatedly breach the terms and conditions of the subject

Note and Mortgage by its unauthorized charge and collection of PMI premium payments

from Ms. Herman's monthly mortgage payment and escrow account.

34. The settlement documents, upon which the instant note and mortgage are predicated, do

not authorize the collection of PMI payments from Ms. Herman. (Please see Exhibit A).

35. As of the date of the filing of the instant *Second Amended Counter Claim,* Ocwen has

continued to wrongfully charge Ms. Herman's account with PMI payments for the months

of April 1, 2000 through July 1, 2018.

36. Ms. Herman informed Ocwen of the misapplication of her payment, and Ocwen has refused

to correct same.

37. Ocwen's materially breach of the terms of the subject Note and Mortgage is continuous

and ongoing.

38. Ms. Herman is entitled to relief from the subject Note and Mortgage due to Ocwen's

continual material breach of same.

<u>Unjust Enrichment</u>

39. Ms. Herman hereby realleges the preceding paragraph, numbered 1 through 23, as if fully

set forth herein.

40. Ocwen collected monies from Ms. Herman that were paid in excess of the outstanding

balance not due and owing under the applicable terms and conditions of the subject Note

and Mortgage and removed monies from Ms. Herman's escrow account in contravention

to the terms and conditions of the subject Note and Mortgage.

41. On July 19, 2017, Ocwen obtained a *Final Judgment* of foreclosure in its favor, and

acquired title to the subject property, as well as, an award of monies allegedly collectable

under the terms and conditions of the subject Note and Mortgage.

42. Ms. Herman was not a party to the foreclosure judgment, nor was she given an opportunity

to be heard as to the alleged amounts due and owing pursuant to the terms and conditions

of the subject Note and Mortgage.

43. Ocwen never provided notice to Ms. Herman of the entry of the *Final Judgement.*

44. Furthermore, Ocwen is attempting to sell the subject property, prior to the resolution of

Ms. Herman's counterclaim on the subject Note and Mortgage.

45. Ocwen never returned any of the misappropriated funds to Ms. Herman.

46. Ocwen has gained title to the subject property by virtue of the July 19, 2017 *Final
Judgment* of foreclosure.

47. The subject property has a fair market value of TWO HUNDRED THIRTY-FIVE

THOUSAND THIRTY-FIVE DOLLARS AND NO CENTS ($235,035.00).

48. Ocwen's conduct sounds in equity under the common law of unjust enrichment.

49. Ocwen has been unjustly enriched by its conduct.

50. Ocwen intentionally violated Ms. Herman's due process rights, by inducing this

Honorable Court to enter its *Final Judgment* against Ms. Herman, extinguishing her

interest in the subject property, without providing her notice and opportunity to be heard

on same.

51. Ms. Herman has suffered actual loss in the amount of TWO HUNDRED THIRTY-FIVE
THOUSAND THIRTY-FIVE DOLLARS AND NO CENTS ($235,035.00), by virtue of
Ocwen's conduct.

52. Ms. Herman is entitled to relief for unjust enrichment.

## COUNT II

### Violations of the Florida Deceptive and Unfair Trade Practices Act

53. Ms. Herman hereby realleges the preceding paragraph, numbered 1 through 23, as if fully
set forth herein.

54. Florida Statute §501.204(1) states as follows:

> (1) Unfair methods of competition, unconscionable acts or
> practices, and unfair or deceptive acts or practices in the conduct
> of any trade or commerce are hereby declared unlawful.

55. Florida Statute §501.203(8) states as follows:

> (8) "Trade or commerce" means the advertising, soliciting,
> providing, offering, or distributing, whether by sale, rental, or
> otherwise, of any good or service, or any property, whether
> tangible or intangible, or any other article, commodity, or thing
> of value, wherever situated. "Trade or commerce" shall include
> the conduct of any trade or commerce, however, denominated,
> including any nonprofit or not-for-profit person or activity.

56. At all times material hereto, Ocwen engaged and continues to engage in trade or
commerce as defined by *Fl. Stat. §501.203(8)*, within the state of Florida.

57. At all times material hereto, Ocwen provided and continues to provide services as defined
by *Fl. Stat. §501.203(8)*, within the state of Florida.

58. Florida Statute §501.203(8) states, in pertinent part, as follows:

> **Civil penalty.**— ...[A]ny person, firm, corporation, association, or
> entity, or any agent or employee of the foregoing, who is willfully
> using, or has willfully used a method, act, or practice declared
> unlawful under s. 501.204, or who is willfully violating any of the

rules of the department adopted under this part, is liable for a civil
penalty of not more than $10,000 for each such violation. Willful
violations occur when the person knew or should have known that
his or her conduct was unfair or deceptive or prohibited by rule.

\* \* \*

59. Since March 1, 2000, Ocwen has engaged and continues to engage in unfair and/or

deceptive acts and practices with respect to the servicing of the subject Note and Mortgage,

that include the following:

    a. Utilizing incorrect data to service Ms. Herman's loan;

    b. Failing to verify the accuracy of terms of repayment for Ms. Herman's loan;

    c. Failing to verify the accuracy of terms of repayment for Ms. Herman's loan upon
her request;

    d. Wrongfully imposing PMI charges to Ms. Herman's loan;

    e. Wrongfully removing monies from Ms. Herman's escrow account for the
unauthorized payment of PMI;

    f. Wrongfully charging late fees for the shortage in Ms. Herman's monthly payment
caused by the wrongful removal of escrow funds for the unauthorized payment of
PMI;

    g. Wrongfully and unilaterally increasing the monthly mortgage loan payment;

    h. Wrongfully imposing property inspection and preservation fees not authorized by
the loan documents or by applicable law;

    i. Wrongfully imposing forced-placed insurance when property was already insured;
and,

    j. Failing to properly and/or timely credit Ms. Herman's mortgage loan payments to
her mortgage loan and escrow account.

60. Similarly, since March 1, 2000, Ocwen has made and continues to make material

misrepresentations and/or omissions to Ms. Herman with respect to the servicing of the

subject Note and Mortgage, that include the following:

a.  Misrepresenting her monthly mortgage payment amount;

b.  Mispresenting her escrow amounts due;

c.  Mispresenting her outstanding loan balance;

d.  Mispresenting her escrow account balance;

e.  Mispresenting insurance amounts due;

f.  Mispresenting her loan status as delinquent;

g.  Mispresenting her loan reinstatement amounts; and,

h.  Mispresenting her status of foreclosure.

61. Ocwen knew or should have known that the information they relied upon to service Ms. Herman's loan was inaccurate and knew there was no reasonable basis collect or foreclose on Ms. Herman's loan.

62. Ocwen knew or should have known that it had inaccurate information pertaining to Ms. Herman's monthly loan statements including payments and amounts due; PMI escrow disbursements; hazard insurance payments; and, delinquency statuses.

63. Ocwen knew or should have known that the successor servicer information was inaccurate, at best.

64. Ms. Herman has been substantially injured by Ocwen's conduct.

65. As of July 4, 2018, Ms. Herman has suffered actual damage in the amount of TWO HUNDRED FOURTEEN THOUSAND SEVEN HUNDRED FORTY-FOUR DOLLARS AND SIXTY-FOUR CENTS ($214,744.64), by virtue of Ocwen's unfair and/or deceptive practices, to wit:

a.  Misapplied Mortgage Payments:              $59,214.96;
b.  Erroneous PMI payments:                    $ 7,597.30;
c.  HUD Certificate Charges:                   $   125.00;
d.  Monthly Mortgage Payment Overcharges:      $19,107.00;
e.  Erroneous Interest Chargers:               $73,452.55;

| | | |
|---|---|---|
| f. | Erroneous application of late fees: | $  6,465.88; |
| g. | Past due fees and other charges: | $18,490.24; |
| h. | Fees and Other Charges: | $        19.50; |
| i. | Meet and Greet Charge: | $        35.00; |
| j. | Prior servicer escrow payments: | $10,774.26; |
| k. | Hazard Insurance payments: | $  2,614.15; |
| l. | Tax Disbursements: | $  4,527.94; |
| m. | Property Maintenance Fees: | $  3,466.58; |
| n. | Property Inspection Fees: | $  1,329.29; |
| o. | Property Preservation Fees: | $      310.00; |
| p. | Property Registration Charge: | $      200.00; |
| q. | Property Registration Processing Fee: | $        75.00; |
| r. | Doors Deadbolt/Knobs: | $      160.00; |
| s. | Lock Box: | $        70.00; |
| t. | Grass Cut: | $      180.00; |
| u. | Photos: | $        30.00; |
| v. | Winterization: | $      150.00; |
| w. | Capping Gas/Water/Sewer: | $        90.00; |
| x. | Dryer Vent Cover: | $        20.00; |
| y. | Certified Mail: | $          6.53; |
| z. | Property Appraisals: | $  2,071.25; |
| aa. | Escrow refunds: | $        82.71; and, |
| bb. | Ocwen Attorney's Fees and Costs: | $  4,079.50. |

66. Ocwen knew that the charging and/or collection of the above-listed fees to Ms. Herman, or from her escrow account was not authorized by the closing documents, yet, even after the July 19, 2017 *Final Judgment* its favor, Ocwen has continued its erroneous systematic monthly billing, by charging Ms. Herman for fees allegedly related to the property, note and mortgage.

## COUNT III

### Civil Theft/Fraud

67. Ms. Herman hereby realleges the preceding paragraph, numbered 1 through 23, as if fully set forth herein.

68. On July 9, 2004, Ms. Herman sent her written demand to Ocwen for the return of the monies removed from her escrow account for the unauthorized payment of PMI.

69. Ocwen failed to comply with Ms. Herman's demand.

70. *Florida Statute §772.11* states in pertinent part as follows:

> 772.11    Civil remedy for theft or exploitation.—
> (1)    Any person who proves by clear and convincing evidence that
> he or she has been injured in any fashion by reason of any violation
> of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for
> threefold the actual damages sustained and, in any such action, is
> entitled to minimum damages in the amount of $200, and reasonable
> attorney's fees and court costs in the trial and appellate courts.
> Before filing an action for damages under this section, the person
> claiming injury must make a written demand for $200 or the treble
> damage amount of the person liable for damages under this section.
> If the person to whom a written demand is made complies with such
> demand within 30 days after receipt of the demand, that person shall
> be given a written release from further civil liability for the specific
> act of theft or exploitation by the person making the written demand.

71. On February 25, 2000, Ms. Herman executed the contract for the purchase of the real

property that is the subject of Ocwen's foreclosure action.

72. On March 1, 2000, Ocwen wrongfully removed monies from Ms. Herman's escrow

account for the payment of PMI.

73. Ms. Herman informed Ocwen of the erroneous removal of monies from her escrow

account for the payment of PMI and provided it with copies of the settlement documents

showing no PMI requirement.

74. Ocwen informed Ms. Herman that they were authorized to remove the monies, as Ms.

Herman's loan requires the payment of PMI.

75. For the next seventeen (17) months, while continuing to make her monthly mortgage

payment, Ms. Herman repeatedly demanded Ocwen cease removing monies from her

escrow account for the payment of PMI, which Ocwen repeatedly refused.

76. On September 28, 2001, Ocwen sent correspondence to Ms. Herman informing her that

her previously executed settlement documents did not disclose PMI and requesting that

she execute new settlement documents. (Please see a copy of the September 28, 2001 correspondence, which is attached hereto and incorporated herein as "Exhibit B").

77. The new settlement documents that were sent to Ms. Herman for execution, were fraudulently amended in that:

  a.     The *Federal Truth-In-Lending Disclosure Statement:*

      i.     Document was back-dated to February 25, 2000;
      ii.    A PMI charge of ONE THOUSAND EIGHT HUNDRED FORTY-SEVEN DOLLARS AND THIRTY-TWO CENTS ($1,847.32) was inserted into the "Itemization of Amount Financed" section;
      iii.   A PMI monthly charge was added to Ms. Herman's monthly mortgage payment;
      iv.    Ms. Herman's annual percentage rate was increased;
      v.     Ms. Herman's finance charge was increased;
      vi.    Ms. Herman's amount financed was increased;
      vii.   Ms. Herman's total of payments was increased; and,
      viii.  Ms. Herman's payment schedule was completely modified;

  b.     *Mortgagor's Information Statement/Payment Breakdown:*

      i.     Document was back-dated to April 1, 2000;
      ii.    A PMI monthly payment was added to Ms. Herman's escrow account proposed payment schedule;
      iii.   Ms. Herman's monthly mortgage payment was increased; and,
      iv.    Ms. Herman's first payment due date, as well as the temporary coupons for loan payments, were back-dated to April 1, 2000, and made payable to the original lender.

78. For the next thirty-three (33) months, while continuing to make her monthly mortgage payment, Ms. Herman repeatedly demanded Ocwen cease removing monies from her escrow account for the payment of PMI, which Ocwen repeatedly refused.

79. On July 21, 2004, Ocwen sent correspondence to Ms. Herman stating that the PMI issue was corrected, and a refund was credited to her escrow account.

80. However, Ocwen never ceased removing monies from Ms. Herman's escrow account for the unauthorized payment of PMI, nor did it credit Ms. Herman's escrow account with

any monies it had wrongfully removed.

81. For the next thirty-six (36) months, while continuing to make her monthly mortgage payment, Ms. Herman repeatedly demanded Ocwen cease removing monies from her escrow account for the payment of PMI, which Ocwen repeatedly refused.

82. On August 20, 2007, Ocwen sued Ms. Herman for mortgage foreclosure.

83. On December 15, 2008, Ms. Herman filed her *Answer, Affirmative Defenses and Amended Counter Claim to Ocwen's Complaint*.

84. Ocwen failed to timely file its responsive pleading to Ms. Herman's *Amended Counter Claim*.

85. When Ms. Herman moved for entry of a default final judgment against Ocwen on her counter claim, Ocwen filed for bankruptcy, and dismissed Ms. Herman from its foreclosure action.

86. On July 19, 2017, Ocwen caused this Honorable Court to enter *Final Judgment* of foreclosure against Ms. Herman.

87. Ocwen intentionally obtained the *Final Judgment* ex parte, and neither provided Ms. Herman with any notice of its entry, of other post judgment matters, to wit: *Final Judgment,* order for sale, proof of publication, etc.

88. On several occasions, Ms. Herman has requested Ocwen to amend the *Final Judgment*, to which Ocwen has failed and refused to do.

89. On June 28, 2018, this Honorable Court ordered Ocwen to amend the *Final Judgment* to delete any reference to Ms. Herman, to which Ocwen has failed to do.

90. Ocwen has now filed its re-notice of sale date, and, once again, has amended its style to wrongfully include Ms. Herman.

91. For eighteen (18) years, Ocwen has knowingly, fraudulently, with the intent to deceive, attempted to deprive Ms. Herman of her property.

92. As of March 1, 2000, Ocwen, knew that it had breached the settlement documents for the subject property by fraudulently removing monies from Ms. Herman's account.

93. Ocwen knew its actions were not authorized by the settlement documents, and even acknowledged same, but attempting to induce Ms. Herman into executed its amended settlement documents in 2001; and further by admitting its unauthorized collection of PMI from Ms. Herman's account in its 2004 correspondence.

94. Ocwen has acquired title to Ms. Herman's property by fraud.

95. Ocwen now seeks to sell the subject property that it acquired by fraud.

96. Ocwen has set the sale for July 17, 2018, knowing that there still remains the instant active pending counter claim; a recorded lis pendens against the subject property in relation to the active counter claim; and, the Note and Mortgage, that are the subject of the instant counter claim have neither been cancelled or foreclosed upon.

97. Ocwen's intentional, wrongful and deceptive actions have caused actual damage to Ms. Herman in the amount of TWO HUNDRED FOURTEEN THOUSAND SEVEN HUNDRED FORTY-FOUR DOLLARS AND SIXTY-FOUR CENTS ($214,744.64).

## REQUEST FOR ATTORNEY'S FEES AND COSTS

98. Ms. Herman hereby notifies Ocwen of her intent to seek an award of attorney's fees and costs incurred by her since the original filing date of the instant action, to wit: August 20, 2007.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Ms. Herman requests that this Honorable Court enter a Final Judgment:

A.    Finding that OCWEN materially breached the terms and conditions of the subject Note and Mortgage prior to any alleged default by Ms. Herman;

B.    Finding that OCWEN has continually and systematically since June 1, 2000, materially breached the terms and conditions of the subject Note and Mortgage

C.    Finding that OCWEN has been unjustly enriched by the mishandling, misapplication and misappropriation of Ms. Herman's mortgage loan payments;

D.    Finding OCWEN in violation of Florida's Unfair and Deceptive Acts and Practices;

E.    Awarding Ms. Herman actual damages as set forth in Counts I and III of Ms. Herman's *Second Amended Counter Claim*;

F.    Awarding Ms. Herman $10,000.00 for each of Ocwen's violations of the *Florida Deceptive and Unfair Practices, F.S.§501.204*, specified in Count II of Ms. Herman's *Second Amended Counter Claim*;

G.    Awarding Ms. Herman threefold the actual damages she sustained by Ocwen's fraudulent and deceptive actions pursuant to Florida Statute §772.11as provided in *F.S.§501.204,* specified in Count III of Ms. Herman's *Second Amended Counter Claim*;

H.    Awarding Ms. Herman attorney's fees and costs as per the terms and conditions of the subject Note and Mortgage; and, *F.S.§§* 57.105 and 501.2105;

I.    Ordering Ocwen to correct Ms. Herman's loan payment history to reflect no late payments for the period of February 25, 2000 through present date;

J.    Ordering Ocwen to provide any and all entities, that it has previously reported any derogatory information relating to Ms. Herman's payment of the loan, a copy of the updated payment history reflecting no late payments for the period of February 25, 2000 through present date;

K.    Cancelling the Note and Mortgage that are the subject matter of the instant action;

L.    Awarding Ms. Herman, the real property that is the subject of the Note and Mortgage in this action;

M.    Cancelling the mortgage lien against the subject property; and,

N.    Any and all such other relief that this Honorable Court deems just and proper.

**LAW OFFICE OF PATRICIA K. HERMAN, P.A.**
/s/ Patricia K. Herman
**PATRICIA K. HERMAN, ESQUIRE**
Florida Bar No.: 0113018
Law Office of Patricia K. Herman, P.A.
1631 Rock Springs Road, #305
Apopka, Florida 32712-2229
E-mail: lopkhpa@gmail.com
Service E-mail: service2lopkhpa@gmail.com
Phone: 407/731.5823
Attorney for Counter-Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Counter Plaintiff's Second* Amended *Counter Claim* will be furnished Florida E-Portal Notification System on this 4th day of July 2018, to all parties of record in this action.

/s/ Patricia K. Herman
**PATRICIA K. HERMAN, ESQUIRE**
Florida Bar No.: 0113018
Law Office of Patricia K. Herman, P.A.
1631 Rock Springs Road, #305
Apopka, Florida 32712-2229
E-mail: lopkhpa@gmail.com
Service E-mail: service2lopkhpa@gmail.com
Phone: 407/731.5823
Attorney for Counter-Plaintiff



Page 1/2

## CERTIFICATION

I, JOHN BISSET, do hereby certify under penalties of perjury that I am the custodian of records for Fidelity National Title and that the attached documents are true and accurate copies of our business records, maintained, and/or prepared by our company.

It is further certified that the records were made at or near the time of the occurrence of the matters set forth by a person with knowledge of those matters. The records were made and kept in the course of regularly conducted business activity and it is a regular practice of our company to make and keep such records.

_____
Signature

6-22-12
_____
Date

# NOTARY PUBLIC ACKNOWLEDGEMENT ADDENDUM

*Page 2/2*

THIS NOTARY PUBLIC ACKNOWLEDGEMENT ADDENDUM is made and is incorporated into and shall be deemed to amend, supplement and be an integrated part of the RECORD CUSTODIAN CERTIFICATION dated the same date as this acknowledgement

TO WIT:

State of Florida
County of Orange

I am a notary public of the state of Florida , and my commission expires:
THE FOREGOING INSTRUMENT was acknowledged before me on 22nd day of June 2012 by
_____John D. Bisset_____ who is personally known to me or who has produced FL Drivers License as identification and who Did/Did Not take an oath.

Signature: _____
Print Name
Notary Public

Notary Seal

SANDRA NIEVES
Notary Public · State of Florida
My Comm. Expires Sep 13, 2013
Commission # DD 924818

Notary Public Acknowledgment Addendum

**FedEx** USA Airbill    8183 8951 9226

From
Date 8-25-00    Sender's FedEx Account Number

Sender's Name  CANDY    Phone (407) 644-8200

Company  FIDELITY NAT'L TITLE INSURANCE

Address  320 W SABAL PALM PL # S100

City  LONGWOOD    State FL    ZIP 32779

Your Internal Billing Reference    OPTIONAL

To
Recipient's Name  Post Closing    Phone ( )

Company  Taylor, Bean, + Whitaker Mortgage Corp.

Address  101 NE 2nd Street

City  Ocala    State FL    ZIP 34470-6642

NEW Peel and Stick FedEx USA Airbill

Questions? Call 1·800·Go·FedEx (800-463-3339)
Visit our Web site at www.FedEx.com

4a Express Package Service
☐ FedEx Priority Overnight    ☐ FedEx Standard Overnight    ☐ FedEx First Overnight
☐ FedEx 2Day    ☐ FedEx Express Saver

4b Express Freight Service
☐ FedEx 1Day Freight    ☐ FedEx 2Day Freight    ☐ FedEx 3Day Freight

5 Packaging
☐ FedEx Letter    ☒ FedEx Pak    ☐ Other Pkg.

6 Special Handling
☐ Saturday Delivery    ☐ Sunday Delivery    ☐ HOLD Weekday    ☐ HOLD Saturday

Does this shipment contain dangerous goods?
☐ No    ☐ Yes    ☐ Yes    ☐ Cargo Aircraft Only

7 Payment  Bill to:
☐ Sender    ☐ Recipient    ☐ Third Party    ☐ Credit Card    ☐ Cash/Check

Total Packages    Total Weight    Total Declared Value $

8 Release Signature

359

0127455253

0127455253

**Taylor, Bean
& Whitaker**
*Mortgage Corporation*
101 NE 2nd Street
Ocala, Florida 34470-6642
Bus. (352) 351-1109
Fax (352) 867-1190

## DOCUMENT TRANSMITTAL LIST

All closing documents must be in the following order.  Please send **TWO** complete copy packages along with original and a certified copy of the Mortgage/Deed of Trust and any documents sent for recording.

- _____ Requirements of Closing Conditions #10-16
- ✓ Termite/Compliance Inspections
- ✓ Certified copy of the Note
- _____ Power of Attorney
- ✓ Certified copy of the Mortgage/Deed of Trust
- ✓ Original Title Commitment
- _____ Three Original Surveys
- _____ Original Hazard and Flood Insurance Policies with evidence of payment
- ✓ Settlement Statement
- ✓ Same Name Affidavits
- ✓ Final Truth-In-Lending
- _____ Recission Documents
- ✓ Mortgage Program Disclosure
- ✓ IRS 4506
- ✓ Initial Escrow Account
- ✓ Mortgage Info Sheet/Payment Breakdown
- ✓ Notice of Assignment
- ✓ Disclosure Notice
- _____ W-9 Forms
- ✓ Borrower Notification of Interest Rate
- ✓ Tax Certification
- ✓ Warranty Deed (if refinance)
- ✓ Compliance Agreement
- ✓ First Lien Letter
- ✓ Escrow Disbursement Agreement
- ✓ Tax Authorization
- ✓ Anti-Coercion
- _____ Quality Control Release
- ✓ Affidavit of Occupancy
- _____ Recertification of Employment & Income
- _____ Borrower Acknowledgement (if PMI)
- _____ Miscellaneous

_____

## CLOSING INSTRUCTIONS CONTINUED

We have deducted our TBW/TBW, Ltd fees, interest, escrows, mortgage insurance, VA/FHA funding fees, underwriting, doc prep, express mail, assignment fees when applicable from the loan proceeds, therefore, no checks will be issued for these items. There should not be any checks cut back to TBW or sent to TBW for any items shown on the Settlement Statement to third parties.  If there are any questions, please call the Ocala, Florida office.

All closing papers need to be executed correctly.  All notary signatures, stamps and certifications must meet the state guidelines in which the mortgage is being recorded.  The date of the notary must be that of the date of the mortgage. Make sure that the mortgage and attached riders are filled in completely and are in recordable form.  DO NOT MAKE ANY CHANGES TO OUR CLOSING PAPERS WITHOUT WRITTEN APPROVAL FROM TAYLOR, BEAN & WHITAKER MORTGAGE CORP. (OCALA, FL OFFICE).

All conditions, survey, termite, insurance with paid receipts, compliance inspections and settlement statements must be faxed to our office for approval prior to closing.

# FUNDING SHEET
### TABLE FUNDED

Funding Bank

| 66234 | | 02/25/00 | 02/25/00 |
|---|---|---|---|
| Loan Number | Loan Type | Date of Closing | Date of Disbursement |

PATRICIA K. HERMAN
Borrower's Name

Expected Funding Amount:    $83,110.50

| Loan Amount | Int Rate | OK D/S | Overage Premium | Other Credit (205) |
|---|---|---|---|---|
| $83,950.00 | 8.250 | $0.00 | $607.80 | $0.00 |

*LESS*

| | Interest | Escrows | Total Disbursed |
|---|---|---|---|
| | $94.88 | $445.50 | $84,017.42 |

## TBW MTG CORP FEES:

| | | F-FMS | FEES: |
|---|---|---|---|
| Origination | _____ | BUY PRICE % 100.724 | EXP. DATE: 03/08/00 |
| Discount | _____ | Overage Premium $607.80 | |
| Underwriting Fee | $0.00 | Origination $0.00 | |
| Flood Cert. | $0.00 | Discount $0.00 | |
| GA per loan fee | $0.00 | Total $607.80 | |
| Doc Prep | $0.00 | | |
| Express Mail | $0.00 | | |
| Other Charge (811) | $0.00 | Check # _____ TBW Mtg. | $395.00 |
| Other Charge (812) | $395.00 | Check # _____ TBW Ltd. | $0.00 |
| Credit Report | $0.00 | Check # _____ X FHA ___ VA | $0.00 |
| Total | $395.00 | Check # _____ | _____ |
| | | Check # _____ Branch Fee | $73.00 |
| | | assignment | $0.00 |
| | | ___ Wire X Check# 0 _____ Net Check | $83,549.42 |

Payee:

FIDELITY NATIONAL TITLE
(407) 644-8200

FIDELITY NATIONAL TITLE
231 WEST PARK AVE
WINTER PARK, FL 32779
(407) 644-8200

TBW Closer:    Acaffe

MW: FUNDING SHEET

### *TAYLOR, BEAN & WHITAKER MORTGAGE CORP.*
813-930-8814 FAX 813-932-7933
CLOSER: ACAFFE
### CONDITIONS OF CLOSING
### FHA

| | | | |
|---|---|---|---|
| TO: FIDELITY NATIONAL TITLE | | Facsimile #: (407) 644-8655. | |
| DATE: 02/25/00 | DISBURSEMENT: 02/25/00 | LOAN AMOUNT: | $83,950.00 |
| MORTGAGE #: | LOAN TYPE: FHA 30 | APPRAISED VALUE: | $86,000.00 |
| FHA CASE# 094-4113762734 | | PURCHASE PRICE: | $85,900.00 |
| PROPERTY: 1204 NORTH FAIRWAY DRIVE, APOPKA, FL 32712 | | INT. RATE: 8.2500 % | |
| BORROWER(S): PATRICIA K. HERMAN | | TERM: 360 MONTHS | |
| | | P & I PMT: $630.69 | |

Disbursement of loan funds may be accomplished when the borrowers have completed our standard documentation and have met the special conditions that follow:

1. **WE MUST HAVE AN UPDATED INSURANCE POLICY WITH ONE YEAR PAID RECEIPT. DO NOT CLOSE THIS LOAN WITHOUT THESE DOCUMENTS!!!**
2. 1999 taxes must be paid in full.
3. Clear Title to FIDELITY MORTGAGE SERVICES , including the ALTA 8.1, assignment endorsement (you will need to collect appropriate charges on HUD),form 9(FL only) and any applicable endorsements from:
     FIDELITY NATIONAL TITLE and
4. Survey (3 Original, Sealed) (Not required if Short Form Title Policy w/NO SURVEY EXCEPTION) —Condo
5. No Secondary Financing
6. Satisfactory termite inspection. Not required on refinances, with the exception of Government Loans.
7. Please FAX HUD-1 for review prior to closing to (352) 867-1190
8. Send all Original Closing documents and True & Certified Copy of documents being recorded to: Taylor, Bean & Whitaker, Central Document Facility, 101 NE Second St., Ocala, FL 34470, via OVERNIGHT courier the day of settlement!!
9. "Final Documents" & "Original" recorded instruments must be returned to T.B.W. within 30 days of closing or penalties may be assessed.
10. SIGN FINAL APPLICATION
11. VERIFY MAILING ADDRESS AS PER 1ST PAYMENT LETTER
12. ENSURE TAX CERTIFIACTION IS FILLED OUT COMPLETELY
13. DO NOT ALTER ANY DOCS W/O FIRST CONTACTING THIS OFFICE
14. SIGN CONDO RIDER
15.
16.
17. If this loan is closed in any name other than Taylor, Bean & Whitaker Mortgage Corp and we do NOT have Power of Attorney, we require an intervening assignment in recordable form and that the note be endorsed as follows:
     Without Recourse, Pay to the order of
     TAYLOR, BEAN & WHITAKER MORTGAGE CORP.
     by: (signature) - Name and Title MUST be typed in.
     (officers name) (officers title)

**DO NOT DISBURSE any of our funds unless you have the assignment and endorsement.**
Please send TWO complete copy packages along with the Closing Documents
SPECIAL NOTES:
MIN FHA STAT INVESTMENT $2517
6% MAX SELLER CONTRIBUTIONS
CASHIERS CHECK FOR 2100 FROM DONOR PAYABLE TO TITLE CO
NOTICE TO HOMEBYER SIGNED 5 DAYS PRIOR TO CLOSING
***IF FOR ANY REASON THIS LOAN DOES NOT CLOSE AS SCHEDULED, IMMEDIATELY
NOTIFY THE TBW CLOSING DEPT @ 813-930-8814**

**\*\*\*Mortgage to be WITNESSED AND NOTARIZED if so indicated on last page.**
Attached is a partially completed HUD-1 which reflects the Fees, Charges, Disbursements, etc., relating to this loan. Please adjust Title Insurance & Recording Fees to actual.

mw; CONDITION OF CLOSING

## FHA MIP PAYMENT TRANSMITTAL

Mortgagee:    Taylor, Bean & Whitaker Mortgage Corp.
Mortgagee ID:    7499100008


Borrower's Name:    PATRICIA K. HERMAN

Loan Number:    66234

Borrower's Address:    1204 NORTH FAIRWAY DRIVE
APOPKA, FL 32712


FHA Case Number:    094-4113762734

Term of Mortgage:    360

Portion of UFMIP Financed:    100%

Closing Date:    02/25/00



UFMIP Amount:    $0.00

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. TYPE OF LOAN | | |
|---|---|---|---|
| Fidelity National Title Insurance Company of New York | 1. [X] FHA    2. [ ] FmHA    3. [ ] Conv. Unins | | |
| | 4. [ ] VA    5. [ ] Conv. Ins | | |
| Date of Printing: Thursday, February 24, 2000, 15:34 | 6. ESCROW NUMBER:    7.    LOAN NUMBER: | | |
| | 00-002-400961         66234 | | |
| | 8. MORTGAGE INSURANCE NUMBER: 0944113762734 | | |

NOTE:  THIS FORM IS FURNISHED TO GIVE YOU A STATEMENT OF THE ACTUAL SETTLEMENT COSTS.  AMOUNTS PAID TO AND BY THE SETTLEMENT AGENT ARE SHOWN.  ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE OF THE CLOSING; THEY ARE SHOWN HERE FOR INFORMATIONAL PURPOSES AND ARE NOT INCLUDED IN THE TOTALS.

| D. NAME OF BORROWER: | E. NAME OF SELLER: | F. NAME OF LENDER: |
|---|---|---|
| Patricia K. Hermen | Todd R. Fagan | Fidelity Mortgage Services |
| 1204 Fairway Dr N. | 6800 Estate Smithbay #14 | |
| Apopka, FL 32712 | St Thomas, VI 00802 | |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE |
|---|---|---|
| 1204 Fairway Dr N. | Fidelity National Title Insurance Company of New York | 02/25/2000 |
| Apopka, FL 32712 | PLACE OF SETTLEMENT: | |
| | 320 W. Sabal Palm Place, Ste 100 | |
| | Longwood, FL 32779 | |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Total Consideration | 85,900.00 | 401. Total Consideration | 85,900.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 977.18 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments: Items Paid by Seller in Advance | | Adjustments: Items Paid by Seller in Advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. HOA fr 02/25/00 to 01/01/01 | 130.86 | 409. HOA fr 02/25/00 to 01/01/01 | 130.86 |
| 110. HOA fr 02/25/00 to 03/01/00 | 21.31 | 410. HOA fr 02/25/00 to 03/01/00 | 21.31 |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 117. | | 417. | |
| 118. | | 418. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 87,029.35 | 420. GROSS AMOUNT DUE TO SELLER | 86,052.17 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess deposit (see inst.) | |
| 202. Principal Amount of New Loan(s) | 83,950.00 | 502. Settlement charges to seller (line 1400) | 11,483.56 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Earnest Money Deposit | 500.00 | 504. Payoff To Golden National Mortgage Banking | 74,067.57 |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Adjustments: Items Unpaid by Seller | | Adjustments: Items Unpaid by Seller | |
| 210. City/Town taxes | | 510. City/Town Taxes | |
| 211. Taxes fr 01/01/00 to 02/25/00 | 134.26 | 511. Taxes fr 01/01/00 to 02/25/00 | 134.26 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 84,584.26 | 520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER | 85,685.39 |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER | | 600. CASH AT SETTLEMENT FROM/TO SELLER | |
| 301. Gross amount due from borrower (line 120) | 87,029.35 | 601. Gross amount due to seller (line 420) | 86,052.17 |
| 302. Less amounts paid by/for borrower (line 220) | 84,584.26 | 602. Less reduction in amount due seller (ln 520) | 85,685.39 |
| 303. CASH (XX FROM) ( TO) BORROWER | 2,445.09 | 603. CASH (XX FROM) ( TO) SELLER | 366.78 |

| L. SETTLEMENT STATEMENT   Date of Printing: Thursday, February 24, 2000, 15:34 | | Escrow: | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| **700. TOTAL SALES/BROKER'S COMMISSION** | | | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. 3,006.50 - Realty Executives | | | | |
| 702. 3,006.50 - Watson Realty | | | | |
| 703. Commission paid at settlement | | | | 6,013.00 |
| 704. | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee - Fidelity Mortgage Services | | | | 839.50 |
| 802. Loan Discount - Fidelity Mortgage Services | | | | 839.50 |
| 803. Appraisal Fee - Fidelity Mortgage Services | | | 300.00 | |
| 804. Credit Report   POC $50/B   to Fidelity Mtg. | | | | |
| 805. Lender's Inspection Fee - Fidelity Mortgage Services | | | | |
| 806. Mortgage Insurance Application Fee - Fidelity Mortgage Services | | | | |
| 807. Admin Fee   to TBW | | | | 395.00 |
| 808. Par Plus   POC -$607.80 from TBW to Fidelity Mtg. | | | | |
| 809. Tax service Fee   to TBW | | | | 73.00 |
| 810. Processing Fee   to Fidelity Mtg. | | | | 100.00 |
| 811. | | | | |
| 812. | | | | |
| 813. | | | | |
| 814. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Int at $18.98 per day  fr 02/25/00 to 03/01/00 | | | 94.68 | |
| 902. Mortgage Insurance Premium to | | | | |
| 903. Hazard Insurance Premium to | | | | |
| 904. Flood Insurance Premium to | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. Hazard Insurance | months @ $ | per month | | |
| 1002. Mortgage Insurance | months @ $ | per month | | |
| 1003. City property taxes | months @ $ | per month | | |
| 1004. County Impounds for 6 | months @ $74.25 | per month | 445.50 | |
| 1005. Annual assessments | months @ $ | per month | | |
| 1006. | | | | |
| 1007. | | | | |
| 1008. | | | | |
| **1100. TITLE ESCROW AND TITLE CHARGES** | | | | |
| 1101. Settlement or closing fee to - Fidelity National Title Insurance Company of New York | | | | 125.00 |
| 1102. Abstract or Title Search - Fidelity National Title Insurance Company of New York | | | | 75.00 |
| 1103. Title Examination - Fidelity National Title Insurance Company of New York | | | | 50.00 |
| 1104. Title Insurance Binder | | | | |
| 1105. Document preparation | | | | |
| 1106. Notary fees | | | | |
| 1107. Attorney Fees | | | | |
| 1108. Title Insurance          Fidelity National Title Insurance Company of New York | | | 6.80 | 687.20 |
| (Alta Endorsements and/or Simultaneous Loan Policy Minimum Risk Rate Premium - $25.00) | | | | |
| 1109. Lender's coverage - ALTA Loan Policy (10-17-92) w/Florida Modific $83,950.00 @ $200.00 | | | | |
| 1110. Owner's coverage ALTA Owner's Policy (10-17-92) w/Florida Modi $65,900.00 @ $494.00 | | | | |
| 1111. Endorsement Fee(s) See Attachment To Hud | | | | 128.40 |
| 1112. Express Mail - Fidelity Nationa Title Insurance Company of New York | | | | 105.00 |
| 1113. | | | | |
| 1114. | | | | |
| 1115. | | | | |
| 1116. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording Fees:  Deed $ 18.00   Mortgage $46.50   Releases $10.50 | | | | 72.00 |
| 1202. City/County tax/stamps:   Deed $ 601.30   Mortgage $294.00 | | | | 895.30 |
| 1203. State tax/stamps:      Deed $      Mortgage $ | | | | |
| 1204. Intangible Tax - Fidelity National Title Insurance Company of New York | | | | 167.90 |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | | | | |
| 1302. Termite Report/Work - Certified Building Insp. | | | | 75.00 |
| 1303. Dues for 2000 - Errol Estate Property Owner's Assn | | | | 154.00 |
| 1304. Dues for Balance due thru 2/29/00 - Greenbrook Villas at Errol Estates | | | | 596.00 |
| 1305. Assessments March, 2000  - Greenbrook Villas at Errol Estates | | | 130.00 | |
| 1306. Misc. - Charles Smith | | | | 75.00 |
| 1307. Power Bill - Florida Power Corp. | | | | 16.76 |
| 1308. | | | | |
| 1309. | | | | |
| 1310. | | | | |
| 1311. | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | | | 977.18 | 11,483.56 |

**L. Settlement Charges**

| | | | Paid From Borrowers' Funds at Settlement | Paid From Sellers' Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $ | @ | % | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission paid at Settlement | | | | |
| 704. | | | | |
| **800. Items Payable in Connection With Loan** | | | | |
| 801. Loan Origination Fee | 0.0000 | % | | |
| 802. Loan Discount | | % | | |
| 803. Appraisal Fee | to | | | |
| 804. Credit Report | to | | | |
| 805. Lender's Inspection Fee | | | | |
| 806. Mortgage Insurance Application Fee to | | | | |
| 807. Assumption Fee | | | | |
| 808. | | | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| 812. ADMIN FEE | to TBW | | | 395.00 |
| 813. PAR PLUS | to FIDELITY MTG | 607.80 | p.o.c. | |
| 814. TAX SERVICE FEE | to TBW | | | 73.00 |
| 815. | | | | |
| 816. | | | | |
| 817. | | | | |
| **900. Items Required By Lender To Be Paid in Advance** | | | | |
| 901. Interest from 02/25/00 to 03/01/00 @$ 18.9750 /day | | | 94.88 | |
| 902. Mortgage Insurance Premium for XXXXXXXX Upfront MIP | | | | |
| 903. Hazard Insurance Premium for years to | | | | |
| 904. | years to | | | |
| 905. | | | | |
| **1000. Reserves Deposited With Lender** | | | | |
| 1001. Hazard Insurance | months @$ | per month | | |
| 1002. Mortgage Insurance | months @$ | per month | | |
| 1003. City property taxes | months @$ | per month | | |
| 1004. County property taxes | 6 months @$ 74.25 | per month | 445.50 | |
| 1005. Annual assessments | months @$ | per month | | |
| 1006. | months @$ | per month | | |
| 1007. | months @$ | per month | | |
| 1008. | months @$ | per month | | |
| 1009. | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee | to | | | |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | | | |
| 1104. Title insurance binder | to | | | |
| 1105. Document preparation | to | | | |
| 1106. Notary fees | to | | | |
| 1107. Attorney's fees | to | | | |
| (includes above items numbers: | | | | |
| 1108. Title Insurance | to | | | |
| (includes above items numbers: | | | | |
| 1109. Lender's coverage | $ 83,950.00 | | | |
| 1110. Owner's coverage | $ 85,900.00 | | | |
| 1111. ORIGINATION FEE | FIDELITY MTG | | 839.50 | |
| 1112. DISCOUNT FEE | | | 839.50 | |
| 1113. | | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording fees: Deed $ | ; Mortgage$ | ; Releases $ | | |
| 1202. City/county tax/stamps: Deed $ | ; Mortgage $ | | | |
| 1203. State tax/stamps: Deed $ | ; Mortgage $ | | | |
| 1204. PROCESSING FEE | FIDELITY MTG | | | 100.00 |
| 1205. | | | | |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Survey | to | | | |
| 1302. Pest Inspection | to | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | | |

PATRICK W. MURPHY

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

APPLICAT  : 66234                    02/25/00
LOAN #:
FIDELITY MORTGAGE SERVICES
101 WYMORE ROAD #440
ALTAMONTE, FL 32714

──────Borrower─────
PATRICIA K. HERMAN

3072 FOX HILL CIRCLE
APOPKA, FL 32703

─────Property─────
1204 NORTH FAIRWAY DRIVE
APOPKA, FL 32712

──────Itemization of Amount Financed──────

| $ | 83,855.12 | Total amount financed | $ | 83,855.12 |
| $ | 94.88 | Interim Interest | | |
| $ | 94.88 | Total prepaid finance charges | $ | .94.88 |
| $ | 445.50 | County tax reserves | | |
| $ | 839.50 | ORIGINATION FEE | | |
| $ | 839.50 | DISCOUNT FEE | | |
| $ | 2,124.50 | Total amount paid to others | | |

THE FIRST PAYMENT FOR YOUR
FHA 30yr Fixed Rate

FOR:    $  83,950.00
AT:     8.250000%
WHICH WILL PAY OFF IN  360 PAYMENTS

IS BROKEN DOWN AS FOLLOWS:

| PRINCIPAL &/OR INTEREST | $ | 630.69 |
| Mortgage Insurance | | 0.00 |
| Taxes | | 74.25 |
| Insurance | | 0.00 |
| Other | | 0.00 |
| TOTAL PAYMENT | $ | 704.94 |

LOAN AMOUNT    $   83,950.00

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.2498% | $  143,190.78 | $  83,855.12 | $  227,045.90 |

──────Your Payment Schedule Will Be:──────

359 payments monthly of $     630.69  beginning April 1, 2000
1 payment of $        628.19 due on March 1, 2030

Security Interest:    You are giving a security interest in the property located at
                     1204 NORTH FAIRWAY DRIVE, APOPKA, FL 32712.
Late Charge:         If payment is 15 days late, you will be charged  4.0000% of the payment.
Prepayment:          If you pay off early, you will not have to pay a penalty.
                     If you pay off early, you will not be entitled to a refund of part of the finance charge.
Assumption:          Someone buying your home cannot assume the remainder of the mortgage
                     on the original terms.
This Obligation:     will NOT have a demand feature.
                     Insurance: You may obtain property insurance from anyone you want that is acceptable to Lender.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date,
prepayment refunds and penalties.

e means an estimate

I/We hereby acknowledge receiving a completed copy of this disclosure.            Date  2 /25 / 00

PATRICIA K. HERMAN

ICS/MWRGZ1//6/02/LASER

SERVICER:

## INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

| PROPERTY LOCATION: | FILE NUMBER: |
|---|---|
| 1204 NORTH FAIRWAY DRIVE | 66234 |
| APOPKA, FL  32712 | LOAN NUMBER: |
| | M.I. CASE NUMBER: 094-4113762734 |

THIS IS AN ESTIMATE OF ACTIVITY IN YOUR ESCROW ACCOUNT DURING THE COMING YEAR    BASED ON PAYMENTS ANTICIPATED TO BE MADE FROM YOUR ACCOUNT.

| Month | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| Starting Balance: | | | | $   445.50 |
| Apr 00 $ | 74.25 $ | 0.00 | | 519.75 |
| May | 74.25 | 0.00 | | 594.00 |
| Jun | 74.25 | 0.00 | | 668.25 |
| Jul | 74.25 | 0.00 | | 742.50 |
| Aug | 74.25 | 0.00 | | 816.75 |
| Sep | 74.25 | 0.00 | | 891.00 |
| Oct | 74.25 | 0.00 | | 965.25 |
| Nov | 74.25 | 891.00 | County Taxes | 148.50 |
| Dec | 74.25 | 0.00 | | 222.75 |
| Jan 01 | 74.25 | 0.00 | | 297.00 |
| Feb | 74.25 | 0.00 | | 371.25 |
| Mar | 74.25 | 0.00 | | 445.50 |

(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.)

Cushion selected by servicer:  $   148.50

YOUR    MONTHLY    MORTGAGE PAYMENT FOR THE COMING YEAR WILL BE $   704.94 OF WHICH $   630.69   WILL BE FOR PRINCIPAL AND INTEREST AND $   74.25   WILL GO INTO YOUR ESCROW ACCOUNT.

_____    2/25/00
PATRICIA K. HERMAN    DATE    _____    DATE

_____    _____
DATE    DATE

ISC/INITIAL ESCROW ACCT DISCLOSURE STMT//0395(0295)-L

66234

## MORTGAGOR'S INFORMATION STATEMENT/ PAYMENT BREAKDOWN

We are pleased to welcome you as another one of our nationwide customers. We hope you will be pleased with our servicing of your account. The following is provided for your information:

### PROPOSED PAYMENT

| | | | | |
|---|---|---|---|---|
| Principal and Interest | | | $ | 630.69 |
| Monthly Escrows: | | | | |
| Hazard Insurance | $ | 0.00 | | |
| Taxes | $ | 74.25 | | |
| Private Mtg. Ins./FHA Mtg. Ins. | $ | 0.00 | | |
| Flood Insurance | $ | 0.00 | | |
| Other: | $ | 0.00 | | |
| Total Monthly Escrows | | | $ | 74.25 |
| Total Monthly Payment | | | $ | 704.94 |
| Less Buydown | | | $ | |
| MORTGAGOR'S TOTAL MONTHLY PAYMENT | | | $ | 704.94 |

Your first payment is due:  April 1, 2000                    Loan No.: _____

All payment figures are subject to final review in our Home Office.

Additional payment coupons will be mailed to you under seperate cover and reflect the amount and due date of each payment.

All of your mortgage payments are due on the first of each month, and we sincerely ask that your payments arrive in our office by the first day of each month.  If for any reason, you are ever without payment coupons, please continue making your mortgage payments on the first of each month by writing your loan number on your check or money order and mailing to:     Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street, Ocala, FL 34470-6642

Please provide your mailing address below. All correspondence on your loan will be directed to this address.

_____                    Phone No. _____

PATRICIA K. HERMAN
Social Security Number _____                    Social Security Number _____

Date: 25/feb/00

---

### --TEMPORARY COUPONS FOR LOAN PAYMENTS--

PAYMENT DATE: April 1, 2000                    LOAN #: _____

PATRICIA K. HERMAN
1204 NORTH FAIRWAY DRIVE
APOPKA, FL 32712

Taylor, Bean & Whitaker Mortgage Corp
101 NE Second Street
Ocala, FL 34470

| | |
|---|---|
| P&I | $630.69 |
| ESCROWS | $74.25 |
| TOTAL DUE | $704.94 |

---

Payment Date: _____                    Loan #: _____

PATRICIA K. HERMAN
1204 NORTH FAIRWAY DRIVE
APOPKA, FL 32712

Taylor, Bean & Whitaker Mortgage Corp.
101 NE Second Street
Ocala, FL 34470

| | |
|---|---|
| P&I | $630.69 |
| ESCROWS | $74.25 |
| TOTAL DUE | $704.94 |

MW: First Payment Letter TBM

Thursday, February 24, 2000, 15:34

File: 00-002-400961

## ATTACHMENT TO HUD

|  | BUYER | SELLER |
|---|---|---|

**CHARGES FROM 1100 SECTION**
Endorsements
ALTA 8.1 Environmental Protection Lien          30.00
Florida Form 9          69.40
ALTA 4/4.1 Condominium          30.00

**PAYOFF CHARGES FOR Golden National Mortgage Banking Corp.**
Principal Balance          73,418.88

Interest to 03/01/00          568.69

Forwarding/Demand Fee          80.00

### ADDENDUM TO HUD

File#: 00-002-400961

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

BORROWER'S:

_____
Patricia K. Herman

SELLER'S:

_____
Todd R. Fagan

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused, or will cause, the funds to be disbursed in accordance with this statement.

_____          Date 02/25/2000
Settlement Agent - Laurie A. Frenzmeier

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Thursday, February 24, 2000, 15:34

File 00-002-400961

ATTACHMENT TO HUD

|  | BUYER | SELLER |
|---|---|---|
| **CHARGES FROM 1100 SECTION** | | |
| Endorsements | | 30.00 |
| ALTA 8.1 Environmental Protection Lien | | 69.40 |
| Florida Form 9 | | 30.00 |
| ALTA 4/4.1 Condominium | | |
| | | |
| **PAYOFF CHARGES FOR Golden National Mortgage Banking Corp.** | | |
| Principal Balance | | 73,418.98 |
| | | |
| Interest to 03/01/00 | | 568.09 |
| | | |
| Forwarding/Demand Fee | | 80.00 |

ADDENDUM TO HUD

File # 00-002-400961

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

BORROWER'S:

_____
Patricia K. Harman

SELLER'S:

_____
Todd R. Fagan

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused, or will cause, the funds to be disbursed in accordance with this statement.

_____
Settlement Agent - Carla A. Franzmeier                    Date 02/25/2000

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

12/23/00    13:14    TO    KERRY WHITAKER - 914076448295    NO.400

Loan No

## ADDENDUM TO HUD-1
### SETTLEMENT STATEMENT

**NOTICE TO ALL PARTIES:** If information is obtained which indicates that the source of the borrower's financial contribution is other than from the borrower or other than stated by the lender in its closing instructions, the settlement agent is to obtain written instructions from the lender before proceeding with settlement.

### CERTIFICATION OF BUYER IN AN FHA-INSURED LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to me (us) or loans that have been or will be assumed by me (us) for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda). I certify that I (we) have not been paid or reimbursed for any of the cash downpayment, and certify that I (we) have not and will not receive any payment or reimbursement for any of my (our) closing costs which have not been previously disclosed in the sales contract (including addenda) and/or my application for mortgage insurance submitted to my (our) mortgage lender.

Date: 02/25/00

__PATRICIA K. KERNAN__ • Borrower          _____ • Borrower

_____ • Borrower          _____ • Borrower

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

### CERTIFICATION OF SELLER IN AN FHA-INSURED LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to the borrower(s), or loans that have been or will be assumed by the borrower(s), for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda). I certify that I have not and will not pay or reimburse the borrower(s) for any part of the cash downpayment. I certify that I have not and will not pay or reimburse the borrower(s) for any part of my closing costs which have not been previously disclosed in the sales contract (including any addenda).

Date: 02/25/00

_____ • Seller          _____ • Seller

_____ • Seller          _____ • Seller

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

### CERTIFICATION OF SETTLEMENT AGENT IN AN FHA-INSURED LOAN TRANSACTION

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction. I further certify that I have carried out the above certifications which were executed by the borrower(s) and seller(s) as indicated.

_____          2/28/0
Settlement Agent          Date

[The certifications contained herein may be obtained from the respective parties at different times or may be obtained on separate addenda.]

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

ISC/FAHSS/0691/AHUD-1 (2-51)-L

## FIRST LIEN LETTER

DATE:  February 25. 2000

COMMITMENT NUMBER:

BORROWER(S):  PATRICIA K. HERMAN


In connection with property covered by the captioned title insurance commitment, we wish to advise that we closed and completely disbursed the mortgage in the amount of $      83.950.00


This mortgage is a valid first lien on the property, subject only to those encumbranced shown in Schedule B of the captioned commitment.  All taxes and special assessments which presently constitute a valid lien on the subject property have been paid in full.


Very truly yours,

By:
CLOSING AGENT

MMLFIRST LIEN LETTER

AP# 66234

LN#

# NOTE

FHA Case No.

094-4113762734

Florida

THE STATE DOCUMENTARY TAX DUE ON THIS NOTE HAS BEEN PAID ON THE MORTGAGE SECURING THIS INDEBTEDNESS.

February 25, 2000
[Date]

1204 NORTH FAIRWAY DRIVE, APOPKA, FL 32712
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means FIDELITY MORTGAGE SERVICES

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of Eighty Three Thousand Nine Hundred Fifty and no/100

Dollars (U.S. $ 83,950.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Eight and One / Quarter percent (    8.2500    %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on April 1 '  , 2000   . Any principal and interest remaining on the first day of          March 2030    , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at 101 WYMORE ROAD #440, ALTAMONTE , FL 32714

                                                                   or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 630.69          ; This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

FHA Florida Fixed Rate Note - 10/95
-1R(FL) (9810)                    Amended 10/98
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2      MW 10/98                      Initials 

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A)  Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four    percent (    4.0000    %) of the overdue amount of each payment.

**(B)  Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)  Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
                            -Borrower    PATRICIA K. HERMAN                      -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                            -Borrower

-1R(FL) (9810)                                Page 2 of 2

AFTER RECORDING MAIL TO:

Prepared By:  Acaffe
Address:     FIDELITY MORTGAGE SERVICES
             ALTAMONTE, FL 32714

LOAN NO.

_____[Space Above This Line For Recording Data]_____

STATE OF FLORIDA                                              FHA CASE NO.

                         **FHA MORTGAGE**                    094-4113762734

This Mortgage ("Security Instrument") is given on   February 25, 2000  . The Mortgagor is
PATRICIA K. HERMAN, a single person

whose address is 1204 NORTH FAIRWAY DRIVE, APOPKA, FL 32712
("Borrower"). This Security Instrument is given to FIDELITY MORTGAGE SERVICES

which is organized and existing under the laws of                           , and whose address is
101 WYMORE ROAD #440, ALTAMONTE, FL 32714
("Lender"). Borrower owes Lender the principal sum of Eighty Three Thousand Nine Hundred
Fifty Dollars and no/100
Dollars (U.S. $ 83,950.00      ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on    March 1, 2030  . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums,
with interest, advanced under Paragraph 6 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does
hereby mortgage, grant and convey to Lender the following described property located in
                                      ORANGE        County, Florida:

    SEE ATTACHED SCHEDULE "A"

which has the address of    1204 NORTH FAIRWAY DRIVE                        APOPKA
                                    [Street]                                [City]
Florida        32712             ("Property Address");
           [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or
hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of
the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

LOAN NO.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required by Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds".

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. SS ███ et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held be Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage or deficiency as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:
FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
THIRD, to interest due under the Note;
FOURTH, to amortization of the principal of the Note;
FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Secretary determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due

FHA FLORIDA MORTGAGE FORM
ISC/FMDTFL/1291/(2-91)-L    PAGE 2 OF 5    Page 41 of 48    FHA Case No. 0 9 4 – 4 1 1 3 7 6 2 7 3 4
2/91

LOAN NO.

date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the note secured thereby not be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option and notwithstanding anything in Paragraph 9, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9.b. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of this Security Instrument.

**16. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 16.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

LOAN NO.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding, and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

18. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

19. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es)].

[X] Condominium Rider                [ ] Graduated Payment Rider        [ ] Growing Equity Rider
[ ] Planned Unit Development Rider   [ ] Other [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 5 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____
Name  Laurie A. LaBarre

_____
Name

_____ (Seal)
                                    Borrower
PATRICIA K. HERMAN                  P. O. Address
3072 FOX HILL CIRCLE, APOPKA, FL 32703

_____ (Seal)
                                    Borrower
                                    P. O. Address

_____ (Seal)
                                    Borrower
                                    P. O. Address

_____ (Seal)
                                    Borrower
                                    P. O. Address

STATE OF FLORIDA                    Seminole              County ss:
   The foregoing instrument was acknowledged before me this    February 25, 2000    by
PATRICIA K. HERMAN
                                    who is personally known to me or who has produced
                                    as identification and who did    NOT    take an oath.

_____
                                    LAURIE A. LABARRE
Notary Public                       My Commission CC562550
Serial Number:                      Expires Aug. 03, 2000

[Seal]

STATE OF FLORIDA,                                          County ss:
   The foregoing instrument was acknowledged before me this                    by
                                    who is personally known to me or who has produced
                                    as identification and who did          take an oath.

_____
Notary Public
Serial Number:

[Seal]

FHA FLORIDA MORTGAGE FORM
ISC/FMDTFL//1291/(2-91)-L              PAGE 4 OF 5        Page 43 of 49    FHA Case No.094-4113762734
                                                                                          2/91

Page 43 of 49

File No. 00-002-400961
Title Order No. 00400961

# EXHIBIT ONE

Unit #1204, Building 4, Greenbrook Villas at Errol Estates I, a Condominium, together with undivided interests in the land, common elements and common expenses appurtenant to said units, all in accordance with and subject to the covenants, conditions, restrictions, terms and other provisions of the Declaration of Condominium of Greenbrook Villas at Errol Estates I, a Condominium, recorded January 19, 1987, in O.R. Book 3854, Page 1905, et. seq., along with subsequent Modification thereof, all in the Public Records of Orange County, Florida.

LOAN NO.

## FHA CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this    25th    day of    February, 2000    , and is
incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note
("Note") to    FIDELITY MORTGAGE SERVICES

("Lender") of the same date and covering the property described in the Security Instrument and located at:

1204 NORTH FAIRWAY DRIVE, APOPKA, FL·32712

[Property Address]

The Property Address includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

GREENBROOK·VILLAS

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project
("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property
also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's
interest.

CONDOMINIUM COVENANTS.    In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a
"master" or "blanket" policy insuring all property subject to the condominium documents, including
all improvements now existing or hereafter erected on the Property, and such policy is satisfactory
to Lender and provides insurance coverage in the amounts, for the periods, and against the
hazards Lender requires, including fire and other hazards included within the term "extended
coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the
provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of
one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii)
Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in
required hazard insurance coverage and of any loss occurring from a hazard. In the event of a
distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the
Property, whether to the condominium unit or to the common elements, any proceeds payable to
Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by
this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay Borrower's allocated share of the common expenses or assessments
and charges imposed by the Owners Association, as provided in the condominium documents.

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay
them. Any amounts disbursed by Lender under this Paragraph C shall become additional debt of
Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of
payment, these amounts shall bear interest from the date of disbursement at the Note rate and
shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Condominium Rider.

_____ (SEAL)
PATRICIA K. HERMAN                               Borrower

_____ (SEAL)
                                                 Borrower

_____ (SEAL)
                                                 Borrower

_____ (SEAL)
                                                 Borrower

ISC/FCONDORID**//1192/(0492)-L

FHA Case No.    094-4113762734
4/92

# B



1414 No. Magnolia Ave.
Ocala, Florida 34470
Bus. (352) 369-6200
Fax 888-329-9270

September 28, 2001

Patricia K. Herman
1204 North Fairway Drive
Apopka, FL 32712

RE: Taylor, Bean & Whitaker  Loan # 66234
    GMAC Loan # 306854835
    FHA Mortgage Insurance Premium

Dear Ms. Herman:

Upon review of your file, certain closing documents did not disclose the proper FHA Mortgage
Insurance Premium disclosures.  The premium was disclosed at the time of loan application.

Please find enclosed a corrected Truth In Lending Form and Mortgagor's Information
Statement/Payment Breakdown showing proper disclosure of the FHA Mortgage Insurance
Premium.  Please sign and return these forms in the enclosed envelope.

I am also enclosing copies of the documents showing the disclosure:
  1) Executed Upfront Good Faith Estimate
  2) Executed Upfront Truth In Lending
  3) Executed Upfront Informed Consumer Choice Disclosure Notice
  4) Executed Compliance Agreement

We do apologize for any inconvenience.

Sincerely,

Linda Taylor
Mortgage Insurance Department

Cc: Laurie Greiner,  Sales and Acquisitions
    GMAC

Enclosures
Express Mail

Page 47 of 49

FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

APPLICATION#: 66234                    02/25/00
LOAN #:       66234
Taylor, Bean & Whitaker Mortgage Corp.
101 N.E. 2nd Street
Ocala, FL 34470

— Borrowers —

PATRICIA HERMAN

3072 FOX HILL CIRCLE
APOPKA, FL 32703

— Property —
1204 N. FAIRWAY DRIVE
APOPKA, FL 32712

— Itemization of Amount Financed —

| | | | |
|---|---|---|---|
| $ | 82,007.80 | Total amount financed | $ 82,007.80 |
| $ | 94.88 | Interim Interest | |
| $ | 1,847.32 | MI Premium | |
| $ | 1,942.20 | Total prepaid finance charges | $ 1,942.20 |
| $ | 179.00 | CLOSING COSTS | |
| $ | 445.50 | County tax reserves | |
| $ | 624.50 | Total amount paid to others | |

THE FIRST PAYMENT FOR YOUR
FHA 30yr Fixed Rate

FOR: $ 83,950.00
AT:     8.250000%
WHICH WILL PAY OFF IN  360 PAYMENTS

IS BROKEN DOWN AS FOLLOWS:

| | |
|---|---|
| PRINCIPAL &/OR INTEREST | $ 630.69 |
| Mortgage Insurance | 34.09 |
| Taxes | 74.25 |
| Insurance | 0.00 |
| Other | 0.00 |
| TOTAL PAYMENT | $ 739.03 |

LOAN AMOUNT (including financed MIP)    $ 83,950.00

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.9899% | $ 150,098.42 | $ 82,007.80 | $ 232,106.22 |

— Your Payment Schedule Will Be: —

12 payments monthly of $        664.78  beginning April 1, 2000
148 payments monthly ranging from $    664.49 to $    659.48 beginning April 1, 2001
199 payments monthly of $        630.69  beginning August 1, 2013
1 payment of $        628.19  due on March 1, 2030

Security Interest:    You are giving a security interest in the property located at
1204 N. FAIRWAY DRIVE, APOPKA, FL 32712.
Late Charge:    If payment is 15 days late, you will be charged  4.0000% of the payment.
Prepayment:    If you pay off early, you will not have to pay a penalty.
If you pay off early, you may be entitled to a refund of part of the finance charge.
Assumption:    Someone buying your home may, subject to conditions, be allowed to assume the
remainder of the mortgage on the original terms.
This Obligation:    will NOT have a demand feature.

Insurance: You may obtain property insurance from anyone you want that is acceptable to Lender.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date,
prepayment refunds and penalties.

e means an estimate

I (We) hereby acknowledge receiving a completed copy of this disclosure.    ✓ Date ___/___/___

_____
PATRICIA HERMAN

ICS/MWFIGZ1//6/92/LASER

## MORTGAGOR'S INFORMATION STATEMENT/
## PAYMENT BREAKDOWN

We are pleased to welcome you as another one of our nationwide customers. We hope you will be pleased with our servicing of your account. The following is provided for your information:

### PROPOSED PAYMENT

| | | | |
|---|---|---|---|
| Principal and Interest | | | $ 630.69 |
| Monthly Escrows: | | | |
| Hazard Insurance | $ | 0.00 | |
| Taxes | $ | 74.25 | |
| Private Mtg. Ins./FHA Mtg. Ins. | $ | 34.09 | |
| Flood Insurance | $ | 0.00 | |
| Other: | $ | 0.00 | |
| Total Monthly Escrows | | | $ 108.34 |
| Total Monthly Payment | | | $ 739.03 |
| Less Buydown | | | $ |
| MORTGAGOR'S TOTAL MONTHLY PAYMENT | | | $ 739.03 |

Your first payment is due: April 1, 2000          Loan No.: 66234

All payment figures are subject to final review in our Home Office.

Additional payment coupons will be mailed to you under seperate cover and reflect the amount and due date of each payment.

All of your mortgage payments are due on the first of each month, and we sincerely ask that your payments arrive in our office by the first day of each month. If for any reason, you are ever without payment coupons, please continue making your mortgage payments on the first of each month by writing your loan number on your check or money order and mailing to:     Taylor, Bean & Whitaker Mortgage Corp.
1417 N. Magnolia Ave. Ocala, FL 34475

Please provide your mailing address below. All correspondence on your loan will be directed to this address.

_____

_____          Phone No. _____

✓

PATRICIA HERMAN
████████████          _____
Social Security Number                    Social Security Number

✓ Date: _____

### --TEMPORARY COUPONS FOR LOAN PAYMENTS--

PAYMENT DATE: April 1, 2000          LOAN #: 66234

PATRICIA HERMAN
1204 N. FAIRWAY DRIVE
APOPKA, FL 32712

Taylor, Bean & Whitaker Mortgage Corp
1417 N Magnolia Ave Mailstop: S
Ocala, FL  34475-9078

| | |
|---|---|
| P&I | $630.69 |
| ESCROWS | $108.34 |
| TOTAL DUE | $739.03 |

Payment Date: _____          Loan #: 66234

PATRICIA HERMAN
1204 N. FAIRWAY DRIVE
APOPKA, FL 32712

Taylor, Bean & Whitaker Mortgage Corp.
1417 N Magnolia Ave  Mailstop: S
Ocala, FL  34475-9078

| | |
|---|---|
| P&I | $630.69 |
| ESCROWS | $108.34 |
| TOTAL DUE | $739.03 |

MW: First Payment Letter TAM          Page 49 of 49

Filing # 74782046 E-Filed 07/11/2018 02:39:09 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR
ORANGE COUNTY, FLORIDA

**PATRICIA K. HERMAN,**

                  Counter Plaintiff,             CASE NO:   48-2007-CA-010062

vs.

**OCWEN LOAN SERVICING LLC,**

                  Counter Defendant.

_____/

## ORDER GRANTING COUNTER PLAINITFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTER CLAIM

      **THIS CAUSE** came before this Honorable Court on this Friday, the 6th day of July, 2018, on the Counter Plaintiff's, PATRICIA K. HERMAN, *Motion for Leave to File Second Amended Counter Claim,* and after hearing arguments, reviewing the pleadings and otherwise being fully advised in the premises, this Honorable Court finds as follows:

    A. On February 14, 2017, this Honorable Court entered its *Order Granting Plaintiff/Counter Defendant's Motion for Substitution of Party Plaintiff;*

    B. On February 14, 2017, Ocwen Loan Servicing, LLC was substituted into the instant action for GMAC Mortgage Corporation;

it is therefore:

      **ORDERED AND ADJUDGED** as follows:

    1. The Counter Plaintiff's, PATRICIA K. HERMAN, *Motion for Leave to File Second Amended Counter Claim* is hereby **GRANTED;**

-1-

2.  Counter Plaintiff's *Second Amended Counter Claim* is hereby accepted and deemed filed as of July 4, 2018.

3.  Plaintiff/Counter Defendant, OCWEN LOAN SERVICING, LLC, shall file its answer to the Counter Plaintiff's *Second Amended Counter Claim* within tenty (20) days of the entry of this instant Order.

4.  This Honorable Court shall retain jurisdiction over this matter for purposes of clarification and enforcement.

**ORDERED** at Orlando, Orange County, Florida on this _11_ day of July, 2018.


_____
ROBERT LEBLANC
CIRCUIT COURT JUDGE

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Order Granting Counter Plaintiff's Motion for Leave to File Second Amended Counter Claim* will be furnished on this _11_ day of July 2018 via Florida E-Filing Portal to all parties of record in this action.

_____
JUDICIAL ASSISTANT/ATTORNEY

-2-

# Exhibit
## N

Filing # 77410784 E-Filed 09/04/2018 04:40:53 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

**OCWEN LOAN SERVICING, LLC,**                    **GENERAL JURISDICTION**

      Plaintiff,                    **Case No. 2007-CA-010062-O**

v.

**ERROL ESTATE PROPERTY
OWNER'S ASSOCIATION, INC.;
GREENBROOK VILLAS AT ERROL
ESTATES CONDOMINIUM ASSOCIATION,
INC.,**

      Defendants.

_____/

## AMENDED FINAL JUDGMENT

THIS ACTION was tried before the Court on July 19, 2017.  On the evidence presented

IT IS ADJUDGED that:

1.    Plaintiff, Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West

Palm Beach, Florida 33409, is due:

| | | |
|---|---|---|
| Principal | | $77,986.02 |
| Interest from 2/1/07 to 7/1/17 | | $67,233.24 |
| Title Search | | $400.00 |
| Prior Servicer Escrow | | $5,307.06 |
| Escrow Refunds | | $82.71 |
| Tax Disbursements 2014 | | $1,066.42 |
| Tax Disbursements 2015 | | $1,140.16 |
| Tax Disbursements 2016 | | $1,146.02 |
| Property Maintenance | | $3,329.58 |
| Property Preservation | | $310.00 |
| Property Inspections | | $1,192.29 |
| Property Appraisals | | $1,634.25 |
| Attorneys' fees | | |
| Flat Fee | $250.00 | |
| Hourly Fees | $1,555.50 | |

| | | |
|---|---|---|
| Finding as to reasonable number of attorney hours: 6.8 | | |
| Finding as to reasonable attorney hourly rate: $215.00 | | |
| Finding as to reasonable number of paralegal hours: 1.1 | | |
| Finding as to reasonable paralegal hourly rate: $85.00 | | |
| Additional Flat Fee | | |
| Case Management Conference – 6/27/14 & 7/31/14 | $1,000.00 | |
| Case Management Conference – 9/23/16 | $500.00 | |
| Attorneys' Fees total | | $1,805.00 |
| Subtotal | | $162,632.75 |
| Less: Suspense Balance | | ($1.89) |
| Less: Escrow Payments | | ($5.15) |
| **TOTAL** | | **$162,625.71** |

2.      The grand total amount referenced in Paragraph 1 shall bear interest from this date

forward at the prevailing legal rate of interest in accordance with Section 55.03, Florida Statutes.

3.      Plaintiff holds a lien for the total sum superior to all claims or estates of defendants,

on the following described property in Orange County, Florida:

> UNIT # 1204, BUILDING 4, GREENBROOK VILLAS AT ERROL
> ESTATES I, A CONDOMINIUM, TOGETHER WITH UNDIVIDED
> INTERESTS IN THE LAND, COMMON ELEMENTS AND COMMON
> EXPENSES APPURTENANT TO SAID UNITS, C111 IN
> ACCORDANCE WITH AND SUBJECT TO THE COVENANTS,
> CONDITIONS, RESTRICTIONS, TERMS AND OTHER PROVISIONS
> OF THE DECLARATION OF CONDOMINIUM OF GREENBROOK
> VILLAS AT ERROL ESTATES I, A CONDOMINIUM, RECORDED
> JANUARY 19, 1987, IN O.R. BOOK 3854, PAGE 1905, ET. SEQ.,
> ALONG WITH SUBSEQUENT MODIFICATION THEREOF, ALL IN
> THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.

4.    If the total sum with interest at the rate described in paragraph 1 and all costs accrued subsequent to this judgment are not paid, the clerk of this court shall sell the property at public sale on ___Oct. 17, 2018___, to the highest bidder for cash, except as prescribed in paragraph 4, at the courthouse located at 425 North Orange Avenue in Orange County in Orlando, Florida, in accordance with section 45.031, Florida Statutes, using the following method (CHECK ONE):

☐    At _____, beginning at _____ on the prescribed date.

☒    By electronic sale beginning at 11:00 on the prescribed date at www.myorangeclerk.realforeclose.com.

5.    Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title.  If plaintiff is the purchaser, the clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

6.    On filing the certificate of title the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of plaintiff's costs; second, documentary stamps affixed to the certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this court.

7.    On filing the certificate of sale, defendants and all persons claiming under or against defendants since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under chapter 718 or chapter

3

720, Florida Statutes, if any.  Upon the filing of the certificate of title, the person named

on the certificate of title shall be let into possession of the property.

8.    Jurisdiction of this action is retained to enter further orders that are

necessary or are proper including, but not limited to re-foreclosure against any subordinate

interest omitted from these proceedings, determining the amounts owed to any

condominium or homeowners association, issuance of a writ of possession and the entry

of a deficiency judgment, when and if such deficiency is sought if the parties liable under

the note have not been discharged in bankruptcy (however no deficiency may be sought if

the parties liable under the note were subject to an order allowing Plaintiff or its

predecessors-on-interest only in rem relief from the bankruptcy automatic stay).

**IF THE PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE
ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS
WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT
TO THE FINAL JUDGMENT.**


**IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO
FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH
THE CLERK NO LATER THAN 60 DAYS AFTER THE SAME. IF YOU FAIL TO
FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**


    **ORDERED** at Orlando, Florida on *September 4, 2018* , NUNC
PRO TUNC July 19, 2017.

                                    _____
                                    **Circuit Court Judge**

4

**I HEREBY CERTIFY** that a true and correct copy hereof was served electronically or via U.S. Mail on *September 4*, 2018 to all persons on the following service list:

Nazish Zaheer, Esq.
Brock & Scott, PLLC
1501 N.W. 49th Street, Suite 200
Ft. Lauderdale, Florida 33309
FLCourtDocs@brockandscott.com
*Counsel for Plaintiff*

Linda M. Reck, Esq.
Greenberg Traurig
450 S. Orange Avenue, Suite 650
Orlando, Florida 32801
reckl@gtlaw.com
shelnutl@gtlaw.com
*Co-Counsel for Plaintiff,*
*Ocwen Loan Servicing, LLC*

Errol Estate Property Owner's Association
c/o Christopher Eri, Esq.
157 E. New England Avenue, Suite 340
Winter Park, Florida 32789
ceri@thehoalawyer.com

Greenbrook Villas at Errol Estates Condominium Association, Inc.
c/o Jennifer L. Davis, Esq.
Clayton & McCulloh
1065 Maitland Center Commons Blvd.
Maitland, Florida 32751
jdavis@clayton-mcculloh.com
mfgroup2@clayton-mcculloh.com

Pamela K. Herman, Esq.
Law Office Patricia K. Herman, P.A.
1631 Rock Springs Road, #305
Apopka, Florida 32712-2229
Service2lopkhpa@gmail.com
*Counterplaintiff*

*WPB 384292440v1*

5

# Exhibit

# O

IN THE COUNTY COURT OF THE 9TH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

GMAC MORTGAGE, LLC, SUCCESSOR
BY MERGER TO GMAC MORTGAGE
CORPORATION,

        Plaintiff,

v.

PATRICIA K. HERMAN, et al,

        Defendants,

        CASE NO. 48-2007-CA-010062-O

PATRICIA K. HERMAN,

        Counter-Plaintiff,

v.

GMAC MORTGAGE, LLC, SUCCESSOR
BY MERGER TO GMAC MORTGAGE
CORPORATION,

        Counter-Defendant.

## GMAC MORTGAGE, LLC NOTICE OF BANKRUPTCY STATUS

GMAC Mortgage, LLC ("GMACM"), by and through its undersigned counsel, respectfully submits this Notice of Bankruptcy Status, and states as follows:

    1.    On May 14, 2012 (the "**Petition Date**"), Residential Capital, LLC and certain of its direct and indirect subsidiaries, including GMACM (collectively, the "**Debtors**"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The

Debtors' Chapter 11 cases (the "**Bankruptcy Cases**") are being jointly administered, indexed at

case number 12-12020 (MG).

2.    On August 24, 2012, the undersigned caused to be filed in this present

matter a Notice of Bankruptcy Filing and Entry of Confirmation Order (the "Notice") to inform

the Court and the parties of the Bankruptcy Cases and the automatic stay imposed by section 362

of the United States Bankruptcy Code.

3.    On January 29, 2013, the undersigned caused to be filed in this present

matter a Notice of Bankruptcy Filing and Entry of Confirmation Order (the "Amended Notice")

to inform the Court and the parties of the Bankruptcy Cases and the automatic stay imposed by

section 362 of the United States Bankruptcy Code.

4.    On October 22, 2013, the undersigned caused to be filed in this present

matter a Notice of Bankruptcy Filing and Entry of Confirmation Order (the "Second Amended

Notice") to further inform the Court and the parties regarding the Bankruptcy Cases.  Specifically

the Amended Notice clarified as follows:

> GMAC has concluded that Herman's interest in the property was foreclosed
> out by Greenbrook Villas' suit and she no longer has an interest in the
> property.  By its simultaneously filed notice, GMAC is dismissing Herman
> from this suit. Therefore, Herman's claims against GMAC are not Permitted
> Claims, as she is not in the class of persons or entities allowed to assert such
> claims.  Each and every one of Herman's claims remain subject to the
> automatic stay and the continued prosecution of these claims is prohibited.
> However, her demand for attorneys' fees is not subject to the bankruptcy
> stay and can be liquidated. Any award of attorneys' fees would have to be
> submitted through the proof of claim process in the United States
> Bankruptcy Court for the Southern District of New York and would be
> treated as a general unsecured claim.

(Second Amended Notice, ¶ 8).

5.    On December 11, 2013, the Bankruptcy Court entered its Order Confirming

Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the

Official Committee of Unsecured Creditors (the "**Confirmation Order**") [Bankruptcy Docket

6065][1] approving the terms of the Chapter 11 plan, as amended (the "**Plan**"). The effective date

under the Plan occurred on December 17, 2013 (the "**Effective Date**").

6.    Both the Plan and Confirmation Order provide for the extension of the

automatic stay through the Effective Date and provide that the injunctive provisions of the Plan

and Confirmation Order will remain in full force and effect following the Effective Date.

(Confirmation Order, ¶ 63(g); Plan, Art. XIII.K). **Moreover, both Section G of Paragraph 40**

**of the Confirmation Order and Article IX.I of Plan contain an "Injunction" provision that,**

**among other things, enjoins all parties from "commencing or continuing in any manner or**

**action or other proceeding of any kind" relating to claims that are released under the Plan.**

7.    Article VIII.B of the Plan provides that the claim of any creditor of the

Debtors that failed to file a proof of claim by the applicable deadline "SHALL BE DEEMED

DISALLOWED, DISCHARGED, RELEASED, AND EXPUNGED AS OF THE EFFECTIVE

DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF

THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE

ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF

OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY

COURT." (emphasis in original).

8.    In addition, pursuant to Article XII of the Plan and Paragraph 66 of the

Confirmation Order, the Bankruptcy Court retained exclusive jurisdiction to hear all matters

---

[1] Due to its voluminous nature, the Confirmation Order, to which the Plan is an exhibit, or any other referenced
bankruptcy documents, are not included as an attachment, but may be obtained at no charge at
http://www.kccllc.net/rescap

pertaining to the injunction provided for in the Plan and Confirmation Order. Specifically, the

Plan provides as follows:

> **RETENTION OF JURISDICTION**
> Notwithstanding the entry of the Confirmation Order and the occurrence of
> the Effective Date, on and after the Effective Date, the Bankruptcy Court
> shall retain exclusive jurisdiction over all matters arising out of, or related
> to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142
> of the Bankruptcy Code, including jurisdiction:
>
> …
>
> **(c) to hear and determine any matter, case, controversy, suit, dispute,
> or Causes of Action: (i) regarding the existence, nature, and scope of
> the releases, injunctions, and exculpation provided under the Plan, and
> (ii) enter such orders as may be necessary or appropriate to implement
> such releases, injunctions, and other provisions;**
>
> ….

(Plan, Art. XII) (emphasis added). In addition, the Confirmation Order provides as follows:

> **Retention of Jurisdiction.** The business and assets of the Debtors shall
> remain subject to the jurisdiction of this Court until the Effective Date.
> Notwithstanding the entry of this Order, from and after the Effective Date,
> the Court shall retain such jurisdiction over the Chapter 11 Cases as is
> legally permissible, including jurisdiction over those matters and issues
> described in Article XII of the Plan, including with respect to (i) insurance
> settlements and disputes involving insurance policies settled or otherwise
> addressed under or in connection with the Plan, and (ii) the Claims filed by
> WFBNA in these Chapter 11 Cases and any Claims or Causes of Action
> that may be asserted by WFBNA against any of the Ally Released Parties.

(Confirmation Order, ¶ 66).

7.    By Order dated November 21, 2012, the Court approved the sale of the

Debtors' mortgage origination and servicing platform to Ocwen Loan Servicing LLC ("Ocwen")

and its designee, Walter Investment Management Corp. ("Walter") [Docket No. 2246] (the

"Ocwen Sale Order"). The transactions comprising the sale of the Debtors' mortgage origination

and servicing platform (the "Sale") closed in two parts: the sale to Walter closed on January 31,

2013, and the sale to Ocwen closed on February 15, 2013.

8.      On March 13, 2015, the Bankruptcy Court entered the Order Granting the Motion for Entry of an Order Establishing Procedures Enforcing Injunctive Provisions of Plan and Confirmation ("Procedures Order"). The Procedures Order, (i) bars Patricia K. Herman from continuing to prosecute this action against the Debtors under the injunction provisions of the Plan and Confirmation Order, and (ii) permits the Liquidating Trust to seek further relief from the Bankruptcy Court in the event Patricia K. Herman continues to seek recourse against the Debtors.

9.      According to the Debtors' records, Patricia K. Herman did not file a proof of claim in the Bankruptcy Cases and is barred from continuing to prosecute this action against a Debtor. Additionally, pursuant to the Plan and Confirmation Order, Patricia K. Herman is prohibited from pursuing monetary claims against the Debtors, but may proceed with non-monetary relief. However, as a result of the Sale, no Debtor services or owns the loan(s) subject of this proceeding and is unable to provide any non-monetary relief sought.

10.     With regard to this matter, defendant and counter-plaintiff Patricia K. Herman asserted eight (8) claims against GMAC. Specifically, her claims are:

    a.    Count I for purported violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.2, *et. seq.*;

    b.    Count II for purported violations of the "Mortgage Lending Laws – Fla. Stat. Ch. 494";

    c.    Count III for a purported breach of contract claim;

    d.    Count IV for a purported continuing breach of contract claim;

    e.    Count V for a purported breach of a reinstatement agreement claim;

    f.    Count VI for a purported negligence claim (dismissed with prejudice on or about December 24, 2008).

    g.    Count VII for a purported breach of fiduciary duty; and

    h.    Count VIII for a purported unjust enrichment claim.

11.    Further, following the February 4, 2013 dismissal of Debtor's claims against Patricia K. Herman, her claims against Debtor are not Permitted Claims, as she is not in the class of persons or entities allowed to assert such claims.

12.    Debtor also notified Patricia K. Herman in their October 22, 2013 Amended Response to Patricia K. Herman's Motion for Attorney's Fees and Costs ("Amended Response") as follows:

> Further, to the extent this Court finds that Herman is due an award of attorneys' fees, she can only liquidate said fees in this venue and then seek recovery of same through GMACM's bankruptcy process in the United States Bankruptcy Court, Southern District of New York, Case No. 12-12020.

(Amended Response, ¶ 6).

13.    According to the Debtors' records, despite receiving the Notice, Amended Notice, Second Amended Notice, and Amended Response Patricia K. Herman did not file a proof of claim in the Bankruptcy Cases and is barred from continuing to prosecute this action against a Debtor.

14.    Patricia K. Herman has no claim against Debtors and Debtors have no further involvement in the current case.

15.    Debtors are submitting this Status Report for the purpose of providing the Court and the parties to this action with an update as to the status of the Bankruptcy Cases.

Respectfully submitted this 24 day of October, 2016.

    s/Christian W. Hancock
    Christian W. Hancock (Florida Bar No. 0643521)
    Mark S. Wierman (Florida Bar No. 0095781)
    **Bradley Arant Boult Cummings LLP**
    214 N. Tryon Street, Suite 3700
    Charlotte, NC 28202
    Phone: (704) 338-6000
    Fax:   (704) 332-8858

Primary email:chancock@bradley.com
Secondary email: mjpalmer@bradley.com

*CO-COUNSEL FOR PLAINTIFF AND COUNTER-DEFENDANT GMAC MORTGAGE, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via United States mail, postage prepaid, and/or via email, pursuant to Rule 2.516, this 24 day of October, 2016, to the following:

Patricia K. Herman, Esq.
Law Office of Patricia K. Herman, P.A.
Email: service2lopkhpa@gmail.com

*Pro Se Defendant*

Jeff A. Stone, Esq.
Russell E. Klemm, Esq.
Clayton & McCulloh
Primary: jstone@clayton-mcculloh.com
Primary: rklemm@clayton-mcculloh.com
Secondary: mfgroup2@clayton-mcculloh.com

*Attorneys for Greenbrook Villas at Errol Estates Condominium Association, Inc.*

Lauren Farinas
Brock and Scott
1501 NW 49th Street, Ste 200
Ft Lauderdale, FL 33309
FLCourtDocs@brockandscott.com

*Attorneys for Plaintiff and Counter-Defendant GMAC Mortgage, LLC*

Christopher Eri, Esq.
Community Association Law Group
157 E. New England Avenue, Suite 340
Winter Park, Florida 32789-7007
Primary: ceri@thehoalawyer.com

*Attorneys for Errol Estate Property Owner's Association*