**Hearing Date and Time: December 4, 2018 at 2:00 p.m. (Prevailing Eastern Time)**
**Deadline for Objections: November 16, 2018 at 4:00 p.m. (Prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

-----------------------------------------------------------

**NOTICE OF MOTION FOR (I) AN ORDER EXTENDING THE TERM OF
THE RESCAP LIQUIDATING TRUST AND (II) A FINAL DECREE
CLOSING CERTAIN JOINTLY ADMINISTERED CHAPTER 11 CASES**

PLEASE TAKE NOTICE that on November 5, 2018, the ResCap Liquidating

Trust filed the *Motion for (i) an Order Extending the Term of the ResCap Liquidating Trust and*

*(ii) a Final Decree Closing Certain Jointly Administered Chapter 11 Cases* (the "**Motion**"). A

hearing on the Motion will be held before the Honorable Martin Glenn, United States

Bankruptcy Judge, at the United States Bankruptcy Court located at One Bowling Green, New

York, New York 10004, Courtroom 523 on **December 4, 2018 at 2:00 p.m. prevailing Eastern**

**time**, or as soon thereafter as counsel can be heard.

PLEASE TAKE FURTHER NOTICE that responses or objections to the Motion,

shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local

Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy

Court, together with a copy to the Chambers of Judge Glenn, and served so as to be received no later than **4:00 p.m. prevailing Eastern time on November 16, 2018** (the "**Objection Deadline**")**,** upon (i) co-counsel to the ResCap Liquidating Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Gary S. Lee and Norman S. Rosenbaum); (ii) co-counsel to the ResCap Liquidating Trust, Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth H. Eckstein, Douglas H. Mannal, and Joseph A. Shifer); (iii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin); and (iv) The ResCap Liquidating Trust, 8400 Normandale Lake Blvd. Suite 175, Minneapolis, MN 55437 (Attention: Lauren Graham Delehey).

PLEASE TAKE FURTHER NOTICE that if no objections or other responses are timely filed and served with respect to the Motion, the ResCap Liquidating Trust may, on or after the Objection Deadline, submit to the Bankruptcy Court an order and final decree substantially in the forms annexed as Exhibit A and Exhibit B to the Motion, which the Bankruptcy Court may enter without further notice or opportunity to be heard.

Dated: November 5, 2018
      New York, New York

                KRAMER LEVIN NAFTALIS & FRANKEL LLP

                /s/ Joseph A. Shifer
                Kenneth H. Eckstein
                Douglas H. Mannal
                Joseph A. Shifer
                1177 Avenue of the Americas
                New York, New York 10036
                Telephone: (212) 715-9100
                Facsimile: (212) 715-8000

                *Counsel for the ResCap Liquidating Trust*

**Hearing Date and Time: December 4, 2018 at 2:00 p.m. (Prevailing Eastern Time)**
**Deadline for Objections: November 16, 2018 at 4:00 p.m. (Prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**MOTION FOR (I) AN ORDER EXTENDING THE TERM OF**
**THE RESCAP LIQUIDATING TRUST AND (II) A FINAL DECREE**
**CLOSING CERTAIN JOINTLY ADMINISTERED CHAPTER 11 CASES**

## Table of Contents

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION .................................................................................................................... 5

RELEVANT BACKGROUND ................................................................................................. 5

    A.    The Chapter 11 Cases ............................................................................ 5

    B.    The Liquidating Trust ............................................................................ 6

    C.    Claims .................................................................................................... 8

    D.    Prior Final Decrees ............................................................................... 9

REQUEST FOR RELIEF ....................................................................................................... 10

BASIS FOR RELIEF ............................................................................................................. 10

    A.    Extension of the Liquidating Trust ....................................................... 10

        i.    Winding Down Non-Cash Assets ............................................ 12

        ii.    Affirmative Litigations ........................................................... 12

    B.    Final Decrees ........................................................................................ 14

NO PRIOR REQUEST ......................................................................................................... 17

NOTICE .............................................................................................................................. 17

CONCLUSION ..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Boylan Int'l, Ltd.*,
　452 B.R. 43 (Bankr. S.D.N.Y. 2001) .................................................................................14

*Ericson v. IDC Servs. (In re IDC Servs.)*,
　No. 93 B 45992, 1998 U.S. Dist. LEXIS 13449 (S.D.N.Y. 1998) .........................................15

*In re Fabrikant & Sons, Inc.*,
　Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Apr. 15, 2013)................................................14

*In re Gen. Mar. Corp.*,
　No. 11-15285 (MG) (Bankr. S.D.N.Y. Sept. 23, 2013)........................................................17

*In re JMP-Newcor Int'l*,
　225 B.R. 462 (Bankr. N.D. Ill. 1998) ............................................................................15, 16

*In re Kliegel Bros. Universal Elec. Stage Lighting Co.*,
　238 B.R. 531 (Bankr. E.D.N.Y. 1999 ................................................................................15

*In re Legend Parent, Inc.*,
　No. 14-10701 (RG) (Bankr. S.D.N.Y. Aug. 28, 2014)........................................................17

*In re Mold Makers, Inc.*, 124 B.R. 766 (Bankr. N.D. Ill. 1990) ..................................................14

*In re Motors Liquidation Co. (f/k/a General Motors Corp.)*,
　Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Dec. 7, 2015).................................................13

*In re Motors Liquidation Corp. (f/k/a In re General Motors Corp.)*,
　Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Apr. 18, 2013) ...............................................17

*In re Pacor, Inc. and Pacor Material Supply Co.*,
　No. 95-294, 1995 U.S. Dist. LEXIS 8106 (E.D. Pa. June 13, 1995).....................................16

*In re Pulp Finish 1 Co. (f/k/a Journal Register Co.)*,
　No. 12-13774 (SMB) (Bankr. S.D.N.Y. Nov. 18, 2013) ......................................................16

*Spierer v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*,
　43 F. App'x 820, 2002 U.S. App. LEXIS 16059 (6th Cir. 2002).....................................14, 16

**Statutes**

11 U.S.C. § 105.......................................................................................................................5

11 U.S.C. § 350(a) ...........................................................................................................5, 14, 16

11 U.S.C. § 1141 ...................................................................................................................5

28 U.S.C. § 157 .....................................................................................................................5

28 U.S.C. § 1334 ...................................................................................................................5

28 U.S.C. § 1408 ...................................................................................................................5

28 U.S.C. § 1409(a) ..............................................................................................................5

**Other Authorities**

Fed. R. Bankr. P. 1015(b) .....................................................................................................5

Fed. R. Bankr. P. 3022 ...........................................................................................5, 14, 15, 17

Fed. R. Bankr. P. 9006(b) ...............................................................................................5, 11

**Hearing Date and Time: December 4, 2018 at 2:00 p.m. (Prevailing Eastern Time)**
**Deadline for Objections: November 16, 2018 at 4:00 p.m. (Prevailing Eastern Time)**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "**Liquidating Trust**"), successor in interest to the

debtors (the "**Debtors**") in the above-captioned chapter 11 cases, hereby files this motion (the

"**Motion**") for (i) entry of an order substantially in the form annexed hereto as **Exhibit A** (the

"**Proposed Order**") pursuant to the terms of the *Second Amended Joint Chapter 11 Plan*

*Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors*

[Docket No. 6065-1]  (the "**Chapter 11 Plan**")[1] extending the term of the Liquidating Trust for

an additional one year, through and including December 17, 2019 and (ii) issuance of a final

decree in substantially the form annexed hereto as **Exhibit B** (the "**Final Decree**") closing the

chapter 11 cases of  GMAC Mortgage, LLC ("**GMACM**"), and Residential Funding, LLC

("**RFC**," and collectively with GMACM, the "**Closing Debtors**").  In support of the Motion, the

Liquidating Trust submits the declaration of Jill Horner, Chief Financial Officer for the

Liquidating Trust (the "**Horner Declaration**"), annexed hereto as **Exhibit C**,  and respectfully

represents as follows:

**PRELIMINARY STATEMENT**

1.    In the approximately five years since its creation, the Liquidating Trust's

management, employees and professionals have worked diligently to pursue the Liquidating

Trust's objectives in a manner that maximizes recoveries to Unitholders.  In accordance with the

Debtors' Chapter 11 Plan, the Liquidating Trust was created on December 17, 2013 (*i.e.*, the

Effective Date under the Plan), to, among other things, (i) wind-down the Debtors' non-cash

assets, (ii) resolve non-Borrower claims asserted against the Debtors, (iii) pursue litigation on

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Chapter 11 Plan.

behalf of the Debtors' estates, and (iv) make periodic distributions to Unitholders. Since the
Chapter 11 Plan's Effective Date (including since the prior extension of the terms of the
Liquidating Trust), the Liquidating Trust has made tremendous progress towards these goals.

2.      Specifically, since its creation, the Liquidating Trust has, among other
things, (i) resolved all non-Borrower Claims, (ii) initiated 87 litigations against correspondent
lenders that have yielded over $1.1 billion in settlements as of the date hereof, with the
Liquidating Trust continuing to pursue 7 such litigations, and (iii) distributed over $3.14 billion
to Unitholders. The following chart summarizes the distributions made to date by the
Liquidating Trust to Unitholders:

| Summary of Distributions to Unitholders | | | | | |
|---|---|---|---|---|---|
| Distribution # | Date Declared | Record Date | Distribution Date | Total Amount Distributed | Amount Per Unit |
| 1 | N/A | 12/17/2013 | 12/27/2013 | $1,765,000,000 | $17.65 |
| 2 | 5/15/2014 | 5/23/2014 | 6/9/2014 | $115,000,000 | $1.15 |
| 3 | 9/18/2014 | 10/2/2014 | 10/17/2014 | $150,000,000 | $1.50 |
| 4 | 3/6/2015 | 3/16/2015 | 3/31/2015 | $200,000,000 | $2.00 |
| 5 | 5/3/2017 | 5/18/2017 | 6/2/2017 | $200,000,000 | $2.00 |
| 6 | 8/2/2017 | 8/17/2017 | 9/1/2017 | $150,000,000 | $1.50 |
| 7 | 11/16/2017 | 11/27/2017 | 12/12/2017 | $140,000,000 | $1.4156 |
| 8 | 12/4/2017 | 12/14/2017 | 12/29/2017 | $100,000,000 | $1.0112 |
| 9 | 5/25/18 | 6/28/2018 | 7/13/2018 | $350,000,000 | $3.5403 |
| TOTAL | | | | $3,140,493,750[2] | $31.7671 |

3.      Although the Liquidating Trust has made substantial progress in fulfilling
its purpose, it continues to pursue numerous valuable litigation claims against correspondent
lenders and anticipates making future distribution to Unitholders. The Liquidating Trust is
currently scheduled for trials in 2019 with respect to the remaining correspondent lenders.[3] Such

---

[2] On September 29, 2017, 1,108,677 Units were cancelled, and on March 31, 2018, 31,969 Units were cancelled.
Accordingly, there are 98,859,354 Units outstanding, with approximately $30 million of funds returned to the
Liquidating Trust on account of the cancelled Units.

[3] In addition, the Liquidating Trust is currently in the midst of a four-week jury trial against Home Loan Center,
Inc., with post-trial motion practice and appeals possible.

efforts will continue beyond December 17, 2018, the fifth anniversary of the Effective Date (the date on which the Liquidating Trust is currently scheduled to dissolve).[4]   Dissolving the Liquidating Trust before it has had time to complete its work would be detrimental to Unitholders.   Therefore, in accordance with the Chapter 11 Plan and the Liquidating Trust Agreement (which both anticipated that such extensions would be necessary), the Liquidating Trust seeks entry of the Proposed Order extending the Liquidating Trust's term for a period of one year, through and including December 17, 2019.

4.      The Liquidating Trust also asks to close all remaining open cases other than the main case.   On the Petition Date, these Chapter 11 Cases commenced, consisting of the jointly administered cases of 51 Debtors.   Following the Effective Date, all but three of the cases have been closed.   Pursuant to the confirmed Plan, the 51 Debtors were consolidated into three Debtors Groups for purposes of making distributions on account of allowed claims:   (i) the ResCap Debtors, (ii) the GMACM Debtors, and (iii) the RFC Debtors. The recoveries provided for under the Plan vary based on the particular Debtor Group against which a creditor's claim is allowed.   Further, duplicative claims against multiple Debtors within the same Debtor Group are consolidated.   In addition, pursuant to the Plan, allowed claims against ETS were entitled to different treatment.   *See* Plan Art.III.D.2(e).

5.      Because creditor recoveries are dictated by Debtor Group rather than by particular Debtor, it was not necessary to keep open each of the 51 Chapter 11 Cases, and, thus, 48 of the 51 Chapter 11 Cases were previously closed, leaving open the Chapter 11 Cases of the

---

[4] Under the terms of the Chapter 11 Plan and the Liquidating Trust Agreement, the Liquidating Trust was to terminate on the earlier of: (a) the distribution of all Liquidating Trust Assets, (b) the determination of the Liquidating Trust Board to terminate the Liquidating Trust, (c) the completion of all distributions required to be made under the Liquidating Trust Agreement, or (d) the third anniversary of the Effective Date, subject to multiple, fixed-term extensions with approval of the Court.  On December 9, 2016, the Court entered an order extending the term of the Liquidating Trust for two years, through December 17, 2016 [Docket No. 10262].  *See infra* ¶ 13.

lead Debtor of each Debtor Group (*i.e.*, Residential Capital, LLC, GMAC Mortgage, LLC, and Residential Funding, LLC). *See Order of Final Decree Pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 Closing Certain of the Debtors' Chapter 11 Cases* [Docket No. 8299] and *Order of Final Decree Pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 Closing Certain of Executive Trustee Services, LLC* [Docket No. 10353].

6.      Given the broad powers granted to  the Liquidating Trust in administering the affairs of all of the Debtors, the Liquidating Trust has determined to close the cases of GMAC Mortgage, LLC, and Residential Funding, LLC, leaving open the Chapter 11 Case of only the main case  (*i.e.*, Residential Capital, LLC).  To the extent it becomes necessary for the Liquidating Trust to take some action before the Court on account of any one of the Debtors, the Liquidating Trust will undertake that action in the main case.

7.      No creditor will be adversely impacted by closing the Chapter 11 Case of the Closing Debtors because any distributions on claims will continue to be made by the Liquidating Trust or Borrower Claims Trust, as applicable, pursuant to the terms of the Plan.  To the contrary, creditors will benefit from the savings realized from the reduced fees payable to the U.S. Trustee on account of closing the Chapter 11 Cases of the Closing Debtors, as well as the administrative burden associated with reporting disbursements for the purposes of calculating such fees.

## JURISDICTION

8.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Further, pursuant to the Chapter 11 Plan, the Court retained jurisdiction to "issue such orders in aid of execution of the Plan."  *See* Chapter 11 Plan, Art. XII.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157.

9.      The statutory predicates of this Motion are sections 105(a), 350 and 1141 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 3022 and 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## RELEVANT BACKGROUND

### A.      The Chapter 11 Cases

10.     On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

11.     During the course of the Chapter 11 Cases, pursuant to bidding procedures and an auction process approved by the Court, the Debtors sold a majority of their assets, including the sale of (i) their servicing and origination platform to Ocwen Loan Servicing, LLC and Walter Investment Management Corporation, and (ii) the Debtors' "legacy whole loan" portfolio to Berkshire Hathaway, Inc. (together, the "**Asset Sales**").  The Debtors' remaining assets were transferred to the Liquidating Trust pursuant to the terms of the Chapter 11 Plan and the Liquidating Trust Agreement.[5]  The Liquidating Trust continues to hold a number of whole

---

[5] *See* Plan, Art. VI.C ("On the Effective Date, the Debtors are authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustees, for the benefit of the Liquidating Trust, in the form thereof existing on such date, all of the Debtors' and Estates' right, title and interest in and to the Available Assets free and

loans and insurance claims (currently being subserviced by a third-party) related to whole loans that were insured by government-sponsored entities.

12.     On December 11, 2013, this Court entered an order approving the terms of the Chapter 11 Plan. [Docket No. 6065] (the "**Confirmation Order**").  On December 17, 2013, the Effective Date of the Chapter 11 Plan occurred, and, among other things, the Liquidating Trust was established [Docket No. 6137].

### B.     The Liquidating Trust

13.     Pursuant to the Confirmation Order and the Chapter 11 Plan, the Liquidating Trust was created and vested with broad authority over the post-confirmation liquidation and distribution of the Debtors' assets, and was deemed substituted as the party to any litigation in which the Debtors are a party.  *See generally* Confirmation Order ¶¶ 26, 30, 34, 48; Chapter 11 Plan Art. VI.

14.     Further, pursuant to the Plan, the Liquidating Trust was established to resolve claims and make distributions to holders of beneficial interests in the Liquidating Trust (the "**Unitholders**").  Article VIII.A.3 of the Chapter 11 Plan provides that the Liquidating Trust has the exclusive authority to "[f]ile, withdraw, or litigate to judgment, objections to Claims or Equity Interests (other than Borrower Claims, Private Securities Claims, and the NJ Carpenters Claims)."

15.     Similarly, the ResCap Borrower Claims Trust (the "**Borrower Claims Trust**") was also established by the Plan to resolve Borrower Claims and make distributions to Borrowers on account of Allowed Borrower Claims from a fund transferred to the Borrower

---

clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other Persons and Entities to the maximum extent contemplated by and permissible under section 1141 of the Bankruptcy Code."); Liquidating Trust Agreement, § 2.5 ("On the Effective Date, the Debtors shall transfer all of the Available Assets… to the Liquidating Trust…").

Claims Trust under the Plan. *See* Plan, Art. IV.F. The Plan, as well as the provisions of the Borrower Claims Trust Agreement, provide claims resolution authority to the Borrower Claims Trust with respect to Borrower Claims.

16.    The Liquidating Trust was created for an initial term of three years, subject to further extensions approved by the Bankruptcy Court.  Specifically, section 12.1 of the Liquidating Trust Agreement provides:

> The Liquidating Trust shall dissolve upon the date that is the earliest to occur of: (i) the distribution of all Liquidating Trust Assets pursuant to the Plan Documents, (ii) the determination of the Liquidating Trust Board that the administration of the Liquidating Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all the distributions required to be made under this Liquidating Trust Agreement have been completed; <u>provided</u>, <u>however</u>, that in no event shall the Liquidating Trust dissolve later than three (3) years from the Effective date, unless the Bankruptcy Court, upon motion within the six (6) months prior to the third (3rd) anniversary of the Effective Date (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidating of the Liquidating Trust Assets . . .

Liquidating Trust Agreement, § 12.1(a).  *See also* Chapter 11 Plan, Art. VI.H (same).

17.    On December 9, 2016, the Court entered the *Order Extending (i) the Term of the ResCap Liquidating Trust and (ii) the Date by Which Objections to Claims Must be Filed* [Docket No. 10262], extending the term of the Liquidating Trust for two years, through and including December 17, 2018.

C.    **Claims**

18.    On June 30, 2012, each of the Debtors filed with the Court its schedule of assets and liabilities and statement of financial affairs [Docket Nos. 548 – 597 and 649] (the "**Schedules and Statements**").[6]

19.    On July 17, 2012, the Court entered an order [Docket No. 798] appointing Kurtzman Carson Consultants LLC ("**KCC**") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "**Claims Register**").

20.    On August 29, 2012, this Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1309] (the "**Bar Date Order**").  The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "**General Bar Date**") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "**Governmental Bar Date**," with the General Bar Date, the "**Bar Date**").  Bar Date Order at ¶¶ 2-3.  On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (prevailing Eastern Time) [Docket No. 2093].  The Governmental Bar Date

---

[6] The Debtors filed amended schedules for Residential Capital, LLC, Residential Funding Company, LLC, GMAC Mortgage, LLC, GMAC-RFC Holding Company, LLC, GMAC Residential Holding Company, LLC, and Homecomings Financial, LLC on July 3, 2012. [Docket Nos. 683-688]. On June 9, 2014, the Court entered an order authorizing the reduction and amendment of the scheduled amounts for certain claims on the schedules for Residential Funding Company, LLC and GMAC Mortgage, LLC [Docket No. 7078].

was not extended.  On March 21, 2013, the Court entered an order approving certain omnibus claim objection procedures [Docket No. 3294] (the "**Claims Objection Procedures Order**").

21.    The Confirmation Order required holders of Administrative Claims (as such term is defined in the Plan) to file their "requests for the payment of such Administrative Claims not already Allowed by Final Order in accordance with the procedures specified in the Confirmation Order, on or before the first Business Day that is thirty (30) days following the Effective Date." *See* Confirmation Order ¶ 50(f). As the Effective Date of the Plan occurred on December 17, 2013, the deadline by which holders of administrative claims must file requests for payment was January 16, 2014 (the "**Administrative Claims Bar Date**").

22.    To date, approximately 7,499 unsecured, secured, priority, and administrative proofs of claim (collectively, the "**Claims**") have been filed in these cases, including late filed claims, with asserted liabilities in excess of $110.0 billion, plus unliquidated amounts.  The Claims consist of approximately 3,040 Borrower Claims with asserted liabilities of approximately $15.5 billion, plus unliquidated amounts, and approximately 4,459 Non-Borrower Claims with asserted liabilities of approximately 94.5 billion, plus unliquidated amounts.   In addition, approximately 6,189 additional unsecured, secured, priority, and administrative claims were identified in the Schedules (including contingent, unliquidated, and disputed claims).  On October 22, 2018, the Court entered the *Order Authorizing Termination of Special Reserve Fund, Final Distribution to GMACM Borrower Trust Claimants, Second Distribution to RFC Borrower Trust Claimants, and Other Relief* [Docket No. 10565].

D.    **Prior Final Decrees**

23.    On February 10, 2015, the Liquidating Trust filed the *Motion of the ResCap Liquidating Trust for Final Decree Closing Certain Jointly Administered Chapter 11*

*Cases* [Docket No. 8107] (the "**Initial Final Decree Motion**"), seeking closure of the Chapter 11

Cases of 47 Debtors that were consolidated into Debtor Groups for distribution purposes under

the Plan, while leaving open the Chapter 11 Cases of the lead Debtor of each Debtor Group (*i.e.*,

Residential Capital, LLC, GMAC Mortgage, LLC, and Residential Funding, LLC) and ETS.   On

March 13, 2015, after notice and a hearing, the Court entered an order approving the relief

sought in the Initial Final Decree Motion [Docket No. 8299].

24.    On February 21, 2017, the Liquidating Trust filed the *Motion of the

ResCap Liquidating Trust for Final Decree Closing Chapter 11 Case of Executive Trustee

Services, LLC* [Docket No. 10311] (the "**ETS Final Decree Motion**"), seeking closure of the

Chapter 11 Case of ETS.  On April 7, 2017, after notice and a hearing, the Court entered an order

approving the relief sought in the ETS Final Decree Motion [Docket No. 10353].

## REQUEST FOR RELIEF

25.    The Liquidating Trust seeks an order extending the term of the

Liquidating Trust through and including December 17, 2019, without prejudice to further

extensions.  The Liquidating Trust also seeks the issuance of a Final Decree for GMACM and

RFC, leaving open the Chapter 11 Case of ResCap.

26.    This requested relief is consistent with the terms of the Chapter 11 Plan,

the Confirmation Order, the Liquidating Trust Agreement and applicable bankruptcy law. In

addition, the Liquidating Trust contacted the office of the U.S. Trustee prior to filing this

Motion.  The Office of the U.S. Trustee has no objection to entry of the Final Decrees.

## BASIS FOR RELIEF

### A.    Extension of the Liquidating Trust

27.    The Liquidating Trust Agreement provides that the Liquidating Trust may

be extended beyond its initial three-year term, upon a showing that such extension is "necessary

to facilitate or complete the recovery and liquidating of the Liquidating Trust Assets."
Liquidating Trust Agreement, § 12.1(a).

28.    The relief requested herein is also supported by governing bankruptcy law.
Bankruptcy Rule 9006(b) provides that "when an act is required or allowed to be done at or
within a specified period . . . by order of [the] court, the court for cause shown may at any time
in its discretion . . . order the period enlarged . . . ." Fed. R. Bankr. P. 9006(b).  Here, there is
ample cause for an extension of the Liquidating Trust.

29.    Since the Liquidating Trust was formed, the Liquidating Trust
management, employees, and the professionals retained by the Liquidating Trust have worked
diligently to administer the Liquidating Trust and consummate the Chapter 11 Plan for the
purpose of liquidating and distributing assets for the benefit of Unitholders.  As a result of these
efforts, the  Liquidating Trust has been able to make distributions to Unitholders totaling over
$3.14 billion, or approximately $31.76 per Unit.

30.    Notwithstanding the Liquidating Trust's substantial progress and the
distributions made to Unitholders to date, there remains additional work that must be completed
to fully monetize and distribute all of the Liquidating Trust's remaining assets in a manner that
maximizes total distributions to Unitholders.  The Liquidating Trust will be unable to complete
all of these tasks in a manner most beneficial to Unitholders if it dissolves now.  For example,
the litigation against the remaining correspondent lender defendants is ongoing and the
Liquidating Trust is in the middle of a jury trial, with additional time needed to either settle these
cases or complete trial for the other correspondent lenders.  Accordingly, the Liquidating Trust
must remain in existence to continue its work of winding down its non-cash assets and
prosecuting affirmative litigations.

### i.  Winding Down Non-Cash Assets

31.     Although the Debtors sold a majority of their assets pursuant to the Asset

Sales, the Liquidating Trust still holds certain assets.  The following chart describes the non-cash

assets held by the Liquidating Trust as of September 30, 2018:[7]

| Asset Type | Gross Balance (in $000's) | Carrying Value (in $000's)[8] |
|---|---|---|
| Mortgage loans | $     20,328 | $     16,499 |
| Servicing advances | 28,033 | 7,950 |
| Interest receivable | 720 | 720 |
| Real estate owned | 1,079 | 175 |
| Trading securities | 17,368 | 12,202 |
| Other receivables | 6,348 | 6,348 |
| Other assets | 7,177 | 7,177 |
| **Total non-cash assets** | **$     81,053** | **$     51,071** |

32.     During the extension of time sought by this Motion, the Liquidating Trust

will work to monetize these non-cash assets for the benefit of Unitholders.

### ii.  Affirmative Litigations

33.     Since the Effective Date, the Liquidating Trust has initiated affirmative

litigations against various parties.  Importantly, the Liquidating Trust commenced 87 affirmative

litigations against parties that sold defective loans to the Debtors prior to the Petition Date that

were subsequently repackaged into residential mortgage-backed securities (the "**RMBS**

**Litigations**"), asserting several billion dollars in damages, and resulting in settlement recoveries

of approximately $1.1 billion as of the date hereof.  The Liquidating Trust also commenced 39

---

[7] Assets may include assets held by non-Debtor subsidiaries that are being wound down by the Liquidating Trust.

[8] The Liquidating Trust's carrying value of mortgage assets uses internal models to determine the cash flows expected to be received over the life of the loan. The Liquidating Trust's recovery estimates and assumptions are based on loan level attributes including, but not limited to, delinquency status, aging, and claim versus loan status. The Liquidating Trust carrying value reflects the net present value of the cash flows expected to be received over the lifetime of the mortgage assets. Because of the uncertainties associated with estimating the amounts, timing and likelihood of possible outcomes, actual results could differ from the Liquidating Trust's estimates.

preference actions (the "**Preference Actions**"), asserting approximately $30.8 million in damages, and resulting in the collection of approximately $2.3 million.  The Liquidating Trust is also a plaintiff in a pending adversary proceeding related to an insurance coverage dispute with certain insurers, with the Liquidating Trust asserting a right to reimbursement for defense costs and pre-bankruptcy settlements paid to certain class action plaintiffs. The following chart summarizes the current status of pending litigations as of the date hereof:

| Litigation Type | Number of Litigations | Jurisdiction |
|---|---|---|
| RMBS[9] | 7 | Federal District Court Minnesota |
| Insurance Coverage Dispute | 1 | Federal Bankruptcy Court |

34.    As of the date hereof, there are approximately 7 pending RMBS Litigations and no pending Preference Actions.  During the extension of time sought by this Motion, the Debtors will continue to prosecute these actions and secure recoveries on behalf of Unitholders.

35.    Based on these facts, as supported in the Horner Declaration, an extension is necessary to complete the successful wind-down of the Liquidating Trust.  The Liquidating Trust believes that it is in its best interests and those of its Unitholders that it be afforded the opportunity to continue to pursue these remaining assets in order to maximize recoveries to Unitholders without fear of interruption due to its dissolution.  This can only be effectuated through the extension of the Liquidating Trust's term.

36.    Courts in this jurisdiction have granted similar relief. *See, e.g., In re Motors Liquidation Co. (f/k/a General Motors Corp.),* Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Dec. 7, 2015) (extending the duration of the GUC Trust for an additional three years

---

[9] In addition, the Liquidating Trust is currently pursuing a collection matter related to a previously settled RMBS litigation.

beyond its three-year initial term); *In re Fabrikant & Sons, Inc.*, Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Apr. 15, 2013) (extending the duration of the GUC Trust for three years beyond its five-year initial term); *In re Boylan Int'l, Ltd.*, 452 B.R. 43 (Bankr. S.D.N.Y. 2001) (extending the duration of the trust for an additional two years to permit the trustee an opportunity to continue its prosecution of a malpractice claim, the estate's "primary asset").

**B.    Final Decrees**

37.    Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." Bankruptcy Rule 3022 further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

38.    The phrase "fully administered" is not defined by the Bankruptcy Code. As one court has noted, that term could mean very different things: "[a]t one extreme, an estate could be fully administered when a Chapter 11 plan is confirmed and the estate dissolves. . . . [a]t the other extreme, an estate could be fully administered when all that is called for under a plan occurs." *In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990). Bankruptcy Rule 3022 is thus "intended to allow bankruptcy courts flexibility in determining whether an estate is fully administered." *Spierer v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 43 F. App'x 820, 822, 2002 U.S. App. LEXIS 16059, at *6-7 (6th Cir. 2002).

39.    The Advisory Committee Note to Bankruptcy Rule 3022 provides factors that a court should consider in determining whether an estate has been fully administered, including:

- whether the order confirming the plan has become final;
- whether deposits required by the plan have been distributed;

14

- whether the property proposed by the plan to be transferred has been transferred;

- whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

- whether payments under the plan have commenced; or

- whether all motions, contested matters, and adversary proceedings have been finally resolved.

1991 Advisory Comm. Note to Fed. R. Bankr. P. 3022 (the "**Advisory Committee Note**").

40.     Generally, courts weigh the factors set forth by the Advisory Committee Note in determining whether an estate has been fully administered while keeping in mind that the final decree in and of itself does not "adjudicate any rights between the parties, and is more of an administrative step to allow the clerk's office to dispose of the fully administered case file." *In re Kliegel Bros. Universal Elec. Stage Lighting Co.*, 238 B.R. 531, 541 (Bankr. E.D.N.Y. 1999) (citing *In re Beechknoll Nursing Homes, Inc.*, 202 B.R. 260, 261 (Bankr. S.D. Ohio 1996)); *see also Ericson v. IDC Servs. (In re IDC Servs.)*, No. 93 B 45992, 1998 U.S. Dist. LEXIS 13449, at *9 (S.D.N.Y. 1998).

41.     Although courts apply the factors set forth by the Advisory Committee Note, no one factor is dispositive. *See In re Kliegel Bros.*, 238 B.R. at 541; *In re JMP-Newcor Int'l*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998). The Advisory Committee Note makes clear that in any event, a court should not keep a case open "only because of the possibility that the court's jurisdiction may be invoked in the future" or because payments remain to be made under the plan. Thus, even if all of the Advisory Committee Note factors are not satisfied, a court can nevertheless determine that issuance of a final decree is warranted. *See, e.g., In re Federated Dep't Stores*, 43 F. App'x at 823, 2002 U.S. App. LEXIS at *9 (affirming issuance of final decree despite outstanding litigation of claims that could take many years to resolve); *In re*

15

*Pacor, Inc. and Pacor Material Supply Co.*, No. 95-294, 1995 U.S. Dist. LEXIS 8106, at *2 (E.D. Pa. June 13, 1995) (closing case although it could take fifty years to make disbursements to claimants); *In re JMP-Newcor Int'l*, 225 B.R. at 465 (issuing final decree although adversary proceeding pending and certain disbursements remained to be made).

42.     Because the Liquidating Trust or the Borrower Claims Trust, as appropriate, will make all distributions to holders of any Allowed Claims against GMACM or RFC from funds that have already been transferred to the Liquidating Trust or Borrower Claims Trust pursuant to the Plan, it is not necessary to continue to administer  separate cases for these Closing Debtors.  In addition, ResCap, will continue to report disbursements and pay quarterly fees on a quarterly basis.  Accordingly, no creditor will be harmed by the relief sough herein, because the Liquidating Trust or Borrower Clams Trust, as applicable, will make distributions on allowed claims (or claims allowed in the future) as provided for in the Plan.

43.     Entry of the Final Decree is thus appropriate here because the Chapter 11 Case of the Closing Debtors have been "fully administered" within the meaning of section 350(a) of the Bankruptcy Code.  Specifically:

- the Confirmation Order is a Final Order;

- the Plan went effective on December 17, 2013; and

- no payments will need to be made by GMACM or RFC on account of Allowed Claims in their cases, as all payments will be made from the Liquidating Trust or Borrower Claims Trust, as applicable;

44.     Closing the case at issue will benefit the estates and Court by reducing the costs and burdens attendant to keeping open the case of the Closing Debtors where no further relief will be required for the administration of the Closing Debtors' estates.

16

45.    As previously stated, prior to filing this Motion, the Liquidating Trust provided the United States Trustee with a copy of this Motion and has been advised that the United States Trustee has no objection to the relief requested herein.

46.    To the extent any disputes arise in connection with the Plan or the Final Decree, the Liquidating Trust requests that this Court retain jurisdiction in connection with such disputes, as provided in Article XII of the Plan.

47.    Similar relief has been granted by the Court in other cases.  *See In re Legend Parent, Inc.*, No. 14-10701 (RG) (Bankr. S.D.N.Y. Aug. 28, 2014) (closing cases of certain Debtors)*; In re Pulp Finish 1 Co. (f/k/a Journal Register Co.)*, No. 12-13774 (SMB) (Bankr. S.D.N.Y. Nov. 18, 2013) (same); *In re Gen. Mar. Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. Sept. 23, 2013) (same); *In re Motors Liquidation Corp. (f/k/a In re General Motors Corp.)*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Apr. 18, 2013) (same).

48.    A closing report (the "**Closing Report**") is annexed hereto as **Exhibit B-1** in accordance with Local Rule 3022-1 for the Southern District of New York.

**NO PRIOR REQUEST**

49.    No previous motion for the relief sought herein has been made to this or any other court.  The Liquidating Trust reserves the right to seek further extensions of its term, if an additional extension becomes necessary and is in the best interests of Unitholders.

**NOTICE**

50.    Although the Liquidating Trust does not believe that the relief requested herein will have a prejudicial effect on any creditor or other party in interest, out of an abundance of caution, notice of this Motion has been given to the parties identified on the Special Service List and General Service List (as such terms are defined in  Notice, Case Management, and Administrative Procedures approved by the Court [Docket No. 141]), as well as to the defendants

in the RMBS Litigations and the insurance coverage dispute.  The Liquidating Trust submits that no other or further notice of the Motion is necessary.

## CONCLUSION

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter the proposed order attached hereto as Exhibit A (i) extending the Liquidating Trust's term to and including December 17, 2019, without prejudice to further extensions and (ii) approving entry of the Final Decree of the Closing Debtors, and grant the Liquidating Trust such other and further relief as the Court deems appropriate.

Dated: New York, New York
         November 5, 2018

> KRAMER LEVIN NAFTALIS & FRANKEL LLP
>
> /s/ Joseph A. Shifer
> Kenneth H. Eckstein
> Douglas H. Mannal
> Joseph A. Shifer
> 1177 Avenue of the Americas
> New York, New York 10036
> Telephone: (212) 715-9100
>
> *Counsel for the ResCap Liquidating Trust*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

## <u>ORDER EXTENDING THE TERM OF THE RESCAP LIQUIDATING TRUST</u>

  This matter coming before the Court on the motion (the "**Motion**")[1] filed by the

ResCap Liquidating Trust, which is successor in interest to the debtors (collectively, the

"**Debtors**") in the above-captioned chapter 11 cases, for entry of an order pursuant the terms of

the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the*

*Official Committee of Unsecured Creditors* [Docket No. 6065-1]  (the "**Chapter 11 Plan**"),

extending the term of the Liquidating Trust for an additional one year; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 11 U.S.C. § 105

and 28 U.S.C. § 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy

Court Judges of the District Court for the Southern District of New York, dated January 31, 2012

(Preska, C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided; and no other or further notice need be provided; and the Court having reviewed the Motion

and the Declaration of Jill Horner in Support of the Motion; and the Court having determined that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.       The Motion is granted as provided herein.

2.       The duration of the Liquidating Trust, as described in Section 12.1(a) of the Liquidating Trust Agreement, is extended through and including December 17, 2019, without prejudice to the Liquidating Trust's ability to (i) seek further extensions or (ii) dissolve the Liquidating Trust in accordance with the Chapter 11 Plan and the Liquidating Trust Agreement.

3.       The Court shall retain jurisdiction relating to the interpretation and implementation of this Order.

Dated:    _____, 2018
          New York, New York

          _____
          UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Final Decree**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-------------------------------------------------------------

### FINAL DECREE PURSUANT TO SECTION 350(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3022 <u>CLOSING CERTAIN OF THE DEBTORS' CHAPTER 11 CASES</u>

This Court having considered the motion (the "**Motion**")[1] of the ResCap Liquidating Trust (the "**Liquidating Trust**"), successor in interest to the debtors (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for a final decree in the Chapter 11 Cases of GMAC Mortgage, LLC and Residential Funding, LLL (the "**Closing Debtors**") as more fully set forth in the Motion; and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.); and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors, and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted as provided herein.

2.    Pursuant to section 350(a) of the Bankruptcy Code and Rule 3022 of the Bankruptcy Rules, a final decree is hereby entered in the cases of the Closing Debtors and such cases are closed.

3.    The Liquidating Trust shall provide the Office of the United States Trustee with an estimate of the disbursements made by the Closing Debtors from the Petition Date through the date hereof, and the Liquidating Trust shall pay any fees owing under 28 U.S.C. § 1930(a)(6) in connection therewith.  The Debtors shall continue to report disbursements and pay any fees owing under 28 U.S.C. § 1930(a)(6) on a quarterly basis for the Chapter 11 Cases of Residential Capital, LLC.

5.    This Court shall have jurisdiction with respect to issues arising in connection with the Plan or under this Final Decree.

Dated: _____, 2018
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**NO OBJECTION**:

OFFICE OF THE UNITED STATES TRUSTEE
SOUTHERN DISTRICT OF NEW YORK

By:___ /s/ Brian S. Masumoto_____
        Trial Attorney

## **EXHIBIT B-1**

**Closing Report**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

------------------------------------------------------------

### CLOSING REPORT PURSUANT TO LOCAL BANKRUPTCY RULE 3022-1 FOR GMAC MORTGAGE, LLC AND RESIDENTIAL FUNDING, LLC

　　　　　　To the best of my knowledge and belief, the following is a breakdown of the disbursements made in these Chapter 11 Cases:[1]

FEES AND EXPENSES (from case inception):

$151,867,288.01　　　FEES for ATTORNEYS for DEBTORS[2]

$252,281,734.40　　　OTHER PROFESSIONAL FEES and EXPENSES[3]

_____N/A_____　　　TRUSTEE FEE (if applicable)

_____N/A_____　　　FEE for ATTORNEY for TRUSTEE (if applicable)

_____N/A[4]_____　　　% DIVIDEND PAID/TO BE PAID

---

[1] This Closing Report has been prepared for the purpose of obtaining a Final Decree in the Chapter 11 Case of GMAC Mortgage, LLC and Residential Funding, LLC. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors* [Docket No. 6065-1] (the "**Plan**"). All amounts disclosed herein reflect the fees and expenses disbursed on behalf of all of the Debtors in these jointly administered Chapter 11 Cases through the Effective Date of the Plan.

[2] Includes the aggregate fees and expenses of attorneys for all of the Debtors. *See Order Granting Applications for Allowance of Interim and Final Compensation and Reimbursement of Expenses* [Docket No. 7256] and *Order Clarifying Order Approving Final Application for Fees and Expenses of Morrison Cohen LLP* [Docket No. 7263].

[3] Includes fees and expenses for all other estate professionals. *See Order Granting Applications for Allowance of Interim and Final Compensation and Reimbursement of Expenses* [Docket No. 7256].

[4] As disclosed in the *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "**Disclosure Statement**") [Docket No. 4819], projected recoveries to unsecured creditors were as follows: 36.3% for creditors with Allowed Unsecured Claims against the ResCap Debtors, 30.1% for creditors with Allowed Unsecured Claims against the GMACM Debtors, 9.0% for creditors with Allowed Unsecured Claims against the RFC Debtors, and 100% for creditors with Allowed Unsecured Claims against ETS. Actual recoveries to unsecured creditors may vary.

☒    FUTURE DIVIDENDS (check if % of future dividend under plan
not yet determinable)

STEPS TAKEN TO CONSUMMATE PLAN:
☒    Initial distribution under the plan completed.[5]
☐    Other: (explain)

Dated: New York, New York
November 5, 2018

RESCAP LIQUIDATING TRUST

By Greylock Partners, LLC
as Liquidating Trust Manager

By: /s/ John J. Ray III
Name: John J. Ray III
Title:  Managing Director

---

[5] On or about the Effective Date, the Liquidating Trust made the distributions required under the Plan, including the distribution of Units to holders of certain Allowed Claims and the Disputed Claims Reserve.  To date, the Liquidating Trust has distributed $3,140,493,750 to Unitholders.

## EXHIBIT C

**Horner Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

------------------------------------------------------------

**DECLARATION OF JILL HORNER IN SUPPORT OF THE**
**MOTION FOR (I) AN ORDER EXTENDING THE TERM OF**
**THE RESCAP LIQUIDATING TRUST AND (II) A FINAL DECREE**
**<u>CLOSING CERTAIN JOINTLY ADMINISTERED CHAPTER 11 CASES</u>**

I, Jill Horner, hereby declare as follows:

1.    I serve as the Chief Financial Officer for the ResCap Liquidating Trust (the "**Liquidating Trust**"), and from May 2013 to December 17, 2013, I served as Chief Finance Executive for Residential Capital, LLC and its debtor-affiliates (collectively "**ResCap**"), as the debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**").  I have been employed by affiliates of ResCap since 2000, originally as the Manager of Financial Planning and Analysis for Residential Capital Group, a managerial division under Residential Funding Company, LLC.  I became a Senior Finance Officer for Originations on or around 2003 and expanded my role to include Financial Servicing Operations on or around 2007, a position I held until 2010, when I became interim Senior Financial Officer for the International Business Group.  In 2011, I became the ResCap Senior Director for Financial Planning and Analysis, a position I held until I became the Chief Finance Executive.

2.    In my role as Chief Finance Executive at ResCap, I was responsible for, among other things, operational accounting, financial forecasting and analytics, accounts payable processing, tax and treasury matters, including cash forecasting and cash management.  In my current position as Chief Financial Officer to the Liquidating Trust, among my other duties, I continue to assist the Trust in connection with the claims reconciliation process.  I am authorized to submit this declaration (the "**Declaration**") in support of the *Motion for (I) an Order Extending The Term of the ResCap Liquidating Trust and (II) a Final Decree Closing Certain Jointly Administered Chapter 11 Cases* (the "**Motion**").[1]

---

[1]    Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Motion.

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' and Liquidating Trust's operations and finances, information learned from my review of the Debtors' and Liquidating Trust's litigation case files, books and records, as well as other relevant documents, and information I have received through my discussions with other members of the Debtors' and Liquidating Trust management or other employees, professionals and consultant of the Debtors and the Liquidating Trust, and/or Kurtzman Carson Consultants LLC ("**KCC**"), the Debtors' notice and claims agent, or my opinion based upon my experience, expertise, and knowledge of the Debtors' and Liquidating Trust's litigation matters, financial condition and history.

4.      In making these statements based on my review of the Debtors' and Liquidating Trust's litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' and Liquidating Trust's employees, consultants or counsel, I have relied upon these employees, consultants, and counsel accurately recording, preparing, collecting, or verifying any such documentation and other information.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

5.      I am familiar with the affirmative litigations prosecuted by the Liquidating Trust, including the RMBS Litigations and the Preference Actions.  Further, I am familiar with the claims reconciliation process in these Chapter 11 Cases.  Since the Plan went effective, I, along with other members of the Liquidating Trust's management or other employees of the Liquidating Trust have continued the claims reconciliation process, analyzed claims, and determined the appropriate treatment of the same.  In connection with such review and analysis, where applicable, the Liquidating Trust has reviewed (i) information supplied or verified by

personnel in departments within the Debtors' or Liquidating Trust's various business units, (ii) the Debtors' and Liquidating Trust's books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases. Considerable resources and time have been expended to ensure a high level of diligence in reviewing and reconciling the proofs of claim filed in these Chapter 11 Cases. Such claims were reviewed and analyzed by the appropriate personnel and professional advisors.

6.      In the approximately five years since its creation, the Liquidating Trust's management, employees and professionals have worked diligently to pursue the Liquidating Trust's objectives in a manner that maximizes recoveries to Unitholders. In accordance with the Debtors' Chapter 11 Plan, the Liquidating Trust was created on December 17, 2013 (*i.e.*, the Effective Date under the Plan), to, among other things, (i) wind-down the Debtors' non-cash assets, (ii) resolve non-Borrower claims asserted against the Debtors, (iii) pursue litigation on behalf of the Debtors' estates, and (iv) make periodic distributions to Unitholders. Since the Chapter 11 Plan's Effective Date, the Liquidating Trust has made tremendous progress towards these goals.

7.      Specifically, since its creation, the Liquidating Trust has, among other things, (i) resolved all non-Borrower Claims, (ii) initiated 87 litigations against correspondent lenders that have yielded over $1.1 billion in settlements as of the date hereof, with the Liquidating Trust continuing to pursue 7 such litigations, and (iii) distributed over $3.14 billion to Unitholders. The following chart summarizes the distributions made to date by the Liquidating Trust to Unitholders:

| Summary of Distributions to Unitholders | | | | |
|---|---|---|---|---|
| Distribution # | Date Declared | Record Date | Distribution Date | Total Amount Distributed | Amount Per Unit |
| 1 | N/A | 12/17/2013 | 12/27/2013 | $1,765,000,000 | $17.65 |
| 2 | 5/15/2014 | 5/23/2014 | 6/9/2014 | $115,000,000 | $1.15 |
| 3 | 9/18/2014 | 10/2/2014 | 10/17/2014 | $150,000,000 | $1.50 |

3

| | | | | | |
|---|---|---|---|---|---|
| 4 | 3/6/2015 | 3/16/2015 | 3/31/2015 | $200,000,000 | $2.00 |
| 5 | 5/3/2017 | 5/18/2017 | 6/2/2017 | $200,000,000 | $2.00 |
| 6 | 8/2/2017 | 8/17/2017 | 9/1/2017 | $150,000,000 | $1.50 |
| 7 | 11/16/2017 | 11/27/2017 | 12/12/2017 | $140,000,000 | $1.4156 |
| 8 | 12/4/2017 | 12/14/2017 | 12/29/2017 | $100,000,000 | $1.0112 |
| 9 | 5/25/18 | 6/28/2018 | 7/13/2018 | $350,000,000 | $3.5403 |
| TOTAL | | | | $3,140,493,750[2] | $31.7671 |

8.    To date, approximately 7,499 unsecured, secured, priority, and administrative proofs of claim (collectively, the "**Claims**") have been filed in these cases, including late filed claims, with asserted liabilities in excess of $110.0 billion, plus unliquidated amounts.  The Claims consist of approximately 3,040 Borrower Claims with asserted liabilities of approximately $15.5 billion, plus unliquidated amounts, and approximately 4,459 Non-Borrower Claims with asserted liabilities of approximately $94.5 billion, plus unliquidated amounts.   In addition, approximately 6,189 additional unsecured, secured, priority, and administrative claims were identified in the Schedules (including contingent, unliquidated, and disputed claims).  To date, all Non-Borrower Claims with asserted liabilities of approximately $94.5 billion and all Borrower Claims with asserted liabilities of approximately $15.5 billion have been resolved, expunged or withdrawn. In addition, on October 22, 2018, the Court entered the *Order Authorizing Termination of Special Reserve Fund, Final Distribution to GMACM Borrower Trust Claimants, Second Distribution to RFC Borrower Trust Claimants, and Other Relief* [Docket No. 10565].

9.    Notwithstanding the Liquidating Trust's substantial progress and the distributions made to Unitholders to date, there remains additional work that must be completed to fully monetize and distribute all of the Liquidating Trust's remaining assets in a manner that

---

[2] On September 29, 2017, 1,108,677 Units were cancelled, and on March 31, 2018, 31,969 Units were cancelled. Accordingly, there are 98,859,354 Units outstanding, with approximately $30 million of funds returned to the Liquidating Trust on account of the cancelled Units.

maximizes total distributions to Unitholders.  The Liquidating Trust will be unable to complete all of these tasks in a manner most beneficial to Unitholders if it dissolves before the third anniversary of the Effective Date.   For example, the litigation against the remaining correspondent lender defendants is ongoing and additional time is needed to either settle these cases or complete trial.  Accordingly, the Liquidating Trust must remain in existence to continue its work of winding down its non-cash assets, prosecuting affirmative litigations, and resolving disputed claims.

### i.    Winding Down Non-Cash Assets

11.    Although the Debtors sold a majority of their assets pursuant to the Asset Sales, the Liquidating Trust still holds certain assets.  The following chart describes the non-cash assets held by the Liquidating Trust as of September 30, 2018:[3]

| Asset Type | Gross Balance (in $000's) | Carrying Value (in $000's)[4] |
|---|---|---|
| Mortgage loans | $      20,328 | $      16,499 |
| Servicing advances | 28,033 | 7,950 |
| Interest receivable | 720 | 720 |
| Real estate owned | 1,079 | 175 |
| Trading securities | 17,368 | 12,202 |
| Other receivables | 6,348 | 6,348 |
| Other assets | 7,177 | 7,177 |
| **Total non-cash assets** | **$      81,053** | **$      51,071** |

---

[3] Assets may include assets held by non-Debtor subsidiaries that are being wound down by the Liquidating Trust.

[4] The Liquidating Trust's carrying value of mortgage assets uses internal models to determine the cash flows expected to be received over the life of the loan. The Liquidating Trust's recovery estimates and assumptions are based on loan level attributes including, but not limited to, delinquency status, aging, and claim versus loan status. The Liquidating Trust carrying value reflects the net present value of the cash flows expected to be received over the lifetime of the mortgage assets. Because of the uncertainties associated with estimating the amounts, timing and likelihood of possible outcomes, actual results could differ from the Liquidating Trust's estimates.

ii.   **Affirmative Litigations**

12.    Since the Effective Date, the Liquidating Trust has initiated affirmative litigations against various parties.   Importantly, the Liquidating Trust commenced 87 affirmative litigations against parties that sold defective loans to the Debtors prior to the Petition Date that were subsequently repackaged into residential mortgage-backed securities (the "**RMBS Litigations**"), asserting several billion dollars in damages, and resulting in settlement recoveries of approximately $1.1 billion as of the date hereof.   The Liquidating Trust also commenced 39 preference actions (the "**Preference Actions**"), asserting approximately $30.8 million in damages, and resulting in the collection of approximately $2.3 million.   The Liquidating Trust is also a plaintiff in a pending adversary proceeding related to an insurance coverage dispute with certain insurers, with the Liquidating Trust asserting a right to reimbursement for defense costs and pre-bankruptcy settlements paid to certain class action plaintiffs. The following chart summarizes the current status of pending litigations as of the date hereof:

| Litigation Type | Number of Litigations | Jurisdiction |
|---|---|---|
| RMBS[5] | 7 | Federal District Court Minnesota |
| Insurance Coverage Dispute | 1 | Federal Bankruptcy Court |

13.    As of the date hereof, there are approximately 7 pending RMBS Litigations and no pending Preference Actions.

---

[5] In addition, the Liquidating Trust is currently pursuing a collection matter related to a previously settled RMBS litigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated:  November 5, 2018

                                /s/ Jill Horner       
Jill Horner
Chief Financial Officer for the ResCap
Liquidating Trust

7