**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Debtors. | Case No. 12-12020 (MG)<br>Chapter 11<br>Jointly Administered<br><br>Objection Date: May 21, 2019 @ 4:00 pm. (ET)<br>Hearing Date: May 28, 2019 @ 11:00 am. (ET) |

**MOTION AND INCORPORATED MEMORANDUM OF LAW OF THE *ROTHSTEIN* PLAINTIFFS (CLAIM NOS. 4074 AND 3966) TO AUTHORIZE DISTRIBUTION OF THE NET SETTLEMENT FUND TO ELIGIBLE CLASS MEMBERS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

    A.    Notice to the Settlement Class .................................................................................. 4

    B.    The Settlement Administration ................................................................................ 5

ARGUMENT .................................................................................................................................. 7

I.    The Court Should Authorize Distribution of the Net Settlement Fund ............................. 7

    A.    The Release of Claims .............................................................................................. 8

    B.    Retention of Proof of Claim Forms and Other Documents ..................................... 9

    C.    Payment of Administration Costs to the Settlement Administrator and Plaintiffs' Forensic Accounting Expert ..................................................................................... 9

CONCLUSION ............................................................................................................................. 10

## INTRODUCTION

On May 24, 2016, this Court granted final approval of the settlement of the borrower class action brought by Named Plaintiffs Landon Rothstein, Jennifer Davidson, Robert Davidson, and Ihor Kobryn, individually and on behalf of the putative class (collectively, the "Rothstein Plaintiffs" or "Plaintiffs") (Claim Nos. 4074 and 3966). The Order, entered by the Court in this case, provides that the Court retains continuing jurisdiction over, *inter alia*, the "implementation of this Settlement and any award or distribution of the Settlement Fund, including any interest earned thereon" and "disposition of the Settlement Fund ...." *See* Final Judgment and Order of Dismissal with Prejudice, ¶ 23 [Doc. 9907] (the "Final Approval Order").[1]

Now, pursuant to Fed. R. Bankr. P. 7023 and 9019, Plaintiffs, on behalf of the Class, respectfully submit this Motion and incorporated Memorandum of Law for an Order to Authorize Distribution of the Net Settlement Fund ("Distribution Order") authorizing, *inter alia*: (i) distribution of the Net Settlement Fund established by the Settlement of this action to eligible Class Members in accordance with the Plan of Allocation, as described more fully in the Declaration of Jay Geraci in Support of Plaintiffs' Motion for Approval of Distribution of Net Settlement Fund, dated May 3, 2019 ("Geraci Decl.") filed concurrently herewith; (ii) the Settlement Administrator to reallocate to authorized Class Members, if economically feasible, any residual funds remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise) six (6) months after the initial distribution, and thereafter to

---

[1] All capitalized terms not otherwise defined shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement with Rothstein Plaintiffs, dated December 29, 2015 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Mark A. Strauss dated January 11, 2016, and which was filed with the Court on January 11, 2016 [Doc. 9491-3].

1

permit Class Counsel to donate, subject to Court approval, any remaining balance to a non-sectarian, not-for-profit, 501(c)(3) organization serving the public interest; (iii) the payment of Administration Costs to the court-appointed Settlement Administrator, KCC Class Action Services LLC ("KCC"), in the amount of $65,000, and to Plaintiffs' Forensic Accounting Expert, Kanter Financial Forensics, LLC ("Kanter Financial"), in the amount of $5,321.25; (iv) the destruction by the Settlement Administrator of any records in paper form relating to the Settlement one year after final distribution of the Net Settlement Fund, and records in electronic form relating to the Settlement three years after final distribution of the Net Settlement Fund; and (v) finally and forever barring further claims against the Settlement Fund.

Pursuant to the Stipulation, the Settling Defendants have no interest in the relief sought by this motion.[2]

## BACKGROUND

Plaintiffs are residential mortgagors whose loans were serviced by GMAC Mortgage LLC ("GMACM") and who were charged by GMACM for Lender-Placed Insurance ("LPI"). Plaintiffs alleged that GMACM perpetrated a scheme to overcharge Plaintiffs for LPI in

---

[2] *See* Doc 9491-3, Ex. 1 ¶ 20 ("The Released Parties shall have no responsibility or liability for the acts or omissions of the Settlement Administrator, Plaintiffs' Counsel or their agents, as described herein."), ¶ 21 ("The settlement contained herein is not a claims-made settlement. As of the Settlement Effective Date, neither the Settling Defendants nor the Debtors' estates shall have any right to the return of the Settlement Fund or any portion thereof after the Settlement Amount has been remitted to the Escrow Agent, irrespective of the amount or value of the distributions or uncashed distributions to the members of the Settlement Class from the Net Settlement Fund."), ¶ 33 ("Except as otherwise expressly provided for herein … the Settling Defendants, the Borrower Claims Trust, the Borrower Claims Trustee, the Borrower Claims Trust Committee and their respective counsel shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator, the payment or withholding of taxes owned by the Settlement Fund, or any losses incurred in connection therewith."), ¶¶ 31-32.

violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), and applicable state law. On May 24, 2016, this Court granted final approval of the class action Settlement which resolved Plaintiffs' Bankruptcy Proofs of Claim in exchange for an allowed unsecured claim not subject to subordination in the amount of $13 million against GMACM. *See* Docs. 9491-3, 9907. The Court dismissed the Bankruptcy Proofs of Claim with prejudice. Doc. 9907. It awarded Class Counsel fees of 35% of the Settlement Fund plus reimbursement of Class Counsel's Litigation Expenses in the amount of $226,938.29. Doc. 9907 ¶¶ 15, 16. It also awarded incentive awards to the Named Plaintiffs in the amount of $2,500 each. *Id.* at ¶ 18.

The Court authorized Class Counsel to retain KCC as Settlement Administrator to supervise and administer the notice procedure as well as to process the distributions to qualified Class Members. Doc. 9609 ¶ 7. KCC has extensive experience in handling the administration of class action settlements.

The Stipulation provides that distribution of the Net Settlement Fund will not occur until after the Borrower Claims Trust has distributed the full Settlement Amount to the Escrow Agent. Doc. 9491-3, ¶ 28. Following receipt of an interim, partial distribution, the Escrow Agent received the full Settlement Amount from the Borrower Claims Trust on or about November 13, 2018. Declaration of Mark Strauss in Support of Motion of Rothstein Plaintiffs to Authorize Distribution of the Net Settlement Fund ("Strauss Decl."), ¶ 4. The total amount that the Escrow Agent received from the Borrower's Claim Trust was $6,253,088. *Id.* at Ex. A.[3] As of May 2,

---

[3] Plaintiffs' Allowed Borrower Claim was in Class GS-5 of the Chapter 11 Plan, which were estimated under the Disclosure Statement to yield a $0.30 per $1 recovery from the Borrower Claims Trust. In fact, the claims yielded approximately $0.48 per $1 recovery.

3

2019, the balance of the Settlement Fund, including accrued interest, is $3,904,189.74. The Settlement Fund continues to accrue interest daily. *See id.* ¶ 7.[4]

The Stipulation provides for the distribution of the Net Settlement Fund in accordance with the Court-approved Plan of Allocation among qualified Class Members from whom GMACM recouped or recovered LPI charges. Doc 9491-3, Ex. 1 ¶ 37.

### A.     Notice to the Settlement Class

Pursuant to this Court's Order Preliminarily Approving Proposed Settlement with the Rothstein Plaintiffs and Providing for Notice (the "Preliminary Approval Order") [Doc. 9606], KCC distributed 143,973 Postcard Notices. Geraci Decl. ¶ 10. KCC also caused the Publication Notice to be published in USA Today. Geraci Decl. ¶ 9. The Postcard Notices and the Publication Notice directed Class Members to a case-specific website established by KCC,[5] on which KCC posted downloadable copies of the full Notice. Geraci Decl. ¶ 8. KCC also caused an Interactive Voice Response (the "IVR") system to be established at a toll-free number (844-830-5220) to provide information about the Settlement and to record requests for copies of the Notice. Geraci Decl. ¶ 7.

The Notice provided a background of the litigation, described the circumstances leading up to the Settlement, supplied the details of the Settlement and the process leading up to the Settlement, gave notice of the Final Approval Hearing, and provided instructions for Class Members regarding exclusion from the Settlement, objection to the terms of Settlement and/or

---

[4] An analysis of the Settlement Fund is attached as Exhibit A to the Strauss Declaration. This analysis reflects the amounts received by the Escrow Agent, earned in interest, deducted for Attorneys' Fees, Litigation Expenses, and Administration Costs, being reserved for taxes, and which remain for Distribution to eligible Class Members.

[5] *See* www.GMACMortgageLenderPlacedInsuranceClassActionSettlement.com.

the application for attorneys' fees and reimbursement of expenses, and attendance at the Final Approval Hearing. *See* Doc. 9491-3, Ex. A-1. In response to the Notice efforts, through April 26, 2016, KCC received no objections and eight requests for exclusion. Geraci Decl. ¶¶ 11-12.

**B.    The Settlement Administration**

The Plan of Allocation provides that the Net Settlement Fund shall be allocated to Settlement Class Members *pro rata* based on the Recognized Loss of each Class Member relative to the total Recognized Losses of all Class Members. Doc. 9491-3, ¶ 37. There is no claims process. Instead, the identities and Recognized Losses of each qualified Class Member have been determined by computerized analysis of Class Data produced by the Settling Debtors.[6] Doc. 9491-3, ¶ 37. Such analysis has been conducted by KCC in coordination with Kanter Financial and under the supervision of Class Counsel. Geraci Decl. ¶ 18. In accordance with the Plan of Allocation, each Class Member's Recognized Loss has been determined by KCC based on the total amount that GMACM recouped or recovered for LPI from the loan payments of such Class Member during the Class Period. Doc. 9491-3, Ex. 1 ¶ 37.

As set forth in the Stipulation and the Notice, the Recognized Losses of a small percentage of Class Members were unable to be determined by computerized analysis due to errors and discrepancies in the Class Data. Doc. 9491-3, Ex. 1 ¶ U; *id.* Ex. A-1, ¶ 31. In accordance with the Stipulation and the Notice, those effected borrowers are deemed Class

---

[6] The Class Data consists of computerized records of GMACM's LPI transactions and borrower payment histories which were provided to Class Counsel by the Settling Debtors in order to effectuate the Settlement. *See* 9491-3, Ex. 1 ¶ P.

Members, and KCC determined their Recognized Losses using a formula set forth in the Plan of Allocation and approved by the Court.[7] Doc. 9491-3, Ex. 1 ¶ 38; *id.* Ex. A-1, ¶ 48.[8]

Additionally, pursuant to the Stipulation and the Plan of Allocation, only Class Members whose allocations are $10 or more are entitled to receive distributions. Doc. 9491-3, Ex. 1 ¶ 38; *id.* Ex. A-1 ¶ 48. The total of all Class Member allocations below $10 constitutes a gross-up residual. In accordance with the Plan of Allocation, the gross-up residual has been re-allocated among the Class Members whose allocations are $10 or more. Geraci Decl. ¶ 20; Doc. 9491-3, Ex. 1 ¶ 38.

As explained in the Geraci Declaration, KCC has identified 90,862 Class Members who are eligible to receive distributions in accordance with the Plan of Allocation. Geraci Decl. ¶ 22. Upon approval of the Distribution Order, KCC will issue settlement checks to the eligible Class

---

[7] Specifically, the Plan of Allocation provides that, with respect to such Class Members, the amount recouped or recovered by GMACM shall be computed to be 42% of the LPI charge that GMACM recorded. This percentage reflects the rate at which GMACM recouped or recovered LPI charges from Class Members in the aggregate during the Class Period, according to the computerized analysis conducted by Plaintiffs' Forensic Accounting Expert. Doc. 9491-3, Ex. 1, Ex. A-1, ¶ 48.

[8] It has come to the attention of Class Counsel that, due to an oversight, the Class Members whose Recognized Losses were unable to be determined by computerized analysis were not included in the list of Class Members to whom KCC was instructed to mail Postcard Notice. Approximately 2,125 Class Members, or 1.4% of the Class were affected, of whom 306 are eligible to receive Distributions, which total $6,837.73. Geraci Decl. ¶ 24. While this oversight is regrettable, Class Counsel does not believe it is material or prejudicial given the *de minimis* number of Class Members involved, that KCC provided Publication Notice, that Class Members are not required to file claims, and that all the affected Class Members who are eligible to receive Distributions will do so. Accordingly, no Class Members who were otherwise eligible to receive Distributions will be harmed in any way. *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) ("Due process does not require actual notice, but rather a good faith effort to provide actual notice."). Those 306 Class Members represent 0.3% of the Class Members eligible to receive distributions.

Members at the addresses listed in the Class Data (as updated using the National Change of Address Database or by a forwarding address supplied by the Class Member). *Id.* The average settlement check will be in the amount of $42.00. *Id.*

KCC has identified approximately 56,100 Class Members who are ineligible to receive distributions under the Plan of Allocation because their allocations were determined to be less than $10. Geraci Decl. ¶ 23. KCC has determined that the gross-up residual from those Class Members is $257,135.00. *Id.* KCC re-allocated that sum to eligible Class Members in accordance with the Plan of Allocation. *Id.*

## ARGUMENT

### I. The Court Should Authorize Distribution of the Net Settlement Fund

The Net Settlement Fund is ready to be distributed at this time. Plaintiffs respectfully request that the Court direct KCC to distribute the Net Settlement Fund to the eligible Class Members (those listed in Exhibit A to the Geraci Declaration)[9] who would receive a distribution amount of at least $10.00 pursuant to the Plan of Allocation. *See* 9491-3, Ex. 1-A ¶¶ 48-50. If these administrative determinations are approved, each of these eligible Class Members will receive a *pro rata* share of the Net Settlement Fund based on their Recognized Loss compared to the total Recognized Loss of all eligible Class Members (the "Distribution"). *Id.*

It may be expected that not all the Distribution checks to be issued to eligible Class Members will be cashed promptly. In order to encourage eligible Class Members to promptly cash their Distribution checks, and to avoid or reduce future expenses relating to unpaid

---

[9] Eligible Class Members are identified therein by anonymized number. The Settling Debtors initially provided Plaintiffs with the Class Data in anonymized form, *i.e.*, each borrower was assigned a unique identifying number, with all borrower Personally Identifiable Information, including borrower names, mailing addresses, property addresses, and loan account numbers removed. Doc. 9491-3, Ex. 1 ¶ R.

7

Distributions, Plaintiffs propose that all Distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION AFTER THE DATE OF DISTRIBUTION." Geraci Decl. ¶ 25. Plaintiff also propose that eligible Class Members who do not cash their Distribution checks within the time allotted shall irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks shall be available in any redistribution to other eligible Class Members.

Consistent with the terms of the Stipulation and the Plan of Allocation, Plaintiffs respectfully request that, if any funds remain in the Net Settlement Fund by reason of uncashed Distributions or otherwise, then after the Settlement Administrator has made reasonable efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their Distributions, if economically feasible, any balance remaining in the Net Settlement Fund six (6) months after the initial Distribution shall be redistributed to eligible Class Members who have cashed their initial Distributions and who would receive at least $10.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution. *See* Doc. 9491-3, Ex. A ¶ 38; *id.* A-1 ¶ 48.

Thereafter, the Claims Administrator, following consultation with Class Counsel, shall donate, pursuant to the doctrine of *cy pres*, any remaining funds in the Net Settlement Fund, if any, to a non-sectarian, not-for-profit 501(c)(3) organization serving the public interest, to be designated by Class Counsel and approved by the Court. *Id.*

### A. The Release of Claims

In order to allow the full and final distribution of the Net Settlement Fund, it is respectfully requested that the Court bar any further claims against the Net Settlement Fund beyond the amount allocated to eligible Class Members, and to provide that all persons involved

in the review, verification, calculation, tabulation, or any other aspect of the processing of the allocations and Distributions to eligible Class Members herein, or otherwise involved in the administration or taxation of the Settlement Fund or Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement, provided, however, that the Court's distribution order shall not release any claim by Plaintiffs against the Settlement Administrator with respect to distributions, if any, if later discovered to have been made not substantially in accordance with the Stipulation, the Plan of Allocation, or any order of the Court.[10]

### B.  Retention of Proof of Claim Forms and Other Documents

Plaintiffs respectfully requests that the Court authorize KCC to destroy any records in paper form relating to the Settlement one (1) year after final distribution of the Net Settlement Fund, and records in electronic form relating to the Settlement three (3) years after final distribution of the Net Settlement Fund.

### C.  Payment of Administration Costs to the Settlement Administrator and Plaintiffs' Forensic Accounting Expert

Plaintiffs seek approval to pay Administration Costs in the amount of $65,000 to the Settlement Administrator, KCC, and in the amount of $5,321.25 to Plaintiffs' Forensic

---

[10] "No authorized claimant shall have any claim against the Named Plaintiffs or any of their counsel, based on the distributions made substantially in accordance with this Stipulation and/or orders of the Bankruptcy Court or the District Court. Except as otherwise expressly provided for herein, the Named Plaintiffs, the Settling Defendants, the Borrower Claims Trust, the Borrower Claims Trustee, the Borrower Claims Trust Committee and their respective counsel shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator, the payment or withholding of taxes owned by the Settlement Fund, or any losses incurred in connection therewith." 9491-3, Ex. 1, ¶ 33; id. Ex. 1-A, ¶ 49.

Accounting Expert, Kanter Financial. These deductions, if approved by the Court, will yield a Net Settlement Fund available for distribution of $3,833,868.49.

Pursuant to the Stipulation and the Notice, KCC and Kanter Financial Forensics were charged with responsibility for conducting the computerized analysis of the Class Data necessary to determine the identities and Recognized Losses of eligible Class Members as well as to determine the allocations of the Net Settlement Fund to which eligible Class Members are entitled. Doc. 9491-3, ¶¶ S-T, 37; *id.* Ex. 1-A, ¶¶ 29-31, 48-50. Additionally, KCC is charged with responsibility for administering the Distribution to eligible Class Members. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue the accompanying proposed Order Authorizing Distribution of Net Settlement Fund granting the relief sought herein.

Dated: May 3, 2019
New York, NY

Respectfully submitted,

**KIRBY McINERNEY LLP**

By: /s/ *Mark A. Strauss*
Mark A. Strauss
250 Park Avenue, Suite 820
New York, NY 10177
Tel: (212) 371-6600
Fax: (212) 751-2540

*Plaintiffs' Counsel*