**Hearing Date and Time:  August 6, 2019 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  July 29, 2019 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum
James A. Newton

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------
                                                      )
In re:                                                )    Case No. 12-12020 (MG)
                                                      )
RESIDENTIAL CAPITAL, LLC, *et al.*,    )    Chapter 11
                                                      )
                                   Debtors.    )    Jointly Administered
                                                      )
-------------------------------------------------------------

**MOTION FOR ENTRY OF AN ORDER (I) MODIFYING THE COURT'S ORDER
APPROVING PROCEDURES BY WHICH THIRD PARTIES MAY REQUEST AND
OBTAIN STIPULATED RELIEF FROM THE AUTOMATIC STAY TO COMMENCE
OR CONTINUE ACTIONS TO FORECLOSE ON SENIOR LIENS, (II) CLARIFYING
THE SCOPE OF THE PLAN INJUNCTION PROVISIONS, (III) TO THE EXTENT
NECESSARY, MODIFYING THE AUTOMATIC STAY AND
PLAN INJUNCTION PROVISIONS TO PERMIT THIRD PARTIES TO COMMENCE
AND COMPLETE ACTIONS TO FORECLOSE ON SENIOR LIENS
AND NON-MONETARY CAUSES OF ACTION SEEKING TO CLEAR OR QUIET
TITLE, AND (IV) MODIFYING THE COURT'S ORDER ESTABLISHING
PROCEDURES ENFORCING INJUNCTIVE PROVISIONS OF
THE PLAN AND CONFIRMATION ORDER**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "***Liquidating Trust***"), as successor in interest

to the debtors (collectively, the "***Debtors***") in the above-captioned cases, hereby moves (the

"***Motion***") for an order (the "***Proposed Order***"), substantially in the form attached hereto as

**Exhibit 1**, pursuant to sections 105(a), 105(d), 362(d), 524, and 1141 of title 11 of the United

States Code (the "***Bankruptcy Code***"), Rules 1015(c), 3020(d), 4001, and 9007 of the Federal

Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Article XII of the *Second*

*Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official*

*Committee of Unsecured Creditors* [Docket No. 6065-1] (the "***Plan***"), as confirmed by order of

this Court entered December 11, 2013 [Docket No. 6065] (the "***Confirmation Order***"):

(i) modifying the *Order Approving Procedures by Which Third Parties May Request and Obtain*

*Stipulated Relief from the Automatic Stay to Commence or Continue Actions to Foreclose Senior*

*Liens* [Docket No. 1824] (the "***Senior Lien Stay Relief Order***"); (ii) clarifying that the Plan

Injunction Provisions (as such term is defined below) contained in the Plan and Confirmation

Order permit the commencement and continuation of actions (each a "***Quiet Title Action***") by

third parties asserting non-monetary quiet title claims or other non-monetary relief against the

Liquidating Trust and/or one or more of the Debtors seeking to correct applicable land records in

instances where a mortgage loan was allegedly not properly released, transferred or assigned

(each a "***Quiet Title Claim***"); (iii) modifying the automatic stay, to the extent applicable, and

Plan Injunction Provisions, solely to the extent necessary, to permit third parties to commence (a)

Senior Lien Foreclosure Actions (as such term is defined below) or (b) Quiet Title Actions

against the Liquidating Trust and/or one or more Debtors; (iv) confirming that the Plan

Injunction Provisions shall continue to prohibit monetary claims against the Released Parties (as

defined in the Plan)[1] in connection with or related to (a) any Senior Lien Foreclosure Action or

(b) or any Quiet Title Action or the Debtors' alleged failure to properly release, transfer, or

assign mortgages during the time when one or more of them acted as the servicer of the loan in

---

[1]    The Plan defines "Released Party" to include "the Liquidating Trust, and each Ally Released Party, Debtor Released Party, and Exculpated Party, or the property or Estate of any Entity so released, discharged or exculpated." Plan Art. I.A.243. Among other parties, "Exculpated Party" includes the Debtors. Plan Art. I.A.102

issue or held an interest in such loan; and (v) modifying the Court's *Order Granting the Motion Establishing Procedures Enforcing Injunctive Provisions of the Plan and Confirmation Order* [Docket No 8303] (the "***Plan Injunction Procedures Order***").

## PRELIMINARY STATEMENT

1.      During the pendency of the chapter 11 Cases, on motion of the Debtors dated September 11, 2012 [Dkt. No. 1416] (the "***Senior Lien Stay Relief Motion***"), the Court entered the Senior Lien Stay Relief Order.  The Senior Lien Stay Relief Order approved an omnibus process developed by the Debtors to efficiently manage requests for relief from the automatic stay from the holders of senior mortgage liens on properties also subject to a subordinate mortgage serviced by a Debtor or in which a Debtor retained an interest.  Since the entry of the Senior Lien Stay Relief Order, the Debtors, and following the effective date of the Plan, the Liquidating Trust, have continued to comply with the terms of the Senior Lien Stay Relief Order and have efficiently processed hundreds of such requests.  As discussed below, in light of the advanced status of these chapter 11 cases, the Liquidating Trust requests modifications to the Senior Lien Stay Relief Order (and to the extent applicable, the automatic stay and Plan Injunction Provisions) that will vastly simplify the process while preserving the integrity of the Plan Injunction Provisions.

2.      Similarly, by this Motion, the Liquidating Trust requests, to the extent necessary, a modification of the automatic stay and Plan Injunction Provisions to permit third parties to commence and prosecute Quiet Title Actions. The requested modification is designed to allow third parties to seek requisite injunctive relief to address their Quiet Title Claims while protecting the Debtors and the Liquidating Trust from the assertion of any monetary claims by such parties.

3.      Lastly, based on the Liquidating Trust's experience in enforcing the terms of the Plan Injunction Procedures Order in state and federal courts, the Liquidating Trust requests that the Court modify the Plan Injunction Procedures Order to clarify that the Liquidating Trust is not required to initiate contempt proceedings in situations where plaintiffs have failed to comply with this Court's orders enforcing the Plan Injunction Provisions.

## JURISDICTION

4.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334, and Article XII of the Plan.  This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 105(d), 362(d), 524, and 1141.

## BACKGROUND

### A.      Case Background and the Bar Dates

6.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. The chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.      On July 13, 2012, the Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "***Supplemental Servicing Order***").  Subject to the terms and conditions set forth therein, the Supplemental

ny-1559155

Servicing Order modified the automatic stay applicable in these chapter 11 cases to permit the commencement of certain "actions involving the amount, validity and/or priority of liens commenced by third parties purporting to have a lien interest or other claim (the 'Third Party Claimants') with respect to properties that are subject to mortgages owned or serviced by the Debtors . . . ." *See* Supplemental Servicing Order ¶ 17.

8. On August 29, 2012, the Court entered its *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1309] (the "**Bar Date Order**"), establishing November 9, 2012 as the general claims bar date (the "**Bar Date**"). The Court subsequently entered an *Order Extending Deadline for Filing Proofs of Claim* [Docket No. 2093], extending the Bar Date to November 16, 2012.

9. Pursuant to the Bar Date Order, written notice of the Bar Date (the "**Bar Date Notice**") was (i) served by first-class mail on all creditors and other known holders of claims against the Debtors as of the date of the Bar Date Order at their last known addresses, as well as certain other parties in interest, and (ii) published in the *Wall Street Journal* (National Edition) and *USA Today* (National Edition). *See* Bar Date Order ¶¶ 12, 15.

10. The Bar Date Notice specified that all creditors "**MUST** file a proof of claim to . . . share in distributions from the Debtors' bankruptcy estates" or "**BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS, THEIR SUCCESSORS, [OR] THEIR CHAPTER 11 ESTATES**…." Bar Date Notice ¶¶ 1 & 6 (emphasis in original). Article VIII.B. of the Plan further provided that the claim of any creditor of the Debtors that failed to file a proof of claim by the applicable deadline:

> SHALL BE DEEMED DISALLOWED, DISCHARGED, RELEASED, AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY

DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE
PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF
THE BANKRUPTCY COURT.

(emphasis in original).

11.    The Confirmation Order also required that all holders of Administrative

Claims arising prior to the Effective Date (each as defined in the Plan) to file and serve requests

for payment of such Administrative Claims no later than thirty (30) business days following the

Effective Date "or be forever barred, estopped, and enjoined from asserting such Claims against the

Debtors, the Plan Trusts, or their assets or properties, and such Claims shall be deemed discharged as

of the Effective Date." *See* Confirmation Order ¶ 50(f).  On December 17, 2013, the Effective

Date of the Plan occurred and, therefore, the deadline for filing and serving any Administrative

Claims occurred on January 16, 2014. *See Notice of Entry of Confirmation Order Confirming*

*Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee*

*of Unsecured Creditors and Occurrence of Effective Date* [Docket No. 6137]; *Notice of the*

*Deadline and Procedures for Filing Certain Administrative Claims* [Docket No. 6138].

**B.    The Transfer of the Debtors' Servicing Business**

12.    By orders dated November 21, 2012, this Court approved the sale of the

Debtors' mortgage origination and servicing platforms to Ocwen Loan Servicing LLC

("***Ocwen***") and its designee, Walter Investment Management Corp. ("***Walter***") [Docket

No. 2246], and the sale of the Debtors' whole loan portfolio to Berkshire Hathaway, Inc. [Docket

No. 2247]. Green Tree Servicing LLC, a subsidiary of Walter, assumed certain of the rights and

obligations relating to the sale.

13.    The transactions comprising the sale of the Debtors' mortgage origination

and servicing platforms closed in two parts: the sale to Walter closed on January 31, 2013, and

the sale to Ocwen closed on February 15, 2013.

6

C.    **The Plan Injunction**

14.    On December 11, 2013, this Court entered the Confirmation Order

approving the terms of the Plan.  As described above, the Plan became effective on

December 17, 2013 and contains broad releases, exculpations, and injunctions in favor of the

Debtors, the Liquidating Trust, and the other Released Parties. Among other provisions, the Plan

provides that from and after the Effective Date, the holders of any and all claims that were

released in accordance with the Plan (including claims for which no proof of claim was filed by

the applicable bar date) are prohibited from "commencing or continuing in any manner or action

or other proceeding of any kind against any Released Party whether directly, derivatively or

otherwise, on account of or in connection with or with respect to any Released Claims[.]" Plan

Art. IX.I; *see also* Confirmation Order ¶ 40. The release and injunctive provisions provided for

in the Plan and Confirmation Order are referred to herein as the "***Plan Injunction Provisions***."

15.    Pursuant to Article XII of the Plan, this Court retained "exclusive

jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan . . . ,

including jurisdiction . . . to hear and determine any matter, case, controversy, suit, dispute, or

Causes of Action: (i) regarding the existence, nature, and scope of the releases, injunctions, and

exculpation provided under the Plan, and (ii) enter such orders as may be necessary or

appropriate to implement such releases, injunctions, and other provisions" and "to issue such

orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy

Code."

D.    **Entry of the Plan Injunction Procedures**

16.    On February 19, 2015, the Liquidating Trust filed the *Motion for Entry of*

*an Order Establishing Procedures Enforcing Injunctive Provisions of Plan and Confirmation*

*Order* [Docket No. 8158] (the "***Procedures Motion***").  The Procedures Motion requested

ny-1559155

authorization from the Court to implement procedures designed to facilitate the Liquidating

Trust's enforcement of the Plan Injunction Provisions against parties who were prosecuting

monetary claims or counterclaims against the Debtors (or the Debtors' current and former

directors, officers, and/or employees) but where such parties had failed to file proofs of claims in

the chapter 11 cases or for which the related proof of claim had been expunged (collectively, the

"***Litigating Parties***" and each a "***Litigating Party***").  The Court granted the Procedures Motion

and on March 13, 2015 entered the Plan Injunction Procedures Order.[2]

17.    The Plan Injunction Procedures Order authorizes the Liquidating Trust to

communicate with the Litigating Parties who in the good-faith determination of the Liquidating

Trust are prosecuting claims in violation of the Plan Injunction Provisions (collectively, the

"***Pending Litigations***" and each, a "***Pending Litigation***"). The terms of the order provide a full

and fair opportunity for the Litigating Parties to withdraw the Pending Litigations on a

consensual basis.

18.    Specifically, the Plan Injunction Procedures Order provides that upon

identifying any Pending Litigation, the Liquidating Trust may send a letter to the Litigating Party

requesting dismissal of the litigation with respect to the Debtors within 30 days. Plan Injunction

Procedures Order ¶ 3(a). In the event that such Pending Litigation is not dismissed, the Plan

Injunction Procedures Order permits the Liquidating Trust to file an omnibus motion (each, an

"***Enforcement Motion***") seeking the entry of an order from this Court directing the dismissal of

the Debtors from the Pending Litigation(s). Plan Injunction Procedures Order ¶ 3(b)-(h). Since

the entry of the Plan Injunction Procedures Order, the Liquidating Trust has filed three

---

[2]    The Plan Injunction Procedures Order does not, however, specify which types of non-monetary claims, if any, may proceed.

Enforcement Motions [Docket Nos. 9489, 10047, and 10574] and in each instance the Court issued orders enforcing the Plan Injunction Provisions [Docket Nos. 9618, 9908, 10126, and 10602] (each, an "*Enforcement Order*").

19.    Specifically, each Enforcement Order directs the Litigating Parties subject to such order to dismiss the applicable Pending Litigations with prejudice within 14 days of the entry of the Enforcement Order.  To aid in its execution, the Enforcement Order permits the Liquidating Trust to file a notice in the applicable Pending Litigations advising the presiding courts of the terms of the Enforcement Order. Absent dismissal, the Enforcement Order permits, but does require, the Liquidating Trust to commence a proceeding in this Court seeking to hold any Litigating Party that has failed to comply with an Enforcement Order in contempt of court and to request appropriate monetary sanctions against such party. As discussed below, despite the clear terms of the Enforcement Orders, in certain instances where the Litigating Party has failed to voluntary dismiss the Pending Litigation following the issuance of an Enforcement Order, the presiding courts have been reluctant to dismiss the Debtors from the Pending Litigation.  To address this situation, and eliminate any ambiguity, the Liquidating Trust seeks a clarification to the Procedures Order as described below.

**E.    The Senior Lien Stay Relief Procedures**

20.    The Debtors and their non-Debtor affiliates formerly were the fifth-largest mortgage servicer in the United States. At the time the Debtors filed the Senior Lien Stay Relief Motion, the Debtors estimated that they were servicing over 170,000 mortgages with an aggregate unpaid principal balance in excess of $5.9 billion that were subordinate to a third-party senior lien (each, a "*Senior Lien*") on the underlying property. Senior Lien Stay Relief Motion ¶ 7.  The Debtors also owned approximately 25,700 mortgage loans with an aggregate unpaid principal balance of approximately $696 million that were subordinate to Senior Liens. *Id.*

9

ny-1559155

21.     In those circumstances where the borrower on the property defaults on the mortgage or deed of trust secured by the Senior Lien, the holder of the Senior Lien (each, a "*Senior Lien Holder*" and collectively, the "*Senior Lien Holders*") typically will commence an action to foreclose on the property (each, a "*Senior Lien Foreclosure Action*" and collectively, the "*Senior Lien Foreclosure Actions*"). Generally, to proceed with a Senior Lien Foreclosure Action, the Debtors must be joined as a necessary party to the action.  As a result of the commencement of the Debtors' Chapter 11 cases, all pending and future Senior Lien Foreclosure Actions were stayed by section 362(a) of the Bankruptcy Code.

22.     As described in detail in the Senior Lien Stay Relief Motion, at the outset of the chapter 11 cases, over 20 representatives for Senior Lien Holders, appreciating that they were enjoined by the automatic stay from commencing or proceeding with their respective Senior Lien Foreclosure Actions, filed motions requesting relief from the automatic stay to commence or continue such actions. Similarly, the Debtors and their professionals received numerous informal requests for stay relief from Senior Lien Holders or their representatives.

23.     Given the volume of subordinate or junior mortgages serviced or held by the Debtors, the Debtors soon recognized that, absent the establishment of a standard protocol, the Debtors' estates would be substantially burdened (if not inundated) with requests for relief from Senior Lien Holders. Handling these matters before the Court on an individual basis would have required the commitment of significant time and resources and the expenditure of sizeable costs.

24.     To efficiently address the then-current and expected future volume of motions and requests from Senior Lien Holders, minimize the burden on the Debtors' estates, and, at the same time, provide a cost-effective and fair process for the holders of valid Senior

Liens to obtain requisite relief, the Debtors developed procedures that were incorporated into the

Senior Lien Stay Relief Motion (the "***Stay Relief Procedures***"). Those procedures were

approved by the Senior Lien Stay Relief Order.

25.    Pursuant to the Senior Lien Stay Relief Order, the Court approved a form

of questionnaire (the "***Questionnaire***").  Under the Stay Relief Procedures, in lieu of filing a

motion for relief from the automatic stay, the party seeking relief (each a "***Requesting Party***") is

required to submit the completed Questionnaire and serve the Questionnaire on the Debtors, the

creditors committee appointed in the Debtors' chapter 11 cases, certain other parties in interest,

and their respective counsels. The completed Questionnaire identifies significant data points

relevant to the Senior Lien Holder and the underlying property, including *inter alia*, the identity

of the Senior Lien Holder, the senior and subordinate mortgage in issue, the address of the

underlying property, the total arrears, and the current value of the property.

26.    The Debtors utilized the Questionnaire to evaluate the relevant facts,

including the value of the equity in the underlying property in excess of the Senior Lien.[3] The

Stay Relief Procedures afforded the Debtors the opportunity to request further information and

incorporated deadlines for the Debtors to complete their review of the Questionnaire and revert

back to the Requesting Party as to whether the Debtors were prepared to consent to relief from

the automatic stay. Provided the Debtors consented and no other parties to whom the

---

[3]    It was the ordinary course practice of the Debtors to evaluate their interests in property that was the subject of a
Senior Lien Foreclosure Action and determine whether or not to oppose the foreclosure. Senior Lien Stay Relief
Motion ¶ 8, Exhibit B (Mulcahy Decl.) at ¶ 5. Typically, the Debtors' primary consideration was the amount of
equity, if any, in the property, available after satisfaction of the Senior Lien, although evaluations are performed
on a case-by-case basis.  *Id.*

Questionnaire was submitted[4] interposed an objection to the request, Requesting Party and the

Debtors entered into a stipulation consistent with a form that was approved by the Court in the

Senior Lien Stay Relief Order (the "***Form of Stipulation***"). The executed Form of Stipulation

was then presented on notice to the Court for approval. The Form of Stipulation was crafted to

provide the Requesting Party with the necessary relief from the automatic stay, while preserving

the interests of the Debtors to any proceeds in excess of the Senior Lien derived from any

foreclosure sale. The Debtors have also historically required the Requesting Party to continue to

provide notice to the Debtors and certain other parties in interest of any future foreclosure action

and related proceedings.[5]

27.    Prior to the Effective Date, the Debtors efficiently and timely processed

scores of requests under the Stay Relief Procedures.

28.    Following the Effective Date, the Senior Lien Stay Relief Order has

remained in force along with the automatic stay, and Senior Lien Holders and the Liquidating

Trust have continued to comply with the Stay Relief Procedures. Throughout its administration,

the Liquidating Trust has processed approximately sixty (60) submissions from Requesting

Parties. At its inception, the Liquidating Trust owned a substantial number of mortgage loans.

As such mortgage loan assets could have been impacted by Senior Lien Foreclosure Actions, the

administration of the Stay Relief Procedures enabled the Liquidating Trust to preserve any

---

[4]    The Questionnaire was required to be delivered to Debtor Residential Capital, LLC, the Office of the United
States Trustee, Morrison & Foerster LLP, as counsel to the Debtors, and Kramer Levin, Naftalis & Frankel LLP,
as counsel to the creditors' committee.

[5]    The Debtors have typically required Requesting Parties to notify the Debtors and the ResCap Liquidating Trust,
Green Tree Servicing LLC, and/or Ocwen Loan Servicing, LLC "in connection with any action to be taken with
respect to the [property], including, but not limited to proceeding with a sale of the [property], in accordance
with and to the extent required by applicable state law" at addresses specified in the applicable stipulation.

interest it may have held in the underlying properties by virtue of the ownership of a subordinate mortgage. At the same time, the Requesting Parties were afforded the necessary relief.

29.     In fulfilling its obligations to administer and wind down the affairs of the Debtors and the assets of the Liquidating Trust, the Liquidating Trust has, over time, either realized on or sold its interests in the vast majority of its mortgage-related assets. The Liquidating Trusts continues to hold an interest in a limited number of (i) "real estate owned properties"; (ii) mortgage insurance claims; and (iii) mortgages. A schedule identifying these mortgage assets as of March 31, 2019, is annexed hereto as **Exhibit 2** (collectively, the "**Mortgage Assets**").[6] The Liquidating Trust has also requested and obtained Final Decrees closing the majority of the Debtors' chapter 11 cases, including Residential Funding Company, LLC, GMAC Mortgage, LLC, and Homecomings Financial, LLC.[7] The vast majority of the Requesting Parties have sought relief with respect to these Debtor entities.

30.     The Liquidating Trust believes that, in all likelihood, any future submissions by Senior Lien Holders will not involve any of the Mortgage Assets. In addition, as a result of the closing of cases identified above, the automatic stay is no longer applicable to these cases.  S*ee* 11 U.S.C. § 362(c)(2)(A). Accordingly, by this Motion the Liquidating Trust seeks to modify Senior Lien Stay Relief Order to eliminate the need for Senior Lien Holders to comply with the Stay Relief Procedures while protecting the Liquidating Trust's interests in the Mortgage Assets.

---

[6]     The schedule of Mortgage Assets only identifies the addresses of the underlying property.

[7]     *See Order of Final Decree Pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 Closing Certain of the Debtors' Chapter 11 Cases* [Docket No. 10605] (final decree in cases of Residential Funding Company, LLC and GMAC Mortgage, LLC); *Order of Final Decree Pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 Closing Certain of the Debtors' Chapter 11 Cases* [Docket No. 8299] (final decree in case of Homecomings Financial, LLC).

13

F.      **Third-Party Request to Quiet or Clear Title**

31.      During the pendency of the Liquidating Trust, the Liquidating Trust has received and continues to receive inquiries from third parties or their representatives seeking to rectify title and lien issues that they have identified in the chain of title to their properties.  The identification of title and lien issues is commonplace in the mortgage servicing industry. However, the issues often are not discovered until a homeowner attempts to sell her or his property or refinance an existing mortgage, which can be several years after the title or lien issue arose.

32.      Prior to the sale of their mortgage servicing business and rights to Ocwen, the Debtors regularly assisted third parties (collectively, the "*Mortgagors*" and each, a "*Mortgagor*") in resolving lien issues in the ordinary course of their mortgage servicing activities. For example, provided the Debtors could verify the facts, in their capacity as a loan servicer, the applicable Debtor would file a corrective instrument in the appropriate land records. Following the sale of their loan servicing assets, the Debtors ceased acting as loan servicers and consequently lack the authority to assist Mortgagors with their title issues. Likewise, acting in such capacity is beyond the rights and obligations conferred or imposed on the Liquidating Trust. Indeed, the Liquidating Trust is prohibited from carrying on a trade or business. Consequently, the Liquidating Trust lacks the legal authority to act on behalf on these third-party Mortgagors by, for instance, executing lien releases or other documents for filing in the public land records. Even if it were authorized to provide such assistance, the Liquidating Trust does not have access to the applicable records that it would need to review in order to research and verify the title or lien issues typically raised by the Mortgagors.

33.      To facilitate the ability of the Mortgagors to resolve their title or lien issues, the Liquidating Trust adopted an informal policy with respect to the automatic stay and

the Plan Injunction Provisions. The Liquidating Trust refrains from asserting as a defense either

the automatic stay or the Plan Injunction Provisions in the event Mortgagors name either the

Debtors or the Liquidating Trust as nominal defendants in any Quiet Title Actions or similar

actions, provided such parties' request is limited to equitable relief. The Liquidating Trust

understands that, generally under applicable state law, the party seeking to quiet title or obtain

similar relief must name known lienholders as defendants in their actions.  Provided the

Mortgagor does not seek monetary relief against either the Debtors or the Liquidating Trust, the

Liquidating Trust will typically not appear in the Quiet Title Action.[8]

> 34.    The Liquidating Trust seeks entry of the Proposed Order to facilitate the
expeditious resolution of Mortgagors' title issues and to clarify the impact of the Plan Injunction
Provisions on such parties' claims in Quiet Title Actions.

> 35.    Entry of the Proposed Order will clarify that Mortgagors may seek the
non-monetary relief that they need to clear title to their respective properties, and provide
important guidance regarding the most efficient manner to do so.

## RELIEF REQUESTED

**A.    Proposed Modification of Senior Lien Stay Relief Order and Stay Relief Procedures**

> 36.    The Liquidating Trust requests a modification of the Senior Lien Stay
Relief Order to eliminate the need for the Requesting Parties to complete and submit the
Questionnaire and enter into the Form of Stipulation with the Liquidating Trust. Instead,
provided the Senior Lien Holder confirms in advance that the Senior Lien Foreclosure Action or
other contemplated action does implicate or involve any Mortgage Asset, it may commence the

---

[8]    This policy is posted on the Liquidating Trust's website at: http://www.rescapliquidatingtrust.com/#for-borrowers.

Senior Lien Foreclosure without entering into and presenting the Form of Stipulation to the Court.

37.    To facilitate the relief requested, the Liquidating Trust requests that the Court modify the automatic stay (where applicable)[9] and the Plan Injunction Provisions for the limited purposed of permitting Senior Lien Holders to commence and prosecute the Senior Lien Foreclosure Actions or related actions. However, the relief will only permit Senior Lien Holders to seek equitable relief and they will remain stayed and enjoined from seeking any monetary relief or other relief against any Debtor or the Liquidating Trust other than the foreclosure of the Senior Lien.

38.    To avoid the commitment of time and resources by the Liquidating Trust, the Liquidating Trust proposes that the Requesting Parties "self-police" their efforts. Provided the Proposed Order is entered, the list of the Liquidating Trust's remaining Mortgage Assets as well this Motion and the Proposed Order will be posted on the Liquidating Trust website and the chapter 11 website maintained by the Debtors' agent Kurtzman Carson Consultants.[10] Until such time as the Liquidating Trust is terminated, it will be incumbent upon the Senior Lien Holder to review the list of Mortgage Assets to determine whether or not the respective Senior Lien relates to any Mortgage Asset. If it does, the Requesting Party will remain bound by the Senior Lien Stay Relief Order and the Stay Relief Procedures.

**B.    Relief to Address Third-Party Requests to Quiet or Clear Title**

39.    As described above, the Liquidating Trust continues to receive numerous

---

[9]    The automatic stay will only be in issue to the extent the holder of the Senior Lien is required to name a Debtor whose case remains open.

[10]    In advance of the termination of the Liquidating Trust, the Liquidating Trust will determine whether to provide for the maintenance of the Kurtzman Carson Consultants website for a limited period following the Termination of the Liquidating Trust.

ny-1559155

requests from Mortgagors or their representatives seeking assistance with quiet title issues. To relieve the Liquidating Trust from incurring the cost and expense of addressing these matters on an individual basis, and facilitate the Mortgagors' ability to obtain the relief they need in appropriate forums, the Liquidating Trust requests that the Court clarify, and to the extent necessary, modify the automatic stay and scope of the Plan Injunction Provisions. The Liquidating Trust recognizes that it has a limited duration, but anticipates that Mortgagors will need to resolve their Quiet Title Claims for a period that will extend well beyond the termination of the Liquidating Trust. Ideally, the entry of the Proposed Order will provide guidance to Mortgagors and state courts when confronted with this issue.

40.    Specifically, the Liquidating Trust respectfully requests that the Court, to the extent necessary, modify the automatic stay[11] and the Plan Injunction Provisions to permit Mortgagors or related parties, such as title insurers, to commence and prosecute non-monetary Quiet Title Actions, without seeking leave of the Court.[12] However, the automatic stay (to the extent applicable), the Plan Injunction Provisions, and the Plan Injunction Procedures Order shall remain in full force and effect for all other purposes, including to enjoin the assertion of and invalidate any monetary award in connection with any cause of action or any other monetary relief sought against the Debtors or the Liquidating Trust.

41.    Provided this Motion is approved, the Liquidating Trust will post a copy of the Proposed Order and the Motion on its website and it will be available on the Kurtzman

---

[11]    The automatic stay will only be in issue to the extent the Mortgagor is required to name as a defendant a Debtor whose case remains open.

[12]    The Liquidating Trust submits that Plan Injunction Provisions can be construed to enjoin any non-monetary Quiet Title Action against the Liquidating Trust or any Debtor, and thus to avoid any ambiguity, the Liquidating Trust requests the modification of the Plan Injunction Provisions for this limited purpose as set forth herein.

ny-1559155

Carson Consultants' website. In this way, Mortgagors will have guidance regarding the applicability of the Plan Injunction Provisions prior to initiating a Quiet Title Action. Mortgagors will also have comfort that, so long as they assert only non-monetary Quiet Title Claims against the Debtors or the Liquidating Trust, they will not be in contravention of the Plan Injunction Provisions. Furthermore, Mortgagors will be able to provide the relevant state court with a copy of the Proposed Order and hopefully obtain an expedited resolution of their Quiet Title Actions. This may be particularly instructive and useful to such parties following the termination of the Liquidating Trust.

## C.    Service Issues

42.    To the extent required by applicable law the Proposed Order provides that (i) the holder of the Senior Lien or (ii) a plaintiff in a Quiet Title Action may name a Debtor or the Liquidating Trust as a nominal defendant subject to the abovementioned limitations. If service is required, such parties can effect service on the Debtors and the Liquidating Trust.[13] The Liquidating Trust appreciates that, following the termination of the Liquidating Trust, it will be impossible for such parties to effect service on the Liquidating Trust or any of the Debtors. Given the futility of such service following the termination of the Liquidating Trust, ideally the entry of the Proposed Order will serve as guidance that no such service will be necessary. This in turn would relieve the Senior Lien Holders and Mortgagors from the burden of proving service on the Liquidating Trust or any Debtor in any future actions commenced following the termination of the Liquidating Trust.

## D.    Proposed Modification to Plan Injunction Procedures Order

43.    The Liquidating Trust requests a minor modification to the Plan Injunction

---

[13]    The Proposed Order includes the address for service of such process on the Debtors and the Liquidating Trust.

Procedures Order. The provisions of the Plan Injunction Procedures Order have provided a cost-effective and efficient method to obtain the dismissal of numerous actions across the country that contravened the Plan Injunction Provisions.  However, in a few limited instances where the Litigating Party has failed to comply with the applicable Enforcement Order through the voluntary dismissal of the Pending Litigation, the Litigating Trust understands that after being advised of the applicable Enforcement Order, the presiding court may have been reluctant to *sua sponte* dismiss the Debtors from the Pending Litigation. Such courts apparently interpret the Enforcement Order as requiring the Liquidating Trust to first seek to hold the Litigating Party in contempt of this Court. Although, as an alternative to a contempt proceeding,  the Litigating Trust always has the option to formally appear in the Pending Litigation and prosecute a motion to dismiss, either option places an unnecessary burden on the Liquidating Trust in the form of legal fees and costs, and related administrative expenses. Although it preserves the Liquidating Trust's right to seek contempt remedies, the Plan Injunction Procedures Order does not require that the Liquidating Trust do so, nor go to the extra step of affirmatively seeking a dismissal. Instead, the expectation was that courts would give effect to the Enforcement Order and the Plan Injunction Provisions.

44.    The proposed modifications to the Plan Injunction Procedures Order clarify that in those instances where the Litigating Party has not voluntarily dismissed the Pending Litigation as against a Debtor, the Liquidating Trust is not compelled to seek an order of contempt from this Court. Similarly, nothing in an Enforcement Order will preclude the presiding court from *sua sponte* dismissing the Pending Litigation and in so doing taking judicial notice of the Plan, Confirmation Order, Plan Injunction Provisions, and any Enforcement Order. The Liquidating Trust appreciates that this Court cannot direct the actions of another tribunal,

but the proposed modifications hopefully will clarify that these courts may exercise their

discretion and dismiss the applicable Pending Litigation when appropriate to do so.

## BASIS FOR RELIEF

45.    Bankruptcy Code section 105(a) permits the Court to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of" the

Bankruptcy Code. 11 U.S.C. § 105(a). Among other powers, section 105(a) of the Bankruptcy

Code provides the bankruptcy courts with the authority "to interpret and enforce their own

orders." *See In re Residential Capital, LLC*, 508 B.R. 838, 849 (Bankr. S.D.N.Y. 2014) (citation

omitted); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (affirming lower courts'

conclusions that bankruptcy court had jurisdiction and authority, under sections 105(a), 1141(a),

and 1142(b) to interpret and enforce injunctive provisions in prior confirmation order).

Bankruptcy Code section 105(d) and Bankruptcy Rule 1015(c) reinforce the Court's inherent

power to manage its own affairs, authorizing the Court to "issue an order . . . prescribing such

limitations and conditions as the court deems appropriate to ensure that the case is handled

expeditiously and economically" and "enter orders as may tend to avoid unnecessary costs and

delay." *See* 11 U.S.C. § 105(d)(2); Fed. R. Bankr. P. 1015(c).

46.    Additionally, pursuant to Article XII of the Plan, this Court retained

"exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the

Plan . . . , including jurisdiction . . . to hear and determine any matter . . . (i) regarding the

existence, nature, and scope of the releases, injunctions, and exculpation provided under the Plan,

and (ii) enter such orders as may be necessary appropriate to implement such releases,

injunctions, and other provisions[]" and "to issue such orders in aid of execution of the Plan, to

the extent authorized by section 1142 of the Bankruptcy Code[.]"  Similarly, both the Senior

Relief Stay Relief Order at paragraph 14 and the Plan Injunction Procedures Order at paragraph

ny-1559155

7 provide that the "Court shall retain jurisdiction to hear and determine all matters arising from

or related to this Order."

**A.      The Liquidating Trust Has Established Cause in Support of the Modification of the Plan Injunction Provisions**

47.     To the extent necessary, the Liquidating Trust agrees, on behalf of itself

and the reorganized Debtors, to a limited modification of the Plan Injunction Provisions to

permit (i) Senior Lien Holders to commence and prosecute Senior Lien Foreclosure Actions and

related matters, and where necessary name the Debtors or the Liquidating Trust as a party; and

(ii) Mortgagors to commence and prosecute non-monetary Quiet Title Claims against the

Liquidating Trust or the Debtors.  In each case the relief is limited to equitable relief.  In this

instance, cause exists to modify the Plan Injunction Provisions because such a modification will

assist in conserving the Liquidating Trust's assets without prejudicing the Liquidating Trust, its

beneficiaries, or any other Released Parties (as defined in the Plan). *Cf. Order Denying Motion*

*for Relief from Automatic Stay & Injunction Provisions of Final Supplemental Order Filed by*

*Alan Gjurovich and Star Hills* [Docket No. 9317] at 3 (denying request for relief from the plan

injunction where movant failed to establish cause to do so); *In re WorldCom, Inc.*, No. 02-13533

(AJG), 2007 WL 841948, at *4-9 (Bankr. S.D.N.Y. Mar. 12, 2007) (same).

48.     First, the Proposed Order provides relief from the Plan Injunction

Provisions only with respect to non-monetary claims (to extent necessary), and only with respect

to the Debtors and the Liquidating Trust. The Proposed Order does not alter in any way the

application of the Plan Injunction Provisions as they relate to other Released Parties. The

Proposed Order, therefore, does not prejudice any other Released Parties.

49.     Second, the Proposed Order clarifies that the Plan Injunction Provisions

remain in full force and effect with respect to any causes of action seeking monetary damages

ny-1559155

arising from any Senior Lien Foreclosure Action or the Debtors' alleged failure to properly

release, transfer, or assign mortgages during the time when they acted as servicer on a loan or

maintained an interest in such loan. Such monetary causes of action were satisfied under the

terms of the Plan and are, therefore, Released Claims (as defined in the Plan) barred by the Plan

Injunction Provisions, *see* Plan Art. I.A.242; Art. IX.K, and the Bar Date Order and the deadline

for filing Administrative Claims provided for in the Confirmation Oder. In sum, the Proposed

Order is tailored to ensure that the Liquidating Trust and its beneficiaries will not face any

additional burden from monetary claims that are otherwise prohibited by the Plan Injunction

Provisions.

50.    Finally, the Liquidating Trust anticipates that, with respect to Quiet Title

Actions asserting only non-monetary Quiet Title Claims relating to properties in which the

Liquidating Trust no longer has an interest, the Liquidating Trust will not make an appearance

and presumably that will allow such relief to be granted expeditiously. In this way, the

Liquidating Trust and its beneficiaries will benefit from avoiding the costs of appearing in any of

the Quiet Title Actions. Mortgagors will also benefit from the ability to obtain the relief they

desire (and which the Liquidating Trust cannot provide them) in the most efficient and

expeditious manner practicable.

**B.    The Liquidating Trust Has Established Cause in Support of the Requested
Modification of the Automatic Stay**

51.    Section 362(d) of the Bankruptcy Code provides that "[o]n request of a

party in interest and after notice and a hearing, the court shall grant relief from the automatic

stay" under certain circumstances, including "for cause," or where the debtor does not have any

equity in the subject property and the property is not necessary to an effective reorganization. To

the extent the automatic stay remains in effect, cause exists for the requested modifications. First,

ny-1559155

with respect to both the modifications to the Senior Lien Stay Relief Order and the relief allowing the commencement and continuation of Quiet Title Actions, the relief requested is designed to relieve the Liquidating Trust of the time and expenses necessary to address these matters. Second, the relief requested is narrowly tailored to preserve Liquidating Trust assets and prohibit the assertion of monetary claims against the Debtors or the Liquidating Trust.

52.    The Liquidating Trust respectfully submits that the relief requested herein represents an appropriate method to "expeditiously and economically" address the needs of the Senior Lien Holders and Mortgagors to obtain non-monetary relief in Senior Lien Foreclosure Actions and Quiet Title Actions. The relief requested strikes an appropriate balance by not imposing any unnecessary costs or delay upon such parties while minimizing any burdens on the Liquidating Trust. At the same time, the relief requested does not prejudice the rights of the Liquidating Trust or any other Released Parties under the Plan Injunction Provisions.

**C.    The Modification to Plan Injunction Procedures Order Is Warranted**

53.    The requested modification to the Plan Inunction Procedures Order is in substance simply a clarification designed to relieve the Liquidating Trust of incurring wholly unnecessary costs. Moreover, the incurrence of such expenses would be particularly egregious in that the claims of such Litigation Parties are enjoined by the Plan and Confirmation Order.

54.    The *res judicata* and preclusive effects of orders confirming chapter 11 plans are well established. *See, e.g.*, *Baeshen v. Arcapita Bank B.S.C.(c)* (*In re Arcapita Bank B.S.C.(c)*), 520 B.R. 15, 21 (Bankr. S.D.N.Y. 2014) ("A bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect.") (citation omitted); *In re Indesco Int'l, Inc.*, 354 B.R. 660, 664 (Bankr. S.D.N.Y. 2006) ("A bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect."); *Katz v. I.A. Alliance Corp.* (*In re I. Appel Corp.*), 300 B.R. 564, 567 (S.D.N.Y. 2003), *aff'd*, 104 Fed. Appx. 199 (2d Cir.

23

2004) ("The confirmation of a bankruptcy plan of reorganization must be accorded *res judicata* effect."). Similarly, state and federal courts may take judicial notice of the Plan, Confirmation Order, and any Enforcement Order. *See, e.g.*, *Kendall v. Cuomo*, No. 12 CIV. 3438 (ALC) (RLE), 2013 WL 5425780, at *6 (S.D.N.Y. Sept. 27, 2013) (taking judicial notice of a federal court order); *Marino v. Jonke*, No. 7:11-CV-430 (VB), 2011 WL 3251585, at *1 (S.D.N.Y. June 30, 2011) (same); *Green v. Jackson*, 36 Fed. Appx. 663, 669 (2d Cir. 2002) (taking judicial notice of a state court order). The requested modification to the Plan Injunction Procedures Order is simply an effort to make it clear that no further action by the Liquidating Trust or this Court is necessary to give effect to the Enforcement Orders and in so doing aid in the execution of the Plan, Confirmation Order, and the Plan Injunction Provisions.

## NOTICE

55.     The Liquidating Trust has served or will serve notice of the Motion in accordance with the Case Management Procedures [Docket No. 141].

ny-1559155

## **CONCLUSION**

WHEREFORE, the Liquidating Trust respectfully requests that this Court enter

an order substantially in the form of the Proposed Order granting the relief requested herein and

granting such other relief as is just and proper.

Dated:  July 18, 2019
        New York, New York

Respectfully submitted,

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
James A. Newton
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Liquidating Trust*