**Hearing Date and Time: September 26, 2019 at 3:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: September 16, 2019 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---------------------------------------------------------

### NOTICE OF MOTION OF THE RESCAP LIQUIDATING TRUST FOR ENTRY OF AN ORDER APPROVING THE DESTRUCTION OF OBSOLETE RECORDS

PLEASE TAKE NOTICE that on September 6, 2019, the ResCap Liquidating Trust filed the *Motion for Entry of an Order Approving the Destruction of Obsolete Records* (the "**Motion**"). A hearing on the Motion will be held before the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court located at One Bowling Green, New York, New York 10004, Courtroom 523 on **September 26, 2019 at 3:00 p.m. prevailing Eastern time**, or as soon thereafter as counsel can be heard.

PLEASE TAKE FURTHER NOTICE that responses or objections to the Motion, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court, together with a copy to the Chambers of Judge Glenn, and served so as to be received no

later than **4:00 p.m. prevailing Eastern time on September 16, 2019** (the "**Objection Deadline**"), upon (i) co-counsel to the ResCap Liquidating Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Gary S. Lee and Norman S. Rosenbaum); (ii) co-counsel to the ResCap Liquidating Trust, Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth H. Eckstein, Douglas H. Mannal, and Joseph A. Shifer); (iii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin); and (iv) The ResCap Liquidating Trust, 8400 Normandale Lake Blvd. Suite 175, Minneapolis, MN 55437 (Attention: Jill Horner).

PLEASE TAKE FURTHER NOTICE that if no objections or other responses are timely filed and served with respect to the Motion, the ResCap Liquidating Trust may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit 1 to the Motion, which the Bankruptcy Court may enter without further notice or opportunity to be heard.

Dated: September 6, 2019
       New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Joseph A. Shifer
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**Hearing Date and Time: September 26, 2019 at 3:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: September 16, 2019 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**MOTION OF THE RESCAP LIQUIDATING TRUST FOR ENTRY**
**OF AN ORDER APPROVING THE DESTRUCTION OF OBSOLETE RECORDS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

JURISDICTION ............................................................................................................ 5

BACKGROUND ........................................................................................................... 5

    A.  General Background ........................................................................................ 5

    B.  The Sale of the Debtors' Businesses and the Transfer of Origination and Servicing
        Documents ....................................................................................................... 6

    C.  Status of the Liquidating Trust ........................................................................ 6

    D.  Provisions Governing Books and Records under the Plan and the LTA ........... 8

    E.  The Liquidating Trust's Records Preservation Efforts ...................................... 9

    F.  The Obsolete Records ..................................................................................... 10

BASIS FOR RELIEF .................................................................................................... 14

NO PRIOR REQUEST ................................................................................................. 16

NOTICE ........................................................................................................................ 16

CONCLUSION .............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re DeLuca Distribution Co.*,
    38 B.R. 588 (Bankr. D. Ohio 1984) ................................................................................... 15

*Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV
    Corp. (In re Chateaugay Corp.)*,
    973 F.2d 141 (2d Cir. 1992) ............................................................................................. 15

*Sarf v. N.Y. State Dep't of Health (In re Adelphi Hosp. Corp.)*,
    579 F.2d 726 (2d Cir. 1978) ............................................................................................. 14

**Statutes**

11 U.S.C. § 105 ........................................................................................................................ 1, 5

11 U.S.C. § 105(a) ...................................................................................................................... 14

11 U.S.C. § 363 ........................................................................................................................ 5, 15

11 U.S.C. § 363(b) ...................................................................................................................... 14

11 U.S.C. § 363(b)(1) ................................................................................................................. 14

11 U.S.C. § 554 ............................................................................................................. 1, 5, 14, 15

11 U.S.C. § 554(a) ...................................................................................................................... 14

11 U.S.C. § 1108 ........................................................................................................................ 15

28 U.S.C. § 157 ........................................................................................................................... 5

28 U.S.C. § 157(b) ....................................................................................................................... 5

28 U.S.C. § 1334 ......................................................................................................................... 5

28 U.S.C. § 1408 ......................................................................................................................... 5

28 U.S.C. § 1409 ......................................................................................................................... 5

**Rules**

Fed. R. Bankr. P. 6007 ......................................................................................................... 1, 5, 16

Fed. R. Bankr. P. 6007(a) ........................................................................................................... 14

Local Bankr. R. 2015-1 ......................................................................................................... 1, 5, 15

The ResCap Liquidating Trust (the "**Liquidating Trust**"), as successor-in-interest to the debtors (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby submits this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "**Proposed Order**"), pursuant to sections 105 and 554 of title 11 of chapter 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-1 of the Local Rules for the Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), approving the destruction of obsolete records, all as described more fully below.  In support of this Motion, the Liquidating Trust submits the declaration of Jill Horner, Chief Financial Officer for the Liquidating Trust (the "**Horner Declaration**"), attached hereto as **Exhibit 2** and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.     The Liquidating Trust is soon approaching the end of its mandate.  The Liquidating Trust has disposed of all of the disputed claims that it was charged with resolving.  The Liquidating Trust has sold the substantial majority of the mortgage and real estate assets transferred to the Liquidating Trust from the Debtors' estates at inception.  Further, the Liquidating Trust has successfully pursued numerous affirmative litigations that have resulted in over $1.2 billion in recoveries to holders of units of beneficial interest of the Liquidating Trust ("**Unitholders**"). Those litigations have largely concluded, and only a few remain to be resolved.  As a result of these efforts, the Liquidating Trust has distributed $1.575 billion to Unitholders to date, in addition to the $1.765 billion distributed at inception of the Liquidating Trust.  In total, Unitholders have to date received distributions of $33.79 per Unit.

2.     From the start, the Liquidating Trust has been very cost conscious, and has been aggressively paring down its headcount and other sources of overhead costs over time in order to

maximize returns to the Unitholders. One very substantial ongoing expense that continues to burden the Liquidating Trust is the cost to store hundreds of thousands of boxes, millions of files, and over one hundred thousand data tapes that have been accumulated in the course of the decades that the Debtors have been doing business (the "**Obsolete Records**"). The material is so voluminous that even its disposal would likely require at least 12 months.

3.      The continued storage of the Obsolete Records by the Liquidating Trust serves no sensible purpose. They are of no use to the Liquidating Trust, do not contribute in any way to Unitholder recovery, and are of no material benefit to any other constituency. Yet, the Liquidating Trust is spending over $3 million each year to maintain and preserve these records. As the Debtors' cases progress to a final decree, the time has come to relieve the Liquidating Trust of these unnecessary costs.

4.      The Obsolete Records are the result of the accumulation of materials by the Debtors over the course of several decades. The Debtors followed the records retention policy in place while they were subsidiaries of Ally Financial, Inc. ("**Ally**"). Under this policy, it was common practice for the Debtors to ship materials to record management vendors. However, materials that had outlived their usefulness or which were no longer required by law to be preserved were not regularly purged. Also, although the Debtors generally maintained an inventory of materials sent to storage, this inventory did not detail the precise contents of the materials.

5.      As a result, there are literally tons of materials in storage for which the Liquidating Trust is unable to accurately determine the contents without actually retrieving each storage box and file and cataloguing its contents. Efforts to do so would cost millions of dollars and entail countless man hours of work, all for no benefit to the Liquidating Trust, the estates of the Debtors, or any other constituency.

6.      In the over five and a half years that the Liquidating Trust has been in existence, the Liquidating Trust has had limited occasion to access the materials maintained in storage. Through costly and time consuming efforts, the Liquidating Trust has retrieved and produced materials in response to discovery requests in the litigations to which it is a party, particularly the Correspondent Lender Litigations (defined below).  But almost all of those litigations have now settled, and the document discovery deadlines in the few pending cases have now passed.

7.      The Liquidating Trust also receives inquiries from mortgagors or their representatives with regard to title and lien issues relating to mortgages that had been serviced by the Debtors, which the Liquidating Trust has attempted to accommodate through document retrieval with limited success, due to the inability to determine whether the Liquidating Trust is in possession of the documents requested or the location of such documents (and because such records may not even be in the possession of the Liquidating Trust if such records were transferred to another servicer at some point during the life of the relevant loan).  Not only have these requests become less frequent over time, but the Liquidating Trust recently obtained an order from this Court modifying the automatic stay and the injunction provisions under the Plan (defined below) to permit mortgagors and related parties to more efficiently prosecute non-monetary "quiet title" actions should they need to do so.  This should obviate any need for the Liquidating Trust to conduct searches for pertinent records in response to such requests, which the Liquidating Trust has largely been unable to do in any event because of the inaccessibility of documents and the outsized effort and expense.  In addition, the mortgagors may contact the buyer of the loan or loan servicer for such records.

8.      Destroying the Obsolete Records will result in substantial cost savings, freeing up funds that can be more effectively applied towards the remaining affirmative litigations of the

Liquidating Trust, the necessary costs of administration of the Liquidating Trust and, most importantly, distributions to Unitholders.

9.      Destruction of the Obsolete Records at this time is appropriate because the Liquidating Trust's operations having been reduced essentially to the remaining affirmative litigations (for which the production phase of discovery has concluded), and it must now begin focusing on the task of the effective and efficient final wind-down of its affairs.  As noted, the Liquidating Trust estimates that, given the sheer volume of the Obsolete Records, it will take at least 12 months to complete their destruction, even working at an accelerated pace.  If work on the destruction is not commenced in the near term, it is possible that the destruction could delay the wind-down of the Liquidating Trust, generating further incremental cost and expense.

10.     Importantly, the Liquidating Trust is not at this time seeking to destroy any records that are needed for the administration of the estates.   As described more fully below, the Liquidating Trust has preserved approximately eight terabytes (or approximately 800 million document pages) relating, among other things, to the bankruptcy cases, the claims reconciliation process, governmental investigations of the Debtors, and the affirmative litigations being pursued by the Liquidating Trust.  The Liquidating Trust is not seeking at this time to destroy these preserved records.

11.     To the knowledge of the Liquidating Trust, the Obsolete Records are no longer subject to any applicable records retention laws or regulations.  Typical document retention laws require that records be kept for 3-8 years.  Given that the Debtors' cases were initiated more than seven years ago, it is unlikely that any of the Obsolete Records would continue to be subject to applicable document retention requirements.

12.     For these reasons, the Liquidating Trust requests that the Court enter the Proposed

Order and permit the Liquidating Trust to destroy the Obsolete Records.

## JURISDICTION

13.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334. Further, pursuant to the Chapter 11 Plan, the Court retained jurisdiction to "issue such orders

in aid of execution of the Plan." *See* Chapter 11 Plan, Art. XII. This is a core proceeding under 28

U.S.C. § 157(b).

14.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     The predicates for the relief requested in this Motion are sections 105, 363 and 554

of the Bankruptcy Code, Bankruptcy Rule 6007, and Local Rule 2015-1.

## BACKGROUND

**A.     General Background**

16.     On May 14, 2012, (the "**Petition Date**"), each of the Debtors filed a voluntary

petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases

are being jointly administered pursuant to Bankruptcy Rule 1015(b).

17.     On December 11, 2013, the Court entered the Order Confirming Second Amended

Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of

Unsecured Creditors (the "**Confirmation Order**") [Docket No. 6065] approving the terms of the

Chapter 11 plan, as amended (the "**Plan**"), filed in these Chapter 11 Cases [Docket No. 6065-1].[1]

18.     On December 17, 2013, the Effective Date of the Plan occurred (the "**Effective**

**Date**"), and, among other things, the Liquidating Trust was established pursuant to that certain

---

[1]   Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
      the Plan.

Liquidating Trust Agreement dated as of the Effective Date (the "**LTA**") to, among other things, wind down the affairs of the Debtors, *see* Plan, Art. VI.

**B.**    **The Sale of the Debtors' Businesses and the Transfer of Origination and Servicing Documents**

19.    During the course of the Chapter 11 Cases, pursuant to bidding procedures and an auction process approved by the Court, the Debtors sold a majority of their operating assets, including the sale of (i) their servicing and origination platform to Walter Investment Management Corporation ("**Walter**")[2] and Ocwen Loan Servicing, LLC ("**Ocwen**"), and (ii) the Debtors' "legacy whole loan" portfolio to Berkshire Hathaway, Inc. (together, the "**Asset Sales**").  The sales to Walter and Berkshire Hathaway closed on January 31, 2013, and the sale to Ocwen closed on February 15, 2013.

20.    As part of the Asset Sales, the Debtors transferred all active servicing-related files to Walter and Ocwen (excluding those records relating to loans serviced by the Debtors that had, prior to the Assets Sales, (i) matured or were refinanced or (ii) had been "charged off" due to default and deemed inactive), and transferred all documentation relating to the whole loans to Berkshire.  Walter and Ocwen were unwilling to take the servicing-related files for the loans that were no longer active at the time, and these thus remained with the files maintained in storage by the Debtors.

**C.**    **Status of the Liquidating Trust**

21.    Since the Effective Date, the Liquidating Trust has worked diligently to monetize the assets of the Debtors transferred to it, resolve disputed claims, and make distributions to Unitholders.

---

[2]    Green Tree Servicing LLC is a subsidiary of Walter that assumed certain of the rights and obligations relating to the sale.

22.    The Liquidating Trust has made tremendous progress in this regard.  As of this date, all claims against the estates of the Debtors have been resolved or expunged, and the Liquidating Trust has sold or otherwise monetized the substantial portion of the mortgage and real estate assets that were transferred to it under the Plan.

23.    Further, the Correspondent Lender Litigations have been settled with the exception of one pending case filed in 2017 in Minnesota Federal District Court (and in that one case, the document discovery deadlines have passed); and one case, involving Home Loan Center, Inc. ("**HLC**"), in which the Liquidating Trust obtained a favorable jury verdict and received a $68 million judgment.  HLC appealed the verdict to the United States Court of Appeals for the Eighth Circuit, and then filed for bankruptcy protection.[3]  Additionally, the Liquidating Trust is the plaintiff in a fraudulent transfer action pending in the United States District Court for the Northern District of California related to the breach of a settlement agreement in a Correspondent Lender Litigation.

24.    Finally, the Liquidating Trust has an action against certain insurers pending in United States Bankruptcy Court for the Southern District of New York before Judge Lane.   The Liquidating Trust is currently awaiting a ruling from Judge Lane on a partial summary judgment motion that was fully submitted as of July 2018.

25.    Importantly, the Obsolete Records are not necessary for the continued prosecution of any of these pending proceedings.

---

[3] On August 27, 2019, the Liquidating Trust filed a complaint against LendingTree (the parent of HLC) seeking to recover the judgment entered against HLC, in a case styled as *ResCap Liquidating Trust v. LendingTree, LLC, et al.*, No. 19-CV-02360 (D. Minn.).  As the Liquidating Trust has no records related to such action beyond those produced (and preserved) in the underlying HLC Correspondent Lender Litigation (or those records that will be received in the future from the LendingTree defendants and preserved), such action does not impact the relief sought in this Motion.

**D.**    <u>**Provisions Governing Books and Records under the Plan and the LTA**</u>

26.    The Plan and the LTA provide for the Liquidating Trust to take custody of the

Debtors' books and records.  Article XIII.E of the Plan provides as follows:

> On the Effective Date, . . . the Liquidating Trust shall be authorized to take possession of, all of the books and records of the Debtors, including . . . all information and data on computers owned or leased by the Debtors or otherwise on premises occupied by the Debtors, and all rights of access to data of the Debtors and their affiliates, that were not otherwise transferred to a third party on or prior to the Effective Date. The Liquidating Trust shall have the responsibility of storing and maintaining such books and records. . . .

27.    Further, pursuant to section 2.12(c) of the LTA, "The Liquidating Trust shall be

authorized without further application to the Bankruptcy Court or notice to any party, to abandon

or otherwise destroy books and records (whether in electronic or paper format) in accordance with

Section 12.3."  In addition, pursuant to Section 6.4(b) of the LTA, "[T]he Liquidating Trust Board

shall be expressly authorized and empowered . . . (xvii) to maintain and dispose of the books and

records transferred to the Liquidating Trust, as provided in Section 2.12 and Section 12.3."

28.    Section 12.3 of the LTA, in turn, provides as follows:

> If so determined by the Liquidating Trust Board, or absent such determination, in the discretion of the Liquidating Trust Agent appointed pursuant to Section 12.2, all books and records pertaining to the Debtors or the Liquidating Trust that have been delivered to or created by the Liquidating Trust may be destroyed at any time following (x) the date that is six (6) years after the final distribution of Liquidating Trust Assets (unless such records and documents are necessary to fulfill the Liquidating Trust's remaining obligations) subject to the terms of any joint prosecution and common interests agreement(s) to which the Liquidating Trust may be a party, or (y) *such earlier date as may approved by order of the Bankruptcy Court on application of the Liquidating Trust*; provided, however, that the Liquidating Trust shall obtain an order of the Bankruptcy Court before disposing of any books and records that are reasonably likely to pertain to pending litigation in which the Debtors or their current or former officers or directors are a party. (emphasis supplied)

29.    Accordingly, while the Plan and the LTA provide that the Liquidating Trust will

store and maintain the books and records received from the Debtors, the LTA expressly

contemplates that there may come a time when it is appropriate to apply to the Court for

authorization to destroy such books and records.  Given the advanced state of the Liquidating Trust, the substantial cost to the Liquidating Trust of continuing to maintain the vast majority of these book and records, the extended time required to process the destruction of the Obsolete Records, and the absence of any corresponding benefit of continuing to preserve these books and records, as described below, the Liquidating Trust respectfully submits that the time to discard these documents and tapes has arrived.

**E.**    **The Liquidating Trust's Records Preservation Efforts**

30.    Following the Effective Date, and in accordance with the provisions of the LTA cited above, the Liquidating Trust assumed ownership, and the administrative expense of maintaining, the Debtors' books and records.

31.    To ensure that vital records of the Debtors' were preserved, the Liquidating Trust, working together with its various litigation counsel, set about identifying those records that were necessary for the claims reconciliation process, any affirmative litigations being pursued by the Trust and certain other matters (the "**Retained Data Matters**").  Among other records, the Liquidating Trust electronically preserved documents related to the following matters:

- The Department of Justice's investigation of the Debtors' prepetition mortgage servicing business, which has been resolved.

- The investigation of the Debtors by the U.S. Securities and Exchange Commission and the Department of Justice under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), which too has been resolved.

- The claims reconciliation process, which is now complete.

- The Liquidating Trust's post-Effective Date preference actions, consisting of 39 litigations asserting approximately $30.8 million in damages, and resulting in the collection of approximately $2.3 million, all of which have been resolved.

- The pending adversary proceeding related to an insurance coverage dispute with certain insurers, in which the Liquidating Trust asserts a right to reimbursement for defense costs and pre-bankruptcy settlements paid to certain

class action plaintiffs, styled as *Rowena Drennan, et al. v. Certain Underwriters at Lloyds of London, et al.*, Adv. Pro. No. 15-01025 (SHL).

- The Liquidating Trust's litigations against those financial institutions that originated loans that were sold to the Debtors but did not conform with the seller's representations and warranties made in the relevant purchase agreement (the "**Correspondent Lender Litigations**"). As noted, there is one remaining Correspondent Lender Litigation pending before the United States District Court for the District of Minnesota, one on appeal to the United States Court of Appeals for the Eighth Circuit, and one fraudulent transfer action pending in the Northern District of California.

32. In all, the Liquidating Trust has preserved more than eight terabytes of data relevant to the Retained Data Matters (the "**Retained Data**"). This includes information produced to the Liquidating Trust by third parties and the home drive data and hard drive backup for all "key custodians" for whom the Liquidating Trust produced data in the Retained Data Matters. The Retained Data also includes the home drive data and hard drive backup for substantially all employees since 2007. The Liquidating Trust has also retained to date the Obsolete Records, as described below.

## F.    The Obsolete Records

33. As a subsidiary of Ally, the Debtors were subject to Ally's document retention policy, which called for retention of non-litigation hold documents for various periods of time, after which the documents were to have been destroyed. However, apparently, the Debtors were not consistent in following the Ally document retention policy, particularly with respect to document destruction. As a result, the Debtors accumulated a voluminous amount of material, the vast majority of which is either of no current informational value to the Liquidating Trust or any other party, or could not in any event be retrieved without substantial effort and considerable cost.

34. The Obsolete Records include a collection of approximately 695,300 boxes of documents currently maintained at Iron Mountain, a document retention vendor, and an additional approximately 7,500 boxes maintained at Corodata, another document retention vendor. It also

includes 2,535,908 loan files located on 270,519 linear feet (over 51 miles!) of "open shelf" storage at Iron Mountain.  In addition, the Liquidating Trust is storing approximately 114,000 data tapes at Corodata.  As noted below, even to dispose of these materials would likely require at least 12 months.  The monthly cost to the Liquidating Trust of storing the written materials is approximately $244,000.  Storage of the tapes costs the Liquidating Trust another approximately $14,000 per month, for total annual storage costs of over $3,000,000.

35.    The boxes of documents, in addition to loan files, contain a veritable potpourri of pre-petition business records of the Debtors, for example, tax records, HR manuals and the individual files of long-ago departed employees.  While the inventory of these boxes and files maintained by the Debtors and inherited by the Liquidating Trust describe their contents generally, it does not do so with specificity.  The Liquidating Trust would generally be unable to determine their particular contents without retrieving each storage box and file and cataloguing the materials that it contains.  Efforts to do so would cost millions of dollars and entail countless man hours of work, all bereft of any practical benefit.  The experience of the Liquidating Trust in responding to discovery requests in the Correspondent Lender Litigations is instructive in this regard.  The personnel of the Liquidating Trust were required in many cases to devise sophisticated strategies to identify boxes and files that could contain relevant information, but the only way to definitively ascertain their contents was through labor intensive, and expensive, individualized inspection.

36.    If anything, the information on the data tapes is even less relevant for any current purpose, and even less accessible.  The Liquidating Trust cannot determine with any certainty even the type of data contained on about one half of the tapes.  The remaining tapes appear to be backup for email exchanges, e-discovery exercises and legacy systems of the Debtors, none of which has any current relevance.  Moreover, the Liquidating Trust lacks the hardware and software necessary

even to read many of the tapes, and identifying and paying vendors who might be able to do so

would undoubtedly entail considerable expense and might not produce a successful result.

37.     In the over five and one-half years of the existence of the Liquidating Trust, no

request for retrieval has been received for the materials in storage, other than with respect to the

litigation activities of the Liquidating Trust (including in response to subpoenas), and by

mortgagors and their representatives seeking to clear or quiet title on mortgaged properties that

were once serviced by the Debtors.  The document discovery deadlines have now passed in the

few actions involving the Liquidating Trust that remain pending.  The Liquidating Trust has turned

over—and has preserved—all documents from storage that could reasonably be produced.  It is

very unlikely that the Liquidating Trust could be required to produce additional materials, and the

Liquidating Trust would justifiably resist any request to do so.

38.     Since its inception, the Liquidating Trust has been receiving requests for

documentation from mortgagors seeking to resolve lien issues or establish quiet title.  These

requests were considerably more frequent in the early years of the Liquidating Trust.  They have

tapered off substantially with the passage of time, although the Liquidating Trust continues to

receive some such requests.  The Liquidating Trust generally has not accommodated these

requests, either because it is unable to access the relevant records or because to do so would entail

considerable and unjustifiable expense.  Instead, the Liquidating Trust adopted an informal policy

to refrain from asserting the automatic stay or the Plan injunction provisions, so as to enable the

mortgagors to seek judicial resolution of their lien and title issues.  Recently, on August 5, 2019,

the Liquidating Trust obtained an order from this Court which, among other things, modifies the

automatic stay and plan injunction provisions to permit third parties to commence and complete

actions to foreclose on senior liens and non-monetary causes of action seeking to clear or quiet

title [Docket No. 10655]. By formalizing what had been the Liquidating Trust's informal practice, the relief provided by such order will essentially moot future requests for documents relating to title.

39.    Importantly, however, aside from the title-related requests, and aside from litigation related production which has ceased to be an issue, the Liquidating Trust has not received requests for information that would require it to access the Obsolete Records. With the passage of time, during which the Liquidating Trust has resolved all disputed claims, sold off the substantial majority of the assets and properties transferred to it under the Plan, and resolved the substantial majority of its litigations, the prospects for such requests become even more unlikely. And even if any such requests were received, for the reasons discussed, it is doubtful that they could be accommodated in any reasonable manner because of the time and expense that would be required to identify and retrieve the information from among the hundreds of thousands of boxes and millions of files constituting the Obsolete Records.

40.    The Liquidating Trust has been, and will continue to be, careful about segregating and preserving documentation that remains of future relevance or is required to be maintained for a future period by operation of law. Documents that are known by the Liquidating Trust to pertain to any proceedings or other matters that have not been fully and finally resolved, or that have relevance to the continued operations of the Liquidating Trust or, to the knowledge of the Liquidating Trust, other parties, or that the Liquidating Trust is otherwise legally required to maintain, will be retained for as long as necessary and in compliance with law.

41.    The Liquidating Trust estimates, based on discussions with its data management vendors, that it will take at least 12 months to compete the destruction of all of the Obsolete Records, even at an accelerated pace, given the sheer magnitude of the materials. The Liquidating

Trust believes that it is necessary to commence the work on the destruction in the near term, or otherwise risk possible delay and further expense in winding down its affairs.

42.    By this Motion, for all the stated reasons, the Liquidating Trust seeks entry of the Proposed Order approving the destruction of the Obsolete Records.

## **BASIS FOR RELIEF**

43.    As described herein, the Obsolete Records are a significant administrative burden on the Liquidating Trust and are a recurring expense that will have the effect of reducing creditor recoveries.    Accordingly, the Liquidating Trust submits that the destruction of the Obsolete Records is in the best interests of the estates and that no party will be prejudiced by the destruction of the Obsolete Records.

44.    Pursuant to section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  11 U.S.C. § 105(a).  Section 554 of the Bankruptcy Code, in turn, provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); *see also* Fed. R. Bankr. P. 6007(a) (authorizing abandonment on advance notice).  Section 554 of the Bankruptcy Code provides debtors with an avenue by which property deemed "burdensome" or of "inconsequential value and benefit to the estate" may be abandoned.  *See* 11 U.S.C. § 554(a); *see also Sarf v. N.Y. State Dep't of Health (In re Adelphi Hosp. Corp.)*, 579 F.2d 726, 727 (2d Cir. 1978) (affirming decision authorizing trustee of debtor to dispose of medical records that no longer benefited the estate).[4]

---

[4]    The Liquidating Trust is clearly authorized by section 363(b) of the Bankruptcy Code to expend funds to defray the costs involved in the destruction of the Obsolete Records. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1); *see also Official Comm. of Unsecured Creditors of*

45.     Comment to Local Rule 2015-1 expressly provides that "the Court may issue an appropriate order limiting storage of the debtor's books, records, and papers.  Disposal of the debtor's books, records, and papers is governed by sections 363 and 554 of the Bankruptcy Code."

46.     In addition, section 1108 of the Bankruptcy Code charges the Debtors with operating their business in a cost-efficient manner that is beneficial to the estate.  *See In re DeLuca Distribution Co.*, 38 B.R. 588, 591 (Bankr. D. Ohio 1984) ("The authority to operate the debtor's business necessarily includes the concomitant discretion to exercise reasonable judgment in ordinary business matters.").

47.     As set forth above, the Obsolete Records are not necessary for the administration and completion of these Chapter 11 Cases and the administration of the Debtors' estates.  The costs associated with storage of the Obsolete Records constitute an unnecessary administrative expense of the estate, which reduces the amounts available for distribution to Unitholders and for other necessary purposes.  Abandoning these documents is consistent with, and even required by, the mandate of the Liquidating Trust to conduct its operations as efficiently as possible, so as to maximize recoveries for Unitholders.

48.     Importantly, the Liquidating Trust is taking the necessary steps to assure that books, records and other documents that do not constitute Obsolete Records, either because such documents have realistic continuing use or relevance to the Liquidating Trust or other parties, or because preservation of such records at this time is required by law, will be retained and preserved until such time as such documents become Obsolete Records or the destruction of such documents is authorized under Section 12.3 of the LTA.

---

*LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (use under section 363(b) must be based on a sound business reason) (citations omitted).

49.     Accordingly, the Liquidating Trust, in its sound business judgment, has determined that it is in the best interests of the estate, creditors, and all parties in interest to immediately destroy the Obsolete Records.

## NO PRIOR REQUEST

50.     No previous request for the relief sought herein has been made to this or any other court.

## NOTICE

51.     Notice of this Motion has been provided in accordance with Case Management Order, including to the parties identified on the Special Service List and General Service List (as such terms are defined in the Case Management Order), and all defendants in pending affirmative litigations prosecuted by the Liquidating Trust, including the pending Correspondent Lender Litigation.  The Liquidating Trust submits that, under the circumstances, no other or further notice is necessary.[5]

---

[5]  Rule 6007 provides that, "Unless otherwise directed by the court, the trustee or debtor in shall possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees and committees elected pursuant to §705 or appointed pursuant to §1102 of the Code."  As the Case Management Order provides that "All Filings for which particular notices are required by . . . [Bankruptcy Rule 6007] shall be served on [the Special Service List and General Service List] and each entity having an ownership interest in the property or a lien or encumbrance on the property to be abandoned," and in light of the stage of these cases, the Liquidating Trust submits that service in this manner is appropriate.

## **CONCLUSION**

52.     WHEREFORE, the Liquidating Trust respectfully request that the Court enter an

order granting the relief requested and such other or further relief as is just and proper.

Dated: September 6, 2019
       New York, New York

                                        KRAMER LEVIN NAFTALIS & FRANKEL LLP


                                        /s/ Joseph A. Shifer
                                        Kenneth H. Eckstein
                                        Douglas H. Mannal
                                        Joseph A. Shifer
                                        1177 Avenue of the Americas
                                        New York, New York 10036
                                        Telephone: (212) 715-9100

                                        *Counsel for the ResCap Liquidating Trust*

<u>**Exhibit 1**</u>

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

--------------------------------------------------------------------------------

## <u>ORDER APPROVING THE DESTRUCTION OF OBSOLETE RECORDS</u>

Upon the motion (the "**<u>Motion</u>**")[1] filed by the ResCap Liquidating Trust (the "**<u>Liquidating Trust</u>**"), as successor in interest to the debtors (collectively, the "**<u>Debtors</u>**") in the above-captioned cases (the "**<u>Chapter 11 Cases</u>**"), seeking  authority to destroy certain obsolete records and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Liquidating Trust, the Liquidating Trust's beneficiaries, and the Debtors; and the Court having determined that the legal and factual bases set forth in the Motion and the Horner Declaration establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

--------------------------------------------------------------------------------

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as provided herein.

2.      The Liquidating Trust is authorized to abandon, dispose of and/or destroy the Obsolete Records as set forth in the Motion.

3.      The Liquidating Trust shall take commercially reasonable steps to assure that books, records and other documents that do not constitute Obsolete Records are retained and preserved in accordance with the terms of the Liquidating Trust Agreement and applicable law.

4.      The Liquidating Trust and its agents, delegates and professionals shall have no liability whatsoever arising from or relating to any abandonment, disposal or destruction of the Obsolete Records pursuant to the terms of this Order.

5.      The Court shall retain jurisdiction relating to the interpretation and implementation of this Order.

Dated:   _____, 2019
         New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 2**

**Horner Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-----------------------------------------------------------

### DECLARATION OF JILL HORNER IN SUPPORT OF THE
### MOTION OF THE RESCAP LIQUIDATING TRUST FOR ENTRY
### <u>OF AN ORDER APPROVING THE DESTRUCTION OF OBSOLETE RECORDS</u>

I, Jill Horner, hereby declare as follows:

       1.      I serve as the Chief Financial Officer for the ResCap Liquidating Trust (the "**Liquidating Trust**"), and from May 2013 to December 17, 2013, I served as Chief Finance Executive for Residential Capital, LLC and its debtor-affiliates (collectively "**ResCap**"), as the debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**"). I have been employed by affiliates of ResCap since 2000, originally as the Manager of Financial Planning and Analysis for Residential Capital Group, a managerial division under Residential Funding Company, LLC. I became a Senior Finance Officer for Originations on or around 2003 and expanded my role to include Financial Servicing Operations on or around 2007, a position I held until 2010, when I became interim Senior Financial Officer for the International Business Group. In 2011, I became the ResCap Senior Director for Financial Planning and Analysis, a position I held until I became the Chief Finance Executive. In my role as Chief Finance Executive at ResCap, I was responsible for, among other things, operational accounting, financial forecasting and analytics, accounts payable processing, tax and treasury matters, including cash forecasting and cash management.

2.      I am authorized to submit this declaration (the "**Declaration**") in support of

the *Motion of the ResCap Liquidating Trust for Entry of an Order Authorizing the Destruction of*

*Obsolete Records* (the "**Motion**").[1]

3.      Except as otherwise indicated, all facts set forth in this Declaration are based

upon my personal knowledge of the Debtors' and the Liquidating Trust's operations and finances,

information learned from my review of the Debtors' and Liquidating Trust's litigation case files,

books and records, as well as other relevant documents, and information I have received through

my discussions with other members of the Debtors' and Liquidating Trust management or other

employees, professionals and consultants of the Debtors and the Liquidating Trust, or my opinion

based upon my experience, expertise, and knowledge of the Debtors' and Liquidating Trust's

litigation matters, financial condition and history.

4.      In making these statements based on my review of the Debtors' and

Liquidating Trust's litigation case files, books and records, relevant documents, and other

information prepared or collected by the Debtors' and Liquidating Trust's employees, consultants

or counsel, I have relied upon these employees, consultants, and counsel accurately recording,

preparing, collecting, or verifying any such documentation and other information.  If I were called

upon to testify, I could and would testify competently to the facts set forth in the Motion on that

basis.

5.      In the over five and one-half years since its creation, the Liquidating Trust's

management, employees and professionals have worked diligently to pursue the Liquidating

Trust's objectives in a manner that maximizes recoveries to Unitholders.  In accordance with the

Debtors' Chapter 11 Plan, the Liquidating Trust was created on December 17, 2013 (*i.e.*, the

---

[1]     Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the
Motion.

Effective Date under the Plan), to, among other things, (i) wind-down the Debtors' non-cash assets, (ii) resolve non-Borrower claims asserted against the Debtors, (iii) pursue litigation on behalf of the Debtors' estates, and (iv) make periodic distributions to Unitholders.

6.      As a result of its efforts, the Liquidating Trust has to date distributed $1.575 billion to Unitholders, in addition to the $1.765 billion distributed at inception of the Liquidating Trust.  In total, Unitholders have to date received distributions of $33.79 per Unit.

7.      I am familiar with the affirmative litigations prosecuted by the Liquidating Trust, including the Correspondent Lender Litigations.  The Correspondent Lender Litigations have been settled with the exception of one pending case filed in 2017 in Minnesota Federal District Court, in which the document discovery deadlines have passed; and one case, involving Home Loan Center, Inc. ("**HLC**"), in which the Liquidating Trust obtained a favorable jury verdict and received a $68 million judgment.  HLC appealed the verdict to the United States Court of Appeals for the Eighth Circuit, and then filed for bankruptcy protection.[2]  Additionally, the Liquidating Trust is the plaintiff in a fraudulent transfer action pending in the United States District Court for the Northern District of California related to the breach of a settlement agreement in a Correspondent Lender Litigation.  Further, the Liquidating Trust has an action against certain insurers pending in United States Bankruptcy Court for the Southern District of New York before Judge Lane.   The Liquidating Trust is currently awaiting a ruling from Judge Lane on a partial summary judgment motion that was fully submitted as of July 2018.

---

[2] On August 27, 2019, the Liquidating Trust filed a complaint against LendingTree (the parent of HLC) seeking to recover the judgment entered against HLC, in a case styled as *ResCap Liquidating Trust v. LendingTree, LLC, et al.*, No. 19-CV-02360 (D. Minn.).  As the Liquidating Trust has no records related to such action beyond those produced (and preserved) in the underlying HLC Correspondent Lender Litigation (or those records that will be received in the future from the LendingTree defendants and preserved), such action does not impact the relief sought in this Motion.

8.      Further, I am familiar with the claims reconciliation process in these Chapter 11 Cases.  As of this date, all claims against the estates of the Debtors have been resolved or expunged.

9.      I am also familiar with the efforts of the Liquidating Trust to sell or otherwise monetize the assets that were transferred to it under the Plan, and a substantial portion of those mortgage and real estate assets have been sold or otherwise monetized.  During the course of the Chapter 11 Cases, pursuant to bidding procedures and an auction process approved by the Court, the Debtors sold a majority of their operating assets, including the sale of (i) their servicing and origination platform to Walter Investment Management Corporation ("**Walter**")[3] and Ocwen Loan Servicing, LLC ("**Ocwen**"), and (ii) the Debtors' "legacy whole loan" portfolio to Berkshire Hathaway, Inc. (together, the "**Asset Sales**").  The sales to Walter and Berkshire Hathaway closed on January 31, 2013, and the sale to Ocwen closed on February 15, 2013.

10.     As part of the Asset Sales, the Debtors transferred all active servicing-related files to Walter and Ocwen (excluding those records relating to loans serviced by the Debtors that had, prior to the Assets Sales, (i) matured or were refinanced or (ii) had been "charged off" due to default and deemed inactive), and transferred all documentation relating to the whole loans to Berkshire.  Walter and Ocwen were unwilling to take the servicing-related files for the loans that were no longer active at the time, and these remained with the files maintained in storage by the Debtors.

11.     To ensure that vital records of the Debtors' were preserved, the Liquidating Trust, working together with its various litigation counsel, set about identifying those records that

---

[3]    Green Tree Servicing LLC is a subsidiary of Walter that assumed certain of the rights and obligations relating to the sale.

were necessary for the claims reconciliation process, any affirmative litigations being pursued by

the Trust and certain other matters (the "**Retained Data Matters**").  Among other records, the

Liquidating Trust electronically preserved documents related to the following matters:

- The Department of Justice's investigation of the Debtors' prepetition mortgage servicing business, which has been resolved.

- The investigation of the Debtors by the U.S. Securities and Exchange Commission and the Department of Justice under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), which too has been resolved.

- The claims reconciliation process, which is now complete.

- The Liquidating Trust's post-Effective Date preference actions, consisting of 39 litigations asserting approximately $30.8 million in damages, and resulting in the collection of approximately $2.3 million, all of which have been resolved.

- The pending adversary proceeding related to an insurance coverage dispute with certain insurers, in which the Liquidating Trust asserts a right to reimbursement for defense costs and pre-bankruptcy settlements paid to certain class action plaintiffs, styled as *Rowena Drennan, et al. v. Certain Underwriters at Lloyds of London, et al.*, Adv. Pro. No. 15-01025 (SHL).

- The Liquidating Trust's litigations against those financial institutions that originated loans that were sold to the Debtors but did not conform with the seller's representations and warranties made in the relevant purchase agreement (the "**Correspondent Lender Litigations**").

12.    In all, the Liquidating Trust has preserved more than eight terabytes of data

relevant to the Retained Data Matters (the "**Retained Data**"). This includes information produced

to the Liquidating Trust by third parties and the home drive data and hard drive backup for all "key

custodians" for whom the Liquidating Trust produced data in the Retained Data Matters.  The

Retained Data also includes the home drive data and hard drive backup for substantially all

employees since 2007.

### The Obsolete Records

13.    As a subsidiary of Ally, the Debtors were subject to Ally's document retention policy, which called for retention of non-litigation hold documents for various periods of time, after which the documents were to have been destroyed.  However, the Debtors were not consistent in following the Ally document retention policy, particularly with respect to document destruction.  As a result, the Debtors accumulated a voluminous amount of material, the vast majority of which is either of no current informational value to the Liquidating Trust or any other party, or could not in any event be retrieved without substantial effort and considerable cost.

14.    The Obsolete Records include a collection of approximately 695,300 boxes of documents currently maintained at Iron Mountain, a document retention vendor, and an additional approximately 7,500 boxes maintained at Corodata, another document retention vendor.  It also includes 2,535,908 loan files located on 270,519 linear feet of "open shelf" storage at Iron Mountain.  In addition, the Liquidating Trust is storing approximately 114,000 data tapes at Corodata.  The monthly cost to the Liquidating Trust of storing the written materials is approximately $244,000.  Storage of the tapes costs the Liquidating Trust another approximately $14,000 per month, for total annual storage costs of over $3,000,000.

15.    The boxes of documents, in addition to loan files, contain a veritable potpourri of pre-petition business records of the Debtors, for example, tax records, HR manuals and the individual files of long-ago departed employees.  While the inventory of these boxes and files maintained by the Debtors and inherited by the Liquidating Trust describe their contents generally, it does not do so with specificity.  The Liquidating Trust would generally be unable to determine their particular contents without retrieving each storage box and file and cataloguing the materials that it contains.  Efforts to do so would cost millions of dollars and entail countless man

hours of work, all bereft of any practical benefit. In responding to discovery requests in the Correspondent Lender Litigations, the personnel of the Liquidating Trust were required in many cases to devise sophisticated strategies to identify boxes and files that could contain relevant information, but the only way to definitively ascertain their contents was through labor intensive, and expensive, individualized inspection.

16.    The Liquidating Trust cannot determine with any certainty even the type of data contained on about one half of the tapes. Other tapes appear to be backup for email exchanges, e-discovery exercises and legacy systems of the Debtors, none of which has any current relevance. Moreover, the Liquidating Trust lacks the hardware and software necessary even to read many of the tapes, and identifying and paying vendors who might be able to do so would undoubtedly entail considerable expense and might not produce a successful result.

17.    In the over five and one-half years of the existence of the Liquidating Trust, no request for retrieval has been received for the materials in storage, other than with respect to the litigation activities of the Liquidating Trust (including in response to subpoenas), and by mortgagors and their representatives seeking to clear or quiet title on mortgaged properties that were once serviced by the Debtors.

18.    To the best of my knowledge, the Liquidating Trust has turned over—and has preserved—all documents from storage that could reasonably be produced in respect of the actions involving the Liquidating Trust that remain pending.

19.    Since its inception, the Liquidating Trust has been receiving requests for documentation from mortgagors seeking to resolve lien issues or establish quiet title. These requests were considerably more frequent in the early years of the Liquidating Trust. They have tapered off substantially with the passage of time, although the Liquidating Trust continues to

receive some such requests.  The Liquidating Trust generally has not accommodated these requests, either because it is unable to access the relevant records or because to do so would entail considerable and unjustifiable expense.  Instead, the Liquidating Trust adopted an informal policy to refrain from asserting the automatic stay or the Plan injunction provisions, so as to enable the mortgagors to seek judicial resolution of their lien and title issues.

20.    Aside from the title-related requests, and aside from litigation related production, the Liquidating Trust has not received requests for information that would require it to access the Obsolete Records.  Even if any such requests were received, for the reasons discussed, it is doubtful that they could be accommodated because of the time and expense that would be required to identify and retrieve the information from among the hundreds of thousands of boxes and millions of files currently maintained in storage.

21.    The Liquidating Trust has been, and will continue to be, careful about segregating and preserving documentation that remains of future relevance or is required to be maintained for a future period by operation of law.  Documents that are known by the Liquidating Trust to pertain to any proceedings or other matters that have not been fully and finally resolved, or that have relevance to the continued operations of the Liquidating Trust or, to the knowledge of the Liquidating Trust, other parties, or that the Liquidating Trust is otherwise legally required to maintain, will be retained for as long as necessary and in compliance with law.

22.    The Liquidating Trust estimates, based on discussions with its data management vendors, that it will take at least 12 months to compete the destruction of all of the Obsolete Records, even at an accelerated pace, given the sheer magnitude of the materials.  The Liquidating Trust believes that it is necessary to commence the work on the destruction in the near term, or otherwise risk possible delay and further expense in winding down its affairs.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 6, 2019

                                                      /s/ Jill Horner_____
                                                     Jill Horner
                                                     Chief Financial Officer for the ResCap
                                                     Liquidating Trust