UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*,

Debtors.

NOT FOR PUBLICATION

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

## MEMORANDUM OPINION AND ORDER DENYING REQUEST FOR LEAVE TO PERMIT LATE-FILED PROOF OF CLAIM OF ANDREW R. SHADDOCK

*A P P E A R A N C E S:*

Andrew R. Shaddock
Springfield, MA
By:   Andrew R. Shaddock, *pro se Movant*

POLSINELLI
*Attorneys for the ResCap Borrower Claims Trust*
600 Third Avenue, 42nd Floor
New York, NY 10022
By:   Daniel J. Flanigan, Esq.
       Jason A. Nagi, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before this Court is the *Motion to Accept Proof of Claim Late and Herewith* filed by Andrew R. Shaddock ("Shaddock"), appearing *pro se*, requesting acceptance of a late-filed proof of claim. ("Motion," ECF Doc. # 10679.) In support of the Motion, Shaddock attaches the Notice of Bankruptcy Status submitted by Residential Capital, LLC and certain of its direct and indirect subsidiaries, including GMAC Mortgage, LLC ("GMACM" and together with Residential Capital, LLC, the "Debtors") (Motion, Ex. A, at 2–6), a copy of the Complaint from Shaddock's State Court Lawsuit against GMACM (*id.*, Ex. B, at 7–16), a copy of a 93A Demand Letter indicating the nature of his claim against the Debtors (*id.*, Ex. C, at 17–22), and the proof of claim (the "Late Claim") for which Shaddock seeks leave from this Court to file (*id.*, Ex. D, at

23–25). Shaddock argues that his late-filed proof of claim should be accepted as "he had not received notice of the Bankruptcy of the debtor except through local counsel's receipt of the . . . Notice of Bankruptcy [Status]." (Motion at 1.)

On February 4, 2020, the ResCap Borrower Claims Trust (the "Trust") filed an objection to the Motion ("Objection," ECF Doc. # 10680), arguing that Shaddock was properly served notice of the deadline for filing proofs of claim at his address. (Objection at 5.) The Trust also contends that Shaddock has failed to demonstrate excusable neglect for his failure to timely file a proof of claim prior to the deadline. (*Id.*) In support of its Objection, the Trust submits the declaration of Jill Horner, Chief Finance Executive at Residential Capital, LLC (ECF Doc. # 10680-1), and the affidavit of service of Lydia Do, of Kurtzman Carson Consultants LLC ("KCC"), the Debtors' claims and noticing agent ("Do Affidavit," ECF Doc. # 10680-2). For the following reasons, Shaddock's Motion is **DENIED**.

## I.  BACKGROUND

### A. Procedural History

On May 14, 2012, the Debtors filed voluntary chapter 11 bankruptcy petitions. (ECF Doc. # 1.) On July 17, 2012, KCC was appointed as the claims and noticing agent, authorized to (1) receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases and (2) maintain official claims registers for each of the Debtors. (*See* ECF Doc. # 798.)

On August 29, 2012, the Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, establishing November 9, 2012 as the general claims bar date (the "Bar Date").[1] ("Bar Date Order," ECF Doc. # 1309 ¶¶

---

[1] The Court subsequently extended the Bar Date to November 16, 2012 (the "Amended Bar Date"). (*See* ECF Doc. # 2093.)

2, 3.)  Annexed to the Bar Date Order is a form of notice regarding the Bar Date.  ("Bar Date Notice," *id.*, at 11–16.)

### B. Shaddock's Litigation Against GMACM and GMAC Bank

In September 2014,[2] Shaddock filed suit ("Shaddock's Lawsuit") against GMACM and GMAC Bank (collectively, the "Defendants") in the Superior Court of Massachusetts (the "State Court").  ("Complaint," ECF Doc. # 10679, Ex. B, at 7–16.)  The Complaint included tort and breach of contract claims against the Defendants, which form the basis for the underlying Late Claim that Shaddock seeks leave to file.  (*Id.* at 9–10.)

In the Complaint, Shaddock alleges that he had mortgaged his premises located at 45 Middlesex Street, Springfield, MA (the "Premises"), and the Defendants had foreclosed on the Premises.  (*Id.* at 8.)  Shaddock further alleges that he had been the subject of misrepresentation by the Defendants, who had provided Shaddock with contradictory information regarding to whom and where Shaddock should send a check to reinstate his mortgage and bring the same current.  (*Id.* at 8–9.)

As part of Shaddock's Lawsuit, counsel for GMACM filed *GMAC Mortgage, LLC's Notice of Bankruptcy Status*.  (Motion, Ex. A.)  The Notice of Bankruptcy Status was served on Shaddock's State Court counsel by first class mail on October 14, 2014.  (*Id.* at 6.)  The Notice of Bankruptcy Status stated, *inter alia*, that "[a]ccording to the Debtors' records, [Shaddock] did not file a proof of claim in the Bankruptcy Cases and is barred from continuing to prosecute this action against GMACM."  (*Id.* at 5, ¶ 6.)[3]

---

[2]     The State Court Complaint attached to the Motion is not dated and no other documents attached to the Motion indicate the date on which Shaddock's Lawsuit was filed.  The Objection states that Shaddock's Lawsuit was filed in September 2014.  (Objection ¶ 8.)

[3]     No further information regarding Shaddock's Lawsuit, outside of the Complaint and Notice of Bankruptcy Status, has been provided.

3

### C. Shaddock's Motion

In the instant Motion, Shaddock seeks approval to file the Late Claim. (Motion at 1; *see id.*, Ex. D.) Shaddock argues that he should be allowed to file the Late Claim on the sole basis that "he had not received notice of the Bankruptcy of the debtor except through local counsel's receipt" of the Notice of Bankruptcy Status. (Motion at 1.)

### D. The Trust's Objection

The Trust argues in its Objection that: (i) Shaddock was served notice of the deadline for filing proofs of claim before the Amended Bar Date, as evidenced by an attached affidavit of service, and has failed to rebut the presumption that he was properly served; and (ii) notwithstanding whether Shaddock was properly served before the Amended Bar Date, Shaddock cannot satisfy the standards for excusable neglect because he received subsequent notice in 2014 that he had failed to timely file a claim prior to the bar date. (Objection at 5.)

The Do Affidavit submitted by the Trust is dated February 3, 2020 and establishes that, on or before October 5, 2012, Shaddock was served via first class mail addressed to 1106 Main St, Holyoke, MA, 01040 with the Bar Date Notice and same was never returned as undeliverable. (Do Affidavit at 2; Objection at 10.)

## II.    DISCUSSION

### A. The Trust Has Proffered Evidence That It Served Shaddock Before the Bar Date

Shaddock argues that he did not receive notice of the bankruptcy, nor of the bar date, before his counsel's receipt of the Notice of Bankruptcy Status in October 2014. (Motion at 1.) In response, the Trust argues that Shaddock was served with the Bar Date Notice before the Amended Bar Date as indicated through the affidavit of service from the claims and noticing

4

agent, and Shaddock has failed to rebut the presumption that he was properly served. (Objection at 5, 9–11.)

"While the Second Circuit has recognized that the postal system is not one hundred percent reliable, the Supreme Court has 'repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.'" *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). In evaluating the adequacy of service by mail, courts in this circuit follow the so-called "mailbox rule." *In re Barquet Grp., Inc.*, 477 B.R. 454, 462 n.7 (Bankr. S.D.N.Y. 2012), *aff'd*, 486 B.R. 68 (S.D.N.Y. 2012) (citations omitted); *see In re AMR Corp.*, 492 B.R. 660, 663–64 (Bankr. S.D.N.Y. 2013); *In re R.H. Macy*, 161 B.R. at 359. "A rebuttable presumption that an addressee received a mailed notice arises when the mailing party submits sufficient evidence to demonstrate the notice was properly addressed and mailed." *In re Borders Grp., Inc.*, 462 B.R. 48, 52 (Bankr. S.D.N.Y. 2011) (quoting *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3875192, at *3 (Bankr. S.D.N.Y. Oct. 27, 2005)). "The sender must provide evidence of actual mailing in the form of an affidavit submitted by an individual who supervised the mailing to allow the presumption to arise." *Id.* (citing *In re WorldCom, Inc.*, 2005 WL 3875192, at *3). "Additional evidence, other than an addressee's mere denial of receipt is required to rebut the presumption that the addressee received a properly addressed notice." *In re WorldCom, Inc.*, 2005 WL 3875192, at *3 (citing *Meckel v. Continental Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985)).

"Mail properly (1) addressed (2) stamped and (3) deposited in the mail system is presumed to have been received by the party to whom it was addressed." *In re Randbre Corp.*, 66 B.R. 482, 485 (Bankr. S.D.N.Y. 1986) (citing *Hagner v. United States*, 285 U.S. 427, 430

5

(1932)). The presumption can be raised either by evidence showing that the mail was sent through regular office procedures, or through an affidavit of the person who actually supervised or carried out the mailing. *In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 34 (N.D.N.Y. 1995) (citation omitted).

Here, the Trust has put forth the affidavit of Lydia Do, an employee of KCC, the Debtors' claims and noticing agent, giving rise to the presumption that Shaddock timely received the Bar Date Notice. Shaddock has put forth no evidence to rebut the presumption of receipt. *See In re Barquet Grp., Inc.*, 477 B.R. at 462 n.7 (stating that "[t]his presumption of receipt is very strong and can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary . . . . Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary." (internal quotation marks and citation omitted)). Accordingly, the Court concludes that Shaddock was properly served with notice of the deadline for filing proofs of claim prior to the Amended Bar Date.

### B. Shaddock Has Failed to Demonstrate Excusable Neglect

Shaddock seeks leave to file the Late Claim approximately seven (7) years after the Amended Bar Date and five (5) years after receiving the Notice of Bankruptcy Status. When creditors fail to file claims before a bar date despite having notice, "Bankruptcy Rule 9006(b)(1) gives the court the discretion to enlarge the time to file claims 'where the failure to act was the result of excusable neglect.'" *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (quoting FED. R. BANKR. P. 9006(b)(1)). "The Supreme Court has interpreted 'excusable neglect' to be a flexible standard—one that can include 'inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993)). "However,

'the determination is at bottom an equitable one' that must take 'account of all relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395). The *Pioneer* Court established four factors to assist bankruptcy courts in evaluating excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395.

"The Second Circuit strictly observes bar dates and has adopted what has been characterized as a 'hard line' in applying the *Pioneer* test," meaning that this Court should focus its analysis "primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant." *In re Lehman Bros.*, 433 B.R. at 119–20 (citation omitted). The Second Circuit has noted that "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," and that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366–67 (2d Cir. 2003) (internal quotation marks and citation omitted). Instead, "[o]nly in unusual instances would . . . ignorance of the rules, or mistakes construing the rules . . . constitute excusable neglect." *In re BH S&B Holdings LLC*, 435 B.R. 153, 168 (Bankr. S.D.N.Y. 2010) (quoting *In re Nw. Airlines Corp.*, No. 05-17930 (ALG), 2007 WL 498285, at *3 (Bankr. S.D.N.Y. Feb. 9, 2007)).

Shaddock bears the burden of establishing excusable neglect. Shaddock does not explicitly argue that he has good cause for filing the Late Claim and, instead, merely argues that he should be granted leave on the sole basis that "he had not received notice of the Bankruptcy of the debtor except through local counsel's receipt" of the Notice of Bankruptcy Status. (Motion

7

at 1.) For the reasons set forth below, the *Pioneer* factors weigh against permitting Shaddock to file a late proof of claim.

With respect to first *Pioneer* factor—the danger of prejudice to the debtor—the Debtors would be prejudiced if the Court were to allow the Late Claim. The Trust argues that the approval of Shaddock's Late Claim would "undoubtedly invite similar motions" and, further, "all funds allocated for distributions to holders of Allowed Borrower Claims against GMAC Mortgage have already been distributed [Docket Nos. 10197 and 10582], so no funds remain to satisfy whatever claim [Shaddock] now seeks to assert in the bankruptcy."[4] (Objection at 14–15.) Although "[t]he prejudice to the Debtors [would not be] traceable to the filing of any single additional claim" by a potential claimant like Shaddock, it is traceable "to the impact of permitting exceptions that will encourage others to seek similar leniency." *In re Lehman Bros.*, 433 B.R. at 121. As such, a "strict application of the [bar date] is needed to effectively manage the claims process and . . . permitting additional claims will lead to an opening of the claims process with foreseeable prejudice to the Debtors." *Id.* Allowance of a late proof of claim filed seven (7) years after the Amended Bar Date, five (5) years after Shaddock received the Notice of Bankruptcy Status, and after distributions have been made would encourage other potential claimants to seek similar relief against the Debtors. As a result, the first *Pioneer* factor weighs against Shaddock.

With respect to the second *Pioneer* factor—the length of the delay and its potential impact on judicial proceedings—Shaddock is seeking to file the Late Claim more than seven (7)

---

[4] The Trust states that "[a]t this time, the only remaining funds in the Borrower Trust have been allocated for payment of Trust operating expenses necessary to keep the Trust open during the time necessary to resolve the insurance coverage adversary action which recovery, if any, is payable only to holders of Allowed Claims against the debtor, Residential Funding Company ("RFC"), and upon final resolution of the insurance coverage adversary action make a final distribution to holders of Allowed Claims against RFC." (Objection at 15.)

years after the Amended Bar Date, and five (5) years after having received the Notice of Bankruptcy Status. As discussed, distributions have already been made to holders of Allowed Borrower Claims against GMACM. (Objection at 15.) Other courts have rejected late claims with significantly shorter delays. *See, e.g.*, *Hefta v. Official Comm. Of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127 (3d Cir. 2005) (rejecting request to file proof of claim dated August 18, 2002, when bar date was April 30, 2002); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 102–03 (Bankr. S.D.N.Y. 2007) (rejecting request to file claim fifteen months after the bar date); *In re Enron Corp.*, 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003) (finding six-month delay after bar date to be "substantial" and weigh against permitting a late claim). As discussed *supra* Section II.A, the Trust has established that Shaddock received the Bar Date Notice prior to the Amended Bar Date. Beyond this, Shaddock also received the Notice of Bankruptcy Status in October 2014 and waited more than *five (5) years* to file his proof of claim. As a result, the second *Pioneer* factor weighs against Shaddock.

With respect to the third *Pioneer* factor—the reason for the delay, including whether it was within the reasonable control of the movant—Shaddock has failed to show that the reason for delay was beyond his control. Shaddock merely asserts that the delay was due to the fact that "he had not received notice of the Bankruptcy of the debtor except through local counsel's receipt" of the Notice of Bankruptcy Status in October 2014. (Motion at 1; *see* Notice of Bankruptcy Status at 6.) The Trust argues that, even if Shaddock did not receive the Bar Date Notice in 2012, Shaddock acknowledges receipt of the Notice of Bankruptcy Status in 2014. Further, the Trust argues that the Notice of Bankruptcy Status informed Shaddock that (1) he failed to file a proof of claim, and (2) such failure would preclude him from receiving any

9

distributions unless a late proof of claim is deemed timely filed by an order of the bankruptcy court. (Opposition at 13–14; *see* Notice of Bankruptcy Status at 4, 6.)

Indeed, with respect to another late-claim motion in the Residential Capital chapter 11 cases, the Court denied the motion, finding that a six-month delay in seeking relief to file a late claim could not be excused. *See In re Residential Capital, LLC, et al.*, No. 12-12020 (MG), ECF Doc. # 8076 at 10–11 (Bankr. S.D.N.Y. Feb. 6, 2015). Assuming, *arguendo*, that Shaddock did not receive the Bar Date Notice before the Amended Bar Date, Shaddock still waited more than *five (5) years* after receiving the Notice of Bankruptcy Status before seeking relief. (*See* Notice of Bankruptcy Status at 6.) Importantly, Shaddock no reasons for the five (5) year delay. (*See* Motion at 1.) As a result of Shaddock's inaction since 2014, the third *Pioneer* factor weighs against Shaddock.

As for the final *Pioneer* factor—whether Shaddock acted in good faith—the Trust states that it has no information whether Shaddock acted in good or bad faith in only recently filing the Motion. (Objection at 16.) The Court will not presume bad faith, but since three of the four *Pioneer* factors weigh against permitting Shaddock to file a late claim, the Court concludes that the Motion should be denied. *See In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1889042, at *4 (Bankr. S.D.N.Y. Apr. 8, 2003) (citing *In re Keene Corp.*, 188 B.R. 903, 909 (Bankr. S.D.N.Y. 1995)) ("The relative weight to be accorded to the factors identified in *Pioneer* requires recognizing that not all factors need to favor the moving party."). Accordingly, Shaddock has not met his burden of establishing excusable neglect.

[*Remainder of page intentionally left blank*]

### III. CONCLUSION

For the reasons discussed above, Shaddock's Motion for leave to file a late proof of claim is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 12, 2020
New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge