KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
)
In re:                                                    )    Case No. 12-12020 (MG)
)
RESIDENTIAL CAPITAL, LLC, et al.,      )    Chapter 11
)
                              Debtors.        )    Jointly Administered
)
---------------------------------------------------------

**NOTICE OF**
**SECOND MOTION OF THE RESCAP LIQUIDATING TRUST FOR ENTRY**
**OF AN ORDER APPROVING THE DESTRUCTION OF OBSOLETE RECORDS**

PLEASE TAKE NOTICE that on April 16, 2021, the ResCap Liquidating Trust

filed the *Second Motion for Entry of an Order Approving the Destruction of Obsolete Records* (the

"**Motion**").  A hearing on the Motion will be held before the Honorable Martin Glenn, United

States Bankruptcy Judge, at the United States Bankruptcy Court located at One Bowling Green,

New York, New York 10004, on **May 13, 2021, at 11:00 a.m., prevailing Eastern Time** (The

"**Hearing**").  In accordance with General Order M-543, dated March 20, 2020, the Hearing will

be conducted telephonically.  Any parties wishing to participate must do so telephonically by

making arrangements through Court Solutions by telephone (917-746-7476).

PLEASE TAKE FURTHER NOTICE that responses or objections to the Motion,

shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local

Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy

Court, together with a copy to the Chambers of Judge Glenn, and served so as to be received no

later than **4:00 p.m. prevailing Eastern time on April 26, 2021** (the "**Objection Deadline**")**,** upon

(i) counsel to the ResCap Liquidating Trust, Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue

of the Americas, New York, NY 10036 (Attention: Kenneth H. Eckstein, Douglas H. Mannal, and

Joseph A. Shifer); (ii) the Office of the United States Trustee for the Southern District of New

York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014

(Attention: Linda A. Riffkin); and (iii) The ResCap Liquidating Trust, 365 Fifth Avenue, Suite

201, Naples, Florida 34102.  (Attention: Jill Horner).

PLEASE TAKE FURTHER NOTICE that if no objections or other responses are

timely filed and served with respect to the Motion, the ResCap Liquidating Trust may, on or after

the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed

as Exhibit 1 to the Motion, which the Bankruptcy Court may enter without further notice or

opportunity to be heard.

Dated:  April 16, 2021
      New York, New York

             KRAMER LEVIN NAFTALIS & FRANKEL LLP

             /s/ Joseph A. Shifer
             Kenneth H. Eckstein
             Douglas H. Mannal
             Joseph A. Shifer
             1177 Avenue of the Americas
             New York, New York 10036
             Telephone: (212) 715-9100
             Facsimile: (212) 715-8000

             *Counsel for the ResCap Liquidating Trust*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
---------------------------------------------------------

### SECOND MOTION OF THE RESCAP LIQUIDATING TRUST FOR ENTRY OF AN ORDER APPROVING THE DESTRUCTION OF OBSOLETE RECORDS

# TABLE OF CONTENTS

**Page**

A.  General Background ................................................................................................. 5

B.  The Sale of the Debtors' Businesses and the Transfer of Origination and Servicing
Documents ............................................................................................................. 5

C.  Status of the Liquidating Trust .............................................................................. 6

D.  Provisions Governing Books and Records under the Plan and the LTA ............................ 7

E.  The Liquidating Trust's Records Preservation Efforts ........................................................ 9

F.  The Obsolete Records ................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re DeLuca Distribution Co.*,
　38 B.R. 588 (Bankr. D. Ohio 1984) .................................................. 15

*Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV
　Corp. (In re Chateaugay Corp.)*,
　973 F.2d 141 (2d Cir. 1992) ............................................................ 15

*Sarf v. N.Y. State Dep't of Health (In re Adelphi Hosp. Corp.)*,
　579 F.2d 726 (2d Cir. 1978) ............................................................ 14

**Statutes**

11 U.S.C. § 105 ................................................................................ 1, 5

11 U.S.C. § 105(a) ............................................................................. 14

11 U.S.C. § 363 ............................................................................... 5, 15

11 U.S.C. § 363(b) ............................................................................. 14

11 U.S.C. § 363(b)(1) ........................................................................ 14

11 U.S.C. § 554 ..................................................................... 1, 5, 14, 15

11 U.S.C. § 554(a) ............................................................................. 14

11 U.S.C. § 1108 ............................................................................... 15

28 U.S.C. § 157 .................................................................................. 5

28 U.S.C. § 157(b) .............................................................................. 5

28 U.S.C. § 1334 ................................................................................ 5

28 U.S.C. § 1408 ................................................................................ 5

28 U.S.C. § 1409 ................................................................................ 5

**Rules**

Fed. R. Bankr. P. 6007 ............................................................... 1, 5, 16

Fed. R. Bankr. P. 6007(a) .................................................................. 14

Local Bankr. R. 2015-1 .............................................................. 1, 5, 15

The ResCap Liquidating Trust (the "**Liquidating Trust**"), as successor-in-interest to the debtors (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby submits this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "**Proposed Order**"), pursuant to sections 105 and 554 of title 11 of chapter 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-1 of the Local Rules for the Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), approving the destruction of obsolete records, all as described more fully below.  In support of this Motion, the Liquidating Trust submits the declaration of Jill Horner, Chief Financial Officer for the Liquidating Trust (the "**Horner Declaration**"), attached hereto as **Exhibit 2** and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      On October 2, 2019, the Court granted the Liquidating Trust's first motion to destroy obsolete records (the "**First Obsolete Records Motion**"), saving the Liquidating Trust and its unitholders more than $200,000 in monthly storage costs.  Since that time, the Liquidating Trust has continued its wind down efforts, and has successfully resolved nearly all affirmative litigation pursued by the Liquidating Trust on behalf of its unitholders.  Notably, only two litigations remain (the "**Remaining Litigations**"):

- The Liquidating Trust is the plaintiff in an adversary proceeding brought against certain insurance companies currently pending before Judge Sean H. Lane.  *Drennen, et al. v. Certain Underwriters at Lloyd's of London, et al.*, Adv. Proc. No. 15-01025 (SHL).  On December 27, 2019, Judge Lane issued a written memorandum of decision granting the plaintiffs' motion for partial summary judgement.  Fact discovery is scheduled to close on June 18, 2021, and expert discovery on August 18, 2021.

- The Liquidating Trust is the plaintiff in a correspondent lender case against Primary Residential Mortgage, Inc. ("**PRMI**") before the United States District Court for the District of Minnesota.  *ResCap Liquidating Trust v. Primary Residential Mortgage,*

*Inc., Case No. 16-cv-4070* (SRN/HB). The action concluded in a bench trial resulting in a verdict for the Liquidating Trust in August 2020. The Liquidating Trust's motions for interest and attorney fees are currently pending.

2.      In addition, the Liquidating Trust has been continually evaluating and adjusting its headcount. As of its inception, the Liquidating Trust employed approximately 83 individuals who were previously employed by the Debtors (the "**Legacy Employees**"). The Legacy Employees assisted the Liquidating Trust in various aspects of its mandate, including the pursuit of affirmative causes of action that were transferred from the Debtors to the Liquidating Trust, resolution of disputed claims, and the preparation of the Liquidating Trust's tax and financial reporting. As of the date hereof, and as a result of the completion of the claims resolution process and the near-completion of the Liquidating Trust's affirmative litigations, there is only one remaining Legacy Employee.

3.      Accordingly, following a thoughtful evaluation of the Liquidating Trust's progress to date, the cost to be incurred by continued storage of obsolete records, and its document retention obligations, by this Motion, the Liquidating Trust seeks authority to destroy the following categories of obsolete records (collectively, the "**Obsolete Records**"):

- **Obsolete Loan Records**. The Liquidating Trust seeks to destroy approximately 25,400 cartons (collectively, the "**Obsolete Loan Records**") containing various loan and underwriting materials that the Liquidating Trust has been preserving during the pendency of its affirmative litigations against those financial institutions that originated loans that were sold to the Debtors  (the "**Correspondent Lender Litigations**"), as well as loan files pertaining to loans sold by the Debtors and the Liquidating Trust for which information was provided to the buyers electronically and for which the buyers have declined to receive physical records.

- **Miscellaneous Debtor Obsolete Records**. The Liquidating Trust seeks to destroy (i) approximately 7,550 cartons of miscellaneous materials that were placed in storage by the Debtors, and (ii) approximately 15,571 data tapes relating to various legacy IT systems of the Debtors (collectively, the "**Miscellaneous Debtor Obsolete Records**"). As discussed in the First Obsolete Records Motion to destroy obsolete records, many of the Miscellaneous Debtor Obsolete Records include various documents that were placed into storage by the Debtors in the decades prior to the Chapter 11 Cases without any systematic organization. Further, cataloguing and

- 2 -

determining the precise contents of the data tapes and hard drives that constitute the Miscellaneous Obsolete Records would require many thousands of hours and the restoration of legacy IT systems that have long been deactivated. As a result, the cost the Liquidating Trust would incur in retrieving and cataloging each carton, data tape, or hard drive that contains the Miscellaneous Debtor Obsolete Records is out of all proportion to any perceived benefit.

- **Legacy Employee Obsolete Records**. As discussed above, the Liquidating Trust, at its peak, employed approximately 83 Legacy Employees who assisted the Liquidating Trust in various aspects of its mandate. Over the course of their employment, the Legacy Employees placed various work materials into storage. The Liquidating Trust estimates that there are currently 1300 cartons of such materials being stored. Much of this materials is of no further use to the Liquidating Trust either because the materials relate to matters that have been long resolved (*e.g.*, materials related to the claims resolution process) or because the relevant materials have been electronically preserved. Accordingly, the Liquidating Trust intends to undertake a thorough review of these materials and destroy such records (collectively, the "**Legacy Employee Obsolete Records**") that are either (i) otherwise preserved electronically or (ii) unrelated to human resources matters, accounting and financial record keeping, or tax reporting (except to the extent such records have been electronically preserved).

4.      To be clear, the Liquidating Trust is not seeking to destroy any records necessary for the administration of the Debtors' estate, or any materials related to the Remaining Litigations.[1] During the discovery phase of the Correspondent Lender Litigations, the Liquidating Trust preserved the Obsolete Loan Records as they were potentially relevant to the discovery taken in those cases. However, with those litigations concluded, destruction of the Obsolete Loan Records is appropriate. Moreover, as discussed in the First Obsolete Records Motion, the Miscellaneous Obsolete Records are unlikely to be of any utility, even if the Liquidating Trust undertakes the enormous expense of cataloging the contents of each of the thousands of document cartons in storage.

5.      Finally, to the knowledge of the Liquidating Trust, the Obsolete Records are no longer subject to any applicable records retention laws or regulations. Typical document retention

---

[1] Although some of the Obsolete Loan Records include materials produced in the course of the PRMI litigation, those records have been electronically preserved and the Liquidating Trust is not seeking to destroy such electronic records.

laws require that records be kept for 3-8 years.  Given that the Debtors' cases were initiated more than eight years ago, it is unlikely that any of the Obsolete Records would continue to be subject to applicable document retention requirements.   Further, with respect to the Legacy Employee Obsolete Records, the Liquidating Trust is not seeking to destroy documents related to any human resources, accounting, and tax documents, except to the extent such documents have been electronically preserved.

6.      Destroying the Obsolete Records will result in cost savings, freeing up funds that can be more effectively applied towards the necessary costs of administration of the Liquidating Trust and, most importantly, distributions to Unitholders. The Liquidating Trust estimates that the cost of preserving the Obsolete Records is approximately $10,700 per month, which will be subject to increases as the Liquidating Trust's contract with document storage vendors expire.

7.      For these reasons, the Liquidating Trust requests that the Court enter the Proposed Order and permit the Liquidating Trust to destroy the Obsolete Records.

## **JURISDICTION**

8.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. Further, pursuant to the Chapter 11 Plan, the Court retained jurisdiction to "issue such orders in aid of execution of the Plan." *See* Chapter 11 Plan, Art. XII. This is a core proceeding under 28 U.S.C. § 157(b).

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The predicates for the relief requested in this Motion are sections 105, 363 and 554 of the Bankruptcy Code, Bankruptcy Rule 6007, and Local Rule 2015-1.

## **BACKGROUND**

A. **General Background**

11.    On May 14, 2012, (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

12.    On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors (the "**Confirmation Order**") [Docket No. 6065] approving the terms of the Chapter 11 plan, as amended (the "**Plan**"), filed in these Chapter 11 Cases [Docket No. 6065-1].[2]

13.    On December 17, 2013, the Effective Date of the Plan occurred (the "**Effective Date**"), and, among other things, the Liquidating Trust was established pursuant to that certain Liquidating Trust Agreement dated as of the Effective Date (the "**LTA**") to, among other things, wind down the affairs of the Debtors, *see* Plan, Art. VI.

B. **The Sale of the Debtors' Businesses and the Transfer of Origination and Servicing Documents**

14.    During the course of the Chapter 11 Cases, pursuant to bidding procedures and an auction process approved by the Court, the Debtors sold a majority of their operating assets, including the sale of (i) their servicing and origination platform to Walter Investment Management Corporation ("**Walter**")[3] and Ocwen Loan Servicing, LLC ("**Ocwen**"), and (ii) the Debtors' "legacy whole loan" portfolio to Berkshire Hathaway, Inc. (together, the "**Asset Sales**").  The sales to Walter and Berkshire Hathaway closed on January 31, 2013, and the sale to Ocwen closed on February 15, 2013.

---

[2]   Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3]   Green Tree Servicing LLC is a subsidiary of Walter that assumed certain of the rights and obligations relating to the sale.

15.    As part of the Asset Sales, the Debtors transferred all active servicing-related files to Walter and Ocwen (excluding those records relating to loans serviced by the Debtors that had, prior to the Assets Sales, (i) matured or were refinanced or (ii) had been "charged off" due to default and deemed inactive), and transferred all documentation relating to the whole loans to Berkshire.  Walter and Ocwen were unwilling to take the servicing-related files for the loans that were no longer active at the time, and these thus remained with the files maintained in storage by the Debtors.

C.    **Status of the Liquidating Trust**

16.    Since the Effective Date, the Liquidating Trust has worked diligently to monetize the assets of the Debtors transferred to it, resolve disputed claims, and make distributions to Unitholders.

17.    To date, the Liquidating Trust has disposed of all of the disputed claims that it was charged with resolving.  The Liquidating Trust has sold the substantially all of the mortgage and real estate assets transferred to the Liquidating Trust from the Debtors' estates at inception.  Further, the Liquidating Trust has successfully pursued numerous affirmative litigations that have resulted in over $1.3 billion in recoveries to holders of units of beneficial interest of the Liquidating Trust ("**Unitholders**").  Other than the Remaining Litigations, those litigations have concluded.  As a result of these efforts, the Liquidating Trust has distributed $3.38 billion to Unitholders to date, including the $1.765 billion distributed at inception of the Liquidating Trust.  In total, Unitholders have to date received distributions of $34.15 per Unit.

18.    Further, the Correspondent Lender Litigations have been settled with the exception of the PRMI case noted above in which the trial has concluded.

19.    Finally, the Liquidating Trust has an action against certain insurers pending in United States Bankruptcy Court for the Southern District of New York before Judge David S.

Jones. Prior to the case reassignment, Judge Sean Lane granted the plaintiffs' motion for partial summary judgment motion. Fact discovery is scheduled to conclude June 18, 2021.

20.    Importantly, the Obsolete Records are not necessary for the continued prosecution of any of these pending proceedings.

21.    Although the Liquidating Trust occasionally receives inquiries from certain parties requesting documents related to the chain of title for a property which the Debtors' previously serviced or were subject to a mortgage loan originated by the Debtors, the Court entered its *Order (I) Modifying the Court's Order Approving Procedures by which Third Parties May Request and Obtain Stipulated Relief From the Automatic Stay to Commence or Continue Actions to Foreclose on Senior Liens, (II) Clarifying the Scope of The Plan Injunction Provisions, (III) to the Extent Necessary, Modifying the Automatic Stay and Plan Injunction Provisions to Permit Third Parties to Commence and Complete Actions to Foreclose on Senior Liens and Non-Monetary Causes of Action Seeking to Clear or Quiet Title and (IV) Modifying the Court's Order Establishing Procedures Enforcing Injunctive Provisions of the Plan and Confirmation Order* [Docket No. 10655] (the "**Stay Modification Order**") which permits mortgagors and related parties to more efficiently prosecute non-monetary "quiet title" actions should they need to do so.

D.    **Provisions Governing Books and Records under the Plan and the LTA**

22.    The Plan and the LTA provide for the Liquidating Trust to take custody of the Debtors' books and records. Article XIII.E of the Plan provides as follows:

> On the Effective Date, . . . the Liquidating Trust shall be authorized to take possession of, all of the books and records of the Debtors, including . . . all information and data on computers owned or leased by the Debtors or otherwise on premises occupied by the Debtors, and all rights of access to data of the Debtors and their affiliates, that were not otherwise transferred to a third party on or prior to the Effective Date. The Liquidating Trust shall have the responsibility of storing and maintaining such books and records. . . .

23.     Further, pursuant to section 2.12(c) of the LTA, "[t]he Liquidating Trust shall be authorized without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy books and records (whether in electronic or paper format) in accordance with Section 12.3."  In addition, pursuant to Section 6.4(b) of the LTA, "[T]he Liquidating Trust Board shall be expressly authorized and empowered . . . (xvii) to maintain and dispose of the books and records transferred to the Liquidating Trust, as provided in Section 2.12 and Section 12.3."

24.     Section 12.3 of the LTA, in turn, provides as follows (emphasis supplied):

If so determined by the Liquidating Trust Board, or absent such determination, in the discretion of the Liquidating Trust Agent appointed pursuant to Section 12.2, all books and records pertaining to the Debtors or the Liquidating Trust that have been delivered to or created by the Liquidating Trust may be destroyed at any time following (x) the date that is six (6) years after the final distribution of Liquidating Trust Assets (unless such records and documents are necessary to fulfill the Liquidating Trust's remaining obligations) subject to the terms of any joint prosecution and common interests agreement(s) to which the Liquidating Trust may be a party, or (y) *such earlier date as may approved by order of the Bankruptcy Court on application of the Liquidating Trust*; provided, however, that the Liquidating Trust shall obtain an order of the Bankruptcy Court before disposing of any books and records that are reasonably likely to pertain to pending litigation in which the Debtors or their current or former officers or directors are a party.

25.     Accordingly, while the Plan and the LTA provide that the Liquidating Trust will store and maintain the books and records received from the Debtors, the LTA expressly contemplates that there may come a time when it is appropriate to apply to the Court for authorization to destroy such books and records.  Given the very advanced state of the Liquidating Trust, the substantial cost to the Liquidating Trust of continuing to maintain the vast majority of these book and records, the extended time required to process the destruction of the Obsolete Records, and the absence of any corresponding benefit of continuing to preserve these books and records, as described below, the Liquidating Trust respectfully submits that the time to discard these documents and tapes has arrived.

- 8 -

E.     **The Liquidating Trust's Records Preservation Efforts**

26.     Following the Effective Date, and in accordance with the provisions of the LTA cited above, the Liquidating Trust assumed ownership, and the administrative expense of maintaining, the Debtors' books and records.

27.     To ensure that vital records of the Debtors' were preserved, the Liquidating Trust, working together with its various litigation counsel, set about identifying those records that were necessary for the claims reconciliation process, any affirmative litigations being pursued by the Trust and certain other matters (the "**Retained Data Matters**").   Among other records, the Liquidating Trust electronically preserved documents related to the following matters:

- The Department of Justice's investigation of the Debtors' prepetition mortgage servicing business, which has been resolved.

- The investigation of the Debtors by the U.S. Securities and Exchange Commission and the Department of Justice under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), which too has been resolved.

- The claims reconciliation process, which is now complete.

- The Liquidating Trust's post-Effective Date preference actions, consisting of 39 litigations asserting approximately $30.8 million in damages, and resulting in the collection of approximately $2.3 million, all of which have been resolved.

- The pending adversary proceeding related to an insurance coverage dispute with certain insurers, in which the Liquidating Trust asserts a right to reimbursement for defense costs and pre-bankruptcy settlements paid to certain class action plaintiffs, styled as *Rowena Drennan, et al. v. Certain Underwriters at Lloyds of London, et al.*, Adv. Pro. No. 15-01025 (SHL).

- The Liquidating Trust's litigations against those financial institutions that originated loans that were sold to the Debtors but did not conform with the seller's representations and warranties made in the relevant purchase agreement (the "**Correspondent Lender Litigations**").   As noted, there is one remaining Correspondent Lender Litigation in which the trial is now concluded.

28.     In all, the Liquidating Trust has preserved more than eight terabytes of data relevant to the Retained Data Matters (the "**Retained Data**").   This includes information produced to the

Liquidating Trust by third parties and the home drive data and hard drive backup for all "key custodians" for whom the Liquidating Trust produced data in the Retained Data Matters. All such preserved data is included in the Retained Data. As described above, the Liquidating Trust will continue to preserve the Retained Data in electronic format, but is seeking to destroy any hard copy information in connection with the Retained Data that may constitute the Obsolete Records.

**F.    The Obsolete Records**

29.    As a subsidiary of Ally, the Debtors were subject to the document retention policy of Ally Financial, Inc. ("**Ally**"), their ultimate corporate parent, which called for retention of non-litigation hold documents for various periods of time, after which the documents were to have been destroyed. However, apparently, the Debtors were not consistent in following the Ally document retention policy, particularly with respect to document destruction. As a result, the Debtors accumulated a voluminous amount of material, the vast majority of which is either of no current informational value to the Liquidating Trust or any other party, or could not in any event be retrieved without substantial effort and considerable cost.

30.    The Obsolete Records include a collection of approximately 40,214 boxes of documents currently maintained at Iron Mountain, a document retention vendor, and an additional approximately 7,500 boxes maintained at Corodata, another document retention vendor. In addition, the Liquidating Trust is storing approximately 15,571 data tapes at Corodata. The total annual storage costs of the Obsolete Records that are subject to the Motion is over $124,000.

31.    With respect to the Miscellaneous Obsolete Records, no inventory of the contents of the boxes of documents were maintained by the Debtors and the Liquidating Trust is unable to determine their particular contents without retrieving each storage box and file and cataloguing the materials that it contains. Efforts to do so would cost millions of dollars and entail countless man hours of work, all bereft of any practical benefit.

- 10 -

32.    The information on the data tapes constituting the Miscellaneous Debtor Obsolete Records are even less accessible.  The remaining tapes appear to be backup for email exchanges, e-discovery exercises and legacy systems of the Debtors, none of which has any current relevance. Moreover, the Liquidating Trust lacks the hardware and software necessary even to read many of the tapes, and identifying and paying vendors who might be able to do so would undoubtedly entail considerable expense and might not produce a successful result

33.    With respect to the Legacy Employee Obsolete Records, the Liquidating Trust is confident that all critical records with respect the various functions conducted by the Legacy Employees has been preserved electronically.  Moreover, the Liquidating Trust is not seeking to destroy any documents related to the human resources, accounting, or tax functions of the Liquidating Trust.  Accordingly, following a thorough review, the Liquidating Trust will destroy only those Legacy Employee Obsolete Records that are either (i) otherwise preserved electronically or (ii) unrelated to human resources matters, accounting and financial record keeping, or tax reporting (except to the extent such records have been electronically preserved).

34.    Since its inception, the Liquidating Trust has been receiving requests for documentation from mortgagors seeking to resolve lien issues or establish quiet title or regulators seeking historical loan records on matters unrelated to the Liquidating Trust or the Debtors.  These requests have tapered off substantially with the passage of time and the Liquidating Trust now has only one legacy employee who remains to assist with any matters relating to historical records. On August 5, 2019, the Liquidating Trust obtained the Stay Modification Order from the Court which, among other things, modifies the automatic stay and plan injunction provisions to permit third parties to commence and complete actions to foreclose on senior liens and non-monetary causes of action seeking to clear or quiet title.  In addition, the Liquidating Trust has cooperated

to the extent practicable with regulatory entities seeking access to historical loan records. Importantly, the relief requested in the Motion will not impact the Liquidating Trust's ability to accommodate such requests.

35.    The Liquidating Trust has been, and will continue to be, careful about segregating and preserving documentation that remains of future relevance or is required to be maintained for a future period by operation of law.  Documents that are known by the Liquidating Trust to pertain to any proceedings or other matters that have not been fully and finally resolved, or that have relevance to the continued operations of the Liquidating Trust  or that the Liquidating Trust is otherwise legally required to maintain, will be retained for as long as necessary and in compliance with law.

36.    By this Motion, for all the stated reasons, the Liquidating Trust seeks entry of the Proposed Order approving the destruction of the Obsolete Records.

## BASIS FOR RELIEF

37.    As described herein, the Obsolete Records are a significant administrative burden on the Liquidating Trust and are a recurring expense that will have the effect of reducing creditor recoveries.   Accordingly, the Liquidating Trust submits that the destruction of the Obsolete Records is in the best interests of the estates and that no party will be prejudiced by the destruction of the Obsolete Records.

38.    Pursuant to section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  11 U.S.C. § 105(a).  Section 554 of the Bankruptcy Code, in turn, provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); *see also* Fed. R. Bankr. P. 6007(a) (authorizing abandonment on advance notice).  Section 554 of the

Bankruptcy Code provides debtors with an avenue by which property deemed "burdensome" or of "inconsequential value and benefit to the estate" may be abandoned. *See* 11 U.S.C. § 554(a); *see also Sarf v. N.Y. State Dep't of Health (In re Adelphi Hosp. Corp.)*, 579 F.2d 726, 727 (2d Cir. 1978) (affirming decision authorizing trustee of debtor to dispose of medical records that no longer benefited the estate).[4]

39.     Comment to Local Rule 2015-1 expressly provides that "the Court may issue an appropriate order limiting storage of the debtor's books, records, and papers. Disposal of the debtor's books, records, and papers is governed by sections 363 and 554 of the Bankruptcy Code."

40.     In addition, section 1108 of the Bankruptcy Code charges the Debtors with operating their business in a cost-efficient manner that is beneficial to the estate. *See In re DeLuca Distribution Co.*, 38 B.R. 588, 591 (Bankr. D. Ohio 1984) ("The authority to operate the debtor's business necessarily includes the concomitant discretion to exercise reasonable judgment in ordinary business matters.").

41.     As set forth above, the Obsolete Records are not necessary for the administration and completion of these Chapter 11 Cases and the administration of the Debtors' estates. The costs associated with storage of the Obsolete Records constitute an unnecessary administrative expense of the estate, which reduces the amounts available for distribution to Unitholders and for other necessary purposes. Abandoning these documents is consistent with, and even required by, the mandate of the Liquidating Trust to conduct its operations as efficiently as possible, so as to maximize recoveries for Unitholders.

---

[4]    The Liquidating Trust is clearly authorized by section 363(b) of the Bankruptcy Code to expend funds to defray the costs involved in the destruction of the Obsolete Records. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (use under section 363(b) must be based on a sound business reason) (citations omitted).

42.     Importantly, the Liquidating Trust is taking the necessary steps to assure that books, records and other documents that do not constitute Obsolete Records, either because such documents have realistic continuing use or relevance to the Liquidating Trust , or because preservation of such records at this time is required by law, will be retained and preserved until such time as such documents become Obsolete Records or the destruction of such documents is authorized under Section 12.3 of the LTA.

43.     Accordingly, the Liquidating Trust, in its sound business judgment, has determined that it is in the best interests of the estate, creditors, and all parties in interest to immediately destroy the Obsolete Records.

## NOTICE

44.     Notice of this Motion has been provided in accordance with Case Management Order, including to the parties identified on the Special Service List and General Service List (as such terms are defined in the Case Management Order), and all defendants in pending affirmative litigations prosecuted by the Liquidating Trust, including the pending Correspondent Lender Litigation.  The Liquidating Trust submits that, under the circumstances, no other or further notice is necessary.[5]

---

[5]    Rule 6007 provides that, "Unless otherwise directed by the court, the trustee or debtor in shall possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees and committees elected pursuant to §705 or appointed pursuant to §1102 of the Code."  As the Case Management Order provides that "All Filings for which particular notices are required by . . . [Bankruptcy Rule 6007] shall be served on [the Special Service List and General Service List] and each entity having an ownership interest in the property or a lien or encumbrance on the property to be abandoned," and in light of the stage of these cases, the Liquidating Trust submits that service in this manner is appropriate.

## **CONCLUSION**

WHEREFORE, the Liquidating Trust respectfully request that the Court enter an order

granting the relief requested and such other or further relief as is just and proper.

Dated: April 16, 2021
　　　New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Joseph A. Shifer
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

*Counsel for the ResCap Liquidating Trust*

**Exhibit 1**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------
                                                    )
In re:                                              )        Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,            )        Chapter 11
                                                    )
                                  Debtors.          )        Jointly Administered
                                                    )
-----------------------------------------------------------

## <u>SECOND ORDER APPROVING THE DESTRUCTION OF OBSOLETE RECORDS</u>

Upon the motion (the "**Motion**")[6] filed by the ResCap Liquidating Trust (the "**Liquidating Trust**"), as successor in interest to the debtors (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), seeking authority to destroy certain obsolete records and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Liquidating Trust, the Liquidating Trust's beneficiaries, and the Debtors; and the Court having determined that the legal and factual bases set forth in the Motion and the Horner Declaration establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

---

[6] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as provided herein.

2.      The Liquidating Trust is authorized to abandon, dispose of and/or destroy the Obsolete Records as set forth in the Motion.

3.      The Liquidating Trust shall take commercially reasonable steps to assure that books, records and other documents that do not constitute Obsolete Records are retained and preserved in accordance with the terms of the Liquidating Trust Agreement and applicable law.

4.      The Liquidating Trust and its agents, delegates and professionals shall have no liability whatsoever arising from or relating to any abandonment, disposal or destruction of the Obsolete Records pursuant to the terms of this Order.

5.      The Court shall retain jurisdiction relating to the interpretation and implementation of this Order.

Dated:    _____, 2021
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 2**

**Horner Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

-----------------------------------------------------------

### DECLARATION OF JILL HORNER IN SUPPORT OF THE <br> SECOND MOTION OF THE RESCAP LIQUIDATING TRUST FOR ENTRY <br> <u>OF AN ORDER APPROVING THE DESTRUCTION OF OBSOLETE RECORDS</u>

I, Jill Horner, hereby declare as follows:

      1.     I serve as the Chief Financial Officer for the ResCap Liquidating Trust (the "**Liquidating Trust**"), and from May 2013 to December 17, 2013, I served as Chief Finance Executive for Residential Capital, LLC and its debtor-affiliates (collectively "**ResCap**"), as the debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**"). I have been employed by affiliates of ResCap since 2000, originally as the Manager of Financial Planning and Analysis for Residential Capital Group, a managerial division under Residential Funding Company, LLC. I became a Senior Finance Officer for Originations on or around 2003 and expanded my role to include Financial Servicing Operations on or around 2007, a position I held until 2010, when I became interim Senior Financial Officer for the International Business Group. In 2011, I became the ResCap Senior Director for Financial Planning and Analysis, a position I held until I became the Chief Finance Executive. In my role as Chief Finance Executive at ResCap, I was responsible for, among other things, operational accounting, financial forecasting and analytics, accounts payable processing, tax and treasury matters, including cash forecasting and cash management.

2.      I am authorized to submit this declaration (the "**Declaration**") in support of the *Second Motion of the ResCap Liquidating Trust for Entry of an Order Authorizing the Destruction of Obsolete Records* (the "**Motion**").[7]

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors 'and the Liquidating Trust's operations and finances, information learned from my review of the Debtors 'and Liquidating Trust's litigation case files, books and records, as well as other relevant documents, and information I have received through my discussions with other members of the Debtors 'and Liquidating Trust management or other employees, professionals and consultants of the Debtors and the Liquidating Trust, or my opinion based upon my experience, expertise, and knowledge of the Debtors 'and Liquidating Trust's litigation matters, financial condition and history.

4.      In making these statements based on my review of the Debtors 'and Liquidating Trust's litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors 'and Liquidating Trust's employees, consultants or counsel, I have relied upon these employees, consultants, and counsel accurately recording, preparing, collecting, or verifying any such documentation and other information.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Motion on that basis.

5.      In the seven years since its creation, the Liquidating Trust's management, employees and professionals have worked diligently to pursue the Liquidating Trust's objectives in a manner that maximizes recoveries to Unitholders.  In accordance with the Debtors' Chapter 11 Plan, the Liquidating Trust was created on December 17, 2013 (*i.e.*, the Effective Date under the Plan), to, among other things, (i) wind-down the Debtors' non-cash assets, (ii) resolve non-

---

[7]      Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Motion.

Borrower claims asserted against the Debtors, (iii) pursue litigation on behalf of the Debtors'

estates, and (iv) make periodic distributions to Unitholders.

6.    As a result of these efforts, the Liquidating Trust has distributed $3.38 billion to

Unitholders to date, including the $1.765 billion distributed at inception of the Liquidating Trust.

In total, Unitholders have to date received distributions of $34.15 per Unit

7.    Since the Court granted the Liquidating Trust's firm motion to destroy obsolete

records (the "**First Obsolete Records Motion**") on October 2, 2019, the Liquidating Trust has

saved unitholders more than $200,000 in monthly storage costs.  Since that time, the Liquidating

Trust has continued its wind down efforts, and has successfully resolved nearly all affirmative

litigation pursued by the Liquidating Trust on behalf of its unitholders.  Notably, only two

litigations remain (the "**Remaining Litigations**"):

- The Liquidating Trust is the plaintiff in an adversary proceeding brought against certain insurance companies currently pending before Judge Sean H. Lane.  *Drennen, et al. v. Certain Underwriters at Lloyd's of London, et al.*, Adv. Proc. No. 15-01025 (SHL).  On December 27, 2019, Judge Lane issued a written memorandum of decision granting the plaintiffs' motion for partial summary judgement.  Fact discovery is scheduled to close on June 18, 2021, and expert discovery on August 18, 2021.

- The Liquidating Trust is the plaintiff in a correspondent lender case against Primary Residential Mortgage, Inc. ("**PRMI**") before the United States District Court for the District of Minnesota.  *ResCap Liquidating Trust v. Primary Residential Mortgage, Inc., Case No. 16-cv-4070* (SRN/HB).  The action concluded in a bench trial resulting in a verdict for the Liquidating Trust in August 2020.  The Liquidating Trust's motions for interest and attorney fees are currently pending.

8.    Further, I am familiar with the claims reconciliation process in these Chapter 11

Cases.  As of this date, all claims against the estates of the Debtors have been resolved or expunged.

9.    I am also familiar with the efforts of the Liquidating Trust to sell or otherwise

monetize the assets that were transferred to it under the Plan, and a substantial portion of those

mortgage and real estate assets have been sold or otherwise monetized.  During the course of the

Chapter 11 Cases, pursuant to bidding procedures and an auction process approved by the Court, the Debtors sold a majority of their operating assets, including the sale of (i) their servicing and origination platform to Walter Investment Management Corporation ("**Walter**")[8] and Ocwen Loan Servicing, LLC ("**Ocwen**"), and (ii) the Debtors' "legacy whole loan" portfolio to Berkshire Hathaway, Inc. (together, the "**Asset Sales**").  The sales to Walter and Berkshire Hathaway closed on January 31, 2013, and the sale to Ocwen closed on February 15, 2013.

10.    As part of the Asset Sales, the Debtors transferred all active servicing-related files to Walter and Ocwen (excluding those records relating to loans serviced by the Debtors that had, prior to the Assets Sales, (i) matured or were refinanced or (ii) had been "charged off" due to default and deemed inactive), and transferred all documentation relating to the whole loans to Berkshire.  Walter and Ocwen were unwilling to take the servicing-related files for the loans that were no longer active at the time, and these remained with the files maintained in storage by the Debtors.

11.    To ensure that vital records of the Debtors' were preserved, the Liquidating Trust, working together with its various litigation counsel, set about identifying those records that were necessary for the claims reconciliation process, any affirmative litigations being pursued by the Trust and certain other matters (the "**Retained Data Matters**").  Among other records, the Liquidating Trust electronically preserved documents related to the following matters:

- The Department of Justice's investigation of the Debtors' prepetition mortgage servicing business, which has been resolved.

- The investigation of the Debtors by the U.S. Securities and Exchange Commission and the Department of Justice under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), which too has been resolved.

---

[8]    Green Tree Servicing LLC is a subsidiary of Walter that assumed certain of the rights and obligations relating to the sale.

- The claims reconciliation process, which is now complete.

- The Liquidating Trust's post-Effective Date preference actions, consisting of 39 litigations asserting approximately $30.8 million in damages, and resulting in the collection of approximately $2.3 million, all of which have been resolved.

- The pending adversary proceeding related to an insurance coverage dispute with certain insurers, in which the Liquidating Trust asserts a right to reimbursement for defense costs and pre-bankruptcy settlements paid to certain class action plaintiffs, styled as *Rowena Drennan, et al. v. Certain Underwriters at Lloyds of London, et al.*, Adv. Pro. No. 15-01025 (SHL).

- The Liquidating Trust's litigations against those financial institutions that originated loans that were sold to the Debtors but did not conform with the seller's representations and warranties made in the relevant purchase agreement (the "**Correspondent Lender Litigations**").  As noted, there is one remaining Correspondent Lender Litigation in which the trial is now concluded.

12.    In all, the Liquidating Trust has preserved more than eight terabytes of data relevant to the Retained Data Matters (the "**Retained Data**").  This includes information produced to the Liquidating Trust by third parties and the home drive data and hard drive backup for all "key custodians" for whom the Liquidating Trust produced data in the Retained Data Matters.  All such preserved data is included in the Retained Data.  The Liquidating Trust has also retained to date the Obsolete Records, as described below.

**The Obsolete Records**

12.    As a subsidiary of Ally, the Debtors were subject to Ally's document retention policy, which called for retention of non-litigation hold documents for various periods of time, after which the documents were to have been destroyed.  However, the Debtors were not consistent in following the Ally document retention policy, particularly with respect to document destruction.  As a result, the Debtors accumulated a voluminous amount of material, the vast majority of which is either of no current informational value to the Liquidating Trust or any other party, or could not in any event be retrieved without substantial effort and considerable cost.  Further, over the course

of its operations since the Effective Date, the Liquidating Trust has accumulated voluminous materials that are no longer necessary to its mandate.

13.    In addition, the Liquidating Trust has been continually evaluating and adjusting its headcount.  As of its inception, the Liquidating Trust employed approximately 83 individuals who were previously employed by the Debtors (the "**Legacy Employees**").  The Legacy Employees assisted the Liquidating Trust in various aspects of its mandate, including the pursuit of affirmative causes of action that were transferred from the Debtors to the Liquidating Trust, resolution of disputed claims, and the preparation of the Liquidating Trust's tax and financial reporting.  As of the date hereof, and as a result of the completion of the claims resolution process and the near-completion of the Liquidating Trust's affirmative litigations, there is only one remaining Legacy Employee.

14.    Accordingly, following a thoughtful evaluation of the Liquidating Trust's progress to date, the cost to be incurred by continued storage of obsolete records, and its document retention obligations, by the Motion, the Liquidating Trust seeks authority to destroy the following categories of obsolete records (collectively, the "**Obsolete Records**"):

- **Obsolete Loan Records**.  The Liquidating Trust seeks to destroy approximately 25,400 cartons (collectively, the "**Obsolete Loan Records**") containing various loan and underwriting materials that the Liquidating Trust has been preserving during the pendency of its affirmative litigations against those financial institutions that originated loans that were sold to the Debtors  (the "**Correspondent Lender Litigations**"), as well as loan files pertaining to loans sold by the Debtors and the Liquidating Trust for which information was provided to the buyers electronically and for which the buyers have declined to receive physical records.

- **Miscellaneous Debtor Obsolete Records**.  The Liquidating Trust seeks to destroy (i) approximately 7,550 cartons of miscellaneous materials that were placed in storage by the Debtors, and (ii) approximately 15,571 data tapes relating to various legacy IT systems of the Debtors (collectively, the "**Miscellaneous Debtor Obsolete Records**").  As discussed in the First Obsolete Records Motion to destroy obsolete records, many of the Miscellaneous Debtor Obsolete Records include various documents that were placed into storage by the Debtors in the decades prior to the

Chapter 11 Cases without any systematic organization. Further, cataloguing and determining the precise contents of the data tapes and hard drives that constitute the Miscellaneous Obsolete Records would require many thousands of hours and the restoration of legacy IT systems that have long been deactivated. As a result, the cost the Liquidating Trust would incur in retrieving and cataloging each carton, data tape, or hard drive that contains the Miscellaneous Debtor Obsolete Records is out of all proportion to any perceived benefit.

- **Legacy Employee Obsolete Records**. As discussed above, the Liquidating Trust, at its peak, employed approximately 83 Legacy Employees who assisted the Liquidating Trust in various aspects of its mandate. Over the course of their employment, the Legacy Employees placed various work materials into storage. The Liquidating Trust estimates that there are currently 1300 cartons of such materials being stored. Much of this materials is of no further use to the Liquidating Trust either because the materials relate to matters that have been long resolved (*e.g.*, materials related to the claims resolution process) or because the relevant materials have been electronically preserved. Accordingly, the Liquidating Trust intends to undertake a thorough review of these materials and destroy such records (collectively, the "**Legacy Employee Obsolete Records**") that are either (i) otherwise preserved electronically or (ii) unrelated to human resources matters, accounting and financial record keeping, or tax reporting (except to the extent such records have been electronically preserved).

15.    To be clear, the Liquidating Trust is not seeking to destroy any records necessary for the administration of the Debtors' estate, or any materials related to the Remaining Litigations.[9] During the discovery phase of the Correspondent Lender Litigations, the Liquidating Trust preserved the Obsolete Loan Records as they were potentially relevant to the discovery taken in those cases. However, with those litigations concluded, destruction of the Obsolete Loan Records is appropriate. Moreover, as discussed in the First Obsolete Records Motion, the Miscellaneous Obsolete Records are unlikely to be of any utility, even if the Liquidating Trust undertakes the enormous expense of cataloging the contents of each of the thousands of document cartons in storage.

---

[9] Although some of the Obsolete Loan Records include materials produced in the course of the PRMI litigation, those records have been electronically preserved and the Liquidating Trust is not seeking to destroy such electronic records.

16.     Finally, to the knowledge of the Liquidating Trust, the Obsolete Records are no longer subject to any applicable records retention laws or regulations.  Typical document retention laws require that records be kept for 3-8 years.  Given that the Debtors' cases were initiated more than eight years ago, it is unlikely that any of the Obsolete Records would continue to be subject to applicable document retention requirements.   Further, with respect to the Legacy Employee Obsolete Records, the Liquidating Trust is not seeking to destroy documents related to any human resources, accounting, and tax documents, except to the extent such documents have been electronically preserved.

17.     Destroying the Obsolete Records will result in cost savings, freeing up funds that can be more effectively applied towards the necessary costs of administration of the Liquidating Trust and, most importantly, distributions to Unitholders. The Liquidating Trust estimates that the cost of preserving the Obsolete Records is approximately $10,700 per month, which will be subject to increases as the Liquidating Trust's contract with document storage vendors expire.

18.     The Obsolete Records include a collection of approximately 40,214 boxes of documents currently maintained at Iron Mountain, a document retention vendor, and an additional approximately 7,500 boxes maintained at Corodata, another document retention vendor.   In addition, the Liquidating Trust is storing approximately 15,571 data tapes at Corodata.  The total annual storage costs of the Obsolete Records that are subject to the Motion is over $124,000.

19.     With respect to the Miscellaneous Obsolete Records, no inventory of the contents of the boxes of documents were maintained by the Debtors and the Liquidating Trust is unable to determine their particular contents without retrieving each storage box and file and cataloguing the materials that it contains.  Efforts to do so would cost millions of dollars and entail countless man hours of work, all bereft of any practical benefit.

20.    The information on the data tapes constituting the Miscellaneous Debtor Obsolete Records are even less accessible.  The remaining tapes appear to be backup for email exchanges, e-discovery exercises and legacy systems of the Debtors, none of which has any current relevance.  Moreover, the Liquidating Trust lacks the hardware and software necessary even to read many of the tapes, and identifying and paying vendors who might be able to do so would undoubtedly entail considerable expense and might not produce a successful result

21.    With respect to the Legacy Employee Obsolete Records, the Liquidating Trust is confident that all critical records with respect the various functions conducted by the Legacy Employees has been preserved electronically.  Moreover, the Liquidating Trust is not seeking to destroy any documents related to the human resources, accounting, or tax functions of the Liquidating Trust.  Accordingly, following a thorough review, the Liquidating Trust will destroy only those Legacy Employee Obsolete Records that are either (i) otherwise preserved electronically or (ii) unrelated to human resources matters, accounting and financial record keeping, or tax reporting (except to the extent such records have been electronically preserved).

17.    To the best of my knowledge, the Liquidating Trust has turned over—and has preserved—all documents from storage that could reasonably be produced in respect of the actions involving the Liquidating Trust that remain pending.

18.    Since its inception, the Liquidating Trust has been receiving requests for documentation from mortgagors seeking to resolve lien issues or establish quiet title or regulators seeking historical loan records on matters unrelated to the Liquidating Trust or the Debtors.  These requests have tapered off substantially with the passage of time and the Liquidating Trust now has only one legacy employee who remains to assist with any matters relating to historical records.  On August 5, 2019, the Liquidating Trust obtained the Stay Modification Order from the Court

which, among other things, modifies the automatic stay and plan injunction provisions to permit third parties to commence and complete actions to foreclose on senior liens and non-monetary causes of action seeking to clear or quiet title. In addition, the Liquidating Trust has cooperated to the extent practicable with regulatory entities seeking access to historical loan records. Importantly, I do not believe that the relief requested in the Motion will impact the Liquidating Trust's ability to accommodate such requests.

19.      The Liquidating Trust has been, and will continue to be, careful about segregating and preserving documentation that remains of future relevance or is required to be maintained for a future period by operation of law. Documents that are known by the Liquidating Trust to pertain to any proceedings or other matters that have not been fully and finally resolved, or that have relevance to the continued operations of the Liquidating Trust or that the Liquidating Trust is otherwise legally required to maintain, will be retained for as long as necessary and in compliance with law.

*          *          *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 16, 2021

<i>/s/ Jill Horner</i>         <br>
Jill Horner<br>
Chief Financial Officer for the ResCap<br>
Liquidating Trust